Filippo Marchino, Esq. (SBN 256011)
FM@xlawx.com
Damon Rogers, Esq. (SBN 263853)
DR@xlawx.com
Thomas E. Gray, Esq. (SBN 299898)
TG@xlawx.com
**THE X-LAW GROUP, P.C.**
625 Fair Oaks Ave, Suite 390
South Pasadena, CA 91030
Tel: (213) 599-3380
Fax: (213) 599-3370

Attorneys for Plaintiff Dennis Bradshaw

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DENNIS BRADSHAW, Individually and on Behalf of All Others Similarly Situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| CITY OF LOS ANGELES, a municipal entity; MICHAEL FEUER, in his individual and official capacity; JAMES CLARK, in his individual and official capacity; THOMAS PETERS, in his individual and official capacity; THE LANDSKRONER LAW FIRM, LTD. dba LANDSKRONER GRIECO MERRIMAN, LLC, a limited liability company; JACK LANDSKRONER, an individual; LAW OFFICES OF MICHAEL J LIBMAN APC, a California Professional Corporation; MICHAEL J. LIBMAN, an individual, | |
| Defendants. | |

THE X-LAW GROUP P.C.

625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

**INTRODUCTION**

1.     Plaintiff Dennis Bradshaw ("Plaintiff" or "Bradshaw") brings this suit against the City of Los Angeles ("LA" or "The City"), Michael Feuer ("Feuer"), James Clark ("Clark"), Thomas Peters ("Peters"), The Landskroner Law Firm, LTD. ("The Landskroner Firm"), Jack Landskroner ("Landskroner"), Law Offices Of Michael J Libman APC, and Michael J. Libman ("Libman") (collectively, "Defendants") to recover damages owed to him and others similarly situated.

2.     This lawsuit arises out of professional misconduct at an almost unfathomable level by Defendants, most of whom are attorneys, or law corporations involved in the practice of law.  When the Los Angeles Department of Water and Power ("LADWP") switched to a new billing system, it began billing hundreds of thousands of ratepayers incorrect amounts.  However, rather than simply refund consumers and resolve the problem, attorneys at the Los Angeles City Attorney's Office, along with outside counsel, instead decided to eliminate ratepayers' claims through a class action.  In essence, they chose to prophylactically sanitize the problem and prevent any true legal exposure. Although Los Angeles' outside counsel initially planned to represent a ratepayer in a class action against the company that developed the billing system, PricewaterhouseCoopers, LLP ("PwC"), they instead passed the ratepayer off to an attorney so that he could file a class action against *The City of Los Angeles*.  The attorneys who were given this ratepayer almost immediately filed the class action, *Jones v. City of Los Angeles*, and almost as quickly settled it with The City.  However, at no time during the settlement approval process or the notice period for ratepayers to object or opt out did the attorneys disclose their conflict of interest or that they were plotting with the defendant in that case, The City, for a quick settlement.  As a result, the ratepayers lost their ability to obtain a fair settlement from The City and the attorneys went on to obtain tens of millions of dollars in fees and benefits.  The truth only came to light

2

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

by happenstance, when the company that developed the billing system, which is involved in litigation with The City, learned that The City had originally intended that the plaintiff in the class action was originally supposed to sue PwC, rather than The City.

3.     As a result of Defendants' conduct, Plaintiff and other LADWP ratepayers who were *Jones* class members have suffered significant damages.

## PARTIES

4.     Plaintiff Dennis Bradshaw is the renter of a house in the City of Los Angeles and an LADWP customer.  He is a citizen of the State of Nevada.

5.     Defendant City of Los Angeles is a public entity organized and existing under the laws of the State of California.

6.     Defendant Michael Feuer is the elected City Attorney of the City of Los Angeles, head attorney and policymaker of the Los Angeles City Attorney's office, a citizen of the State of California, and a resident of Los Angeles County, California. He is sued in both his individual and official capacity.

7.     Defendant James Clark was at all times relevant to this action the Chief Deputy City Attorney of the Los Angeles City Attorney's Office and reported directly to Michael Feuer.  Clark is a citizen of the State of California, and a resident of Los Angeles County, California.  He is sued in both his individual and official capacity.

8.     Defendant Thomas Peters was at all times relevant in this action the chief of the Civil Litigation Branch of the Los Angeles City Attorney's Office and reported directly to Clark.  Peters is a citizen of the State of California, and a resident of Los Angeles County, California.  He is sued in both his individual and official capacity.

9.     City of Los Angeles, Feuer, Clark, and Peters are collectively referred to in this Complaint as "LA Defendants."

10. Defendant The Landskroner Law Firm, Ltd dba Landskroner Grieco Merriman, LLC is an Ohio limited liability company with its principal place of business in Ohio.

11. Defendant Jack Landskroner is an attorney with The Landskroner Firm and a citizen of Ohio.

12. Defendant Law Offices of Michael J Libman APC is a California professional corporation with its principal place of business in Los Angeles County, California.

13. Defendant Michael J. Libman is an attorney with Law Offices of Michael J Libman APC, a citizen of the State of California, and a resident of Los Angeles County, California.

14. The Landskroner Firm, Jack Landskroner, Law Offices of Michael J Libman, and Michael J. Libman are collectively referred to in this Complaint as "Class Counsel Defendants."

15. LA Defendants and Class Counsel Defendants are collectively referred to in this Complaint as "Defendants."

16. Plaintiff is informed and believes, and upon such basis alleges, that at all times herein mentioned, each of the Defendants herein was an agent, servant, employee, co-conspirator, partner, joint venturer, wholly owned and controlled subsidiary and/or alter ego of each of the remaining Defendants, and was at all times acting within the course and scope of said agency, service, employment, conspiracy, partnership and/or joint venture.

17. Defendants, and each of them, aided and abetted, encouraged and rendered substantial assistance in accomplishing the wrongful conduct and their wrongful goals and other wrongdoing complained of herein. In taking action, as particularized herein, to aid and abet and substantially assist the commission of these wrongful acts and other wrongdoings complained of, each of the Defendants acted with an awareness of their primary wrongdoing and realized that their conduct

4

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

## JURISDICTION AND VENUE

18. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 and 28 U.S.C. § 1332 because there are over 100 members of the proposed class, at least one member of the proposed class has a different citizenship from a defendant and the total matter in controversy exceeds $5,000,000. This Court also has subject matter jurisdiction over Plaintiffs' federal claims for relief under 42 U.S.C. § 1983 and § 18 U.S.C. § 1961 pursuant to 28 § 1331 and over Plaintiffs' state law claims, because they are so related to their federal law claims as to form part of the same case or controversy, pursuant to 28 U.S.C. § 1367(a).

19. Venue is proper pursuant to 28 U.S.C. § 1391(b) & (c) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district and because Defendants are subject to the Court's personal jurisdiction in this judicial district.

## FACTUAL ALLEGATIONS

### I. LADWP Overcharges Customers.

20. On or about September 3, 2013 LADWP implemented a Customer Care and Billing software platform (the "CC&B System"), which had been developed and implemented by PricewaterhouseCoopers, LLP ("PwC"), to bill customers for water, electricity, and other utility services as well as to administer solar-power accounts. The CC&B System was inherently and fundamentally flawed, causing over-billing and other billing problems for LADWP's customers. As was alleged in the Amended Class Action Complaint that was filed in *Jones*, the CC&B System billed incorrectly in at least the following ways:

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

### A.     Tiered Billing Issue.

21.    Pursuant to Incremental Electric Rate Ordinance No. 182273, the LADWP was permitted to charge its customers for electricity and water usage according to tiers. This Ordinance provided for three tiers of pricing: Tier 1, Tier 2 and Tier 3.

22.    The Tier at which a customer is charged was dependent upon the amount of electricity or water a customer used in a given billing period. The more electricity and/or water that a customer used, the higher the Tier at which the customer would be charged.  Accordingly, Tier 1 customers would be charged lower rates than Tier 2 customers and Tier 3 customers would be charged higher rates than Tier 1 or Tier 2 customers. One of the laudable purposes behind this tiered structure was to allow a customer to adjust their usage downward so as to prevent billing at a higher Tier, and to simultaneously conserve resources.

23.    Due to programming defects in the CC&B System, LADWP improperly assigned customers to Tiers higher than those to which the customer should have been assigned based on usage. This, in turn, resulted in customers being billed at an erroneously higher rate than otherwise legal and valid.

### B.     Trend Estimate Issue.

24.    Pursuant to the Rules Governing Water and Electric Service (the "Rules"), under certain circumstances LADWP was permitted to charge its customers using "estimated" rather than "actual" usage.

25.    Estimated billing, however, was permitted under the Rules in only a limited number of circumstances including: (i) where a customer paid on a "flat rate" schedule (regardless of usage); (ii) for deposits; (iii) for improper consumption of services; (iv) to recoup monies due to theft of services; and (v) where a meter is maintained in a locked compartment or otherwise fails to register correctly.

26. Unbeknownst to its customers, and despite the very limited circumstances in which LADWP is permitted to use estimated billing, LADWP intentionally violated the Rules by sending out millions of estimated bills since 2013. The vast majority of these bills did not satisfy the criteria under the Rules which would have allowed for "estimated" billing.

27. The CC&B System's Trend Estimation Algorithm was defective.

28. To perform "Trend Estimation" properly, a utility billing system utilized a series of algorithms that analyzed such things as geographic area, type of customer, etc. in order to estimate a customer's usage.

