# EXHIBIT 19

Exhibit 19
Page 855

1              SUPERIOR COURT OF THE STATE OF CALIFORNIA

2                      COUNTY OF LOS ANGELES

3                    SPRING STREET COURTHOUSE

4    DEPARTMENT SSC6          HON. ELIHU M. BERLE, JUDGE

5

6    CITY OF LOS ANGELES,          )
                                   )
7                   PLAINTIFF,     )
                                   )
8           VS.                    )     SUPERIOR COURT
                                   )     CASE NO. BC574690
9    PRICEWATERHOUSE COOPERS, LLP  )
                                   )
10                  DEFENDANT.     )
     _____)
11

12

13              REPORTER'S TRANSCRIPT OF PROCEEDINGS

14               WEDNESDAY, DECEMBER 12, 2018

15

16   APPEARANCES:

17   FOR PLAINTIFF:

18     KIESEL LAW LLP
       BY:  PAUL R. KIESSEL, ESQUIRE
19     8648 WILSHIRE BOULEVARD
       BEVERLY HILLS, CALIFORNIA 90211
20     310.854.4444

21     PARADIS LAW GROUP
       BY:  PAUL O. PARADIS, ESQUIRE
22          GINA M. TUFARO, ESQUIRE
       200 WEST 41ST STREET, 20TH FLOOR
23     NEW YORK, NEW YORK 10036
       212.986.4500

24

25   (APPEARANCES CONTINUED.)

26

27                         ANITA B. ALDERSON, CSR. NO. 11843
                           OFFICIAL COURT REPORTER PRO TEMPORE
28                         JOB NO. 149582

Exhibit 19
Page 856

1    (APPEARANCES CONTINUED.)

2    SPECIALLY APPEARING FOR NON PARTY JACK LANDSKRONER:

3        BOREN OSHER & LUFTMAN LLP
         BY:   JEREMY J. OSHER, ESQUIRE
4        222 NORTH SEPULVEDA BOULEVARD, SUITE 2222
         EL SEGUNDO, CALIFORNIA 90245
5        310.322.2021

6    FOR DEFENDANTS:

7        GIBSON, DUNN & CRUTCHER LLP
         BY:   DANIEL J. THOMASCH, ESQUIRE
8        200 PARK AVENUE
         NEW YORK, NEW YORK 10166
9        212.351.3800

10       GIBSON, DUNN & CRUTCHER LLP
         BY:   JAMES A. SANTIAGO, ESQUIRE
11       333 SOUTH GRAND AVENUE
         LOS ANGELES, CALIFORNIA 90071
12       213.229.7929

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit 19
Page 857

```
 1                      I N D E X

 2

 3              DECEMBER 12, 2018

 4

 5      ALPHABETICAL/CHRONOLOGICAL LIST OF WITNESSES

 6

 7                    (NONE.)

 8

 9

10                    EXHIBITS

11

12                    (NONE.)

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
```

```
 1   CASE NUMBER:              BC574690

 2   CASE NAME:               CITY OF LOS ANGELES VS.

 3                             PRICEWATERHOUSE COOPERS

 4   LOS ANGELES, CALIFORNIA   WEDNESDAY, DECEMBER 12, 2018

 5   DEPARTMENT SSC6           HON. ELIHU M. BERLE, JUDGE

 6   REPORTER:                ANITA B. ALDERSON, CSR NO. 11843

 7   TIME:                    P.M. SESSION

 8   APPEARANCES:             (AS HERETOFORE NOTED.)

 9

10

11

12

13          THE COURT:  GOOD AFTERNOON COUNSEL.

14          MR. PARADIS:  GOOD AFTERNOON, YOUR HONOR.

15          MR. THOMASCH:  GOOD AFTERNOON.

16          THE COURT:  CALLING THE CASE OF CITY OF LOS ANGELES

17   VERSUS PRICEWATERHOUSE COOPERS.

18          COUNSEL YOUR OTHER APPEARANCES PLEASE.

19          MR. KIESEL:  YOUR HONOR, GOOD AFTERNOON.  PAUL

20   KIESEL APPEARING ON BEHALF OF PLAINTIFFS.

21          THE COURT:  GOOD AFTERNOON.

22          MS. TUFARO:  GOOD AFTERNOON, YOUR HONOR, GINA

23   TUFARO FROM PARADIS LAW GROUP FOR PLAINTIFF.

24          THE COURT:  GOOD AFTERNOON.

25          MR. PARADIS:  GOOD AFTERNOON, JUDGE, PAUL PARADIS

26   ON BEHALF OF THE CITY.

27          THE COURT:  GOOD AFTERNOON.

28          MR. OSHER:  GOOD AFTERNOON, YOUR HONOR, JEREMY
```

1  OSHER SPECIALLY APPEARING ON BEHALF OF NON PARTY JACK

2  LANDSKRONER.

3         THE COURT:  GOOD AFTERNOON.

4         MR. THOMASCH:  GOOD AFTERNOON, YOUR HONOR, DANIEL

5  THOMASCH APPEARING ON BEHALF OF DEFENDANTS PRICEWATERHOUSE

6  COOPERS AND JAMES CURTIN.

7         THE COURT:  GOOD AFTERNOON.

8         MR. SANTIAGO:  GOOD AFTERNOON, YOUR HONOR, JAMES

9  SANTIAGO ON BEHALF OF DEFENDANTS PRICEWATERHOUSE COOPERS

10  AND JAMES CURTIN.

11         THE COURT:  GOOD AFTERNOON.

12         PLEASE HAVE A SEAT AND MAKE YOURSELF COMFORTABLE.

13  I HAVE RECEIVED A PROPOSED ORDER FOR THE APPOINTMENT OF

14  MS. ANITA ALDERSON AS COURT REPORTER PRO TEMPORE, ANY

15  OBJECTIONS?

16         MR. THOMASCH:  NO OBJECTION.

17         MR. PARADIS:  NO OBJECTION.

18         THE COURT:  NOT HEARING ANY OBJECTION, MS. ALDERSON

19  IS HEREBY APPOINTED COURT REPORTER PRO TEM.

20         GOOD AFTERNOON.

21         COURT REPORTER:  GOOD AFTERNOON.

22         THE COURT:  OKAY.  THE MATTERS ON CALENDAR BEFORE

23  THE COURT TODAY ARE THE MOTION FOR PROTECTIVE ORDER FILED

24  BY THE CITY OF LOS ANGELES, AND ALSO WE HAVE THE MOTION OF

25  DEFENDANT PRICEWATERHOUSE TO COMPEL AND FOR SANCTIONS

26  REGARDING THE PERSON MOST QUALIFIED DEPOSITION.

27         ANYONE WISH TO BE HEARD ON THESE MOTIONS?

28         MR. KIESEL:  YOUR HONOR, OBVIOUSLY AT THE LAST

```
 1   HEARING WE DISCUSSED THE DEFENDANT'S MOTION TO COMPEL.  WE
 2   HAD POINTED OUT TO THE COURT WE FILED THE MOTION FOR
 3   PROTECTIVE ORDER.  WE FULLY BRIEFED THE ISSUE BEFORE THE
 4   COURT.
 5           UNLESS THE COURT HAS ANY QUESTIONS, WE SUBMIT ON
 6   OUR MOTION FOR PROTECTIVE ORDER.
 7           THE COURT:  THANK YOU.
 8           MR. THOMASCH:  YOUR HONOR, MAY I BE HEARD?
 9           THE COURT:  YES.
10           MR. THOMASCH:  YOUR HONOR, AS I INDICATED A WEEK
11   AGO, THE MOTION FOR A PROTECTIVE ORDER FILED BY LADWP IS
12   ESSENTIALLY A MIRROR IMAGE OF THE OPPOSITION THEY MADE TO
13   PWC'S MOTION TO COMPEL FOR SANCTIONS, SO I'M NOT GOING TO
14   REPEAT THE ARGUMENTS THAT WE HAD LAST WEEK.
15           I DID WANT TO INFORM THE COURT THAT IN THE
16   INTERVENING WEEKS SOME THINGS HAVE HAPPENED.  I HAD THREE
17   CONVERSATIONS WITH MR. KIESEL AND TWO SUBSTANTIVE
18   CONVERSATIONS.  MS. TUFARO JOINED IN THOSE IN THE FORM OF A
19   MEET AND CONFER.
20           WITH RESPECT TO THE DOCUMENT REQUESTS, YOUR HONOR,
21   NO AGREEMENTS WERE MADE AS FAR AS THE PRODUCTION OF
22   DOCUMENTS IN THE REQUEST ATTACHED TO THE APRIL DEPOSITION
23   NOTICE.
24           THE COURT:  ALL RIGHT.  WELL, LET'S TAKE ONE THING
25   AT A TIME.  SO NO AGREEMENT ON THE DOCUMENT PRODUCTION.
26           FIRST, LET ME ASK MR. LANDSKRONER'S COUNSEL IS
27   HERE, I'M SORRY I MISPRONOUNCED THE NAME.  MR. OSHER, WOULD
28   YOU LIKE TO JOIN IN THE DISCUSSION?  YOU WANT TO TELL ME
```

