# EXHIBIT 20

Exhibit 20
Page 916

1        SUPERIOR COURT OF THE STATE OF CALIFORNIA

2                   COUNTY OF LOS ANGELES

3                 SPRING STREET COURTHOUSE

4    DEPARTMENT SSC6        HON. ELIHU M. BERLE, JUDGE

5

6    CITY OF LOS ANGELES,        )
                                 )
7                PLAINTIFF,      )
                                 )
8        VS.                     )    SUPERIOR COURT
                                 )    CASE NO. BC574690
9    PRICEWATERHOUSE COOPERS, LLP )
                                 )
10               DEFENDANT.      )
     _____)
11

12          REPORTER'S TRANSCRIPT OF PROCEEDINGS

13             WEDNESDAY, JANUARY 23, 2019

14

15   APPEARANCES:

16   SPECIAL COUNSEL FOR THE PEOPLE:

17     KIESEL LAW LLP
       BY:  PAUL R. KIESSEL, ESQUIRE
18     8648 WILSHIRE BOULEVARD
       BEVERLY HILLS, CALIFORNIA 90211
19     310.854.4444

20   FOR THE CITY OF LOS ANGELES:

21     PARADIS LAW GROUP
       BY:  PAUL O. PARADIS, ESQUIRE
22         GINA M. TUFARO, ESQUIRE
       200 WEST 41ST STREET, 20TH FLOOR
23     NEW YORK, NEW YORK 10036
       212.986.4500

24

25   (APPEARANCES CONTINUED.)

26

27                    ANITA B. ALDERSON, CSR. NO. 11843
                      OFFICIAL COURT REPORTER PRO TEMPORE
28                    JOB NO. 149854

Exhibit 20
Page 917

1    (APPEARANCES CONTINUED.)

2

3    FOR PLAINTIFFS MORSKI AND MACIAS IN RELATED CASES:

4       LAW OFFICES OF ALAN HIMMELFARB
        BY:  ALAN HIMMELFARB, ESQUIRE
5       80 WEST SIERRA MADRE BOULEVARD
        SUITE 304
6       SIERRA MADRE, CALIFORNIA 91024
        626.325.3104
7

8    FOR PRICEWATERHOUSE COOPERS AND JAMES CURTIN:

9       GIBSON, DUNN & CRUTCHER LLP
        BY:  DANIEL J. THOMASCH, ESQUIRE
10      200 PARK AVENUE
        NEW YORK, NEW YORK 10166
11      212.351.3800

12      GIBSON, DUNN & CRUTCHER LLP
        BY:  JAMES A. SANTIAGO, ESQUIRE
13      333 SOUTH GRAND AVENUE
        LOS ANGELES, CALIFORNIA 90071
14      213.229.7929

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit 20
Page 918



1          I N D E X

2

3          JANUARY 23, 2019

4

5     ALPHABETICAL/CHRONOLOGICAL LIST OF WITNESSES

6

7               (NONE.)

8

9

10              EXHIBITS

11

12              (NONE.)

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit 20
Page 919

```
 1  CASE NUMBER:              BC574690

 2  CASE NAME:                CITY OF LOS ANGELES VS.

 3                              PRICEWATERHOUSE COOPERS

 4  LOS ANGELES, CALIFORNIA   WEDNESDAY, JANUARY 23, 2019

 5  DEPARTMENT SSC6           HON. ELIHU M. BERLE, JUDGE

 6  REPORTER:                 ANITA B. ALDERSON, CSR NO. 11843

 7  TIME:                     P.M. SESSION

 8  APPEARANCES:              (AS HERETOFORE NOTED.)

 9

10

11

12

13

14          THE COURT:  CALLING THE CASE OF CITY OF LOS ANGELES

15  VERSUS PRICEWATERHOUSE.

16          COUNSEL YOUR APPEARANCES PLEASE.

17          MR. KIESEL:  YOUR HONOR, GOOD AFTERNOON, PAUL

18  KIESEL SPECIAL COUNSEL FOR THE PEOPLE.

19          THE COURT:  GOOD AFTERNOON.

20          MS. TUFARO:  GOOD AFTERNOON, YOUR HONOR, GINA

21  TUFARO FOR PLAINTIFF CITY OF LOS ANGELES.

22          THE COURT:  GOOD AFTERNOON.

23          MR. PARADIS:  GOOD AFTERNOON, JUDGE, PAUL PARADIS

24  FOR THE CITY OF LOS ANGELES.

25          THE COURT:  GOOD AFTERNOON.

26          MR. HIMMELFARB:  GOOD AFTERNOON, YOUR HONOR, ALAN

27  HIMMELFARB APPEARING ON BEHALF OF PLAINTIFF MORSKI IN THE

28  RELATED CASE MORSKI VERSUS THE CITY OF LOS ANGELES AND THE
```

Exhibit 20
Page 920

2

```
 1  MACIAS PLAINTIFFS IN THE CASE OF MACIAS VERSUS THE CITY OF
 2  LOS ANGELES.
 3           THE COURT:  GOOD AFTERNOON.
 4           MR. THOMASCH:  GOOD AFTERNOON, YOUR HONOR, DANIEL
 5  THOMASCH ON BEHALF OF DEFENDANTS PRICEWATERHOUSE COOPERS
 6  AND JAMES CURTIN.
 7           THE COURT:  GOOD AFTERNOON.
 8           MR. SANTIAGO:  GOOD AFTERNOON, YOUR HONOR, JAMES
 9  SANTIAGO, GIBSON, DUNN & CRUTCHER ON BEHALF OF DEFENDANTS
10  PRICEWATERHOUSE COOPERS AND JAMES CURTIN.
11           THE COURT:  GOOD AFTERNOON.  ANY OTHER APPEARANCES
12  ON COURTCALL?
13           THE CLERK:  NOT FOR THIS MATTER.
14           THE COURT:  THANK YOU, AND COUNSEL PLEASE HAVE A
15  SEAT.
16           WE HAVE STATUS CONFERENCE AS WELL AS A HEARING ON
17  THE MOTION TO COMPEL PRODUCTION.  FIRST, I HAVE RECEIVED AN
18  APPOINTMENT FOR MS. ANITA ALDERSON AS COURT REPORTER PRO
19  TEM ANY OBJECTIONS?
20           MR. THOMASCH:  NO OBJECTIONS.
21           THE COURT:  NOT HEARING ANY OBJECTIONS,
22  MS. ALDERSON IS HEREBY APPOINTED COURT REPORTER PRO TEM.
23           GOOD AFTERNOON.
24           COURT REPORTER:  GOOD AFTERNOON.
25           THE COURT:  ANYONE WISH TO BE HEARD ON THE MOTION
26  TO COMPEL?
27           MR. THOMASCH:  YES, YOUR HONOR.
28           YOUR HONOR, THIS MOTION IS DIRECTED TO THE NEED FOR
```

Exhibit 20
Page 921

1   LADWP TO COMPLETE THE PRODUCTION OF LONG OUTSTANDING

2   DOCUMENT REQUESTS.  LADWP HAS OPPOSED THE MOTION SIMPLY BY

3   DECLARING EVERYTHING THAT HASN'T BEEN PRODUCED YET IS,

4   WHILE RESPONSIVE, IS IRRELEVANT BECAUSE EARLIER TODAY THEY

5   FILED, AS THEY INDICATED THEY WERE GOING TO, A REQUEST FOR

6   PERMISSION TO DISMISS THEIR CONTRACT CLAIMS.

7       AND THEY HAVE SIMPLY ASSERTED IN THEIR OPPOSITION

8   PAPERS THAT THAT RENDERS EFFECTIVELY MOOT ALL OF THE

9   OUTSTANDING REQUESTS FOR DOCUMENTS THAT PWC HAS.  THAT

10  OPPOSITION IS BOTH PROCEDURALLY DEFICIENT AND SUBSTANTIVELY

11  MERITLESS, YOUR HONOR.

12      ON THE PROCEDURE THERE IS NO DISPUTE THAT THE CITY

13  PREVIOUSLY WITHDREW ALL OF ITS ORIGINAL OBJECTIONS AND

14  COMMITTED TO PRODUCTION; THEY JUST HAVEN'T DONE THE

15  PRODUCTION YET.

16      THE COURT:  JUST A MINUTE.

17      YOU SAID THERE WAS A DOCUMENT FILED TODAY FOR

18  DISMISSAL OF THE CONTRACT CLAIMS?

19      MR. THOMASCH:  YES, YOUR HONOR.

20      THE COURT:  I HAVEN'T SEEN IT YET, DO YOU HAVE AN

21  EXTRA COPY HERE TODAY?

22      MR. PARADIS:  NO, WE DON'T, JUDGE.  WE FILED IT

23  THIS MORNING, I APOLOGIZE.

24      THE COURT:  WHERE DID YOU FILE IT?

25      MS. TUFARO:  YOUR HONOR, IT WAS FILED -- MY

26  UNDERSTANDING IS IT WAS FILED DOWNSTAIRS, AND IT WAS

27  SERVED --

28      THE COURT:  IN THIS BUILDING?

Exhibit 20
Page 922

1        MS. TUFARO:  THAT'S MY UNDERSTANDING AND IT WAS

2  SERVED ON FILE & SERVEXPRESS.

3        THE COURT:  CAN YOU SEE IF YOU CAN PRINT IT OUT?

4  DO YOU HAVE ACCESS TO FILE & SERVE?

5        THE CLERK:  I DON'T HAVE ACCESS TO FILE & SERVE.

6        THE COURT:  OKAY.  THANK YOU.

7        SORRY, COUNSEL.

8        MR. KIESEL:  YOUR HONOR, I PROBABLY HAVE AN

9  ELECTRONIC VERSION I CAN FORWARD TO YOUR STAFF IF YOU'D

10  LIKE ME TO DO THAT.

11        THE COURT:  WOULD YOU PLEASE DO THAT.

12        MR. THOMASCH:  LADWP HAS NOT AMENDED ITS EARLIER

13  RESPONSES.  IT HAS NOT MADE A MOTION FOR PROTECTIVE ORDER.

14  THIS IS THE AGE-OLD WAY THEY DO THINGS THROUGH SELF-HELP

15  SIMPLY SAYING WE HAVE DECIDED THEY ARE NO LONGER RELEVANT

16  NOTWITHSTANDING OUR EARLIER REPRESENTATIONS.

17        ANY OPPOSITION, OF COURSE, IF THEY WERE GOING TO

18  HAVE MADE A MOTION FOR PROTECTIVE ORDER OR SOMEHOW AMENDED

19  THEIR PRIOR RESPONSES, WOULD UNDER THE CALIFORNIA CODE HAVE

20  NECESSARILY ADDRESSED THE REQUESTS INDIVIDUALLY AND MADE AN

21  ARGUMENT INDIVIDUALLY AS TO WHY RESPONSIVE, BUT UNPRODUCED

22  DOCUMENTS, WERE NO LONGER RELEVANT.  THEY HAVEN'T ATTEMPTED

23  TO DO THAT.

24        IT'S NOT SURPRISING THEIR OPPOSITION BASED ON

25  SIMPLY THEIR OWN SAY-SO THAT THESE DOCUMENTS ARE NO LONGER

26  RELEVANT IS SUBMITTED WITHOUT A SINGLE CITATION TO ANY CASE

27  LAW OR STATUTORY SUPPORT FOR THEIR POSITION.

28        ON THE MERITS, THE POINT HERE IS THE FACTUAL

Exhibit 20
Page 923

1    DISCOVERY AT ISSUE IS ENTIRELY RELEVANT.  INDEED BY
2    PLAINTIFF'S OWN ADMISSION IT'S RELEVANT TO THE FRAUDULENT
3    INDUCEMENT CLAIMS, AND IT'S CERTAINLY RELEVANT TO DAMAGES
4    AND MOST IMPORTANTLY TO PWC'S AFFIRMATIVE DEFENSES.
5          WHETHER SOME OF THE REQUESTS AT ISSUE ALSO WOULD BE
6    RELEVANT TO THE BREACH OF CONTRACT CLAIMS IS NOT DISPUTED,
7    BUT IT'S ALSO MEANINGLESS.  FACTUAL INFORMATION CAN BE
8    RELEVANT TO MULTIPLE CAUSES OF ACTION AND THAT IS THE CASE
9    HERE.
10         WHAT IS AT ISSUE IS THE QUESTION OF WHETHER LADWP
11   FAILED IT'S OWN CONTRACTURAL RESPONSIBILITIES OR OTHERWISE
12   PERFORMED SO POORLY IN THE IMPLEMENTATION WHICH WAS A JOINT
13   PROJECT BETWEEN LADWP AND PWC.  DID THEY DO THEIR SHARE OF
14   THE PROJECT SO POORLY AS TO HAVE CAUSED THE BILLING
15   PROBLEMS THAT ENSUED AFTER GO LIVE.
16         IT'S OUR CONTENTION THEY DID.  WE ARE ENTITLED TO
17   FACTUAL EVIDENCE TO PROVE THAT CONTENTION TO REBUT
18   PLAINTIFF'S CASE.
19         I NOTE, YOUR HONOR, IN RESPONSE TO SPECIAL
20   INTERROGATORY NO. 10, WHICH SOUGHT THE SUPPORT THAT THE
21   PLAINTIFFS USED, THE SUPPORT THEY RELIED ON FOR THEIR FRAUD
22   CLAIM REGARDING THEIR ASSERTION THAT PWC MADE
23   MISREPRESENTATIONS ABOUT ITS ORACLE ABILITIES, THE CITY
24   IDENTIFIED 470 DEFECTS AS EVIDENCE OF FRAUD CAUSING BILLING
25   PROBLEMS.
26         THEY ARE ARGUING THAT THE PERFORMANCE OF THE
27   CONTRACT EVIDENCED THAT PWC MADE MISSTATEMENTS IN THE RFP
28   PROCESS.  THERE ARE TWO SIDES TO THAT COIN.  WE GET TO LOOK

