# EXHIBIT 21

Exhibit 21
Page 961

```
1              SUPERIOR COURT OF THE STATE OF CALIFORNIA

2                     COUNTY OF LOS ANGELES

3                    SPRING STREET COURTHOUSE

4    DEPARTMENT SSC6          HON. ELIHU M. BERLE, JUDGE

5

6    CITY OF LOS ANGELES,         )
                                  )
7                     PLAINTIFF,  )
                                  )
8             VS.                 )      SUPERIOR COURT
                                  )      CASE NO. BC574690
9    PRICEWATERHOUSE COOPERS, LLP )
                                  )
10                    DEFENDANT.  )
     _____)
11

12

13            REPORTER'S TRANSCRIPT OF PROCEEDINGS

14                  MONDAY, MARCH 4, 2019

15

16   APPEARANCES:

17   FOR THE CITY OF LOS ANGELES:

18     KIESEL LAW LLP
       BY:  JEFFREY A. KONCIUS, ESQUIRE
19     8648 WILSHIRE BOULEVARD
       BEVERLY HILLS, CALIFORNIA 90211
20     310.854.4444

21   FOR MR. PAUL KIESEL:

22     KEHR, SCHIFF & CRANE, LLP
       BY:  ROBERT L. KEHR, ESQUIRE
23     1888 CENTURY PARK EAST, SUITE 1150
       LOS ANGELES, CALIFORNIA 90067
24     310.651.6500

25

26   (APPEARANCES CONTINUED.)

27                         ANITA B. ALDERSON, CSR. NO. 11843
                           OFFICIAL COURT REPORTER PRO TEMPORE
28                         JOB NO. 151084
```

```
 1   (APPEARANCES CONTINUED.)

 2

 3   FOR THE CITY OF LOS ANGELES:

 4     PARADIS LAW GROUP
       BY:  PAUL O. PARADIS, ESQUIRE
 5          GINA M. TUFARO, ESQUIRE
       200 WEST 41ST STREET, 20TH FLOOR
 6     NEW YORK, NEW YORK 10036
       212.986.4500

 7

 8   FOR THE CITY OF LOS ANGELES:

 9      OFFICE OF THE CITY ATTORNEYS OFFICE
        BY:   THOMAS H. PETERS, CHIEF ASSISTANT CITY ATTORNEY
10            CIVIL LITIGATION BRANCH
        200 NORTH MAIN STREET, ROOM 700
11      LOS ANGELES, CALIFORNIA 90012
        213.978.8277

12

13   FOR ANTWON JONES AND THE CLASS:

14     LANDSKRONER GRIECO MERRIMAN, LLC
       BY:   JACK LANDSKRONER, ESQUIRE
15     1360 WEST 9TH STREET, SUITE 200
       CLEVELAND, OHIO 44113
16     216.522.9000

17   FOR JACK LANDSKRONER:

18     BIRD MARELLA
       BY:  MARK T. DROOKS, ESQUIRE
19     1875 CENTURY PARK EAST, 23RD FLOOR
       LOS ANGELES, CALIFORNIA 90067
20     310.201.2100

21   FOR PLAINTIFFS MORSKI AND MACIAS IN RELATED CASES:

22     LAW OFFICES OF ALAN HIMMELFARB
       BY:  ALAN HIMMELFARB, ESQUIRE
23     80 WEST SIERRA MADRE BOULEVARD
       SUITE 304
24     SIERRA MADRE, CALIFORNIA 91024
       626.325.3104

25

26

27

28   (APPEARANCES CONTINUED.)
```

```
1    (APPEARANCES CONTINUED.)

2

3    FOR PLAINTIFF MACIAS:

4      MANNING, MANNING & LUCKENBACHER
       BY:  GARY L. LUCKENBACHER, ESQUIRE
5      20750 VENTURA BOULEVARD, SUITE 203
       WOODLAND HILLS, CALIFORNIA 91364
6      818.883.8000

7    FOR PLAINTIFFS IN MACIAS:

8      PARISI & HAVENS LLP
       BY:  DAVID C. PARISI, ESQUIRE
9           SUZANNE HAVENS BECKMAN, ESQUIRE
       212 MARINE STREET, SUITE 100
10     SANTA MONICA, CALIFORNIA 90405
       818.990.1299
11
     FOR PLAINTIFF IN KIMHI ACTION:
12
       KNAPP PETERSEN CLARKE
13     BY:  ANDRE E. JARDINI, ESQUIRE
            K.L. MYLES, ESQUIRE
14     550 NORTH BRAND BOULEVARD, SUITE 1500
       GLENDALE, CALIFORNIA 91203
15     818.547.5000

16   FOR PLAINTIFF BRANSFORD:

17     BLOOD HURST & O'REARDON LLP
       BY:  TIMOTHY G. BLOOD, ESQUIRE
18     501 WEST BROADWAY, SUITE 1490
       SAN DIEGO, CALIFORNIA 92101
19     619.338.1100

20     MILSTEIN JACKSON FAIRCHILD & WADE, LLP
       BY:  GILLIAN L. WADE, ESQUIRE
21     10250 CONSTELLATION BOULEVARD, 14TH FLOOR
       LOS ANGELES, CALIFORNIA 90067
22     310.396.9600

23   FOR ANTWON JONES:

24     ISAACS FRIEDBERG
       BY:  JEFFREY B. ISAACS, ESQUIRE
25          PAIGE SHEN, ESQUIRE
       555 SOUTH FLOWER STREET, SUITE 4250
26     LOS ANGELES, CALIFORNIA 90071
       213.929.5533
27

28   (APPEARANCES CONTINUED.)
```

```
1   (APPEARANCES CONTINUED.)

2

3   FOR PLAINTIFF FONTAINE:

4     BOWER LAW GROUP PC
      BY:  DAVID E. BOWER, ESQUIRE
5     600 CORPORATE POINTE, SUITE 1170
      CULVER CITY, CALIFORNIA 90230
6     213.446.6652

7   FOR PRICEWATERHOUSE COOPERS:

8     GIBSON, DUNN & CRUTCHER LLP
      BY:  DANIEL J. THOMASCH, ESQUIRE
9     200 PARK AVENUE
      NEW YORK, NEW YORK 10166
10    212.351.3800

11    GIBSON, DUNN & CRUTCHER LLP
      BY:  JAMES A. SANTIAGO, ESQUIRE
12    333 SOUTH GRAND AVENUE
      LOS ANGELES, CALIFORNIA 90071
13    213.229.7929

14  FOR LOS ANGELES DEPARTMENT OF WATER AND POWER:

15    BROWNE GEORGE ROSS LLP
      BY:  MARIBETH ANNAGUEY, ESQUIRE
16         KATHRYN L. MCCANN, ESQUIRE
      2121 AVENUE OF THE STARS, SUITE 2800
17    LOS ANGELES, CALIFORNIA 90067
      424.202.5564
18

19  FOR THE DEPARTMENT OF WATER AND POWER:

20    DEPARTMENT OF WATER AND POWER
      BY:  RICHARD TOM, ASSISTANT GENERAL COUNSEL
21         DEBORAH DORNY, DEPUTY CITY ATTORNEY
      221 NORTH FIGUEROA STREET, SUITE 1000
22    LOS ANGELES, CALIFORNIA 90012
      213.367.4580
23

24

25

26  ALSO ATTENDING:  ANTWON JONES

27

28
```

```
 1

 2                    I N D E X

 3

 4              MARCH 4, 2019

 5

 6    ALPHABETICAL/CHRONOLOGICAL LIST OF WITNESSES

 7

 8                   (NONE.)

 9

10

11                  EXHIBITS

12

13                   (NONE.)

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
```

```
 1  CASE NUMBER:              BC574690

 2  CASE NAME:               CITY OF LOS ANGELES VS.

 3                            PRICEWATERHOUSE COOPERS

 4  LOS ANGELES, CALIFORNIA   MONDAY, MARCH 4, 2019

 5  DEPARTMENT SSC6           HON. ELIHU M. BERLE, JUDGE

 6  REPORTER:                ANITA B. ALDERSON, CSR NO. 11843

 7  TIME:                    A.M. SESSION

 8  APPEARANCES:              (AS HERETOFORE NOTED.)

 9

10

11            (THE FOLLOWING WAS HELD IN OPEN COURT.)

12

13

14            THE COURT:  CALLING THE CASES OF THE CITY OF LOS

15  ANGELES VERSUS PRICEWATERHOUSE COOPERS, PRICEWATERHOUSE

16  VERSUS CITY OF LOS ANGELES, EXCUSE ME, ANTWON JONES VERSUS

17  CITY OF LOS ANGELES.

18            COUNSEL, YOUR APPEARANCES, PLEASE.

19            MR. PETERS:  GOOD MORNING, YOUR HONOR, TOM PETERS

20  I'M THE CHIEF ASSISTANT CITY ATTORNEY FOR THE CITY.

21            THE COURT:  GOOD MORNING.

22            MR. KONCIUS:  GOOD MORNING, YOUR HONOR, JEFFREY

23  KONCIUS, K-O-N-C-I-U-S, FROM KIESEL LAW.

24            THE COURT:  GOOD MORNING.

25            MR. PARADIS:  GOOD MORNING, YOUR HONOR, PAUL

26  PARADIS FOR THE CITY.

27            THE COURT:  GOOD MORNING.

28            MS. TUFARO:  GOOD MORNING, YOUR HONOR, GINA TUFARO
```

1 | FOR THE CITY.

2 |      THE COURT:  GOOD MORNING.

3 |      MR. TOM:  GOOD MORNING YOUR HONOR, RICHARD TOM ON

4 | BEHALF OF THE CITY.

5 |      THE COURT:  GOOD MORNING.

6 |      MS. DORNY:  GOOD MORNING, YOUR HONOR, DEBORAH DORNY

7 | ON BEHALF OF THE CITY.

8 |      THE COURT:  GOOD MORNING.

9 |      MR. ISAACS:  GOOD MORNING, YOUR HONOR, JEFFREY

10 | ISAACS AND PAIGE SHEN ON BEHALF OF NON PARTY ANTWON JONES

11 | IN THE CITY OF LOS ANGELES VERSUS PWC CASE.

12 |      THE COURT:  GOOD MORNING.

13 |      MR. DROOKS:  GOOD MORNING, YOUR HONOR, MARK DROOKS

14 | ON BEHALF OF JACK LANDSKRONER AS THIRD PARTY WITNESS IN THE

15 | LADWP VERSUS PWC CASE.

16 |      THE COURT:  GOOD MORNING.

17 |      MR. LANDSKRONER:  GOOD MORNING, YOUR HONOR, JACK

18 | LANDSKRONER COUNSEL FOR JONES AND THE CLASS.

19 |      THE COURT:  GOOD MORNING.

20 |      MR. KEHR:  GOOD MORNING, YOUR HONOR, ROBERT KEHR

21 | APPEARING FOR PAUL KIESEL.

22 |      GOOD MORNING.

23 |      MR. JARDINI:  GOOD MORNING, YOUR HONOR, I'M ANDRE

24 | JARDINI FOR THE KIMHI PLAINTIFFS.  THEY HAVE THE SOLAR PART

25 | OF THE CLASS IN THE SETTLEMENT CLASS.

26 |      I'M HERE BECAUSE IT'S A RELATED CASE.

27 |      THE COURT:  YES, I'M SORRY I DIDN'T CALL THAT CASE.

28 | YES, THANK YOU.

1        MS. MYLES:  GOOD MORNING, YOUR HONOR, K.L. MYLES,

2   KNAPP, PETERSEN, CLARKE, ALSO ON BEHALF OF THE KIMHI

3   PLAINTIFFS.

4        THE COURT:  GOOD MORNING.

5        MR. HIMMELFARB:  ALAN HIMMELFARB APPEARING ON

6   BEHALF OF RELATED CASE MORSKI VERSUS THE CITY OF LOS

7   ANGELES AND MACIAS VERSUS CITY OF LOS ANGELES.

8        THE COURT:  YES, GOOD MORNING.  I'M SORRY I DIDN'T

9   CALL THAT CASE EARLIER; IT'S ALSO RELATED.

10       MS. ANNAGUEY:  GOOD MORNING, YOUR HONOR, MARIBETH

11  ANNAGUEY ON BEHALF IT THE DEFENDANT LADWP AND THE RELATED

12  JONES AND MACIAS AND MORSKI CASES.

13       THE COURT:  GOOD MORNING.

14       MS. MCCANN:  GOOD MORNING, YOUR HONOR, KATHRYN

15  MCCANN ON BEHALF OF DEFENDANT LADWP IN THE JONES AND MACIAS

16  CASES.

17       THE COURT:  GOOD MORNING.

18       MR. LUKENBACHER:  GOOD MORNING, YOUR HONOR, GARY

19  LUCKENBACHER ON BEHALF OF PLAINTIFFS MORSKI AND MACIAS.

20       THE COURT:  GOOD MORNING.

21       MR. PARISI:  GOOD MORNING, YOUR HONOR, DAVID PARISI

22  ON BEHALF OF THE PLAINTIFFS IN THE MACIAS RELATED ACTION.

23       THE COURT:  GOOD MORNING.

24       MS. HAVENS BECKMAN:  GOOD MORNING, YOUR HONOR,

25  SUZANNE HAVENS BECKMAN ALSO APPEARING ON BEHALF OF

26  PLAINTIFFS IN THE MACIAS IN THE RELATED ACTION.

27       THE COURT:  GOOD MORNING.

28       ANYONE ELSE?

4

1        MR. BLOOD:  GOOD MORNING, YOUR HONOR, TIMOTHY BLOOD

2   ON BEHALF OF THE BRANSFORD PLAINTIFFS IN THE RELATED

3   ACTION.

4        THE COURT:  GOOD MORNING.

5        MS. WADE:  GOOD MORNING, YOUR HONOR, GILLIAN WADE

6   ON BEHALF OF THE BRANSFORD PLAINTIFFS.

7        THE COURT:  GOOD MORNING.

8        MR. BOWER:  DAVID BOWER ON BEHALF OF THE FONTAINE

9   PLAINTIFFS.

10        THE COURT:  GOOD MORNING.

11        MR. PETERS:  YOUR HONOR, DANIEL THOMASCH ON BEHALF

12   OF PRICEWATERHOUSE COOPERS AND THE CITY OF LOS ANGELES

13   VERSUS PRICEWATERHOUSE COOPERS ACTION.

14        THE COURT:  GOOD MORNING.

15        MR. SANTIAGO:  GOOD MORNING, YOUR HONOR, JAMES

16   SANTIAGO ON BEHALF OF PRICEWATERHOUSE COOPERS.

17        THE COURT:  GOOD MORNING.

18        ANYONE ELSE?  ANYONE ON COURTCALL?

19        MR. ISAACS:  JEFFREY ISAACS, JUST TO ADVISE THE

20   COURT THAT MR. JONES, ANTWON JONES, IS PRESENT IN COURT AS

21   WELL.

22        THE COURT:  GOOD MORNING.  THANK YOU FOR ATTENDING.

23        ANYONE ELSE?  ANYONE ON COURTCALL?  THANK YOU

24   COUNSEL, PLEASE BE SEATED.

25        I HAVE RECEIVED A PROPOSED ORDER FOR THE

26   APPOINTMENT OF MS. ANITA ALDERSON AS COURT REPORTER PRO

27   TEM, ANY OBJECTIONS?

28        MR. THOMASCH:  NO OBJECTION.

1          MR. KEHR:  NO, YOUR HONOR.

2          THE COURT:  NOT HEARING ANY OBJECTION.

3     MS. ALDERSON IS HEREBY APPOINTED COURT REPORTER PRO TEM.

4          THE MATTER IS BEFORE THE COURT TODAY AS A STATUS

5     CONFERENCE.  WOULD ANY COUNSEL LIKE TO BRING ME UP TO DATE

6     AS TO DEVELOPMENTS IN THIS CASE?

7          MR. THOMASCH:  YES, YOUR HONOR I WOULD.

8          THE COURT:  PLEASE.

9          MR. THOMASCH:  YOUR HONOR, TODAY IS 15 MONTHS TO

10    THE DAY SINCE THE HEARING ON DECEMBER 4, 2017 IN WHICH THE

11    JONES VERSUS PWC DRAFT COMPLAINT FIRST CAME UP WITH RESPECT

12    TO MOTIONS IN OUR CASE FILED IN THE FALL OF 2017.

13          NOW AFTER FIGHTING TOOTH AND NAIL FOR THOSE 15

14    MONTHS, THE CITY HAS ANNOUNCED THAT IT WILL PRODUCE THE

15    DOCUMENT, SEEKS TO PAT ITSELF ON THE BACK AND SAY WE'RE

16    DONE HERE.

17          THE COURT:  HAD THAT BEEN PRODUCED ALREADY?

18          MR. THOMASCH:  IT HAS NOT BEEN PRODUCED.  THEY SAID

19    THEY WOULD PRODUCE.  WHAT WE HAVE RECEIVED IS THE FIRST AND

20    LAST PAGE AND THAT WAS LARGELY THE STORY.  IT'S NEVER BEEN

21    ABOUT THAT DOCUMENT, YOUR HONOR.  IT'S NEVER BEEN WHAT THAT

22    DOCUMENT SAYS.

23          IT'S ABOUT WHAT THAT DOCUMENT SIGNIFIES WHICH IS

24    CLEAR FROM THE FIRST PAGE AND THE SIGNATURE PAGE OF THE

25    DOCUMENT THAT DOCUMENT SIGNIFIES AN ALLIANCE BETWEEN

26    MR. JONES'S COUNSEL AND THE CITY'S COUNSEL THAT PREDATED

27    THE FILING OF THE JONES VERSUS LADWP COMPLAINT.

28          IT WAS HIDDEN FROM THIS COURT, HIDDEN FROM THE

1     PUBLIC, HIDDEN FROM PWC FOR MANY YEARS.

2            THE UNETHICAL NATURE OF THE ARRANGEMENTS BETWEEN

3     AND AMONG THE CITY, SPECIAL COUNSEL AND MR. LANDSKRONER IS

4     READILY APPARENT FROM THE LENGTHS THAT THE CITY WENT AND

5     THE CITY AND ITS SECRET PARTNERS WENT TO CONCEAL THEIR

6     DEALINGS WITH EACH OTHER.

7            I RECOMMEND TO THE COURT THAT IT REVISIT THE

8     DECEMBER 4, 2017, TRANSCRIPTS SPECIFICALLY PAGE 16, LINE 19

9     THROUGH PAGE 23, LINE 20.  WHERE IN RESPONSE TO THE COURT'S

10    QUESTIONING OF SPECIAL COUNSEL PARADIS THE COURT AND THE

11    COUNSEL WERE INFORMED THAT MR. PARADIS WAS THE AUTHOR OF

12    THE DRAFT V. JONES PWC COMPLAINT CIRCULATED WITHIN LADWP ON

13    JANUARY 24, 2015.

14           BUT WHAT WE DIDN'T KNOW THEN, BECAUSE IT WAS

15    CONCEALED FROM THE COURT NOTWITHSTANDING QUESTIONS RIGHT ON

16    POINT, WAS THAT AT THAT TIME, THE TIME THAT THE JONES

17    VERSUS PWC DRAFT COMPLAINT WAS CIRCULATED WITHIN LADWP IN

18    JANUARY OF 2015, AT THAT TIME MR. PARADIS, SPECIAL COUNSEL

19    PARADIS, NOT MR. LANDSKRONER, WAS COUNSEL FOR MR. JONES.

20           YOUR HONOR ASKED AT PAGE 18 OF THE TRANSCRIPT LINE

21    26, "WHO WERE YOU REPRESENTING IN THAT CASE?"