29. These criteria were examined and utilized in calculating a "Trend Estimate" to ensure that the "Trend Estimate" used to bill customers is as close to actual usage data as possible, and that the "estimated" bill is therefore as close to what a bill based on actual usage data would be.

30. When configured properly, the algorithms that calculated the "Trend Estimate" would use a "neighborhood" attribute to ensure that the usage patterns employed to calculate a "Trend Estimate" for a customer were based on the usage patterns of other customers who also lived in the immediate geographic area, rather than on the usage patterns of customers who lived in, for example, disparate geographic locations, i.e., similar customers. Stated another way, in order to calculate a reliable and valid – and therefore, reasonable - "Trend Estimate," it was critical that the billing system used to calculate the Trend Estimate be programmed in such a way that the billing system compared apples with apples, as opposed to apples and oranges, and generated the Trend Estimate based on the billing system having done so.

31. Rather than configuring the Trend Estimate based on "similar" customers, PwC configured the Trend Estimate algorithm to estimate a customer's usage based on a straight average of all customer types.

7

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California  91030
213.599.3380 phone • 213.599.3370 fax

32.    Because the Trend Estimate was mis-configured, estimates generated by the CC&B system were inaccurate.

33.    Accordingly, as a result of this programming, customers were damaged. In particular, customers were either overbilled based on inflated estimates or were underbilled, but forced into a higher Tier (along with higher taxes and surcharges) as a result of being billed in one-lump sum at the time when their bills were reconciled with their actual usage:

34.    First, LADWP billed its customers for greater quantities of electricity, water and sewage than they had actually used because the estimates themselves were higher than any customer's actual usage.

35.    Second, because the estimates themselves were randomly generated, the estimates have no correlation to actual usage, which could negatively impact a customer by forcing him into a Tier higher than that which he would be assigned had his usage not been estimated.

36.    Third, although LADWP could ultimately reconcile the estimate with a customer's actual usage, if, in the interim, a rate increase was implemented, or if a customer's actual usage was shifted into a higher cost season, all of the shifted usage would be improperly billed at a higher rate.

37.    Fourth, because estimated bills do not reflect actual consumption, consumers were deprived of the knowledge of whether their actual consumption required a downward modification so as to prevent them from being billed at a higher Tier, which, in turn, violates the spirit of tiered pricing.

**C.    Closed Account with Credit Balance Issue.**

38.    When an LADWP customer closes his or her account, and the account has a positive balance or credit, those funds must be refunded to the customer.

39.    Due to programming defects in the CC&B System, customers with closed accounts with positive balances did not receive refunds.

8

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

### D. Premise Condition/Estimated Bill Issue.

40. Unbeknownst to some customers, there were conditions on their premises which caused excessive consumption of water or power or sewage, increasing their usage from ordinary levels.

41. LADWP's use of estimated bills for such customers for multiple billing periods resulted in these customers failing to appreciate that their consumption had increased from ordinary levels as a result of an unknown premise condition.

42. Ultimately, upon reconciliation, these customers were charged for far greater usage than they otherwise would have been had the increased consumption appeared on an initial actual bill, such that the customer could remediate it instead of being hidden in multiple improperly-estimated bills.

### E. Solar Customer Issues.

43. Defects in the CC&B System have caused several problems with respect to utility bills issued to those customers of the LADWP that installed their own solar power systems.

44. First, defects in the CC&B System caused the CC&B System to fail to recognize when LADWP customers switched from traditional electric power to solar power. As a result, the CC&B System continued to charge these customers for electric power without consideration of the solar power generated by their systems. Moreover, the delay in recognizing that a customer was producing excess energy resulted in a failure to credit that customer's account for power generated, and/or a failure to pay for excess energy under the applicable rate schedule, City Ordinance 182273.

45. Second, where the CC&B System did recognize that a household had converted to solar power, defects in the CC&B System caused the CC&B System to miscalculate rates and credits due to these solar power customers.

46.   As a result of these defects in the CC&B System, LADWP customers that used solar power were overcharged for electricity and were not credited appropriately for electricity that they had produced and generated into the grid.

**F.   Automatic Bill Payment/Bank Overdraft Charge Issues.**

47.   Many LADWP customers were enrolled in an automatic bill-payment plan. Due to the over-billing errors resulting from the flaws in the CC&B System, the automatic withdrawals were for greater amounts than customers reasonably expected to pay (or should have been required to pay) and resulted in overdrafts of the customers' bank accounts—and fees and penalties associated with such overdrafts.

**G.   Late Payment Charge Issue.**

48.   Due to defects in the CC&B System, certain customers were improperly assessed an inaccurate Late Payment Charge.

**H.   Estimated Electric Bills with "Minimum Charge" Issue.**

49.   Due to the defects in the CC&B System, certain customers received estimated bills for zero consumption, when, in fact, they had actual usage.

50.   These customers were assessed a "Minimum Charge" fee when they should have received a bill for actual usage without such a fee.

**I.   Other Billing and Customer Service Issues.**

51.   Defects in the CC&B System caused LADWP to delay the issuance of its customers' bills for electricity, water, sewage and sanitation services for multiple billing cycles.

52.   The failure to timely issue bills was a result of an error in the CC&B System related to the integration of a particular interface, the responsibility of which

10

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

was to upload meter read data into the CC&B System. This interface was known as the "Meter Read Upload Interface" or "MRU Interface," which was created and programmed by PwC.

53.   The Meter Read Upload Interface was designed to take meter read data, which is collected by meter readers in the field, and to then transmit or "upload" that data to the CC&B System for the generation of bills.

54.   Because PwC created and programmed the MRU Interface in a defective manner, the MRU Interface did not function properly and LADWP could not issue bills to many of its customers for long periods of time.

55.   After failing to issue bills for many months, LADWP then billed its customers for four, six, or even eight months of water and electricity in one "lump sum."

56.   The impact of LADWP's "lump sum" billing was that it resulted in inappropriately high bills, as it caused customers to be bumped up from lower pricing Tiers to higher pricing Tiers. As a direct result of being billed at higher Tiers, these LADWP customers have also improperly incurred higher utility taxes and energy surcharges. Moreover, such customers were not necessarily in a financial position to pay large lump-sum bills.

57.   Additional defects in the CC&B System caused the LADWP to:

(i) continue to bill customers who requested that their services be terminated;

(ii) fail to issue refunds for the overpayment of services; and

(iii) inaccurately calculate bills that involved multiple billing periods.

58.   The CC&B System was intended to be programmed to automatically close out "off orders" that were not completed in the field upon the occurrence of a subsequent "on order" at the same location, thereby ensuring that billing was stopped and started properly. This programming component or "enhancement" of the CC&B System was known as "Auto-Close of Off Orders."

PLAINTIFFS' COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

59.   By way of example, assume an LADWP customer is moving out of an apartment and places an "Off Order" so that service to the apartment is terminated. Then assume that a new resident moves into that same apartment days later. The "Auto-Close on Off Orders" enhancement was intended to ensure that billing to the customer who is moving out of the apartment is completely stopped when the "On Order" is placed, so that the new resident – rather than the resident who is moving out – is billed for service once the "On Order" is placed.

60.   The "Auto-Close on Off Orders" enhancement was not programmed properly. As a result, the LADWP continued to bill customers *after* they had placed "Off Orders."

61.   Additionally, defects in the CC&B System have caused the LADWP to inaccurately calculate bills that involve multiple billing periods.

## II.   Defendants Collude To Settle The Claims.

62.   By January 1, 2015, if not earlier, attorneys Paul Kiesel ("Kiesel") and Paul Paradis ("Paradis") (collectively, "Special Counsel") had been retained by Los Angeles to serve as Special Counsel to the City with regard to all disputes arising out of the performance of the CC&B billing issues.  Under the terms of the contract with the City, Special Counsel would be closely supervised by the Los Angeles City Attorney, which would "supervise and retain final authority over all aspects of the Dispute Resolution Process and, if litigation is commenced, all aspects of the Litigation" and its approval was required before standard litigation tasks such as filing motions could be performed.  In addition, Special Counsel were required to ensure that the City Attorney was kept fully informed of all material case developments at all times and would provide the City Attorney with copies of all correspondence and pleadings related to the litigation.  On information and belief, LA Defendants supervised, ratified, and directed the conduct of Special Counsel, including the decision to file and settle *Jones* as a collusive class action.

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

12

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

63.   In or around 2014 Antwon Jones ("Jones") submitted a complaint about his LADWP bill to a website he thought to be affiliated with a governmental agency, checking a box consenting to be contacted by counsel.

64.   The website that drew Jones's attention had been created by Paradis, and it was Paradis who contacted Jones and was retained by him as counsel on December 8, 2014.   Mr. Jones explained in a sworn declaration submitted in Los Angeles Superior Court on May 5, 2017 that he had retained counsel to ***"conduct an investigation to determine whether I had any claims that could be brought against the LADWP and the City of Los Angeles*** to recover for the amounts that I had been overcharged by the LADWP for electricity."

65.   Paradis was overseeing remediation work on the CC&B system at LADWP when Jones retained him.   Apparently, within days of that retention by Jones, Paradis expanded his role for LADWP in mid-December 2014 to serve as "Special Counsel" to the City.