1    ANYTHING ABOUT THE MOTIONS?

2         MR. OSHER:  YOUR HONOR, I WOULD APPRECIATE A MOMENT

3    OF YOUR TIME AFTER THE MOTIONS ARE HEARD.  I WANTED TO

4    RAISE SOME ISSUE ABOUT AN ORDER YOUR HONOR ISSUED AT THE

5    LAST HEARING WITH RESPECT TO MR. LANDSKRONER.

6         THE COURT:  YES.  I ISSUED AN ORDER ADVISING

7    COUNSEL OF THE DEFENDANT THAT THEY ARE ENTITLED TO GO

8    FORWARD AND TAKE THE DEPOSITION OF MR. LANDSKRONER.

9         MR. OSHER:  I DID SEE THAT, YOUR HONOR, AND I

10   WANTED TO RAISE SOME CONCERNS.

11        THE COURT:  ALL RIGHT, TELL ME WHAT YOUR CONCERNS

12   ARE.

13        MR. OSHER:  THE FIRST ISSUE, YOUR HONOR, IS THAT

14   HEARING WAS ON A MOTION TO COMPEL THE PMQ FOR LADWP.  MY

15   CLIENT HAS NOT BEEN SERVED WITH --

16        THE COURT:  HE WILL BE.

17        MR. OSHER:  THAT WAS THE FIRST ISSUE.  I THINK WE

18   DID IT A LITTLE BACKWARDS.  IF THERE WAS --

19        THE COURT:  APPARENTLY HE'S INVOLVED AS A MATTER OF

20   INTEREST IN CONNECTION WITH THIS LITIGATION.  AND I TOLD

21   COUNSEL THAT HE COULD GO AHEAD AND TAKE THE DEPOSITION OF

22   MR. LANDSKRONER.  IF HE DOESN'T RESPOND TO THE SUBPOENA OR

23   REFUSES TO TESTIFY THEN I GUESS WE'LL HAVE TO ADDRESS THE

24   ISSUE.

25        MR. OSHER:  I APPRECIATE THAT, YOUR HONOR.

26        WHAT WE WANTED WAS THE OPPORTUNITY TO HAVE A

27   SUBPOENA ISSUED SO THAT WE COULD REVIEW IT.  I HAD A

28   CONVERSATION WITH MR. THOMASCH YESTERDAY.

1        I KNOW THERE ARE GOING TO BE SOME DOCUMENT

2   REQUESTS.  SO WE WANT TO HAVE THE OPPORTUNITY TO REVIEW THE

3   DOCUMENT REQUESTS, MEET AND CONFER REGARDING PRIVILEGE

4   ISSUES I THINK ARE IMPLICATED, AND I DID HAVE A BRIEF

5   CONVERSATION WITH COUNSEL YESTERDAY ABOUT THOSE PRIVILEGE

6   ISSUES.

7        AND THEN TO THE EXTENT THAT WE NEED YOUR HONOR TO

8   HELP US NARROW THE SCOPE OR ADDRESS ANY PRIVILEGE ISSUES, I

9   WOULD WANT TO HAVE THE OPPORTUNITY TO BRING A MOTION FOR

10  PROTECTIVE ORDER OR SOME SORT OF LIMINE MOTION SO I HAVE

11  THAT OPPORTUNITY TO PRESENT YOUR HONOR WITH ANY ARGUMENT

12  THAT IS NECESSARY.

13       AS IT STANDS NOW, YOUR HONOR ISSUED AN ORDER

14  WITHOUT THE SUBPOENA BEING ISSUED.  AND THERE IS REALLY NO

15  DIRECTION AS TO SCOPE, AND I DON'T KNOW WHAT THE DOCUMENT

16  REQUESTS ARE AT THIS POINT IN TIME.

17       I DID DISCUSS WITH COUNSEL SOME IDEAS ABOUT

18  ADDRESSING THE DOCUMENT REQUEST AND SCOPE TO THE EXTENT

19  THERE IS GOING TO BE A DEPOSITION.  WE ALSO TALKED ABOUT

20  PERHAPS WAITING UNTIL THE CITY ISSUES A RESULT FIRST AND

21  SEE IF THERE IS STILL A NEED FOR MR. LANDSKRONER'S

22  DEPOSITION.

23       WE ALSO TALKED ABOUT DOING A DEPOSITION BY

24  INTERROGATORY.  WE DIDN'T REACH ANY AGREEMENTS.  IT WAS

25  JUST A PRELIMINARY CONVERSATION, BUT I CAME HERE TO

26  SPECIALLY APPEAR JUST TO RAISE THESE ISSUES TO YOUR HONOR

27  BECAUSE MR. LANDSKRONER IS NOT A PARTY TO THIS CASE.  I

28  KNOW HE WAS A PARTY TO A CLASS ACTION THAT WAS IN FRONT OF

1    YOUR HONOR.

2            HE'S NOT A PARTY TO THIS CASE AND AT THIS POINT

3    THERE IS REALLY NOTHING OUT THERE, NO SUBPOENA AND NO

4    MECHANISM FOR US TO REALLY GET THESE ISSUES RESOLVED AND TO

5    BRING IT TO YOUR HONOR'S ATTENTION.

6            SO THAT IS WHAT WE WANTED TO BRING TO YOUR HONOR'S

7    ATTENTION TODAY, SO IT'S DONE IN AN ORDERLY PROCESS AND WE

8    HAVE ALL THE OPPORTUNITIES WE NEED TO ADDRESS ANY PRIVILEGE

9    BECAUSE THERE ARE A LOT OF PRIVILEGE ISSUES THAT ARE

10   IMPLICATED.

11           THERE IS A PRIVILEGE BETWEEN MR. LANDSKRONER AND

12   HIS CLIENT, ANTWON JONES.  THERE MAY BE OTHER PRIVILEGES,

13   MEDIATION PRIVILEGE, ET CETERA.

14           THE COURT:  IS THERE GOING TO BE A PRIVILEGE

15   ASSERTED THAT COMMUNICATION WITH MR. LANDSKRONER AND THE

16   CITY OF LOS ANGELES ARE PRIVILEGED?

17           MR. OSHER:  I DON'T KNOW WHAT THEY ARE ASKING FOR.

18           THE COURT:  I'M ASKING YOU NOW.

19           MR. OSHER:  I HAVEN'T EVALUATED THAT, YOUR HONOR.

20   I WAS JUST RETAINED TWO DAYS AGO.  I KNOW THAT IS SOMETHING

21   YOUR HONOR WAS CONCERNED ABOUT OR INTERESTED IN.  THAT IS

22   SOMETHING I WILL MEET AND CONFER WITH COUNSEL ON ONCE I GET

23   A SUBPOENA LETTING ME KNOW WHAT IT IS HE'S LOOKING FOR.

24           THE COURT:  CERTAINLY WILL HAVE A FULL OPPORTUNITY

25   TO PRESENT ANY OBJECTIONS AND TO RAISE ANY ISSUES OR RAISE

26   YOUR CONCERNS.

27           BUT LET ME ASK A VERY DIRECT QUESTION IS THAT WILL

28   YOU ACCEPT A SUBPOENA?  OR MR. LANDSKRONER PRACTICES IN

1    OHIO, AS I RECALL, ALTHOUGH HE DID APPEAR PRO HAC VICE IN

2    THIS COURT.

3           SO IS THERE ANY PROBLEM ABOUT HIM APPEARING FOR A

4    DEPOSITION?

5           MR. OSHER:  YOUR HONOR, I HAVE NOT HAD A CHANCE TO

6    LOOK AT THAT ISSUE OR TO DISCUSS IT WITH MY CLIENT THAT IS

7    AN ISSUE.

8           THE COURT:  THAT IS WHY I'M ASKING.  IS HE GOING TO

9    REFUSE TO APPEAR?

10          MR. OSHER:  I DON'T HAVE THAT ANSWER HERE RIGHT

11   NOW, YOUR HONOR.  I KNOW IN A SITUATION WHERE YOU HAVE A

12   NON-PARTY IN ANOTHER STATE THERE ARE PROCEDURES.

13          THE COURT:  RIGHT.

14          MR. OSHER:  I DON'T KNOW IF WE'RE GOING TO TALK TO

15   COUNSEL ABOUT NEEDING TO GO THROUGH THOSE PROCEDURES, GET

16   THE OHIO COURT TO ISSUE SOMETHING.  I DON'T KNOW AS WE SIT

17   HERE, BUT THAT IS SOMETHING I WANTED TO RAISE WITH YOU AS

18   WELL.  THERE ARE MECHANISMS IN PLACE.  I JUST DON'T KNOW AT

19   THIS POINT IN TIME.

20          THE COURT:  I JUST ENCOURAGE THE PARTIES TO MEET

21   AND CONFER AND SEEK A RESOLVE OF ANY ISSUES WITH REGARD TO

22   A POTENTIAL DEPOSITION OF MR. LANDSKRONER AND POTENTIAL

23   DEPOSITION OF MR. JONES.

24          MR. JONES IS A RESIDENT OF LOS ANGELES, IS HE NOT?

25          MR. THOMASCH:  THAT IS OUR UNDERSTANDING, YOUR

26   HONOR.

27          THE COURT:  I'M SORRY?

28          MR. OSHER:  I'M NOT REPRESENTING HIM.

1          MR. THOMASCH:  THAT IS OUR UNDERSTANDING.

2          THE COURT:  I WOULD ASSUME SO IF HE MADE A CLAIM

3   FOR CREDIT ON HIS WATER BILL.

4          MR. THOMASCH:  YES.

5          THE COURT:  ELECTRICAL BILL.  ALL RIGHT.  THANK

6   YOU.

7          SO IN SUM, COUNSEL FOR MR. LANDSKRONER WILL

8   CERTAINLY HAVE AN OPPORTUNITY TO RAISE ANY OBJECTIONS, ANY

9   ISSUES OF CONCERN, AND I DO ENCOURAGE THE PARTIES TO MEET

10  AND CONFER TO TRY TO RESOLVE THOSE ISSUES.

11         MR. THOMASCH:  YES.

12         MR. OSHER:  I APPRECIATE THAT, YOUR HONOR.

13         THE COURT:  OKAY.  I THINK WE OUGHT TO CUT THROUGH

14  SOME OF IT.  I KNOW I INTERRUPTED YOU, MR. THOMASCH, BUT I

15  WANT TO GO DIRECTLY TO THE POINT.  I'LL GIVE YOU AN

16  OPPORTUNITY TO CONTINUE FURTHER ON.

17         BUT GOING DIRECTLY TO THE REQUEST FOR PRODUCTION OF

18  DOCUMENTS, WE MIGHT AS WELL GET THROUGH IT RIGHT NOW.  YOU

19  ADVISED ME THAT THE CITY HAS NOT COME TO ANY AGREEMENT WITH

20  REGARD TO PRODUCING ANY OF THOSE DOCUMENTS; IS THAT RIGHT?

21         MR. THOMASCH:  THAT IS CORRECT, YOUR HONOR.

22         I WILL NOTE, JUST PRELIMINARILY, I HAVE SINCE THE

23  LAST CONFERENCE HERE A WEEK AGO, I HAVE EMAILED AND SPOKEN

24  WITH MR. LANDSKRONER, AND I HAD A CONVERSATION WITH

25  MR. OSHER.

26         I DID RAISE THE ISSUE OF WHETHER OR NOT MR. OSHER

27  WOULD BE WILLING TO ACCEPT A SUBPOENA RESERVING ALL

28  OBJECTIONS OTHER THAN TO SERVICE.  IF WE COULD EXPEDITE

```
 1   THIS, IF IT'S NECESSARY FOR US TO JUMP THROUGH HOOPS TO GET
 2   A PROCESS SERVER IN OHIO, WE WILL DO SO.  I DON'T SEE WHY
 3   THAT SHOULD BE NECESSARY, BUT WE WILL DO WHAT WE NEED TO
 4   DO.
 5        WE DID NOT REACH ANY AGREEMENT, BUT I DID MAKE
 6   CLEAR THAT A FOCUS OF THE DEPOSITION WOULD BE WITH RESPECT
 7   TO THE TIME PERIOD PRIOR TO APRIL 1, 2015, WHICH IS THE
 8   DATE ON WHICH MR. JONES, REPRESENTED BY MR. LANDSKRONER,
 9   SUED THE CITY.
10        AND I HAVE ASKED MR. OSHER, AND I HAVE ASKED ON
11   MULTIPLE OCCASIONS TO THE CITY, ARE THEY CLAIMING IN THAT
12   TIME PERIOD WHERE MR. JONES WAS A DISAFFECTED CUSTOMER
13   ULTIMATELY SUING THE CITY, ARE THEY CLAIMING A PRIVILEGE
14   BETWEEN MR. JONES' COUNSEL AND THE CITY AND THE CITY'S
15   COUNSEL DURING THAT TIME PERIOD.
16        NO ONE HAS RESPONDED TO THAT, YOUR HONOR, AND IT'S
17   A CENTRAL FEATURE HERE.  WE DO NOT UNDERSTAND THE
18   POSSIBILITY OF ANY PRIVILEGE IN THAT TIME PERIOD THAT IS
19   NOT A MEDIATION PRIVILEGE IF THERE IS SUCH A THING.  IT IS
20   NOT A PRIVILEGE DURING THE TIME PERIOD WHEN THEY WERE
21   PREPARING TO SUE THE CITY AND ULTIMATELY DID SUE THE CITY.
22        YET WE HAVE NOT BEEN ABLE TO GET EVEN A COMMITMENT
23   THEY ARE NOT ASSERTING SUCH A PRIVILEGE.  THEY SIMPLY WON'T
24   ANSWER THE QUESTION.
25        THE COURT:  OF COURSE, THAT RAISES OTHER ISSUES
26   SUCH AS A CONFLICT OF INTEREST AND FIDUCIARY OBLIGATIONS ON
27   THE PART OF COUNSEL TO A CLASS REPRESENTATIVE AND COUNSEL
28   FOR THE CLASS IF COUNSEL FOR THE CLASS WAS AT THE SAME TIME
```