Exhibit 20
Page 924

1  AT THE PERFORMANCE ISSUES OF THE CITY AND SHOW THAT THE

2  PROBLEMS THEY ARE COMPLAINING ABOUT AREN'T BECAUSE WE

3  DIDN'T DO WHAT WE WERE SUPPOSED TO DO.

4       THE CONTRACT WAS VERY SPECIFIC.  WE HAD PARTICULAR

5  DELIVERABLES.  WE GAVE THEM ALL THOSE DELIVERABLES, OR WE

6  WERE RELIEVED OF THE OBLIGATION TO DO SO BY AGREEMENT WITH

7  THE CITY.  THEY PAID US; THEY RELEASED THE BOND.

8       THEY KNOW THEY HAVE NO CONTRACT CLAIMS, AND WHAT

9  THEY ARE NOW TRYING TO DO IS ATTACK US FOR NOT PROVIDING A

10 PERFECT SYSTEM WHEN THE IMPERFECTION IS THE RESULT OF THE

11 CITY'S OWN FAILURES.  AND THEY THINK BY DROPPING THEIR

12 CONTRACT CLAIMS, THEY CAN ELIMINATE ANY DISCUSSION OF WHY

13 DID THE SYSTEM NOT WORK.

14      BUT WHY THE SYSTEM DID NOT WORK IS AT THE HEART OF

15 EVERY ISSUE IN THIS CASE.  FOR YEARS, LADWP HAS PUBLICLY

16 ACCUSED PWC OF CAUSING HARMS TO THE RATE PAYERS.  WE HAVE

17 DISAGREED QUIETLY.  WE HAVE SAID WE DIDN'T DO THAT.  WE

18 HAVE PLEADED AFFIRMATIVE DEFENSES TO SAY THAT THE

19 OBLIGATIONS THAT THE CITY HAD AND THAT THE CITY FAILED TO

20 PERFORM ARE THE ACTUAL ROOT CAUSE OF THE PROBLEM THAT IS AN

21 ISSUE THAT TRIAL WILL RESOLVE.

22      IT'S TIME, WE NOW NEED TO TAKE THE FACTUAL

23 DISCOVERY THAT UNDERLIES THE WORK THAT WAS DONE UNDER THE

24 CONTRACT BETWEEN THE PARTIES.  WE NEED TO LOOK AT THE

25 FACTUAL EVIDENCE REGARDING WHO CHOSE THE GO LIVE DATE AND

26 WHETHER THE CITY WAS PREPARED FOR GO LIVE.  WE NEED TO LOOK

27 AT THE FACTUAL EVIDENCE AS TO WHAT HAS HAPPENED SINCE GO

28 LIVE WHEN IT'S PWC'S CONTENTION THAT THE SO-CALLED

Exhibit 20
Page 925

1   REMEDIATION IS AN ATTEMPT TO COVER UP WHAT THEY WERE

2   RESPONSIBLE FOR DOING, BUT DID NOT DO DURING THE CONTRACT.

3          AT ANY RATE, HAVING ACCUSED US OF BEING RESPONSIBLE

4   FOR THE IMPROPER IMPLEMENTATION OF A JOINTLY IMPLEMENTED

5   SYSTEM, WE ARE ENTITLED TO FACTUAL DISCOVERY.  THEIR CLAIM

6   NOW OF WELL WE DROPPED THE CONTRACT CLAIMS SO NEVER MIND

7   ABOUT THE EVIDENCE OF PERFORMANCE DOESN'T WORK BECAUSE THE

8   FACTUAL EVIDENCE IS CLEARLY RELEVANT TO EACH AND EVERY ONE

9   OF THE CLAIMS THAT REMAIN IN THE CASE AND TO THE

10  AFFIRMATIVE DEFENSES TO THOSE.

11         GIVEN THAT THE PRODUCTION IS VERY LONG OUTSTANDING,

12  WE WOULD ASK THE COURT TO ENTER A DATE SPECIFIC TIME BY

13  WHICH THE PLAINTIFF MUST RESPOND.  WE WOULD SUGGEST WITHIN

14  TWO TO THREE WEEKS.  WE NEED TO HAVE THOSE DOCUMENTS SO WE

15  CAN MOVE FORWARD ON DEPOSITIONS AND FURTHER NARROW REQUESTS

16  WITH RESPECT TO THE PERFORMANCE OF THE WORK THAT UNDERLIES

17  THE ALLEGED BILLING PROBLEMS OR THE ACTUAL BILLING PROBLEMS

18  WHERE THE DISPUTE AS TO WHO CAUSED THEM.

19         THANK YOU, YOUR HONOR.

20         THE COURT:  THANK YOU, PLAINTIFFS.

21         MR. PARADIS:  GOOD AFTERNOON, AGAIN, JUDGE, PAUL

22  PARADIS FOR THE CITY.

23         THE COURT:  GOOD AFTERNOON.

24         MR. PARADIS:  YOU HEARD 600-PLUS DEFECTS THAT WERE

25  REPRESENTED IN PLAINTIFF'S PRIOR PAPERS.  YOU ALSO HEARD

26  MR. THOMASCH MORE THAN TWO YEARS AGO ASK YOU FOR ACCESS TO

27  THE RATIONAL DATA BASE THAT HAS OVER 7,000 DEFECTS LISTED

28  IN IT.

Exhibit 20
Page 926

1          NOT SURPRISINGLY PWC PERSISTED IN ITS DESIRE TO

2     CONDUCT SCORCHED-EARTH DISCOVERY.  WE PROPOSED AN ENTIRELY

3     DIFFERENT APPROACH TO THIS THING.  WE WOULD LIKE TO GET

4     FOCUSED.  WE WOULD LIKE TO GET VERY DIRECTED.  AND WE THINK

5     IT'S VERY IMPORTANT TO CONSERVE THE CITY'S RESOURCES AND

6     NOT WASTE MONEY ON A NUMBER OF THINGS THAT SIMPLY DO NOT

7     MATTER.

8          I THINK EVERYONE MIGHT BE A LITTLE BIT SURPRISED

9     WHEN WE COME IN WITH OUR DAMAGE REPORTS, AND THEY LEARN FOR

10    THE FIRST TIME WHAT WE ARE SPECIFICALLY SEEKING TO HOLD

11    THEM RESPONSIBLE FOR.  I THINK THAT'S A MUCH MORE

12    APPROPRIATE, MUCH MORE RESPONSIBLE APPROACH.

13         AND WITH RESPECT TO SOME OF THE THINGS HE'S TELLING

14    YOU HE ABSOLUTELY NEEDS.  REQUEST FOR PRODUCTION NO. 35,

15    CLEARLY RELATED TO THE CONTRACT CLAIMS WERE DISMISSED, THAT

16    WE REQUESTED TO BE DISMISSED, THIS ONE ASKS FOR "ALL

17    DOCUMENTS RELATING TO THE LEGACY SYSTEM IN STANDBY MODE"

18    THAT IS NO LONGER AT ISSUE IN THE CASE IF YOUR HONOR ALLOWS

19    THE CLAIMS TO BE DISMISSED.

20         DOCUMENT REQUEST NO. 37, I'M QUOTING NOW,

21    "DOCUMENTS THAT SET FORTH, SHOW, DESCRIBE, OR SUMMARIZE ANY

22    DAMAGES THAT LADWP ATTRIBUTES TO PWC'S ALLEGED FRAUD AND

23    BREACHES OF CONTRACT."

24         THE BREACHES OF CONTRACT ARE OUT OF THE CASE AGAIN.

25    SO WE THINK IT'S TIME TO FOCUS TO ALLOW US, AND WE PROPOSE

26    A VERY DIFFERENT SOLUTION.  WE ARE NOT SAYING HE'S NOT

27    ENTITLED TO DISCOVERY.  WE ARE SAYING HE'S ENTITLED TO

28    DISCOVERY THAT MATTERS.  AND WE DON'T SEE ANY PREJUDICE OR

Exhibit 20
Page 927

1   HARM TO DEFEND IT.  WE DO SEE GREAT HARM PROCEEDING THE WAY

2   HE'S SUGGESTING WHICH IS VERY, VERY, EXPENSIVE

3   UNNECESSARILY TO PUT US ON A TRACK TO PRODUCE ALL THESE

4   DOCUMENTS.

5          YOU MAY RECALL A REQUEST FOR ACCESS TO THE RATIONAL

6   DATA BASE SOME TWO YEARS AGO.  ASK HIM HOW MANY OF THOSE

7   DOCUMENTS HE'S ATTACHED TO ANY MOTION PAPERS WHATSOEVER.

8   THERE WAS A CRY OF ALARM, EXIGENCY, WE NEED IT RIGHT AWAY,

9   WE'RE GOING TO BE PREJUDICED.  NOT ONE DOCUMENT FROM

10  RATIONAL WAS USED, JUDGE.  I SUBMIT THIS IS THE SAME KIND

11  OF THING.

12         THANK YOU.

13         MR. THOMASCH:  YOUR HONOR, BRIEFLY.

14         WE SHOULDN'T BE "SURPRISED" BY WHAT THE DAMAGE

15  CLAIM IS.  THE PLAINTIFF WANTS TO TURN THIS INTO SOMEHOW A

16  BATTLE OF THE EXPERTS, AND WE ARE TO WAIT UNTIL SOME TIME

17  IN MARCH TO FIND OUT WHAT IS UP THEIR SLEEVE.

18         WE HAVE DISCOVERY THAT HAS BEEN OUTSTANDING FOR A

19  LONG THAT GOES TO DAMAGES.  IF THEY WANT TO SAY WE'RE NOT

20  SEEKING THIS CATEGORY OF DAMAGES OR THAT CATEGORY OF

21  DAMAGES TELL US, BUT THEY HAVEN'T DONE THAT.  THEY WANT TO

22  TELL US AND APPARENTLY WE'RE GOING TO BE SURPRISED WHEN WE

23  SEE IT.

24         MR. PARADIS REFERENCED THE LEGACY SYSTEM.  THE

25  LEGACY SYSTEM IS IMPORTANT.  THE CONTRACT BETWEEN THE

26  PARTIES SPECIFICALLY REQUIRED THAT THE LEGACY SYSTEM BE