22           MR. PARADIS RESPONDED, "WE REPRESENTED THE CITY,

23    YOUR HONOR."

24           NOT A WORD WAS SAID ABOUT THE FACT THAT AT THAT

25    TIME MR. PARADIS WAS COUNSEL, AS WAS MR. KIESEL, AS WAS

26    MS. TUFARO, COUNSEL FOR MR. JONES.

27           WE DID NOT KNOW THAT MR. JONES WAS CHOSEN TO BE THE

28    PLAINTIFF IN THE JONES VERSUS LADWP CASE NOT BECAUSE HE WAS

```
 1   QUOTE "ONE OF SEVERAL PEOPLE WHO HAD BEEN COMPLAINING TO

 2   THE DEPARTMENT" AS THE COURT WAS TOLD ON DECEMBER 4, 2017.

 3          HE WAS CHOSEN BECAUSE BEFORE THAT CASE WAS FILED,

 4   MR. PARADIS HAD LOCATED HIM, SECURED AN ATTORNEY/CLIENT

 5   RELATIONSHIP WITH HIM THEN GONE TO THE CITY AND GOTTEN

 6   HIRED BY THE CITY SIMULTANEOUSLY AND CAME UP WITH THE PLAN

 7   TO FILE AND SETTLE THE CASE ON THE CITY'S TERMS.  ALL

 8   WITHOUT DISCLOSING TO MR. JONES WHAT WAS OCCURRING.

 9          MR. JONES HAD NO IDEA THEN AND HAD NO IDEA AT ANY

10   TIME THROUGH THE PROCEEDING OF THE JONES CASE THAT HIS

11   COUNSEL WAS SIMULTANEOUSLY REPRESENTING THE CITY WHO HE

12   SUED.

13          WE DID NOT KNOW ON DECEMBER 4, 2017, THAT

14   MR. LANDSKRONER WAS FIRST INTRODUCED TO MR. JONES ON

15   MARCH 26, 2015, A MERE SIX DAYS BEFORE THE COMPLAINT WAS

16   FILED AND SEVEN DAYS BEFORE THE FIRST SETTLEMENT OVERTURE

17   WAS MADE -- NONE OF THAT WAS DISCLOSED.

18          WE DID NOT KNOW THAT MR. PARADIS HAD INFORMED LADWP

19   OF HIS INTENTION TO BRING MR. LANDSKRONER INTO THE CASE

20   BEFORE HE DID SO.  HE RECEIVED SOME FORM OF AUTHORIZATION

21   FROM SOMEONE UNIDENTIFIED AT THE CITY TO DO SO.  AND THE

22   CITY IN THE PERSON OF THE CHIEF DEPUTY CITY ATTORNEY

23   TESTIFIED LAST WEEK THAT THE CITY THOUGHT IT WOULD BE

24   ADVANTAGED BY THE SELECTION OF MR. LANDSKRONER.  ADVANTAGED

25   BECAUSE HE WOULD BE REASONABLE.  HE KNEW MR. PARADIS.  HE

26   WOULD GO ALONG.

27          WE DID NOT KNOW IN 2017 THAT THE CITY KNEW ABOUT

28   THE JONES CASE BEFORE IT WAS FILED.  IT WAS INVITED.  IT
```

1   WAS EXPECTED. AND THE SETTLEMENT WAS EFFECTIVELY

2   PREARRANGED, WE BELIEVE.

3          THERE IS MUCH WE HAVE YET TO DISCOVER AND TO PUT --

4   TO FILL IN THE BLANKS THERE IS MUCH DISCOVERY TO DO, BUT WE

5   BELIEVE IT'S VERY CLEAR THAT THE SETTLEMENT WAS ARRANGED

6   BEFORE THE SUIT WAS EVER FILED. THE ONE PARTY THAT DIDN'T

7   KNOW THAT WAS MR. JONES.

8          WE NOW KNOW, AND IN FACT IT'S UNDISPUTED AS FAR AS

9   I AM AWARE, THAT AT NO TIME BETWEEN DECEMBER OF 2014 AND

10  TODAY HAVE MR. PARADIS, MS. TUFARO OR MR. KIESEL DISCLOSED

11  TO MR. JONES THAT HE IS NO LONGER -- THAT THEY ARE NO

12  LONGER HIS ATTORNEY.

13         THERE IS NO WRITTEN NOTICE FROM PARADIS, TUFARO OR

14  KIESEL OF THEIR WITHDRAWAL OF BEING COUNSEL FOR MR. JONES.

15         THERE IS NO DECLARATION THAT HAS BEEN SUBMITTED

16  CLAIMING THAT ANY NOTICE WAS ORALLY PROVIDED. INDEED

17  MR. LANDSKRONER'S BRIEF DOESN'T EVEN SAY THAT HE TOLD

18  MR. JONES ABOUT IT AFTER THE FACT.

19         WHAT IS ABSOLUTELY AND ABUNDANTLY CLEAR IS THAT AT

20  ALL TIMES DURING THE CONCURRENT REPRESENTATION THE

21  LOYALTIES OF MR. PARADIS, MS. TUFARO, AND MR. KIESEL WERE

22  ENTIRELY ON BEHALF OF THE CITY EVEN THOUGH THEY WERE

23  COUNSEL OF RECORD FOR MR. JONES.

24         THE CONDUCT AT ISSUE IS SERIOUS, SIGNIFICANT AND

25  DISTURBING. IT WAS A COLLUSIVE SCHEME FROM ITS INCEPTION

26  THROUGH TODAY AS THE COVERUP CONTINUES THROUGH A WALL OF

27  PRIVILEGE AND OBFUSCATION. THE COURT HAS BEEN MISLED, PWC

28  HAS BEEN MISLED, THE PUBLIC HAS BEEN MISLED.

1          IT IS OUR POSITION, AS SET FORTH IN OUR SUBMISSION,

2     THAT THE CALIFORNIA RULES OF PROFESSIONAL CONDUCT HAVE BEEN

3     VIOLATED IN MULTIPLE RESPECTS.  THE BUSINESS AND

4     PROFESSIONS CODE, SECTION 6068 HAS BEEN VIOLATED.

5          AN ABA MODEL RULE 8.4 RELATING TO THE INTEGRITY OF

6     THE COURT SYSTEM HAS BEEN VIOLATED.  AND WE DON'T MAKE

7     THOSE CHARGES LIGHTLY.

8          WE DON'T JUST COME THROWING BOMBS.  WE HAVE BEEN

9     DOING THIS FOR 15 MONTHS WE HAVE BEEN LOOKING INTO THIS.

10    AND BEFORE WE ADVANCE THESE CHARGES, BEFORE WE WERE

11    COMFORTABLE SAYING WHAT IS SAID IN OUR PAPERS, WE TOOK AS

12    MUCH DISCOVERY AS WE COULD INCLUDING THE DEPOSITION OF

13    MR. JONES WHO WAS COOPERATIVE THROUGH THE ENTIRE PROCESS.

14         WE TOOK THE DEPOSITION OF THE CITY BY ITS SECOND

15    PMQ WITNESS, MR. CLARK, WHICH WAS NECESSITATED BECAUSE

16    MR. PARADIS HAD EARLIER AND IMPROPERLY TERMINATED THE

17    DEPOSITION OF THE FIRST PMQ WITNESS, MR. PETERS.

18         WE HAVE NOT DEPOSED MR. LANDSKRONER.  WE INTENDED

19    TO, BUT HIS COUNSEL HAS RAISED ALL FORMS OF ROADBLOCK IN

20    THE WAY OF THAT COURT-ORDERED DEPOSITION WHICH WE STILL

21    WANT.

22         WE WANT TO LOOK INTO THE CIRCUMSTANCES SURROUNDING

23    HIS RECRUITMENT INTO THE CASE BY MR. PARADIS, AND THE

24    INFLUENCE THE CITY BROUGHT TO BEAR ON THE SETTLEMENT

25    POSITION THAT HE TOOK.

26         WE ARE NOT SEEKING, JUST TO BE CLEAR, WE ARE NOT

27    SEEKING COMMUNICATIONS BETWEEN MR. JONES AND

28    MR. LANDSKRONER THAT WERE NOT DISCLOSED TO SPECIAL COUNSEL.

```
 1   THAT PRIVILEGE IS MR. JONES'S, AND WE ASSERT NO MISCONDUCT

 2   ON THE PART OF MR. ANTWON JONES.

 3        WE CLOSELY REVIEWED THE FACTUAL RECORD AND HAVE

 4   SUBMITTED RELEVANT EXCERPTS TO THE COURT, AND WE CONSULTED

 5   WITH AN ETHICS EXPERT.  MR. DANIEL EATON'S DECLARATION HAS

 6   BEEN SUBMITTED TO THE COURT.  WE WEREN'T GOING TO MAKE

 7   CHARGES OF UNETHICAL CONDUCT WITHOUT CONSULTING WITH AN

 8   ETHICS EXPERT FIRST WHICH WE DID NOTWITHSTANDING THE SHORT

 9   TIME TO PREPARE THE BRIEFS.

10        WE RECEIVED OPINIONS THAT HAVE BEEN PROVIDED TO THE

11   COURT WITH REGARD TO THE NEED FOR DISCLOSURE AND INFORMED

12   CONSENT BY CLIENTS IN REGARD TO ACTUAL AND POTENTIAL

13   CONFLICTS.

14        WE RECEIVED OPINIONS REGARDING THE DUTY OF CANDOR

15   AND UNDIVIDED LOYALTY AND THE NEED FOR EXPLICIT NOTICE TO A

16   CLIENT IN ORDER TO TERMINATE AN EXISTING ATTORNEY/CLIENT

17   RELATIONSHIP.

18        IN STARK CONTRAST TO THE WAY WE HAVE TRIED TO

19   ADDRESS THE SERIOUS ISSUES IN PLAY HERE, THE CITY AND

20   SPECIAL COUNSEL HAVE TREATED THAT DISMISSIVELY.  THEY

21   SUBMITTED A SEVEN-PAGE RESPONSE TO THE COURT'S ORDER

22   UNACCOMPANIED BY ANY DECLARATION.  SHOCKINGLY THEY DID NOT

23   ACKNOWLEDGE THE DEPOSITION TESTIMONY OF MR. JONES.  THEY

24   WERE AT THAT DEPOSITION.

25        THEY DID NOT ACKNOWLEDGE MR. JONES'S DEPOSITION

26   TESTIMONY IN WHICH HE AFFIRMED THE FACTS SET FORTH IN A

27   MAY 1, 2017, SWORN DECLARATION SUBMITTED TO YOUR HONOR IN

28   CONNECTION WITH THE APPROVAL OF THE JONES CLASS ACTION IN
```

1    WHICH MR. JONES AT PARAGRAPHS FOUR AND FIVE OF HIS

2    DECLARATION INDICATE THAT HE WAS OVERCHARGED BY LADWP IN

3    2014.  AND THAT HE RETAINED COUNSEL AS HE SAID IN PARAGRAPH

4    FIVE QUOTE "TO CONDUCT AN INVESTIGATION TO DETERMINE

5    WHETHER I HAD ANY CLAIMS THAT COULD BE BROUGHT AGAINST THE

6    LADWP AND THE CITY OF LOS ANGELES TO RECOVER THE AMOUNTS

7    THAT I HAD BEEN OVERCHARGED BY THE LADWP FOR ELECTRICITY."

8         THAT WAS WHAT MR. JONES TOLD YOUR HONOR IN A SWORN

9    STATEMENT SUBMITTED IN 2017, THAT IS WHAT MR. JONES TOLD

10   ALL COUNSEL AT HIS DEPOSITION IN THIS CASE ON FEBRUARY 13

11   OF THIS YEAR.

12        MR. JONES, MARCH 1, 2019, SUBMISSION AUTHORED BY

13   NEW COUNSEL, MR. ISAACS AND MS. SHEN, DETAILS A FACTUAL

14   CHRONOLOGY THAT IS COMPLETELY CONSISTENT WITH MR. JONES'S

15   PRIOR SWORN TESTIMONY AND DIRECTLY INCONSISTENT WITH THE

16   CITY'S CONCLUSORY ASSERTIONS ABOUT THE NATURE OF THE

17   RELATIONSHIP UNDER WHICH SPECIAL COUNSEL REPRESENTED

18   MR. JONES, YET THEY DO NOT ADDRESS IT NOT A WORD IN

19   PASSING.

20        THE CITY'S BACKUP ARGUMENT THAT FRAUD DOESN'T APPLY

21   HERE BECAUSE THE JONES SETTLEMENT PROVIDED FOR REPAYMENT OF

22   100 PERCENT OF OWED CHARGES SORT OF THE STREET BASKETBALL

23   "NO HARM NO FOUL" DEFENSE IS SOMETHING BETWEEN FRIVOLOUS

24   AND AN INSULT TO ONE'S INTELLIGENCE.

25        THE ISSUE IS NOT WHETHER MR. JONES SOMEHOW RECEIVED

26   AN INCIDENTAL BENEFIT HE WOULD HAVE RECEIVED REFUNDING THE

27   OVERCHARGE IF THERE HADN'T EVEN BEEN LITIGATION.  THERE IS

28   NO DISPUTE THE CITY WAS ALREADY IN THE PROCESS OF REFUNDING

1    OVERCHARGES.

2         WHETHER HE WAS BENEFITED INCIDENTALLY IS NOT THE

3    MATTER.  THE ISSUE IS WHETHER JONES AND THE CLASS WERE

4    DENIED INDEPENDENT COUNSEL TO ZEALOUSLY REPRESENT WITH

5    UNDIVIDED LOYALTY THEIR INTEREST.

6         ONE ONLY NEED READ THE BRIEF OF MR. HIMMELFARB WHO

7    IS HERE TODAY TO SEE THAT COUNSEL REPRESENTING THE ACTUAL

8    INTEREST OF THE CLASS, NOT THE CITY, MIGHT HAVE DRIVEN A

9    VERY DIFFERENT DEAL, MIGHT HAVE PUSHED FOR DISCOVERY WHICH

10   WAS NEVER DONE, MIGHT HAVE TAKEN THE CASE TO TRIAL.

11        INDEED THE VERY REASON THAT MR. CLARK TESTIFIED

12   THAT MR. PARADIS RECOMMENDED THAT MR. JONES HIRE

13   MR. LANDSKRONER, NOT MR. BLOOD OR MR. HIMMELFARB, WAS

14   BECAUSE MR. BLOOD AND MR. HIMMELFARB WERE VIEWED AS QUOTE

15   "UNREASONABLE" END QUOTE.

16        WHEREAS IT WOULD ADVANTAGE THE CITY TO GET SOMEONE

17   WHO HAD PREVIOUSLY WORKED TOGETHER WITH MR. PARADIS AND WHO

18   WAS GOING TO BE WILLING TO SETTLE ON THE CITY'S TERMS AND

19   THE CITY'S SCHEDULE.

20        AND INDEED IT IS THE PREEXISTING COLLUSION BETWEEN

21   COUNSEL FOR THE CITY AND COUNSEL FOR MR. JONES THAT RENDERS

22   INSIGNIFICANT THE SUBSEQUENT MEDIATION.  THE MEDIATOR

23   WASN'T TOLD ABOUT THE COLLUSION.  SO THE FACT IN THE

24   MEDIATION THEY FOUND SOMETHING TO ARGUE ABOUT DOESN'T DO

25   ANYTHING TO SUGGEST THIS SETTLEMENT IN THE JONES CASE WAS

26   NOT IMPROPER FROM THE GET-GO.

27        THE FACTS SURROUNDING THE JONES/PARADIS

28   ATTORNEY-CLIENT RELATIONSHIP EVIDENCE MULTIPLE VIOLATIONS

1   OF THE CALIFORNIA RULES OF PROFESSIONAL CONDUCT.  WE HAVE

2   CITED 3-310(C), RPC 3500 AND RPC 3700 AND THAT SHOULD

3   RESULT IN OPENING TO FULL DISCOVERY ALL MATTERS CONCERNING

4   THE JONES LITIGATION, THE SETTLEMENT AGREEMENT AND THE

5   SETTLEMENT IMPLEMENTATION.

6         THE INFORMATION THAT WE SEEK IS DISCOVERABLE

7   BECAUSE EITHER THE INFORMATION WASN'T PRIVILEGED IN THE

8   FIRST PLACE, YET WE'VE BEEN STONEWALLED;

9         OR THE PRIVILEGE WAS WAIVED BECAUSE OF SPECIAL

10  COUNSEL'S CONCURRENT REPRESENTATION OF MR. JONES AND THE

11  CITY;

12        AND/OR THE CITY FULLY INFORMED, MR. CLARK MADE NO

13  ATTEMPT TO SUGGEST THAT THE CITY WAS IN THE DARK HERE, THE

14  CITY FULLY INFORMED OF THE SCHEME HAS PARTICIPATED IN A

15  FRAUD ON THE COURT, AND THE FRAUD EXCEPTION RENDERS ANY

16  PRIVILEGE BUT NOT WAIVED MATERIAL SUBJECT TO DISCOVERY.

17        WITH REGARD TO WHAT IS NOT PRIVILEGED, WE WOULD

18  IDENTIFY FOR YOUR HONOR ISSUES INCLUDING MR. PARADIS'S

19  WEBSITE.  MR. CLARK TESTIFIED THAT WHEN ASKED ABOUT WHETHER

20  HE UNDERSTOOD HOW MR. PARADIS CAME TO REPRESENT MR. JONES,

21  IT APPEARS THAT, ACCORDING TO MR. CLARK, THAT MR. PARADIS

22  WAS WORKING AT LADWP IN LATE 2014 IN SOME WAY, SHAPE, OR

23  FORM CONCERNING THE REMEDIATION OR INVESTIGATING WHAT WAS

24  BEING REMEDIATED.  THAT REMAINS UNCLEAR, WE HAVE YET TO

25  TAKE MR. PARADIS'S DEPOSITION, ALTHOUGH THAT IS ON OUR

26  SHORT LIST OF THINGS TO DO.

27        MR. PARADIS WE BELIEVE WAS WORKING AT LADWP, BUT

28  NOT IN A LEGAL CAPACITY, OR ACCORDING TO MR. CLARK,

Exhibit 21
Page 979

```
 1    REMEDIATION IS NOT LEGAL AND I INTEND TO AGREE WITH HIM ON
 2    THAT.  THEN MR. PARADIS, ACCORDING TO MR. CLARK WHO WAS
 3    DEPOSED ON THE 26TH OF FEBRUARY, MR. PARADIS CREATED A
 4    WEBSITE THAT WAS SEEKING OUT COMPLAINTS ABOUT LADWP'S
 5    BILLING.
 6            MR. JONES RESPONDED TO THAT WEBSITE.  IN RESPONDING
 7    TO THAT WEBSITE HE CHECKED THE BOX THAT SAID I'M WILLING TO
 8    BE CONTACTED OR I'D LIKE TO BE, I HAVEN'T SEEN THE BOX,
 9    CONTACTED BY COUNSEL.  THAT WENT BACK TO MR. PARADIS WHO
10    THEN CONTACTED MR. JONES AND SET UP THE ARRANGEMENT.
11            WE'D LIKE TO SEE THAT WEBSITE.  WE WOULD LIKE TO
12    SEE THE RESPONSE BECAUSE MR. JONES INDICATED AT HIS
13    DEPOSITION THAT HE AUTHORED RESPONSES AND ONE THAT HE SAID
14    HE COULD NOT TELL FOR CERTAIN THAT IT WAS HIS.  IT WAS FROM
15    AN ANTWON FROM VAN NUYS, BUT THERE WAS ONE WEBSITE HE
16    RESPONDED TO AND IT ENDS WITH DID I WANT TO BRING A CLASS
17    ACTION AGAINST LADWP.
18            I DON'T KNOW WHETHER HE RESPONDED IN THAT PRECISE
19    WAY TO MR. PARADIS'S WEBSITE.  WE DON'T KNOW WHAT THAT
20    WEBSITE WAS.  BUT WHATEVER IT IS, IT'S NOT PRIVILEGED, AND
21    WE WOULD LIKE TO RECEIVE THAT AND ALL OTHER COMMUNICATIONS
22    BETWEEN MR. PARADIS AND MR. JONES OR BETWEEN MR. PARADIS
23    AND THE CITY BEFORE THE FORMATION OF ANY ATTORNEY-CLIENT
24    RELATIONSHIP.
25            THEN WAIVER COMES TO PLAY VERY LARGE BASED ON THE
26    TESTIMONY WE HAVE RECEIVED SINCE WE WERE LAST BEFORE YOUR
27    HONOR.  ALL COMMUNICATIONS BETWEEN SPECIAL COUNSEL AND THE
28    CITY ABOUT THE JONES ACTION ARE SUBJECT TO WAIVER AND ARE
```

```
1    DISCOVERABLE.  BOTH THE ATTORNEY-CLIENT PRIVILEGE AND THE
2    WORK-PRODUCT PRIVILEGE HAVE BEEN WAIVED BY VIRTUE OF THE
3    CONCURRENT REPRESENTATION OF ADVERSE PARTIES.
4         WHEN INFORMATION WAS BEING TOLD TO MR. PARADIS, IT
5    WAS ALSO BEING TOLD TO JONES BECAUSE MR. PARADIS WAS
6    SIMULTANEOUSLY THE CITY'S COUNSEL AND JONES'S COUNSEL.
7         NOW WE CAN LOOK AT THIS IN TIME PERIODS.  THERE IS
8    NO DISPUTE ABOUT THE CONCURRENT RELATIONSHIP THAT EXISTED
9    BETWEEN MID-DECEMBER OF 2014 THROUGH APRIL 1, 2015 WHEN THE
10   COMPLAINT WAS FILED.  DURING THAT TIME PERIOD --
11        THE COURT:  AS I UNDERSTAND IT, CORRECT ME IF I'M
12   WRONG, NOTWITHSTANDING YOUR PRESENTATION, THE CITY HAS
13   AGREED TO WAIVE THE ATTORNEY-CLIENT PRIVILEGE; IS THAT
14   CORRECT?
15        MR. THOMASCH:  ONLY WITH RESPECT TO THE JONES V.
16   PWC COMPLAINT, BUT NOT WITH RESPECT TO COMMUNICATIONS ABOUT
17   THE JONES CASE.
18        THE COURT:  AND WHAT ABOUT THE ATTORNEY
19   WORK-PRODUCT PRIVILEGE?
20        MR. THOMASCH:  AGAIN, THE ONLY WAIVER WE'VE
21   RECEIVED IS AN ORAL WAIVER AND THAT RELATED TO THE
22   CIRCUMSTANCES -- RELATED TO THE DOCUMENT ITSELF OF THE
23   JONES V. PWC COMPLAINT.
24        THE COURT:  LET ME ASK COUNSEL FOR THE CITY.
25        I UNDERSTOOD FROM THE LAST HEARING THE CITY, AS FAR
26   AS PAPERS THAT WERE SUBMITTED, THE CITY HAS AGREED TO WAIVE
27   THE ATTORNEY-CLIENT PRIVILEGE AND THE ATTORNEY WORK-PRODUCT
28   PRIVILEGE; IS THAT CORRECT?
```

Exhibit 21
Page 981

1     MR. PETERS: YOUR HONOR, WE ARE PRODUCING THE DRAFT

2  COMPLAINT ITSELF. A CATEGORICAL WAIVER OF PRIVILEGE I

3  THINK IS COMPLETELY INAPPROPRIATE BECAUSE FUNDAMENTALLY

4  THERE WAS NO CONFLICTING REPRESENTATION. THE

5  REPRESENTATION THAT MR. PARADIS HAD --

6     THE COURT: I DIDN'T ASK FOR ARGUMENT. I ASKED

7  WHETHER THE CITY IS WAIVING ATTORNEY-CLIENT PRIVILEGE.

8     MR. PETERS: WE ARE PRODUCING THE DRAFT COMPLAINT

9  ITSELF, YOUR HONOR, WE HAVE NOT WAIVED ANYTHING BEYOND THAT

10  AT THIS POINT.

11     THE COURT: WHAT ABOUT THE ATTORNEY WORK-PRODUCT

12  PRIVILEGE?

13     MR. PETERS: THE CITY ATTORNEY IS NOT ASSERTING THE

14  ATTORNEY WORK-PRODUCT PRIVILEGE AS TO THAT DOCUMENT EITHER.

15     THE COURT: WHAT ABOUT OTHER DOCUMENTS?

16     MR. PETERS: WE HAVE NOT WAIVED PRIVILEGE BEYOND

17  THAT DOCUMENT WHICH IS THE TOPIC OF I THINK THE COURT'S

18  INQUIRY AND QUESTIONS A AND B IF I'M RECALLING CORRECTLY.

19     THE COURT: I TAKE IT THE CITY HAS WITHDRAWN ITS

20  ARGUMENT ABOUT ANOTHER PRIVILEGE ABOUT THE JOINT INTEREST

21  PRIVILEGE THAT HAS BEEN WITHDRAWN?

22     MR. PETERS: THE CITY IS ASSERTING NO PRIVILEGE

23  WHATSOEVER AS TO THE DOCUMENT. THE QUESTION WAS WHEN WILL

24  THAT BE PRODUCED, AS SOON AS THE VENDOR CAN WATERMARK --

25     THE COURT: BEYOND THE DOCUMENT. THE CITY HAS

26  WITHDRAWN A PREVIOUSLY CLAIMED PRIVILEGE OF JOINT INTEREST?

27     MR. PETERS: AS TO THE DOCUMENT, YOUR HONOR --

28     THE COURT: BEYOND THE DOCUMENT.

```
 1          MR. PETERS:  I DON'T KNOW THAT THAT PRIVILEGE
 2   EXISTS, YOUR HONOR.
 3          THE COURT:  NEITHER DO THAT, AND THAT IS WHY I WAS
 4   SURPRISED WITH THE CITY ASSERTED IT.
 5          WHAT ABOUT THE NEXT PRIVILEGE THAT WAS ASSERTED
 6   WHICH WAS THE MEDIATION PRIVILEGE, IS THAT ALSO WITHDRAWN?
 7          MR. PETERS:  THE CITY HAS WAIVED THE MEDIATION
 8   PRIVILEGE.
 9          THE COURT:  THANK YOU.
10          MR. THOMASCH:  AND, YOUR HONOR, THE ISSUE IS WITH
11   RESPECT TO WHAT.
12          WE WANT TO BRING SUNLIGHT AS TO THE ENTIRE MANNER
13   IN WHICH MR. JONES WAS RECRUITED BY THE CITY'S SPECIAL
14   COUNSEL FOR THE CITY AND THE CASE WAS BROUGHT AND SETTLED
15   FOR THE CITY.
16          WE WANT TO BRING LIGHT TO ALL OF THAT.  NOT ONE
17   DOCUMENT THAT HAPPENED TO BE THE TIP OF THE ICEBERG THAT
18   EVIDENCED THE COLLUSION, BUT IT ISN'T THE COLLUSION, IT
19   ISN'T THE SCOPE OF IT.
20          SO WHEN WE TALK ABOUT WAIVER, THE CITY WANTS TO SAY
21   IT'S ABOUT ONE PIECE OF PAPER, IT'S ABOUT ONE DOCUMENT;
22   WE'LL WAIVE IT.  THE REASON THEY ARE WAIVING IT IS BECAUSE
23   WHAT WAS IMPORTANT ON THAT DOCUMENT IS THE FIRST PAGE WHEN
24   IT SAYS "COUNSEL FOR MR. JONES" WAS MR. PARADIS, MS. TUFARO
25   AND MR. KIESEL.  A FACT DIRECTLY CONTRARY TO WHAT THIS
26   COURT AND COUNSEL FOR PWC HAVE BEEN INFORMED ALL ALONG.
27          SO DURING THAT EARLY TIME PERIOD, YOUR HONOR, THERE
28   IS NO DISPUTE ABOUT THE CONCURRENT RELATIONSHIP.
```