66.   By mid-March 2015, Jones instructed Paradis to file suit against the City. Paradis, as Special Counsel to the City could not, of course, appear on a complaint against the City. On or about March 26, 2015, Paradis introduced Landskroner as an expert in municipal lawsuits who should be added to Jones's legal team. Jones has testified that he understood he was *adding* an attorney to his case-not switching attorneys-and never received any notification that Paradis would no longer be serving as his attorney in connection with his claims against LADWP.   According to his testimony in another action, although Jones began communicating with Landskroner beginning on March 26, 2015, he understood that Paradis was remaining involved as his counsel. Jones did not know that Paradis did not sign the complaint when the complaint was filed- indeed, he was unaware of that fact prior to being subpoenaed in another case.

67.   Jones's actions following the filing of the complaint are entirely consistent with his understanding that Paradis remained his lawyer in his suit against LADWP: For example, Jones emailed **both** Paradis and Landskroner to complain that his power had been shut off in an apparent act of retaliation by LADWP to the April 1 filing of the case.  Jones further testified that Paradis had never sought to formally disengage from his representation of Jones's interests against LADWP.

68.   Thus from mid-December 2014 onwards, Paradis was simultaneously representing two clients–Jones and the City–in regards to disputes arising from LADWP's rollout of the CC&B system, notwithstanding that Jones and the City had conflicting interests. Yet, according to Jones's deposition testimony, Paradis did not once disclose his affiliation with the City to Jones–not when Paradis first offered up his services as a class-action attorney, nor when he apparently performed a pre-suit investigation in early 2015, nor when he introduced Jones to Landskroner, nor even when Jones asked for Paradis's help to get LADWP to turn his power back on after the complaint was filed.  To the contrary, Jones was kept in the dark that Paradis was providing CC&B remediation management services, and testified that he would **not have consented** to be represented by an attorney who was concurrently representing the City.

69.   Indeed, even Paradis's justification to Jones for adding Landskroner to the case-that he had more specialized knowledge than Paradis- was fundamentally misleading.  Clark made clear that Landskroner was brought in at Paradis's recommendation to the City.  Paradis had been co-counsel with Landskroner previously and Landskroner had been seen as an "advantage" to the City and "in moving towards settlement," and because he was not likely to be "the most zealous advocate available for Mr. Jones to pursue claims."  The City had no interest in having Jones referred to other plaintiffs' class action lawyers, including Timothy Blood and Alan Himmelfarb, who already had ratepayer cases pending on the same subject matter, as they were viewed by the City as "unreasonable" attorneys who

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

would be difficult to deal with as class counsel.  Consistent with what most advantaged the City's interests, Paradis introduced Landskroner to Jones.  Six days later, Landskroner filed the class action <u>Jones v. City of Los Angeles</u>, Los Angeles County Superior Court Case No. BC577267.  The case was assigned to Judge Elihu Berle ("Berle") and almost immediately entered into settlement negotiations.

70.   What makes this total lack of disclosure about conflicted interests astonishing is that Paradis apparently attempted to influence Jones away from his initial inclination to sue the City in favor of a possible action against PwC, without disclosing that he (Paradis) was actively representing the City at that very time.  Although Paradis kept Jones in the dark about his representation of the City, Paradis fully informed the City about his representation of Jones. On January 24, 2015, a draft complaint captioned "Jones v. PwC" – displaying Paradis and Kiesel as Jones's attorneys – was circulated within the City Attorney's Office, having been provided by Paradis.  Just two weeks earlier, on January 9, 2015, Paradis, as Jones's counsel, prepared a Complaint that was styled Jones versus PricewaterhouseCoopers and provided it to Jones.  Clark has stated in a deposition that the City's outside counsel (Liner LLP) wrote a memorandum recommending against filing the Jones v. PwC complaint after it had been circulated for discussion ***because it "wasn't going to accomplish [the City's] goals."***  The conflict of interest could not be clearer: Paradis's draft complaint on behalf of his client Jones was provided to the City to evaluate it for filing based on whether it served the City's interests, not Jones's interests.

71.   Nor did Paradis make any effort to withdraw or disclose potential conflicts to Jones after it became clear–upon the filing of the *Jones* case–that Jones and LADWP had become adverse parties on opposing sides of the litigation.  Instead, Special Counsel continued to play both sides of the caption.  Mr. Clark testified that to the best of his recollection, at the June 2015 mediation of Jones's claims, the participants included Paradis-who had never terminated his relationship

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

with plaintiff Jones but who was representing defendant LADWP "against" Jones, to the extent that there was any actual adversity between the parties.  And at subsequent hearings to approve the *Jones* settlement, Paradis stated that he had investigated, ***on behalf of the City,*** objections raised by other plaintiffs' attorneys while his co-counsel Kiesel urged ratification because the terms were fair to the Class.

72.    Unlike Jones, Judge Berle was not merely left in the dark; rather, he was actively misled regarding the development, conduct, and resolution of the *Jones* case. In particular, Judge Berle was persuaded to bless a settlement without being told necessary qualifying facts about the relationship between counsel for the adverse parties.   In petitioning the Court to approve the Jones settlement, Landskroner represented that "[t]he Parties' negotiations, although contentious, were undertaken in good faith and ***at arms' length."***  Landskroner repeatedly touted transparency and independence in the parties' discussions, underscoring that the settlement was the product of "two full hard fought days of mediation in June 2015" and was "presumptively fair because it was reached following protracted, and at times contentious, arms-length negotiations."   Landskroner added that "[t]he fact that mediation was overseen by a neutral third party is proof of the noncollusive nature of the negotiations."

73.    In fact, every one of those representations was misleading because Landskroner suppressed facts which materially qualified those statements regarding the independence of the parties and the adversarial nature of negotiations. It was not disclosed that Paradis (Special Counsel to the City in the simultaneously pending LADWP case over CC&B billing issues) represented the plaintiff, Jones, for over four months in the run-up to the filing of the complaint (and was Jones's sole attorney for the majority of that time).  It was not disclosed that a lawyer for the City (Special Counsel Paradis) ***introduced the putative Class Counsel*** (Landskroner) to the ratepayer plaintiff-that too, a scant one week before the plaintiff's lengthy

16

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

complaint was filed. And it was not disclosed that Landskroner began settlement overtures the day after the filing of the complaint, without Jones knowing until two months later that such discussions had begun. For its part, the City Attorney's Office knew or, at a minimum, was on notice of all those material qualifiers, but did not fulfill its duty of candor to the Court by correcting the misimpression that Landskroner created regarding "hard fought" settlement talks. As for the conclusory representation that the mediator's oversight sufficed to guarantee arms–length dealing, there is no evidence that the ***mediator*** was told anything about relationships between Paradis, Landskroner, and Jones either. In fact, on information and belief, the mediator had been hoodwinked into being used as a prop by the attorneys and was in fact under the belief that he was conducting a legitimate adversarial mediation session, when in fact he wasn't. In fact, the *Jones* complaint and friendly opposing counsel enabled the City to arrive at a settlement of all ratepayer litigation that worked to its own interests. When Judge Berle was asked to approve the settlement over objections of collusion, he did not have any of this information available. But such information would have had immense relevance to Judge Berle's evaluation of whether Landskroner was an independent and adequate counsel to appropriately represent Jones and a Class that was releasing broad claims against the City.

74. Tellingly, the only response Landskroner had to allegations of collusion between counsel for the City and counsel for Jones was itself misleading. In a February 2017 response to settlement objections, Landskroner swore that any "suggestion that the attorneys from the Landskroner Firm have an inappropriate relationship with any of the attorneys from … the Office of the City Attorney of Los Angeles is false" because "[p]rior to the Jones Action, ... the Landskroner Firm had never worked on any matter with ... the Office of the City Attorney of Los Angeles (defense counsel, here) either as co-counsel or as opposing counsel." Landskroner failed to tell Judge Berle that Special Counsel Paradis had previously represented Jones while representing the City, a fact well known to Landskroner, and brought

17

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

Landskroner into the case based on Paradis's prior relationship with Landskroner.

75.   The *Jones* settlement was formulated collusively and not through adversarial negotiation, which enabled the parties to the scheme to include extraordinary elements for their respective benefit.  Landskroner, without taking or defending a single deposition, garnered the majority of $19 million in total fees divided among counsel, a significant portion of which appears attributable to work performed before he was even introduced to Jones. The City shoehorned in a remediation component never sought by the Class and used the Court's approval of that component to rush through contracts without competitive bidding. Ultimately, Special Counsel Paradis's law firm and a company formed by Paradis during the course of the *Jones* case were awarded no-bid contracts of some $36 million to provide project management services in connection with the remediation required by the *Jones* settlement.

76.   In his declaration supporting the $19 million aggregate fee request, Landskroner stated that "[p]rior to and after the filing of the initial complaint, ***Class Counsel conducted an extensive and very lengthy investigation*** into the matters alleged in the initial complaint, which included, among other things, interviewing current and former LADWP employees and working closely with investigators." Landskroner boasted that the "outstanding results provided by the Settlement" were achieved because "Class Counsel was able to leverage the information learned in connection with Class Counsel's pre-suit investigation."  Landskroner repeated the same representations in the Settlement Agreement presented to Judge Berle, stating that "prior to filing the Complaint in the Action, Class Counsel initiated an extensive and very lengthy investigation."