1    HAVING A RELATIONSHIP WITH HIS ADVERSARY.

2         MR. THOMASCH:  THAT IS ABSOLUTELY TRUE.  I ASKED

3    QUESTIONS AT THE DEPOSITION, WHICH WE WILL GET TO, ASKING

4    THE PMQ WITNESS FOR THE CITY, IS IT PERMISSIBLE FOR THE

5    CITY TO REPRESENT A POTENTIALLY ADVERSE PARTY WHO IS A

6    PRIVATE CITIZEN AND TO PROVIDE WORK PRODUCT TO THAT

7    INDIVIDUAL TO BE USED AS THAT INDIVIDUAL'S ATTORNEY SEES

8    FIT?

9         I WAS TOLD THAT WAS A PRIVILEGED MATTER AND WOULD

10   NOT BE RESPONDED TO.

11        THE COURT:  WE'LL GET TO THE DEPOSITION QUESTIONS,

12   BUT LET'S DEAL WITH THE REQUEST FOR PRODUCTION RIGHT NOW

13   BEFORE WE GET TO THE DEPOSITION.

14        REQUEST NO. 1 IS A COPY OF THE CAPTION, SIGNATURE,

15   AND SERVICE PAGES ON JONES VERSUS PWC DRAFT COMPLAINT.

16        DOES THE CITY HAVE A PROBLEM PRODUCING THOSE

17   DOCUMENTS?

18        MR. KIESEL:  WE DO, YOUR HONOR, WE HAVE OBJECTED

19   BECAUSE IT'S AN ATTORNEY-CLIENT --

20        THE COURT:  ON WHAT BASIS IS IT AN ATTORNEY-CLIENT

21   PRIVILEGE?

22        WHO IS THE CLIENT?

23        MR. KIESEL:  YOUR HONOR, THIS IS THE CITY OF LOS

24   ANGELES.

25        THE COURT:  IS THERE A COMMUNICATION WITH SOME

26   CLIENT?

27        MR. KIESEL:  MR. PETERS TESTIFIED IN HIS DEPOSITION

28   AT THIS COURT'S REQUEST WHY THIS DOCUMENT WAS PREPARED.

1    THE COURT: I'M ASKING NOT FOR A COPY OF THE

2    COMPLAINT, NOT FOR THE ATTORNEY'S THOUGHTS, IMPRESSIONS, OR

3    CONCLUSIONS. A COPY OF THE CAPTION, SIGNATURE, AND SERVICE

4    PAGE WHICH WAS REQUEST NO. 1.

5    MS. TUFARO: YES, YOUR HONOR, WE'RE OBJECTING. NOT

6    JUST ON THE GROUNDS OF ATTORNEY-CLIENT PRIVILEGE, BUT ALSO

7    ON THE GROUNDS OF ATTORNEY WORK PRODUCT.

8    THE COURT: ATTORNEY WORK-PRODUCT PRIVILEGE IS

9    LIMITED. IF YOU TAKE A LOOK AT CCP SECTION 2018.030 TO

10   ATTORNEY'S IMPRESSIONS, CONCLUSIONS, OPINIONS, LEGAL

11   RESEARCH, OR THEORIES.

12   A CAPTION PAGE, A SIGNATURE PAGE, AND A SERVICE

13   PAGE DOES NOT INCLUDE IMPRESSIONS, CONCLUSIONS, OR OPINIONS

14   OR LEGAL RESEARCH, SO IS THE CITY GOING TO PRODUCE THAT?

15   MS. TUFARO: NO, YOUR HONOR.

16   THE COURT: THE CITY IS NOT GOING TO PRODUCE THAT?

17   MS. TUFARO: NO, YOUR HONOR.

18   THE COURT: OKAY. LET'S GO ON TO CATEGORY NO. 2.

19   MR. THOMASCH: YOUR HONOR, MAY I JUST NOTE SOME OF

20   THE THINGS THAT WOULD BE REFLECTED ON THAT WOULD BE THINGS

21   SUCH AS WHO IS IDENTIFIED AS JONES' COUNSEL?

22   IS THERE A NO-FEE GOVERNMENT CODE STAMP ON THE

23   DOCUMENT?

24   IS IT IDENTIFIED AS A RELATED CASE TO SOME OTHER

25   CASE?

26   THERE IS INFORMATION THAT COULD HAVE RELEVANCE THAT

27   IS COMPLETELY NON PRIVILEGED AND NOT REFLECTING ANY

28   IMPRESSIONS OF COUNSEL AND THAT IS THE REASON WHY WE'RE

Exhibit 19
Page 869

1    ASKING FOR IT.

2           THE COURT:  ALL RIGHT.

3           REQUEST NO. 2, ALL WRITTEN AGREEMENTS OR

4    UNDERSTANDINGS BETWEEN LADWP AND ANTWON JONES AND/OR JONES'

5    COUNSEL PRIOR TO APRIL 1, 2015.

6           IS THE CITY GOING TO PRODUCE THOSE DOCUMENTS?

7           MS. TUFARO:  NO, YOUR HONOR.

8           THE COURT:  WHY NOT?

9           MS. TUFARO:  WE'RE OBJECTING ON GROUNDS -- FIRST OF

10   ALL, WE ARE OBJECTING TO ALL OF THESE.

11          THE COURT:  I UNDERSTAND.  WHAT IS THE GROUNDS FOR

12   OBJECTION BETWEEN WRITTEN AGREEMENTS BETWEEN THE CITY AND

13   MR. JONES?

14          MS. TUFARO:  OVERBREADTH.

15          THE COURT:  IS THERE A RELATIONSHIP BETWEEN THE

16   CITY AND MR. JONES?

17          MS. TUFARO:  YOUR HONOR, WE'RE NOT GOING TO BE

18   ANSWERING ANY OF THOSE QUESTIONS.

19          THE COURT:  SO YOU'RE TELLING ME YOU'RE ASSERTING A

20   PRIVILEGE FOR AN AGREEMENT BETWEEN THE CITY AND ITS

21   ADVERSARY?

22          MS. TUFARO:  YES.

23          THE COURT:  WHAT AUTHORITY DO YOU HAVE FOR THAT?

24          MS. TUFARO:  THAT IS MY INSTRUCTIONS.

25          THE COURT:  I'M NOT TALKING ABOUT YOUR

26   INSTRUCTIONS.  YOU'RE AN ATTORNEY.  YOU ARE A MEMBER OF THE

27   BAR, ALTHOUGH YOU ARE A MEMBER OF A BAR IN NEW YORK.

28   YOU'RE HERE AT THE PERMISSION OF THE COURT, PRO HAC VICE, I

1    ASSUME YOU'RE GOING TO BRING YOURSELF UP TO DATE ON

2    CALIFORNIA LAW; IS THAT RIGHT?

3            MS. TUFARO:  YES, YOUR HONOR.

4            THE COURT:  TELL ME THE BASIS FOR ASSERTING A

5    PRIVILEGE TO AGREEMENTS BETWEEN THE CITY AND IT'S

6    ADVERSARY?

7            MS. TUFARO:  JUDGE, THERE IS POTENTIAL MEDIATION

8    PRIVILEGES --

9            THE COURT:  AGREEMENTS BETWEEN THE CITY AND ITS

10   ADVERSARY.

11           MS. TUFARO:  YES, YOUR HONOR, THAT IS WHAT WE WERE

12   SAYING.

13           THE COURT:  AN AGREEMENT BETWEEN A CITY AND AN

14   ADVERSARY IS SUBJECT TO THE MEDIATION PRIVILEGE, IS THAT

15   WHAT YOU'RE TELLING ME?

16           MS. TUFARO:  COULD BE, YES, YOUR HONOR.

17           THE COURT:  DO YOU HAVE AUTHORITY FOR THAT?

18           MS. TUFARO:  I'M TALKING AUTHORITY FROM MY CLIENT.

19           THE COURT:  A MEDIATION PRIVILEGE FOR AN AGREEMENT.

20           MS. TUFARO:  NO, YOUR HONOR, I DON'T HAVE A CASE

21   THAT SAYS THAT.

22           MR. THOMASCH:  YOUR HONOR, APRIL 1 --

23           THE COURT:  WE'RE NOT FINISHED.

24           REQUEST NO. 3:  ALL DOCUMENTS TRANSMITTED PRIOR TO

25   APRIL 1, 2015, TO LADWP INCLUDING, BUT NOT LIMITED TO,

26   RICHARD BROWN, DEBORAH DORNY, ESKEL SOLOMON, RICHARD TOM,

27   PARADIS LAW GROUP, KIESEL LAW, LINER LLP, OR CITY

28   ATTORNEY'S OFFICE BY ANTWON JONES, JONES' COUNSEL,

1    OTHERWISE ON BEHALF OF ANTWON JONES INDIVIDUALLY AND/OR

2    ANTWON JONES' PUTATIVE CLASS, INCLUDING NOT LIMITED TO,

3    COMMUNICATIONS SENT TO ESKEL SOLOMON THAT WERE LATER

4    FORWARDED WITHIN LADWP OR AMONG ITS COUNSEL.

5            IS THE CITY GOING TO PRODUCE THOSE DOCUMENTS?

6            MS. TUFARO:  NO, YOUR HONOR.

7            THE COURT:  AND THE BASIS?

8            MS. TUFARO:  THE BASIS IS GOING TO BE OVERBREADTH,

9    ATTORNEY WORK PRODUCT, MEDIATION PRIVILEGE, AND POTENTIALLY

10   ATTORNEY-CLIENT PRIVILEGE.

11           THE COURT:  SO DOCUMENTS TRANSMITTED TO OPPOSING

12   PARTY IS SUBJECT TO THE PRIVILEGE THAT YOU'RE ASSERTING?

13           MS. TUFARO:  COULD BE MEDIATION PRIVILEGE, YES,

14   YOUR HONOR.

15           THE COURT:  MEDIATION PRIVILEGE.

16           MS. TUFARO:  YES, YOUR HONOR.

17           THE COURT:  SO YOU THINK EVERYTHING IS GOING TO BE

18   BURIED UNDER A MEDIATION PRIVILEGE?

19           MS. TUFARO:  NO, YOUR HONOR, BUT YOU'RE ASKING ME

20   FOR MY OBJECTIONS AND THOSE ARE THEM.

21           THE COURT:  I'M GOING TO GO THROUGH THE REST OF IT,

22   BUT I THINK COUNSEL BETTER THINK THIS THROUGH BECAUSE

23   PERHAPS WE SHOULD REOPEN THE SETTLEMENT AGREEMENT IN THE

24   CLASS ACTION.

25           IT APPEARS TO ME FROM WHAT YOU'RE TELLING ME, THERE

26   MAY NOT BE AN ADVERSARY RELATIONSHIP.  THERE ARE SERIOUS

27   ISSUES -- WERE YOU INVOLVED IN THE CLASS ACTION LITIGATION?

28           MS. TUFARO:  NO.

1           THE COURT:  THERE MAY BE SERIOUS QUESTIONS HERE AS

2     TO WHETHER THERE WAS A BREACH OF FIDUCIARY OBLIGATIONS.

3           MS. TUFARO:  WE DON'T BELIEVE THAT IS THE CASE,

4     YOUR HONOR.

5           THE COURT:  IF YOU'RE NOT INVOLVED, HOW DO YOU

6     KNOW?

7           MS. TUFARO:  I STILL HAVE MY OPINION THAT IS WHAT

8     MY BELIEF IS.

9           MR. THOMASCH:  YOUR HONOR, I JUST WANT TO POINT OUT

10    THAT APRIL 1, 2015, IS THE DATE ON WHICH THE COMPLAINT WAS

11    FILED.

12          WE INTENTIONALLY DID NOT SEEK IN THE DOCUMENT

13    REQUEST LATER DOCUMENTS BECAUSE WE DIDN'T WANT TO GET INTO

14    ANY CLAIM OF MEDIATION PRIVILEGE.

15          BUT THIS IS THE TIME PERIOD WHEN THE PARTIES WERE

16    ADVERSE TO EACH OTHER AND THE DATE ON WHICH THE LAWSUIT WAS

17    FILED, THERE WAS NO MEDIATION ONGOING, THERE WAS NO REQUEST

18    FOR SETTLEMENT THAT WAS MADE BY ANY PARTY THAT HAS BEEN

19    DISCLOSED.

20          IF THEY WERE SPEAKING AMONG THEMSELVES AS THAT TIME

21    PERIOD, AND PARTICULARLY SPEAKING AMONG THEMSELVES ABOUT

22    HOW THEY MIGHT HAVE COMMON CAUSE AGAINST MY CLIENT, THAT IS

23    OF GREAT INTEREST TO US.  IT SHOULD ALSO, OBVIOUSLY, BE OF

24    INTEREST TO THE COURT SINCE THEY HELD THEMSELVES OUT AS

25    ADVERSE PARTIES WHO WERE NEGOTIATING AT ARM'S LENGTH.

26          THE COURT:  THAT IS RIGHT.  THE PLAINTIFF AND

27    COUNSEL REPRESENTING THE CLASS HELD THEMSELVES OUT AS

28    HOLDERS OF FIDUCIARY OBLIGATIONS TO THE CLASS AND THAT WAS

Exhibit 19
Page 873

1  BEFORE ANY CLASS WAS CERTIFIED.  IT WAS ONLY CERTIFIED

2  DURING THE SETTLEMENT PROCESS.

3        MR. THOMASCH:  YES, YOUR HONOR.

4        THE COURT:  AND IF HE WAS HAVING MEDIATION, I

5  ASSUME IT WAS JUST FOR HIS BILL.

6        HOW MUCH WAS MR. JONES' BILL AT THE TIME OF THE

7  FILING OF THE COMPLAINT, DOES ANYBODY REMEMBER?

8        MR. THOMASCH:  IT WAS QUITE SMALL THAT WAS ONE OF

9  THE ISSUES WE WERE GETTING AT.  IN FACT WE ASKED WHETHER OR

10  NOT HE HAD BEEN OVERCHARGED AT ALL SUBSEQUENT TO THE NEW

11  SYSTEM GOING IN PLACE, AND WE WERE TOLD THAT WAS

12  PRIVILEGED.

13        THE COURT:  REQUEST NO. 4 IS ALL DOCUMENTS

14  TRANSMITTED PRIOR TO APRIL 1, 2015, TO ANTWON JONES OR

15  JONES' COUNSEL BY OR ON BEHALF OF LADWP, INCLUDED BUT NOT

16  LIMITED TO RICHARD BROWN, DEBORAH DORNY, ESKEL SOLOMON, OR

17  RICHARD TOM, PARADIS LAW GROUP, KIESEL LAW, LINER LLP OR

18  THE LOS ANGELES CITY ATTORNEY'S OFFICE.

19        THE CITY IS GOING TO OBJECT TO PRODUCE THOSE

20  DOCUMENTS?

21        MS. TUFARO:  YES YOUR HONOR.

22        THE COURT:  REQUEST NO. 5 IS DOCUMENTS SUFFICIENT

23  TO IDENTIFY ALL LADWP CUSTOMERS WHO HAD BEEN COMPLAINING TO

24  THE DEPARTMENT AND HAD BEEN IN TOUCH WITH THE DEPARTMENT

25  PRIOR TO THE PREPARATION OF THE JONES V. PWC DRAFT

26  COMPLAINT.

27        DO YOU HAVE AN OBJECTION TO THAT?

28        MS. TUFARO:  NO, YOUR HONOR, WE WOULD BE PRODUCING

Exhibit 19
Page 874

1    THOSE DOCUMENTS.

2              THE COURT:  WHEN ARE YOU GOING TO PRODUCE THOSE?

3              MS. TUFARO:  TWO WEEKS, YOUR HONOR.

4              THE COURT:  THANK YOU.

5              REQUEST NO. 6 IS DOCUMENTS SUFFICIENT TO IDENTIFY

6    ALL LADWP CUSTOMERS WHO PRIOR TO APRIL 1, 2015, HAD VOICED

7    OUTRAGE OVER ELECTRICITY AND WATER BILLS.

8              IS THE CITY GOING TO PRODUCE THOSE DOCUMENTS?

9              MS. TUFARO:  YES, YOUR HONOR.

10             THE COURT:  SAME TIME FRAME?

11             MS. TUFARO:  YES, YOUR HONOR.

12             THE COURT:  OKAY.  THANK YOU.

13             MR. THOMASCH, YOU WANT TO CONTINUE WITH THE

14   DISCUSSION BEFORE GOING ON TO DEPOSITION?

15             MR. THOMASCH:  YOUR HONOR, BEFORE WE LEAVE THE

16   SUBJECT OF THE DOCUMENT REQUEST BECAUSE WE DO HAVE FOUR

17   IMPORTANT ONES AS TO WHICH THERE IS A DISPUTE.

18             IN ADDITION TO NOT BELIEVING THERE IS A WELL TAKEN

19   BASIS FOR PRIVILEGE, I DO WANT TO NOTE WE HAVE TAKEN THE

20   POSITION UNDER CCP 2025.410(A) THE OBJECTIONS ARE UNTIMELY

21   AND WAIVED.  SPECIFIC OBJECTIONS NEEDED TO BE MADE IN

22   WRITING AT LEAST THREE CALENDAR DAYS BEFORE THE DEPOSITION.

23             IN THE REPLY BRIEF BY THE CITY THEY SAY IT'S

24   UNFATHOMABLE THAT WE TAKE THE POSITION THEY DIDN'T MAKE

25   OBJECTIONS, AND THEY POINT TO THREE THINGS:  A LETTER FROM

26   MR. PARADIS DATED APRIL 23, 2018; A MOTION TO QUASH; AND

27   THE COMMENTS MADE AT THE 6-21-18 HEARING.

28             NONE OF THOSE ARE IN ANY WAY IN COMPLIANCE WITH THE

Exhibit 19
Page 875

1   REQUIREMENTS OF CCP 2025.410.  THE LETTER IT'S DATED

2   APRIL 25, 2018 SIMPLY ASKED FOR THE DEPOSITION NOTICE TO BE

3   WITHDRAWN.  IT INDICATED THAT THE INFORMATION THAT WAS

4   REQUIRED TO BE PRODUCED HAD ALREADY BEEN PROVIDED TO THE

5   PWC THROUGH THE NOVEMBER, 2017, DECLARATION OF MR. PARADIS.

6         THE LETTER DOES NOT REFERENCE CCP 2025.410 AND IT

7   MAKES NO SPECIFIC OBJECTIONS TO, DOESN'T IDENTIFY THE

8   DOCUMENT REQUEST, MAKES NO SPECIFIC OBJECTION AS TO ANY

9   SINGLE DOCUMENT REQUEST.

10        THEN THE MOTION TO QUASH, THAT IS DISTINCT FROM

11  OBJECTIONS.  INDEED IN CCP 2025.410(C) READS, "IN ADDITION

12  TO SERVING THE WRITTEN OBJECTION, A PARTY MAY ALSO MOVE FOR

13  AN ORDER STAYING THE TAKING OF THE DEPOSITION AND QUASHING

14  THE DEPOSITION NOTICE" THAT IS WHAT THEY DID THAT IS IN

15  ADDITION TO SERVING THE WRITTEN OBJECTION.

16        IT'S NOT A SUBSTITUTE FOR AND DOES NOT SERVE AS THE

17  WRITTEN OBJECTION AND OBVIOUSLY ORAL COMMENTS THAT WE

18  RESERVE OUR RIGHT TO OBJECT ON SCOPE DO NOT CONSTITUTE

19  WRITTEN OBJECTIONS.

20        THERE IS A REASON FOR THE RULE.  AND THE REASON IS

21  TO AVOID COUNSEL GOING TO THE DEPOSITION, PREPARING FOR THE

22  DEPOSITION, RETAINING A COURT REPORTER, AND BEING TOLD THAT

23  THE WITNESS WILL NOT SAY ANYTHING THAT HASN'T BEEN SAID

24  ALREADY.

25        AT PAGE 14 OF OUR OPPOSITION WE CITE A RUTTER

26  EXAMPLE WHICH IS DIRECTLY ON POINT WHERE A SERVICE OF A

27  DEPOSITION NOTICE WITH A DOCUMENT REQUEST IS MADE.  THE

28  OBJECTION IS ONE OF SCOPE, BUT IT IS NOT MADE IN WRITING,

1   IT IS NOT ADVANCED UNTIL THE DEPOSITION, AND AS RUTTER

2   SAYS, IT IS THEN WAIVED.

3        IN ADDITION TO, WE CAN BRIEF HAPPILY, THE QUESTION

4   OF WHETHER THE MEDIATION PRIVILEGE OCCURS BEFORE THERE IS

5   EVEN A LAWSUIT.  WE CAN BRIEF THE ISSUE OF WHETHER OR NOT

6   TWO ADVERSE PARTIES CAN CLAIM A PRIVILEGE BETWEEN EACH

7   OTHER.

8        I'M VERY COMFORTABLE WITH OUR POSITION AS A MATTER

9   OF LAW IN ALL OF THOSE, BUT AS A THRESHOLD MATTER, YOUR

10  HONOR, THEY WAIVE THEIR RIGHT BY CHOOSING INTENTIONALLY NOT

11  TO MAKE WRITTEN OBJECTIONS, WAITING UNTIL -- IT WAS WHEN I

12  ASKED THE WITNESS WHETHER HE HAD REVIEWED THE DOCUMENT

13  REQUEST THAT WAS THE FIRST TIME I KNEW.  IN HIS RESPONSE,

14  THE WITNESS' RESPONSE, WAS "MY POSITION IS THAT THE ORDER

15  DOES SUPERSEDE IT" IT BEING THE NOTICE.

16       THE WITNESS TOOK THE POSITION HE HAD READ YOUR

17  COURT ORDER.  AND HE CONSIDERED THAT TO SUPERSEDE ANY

18  NOTICE WE PUT OUT AND THAT YOUR COURT ORDER DIDN'T DEMAND

19  THEY PRODUCE DOCUMENTS, SO THEY DIDN'T HAVE THAT.  THAT IS

20  THE KIND OF THING THAT SHOULD HAVE BEEN FLESHED OUT BEFORE

21  WE TRAVELED ACROSS THE COUNTRY TO HAVE THAT DEPOSITION,

22  YOUR HONOR.

23       THE COURT:  MS. TUFARO, YOU WISH TO RESPOND?

24       MS. TUFARO:  YES.  JUST BRIEFLY, YOUR HONOR, THE

25  APRIL 25 LETTER, WHICH IS PART OF THE RECORD HERE, IT DOES

26  SPECIFY THAT THE DOCUMENT REQUESTS ARE OVERLY BROAD.  AND

27  ON THAT BASIS WE REQUESTED THAT THE DEFENDANTS PULL THE

28  NOTICE OF DEPOSITION, AND IF THEY DID NOT, WE WOULD MOVE TO

1    QUASH.

2         WE DID MOVE TO QUASH AND 50 PERCENT OF THAT

3    BRIEFING IS DEVOTED TO THE FACT THAT THE DOCUMENTS SOUGHT

4    ARE OVERLY BROAD.  WE ASK THE COURT AS PART OF THE RELIEF

5    FOR THAT TO STRIKE THE DOCUMENT REQUEST.

6         I JUST CANNOT BELIEVE THAT DEFENSE COUNSEL WOULD

7    COME HERE AND SAY HE DID NOT KNOW THAT PLAINTIFFS OBJECTED

8    TO THOSE DOCUMENT REQUESTS.

9         MR. THOMASCH:  YOUR HONOR, I WANT TO NOTE TWO

10   THINGS.  ONE, THE ONLY REFERENCE IN THE LETTER TO THE

11   DOCUMENT REQUEST IS THE FOLLOWING SENTENCE:  "THE NOTICE OF

12   DEPOSITION, HOWEVER, SEEKS TESTIMONY AND DOCUMENTS THAT GO

13   WELL BEYOND THE SCOPE OF THE COURT'S DECEMBER 4, 2017,

14   ORDER" AND THEY THEN SAY THEY HAVE ALREADY COMPLIED WITH

15   THE ORDER IN FULL THAT IS THE ONLY REFERENCE IN THAT

16   LETTER.

17        THE MOTION QUASH, I WOULD DISPUTE THE

18   CHARACTERIZATION OF THE 50 PERCENT, BUT WE DON'T NEED TO GO

19   THERE BECAUSE THE MOTION TO QUASH WAS WITHDRAWN.

20        WITHDRAWING A MOTION HAS MEANING.  IF THEY WANTED

21   TO PRESS THEIR OBJECTIONS, THE TIME TO PRESS THEM WAS

22   BEFORE THE DEPOSITION, NOT AT AND AFTER THE DEPOSITION.

23   THEY KNEW WHAT WE WERE LOOKING FOR, AND THEY SIMPLY CHOSE

24   NOT TO TALK TO US.

25        THERE WAS NO COMMUNICATION FROM THE DATE THEY

26   WITHDREW THEIR MOTION TO QUASH UNTIL THE DAY OF THE

27   DEPOSITION, THERE WAS NOT A SINGLE WORD ABOUT THIS

28   DEPOSITION WITH ANYONE FROM LADWP EXCEPT MR. KIESEL CALLING

1   ME AND ASKING FOR ADJOURNMENTS AND TRYING TO WORK OUT A

2   SCHEDULE WHICH HE WAS GRANTED.

3          THEN WE SHOWED UP ON SEPTEMBER 13, PER OUR

4   AGREEMENT ON HIS CHOSEN DAY, AND WE WERE TOLD THE WITNESS

5   IS NOT PRODUCING ANY DOCUMENTS THAT IS A WAIVER.

6          THE COURT:  THANK YOU.

7          LET'S GO ON TO THE DEPOSITION QUESTION.

8          BEFORE WE DO THAT, LET ME ASK MR. KIESEL, DO YOU

9   RECALL THE DATE FOR THE NEXT HEARING ON THE CLASS ACTION

10  SETTLEMENT?

11         MR. KIESEL:  YOU'RE ASKING IF THERE WAS ANOTHER

12  DATE?

13         THE COURT:  THERE IS ANOTHER DATE, WE HAVE PERIODIC

14  REPORTS.

15         DO YOU RECALL WHAT THE DATE IS?

16         MR. KIESEL:  I DO NOT, MR. PARADIS MIGHT, BUT I DO

17  NOT RECALL.

18         THE COURT:  COULD YOU LOOK IT UP?

19         THE CLERK:  YES, YOUR HONOR, A FUTURE DATE ON THIS

20  MATTER?

21         THE COURT:  NO.  IT'S A RELATED CASE OF JONES

22  VERSUS CITY OF LOS ANGELES.

23         THE CLERK:  DID ANYBODY HAVE A CASE NUMBER?

24         THE COURT:  IT'S PREVIOUSLY RELATED.

25         COUNSEL, DO YOU WISH TO ADDRESS ISSUES WITH REGARDS

26  TO THE DEPOSITION QUESTIONS?

27         MR. THOMASCH:  YES, YOUR HONOR.

28         THERE WERE LITERALLY SCORES OF QUESTIONS THAT WERE

```
1    NOT ANSWERED AT THE DEPOSITION ON THE GROUNDS THAT EITHER
2    THE WITNESS HAD NOT PREPARED HIMSELF, DID NOT KNOW THE
3    ANSWER, OR IN LARGE PART THAT THE ISSUE WAS SAID TO BE
4    PRIVILEGED WITHOUT EXPLANATION OF THE PRIVILEGE, BUT SAID
5    IT WAS PRIVILEGED.  ATTORNEY-CLIENT AND WORK PRODUCT WERE
6    REFERENCED THROUGHOUT.
7          I THINK THAT THE ONE WAY TO GO THROUGH IT BECAUSE
8    THE SEPARATE STATEMENT IDENTIFIES NUMEROUS QUESTIONS,
9    SCORES OF QUESTIONS AS I SAY AT WHICH ONLY 12 HAD AGREED TO
10   BE ANSWERED.  THERE ARE AT LEAST SEVEN SORT OF QUICK
11   CATEGORIES WE COULD HIT ABOUT WHAT AREAS THEY ARE TAKING
12   THE POSITION ARE PRIVILEGED.
13         THE FIRST IS BASICS ABOUT THE DOCUMENT ITSELF WHICH
14   DO NOT REFLECT WORK PRODUCT, DO NOT SHOW MENTAL
15   IMPRESSIONS.  AND I MENTIONED THAT BEFORE THINGS SUCH AS
16   WHO ARE THE COUNSEL LISTED ON THE FACE PAGE?  WHO ARE THE
17   COUNSEL ON THE SERVICE PAGE?  WHO IS IDENTIFIED AS JONES'
18   COUNSEL?  IS THERE A NO-FEE GOVERNMENT CODE STAMP ON THE
19   DOCUMENT?  IS IT IDENTIFIED AS A RELATED CASE?
20         THERE ARE OTHER THINGS THAT APPEAR ON THE FACE OF
21   THE PLEADING THAT WOULD TELL YOU WHO WAS THE INTENDED PARTY
22   TO FILE SUCH A PLEADING AND HOW FAR ALONG HAD IT GOTTEN.
23   THOSE ARE RELEVANT QUESTIONS TO US.
24         THE COURT:  BEFORE YOU GET TO THAT, I'M CONCERNED
25   ABOUT WHETHER THE CITY PRODUCED THE RIGHT WITNESS.  THIS
26   WAS A PERSON SUPPOSED TO BE THE PERSON MOST KNOWLEDGEABLE.
27   SO THIS WAS THE INDIVIDUAL AT THE CITY WHO KNOWS THE MOST
28   ABOUT THIS CASE.
```