27  KEPT ON STANDBY FOR THE VERY PURPOSE THAT IF THE BILLING

28  SYSTEM DID NOT OPERATE PROPERLY, THE LEGACY SYSTEM COULD BE

Exhibit 20
Page 928

```
1    BROUGHT BACK INTO FUNCTIONALITY.
2         NOW THE CITY CHOSE NOT TO DO THAT.  NOW THEY WANT
3    TO TELL US THE BILLING SYSTEM WAS A HORROR SHOW, BUT THE
4    PROVISION THEY SET UP TO DEAL WITH THAT EXIGENCY, IF IT
5    OCCURRED, WAS NEVER IMPLEMENTED.  WE'D LIKE TO SEE.  THERE
6    MAY BE EMAILS BETWEEN INDIVIDUALS AT LADWP.  AND WE WANT TO
7    FIND OUT WHY IT IS.
8         NOW ONE REASON THAT THEY MIGHT NOT HAVE GONE BACK
9    TO THE LEGACY SYSTEM IS THAT ENORMOUS PARTS OF THE PROBLEM
10   HERE DEALT WITH BAD LEGACY DATA THAT THE CITY WAS REQUIRED
11   TO CLEAN UP BEFORE IT WAS INPUT INTO THE NEW SYSTEM, BUT
12   THEY DID NOT DO SO.
13        SO THE OLD SYSTEM WOULD HAVE HAD SOME OF THE SAME
14   FLAWS IF IT CONTINUED.  BUT WHATEVER THEIR REASONS, WE'D
15   LIKE TO SO WHAT DISCUSSIONS THEY HAD.  THAT IS ONE OF MANY,
16   MANY EXAMPLES, BUT THERE ARE DOCUMENTS THAT GO TO THE
17   QUESTION OF WHOSE BAD PERFORMANCE CAUSED THE BILLING
18   PROBLEMS THAT IS THE CENTRAL ISSUE THAT IS AN ISSUE THAT IS
19   NOT LIMITED TO THE CONTRACT CLAIMS AT ALL.
20        THE FACTUAL EVIDENCE IS IMPORTANT.  THE CITY
21   BROUGHT A LAWSUIT.  THEY AMENDED IT THREE TIMES.  IT'S 550
22   OR SO PARAGRAPHS LONG AND IT SEEKS HUNDREDS OF MILLIONS OF
23   DOLLARS OF DAMAGES.  IT DOESN'T BEHOOVE THEM TO SAY IT'S
24   TOO EXPENSIVE TO GO THROUGH DISCOVERY.  IT'S EXPENSIVE FOR
25   US TO GO THROUGH DISCOVERY TOO, BUT WE ARE ENTITLED TO THE
26   FACTS THAT UNDERLIE THE CLAIMS.
27        THANK YOU.
28        THE COURT:  THANK YOU.
```

Exhibit 20
Page 929

1    I HAVE RECEIVED A COPY OF THE REQUEST FOR DISMISSAL

2    FILED BY THE PLAINTIFFS REQUESTING DISMISSAL OF THE 10TH,

3    11TH, 12TH, 13TH, 14TH, 15TH CAUSES OF ACTION.  BASED UPON

4    THE PLAINTIFF'S REQUEST, THE COURT WILL ORDER THE 10TH,

5    11TH, 12TH, 13TH, 14TH AND 15TH CAUSES OF ACTION DISMISSED.

6    AS FAR AS THE MOTION IS CONCERNED, THE COURT IS

7    GOING TO GRANT DEFENDANT PRICEWATERHOUSE THE MOTION TO

8    COMPEL PRODUCTION OF DOCUMENTS WITH REGARD TO PWC'S FIRST

9    REQUEST FOR -- FIRST REQUEST FOR DOCUMENT REQUEST.  THE

10   COURT WILL ORDER DOCUMENTS PRODUCED WITHOUT OBJECTIONS,

11   EXCEPT FOR ANY OBJECTIONS ASSERTED ON THE ATTORNEY-CLIENT,

12   ATTORNEY WORK-PRODUCT PRIVILEGE.  THE DOCUMENTS ARE TO BE

13   PRODUCED BY FEBRUARY 13.

14   IF ANY DOCUMENTS ARE WITHHELD ON THE BASIS OF

15   PRIVILEGE, THEN A PRIVILEGE LOG SHOULD BE SUBMITTED ALSO BY

16   FEBRUARY 13.  AND THAT THE PLAINTIFF SHOULD ALSO PROVIDE A

17   CERTIFICATION UNDER THE PENALTY OF PERJURY THAT ALL

18   DOCUMENTS HAVE BEEN PRODUCED.

19   DEFENDANT TO PREPARE THE APPROPRIATE ORDER AND GIVE

20   NOTICE.

21   WE ALSO HAVE A STATUS CONFERENCE ON CALENDAR.  I

22   HAVE REVIEWED THE STATUS CONFERENCE REPORT.  FIRST, WITH

23   REGARD TO DEFENDANT CURTIN'S MOTION, HAS THAT BEEN FILED?

24   MR. THOMASCH:  NOT YET, YOUR HONOR.

25   THE COURT:  WHEN DO YOU INTEND TO FILE IT?

26   MR. THOMASCH:  WE EXPECT TO FILE IT, AS WE

27   INDICATED, WITHIN 30 DAYS OF THE STATUS CONFERENCE REPORT

28   SOMETIME IN MID TO LATE FEBRUARY.

Exhibit 20
Page 930

1        THE COURT:  OKAY.  AS FAR AS THE PREVIOUS DISCOVERY
2   DISPUTE THAT WAS HEARD ON DECEMBER 12, THE COURT HAS
3   ALREADY SIGNED AN ORDER GRANTING THE MOTION TO COMPEL THE
4   PMQ DEPOSITION.
5        ANY UPDATE ON THAT?
6        MR. THOMASCH:  YES, YOUR HONOR.
7        BY WAY OF UPDATE, WE HAVE NOTICED THE DEPOSITION,
8   I'M SORRY, WE HAVE SUBPOENAED MR. ANTWON JONES TO BE
9   DEPOSED ON JANUARY 31.  I HAVE HAD NUMEROUS EXCHANGES BY
10  TELEPHONE AND EMAIL WITH MR. LANDSKRONER'S COUNSEL, A
11  MR. IAN FRIEDMAN OUT OF CLEVELAND.
12       MR. FRIEDMAN HAS CONSENTED, HE FIRST CONSENTED TO
13  AGREE TO SERVICE OF THE SUBPOENA THUS SORT OF REVERSING THE
14  QUESTIONS THAT MR. OSHER HAD WHEN HE APPEARED HERE ON
15  DECEMBER 12.  MR. FRIEDMAN HAS SAID THAT MR. LANDSKRONER
16  WANTS TO BE COOPERATIVE AND WILL ACCEPT THE SUBPOENA.
17       HE WAS SUBPOENAED FOR I BELIEVE JANUARY 29 BECAUSE
18  THE COURT IS GOING TO HAVE A HEARING ON JANUARY 30 IN THAT
19  CASE OR WAS SCHEDULED TO.  AND WE THOUGHT IT WOULD BE
20  CONVENIENT FOR HIM AS LONG AS HE WAS GOING TO BE IN L. A.
21  TO DO THE DEPOSITION ON THAT DAY.
22       MR. FRIEDMAN, WHO IS NOT GOING TO DEFEND THE
23  DEPOSITION, BUT WHO REPRESENTS MR. LANDSKRONER, ASKED IT BE
24  MOVED BECAUSE HE WILL BE OUT OF THE COUNTRY FOR SOME NUMBER
25  OF WEEKS.
26       THE ONLY DAY THAT WE COULD GET FROM MR. FRIEDMAN
27  WAS FEBRUARY 18, A FEDERAL HOLIDAY, THE PRESIDENT'S DAY,
28  NEVERTHELESS WE ACCEPTED.  AND WE ARE GOING TO GO FORWARD

Exhibit 20
Page 931

```
 1   WITH THE DEPOSITION ON FEBRUARY 18.  WE WILL BE SERVING --

 2         THE COURT:  IS THAT GOING TO BE IN LOS ANGELES OR

 3   CLEVELAND?

 4         MR. THOMASCH:  I BELIEVE IT'S GOING TO BE IN LOS

 5   ANGELES.

 6         THE COURT:  OKAY.

 7         MR. THOMASCH:  WE WILL GO TO CLEVELAND IF

 8   NECESSARY, BUT WHEN HAVE DISCUSSED IT, WE DISCUSSED IT

 9   BEING IN LOS ANGELES.  SO --

10         THE COURT:  ALL RIGHT.  WELL, THE ONLY QUESTION I

11   WOULD HAVE IS IN TERMS IF THE PARTIES SINCE IT'S AN

12   OUT-OF-TOWN DEPONENT UNDER UNUSUAL CIRCUMSTANCES I WOULD

13   MAKE MYSELF AVAILABLE IF THERE WERE OBJECTIONS DURING THE

14   COURSE OF THE DEPOSITION AND PARTIES NEEDED A RULING, BUT I

15   WOULD NOT BE AVAILABLE ON FEBRUARY 18.

16         MR. THOMASCH:  I UNDERSTAND.  AND THAT WOULD BE A

17   WONDERFUL COURTESY IF YOU WERE AVAILABLE.  I THINK I WILL

18   SPEAK WITH MR. FRIEDMAN AND SEE IF WE CAN RESCHEDULE.

19         IS THERE A DATE THE COURT --

20         THE COURT:  ANY OTHER DATE, EXCEPT NOT THE LAST

21   WEEK OF FEBRUARY.

22         MR. THOMASCH:  WE WILL LOOK AT THAT, YOUR HONOR.

23         THERE REMAIN NUMEROUS DISPUTES OVER WHAT CAN BE

24   ASKED OF PLAINTIFF'S PMQ WITNESS.  WE WENT FORWARD WITH THE

25   PROCESS THAT YOU ASKED FOR, YOUR HONOR, AND WE LAID OUT

26   NUMEROUS QUESTIONS AS FAR AS THE DOCUMENTS AS WELL AS THE

27   DOCUMENTS THAT WE WANTED.

28         I THINK IT'S REALLY IMPORTANT TO TAKE A STEP BACK,
```