1   MR. PARADIS, SPECIAL COUNSEL, ALL THREE OF THEM WERE

2   COUNSEL FOR MR. JONES AND COUNSEL FOR THE CITY OF LOS

3   ANGELES AT THE VERY SAME TIME.

4           AND YOU HEAR THE STATEMENT THERE WAS NO ADVERSITY

5   OF INTEREST.  THAT IS NOT A STATEMENT THAT CAN BE MADE BY

6   COUNSEL SUMMARILY AND CONCLUSIONALLY.  WHEN MR. JONES HAS

7   TWICE SWORN TO THE FACT THAT HE RETAINED MR. PARADIS TO

8   INVESTIGATE AND BRING CLAIMS AGAINST LADWP AND THE CITY.

9           WHY WOULD MR. JONES RETAIN COUNSEL TO SUE PWC?  HOW

10  WOULD HE KNOW ANYTHING ABOUT PWC?  PWC DID NOT SEND HIM A

11  BILL THAT WAS WRONG, THE CITY DID.

12          OBVIOUSLY MR. PARADIS TROLLED FOR A CLIENT, FOUND A

13  CLIENT, TRIED TO REDIRECT HIS EFFORT TO SUE PWC.  WHEN

14  MR. JONES SAID NO, I DIRECT YOU TO DRAFT UP THE COMPLAINT

15  AND SUE LADWP, HE PREPARES THE COMPLAINT, BUT HE CANNOT

16  FILE THE COMPLAINT; HE'S SPECIAL COUNSEL TO THE CITY OF LOS

17  ANGELES.

18          SO HE HANDS IT OFF TO HIS FRIEND AND EVERYBODY

19  STAYS QUIET.  NOBODY MENTIONS WHO MR. JONES'S COUNSEL HAS

20  BEEN OR WHY MR. JONES RETAINED THAT INDIVIDUAL.  IT WAS

21  MR. PARADIS AND THE RETENTION WAS AT ALL TIMES POTENTIALLY

22  AND ACTUALLY ADVERSE TO THE CITY OF LOS ANGELES.

23          WHAT MR. JONES DIDN'T KNOW WAS THAT ESSENTIALLY HE

24  HAD A SECRET AGENT AS HIS COUNSEL.  SO IN THAT EARLY PERIOD

25  THE ONLY DEFENSE YOU HAVE IS THE SEVEN-PAGE BRIEF WHICH

26  JUST SAYS WHAT MR. PETERS JUST SAID THERE WAS NO ADVERSITY.

27          WHY DOESN'T SOMEONE PUT IN A DECLARATION.  WHY

28  DOESN'T SOMEONE GET ON THE STAND AND SWEAR SO THAT IN FRONT

1    OF YOUR HONOR THAT HASN'T HAPPENED.  ONLY ONE PERSON HAS

2    HAD THE COURAGE TO PROVIDE THE COURT WITH FACTS UNDER

3    PENALTY OF PERJURY THAT IS MR. JONES.  HE WAS SUBJECTED TO

4    CROSS-EXAMINATION, HAD THE CITY WANTED TO CROSS EXAMINE

5    HIM, THE CITY ASKED NOT ONE QUESTION OF MR. JONES AFTER

6    HEARING HIS UNAMBIGUOUS AND CLEAR AND TRUTHFUL TESTIMONY.

7         SO IN THAT EARLY PERIOD THERE IS A COMPLETE WAIVER

8    THROUGH CONCURRENT REPRESENTATION BECAUSE EVERY TIME

9    MR. PARADIS LEARNED SOMETHING IT WAS IN THE JONES CAMP AND

10   THE CITY'S CAMP AT THE SAME TIME.  DURING THE LATER PERIOD,

11   IT APPEARS THE CITY ASSERTS WITHOUT SPECIFICITY THAT

12   SOMETIME AFTER THE JONES COMPLAINT WAS FILED SPECIAL

13   COUNSEL STOPPED BEING COUNSEL TO MR. JONES, THAT IS WRONG,

14   AS WRONG AS A MATTER OF LAW.

15        THE EXISTENCE OF THE ATTORNEY-CLIENT RELATIONSHIP

16   AND THE RESULTING PRIVILEGE MUST BE VIEWED FROM THE

17   PERSPECTIVE OF THE CLIENT WHO HOLDS THE PRIVILEGE.  AND THE

18   RELATIONSHIP CONTINUES SO LONG AS THE CLIENT ACTUALLY AND

19   REASONABLY BELIEVES THAT THE REPRESENTATION IS CONTINUING.

20        DIRECT THE COURT TO PARAGRAPH 43 OF MR. EATON'S

21   DECLARATION CITING TO HAHN VERSUS SUSSMAN SHANK LLP 2017

22   WESTLAW, 271, 3737.  MR. JONES'S ACCOUNTING OF HIS

23   RELATIONSHIP WITH SPECIAL COUNSEL PROVIDED UNDER PENALTY OF

24   PERJURY IN 2017 AND AGAIN IN 2019 MAKES CLEAR THAT HE

25   VIEWED MR. PARADIS AS HIS COUNSEL IN DECEMBER OF 2014 WHEN

26   MR. PARADIS SOLICITED HIM.  HE VIEWED MR. PARADIS AND

27   SPECIAL COUNSEL AS HIS COUNSEL IN JANUARY THROUGH APRIL,

28   2015, WHEN THE JONES VERSUS LADWP COMPLAINT WAS DRAFTED AND

1    FILED.

2          HE SAID HE THOUGHT MR. PARADIS FILED IT.  HE DIDN'T

3    KNOW UNTIL HE SAW THE DEPOSITION EXHIBIT THAT MR. PARADIS

4    HAD NOT SIGNED IT.  AND HE HAD NO EXPLANATION FOR WHY HIS

5    ATTORNEY WOULD NOT SIGN IT.  HE DIDN'T KNOW WHO THIS

6    MR. LIBMAN WAS WHO SIGNED IT WITH MR. LANDSKRONER.

7          MR. JONES'S TESTIMONY WAS THAT HE THOUGHT IN 2015

8    AND 2016 WHEN THE VARIOUS SETTLEMENT AGREEMENTS WERE BEING

9    DISCUSSED AND NEGOTIATED HE THOUGHT MR. PARADIS WAS HIS

10   COUNSEL.  HE WAS WRONG.  AT LEAST THE DIVIDED LOYALTY, THE

11   LOYALTY OF MR. PARADIS WAS NOT WITH HIM, BUT HE THOUGHT HE

12   WAS HIS COUNSEL.

13         IN 2017 WHEN MR. JONES AND THE CITY MOVED THIS

14   COURT TO GET FINAL APPROVAL OF THE SETTLEMENT, HE THOUGHT

15   MR. PARADIS AND MR. LANDSKRONER WERE BOTH HIS COUNSEL.  AND

16   HE THOUGHT THAT UNTIL TODAY.  HE THOUGHT IT THE FIRST TIME

17   HE HAD ANY INKLING THAT MR. PARADIS WAS NOT REPRESENTING

18   HIM WAS WHEN WE SUBPOENAED HIM IN THIS CASE IN 2017 AND

19   STARTED TO HAVE DISCUSSIONS WITH HIS ATTORNEYS ABOUT THE

20   REASON WHY WE WERE ASKING HIM TO TESTIFY LONG AFTER HIS

21   ROLE IN THE CASE HAD FINISHED.

22         BUT THROUGH THE ENTIRE TIME PERIOD HE THOUGHT MY

23   COUNSEL ORIGINALLY WAS MR. PARADIS ALONE AND LATER MY

24   COUNSEL INCLUDED MR. LANDSKRONER.  BUT NO ONE WHO

25   REPRESENTED ME EVER STOPPED BEING MY COUNSEL, AND IT IS

26   FROM HIS PERSPECTIVE THAT THE LAW SAYS WE DEFINE THE

27   RELATIONSHIP.

28         BECAUSE THAT RELATIONSHIP NEVER TERMINATED,

```
1    CERTAINLY DIDN'T TERMINATE BEFORE DECEMBER OF 2018, AGAIN
2    WE HAVE THAT CONTINUING CONCURRENT RELATIONSHIP AT ALL
3    TIMES UP TO THE PRESENT.  THE LAW, I'M SORRY, THE RULES OF
4    PROFESSIONAL RESPONSIBILITY RPC 3700 REQUIRE THAT TO
5    TERMINATE THE RELATIONSHIP WITHDRAWING COUNSEL MUST GIVE
6    QUOTE "DUE NOTICE TO THE CLIENT" END QUOTE.
7         ABANDONMENT OF A CLIENT DOES NOT EQUAL TERMINATION
8    OF THE ATTORNEY-CLIENT RELATIONSHIP.  ABANDONMENT IS NOT A
9    DEFENSE.  THERE IS NO DISPUTE THAT MR. PARADIS FORMED AN
10   ATTORNEY-CLIENT RELATIONSHIP.  HE NEVER GAVE NOTICE TO
11   MR. JONES OF THE TERMINATION OF THAT.
12        IT SHOULD BE SO EASY.  THERE SHOULD BE A WRITING.
13   EVERY LAWYER IN THIS ROOM KNOWS HOW TO TERMINATE A
14   RELATIONSHIP WITH A CLIENT, AND YOU DON'T DO IT BY THINKING
15   ABOUT IT.  YOU DON'T DO IT BY SENDING AN EMAIL OR BY PHONE
16   CALL.  YOU DO IT BY A WRITING AND YOU HOLD THE WRITING IN
17   YOUR FILES.  NONE HAS BEEN PRODUCED HERE.
18        IN LIGHT OF THE CONCURRENT REPRESENTATION, ALL
19   PRIVILEGES AND ALL WORK-PRODUCT PROTECTION MUST BE DEEMED
20   WAIVED BECAUSE THE COMMUNICATIONS WHEN MADE KNOWN TO THE
21   SPECIAL COUNSEL WERE EFFECTIVELY COMMUNICATIONS TO THE
22   OPPOSING PARTY AND THUS WITHOUT THE NECESSARY REASONABLE
23   EXPECTATION OF CONFIDENTIALITY REQUIRED TO MAINTAIN
24   PRIVILEGE.
25        AND BECAUSE OF THAT WE SHOULD BE PERMITTED TO
26   DEPOSE ANY INDIVIDUAL AFFILIATED WITH THE CITY INCLUDING
27   SPECIAL COUNSEL REGARDING THE FORMATION AND EXECUTION OF
28   THE PLAN TO BRING AND SETTLE THE JONES CASE IN A MANNER IN
```

1    WHICH THE CITY WOULD FIND ACCEPTABLE.  WE SHOULD BE ABLE TO

2    GO INTO THE MANNER IN WHICH THAT CASE SETTLEMENT HAS BEEN

3    IMPLEMENTED, INCLUDING REPRESENTATIONS MADE TO THIS COURT

4    AND TO THE LADWP BOARD, WHICH WE THINK HAVE REPEATEDLY BEEN

5    MISLEADING, INACCURATE, AND WORSE.

6         THE CRIME FRAUD EXCEPTION YOUR HONOR ASKED ABOUT

7    AND IT DOES APPLY HERE.  IT APPLIES TO THE CITY'S INTERNAL

8    COMMUNICATIONS, AND ITS COMMUNICATIONS WITH

9    MR. LANDSKRONER.  CALIFORNIA EVIDENCE CODE 956 SAYS THERE

10   IS NO PRIVILEGE UNDER THIS ARTICLE IF THE SERVICES OF THE

11   LAWYER WERE SOUGHT OR OBTAINED TO ENABLE OR AID ANYONE TO

12   COMMIT A CRIME OR FRAUD.

13        THE CITY -- THE CITY HIRED MR. PARADIS TO SERVE AS

14   SPECIAL COUNSEL AND TO AFFILIATE WITH MR. KIESEL AS SPECIAL

15   COUNSEL AFTER MR. PARADIS HAD ENGINEERED THE RETENTION BY

16   MR. JONES.  THAT WAS WHAT MADE THEM ATTRACTIVE TO THE CITY,

17   THEY HAD A CAPTIVE PLAINTIFF.  HE COULD BE THEIR DUPE.

18   THEY COULD DO WHATEVER THEY WANTED IN HIS NAME AND NOT HAVE

19   TO WORRY ABOUT THE LIKES OF MR. BLOOD OR MR. HIMMELFARB WHO

20   HAD PLAINTIFFS WHO THEY WANTED TO REPRESENT AS OPPOSED TO

21   WANTING TO USE A PLAINTIFF TO REPRESENT THE INTEREST OF THE

22   CITY.

23        THERE IS A CLASSIC CASE OF CRIME FRAUD EXCEPTION

24   AND FRAUD ON THE COURT HERE.  IT IS THE RESPONSIBILITY OF

25   THE CITY BECAUSE THE CITY KNEW OF THE PARADIS RELATIONSHIP

26   BEFORE IT RETAINED MR. PARADIS AND MR. KIESEL AND

27   MS. TUFARO AS SPECIAL COUNSEL.

28        WE FOUND OUT AT THE DEPOSITION OF CHIEF DEPUTY

1    CLARK THERE WAS A VERY WIDE CIRCULATION OF THE JONES V. PWC

2    COMPLAINT WITHIN THE CITY ATTORNEY'S OFFICE AND OUTSIDE

3    COUNSEL AT LINER IN JANUARY OF 2015.  THAT DOCUMENT THAT

4    WAS BEING CIRCULATED AROUND ALL THE FOLKS AT LADWP, THE

5    CITY ATTORNEY'S OFFICE AND LINER, IT SHOWED RIGHT ON ITS

6    FACE, "COUNSEL FOR MR. JONES PAUL PARADIS, GINA TUFARO,

7    PAUL KIESEL," COUNSEL FOR JONES.

8         NO ONE RAISED A QUESTION.  NO ONE WENT TO THE

9    IN-HOUSE ETHICS PERSON AT THE CITY.  NO ONE SAID, WAIT A

10   MINUTE, MR. PARADIS AND MR. KIESEL WORK FOR US, CAN THEY

11   ALSO BE COUNSEL FOR MR. JONES?  QUESTIONS NOT RAISED.

12        NO ONE THINKS TWO MINUTES ABOUT IT BECAUSE

13   EVERYBODY KNOWS THAT IS WHY WE HAVE MR. PARADIS AND

14   MR. KIESEL IN THIS CASE BECAUSE THEY REPRESENT MR. JONES

15   THAT IS WHY WE WANTED.

16        AS SET FORTH IN PWC'S BRIEF, MULTIPLE MISSTATEMENTS

17   HAVE BEEN MADE TO THE COURT THROUGHOUT THE JONES SETTLEMENT

18   PROCESS ALL IN VIOLATION OF THE CALIFORNIA B & P CODE

19   SECTION 6068(D).

20        NOW LET ME TURN TO MR. LANDSKRONER BRIEFLY.

21   MR. LANDSKRONER'S BRIEF TAKES THE POSITION THAT

22   MR. PARADIS'S COMMUNICATIONS WITH MR. JONES ARE PRIVILEGED,

23   BUT HE FAILS TO SAY SO, SO MR. LANDSKRONER IS TRYING TO

24   ARGUE FOR A PRIVILEGE BETWEEN MR. PARADIS AND MR. JONES.

25        IN THAT REGARD HE FAILS TO TAKE INTO ACCOUNT AT ALL

26   MR. PARADIS'S CONCURRENT REPRESENTATION OF THE CITY SUCH

27   THAT BY DEFINITION DISCLOSURES TO MR. PARADIS WERE

28   DISCLOSURES TO THE CITY.

Exhibit 21
Page 989

1      HE FURTHER SEEKS TO PROTECT HIS CONFIDENTIAL

2  COMMUNICATIONS WITH MR. JONES THROUGHOUT HIS

3  REPRESENTATIONS TO THE EXTENT MR. LANDSKRONER HAD

4  ONE-ON-ONE CONVERSATIONS WITH MR. JONES.  IT IS OUR VIEW

5  THAT IS MR. JONES'S PRIVILEGE AND WE'RE NOT SEEKING TO

6  INVADE IT.

7      BUT TO THE EXTENT THAT THOSE CONVERSATIONS WENT ON

8  FROM MR. LANDSKRONER TO THE CITY, WE VIEW THAT AS A

9  DIFFERENT SET OF CIRCUMSTANCES.  THERE ARE CERTAINLY

10  MULTIPLE FACTS THAT ARE NOT PRIVILEGED THAT MR. LANDSKRONER

11  SHOULD TESTIFY TO, SHOULD TESTIFY TO IN THE CITY OF LOS

12  ANGELES, AND SHOULD IF HE WANTS TO BRING PRIVILEGE

13  OBJECTIONS BRING THEM BEFORE YOUR HONOR.

14      THOSE FACTS INCLUDE THE CIRCUMSTANCES UNDER WHICH

15  MR. LANDSKRONER CAME INTO THIS CASE, HOW HE WAS RETAINED,

16  WHAT HE KNEW ABOUT MR. PARADIS'S RELATIONSHIP WITH THE CITY

17  AT THAT TIME, THE DATE THAT MR. LANDSKRONER NOTIFIED

18  MR. JONES OF THE FILING OF THE COMPLAINT, AND WHAT HE TOLD

19  HIM ABOUT WHO WAS HIS COUNSEL AT THAT TIME, THE DATE THAT

20  HE NOTIFIED MR. JONES OF SETTLEMENT NEGOTIATIONS.

21      IT'S INTERESTING THAT WE LEARNED IN THE JONES

22  DEPOSITION ON FEBRUARY 13, THE JONES COMPLAINT WAS FILED ON

23  APRIL 1, 2015.  LESS THAN 24 HOURS LATER ON APRIL 2, A

24  SETTLEMENT OFFER WAS MADE TO MR. TOM, AMONG OTHERS, WHO IS

25  SITTING IN THE BACK.  SETTLEMENT OFFER WITHIN 24 HOURS.

26      MR. JONES SAID HE DIDN'T LEARN ABOUT THE SETTLEMENT

27  OFFER FOR SEVERAL MONTHS.  WHY WERE THEY NOT TELLING HIM.

28  WHY WERE THEY NOT TELLING HIM THAT HIS NEW COUNSEL WHO HAD

1    BEEN THERE FOR SIX DAYS WAS ALREADY SETTLING THE CASE.

2           THOSE FACTS ARE NOT PRIVILEGED, AND WE SEEK

3    MR. LANDSKRONER'S DEPOSITION IN THAT REGARD.

4           MR. LANDSKRONER CLAIMS THAT COMMUNICATIONS BETWEEN

5    MR. PARADIS AND MR. LANDSKRONER WHILE QUOTE UNQUOTE

6    "TRANSITIONING" MR. JONES'S REPRESENTATION ARE PRIVILEGED;