77.   However, the timing of that "extensive and very lengthy [pre-suit] investigation" by Class Counsel Landskroner does not make sense.  Jones testified that the first time he was introduced to Landskroner by Paradis was March 26, 2015, and further testified that he had no other attorneys before that date for his potential

suit against LADWP.  Thus, when Jones declared–also in support of the fee request–that his "counsel" conducted pre-suit work like investigating the claims, hiring experts, and preparing a draft complaint, Jones thought his declaration was referring to Paradis but, of course, there was no way for Judge Berle to know that given Paradis's status as Special Counsel to the City. Yet Landskroner passed off all that pre-March 26 activity as his own, demanding more than $500,000 (using a multiplier) for *355.75 hours of work he did before he had ever met his client.* Landskroner and Special Counsel all knew that Landskroner was seeking fees for work performed during the time period in which Jones was, to his knowledge, represented only by Paradis.  None spoke up.

78.   But the fraud on the public extends further. The only relief sought by the *Jones* complaint was refunds of overcharges and imposition of a monitor to identify affected ratepayers while overseeing the refund process. Yet the City inserted into the settlement a substantial remediation component for which there was no discernible reason or request by plaintiffs.  The City then presented that remediation order, bearing the court's imprimatur, to the LADWP Board of Commissioners as requiring immediate approval and implementation of no-bid contracts.  A company founded by Special Counsel Paradis (Aventador Utility Solutions, LLC) was then awarded a *$30 million contract on a no-bid basis* (this in addition to the $6 million the Paradis Firm had already received for remediation-related services).

79.   When Defendants submitted their proposed settlement to Judge Berle for approval, they included draft notices to class members of the settlement.  As Defendants intended, these drafts formed the basis of the notices that Judge Berle ordered to be sent out to the *Jones* class members.  They opted to include such statements as that "The Class Representatives and the attorneys that have been appointed by the Court to represent the Settlement Class believe that the Settlement is in the best interests of all Settlement Class Members."  They also included language stating that class members "have a lawyer in this case," namely Class

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

Counsel Defendants, who the notice states "have been appointed by the Court to represent you and the other Settlement Class Members." Nowhere in the draft notices did Defendants disclose the collusive relationship between Class Counsel Defendants and The City. Judge Berle ordered that the notice be disseminated by email and mail to LADWP customers and published, among other places in *The Los Angeles Times* and *La Opinion* as well as on LADWP's website.

80. Ultimately, Judge Berle issued his order granting final approval of the class action settlement and a final judgment on July 20, 2017. Class Counsel Defendants were awarded $19,000,000 in attorneys' fees and an additional $2,741,003.99 in expenses. These fees and reimbursement of expenses were ordered to be paid by The City to Defendants within 7 business days after entry of the order, with class counsel responsible for the allocation of fees and expenses among themselves. On information and belief, The City did in fact disburse these fees to Class Counsel Defendants. In addition, Class Counsel Defendants retained the right to make quarterly applications to the court for additional awards of attorneys' fees at a rate of 29% of all future recoveries by class members.

81. On information and belief, Defendants Law Offices of Michael J Libman and Michael J. Libman, by virtue of their role as local counsel in the *Jones* class action, were aware of and participated in Landskroner's and his firm's misconduct and were aware of Landskroner's connection to The City and Special Counsel as well as the fact that the *Jones* settlement was collusive.

82. On information and belief, Peters and Clark, as the attorneys who would have directly dealt with Special Counsel and supervised and directed them, both personally participated in and were aware of the scheme to collusively settle the LADWP litigation. In fact, Peters has admitted that he came up with the idea of drafting a Jones v. PwC complaint in late 2014 or early 2015. Clark has also testified that he participated in meetings where the Jones v. PwC draft complaint was discussed. Moreover, he has testified that he was aware that Paradis represented

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

Jones.  Further, Clark has testified that he was aware that Paradis at a minimum provided Landskroner with copies of the other pending LADWP class actions. Furthermore, Clark has testified that he was personally aware that once there was a conflict between Jones and The City, Paradis specifically recommended Landskroner as the attorney to sue The City.  He has also testified that he understood Landskroner's involvement would be to The City's advantage because he was "seen as a more reasonable ... person to deal with" over other plaintiff's attorneys involved in other LADWP actions.  According to Clark, these other attorneys were considered "intransigent" and might not do what LADWP wanted.  Clark has testified that he never considered whether it was ethical for Paradis to recommend the attorney to sue The City.

83.   Furthermore, on information and belief, Feuer, as the individual who Clark directly reported to, was aware of and ratified decisions made by Special Counsel.  Among other things, Clark has testified that he would have shown Feuer the Jones v. PwC draft complaint.  In addition, as City Attorney, Feuer's approval would have been necessary during the settlement of the *Jones* class action. Therefore, among other things, Feuer would have known that Special Counsel were listed on the Jones v. PwC draft complaint as counsel for Jones, but ultimately defended The City in a lawsuit brought by Jones.  Therefore, when Feuer was involved in the settlement, he was aware of the improprieties that occurred, but nevertheless pressed forward with supporting the settlement of a case where improprieties that were obvious to anyone were present.

## III.  Defendants' Collusion Is Revealed.

84.   While *Jones* was proceeding, The City was engaged in a parallel lawsuit against PwC.  In the course of discovery, PwC's counsel noticed that a document identified as "Jones v. PwC–Initial Complaint–FINAL.DOC" was identified on a LADWP privilege log.  PwC then moved to compel production of that document,

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

and in doing so began a months-long saga culminating in 2019 with the public disclosure of the collusive nature of Defendants' settlement of *Jones*.  Although the full scope of the fraud on the court and the ratepayers is as yet unknown, as is the identities of all those involved, it is apparent that each Defendant has engaged in severe wrongdoing.

## IV.  **The Class Representative.**

85.    Plaintiff Dennis Bradshaw is the renter of a house in The City of Los Angeles and is an LADWP ratepayer who was a member of the *Jones* class and did not opt out of the *Jones* class action settlement.  Bradshaw received a credit to his December 2017 bill as part of the Jones *settlement*.  Like other class members in *Jones*, Bradshaw reasonably relied on the statements contained in the notice he received stating that Judge Berle had preliminarily approved of the settlement, that class counsel fairly and adequately protected class members, and that the settlement was superior to all other available methods for fairly and efficiently resolving the dispute with LADWP.  In addition, he was unaware that The City, acting through Special Counsel, had actually selected the class counsel in *Jones* and reasonably expected that Class Counsel Defendants would represent the interests of the class and had actually litigated the case, rather than quickly reaching a collusive settlement with The City.  Furthermore, like other class members, Plaintiff reasonably relied on Judge Berle's evaluation that the settlement was fair and reasonable.  Because of Defendants' actions, Plaintiff did not object or otherwise opt out of the settlement or take other action.

## CLASS ACTION ALLEGATIONS

86.    Plaintiff brings this action on his own behalf, and as a class action on behalf of the Class defined herein, pursuant to, and properly maintainable under Fed. R. Civ. P. 23(a) and Fed. R. Civ. P. 23(b)(3).  The Class is also maintainable as a

22

class for declaratory and injunctive relief under Fed. R. Civ. P. 23(b)(2).  The Class consists of hundreds of thousands of LADWP Settlement Class members victimized by Defendants' collusive and fraudulent settlement of <u>Jones v. City of Los Angeles</u>, Los Angeles County Superior Court Case No. BC577267.   Specifically, Plaintiff brings this suit on behalf of the following Class:

> The "**LADWP SETTLEMENT CLASS**":  All persons who were members of the Settlement Class in <u>Jones v. City of Los Angeles</u>, Los Angeles County Superior Court Case No. BC577267.  The class excludes all persons who timely exercised their right to opt out of the Settlement Class in <u>Jones v. City of Los Angeles</u> as well as all named plaintiffs and defendants in cases that were related to <u>Jones</u> under California Rules of Court, Rule 3.300.  The class also excludes counsel representing the class and all persons employed by said counsel, governmental entities, City of Los Angeles, Michael Feuer, James Clark, Thomas Peters, The Landskroner Law Firm, LTD., Jack Landskroner, Law Offices Of Michael J Libman APC, and Michael J. Libman, any entity in which Defendants City of Los Angeles, Michael Feuer, James Clark, Thomas Peters, The Landskroner Law Firm, LTD., Jack Landskroner, Law Offices Of Michael J Libman APC, and Michael J. Libman have a controlling interest, Defendants City of Los Angeles, The Landskroner Law Firm, LTD., and Law Offices Of Michael J Libman APC,   officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns, any judicial officer presiding over this matter, the members of their immediate families and judicial staff, and any individual whose interests are antagonistic to other class members.

> The "LADWP Settlement Class" shall contain the following subclass:
> The "**RESIDENTIAL CUSTOMER SUBCLASS**":  All persons who are residential LADWP customers and members of the "LADWP Settlement Class."

87.   Plaintiff  shall  serve  as  class  representative  of  both  the  LADWP Settlement Class and the Residential Customer Subclass.

88.   Defendants subjected Plaintiff and the Class to the same wrongdoing and harmed them in the same manner. Now, Plaintiff and the Class seek to enforce the same rights and remedies pursuant to the same legal theories: violation of 42 U.S.C.

§ 1983, unjust enrichment, breach of fiduciary duty, professional malpractice, affirmative misrepresentation, negligent misrepresentation, fraudulent concealment, violation of the Consumer Legal Remedies Act, violation of the Unfair Competition Law, declaratory judgment, and violation of the Racketeer Influenced and Corrupt Organizations Act.

89.   <u>Numerosity</u>: The proposed class and subclass are so numerous that individual joinder of all their members is impracticable. While the exact number and identities of the Class Members are unknown at this time, such information can be ascertained through appropriate investigation and discovery. It is estimated that both the "LADWP Settlement Class" and "Residential Customer Subclass" consist of hundreds of thousands of members. The disposition of the claims of these Class Members in a single class action will provide substantial benefits to all parties and to the Court.