1        I SEE FROM THE QUESTIONS THAT APPARENTLY IS NOT THE

2   MOST KNOWLEDGEABLE.  AND MAYBE IT'S NOT THE RIGHT WITNESS

3   BECAUSE THE QUESTION ON PAGE 6 OF THE SEPARATE STATEMENT:

4        "DO YOU KNOW WHETHER THE CITY POSSESSES ANY

5   DOCUMENTS RESPONSIVE TO REQUEST NO. 2?"

6        THE WITNESS SAYS HE DOESN'T KNOW.  WITHOUT

7   VIOLATING ATTORNEY-CLIENT PRIVILEGE -- WHAT ATTORNEY-CLIENT

8   PRIVILEGE IS THERE, AS TO WHETHER THE CITY HAS DOCUMENTS OR

9   NOT.

10       QUESTION NO. 2 ON PAGE 6:

11       "AM I CORRECT, SIR, THAT YOU HAVE NO PERSONAL

12  KNOWLEDGE WITHOUT REGARD TO SOURCE?  YOU YOURSELF DO NOT

13  KNOW WHETHER ANY WRITTEN AGREEMENTS OR UNDERSTANDINGS

14  BETWEEN LADWP AND ANTWON JONES OR COUNSEL?"

15       SAME INSTRUCTION, REFUSES TO ANSWER.

16       "DO YOU HAVE ANY KNOWLEDGE WHETHER OR NOT" -- SAYS

17  HE HAS NO KNOWLEDGE.

18       THE QUESTION AS WRITTEN, YOU CITED THE NEGATIVE:

19       "YOU HAVE NO KNOWLEDGE WHETHER OR NOT THERE ARE ANY

20  AGREEMENTS?"

21       HE SAYS THAT IS TRUE.

22       IF THE WITNESS HAS NO KNOWLEDGE THEN WHY IS HE THE

23  PMK?

24       THEN QUESTION:

25       "DID YOU DO ANY INVESTIGATION TO DETERMINE WHETHER

26  LADWP POSSESSES ANY DOCUMENTS?"

27       HE SAID NO, HE DIDN'T DO ANY SEARCH FOR DOCUMENTS.

28       NEXT QUESTION DOES HE KNOW WHETHER THE CITY

1  POSSESSES ANY DOCUMENTS? HE DOESN'T REALLY ANSWER. IT

2  SAYS ATTORNEY-CLIENT PRIVILEGE.

3         QUESTION: "DID YOU MAKE AN INVESTIGATION?"

4         "NO."

5         NEXT QUESTION: DOES HE KNOW WHETHER THE CITY

6  POSSESSES ANY DOCUMENTS?

7         HE SAYS HE CANNOT ANSWER IT. PRIVILEGE.

8         "DID HE DO ANY INVESTIGATION?" AGAIN.

9         HE ALSO SAYS FINALLY HE BELIEVES THAT "A DOCUMENT

10 EXISTS WHICH WILL IDENTIFY ALL THE CUSTOMERS WHO

11 COMPLAINED," BUT I THINK THAT ISSUE HAS BEEN RESOLVED AS

12 COUNSEL INDICATED AND SAID THEY WILL PRODUCE THOSE

13 DOCUMENTS.

14        THEN HE'S ASKED AGAIN DID HE LOOK FOR ANY

15 DOCUMENTS? HE SAYS "NO."

16        GOING BACK TO THE CITY, IS THE CITY GOING TO

17 PRODUCE SOMEBODY ELSE WHO IS MORE KNOWLEDGEABLE?

18        MS. TUFARO: YOUR HONOR, TO THE BEST OF OUR

19 INVESTIGATION, MR. PETERS IS THE CORRECT INDIVIDUAL.

20        DURING OUR MEET AND CONFER WITH DEFENSE COUNSEL, WE

21 INDICATED THAT WE WOULD BE WILLING TO EITHER PROVIDE BY WAY

22 OF DECLARATION OR POSSIBLY A DEPOSITION OF LIMITED PURPOSE

23 TO DEMONSTRATE THAT MR. PETERS WILL HAVE IN FACT AT THAT

24 TIME UNDERTAKEN THE REQUISITE INVESTIGATION NECESSARY FOR A

25 PMQ WITNESS.

26        THE COURT: OKAY. COUNSEL.

27        MR. THOMASCH: YES, YOUR HONOR, WE DO BELIEVE THE

28 ISSUE HERE WASN'T NECESSARILY THE CHOICE OF MR. PETERS, BUT

Exhibit 19
Page 882

```
 1   THE FACT THAT MR. PETERS DELIBERATELY AND INTENTIONALLY DID
 2   NO INVESTIGATION.
 3            THE NOTICE IS NOT OF MR. PETERS.  THE NOTICE IS OF
 4   LADWP.  THE WITNESS NEEDS TO TALK ABOUT THE INFORMATION
 5   REASONABLY AVAILABLE TO LADWP EVEN IF HE DOES NOT
 6   PERSONALLY KNOW IT OR RECALL IT.  HE HAS TO DO AN
 7   INVESTIGATION.  HE CHOSE NOT TO DO THAT.
 8            THE OTHER ISSUE IS THE WITNESS SEEMS TO THINK THAT
 9   ABSOLUTELY EVERYTHING THAT HE LEARNED FROM COUNSEL IS
10   PRIVILEGED, EVEN IF IT'S SIMPLY A NON PRIVILEGED FACT TOLD
11   HIM BY COUNSEL, WELL, THAT IS NOT CORRECT.
12            IT DOESN'T BECOME PRIVILEGED IN RESPONSE TO THE --
13   IF THE SOURCE OF KNOWLEDGE ABOUT WHETHER LADWP, FOR
14   INSTANCE, WHETHER LADWP HAD SENT A BILL TO HIM IN THE WRONG
15   AMOUNT.  IF HE FINDS THAT OUT FROM COUNSEL, IT'S NOT A
16   PRIVILEGED FACT.  THE FACT ITSELF HAS NO LEGAL SIGNIFICANCE
17   AS FAR AS THE ATTORNEY-CLIENT OR ATTORNEY WORK-PRODUCT
18   PRIVILEGE GOES.  THEY HAVE TAKEN THAT POSITION.
19            I HAVE ASKED THEM OVER AND OVER AGAIN IN PREPARING
20   MR. PETERS, WILL MR. PETERS SPEAK WITH THE OTHER COUNSEL IN
21   THE OFFICE AND SPEAK WITH SPECIAL COUNSEL SITTING AT TABLE
22   TO SEE WHAT THEY KNOW.  BECAUSE IF THEY KNOW FACTS, FACTS
23   DO NOT BECOME PRIVILEGED BECAUSE THEY ARE RECEIVED FROM THE
24   ATTORNEY.
25            I HAVE RECEIVED NO ANSWER TO THOSE INQUIRIES.  IT'S
26   A CONTINUING PROBLEM.
27            THE COURT:  LET ME JUST ADVISE COUNSEL.  THE CLERK
28   HANDED ME A NOTE INDICATING THAT IN THE CLASS ACTION CASE,
```

Exhibit 19
Page 883

```
 1   THAT IS JONES VERSUS CITY OF LOS ANGELES IS WHICH

 2   MR. LANDSKRONER IS COUNSEL FOR THE PLAINTIFF, MR. ANTWON

 3   JONES, IT'S BC 577267.  WE HAVE A STATUS CONFERENCE ON

 4   JANUARY 30, 2019.

 5            AND THE ISSUE AS TO CONFLICT OF INTEREST AND

 6   FIDUCIARY OBLIGATIONS AND THE SETTLEMENT THAT WAS REACHED

 7   BETWEEN THE PARTIES MAY COME UP DURING THAT HEARING.

 8            MR. THOMASCH:  YOUR HONOR, OUR NEXT TOPIC TO

 9   DISCUSS APPEARS AT PAGE 13 OF OUR SPECIAL STATEMENT AND WAS

10   AT PAGE 50 OF THE DEPOSITION TRANSCRIPT.

11            THE QUESTION WAS:

12            "IF THE CITY ATTORNEY'S OFFICE FELT THAT THE CITY

13   AND A RECIPIENT OF CITY SERVICES HAD INTEREST IN COMMON,

14   VIS-A-VIS A THIRD PARTY, WOULD IT BE PERMISSIBLE FOR

15   ATTORNEYS FROM THE CITY ATTORNEY'S OFFICE TO DRAFT

16   PLEADINGS AND PROVIDE THAT WORK PRODUCT TO A PRIVATE

17   ATTORNEY TO USE AS HE OR SHE SAW FIT?"

18            MR. PARADIS OBJECTED TO FORM.  SAME OBJECTION.

19   SAME INSTRUCTION.  THE SAME OBJECTION, SAME INSTRUCTION

20   REFERS BACK TO PRIVILEGE, AND THE WITNESS DID NOT ANSWER

21   THE QUESTION.

22            THE NEXT TOPIC IS ONE WE HAVE TALKED ABOUT BEFORE

23   AND IS TERRIBLY IMPORTANT WHICH IS THE QUESTION ASKED AT

24   PAGE 52 OF THE TRANSCRIPT.

25            QUOTE "WHO MADE THE DECISION TO IDENTIFY MR. JONES

26   AS THE NAMED PLAINTIFF IN THE DRAFT JONES VERSUS PWC

27   COMPLAINT?"

28            AT PAGE 3 OF PLAINTIFF'S MEMO OF LAW THEY SAY THAT
```

Exhibit 19
Page 884

```
1   MR. PETERS TESTIFIED TO THAT SUBJECT THAT IS SIMPLY FALSE.

2         THE ANSWER WAS:

3         "I'M AFRAID I CANNOT RESPOND TO THAT WITHOUT

4   VIOLATING THE ATTORNEY-CLIENT PRIVILEGE."

5         LINE 16, PAGE 52 OF THE DEPOSITION TRANSCRIPT.  THE

6   NEXT QUESTION:

7         "WHAT WAS THE BASIS FOR THE DECISION TO PUT

8   MR. JONES' NAME IN THE CAPTION?"

9         AGAIN PRIVILEGE ASSERTED, NO ANSWER.

10        NEXT:

11        "WHY WAS MR. JONES, AS OPPOSED TO ONE OF THE

12  OTHERS, SELECTED AS THE NAMED PLAINTIFF IN THE JONES V. PWC

13  COMPLAINT?"

14        PRIVILEGE ASSERTED.  NO ANSWER.

15        FINALLY:

16        "DID THE AMOUNT OF TIME MR. JONES HAD BEEN LIVING

17  IN HIS THEN CURRENT APARTMENT HAVE A ROLE IN THE

18  IDENTIFICATION OF MR. JONES AS THE NAMED PLAINTIFF?"

19        ANSWER:

20        "I CAN'T RESPOND TO THAT WITHOUT VIOLATING THE

21  PRIVILEGES."

22        AGAIN, MR. JONES IS NOT REPRESENTED BY THE CITY.

23  AND WE DO NOT BELIEVE THAT -- THEY COULD HAVE USED A JOHN

24  DOE PLAINTIFF, OR IF THIS REALLY WAS THE FUNCTIONAL

25  EQUIVALENT OF A LEGAL MEMORANDUM, WHICH I DON'T ACCEPT, BUT

26  THAT IS WHAT HAS BEEN POSTULATED, IF IT REALLY WAS IN

27  EFFECT THAT, THERE WOULD NOT NEED TO BE.  YOU COULD JUST

28  HAVE PLAINTIFF VERSUS PWC.
```