Exhibit 20
Page 932

1   YOUR HONOR, AND REALIZE THAT AT THE TIME THAT THE REQUEST

2   AND APPROVAL OF THE JONES SETTLEMENT WAS BEFORE THIS COURT,

3   THE PARTIES CLAIMED THAT SETTLEMENT HAD BEEN REACHED AT

4   ARM'S LENGTH.  THE APPROVAL PROCESS WAS BOTH TRANSPARENT

5   AND PROVIDED FOR ACCOUNTABILITY.

6        IN FACT THERE WERE MYRIAD UNDISCLOSED RELATIONSHIPS

7   AMONG COUNSEL FOR THE CLASS AND COUNSEL FOR THE CITY

8   RENDERING THE WHOLE PROCESS ABSOLUTELY OPAQUE.  IT WAS AS

9   IF YOU WERE TRYING TO LOOK THROUGH ONE AFTER THE NEXT AFTER

10  THE NEXT TRANSLUCENT PANES AND YOU SIMPLY COULDN'T SEE WHAT

11  WAS ON THE OTHER SIDE, ALTHOUGH IT WAS REPRESENTED THAT,

12  DON'T WORRY, ON THE BACK-END OF THIS IS A COMPLETELY ARM'S

13  LENGTH TRANSACTION.

14       SINCE 2017 PWC HAS BEEN PURSUING THE QUESTION OF

15  WHY DOES THE CITY IN ITS FILES HAVE A DRAFT COMPLAINT

16  CAPTIONED JONES V. PWC.  AS WE HAVE GONE THROUGH 2018 AND

17  INTO EARLY 2019 WE HAVE REMOVED SEVERAL OF THOSE

18  METAPHORICAL PANES, BUT THE IMAGE WE ARE STILL SEEING IS

19  INCOMPLETE, IT'S FUZZY, BUT IT SURE LOOKS LIKE THERE WAS

20  COLLUSION.

21       AND A COURT ORDER IS GOING TO BE NEEDED TO ALLOW

22  CLARITY AND THE CITY SHOULD WELCOME THAT BECAUSE MUCH OF

23  WHAT HAS GONE ON IS, I THINK, SHOCKING, AND IF THERE IS AN

24  INNOCENT EXPLANATION, THE CITY SHOULD BE RUNNING TO GIVE

25  IT.

26       AT THE LAST CONFERENCE ON DECEMBER 12 MS. TUFARO

27  FLATLY DENIED MR. JONES WAS EVER REPRESENTED BY COUNSEL FOR

28  THE CITY.  TRANSCRIPT PAGE 28 LINES 1 THROUGH 8.

Exhibit 20
Page 933

1    SHE NEVERTHELESS ASSERTED THAT COMMUNICATIONS

2  BETWEEN JONES AND THE CITY WERE PRIVILEGED.  EVEN

3  COMMUNICATIONS THAT PRECEDED JONES FILING THE LAWSUIT

4  AGAINST THE CITY.

5    YOUR HONOR INQUIRED AS TO WHAT PRIVILEGE.

6  MS. TUFARO WASN'T PRECISE, BUT REFERENCED ON SEVERAL

7  OCCASIONS A "MEDIATION PRIVILEGE."

8    NOW MEDIATION PRIVILEGE CLEARLY IS NOT APPLICABLE

9  TO WORK BETWEEN -- COMMUNICATIONS BETWEEN ADVERSARIES PRIOR

10  TO ONE SUING THE OTHER.  CALIFORNIA CODE OF EVIDENCE 1119

11  SHOWS THAT THESE EARLY PRE-SUIT COMMUNICATIONS WHICH WERE

12  NOT IN FURTHERANCE OF MEDIATION ARE NOT PRIVILEGED AS A

13  MEDIATION PRIVILEGE.

14    AT THAT SAME HEARING AFTER MS. TUFARO GAVE THAT

15  FLAT DENIAL THAT THE CITY HAD REPRESENTED MR. JONES,

16  MR. KIESEL ASKED FOR A BREAK, CAME BACK IN, AND PURPORTED

17  TO CLARIFY IN HIS WORDS MS. TUFARO'S DENIAL AND THAT IS AT

18  PAGE 42 OF THE TRANSCRIPT.

19    MR. KIESEL REPRESENTED THAT SPECIAL COUNSEL DID

20  HAVE A RELATIONSHIP WITH MR. JONES THAT WAS NOT ADVERSE TO

21  THE CITY OF LOS ANGELES UNTIL MR. JONES WANTED TO PURSUE AN

22  ACTION AGAINST THE CITY THAT, I SUGGEST, IS A STUNNING

23  DISCLOSURE.

24    HE DID NOT SAY WHO THE SPECIAL COUNSEL WAS, BUT I

25  KNOW MR. KIESEL, AND I THINK IF HE WAS TALKING ABOUT

26  HIMSELF, HE WOULD HAVE SAID IT WAS HIMSELF.  SO I'M

27  ASSUMING, BUT I DON'T KNOW, THAT HE WAS MAKING REFERENCE TO

28  MR. PARADIS.

Exhibit 20
Page 934

1           NOW THE CITY HAS TAKEN ANOTHER STEP SINCE WE'VE

2    BEEN HERE.  THE MOVE BETWEEN DECEMBER 12 AND TODAY IS

3    EXTRAORDINARY BECAUSE WHAT THE CITY HAS DONE IT HAS GONE

4    FROM SAYING IT'S PRIVILEGED, I'M NOT GOING TO TELL YOU WHY

5    IT'S PRIVILEGED, MAYBE IT'S A MEDIATION PRIVILEGE.

6           TO NOW THEY ARE SAYING THERE IS A COMMON INTEREST

7    PRIVILEGE BETWEEN MR. JONES AND THE CITY OF LOS ANGELES FOR

8    COMMUNICATIONS THAT ALL PREDATE THE FILING OF THE JONES V.

9    LADWP LAWSUIT.

10          NOW THAT IS WRONG AS A MATTER OF LAW, AND WE HAD

11   PREVIOUSLY BRIEFED IN THIS COURT MCKESSON HBOC INC. VERSUS

12   SUPERIOR COURT.

13          THE COURT:  LET ME ASK ABOUT THAT, IS THAT AN

14   ACCURATE DESCRIPTION?

15          HAS THE CITY ASSERTED A COMMON INTEREST PRIVILEGE

16   BETWEEN THE CITY AND MR. JONES?

17          MR. PARADIS:  YOUR HONOR, WE HAVE ASSERTED THE

18   COMMON INTEREST DOCTRINE.  IT'S NOT A PRIVILEGE UNDER

19   CALIFORNIA LAW AS WE UNDERSTAND IT, BUT IT'S A DOCTRINE.

20          YES, WE HAVE ASSERTED IT AT THE DIRECTION OF OUR

21   CLIENT.

22          THE COURT:  WAS THAT DISCLOSED TO THIS COURT AT A

23   TIME WHEN ALL THE HEARINGS WE HAD ON THE MOTION FOR

24   PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT?

25          MR. PARADIS:  I DON'T KNOW, JUDGE, I WAS NOT HERE

26   FOR THAT HEARING.

27          THE COURT:  YOU HAVE COUNSEL THAT YOU COMMUNICATE

28   WITH DON'T YOU?

Exhibit 20
Page 935

```
1          MR. PARADIS:  I'M SORRY JUDGE?

2          THE COURT:  YOU HAVE OTHER COUNSEL THAT YOU

3  COMMUNICATE WITH IN REPRESENTATION OF THE CITY, AND YOU

4  DON'T KNOW WHETHER IT WAS REPRESENTED TO THE CITY OR NOT

5  WHETHER IT WAS DISCLOSED TO THE COURT?

6          MR. PARADIS:  I DO NOT, AND I WILL FIND OUT FOR

7  YOU.

8          THE COURT:  WHEN WAS THIS COMMON INTEREST PRIVILEGE

9  FIRST -- WHEN DID IT FIRST COME ABOUT?

10         MR. PARADIS:  I DON'T UNDERSTAND YOUR QUESTION,

11 YOUR HONOR.

12         THE COURT:  WHAT IS THE DATE OF THE FIRST EXISTENCE

13 OF THIS ALLEGED COMMON INTEREST PRIVILEGE?

14         MR. PARADIS:  BACK IN 2000 -- AGAIN, I'M GOING

15 WITHOUT ANY NOTES HERE, SO YOU ARE GOING TO HAVE TO PARDON

16 ME, BUT I'M GOING BACK TO 2015 IS MY RECOLLECTION.

17         THE COURT:  HOW DID IT COME ABOUT?

18         MR. PARADIS:  THERE WAS INTEREST THAT WERE COMMON

19 BETWEEN US AND MR. JONES AND THE CITY.

20         THE COURT:  WHAT IS THIS COMMON INTEREST?

21         MR. PARADIS:  IT'S IN THE NATURE OF A SETTLEMENT,

22 YOUR HONOR.

23         THE COURT:  WHEN WAS THE LAWSUIT FILED?

24         MR. PARADIS:  IN 2015.

25         THE COURT:  AND WHAT IS THE DATE OF THE FILING OF

26 THE CLASS ACTION COMPLAINT?

27         MR. PARADIS:  I DON'T HAVE THAT ON THE TOP OF MY

28 HEAD.  THIS LAWSUIT WAS FILED MARCH 6, 2015.
```

Exhibit 20
Page 936

| | |
|---|---|
| 1 | THE COURT:  I WANT TO KNOW WHEN THE COMMON |
| 2 | INTEREST -- THE ALLEGED COMMON INTEREST DOCTRINE AROSE |
| 3 | UNDER YOUR VIEW WITH RESPECT TO THE DATE THAT THE CLASS |
| 4 | ACTION WAS FILED. |
| 5 | MR. PARADIS:  SOMETIME PRIOR TO MARCH OF 2015. |
| 6 | THE COURT:  WHICH CAME FIRST THE FILING OF THE |
| 7 | ACTION OR THE COMMON INTEREST PRIVILEGE? |
| 8 | MR. PARADIS:  I BELIEVE IT WAS THE COMMON INTEREST. |
| 9 | THE COURT:  SO YOU HAVE A COMMON INTEREST.  ONE OF |
| 10 | THE MEMBERS OF THIS COMMON INTEREST FILES A LAWSUIT AND |
| 11 | DOESN'T DISCLOSE TO THIS COURT THAT THERE IS A COMMON |
| 12 | INTEREST AND A POTENTIAL CONFLICT OF INTEREST. |
| 13 | MR. PARADIS:  I DON'T KNOW IF IT WAS DISCLOSED OR |
| 14 | NOT, YOUR HONOR. |
| 15 | THE COURT:  I'M TELLING YOU IT WAS NOT DISCLOSED. |
| 16 | MR. PARADIS:  OKAY. |
| 17 | MR. THOMASCH:  YOUR HONOR -- |
| 18 | THE COURT:  I'M NOT FINISHED YET. |
| 19 | MR. THOMASCH:  I'M SORRY, YOUR HONOR. |
| 20 | THE COURT:  NOW, AGAIN, WHAT IS THIS COMMON |
| 21 | INTEREST THAT APPARENTLY YOU CLAIM EXISTED PRIOR TO THE |
| 22 | FILING OF THE ADVERSARY PROCEEDING, NAMELY, THE CLASS |
| 23 | ACTION COMPLAINT? |
| 24 | MR. PARADIS:  THE COMMON INTEREST IS IN CONNECTION |
| 25 | WITH THE SETTLEMENT INVOLVING THE DEFECTIVE BILLING SYSTEM. |
| 26 | THE COURT:  SO YOU'RE TELLING ME THE WHOLE FILING |
| 27 | OF THE LAWSUIT WAS A SETUP? |
| 28 | MR. PARADIS:  I'M NOT SAYING THAT AT ALL, JUDGE. |

Exhibit 20
Page 937

```
 1          THE COURT:  TELL ME WHAT DOES IT MEAN?
 2          MR. PARADIS:  AGAIN, JUDGE, WITHOUT SPEAKING TO MY
 3   CLIENT, WITHOUT HAVING AUTHORITY TO GO BEYOND WHAT I HAVE
 4   SAID, I'M TELLING YOU IT'S A COMMON INTEREST RELATING TO
 5   THE SETTLEMENT INVOLVING THE IMPLEMENTATION OF THE
 6   DEFECTIVE BILLING SYSTEM.
 7          THE COURT:  AS PART OF THIS COMMON INTEREST
 8   PRIVILEGE AND SETTLEMENT, HOW DID THIS COMPLAINT OF JONES
 9   VERSUS PWC COME ABOUT?
10          MR. PARADIS:  I THINK THAT IS GOING TO BE A
11   PRIVILEGED ISSUE, JUDGE.
12          THE COURT:  WHAT IS THE PRIVILEGE?
13          MR. PARADIS:  ATTORNEY-CLIENT PRIVILEGE AND COMMON
14   INTEREST DOCTRINE.
15          THE COURT:  WHEN IS MR. JONES' DEPOSITION SCHEDULED
16   FOR?
17          MR. THOMASCH:  IT'S SCHEDULED FOR THE 31TH OF
18   JANUARY.
19          THE COURT:  MR. JONES HIMSELF?
20          MR. THOMASCH:  YES.
21          THE COURT:  WHO REPRESENTS HIM?
22          MR. THOMASCH:  WELL, THAT IS NOT CLEAR.  I ASKED
23   MR. FRIEDMAN IF MR. LANDSKRONER WOULD BE REPRESENTING
24   MR. JONES AT HIS DEPOSITION SO I COULD COORDINATE SCHEDULES
25   WITH MR. LANDSKRONER AND ALSO TO SEE IF MR. LANDSKRONER
26   WOULD ACCEPT A COPY OF THE SUBPOENA, SERVICE OF THE
27   SUBPOENA.
28          I WAS TOLD MR. LANDSKRONER IS NOT INTENDING ON
```