7    THEY ARE NOT.

8           FIRST THERE WAS NO TRANSITIONING.  TRANSITIONING

9    SUGGESTS MR. PARADIS LEFT HIS ATTORNEY-CLIENT RELATIONSHIP

10   WITH MR. JONES THAT DID NOT HAPPEN BECAUSE NOTICE WAS NOT

11   GIVEN.

12          NO EVIDENCE OF NOTICE HAS BEEN PROVIDED AND

13   MR. JONES, WHO HAS THE APPROPRIATE LEGALLY-EFFECTIVE VIEW

14   ON THIS FROM HIS PERSPECTIVE, MR. PARADIS REMAINED HIS

15   COUNSEL AT ALL TIMES.  SO THERE WAS NO TRANSITIONING.

16          SECONDLY, THE VERY CASE CITED BY LANDSKRONER,

17   FIREMAN'S FUND VERSUS SUPERIOR COURT, LIMITS THE PRIVILEGE

18   IN SUCH SITUATIONS TO COMMUNICATIONS INTENDED QUOTE "TO

19   FURTHER THE INTEREST OF THE CLIENT IN THE CONSULTATION."

20          HERE IT'S CLEAR FROM THE DEPOSITION OF MR. CLARK

21   THAT THE TRANSITION WAS INTENDED TO ADVANTAGE THE CITY, AND

22   I CAN CITE THE COURT TO PAGE AND LINE OF THE CLARK

23   DEPOSITION IN WHICH HE ACKNOWLEDGED THAT IT WAS AN

24   ADVANTAGE TO THE CITY TO BRING IN MR. LANDSKRONER.  IT WAS

25   AN ADVANTAGE TO THE CITY FIRST BECAUSE HE KNEW MR. PARADIS.

26   IT WAS AN ADVANTAGE TO THE CITY BECAUSE HE WASN'T

27   UNREASONABLE LIKE MR. HIMMELFARB AND MR. BLOOD.

28          AND IT WAS AN ADVANTAGE TO THE CITY HE SAID, I'M

1    SORRY, HE SAID IT WAS AN ADVANTAGE TO BRING HIM IN BECAUSE

2    MR. LANDSKRONER COMING FROM CLEVELAND KNEW ABOUT PWC'S

3    IMPLEMENTATION IN CLEVELAND.

4         SO I ASKED HIM, WHO DID THAT ADVANTAGE MR. JONES OR

5    THE CITY?  HE SAID IT ADVANTAGED THE CITY.  AND THAT IS

6    WHAT THIS WAS ALL ABOUT.  BRING IN SOMEBODY WHO COULD HELP

7    THE CITY WITH ITS CAMPAIGN TO PIVOT ALL THE COMPLAINTS

8    AGAINST IT AND MOVE THE SPOTLIGHT RIGHT OVER TO PWC.

9         MR. LANDSKRONER WAS THE PERFECT VEHICLE FOR DOING

10   THAT BECAUSE HE CAME FROM CLEVELAND, AND HE PROFESSED TO

11   KNOW ABOUT HOW PWC HAD HAD A BAD IMPLEMENTATION IN

12   CLEVELAND THAT IS THEIR STORY.  AND HE CERTAINLY DOES COME

13   FROM CLEVELAND, BUT WHAT DOES PWC'S IMPLEMENTATION IN

14   CLEVELAND HAVE TO DO WITH A CASE AGAINST THE LADWP?

15   NOTHING.

16        HE WASN'T THERE TO TRY AND PROVE A CASE AGAINST

17   LADWP.  HE DIDN'T HAVE TO PROVE A CASE AGAINST LADWP.

18   LADWP WANTED HIM TO SUE AND WANTED HIM TO SETTLE ON THEIR

19   TERMS.

20        THEY KNEW WHAT THEY WANTED.  THEY WANTED TO GIVE A

21   REFUND OF 100 PERCENT WHICH OF COURSE THEY HAD AN

22   OBLIGATION TO DO AND DON'T DENY.  THEY WANTED TO HAVE THIS

23   COURT ORDER THEM TO REMEDIATE AND THAT IS A WHOLE DIFFERENT

24   SUBJECT, SOMETHING THAT THE COURT SHOULD HAVE EVERY

25   INTEREST IN EXPOSING.  BUT THEY WANTED THE COURT TO ORDER

26   THEM TO DO THOSE THINGS.

27        AND THEY ALSO, AS MR. CLARK ADMITTED, THEY WANTED

28   THE BROADEST POSSIBLE RELEASE.  THEY WANTED TO BE ABLE TO

1    FIND THE PLAINTIFF THAT WOULD THINK THAT 100 PERCENT REFUND

2    THEY WERE OFFERING ON A SUBSET OF CLAIMS AND THEN RELEASE

3    ALL THE CLAIMS THAT MR. HIMMELFARB AND MR. BLOOD PUT IN

4    THEIR COMPLAINTS THAT GO WAY BEYOND JUST THE TYPE OF ERRORS

5    THAT THE CITY FED TO MR. PARADIS AND MR. PARADIS GAVE TO

6    MR. LANDSKRONER AND MR. LANDSKRONER PUT IN A COMPLAINT

7    NOMINALLY ON BEHALF OF JONES, BUT INTENDED AT ALL TIMES TO

8    FURTHER THE INTEREST OF THE CITY.

9         WE SEEK DISCOVERY FROM MR. LANDSKRONER INTO THE

10   ALLEGEDLY EXTENSIVE PREFILING INVESTIGATION THAT CLASS

11   COUNSEL DID.  WHEN YOUR HONOR WAS TOLD THAT CLASS COUNSEL

12   DID AN EXTENSIVE INVESTIGATION BEFORE THE COMPLAINT WAS

13   EVEN FILED, IT PROBABLY DIDN'T RESONATE WITH YOUR HONOR

14   THAT HE'S ONLY BEEN HIRED FOR SIX DAYS.  HE WAS ONLY

15   INTRODUCED TO MR. JONES ON MARCH 26, 2015, AND HE FILED THE

16   SUIT ON APRIL 1.  WORKS FAST.

17        OF COURSE MR. JONES HAD PREVIOUSLY TOLD MR. PARADIS

18   TO DRAFT THE COMPLAINT.  SO IT MAY WELL BE THAT THE

19   COMPLAINT THAT WAS DRAFTED BY MR. PARADIS, THE CITY'S

20   COUNSEL, WAS THE ONE THAT WAS ULTIMATELY FILED AGAINST IT.

21   NOW WE GUESS IT WAS PROBABLY TWEAKED BECAUSE WE HAVE

22   TESTIMONY FROM MR. CLARK THAT DURING THAT TRANSITION PHASE

23   DURING THAT TIME WHEN THE CITY WAS COMPLETELY AWARE OF THE

24   FACT THAT MR. PARADIS WAS TURNING OVER THE PUBLIC FACE OF

25   THE CASE TO MR. LANDSKRONER, AT THAT TIME MR. PARADIS

26   GATHERED UP THE OTHER EXISTING CLASS ACTIONS, THE KIMHI

27   CASE, THE BRANSFORD CASE, THE MORSKI CASE.  TOOK THOSE

28   COMPLAINTS, BUNDLED THEM UP, AND SENT THEM OFF TO

1  MR. LANDSKRONER SO HE COULD MAKE SURE THAT SOMEHOW THE

2  RELEASE THAT WOULD BE OBTAINED WOULD BE BROAD ENOUGH TO

3  CAPTURE WHAT WAS IN THOSE COMPLAINTS.  NO MORE

4  CONSIDERATION WAS GOING TO COME TO THE CLASS, BUT THAT WAS

5  PART OF THE OVERALL SCHEME WAS SETTLE NARROW, RELEASE

6  BROAD.

7          MR. LANDSKRONER SEEKS TO AVOID ANY INVOLVEMENT IN

8  ALL OF THIS AND SAYS YOU CAN'T HAVE DISCOVERY ABOUT THAT.

9  IT'S NOT WAIVED, AND I SUBMIT TO YOUR HONOR THAT HE PUT IN

10  A DECLARATION.  HE ASKED YOUR HONOR FOR HUNDREDS OF

11  THOUSANDS OF DOLLARS OF ATTORNEYS FEES AND HE WAS AWARDED

12  HUNDREDS OF THOUSANDS OF DOLLARS OF ATTORNEYS' FEES FOR

13  WORK THAT BEGAN IN NOVEMBER OF 2014.

14          THE COURT:  I THOUGHT THAT WAS 19 MILLION IS THAT

15  THE CORRECT NUMBER?

16          MR. THOMASCH:  THE TOTAL NUMBER FOR THE CLASS WAS

17  19 MILLION.  I BELIEVE MR. LANDSKRONER'S SHARE OF IT WAS

18  THE HEAVY MAJORITY OF THAT.  IT WAS NOT THE FULL 19

19  MILLION.

20          THE COURT:  LET ME ASK.

21          MR. LANDSKRONER, DID YOU PAY A REFERRAL FEE TO

22  MR. PARADIS?

23          MR. DROOKS:  YOUR HONOR, MY NAME IS MARK DROOKS.  I

24  REPRESENT MR. LANDSKRONER.

25          MAY WE APPROACH?

26          THE COURT:  DID YOU PAY A REFERRAL FEE TO

27  MR. PARADIS?  DID YOU HEAR THE QUESTION, MR. LANDSKRONER?

28          MR. LANDSKRONER:  I HEARD THE QUESTION, YOUR HONOR,

1    I'D LIKE MY COUNSEL TO RESPOND.

2            MR. DROOKS:  YOUR HONOR, IN LIGHT OF THE

3    ALLEGATIONS THAT WERE MADE IN THE BRIEFS ON FRIDAY, I AM

4    ADVISING MR. LANDSKRONER TO ASSERT HIS PRIVILEGE AGAINST

5    SELF-INCRIMINATION WITH RESPECT TO ANY QUESTIONS OR

6    ALLEGATIONS AGAINST MR. JONES -- WITH THE ALLEGATIONS IN

7    CONNECTION WITH THE JONES CASE AND THE PWC CASE.

8            THE COURT:  THANK YOU.  I LOOK FORWARD -- I WANT TO

9    UNDERSTAND WHAT YOUR OBJECTION TO IT IS.

10           LET ME ASK MR. LANDSKRONER ONE MORE QUESTION, HOW

11   MUCH OF THE $19 MILLION, IF ANY, WAS PAID TO MR. PARADIS?

12           MR. DROOKS:  YOUR HONOR, SAME OBJECTION.

13           IN LIGHT OF THE ALLEGATIONS THAT WERE MADE IN THE

14   BRIEFS FILED ON FRIDAY, I HAVE ADVISED MR. LANDSKRONER TO

15   ASSERT HIS PRIVILEGE AGAINST SELF-INCRIMINATION UNDER THE

16   FIFTH AMENDMENT OF THE CONSTITUTION, THE CALIFORNIA

17   CONSTITUTION, AND ANY OTHER APPLICABLE CONSTITUTIONS OR

18   PRIVILEGES.

19           THE COURT:  THANK YOU.

20           WAS THERE ANY DISCLOSURE TO THE COURT THAT A FEES

21   TO BE AWARDED TO MR. LANDSKRONER IN THE CLASS ACTION WERE

22   GOING TO BE SPLIT WITH ANOTHER ATTORNEY?

23           MR. DROOKS:  YOUR HONOR, IN LIGHT OF THE

24   ALLEGATIONS MADE AGAINST IN CONNECTION WITH THE BRIEFS

25   FILED ON FRIDAY, I HAVE ADVISED MR. LANDSKRONER TO ASSERT

26   HIS PRIVILEGE AGAINST SELF-INCRIMINATION IN CONNECTION WITH

27   ANY SUCH QUESTIONS.

28           THE COURT:  WAS THERE ANY DISCLOSURE TO THE COURT

1   THAT ANY OF THE FEES PAID TO MR. LANDSKRONER OR AWARDED TO

2   MR. LANDSKRONER FROM THE CLASS ACTION WOULD BE PAID TO

3   MR. PARADIS?

4           MR. DROOKS:  YOUR HONOR, I KNOW WHERE I AM GOING,

5   BUT COULD I PLEASE HAVE THE QUESTION READ BACK.

6           THE COURT:  PLEASE READ THE QUESTION BACK.

7

8           (WHEREBY THE REPORTER READ BACK THE LAST QUESTION.)

9

10          THE COURT:  LET ME REPHRASE THE QUESTION.

11          WAS THERE ANY DISCLOSURE TO THE COURT THAT ANY OF

12  THE FEES AWARDED TO MR. LANDSKRONER IN THE CLASS ACTION

13  WOULD BE PAID TO MR. PARADIS?

14          MR. DROOKS:  YOUR HONOR, IN LIGHT OF THE

15  ALLEGATIONS MADE IN THE BRIEFS FILED ON FRIDAY, I HAVE

16  ADVISED MR. LANDSKRONER TO ASSERT THE FIFTH AMENDMENT WITH

17  RESPECT TO ANY AND ALL QUESTIONS RELATING TO THOSE

18  ALLEGATIONS INCLUDING THIS QUESTION.

19          THE COURT:  THANK YOU.

20          A FEW OTHER QUESTIONS I WANT TO ASK ABOUT WHAT

21  FUTURE SERVICES OR WHAT SERVICES ARE CURRENTLY BEING

22  RENDERED BY MR. LANDSKRONER IN THE CLASS ACTION.

23          MR. DROOKS:  YOUR HONOR, I BELIEVE I CAN ANSWER

24  THAT QUESTION.  OBVIOUSLY MR. LANDSKRONER HAS CONTINUED TO

25  MONITOR THE IMPLEMENTATION OF THE SETTLEMENT.  AND AS YOU

26  KNOW HE HAS REPORTED TO THE COURT PERIODICALLY FOR THAT

27  PURPOSE.

28          IN LIGHT OF THE ALLEGATIONS MADE ON FRIDAY,

1    MR. LANDSKRONER NOW STANDS IN CONFLICT WITH THE COURT,

2    MR. JONES AND THE CLASS IN CONNECTION WITH ADVICE

3    REGARDING, FOR EXAMPLE, WHETHER TO WAIVE A PRIVILEGE OR

4    THINGS LIKE THAT. AND HE WILL PROBABLY NEED TO EITHER

5    WITHDRAW OR FILE A MOTION TO BE RELIEVED.

6           THE COURT:  DOES MR. LANDSKRONER INTEND TO FILE ANY

7    FUTURE FEE APPLICATIONS FOR SERVICES RENDERED?

8           THERE WAS PART OF THE SETTLEMENT INCLUDED

9    CONTINUING SERVICES THROUGH THE REMEDIATION PERIOD. THERE

10   WAS A PROVISION FOR THE POSSIBILITY OF FUTURE SERVICES.

11          DOES MR. LANDSKRONER INTEND TO FILE ANY

12   APPLICATIONS FOR ADDITIONAL FEES?

13          MR. DROOKS:  YOUR HONOR, FORGIVE ME FOR

14   INTERRUPTING, I THOUGHT YOU WERE FINISHED.

15          MY UNDERSTANDING IS THAT MR. LANDSKRONER HAS

16   ACCRUED ABOUT THREE QUARTERS OF A MILLION DOLLARS IN TIME

17   THROUGH THE IMPLEMENTATION OF THE SETTLEMENT AND ALSO

18   INCURRED SOME COSTS IN PAYING THE MONITOR. BUT WHETHER OR

19   NOT HE INTENDS TO FILE A FEE REQUEST IN LIGHT OF HIS

20   WITHDRAWAL IS UNRESOLVED.

21          THE COURT:  THANK YOU. I WILL ADDRESS SOME OF

22   THESE ISSUES LATER. I'M SORRY TO INTERRUPT, MR. THOMASCH

23   YOU MAY CONTINUE.

24          MR. THOMASCH:  MR. LANDSKRONER'S BRIEF THAT HE

25   FILED MAKES A POINT THAT CALIFORNIA LAW DOES NOT REQUIRE

26   THAT ONE ATTORNEY REPORT UNETHICAL CONDUCT BY ANOTHER

27   LAWYER THAT HE IS A WITNESS TO.

28          WHETHER OR NOT THE OHIO LAWYER HAD AN OBLIGATION

Exhibit 21
Page 997

1    UNDER CALIFORNIA LAW TO REPORT THE NEW YORK LAW FOR A

2    VIOLATION OF THE ETHICAL CODE OF CALIFORNIA IS IRRELEVANT.

3    MR. LANDSKRONER WAS NOT A MERE BYSTANDER WHO WITNESSED A

4    WRONG DONE BY SOMEONE ELSE.

5          HE WAS AN ACTIVE PARTICIPANT IN THE FRAUD AS WE

6    BELIEVE DISCOVERY INTO THE CAREFULLY DRAFTED DECLARATIONS

7    THAT WERE PREPARED BY HIS OFFICE FOR MR. JONES AND BY

8    MR. LANDSKRONER FOR HIMSELF AND SUBMITTED IN CONNECTION

9    WITH THE FEE ARRANGEMENTS WILL SHOW.

10         THERE WAS A DUTY TO THE COURT OF CANDOR THAT ARISES

11   OUT OF RPC 5200 AND B & P CODE SECTION 6068.  VIOLATING

12   THOSE DUTIES WAS AN INDEPENDENT WRONG BY MR. LANDSKRONER

13   NOT MERELY HIS WITNESSING OF AN ETHICAL VIOLATION OF

14   ANOTHER.

15         I SHOULD NOTE THAT IT IS OUR POSITION, AND AGAIN WE

16   HAVE MUCH LESS DISCOVERY ON THIS, THAT THE FRAUD ON THE

17   COURT, TELLING THE COURT ONE THING AND DOING ANOTHER HAS

18   CONTINUED TO THIS DAY.

19         THE WAY THAT THE REMEDIATION HAS BEEN DONE IS

20   INCREDIBLY SUSPECT.  WE NEED TO UNDERSTAND, YOUR HONOR,

21   WHEN THE COMPLAINT WAS FILED WHAT THE JONES COMPLAINT

22   SOUGHT WERE TWO THINGS.  IT SOUGHT 100 PERCENT REFUND OF

23   ALL OVERCHARGES FROM THE CC&B BILLING SYSTEM.  AND IT

24   SOUGHT THE IMPOSITION OF AN INDEPENDENT MONITOR, ONE THAT

25   WAS KNOWN TO AND PROVIDED TO THE CASE BY MR. LANDSKRONER.

26         BUT AN INDEPENDENT MONITOR WHO WOULD CONFIRM THE

27   COMPLETENESS AND THE ACCURACY OF ALL OF THE REFUNDS BEING

28   MADE.  SEEMS REASONABLE.  THE CITY WASN'T OPPOSING THE

Exhibit 21
Page 998

```
 1   MOTION THAT IT HAD TO DO A 100 PERCENT REFUND, BUT THEY
 2   BILL 1.6 MILLION CUSTOMERS.  MAYBE HAVING AN INDEPENDENT
 3   BODY THERE TO DETERMINE DID YOU IDENTIFY ALL THE BILLS THAT
 4   WERE WRONG?  DID YOU GIVE THEM ALL THE RIGHT AMOUNT OF
 5   MONEY IN RETURN THAT WAS REQUESTED IN THE COMPLAINT.
 6         BUT WHEN THEY GET TO MEDIATION AND UP UNTIL THIS
 7   MOMENT WE'VE HAD A MEDIATION PRIVILEGE SHIELD WHAT WENT ON.
 8   WHEN THEY GET TO MEDIATION WHAT COMES OUT OF THE PROCESS IS
 9   MORE THAN THE PLAINTIFF EVER ASKED FOR.
10         WHAT COMES OUT OF THE PROCESS IS AN AGREEMENT THAT
11   THE CITY WILL AGREE TO COURT-ORDERED REMEDIATION.  NOT
12   CONFIRMATION THAT THE RIGHT AMOUNT IS BEING REFUNDED, BUT
13   WE'RE GOING TO CHANGE THE WAY WE AS LADWP OPERATE OUR
14   BUSINESS.
15         PEOPLE ARE COMPLAINING IT TAKES TOO LONG FOR THE
16   REPS TO ANSWER THEIR PHONE, SO WE'LL PUT A METIC IN THE
17   AGREEMENT THAT SAYS WE HAVE TO ANSWER THE PHONE QUICKER.
18         WE PUT A METRIC IN ABOUT HOW LONG A BROKEN METER
19   CAN BE BROKEN BEFORE WE FIX IT.  WE WILL PUT ALL THAT IN.
20   THE CITY WANTED TO PUT THAT STUFF IN SO THEY COULD CLEAN UP
21   CERTAIN THINGS THERE UNDER THE IMPRIMATUR OF THE COURT
22   REQUIRING THEM TO DO SO.
23         THEY THEN WERE ABLE TO RUSH THROUGH CONTRACTS
24   THROUGH THE BOARD BY SAYING, AND I SPECIFICALLY DEAL WITH
25   THE JUNE 17, 2016 REQUEST MADE BY MR. DAVID WRIGHT, GENERAL
26   MANAGER OF LADWP, TELLING THE BOARD THAT YOUR HONOR WAS ON
27   THE VERGE OF APPROVING THE SETTLEMENT WHICH WAS APPROVED
28   JULY 17, 2017.
```