90.   <u>Typicality</u>: Plaintiff's claims are typical of the claims of his respective Class in that his claims arise from the same event or practice or course of conduct that gives rise to the claims of other class members and is based on the same legal theory as their claims.

91.   <u>Adequacy of Representation</u>: Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has further retained the undersigned counsel, who have substantial experience in prosecuting complex lawsuits and class action litigation. Plaintiff and undersigned counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so. Neither Plaintiff nor his counsel have any interests adverse to the Class.

92.   <u>Superiority of Class Action and Impracticability of Individual Actions</u>: Plaintiff and the members of the Class suffered harm as a result of Defendants' unlawful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Individual joinder of all members of

24

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

the Class is impractical. Even if individual Class Members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by the Defendants' common course of conduct. The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and equitable handling of all Class Members' claims in a single forum. The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the Class Members. Adjudication of individual Class Members' claims with respect to Defendants would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication and could substantially impair or impede the ability of other Class Members to protect their interests.

93. <u>Common Questions of Law and Fact Predominate</u>: In addition, the requirements of Federal Rule of Civil Procedure 23 are satisfied by questions of law and fact common to the claims of Plaintiff and of each member of the LADWP Settlement Class and Residential Customer Subclass and which predominate over any question of law or fact affecting only individual members of the LADWP Settlement Class and Residential Customer Subclass. Common questions of law and fact include, but are not limited to, the following:

1. Did Special Counsel recruit Class Counsel Defendants to be class counsel in the *Jones* class action?

2. Did Class Counsel Defendants misrepresent their relationship with The City in the Jones class action to Judge Berle?

3. Did Class Counsel Defendants omit material information about their relationship to The City in the Jones Class action to Jones Class members?

PLAINTIFFS' COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

4. Did the LA Defendants supervise, direct, and/or ratify the conduct of Special Counsel in recruiting Class Counsel Defendants?

5. Did the LA Defendants violate the 14th Amendment Rights of members of the LADWP Settlement Class?

6. Did the LA Defendants violate 42 U.S.C. § 1983?

7. Did Class Counsel Defendants violate the California Rules of Professional Conduct?

8. Did Class Counsel Defendants unjustly enrich themselves at the expense of the LADWP Settlement Class?

9. Does the severe ethical misconduct by Class Counsel Defendants require disgorgement by them of all attorneys' fees and costs received in the Jones class action?

10. Do Class Counsel Defendants, as class counsel in the Jones class action, owe fiduciary duties to the LADWP Settlement Class?

11. Did Class Counsel Defendants breach the fiduciary duties they owed to the LADWP Settlement Class?

12. Did The City aid and abet the breach of fiduciary duty by the Class Counsel Defendants owed to the LADWP Settlement Class?

13. Did Class Counsel Defendants owe a duty of reasonable care to Plaintiff and the LADWP Settlement Class in Jones?

14. Did Class Counsel Defendants commit professional malpractice with regards to their representation of the LADWP Settlement Class in Jones?

15. Did The City aid and abet professional malpractice by the Class Counsel Defendants as against the LADWP Settlement Class?

16. Did Class Counsel Defendants make affirmative misrepresentations to Plaintiff and the Class?

PLAINTIFFS' COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

17. Did Class Counsel Defendants make misrepresentations to Plaintiff and the Class?

18. Did Class Counsel Defendants fraudulently conceal material facts from Plaintiff and the Class?

19. Did The City aid and abet the fraudulent concealment by the Class Counsel Defendants towards the Plaintiff and the Class?

20. Are Plaintiff and the Residential Customer Subclass consumers within the meaning of Civ. Code, § 1761(d)?

21. Are Class Counsel Defendants persons within the meaning of Civ. Code, § 1761(c)?

22. Did Class Counsel Defendants provide services to Plaintiff and the Residential Customer Subclass within the meaning of Civ. Code, § 1761(b)?

23. Did Class Counsel Defendants misrepresent the source, sponsorship, approval, or certification of legal services by misrepresenting and/or concealing from Plaintiff and the Residential Customer Subclass as well as Judge Berle that they did not in fact represent the interests of ratepayers in Jones, when they instead were plotting with Special Counsel and The City to reach a collusive class action settlement?

24. Did Class Counsel Defendants misrepresent their affiliation, connection, or association with another by misrepresenting and/or concealing from Plaintiff and the Class as well as Judge Berle that they did not in fact represent the interests of the ratepayer in Jones, when they instead were plotting with Special Counsel and The City to reach a collusive class action settlement?

25. Did Class Counsel Defendants represent that their legal services have sponsorship, approval, characteristics, ingredients, uses or benefits that they did not have, or that they had a sponsorship, approval, status,

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

affiliation or connection that they do not have, by misrepresenting and/or concealing from Plaintiff and the Class as well as Judge Berle that they did not in fact represent the interests of ratepayers in Jones, when they instead were plotting with Special Counsel and The City to reach a collusive class action settlement?

26. Did Class Counsel Defendants represent that their legal services are of a particular standard, quality, or grade, or that they are of a particular style or model, when they were in fact of another by misrepresenting and/or concealing from Plaintiff and the Class as well as Judge Berle that they did not in fact represent the interests of ratepayers in Jones, but that they were instead plotting with Special Counsel and The City to reach a collusive class action settlement?

27. Did Class Counsel Defendants violate the Consumer Legal Remedies Act?

28. Did Class Counsel Defendants violate the Unfair Competition Law?

29. Did Defendants engage in mail fraud?

30. Did Defendants engage in wire fraud?

31. Did Defendants violate the Racketeer Influenced and Corrupt Organizations Act?

32. Are Plaintiff and the Class entitled to compensatory damages?

33. Are plaintiff and the Class entitled to punitive damages?

34. Are Plaintiff and the Class entitled to an award of attorneys' fees?

94.    Notice: Notice can be provided via internet publication, published notice and/or through mail and paid for by the Defendants.

//

//

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California  91030
213.599.3380 phone • 213.599.3370 fax

**FIRST CLAIM FOR RELIEF**

**VIOLATION OF 42 U.S.C. § 1983**

**(By All Plaintiffs Against the LA Defendants)**

95.    The allegations of paragraphs 1 through 94 are re-alleged and incorporated herein by reference, and Plaintiff alleges as follows a cause of action on behalf of himself and the class of similarly situated LADWP Settlement Class members.

96.    LA Defendants acted under color of law.

97.    The acts of LA Defendants deprived Plaintiff and the Class of their rights under the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

98.    Specifically, LA Defendants directed, supervised, and/or ratified the conduct of Special Counsel and together with Special Counsel, conspired to and in fact did deprive Plaintiff and the Class of their due process rights in the *Jones* class action.

99.    LA Defendants disregarded every norm of the American common law adversarial legal system by selecting the attorneys who would represent the opposing party in the LADWP rate litigation.  In so doing, they prevented Plaintiff and the Class from being represented by counsel who would represent their interests and deprived them of meaningful access to the courts.

100.  As a result of LA Defendants' conduct, Class Counsel Defendants, together with Special Counsel, negotiated a collusive settlement that was approved by Judge Berle, who was unaware of the collusion.

101.  Plaintiff and the Class, who were also unaware of the true nature of the settlement, had no reason to object or exclude themselves from the *Jones* class and thus lost their ability to obtain fair and adequate compensation for their claims.

//

PLAINTIFFS' COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California  91030
213.599.3380 phone • 213.599.3370 fax

102.  Had the truth come to light, Judge Berle would not have and could not have approved of the *Jones* settlement, and any class action settlement would have been entered into by adequate class counsel, would have been made at arm's length, and would have reflected the full value of the case.

103.  As a result of LA Defendants' conduct, Plaintiff and the Class have suffered damages.

104.  In addition, because LA Defendants acted with evil motive or intent and/or reckless or callous indifference to the constitutional rights of the *Jones* class members, Plaintiff and the Class are entitled to punitive damages in an amount according to proof at trial.

105.  Plaintiff also seeks an injunction prohibiting The City from directly or indirectly selecting the counsel that would bring lawsuits against it.

## SECOND CLAIM FOR RELIEF
## UNJUST ENRICHMENT
### (By All Plaintiffs Against Class Counsel Defendants)

106.  The allegations of paragraphs 1 through 105 are re-alleged and incorporated herein by reference, and Plaintiff alleges as follows a cause of action on behalf of himself and the class of similarly situated LADWP Settlement Class members.

107.  Class Counsel Defendants received a benefit in the form of attorneys' fees from the settlement of the *Jones* class action.

108.  Because of the severe ethical violations by Class Counsel Defendants, they have forfeited their right to any of the attorneys' fees awarded in *Jones*, whether already collected or otherwise.

109.  These ethical duties include, but are not limited to, California Rules of Professional Conduct Rule 3-310's restrictions on the representation of adverse interests.  Class Counsel Defendants failed to disclose to Plaintiff and the Class and

30

to Judge Berle that they had a relationship with Special Counsel and were in fact selected by them to be class counsel in the LADWP class action.  Moreover, they failed to disclose that they were engaged in simultaneous representation of both The City and the ratepayer's interests in *Jones*.

110.  In pursuing the interests of The City and their own interests in making a quick profit, and by putting those interests ahead of their clients' interests and reaching a quick and collusive settlement with The City, Class Counsel Defendants also violated their fiduciary duty of loyalty that all attorneys owe to their clients.