1          THE COURT: MAYBE WE OUGHT TO CLARIFY THIS.

2          DOES THE CITY TAKE THE POSITION THAT MR. JONES WAS

3   AT SOME TIME REPRESENTED BY THE CITY ATTORNEY'S OFFICE? OR

4   COUNSEL FOR THE CITY?

5          MS. TUFARO: NO, YOUR HONOR.

6          THE COURT: AT NO TIME WAS MR. JONES REPRESENTED BY

7   COUNSEL FOR THE CITY; IS THAT RIGHT?

8          MS. TUFARO: NO, YOUR HONOR. NO.

9          THE COURT: OKAY.

10          MR. THOMASCH: THAT WAS ISSUE NO. 3, YOUR HONOR. I

11   DON'T WANT TO BE LABOR IT.

12          ISSUE NO. 4 IS WHETHER THE WITNESS INQUIRED OF

13   OTHER COUNSEL AT LADWP OR IN THE CITY ATTORNEY'S OFFICE AS

14   TO WHETHER ANYONE PROVIDED A COPY OF THE COMPLAINT TO

15   MR. JONES OR MR. LANDSKRONER.

16          THE WITNESS SAID HE DIDN'T HAVE ANY KNOWLEDGE AS TO

17   WHETHER THAT WOULD HAPPEN. AND THAT HE HIMSELF DID NOT DO

18   SO OR ASK ANYONE ELSE TO DO.

19          BUT HE MADE NO INQUIRY OF OTHERS. HE DOESN'T KNOW

20   WHAT IS KNOWN TO THE DEPARTMENT, WHAT IS KNOWN TO LADWP,

21   THAT KNOWLEDGE IS THERE. ALL HE HAS TO DO IS DO AN

22   INVESTIGATION AND ASK PEOPLE, AND WE CAN FIND OUT WHETHER

23   OR NOT ANYONE GAVE THAT INFORMATION TO MR. LANDSKRONER OR

24   MR. JONES.

25          THE NEXT TOPIC IS "ANY ORAL OR WRITTEN

26   UNDERSTANDINGS BETWEEN THE CITY ON ONE HAND AND MR. JONES,

27   MR. LANDSKRONER, OR OTHERS REPRESENTING MR. JONES ON THE

28   OTHER."

Exhibit 19
Page 886

1          THAT GOES DIRECTLY TO THE CONFLICT OF INTEREST AND

2   THE QUESTION OF WHO WAS REPRESENTING WHO AND WHAT WERE THEY

3   ATTEMPTING TO ACCOMPLISH.

4          IF THERE WERE ORAL OR WRITTEN UNDERSTANDINGS, THEY

5   ARE JUST NOT PRIVILEGED.  BUT WE CANNOT EVEN FIND OUT

6   WHETHER THEY EXIST.  WE ARE FIGHTING ABOUT A PRIVILEGE ON A

7   DOCUMENT THEY MAY LATER SAY DOES NOT EXIST.

8          THE COURT:  I WOULD CERTAINLY LIKE TO KNOW ABOUT

9   THAT BECAUSE THAT WAS NOT DISCLOSED TO ME DURING THE

10  HEARINGS ON THE MOTION TO APPROVE THE CLASS ACTION

11  SETTLEMENT.

12         MR. THOMASCH:  THAT GOES DIRECTLY TO THE NEXT TOPIC

13  WHICH WAS WHETHER THE WITNESS SAW MR. LANDSKRONER'S

14  DECLARATION DATED FEBRUARY 7, 2017, BEFORE IT WAS FILED.

15         NOW THAT WAS ONE QUESTION THAT WENT PAST THE PERIOD

16  IN WHICH THE LAWSUIT WAS BEING DRAFTED OR THE FILING OF THE

17  JONES QUESTION.

18         BUT OBVIOUSLY ON FEBRUARY 7, 2017, AFTER THERE WERE

19  ISSUES ABOUT THE POSSIBLE INDEPENDENCE OF COUNSEL AND

20  POSSIBLE COLLUSION, MR. LANDSKRONER PUT IN A DECLARATION.

21  AND IN THAT DECLARATION HE WENT OUT OF HIS WAY TO SAY HE

22  HAD NEVER WORKED WITH OR AGAINST ANYONE IN THE CITY

23  ATTORNEY'S OFFICE.  AND HE HAD NEVER WORKED WITH OR AGAINST

24  ANYONE AT LINER LLP WHICH WAS THE COUNSEL OF RECORD.

25         WHAT WE DON'T KNOW IS HOW MUCH SPECIAL COUNSEL WAS

26  WORKING BEHIND THE SCENES, IF AT ALL, WITH RESPECT TO THAT

27  SETTLEMENT.  BUT WE KNOW THAT MR. LANDSKRONER DID NOT

28  INDICATE THAT HE HAD AN ONGOING RELATIONSHIP, ONE THAT HAD

```
1   BEEN FORMED BEFORE, VERY MUCH -- VERY SHORTLY BEFORE THE
2   DECLARATION THAT HE PUT IN SAYING THAT HE HADN'T WORKED
3   WITH THE CITY OR THE CITY ATTORNEY'S OFFICE OR LADWP.
4          BEFORE HE SAID THAT, HE WAS CO-COUNSEL WITH
5   MR. PARADIS IN TWO DIFFERENT CLASS ACTIONS THAT WERE
6   PENDING IN OTHER STATES.  THOSE CASES, AS I UNDERSTAND IT,
7   AND I DON'T HAVE COMPLETE KNOWLEDGE OF THIS, BUT THOSE
8   CASES BY PUBLIC RECORD APPEAR TO BE ONGOING AT THE VERY
9   TIME THAT MR. LANDSKRONER WAS SAYING I DON'T KNOW AND I
10  DON'T WORK WITH ANYONE AND I HAVEN'T EVEN BEEN OPPOSITE
11  ANYONE THAT IS IN THE CITY ATTORNEY'S OFFICE OR AT LINER.
12         BUT THE CITY AT THAT TIME IN 2017, MR. PARADIS WAS
13  HEADING THE REMEDIATION WHOLLY OUTSIDE OF THE REALM OF
14  COUNSEL.  HE WAS HEADING THE REMEDIATION.  HE IS INVOLVED
15  IN EVERY ASPECT OF SOME OF THESE ISSUES AND COULD BE
16  INVOLVED HEAVILY IN THE SETTLEMENT, BUT MR. LANDSKRONER DID
17  NOT DISCLOSE THAT.
18         THAT HAS US VERY, VERY, CONCERNED AS TO THE FACT
19  THAT MR. LANDSKRONER ISN'T DISCLOSING THE RELATIONSHIP WITH
20  MR. PARADIS, BUT BACK IN 2015 MR. LANDSKRONER'S CLIENT IS
21  IDENTIFIED BY MR. PARADIS IN A COMPLAINT THAT HE DRAFTS UP
22  AND TRIES TO HAVE MR. JONES SUE US INSTEAD OF SUING THE
23  CITY.
24         THE COURT:  MR. PARADIS IS INVOLVED IN MEDIATION IN
25  THE CLASS ACTION CASE --
26         MR. THOMASCH:  I DO NOT KNOW.
27         THE COURT:  -- OR THE OTHER ONE?
28         MR. THOMASCH:  I DO NOT KNOW IF HE'S INVOLVED IN
```

1    THE MEDIATION.

2           THE COURT:  I MEAN REMEDIATION.

3           MR. THOMASCH:  REMEDIATION.  IN REGARD TO THE

4    REMEDIATION, MY UNDERSTANDING IS THAT PURSUANT TO A

5    SEPARATE CITY CONTRACT, INDEPENDENT OF HIS SERVICE AS

6    SPECIAL COUNSEL IN THIS CASE, THE CITY HAS AWARDED HIM A

7    SEPARATE CONTRACT IN WHICH HIS LAW FIRM SERVES AS THE

8    REMEDIATION ADMINISTRATOR; HE OVERSEES THE REMEDIATION.

9           YOU WILL REMEMBER EARLIER WHEN WE HAD DISCUSSIONS

10   ABOUT TMG.  WHEN MR. PARADIS TOOK OVER THE REMEDIATION, ONE

11   OF THE FIRST THINGS HE DID WAS FIRE TMG THEN LATER TMG WAS

12   BROUGHT BACK IN AND NOW MR. PARADIS REPRESENTS TMG AS WELL

13   AS THE CITY IN THIS CASE.

14          HIS ROLE OF HEADING THE REMEDIATION IS CENTRAL TO

15   THE PHASE OF THE CASE WE ARE ABOUT TO ENTER INTO BECAUSE

16   THEY ARE CLAIMING, I BELIEVE, ALTHOUGH WE LOOKED FOR

17   CLARITY, I BELIEVE THEY ARE CLAIMING THAT MONEY SPENT IN

18   THE REMEDIATION, WHICH IS SUPPOSEDLY PURSUANT TO THE

19   SETTLEMENT WITH MR. LANDSKRONER'S CLIENT, THAT THAT MONEY

20   NOW IS THE RESPONSIBILITY OF PWC THAT THEY ARE GOING TO

21   ASSERT AS DAMAGES IN THIS CASE REMEDIATION COSTS IN THAT

22   CASE.

23          THE COURT:  DIDN'T MR. LANDSKRONER WORK WITH

24   MR. PARADIS, LET ME FINISH THE QUESTION, IN THE LAWSUIT

25   INVOLVING THE CLEVELAND WATER AND POWER ISSUES?

26          MR. THOMASCH:  THERE WAS NO LAWSUIT INVOLVING THE

27   CLEVELAND WATER AND POWER ISSUES.  ALTHOUGH

28   MR. LANDSKRONER, I BELIEVE, HAS A RELATIONSHIP WITH

1   MR. BENDER WHO WAS INVOLVED IN CLEVELAND AND WHO THEN CAME

2   TO BECOME, AS IN THIS CASE AS WELL, AND AS YOU MAY RECALL

3   FROM LAST WEEK, IN THE AMENDED JONES COMPLAINT.

4           AFTER THE TIME OF THE DRAFT JONES V. PWC COMPLAINT,

5   THE AMENDED JONES VERSUS LADWP COMPLAINT CONTAINS A WHOLE

6   SECTION IN IT ABOUT HOW PWC SUPPOSEDLY MADE A MESS OF THE

7   CLEVELAND IMPLEMENTATION.  OF COURSE THAT HAS NOTHING TO DO

8   WITH MR. JONES' INDIVIDUAL CLAIM.

9           IT WAS JUST JONES HAD A CLAIM AGAINST LADWP.  HE

10  FILED THE CLAIM ON THE 1ST OF APRIL, 2015, AND HIS LAWYERS

11  SOUGHT TO SETTLE THE CASE ON THE 2ND, ONE DAY LATER.  I

12  BELIEVE THIS WAS PREPACKAGED, BUT I DON'T HAVE THE EVIDENCE

13  YET.

14          THE COURT:  MY QUESTION WAS DIRECTED WITH REGARD TO

15  THE ISSUES CONCERNING THE WORK IN CLEVELAND.

16          WAS MR. LANDSKRONER INVOLVED IN ANY OF THAT EVEN

17  THOUGH IT DIDN'T GO TO A LAWSUIT?

18          MR. THOMASCH:  I DON'T KNOW.  I DON'T KNOW.

19          I KNOW THAT MR. BENDER, AND I BELIEVE IT'S

20  MR. LANDSKRONER THAT BRINGS MR. BENDER INTO THIS CASE,

21  MR. BENDER WAS INVOLVED BY WORKING ON WHAT WAS CALLED THE

22  BLACKENED BEACH TURNAROUND REPORT IN CONNECTION WITH

23  CLEVELAND.  THE RELATIONSHIPS BETWEEN CLEVELAND AND THIS

24  CASE ARE EXTENSIVE, BUT EXACTLY MR. LANDSKRONER'S ROLE, I

25  DO NOT KNOW.

26          WE DON'T KNOW EVEN THE MOST MUNDANE FACTS THAT

27  SHOULD BE ON THE LOG ITSELF.  MR. PARADIS, EVERY

28  EXPLANATION FROM THE CITY SAYS MR. PARADIS DRAFTED THE

```
 1   JONES PWC COMPLAINT.  YET DOCUMENT 71 HAS BEEN ON FOUR, AT
 2   LEAST FOUR, DIFFERENT PRIVILEGE LOGS.  ALWAYS DOWN AS JUST
 3   WORK PRODUCT UNTIL THE FOURTH LOG AND THEN SUDDENLY WORK
 4   PRODUCT AND ATTORNEY-CLIENT PRIVILEGE.  BUT THAT HAS BEEN
 5   THERE SINCE THE FIRST LOG, AND IT DOES NOT REFERENCE
 6   MR. PARADIS IN ANY RESPECT.
 7         NOW THERE IS THE LOG, WE HAVE BEEN THROUGH THIS IN
 8   PRIOR DISCUSSIONS BECAUSE OF THE WAY THEY WERE TREATING
 9   DOCUMENTS THAT HAD NO ATTORNEY CONNECTED TO THEM AS
10   PRIVILEGED.  AND THEY SAID, WELL, THAT IS BECAUSE THERE WAS
11   AN ATTORNEY IN THE EMAIL CHAIN AT AN EARLIER POINT IN TIME,
12   AND IT'S ALL PRIVILEGED AS A RESULT.
13         AND WE REACHED AN AGREEMENT THAT IF AN ATTORNEY HAD
14   ANY INVOLVEMENT IN THE SERIES OF COMMUNICATIONS THAT THAT
15   ATTORNEY HAD TO BE IDENTIFIED ON THE LOG AS WHAT IS CALLED,
16   THEIR TERM, "ADDITIONAL ATTORNEY COMMUNICANT."
17         MR. PARADIS IS NOT IDENTIFIED AS SUCH.  SO HOW IS
18   IT THAT THE DOCUMENT THAT HE DRAFTED, IF WORK PRODUCT, DOES
19   NOT SHOW HIM ON THE LOG.  AND THE WITNESS WHO WAS PRODUCED
20   SAID "I'VE NEVER SEEN THE PRIVILEGE LOG.  I HAVEN'T
21   REVIEWED THE COMPLAINT IN THREE YEARS, AND I HAVE NEVER
22   LOOKED AT THE PRIVILEGE LOG."
23         SO WE DON'T HAVE ANY ANSWERS TO THE QUESTIONS AS TO
24   WHY, BUT WE WOULD LIKE TO KNOW WHERE THE DOCUMENT WENT
25   BECAUSE THAT IS STUFF THAT SHOULD BE ON A LOG.  IT'S NOT
26   PRIVILEGED IN AND OF ITSELF.
27         AND THE LOG IS OBVIOUSLY DEFICIENT IF THE GENESIS
28   OF THE DOCUMENT IS SUPPOSED TO BE MR. PARADIS AND HIS NAME
```