Exhibit 20
Page 938

1    REPRESENTING HIS FORMER CLIENT OR HIS CURRENT CLIENT, BUT

2    HE'S NOT GOING TO REPRESENT HIM AT THIS DEPOSITION, AND

3    HE'S NOT GOING TO APPEAR AT THE DEPOSITION OF MR. JONES.

4         WE'VE OBVIOUSLY HAD NO CONVERSATIONS WITH

5    MR. JONES.  WE WERE ABLE TO SERVE HIM IN PERSON AT HIS

6    RESIDENCE IN THE CITY OF LOS ANGELES.  HE HAS NOT INQUIRED

7    OF US TO CHANGE THE DATE, SO WE'RE EXPECTING HIM IN OUR

8    OFFICES ON JANUARY 31.

9         THE COURT:  THANK YOU.

10        MR. THOMASCH:  YOUR HONOR, THE COMMON INTEREST

11   DOCTRINE IS SPECIFICALLY ASSERTED AND THIS IS THE FIRST

12   TIME.  THE PRIVILEGE LOG ON THE JONES COMPLAINT GOES BACK

13   TO 2017.  THIS IS THE FIRST TIME THE CITY HAS SAID WE HAD A

14   COMMON INTEREST WITH JONES BEFORE JONES SUED THE CITY.

15        THAT IS ASSERTED IN OBJECTIONS TO PARAGRAPHS 6 AND

16   7 OF PWC'S ORDER WHICH ASKS FOR COMMUNICATIONS BETWEEN

17   JONES AND THE CITY OR JONES' LAWYERS AND THE CITY'S LAWYERS

18   PRIOR TO JONES SUING.  JONES SUED ON APRIL 1, 2015.

19        IT IS ALSO ASSERTED IN RESPONSE TO PARAGRAPHS 11-U,

20   11-BB, 11-CC, 11-EE AND 11-II.  THOSE ARE VERY IMPORTANT

21   QUESTIONS.

22        THE COURT:  I WANT TO FOLLOW-UP WITH A QUESTION TO

23   COUNSEL TO MAKE SURE I UNDERSTAND THIS ASSERTION.

24        COUNSEL FOR PLAINTIFF, ARE YOU ASSERTING THAT A

25   COMMON INTEREST PRIVILEGE CAN EXIST BETWEEN ADVERSE

26   PARTIES?

27        MR. PARADIS:  THEY WERE NOT ADVERSE, JUDGE.

28        THE COURT:  THEY WERE NOT ADVERSE.  JUST ONE PARTY

Exhibit 20
Page 939

1   SUED THE OTHER PARTY.

2           MR. PARADIS:  AGAIN, JUDGE, WITHOUT GETTING --

3           THE COURT:  SO YOU'RE TELLING ME THAT THE FILING OF

4   THE COMPLAINT, THE CLASS ACTION, WAS NOT AN ADVERSARY

5   PROCEEDING?

6           MR. PARADIS:  THE RELATIONSHIP EXISTED BEFORE THAT,

7   JUDGE.

8           THE COURT:  SO THERE WAS -- I'VE HEARD OF COMMON

9   DEFENSE DOCTRINE AMONG CO-DEFENDANTS AND CO-PLAINTIFFS.

10  IT'S THE FIRST TIME I HEARD ASSERTION OF A COMMON INTEREST

11  PRIVILEGE ASSERTED BETWEEN ADVERSE PARTIES.

12          YOU HAVE ANY AUTHORITY FOR THAT PROPOSITION?

13          MR. PARADIS:  NOT AT MY FINGERTIPS, NOT RIGHT NOW,

14  JUDGE.

15          THE COURT:  BEYOND YOUR FINGERTIPS.  I ASSUME

16  BEFORE ASSERTING THIS PRIVILEGE AND ADVISING COUNSEL OF THE

17  ASSERTION OF PRIVILEGE YOU DID RESEARCH ON IT.

18          MR. PARADIS:  YES, JUDGE, WE DID.

19          THE COURT:  AND DO YOU HAVE ANY CASES TO SUPPORT

20  THAT PRIVILEGE?

21          MR. PARADIS:  YES, JUDGE, WE DO.

22          THE COURT:  A COMMON INTEREST DOCTRINE BETWEEN

23  ADVERSE PARTIES?

24          MR. PARADIS:  JUDGE, THE RELATIONSHIP EXISTED AND

25  WAS FORMED PRIOR TO THE ADVERSE NATURE OF THE RELATIONSHIP.

26          MR. THOMASCH:  YOUR HONOR, THERE WAS NEVER A COMMON

27  INTEREST.  WHAT WAS COMMON WAS A COMMON ATTORNEY.

28          IT APPEARS THERE MR. PARADIS, OR SOME SPECIAL

Exhibit 20
Page 940

1    COUNSEL FOR THE CITY, HAS BOTH REPRESENTED MR. JONES AND

2    REPRESENTED THE CITY SIMULTANEOUSLY WITH REGARD TO THE SAME

3    UNDERLYING FACTS INVOLVING THE IMPLEMENTATION OF THE CC&B

4    BILLING SYSTEM.

5         RIGHT NOW I'D LIKE TO NOTE THAT THE CITY IS

6    PURPORTING TO ASSERT ATTORNEY-CLIENT PRIVILEGES BASED ON

7    THE CITY'S COUNSEL'S REPRESENTATION OF MR. JONES, AND BASED

8    ON THIS SO-CALLED COMMON INTEREST DOCTRINE.

9         MR. JONES HAS PROVIDED NO DECLARATION TO SAY THAT

10   MR. JONES IS ASSERTING SUCH A PRIVILEGE.  AND IT'S HORNBOOK

11   LAW PRIVILEGES BELONG TO CLIENTS NOT TO COUNSEL.

12        AND A COMMON INTEREST DOCTRINE, IF YOU'RE GOING TO

13   ALLEGE THAT, YOU NEED TO SHOW THAT BOTH OF THE CLIENTS HAD

14   A COMMON INTEREST AND ARE ASSERTING THE DOCTRINE.  AND THEY

15   HAVE NOT ATTEMPTED TO DO THAT WITH REGARD TO MR. JONES.

16        I THINK IT'S VERY INTERESTING, IF YOUR HONOR

17   RECALLS, IN CONNECTION WITH THE SETTLEMENT MR. ANTWON JONES

18   SUBMITTED A DECLARATION, A SWORN DECLARATION UNDER PENALTY

19   OF PERJURY, TO YOUR HONOR ON THE DATE OF MAY 5, 2017.  THIS

20   IS IN THE CLASS ACTION.

21        MR. JONES' DECLARATION, WHICH WAS SERVED BY COUNSEL

22   BY MR. LANDSKRONER'S OFFICE, THAT DECLARATION IS 20

23   PARAGRAPHS LONG.  IN IT THERE ARE 29 REFERENCES TO

24   "COUNSEL."  NINE TIMES HE JUST REFERS TO COUNSEL.  "I

25   INSTRUCTED COUNSEL, I MET WITH COUNSEL, I DIRECTED

26   COUNSEL."

27        ON 13 OCCASIONS HE SPEAKS OF "MY COUNSEL."  ON SIX

28   OCCASIONS WE REFERS TO "CLASS COUNSEL."  AND ONE TIME HE

Exhibit 20
Page 941

 1  REFERS TO "PLAINTIFF'S COUNSEL."

 2          NOWHERE IS THERE A MENTION OF MR. LANDSKRONER,

 3  MR. PARADIS, MS. TUFARO, MR. KIESEL.  HE SIMPLY SAYS

 4  "COUNSEL."

 5          THERE IS, I SUBMIT TO THE COURT, NO WAY YOU CAN

 6  READ MR. LANDSKRONER'S DECLARATION WHICH WAS OBVIOUSLY

 7  PREPARED BY COUNSEL.  THERE IS NO WAY YOU CAN READ THAT AND

 8  UNDERSTAND THAT HE'S MAKING REFERENCE TO MULTIPLE DIFFERENT

 9  COUNSEL INCLUDING A COUNSEL WHO IS NOW SPECIAL COUNSEL TO

10  THE CITY.

11          FOR ALL THE WORLD WHEN HE'S TALKING ABOUT MY

12  COUNSEL, COUNSEL, CLASS COUNSEL, AND PLAINTIFF'S COUNSEL

13  HE'S TALKING ABOUT MR. LANDSKRONER AND MR. LANDSKRONER

14  ALONE.  AND YET MR. KIESEL HAS TOLD US THAT SPECIAL COUNSEL

15  FOR THE CITY OF LOS ANGELES REPRESENTED MR. JONES AND NO

16  ONE EVER TOLD THAT TO THE COURT.  NO ONE EVER TOLD THAT TO

17  THE OTHER MEMBERS OF CLASS THAT MR. JONES PURPORTED TO

18  REPRESENT.

19          WHAT I THINK HAS COME OUT HERE THIS MORNING IS THAT

20  THE LAWSUIT HAD BEEN, I'VE HEARD THE TERM PREPACKAGED

21  BANKRUPTCY.  I NEVER HEARD OF A PREPACKAGED CLASS ACTION

22  SETTLEMENT THAT BEFORE THEY SUED THE OPPOSING PARTIES ALL

23  GOT TOGETHER AND AGREED TO TERMS UNDER WHICH ONE WOULD SUE

24  THE OTHER.  THEN THEY APPARENTLY WENT THROUGH SORT OF A

25  FAUX PERIOD OF ADVERSARY RELATIONSHIPS THEN LO AND BEHOLD

26  OUT COMES A SETTLEMENT.

27          BUT WE NOW FIND OUT THEY WERE TALKING ABOUT

28  SETTLEMENT BEFORE THERE EVER WAS A SUIT.  AND WE FIND OUT

Exhibit 20
Page 942

24

```
 1  THE SPECIAL COUNSEL FOR THE CITY OF LOS ANGELES WAS
 2  ACTUALLY REPRESENTING MR. JONES AT THAT TIME.
 3       NOW WE ASKED IN OUR QUESTIONS, QUESTION PAGE 7 OF
 4  OUR PROPOSED ORDER, QUESTION 11-U, "DURING WHAT PERIOD OF
 5  TIME WAS MR. JONES REPRESENTED BY MR. PAUL PARADIS?"
 6       THEY HAVE OBJECTED.  THEY HAVE CLAIMED THE
 7  ATTORNEY-CLIENT COMMUNICATION, ATTORNEY WORK PRODUCT, AND
 8  COMMON INTEREST DOCTRINE TO THE QUESTION DURING WHAT PERIOD
 9  OF TIME WAS MR. JONES REPRESENTED BY MR. PAUL PARADIS.
10       YOUR HONOR, THAT IS NOT A PRIVILEGED QUESTION UNDER
11  ANY SET OF CIRCUMSTANCES WHATSOEVER.
12       THE COURT:  MR. PARADIS, ARE YOU STANDING ON THAT
13  OBJECTION?
14       MR. PARADIS:  YES, JUDGE.
15       THE COURT:  SO YOU REFUSE TO ALLOW THE WITNESS TO
16  ANSWER WHETHER MR. JONES WAS REPRESENTED BY YOU?
17       MR. PARADIS:  AS DIRECTED BY MY CLIENT, YES, JUDGE.
18       THE COURT:  WHAT DO YOU MEAN DIRECTED BY MY CLIENT.
19  WHO IS THE CLIENT?
20       MR. PARADIS:  CITY OF LOS ANGELES.
21       THE COURT:  WHO AT THE CITY IS DIRECTING YOU TO
22  ASSERT THAT PRIVILEGE?
23       MR. PARADIS:  WE MET WITH THE CITY ATTORNEY TOM
24  PETERS LAST WEEK.  AT HIS DIRECTION I'M ASSERTING THAT
25  PRIVILEGE AND STANDING ON IT, YES.
26       THE COURT:  AND WHO YOU REPRESENT IS A PRIVILEGED
27  MANNER?
28       MR. PARADIS:  YES, JUDGE.
```

Exhibit 20
Page 943

```
 1          THE COURT:  UNDER WHAT THEORY IS THAT?
 2          MR. PARADIS:  THAT IS --
 3          THE COURT:  WHETHER YOU REPRESENT AN ADVERSE PARTY
 4   IS A PRIVILEGED MATTER?
 5          MR. KIESEL, LET ME ASK YOU.  YOU'RE FAMILIAR WITH
 6   THE AFFAIRS OF THE CITY OF LOS ANGELES.
 7          DOES THE CITY OF LOS ANGELES HAVE AN INTERNAL
 8   AFFAIRS ETHICS DEPARTMENT?  LIKE A PUBLIC ADVOCATE OR
 9   SOMEONE WHO INVESTIGATES ETHICAL ISSUES WITHIN THE CITY
10   ATTORNEY'S OFFICE?
11          MR. KIESEL:  I DO NOT KNOW SPECIFICALLY IF THERE IS
12   SUCH A DEPARTMENT WITHIN THE CITY ATTORNEY'S OFFICE.  I
13   THINK THERE IS A DEPARTMENT WITHIN THE CITY, BUT I DON'T
14   KNOW SPECIFICALLY, YOUR HONOR.
15          THE COURT:  I'M GOING TO ASK YOU TO FIND OUT AND
16   IDENTIFY WHO IS IN CHARGE OF THAT DEPARTMENT AND HAVE A
17   DISCUSSION WHETHER IT'S APPROPRIATE FOR THE CITY TO
18   UNDERTAKE AN INVESTIGATION, AN INTERNAL INVESTIGATION, AS
19   TO WHAT HAPPENED HERE.
20          MR. KIESEL:  OF COURSE, YOUR HONOR.
21          THE COURT:  THANK YOU.
22          MR. THOMASCH:  YOUR HONOR, BY WAY OF BACKGROUND,
23   MR. PETERS WHO WAS JUST REFERENCED AS GIVING THE
24   INSTRUCTIONS HERE, HE IS THE ONE WHO WAS THE PMQ WITNESS
25   WHO KEPT SAYING, WELL, MR. PARADIS IS INSTRUCTING ME NOT TO
26   ANSWER THE QUESTION.
27          SO IT'S A CIRCULAR SITUATION.  MR. PETERS IS ALSO A
28   LONG TIME PARTNER BEFORE HE WENT INTO THE GOVERNMENT OF
```