1      SO A MONTH BEFORE THAT YOU WERE ON THE VERGE OF

2  APPROVING THE SETTLEMENT.  YOU WERE GOING TO INSTITUTE A

3  THREE-YEAR PERIOD FOR REMEDIATION, AND THERE WAS NO TIME TO

4  DO COMPETITIVE BIDDING.  MR. WRIGHT SAYS I LIKE COMPETITIVE

5  BIDDING, I BELIEVE IN IT, BUT WE CANNOT DO THAT BECAUSE THE

6  JUDGE HAS PUT US ON A STRICT SCHEDULE.

7      HE WAS ASKED BY THE BOARD WHETHER ANYONE HAD ASKED

8  THE JUDGE FOR AN EXTENSION AND HE DISSEMBLED.  HE SAID HE

9  HAD TO GO NOW, AND THEY GOT A $30 MILLION CONTRACT APPROVED

10  FOR AVENTADOR UTILITY SYSTEMS.  THE PRINCIPAL AT AVENTADOR

11  UTILITY SYSTEMS ACCORDING TO THE CALIFORNIA SECRETARY OF

12  STATE IS PAUL O. PARADIS.

13      MR. PARADIS HAS MADE BY OUR ACCOUNT HAS RECEIVED

14  THREE CONTRACTS TOTALING OVER $36 MILLION FROM THE CITY IN

15  CONNECTION WITH THE REMEDIATION.  AT THE SAME TIME HE IS

16  COUNSEL FOR THE CITY IN A CLASS ACTION WITH A CONTINGENCY

17  FEE FOR A RECOVERY HE MAY GET AGAINST US.

18      AT THE SAME TIME HE IS COUNSEL FOR MR. JONES.  AT

19  THE SAME TIME HE IS COUNSEL FOR TMG, THE PARTY THAT WAS THE

20  QUALITY ASSURANCE ADVISER WHO HE FIRED FROM THE REMEDIATION

21  IN 2015, AND WHO THEN HIRED HIM TO BE THEIR COUNSEL.

22  EVERYBODY UNDERSTOOD THAT MR. PARADIS WAS THE HUB.  EVERY

23  SPOKE COMES INTO HIM AND IT HAS BEEN THAT WAY FROM THE FALL

24  OF 2014 TO TODAY.

25      AND WE SEEK MR. PARADIS'S DEPOSITION, MS. TUFARO'S

26  DEPOSITION, AND MR. KIESEL'S DEPOSITION.  THEY WERE ALL IN

27  ON IT.  EVERYBODY KNEW WHAT WAS GOING ON EXCEPT MR. JONES,

28  THE COURT, AND PWC AND THE PUBLIC, OF COURSE.  BUT WHO

1    CARES BECAUSE THE CITY GOT WHAT IT WANTED.

2         THE CITY GOT A QUICK SETTLEMENT IN WHICH THEY COULD

3    SAY WE ARE GIVING EVERYBODY 100 PERCENT RECOVERY.  DON'T

4    LOOK BEHIND THE CURTAIN, AND ANYWAY, IT'S ALL PWC'S FAULT.

5         YOUR HONOR, I HAVE VERY LITTLE WITH REGARD TO

6    DISPUTES WITH MR. JONES AND HIS COUNSEL, AS I SAID.  WE

7    ASSERT NO WRONGDOING AGAINST MR. JONES.  WE SEEK TO BREACH

8    NO PRIVILEGE THAT IS LEGITIMATELY MR. JONES'S.  WE DO,

9    HOWEVER, SEEK THE DRAFT JONES V. PWC COMPLAINT FROM

10   MR. JONES.  HE HAS A COPY AND THE CITY HAS A COPY.  THE

11   CITY HAS SAID IT, WE'LL PRODUCE ITS COPY.  WE WANT IT.  WE

12   WANT TO BE SURE WE HAVE IT WITH ALL META DATA.

13        WE NEED TO BE ABLE TO UNDERSTAND ANY CHANGE THAT

14   HAS BEEN MADE TO THAT DOCUMENT.  THERE ARE SERIOUS THINGS

15   THAT ARE HAPPENING HERE, AND WE'RE GOING TO INVESTIGATE

16   THEM.  WE NEED TO GET THE VERSION THAT IS IN COUNSEL'S

17   FILES FOR MR. JONES.

18        THERE HAS BEEN AN ASSERTION OF THE ATTORNEY-CLIENT

19   PRIVILEGE.  IT'S OUR POSITION, YOUR HONOR, THAT THE

20   ATTORNEY-CLIENT PRIVILEGE MAY APPLY TO THE COVER NOTE THAT

21   WAS SENT WITH THE ATTACHMENT, BUT IT DOESN'T APPLY TO THE

22   ATTACHMENT.

23        THE ATTACHMENT, IF ANYTHING, IS WORK PRODUCT AND NO

24   ONE IS ASSERTING THE WORK-PRODUCT PRIVILEGE.  SO WE ASK FOR

25   ITS PRODUCTION THAT IS ONE THING.

26        SECONDLY, I DON'T WISH TO SUGGEST ANY IMPROPRIETY

27   BECAUSE NONE IS SUGGESTED, BUT WE WOULD LIKE TO KNOW WHO IS

28   PAYING MR. ISAACS'S FEES.  THERE HAS BEEN SO MUCH THAT HAS

```
 1   GONE ON THAT WE THINK THAT IS IMPORTANT AND THE IDENTITY OF
 2   A FEE PAYER IS NOT A PRIVILEGED MATTER.
 3          WE ARE NOT LOOKING FOR THE RETAINER AGREEMENT.  WE
 4   ARE NOT LOOKING FOR HOW MUCH HE IS BEING PAID, BUT WE ARE
 5   LOOKING FOR THE IDENTITY OF THE PERSON WHO IS PAYING HIS
 6   FEES.
 7          FINALLY, THERE WERE RETAINER AGREEMENTS WE SOUGHT
 8   AND WHICH WERE NOT PRODUCED.  A PRIVILEGE WAS ASSERTED.  WE
 9   THINK THAT IF A PRIVILEGE LOG WERE TO BE PREPARED, THE
10   INFORMATION THAT WOULD NORMALLY BE ON A LOG WOULD BE
11   SUFFICIENT FOR OUR PURPOSES AND WITH THE LOG WE PROBABLY
12   WOULDN'T NEED TO SEEK TO CHALLENGE THE UNDERLYING
13   PRIVILEGE.  CALIFORNIA PROCEDURE CODE SECTION 2031.240
14   MAKES NO EXCEPTION FOR THIRD PARTIES IN REGARD TO PRODUCING
15   LOGS.
16          THOSE ARE OUR ONLY ISSUES, AND THEY ARE TRIVIAL IN
17   COMPARISON TO THE SEVERE CONCERNS WE HAVE WITH WHAT WE
18   CONSIDER TO HAVE BEEN A COLLUSIVE LITIGATION FROM ITS
19   INCEPTION THAT HAS BEEN CHARACTERIZED BY SCORES OF OVERTLY
20   MISLEADING STATEMENTS AND MORE THAN THAT OF OMISSIONS.
21          AND BEING THE DEFENDANT IN A CASE WHERE THE ONLY
22   ALLEGATIONS ARE THAT THERE WAS FRAUD IN THE INDUCEMENT,
23   THERE IS A CERTAIN IRONY TO THE CONDUCT OF THE CITY THAT
24   HAS GONE ON IN ORDER TO FASHION A CASE AGAINST US, CLAIM
25   DAMAGES AGAINST US, AND EFFECTIVELY PULL THE WOOL OVER
26   EVERYONE'S EYES.
27          THANK YOU, YOUR HONOR.
28          THE COURT:  DOES COUNSEL FOR THE CITY WISH TO
```

```
1   ADDRESS THE COURT?

2        MR. KONCIUS:  YOUR HONOR, JEFFREY KONCIUS FROM

3   KIESEL LAW.

4        I WOULD LIKE TO REDIRECT YOUR HONOR AND THIS COURT

5   TO YOUR HONOR'S FEBRUARY 21 ORDER.  AND IN THAT REGARD, I

6   WOULD INVITE MR. KEHR TO TAKE THE PODIUM AND ADDRESS THOSE

7   ISSUES ON BEHALF OF US.  THERE ARE MANY ALLEGATIONS THAT

8   WERE JUST MADE, YOUR HONOR, MANY OF WHICH HAD NO SUPPORT

9   WHATSOEVER.

10       AND I DO FEEL STRONGLY YOUR HONOR THAT WE DO HAVE A

11  POINT TO ADDRESS THESE IN A WAY THAT THERE BE A FULLY

12  INFORMED RECORD BEFORE YOUR HONOR AS OPPOSED TO JUST

13  ALLEGATIONS ABOUT COLLUSION AND WHATEVER ELSE.

14       YOUR HONOR SAT AND JUDGED THE SETTLEMENT OF A CLASS

15  ACTION.  AND HAVING APPEARED BEFORE YOUR HONOR MANY, MANY,

16  TIMES AND IN THIS COURT, YOUR HONOR LOOKS AT CLASS ACTION

17  SETTLEMENTS VERY CLOSELY.  AND I'D LIKE TO REMIND THE COURT

18  OF THE HARD WORK YOU DID IN THAT CASE, YOUR HONOR, IN

19  APPROVING IT, AND ALL THE STEPS THAT IT WENT THROUGH.

20       SO THIS NOTION THAT THERE WAS SOME SORT OF A

21  COLLUSION AND THE WOOL WAS PULLED OVER THE COURT'S EYES,

22  I'D LIKE TO REFOCUS THAT, YOUR HONOR.

23       AND ALSO FOR PURPOSES OF THE RECORD, I DO WANT TO

24  POINT OUT MY FIRM, YOUR HONOR, MY UNDERSTANDING IS, DID NOT

25  GET A FEE, IF THAT IS WHAT YOUR HONOR WAS INQUIRING INTO

26  BEFORE IN TERMS OF THE MONIES THAT WERE AWARDED IN THE

27  UNDERLYING CLASS SETTLEMENT.  I'D LIKE THE RECORD TO

28  REFLECT THAT TO MAKE THAT PERFECTLY CLEAR.
```

1          WITH THAT, I ASK MR. KEHR.

2          MR. KEHR:  GOOD MORNING, YOUR HONOR.

3          THE COURT:  GOOD MORNING.

4          MR. KEHR:  I WAS REQUESTED BY MR. KIESEL AS A

5    RESULT OF YOUR HONOR'S RECENT ORDER SETTING THIS HEARING TO

6    CONSULT WITH HIM ABOUT THE ETHICS ISSUES THAT WERE RAISED.

7    BECAUSE OF HIS ABSENCE I'VE BEEN REQUESTED TO SPEAK ON HIS

8    BEHALF CONCERNING THOSE ISSUES.

9          IT'S A LITTLE BIT DIFFICULT FOR ME TO FOLLOW WHAT

10   MR. THOMASCH SAID BECAUSE HE DID JUMP AROUND A BIT.  IT

11   SEEMS TO ME THERE ARE TWO KEY ETHICS ISSUES INVOLVED.  THE

12   FIRST ONE IS THE QUESTION OF THE CONTINUATION OF THE

13   LAWYER-CLIENT RELATIONSHIP.

14         MR. THOMASCH SAID REFERRING TO THE DAN EATON

15   DECLARATION CORRECTLY THAT THE EXISTENCE OF A LAWYER-CLIENT

16   RELATIONSHIP IS VIEWED FROM THE PERSPECTIVE OF THE CLIENT,

17   QUITE RIGHT.

18         BUT WHAT THIS LEAVES OUT IS THE QUESTION OF WHY ONE

19   LOOKS AT THE EXISTENCE OF A LAWYER-CLIENT RELATIONSHIP FROM

20   THE CLIENT'S PERSPECTIVE.  THE REASON IS THAT THE LEGAL

21   SYSTEM DOES NOT WANT CLIENTS TO RELY ON LAWYERS WHO ARE NOT

22   PROVIDING LEGAL SERVICES BECAUSE A CLIENT WHO IS UNADVISED

23   IS IN JEOPARDY.

24         HERE THAT DID NOT HAPPEN.  THERE WAS A SUBSEQUENT

25   LAWYER; IT WAS MR. LANDSKRONER.  AND WHILE THE PWC BRIEF

26   AND MR. EATON'S DECLARATION SELECTIVELY QUOTE FROM

27   MR. JONES'S DEPOSITION, THERE ARE OTHER QUOTES THAT ONE

28   MIGHT COME UP WITH INCLUDING ONE IN WHICH MR. JONES SAID HE

1    DIDN'T REALLY THINK ABOUT WHO HIS LAWYER WAS.

2          WHAT WE DO KNOW IS AFTER APRIL 1 HIS ONLY

3    COMMUNICATION WITH MR. PARADIS HAD TO DO WITH THE FACT THAT

4    HIS POWER HAD BEEN TURNED OFF.  HE NEVER DISCUSSED THE

5    SUBSTANCE OF THE CLASS ACTION WITH MR. PARADIS.  HE RELIED

6    ENTIRELY ON MR. LANDSKRONER AS HE HAD EVERY RIGHT TO DO.

7          SO THIS IS NOT A QUESTION OF A CLIENT BEING

8    ABANDONED AS A RESULT OF THE BEING INJURED BY THE LACK OF

9    LEGAL REPRESENTATION.  LEGAL REPRESENTATION WAS THERE.

10          NO ONE WOULD DEFEND A LAWYER'S FAILURE TO MAKE

11   CLEAR THE TERMINATION OF A LAWYER-CLIENT RELATIONSHIP, BUT

12   THE REASON FOR THAT IS NOT THAT ONE NEEDS TO MAKE IT CLEAR

13   IN ORDER TO END THE RELATIONSHIP.

14          THE COURT:  DO YOU AGREE THEN THAT AT LEAST UNTIL

15   WHAT YOU SUGGESTED MR. LANDSKRONER WAS RETAINED AND

16   MR. PARADIS REPRESENTED BOTH THE CITY AND MR. JONES?

17          MR. KEHR:  I THINK THERE PROBABLY WAS A PERIOD OF

18   OVERLAP, YOUR HONOR.  I'M NOT CLEAR ON THE EXACT DATES, BUT

19   IT APPEARS THERE WAS A PERIOD OF OVERLAP.

20          WHAT IS IMPORTANT IS WHETHER THAT REPRESENTATION TO

21   THE CITY CONTINUED.  AN ESSENTIAL PART OF WHAT I UNDERSTAND

22   PWC'S ARGUMENTS TO BE IS THAT REPRESENTATION CONTINUED

23   THROUGH THE ENTIRE LITIGATION PROCESS, THROUGH THE

24   MEDIATION PROCESS, THROUGH THE SETTLEMENT PROCESS, AND AS

25   MR. THOMASCH SAID, UP TO TODAY.

26          THE QUESTION IS WHETHER THERE WAS RELIANCE.  IF

27   THERE WAS NO RELIANCE ON MR. PARADIS TO CONTINUE

28   REPRESENTING MR. JONES, NO RELIANCE BY MR. JONES, AND THE

```
 1   LAWYER-CLIENT RELATIONSHIP HAS ENDED, THE RELATIONSHIP IS
 2   ONE OF RELIANCE.
 3        THERE IS A SECOND SOURCE THAT MR. THOMASCH CITED
 4   FOR THIS AND THAT IS A LINE THAT WAS QUOTED OUT OF CONTEXT
 5   FROM RULE 3-700.  IT'S PARAGRAPH (A)2.  AND THE FULL
 6   QUOTATION FROM THE RULE OF PROFESSIONAL CONDUCT THAT WAS
 7   THEN IN EXISTENCE IS "A MEMBER," MEANING A MEMBER OF THE
 8   STATE BAR, "SHALL NOT WITHDRAW FROM EMPLOYMENT UNTIL THE
 9   MEMBER HAS TAKEN REASONABLE STEPS TO AVOID REASONABLY
10   FORESEEABLE PREJUDICE TO THE RIGHTS OF THE CLIENT,
11   INCLUDING GIVING DUE NOTICE TO THE CLIENT, ALLOWING TIME
12   FOR EMPLOYMENT OF OTHER COUNSEL, COMPLYING WITH RULE
13   3700(D)" WHICH IS MAKING PAPERS AND PROPERTY AVAILABLE AND
14   REFUNDING ANY UNEARNED FEES "AND COMPLYING WITH APPLICABLE
15   LAWS AND RULES" PRIMARILY MEANING COURT PERMISSION IF THERE
16   IS A PENDING MATTER.
17        IF ONE LOOKS AT IT FROM THE STANDPOINT OF RULE
18   3-700 (A) 2 OR FROM THE MORE GENERIC CONCEPT THAT THE
19   EXISTENCE OF A LAWYER-CLIENT RELATIONSHIP IS ONE OF
20   RELIANCE, OBJECTIVELY REASONABLE RELIANCE, I THINK THAT ONE
21   CAN EASILY CONCLUDE THAT THE LAWYER-CLIENT RELATIONSHIP
22   ENDED WHEN MR. LANDSKRONER WAS BROUGHT IN FOR THE PURPOSE
23   OF REPRESENTING MR. JONES IN THE JONES V. CITY LAWSUIT.
24        THERE WERE NO FURTHER COMMUNICATIONS.  THERE WAS NO
25   EFFORT ON THE PART OF MR. JONES TO COMMUNICATE WITH
26   MR. PARADIS WITH REGARD TO THE SUBSTANCE OF THAT LAWSUIT.
27   IT'S ONLY WHEN HIS LIGHTS WERE TURNED OFF A COUPLE OF WEEKS
28   LATER THAT THERE WAS ONE COMMUNICATION, SO FAR AS I KNOW,
```