111.  Through false representations and material omissions to the Court regarding, among other things, their independence, that they had reached a settlement in *Jones* through arm's length negotiations, and the amount of hours they had spent working on the case, Class Counsel Defendants also violated California Rules of Professional Conduct Rule 5-200's requirement that attorneys employ "such means only as are consistent with truth" and the prohibition that they may not "seek to mislead the judge ... by an artifice or false statement of fact."  For the same reasons, Class Counsel Defendants violated Business and Professions Code section 6068(d)'s requirement that an attorney "employ, for the purpose of maintaining the causes confided to him or her those means only as are consistent with truth, and never to seek to mislead the judge or any judicial officer by an artifice or false statement of fact or law."

112.  It would be unjust for Class Counsel Defendants to retain the money taken out of the commission of Plaintiff and the Class.

113.  In addition, Class Counsel Defendants' conduct was a substantial factor in causing Plaintiff and the Class injury and Plaintiffs and the Class are therefore entitled to damages.

114.  In addition, a constructive trust must be imposed on the *Jones* attorneys' fees and any other revenue generated as a result of Class Counsel Defendants' participation in *Jones*.

31

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

115. Class Counsel Defendants acted in conscious disregard for the rights of others and put their own interests ahead of the interests of Plaintiff and the Class when representing the class in *Jones*, which constitutes malice.

116. Class Counsel Defendants engaged in despicable conduct that subjected Plaintiff and the Class to cruel and unjust hardship in conscious disregard of their rights, which constitutes Oppression.

117. Class Counsel Defendants intentionally misrepresented and/or concealed material information regarding their relationship with The City, their adequacy as class counsel, and that they were actually representing The City's interests.  These misrepresentations and concealment were directed to Plaintiff and the Class as well as to Judge Berle, which constitutes fraud.

118. Therefore, Class Counsel Defendants, and each of them, acted with oppression, fraud, and/or malice and Plaintiff and the Class are therefore entitled to punitive damages in an amount according to proof at trial.

### THIRD CLAIM FOR RELIEF
### BREACH OF FIDUCIARY DUTY
### (By All Plaintiffs Against Class Counsel Defendants)

119. The allegations of paragraphs 1 through 118 are re-alleged and incorporated herein by reference, and Plaintiff alleges, as follows, a cause of action on behalf of himself and the class of similarly situated LADWP Settlement Class members.

120.  Class Counsel Defendants owed Plaintiff and the Class a fiduciary duty because they were in "attorney-client" relationships with Plaintiff and the Class. Their fiduciary duty included to follow the California Rules of Professional Conduct and other authorities regulating attorney behavior.

//

PLAINTIFFS' COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

121. These ethical duties include, but are not limited to, California Rules of Professional Conduct Rule 3-310's restrictions on the representation of adverse interests. Class Counsel Defendants failed to disclose to Plaintiff and the Class and to Judge Berle that they had a relationship with Special Counsel and were in fact selected by them to be class counsel in the LADWP class action. Moreover, they failed to disclose that they were engaged in simultaneous representation of both The City and the ratepayers in *Jones*.

122. In pursuing the interests of The City and their own interests in making a quick profit, and by putting those interests ahead of their clients' interests and reaching a quick and collusive settlement with The City, Class Counsel Defendants also violated their fiduciary duty of loyalty that all attorneys owe to their clients.

123. Through false representations and material omissions to the Court regarding, among other things, their independence, that they had reached a settlement in *Jones* through arm's length negotiations, and the amount of hours they had spent working on the case, Class Counsel Defendants also violated California Rules of Professional Conduct Rule 5-200's requirement that attorneys employ "such means only as are consistent with truth" and the prohibition that they may not "seek to mislead the judge ... by an artifice or false statement of fact." For the same reasons, Class Counsel Defendants violated Business and Professions Code section 6068(d)'s requirement that an attorney "employ, for the purpose of maintaining the causes confided to him or her those means only as are consistent with truth, and never to seek to mislead the judge or any judicial officer by an artifice or false statement of fact or law."

124. Class Counsel Defendants' conduct was a substantial factor in causing Plaintiffs and the Class injury and Plaintiffs and the Class are therefore entitled to damages.

//

PLAINTIFFS' COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

125.  In addition, a constructive trust must be imposed on the *Jones* attorneys' fees and any other revenue generated as a result of Class Counsel Defendants' participation in *Jones*.

126. Class Counsel Defendants acted in conscious disregard for the rights of others and put their own interests ahead of the interests of Plaintiff and the Class when representing the class in *Jones*, which constitutes malice.

127. Class Counsel Defendants engaged in despicable conduct that subjected Plaintiff and the Class to cruel and unjust hardship in conscious disregard of their rights, which constitutes Oppression.

128. Class Counsel Defendants intentionally misrepresented and/or concealed material information regarding their relationship with The City, their adequacy as class counsel, and that they were actually representing The City's interests.  These misrepresentations and concealment were directed to Plaintiff and the Class as well as to Judge Berle, which constitutes fraud.

129. Therefore, Class Counsel Defendants, and each of them, acted with oppression, fraud, and/or malice and Plaintiff and the Class are therefore entitled to punitive damages in an amount according to proof at trial.

## FOURTH CLAIM FOR RELIEF
## PROFESSIONAL MALPRACTICE
### (By All Plaintiffs Against Class Counsel Defendants)

130. The allegations of paragraphs 1 through 129 are re-alleged and incorporated herein by reference, and Plaintiff alleges as follows a cause of action on behalf of himself and the class of similarly situated LADWP Settlement Class members.

131. Class Counsel Defendants were in attorney-client relationships with Plaintiff and the Class.

//

34

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

132.   Accordingly, Class Counsel Defendants owed Plaintiff and the Class the duty of all attorneys to use such skill, prudence, and diligence as members of their profession commonly possess and exercise.

133.   In addition, Class Counsel Defendants are required to comply with their ethical duties as attorneys.  These ethical duties include, but are not limited to, California Rules of Professional Conduct Rule 3-310's restrictions on the representation of adverse interests.  Class Counsel Defendants failed to disclose to Plaintiff and the Class and to Judge Berle that they had a relationship with Special Counsel and were in fact selected by them to be class counsel in the LADWP class action.  Moreover, they failed to disclose that they were engaged in simultaneous representation of both The City and the ratepayers in *Jones*.

134.   Class Counsel Defendants also violated their fiduciary duty of loyalty that all attorneys owe to their clients. They did so by reaching a quick and collusive settlement with The City and pursuing the interests of The City and their own interests in making a quick profit rather than pursuing the interests of Plaintiff and the Class.

135.   Through false representations and material omissions to the Court regarding, among other things, their independence, that they had reached a settlement in *Jones* through arm's length negotiations, and the amount of hours they had spent working on the case, Class Counsel Defendants also violated California Rules of Professional Conduct Rule 5-200's requirement that attorneys employ "such means only as are consistent with truth" and the prohibition that they may not "seek to mislead the judge ... by an artifice or false statement of fact."  For the same reasons, Class Counsel Defendants violated Business and Professions Code section 6068(d)'s requirement that an attorney "employ, for the purpose of maintaining the causes confided to him or her those means only as are consistent with truth, and never to seek to mislead the judge or any judicial officer by an artifice or false statement of fact or law."

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

1    136. Class Counsel Defendants' conduct was a substantial factor in causing
2    Plaintiffs and the Class injury and Plaintiffs and the Class are therefore entitled to
3    damages.

4    137. In addition, a constructive trust must be imposed on the *Jones* attorneys'
5    fees and any other revenue generated as a result of Class Counsel Defendants'
6    participation in *Jones*.

7    138. Class Counsel Defendants acted in conscious disregard for the rights of
8    others and put their own interests ahead of the interests of Plaintiff and the Class
9    when representing the class in *Jones*, which constitutes malice.

10   139. Class Counsel Defendants engaged in despicable conduct that subjected
11   Plaintiff and the Class to cruel and unjust hardship in conscious disregard of their
12   rights, which constitutes Oppression.

13   140. Class Counsel Defendants intentionally misrepresented and/or concealed
14   material information regarding their relationship with The City, their adequacy as
15   class counsel, and that they were actually representing The City's interests.  These
16   misrepresentations and concealment were directed to Plaintiff and the Class as well
17   as to Judge Berle, which constitutes fraud.

18   141. Therefore, Class Counsel Defendants, and each of them, acted with
19   oppression, fraud, and/or malice and Plaintiff and the Class are therefore entitled to
20   punitive damages in an amount according to proof at trial.

21

22                       **FIFTH CLAIM FOR RELIEF**
23              **AFFIRMATIVE MISREPRESENTATION**
24        **(By All Plaintiffs Against Class Counsel Defendants)**

25   142. The allegations of paragraphs 1 through 141 are re-alleged and
26   incorporated herein by reference, and Plaintiff alleges as follows a cause of action
27   on behalf of himself and the class of similarly situated LADWP Settlement Class
28   members.

36

143. Class Counsel Defendants represented to Plaintiff and the Class as well as to the Court that they would represent the interests of the *Jones* class members and had entered into a fair settlement with The City.  They made these representations by, among other methods, in-court filings and orally in *Jones* to Judge Berle.  This included the draft notice they prepared, which formed the basis for the notice that Judge Berle ordered to be sent out to members of the *Jones* class.

144. Class Counsel Defendants' representations were false.  In fact, Class Counsel Defendants had been selected as class counsel by and were colluding with The City to settle the LADWP claims and were acting in violation of the California Rules of Professional Conduct and other regulations that govern the legal profession.