Exhibit 19
Page 891

1   IS NOT ON THE LOG.  WHAT WE DO KNOW IS WHAT THE LOG

2   REFLECTS IS ESKEL SOLOMON FORWARDED THE DOCUMENT, NO ONE

3   HAS EVER SAID HE DRAFTED IT, HE FORWARDED THE DOCUMENT TO

4   SEVEN OTHERS WITHIN THE CITY ATTORNEY'S OFFICE.

5           NOW JUST THE WAY THAT EMAIL WORKS, IF HE'S

6   FORWARDING IT, IT MEANS IT CAME TO HIM FROM SOMEONE ELSE.

7   HE THEN SEES IT, AND HE HITS FORWARD INSTEAD OF WRITING A

8   NEW EMAIL AND THAT THEN GOES ON.

9           AND IF HE FORWARDS IT, IT WILL TAKE THE ATTACHMENT

10  WITH IT, BUT WHERE DID HE GET IT FROM?  WE DON'T KNOW.  WE

11  HAVE ASKED; WE DON'T KNOW.  THEY WILL NOT PRODUCE A WITNESS

12  THAT IS BOTH KNOWLEDGEABLE AND WILLING TO TESTIFY TO

13  INFORMATION THAT SHOULD HAVE BEEN ON THE LOG IN THE FIRST

14  INSTANCE, AND WE'VE BEEN AFTER THIS NOW FOR 12 MONTHS, MORE

15  IF YOU GO BACK TO WHEN WE MADE THE MOTION.

16          YOUR HONOR, LADWP'S MOTION FOR A PROTECTIVE ORDER

17  SHOULD BE DENIED.  PWC'S MOTION TO COMPEL AND FOR SANCTIONS

18  SHOULD BE GRANTED.  THE DEPOSITION SHOULD BE RESUMED.  THE

19  WITNESS SHOULD BE REQUIRED TO DO AN INVESTIGATION TO LEARN

20  WHAT IS REASONABLY AVAILABLE TO LADWP AND THAT SHOULD

21  INCLUDE QUESTIONING MR. PARADIS AND OTHER COUNSEL FOR THE

22  CITY ABOUT NON PRIVILEGED FACTS KNOWN TO HELP.

23          THE QUESTIONS ON THE TOPICS THAT WE HAVE JUST

24  DISCUSSED SHOULD BE ANSWERED.  THE DOCUMENTS SHOULD BE

25  PRODUCED.  AND, OF COURSE, WHEN WE REACH THE POINT OF THE

26  DISCUSSION OF THE DEPOSITION IN WHICH I REFERENCED THE

27  LANDSKRONER DECLARATION WHICH DENIES KNOWLEDGE OF ANYONE ON

28  THE CITY'S SIDE, BUT DOESN'T REFERENCE THE PARADIS LAW FIRM

1    OR MR. PARADIS HIMSELF, AT THAT TIME MR. PARADIS ABRUPTLY

2    TERMINATED THE DEPOSITION AND LEFT.

3         WE WOULD WANT TO NOW CONTINUE, AND I DON'T HAVE A

4    SERIES OF QUESTIONS THAT HAVE BEEN ASKED AND OBJECTED TO

5    BECAUSE THEY LEFT.  WE SHOULD HAVE FULL REIN TO REACH OUT.

6    AND IF THEY ARE GOING TO TAKE THE POSITION THAT MR. PARADIS

7    AND MR. LANDSKRONER SHARE A PRIVILEGE THEN THEY SHOULD

8    DEFINE WHEN THE PRIVILEGE BEGAN, WHAT THE PRIVILEGE IS,

9    WHETHER IT'S STILL GOING ON EVER ENDED.

10        BUT WE WILL LITIGATE THE ISSUE OF PRIVILEGE IF THEY

11   WANT, BUT WE HAVE TO KNOW WHAT PRIVILEGE THEY ARE ASSERTING

12   AND THE CIRCUMSTANCES THEY ALLEGE GIVES RISE TO A PRIVILEGE

13   BECAUSE IT'S A PRIVILEGE I HAVE NEVER HEARD OF.

14        WHEN PARTIES SUE MY CLIENT I'M NOT IN A PRIVILEGED

15   RELATIONSHIP WITH OPPOSING COUNSEL, AND I TEND NOT TO WRITE

16   THEIR PAPERS FOR THEM.  SO I DON'T UNDERSTAND WHAT THE

17   PRIVILEGE IS THEY ARE CLAIMING, BUT THEY REFUSE TO

18   ARTICULATE IT.  IT MAY BE THIS, IT MAY BE THAT.

19        THERE IS NO MEDIATION PRIVILEGE THAT GOES BACK TO

20   2015 WHEN THERE WASN'T EVEN A LAWSUIT.  THE MEDIATION DOES

21   NOT HAVE RETROACTIVE EFFECT.  IT ONLY BEGINS AND IT'S

22   PRETTY SIGNIFICANTLY LIMITED TO THE PAPERS THAT ARE

23   EXCHANGED IN MEDIATION, AND WE HAVE NOT SOUGHT THOSE.

24        WE ARE SEEKING NOTHING THAT A MEDIATION PRIVILEGE

25   WOULD COVER, AND IF THERE WAS ANOTHER PRIVILEGE BEING USED

26   AGAINST US AS A SHIELD WE DESERVE TO KNOW WHAT IT IS SO WE

27   CAN LITIGATE THE ISSUE TO CONCLUSION.

28        THANK YOU, YOUR HONOR.

1          THE COURT:  THANK YOU.

2          ANY RESPONSE FROM PLAINTIFF?

3          MS. TUFARO:  JUST VERY BRIEFLY, YOUR HONOR.  I'LL

4    JUST STAND OVER HERE.

5          IN ORDER TO DECIDE PLAINTIFF'S MOTION FOR

6    PROTECTIVE ORDER, WHAT PLAINTIFF HAS ASKED THE COURT TO DO

7    IS TAKE A LOOK AT THE COURT'S ORDER AND COMPARE IT TO THE

8    DEPOSITION TESTIMONY THAT WAS GIVEN PURSUANT TO THAT ORDER.

9          THE JANUARY 11 ORDER IS VERY SPECIFIC.  IT SAYS

10   THAT PWC IS ALLOWED TO TAKE A PMQ DEPOSITION TO QUOTE "LAY

11   A FOUNDATION AS TO THE PARTY ON BEHALF OF WHOM THE

12   COMPLAINT WAS DRAFTED AND THE REASONS FOR IT INCLUDING, BUT

13   NOT LIMITED TO, HOW THE DOCUMENT WAS PREPARED AND THE

14   CIRCUMSTANCES SURROUNDING THAT DOCUMENT." THAT IS TWO

15   TOPICS WHO THE COMPLAINT WAS DRAFTED FOR, AND WHY THE

16   COMPLAINT WAS DRAFTED.

17         NOW WE HAVE TO TAKE A LOOK AT MR. PETERS'

18   TESTIMONY, AND I THINK THAT WE'LL REALIZE THAT MR. PETERS

19   DID IN FACT SATISFY THE COURT'S ORDER.  SPECIFICALLY

20   MR. PETERS TESTIFIED THAT AS THE CLIENT, HE IS THE CLIENT,

21   INSTRUCTED OUTSIDE COUNSEL TO DRAFT THE JONES VERSUS PWC

22   COMPLAINT THAT IS AN INSTRUCTION FROM A CLIENT TO AN

23   ATTORNEY.

24         FURTHERMORE, MR. PETERS TESTIFIED THAT HE, AS THE

25   CLIENT, GAVE THAT INSTRUCTION IN ORDER TO SEE IF THERE WAS

26   A WAY FOR RATEPAYERS TO GET COMPENSATION DIRECTLY FROM THE

27   ENTITY THAT HE BELIEVED WAS RESPONSIBLE FOR DWP'S BILLING

28   PROBLEMS, OR IF THE CITY ITSELF WOULD HAVE TO FILE SUIT

1    THAT IS A REQUEST FOR LEGAL ADVICE.

2         ADDITIONALLY MR. PETERS TESTIFIED THAT JONES WAS

3    IDENTIFIED IN THE DRAFT COMPLAINT BECAUSE HE WAS ONE LADWP

4    CUSTOMER THAT HAD COMPLAINED TO LADWP ABOUT BEING

5    OVERBILLED.

6         THE COURT:  HIS NAME WAS JUST PULLED OUT OF A HAT?

7    OR WAS THERE SOME EARLIER COMMUNICATIONS ABOUT IT WITH

8    JONES?

9         MS. TUFARO:  AGAIN, YOUR HONOR, THE ORDER IN THIS

10   CASE ASKED ABOUT WHO THE COMPLAINT --

11        THE COURT:  I'M ASKING YOU.

12        WAS THE NAME -- WHERE DID THEY COME UP WITH JONES'

13   NAME AND SAID HE IS A RATEPAYER INSTEAD OF SMITH THEY

14   PICKED OUT JONES.

15        HOW DID JONES EARN THE HONOR OF BEING NAMED?

16        MS. TUFARO:  THAT IS CLEARLY A QUESTION WITHIN THE

17   ATTORNEY WORK PRODUCT.  IF THE CLIENT --

18        THE COURT:  WHAT IS THE WORK PRODUCT IN CHOOSING

19   YOUR ADVERSARY?

20        MS. TUFARO:  THAT IS OBVIOUSLY -- THERE IS

21   OBVIOUSLY A THOUGHT PROCESS THAT GOES ON BY COUNSEL

22   PURSUANT TO A REQUEST FROM ITS CLIENT THAT IS OUR POSITION

23   THAT IT'S COVERED BY THE ATTORNEY WORK PRODUCT.

24        THE COURT:  WAIT A SECOND THAT IS IMPORTANT.

25        SO THE CLIENT MADE A DECISION WHO THE ADVERSARY IS

26   GOING TO BE?

27        MS. TUFARO:  NO, YOUR HONOR, THAT IS NOT WHAT I'M

28   SAYING AT ALL.

1          THE COURT:  IT'S AN INSTRUCTION TO USE JONES.

2          MS. TUFARO:  YOUR HONOR, WHAT I'M SAYING IS THAT IF

3    THE CLIENT REQUEST HIS COUNSEL PROVIDE HIM WITH INFORMATION

4    THAT IS ABOUT LEGAL ADVICE, AND COUNSEL MAKES A DECISION,

5    WHETHER IT'S IN COMMUNICATION WITH ITS CLIENT OR NOT, THAT

6    IS COUNSEL'S THOUGHT PROCESS THAT IS ABSOLUTE WORK PRODUCT.

7          THE COURT:  ABSOLUTE.

8          MS. TUFARO:  YES.

9          THE COURT:  ABSOLUTE.

10         WHO DECIDED THAT THE PLAINTIFF WAS GOING TO BE

11   JONES?

12         MS. TUFARO:  YOUR HONOR, WHAT I'M SAYING TO YOU IS

13   ANYTHING BEYOND THE SCOPE OF YOUR HONOR'S ORDER IS NOT

14   SOMETHING THAT MR. PETERS WOULD BE TESTIFYING ABOUT.

15         THE COURT:  LET'S TAKE IT OUT OF THE REALM OF THIS

16   CASE.  LET'S TAKE IT OUT OF THE REALM OF THIS CASE.

17         A CLIENT COMES IN TO SEE AN ATTORNEY AND SAYS, THE

18   CLIENT'S NAME IS SMITH, AND MR. SMITH SAYS "I WANT TO SUE

19   BAKER."

20         YOU ARE TELLING ME THE DECISION ABOUT WHO SHOULD BE

21   THE PLAINTIFF, AND WHO SHOULD BE THE DEFENDANT IS

22   PRIVILEGED?

23         MS. TUFARO:  YES, YOUR HONOR, I'M SAYING THAT.

24         THE COURT:  REALLY?

25         MS. TUFARO:  YES, I AM.

26         THE COURT:  THAT'S INTERESTING.  GO AHEAD.

27         MS. TUFARO:  I'M SAYING IT'S ATTORNEY WORK PRODUCT.

28         THEN FINALLY MR. PETERS TESTIFIED THAT THE

```
1    COMPLAINT WAS CIRCULATED TO CITY PERSONNEL AND THAT

2    MR. PETERS NEVER DIRECTED THAT THE JONES VERSUS PWC

3    COMPLAINT BE DISSEMINATED TO ANY INDIVIDUAL NOT ASSOCIATED

4    WITH THE CITY THAT GOES TO THE ISSUE OF WAIVER.

5             SO THE TESTIMONY OF MR. PETERS ESTABLISHES THREE

6    VERY SALIENT FACTS.  FIRST, IT ESTABLISHES THAT MR. PETERS

7    BY AND THROUGH -- THE CITY BY AND THROUGH MR. PETERS

8    DIRECTED COUNSEL TO DRAFT THE COMPLAINT;

9             SECOND, IT ESTABLISHES THAT THE COMPLAINT WAS

10   DRAFTED FOR THE PURPOSES OF PROVIDING THE CITY WITH LEGAL

11   ADVICE;

12            AND, FINALLY, IT ESTABLISHES THAT THERE HAD NOT

13   BEEN ANY DISSEMINATION THAT MR. PETERS WAS AWARE OF TO ANY

14   INDIVIDUAL NOT ASSOCIATED WITH THE CITY.

15            SO THAT DEMONSTRATES WHEN VIEWED TOGETHER THAT THE

16   JONES VERSUS PWC COMPLAINT IS PROTECTED FROM DISCLOSURE BY

17   THE ATTORNEY-CLIENT PRIVILEGE OR THE ATTORNEY WORK-PRODUCT

18   DOCTRINE AND THAT NO WAIVER HAS OCCURRED.

19            BUT EVEN MORE IMPORTANTLY FOR OUR PURPOSES TODAY,

20   IT DEMONSTRATES THAT MR. PETERS' TESTIMONY SATISFIED THE

21   JANUARY 11 ORDER.

22            NOW ONE THING THAT MR. THOMASCH RAISED IS REALLY

23   THE WHOLE BASIS WHY WE'RE HERE TODAY.  THE WHOLE BASIS

24   MR. THOMASCH HAS THEORIZED HAS TO DO WITH SOME SORT OF

25   COLLUSION BASED UPON THE DECISION TO SEEK DAMAGES IN THIS

26   CASE FOR OVERBILLING THAT HAD BEEN REFUNDED TO CONSUMERS IN

27   CONNECTION WITH THE JONES CASE.

28            PLAINTIFF IS NOT AWARE OF ANY LEGAL THEORY THAT
```

```
 1    WOULD PERMIT PLAINTIFF TO SEEK DAMAGES THAT WERE REFUNDED
 2    TO CONSUMERS FOR OVERBILLING IN CONNECTION WITH THAT CLASS
 3    ACTION THAT IS LEGALLY DEFICIENT.
 4         AND NO. 2 IT'S FACTUALLY DEFICIENT BECAUSE
 5    PLAINTIFF IS NOT SEEKING DAMAGES FOR REFUNDS FOR
 6    OVERBILLING.  BUT WE CANNOT GET TO THE DAMAGE PHASE IN THIS
 7    CASE SO WE CAN PRESENT THAT TO YOUR HONOR BECAUSE WE'RE TOO
 8    BUSY FIGHTING ABOUT COLLUSION THAT DID NOT EXIST.
 9         THE COURT:  I THINK IF THERE IS NO COLLUSION THEN
10    IT'S VERY EASY TO PRODUCE EVIDENCE TO THAT EFFECT.
11         MS. TUFARO:  YOUR HONOR, WHAT IS AT ISSUE HERE IS
12    WHETHER OR NOT WE'VE SATISFIED THE COURT'S ORDER.  WE
13    COULD -- THERE ARE A MILLION THINGS THAT PEOPLE COULD FIND
14    INTERESTING OR WANT TO KNOW MORE ABOUT.  BUT THE REAL ISSUE
15    AT THE END OF THE DAY IS WHETHER OR NOT PLAINTIFF SATISFIED
16    THE COURT'S ORDER.
17         AND ON THAT BASIS, YOUR HONOR, WE'RE GOING TO LEAVE
18    THE REST OF OUR ARGUMENTS TO OUR PAPERS AND THAT IS IT.
19         THE COURT:  ALL RIGHT.  THANK YOU.
20         MR. THOMASCH:  YOUR HONOR, TWO VERY QUICK POINTS.
21         THE COURT:  MR. KIESEL FIRST.
22         MR. KIESEL:  THANK YOU, VERY MUCH.
23         TWO THINGS.  NO. 1, I WANT TO POINT OUT THE REASON
24    WHY WE WENT FORWARD WITH THE DEPOSITION WAS BECAUSE THE
25    COURT WAS CONCERNED THAT WE MIGHT GET INTO PRIVILEGES AND
26    WANTED TO KNOW HOW DEEP THE DEPOSITION WAS GOING TO GO TO
27    MAKE SURE WE DIDN'T INFRINGE ON THE PRIVILEGE.
28         WE BELIEVE WHERE THE DEPOSITION WENT WAS INFRINGING
```

```
 1   ON THAT ATTORNEY-CLIENT PRIVILEGE.  SO, RESPECTFULLY, IF

 2   THE COURT WERE TO SAY, LOOK, I'M GOING TO ORDER THE

 3   DEPOSITION TO GO FORWARD, THIS DEPOSITION HAS TO GO FORWARD

 4   AND THESE QUESTIONS NEED TO BE ANSWERED.  WHILE THERE ARE

 5   SOME QUESTIONS WHICH WE AGREE OUGHT TO BE ANSWERED, THERE

 6   ARE A NUMBER OF THEM WE HAVE GREAT CONCERN RESPONDING TO.

 7           AND IF THE COURT WERE TO ORDER THE DEPOSITION TO GO

 8   FORWARD, WE WOULD ASK FOR TWO WEEKS, 14 DAYS, TO TAKE A

 9   WRIT, WHICH WOULD BE OUR CLIENT'S REQUEST, TO TAKE A WRIT

10   TO CHALLENGE.  WE DO NOT WANT TO JEOPARDIZE THE PRIVILEGE

11   ISSUES THAT ARE HERE.

12           SO AGAIN, IF THE COURT WERE TO GRANT THE REQUEST,

13   WE WOULD ASK FOR 14 DAYS TO BRING A WRIT IN THAT TIME TO

14   SEEK THE APPELLATE COURT'S EITHER REVIEW OR REJECTION AND

15   THEN PROCEED ACCORDINGLY.

16           ONE FINAL POINT, IF WE COULD TAKE A MOMENTARY BREAK

17   BEFORE WE GET TO THE NEXT THING, I JUST NEED A TWO-SECOND

18   BREAK.

19           THE COURT:  ALL RIGHT.  WE'LL TAKE A FIVE-MINUTE

20   RECESS.

21

22           (BREAK IN PROCEEDING.)

23

24           THE COURT:  ALL RIGHT.

25           ANY ADDITIONAL COMMENTS WITH REGARD TO ANYONE WITH

26   REGARD TO THE MOTION TO COMPEL AND THE MOTION FOR

27   PROTECTIVE ORDER?

28           MR. KIESEL:  THANK YOU, YOUR HONOR, PAUL KIESEL.
```

1           I DO WANT TO CLARIFY ONE THING, AND I THANK YOU FOR

2    LETTING ME TAKE A BREAK THERE.

3           THE COURT ASKED A QUESTION DURING YOUR HEARING WITH

4    RESPECT TO MS. TUFARO WHETHER THE CITY ATTORNEY'S OFFICE

5    EVER REPRESENTED ANTWON JONES OR HAD ANY RELATIONSHIP WITH

6    ANTWON JONES.

7           MR. PARADIS:  YES.

8           MR. KIESEL:  AND THE ANSWER IS NO, THE CITY

9    ATTORNEY NEVER REPRESENTED, NEVER HAD ANY RELATIONSHIP WITH

10   ANTWON JONES.  BUT, I WANT TO CLARIFY SOMETHING SO THERE IS

11   NOTHING INACCURATE ABOUT THE RECORD, MR. JONES AT THE TIME

12   HE WAS CONSIDERING A CASE AGAINST PWC HAD ACTUALLY RETAINED

13   COUNSEL TO CONSIDER FILING SUIT AGAINST PWC, NOT THE CITY

14   OF L. A., BUT PRICEWATERHOUSE COOPERS.

15          WHEN IT BECAME CLEAR THAT MR. JONES WANTED TO SUE

16   THE CITY OF L. A., A CONFLICT IMMEDIATELY OCCURRED WHEN

17   MR. JONES WAS GOING TO SUE THE CITY OF L. A. OR WANTED TO

18   SEEK SUIT FROM THE CITY OF LOS ANGELES.

19          THE CITY ATTORNEY'S OFFICE NEVER HAD ANY

20   RELATIONSHIP TO MR. JONES AT ALL.  BUT I WILL REPRESENT

21   THAT SPECIAL COUNSEL DID HAVE A RELATIONSHIP WITH MR. JONES

22   THAT WAS NOT ADVERSE TO THE CITY OF LOS ANGELES UNTIL

23   MR. JONES WANTED TO PURSUE AN ACTION AGAINST THE CITY AND

24   THAT WAS THE END OF THAT RELATIONSHIP.  THE CITY HAD

25   NOTHING TO DO WITH THAT, BUT I WANTED TO CLARIFY THE RECORD

26   IN THAT REGARD, YOUR HONOR.

27          THE COURT:  THANK YOU.

28          AND WHERE DID MR. JONES COME UP WITH THIS IDEA OF

Exhibit 19
Page 900

1    SUING PRICEWATERHOUSE?

2            MR. KIESEL:  MR. JONES -- LET ME NOT GO ANY

3    FURTHER, YOUR HONOR.  I CERTAINLY DO NOT WANT TO INFRINGE

4    UPON ANY ATTORNEY-CLIENT COMMUNICATION.

5            THE COURT:  OKAY.  ALL RIGHT.  I GUESS I'LL FIND

6    OUT WHERE A RATEPAYER HAS A DIRECT CAUSE OF -- HOW DID HE

7    KNOW THAT PRICEWATERHOUSE DID ANY WORK FOR DWP?

8            MR. KIESEL:  I'M GOING TO REST ON MY STATEMENT,

9    YOUR HONOR.

10           THE COURT:  ALL RIGHT.  THANK YOU.

11           MR. THOMASCH:  YOUR HONOR, I JUST WANT TO NOTE THAT

12   WE HAVE BEEN LABORING THROUGH THE FOUR YEARS OF THIS CASE

13   UNDER THE ASSUMPTION THAT SPECIAL COUNSEL FOR THE CITY OF

14   LOS ANGELES IS SUBSUMED WITHIN THE DEFINITION OF THE CITY.

15           AND THE NOTION THAT THE CITY DIDN'T DO SOMETHING,

16   OR THE CITY DIDN'T KNOW SOMETHING, BUT SPECIAL COUNSEL DID,

17   IS ONE THAT, FRANKLY, STUNS ME AND MEANS I HAVE TO GO BACK

18   AND SORT OF LOOK THROUGH THE LAST FOUR YEARS OF STATEMENTS

19   AND COMMUNICATIONS BECAUSE THAT IS A DISTINCTION WITHOUT A

20   DIFFERENCE.

21           THE SPECIAL COUNSEL IS SPECIAL COUNSEL TO THE CITY

22   OF LOS ANGELES.  AND THEY SHOULD NOT BE ABLE TO SEPARATE

23   THEMSELVES OUT FROM LADWP OR THE CITY ANYMORE THAN SOMEONE

24   IN THE CITY ATTORNEY'S OFFICE COULD DO SO.

25           YOUR HONOR, THAT ASIDE, THERE ARE THREE BRIEF

26   POINTS I WANTED TO MAKE THAT ARE PROMPTED BY COMMENTS OF

27   MS. TUFARO.

28           FIRST, I DO WANT TO JUST CORRECT THE CHRONOLOGY

```
 1   SLIGHTLY.  AS WE KNOW, JANUARY 24, 2015, IS THE DATE OF THE
 2   JONES VERSUS PWC COMPLAINT THAT IS THE SUBJECT THAT BRINGS
 3   US HERE, JANUARY 24, 2015.
 4         JUST OVER TWO WEEKS EARLIER DECEMBER 30, 2014, WAS
 5   THE FILING IN THE NORTHERN DISTRICT OF ILLINOIS OF WRIGHT
 6   VERSUS NATIONSTAR MORTGAGE, LLC ACTION NO. 14-CV-10457 IN
 7   WHICH MR. LANDSKRONER AND MR. PARADIS AND MS. TUFARO ARE
 8   ALL LISTED AS PLAINTIFF'S COUNSEL.
 9         I BELIEVE THAT WAS A REFILING UNDER A DIFFERENT
10   NAME OF AN AUGUST 4, 2014 ACTION ENTITLED REED VERSUS
11   NATIONSTAR MORTGAGE, NO.14-CV-01701, NORTHERN DISTRICT OF
12   OHIO COMPLAINT, AGAIN, SHOWING MR. LANDSKRONER, MR. PARADIS
13   AND MS. TUFARO AS AMONG THE PLAINTIFF'S COUNSEL.
14         SO AUGUST 14 WAS THE FIRST COMPLAINT THEN
15   DECEMBER 30, 2014, THE NEXT AND THEN JUST JANUARY 24, 2015,
16   JONES VERSUS PWC.  AND NOW WE HAVE NEW FACTS ABOUT THE
17   RELATIONSHIP BETWEEN MR. PARADIS AND MR. JONES THAT OCCURS
18   ON THAT DATE.
19         APRIL 1, 2015, IS THE JONES VERSUS CITY OF LOS
20   ANGELES LAWSUIT FILING AND THEN ON OCTOBER 19 --
21         THE COURT:  LET ME ASK YOU, DO YOU HAVE ANY
22   INFORMATION HOW MR. JONES AND MR. LANDSKRONER FOUND EACH
23   OTHER?
24         MR. THOMASCH:  OH, NO, DO I WANT TO KNOW THAT, BUT
25   I DON'T KNOW.  AND I NOW WONDER WHETHER THE ANSWER IS
26   THAT --
27         THE COURT:  THE REASON I ASK THE QUESTION IS
28   BECAUSE MR. JONES PRESUMABLY LIVES IN LOS ANGELES AS A
```

Exhibit 19
Page 902

```
 1    LADWP RATEPAYER, AND MR. PARADIS PRACTICES LAW IN NEW YORK.

 2    AND MR. LANDSKRONER I THINK PRACTICES, IS IT CLEVELAND OR

 3    SOMEPLACE IN OHIO?

 4         MR. THOMASCH:  THE UNUSUAL NATURE OF THAT HAS BEEN

 5    APPARENT TO ME FROM THE START, AND I HAVE NOT RECEIVED AN

 6    ANSWER.  AND I DON'T KNOW THE INFORMATION, BUT I CAN TAKE

 7    THE POSITION WITH CERTAINTY THAT THESE ARE NOT PRIVILEGED

 8    PIECES OF INFORMATION.

 9         COMMUNICATIONS -- THE FORMATION OF ATTORNEY-CLIENT

10    RELATIONSHIP IS NOT THE PRIVILEGED FACT.  WHAT IS

11    PRIVILEGED IS AFTER IT'S FORMED, COMMUNICATIONS BETWEEN

12    THEM, AND WE'RE NOT ASKING FOR THAT.

13         BUT FINDING OUT HOW THEY CAME TO FIND EACH OTHER

14    WITH THIS PWC LINKED IN THE MIDDLE OF IT IS SOMETHING WE'RE

15    VERY INTERESTED IN.

16         THE LAST DATE I WANTED TO BRING TO THE COURT'S

17    ATTENTION WAS OCTOBER 19, 2015.  SO THIS IS SHORTLY SIX

18    MONTHS AFTER THE JONES VERSUS LADWP CASE GOT FILED IN APRIL

19    AND THEN THE NEXT DAY THEY HAD A SETTLEMENT DEMAND, AND

20    THEY ALL GOT TOGETHER TO WORK OUT A SETTLEMENT.

21         OCTOBER 19 OF 2015 THERE WAS A SIGNED AGREEMENT

22    NO. 47361-6 FOR PROJECT MANAGEMENT SERVICES, CUSTOMER

23    INFORMATION SYSTEM REMEDIATION BETWEEN THE EITHER THE CITY

24    AND/OR LADWP ON ONE HAND AND PARADIS LAW GROUP ON THE

25    OTHER.  THAT AGREEMENT IS BACKDATED TO JULY 13, 2015.

26         THE SCOPE OF WORK INDICATES THAT CONTRACTOR, THAT

27    IS MR. PARADIS AND HIS LAW FIRM, CONTRACTOR SHALL PROVIDE

28    PROJECT MANAGEMENT SERVICES NECESSARY TO IMPLEMENT MEASURES
```

```
 1    REQUIRED BY THE REVISED SETTLEMENT AGREEMENT IN THE JONES
 2    ACTION.
 3             SO THAT WAS THE CONNECTION ABOUT HOW WHAT IS GOING
 4    ON IN THE REMEDIATION IS THE SUBJECT OF, APPARENTLY,
 5    DISCUSSIONS AND INTERPLAY BETWEEN PLAINTIFF'S COUNSEL,
 6    MR. LANDSKRONER, AND THE HEAD OF THE REMEDIATION FOR THE
 7    CITY, MR. PARADIS.
 8             AND OUT OF THAT REMEDIATION, I BELIEVE, COMES
 9    CLAIMS FOR REMEDIATION COSTS TO BE CHARGED TO PWC AS A
10    MATTER OF DAMAGES IN THIS CASE.  MS. TUFARO SAID I WAS
11    SPEAKING ABOUT A LINKAGE WITH RESPECT TO OVERBILLING, AND
12    SHE SAID THERE IS NO LEGAL THEORY AND THERE IS NO FACTUAL
13    THEORY.  THERE IS NO CLAIM FOR OVERBILLING.
14             I WILL NOTE THAT EARLIER THE GENERAL MANAGER OF
15    LADWP VERY PUBLICLY SAID ALL OF THE OVERBILLING WILL BE
16    RECOUPED IN THE COURSE OF THIS LITIGATION.
17             THE LAWYERS HAVE WALKED AWAY FROM THAT POSITION AND
18    THEY HAVE PUT IN, IN WRITING, THEY ARE NOT SEEKING
19    OVERBILLING INFORMATION AND SO I WASN'T RAISING THAT.
20             THE ONLY REFERENCE I MADE TO BILLING WAS I ASKED A
21    QUESTION AT THE DEPOSITION AS TO WHETHER MR. JONES EVER
22    ACTUALLY RECEIVED AN INCORRECT BILL.  BECAUSE I CANNOT
23    FIGURE OUT HOW MR. JONES, WITH APPARENTLY A VERY SMALL TIME
24    PERIOD THAT HE WAS EVEN A CUSTOMER, SUDDENLY WOUND UP AS
25    THE LEAD PLAINTIFF IN A CASE THAT JUMPED TO THE HEAD OF THE
26    LINE AND BECAME THE CASE THAT THE CITY REACHED OUT TO
27    SETTLE THAT IS WHAT WAS BOTHERING ME.
28             AND I DON'T EVEN KNOW IF MR. JONES WAS OVERCHARGED
```

1    IN THE FIRST INSTANCE, BUT I ASKED THE QUESTION, AND I WAS
2    TOLD THAT WAS PRIVILEGED.
3         IT'S THROUGH REMEDIATION, NOT THROUGH OVERBILLING,
4    THAT THE RELATIONSHIP BETWEEN MR. LANDSKRONER AND
5    MR. PARADIS MAY BE HIGHLY RELEVANT TO PWC.
6         THIRDLY, MS. TUFARO TALKED EXTENSIVELY ABOUT THE
7    SO-CALLED NARROW ORDER THAT YOUR HONOR ISSUED IN JANUARY OF
8    THIS YEAR AND APPARENTLY TAKES THE POSITION THAT THEY, NOT
9    YOU, ARE BEST SITUATED TO INTERPRET THAT ORDER AND NOT GO
10   BEYOND THAT ORDER.  AND THAT IF YOU LOOK AT THE TESTIMONY
11   OF MR. PETERS, YOU'LL SEE THAT HE FULFILLED YOUR HONOR'S
12   ORDER.
13        FIRST, IT WASN'T A NARROW ORDER.  WORDS LIKE
14   "CIRCUMSTANCES" ARE AS OPEN-ENDED AS WORDS GET.  THE PHRASE
15   "INCLUDING, BUT NOT LIMITED TO" IS IN CONTRA DISTINCTION TO
16   THE WORDS "LIMITED TO."
17        YOUR HONOR CHOSE "INCLUDING, BUT NOT LIMITED TO
18   CIRCUMSTANCES SURROUNDING THE CREATION OF THE DOCUMENT."
19   IT WAS OPEN-ENDED AND BROAD ORDER TO ALLOW FOR, AS THE CASE
20   LAW REQUIRES, A FULL DEVELOPMENT OF THE FACTS TO ASCERTAIN
21   WHETHER A POSITION OF PRIVILEGE IS WELL TAKEN OR NOT.
22        BUT IT IS ULTIMATELY NOT UP TO THEM TO DECIDE WHAT
23   IT MEANS.  AND THE STATEMENT, IF YOU JUST LOOK AT THE
24   TRANSCRIPT, YOU'LL SEE THAT MR. PETERS TESTIFIED FULLY IN
25   RESPONSE TO YOUR HONOR'S ORDER, MR. PETERS TESTIFIED
26   EXACTLY IN LINE WITH THE DECLARATION THAT HE HAD PUT IN IN
27   APRIL OF THIS YEAR BEFORE WE GOT TO THE JUNE HEARING AT
28   WHICH THEY WITHDREW THE MOTION TO QUASH WHICH WAS THE

1   DECLARATION HAD BEEN SUBMITTED.

2          THE DECLARATION OF MR. PETERS IS THE SAME

3   DECLARATION MR. PARADIS PUT IN IN NOVEMBER, 2017.  IN THE

4   COURSE OF 13 MONTHS THEY HAVE SIMPLY REPEATED OVER AND OVER

5   AGAIN THE SAME THING AND HAVE SAID NEITHER I NOR YOU GET TO

6   CAN ANYMORE QUESTIONS ABOUT THAT.

7          AND WE WOULD SUGGEST THEY HAVE NOT MADE THE SHOWING

8   OF PRIVILEGE THAT WE SHOULD HAVE THE PRODUCTION OF THE

9   DOCUMENT AND FULL DISCLOSURE.  BUT WE ARE CERTAINLY

10  PREPARED TO KEEP GOING WITH TRYING TO UNDERSTAND THE FACTS

11  THAT WOULD ALLOW FOR A DETERMINATION.

12         BUT WHAT IS REALLY AT THIS POINT, MAKING ANY

13  FURTHER DEPOSITION UNPRODUCTIVE IS THE APPARENT, BUT

14  UNSTATED, CLAIM OF A PRIVILEGE THAT IS NOT BEING SPECIFIED

15  AS BETWEEN AND AMONG MR. PARADIS, MR. LANDSKRONER, AND

16  MR. JONES.

17         AND UNTIL AND UNLESS WE KNOW WHAT THAT ALLEGED

18  PRIVILEGE IS, WE DON'T HAVE A BASIS TO PROCEED FURTHER ON

19  THE MERITS.  I DO, HOWEVER, REMIND THE COURT THAT THE

20  ISSUES UNDER CCP 2025.410, THE ISSUES WITH REGARD TO

21  WAIVER, APPLY TO THE DEPOSITION QUESTIONING AS WELL AS THE

22  DOCUMENTS FOR PRODUCTION.

23         AND THERE ARE SPECIFIC RULES TO BE FOLLOWED AND

24  THEY WERE IGNORED.  AND THEY SHOULDN'T BE IGNORED WITH

25  IMPUNITY.  THERE WAS A WAIVER HERE, AND IT'S A WAIVER ABOUT

26  A NONEXISTENT PRIVILEGE.  SO IT SHOULDN'T TROUBLE ANYONE TO

27  ORDER PRODUCTION AND FULL DISCOVERY, BUT I DO WANT TO NOTE

28  THAT THE WAIVER WHICH I MENTIONED EARLIER IN RESPONSE TO

Exhibit 19
Page 906

```
1    THE DOCUMENTS IS NOT LIMITED BY STATUTE TO THE DOCUMENTS.

2    IT GOES TO THE NOTICE OF THE DEPOSITION ITSELF.  AND THEIR

3    ATTEMPT TO SAY THAT THE MOTION TO QUASH CONSTITUTES

4    SPECIFIC WRITTEN OBJECTIONS IS SIMPLY WRONG UNDER

5    SUBSECTION C.

6         THEIR CLAIM THAT A LETTER SUFFICE DOESN'T, JUST AS

7    A TECHNICAL MATTER YOU ARE REQUIRED TO SERVE IT.  THEY

8    NEVER SERVED IT, BUT WHAT IT IS, IS BY NO MEANS A SPECIFIC

9    STATEMENT OF OBJECTIONS.

10        AND MOST IMPORTANTLY ALL OF THAT PRECEDED THE JUNE

11   HEARING AT WHICH POINT THEY WITHDREW THEIR MOTION.  AND IF

12   THEY WANTED TO COME BACK, IF THEY WANTED TO MEET AND CONFER

13   WITH US, WHAT ARE YOU GOING TO ASK.  IF THEY WANTED TO TAKE

14   THE POSITION THAT WE'RE GOING TO GO BACK, AND WE ARE GOING

15   TO ASSERT OBJECTIONS NOW OR WE ARE GOING TO MAKE ANOTHER

16   MOTION, THEY COULD HAVE DONE SO.

17        BUT THERE WAS NO COMMUNICATION BETWEEN THE TIME OF

18   THE HEARING IN JUNE AND THE TIME WHEN MR. PETERS SAID TO ME

19   THAT ON THE RECORD, AND YOUR HONOR HAS THAT HE DIDN'T LOOK

20   FOR DOCUMENTS BECAUSE HE READ YOUR HONOR'S ORDER AND YOUR

21   HONOR'S ORDER IN JANUARY SUPERSEDED OUR NOTICE IN APRIL AND

22   THAT IS SIMPLY WRONG.

23        THE COURT:  ALL RIGHT.  THANK YOU.

24        HERE IS WHAT WE'RE GOING TO DO.

25        FIRST OF ALL, THE COURT IS GOING TO ORDER THAT THE

26   MOTION FOR PROTECTIVE ORDER IS DENIED.

27        FIRST, IT'S OVERBROAD, AMONG OTHER THINGS.

28        AND, SECONDLY, PRIVILEGE ASSERTED DOES NOT APPLY TO
```

1    THE DOCUMENTS REQUESTED.

2           AND WITH REGARD TO DEPOSITION QUESTIONS, I'LL HAVE

3    SOME MORE COMMENTS, BUT IN GENERAL IT WAS AN OVERBROAD

4    REQUEST FOR PROTECTION FROM HAVING A WITNESS TESTIFY TO A

5    LOT OF THE QUESTIONS WHICH WERE APPROPRIATE.

6           SO THE ORDER FOR PROTECTION -- MOTION FOR

7    PROTECTIVE ORDER IS DENIED.

8           WITH REGARD TO PRICEWATERHOUSE' MOTION TO COMPEL,

9    THE COURT IS GOING TO GRANT THE MOTION TO COMPEL WITH

10   REGARD TO THE DOCUMENTS REQUESTED.

11          THE COURT IS GOING TO OVERRULE THE OBJECTIONS MADE

12   BY THE PLAINTIFF TO SOME KIND OF CLAIM OF PRIVILEGE TO THE

13   DOCUMENTS REQUESTED.  THE COURT DOES NOT BELIEVE THERE ARE

14   PRIVILEGES THAT APPLY TO ANY OF THE CATEGORIES OF REQUESTED

15   DOCUMENTS.

16          THIRD, WITH REGARD TO THE TESTIMONY TO COMPEL THE

17   DEPOSITION OF MR. PETERS, THE COURT IS GOING TO ORDER IF

18   MR. PETERS IS THE PERSON MOST KNOWLEDGEABLE, AND IF HE'S

19   NOT THE PERSON MOST KNOWLEDGEABLE THEN AN ALTERNATIVE

20   WITNESS SHOULD BE PRODUCED TO TESTIFY.

21          THE COURT IS GOING TO ORDER THAT THE WITNESS ANSWER

22   THE QUESTIONS, MOST OF THE QUESTIONS.  I'M NOT GOING TO SET

23   FORTH SPECIFIC QUESTIONS AT THIS POINT, BUT I'LL SAY IN

24   GENERAL THOSE QUESTIONS THAT ASK FOR INFORMATION ABOUT THE

25   DOCUMENTS, INFORMATION ABOUT THE PROCESS, HOW IT CAME TO BE

26   THAT THE COMPLAINT WAS DRAFTED, TO HOW IT CAME TO BE THAT

27   JONES WAS NAMED AS A PLAINTIFF AND ALL THOSE RELATED

28   QUESTIONS, BE ANSWERED.

1    I'M NOT GOING TO REQUIRE THE WITNESS TO ANSWER AS

2    TO THE CONTENTS OF THE DRAFT COMPLAINT; THAT PLAINTIFFS ARE

3    STILL ENTITLED TO ASSERT AN ATTORNEY-CLIENT PRIVILEGE TO

4    COMMUNICATIONS, SPECIFICALLY COMMUNICATIONS BETWEEN AN

5    ATTORNEY AND A CLIENT.  PRIVILEGE CANNOT BE ASSERTED TO

6    FACTS, INDEPENDENT FACTS.

7    WHAT I AM GOING TO PROPOSE IS THAT DEFENDANT

8    PREPARE AN ORDER, A PROPOSED ORDER, DRAFT ORDER, OF THE

9    RULING TODAY WITH REGARD TO NOT ONLY THE DENIAL OF THE

10   MOTION FOR PROTECTIVE ORDER AND THE GRANTING OF THE MOTION

11   TO COMPEL WITH REGARD TO DOCUMENTS AND DEPOSITION, BUT TO

12   SET FORTH THOSE QUESTIONS, SPECIFIC QUESTIONS, THAT THE

13   DEFENDANT BELIEVES SHOULD HAVE BEEN ANSWERED THAT PRIVILEGE

14   DOES NOT APPLY.

15   AND THEN THE PLAINTIFF WILL HAVE AN OPPORTUNITY TO

16   REVIEW THAT.  AND SEE IF THEY AGREE AS TO WHETHER OR NOT

17   THEY WILL ADVISE MR. PETERS TO ANSWER THOSE QUESTIONS OR

18   WHETHER THEY STILL OBJECT.  AND THEY WILL HAVE AN

19   OPPORTUNITY TO SUBMIT OBJECTIONS TO THE ORDER, AND SO I

20   WILL CONSIDER BOTH THE PROPOSED ORDER AND THE OBJECTIONS.

21   ONE FINAL WORD AND THAT IS THAT EVENTUALLY WE'RE

22   GOING TO GET TO THE BOTTOM OF THIS.  SO I DO SUGGEST

23   COUNSEL MEET AND CONFER AND SEE IF THEY CAN RESOLVE THESE

24   ISSUES.

25   SO LET ME SET SOME DATES.

26   MR. THOMASCH:  YOUR HONOR, MAY I ASK YOU ONE

27   CLARIFICATION?

28   THE COURT:  YES.

1          MR. THOMASCH:  WITH RESPECT TO YOUR STATEMENT ABOUT

2     NOT GOING TO REQUIRE ANSWERS AS TO THE CONTENT OF THE DRAFT

3     COMPLAINT, OBVIOUSLY REQUEST FOR PRODUCTION NO. 1 WAS A

4     COPY OF THE CAPTION, SIGNATURE AND --

5          THE COURT:  YES.  I THINK THAT WAS OVERBROAD.  WHEN

6     I MEANT CONTENT, I'M TALKING ABOUT THE SPECIFIC ALLEGATIONS

7     CONTAINED IN THE ALLEGED CAUSE OF ACTION, NOT THE

8     FORMALITIES OF THE COMPLAINT, THE COVER PAGE, THE CAPTION,

9     THE NAME OF COUNSEL, WHETHER A FEE WAIVER STAMP IS ON IT AS

10    FAR AS GOVERNMENT NOT HAVING TO PAY A FILING FEE, OR

11    WHETHER THE SIGNATURE PAGE OR PROOF OF SERVICE PAGE, NONE

12    OF THAT IS PART OF THE IMPRESSIONS AND THINKING OF THE

13    COUNSEL.

14         I SAID THAT THE WITNESS DOES NOT HAVE TO ANSWER

15    QUESTIONS WITH REGARD TO THE SPECIFIC ALLEGATIONS.

16         MR. THOMASCH:  THANK YOU, YOUR HONOR.

17         THE COURT:  ALL RIGHT.  SO I'M GOING TO ASK DEFENSE

18    COUNSEL TO SUBMIT A PROPOSED ORDER BY DECEMBER 17 WHICH

19    WILL LAY OUT WHAT I SUGGESTED.  THE SPECIFIC QUESTIONS THAT

20    NEED TO BE ANSWERED ACCORDING TO THE DEFENDANT AND ALSO ALL

21    FOLLOW-UP QUESTIONS.

22         I MEAN YOU DON'T HAVE TO SET DOWN THE FOLLOW-UP

23    QUESTIONS, BUT THE INTENT IS THOSE QUESTIONS THAT THE

24    WITNESS WILL BE ORDERED TO ANSWER.  THE WITNESS WILL ALSO

25    BE ORDERED TO ANSWER FOLLOW-UP QUESTIONS ON THE SAME

26    SUBJECT.

27         SO THE PROPOSED ORDER SHOULD BE SUBMITTED BY

28    DECEMBER 17 AND THEN THE PLAINTIFF WILL HAVE UNTIL

Exhibit 19
Page 910

1    DECEMBER 21 IN WHICH TO OBJECT TO ANY OF THE ITEMS OF THE

2    ORDER.

3            ANYTHING ELSE YOU WISH TO ADDRESS TODAY?

4            THANK YOU.  MY BEST WISHES FOR GOOD HOLIDAYS.

5            THE CLERK:  YOUR HONOR, WE HAVE A STATUS CONFERENCE

6    AND THIS CASE DOES NOT HAVE A FUTURE DATE RIGHT NOW.

7            THE COURT:  WE DID HAVE A STATUS CONFERENCE.  WE'LL

8    HAVE TO RESOLVE THE CASE.  THERE WAS A SPECIFIC ISSUE WE

9    GOT INVOLVED IN THAT, BUT I DON'T KNOW WHETHER IT'S RIPE

10   FOR DISCUSSION.

11           DEFENDANT RAISED THE ISSUE ABOUT DIFFERENT CAUSES

12   OF ACTION AND THE PRIMARY RIGHTS, WHAT IS THE STATUS OF ALL

13   THAT?

14           MR. THOMASCH:  I BELIEVE, YOUR HONOR, YOU SAID WE'D

15   TALK ABOUT IT TODAY.  I BELIEVE YOU WERE INCLINED TO SAY,

16   YOU SAID IF THERE WAS GOING TO BE A MOTION THERE WILL BE A

17   MOTION.  YOU ASKED US TO LOOK INTO ONE ISSUE WHICH WE DID

18   LOOK INTO.

19           WE DO WISH TO MAKE THE MOTION WITH REGARD TO WHAT

20   WE PERCEIVE AS THE INCONSISTENCY BETWEEN THE RESOLUTION OF

21   THE DEMURRER THAT MR. CURTIN FILED AND THE RESOLUTION OF

22   THE SUMMARY JUDGMENT MOTION AGAINST PWC UNLESS YOUR HONOR

23   INSTRUCTS US NOT TO GO FORWARD WITH THAT.

24           THE COURT:  ALL RIGHT.  YOU CAN FILE A MOTION.

25           MR. THOMASCH:  YOUR HONOR, WITH RESPECT TO THE LAST

26   ROUND OF MOTIONS, THE SUMMARY ADJUDICATION AND SUMMARY

27   JUDGMENT MOTIONS, THERE WAS SOME CONFUSION AND THERE

28   REMAINS TO THIS DAY SOME CONFUSION ABOUT THE ORDERS.

1           WE SUBMITTED FOUR PROPOSED ORDERS.  WE DID IT THE

2    NORMAL WAY.  WE PROVIDED IT TO THE OTHER SIDE.  THEY

3    OBJECTED TO OUR NOTICE OF LODGING.  WE THEN SUBMITTED THEM

4    AND WE INDICATED WHAT THEIR OBJECTION WAS AND HOW THEY SAID

5    IT SHOULD READ.

6           THEY THEN SUBMITTED ON OUR PAPER AS IF IT WAS

7    COMING FROM US USING THE WORD PROCESSING DOCUMENT WE GAVE

8    THEM, THEY CHANGED IT, AND THEY SUBMITTED THEIR OWN

9    VERSION.

10          WE RECEIVED BACK IN THE MAIL STAMPED COPIES OF THE

11   ONES THAT WE SUBMITTED.  WE ALSO RECEIVED SIGNED COPIES OF

12   THE DIFFERENT ONES THEY SUBMITTED.  AND WITH REGARD TO OUR

13   PROPOSAL, WITH REGARD TO PWC, THERE WAS REFERENCE TO

14   WHETHER THE COURT HAD FOUND THERE WAS ONE PRIMARY RIGHT OR

15   TWO PRIMARY RIGHTS AT ISSUE.

16          YOUR HONOR BY MY READ OF THE TRANSCRIPT LEFT THAT

17   OPEN.  YOU HAD CLEARLY SAID THAT CAUSES OF ACTION ONE AND

18   TWO WERE THE SAME PRIMARY RIGHT.  AND CAUSES OF ACTION

19   EIGHT AND NINE WERE, AND IMPLIED IT WAS ALL ONE, BUT SAID

20   IT COULD BE ONE OR TWO.  WE WERE LOOKING FOR CLARITY FOR

21   THAT.

22          PART OF THE REASON FOR THAT IS, FOR INSTANCE, THE

23   PLAINTIFF IS TAKING THE POSITION THAT THERE ARE TWO PRIMARY

24   RIGHTS, AND THEY HAVE A VIEW OF WHAT THEY WERE.  WE HAVE A

25   VERY DIFFERENT VIEW.  WE DON'T HAVE SIGNED ORDERS YET.

26          THE COURT:  THAT IS CLEAR AS MUD.

27          MR. THOMASCH:  I'M SORRY, YOUR HONOR.  COMPETING

28   ORDERS ON BOTH SIDE.

Exhibit 19
Page 912

1          THE COURT:  PERHAPS I DIDN'T REALIZE THE ORDERS
2     WERE INCONSISTENT IF THEY HAD THE SAME --
3          MR. THOMASCH:  WE SENT --
4          THE COURT:  -- FILING INFORMATION.
5          MR. THOMASCH:  YOU ASKED US TO SUBMIT, WHICH WE
6     DID.  WE DID.  WE NOTICED THE LODGING WITH THEM FIRST, WITH
7     THE PLAINTIFF'S COUNSEL, AND THEN WE SUBMITTED OURS.  AND
8     OURS SAID THIS IS WHAT WE SAY, THEY OBJECT, THIS IS WHAT
9     THEY SAY.  THEY THEN TOOK OUR WORD PROCESSING DOCUMENT,
10    THEY CHANGED IT, AND THEY SUBMITTED IT, BUT IT STILL SHOWS
11    ME AS SUBMITTING --
12         THE COURT:  I UNDERSTAND.  I UNDERSTAND.  WE HAVE
13    TO CORRECT IT IN SOME FASHION.
14         SEE IF YOU CAN EITHER ENTER INTO A STIPULATION TO
15    EXPLAIN WHAT HAPPENED AND HAVE EACH OF THOSE DOCUMENTS AS
16    EXHIBITS SO YOU CAN SEE IT IN ONE PLACE WHAT THE
17    DISCREPANCY IS AND TRY TO RESOLVE IT.
18         MR. THOMASCH:  WE WILL DO THAT.
19         I WOULD ASK, YOUR HONOR, ON THE RECORD I WOULD ASK
20    THAT FROM NOW ON THAT THE PLAINTIFF'S COUNSEL DOES NOT
21    SUBMIT ANY DOCUMENTS TO THE COURT WHERE THE COVER PAGE
22    SHOWS THE ATTORNEYS FOR PWC ON THE FIRST PAGE.
23         THE COURT:  THAT IS RIGHT.  YOU SHOULD NOT SUBMIT
24    DOCUMENTS WITH SOME OTHER COUNSEL'S NAME ON THE FRONT PAGE
25    AND THEN THERE IS SOME CHANGE ON PAGE 3 THAT NO ONE KNOWS
26    IT HAPPENED.
27         COUNSEL.
28         MR. KIESEL:  MAYBE WE SHOULD SET A STATUS

1   CONFERENCE IN JANUARY, SO WE HAVE A RETURN DATE.

2          THE COURT:  OKAY.

3          THE CLERK:  YOUR HONOR, JANUARY 7 WE HAVE A

4   NONAPPEARANCE CASE REVIEW FOR PRO HAC VICE RENEWAL.  MAY I

5   SUGGEST THAT DATE?

6          THE COURT:  JANUARY 7 THAT IS TOO SOON.

7          THE CLERK:  OKAY.

8          THE COURT:  ALL RIGHT.

9          WE WILL SET A STATUS CONFERENCE ON JANUARY 23 AT

10  2:00 O'CLOCK IN THE AFTERNOON.  AND I ASK COUNSEL TO SUBMIT

11  A STATUS REPORT JANUARY 16 AND, OF COURSE, COUNSEL SHOULD

12  ADDRESS WHETHER OR NOT THE ISSUES THAT WE RAISED TODAY HAVE

13  BEEN RESOLVED AND THE SCHEDULE FOR ANY FUTURE DEPOSITIONS

14  ON THE ISSUES THAT ARE SUBJECT TO TODAY'S ORDER.

15         ALL RIGHT.  THANK YOU, COUNSEL.

16         MR. THOMASCH:  THANK YOU, YOUR HONOR.

17         MR. KIESEL:  THANK YOU, YOUR HONOR.

18         THE COURT:  HAVE GOOD HOLIDAYS.

19         MR. THOMASCH:  YOU TOO.

20

21         (WHEREBY THE PROCEEDING WAS CONCLUDED.)

22

23

24

25

26

27

28

```
 1                SUPERIOR COURT OF THE STATE OF CALIFORNIA

 2                      COUNTY OF LOS ANGELES

 3                     SPRING STREET COURTHOUSE

 4     DEPARTMENT SSC6          HON. ELIHU M. BERLE, JUDGE

 5

 6     CITY OF LOS ANGELES,        )
                                   )
 7                     PLAINTIFF,  )
                                   )
 8              VS.                )
                                   )    CASE NO. BC574690
 9     PRICEWATERHOUSE COOPERS, LLP )    REPORTER'S CERTIFICATE
                                   )
10                    DEFENDANT.   )
       _____)
11

12

13

14

15          I, ANITA B. ALDERSON, OFFICIAL COURT REPORTER PRO

16     TEMPORE OF THE SUPERIOR COURT OF THE STATE OF CALIFORNIA,

17     FOR THE COUNTY OF LOS ANGELES, DO HEREBY CERTIFY THAT THE

18     FOREGOING PAGES, 1 THROUGH 56, COMPRISE A TRUE AND CORRECT

19     TRANSCRIPT OF THE PROCEEDINGS TAKEN IN THE ABOVE-ENTITLED

20     CAUSE ON WEDNESDAY, DECEMBER 12, 2018.

21

22                      DATED THIS 13TH DAY OF DECEMBER, 2018.

23

24

25     _____,CSR 11843

26               ANITA B. ALDERSON
                 OFFICIAL COURT REPORTER PRO TEMPORE
27

28
```