Exhibit 20
Page 944

```
 1   MR. KIESEL.
 2         THE QUESTIONS THAT, AGAIN, WE ASKED AND THEY HAVE
 3   OBJECTED TO ON THE GROUNDS OF THE COMMON INTEREST DOCTRINE
 4   INCLUDE.
 5         "QUESTION:  DID ANYONE AFFILIATED WITH THE CITY,
 6   INCLUDING SPECIAL COUNSEL, RECOMMEND TO MR. JONES HE RETAIN
 7   COUNSEL FROM CLEVELAND OHIO?
 8         "OBJECTION.  ATTORNEY-CLIENT.  COMMON INTEREST.
 9         "QUESTION:  DID ANYONE AFFILIATED WITH THE CITY,
10   INCLUDING SPECIAL COUNSEL, RECOMMEND TO MR. LANDSKRONER HE
11   COMMUNICATE WITH MR. JONES?
12         "OBJECTION.  ATTORNEY-CLIENT.  COMMON INTEREST."
13         PAGE 7, PARAGRAPH 11-E:
14         "QUESTION:  PRIOR TO APRIL 1, 2015, DID ANYONE IN
15   THE CITY ATTORNEY'S OFFICE OR SPECIAL COUNSEL FOR THE CITY
16   IN THE LADWP VERSUS PWC ACTION KNOW OR EXPECT THAT
17   MR. JONES WOULD BE FILING THE JONES V. CITY OF LOS ANGELES,
18   CASE NUMBER, COMPLAINT?"
19         SO WE WANTED TO KNOW BEFORE THERE WAS A LAWSUIT DID
20   THE CITY ATTORNEY'S OFFICE OR THE SPECIAL COUNSEL HAD THEY
21   BEEN TIPPED OFF THERE WAS GOING TO BE A LAWSUIT.
22         "OBJECTION.  ATTORNEY-CLIENT AND COMMON INTEREST
23   DOCTRINE."
24         I HAVE NEVER SEEN ANYTHING LIKE IT.  THEY HELD
25   THEMSELVES OUT AS ARM'S LENGTH ADVERSARIES, AND THEY HAD
26   THE AUDACITY TO SAY THE PROCESS WAS TRANSPARENT.  AND TO
27   THIS DAY THEY WON'T EVEN ANSWER DURING WHAT PERIOD OF TIME
28   DOES COUNSEL FOR THE CITY SITTING AT COUNSEL TABLE WHEN DID
```

Exhibit 20
Page 945

```
1   HE REPRESENT MR. JONES.

2        IF THIS WAS MR. LANDSKRONER, WHO ONLY HAD

3   REPRESENTED MR. JONES AND THERE WAS NO ISSUE THAT

4   MR. LANDSKRONER EVER REPRESENTED THE CITY, CONFLICT WASN'T

5   THE ISSUE.  THE ISSUE WAS WHEN WAS THE ATTORNEY-CLIENT

6   RELATIONSHIP FORMED THAT QUESTION IS NOT -- THE ANSWER TO

7   THAT QUESTION IS NOT PRIVILEGED.

8        THE FOUNDATIONAL FACTS THAT SURROUND THE EXISTENCE

9   OF AN ATTORNEY-CLIENT RELATIONSHIP ARE NOT PRIVILEGED AND

10  THE CASE LAW IS LONG IN THAT REGARD.  WE WILL BRIEF ANY OF

11  THESE ISSUES, YOUR HONOR, BUT THIS IS BASIC STUFF.

12       THE EXISTENCE OF THE NAME OF THE CLIENT, THE NAME

13  OF THE ATTORNEY, THE DATE ON WHICH THE RELATIONSHIP BEGAN,

14  THE DATE ON WHICH IT ENDED, THOSE ARE FOUNDATIONAL FACTS

15  NECESSARY TO ALLOW THE COURT TO EVALUATE A CLAIM OF

16  PRIVILEGE.

17       YOU CANNOT CLAIM PRIVILEGE BUT DENY THE COURT THE

18  INFORMATION NECESSARY TO EVALUATE THE CLAIM OF PRIVILEGE.

19  IT'S THAT SIMPLE.  BUT THEY ROADBLOCK AFTER ROADBLOCK AFTER

20  ROADBLOCK SEE IF THEY CAN RUN OUT THE CLOCK ON THIS THING

21  BEFORE WE GET TO TRIAL.  DEAN SMITH WOULD PROUD.

22       THE COURT:  I ASK MR. KIESEL TO NOT ONLY BRING

23  THESE MATTERS TO THE ATTENTION OF THE INTERNAL AFFAIRS

24  DEPARTMENT, IF THERE IS SUCH A DEPARTMENT, AN INTERNAL

25  ETHICS DEPARTMENT TO THE CITY, BUT ALSO TO BRING IT TO THE

26  ATTENTION OF THE CITY ATTORNEY, MIKE FEUER, DIRECTLY.

27       MR. KIESEL:  UNDERSTOOD, YOUR HONOR.

28       I WILL POINT OUT IN THE SMALL WORLD GIVEN
```

Exhibit 20
Page 946

1    MR. THOMASCH'S COMMENTS HERE, PART OF WHAT WE DID HERE,

2    YOUR HONOR, AND I APPRECIATE THE COURT AND COUNSEL'S

3    OPPORTUNITY TO LOOK AT THE QUESTIONS THAT WERE GOING TO BE

4    ASKED OF THE PERSON MOST QUALIFIED, SO WE COULD LAY THESE

5    ISSUES OUT TO THE COURT AND THE COURT COULD MAKE A

6    DETERMINATION BEFORE WE ACTUALLY BRING A WITNESS IN TO BE

7    DEPOSED.  THAT IS THE PURPOSE OF WHY WE WENT THROUGH THIS

8    EXERCISE SO THE COURT CAN LOOK AT THE OBJECTIONS AND RULE

9    ON THOSE OBJECTIONS, SO WE CAN THEN HAVE AN APPROPRIATE

10   DEPOSITION.

11         AGAIN, THE SMALL WORLD, MR. THOMASCH'S FORMER

12   PARTNER, JIM CLARK, WHO IS THE CHIEF DEPUTY CITY ATTORNEY,

13   THERE WAS A QUESTION EARLIER WHAT WITNESS WAS UNAVAILABLE

14   THAT WE NEEDED TO MEET WITH IN ORDER TO ADEQUATELY RESPOND

15   TO SOME OF THESE QUESTIONS.  THERE WAS A DECISION NOT TO

16   PROVIDE THAT NAME BECAUSE THERE WAS A CONCERN ABOUT

17   PRIVACY.

18         I CAN TELL THE COURT I'VE BEEN AUTHORIZED TO LET

19   THIS COURT KNOW MR. CLARK IS ON MEDICAL LEAVE.  MR. CLARK,

20   IN LIGHT OF THE QUESTIONS THAT HAVE NOW BEEN ARTICULATED BY

21   DEFENDANTS THAT THEY WANT TO INQUIRE INTO, MR. CLARK, WHO

22   IS MR. THOMASCH'S FORMER PARTNER, WILL BE A PERSON MOST

23   QUALIFIED TO SOME OF THE CATEGORIES THAT HAVE BEEN

24   ARTICULATED HERE.

25         AND MR. CLARK IS, UNFORTUNATELY, CURRENTLY ON

26   MEDICAL LEAVE.  I'M HOPING HE WILL RETURN SHORTLY.  BUT

27   CURRENTLY HE WOULD BE THE PMQ FOR SEVERAL OF THESE TOPICS,

28   AND HE'S UNAVAILABLE TO BE DEPOSED.  I JUST WANT THE COURT

Exhibit 20
Page 947

1   TO BE AWARE OF THAT.

2          THE COURT:  AS COUNSEL KNOWS, I ALREADY SIGNED THE

3   ORDER AUTHORIZING THE DEPOSITION TO GO FORWARD WHICH SET

4   FORTH A NUMBER OF QUESTIONS WHICH COUNSEL WOULD BE ENTITLED

5   TO INQUIRE OF THE PMQ, AS WELL AS ANY FOLLOW-UP QUESTIONS.

6   WE'RE NOT GOING TO REHASH TERRITORY THAT WAS ALREADY

7   COVERED.

8          MR. KIESEL:  NOR AM I ASKING THE COURT TO DO THAT,

9   I'M MERELY SAYING WE'VE IDENTIFIED NOW THERE IS AN

10  ADDITIONAL WITNESS WHO WOULD BE --

11         THE COURT:  ALL RIGHT.  I DON'T WANT TO HEAR

12  REASSERTION OF THE SAME OBJECTIONS OVER AND OVER THAT HAVE

13  BEEN OVERRULED.

14         GO AHEAD COUNSEL.

15         MR. THOMASCH:  YOUR HONOR, THE PROBLEM WITH GOING

16  FORWARD WITH THE DEPOSITION IS THEY HAVE EVERY INTENTION OF

17  REASSERTING THE SAME OBJECTIONS AGAIN AND AGAIN.  AND AGAIN

18  AND AGAIN WHEN I ASKED AT THE LAST DEPOSITION "WHAT IS YOUR

19  AUTHORITY FOR THIS?"

20         SIMPLY THEY BLOW OFF THE OPPOSING QUESTIONER.  THEY

21  DON'T WANT TO RESPOND.  THEY DON'T CITE CASE LAW.  THEY

22  DON'T PUT IN A MEMO.  THEY DON'T PUT IN A MOTION.  THEY

23  SIMPLY SAY IT'S PRIVILEGED, AND I'M NOT GOING TO LET YOU,

24  THE COURT, KNOW THE FACTS THAT UNDERLIE THE PRIVILEGE.

25         WE HAVE ASKED FOR "THE PRODUCTION OF ALL DOCUMENTS

26  RESPONSIVE TO REQUEST FOR PRODUCTION NO. 2.  ALL WRITTEN

27  AGREEMENTS OR UNDERSTANDINGS BETWEEN LADWP AND ANTWON JONES

28  AND/OR JONES' COUNSEL PRIOR TO APRIL 1, 2015."

Exhibit 20
Page 948

```
1        THEY OBJECT.  THEY OBJECT ON WORK PRODUCT AND
2   ATTORNEY-CLIENT PRIVILEGE.  I'M TALKING ABOUT AGREEMENTS
3   WITH MR. JONES.  THEY DON'T REPRESENT MR. JONES.  MAYBE
4   MR. PARADIS DID, BUT IF HE DID HE CANNOT REPRESENT THE CITY
5   AT THE SAME TIME.
6        I DO THINK IT WOULD BE WORTHWHILE ON THE RECORD TO
7   IDENTIFY WHICH SPECIAL COUNSEL WAS THE SPECIAL COUNSEL THAT
8   REPRESENTED MR. JONES AND THAT INDIVIDUAL, PRESUMABLY IN
9   COURT TODAY SINCE THERE ARE ONLY TWO SPECIAL COUNSEL TO MY
10  KNOWLEDGE, COULD IDENTIFY WHAT DAY HE WAS RETAINED AND WHAT
11  DAY HE CEASED.
12       THOSE QUESTIONS -- THE ANSWERS TO THOSE QUESTIONS
13  ARE AVAILABLE IN THIS COURTROOM TODAY, AND THEY ARE NOT
14  PRIVILEGED.
15       WE ASKED FOR THE PRODUCTION OF COMMUNICATIONS
16  BETWEEN THE LAWYERS FOR JONES AND THE LAWYERS FOR THE CITY
17  PRIOR TO THE TIME THAT JONES SUED.  THEY OBJECTED.  THEY
18  WON'T PRODUCE.
19       WE CAN'T HAVE A PRODUCTIVE DEPOSITION WITHOUT FIRST
20  DEALING WITH THESE ISSUES, BUT THERE IS NO -- THEY HAVE NOT
21  CITED TO THE COURT A SINGLE CASE IN WHICH TWO ADVERSARIES
22  CAN BE REPRESENTED BY ONE COUNSEL.  TRUST ME, THE
23  CALIFORNIA RULES THAT GOVERN THE CODE OF PROFESSIONAL
24  RESPONSIBILITY, REQUIRE EXTRAORDINARY MEASURES SUCH AS
25  INFORMED CONSENT BY BOTH CLIENTS TO A RELATIONSHIP IN WHICH
26  ONE CLIENT REPRESENTS TWO PARTIES WHO OPPOSE EACH OTHER IN
27  LITIGATION EVEN IF IT'S SEQUENTIAL LITIGATION.
28       SO THE DISCLOSURES, THE WRITTEN DISCLOSURES,
```

Exhibit 20
Page 949

1   CONSENTING BY THE CITY AND BY MR. JONES THOSE WOULD BE NICE

2   TO SEE THE DATES AND WHAT WAS SAID ON THEM.  THOSE ARE NOT

3   PRIVILEGED DOCUMENTS.

4         THE COURT:  ALL RIGHT.  WELL, I ALREADY RULED ON

5   THE DISCOVERY.  THERE IS NO OTHER DISCOVERY MOTION IN FRONT

6   OF ME TODAY.  CERTAINLY YOU SHOULD GO FORWARD WITH THOSE

7   DEPOSITIONS.  AND IF WE HAVE A CONTINUOUS ASSERTION OF

8   INAPPROPRIATE OBJECTIONS, THE REMEDIES OF SANCTIONS AND

9   CONTEMPT ARE AVAILABLE.

10         IF A WITNESS REFUSES AFTER THE COURT INSTRUCTING

11   THE WITNESS THAT IT MUST BE ANSWERED, THE CONTEMPT

12   CITATIONS WILL BE AVAILABLE.

13         MR. THOMASCH:  THANK YOU, YOUR HONOR.

14         I NOTE IN PRIOR INSTANCES THE PLAINTIFF HAS TAKEN

15   THE POSITION THAT WHAT IS SAID IN COURT IS OF NO MOMENT.

16   WHAT MATTERS IS THE WRITTEN COURT ORDER THAT HAS BEEN

17   ENTERED.

18         WHEN WE WERE HERE ON DECEMBER 12, YOU MADE CLEAR

19   YOU WERE GRANTING OUR MOTION AND DENYING THEIR MOTION.  YOU

20   INDICATED WHAT SORTS OF QUESTIONS NEEDED TO BE ANSWERED.

21         THE COURT:  RIGHT.

22         MR. THOMASCH:  YOU THEN ASKED FOR US TO SUBMIT A

23   WRITTEN ORDER; WE HAVE DONE SO.

24         THE COURT:  AND I HAVE SIGNED THE ORDER.  IT WAS

25   SIGNED A WEEK OR SO AGO.

26         MR. THOMASCH:  THANK YOU.  IN THAT CASE WE WERE

27   UNAWARE OF THAT, YOUR HONOR.  WE WILL NOW SCHEDULE THE PMQ

28   DEPOSITION OF WITNESS OR WITNESSES AND TAKE THOSE AS SOON

Exhibit 20
Page 950

1  AS POSSIBLE.

2       MR. KIESEL:  YOUR HONOR, ONE QUESTION.

3       THE COURT:  YES.

4       MR. KIESEL:  IS IT THE COURT'S VIEW THAT EACH AND

5  EVERY ONE OF THE OBJECTIONS ASSERTED IN OUR RESPONSE TO THE

6  PROPOSED ORDER ARE OVERRULED AND ALL OF THEM MUST BE

7  RESPONDED TO AND ALL THE PRIVILEGES ALLEGED ARE NOT

8  APPLICABLE OR THERE ARE SOME YOU ARE SUSTAINING. I JUST

9  WANT TO BE CLEAR --

10       THE COURT:  I SIGNED THE ORDER.  READ THE ORDER.

11  THE ORDER PROVIDES THAT THOSE AREAS OF INQUIRY MAY BE GONE

12  INTO WITH THE DEPONENT AND ANY FOLLOW-UP QUESTIONS.

13       MR. KIESEL:  OKAY.  WE'LL READ THE ORDER, YOUR

14  HONOR.

15       MR. THOMASCH:  AND THE ORDER, OF COURSE YOUR HONOR,

16  PROVIDES FOR THE PRODUCTION OF DOCUMENTS.

17       THE COURT:  YES.

18       MR. THOMASCH:  WE WOULD ASK YOUR HONOR TO INSTRUCT

19  COUNSEL TO PROVIDE THOSE SOME NUMBER OF DAYS IN ADVANCE OF

20  THE DEPOSITION SO WE HAVE AN ABILITY TO PREPARE.

21       THE COURT:  THE DOCUMENTS SHOULD BE PRODUCED FIVE

22  DAYS BEFORE THE DEPOSITION.

23       MR. THOMASCH:  THANK YOU, YOUR HONOR.

24       THE COURT:  ALL RIGHT.  THERE WAS AN ISSUE

25  REGARDING THE SUMMARY JUDGMENT ORDERS.  I KNOW THE PARTIES

26  SUBMITTED VARIOUS DRAFTS AND THERE WERE COMPETING

27  PRESENTATIONS AND THEN I HAVE REVIEWED THEM.

28       I NOTICED I DIDN'T HAVE AN ORIGINAL.  I JUST HAD

Exhibit 20
Page 951

```
 1   MARKED UP COPIES.  I THINK MY CLERK CALLED COUNSEL AND
 2   ASKED TO SUBMIT THE ORIGINAL PROPOSED ORDER FOR SUMMARY
 3   JUDGMENT.
 4        MR. THOMASCH:  YOUR HONOR, YOU DIRECTED THE PARTIES
 5   TO WORK TOWARDS A STIPULATION OF SORT OF THE FACTUAL
 6   CHRONOLOGY OF WHAT HAPPENED TO ALLOW MULTIPLE SETS OF
 7   INCONSISTENT ORDERS TO BE SIGNED.
 8        THE COURT:  I REMEMBER ALL THAT.  I'VE BEEN THROUGH
 9   THAT ALREADY.  I JUST WANT THE ORIGINAL.
10        APPARENTLY IT'S BEEN SUBMITTED.
11        ALL RIGHT.  THANK YOU.
12        MR. THOMASCH:  AND BOTH PARTIES WILL BE
13   RESUBMITTING THEIR PROPOSED ORDERS IS MY UNDERSTANDING.
14        THE COURT:  I THOUGHT WE DID THAT LAST TIME.
15        MR. THOMASCH:  NO.  NO.  YOU ASKED FOR THE
16   STIPULATION AND THE STIPULATION WOULD PUT FORTH THE
17   CHRONOLOGY.  AND WE WORKED TOGETHER WITH OPPOSING COUNSEL,
18   AND THEY WORKED WITH US ON THAT AND THEN EACH SIDE WAS
19   GOING TO LODGE ITS PROPOSAL.
20        THE COURT:  OKAY.
21        MR. THOMASCH:  AND WILL DO SO ON ITS OWN PAPER SO
22   THERE IS NO CONFUSION.
23        THE COURT:  ALL RIGHT.
24        AS FAR AS THE FUTURE ADDITIONAL PRETRIAL
25   PROCEEDINGS, ARE THE PARTIES READY TO SET A SPECIFIC
26   SCHEDULE FOR PHASE 3 OF THE LITIGATION OF DAMAGES?
27        MR. PARADIS:  YOUR HONOR, WE PROPOSED A SCHEDULE.
28   WE ARE MOSTLY WEDDED TO THE CONCEPT, NOT THE EXACT DATES,
```

Exhibit 20
Page 952

1   BUT WE THINK IT'S TIME TO GET GOING ON THE DAMAGE PHASE OF

2   IT AND ARE PREPARED TO PROCEED.

3          MR. THOMASCH:  WE BELIEVE YOUR HONOR HAS MADE CLEAR

4   IN THE PAST THAT THE CONCEPT OF THE PHASING WAS NEVER MEANT

5   TO EXCLUDE OTHER DISCOVERY.

6          THERE WAS A PHASE IN WHICH WE WERE GOING FORWARD

7   PRIMARILY WITH FACTUAL DISCOVERY WITH REGARD TO FRAUDULENT

8   INDUCEMENT, BUT YOU NEVER STAYED IN PART OR IN WHOLE ANY

9   DISCOVERY ON ANY OTHER ISSUE.

10         THE CITY HAS REPEATEDLY MADE REFERENCE TO A YEARS'

11  OLD REFERENCE TO PHASING AS A REASON NOT TO BE PRODUCING

12  DOCUMENTS, INCLUDING THAT OBJECTION HAS COME UP AGAIN.

13  THEY NOW SAY WE ARE IN DAMAGES.  WE ARE NOT IN DAMAGES.

14  WE'RE IN LIABILITY FOR FRAUDULENT INDUCEMENT.

15         ALL WE HAVE HAD IS SUMMARY JUDGMENT WHERE WE DEALT

16  WITH THOSE FACTS THAT WE VIEWED AS NOT BEING CONTESTED OR

17  CONTESTABLE.  THERE ARE MANY FACTS THAT ARE INDEED

18  CONTESTED AND DISCOVERY EXISTS TO HAVE DISCOVERY ABOUT

19  CONTESTED FACTS.

20         SO WE ARE NOT READY FOR PHASE 3, AND WE CERTAINLY

21  DON'T BELIEVE UNTIL WE GET PAST THIS JONES ISSUE AND WE GET

22  THE DOCUMENTS PRODUCED TO US THAT ARE OUTSTANDING THAT WE

23  SHOULD SET A SCHEDULE.

24         THE COURT:  LET ME JUST SAY ONE THING.

25         WE ONLY HAVE ABOUT A YEAR LEFT BEFORE THE FIVE-YEAR

26  STATUTE RUNS.  AND I HAVEN'T HEARD ANY SUGGESTION THAT WE

27  EXTEND THE FIVE-YEAR STATUTE.  AND, THEREFORE, I DON'T WANT

28  TO HAVE THE RISK OF RUNNING OUT OF TIME BECAUSE OF

Exhibit 20
Page 953

```
 1   DISCOVERY DISPUTES.
 2          SO THE COURT WILL MAKE CLEAR AT THIS TIME THAT
 3   DISCOVERY IS OPEN ON ALL ISSUES FOR ALL PURPOSES.
 4          MR. THOMASCH:  THANK YOU, YOUR HONOR.
 5          MR. KIESEL:  WOULD IT BE POSSIBLE, YOUR HONOR, TO
 6   SET A TRIAL DATE WE CAN THEN WORK TOWARDS SO AT LEAST WE
 7   HAVE A DATE CERTAIN, AND WE WILL HAVE THE DISCOVERY
 8   COMPLETED WITHIN THAT TIME FRAME?
 9          WE ASK POTENTIALLY FOR A SEPTEMBER OR OCTOBER TRIAL
10   DATE SO WE DON'T GET NEAR TO MARCH.
11          THE COURT:  YOUR PAPERS SAY NOVEMBER.
12          MR. KIESEL:  I'LL TAKE NOVEMBER TOO.
13          MR. THOMASCH:  YOUR HONOR, WE WOULD PROPOSE NOTHING
14   BEFORE EARLY 2020.
15          I BELIEVE THE FIVE-YEAR DATE RUNS SOMETIME IN MAY.
16          THE COURT:  MARCH.
17          MR. THOMASCH:  IT WAS FILED ON MARCH 6.
18          THE COURT:  MARCH 6.
19          MR. THOMASCH:  BUT THERE WAS A PERIOD, YOUR HONOR,
20   DURING WHICH YOU STAYED THE CASE WHILE WE WERE IN THE
21   RELATED CASE DISCUSSION OF THIS.  THE STAY WAS IN EFFECT
22   FOR SOME PERIOD OF TIME AND THAT TIME DOESN'T COUNT AGAINST
23   THE FIVE-YEAR CLOCK.
24          THE COURT:  WELL, I THOUGHT SO ALSO.
25          MR. KIESEL:  AS THIS COURT KNOWS, I'M ACUTELY AWARE
26   OF THE TIME FRAMES.
27          THE COURT:  UNTIL I GOT REVERSED BY THE COURT OF
28   APPEAL RECENTLY.
```

Exhibit 20
Page 954

```
 1              MR. THOMASCH:  THE FIVE YEARS IS NOT RUNNING IN
 2  2019.
 3              THE COURT:  2020.
 4              MR. THOMASCH:  IT RUNS PAST MARCH OF 2020.  WE PUT
 5  THE DATE IN OUR --
 6              THE COURT:  THE PAPER SAYS HERE MARCH 6, AT LEAST
 7  THAT IS PLAINTIFF'S VIEW.
 8              MR. THOMASCH:  AND IT'S INCORRECT, YOUR HONOR.
 9              THE COURT:  WHEN WAS THE LAWSUIT FILED?
10              MR. THOMASCH:  IT WAS FILED MARCH 6, 2015, BUT
11  THERE WAS A PERIOD DURING WHICH THE CASE WAS STAYED.
12              THE COURT:  THAT IS WHAT I'M TALKING ABOUT.  THERE
13  WAS A RECENT APPELLATE COURT DECISION WHICH HELD THAT EARLY
14  STAY THAT WE USUALLY IMPLEMENT IN COMPLEX CASES, ACCORDING
15  TO APPELLATE COURT THAT IS NOT AVAILABLE TO TOLL THE
16  FIVE-YEAR STATUTE.
17              MR. THOMASCH:  IN THAT CASE THE DATE WOULD BE
18  MARCH 6 OF 2020.
19              THE PROBLEM HERE, YOUR HONOR, IS WE HAVE BEEN -- WE
20  NEVER GET DISCOVERY WITHOUT MULTIPLE MOTIONS TO COMPEL.  WE
21  ARE STILL WAITING FOR DISCOVERY.  THE DISCOVERY WE'VE HAD
22  RELATED TO FACTS UP UNTIL MARCH OF 2012.  EVENTS THAT WENT
23  FROM 2009 TO 2012 WERE SUBJECT TO THE DISCOVERY.
24              WE HAVEN'T RECEIVED DISCOVERY OF MANY OF THE --
25              THE COURT:  I REALIZE THAT.  I'M NOT GOING TO MAKE
26  ANY ISSUES.  THE QUESTION IS MAKE SURE WE HAVE A TRIAL DATE
27  BEFORE THE FIVE-YEAR STATUTE RUNS.
28              IF THE PARTIES WANT TO MEET AND CONFER AND AGREE TO
```

Exhibit 20
Page 955

```
1   STIPULATE TO EXTEND THE FIVE-YEAR STATUTE THAT IS SOMETHING
2   ELSE.  IN THE MEANTIME WE WILL SET A TRAIL DATE.
3           I'M GOING TO SET A TRIAL DATE OF JANUARY 6, 2020,
4   9:00 O'CLOCK A.M.  I'M SURE WE WILL HAVE A LOT OF
5   DISCUSSIONS BEFORE THEN AS TO PRETRIAL ACTIVITIES.  WE'LL
6   ALSO SET THE FINAL STATUS CONFERENCE FOR DECEMBER 6, 2019,
7   AT 9:00 A.M. JUST TO MAKE SURE WE HAVE THE DATES NAILED
8   DOWN.
9           MR. KIESEL:  I'LL GIVE NOTICE OF THAT.
10          MR. THOMASCH:  THANK YOU, YOUR HONOR.
11          THE COURT:  ANY OTHER ISSUES ANYONE WISHES TO
12  DISCUSS TODAY?
13          MR. HIMMELFARB:  YES, YOUR HONOR, ALAN HIMMELFARB
14  ON BEHALF OF THE RELATED CASES MACIAS AND MORSKI.
15          I'M APPEARING TODAY PRIMARILY AS A REMINDER TO
16  COUNSEL THAT WE ARE INTERESTED IN THE DISCOVERY GOING
17  FORWARD AND THAT IF DEPOSITIONS ARE SCHEDULED, WE DO WANT
18  TO BE TAKEN INTO ACCOUNT.  WE WANT TO BE NOTIFIED, AND WE
19  WOULD LIKE TO PARTICIPATE IN THE SCHEDULING OF THOSE
20  DEPOSITIONS.
21          THE COURT:  I ASK COUNSEL TO NOTIFY MR. HIMMELFARB
22  ABOUT ANY SCHEDULED DEPOSITIONS.
23          MR. HIMMELFARB:  THANK YOU, YOUR HONOR.
24          THE COURT:  ANYTHING ELSE ANYONE WISHES TO ADDRESS?
25          MR. THOMASCH:  YOUR HONOR, THERE ARE OTHER OPEN
26  ISSUES, BUT I THINK THEY CAN WAIT UNTIL THE NEXT STATUS
27  CONFERENCE.
28          THE COURT:  ALL RIGHT.  LET'S SET A STATUS
```

Exhibit 20
Page 956

```
 1   CONFERENCE.

 2           YOU SAID ONE DEPOSITION IS GOING TO TAKE PLACE

 3   JANUARY 31?

 4           MR. THOMASCH:  THAT IS THE SCHEDULE, YOUR HONOR.

 5           THE COURT:  AND I ADVISE COUNSEL MOVE WITH SOME

 6   ALACRITY.  I KNOW YOU HAVE BEEN EXTENDING COURTESIES TO

 7   EACH OTHER WHICH IS GREAT, APPRECIATE THE CIVILITY, BUT

 8   TIME IS RUNNING APACE HERE.

 9           MR. THOMASCH:  YES, YOUR HONOR.  ON THAT I WILL

10   NOTE FOR THE COURT BECAUSE MR. FRIEDMAN HAS INDICATED THAT

11   HE'S A CRIMINAL DEFENSE LAWYER, AND HE'S NOT GOING TO

12   DEFEND THE DEPOSITION, ALTHOUGH HE WANTS TO APPEAR AND I

13   TRIED TO ARRANGE IT FOR HIS SCHEDULE, WE'RE NO LONGER GOING

14   TO BE ABLE TO ACCOMMODATE THAT SCHEDULE.  AND WE WILL

15   SUBPOENA MR. LANDSKRONER FOR A DATE BETWEEN NOW AND THE

16   18TH OF FEBRUARY.

17           THE COURT:  I THINK HE WOULD WANT TO BE HERE THE

18   SAME TIME HE TRAVELS FOR THE OTHER CASE, BUT THAT IS UP TO

19   HIM.

20           MR. THOMASCH:  YOUR HONOR, YOU HAVE SET IN THIS

21   COURT A HEARING ON THE 30TH OF THIS MONTH AND YOU HAVE

22   INDICATED TO COUNSEL THEY SHOULD BE PREPARED TO TALK ABOUT

23   THE QUESTION OF WHETHER THE SETTLEMENT HAS TO BE OPENED.

24           EVERYONE ON OF COURSE THE SETTLEMENT, CONSISTENT

25   WITH OUR VIEW OF THE FACT THEY ARE ALL WORKING TOGETHER,

26   THEY HAVE ALL PUT IN A REQUEST TO ADJOURN THAT CONFERENCE

27   BY SOME SIGNIFICANT PERIOD OF TIME.  TO MY KNOWLEDGE THE

28   COURT HAS NOT ENTERED AN ORDER AS FAR AS WE KNOW.
```

Exhibit 20
Page 957

```
 1              THE COURT:  JANUARY 30, I DON'T HAVE IT ON THE
 2  CALENDAR.
 3              MR. THOMASCH:  IT HAS LONG BEEN ON THE CALENDAR,
 4  BUT THERE WAS A PENDING MOTION MADE RECENTLY, A STIPULATION
 5  PUT IN BY THE PARTIES.  OF COURSE, WE'RE NOT A PARTY TO
 6  THAT SO WE DID NOT STIPULATE ASKING TO HAVE IT ADJOINED.
 7              THE COURT:  UNTIL WHEN?
 8              MR. THOMASCH:  I BELIEVE IT WAS 45 TO 60 DAYS WAS
 9  THE REQUEST, YOUR HONOR, BUT I DON'T HAVE --
10              THE COURT:  I DON'T KNOW IF I ACTED.  I DON'T SEE
11  IT ON CALENDAR ANYMORE FOR JANUARY 30.
12              CAN YOU CHECK JONES VERSUS CITY OF LOS ANGELES SEE
13  WHAT THE NEXT DAY IS.
14              THE CLERK:  THERE IS A STATUS CONFERENCE ON JONES
15  FOR JANUARY 30 AT 9:00 A.M.
16              THE COURT:  I SEE HERE IT IS.  IT'S TIED IN WITH
17  KIMHI.
18              IS KIMHI ONE OF THE CASES?
19              MR. THOMASCH:  YES, YOUR HONOR, IT IS.
20              THE COURT:  THAT IS PROBABLY, I DIDN'T HAVE ALL THE
21  CASES LISTED.  9:00 A.M. JANUARY 30 IT IS.
22              MR. THOMASCH:  IN THAT CASE WE WILL AGAIN TRY FOR A
23  DATE AROUND THAT, THAT WOULD BE MOST CONVENIENT TO
24  MR. LANDSKRONER I'M SURE.
25              WE WERE TRYING TO BE COOPERATIVE, BUT WE CANNOT
26  PUSH IT OUT INDEFINITELY.
27              THE COURT:  LET'S SET A STATUS CONFERENCE ON THIS
28  CASE FOR THE FOLLOWING WEEK FEBRUARY 7 AT 10:00 A.M.
```

Exhibit 20
Page 958

```
 1   COUNSEL SUBMIT A REPORT.
 2          IF THERE ARE SOME DEPOSITIONS THAT WEEK OF
 3   JANUARY 30, I'LL GIVE YOU A LITTLE MORE TIME AND MAKE SURE
 4   THAT A COPY IS SUBMITTED DIRECTLY TO THIS DEPARTMENT.  A
 5   REPORT SHOULD BE SUBMITTED NO LATER THAN FEBRUARY 4.
 6          MR. THOMASCH:  YES, YOUR HONOR.
 7          THE COURT:  THANK YOU.
 8          MR. KIESEL:  THANK YOU, YOUR HONOR.
 9          MR. THOMASCH:  THANK YOU, YOUR HONOR.
10          THE COURT:  AND ASK COUNSEL FOR THE DEFENDANT TO
11   GIVE NOTICE AND POST IT ON THE WEBSITE.
12          WE'LL BE IN RECESS.
13
14          (END OF PROCEEDING.)
15
16
17
18
19
20
21
22
23
24
25
26
27
28
```

Exhibit 20
Page 959

```
 1            SUPERIOR COURT OF THE STATE OF CALIFORNIA

 2                      COUNTY OF LOS ANGELES

 3                    SPRING STREET COURTHOUSE

 4   DEPARTMENT SSC6          HON. ELIHU M. BERLE, JUDGE

 5

 6   CITY OF LOS ANGELES,         )
                                  )
 7                 PLAINTIFF,     )
                                  )
 8            VS.                 )
                                  )        CASE NO. BC574690
 9   PRICEWATERHOUSE COOPERS, LLP )        REPORTER'S CERTIFICATE
                                  )
10                 DEFENDANT.     )
     _____)
11

12

13

14

15       I, ANITA B. ALDERSON, OFFICIAL COURT REPORTER PRO

16   TEMPORE OF THE SUPERIOR COURT OF THE STATE OF CALIFORNIA,

17   FOR THE COUNTY OF LOS ANGELES, DO HEREBY CERTIFY THAT THE

18   FOREGOING PAGES, 1 THROUGH 40, COMPRISE A TRUE AND CORRECT

19   TRANSCRIPT OF THE PROCEEDINGS TAKEN IN THE ABOVE-ENTITLED

20   CAUSE ON WEDNESDAY, JANUARY 23, 2019.

21

22                     DATED THIS 24TH DAY OF JANUARY, 2019.

23

24

25                     _____,CSR 11843

26                         ANITA B. ALDERSON
                           OFFICIAL COURT REPORTER PRO TEMPORE
27

28
```

Exhibit 20
Page 960