1    THAT IS THE ONLY ONE.

2         SO THIS IS NOT A QUESTION OF THERE BEING ANY INJURY

3    TO THE CLIENT AS A RESULT OF AN ABANDONMENT.  A-PLUS

4    LAWYERING WOULD HAVE FOR, AS A MATTER OF SELF-PROTECTION,

5    INVOLVE MR. PARADIS SENDING A LETTER OR AN EMAIL TO

6    MR. JONES SAYING I HAVE NOW HANDED THIS MATTER OFF.  I

7    CANNOT REPRESENT YOU ANY LONGER.  PLEASE COMMUNICATE ONLY

8    WITH MR. LANDSKRONER.

9         BUT SOMEHOW THAT MESSAGE GOT THROUGH BECAUSE THERE

10   WERE NO COMMUNICATIONS ABOUT THE CLASS ACTION EXCEPT

11   BETWEEN MR. JONES AND MR. LANDSKRONER.  SO MY VIEW OF THIS

12   IS THAT THE LAWYER-CLIENT RELATIONSHIP ENDED WHEN THERE WAS

13   NO LONGER ANY RELIANCE.

14        THE SECOND QUESTION THAT SEEMS TO BE FUNDAMENTAL TO

15   THE PWC ISSUE HERE OR THE PRESENTATION THAT IT HAS MADE IS

16   THE ADVERSITY ISSUE.  I THINK THE HEART OF THE ATTACK THAT

17   PWC IS ATTEMPTING TO MAKE ON THE JONES V. CITY SETTLEMENT

18   IS THE PREMISE THAT MR. JONES AND THE CITY WERE ADVERSE.

19        BUT FROM THE FACTS SO FAR KNOWN TO ME, IT APPEARS

20   TO ME THEY WERE NOT ADVERSE.  THEY SHARED A COMMUNITY OF

21   INTEREST IN THAT THEIR GOAL WAS TO --

22        THE COURT:  ARE YOU TELLING ME THEY ARE NOT IN AN

23   ADVERSE RELATIONSHIP, MR. JONES AND THE CITY?

24        MR. KEHR:  CORRECT.

25        THE COURT:  SO THEY ARE JUST GOOD BUDDIES.  THEY

26   JUST SUED EACH OTHER.

27        MR. KEHR:  I THINK --

28        THE COURT:  IT'S OKAY FOR BUDDIES TO SUE EACH

1   OTHER.

2           MR. KEHR:  IT'S PERFECTLY OKAY FOR THE PLAINTIFFS

3   AND THE DEFENDANTS IN THE CLASS ACTION TO COME TO A

4   MUTUALLY-AGREED SETTLEMENT AND TO WORK TOGETHER IN ORDER TO

5   EFFECT THAT SETTLEMENT.  THE PRIMARY PART OF THE SETTLEMENT

6   BEING THE REMEDIATION EFFORT.

7           THE REMEDIATION EFFORT IS COMPLEX, RETURNING THE

8   MONEY WAS NOT.

9           THE COURT:  SO WHEN JONES FILED A LAWSUIT AGAINST

10  THE CITY, IT'S NOT REALLY AN ADVERSE ACTION.  THEY ARE ON

11  THE SAME SIDE, AND THEY HAVE NO CONFLICTING.  SO WHEN THEY

12  GO INTO MEDIATION, THEY ARE NOT CONFLICTING PARTIES.  THEY

13  ARE JUST GOING IN AS PARTIES THAT REPRESENT EACH OTHER AND

14  HAVE COMMON INTEREST AND EVERYTHING IS HUNKY DORY.

15          MR. KEHR:  I THINK THAT IS SUBSTANTIALLY CORRECT.

16          THE COURT:  AND WHAT DO WE DO ABOUT ALL THE ABSENT

17  CLASS MEMBERS?

18          MR. KEHR:  YOU GIVE NOTICE TO THEM AFTER YOU HAVE

19  WORKED OUT A SETTLEMENT WITH THE ASSISTANCE OF THE RETIRED

20  JUDGE WHO WAS INVOLVED.

21          THE SETTLEMENT NOTICE WENT OUT, AND MY

22  UNDERSTANDING IS THERE WERE SEVEN OBJECTIONS OUT OF

23  SOMETHING OVER A MILLION CLASS MEMBERS.

24          THE COURT:  AND TELL ME ABOUT THE CONCEPT OF

25  FIDUCIARY RELATIONSHIP BETWEEN CLASS COUNSEL AND CLASS AND

26  MR. JONES IN THE CLASS.

27          MR. KEHR:  WELL THERE ARE THREE FIDUCIARY DUTIES

28  THAT EXIST BETWEEN LAWYER AND CLIENT.  THERE IS THE DUTY OF

1    UNDIVIDED LOYALTY.

2         THE COURT:  AND UNDIVIDED LOYALTY INCLUDES

3    REPRESENTING THE ADVERSE PARTY AT THE SAME TIME?

4         MR. KEHR:  I'M SORRY.

5         THE COURT:  DOES UNDIVIDED LOYALTY INCLUDE

6    REPRESENTING THE OPPOSING PARTY AT THE SAME TIME?

7         MR. KEHR:  NO, IT DOESN'T.

8         AND THAT IS WHY THE QUESTION OF WHEN THE

9    LAWYER-CLIENT RELATIONSHIP BETWEEN MR. PARADIS AND

10   MR. JONES IS SIGNIFICANT; IT'S WHY I STARTED WITH THAT.

11        DURING THE NEGOTIATION OF THE SETTLEMENT, AND THE

12   MEDIATION PROCESS THAT TOOK PLACE, I THINK THERE IS A

13   SUBSTANTIAL BASIS FOR CONCLUDING THERE WAS NO RELIANCE BY

14   MR. JONES IN HIS REPRESENTATIVE CAPACITY ON BEHALF OF THE

15   ABSENT CLASS MEMBERS ON MR. PARADIS OR MR. KIESEL TO

16   PROVIDE ANY ADVICE WITH REGARD TO THE SETTLEMENT.

17        MR. LANDSKRONER HAD THAT RESPONSIBILITY AND

18   MR. PARADIS AND MR. KIESEL DID NOT.  THEY DID NOT

19   COMMUNICATE WITH ANYONE ON BEHALF OF THE CLASS WITH REGARD

20   TO THE SETTLEMENT.  THEY COMMUNICATED WITH THE CITY.

21        SO WORKING OUT THE SETTLEMENT WAS NOT SIMPLE.  NOT

22   BECAUSE OF THE REFUND OF THE UNEARNED OVERCHARGES.  THE

23   CITY ACKNOWLEDGED, AS I UNDERSTAND IT, BOTH FRANKLY AND

24   PUBLICLY, THEY COLLECTED MONEY THEY WEREN'T ENTITLED TO.

25        THE MORE IMPORTANT QUESTION WAS HOW TO ESTABLISH A

26   REMEDIATION PROCESS BECAUSE THE MUCH BIGGER NUMBER WAS THE

27   UNDERBILLING THAT WAS CAUSED, AS THE CITY VIEWS IT, BY THE

28   FAILURES OF THE PWC SYSTEM THAT WAS COMPLICATED AND THAT

1    TOOK CONSIDERABLE AMOUNT OF EFFORT TO WORK OUT.

2           IT WAS WORKED OUT.  THERE IS A SYSTEM IN PLACE.

3    AND PWC'S INTEREST IN THAT SYSTEM IS BECAUSE IT'S TO BE

4    HELD RESPONSIBLE FOR DAMAGES THAT INCLUDE THE UNDERBILLING

5    AND THE REMEDIATION PROCESS IF THEY WERE UNABLE TO SUSTAIN

6    THEIR DEFENSE ON THE SUBSTANCE OF THE CLAIMS AGAINST THEM.

7           THE ATTACK ON THE SETTLEMENT IS OF POTENTIAL

8    INTEREST TO THE PARTICIPANTS IN THE SETTLEMENT.  IT'S NOT

9    OF INTEREST TO PWC.  PWC HAS EVERY RIGHT IN THE DEFENSE OF

10   THE CLAIMS THAT THE CITY NOW IS MAKING AGAINST IT TO LOOK

11   FOR FLAWS IN THE DAMAGE CALCULATIONS.  FINE, LET THEM DO

12   THAT AS PART OF THE PWC LAWSUIT.

13          I THINK THAT COVERS THE IMPORTANT THINGS.  I JUST

14   WANT TO --

15          THE COURT:  I NOTICE THAT YOU FOCUSED YOUR CONCERN

16   WAS IN TERMS OF THE ATTORNEY-CLIENT RELATIONSHIP AS FAR AS

17   MR. LANDSKRONER AND MR. JONES.  BUT I DIDN'T HEAR MUCH

18   ABOUT THE ATTORNEY-CLIENT RELATIONSHIP BETWEEN MR. PARADIS,

19   MR. KIESEL, AND THE CITY OF LOS ANGELES IN TERMS OF THEIR

20   COMMUNICATIONS WITH THE CITY THAT AT THE SAME TIME BEING

21   DISCLOSED TO COUNSEL TO MR. JONES.

22          MR. KEHR:  I DON'T HAVE ANY COMMENT ON THAT, YOUR

23   HONOR.

24          THE COURT:  I JUST WANTED TO MAKE SURE I DIDN'T

25   MISS ANYTHING.  THANK YOU.

26          MR. KEHR:  MY UNDERSTANDING IS THE RELATIONSHIP

27   BETWEEN MR. PARADIS AND MR. KIESEL AND THE CITY BEGAN IN

28   JANUARY OF THE FOLLOWING YEAR NOT EARLIER AS PWC HAS

 1   ASSERTED.

 2           THE COURT:  IN THE BEGINNING 2014?

 3           MR. KEHR:  I'M SORRY.

 4           THE COURT:  THE RELATIONSHIP DIDN'T BEGIN IN 2014?

 5           MR. KEHR:  I THINK IT'S 2015.

 6           THE COURT:  DECEMBER, 2014.

 7           MR. KEHR:  NO MY UNDERSTANDING IS --

 8           MR. PETERS:  YOUR HONOR, THE INCEPTION OF THE

 9   RELATIONSHIP I WILL TELL YOU, TOM PETERS ON BEHALF OF THE

10   CITY, WAS ON OR ABOUT DECEMBER 18, 2014.

11           THE COURT:  THANK YOU.

12           MR. KEHR:  I APOLOGIZE.  I GOT TWO DATES REVERSED

13   THERE THAT IS GOOD.

14           LET ME JUST TAKE A QUICK LOOK AT MY NOTES AND SEE

15   IF THERE IS ANYTHING ELSE.  I THINK I HAVE COVERED THAT.  I

16   DON'T BELIEVE I HAVE ANYTHING ELSE, YOUR HONOR.

17           THE COURT:  THANK YOU.

18           ANYONE ELSE WISH TO BE HEARD?  MR. PARADIS,

19   MR. LANDSKRONER, COUNSEL FOR EITHER ONE OF THEM?

20   MR. JONES, COUNSEL FOR MR. JONES, ANYONE ELSE WISH TO BE

21   HEARD?

22           MS. ANNAGUEY:  YOUR HONOR, MARIBETH ANNAGUEY.  I

23   REPRESENT LADWP IN THE JONES CASE AND MACIAS AND MORSKI.

24   JUST WANTED TO MAKE A QUICK CORRECTION.

25           WE ARE JUST NOW REVIEWING THESE BRIEFS AND HEARD

26   MR. THOMASCH'S PRESENTATION AND HEARD THE ALLEGATION THAT

27   THE LINER FIRM AND I HAD RECEIVED THE JONES V. PWC

28   COMPLAINT IN 2015 AND HAD BEEN PART OF THOSE DISCUSSIONS.

```
 1    I UNDERSTAND THERE MAY HAVE BEEN TESTIMONY TO THAT EFFECT
 2    THAT TESTIMONY WILL BE CORRECTED.
 3          WE WERE NOT AWARE OF THE JONES V. PWC COMPLAINT AT
 4    THAT TIME, TO THIS DATE HAVE NOT SEEN IT, AND WERE NOT
 5    AWARE OF A RELATIONSHIP BETWEEN MR. LANDSKRONER AND
 6    MR. PARADIS AND MR. JONES.
 7          THE COURT:  I'LL GIVE YOU AN OPPORTUNITY TO HAVE
 8    MORE FILING DOCUMENTS ARGUMENT IN THE FUTURE SO DON'T WORRY
 9    ABOUT THAT.
10          MS. ANNAGUEY:  THANK YOU, YOUR HONOR.
11          THE COURT:  COUNSEL.
12          MR. ISAACS:  JEFFREY ISAACS ON BEHALF OF MR. JONES.
13          AS COUNSEL FOR MR. JONES JUST IN THE CITY VERSUS
14    PWC CASE, WE WERE RETAINED IN ABOUT MID-JANUARY AFTER
15    MR. JONES HAD, IN JANUARY OF THIS YEAR, AFTER MR. JONES HAD
16    BEEN SERVED WITH A SUBPOENA FOR DEPOSITION AND TO PRODUCE
17    DOCUMENTS.
18          WE'VE BEEN RETAINED IN THAT CASE TO REPRESENT
19    MR. JONES AS A NON PARTY.  WE DO NOT REPRESENT HIM IN THE
20    JONES VERSUS LADWP CASE.  IN THAT CASE HE IS STILL
21    REPRESENTED, AS FAR AS I CAN TELL, BY MR. LANDSKRONER,
22    MR. LIBMAN, THEIR FIRMS, AND POSSIBLY MR. PARADIS AND
23    MR. KIESEL.
24          I'D JUST LIKE TO ADDRESS A FEW POINTS AND WE DID
25    SUBMIT A BRIEF, 33-PAGE BRIEF, IN RESPONSE TO YOUR HONOR'S
26    ORDER.  AND IN PARTICULAR WHAT WE TRIED TO DO IN THAT
27    BRIEF, YOUR HONOR, AS WELL AS THE LETTER THAT WE SENT TO
28    MR. THOMASCH PRIOR TO MR. JONES'S DEPOSITION, WHICH WE
```

1  COPIED OTHER COUNSEL ON, IS TO TRY TO LAY OUT A CHRONOLOGY

2  ON WHAT WE BELIEVE HAPPENED HERE BASED UPON THE INFORMATION

3  WE GATHERED FROM OUR CLIENT, MR. JONES, AS WELL AS COURT

4  RECORDS AND OUR OWN INVESTIGATION REGARDING THE

5  REPRESENTATION AND WHO WAS REPRESENTING MR. JONES DURING

6  WHAT PERIOD OF TIME.

7         AND IN PARTICULAR MR. THOMASCH REFERENCED THERE WAS

8  A MAY, 2017, DECLARATION THAT MR. JONES EXECUTED AND HAD

9  BEEN PREPARED BY MR. LANDSKRONER'S FIRM AND IT ONLY MADE

10  REFERENCE TO COUNSEL JUST IN GENERIC TERMS WITHOUT

11  IDENTIFYING WHO THE COUNSEL WAS AT VARIOUS POINTS IN TIME.

12  SO WE TRIED TO FILL THAT IN AND CLARIFY FOR THE COURT AND

13  THE OTHER PARTIES WHO WE UNDERSTOOD WAS REPRESENTING

14  MR. JONES AND WHO MR. JONES UNDERSTOOD WAS REPRESENTING HIM

15  AT DIFFERENT TIMES.

16         FIRST TO ADDRESS MR. KEHR'S ASSERTIONS, AND WITH

17  THE RECOGNITION THAT I BELIEVE MR. KEHR JUST CAME INTO THE

18  CASE IN THE LAST FEW DAYS FOR MR. KIESEL.

19         AS TO MR. KEHR RAISED THE ISSUE OF CONTINUATION OF

20  MR. PARADIS'S REPRESENTATION OF MR. JONES.

21         I CAN TELL YOU FROM MR. JONES'S PERSPECTIVE,

22  MR. PARADIS'S REPRESENTATION DID NOT END PRIOR TO THE

23  FILING OF THE JONES VERSUS LADWP COMPLAINT ON APRIL 1,

24  2015.  HE CONTINUED TO COMMUNICATE WITH MR. PARADIS AND

25  THERE ARE WRITTEN COMMUNICATIONS THROUGH AT LEAST APRIL 10

26  OF 2015.

27         NOW MR. KEHR SAID THAT HAD TO DO WITH MR. JONES'S

28  POWER BEING TURNED OFF THAT IS TRUE, BUT MR. JONES VIEWED

1     IT AS PART OF HIS ONGOING DISPUTE WITH LADWP THAT BEGAN

2     BACK IN THE SUMMER OF 2014.

3          AND WHAT PROMPTED HIM TO MAKE A COMPLAINT ON A

4     WEBSITE THAT HE THOUGHT WAS AN FTC WEB SITE AND ASKED TO BE

5     CONTACTED BY A LAWYER AND THAT RESULTED IN HIM BEING

6     CONTACTED BY MR. PARADIS IN EARLY DECEMBER OF 2014.

7          WHAT HAPPENED WAS THE JONES VERSUS LADWP COMPLAINT

8     IS FILED ON APRIL 1, 2015, MR. JONES'S POWER IS THEN TURNED

9     OFF.  HIS ELECTRICAL POWER IS THEN TURNED OFF SHORTLY

10    THEREAFTER WITHOUT NOTICE AND WITHOUT ANY APPARENT CAUSE

11    BECAUSE MR. JONES IS ON A PAYMENT PLAN AT THAT POINT IN

12    TIME TO REPAY LADWP THEIR OVERCHARGE BILL OF $1374.

13          THE COURT:  INCIDENTALLY, DID MR. JONES RECEIVE ANY

14    PAYMENTS FROM MR. LANDSKRONER OR MR. PARADIS?

15          MR. ISAACS:  HE ONLY RECEIVED THE PAYMENT THAT YOUR

16    HONOR AWARDED THE $5,000.

17          THE COURT:  ASIDE FROM THE CLASS ACTION JUDGMENT

18    PAYMENT, ANY OTHER PAYMENTS FROM MR. LANDSKRONER OR

19    MR. PARADIS?

20          MR. ISAACS:  NOT THAT I'M AWARE OF, YOUR HONOR.

21          THE COURT:  THANK YOU.

22          MR. ISAACS:  IN ANY EVENT, POWER IS TURNED OFF AND

23    AT THAT POINT IN TIME MR. JONES CONTACTS MR. PARADIS AND

24    MR. LANDSKRONER AND THE LAST WRITTEN COMMUNICATION WE

25    BELIEVE IS ON APRIL 10.

26          AS WAS REPRESENTED HERE, THERE WAS NO WRITTEN

27    COMMUNICATION INDICATING THAT MR. PARADIS'S REPRESENTATION

28    HAD TERMINATED.

1          AND IN FACT AS WE SET FORTH IN OUR BRIEF, BASED

2    UPON AGAIN OUR INVESTIGATION AND REVIEW, IT APPEARS THERE

3    WASN'T ANY -- THAT MR. LANDSKRONER DID NOT SEND MR. JONES A

4    RETAINER AGREEMENT UNTIL AUGUST OF 2015.  SO THAT IS THE

5    FACTS AS BEST WE CAN DETERMINE.

6          MR. KEHR SAID THERE WAS NO INJURY TO THE CLIENT 'WE

7    WOULD DISPUTE THAT.  MR. JONES AT THE TIME WAS IN HIS

8    MID-20S.  HE WAS RECRUITED AS THE CLASS PLAINTIFF.  HE TOOK

9    HIS RESPONSIBILITIES VERY SERIOUSLY.  HE WAS VERY

10   CONSCIENTIOUS IN FOLLOWING UP AND THAT IS WHY HE'S HERE

11   TODAY AS WELL AS HIS FATHER BECAUSE OF THIS SITUATION.  AND

12   CERTAINLY HE IS LEFT VERY CONCERNED ABOUT WHAT HE'S NOW

13   HEARING ABOUT.

14         AS FAR AS THE ADVERSITY GOES, AGAIN ALL WE CAN

15   OFFER IS WHAT WE'VE LEARNED AND WHAT MR. JONES TESTIFIED

16   TO, BUT HIS BEEF, HIS DISPUTE, WAS FROM DAY ONE WITH LADWP

17   AND IT WAS ONLY THROUGH COMMUNICATIONS WITH MR. PARADIS

18   THAT PWC WAS INTRODUCED INTO THE PICTURE, BUT IT WAS ALWAYS

19   MR. JONES'S INTENT, AS HE TESTIFIED, TO BRING AN ACTION AND

20   SEEK REDRESS FROM THE CITY AND LADWP.

21         GOING BACK TO THE POINTS RAISED BY MR. THOMASCH

22   WITH RESPECT TO MR. JONES, THAT WAS NOT PART OF YOUR

23   HONOR'S ORDER FOR BRIEFING.  THESE WERE OBJECTIONS THAT

24   WERE MADE DURING MR. JONES'S DEPOSITION, AND WE HAVE MET

25   AND CONFERRED, TRIED TO MEET AND CONFER, WITH MR. THOMASCH,

26   MR. SANTIAGO REGARDING THESE ISSUES.

27         AND I THINK IF MR. THOMASCH WANTS TO PURSUE THEM,

28   AND I AGREE WITH HIM THEY ARE FAIRLY TRIVIAL.  WE HAVE

Exhibit 21
Page 1015

```
1    TRIED TO LAY OUT A FULL AND COMPLETE RECORD AS BEST WE CAN
2    WITHOUT VIOLATING THE ATTORNEY-CLIENT PRIVILEGE OR THE
3    ATTORNEY WORK-PRODUCT DOCTRINE WHICH MR. JONES HAS BEEN
4    INSTRUCTED TO ASSERT ON BEHALF OF MR. LANDSKRONER,
5    MS. TUFARO, MR. PARADIS, AND MR. KIESEL.
6          WE HAVE TRIED TO LAY THAT OUT, AND I THINK WE
7    PROVIDED ALL THE INFORMATION THAT IS NECESSARY.  IN ANY
8    EVENT, I WOULD ASK IF THOSE ARE ISSUES THAT MR. THOMASCH
9    WANTS TO FOLLOW-UP WITH, THEN I THINK THEY WOULD BE
10   PROPERLY THE SUBJECT OF A MOTION SO WE CAN RESPOND.
11         BUT IF NECESSARY, I CERTAINLY CAN RESPOND HERE
12   TODAY AND THAT IS SIMPLY THAT UNDER BUSINESS AND
13   PROFESSIONS CODE SECTIONS 6149 AND CALIFORNIA CASE LAW, THE
14   RELATIONSHIP BETWEEN MR. JONES AND OUR FIRM IS PROTECTED
15   BY, AND IN FACT, THE CALIFORNIA SUPREME COURT HAS SAID IT'S
16   THE HEARTLAND OF THE ATTORNEY-CLIENT PRIVILEGE, AND I DON'T
17   BELIEVE THERE HAS BEEN ANY BASIS TO PIERCE THAT.
18         AND AS TO THE ISSUE OF --
19         THE COURT:  LET ME JUST ADDRESS THAT ISSUE FIRST.
20         AS FAR AS ANY QUESTIONS, DEPOSITION OF MR. JONES,
21   THE COURT IS GOING TO ORDER COUNSEL FOR PWC AND JONES TO
22   MEET AND CONFER, SEE IF YOU CAN RESOLVE THOSE ISSUES.
23         AND IT MAY TAKE SOME FURTHER DISCOVERY BEFORE WE
24   GET TO THE RESOLUTION OF THOSE ISSUES, BUT I'D ASK COUNSEL
25   SEE WHAT YOU CAN DO ABOUT THAT, BUT I'M NOT GOING TO
26   ADDRESS THEM YET.  I THINK WE MAY NEED SOME FURTHER
27   DISCOVERY BEFORE WE COME BACK TO THOSE ISSUES.
28         MR. THOMASCH:  YOUR HONOR, MIGHT I ASK ONE
```

1    QUESTION.  WE JUST HEARD COUNSEL SAY THAT ON THE ATTORNEY

2    WORK PRODUCT HE HAS BEEN INSTRUCTED BY MR. LANDSKRONER,

3    MR. PARADIS, AND MR. KIESEL TO ASSERT A WORK-PRODUCT

4    PRIVILEGE.  I DON'T KNOW WHAT THAT IS OVER, AND MY

5    UNDERSTANDING FROM A LETTER FROM MS. TUFARO WAS THEY WERE

6    NOT REQUESTING THAT.

7         AND CERTAINLY TO THE EXTENT THIS RELATES TO THE

8    DRAFT COMPLAINT, MR. LANDSKRONER IS IN NO POSITION TO

9    ASSERT A WORK-PRODUCT PRIVILEGE TO A DOCUMENT GIVEN TO

10   MR. JONES IN JANUARY OF 2015 WHEN MR. LANDSKRONER WASN'T

11   EVEN INTRODUCED TO MR. JONES UNTIL MARCH 26, 2015.

12        I'M HAPPY TO BRIEF ANYTHING, YOUR HONOR, BUT I

13   DON'T KNOW WHETHER OR NOT IF SOMEONE IS SORT OF BEHIND THE

14   SCENES AND SAYING ASSERT THE WORK PRODUCT FOR ME, I THINK

15   SINCE EVERYONE WHO HAS EVER HAD ANYTHING TO DO WITH THIS

16   CASE SEEMS TO BE HERE TODAY, OTHER THAN MR. KIESEL, MAYBE

17   WE COULD FIND OUT IF ANYONE IS TRYING TO ASSERT

18   WORK-PRODUCT PRIVILEGE OVER THE DRAFT COMPLAINT IN

19   MR. JONES'S FILES.

20        THE COURT:  WE'LL GET BACK TO THAT, MAYBE NOT

21   TODAY, BUT I THINK THAT ISSUE WILL BE RESOLVED SOON.  I'LL

22   LET COUNSEL COMPLETE YOUR THOUGHTS.

23        MR. ISAACS:  THANK YOU, YOUR HONOR.

24        JUST ON THAT POINT, MR. THOMASCH IS CORRECT.  THERE

25   WAS A LETTER FROM MS. TUFARO WHICH CREATED SOME UNCERTAINTY

26   AS TO WHETHER MR. PARADIS AND MR. KIESEL AND THEIR FIRMS

27   WERE ASSERTING THE WORK-PRODUCT PROTECTIONS AND WHETHER WE

28   WERE BEING INSTRUCTED TO DO SO ON THEIR BEHALF.

1          I CONFIRMED WITH MR. LANDSKRONER'S COUNSEL,

2    MR. DROOKS WHO IS PRESENT, THAT MR. LANDSKRONER WAS

3    INSTRUCTING US TO ASSERT THE WORK-PRODUCT DOCTRINE AND

4    THEN --

5          THE COURT:  WAS THERE ANY SUGGESTION

6    MR. LANDSKRONER HAD ANYTHING TO DO WITH DRAFTING THAT

7    COMPLAINT?

8          MR. ISAACS:  THE JONES VERSUS PWC?

9          THE COURT:  YES.

10         MR. ISAACS:  NOT AS FAR AS WE KNOW THAT WOULD HAVE

11   PREDATED MR. LANDSKRONER'S --

12         THE COURT:  THAT'S RIGHT.  HE JUST PASSED IT ON OR

13   ACTUALLY IT CAME DIRECTLY FROM MR. PARADIS TO MR. JONES.

14         MR. ISAACS:  IT WAS SENT BY MR. PARADIS TO

15   MR. JONES WITH A COVER EMAIL THAT WAS MARKED "PRIVILEGE AND

16   CONFIDENTIAL ATTORNEY-CLIENT PRIVILEGE."

17         THE COURT:  WHILE MR. PARADIS WAS REPRESENTING THE

18   CITY.

19         MR. ISAACS:  YES, IT WOULD CERTAINLY APPEAR TO BE

20   THE CASE, YOUR HONOR.  AND I'M JUST SAYING WHAT WE'VE BEEN

21   INSTRUCTED TO DO, JUST SO THE RECORD IS CLEAR, AND NOT

22   NECESSARILY AND TO USE YOUR HONOR'S WORDS BEYOND THAT

23   COMPLAINT" NOT LIMITED TO THE COMPLAINT WE HAVE BEEN

24   INSTRUCTED BY MR. LANDSKRONER THROUGH HIS COUNSEL TO ASSERT

25   ATTORNEY WORK-PRODUCT DOCTRINE.

26         WE HAVE ALSO BEEN, AND I CLARIFIED WITH MR. PARADIS

27   AND MS. TUFARO THIS MORNING THAT THEY ARE INSTRUCTING

28   MR. JONES TO CONTINUE TO ASSERT THE WORK-PRODUCT DOCTRINE

1    ON THEIR BEHALVES AND ON BEHALF OF MR. KIESEL.

2           NOW TO BE HONEST WITH YOU, APART FROM THAT, I DON'T

3    KNOW IF THERE ARE ANY DOCUMENTS THAT COMMUNICATIONS BETWEEN

4    MR. PARADIS AND MS. TUFARO AND MR. LANDSKRONER AND

5    MR. JONES THAT WOULD BE NOT COVERED BY THE ATTORNEY-CLIENT

6    PRIVILEGE, AND JUST SUBJECT TO THE WORK-PRODUCT DOCTRINE.

7           ONCE THE WORK-PRODUCT DOCTRINE ISSUE IS RESOLVED,

8    WE HAVE VOLUNTEERED TO GO BACK AND REVIEW ALL RESPONSIVE

9    DOCUMENTS TO MR. THOMASCH'S DEPOSITION SUBPOENA TO SEE IF

10   THAT IS THE CASE.

11          ONE THING I SHOULD ALSO MENTION IS MR. THOMASCH'S

12   SUBPOENA ONLY GOES UP TO APRIL 1, 2015, WHICH IS THE DATE

13   OF THE FILING OF THE JONES VERSUS LADWP COMPLAINT.  SO THAT

14   IS WHAT WE WERE LOOKING AT AND THAT IS WHAT WE ASSERTED

15   ATTORNEY-CLIENT AND WORK PRODUCT WITH RESPECT TO.

16          THE COURT:  ALL RIGHT, THANK YOU.

17          ANYTHING ELSE WISH TO ADDRESS, ANYTHING?

18          MR. KONCIUS:  TO THE EXTENT YOU WANT TO HEAR

19   MR. KIESEL, HE WILL BE HERE IN ABOUT 20 MINUTES.

20          THE COURT:  I'M SORRY.

21          MR. KONCIUS:  TO THE EXTENT YOU WOULD LIKE

22   MR. KIESEL TO BE HERE, HE WILL BE HERE IN 20 MINUTES.

23          THE COURT:  IF HE DOESN'T WANT TO BE HERE NOW.

24          MR. KONCIUS:  NO, YOUR HONOR, HE ADVISED THE COURT

25   AS SOON AS YOUR HONOR ISSUED THE RULING HE WAS GOING TO BE

26   OUT OF THE COUNTRY.  HE ASKED TO APPEAR BY TELEPHONE AND

27   THAT WAS DENIED.  HE ASKED THE COURT TO MOVE BACK THE TIME

28   AND THAT WAS DENIED.  SO RESPECTFULLY, YOUR HONOR.

1          THE COURT:  THANK YOU.

2          MR. DROOKS:  THANK YOU, YOUR HONOR.

3          JUST A FEW POINTS ON THE PRIVILEGE ISSUE.

4    MR. LANDSKRONER HAS NEVER SUGGESTED HE HAD ANY WORK-PRODUCT

5    PROTECTION OVER ANY OF THE JONES VERSUS PWC MATERIALS THAT

6    PREDATED HIS ENTRY INTO THE CASE.

7          I THINK MR. ISAACS WAS SIMPLY SAYING HE HAD BEEN

8    ADVISED TO ASSERT MR. LANDSKRONER'S WORK-PRODUCT PROTECTION

9    WHEREVER APPLICABLE.  WE MAKE NO CLAIM THAT IT'S APPLICABLE

10   TO THOSE DOCUMENTS.

11         THE COURT:  THANK YOU.

12         MR. DROOKS:  YOUR HONOR, MR. THOMASCH'S

13   PRESENTATION OBVIOUSLY LARGELY FOCUSED ON PRIVILEGE ISSUES

14   FOR THE CITY, AND I HAVE NO INTENTION OF ADDRESSING THOSE.

15   HE TOUCHED ON A FEW ISSUES WITH RESPECT TO MR. LANDSKRONER.

16         FIRST OF ALL, YOUR HONOR IS AWARE OF THE BRIEF WE

17   FILED ON FEBRUARY 20, CONCERNING THE JURISDICTIONAL ISSUES.

18         THE COURT:  YES.

19         MR. DROOKS:  I'M PREPARED TO ADDRESS THESE ISSUES

20   WITHOUT WAIVER OF OUR JURISDICTIONAL OBJECTIONS.

21         THE COURT:  YOU CAN DISCUSS ANY ISSUES YOU WANT

22   RIGHT NOW.

23         MR. DROOKS:  YOUR HONOR, MR. THOMASCH SUGGESTED

24   THAT COMMUNICATIONS BETWEEN MR. JONES, MR. PARADIS, AND

25   MR. LANDSKRONER, INDEED EVEN BETWEEN MR. PARADIS AND

26   MR. LANDSKRONER, DURING THE PERIOD FROM ROUGHLY MARCH 26

27   WHEN HE WAS INTRODUCED TO MR. JONES THROUGH APRIL 1 THE

28   FILING OF THE COMPLAINT MIGHT NOT BE PRIVILEGED.

1        YOUR HONOR, THERE ARE TWO SCENARIOS THERE.  ONE IS

2   MR. PARADIS'S REPRESENTATION OF MR. JONES ENDED ON OR ABOUT

3   APRIL 1 AS MR. PARADIS CONTENDS.  AND IF SO, THEN THAT

4   PERIOD WAS OBVIOUSLY A PERIOD OF TRANSITION BETWEEN

5   MR. PARADIS AND MR. LANDSKRONER IN CONNECTION WITH

6   TRANSFERRING THE FILE, AND THEY WOULD BE PRESUMPTIVELY

7   PRIVILEGED AND WORK PRODUCT.

8        AS FAR AS I KNOW, THE ONLY COMMUNICATIONS AFTER

9   THAT DATE, AND THERE IS NO SUBPOENA OUTSTANDING FOR ANY

10  MATERIALS AFTER THAT DATE, ARE THESE EMAILS CONCERNING THE

11  POWER BEING CUT OFF.

12       YOUR HONOR, I CANDIDLY CONSIDER THAT A BLURRY AREA.

13  IF ONE ACCEPTS MR. PARADIS'S POSITION THAT THE AGREEMENT

14  TERMINATED OR THE REPRESENTATION TERMINATED ON OR ABOUT

15  APRIL 1, BUT MR. JONES WAS UNDER MISIMPRESSION THEN PERHAPS

16  THOSE ARE PRIVILEGED, PERHAPS THEY ARE NOT.  BUT THE FACT

17  IS, I DON'T THINK THEY ARE VERY IMPORTANT TO ANYONE IF THEY

18  DEAL WITH HAVING THE POWER CUT OFF, AND WE ARE NOT AWARE OF

19  ANY COMMUNICATIONS AFTER THAT DATE.

20       ALTERNATIVELY, YOUR HONOR, IF THE REPRESENTATION

21  CONTINUED, THAT DOESN'T REALLY CHANGE THE EIGHT DAYS OF

22  COMMUNICATIONS AT ISSUE HERE, ROUGHLY SEVEN OR EIGHT DAYS,

23  DURING THIS TRANSITION PERIOD.

24       MR. THOMASCH HAS ARGUED FOR SOME TYPE OF IMPLIED

25  WAIVER.  LET'S KEEP IN MIND THESE PRIVILEGES BELONG TO

26  MR. JONES AND EVERYBODY UNDERSTANDS THAT MR. JONES WAS NOT

27  AWARE OF WHAT WAS GOING ON HERE.  AND HE COULD NOT POSSIBLY

28  HAVE KNOWINGLY AND INTENTIONALLY WAIVED HIS ATTORNEY-CLIENT

```
1    PRIVILEGE.
2            THE COURT:  LET ME ASK YOU THIS, AS FAR AS I
3    UNDERSTAND, YOU'RE ADVISING THE COURT THAT MR. LANDSKRONER
4    REPRESENTED MR. JONES AND MR. JONES ONLY?
5            MR. DROOKS:  THAT'S RIGHT.
6            THE COURT:  NEVER REPRESENTED THE CITY?
7            MR. DROOKS:  THAT'S RIGHT.
8            THE COURT:  DO YOU ASSERT THERE IS ANY PRIVILEGE
9    BETWEEN ANY COMMUNICATIONS BETWEEN MR. PARADIS AND
10   MR. LANDSKRONER?
11           MR. DROOKS:  YES.
12           THE COURT:  WHAT PRIVILEGE IS THAT?
13           MR. DROOKS:  IT WOULD BE BETWEEN THE PERIOD
14   MARCH 26 THROUGH APRIL 1ST WHEN MR. PARADIS WAS IN AN
15   ATTORNEY-CLIENT RELATIONSHIP WITH MR. JONES.
16           THE COURT:  DO YOU ACKNOWLEDGE THAT MR. PARADIS WAS
17   REPRESENTING THE CITY AT THAT TIME?
18           MR. DROOKS:  YES.
19           THE COURT:  AND HE WAS REPRESENTING AN ADVERSE
20   PARTY?
21           MR. DROOKS:  YES.  BUT, YOUR HONOR, I'M NOT
22   CONCERNED WITH WHAT HE WAS DOING OUTSIDE OF MR. JONES'S
23   KNOWLEDGE WITH RESPECT TO THE CITY.  I DON'T SEE HOW WHAT
24   HE WAS DOING WITHOUT MR. JONES'S KNOWLEDGE WITH THE CITY
25   COULD VITIATE MR. JONES'S PRIVILEGE.
26           THE COURT:  OR DID HE TELL MR. LANDSKRONER WHICH
27   HAT HE WAS WEARING WHEN HE WAS TALKING TO HIM?
28           MR. DROOKS:  YOUR HONOR --
```

1           THE COURT:  HE'S COMMUNICATING WITH ADVERSE PARTY,

2    RIGHT?

3           MR. DROOKS:  YOUR HONOR, I DON'T KNOW THAT THEY

4    WERE ADVERSE UNTIL THE COMPLAINT WAS FILED, BUT THEY WERE

5    CERTAINLY IN A POSITION OF ADVERSITY.

6           THE COURT:  YES.

7           MR. DROOKS:  AND THAT IS OBVIOUSLY WHAT OCCASIONED

8    THE TRANSFER OF THE CASE TO MR. LANDSKRONER.  AND IF

9    MR. PARADIS WAS TRANSFERRING THE FILE DURING THAT PERIOD,

10   THERE IS NOTHING TO SUGGEST THAT THAT CONSTITUTES A WAIVER.

11          LAWYERS END UP IN CONFLICT POSITIONS AND HAVE TO

12   TRANSFER FILES ALL THE TIME.  AND THEY DO IT WITHOUT

13   UNDERMINING EITHER THE ATTORNEY-CLIENT PRIVILEGE OR THE

14   WORK-PRODUCT PROTECTION FOR THE CLIENT THAT THEY WERE

15   TRANSITIONING OUT OF REPRESENTING.

16          SO OUR POSITION REMAINS THAT THOSE COMMUNICATIONS

17   REMAIN EITHER DEPENDING ON THEIR CONTENT EITHER PRIVILEGED

18   AND/OR WORK PRODUCT, AND THERE HAS BEEN NO WAIVER BY

19   MR. JONES.

20          THERE IS NO TESTIMONY HERE THAT MR. LANDSKRONER WAS

21   AWARE OF THE PRIOR COMPLAINTS DRAFTED ON BEHALF OF

22   MR. JONES AGAINST PWC.  NO TESTIMONY HE WAS AWARE OF

23   ANYTHING OTHER THAN MR. PARADIS'S THEN CURRENT CONFLICT IN

24   MARCH OF 2015 WHICH OCCASIONED HIS BEING BROUGHT IN AND

25   INTRODUCED TO MR. JONES.  AND THERE IS NO EVIDENCE THAT

26   MR. JONES HAD ANY KNOWLEDGE OF THAT.

27          OTHER THAN THAT, YOUR HONOR, IN TERMS OF THE

28   CIRCUMSTANCES OF RETENTION, YOUR HONOR, I WOULD SAY THAT

```
1    THERE MAY WELL BE PRIVILEGED DOCUMENTS HERE THAT BEAR ON

2    ISSUES LIKE WHETHER OR NOT MR. PARADIS DISCUSSED SETTLEMENT

3    WITH MR. JONES PRIOR TO APRIL 1, 2015, WHETHER OR NOT HE

4    DISCUSSED MR. PARADIS'S CONTINUING ROLE OR LACK THEREOF IN

5    THE CASE, BUT ALL OF THOSE REMAIN PRIVILEGED, YOUR HONOR.

6         AND MR. THOMASCH'S USE OF A EUPHEMISM LIKE THE

7    CIRCUMSTANCES OF RETENTION DO NOT MITIGATE OR ELIMINATE THE

8    FACT WHEN A LAWYER IS TALKING TO A CLIENT ABOUT WHETHER TO

9    INITIATE EARLY SETTLEMENT DISCUSSIONS OR NOT THOSE

10   DISCUSSIONS ARE PRIVILEGED.

11        AND LASTLY IN TERMS OF THE PREFILING INVESTIGATION,

12   YOUR HONOR THERE IS CERTAINLY, DEPENDING UPON WHAT THE

13   QUESTIONS ARE AND WHAT THE DOCUMENTS ARE, THERE IS

14   CERTAINLY THE POTENTIAL FOR WORK-PRODUCT PROTECTION ON

15   BEHALF OF CLASS COUNSEL WHO IS INVESTIGATING A CASE EVEN

16   BEFORE WE MAY HAVE IDENTIFIED THE CLASS REPRESENTATIVE WHOM

17   HE DEEMS APPROPRIATE TO FILE THE CASE ON BEHALF OF.

18        THE COURT:  ALL RIGHT, THANK YOU.

19        ANYTHING ELSE?

20        MR. PETERS:  JUST A COUPLE OF POINTS.

21        THE CITY IS UNAWARE OF ANY FEE BEING PAID IN

22   CONNECTION WITH THE JONES CLASS ACTION SETTLEMENT.

23   MILLIONS WERE PAID TO MR. LANDSKRONER TO MR. BLOOD TO

24   MR. HIMMELFARB AND OTHERS.  TO THE CITY'S KNOWLEDGE, NO

25   FEE, NOT A PENNY, WAS PAID TO MR. KIESEL OR MR. PARADIS.

26   WE WOULD NOT HAVE COUNTENANCED THAT.

27        THE COURT:  YOU'RE JUST TELLING ME YOU DON'T KNOW

28   FROM THE CITY'S FUNDS.  I ASKED ABOUT FUNDS THAT CAME FROM
```

1    THE CLASS ACTION SETTLEMENT THAT WENT INITIALLY TO

2    MR. LANDSKRONER.

3         MR. PETERS:  THE CITY IS UNAWARE OF ANY

4    COMPENSATION BEING PAID BY ANYONE IN ANY FORM TO MR. KIESEL

5    OR MR. PARADIS.

6         THE COURT:  ALL RIGHT, BUT YOU DON'T HAVE DIRECT

7    KNOWLEDGE OF WHAT PAYMENTS WERE MADE.

8         MR. PETERS:  THAT IS TRUE, I DON'T KNOW THAT.

9         THE COURT:  ANYTHING ELSE FURTHER MR. THOMASCH?

10        MR. THOMASCH:  YES, YOUR HONOR.

11        THE COURT:  WE DON'T WANT TO REPLY ON THE

12   SUBSTANTIVE ISSUES, COUNTER ARGUMENTS.  I DON'T KNOW WHAT

13   YOU WANT TO ADDRESS.

14        MR. THOMASCH:  DO OR DO NOT?

15        THE COURT:  DO YOU WANT TO ADDRESS SOMETHING

16   SPECIFIC?

17        MR. THOMASCH:  YES, SPECIFIC ARGUMENTS THAT WERE

18   MADE.

19        THE COURT:  I'M NOT GOING TO MAKE A RULING ON ANY

20   SPECIFIC ARGUMENTS TODAY ANYWAY.  GOING TO TAKE TIME TO

21   DIGEST ALL THE MATERIAL.

22        BUT I DO HAVE SOME ORDERS THAT I WANT TO GIVE

23   SPECIFICALLY, FIRST, I WANT TO ASK YOU HAVE THEY COMPLETED

24   MR. PETER'S DEPOSITION.

25        MR. THOMASCH:  WE NEVER COMPLETED MR. PETERS'S

26   DEPOSITION, BUT THEY PROVIDED US THE DEPOSITION OF

27   MR. CLARK AND WE TOOK MR. CLARK'S DEPOSITION.  AND HE

28   WAS -- HE BECAME THE PMQ.  I BELIEVE THAT WAS A

1    CONTINUATION OF THE PMQ DEPOSITION. WE WERE DEPOSING THE

2    CITY FIRST THROUGH THE PERSON OF MR. PETERS AND THEN LATER

3    THROUGH MR. CLARK. WE COMPLETED MR. CLARK'S DEPOSITION.

4            I WOULD LIKE TO NOTE, YOUR HONOR, THERE HAS ALREADY

5    BEEN AN ISSUE ABOUT MR. CLARK'S TESTIMONY POTENTIALLY

6    HAVING AN ERROR. I HAVE NO FIRSTHAND KNOWLEDGE.

7            BUT WHAT WAS TESTIFIED TO WAS THAT LINER HAD BEEN

8    GIVEN A COPY OF THE JONES VERSUS PWC COMPLAINT AND THIS IS

9    WHAT IS IMPORTANT. A MEMO WAS WRITTEN ABOUT IT AND IN

10   MR. CLARK'S WORDS THE DECISION WAS MADE NOT TO FILE -- NOT

11   TO FILE THE JONES VERSUS PWC COMPLAINT BECAUSE IT WOULDN'T

12   ACCOMPLISH THE CITY'S GOALS THAT IS WHAT WE HEARD.

13           HE ATTRIBUTED THAT OPINION TO LINER. IT MAY NOT

14   HAVE BEEN LINER, BUT SOMEONE CLEARLY SENT A MEMO BACK TO

15   HIM OR TO WITHIN THE CITY ATTORNEY'S OFFICE THAT THE JONES

16   COMPLAINT WOULD NOT ACCOMPLISH THE CITY'S GOALS. NO ONE

17   CARED ABOUT MR. JONES'S GOALS. THEY WANTED TO ACCOMPLISH

18   THE CITY'S GOALS THROUGH MR. JONES.

19           WE MAY CORRECT THE TRANSCRIPT, BUT WE DO WANT TO

20   FOLLOW-UP ABOUT THAT MEMORANDUM. WE ARE SEEKING PRODUCTION

21   OF THAT MEMORANDUM. THAT MEMORANDUM SHOWS WHEN YOUR HONOR

22   WAS TOLD IT'S A THOUGHT PIECE IT WAS NEVER GOING TO BE

23   FILED.

24           AND WHEN WE HAD TESTIMONY IT'S A THOUGHT PIECE, IT

25   WAS NEVER GOING TO BE FILED, NO, IT WASN'T FILED BECAUSE

26   AFTER IT WAS DRAFTED COUNSEL SAID IT WON'T ACCOMPLISH THE

27   CITY'S GOALS. AND NOW MR. CLARK MAY WELL HAVE MADE A

28   MISTAKE.

```
 1          MR. CLARK INTERVIEWED A WHOLE BUNCH OF WITNESSES
 2    WHICH IS THE RIGHT THING TO DO.  HE TOOK NOTES OF THOSE
 3    INTERVIEWS.  INEXPLICABLY HE CHOSE TO DESTROY THOSE NOTES
 4    ON THE FRIDAY BEFORE THE DEPOSITION, SO WE DIDN'T GET THE
 5    BENEFIT OF THOSE NOTES.  HE TESTIFIED MULTIPLE TIMES HE
 6    DIDN'T RECALL WHO TOLD HIM WHAT.
 7          AND NOW IT APPEARS HE'S MADE A DIRECT ERROR IN
 8    RECOLLECTION.  I WOULD ASK YOUR HONOR --
 9          THE COURT:  ARE THESE ELECTRONIC NOTES OR WRITTEN
10    NOTES?
11          MR. THOMASCH:  THEY WERE HANDWRITTEN NOTES, FOUR TO
12    FIVE PAGES IN LENGTH, DESTROYED ON THE FRIDAY BEFORE THE
13    DEPOSITION.
14          THE COURT:  WAS A REASON GIVEN FOR THE DESTRUCTION
15    OF THOSE NOTES?
16          MR. THOMASCH:  NO, DIDN'T THINK ABOUT IT.  JUST
17    DIDN'T NEED THEM.  SAID HE DIDN'T NEED THEM BECAUSE THEY
18    HELPED HIM REMEMBER THINGS, BUT THEN HE TESTIFIED HE DIDN'T
19    REMEMBER CERTAIN THINGS, AND HE MAY HAVE TESTIFIED
20    INACCURATELY ABOUT CERTAIN THINGS.
21          I WOULD ASK YOUR HONOR, BECAUSE WE HAVE HAD
22    DIFFICULTY TRYING TO CONFIRM UP THE EXISTENCE OF A NON
23    DESTRUCT POLICY AT THE CITY, THAT IN THE PRESENCE OF ALL
24    THE ATTORNEYS EVERYONE SHOULD BE ORDERED NOT TO DESTROY
25    DOCUMENTS THAT RELATE TO THE JONES CASE, THE PWC CASE, OR
26    ANY OF THE RELATED CASES WHILE THIS MATTER IS PENDING
27    WITHOUT REGARD TO DATE OF DOCUMENT.
28          THE COURT:  ABSOLUTELY.  I THOUGHT THERE WAS A
```

1     PRIOR ORDER.

2           THE COURT WILL ORDER THAT ALL DOCUMENTS BE

3     PRESERVED THAT RELATE TO THE CONTROVERSY IN CONNECTION WITH

4     THE CLASS ACTION OF JONES VERSUS CITY OF LOS ANGELES, THE

5     RETENTION OF COUNSEL, ANY DOCUMENTS THAT WERE PREPARED BY

6     COUNSEL IN CONNECTION WITH THE JONES VERSUS CITY OF LOS

7     ANGELES CASE, AS WELL AS THE CASE OF THE CITY OF LOS

8     ANGELES VERSUS PRICEWATERHOUSE, ALL DOCUMENTS MUST BE

9     PRESERVED UNTIL FURTHER ORDER OF THE COURT.

10          AND IF THERE IS ANY DESTRUCTION, REGULAR

11    DESTRUCTION OF DOCUMENT POLICY THAT THE CITY SHOULD ALERT

12    WHOEVER IS IN CHARGE OF THE DOCUMENT MANAGEMENT TO MAKE

13    SURE THAT NO DOCUMENTS RELATED TO THE CLASS ACTION OR THE

14    DISPUTES WITH PRICEWATERHOUSE DESTROYED AND EVERYTHING

15    SHOULD BE PRESERVED.

16          MR. THOMASCH:  THANK YOU, YOUR HONOR.  JUST AS YOU

17    GO OVER WHAT HAS BEEN TOLD, THERE ARE FACTUAL ISSUES I WANT

18    TO CLEAR UP.

19          ONE, WE HAVE HAD STATEMENTS MADE BY COUNSEL FOR

20    MR. KIESEL AND COUNSEL FOR MR. LANDSKRONER IN EFFECT

21    PROVIDING A DEFENSE FOR MR. PARADIS.  IT'S SORT OF AN ODD

22    SITUATION HERE.

23          THE LAST SUGGESTION BY MR. DROOKS WAS THAT

24    MR. PARADIS'S POSITION WAS THAT THE ATTORNEY-CLIENT

25    RELATIONSHIP ENDED ON MARCH 26.  NO ONE HAS TAKEN THAT

26    POSITION.  THERE IS NOTHING -- NO ONE FROM THE SIDE OF

27    SPECIAL COUNSEL OR THE CITY HAS SAID THAT THE RELATIONSHIP

28    ENDED ON THIS DATE OR EVEN ON OR ABOUT THIS DATE.

1      WHAT WE KNOW IS THAT MR. JONES WE SAID FROM HIS

2   PERSPECTIVE MR. JONES THOUGHT MR. PARADIS FILED THE

3   COMPLAINT ON MY BEHALF.  HE CALLED MR. PARADIS AS HIS

4   LAWYER.  AND THE TESTIMONY WAS VERY CLEAR, HE SAID I

5   UNDERSTOOD THAT I WAS DEALING WITH MR. LANDSKRONER.

6   MR. LANDSKRONER WAS THE ONE THAT WAS COMMUNICATING WITH ME.

7      THE NOTION ABOUT NO RELIANCE.  MR. JONES WAS

8   RELYING ON THE FACT THAT HE BELIEVED MR. PARADIS WAS HIS

9   LAWYER.  HE BELIEVED IT.  HE JUST THOUGHT MR. LANDSKRONER

10  WAS THE ONE WHO WAS IN TOUCH WITH HIM.  HE WAS THE ONE IN

11  COMMUNICATION, AND I DON'T KNOW, IS HIS DEFENSE LIKE WE SO

12  SUCCESSFULLY ABANDONED HIM, WE SO DUPED HIM HE CANNOT CLAIM

13  ANY HARM?

14      OF COURSE HE WAS HARMED.  HE THOUGHT HE HAD

15  INDEPENDENT COUNSEL WITH UNDIVIDED LOYALTIES.  I SUGGEST HE

16  DID HAVE COUNSEL WITH UNDIVIDED LOYALTIES, THEY JUST

17  WEREN'T TO HIM.

18      AND THE NOTION THAT YOU CAN EXTRACT YOURSELF AND

19  THEN SAY THE RELATIONSHIP IS OVER, WHY DIDN'T MR. PARADIS

20  TELL HIM HE WAS LEAVING BECAUSE MR. JONES WOULD HAVE SAID,

21  AS AN INTELLIGENT MAN WOULD, WHY ARE YOU LEAVING ME?  WHY

22  ARE GIVING UP THE CASE?

23      AND NOW LET'S PLAY THAT CONVERSATION OUT.

24  MR. PARADIS SAYS BECAUSE I'M ACTUALLY COUNSEL FOR THE CITY

25  WHO YOU WANT TO SUE.

26      OH, WHEN DID YOU START BEING COUNSEL FOR THEM?

27  WELL, BEFORE I RECRUITED YOU.

28      I DON'T THINK IT GOES WELL FROM THERE.

1        AND THE NOTION THAT MR. PARADIS, AS AN ADMITTEDLY

2   CONFLICTED LAWYER, AT A TIME WHEN THERE IS NO DISPUTE ABOUT

3   THE END OF MARCH.  THE TESTIMONY IS MR. JONES WANTS TO SUE

4   HAS AUTHORIZED THE FILING OF THE SUIT AGAINST THE CITY.

5        MR. PARADIS REPRESENTS THE CITY.  SO MR. PARADIS

6   SAYS OH, IT'S A CONFLICT.  I CANNOT REPRESENT HIM, SO HE

7   PICKS THE REPLACEMENT COUNSEL.  HE CANNOT PICK THE

8   REPLACEMENT COUNSEL; HE'S CONFLICTED.

9        BUT HE PICKED A COUNSEL AFTER RUNNING IT BY THE

10  CITY AND HAVING THE CITY BLESS IT BECAUSE THEY GOT SOMEBODY

11  THAT WAS GOING TO BE REASONABLE AND COOPERATE.  THERE IS NO

12  ABANDONMENT DEFENSE TO THE EXISTENCE OF THE ATTORNEY-CLIENT

13  RELATIONSHIP THAT RELATIONSHIP DID NOT TERMINATE AND TO SAY

14  IT TERMINATED ON MARCH 26 GOES AGAINST EVERY PRINCIPLE OF

15  THE LAW AND PROFESSIONAL RESPONSIBILITY.  IT CAN'T BE.  AND

16  THE RELATIONSHIP AS A MATTER OF LAW WAS SPECIAL COUNSEL

17  MS. TUFARO, MR. PARADIS, AND MR. KIESEL.

18       MR. KIESEL WAS ON THAT COMPLAINT.  MR. KIESEL KNEW

19  HE WAS ON THAT COMPLAINT.  THAT COMPLAINT BEING THE DRAFT

20  JONES V. PWC COMPLAINT JANUARY, 2015, AND HE WAS IDENTIFIED

21  AS COUNSEL FOR MR. JONES.  HE DIDN'T SAY NOT ME.  WHAT ARE

22  YOU TALKING ABOUT, I'M NOT COUNSEL FOR MR. JONES, I'M

23  COUNSEL FOR THE CITY.  NO.  HE WAS COUNSEL FOR BOTH JUST

24  LIKE MR. PARADIS, JUST LIKE MS. TUFARO.  IT WAS JUST

25  UNKNOWN TO MR. JONES.  BUT THAT DOESN'T STOP THE LEGAL

26  AFFECT OF THE FACT THERE WAS CONCURRENT REPRESENTATION.

27       MR. JONES WAS BADLY SERVED.  THE COURT WAS BADLY

28  SERVED, AND WE ARE BEING BADLY SERVED.

```
 1              THANK YOU, YOUR HONOR.

 2              THE COURT:  ALL RIGHT, THANK YOU.

 3              MR. DROOKS:  I BELIEVE MR. THOMASCH MISHEARD ME.

 4              I DID NOT ARGUE THAT THE RELATIONSHIP BETWEEN

 5    MR. PARADIS AND MR. JONES ENDED ON MARCH 26.  I ARGUED THAT

 6    AS HE HEARD MR. KEHR'S ARGUMENT, IT LASTED AT LEAST UNTIL

 7    APRIL 1 WITH THE FILING OF THE COMPLAINT AND MARCH 26 TO

 8    APRIL 1 WAS A TRANSITION PERIOD.

 9              I JUST WANTED TO CLARIFY THAT BECAUSE IT MAY BE

10    MATERIAL TO THE COURT'S ANALYSIS.

11              THE COURT:  THANK YOU.

12              MR. THOMASCH:  YOUR HONOR, YOU HAVE PREVIOUSLY

13    RULED WE'RE ENTITLED TO THE DEPOSITION OF MR. LANDSKRONER.

14              WE HAVE A DEPOSITION SUBPOENA FOR HIM.  HE HAS

15    INSISTED ON DOING SO ONLY IN OHIO --

16              THE COURT:  WE'LL ADDRESS THAT IN A MINUTE.

17              ANYTHING ELSE?  YES, COUNSEL.

18              MR. KONCIUS:  YOUR HONOR, REGARDING MR. CLARK'S

19    DEPOSITION TRANSCRIPT.  OBVIOUSLY UNDER THE CODE MR. CLARK

20    HAS THE RIGHT, JUST AS ANY DEPONENT DOES, TO REVIEW HIS

21    TESTIMONY AND MAKE ANY CORRECTIONS.

22              IF AT THAT POINT, PWC FEELS THEY ARE OF A

23    SUBSTANTIVE NATURE, AND THEY WAS TO REDEPOSE HIM ON THAT

24    THERE IS A REMEDY TO DO THAT, YOUR HONOR.

25              THERE ARE A LOT OF WORDS COMING OUT COUNSEL'S MOUTH

26    TODAY, YOUR HONOR, AND NOT A LOT OF CITATION TO THE RECORD.

27    I JUST WANT TO POINT OUT THIS NOTION THAT THE CITY

28    HANDPICKED MR. LANDSKRONER, THE CITY WAS INVOLVED IN WHAT
```

1    WAS GOING ON, AND THIS CONCURRENT REPRESENTATION AND

2    EVERYTHING ELSE, YOUR HONOR.

3            THE BOTTOM LINE IS, MR. JONES WAS REFERRED OUT WHEN

4    IT WAS CLEAR HE WANTED TO PURSUE THE CITY AND THAT IS THE

5    REASON WHY HE ENDED UP WITH MR. LANDSKRONER.  AND THIS

6    WHOLE OTHER SCHEME AND THOUGHTS THAT ARE COMING OUT ARE

7    BASED ON SUPPOSITION AND NOTHING THAT IS IN THE RECORD.

8            SO I JUST WANT TO BE VERY CAREFUL WHERE WE'RE GOING

9    WITH THIS, YOUR HONOR.

10           THE COURT:  THANK YOU.

11           MR. ISAACS:  YOUR HONOR, I'M SORRY.  I JUST HAVE TO

12   CORRECT THAT.

13           MR. JONES WAS NOT REFERRED OUT TO MR. LANDSKRONER.

14   WHAT HAPPENED WAS MR. LANDSKRONER -- MR. PARADIS INTRODUCED

15   MR. JONES TO MR. LANDSKRONER AND SAID THAT MR. LANDSKRONER

16   WOULD BE ASSISTING WITH THE FILING OF THE COMPLAINT AND THE

17   LITIGATION AGAINST THE CITY THAT IS NOT A REFERRAL.

18           THE COURT:  THANK YOU.

19           HERE IS WHAT WE'RE GOING TO DO.  I'M NOT GOING TO

20   MAKE SPECIFIC RULINGS TODAY.  A LOT OF THE MATERIALS WERE

21   FILED ON FRIDAY, AND I WANT TO SPEND TIME DIGESTING IT.

22           HOWEVER, I'M GOING TO MAKE A FEW ORDERS TODAY.

23   FIRST, AND I DO ORDER COUNSEL TO GO FORWARD AND COMPLETE

24   THE DEPOSITION OF MR. PETERS AND MAKE ARRANGEMENTS FOR

25   THAT.

26           SECONDLY, MR. LANDSKRONER, YOU ARE HEREBY ORDERED

27   TO REPORT BACK TO THIS COURT TOMORROW MORNING AT 9:00

28   O'CLOCK FOR THE COMMENCEMENT OF YOUR DEPOSITION.  THE

1    DEPOSITION WILL CONTINUE FROM DAY-TO-DAY UNTIL CONCLUDED.

2         WE'LL MAKE ARRANGEMENTS IN THIS COURTHOUSE.  YOU

3    ARE TO REPORT BACK TO THIS COURTROOM, AND THE DEPOSITION

4    WILL PROCEED IN THIS COURTROOM OR IN SOME OTHER LOCATION

5    WITHIN THIS COURTHOUSE.  I WILL MAKE MYSELF AVAILABLE FOR

6    RULING ON ANY OBJECTIONS, BOTH OBJECTIONS TO QUESTIONS AND

7    OBJECTIONS TO THE REQUEST FOR PRODUCTION OF DOCUMENTS.

8         SECONDLY, MR. PARADIS, YOU'RE HEREBY ORDERED TO

9    REPORT BACK TO THIS COURTROOM ON WEDNESDAY, MARCH 6, FOR

10   YOUR DEPOSITION.  YOUR DEPOSITION WILL ALSO BE CONDUCTED IN

11   THIS COURTHOUSE, AND THE DEPOSITION WILL CONTINUE FROM

12   DAY-TO-DAY UNTIL COMPLETED.

13        I WILL MAKE MYSELF AVAILABLE FOR RULING ON ANY

14   OBJECTIONS TO ANY QUESTIONS AND OBJECTIONS TO ANY

15   PRODUCTION OF DOCUMENT REQUESTS.

16        COUNSEL ARE TO MAKE ARRANGEMENTS FOR A REPORTER AND

17   TO PROCEED WITH GOING FORWARD WITH THOSE DEPOSITIONS.

18   THOSE DEPOSITIONS WILL BE TAKEN IN THE JONES CASE, THAT IS

19   JONES VERSUS THE CITY OF LOS ANGELES, AS WELL AS THE CITY

20   OF LOS ANGELES VERSUS PWC.

21        AND I WILL MENTION THOSE CASES HAVE BEEN RELATED

22   SINCE THE EARLY DAYS WHEN THEY FIRST WERE ASSIGNED TO THIS

23   COURT, THAT THE TESTIMONY OF THE DISCOVERY IN ANY OF THOSE

24   CASES WILL BE ADMITTED INTO EACH OF THE OTHER CASES -- IN

25   ALL RELATED CASES.

26        THE COURT IS GOING TO ISSUE AN ORDER TO RESTRAIN

27   THE CITY OF LOS ANGELES FROM PAYING ANY FURTHER SUMS TO

28   MR. LANDSKRONER, TO MR. PARADIS, OR TO ANY COMPANY IN WHICH

1    MR. LANDSKRONER OR MR. PARADIS HAVE AN INTEREST.

2          THE COURT IS FURTHER GOING TO SET AN ORDER TO SHOW

3    CAUSE WITH REGARD TO THE APPOINTMENT OF A MASTER OR A

4    SPECIAL AUDITOR WITH REGARD TO ALL SUMS THAT HAVE BEEN

5    PREVIOUSLY PAID TO MR. LANDSKRONER OR MR. PARADIS OR ANY

6    COMPANY IN WHICH MR. PARADIS HAS AN INTEREST OR

7    MR. LANDSKRONER HAS AN INTEREST IN CONNECTION WITH THE

8    CLASS ACTION LAWSUIT, THE JONES VERSUS CITY OF LOS ANGELES

9    LAWSUIT.

10          I'M GOING TO ASK MR. HIMMELFARB TO SUBMIT A

11    PROPOSED ORDER, CIRCULATE IT AMONG COUNSEL FOR YOUR

12    APPROVAL AS TO THE FORM.

13          ANY QUESTIONS ON ANY OF THESE ISSUES?

14          MR. KONCIUS:  YES, YOUR HONOR.

15          THE COURT:  YES.

16          MR. KONCIUS:  REGARDING YOUR FIRST POINT TO

17    COMPLETE THE DEPOSITION OF MR. PETERS, ARE YOU ORDERING THE

18    COMPLETION OF THE DEPOSITION OF THE PERSON MOST

19    KNOWLEDGEABLE OF THE CITY OF LOS ANGELES?

20          THE COURT:  THAT ALSO.  MAKE ARRANGEMENTS WITH

21    MR. THOMASCH ABOUT THE TIME AND DATE FOR THE COMPLETION OF

22    THOSE DEPOSITIONS.

23          MR. THOMASCH:  I'LL SPEAK WITH COUNSEL ON THAT.

24          ON THE ISSUE OF THE ORDER TO SHOW CAUSE --

25          THE COURT:  I'LL SET A DATE FOR THAT IN A MOMENT.

26          MR. THOMASCH:  ON THE SPECIAL AUDITOR, I JUST

27    WANTED TO CONFIRM, WHEN YOU SAID ALL PAYMENTS MADE IN

28    CONNECTION WITH THE JONES V. CITY OF LOS ANGELES YOU'RE

1    INCLUDING REMEDIATION, ARE YOU NOT?

2            THE COURT:  YES.  YES.  ANYTHING TO DO WITH IT.

3    ANY SUMS PAID THAT ARE DERIVED FROM OR EMANATE FROM THE

4    CLASS ACTION INCLUDES NOT ONLY PAYMENTS PREVIOUSLY MADE,

5    BUT WITH REGARD TO THE SETTLEMENT, BUT INCLUDES ALL THE

6    REMEDIATION EFFORTS AS WELL.

7            MR. THOMASCH:  THANK YOU.

8            THE COURT:  AND THAT WOULD INCLUDE THE OSC -- THE

9    AUDIT WOULD INCLUDE THE IDENTIFICATION OF EACH PAYMENT MADE

10   AND THE BASIS OR JUSTIFICATION FOR EACH PAYMENT.

11           MR. PETERS:  YOUR HONOR, I HAVE ONE QUESTION IF

12   IT'S OKAY ABOUT MY DEPOSITION.

13           THE COURT:  YES.

14           MR. PETERS:  I ORIGINALLY WAS DEPOSED AS A PMQ

15   AFTER THE COURT ORDERED ADDITIONAL DEPOSITION BE TAKEN OF

16   THE PMQ.  MR. CLARK WHO IS MY SUPERVISOR WAS SUBSTITUTED

17   FOR ME.  I THINK THAT DEPOSITION HAS BEEN COMPLETED.

18           THE COURT:  YOUR CIRCUMSTANCE IS A LITTLE DIFFERENT

19   IN TERMS OF THE ATTORNEY FOR THE CITY.

20           IF IT HAS BEEN COMPLETED THEN NO NECESSITY TO TAKE

21   IT AGAIN, BUT MAKE ARRANGEMENTS TO CLARIFY THAT WITH

22   MR. THOMASCH.

23           MR. PETERS:  YES, SIR.

24           MR. ISAACS:  YOUR HONOR, IN I MAY, AGAIN JEFFREY

25   ISAACS ON BEHALF OF MR. JONES.

26           AS MR. DROOKS POINTED OUT, MR. LANDSKRONER WHO

27   CURRENTLY REPRESENTS MR. JONES IN THE JONES VERSUS LADWP

28   CASE, MAY VERY WELL HAVE A CONFLICT.

1           AND MY CONCERN THAT MR. JONES DOES NOT CURRENTLY

2     THEN HAVE CONFLICT-FREE COUNSEL IN THE JONES VERSUS LADWP

3     CASE, I WOULD JUST ASK LEAVE TO BE ASSOCIATED AS COUNSEL IN

4     THAT CASE FOR MR. JONES IN HIS INDIVIDUAL CAPACITY, NOT

5     ASKING FOR HIS CLASS COUNSEL.

6           THE COURT:  I UNDERSTAND THAT AND ASK THAT YOU

7     SUBMIT AN APPROPRIATE APPLICATION, AND WE WILL SEE IF THERE

8     ARE ANY OBJECTIONS TO THAT.

9           MR. ISAACS:  THANK YOU, YOUR HONOR.

10          MR. THOMASCH:  YOUR HONOR, AT SOME POINT WE WOULD

11    LIKE TO REQUEST, AND THIS CAN BE DONE AFTER WE TAKE THE

12    FIRST TWO DEPOSITIONS, BUT WE ARE VERY CERTAINLY INTERESTED

13    IN TAKING MR. KIESEL'S DEPOSITION WHO WAS AWARE HE WAS

14    COUNSEL FOR MR. JONES CONCURRENTLY WITH BEING COUNSEL,

15    SPECIAL COUNSEL, FOR THE CITY.

16          IF THE COURT IS NOT ORDERING THAT TODAY, WE

17    UNDERSTAND.  BUT WE DO WANT TO LET THE COURT KNOW WE WILL

18    BE SEEKING MR. KIESEL'S DEPOSITION.

19          THE COURT:  ALL RIGHT.  AND I'M SURE MR. KIESEL

20    WILL BE COOPERATIVE IN MAKING HIMSELF AVAILABLE FOR HIS

21    DEPOSITION.

22          MR. THOMASCH:  THANK YOU, YOUR HONOR.

23          THE COURT:  ALL RIGHT.  WE'RE GOING TO SET THE

24    HEARING ON THE OSC FOR APRIL 8, 9:00 A.M.

25          AND ALL BRIEFS OR SUBMISSIONS WITH REGARD TO THE

26    ORDER TO SHOW CAUSE RE THE APPOINTMENT OF AN AUDITOR OR

27    MONITOR SHOULD BE SUBMITTED NO LATER THAN MARCH 25 WITH

28    PROPOSALS FOR THE IDENTITY OF THE AUDITOR/MONITOR AND

```
 1   CURRICULUM VITAE WITH REGARD TO ANY PROPOSED NAME.
 2           MR. THOMASCH:  YOUR HONOR, ONE MORE HOUSEKEEPING
 3   MATTER.
 4           THE COURT:  YES.
 5           MR. THOMASCH:  IN THE SPECIFIC CASE OF THE CITY OF
 6   LOS ANGELES VERSUS PWC, ON YOUR HONOR'S CALENDAR FOR THIS
 7   WEEK, MARCH 7, IS A STATUS CONFERENCE.
 8           PARTIES WOULD ACTUALLY BE OVERDUE IN THEIR REPORT
 9   TO THE COURT.  I THINK WE ALL BELIEVED IT WAS PROBABLY
10   GOING TO BE PUT OFF AS A RESULT OF TODAY'S PROCEEDING.
11           MR. KEHR:  YES.
12           MR. THOMASCH:  I JUST WANTED TO LET YOUR HONOR KNOW
13   IT'S ON YOUR CALENDAR.
14           THE COURT:  THANK YOU, THAT WAS MARCH 7.
15           MR. THOMASCH:  YES.
16           THE COURT:  LET ME DOUBLE-CHECK THAT.
17           WE WILL CONTINUE THAT TO TWO WEEKS.  WE WILL MAKE
18   THAT -- ACTUALLY WE WILL MAKE THAT MARCH 19 AT 11 A.M.,
19   UNLESS I SEE YOU BEFORE THEN FOR SOME REASON IN CONNECTION
20   WITH ANY DISCOVERY ISSUES, MARCH 19.
21           SO I WOULD ASK COUNSEL TO UPDATE THE COURT ON ANY
22   ONGOING ISSUES NO LATER THAN MARCH 13.
23           MR. KIESEL:  YOUR HONOR, PAUL KIESEL FOR THE CITY.
24   ON THE 19TH OF MARCH I AM OUT OF STATE UNTIL THE 20TH.  IF
25   THE COURT COULD PUSH THIS ONE ADDITIONAL WEEK, I WOULD
26   APPRECIATE THAT.
27           THE COURT:  WHEN WILL YOU BE BACK IN TOWN?
28           MR. KIESEL:  I COME BACK THE 21ST, ON MONDAY, LET
```

1    ME LOOK AT MY CALENDAR.  I COME BACK MONDAY THE 25TH IS MY

2    FIRST DAY BACK.

3            THE COURT:  NO, THAT WEEK IS NO GOOD.  WE WILL HAVE

4    TO KEEP IT THE 19TH.  I'M SURE YOUR COLLEAGUE WILL BE ABLE

5    TO HANDLE THE HEARING.

6            OTHERWISE --

7            MR. KIESEL:  TO THE EXTENT SO MUCH OF IT REST ON

8    THESE OTHER ACTIVITIES GOING ON, YOUR HONOR, PERHAPS IT

9    MIGHT MAKE SOME SENSE TO PUT IT OVER TO THE FIRST WEEK OF

10   APRIL.

11           THE COURT:  IT'S NOT POSSIBLE.

12           MR. KIESEL:  MARCH 19TH IS FINE.  I'LL GET SOMEONE

13   TO COVER.

14           THE COURT:  THANK YOU, VERY MUCH.

15           I WILL ASK COUNSEL FOR PRICEWATERHOUSE TO GIVE

16   NOTICE AND POST IT ON THE WEBSITE.

17           MR. THOMASCH:  THANK YOU, YOUR HONOR.

18           THE COURT:  WE'RE IN RECESS.

19

20           (END OF PROCEEDING.)

21

22

23

24

25

26

27

28

Exhibit 21
Page 1038

1            SUPERIOR COURT OF THE STATE OF CALIFORNIA

2                     COUNTY OF LOS ANGELES

3                   SPRING STREET COURTHOUSE

4    DEPARTMENT SSC6          HON. ELIHU M. BERLE, JUDGE

5

6    CITY OF LOS ANGELES,         )
                                  )
7                    PLAINTIFF,   )
                                  )
8            VS.                  )
                                  )      CASE NO. BC574690
9    PRICEWATERHOUSE COOPERS, LLP )      REPORTER'S CERTIFICATE
                                  )
10                   DEFENDANT.   )
     _____)
11

12

13

14

15          I, ANITA B. ALDERSON, OFFICIAL COURT REPORTER PRO

16   TEMPORE OF THE SUPERIOR COURT OF THE STATE OF CALIFORNIA,

17   FOR THE COUNTY OF LOS ANGELES, DO HEREBY CERTIFY THAT THE

18   FOREGOING PAGES, 1 THROUGH 72, COMPRISE A TRUE AND CORRECT

19   TRANSCRIPT OF THE PROCEEDINGS TAKEN IN THE ABOVE-ENTITLED

20   CAUSE ON MONDAY, MARCH 4, 2019.

21

22               DATED THIS 5TH DAY OF MARCH, 2019.

23

24

25   _____,CSR 11843

26               ANITA B. ALDERSON
                 OFFICIAL COURT REPORTER PRO TEMPORE
27

28