145. Class Counsel Defendants either knew that their representations were false when they made them or made the representations recklessly and without regard for their truth.

146. Class Counsel Defendants intended that Plaintiff and the Class rely on the representations.

147. Plaintiffs and the Class reasonably relied on Class Counsel Defendants' representations.

148. Class counsel Defendants' conduct was a substantial factor in causing Plaintiff and the Class injury and Plaintiff and the Class are therefore entitled to damages.

149. Class Counsel Defendants acted in conscious disregard for the rights of others and put their own interests ahead of the interests of Plaintiff and the Class when representing the class in *Jones*, which constitutes malice.

150. Class Counsel Defendants engaged in despicable conduct that subjected Plaintiff and the Class to cruel and unjust hardship in conscious disregard of their rights, which constitutes Oppression.

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

PLAINTIFFS' COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

151. Class Counsel Defendants intentionally misrepresented and/or concealed material information regarding their relationship with The City, their adequacy as class counsel, and that they were actually representing The City's interests.  These misrepresentations and concealment were directed to Plaintiff and the Class as well as to Judge Berle, which constitutes fraud.

152. Therefore, Class Counsel Defendants, and each of them, acted with oppression, fraud, and/or malice and Plaintiff and the Class are therefore entitled to punitive damages in an amount according to proof at trial.

## SIXTH CLAIM FOR RELIEF
## NEGLIGENT MISREPRESENTATION
### (By All Plaintiffs Against Class Counsel Defendants)

153. The allegations of paragraphs 1 through 152 are re-alleged and incorporated herein by reference, and Plaintiff alleges as follows a cause of action on behalf of himself and the class of similarly situated LADWP Settlement Class members.

154. Class Counsel Defendants represented to Plaintiff and the Class as well as to the Court that they would represent the interests of the *Jones* class members and had entered into a fair settlement with The City.  They made these representations by, among other methods, in-court filings and orally in *Jones* to Judge Berle.  This included the draft notice they prepared, which formed the basis for the notice that Judge Berle ordered to be sent out to members of the *Jones* class.

155. Class Counsel Defendants' representations were false.  In fact, Class Counsel Defendants had been selected as class counsel by and were colluding with The City to settle the LADWP claims and were acting in violation of the California Rules of Professional Conduct and other regulations that govern the legal profession.

//

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

156.  Regardless of whether Class Counsel Defendants honestly believed that the representations were true, Class Counsel Defendants had no reasonable grounds for believing the representations were true when they made them.

157.  Class Counsel Defendants intended that Plaintiff and the Class rely on these representations.

158.  Plaintiff and the Class reasonably relied on Class counsel Defendants' representations.

159.  Class Counsel Defendants' conduct was a substantial factor in causing Plaintiff and the Class injury and Plaintiff and the Class are therefore entitled to damages.

160. Class Counsel Defendants acted in conscious disregard for the rights of others and put their own interests ahead of the interests of Plaintiff and the Class when representing the class in *Jones*, which constitutes malice.

161. Class Counsel Defendants engaged in despicable conduct that subjected Plaintiff and the Class to cruel and unjust hardship in conscious disregard of their rights, which constitutes Oppression.

162. Class Counsel Defendants intentionally misrepresented and/or concealed material information regarding their relationship with The City, their adequacy as class counsel, and that they were actually representing The City's interests.  These misrepresentations and concealment were directed to Plaintiff and the Class as well as to Judge Berle, which constitutes fraud.

163. Therefore, Class Counsel Defendants, and each of them, acted with oppression, fraud, and/or malice and Plaintiff and the Class are therefore entitled to punitive damages in an amount according to proof at trial.

//
//

PLAINTIFFS' COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

## SEVENTH CLAIM FOR RELIEF

## FRAUDULENT CONCEALMENT

### (By All Plaintiffs Against Class Counsel Defendants)

164. The allegations of paragraphs 1 through 163 are re-alleged and incorporated herein by reference, and Plaintiff alleges as follows a cause of action on behalf of himself and the class of similarly situated LADWP Settlement Class members.

165. Plaintiff and the Class were in fiduciary and attorney-client relationships with Class Counsel Defendants.

166. Moreover, Class Counsel Defendants intentionally failed to disclose certain facts that were known only to them, namely that Class Counsel Defendants had been handpicked by the City and its Special Counsel to bring a class action against it and then quickly and collusively settle the class action for less than the claims' true value.

167. Plaintiff and the Class did not know that Class Counsel Defendants had been handpicked by the City and its Special Counsel to bring a class action against it or that they intended to quickly and collusively settle the class action for less than the claims' true value.

168. Class Counsel Defendants intended to deceive Plaintiff and the Class by concealing the facts.

169. Had the omitted information been disclosed, Plaintiff and the Class reasonably would have behaved differently.

170. Class Counsel Defendants' conduct was a substantial factor in causing Plaintiff and the Class injury and Plaintiffs and the Class are therefore entitled to damages.

171. Class Counsel Defendants acted in conscious disregard for the rights of others and put their own interests ahead of the interests of Plaintiff and the Class when representing the class in *Jones*, which constitutes malice.

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

172. Class Counsel Defendants engaged in despicable conduct that subjected Plaintiff and the Class to cruel and unjust hardship in conscious disregard of their rights, which constitutes Oppression.

173. Class Counsel Defendants intentionally misrepresented and/or concealed material information regarding their relationship with The City, their adequacy as class counsel, and that they were actually representing The City's interests.  These misrepresentations and concealment were directed to Plaintiff and the Class as well as to Judge Berle, which constitutes fraud.

174. Therefore, Class Counsel Defendants, and each of them, acted with oppression, fraud, and/or malice and Plaintiff and the Class are therefore entitled to punitive damages in an amount according to proof at trial.

## EIGHTH CLAIM FOR RELIEF
## VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT, CALIFORNIA CIVIL CODE § 1750 *ET SEQ.*
### (By the Residential Customer Subclass Against Class Counsel Defendants)

175. The allegations of paragraphs 1 through 174 are re-alleged and incorporated herein by reference, and Plaintiff alleges as follows a cause of action on behalf of himself and the class of similarly situated LADWP Settlement Class members.

176. Plaintiff and the Class are consumers within the meaning of Civ. Code, § 1761(d).

177. Class Counsel Defendants are persons within the meaning of Civ. Code, § 1761(c).

178. Class Counsel Defendants provide legal services, which constitutes a service within the meaning of Civ. Code, § 1761(b).

179. Class Counsel Defendants' conduct violated Civ. Code, § 1770(a) for at least the following reasons:

PLAINTIFFS' COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California  91030
213.599.3380 phone • 213.599.3370 fax

180. Class Counsel Defendants misrepresented the source, sponsorship, approval, or certification of legal services by misrepresenting and/or concealing from Plaintiff and the Class as well as Judge Berle that they did not in fact represent the interests of ratepayers in *Jones*, but instead were plotting with Special Counsel and The City to reach a collusive class action settlement.

181. Class Counsel Defendants misrepresented their affiliation, connection, or association with another by misrepresenting and/or concealing from Plaintiff and the Class as well as Judge Berle that they did not in fact represent the interests of the ratepayers in *Jones*, but instead were plotting with Special Counsel and The City to reach a collusive class action settlement.

182. Class Counsel Defendants represented that their legal services have sponsorship, approval, characteristics, ingredients, uses or benefits that they did not have, or that they had a sponsorship, approval, status, affiliation or connection that they do not have, by misrepresenting and/or concealing from Plaintiff and the Class as well as Judge Berle that they did not in fact represent the interests of ratepayers in *Jones*, but instead were plotting with Special Counsel and The City to reach a collusive class action settlement.

183. Class Counsel Defendants represented that their legal services are of a particular standard, quality, or grade, or of a particular style or model, when they were in fact of another by misrepresenting and/or concealing from Plaintiff and the Class as well as Judge Berle that they did not in fact represent the interests of ratepayers in *Jones*, but instead were plotting with Special Counsel and The City to reach a collusive class action settlement.

184. As a direct and proximate result of the aforesaid conduct of Class Counsel Defendants, and each of them, Plaintiff and the Class have been damaged.

185. By reason of the foregoing, Plaintiff and the Class have been irreparably harmed entitling them to injunctive relief, disgorgement and restitution.

PLAINTIFFS' COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

186. Pursuant to §1782 of the CLRA, Plaintiff notified Class Counsel Defendants in writing of the particular violations of §1770 of the CLRA and demanded Class Counsel Defendants rectify the actions described above by providing complete monetary relief, agreeing to be bound by their legal obligations and to give notice to all affected customers of their intent to do so. Plaintiff sent this notice by certified mail, return receipt requested, to Class Counsel Defendants' principal place of business.

187. If Class Counsel Defendants fail to adequately respond to Plaintiff's demand within 30 days of the letter pursuant to §1782 of the CLRA, Plaintiff will amend this claim to add additional claims for relief, including claims for compensatory and exemplary damages. Plaintiff and the Class are already entitled to the relief set forth above, along with costs, attorneys' fees and any other relief which the Court deems proper.

## NINTH CLAIM FOR RELIEF
## VIOLATION OF THE UNFAIR COMPETITION LAW, CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200 *ET SEQ.*
### (By All Plaintiffs Against Class Counsel Defendants)

188. The allegations of paragraphs 1 through 187 are re-alleged and incorporated herein by reference, and Plaintiff alleges as follows a cause of action on behalf of himself and the class of similarly situated LADWP Settlement Class members.

189. Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." Class Counsel Defendants engaged in conduct that violated each of the statute's three prongs.

//

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

190. As outlined above in the claims for relief above, Class Counsel Defendants violated the unlawful prong through their violations of the CLRA, their violations of rules 3-310 and 5-200 of the California Rules of Professional Conduct, among others, and their violation of Business and Professions Code section 6068(d).

191. Class Counsel Defendants violated the unfair prong because Class Counsel Defendants' practices of purporting to serve as adequate class counsel in *Jones* while concealing from Plaintiff and the Class as well as Judge Berle that they did not in fact represent the interests of ratepayers in *Jones*, but instead were plotting with Special Counsel and The City to reach a collusive class action settlement, offend an established public policy, are immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers.  The utility of Class Counsel Defendants' conduct is greatly outweighed by the substantial harm to Plaintiff and the Class and Plaintiff and the Class could not have avoided the harm themselves.

192. Class Counsel Defendants violated the fraudulent prong through their acts and practices as described above, including by misrepresenting and/or concealing material information regarding their relationship with The City, their adequacy as class counsel, and that they were actually representing The City's interests. This information was misrepresented to and/or concealed from Plaintiff and the Class as well as Judge Berle.  Plaintiff and the Class could not have learned this information from anyone else and Class Counsel Defendants as attorneys purportedly representing the interests of Plaintiff and the Class owed them a duty to not conceal this information from them.

193. Class Counsel Defendants' representations and omissions were likely to deceive consumers, including Plaintiff and the Class.  Moreover, Class Counsel Defendants' representations and omissions were material to the reasonable consumer, including Plaintiff and the Class.

//

PLAINTIFFS' COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

1   194.  Plaintiff and the Class reasonably relied on Class Counsel Defendants'

2   representations.

3   195.  Class Counsel Defendants' conduct was a substantial factor in causing

4   Plaintiff and the Class injury and Plaintiffs and the Class are therefore entitled to

5   damages.

6

7   **TENTH CLAIM FOR RELIEF**

8   **DECLARATORY JUDGMENT**

9   **(By All Plaintiffs Against Class Counsel Defendants)**

10   196.  The allegations of paragraphs 1 through 195 are re-alleged and

11   incorporated herein by reference, and Plaintiff alleges as follows a cause of action

12   on behalf of himself and the class of similarly situated LADWP Settlement Class

13   members.

14   197.  An actual controversy has arisen and now exists between Plaintiff and

15   the Class and Class Counsel Defendants as set forth above, for which Plaintiffs

16   desire a declaration or rights.

17   198.  A declaratory judgment is necessary and proper in that Plaintiffs contend

18   that due to their severe ethical violations, Class Counsel Defendants must forfeit the

19   attorneys' fees and costs they have collected in *Jones*, resulting in the creation of a

20   constructive trust for the benefit of Plaintiff and the Class.  On information and

21   belief, Class Counsel Defendants will argue that they are entitled to retain the

22   attorneys' fees and costs they have collected.

23

24

25

26

27   //

28   //

PLAINTIFFS' COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California  91030
213.599.3380 phone • 213.599.3370 fax

## ELEVENTH CLAIM FOR RELIEF

## RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT § 18 U.S.C. § 1961 *ET SEQ.*

### (By All Plaintiffs Against All Defendants)

199.  The allegations of paragraphs 1 through 198 are re-alleged and incorporated herein by reference, and Plaintiff alleges as follows a cause of action on behalf of himself and the class of similarly situated LADWP Settlement Class members.

200.  Defendants are "persons" under 18 U.S.C. § 1961(3) because they are capable of holding, and do hold, "a legal or beneficial interest in property."

201.  Section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."

202.  Section 1962(d) makes it unlawful for "any person to conspire to violate" Section 1962(c), among other provisions.

203.  At all relevant times, Defendants, along with other individuals and entities, including unknown third parties, operated an association-in-fact enterprise, which was formed for the purpose of allowing The City to minimize its liability in LADWP ratepayer litigation while simultaneously enriching Special Counsel and Class Counsel Defendants within the meaning of 18 U.S.C. § 1961(4). Alternatively, The City, The Landskroner Law Firm, and Law Offices of Michael J Libman APC are each legal enterprises within the meaning of 18 U.S.C. § 1961(4), through which Defendants conducted their pattern of racketeering activity.  By entering into a collusive class action settlement, The City could settle the claims of ratepayers for less than it would as a result of an arm's length class action lawsuit. Special Counsel were able to use the *Jones* settlement as a vehicle to be awarded a $30 million contract on a no-bid basis.

46

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

204.  Class Counsel Defendants used the *Jones* settlement to obtain millions of dollars in attorneys' fees in in a class action settlement that was essentially prepackaged for them by The City.  The enterprises, alleged in this paragraph, are referred to collectively as the "LADWP RICO Enterprise."

205.  The LADWP RICO Enterprise began on January 1, 2015 at the latest and grew to encompass more members as it proceeded.  Defendants maintained throughout a pattern of racketeering activity and acquired and/or maintained, directly or indirectly, an interest in or control in the LADWP RICO Enterprise.  The LADWP RICO Enterprise was engaged in and affected interstate commerce because some of the members of the Enterprise were residing in other states, including Ohio.  In addition, the *Jones* litigation and its settlement, as a multimillion-dollar class action, impacted interstate commerce.

206.  In addition, Defendants, who were employed by or associated with the LADWP RICO Enterprise, engaged in and/or conducted activities that affected interstate commerce for the reasons sated above.  In doing so, Defendants, directly or indirectly, conducted or participated in the conduct of the LADWP RICO Enterprise through a pattern of racketeering activity.

207.  On information and belief, Defendants' pattern of racketeering activity included both mail and wire fraud under 18 U.S.C. § 1341 and 18 U.S.C. § 1343 respectively.  Specifically, Defendants devised and/or intended to devise a scheme or artifice to defraud.

208.  This scheme entailed a series of misrepresentations and/or concealment, as discussed above, to create the illusion that the *Jones* litigation was a legitimate class action lawsuit and that its subsequent settlement was made at arm's length.  It created the illusion that Class Counsel Defendants were representing the interests of Plaintiff and the Class.  In fact, Class Counsel Defendants had colluded with LA Defendants and Special Counsel from before the *Jones* lawsuit was even filed.  Judge Berle relied on the representations and omissions recounted above regarding

47

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

the adequacy of Class Counsel Defendants as Class counsel, that they were representing the interests of class members, rather than the City of LA, that they were not plotting with The City and Special Counsel, that the case settled as a result of an arm's length mediation, and that Class Counsel Defendants did in fact work the hours they claimed.  As a result of Judge Berle's reliance, he approved settlement of the *Jones* class action, and in so doing caused substantial economic damages to Plaintiff and the Class.

209.  Plaintiff and the Class relied on the statements contained in the notice he received stating that Judge Berle had preliminarily approved of the settlement, that class counsel fairly and adequately protected class members, and that the settlement was superior to all other available methods for fairly and efficiently resolving the dispute with LADWP.  They reasonably relied on Judge Berle's evaluation that the settlement was fair and reasonable.  Because of Defendants' actions, Plaintiff and the Class did not object or otherwise opt out of the settlement or take other action and in so doing, incurred substantial economic damages.

210. On information and belief, as a result of Class Counsel Defendants' collusive settlement, Plaintiff and the Class incurred damages from the *Jones* action settling for less than it would have in an arm's length settlement.

211. On information and belief, Defendants used the Postal Service and/or private or commercial interstate carriers such as FedEx as well as the wires (e.g. internet and phone) in interstate commerce in order to further and execute their fraudulent scheme on countless occasions.  This included, but was not limited to, mailing and FedExing to communicate among themselves, mailing and FedExing litigation documents to parties in the *Jones* lawsuit and related lawsuits, and mailing class notice to class members in *Jones*.

212. On information and belief, Defendants also used wires in interstate commerce in order to further and execute the fraudulent scheme.  In the course of litigating *Jones*, Defendants communicated through phone calls, emails, and faxes

among themselves and with other parties in the *Jones* lawsuit and related lawsuits. In addition, they emailed class notice to class members in *Jones*.  Furthermore, on information and belief, Defendants would have used the wires in the course of filing documents in the *Jones* action, including the documents where the misrepresentations and omissions were made that falsely implied that *Jones* was a legitimate class action.

//

//

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

49

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

Plaintiffs seek to recover the following damages and obtain the following relief from Defendants:

(a)   Economic loss and damages suffered by Plaintiff and the Class;

(b)   Restitution;

(c)   Creation of a constructive trust;

(d)   Punitive damages;

(e)   All reasonable and necessary attorneys' fees;

(f)   Court costs;

(g)   Pre and post-judgment interest;

(h)   A declaratory judgment as to Class Counsel Defendants' non-entitlement to attorneys' fees in *Jones*;

(i)   An injunction prohibiting The City from directly or indirectly selecting the counsel that would bring lawsuits against it;

(j)   And such other relief to which Plaintiffs may show themselves justly entitled.

DATED: July 31, 2019                    **THE X-LAW GROUP, P.C.**



By: _____
      FILIPPO MARCHINO, ESQ.,
      Attorneys for Plaintiff

//

//

PLAINTIFFS' COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED: July 31, 2019                    **THE X-LAW GROUP, P.C.**



By: _____
         FILIPPO MARCHINO, ESQ.,
         Attorneys for Plaintiff

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax