JOSEPH P. MCMONIGLE, Bar No. 66811
KATHLEEN M. EWINS, Bar No. 154365
JOHN B. SULLIVAN, Bar No. 238306
LONG & LEVIT LLP
465 California Street, Suite 500
San Francisco, California  94104
Telephone:  (415) 397-2222
Facsimile:   (415) 397-6392
Email:       jmcmonigle@longlevit.com
             kewins@longlevit.com
             jsullivan@longlevit.com

Attorneys for Defendants
THE LANDSKRONER LAW FIRM, LTD.
dba LANDSKRONER, GREICO,
MERRIMAN, LLC, and JACK
LANDSKRONER

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS BRADSHAW, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF LOS ANGELES, a municipal entity; MICHAEL FEUER, in his individual and official capacity; JAMES CLARK, in his individual and official capacity; THOMAS PETERS, in his individual and official capacity; THE LANDSKRONER LAW FIRM, LTD. dba LANDSKRONER GREICO MERRIMAN, LLC, a limited liability company; JACK LANDSKRONER, an individual; LAW OFFICES OF MICHAEL J. LIBMAN APC, a California Professional Corporation; MICHAEL J LIBMAN, an individual,<br><br>    Defendants. | Case No.  2:19-cv-06661-VAP-JC<br><br>Hon. Virginia A. Phillips<br><br>**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANTS THE LANDSKRONER LAW FIRM, LTD. dba LANDSKRONER GREICO MERRIMAN, LLC AND JACK LANDSKRONER'S MOTION TO STAY ACTION**<br><br>Date:<br>Time:<br>Courtroom:  8A<br><br>Action Filed: July 31, 2019 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Pursuant to Federal Rule of Evidence 201 and the doctrine of incorporation by reference, Defendants The Landskroner Law Firm, Ltd. d/b/a Landskroner Greico Merriman, LLC and Jack Landskroner's (collectively, the "Landskronker Defendants") hereby respectfully request that this Court consider and take judicial notice of the exhibits attached hereto to decide the Landskronker Defendants' Motion to Dismiss Pursuant to FRCP 12(b)(6):

**Exhibit 1** (pages 9-58, below) is a true and correct copy of the Class Action Complaint, filed on April 1, 2015, in *Jones v. City of Los Angeles*, Case No. BC577267 (Cal. Super. Ct., L.A. Cty.) (the "Jones Class Action").

**Exhibit 2** (pages 59-277, below) is a true and correct copy of the Notice of Filing Revised Class Action Settlement Agreement and Limited Release, filed November 10, 2016, in the *Jones* Class Action.

**Exhibit 3** (pages 278-328, below) is a true and correct copy of Plaintiff's Notice of Unopposed Motion And Motion For Final Approval of Class Action Settlement And Award of Attorney's Fees, Costs, and Services Award, filed on May 5, 2017, in the *Jones* Class Action.

**Exhibit 4** (pages 329-353, below) is a true and correct copy of the Order Granting Final Approval Of Class Action Settlement And Final Judgment, entered July 20, 2017, in the *Jones* Class Action.

**Exhibit 5** (pages 354-404, below) is a true and correct copy of the Complaint for Damages, filed on July 31, 2019, in *Bradshaw v. The City of Los Angeles*, Case No. 2:19-cv-06661-VAP-JC (United States District Court Central District of California).

**Exhibit 6** (pages 405-408, below) is a true and correct copy of the Order Re Appointment Of Brian S. Kabeteck As Class Counsel, filed on May 7, 2019, in the

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104

- 2 -

REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF
MOTION TO STAY ACTION
CASE NO. 2:19-cv-06661-VAP-JC

*Jones* Class Action.

**Exhibit 7** (pages 409-412, below) is a true and correct copy of the Order Re: Jack Landskroner's Accounting, filed on May 7, 2019, in the *Jones* Class Action.

**Exhibit 8** (pages 413-428, below) is a true and correct copy of the Order Re: Appointment Of Special Master, filed on June 17, 2019, in the *Jones* Class Action.

**Exhibit 9** (pages 429-459, below) is a true and correct copy of the New Class Counsel's Preliminary Report Regarding Status Of Class Action Settlement (90 Days Post Appointment, filed on July 25, 2019, in the *Jones* Class Action.

**Exhibit 10** (pages 460-476, below) is a true and correct copy of the Joint Application For Order To Show Cause Re Issuance Of A Preliminary Injunction Requiring Disgorgement Of Attorney's Fees, filed on September 26, 2019, in the *Jones* Class Action.

**Exhibit 11** (pages 477-555, below) is a true and correct copy of the First Amended Complaint for Damages, filed on July 31, 2019, in *Bradshaw v. The City of Los Angeles*, Case No. 2:19-cv-06661-VAP-JC (United States District Court Central District of California).

**Exhibit 12** (pages 556-563, below) is a true and correct copy of the Class Action Settlement Notice, "*Jones v. City of Los Angeles*, Case No. BC577267 Certain Customers of the Los Angeles Department of Water and Power," in the *Jones* Class Action.

**Exhibit 13** (pages 564-625, below) is a true and correct copy of the New Class Counsel's Report Regarding the Status of Its Evaluation of the Class Action Settlement (210 Days Post-Appointment), "*Jones v. City of Los Angeles*, Case No. BC577267 Certain Customers of the Los Angeles Department of Water and Power," in the *Jones* Class Action.

**Exhibit 14** (pages 626-627, below) is a true and correct copy of the Minute Order Re: Hearing on Motion for Order to Show Cause RE Issuance of Preliminary

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA 94104

- 3 -

DEFENDANTS' NOTICE OF MOTION AND MOTION
TO STAY ACTION
CASE NO. 2:19-cv-06661-VAP-JC

Injunction , filed on December 2, 2019, in the *Jones* Class Action.

**Exhibit 15** (pages 628-641, below) is a true and correct copy of the Notice of Entry of Order Granting Preliminary Approval Of Class Action Settlement And Directing Dissemination of Class Notice, filed on January 5, 2017, in the *Jones* Class Action

# I.   LEGAL ARGUMENT

### A.   The Court Should Take Judicial Notice Of Exhibits 1-11 And 13 Because They Are Records Of The California Superior Court And The United States District Court

A matter that is properly the subject of judicial notice may be considered along with the complaint when deciding a motion to dismiss for failure to state a claim.  *Skilstaf v. CVS Caremark Corp.* (9th Cir. 2012) 669 F.3d 1005, 1016, fn. 9.

The Court "may take judicial notice of court filings and other matters of public record."   *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741 (9th Cir. 2006)  Judicial notice is particularly appropriate for court records in prior litigation related to the case before it. *Amphibious Partners, LLC v. Redman* (10th Cir. 2008) 534 F.3d 1357, 1361-1362.  This includes taking judicial notice of a complaint filed in a related state court action in order to ascertain the legal nature of the claim stated in the complaint.  *Burbank-Glendale Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998) (granting request to take judicial notice of pleadings filed in related state court action); *E.I. Du Pont de Nemours & Co., Inc. v. Cullen* (1st Cir. 1986) 791 F.2d 5, 7.

Here, the Court should take judicial notice of Exhibits 1-11 and 13 because they are documents, pleadings, and orders filed in the California Superior Court, County of Los Angeles and the United State District Court, Central District of California.

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104

- 4 -

DEFENDANTS' NOTICE OF MOTION AND MOTION
TO STAY ACTION
CASE NO. 2:19-cv-06661-VAP-JC

**B.    The Court Should Consider Exhibit 12, The Notice To Class Members Of Settlement Because The Complaint Incorporates It And Causes Of Action Are Based On It**

If a plaintiff fails to attach to the complaint the documents on which it is based, the defendant may attached to a Rule 12(b)(6) motion the documents referred to in the complaint to show that they do not support plaintiff's claims.  See, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.* 551 US 302, 322 (2000) (court ruling on motion to dismiss must consider entire complaint and other sources incorporated by reference as well as judicially noticeable matters.)

In considering a motion to dismiss, "[t]he Court also may take judicial notice of material incorporated by reference into the Complaint." *U.S. v. Ritchie,* 342 F.3d 903, 907-908 (9th Cir. 2003).  In *Ritchie,* the Ninth Circuit explained that "[e]ven if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of plaintiff's claim." *Id.* at 908.  It went on to state "[t]he defendant may offer such a document, and the district court may treat the document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Id.*  The Ninth Circuit provided examples such as when a plaintiff's claim about insurance coverage is based on the contents of a coverage plan or when a claim about stock fraud is based on the contents of SEC filings. *Id.*, citing, *Parrino v. FHP, Inc.,* 146 F.3d 699, 706 n. 4 (9th Cir. 1998); *In re Silicon Graphics Secs. Litig.* 183 F.3d 970, 986 (9th Cir. 1999).

Where a plaintiff does not physically attach documents to the complaint, they may nonetheless be considered by the court of a 12(b)(6) motion to dismiss if: (1) the complaint refers to such a document; (2) the document is central to plaintiff's claim; and (3) no party questions the authenticity of that copy attached to the alleged Rule 12(b)(6) motion.

Here, the First Amended Complaint refers to the notice to class members of the settlement at paragraphs 97, 192, and 229.  The document is central to

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104

- 5 -

DEFENDANTS' NOTICE OF MOTION AND MOTION
TO STAY ACTION
CASE NO. 2:19-cv-06661-VAP-JC

Bradshaw's claim for affirmative misrepresentation (¶192) and negligent misrepresentation (¶229). There is no reason for Bradshaw to question the authenticity of the notice.

## II. CONCLUSION

For the reasons detailed above, this Court should take judicial notice of **or incorporate by reference each of the following documents:**

**Exhibit 1** (pages 9-58, below) is a true and correct copy of the Class Action Complaint, filed on April 1, 2015, in *Jones v. City of Los Angeles*, Case No. BC577267 (Cal. Super. Ct., L.A. Cty.) (the "Jones Class Action").

**Exhibit 2** (pages 59-277, below) is a true and correct copy of the Notice of Filing Revised Class Action Settlement Agreement and Limited Release, filed November 10, 2016, in the *Jones* Class Action.

**Exhibit 3** (pages 278-328, below) is a true and correct copy of Plaintiff's Notice of Unopposed Motion And Motion For Final Approval of Class Action Settlement And Award of Attorney's Fees, Costs, and Services Award, filed on May 5, 2017, in the *Jones* Class Action.

**Exhibit 4** (pages 329-353, below) is a true and correct copy of the Order Granting Final Approval Of Class Action Settlement And Final Judgment, entered July 20, 2017, in the *Jones* Class Action.

**Exhibit 5** (pages 354-404, below) is a true and correct copy of the Complaint for Damages, filed on July 31, 2019, in *Bradshaw v. The City of Los Angeles*, Case No. 2:19-cv-06661-VAP-JC (United States District Court Central District of California).

**Exhibit 6** (pages 405-408, below) is a true and correct copy of the Order Re Appointment Of Brian S. Kabeteck As Class Counsel, filed on May 7, 2019, in the *Jones* Class Action.

**Exhibit 7** (pages 409-412, below) is a true and correct copy of the Order Re:

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104

- 6 -

DEFENDANTS' NOTICE OF MOTION AND MOTION
TO STAY ACTION
CASE NO. 2:19-cv-06661-VAP-JC

Jack Landskroner's Accounting, filed on May 7, 2019, in the *Jones* Class Action.

**Exhibit 8** (pages 413-428, below) is a true and correct copy of the Order Re: Appointment Of Special Master, filed on June 17, 2019, in the *Jones* Class Action.

**Exhibit 9** (pages 429-459, below) is a true and correct copy of the New Class Counsel's Preliminary Report Regarding Status Of Class Action Settlement (90 Days Post Appointment, filed on July 25, 2019, in the *Jones* Class Action.

**Exhibit 10** (pages 460-476, below) is a true and correct copy of the Joint Application For Order To Show Cause Re Issuance Of A Preliminary Injunction Requiring Disgorgement Of Attorney's Fees, filed on September 26, 2019, in the *Jones* Class Action.

**Exhibit 11** (pages 477-555, below) is a true and correct copy of the First Amended Complaint for Damages, filed on July 31, 2019, in *Bradshaw v. The City of Los Angeles*, Case No. 2:19-cv-06661-VAP-JC (United States District Court Central District of California).

**Exhibit 12** (pages 556-563, below) is a true and correct copy of the Class Action Settlement Notice, "*Jones v. City of Los Angeles*, Case No. BC577267 Certain Customers of the Los Angeles Department of Water and Power," in the *Jones* Class Action.

**Exhibit 13** (pages 564-625, below) is a true and correct copy of the New Class Counsel's Report Regarding the Status of Its Evaluation of the Class Action Settlement (210 Days Post-Appointment), "*Jones v. City of Los Angeles*, Case No. BC577267 Certain Customers of the Los Angeles Department of Water and Power," in the *Jones* Class Action.

**Exhibit 14** (pages 626-627, below) is a true and correct copy of the Minute Order Re: Hearing on Motion for Order to Show Cause RE Issuance of Preliminary Injunction , filed on December 2, 2019, in the *Jones* Class Action.

**Exhibit 15** (pages 628-641, below) is a true and correct copy of the Notice of

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104

DEFENDANTS' NOTICE OF MOTION AND MOTION
TO STAY ACTION
CASE NO. 2:19-cv-06661-VAP-JC

Entry of Order Granting Preliminary Approval Of Class Action Settlement And Directing Dissemination of Class Notice, filed on January 5, 2017, in the *Jones Class Action*

Dated:  January ___, 2020.                    LONG & LEVIT LLP


By:_____
JOSEPH P. MCMONIGLE
KATHLEEN M. EWINS
JOHN B. SULLIVAN
Attorneys for Defendants
THE LANDSKRONER LAW
FIRM, LTD. d/b/a
LANDSKRONER, GREICO,
MERRIMAN, LLC, and JACK
LANDSKRONER

4847-2586-9742, v. 1

LONG & LEVIT LLP
465 CALIFORNIA STREET,
5TH FLOOR
SAN FRANCISCO,
CALIFORNIA  94104

- 8 -

DEFENDANTS' NOTICE OF MOTION AND MOTION
TO STAY ACTION
CASE NO. 2:19-cv-06661-VAP-JC

1 | Michael J. Libman (SBN 222353)
Law Offices of Michael J. Libman
2 | 16133 Ventura Boulevard, Suite 1200
Encino, California 91436
3 | Telephone: 818-995-7300

**FILED**
Superior Court of California
County of Los Angeles

APR 01 2015

Sherri R. Carter, Executive Officer/Clerk
By_____ Deputy
Shaunya Bolden

4

5 | Jack Landskroner (Pro Hac Vice to be filed)
Drew Legando (Pro Hac Vice to be filed)
6 | **LANDSKRONER GRIECO MERRIMAN LLC**
1360 West 9th Street, Suite 200
7 | Cleveland, Ohio 44113
T. (216) 522-9000
8 | F. (216) 522-9007

9
*Attorneys for Plaintiff*
10

11 | **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

12 | **FOR THE COUNTY OF LOS ANGELES**

13

14 | ANTWON JONES, on behalf of himself, and all other similarly situated,

Case No. CIV-

**BC 5 7 7 2 6 7**

15 | Plaintiff,

16 | v.

**CLASS ACTION COMPLAINT**

(1) **FRAUD AND DECEIT;**

17

18 | CITY OF LOS ANGELES, by and through the Los Angeles Department of Water and Power and DOES 1 through 50, inclusive,

(2) **NEGLIGENT MISREPRESENTATION**

19

20 | Defendant.

(3) **BREACH OF CONTRACT**

(4) **BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;**

21

22

23 | (5) **RESTITUTION / UNJUST ENRICHMENT;**

24

25 | (6) **MONEY HAD AND RECEIVED;**

26

27 | (7) **VIOLATION OF CITY ORDINANCE;**

28

---

1

**CLASS ACTION COMPLAINT**

Exhibit 1
9

| | | |
|---|---|---|
| 1 | ) | ORDINANCE; |
| 2 | ) | (8) FAILURE TO PERFORM A |
| 3 | ) | NON-DISCRETIONARY DUTY; |
| 4 | ) | |
| 5 | ) | (9) VIOLATION OF CALIFORNIA TAKINGS CLAUSE; |
| 6 | ) | (10) VIOLATION OF DUE |
| 7 | ) | PROCESS; |
| 8 | ) | (11) VIOLATION OF CONSUMER |
| 9 | ) | LEGAL REMEDIES ACT ("CLRA"); |
| 10 | ) | |
| 11 | ) | (12) VIOLATION OF THE UNFAIR COMPETITION LAW; |
| 12 | ) | |
| 13 | ) | (13) DECLARATORY RELIEF; |
| 14 | ) | (14) VIOLATION OF THE |
| 15 | ) | CONSUMER LEGAL REMEDIES ACT; |
| 16 | ) | (15) DECLARATORY RELIEF; and |
| 17 | ) | (16) INJUNCTIVE RELIEF |
| 18 | ) | JURY TRIAL DEMANDED |
| 19 | ) | |

Plaintiff Antwon Jones ("Plaintiff" or "Jones"), by his undersigned counsel, brings this action both individually and as a class action on behalf of himself and all customers of the Los Angeles Department of Water and Power (the "LADWP") and the Los Angeles Department of Sanitation ("LA San") who purchased electricity, water, sewage or solar power services from the LADWP and/or sanitation services from the LADWP or LA San. Plaintiff alleges the following upon personal knowledge as to his own acts, and upon information and belief as to all other matters. Plaintiff's information and belief is based upon the investigation conducted by his counsel.

2

**CLASS ACTION COMPLAINT**

Exhibit 1
10

## NATURE OF THE ACTION

1.     At all times relevant hereto, Defendant, through the LADWP and LA San (through LADWP because LADWP acts as the billing agent for LA San), has been engaged in a variety of acts related to billing procedures that have caused Plaintiff and members of the Class to be: (i) billed for services that they did not consume; and (ii) billed at higher rates than they should have been billed at..

2.     In particular, the LADWP and LA San have devised a scheme by which customers, either as a result of delayed billing or over estimated billing, are caused to be charged at billing rates higher than that which they would have been charged in the absence of these billing procedures.

3.     In light of the LADWP having routinely employed these improper billing practices, customers of the LADWP have received inaccurate and inflated bills and, therefore, have been damaged.

4.     In addition to the illegal, routine billing practices described herein, LADWP customers have been damaged by receipt and payment of inaccurate bills generated by the LADWP's newly implemented Customer Care and Billing System (the "CC&B System", which is riddled with programming defects.

5.     Defects in the CC&B System have caused the LADWP to: (i) delay the issuance of customers' bills for electricity, water, sewage and sanitation services for multiple billing cycles; (ii) improperly estimate customers' usage; (iii) continue to bill customers who requested that their services be terminated; (iv) fail to bill new customers who had requested that services be commenced; (v) fail to issue refunds for the overpayment of services; (vi) inaccurately calculate bills that involve multiple billing periods; (vii) fail to recognize when LADWP customers switch from traditional electric power to solar power; and (viii) miscalculate rates and credits due to certain solar power customers.

6.     As a result of these defects in the CC&B System, LADWP customers have been damaged.

---

3

**CLASS ACTION COMPLAINT**

Exhibit 1
11

**THE PARTIES**

7.      Plaintiff Antwon Jones ("Plaintiff" or "Jones") is a resident and citizen of the State of California and lives in Van Nuys, California.  Jones and his fellow Class members are customers of the LADWP who contract with the LADWP to purchase electricity, water, sewage and sanitation from the LADWP at the rates fixed by the Department of Water and Power of the City of Los Angeles as approved by the Los Angeles Board of Water and Power Commissioners and Los Angeles Bureau of Sanitation.

8.      Defendant, City of Los Angeles, is a public entity with divisions, departments and bureaus under its control.  The government of the City of Los Angeles consists of approximately 42 departments and bureaus headed by general managers, advisory boards, control boards or commissions appointed by the Mayor of the City of Los Angeles, subject to confirmation by the Los Angeles City Council.  The City of Los Angeles provides electric, water, sewage and sanitation services to residents of the City and County of Los Angeles by and through the Los Angeles Department of Water and Power and the City of Los Angeles Bureau of Sanitation.

**JURISDICTION AND VENUE**

9.      Subject matter jurisdiction is proper in this Court as the amount in controversy is not less than the jurisdictional limit of this Court.

10.      *In personam* jurisdiction over the Defendant is proper in this Court as the Defendant's principal place of business is in the City and County of Los Angeles, State of California; the torts and contractual breaches complained of herein occurred within the City and County of Los Angeles, State of California; and the Defendant is a governmental agency of the City of Los Angeles.

11.      Venue is proper in this court as Defendant's principal place of business is in the City and County of Los Angeles, State of California; the torts and contractual breaches complained of herein occurred within the City and County of Los Angeles, State of California; and the Defendant is a governmental agency of the City of Los Angeles.

---

4
**CLASS ACTION COMPLAINT**

Exhibit 1
12

## SUBSTANTIVE ALLEGATIONS

**I.      Defendant's Routine Billing Procedures Have Caused
Class Members To Incur Damages**

12.     LADWP is the nation's largest municipal utility and it provides utility electricity, water and sewage to over 1.6 million customers in a 465 square mile service area.  In addition, the LADWP performs the billing function for LA San.

13.     Plaintiff and Class members contract with LADWP and LA San to purchase electricity, water, sewage and sanitation services.  Pursuant to the terms of these contracts, Plaintiff and Class members are supposed to be charged for the quantities of electricity, water, sewage and sanitation services that they consume in accordance with the rates fixed by the Department of Water and Power and Department of Sanitation of the City of Los Angeles

14.     Despite such contractual requirements, Defendant, by and through LADWP and LA San, has routinely engaged in billing practices that have caused Plaintiff and Class members to incur millions of dollars in damages.

15.     In order to understand how Defendant bilked unsuspecting customers of the LADWP and LA San out of such sums of money, however, it is imperative to understand the billing structure at issue.

**A.      Tiered Billing**

16.     Pursuant to Incremental Electric Rate Ordinance No. 182273, the LADWP is permitted to charge its customers for electricity and water usage according to tiers.   This Ordinance provides for three tiers of pricing, Tier 1, Tier 2 and Tier 3.

17.     The Tier at which a customer is charged is dependent upon the amount of electricity or water a customer uses in a given billing period.  The more electricity and/or water that a customer uses, the higher the Tier at which the customer will be charged.  Accordingly, Tier 1 customers will be charged lower rates than will Tier 2 customers and Tier 3 customers will be charged higher rates than Tier 1 or Tier 2 customers.  One of the laudable purposes behind this tiered structure is to allow a customer to adjust his usage downward so as to prevent billing at a higher Tier, and, simultaneously, to conserve resources.

5
**CLASS ACTION COMPLAINT**

Exhibit 1
13

**B.      Estimated Billing**

18.     Pursuant to the Rules Governing Water and Electric Service (the "Rules"), under certain circumstances, LADWP is permitted to charge its customers using "estimated," rather than "actual" usage.

19.     Estimated billing, however, is permitted under the Rules in only a limited number of circumstances including: (i) where a customer pays on a "flat rate" schedule (regardless of usage); (ii) for deposits; (iii) improper consumption of services; (iv) to recoup monies due to theft of services; and (v) where a meter is maintained in a locked compartment or otherwise fails to register correctly.

**C.      LADWP's Use of Estimation Violates Estimation Rules and Tier Pricing Schedules**

20.     Unbeknownst to its customers and despite the very limited circumstances in which the LADWP is permitted to use estimated billing, the LADWP intentionally violated the Rules by sending out millions of estimated bills since 2013.  The vast majority of these bills did not satisfy the criteria under the Rules which would have allowed for "estimated" billing.

21.     In addition to violating the Rules regarding estimated billing, the LADWP's practice of estimated bills prejudices its customers in a number of other ways.

22.     First, the LADWP billed its customers for greater quantities of electricity, water and sewage than they had actually used because the estimates, themselves, are higher than any customer's actual usage.

23.     Second, because the estimates, themselves, are randomly generated, the estimates have no correlation to actual usage, which can negatively impact a customer by forcing him into a Tier higher than that which he would be assigned had his usage not have been estimated.

24.     Third, although the LADWP may ultimately reconcile the estimate with a customer's actual usage, if, in the interim, a rate increase is implemented, or if a customer's actual usage is shifted into a higher cost season, all of the shifted usage is improperly billed at a higher rate.

---

**CLASS ACTION COMPLAINT**

Exhibit 1
14

25.     Finally, because estimated bills do not reflect actual consumption, a consumer is deprived of the knowledge of whether his actual consumption requires a downward modification so as to prevent him from being billed at a higher Tier, which, in turn, violates the spirit of tiered pricing.

26.     In light of the LADWP having routinely employed these improper billing practices, customers of the LADWP have received inaccurate and inflated bills, which they have paid, and, are, therefore, damaged.

## II.   The CC&B System Has Caused Class Members To Incur Damages

27.     In addition to the foregoing, routine billing practices, LADWP customers have been damaged by the receipt and payment of inaccurate bills generated by the LADWP's new CC&B System.

28.     In 2009, the LADWP sought to modernize its antiquated utility Customer Information System/Customer Care and Billing System by replacing it with a fully integrated CC&B System, which was to be responsible for generating customers' bills based upon customers' usage of the utility's services. Shortly thereafter, the LADWP engaged the services of PricewaterhouseCoopers, LLP ("PwC") to implement the new CC&B System.

29.     In September 2013, the LADWP launched the CC&B System, which was defectively programmed by PwC, in multiple ways, causing the LADWP to issue inaccurate bills for its electricity, water, sewage, sanitation and solar power services.

### A.   The CC&B Fails to Accurately Bill LADWP and LA San Customers For Electricity, Water and Sanitation Services

#### i.   Defects In The CC&B System Have Caused Delayed Bills

30.     First and foremost, defects in the CC&B System have caused the LADWP to delay the issuance of its customers' bills for electricity, water, sewage and sanitation services for multiple billing cycles.

31.     Counsel's investigation has revealed that, at least in part, the failure to timely issue bills was a result of an error in the CC&B System related to the integration of a particular interface, the responsibility of which was to upload meter read data into the CC&B System.  This

7

**CLASS ACTION COMPLAINT**

Exhibit 1
15

1    interface is known as the "Meter Read Upload Interface" or "MRU Interface," which was created

2    and programmed by PwC.

3        32.    The Meter Read Upload Interface is designed to take meter read data, which is

4    collected by meter readers in the field, and to then transmit or "upload" that data to the CC&B

5    System for the generation of bills.

6        33.    Because PwC created and programmed the MRU Interface in a defective manner,

7    the MRU Interface did not function properly and the LADWP could not issue bills to many of its

8    customers for long periods of time.

9        34.    After failing to issue bills for many months, the LADWP then billed its customers

10   for four, or six, or even eight months of water and electricity in one "lump sum."

11       35.    At the end of August 2014, the LADWP estimated that approximately 6,000

12   customers had not been billed in about seven months.

13       36.    The impact of LADWP's "lump sum" billing has been disastrous, as it has caused

14   customers to be bumped up from lower pricing Tiers to higher pricing Tiers.  As a direct result of

15   being billed at higher Tiers, these LADWP customers have also improperly incurred higher

16   utility taxes and energy surcharges.

17           ii.    **Defects In The CC&B System Have Caused Estimation Errors**

18       37.    As discussed above, the LADWP frequently charges customers based on

19   estimated use, as oppose to actual use.  However, because PwC failed to configure the LADWP's

20   CC&B System as it had been instructed to by the LADWP, the CC&B system incorrectly

21   estimates customer usage.

22       38.    The algorithm used by the LADWP to estimate customers' bills under certain

23   circumstances uses a form of estimation known as "Trend Estimation."

24       39.    To perform "Trend Estimation" properly, a utility billing system utilizes a series

25   of algorithms that analyze such things as geographic area, type of customer, etc. to estimate a

26   customer's usage.

27       40.    These criteria are examined and utilized in calculating a "Trend Estimate" to

28   ensure that the "Trend Estimate" used to bill customers is as close to actual usage data as

8

**CLASS ACTION COMPLAINT**

Exhibit 1
16

1  possible, and that the "estimated" bill is therefore as close to what a bill based on actual usage

2  data would be.

3      41.    When configured properly, the algorithms that calculate the "Trend Estimate" will

4  use a "neighborhood" attribute to ensure that the usage patterns employed to calculate a "Trend

5  Estimate" for a customer are based on the usage patterns of other customers who also live in the

6  immediate geographic area, rather than on the usage patterns of customers who live in, for

7  example, disparate geographic locations, i.e., similar customers.  Stated another way, in order to

8  calculate a reliable and valid – and therefore, reasonable - "Trend Estimate," it is critical that the

9  billing system used to calculate the Trend Estimate be programmed in such a way that the billing

10  system compares apples with apples, and generates the Trend Estimate based on the billing

11  system having done so.

12      42.    Rather than configuring the Trend Estimate based on "similar" customers, PwC

13  configured the Trend Estimate algorithm to estimate a customer's usage based on a straight

14  average of all customer types.

15      43.    Because the Trend Estimate was mis-configured, estimates generated by the

16  CC&B system are inaccurate.

17      44.    Accordingly, as a result of this programming defect, customers were damaged.  In

18  particular, customers were either overbilled based on inflated estimates or were underbilled, but

19  forced into a higher Tier (along with higher taxes and surcharges) as a result of being billed in

20  one-lump sum at the time when their bills were reconciled with their actual usage.

21

22

23      **iii.  Additional Defects In The CC&B System**
          **Have Caused Class Members To Incur Damages**

24

25      45.    Counsel's investigation has also revealed that additional defects in the CC&B

26  System have caused the LADWP to: (i) continue to bill customers who requested that their

27  services be terminated; (ii) fail to issue refunds for the overpayment of services; and (iv)

28  inaccurately calculate bills that involve multiple billing periods.

---

9

**CLASS ACTION COMPLAINT**

Exhibit 1
17

46.     The CC&B System was intended to be programmed to automatically close out "off orders" that were not completed in the field upon the occurrence of a subsequent "on order" at the same location, thereby ensuring that billing was stopped and started properly.   This programming component or "enhancement" of the CC&B System is known as "Auto-Close of Off Orders."

47.     By way of example, assume an LADWP customer is moving out of an apartment and places an "Off Order" so that service to the apartment is terminated.   Then assume that a new resident moves into that same apartment days later.   The "Auto-Close on Off Orders" enhancement was intended to ensure that billing to the customer who is moving out of the apartment is completely stopped when the "On Order" is placed, so that the new resident – rather than the resident who is moving out – is billed for service once the "On Order" is placed.

48.     The "Auto-Close on Off Orders" enhancement was not programmed properly.   As a result, the LADWP continued to bill customers *after* they had placed "Off Orders."

49.     Additionally, defects in the CC&B System have prevented the LADWP from issuing refunds to customers who are due refunds..

50.     Finally, defects in the CC&B System have caused the LADWP to inaccurately calculate bills that involve multiple billing periods.

51.     Because defects in the CC&B System have caused the LADWP to: (i) continue to bill customers who requested that their services be terminated; (ii) fail to issue refunds to those customers who are due refunds; and (iv) inaccurately calculate bills that involve multiple billing periods, customers of the LADWP have been overbilled and, therefore, have been damaged.

**B.     The CC&B Fails to Accurately Bill LADWP
Customers For Solar Power Services**

52.     Counsel's investigation has further revealed that defects in the CC&B System have caused several problems with respect to utility bills issued to those customers of the LADWP that have installed their own solar power systems.

53.     First, defects in the CC&B System have caused the CC&B System to fail to recognize when LADWP customers switch from traditional electric power to solar power.   As a

10
**CLASS ACTION COMPLAINT**

Exhibit 1
18

result, the CC&B System continues to charge these customers for electric power without consideration of the solar power generated by their systems.

54.     Second, where the CC&B System does recognize that a household has converted to solar power, defects in the CC&B System have caused the CC&B System to miscalculate rates and credits due to these solar power customers.

55.     As a result of these defects in the CC&B System, LADWP customers that use solar power have been overcharged for electricity and have not been credited appropriately for electricity that they have produced and generated into the grid.

**Plaintiff and Class Members Were**
**Damaged As A Result of the City's Misconduct**

56.     Because Defendant engaged in the misconduct detailed herein, Plaintiff and Class members were caused to incur millions of dollars in damages when they were charged amounts that were well in excess of what they should have been charged.

57.     For example, Plaintiff, who lives in an apartment without a dishwasher, clothes washer, clothes dyer or central air conditioning in Van Nuys, California was billed as follows:

|   |   |   |   |
|---|---|---|---|
| a. | 9/16/13 – 11/14/13 | 61 kWh | $   26.60 |
| b. | 11/14/13 – 1/16/14 | 85 kWh | $   28.41 |
| **c.** | **No Bill Sent Until July 11, 2014** | | |
| d. | 1/16/14 – 5/16/14 | 7,782 kWh | $1,374.10 |
| e. | 5/16/14 – 9/15/14 | 2,037 kWh | $   322.44 |
| e. | 9/15/14 – 11/15/14 | 1,282 kWh | $   218.46 |

58.     Stated another way, while Plaintiff was billed for 30.5 kWh per month for the period September 16, 2013 through November 14, 2013 and 42.5 kWh per month for the period November 14, 2013 through January 16, 2014, Plaintiff was billed for an astounding 1,556.4 kWh per month for the period January 16, 2014 through May 16, 2014 – *an astounding 51 times greater than Plaintiff had been billed for the September 16, 2013 through November 14, 2013*

---

11
**CLASS ACTION COMPLAINT**

Exhibit 1
19

1   *period and 36.62 times greater than Plaintiff had been billed for the November 14, 2013*

2   *through January 16, 2014 period.*

3         59.   Plaintiff's experience is not an isolated incident, as demonstrated by the numerous

4   complaints lodged by fellow Class members that detail extremely similar circumstances of

5   overbilling.  Class members voiced their outrage over electricity and water bills that, in some

6   cases, were more than 50 times the amounts previously billed.  For example:

| Date of Complaint | Complaint |
|---|---|
| 9/17/13 | I opened my DWP bill yesterday and have been charged $1,000 more than my last bill just for the electricity portion of the bill. This is impossible I was out of town for almost a full week last month, and I have done nothing different. I can not get a hold of them on the phone. I sent an email with no response. |
| 3/20/14 | My nightmare with DWP started in November as well, when I got bill for $2400 for 2,000 sq ft townhouse (no pool, sprinklers are paid by HOA, etc). At that point it was explained by changing billing system and it was adjusted to little bit over $500 (which is my normal bill for 2 months). But that wasn't the end. In January I got bill for $1000. When I looked closer I have noticed, that under the meter reading numbers it says "estimated". When I look at the meter (2 weeks from "read date") it was still 2500 kwh less than "read" value. I have started investigation with field office on Jan 28. As of today March 20 nothing was done, no bill adjusted. On top of that, I got new bill with another estimated value and now the difference between "read" value and actual value is close to 5000 kwh. I am spending hours of the phone trying to get it fixed. Everyone sounds nice on the phone, yet the 2-months long battle isn't over. Now, even if my bill gets adjusted to actual meter value, I will still be overcharged because cumulative 4-months use will bring me over to the 3d (most expensive) tier, whereas have I being billed correctly on the first place, I wouldn't exceed 1-2nd tier use. |
| 4/21/14 | I have had the same problem for my January cycle. I am a simple student living in a small house (700 sqft). I don't have TV, I have a computer and a small Frig. Only my electricity is with LADWP and my water is with AUM. I used to get 30-40$ bills depending on the cycle. Just today (20 March 2014) I have got a huge bill of 750$ saying that I have used 4000 KWH. I was so shocked I started laughing . What the hell? I am a computer scientist so I knew that for that amount of KWH you should be running a small factory!!!!!!! I am new to United States and I was wondering if anyone can give me directions about what to do to solve this problem. I have no idea, I just wanna go to LADWP branch tomorrow and see what I can do! |

| | | |
|---|---|---|
| | 4/26/14 | Had bills under $100 a month for over a year. Got a whammy bill out of the blue for over $880. Turns out I'm another one of the LADWP's "estimated" meter readers.. Because they are having problems sorting out how to properly track and bill people in one of the most technologically advance cities in the world. No competition for these guys and they can make up the rules as they go along and basically do whatever they want. LADWP is one of the most whack utilities. Stop over charging people! |
| | 5/1/14 | LADWP is claiming that because my previous bills are estimates, that after getting an ACTUAL meter reading I owe approximately four times the amount this month in "new" charges. Even if I had owed a bit more because of a year's worth of wrong meter readings, it doesn't explain the bizarre nature of the bill. I've been in my building for 6 years, I know what my bill's ranges are, and this one is out of character. i believe they are doing this to everyone and using the 'estimate' defense to claim that the large bills are correct. I see many people with this problem and two network news articles about it. I want a class-action suit against them. Even if the estimates were wrong for the year, it doesn't explain the normal trend of what I'd normally owe for the 5 years prior that I was paying. |
| | 5/13/14 | I am so upset!.. We have a new baby and we live in a small condo and we usually pay around $80 .. I received a bill of over $400 in January! I called right away to tell them it's absolutely incorrect and the promised to take it away and do a new read.. So I got the new bill today and it now says over $500!! Meaning that my current bill is again at 90 dollars but they will not take the previous amount off because they said the reading is correct. They keep giving me a whole holiday excuse and running power from fridge or heater and I told them we have not changed our habits and being settled in and I told her well if it's about habits then my bill should be again over 400 since you're saying my habits have been increasing she had no response to that assumption.. How can I go from 80 to $500 and back to $80 .. Makes no sense!! I'm not working I have a new baby and two other children. I cannot pay for this!! |
| | 5/20/14 | My wife and I live in a 1000 sq. ft. home in Wilmington CA. Normally our water usage bill was between $45-75 per every 61 day billing period dating back to April 2012. Then just this past April 2014 DWP sent us a bill for $2800 for water usage adjustments since they claimed our previous bills had been all based on estimates. They reviewed that bill and now claim that we only owe $2500. This includes the following amounts:<br><br>$584 worth of water from August-October 2013<br><br>$1336 worth of water from October-December 2013 and |

13

**CLASS ACTION COMPLAINT**

Exhibit 1
21

| | | |
|---|---|---|
| | | $848 worth of water from February-April 2014. |
| | | I live with only my wife. My plumber has confirmed that there are no leaks, theft of water by tapping into my line or any other water problems on our premises. We also do not have a pool and refuse to water our lawns due to the drought. |
| | | Historically we've averaged 12 HCF of water usage per billing period. In the billing periods in question DWP claims that we used 153 HCF-237 HCF. Just to give you an example of how much water that is, it would be the equivalent of me filling up four to seven 21ft long by 8ft deep swimming pools to capacity of 25,000-30,000 gallons of water. Surely if that amount of water was being used on my property I would know it. Something is incredibly wrong over at the DWP with either their meter or newly implemented billing system. |
| | | When we last spoke with the DWP we filed a complaint and I asked to speak with a Supervisor. They coaxed me into agreeing to a payment plan to pay off our balance, despite me advising them that I do not agree with any of these charges. Now they are claiming that because we agreed to this payment plan that we must pay the first amount of $440 by June 4th or our water and electricity will be cut off. We have never paid more than $300 for both water and power and feel as if DWP is extorting us now. Please advise of any helpful hints or tips to resolve this situation. A Class Action lawsuit should be on the horizon! |
| | 5/22/14 | After waiting six months for a bill, DWP has incorrectly billed for electricity on rental units I manage. In speaking with the customer service reps which can take up to thirty minutes to reach one, they do not follow through resolving the problem. Finally spoke to a "supervisor" today, who also was not familiar with the new system they put in to place months ago. Their auto pay option does not allow a customer to cancel once a bill has been issued, so the overcharge has now been charged to my credit card (despite the customer service rep letting me know she disabled it). I'm sure this is happening to thousands of customers and although they have promised to work out the kinks on their system, they are failing to provide customer service. |
| | 6/3/14 | I manage a 10 unit building, which received at $12,055.29 water bill. I wanted to let people know that when you get an "estimated bill" it is not because DWP did not come out and read the meter. it is because their system only give them 48 hours to get the reading into the system. If it is not input and "ESTIMATED" bill goes out. I know this from contacting the LADWP about the bill for the building I manager. So I requested corrected billing for the past five bills. I did received them, but there is still a problem because |

14

**CLASS ACTION COMPLAINT**

Exhibit 1
22

| | | |
|---|---|---|
| 1 2 3 4 5 6 7 | | they are trying to tell me that 10 units used 607,376 gallons of water in one billing period (64 days). This equals 9490.25 gallons per day or If you wish 949 gallons per unit per day. The average per person per day is 70 gallons. So either I have 13.55 person living in each unit or 25% of the toilets are running 24/7.<br><br>LADWP does not care, nor can you get any assistance from them.. I think I and going to call the news.  Anyone want to join me?<br><br>Property Manager |
| 8 9 10 11 12 13 14 | 6/5/14 | I moved to my new apartment in September 2013. The first bill i received was close to $30, the second and third, $22. I just received a bill today, June 4th, for a bill of $397 due June 17th. I called DWP and their explanation was they had me as zero usage from 11/13/13-05/15/2014. I, somehow, still received a minor bill. They also stated that due to a glitch in their new system, everyone is suffering. They will generously give me 6 months, or 3 billing cycles, to pay back what "I owe" since it took them 6 months to fix their mistake. However, I must make this payment on top of my regularly scheduled payment. That means I'll be paying 12 months worth in a 6 month time period. You mess up and I have to pay the consequences?! That just doesn't seem legal to me! Not a happy camper! |
| 15 16 17 18 19 20 21 22 23 24 25 26 27 28 | 6/7/14 | I am very upset with LADWP for overcharging me on my bill - acknowledging that they overcharged me - and yet did nothing to correct it!!! LADWP sent me a bill for $1100 about three months ago. This is three times higher than my normal bill. I called to inquire about why the bill was so high and requested a field investigation. A month or so later I get a call from one of the field investigators, "Luis." Luis proceeded to tell me that my bill was high because for many months I received an "estimated" read that had lower kilo-watt hours (KWH) than what I actually used. Then he very rudely proceeded to blame ME for their incorrect estimates. He said that he the readers could not get access to my property to read the meter so they had to do an estimate. I advised him that each time a meter reading was scheduled to take place, I received the letter from the LADWP and kept my gate open, so they had access but did not bother to show up. Then backed off from his statement and said that over the summer months they have a shortage of readers so they very likely did not stop by my house to read the meter. Then he had the nerve to ask me why I did not call the LADWP when I noticed that my bills were too low, trying again to place the blame on ME for their mistake. I told him that my bills were always in the $350 - $500 so I had no reason to suspect that my bills were too low, and it's their job to get the accounting right, not my job. So then Luis says he will try to do something to correct my bill because they lumped all of the 4000KWH in my last bill, kicking me up to the 3rd tier billing rate. There's no dispute that they're |

<div align="center">15</div>

<div align="center">CLASS ACTION COMPLAINT</div>

Exhibit 1<br>23

04/01/2015

| | | |
|---|---|---|
| | | overcharging me by doing this, but nothing was done after a month! I called again and the customer service line after a month and the customer service representative said that there was no record of my conversation with Luis in the system other than "the customer called."<br><br>The bottom line is that the LADWP is ripping people off and someone needs to stop them. They try to blame the victim, take no ownership of their mistake and purposely do not document the full extent of the conversations they have with their customers. Furthermore, they acknowledged that they're overcharging me by lumping several months worth of KWHs in my final bill (kicking it up to Tier 3) that should have been assessed to prior months under Tier 1 and Tier 2 billing and did NOTHING to fix it. In my opinion, only a CLASS ACTION LAWSUIT will put the LADWP in its place. They're supposed to serve the public but they have no regard whatsoever to the public. They're doing whatever the please and they're one of the most corrupt organizations in government. |
| | 7/1/14 | I have a small place that over the last 8 years the water / sewage bill is at the most $20 per month.<br><br>The account was paid in full 1-17-14 then bill is suddenly 299.00<br><br>I called ask what was going on - well they said 100 of was sewage , as trying to say that is way it was high - then ask how do they measure that ?<br>they said based on water uses - then with a bit more investigation we discover that all this is from 1 month - when no one was there and mind you no leaks as well.<br><br>A bit more asking question and we discover that this is all estimated bill - well that is a amazing that calculation .<br><br>I asked 2 months ago for a investigation and for the meter to be read and th now the only response is threat to turn off the water .<br><br>I have no been on the phone waiting to talk with some one it has been 50 mins so far-<br><br>these people should not be allowed to run this business .<br><br>How can we take legal action against the DWP<br><br>I would be happy to join a class action |
| | 7/17/14 | My water bill for the last 14 years averages $150/$200 month. Suddenly 4/14, I get a $2,600.00 bill, contacted DWP office,(after 2:00 hours on hold) they transferred me to Investigations Dept. They tell me "OOOPS it is an estimated bill, will work on it". Next, I received duplicated bills with |

16

**CLASS ACTION COMPLAINT**

Exhibit 1
24

| | |
|---|---|
| | different amounts and different meter reads. I have contacted Investigations again and, unavailable Supervisor, his assistant on vacation, two of the Inspectors no longer work there, and waiting for DWP consumer relations to call back after 3 calls, they threatened to turn off my water, I'm still in the fighting ON hold right now. I will not stop until this gets solved. |
| 7/21/14 | Like so many others, I was hit with a huge bill from DWP, July 2014. My bills from DWP average approximately $250 for 60 days. I just received my bill that reads $1,010!! I spoke with a representative who told me there was a glitch in the system and I was being undercharged for 8 months. The representative also told me they are really understaffed. How is that my issue? The company is now charging me for their negligence. I was a new customer 8 months ago and had no idea they were "estimating" my bill for 8 months. I have a meter, they read it, why is this an estimation? DWP is a grossly unfair, scandalous, and seriously negligent company. I miss So. CA Edison- never had an issue with them. Shame on DWP! |
| 7/23/14 | We leased a warehouse at 8423 Canoga October 2013. Primary use is storage and shipping. We have no AC or heating in the unit. We are there 8 hours a week at best. However our Electrical bill (not water) continues to rise. We contacted them many times. On hold for up to two hours to no avail. We wrote them to no avail. We have been paying these bills (up to $950.00 per month) for over 9 months now. Finally we spoke with Patricia Team 18 in early July. She assured us they will send someone out to investigate. We received a "Blocked" call 4 days later early June from LADWP and the man was rude and in a hurry and said all I need to do is make sure someone is there to meet us there that day. We made sure to be there as instructed...no one called or showed up! SHAME on these crooks! No help! If we do not pay they will disconnect us and take us to collections...yet they refuse to investigate why we have such bills.<br><br>We need help. Please. I am a 75 year old woman trying to keep my business afloat and Americans working. |
| 7/25/14 | I was stunned to receive a bill of over $1100 today for electricity from LADWP. After waiting an hour on hold I was given a different number to call because I have solar panels. That number has only a machine to leave a message and they say they will return the call within 4 to 6 Days. DAYS??? Stomach is in knots waiting to try to straighten out this situation. Like others, I'm being charged over $700 alone for tier 3 pricing which is outrageous and incorrect. If the meter had been read at the time of use we would never have been even close to tier 3 or even 2. Historically we used about $60 of power per month BEFORE installing solar panels which were sized to cover almost 90% of our use. Something is seriously funky here... |

<div align="center">

17

**CLASS ACTION COMPLAINT**

</div>

Exhibit 1
25

| 7/26/14 | I was making payments on an already escalated bill, then I lost my job in October of 2013, I made a payment of over 600.00 mainly because I did not know where my next dollar would come from. After not hearing from the DWP due to issues they had with their billing system...In February 2014 I received a bill for 1,600.00+, the following day I received another for 3,500+!! Really? How does that not set off an error flag...tried and tried to reach someone...In May I was told that they could not reduce the billing, I have to pay 4,300.00!! If any one wants to file, I will join. Today I spoke to a rep who made payment arrangements that are as follows, 1,300 by August 11, 1,500 in September, 1,500 in October, really? How? Guess I have to hit the streets!! Please let's sue, so I can get my money back!!! After hearing others complaints that are very similar, I know we have a case. |
|---|---|
| 7/29/14 | I have been in my present address since 2001. Normally, my total two months DWP bills have been around $600 to $1,000 for the last 13 years. For this July, DWP bill is about $2,400 with $1,700 for water. We called and complained and they revised it with a similar bill amount but moved the water consumption (6 times the norm) to other periods. December and January with sprinkles shut down showing my highest usage in my life. You can view the attached image to see this is made up by DWP. I do not know what to do. Can anyone please help me to find a solution? |
| 7/29/14 | Similar to other reviews, for the past 10 years, my largest bill with ladwp has been around $300. Average bill ranges around $150 - $190 with A/C or heat. After moving into a small home that has all energy efficient appliances and light fixtures, NO air conditioning, I received my first bill for 30 days of $810. I called ladwp 3 times (on hold more than 30 minutes each times) and sent an email through their 'contact us' page on the website, and was assured this was an error on their part and to not pay anything, they would fix. To be specific: it was a calculation error... This morning, I received my adjusted bill. Well, nothing was adjusted. My $810 was now past due and now I owe $2,200!!! As I type this, I've been on hold for 32 minutes yet again with LADWP... |
| 8/9/14 | I've lived in a house with my wife for about 3 years and when we moved out a month ago, we cancelled the water/ power for that place. After cancelling the account, the next bill, which I recieved today (8/09) was $3304 for the past 4 months. Usually the bill was about $400/ every two months. Not sure why this bill was for a four month period instead of two but more importantly, why was it $3304 this time?? I can't get a hold of anyone and I've been on hold for over an hour. From reading, it looks like this has happened with people before who were billed based on estimated usages. If i used the water, fine, ill pay it but not at an inflated price due to it being all lumped into one bill shooting me up into a higher tier???? |

18

**CLASS ACTION COMPLAINT**

Exhibit 1
26

| | | |
|---|---|---|
| 1 | | Totally willing to file a class action suit to stop this. This is ridiculous. |
| 2 | | |
| 3 | 8/16/14 | I received a shut off notice for over $2400.00.On the same day I received a bill for over $650.00. I hadn't received a bill in 4 or 5 months. I went down to the DWP office to discuss with someone. When I told them we had not received a bill in months, they basically said I was lying. They said we could set up a payment arrangement but we would have to pay something that day ( which I didn't have) We then called DWP but was on hold for 2 hours for one day. The next day we were on hold for another 2 hours. I have read in the Daily News DWP has hired new customer service reps. and have revamped the whole operation. I see NOTHING changed. They are still the same old rude DWP workers and still over charging customers. I am on a fixed income of $1062.00 a month. I have no idea how this will get paid. Something needs to be done. This is so unfair!! |
| 4 | | |
| 5 | | |
| 6 | | |
| 7 | | |
| 8 | | |
| 9 | | |
| 10 | | |
| 11 | 8/20/14 | My bill average less than $60 a month. For 6 months I have been requesting a bill from DWP. I was told it was late due to new billing system. Six months later I received a bill for $800 along with a shut-off notice. I tried to contact DWP and was left on hold for 1 hour at which time the phone just cut off. I tried calling back only to be told by a nasty representative, "be glad it is for that amount and there is nothing they can do." I am on a fixed income and don't see how I can come up with the ridiculous amount in 5 days without any warning. I know this is wrong! I don't average that much a month. I need help.... this isn't right. I am sending them a complaint letter but what do I do in the mean time. I have a special needs child that requires electricity in my home. I am so frustrated with the uncaring DWP incompetence. Help please!!!!!! |
| 12 | | |
| 13 | | |
| 14 | | |
| 15 | | |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | 8/26/14 | I've lived in my two bedroom apartment for a year now. Every time I received a bill from LADWP I paid it and it was usually $30-$40. This past month after not receiving a bill for four months I get a bill for $1468.00. What?! Of course I thought it was a mistake so I immediately called about it. I was told that my meter was broken and they were giving me my estimated readings for the ENTIRE year and the estimated readings were extremely low. I asked to speak to a supervisor and I got HERBERT, he was without a shadow of a doubt the worst costumer service representative I've ever come across. His response was "You didn't notice you had a low bill?" Are you freaking kidding me?! I just moved into this apartment I have no idea what the bill should be. Why didn't you freaking notice the bill was too low. It seems right. I live by myself in a one bedroom apartment, don't have a dishwasher, washer and drying or central air. I have an AC unit that I hardly ever use because I'm never home. He said, "I don't understand what the problem is you used the services now we are simply just billing you for what you used." The payment arraignment was for at least $400 every two months. Why do I have to be in a financial hardship because LADWP |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |
| 28 | | |

04-01-2015

19

**CLASS ACTION COMPLAINT**

Exhibit 1
27

| | |
|---|---|
| | decided not to do their job and bill me correctly even though I think the 'corrected' amount is too high as well! The worst part is they're a complete monopoly so it's not like I could switch to another company. I want to start a class action lawsuit ASAP. They can't get away with this. |
| 9/15/14 | I would like to register a complaint regarding the Los Angeles Department of Water and Power. I was shocked in April 2014 to receive a water bill for 10 times our highest ever bill (approximately $1000.00 for a two month period). We have followed all of the water conservation efforts, do not have a leak, and have never had a bill even close to this amount. I contacted the DWP and was told that it was due to the new billing system with estimated reads. They were claiming that they estimated payment amounts for the past few bills and that this was an actual read and the systems way of "catching up". I set up a claim with the field investigation office and spoke to someone who said they have a 6 week backlog on investigations. He reiterated the estimated billing system.<br><br>If this is the case, consumers have no recourse. The estimated billing system does not take into account the tiered billing system. If the bills had been accurately reported (with actual meter reads), my bill never would have even reached the Tier 2 billing rate because we were well below that. This forces customers to pay a higher rate for what would have been Tier 1 charges. It cannot be legal for a company to overcharge a customer based on their inaccurate billing system. My meter is located on the street (not in a yard or a place with limited access) – there is no excuse for an inaccurate read. Is the customer expected to check the read each month and report it to the DWP to fix their estimated read any time it differs? I feel like I am being held hostage by a company which has no competitors and no opportunity for recourse. I have contacted my city council representative Felipe Fuentes and am hoping for some resolution. Is a class action lawsuit my only option? |
| 10/11/14 | I have been receiving overly high LADWP bills for the last year. I've lived in the SFV for over twenty years in 4 different homes and have never had bills this high. In the past I had a family, a large yard and a pool. Now I've downsized and live alone. My bills are twice to three times what I've paid in the past. Mostly on water. Every bill I get I call to complain and get the same standard answers. 'maybe you have a leak' or 'that's what the meter reads as your usage'. I keep telling them my house has been totally remodeled, new kitchen and bathrooms and all new energy star appliances. Plus I'm one person take one shower a day and do two loads of laundry a week. How can my water usage average over 600 gallons a day?! I've put in for an onsite assessment over 4 months ago and have heard nothing back. These bills are ridiculous ($700-800). I'll have to sell my house because I can't afford |

20

**CLASS ACTION COMPLAINT**

Exhibit 1
28

| | | |
|---|---|---|
| 1 | | LADWP. Something has to be done. |
| 2 | 10/28/14 | Please help get the LADWP billing issue investigated. I am simply at a loss. I don't think anything is going to be done to fix our high bills, unless there is public awareness brought to this issue. In Feb 2014, Tena Esseddine of NBC LA reported on the LADWP overcharging problem, but I believe we need to get more media attention to this growing problem. |

Please help get the LADWP billing issue investigated. I am simply at a loss. I don't think anything is going to be done to fix our high bills, unless there is public awareness brought to this issue. In Feb 2014, Tena Esseddine of NBC LA reported on the LADWP overcharging problem, but I believe we need to get more media attention to this growing problem.

I just sent an email to: tips@nbcla.com requesting another in-depth investigative report on the LADWP due to the lack of response, specifically, on my account. It's apparent that there has been a lack of response on other LADWP customers dealing with the same issue and I am asking that if you read this post, you also send an email to tips@nbcla.com relaying your financial hardships with the LADWP.

Yesterday I called the LADWP again (5th time) and was literally laughed at by the rep when I told her how other customer service reps had told me my bill was calculated wrong, don't pay the bill because it will be fixed soon, we (as in the LADWP) obviously messed up.... The customer service rep LAUGHED at me and told me that she never would have said something like that so I must not be telling the truth. None of my previous requests for investigations into my bill were in her computer system and I am looking at a bill now of over $3550.00... for 6 months.... Please we have to stop complaining and do something!

**11/21/14**

My last 3 bill cycles have been 3-4 times higher than I am used to. I have filed bill inquiries online to no avail, no one ever contacts me back. When I call customer service they defer the problem to the "heat wave" or "maybe you have a leak". It's been 3 months since I put in a claim to have my meter checked, and NOTHING from them except bills that keep increasing dramatically.

I am going to local news sources, I will go to small claims, I will escalate this as far as I can because they are expecting me to pay for a service I am not using.

550 sq ft Studio apartment, one person only living here, work full time 50 hours a week, don't cook, do laundry on weekends....my usual bills for the past 20 months have been $100/2 months. Now my bills are $400+/2 months.

They are ILLEGALLY over-charging and I'm PISSED because they won't do anything to fix it. They even have a web page dedicated to explaining since they are changing their billing system, a small % of customers are receiving extremely high bills lately, but they do nothing to help us fix this

| | |
|---|---|
| | problem. |
| 1/21/15 | I just received a bill from LADWP for $1,926.46!!!! When calling and speaking to a customer service representative they claim our billing from April 2014 have all been based off estimated reads. Those estimates we're apparently way off and we now owe almost $2000 for the actual read. I asked how this is possible and why the reads are based off estimates and she said the system turned off the actual read in April and accepted responsibility for inaccurate billing. ONLY OPTION... SET UP PAYMENT PLANS FOR THE BALANCE ALONG WITH USUAL BILLING!!!!!! I can't afford this and I have no idea what to do!! |
| 1/27/15 | They are charging me $4500 for a billing error that they caused. They said they had been under charging me for months. How is this my fault, I live in a budget now they want to blame me for the mistakes they did. I asked if they had a billing plan they said no . I have to come up with the money or I will lose my electricity. CAN THEY DO THIS??? |
| 2/27/15 | I was disconnected (water) for $5723.73 I called ladwp and was told that my bills were from 2013. they told me the there was "delayed billing" and "bad meter reads". I ask could I get payment arrangements they said no. said they can't. I am a part time worker for the city of Los Angeles, and can't afford the payment. they told me that my bills were my fault for non-payment. so I asked, if there was "delayed billing" and "bad meter reads" how was this my fault? still waiting (with no water service) for an answer. can they do this? is this legal? |
| 3/3/15 | I have never received a bill for the place I live at for over a year now. I have called and always been told to just wait and that it was in the mail. Every time I called they said not to worry, they would set up a payment plan if necessary. Last week I received my disconnect notice. This is the first piece of mail I have ever received from them. They are saying I have to pay $2,312.88. I called and was told they could set up a payment plan with the smallest first payment being $770. That's more than my rent. I asked why I never received a bill. They said they sent them (starting 6 months after I started service) to an address I haven't been at since I was in college over 7 years ago! They will not budge and their representatives are useless. They obviously hate their jobs and will not help me at all. I'm going to get disconnected and have no idea what to do. Crazy thing is, this is not the first time they do something this stupid. |
| 03/12/2015 | The Same thing been happening to me I did not receive a bill for 9 months I was calling and going to the branch office asking them why I'm not receiving my bill and they told me I didn't have one after 9 months I received a bill for over 3000 dollars they recently shut my water off because of this matter I called up there and told them that I have a son on life support equipment ever |

22

**CLASS ACTION COMPLAINT**

Exhibit 1
30

| | | |
|---|---|---|
| | | night and I need my water and power and my account was red flag for my son condition which he's only 5 yeas old and they still didn't care I called ever body the Mayer office the district 8 office our counsel office and none of them can give me answers why are we voting for these people and they can't help I need some help fast before me and my kids be in the dark or with no water |
| 03/12/2015 | | I've been getting an ever-increasing bill from the Los Angeles DWP for a separate garage-apartment on my home property where the electricity has been cut off for almost A YEAR! This was an issue with a former occupant, but not my main point.<br><br>The DWP has been billing roughly $93/month for SANITATION (trash collection) and SEWER costs on a DEAD ACCOUNT for an unoccupied garage-apartment! If these fees are attached to the account, as I've been told in a previous fiasco regarding "bundling" of unnecessary services with open DWP accounts, and the account is no longer active, how do they get off charging for services NOT BEING RENDERED????<br><br>The DWP is as corrupt an organization as they come, and I will not continue to be victimized. Perhaps a class action suit is in order. |

## CLASS ACTION ALLEGATIONS

60.    Plaintiff brings this class action on behalf of himself and all others who purchased electricity, water, sewage or solar power services from the LADWP and/or sanitation services from LA San.

61.    Members of the Class are so numerous that joinder of all members would be impracticable.

62.    There are questions of law and fact common to all the members of the Class that predominate over any questions affecting only individual members, including:

a.   Whether the LADWP's billing practices constitute fraud and/or violations of consumer protection statutes;

b.   Whether the LADWP breached its contracts with Class members by overbilling them for services that they did not consume;

c.   Whether the CC&B System is defective; and

---

23
**CLASS ACTION COMPLAINT**

Exhibit 1
31

1         d.   Whether defects in the CC&B System caused Class members to incur

2    damages, and the amount of such damages.

3        63.    Plaintiff's claims are typical of the claims of other members of the Class.

4    Plaintiff has no interests antagonistic to those of the Class, and Defendant has no defenses unique

5    to Plaintiff.

6        64.    Plaintiff will fairly and adequately protect the interests of the Class, and has

7    retained attorneys experienced in class and complex litigation.

8        65.    A class action is superior to all other available methods for this controversy

9    because: (i) the prosecution of separate actions by the members of the Class would create a risk

10    of adjudications with respect to individual members of the Class that would, as a practical

11    matter, be dispositive of the interests of the other members not parties to the adjudications, or

12    substantially impair or impede their ability to protect their interests; (ii) the prosecution of

13    separate actions by the members of the Class would create a risk of inconsistent or varying

14    adjudications with respect to the individual members of the Class, which would establish

15    incompatible standards of conduct for Defendant; (iii) Defendant acted or refused to act on

16    grounds generally applicable to the Class; and (iv) questions of law and fact common to

17    members of the Class predominate over any questions affecting only individual members, and a

18    class action is superior to other available methods for the fair and efficient adjudication of the

19    controversy.

20        66.    Plaintiff does not anticipate any difficulty in the management of this litigation.

21

22    **FIRST CAUSE OF ACTION**

23    **(Fraud and Deceit Based Upon Billing for Water, Electricity and Sanitation Services)**

24

25        67.    Plaintiff incorporates by reference each preceding paragraph as though fully set

26    forth herein.

27        68.    The LADWP made the following misrepresentations, misstatements of fact, and

28    engaged in the concealment and nondisclosure of facts to its customers as follows:

---

24

**CLASS ACTION COMPLAINT**

Exhibit 1
32

a. The LADWP concealed from its customers its decision not to send out meter readers to collect accurate numbers reflecting its customer's actual usage of electrical, water and sanitation services.

b. In sending out bills with "estimated" readings for its services, the LADWP misrepresented the amount of services that the customer actually used during the covered billing period, and concealed from the customer the fact that the customer used an amount different than the LADWP's estimated number.

c. In sending out bills with "estimated" readings for services utilized during the billed period, the LADWP misrepresented the amount of monies that the customer actually owed for services the customer utilized during the covered billing period, and concealed the fact that the customer had been over-billed or under-billed.

d. The LADWP misrepresented the nature of its "estimated" billing, in that the number it represented to the customer as "estimated" for that billing period was not, in fact, based upon the customer's usage for that billing period, nor was it based upon the customer's previous usage, and the LADWP did not disclose that there was no relationship between the estimated number and the customer's actual usage.

e. The LADWP misrepresented to its customers that the LADWP's charges for services for the covered billing period were satisfied when the customer paid the current bill in full, and concealed the fact that the customer's payment in full was not in fact payment in full.

f. The LADWP misrepresented to customers that its billing was based on meter readings when, in fact, it did not read the meter, and did not notify the customer that it had not read the meter, and did not include the word "estimated" in its bill, even though no meter reading had actually taken place.

g. The LADWP concealed from its customers that it had not billed the customer for all of the customer's usage during a billed period, and that the LADWP would

---

25
**CLASS ACTION COMPLAINT**

Exhibit 1
33

aggregate earlier unbilled charges into a later bill, thus pushing the cost of the electricity and/or water into a higher tier (and thus more costly) category.

h. The LADWP misrepresented to customers that the reason it was billing customers based on tiered billing was to encourage conservation when, in fact, its actual practices with regard to tiered billing were designed to prevent and discourage conservation, and instead were designed to enhance the revenues to the LADWP.

i. The LADWP states on its website: "Electric and water meters are used to measure the amounts of electricity and water that a customer uses and are read and recorded by LADWP meter readers each billing period," when, in fact, they are not.

69. At all times herein, the LADWP knew: That the amounts in the bills it sent to its customers were wrong; that the amounts it represented to customers for the customer's usage were wrong; that it had no basis on which to believe that the numbers it provided as an estimated billing had any basis in reality; that the customer's payment of its estimated bills did not extinguish the customer's liability for that billing period; that it was providing estimated billing without notifying the customer that the billing was based on an estimated number; that the unbilled portions of previous bills would be aggregated into later bills and billed at a higher tiered rate as a result of the aggregation; that its principal use of tiered billing was for revenue enhancement; that its billing and informational practices discouraged conservation; that it could not fulfill its contractual obligations to provide its customers with accurate billing during any given billing period; and that it did not read and record customers' usage during each billing period.

70. At all times herein, the LADWP intended that its customers should rely upon its misrepresentations, misstatements, and not learn of the concealments alleged herein. Each of the misrepresentations, misstatements, and concealments were intended to maximize the amount of revenue the LADWP could recoup from its customer billing, and diminish the outlay and expense that actual, timely, accurate monthly meter readings would have required.

---

26
**CLASS ACTION COMPLAINT**

Exhibit 1
34

71.     Plaintiff and the Class did, in fact, rely upon the misrepresentations, misstatements, and concealments. Reliance by Plaintiff and the Class was entirely reasonable and justifiable, as the LADWP, alone, was in sole possession of all relevant facts.

72.     Plaintiff and the Classes were damaged by virtue of the misrepresentations, misstatements, and concealments alleged herein.

## SECOND CAUSE OF ACTION
### (Fraud and Deceit Based Upon Billing for Solar Power Services)

73.     Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

74.     Defendant has falsely represented that Class members would benefit by the installation of a solar power system at their residences. Defendant represented that this benefit would include credit for all power generated by these solar power systems and a credit at the rate set by law for excess energy generated.

75.     In fact, Defendant had no intent to credit its customers for electrical power generated or to reimburse for excess energy generated at the appropriate rate.

76.     Defendant adopted a scheme of accepting electrical energy generated at high rates and crediting customers for the production of that energy at the lowest rates.

77.     This deceptive and unwarranted practice was hidden by convoluted and opaque invoices which did not reveal the rates at which electric power was credited for those with solar systems.

78.     Such conduct was intentional for the purpose of generating additional revenue for Defendant to the detriment of the Class.

79.     Class members reasonably relied on the uniform representations made to each concerning the Solar Power Incentive Program.

80.     As a result of this conduct, Class members have been damaged.

### THIRD CAUSE OF ACTION
**(Negligent Misrepresentation Based Upon Billing for Water, Electricity and Sanitation Services)**

81.     Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

82.     The LADWP made the following misrepresentations and misstatements of fact, and engaged in the concealment and nondisclosure of facts to its customers as follows:

a.  The LADWP concealed from its customers its decision not to send out meter readers to collect accurate numbers reflecting its customer's actual usage of electrical, water and sanitation services.

b.  In sending out bills with "estimated" readings for its services, the LADWP misrepresented the amount of services that the customer actually used during the covered billing period, and concealed from the customer the fact that the customer used an amount different than the LADWP's estimated number.

c.  In sending out bills with "estimated" readings for services utilized during the billed period, the LADWP misrepresented the amount of monies that the customer actually owed for services the customer utilized during the covered billing period, and concealed the fact that the customer had been over-billed or under-billed.

d.  The LADWP misrepresented the nature of its "estimated" billing, in that the number it represented to the customer as "estimated" for that billing period was not, in fact, based upon the customer's usage for that billing period, nor was it based upon the customer's previous usage, and the LADWP did not disclose that there was no relationship between the estimated number and the customer's actual usage.

e.  The LADWP misrepresented to its customers that the LADWP's charges for services for the covered billing period were satisfied when the customer paid

---

28

**CLASS ACTION COMPLAINT**

Exhibit 1
36

the current bill in full, and concealed the fact that the customer's payment in full was not in fact payment in full.

f.   The LADWP misrepresented to customers that its billing was based on meter readings when, in fact, it did not read the meter, and did not notify the customer that it had not read the meter, and did not include the word "estimated" in its bill, even though no meter reading had actually taken place.

g.   The LADWP concealed from its customers that it had not billed the customer for all of the customer's usage during a billed period, and that the LADWP would aggregate earlier unbilled charges into a later bill, thus pushing the cost of the electricity and/or water into a higher tier (and thus more costly) category.

h.   The LADWP misrepresented to customers that the reason it was billing customers based on tiered billing was to encourage conservation when, in fact, its actual practices with regard to tiered billing were designed to prevent and discourage conservation, and instead were designed to enhance the revenues to the LADWP.

i.   The LADWP states on its website: "Electric and water meters are used to measure the amounts of electricity and water that a customer uses and are read and  recorded by LADWP meter readers each billing period," when, in fact, they are not.

83.   At all times herein, these statements were made negligently, with no basis to believe their accuracy.

84.   Plaintiff and the Class did, in fact, rely upon the misrepresentations, and misstatement. Reliance by Plaintiff and the Class was entirely reasonable and justifiable, as the LADWP, alone, was in sole possession of all relevant facts.

85.   Plaintiff and the Classes were damaged by virtue of the misrepresentations, misstatements, and concealments alleged herein.

---

29

**CLASS ACTION COMPLAINT**

Exhibit 1
37

**FOURTH CAUSE OF ACTION**
**(Negligent Misrepresentation Based Upon Billing for Solar Power Services)**

86. Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

87. Defendant has falsely represented that Class members would benefit by the installation of a solar power system at their residences. Defendant represented that this benefit would include credit for all power generated by these solar power systems and a credit at the rate set by law for excess energy generated.

88. At all times herein, these statements were made negligently, with no basis to believe their accuracy.

89. Class members reasonably relied on the uniform representations made to each concerning the Solar Power Incentive Program.

90. As a result of this conduct, Class members have been damaged.

**FIFTH CAUSE OF ACTION**
**(Breach of Contract for Water, Electricity and Sanitation Services)**

91. Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

92. Plaintiff and the Class entered into substantially identical agreements with the LADWP whereby the LADWP agreed to supply water, electricity, and sanitation services to its customers, and to bill for the customer's actual usage of such utilities during the billing period at the rates and under the circumstances set by the Board, and approved by the Los Angeles City Council.

93. The reading of meters by the LADWP in order to obtain accurate usage for billing purposes was an express term of the contract. Plaintiff and each member of the Class were required to expressly agree to permit the LADWP unobstructed access to their meter by LADWP meter readers for the purposes of meter reading and maintenance.

---

30
**CLASS ACTION COMPLAINT**

Exhibit 1
38

94. Plaintiff and the Class agreed to pay the LADWP in full each billing period for their actual usage of such utilities during the billing period at the rates and under the circumstances set by the Board, and approved by the Los Angeles City Council.

95. The LADWP breached its contractual obligations by failing to accurately obtain usage information for each billing period for the Plaintiff and the Class.

96. The LADWP breached its contractual obligations by resorting to estimated billing under circumstances that were outside the stated parameters that permitted estimated billing by the LADWP.

97. The LADWP breached its contractual obligations by billing Plaintiff and the Class amounts for utility usage that it knew was incorrect.

98. The LADWP breached its contractual obligations by billing Plaintiff and the Class amounts for utility usage that exceeded its municipal authority.

99. Plaintiff and the Classes have each performed all obligations they were required to perform under the contracts.

100. The aforementioned breaches of contract have proximately caused the Plaintiff and the Class economic injury and other damages.

### SIXTH CAUSE OF ACTION
**(Breach of Covenant of Good Faith for Water, Electricity and Sanitation Services)**

101. Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

102. In all contracts, there is an implied covenant of good faith and fair dealing requiring the parties to deal fairly with each other in all respects in connection with the contracts and not to take any action which deprives the other of the benefits of the contracts to any extent.

103. The covenants of good faith and fair dealing include obligations on the part of Defendant to charge and collect only for water, electricity and/or sanitation services actually provided, and not more.

31
**CLASS ACTION COMPLAINT**

Exhibit 1
39

104. Defendant breached the covenants of good faith and fair dealing in the contracts by charging Plaintiff and members of the class for more water, electricity and/or sanitation services than those which were actually provided.

105. Defendant has further breached the covenant of good faith and fair dealing by failing to undertake a comprehensive program to rectify its breaches of contract and to fully reimburse Class members.

106. As a direct and proximate result of Defendant's breach of the implied covenant of good faith and fair dealing, Plaintiff and members of the Class have been damaged in amounts to be proven at trial, and continue to be damaged.

## SEVENTH CAUSE OF ACTION
### (Breach of Contract for Solar Power Services)

107. Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

108. Defendant has entered into written contracts with members of the Class.

109. Such contracts are known as Solar-Powered Customer Generation Interconnection Agreements.

110. The contract provides that excess energy is energy generated by the customer beyond the customer's load requirement.

111. The agreement expressly provides that the customer shall purchase electric service as needed solely from LADWP in accordance with the appropriate rate schedule in the electric rate ordinance.

112. The agreement further provides that LADWP shall purchase excess energy produced by the customer and that payments for excess energy shall be made as described in the appropriate rate schedule in the electric rate ordinance.

113. Defendant has breached the foregoing agreement by failing to credit Class members for electric power produced by their solar systems.

32
**CLASS ACTION COMPLAINT**

Exhibit 1
40

114. Defendant has further breached this agreement in failing to appropriately pay for excess energy at the rates set forth in the applicable rate schedule pursuant to City ordinance.

115. All conditions precedent to Defendant's liability under the contract have been performed by members of the Class.

116. As a result of the foregoing breaches, members of the Class have been damaged.

## EIGHTH CAUSE OF ACTION
### (Breach of Covenant of Good Faith for Solar Power Services)

117. Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

118. In all contracts, there is an implied covenant of good faith and fair dealing requiring the parties to deal fairly with each other in all respects in connection with the contracts and not to take any action which deprives the other of the benefits of the contracts to any extent.

119. The covenants of good faith and fair dealing include obligations on the part of Defendant to charge and collect only for water, electricity and/or sanitation services actually provided, and not more.

120. Defendant breached the covenants of good faith and fair dealing in the contracts by charging members of the Class for electric power actually provided by solar systems and failing to appropriately credit customers for excess electric power generated at the rates agreed.

121. Defendant has further breached the covenant of good faith and fair dealing by failing to undertake a comprehensive program to rectify its breaches of contract and to fully reimburse or credit Class members for solar power generated.

122. As a direct and proximate result of Defendant's breach of the implied covenant of good faith and fair dealing, members of the Class have been damaged in amounts to be proven at trial, and continue to be damaged.

## NINTH CAUSE OF ACTION
### (Restitution/Unjust Enrichment for Monies Received for Water, Electricity, Sanitation and Solar Power Services)

123. Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

124. Plaintiff and the Class have conferred a benefit upon the LAWP. The LADWP has received and retained money belonging to Plaintiff and the Class as a result of their billing practices described herein.

125. The LADWP appreciates or has knowledge of said benefits.

126. Under principles of equity and good conscience, the LADWP should not be permitted to retain money belonging to Plaintiff and the Class that it unjustly received as a result of its actions.

127. Plaintiff and the Class have suffered loss as a direct result of the LADWP's conduct.

128. Plaintiff, on his own behalf and on behalf of the Class, seeks the imposition of a constructive trust on and restitution of the proceeds the LADWP unjustly received as a result of its conduct described herein, as well as attorneys' fees and costs pursuant to Cal. Code Civ. P. § 1021.5.

## TENTH CAUSE OF ACTION
### (Money Had and Received for Water, Electricity, Sanitation and Solar Power Services)

129. Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

130. Plaintiff and the members of the Class paid to Defendant, and Defendant retained, monies which it would be inequitable for Defendant to continue to retain.

131. Plaintiff and the members of the Class paid excess and undue money to the LADWP as a result of:

    a.   mistake of fact and/or ignorance of law; and/or

    b.   misrepresentations that amounts were due and such amounts were not due; and/or

---

34

**CLASS ACTION COMPLAINT**

Exhibit 1
42

c.  the LADWP's breach of the parties' contractual agreements.

132. The payments of this excess and undue money created an indebtedness on the part of the LADWP to Plaintiff and the Class.

133. As a result of Defendant's unjust retention and collection of the excess and undue money discussed above, the LADWP is indebted to Plaintiff and the Class in a sum certain, the amount of which can be proven at trial by reference to the LADWP's own records. It would be inequitable for the LADWP to retain said sums, and Plaintiff and the Class are entitled to recover said sums as money had and received by the LADWP from Plaintiff and the Class.

## ELEVENTH CAUSE OF ACTION
### (For Violation of City Ordinance for Electricity Services)

134. Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

135. The City has adopted an ordinance setting forth the rates which are to be charged for electricity.

136. The most recent ordinance setting rates is Ordinance No. 182273, approved by the City.

137. The ordinance provides electric rate schedules for residential customers including standard residential rates.

138. The rates are set forth in three tiers depending on the month of the year with differential rates for the period January through March, April through June, July though September, and October through December.

139. Defendant has violated this Ordinance by failing to charge Plaintiff and members of the Class based upon the actual amount of electricity consumed.  Defendant has incorrectly estimated the amount of electricity consumed by Plaintiff and members of the Class, thereby charging Plaintiff and members of the Class at Tiers higher than that which would be reflected if based upon actual usage.

140. The violation of this ordinance has caused members of the Class to incur damages.

35
**CLASS ACTION COMPLAINT**

Exhibit 1
43

## TWELVETH CAUSE OF ACTION
### (For Violation of City Ordinance for Solar Power Services)

141. Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

142. The City has adopted an ordinance setting forth the rates which are to be charged for electricity.

143. The most recent ordinance setting rates is Ordinance No. 182273, approved by the City.

144. The ordinance provides electric rate schedules for residential customers including standard residential rates.

145. The rates are set forth in three tiers depending on the month of the year with differential rates for the period January through March, April through June, July though September, and October through December.

146. Defendant has violated this ordinance by failing to appropriately credit the Class for net excess energy supplied to Defendant.

147. Electrical energy supplied at higher tiered rates is credited at lower rates, in violation of the ordinance.

148. The violation of this ordinance has caused members of the Class to incur damages.

## THIRTEENTH CAUSE OF ACTION
### (For Failure to Perform a Nondiscretionary Duty for Charges for Water, Electricity, Sanitation and Solar Power Services)

149. Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

150. Defendant has failed to perform its nondiscretionary duties by: (i) charging Class members for services that they did not consume; (ii) failing to credit Class members for electric power generated by solar systems and continuing to charge as if no such systems existed; and (iii) for failing to appropriately reimburse Class members at the agreed rates the net excess energy produced by solar systems.

36

**CLASS ACTION COMPLAINT**

Exhibit 1
44

151. The failure to perform nondiscretionary duties by Defendant has damaged Class members, as discussed herein, in an amount to be proven at trial.

## FOURTEENTH CAUSE OF ACTION

### (For Violation of California Takings Clause (California Constitution, Article I, Section 19) for Solar Power Services)

152. Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

153. As discussed herein, Defendant has taken solar power energy from Class members without providing compensation.

154. This taking is a violation of California Takings Clause (California Constitution, Article I, Section 19).

155. This unwarranted taking has caused Class members to incur damages.

## FIFTEENTH CAUSE OF ACTION
### (Violation of Due Process for Charges for Water, Electricity, Sanitation and Solar Power Services)

156. Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

157. The LADWP's capacity to impose Tier 2 and/or Tier 3 rates on customers under certain specified conditions constitutes a penalty.

158. The manner in which the LADWP assesses Tier 2 and Tier 3 rates on its customers, as alleged above, constitutes unguided discretion to impose fines without procedural protections. Customers are provided with no control over the fairness of the process or the result.

159. The imposition of Tier 2 or Tier 3 rates on customers' usage by the LADWP, as alleged above, is entirely random, without any compliance with the Rules and enabling Ordinances that permit the LADWP to assess tiered rates. Under such circumstances, the LADWP's assessment of tiered penalties is oppressive and unreasonable.

37
**CLASS ACTION COMPLAINT**

Exhibit 1
45

160. Penalty rates are assessed upon LADWP customers without the rudiments of fair play, without notice, without an opportunity to respond, and without a hearing. No fair warning or notice is provided to customers before being hit with excessive bills. Customers are threatened with termination of services unless payment is made or a payment schedule agreed to.

161. No written explanation of the true reasons why customers are assessed tiered penalty rates on usage is provided by the LADWP to its customers. Customers are assessed penalties in their billing which are erroneous or arbitrary, but customers are not informed that the penalties are erroneous or arbitrary.

162. Although the purpose for which tiered billing was enabled was stated to be conservation, in fact, the penalties the LADWP assess customers has nothing to do with conservation. The LADWP, thus, exacts an oppressive penalty from its customers without regard for the legitimate objectives sought to be achieved.

163. Constitutional principles of due process require that laws must be sufficiently clear to give fair warning of the conduct prohibited, and they must provide a standard or guide against which conduct can be uniformly judged by courts and administrative agencies. The LADWP's imposition of erroneous or arbitrary penalties gives no fair warning to customers of prohibited conduct, and in fact penalties are assessed even when such conduct did not occur in the first place. Under such circumstances there is no possibility to uniformly judge the conduct of customers since penalties are imposed regardless of conduct

164. The LADWP's assessment of tiered penalties is undertaken without regard for facts, without consultation with the affected customer, without taking any evidence, and without any hearing, while at the same time, the assessment of those same tiered penalties generated revenue for the same department which assessed those fines. Thus, with respect to the tiered penalties assessed by the LADWP on its customers, the LADWP acts as judge, jury, executioner, and collector of the revenues derived from its arbitrary determinations. Such a structure is prima facie a violation of the due process rights of the LADWP customers.

38

**CLASS ACTION COMPLAINT**

Exhibit 1
46

165. Based upon the above-stated allegations, the LADWP's implementation and assessment of tiered penalty billing violates the due process rights of Plaintiff and the members of the Class.

## SIXTEENTH CAUSE OF ACTION
### (Consumer Legal Remedies Act, Civil Code §§ 1750, et seq. for injunctive relief for Charges for Water, Electricity, Sanitation and Solar Power Services)

166. Plaintiff incorporates by reference each preceding paragraph as though fully set forth herein.

167. The LADWP is a "person" as defined by Civil Code § 1761(c).

168. Plaintiff and the members of the Class are "consumers" within the meaning of Civil Code § 1761 (d).

169. Water, electricity, sanitation, and solar power constitute "goods" as defined by Civil Code § 1761 (a), and/or the provision of such by a utility constitutes a "service" pursuant to the CLRA.

170. Plaintiff's and the Class members' purchases of the LADWP's services are "transaction( s)" as defined by Civil Code § 1761(e).

171. Defendant has violated the CLRA in at least the following respects:

   a. In violation of Section 1770(a)(14), Defendant has represented to its customers that the transaction confers or involves obligations which it does not have or involve, or which are prohibited by law.

   b. In violation of Section 1770(a)(16), Defendant has represented that Defendant's services been supplied in accordance with a previous representation, when they have not.

172. Defendant engaged in deceptive practices in violation of the CLRA that were designed to induce Plaintiff and the members of the Class to purchase services at inflated rates, and more of each. In particular, Defendant: (i) charged Class members for services that they did not consume; (ii) failed to credit Class members for electric power generated by solar systems

1   and continuing to charge as if no such systems existed; and (iii) failed to appropriately reimburse

2   Class members at the agreed rates the net excess energy produced by solar systems.

3       173. By engaging in the foregoing unfair or deceptive conduct, Defendant actively

4   concealed and failed to disclose material facts about its billing practices.

5       174. Plaintiff and the members of the Class justifiably acted or relied to their detriment

6   upon the misrepresentations and/or concealed or non-disclosed facts as evidenced by the

7   payment of their LADWP bills.

8       175. Defendant's acts were intended to be deceptive and/or fraudulent, namely, to reap the

9   benefit of higher billing rates for its products.

10      176. Plaintiff and the members of the Class suffered injury in fact and/or actual damages

11  as a direct result of Defendant's misleading representations in violation of the CLRA.

12      177. To this day, Defendant continues to violate the CLRA by engaging in

13  misrepresentations regarding its billing practices.

### SEVENTEENTH CAUSE OF ACTION
**(Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 for Charges for Water, Electricity, Sanitation and Solar Power Services)**

18      178. Plaintiff incorporates by reference each preceding paragraph if as though fully set

19  forth herein.

20      179. The acts alleged above are unlawful, unfair and fraudulent practices and constitute

21  unfair competition under Cal. Bus. & Prof. Code § 17200.

22      180. Defendant's conduct constitutes a fraudulent business practice because:

    a. the LADWP sent bills to customers representing the amount of services that the customer had consumed and the amount the customer owed for such usage, when the LADWP knew that such representations were false.

    b. The LADWP misrepresented to its customers that the LADWP's charges for services for a covered billing period were satisfied when the customer paid

28

---

40
**CLASS ACTION COMPLAINT**

Exhibit 1
48

the bill in full, when in fact the customer owed undisclosed additional sums to the LADWP.

c. The LADWP misrepresented to customers that its billing was based on meter readings, when in fact, billing was estimated.

d. The LADWP concealed from its customers that it had not billed the customer for all of the customer's usage during a billed period, and that the LADWP would aggregate earlier unbilled charges into a later bill, thus pushing the cost of the LADWP's services into a higher tier (and thus more costly) category.

e. The LADWP represents that "Electric and water meters are used to measure the amounts of electricity and water that a customer uses and are read and recorded by LADWP meter readers each billing period," when, in fact, they are not.

f. The LADWP represents that its "rates are designed to encourage conservation" when in practice the LADWP discourages conservation, utilizes the tiered rate scheme to increase revenues;

g. Defendant failed to credit Class members for electric power generated by solar systems and continuing to charge as if no such systems existed; and

h. Defendant failed to appropriately reimburse Class members at the agreed rates the net excess energy produced by solar systems.

181. Defendant's conduct constitutes unlawful business practices in that the LADWP's billing practices constitute violations of:

a. Ordinance 182273;

b. the Consumer Legal Remedies Act;

c. California Code of Regulations, title 4, § 4090, Billing for Utility Services;

d. Rules Governing Water and Electric Service,

e. Public Utilities Code § 770; and

f. California Civil Code §§ 1572, 1709, 1710, and 1711.

41
**CLASS ACTION COMPLAINT**

Exhibit 1
49

182. Defendant's conduct constitutes an unfair business practice because LADWP customers were charged thousands of dollars in improperly assessed charges that served no conservation purpose or other public benefit.

183. Plaintiff and the Class have suffered financial loss as a result of the wrongful conduct here alleged. Defendant's violations of the UCL have caused injury to Plaintiff, the Class, and the public.

184. Plaintiff and the Class are entitled to an injunction that Defendant cease and desist from engaging in the UCL violations alleged above.

## EIGHTEENTH CAUSE OF ACTION
**(For Declaratory Relief for Charges for Water, Electricity, Sanitation and Solar Power Services)**

185. Plaintiff incorporates by reference each preceding paragraph if as though fully set forth herein.

186. An actual controversy has arisen and now exists regarding Plaintiff's rights, and Defendant's obligations, relating to the proper billing and charging for utility services provided to plaintiffs and class members. The controversy relates to both parties' rights and obligations under both the contracts and city ordinances discussed above.

187. Plaintiff requests a judicial determination of his rights and duties, and the rights and duties of absent class members, and a declaration as to whether Defendant's billing and collection acts are illegal and/or a breach(es) of contract.

188. A declaration from the Court ordering the City to stop its illegal practices is required.

## NINETEENTH CAUSE OF ACTION
### (For Injunctive Relief Relating to Billing for Water, Electricity, Sanitation and Solar Power Services)

189. Plaintiff incorporates by reference each preceding paragraph if as though fully set forth herein.

190. Based on Defendant's ongoing conduct, Defendant will irreparably harm Plaintiff and the Class.

191. Plaintiff and the Class are therefore entitled to an order restraining Defendant and its representatives, attorneys, servants, agents and any other persons from further harming Plaintiff and the Class pending final judgment of this case.

192. Unless Defendant is enjoined by the Court, it will continue to harm Plaintiff and the Class.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that the Court enter judgment and orders in his favor and against Defendant as follows:

A.   An order certifying the Class and directing that this case proceed as a class action;

B.   An order requiring:

   i.   That Defendant issue refunds for all accounts due refunds;

   ii.   The appointment of an independent audit firm to assess the accuracy and/or functionality of the CC&B System;

C.   Judgment in favor of Plaintiff and members of the Class in an amount of actual damages to be determined at trial;

D.   An order granting reasonable attorneys' fees and costs, as well as pre-and post judgment interest; and

E.   Such other and further relief as this Court may deem appropriate.

43
**CLASS ACTION COMPLAINT**

Exhibit 1
51

1

## DEMAND FOR A TRIAL BY JURY

2  Plaintiff demands a trial by jury on all issues so triable as a matter of right.

3

4

5  Dated: March 31, 2015                    Law Offices of Michael J. Libman

6

7

8                                    By: _____

9                                    Michael J. Libman (SBN 222353)
                                     Law Offices of Michael J. Libman
10                                   16133 Ventura Blvd., Suite 1200
                                     Encino, CA 91436
11                                   Telephone: 818-995-7300

12

13                                   Jack Landskroner
                                     (Pro Hac Vice to be filed)
14                                   Drew Legando
                                     (Pro Hac Vice to be filed)
15                                   **LANDSKRONER GRIECO**
16                                   **MERRIMAN LLC**
                                     1360 West 9th Street, Suite 200
17                                   Cleveland, Ohio 44113
                                     T. (216) 522-9000
18                                   F. (216) 522-9007

19

20                                   *Counsel for Plaintiff*

21

22

23

24

25

26

27

28

44

## CLASS ACTION COMPLAINT

Exhibit 1
52

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

MICHAEL J. LIBMAN, ESQ.
MICHAEL J. LIBMAN, ESQ., SBN.: 222353
LAW OFFICES OF MICHAEL J. LIBMAN
16133 VENTURA BOULEVARD, SUITE 1200
ENCINO, CALIFORNIA 91436
TELEPHONE NO.: 818-995-7300   FAX NO.:
ATTORNEY FOR *(Name):* Plaintiff ANTWON JONES, et al.

**FILED**
Superior Court of California
County of Los Angeles

**APR 01 2015**

Sherri R. Carter, Executive Officer/Clerk
By _____ Deputy
Shaunya Bolden

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Los Angeles
STREET ADDRESS: 111 N. Hill Street
MAILING ADDRESS: Same as above
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: CENTRAL DISTRICT

CASE NAME: ANTWON JONES, on behalf of himself, and all other similarly situated v. City of Los Angeles, etc.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: BC 577267 |
|---|---|---|
| [x] Unlimited (Amount demanded exceeds $25,000)   [ ] Limited (Amount demanded is $25,000 or less) | [x] Counter   [ ] Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: <br> DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[x] Civil rights (08)
[ ] Defamation (13)
[x] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[x] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [x] is [ ] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [x] Large number of separately represented parties   d. [x] Large number of witnesses
   b. [X] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   c. [x] Substantial amount of documentary evidence   f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply):* a. [x] monetary b. [x] nonmonetary; declaratory or injunctive relief c. [ ] punitive
4. Number of causes of action *(specify):* 19
5. This case [x] is [ ] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: March 31, 2015
MICHAEL J. LIBMAN, ESQ.
(TYPE OR PRINT NAME)   (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Legal Solutions Plus

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10

Exhibit 1
53

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**CM-010**

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)—Personal Injury/Property
Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*
**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
Asbestos Property Damage
Asbestos Personal Injury/
Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
Medical Malpractice–
Physicians & Surgeons
Other Professional Health Care
Malpractice
Other PI/PD/WD (23)
Premises Liability (e.g., slip and fall)
Intentional Bodily Injury/PD/WD
(e.g., assault, vandalism)
Intentional Infliction of
Emotional Distress
Negligent Infliction of
Emotional Distress
Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
Legal Malpractice
Other Professional Malpractice
*(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
Breach of Rental/Lease
Contract *(not unlawful detainer or wrongful eviction)*
Contract/Warranty Breach—Seller
Plaintiff *(not fraud or negligence)*
Negligent Breach of Contract/
Warranty
Other Breach of Contract/Warranty
Collections (e.g., money owed, open
book accounts) (09)
Collection Case—Seller Plaintiff
Other Promissory Note/Collections
Case
Insurance Coverage *(not provisionally complex)* (18)
Auto Subrogation
Other Coverage
Other Contract (37)
Contractual Fraud
Other Contract Dispute
**Real Property**
Eminent Domain/Inverse
Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
Writ of Possession of Real Property
Mortgage Foreclosure
Quiet Title
Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
Writ–Administrative Mandamus
Writ–Mandamus on Limited Court
Case Matter
Writ–Other Limited Court Case
Review
Other Judicial Review (39)
Review of Health Officer Order
Notice of Appeal–Labor
Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
*(arising from provisionally complex case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
Abstract of Judgment (Out of
County)
Confession of Judgment *(non-domestic relations)*
Sister State Judgment
Administrative Agency Award
*(not unpaid taxes)*
Petition/Certification of Entry of
Judgment on Unpaid Taxes
Other Enforcement of Judgment
Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
Declaratory Relief Only
Injunctive Relief Only *(non-harassment)*
Mechanics Lien
Other Commercial Complaint
Case *(non-tort/non-complex)*
Other Civil Complaint
*(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate
Governance (21)
Other Petition *(not specified above)* (43)
Civil Harassment
Workplace Violence
Elder/Dependent Adult
Abuse
Election Contest
Petition for Name Change
Petition for Relief from Late
Claim
Other Civil Petition

| SHORT TITLE: ANTWON JONES, ET AL. V. CITY OF LOS ANGELES, ETC. | CASE NUMBER |
|---|---|

# CIVIL CASE COVER SHEET ADDENDUM AND
# STATEMENT OF LOCATION
## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.**

**Item I.** Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? ☑ YES   CLASS ACTION? ☐ YES   LIMITED CASE? ☐ YES   TIME ESTIMATED FOR TRIAL 10 ☐ HOURS/ ☑ DAYS

**Item II.** Indicate the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet form, find the main Civil Case Cover Sheet heading for your case in the left margin below, and, to the right in Column **A**, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column **B** below which best describes the nature of this case.

**Step 3:** In Column **C**, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Local Rule 2.0.

### Applicable Reasons for Choosing Courthouse Location (see Column C below)

1. Class actions must be filed in the Stanley Mosk Courthouse, central district.
2. May be filed in central (other county, or no bodily injury/property damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV. Sign the declaration.

| | **A** Civil Case Cover Sheet Category No. | **B** Type of Action (Check only one) | **C** Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ A7100 Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | ☐ A7110 Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| **Other Personal Injury/ Property Damage/ Wrongful Death Tort** | Asbestos (04) | ☐ A6070 Asbestos Property Damage | 2. |
| | | ☐ A7221 Asbestos - Personal Injury/Wrongful Death | 2. |
| | Product Liability (24) | ☐ A7260 Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | ☐ A7210 Medical Malpractice - Physicians & Surgeons | 1., 4. |
| | | ☐ A7240 Other Professional Health Care Malpractice | 1., 4. |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250 Premises Liability (e.g., slip and fall) | 1., 4. |
| | | ☐ A7230 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1., 4. |
| | | ☐ A7270 Intentional Infliction of Emotional Distress | 1., 3. |
| | | ☐ A7220 Other Personal Injury/Property Damage/Wrongful Death | 1., 4. |

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION**

Local Rule 2.0
Page 1 of 4

Exhibit 1
55

| SHORT TITLE: ANTWON JONES, ET AL. V. CITY OF LOS ANGELES, ETC. | CASE NUMBER |
|---|---|

|  | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C**<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/ Wrongful Death Tort** | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1., 3. |
|  | Civil Rights (08) | ☑ A6005  Civil Rights/Discrimination | 1., 2., 3. |
|  | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1., 2., 3. |
|  | Fraud (16) | ☑ A6013  Fraud (no contract) | 1., 2., 3. |
|  | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1., 2., 3. |
|  |  | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1., 2., 3. |
|  | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 2.,3. |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1., 2., 3. |
|  | Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1., 2., 3. |
|  |  | ☐ A6109  Labor Commissioner Appeals | 10. |
| **Contract** | Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2., 5. |
|  |  | ☑ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2., 5. |
|  |  | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1., 2., 5. |
|  |  | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1., 2., 5. |
|  | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 2., 5., 6. |
|  |  | ☐ A6012  Other Promissory Note/Collections Case | 2., 5. |
|  | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1., 2., 5., 8. |
|  | Other Contract (37) | ☐ A6009  Contractual Fraud | 1., 2., 3., 5. |
|  |  | ☐ A6031  Tortious Interference | 1., 2., 3., 5. |
|  |  | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 8. |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation      Number of parcels_____ | 2. |
|  | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2., 6. |
|  | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2., 6. |
|  |  | ☐ A6032  Quiet Title | 2., 6. |
|  |  | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6. |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
|  | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
|  | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2., 6. |
|  | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2., 6. |

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

| SHORT TITLE: ANTWON JONES, ET AL. V. CITY OF LOS ANGELES, ETC. | CASE NUMBER |
|---|---|

| | **A** Civil Case Cover Sheet Category No. | **B** Type of Action (Check only one) | **C** Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2., 6. |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2., 5. |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus | 2., 8. |
| | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2. |
| | | ☐ A6153  Writ - Other Limited Court Case Review | 2. |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2., 8. |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1., 2., 8. |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1., 2., 3. |
| | Claims Involving Mass Tort (40) | ☑ A6006  Claims Involving Mass Tort | 1., 2., 8. |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1., 2., 8. |
| | Toxic Tort Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1., 2., 3., 8. |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1., 2., 5., 8. |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ A6141  Sister State Judgment | 2., 9. |
| | | ☐ A6160  Abstract of Judgment | 2., 6. |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2., 9. |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2., 8. |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2., 8. |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2., 8., 9. |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1., 2., 8. |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1., 2., 8. |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2., 8. |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1., 2., 8. |
| | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1., 2., 8. |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2., 8. |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121  Civil Harassment | 2., 3., 9. |
| | | ☐ A6123  Workplace Harassment | 2., 3., 9. |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case | 2., 3., 9. |
| | | ☐ A6190  Election Contest | 2. |
| | | ☐ A6110  Petition for Change of Name | 2., 7. |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2., 3., 4., 8. |
| | | ☐ A6100  Other Civil Petition | 2., 9. |

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION**

Local Rule 2.0
Page 3 of 4

Exhibit 1
57

| SHORT TITLE: ANTWON JONES, ET AL. V. CITY OF LOS ANGELES, ETC. | CASE NUMBER |
|---|---|

**Item III.** Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., **Step 3** on Page 1, as the proper reason for filing in the court location you selected.

| REASON: Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected for this case.  ☑1. ☐2. ☐3. ☑4. ☐5. ☐6. ☐7. ☐8. ☐9. ☐10. | ADDRESS: NOT APPLICABLE. THIS IS A CLASS ACTION LAWSUIT. |
|---|---|
| CITY: NOT APPLICABLE | STATE:    ZIP CODE: 9001X |

**Item IV.** *Declaration of Assignment*: I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the ___Stanley Mosk___ courthouse in the ___Central___ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., § 392 et seq., and Local Rule 2.0, subds. (b), (c) and (d)].

Dated: 3/31/2015 _____

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 03/11).

5. Payment in full of the filing fee, unless fees have been waived.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

---

**CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION**

[Exempt From Filing Fee
Government Code § 6103]

1 | Jack Landskroner (*Admitted Pro Hac Vice*)
LANDSKRONER GRIECO MERRIMAN, LLC
2 | 1360 West 9th Street, Suite 200
Cleveland, Ohio 44113
3 |

**FILED**
Superior Court Of California
County Of Los Angeles

**NOV 10 2016**

Sherri R. Carter, Executive Officer/Clerk
By_____, Deputy
Martha Molinar

4 | Michael J. Libman
LAW OFFICES OF MICHAEL J. LIBMAN, APC
5 | 18321 Ventura Boulevard, Suite 700
Tarzana, California 91356
6 | Attorneys for Plaintiff

7 | Michael N. Feuer (SBN 111529)
   City Attorney
8 | Joseph A. Brajevich (SBN 156144)
   General Counsel, Department of Water and Power
9 | Eskel H. Solomon (SBN 101386)
   Assistant City Attorney
10 | Los Angeles City Attorney's Office
111 N. Hope Street, Room 340
11 | Los Angeles, California  90012

12 | Angela C. Agrusa (SBN 131337)
Maribeth Annaguey (SBN 228431)
13 | LINER LLP
1100 Glendon Avenue, 14th Floor
14 | Los Angeles, California 90024.3518
Attorneys for Defendant CITY OF LOS ANGELES
15 |

16 | **SUPERIOR COURT OF THE STATE OF CALIFORNIA
COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

17 | ANTWON JONES, on behalf of himself, and
all other similarly situated,
18 |

19 |               Plaintiff,

20 |      vs.

21 | CITY OF LOS ANGELES, by and through the
Los Angeles Department of Water and Power
22 | and DOES 1 through 50, inclusive,

23 |               Defendants.

24 |

25 |

26 |

27 |

28 |

Case No. BC577267
[Related to Case Nos. BC565618 (Lead),
BC568722, BC571664, and BC574690]

[CLASS ACTION]

**NOTICE OF FILING REVISED CLASS
ACTION SETTLEMENT AGREEMENT
AND LIMITED RELEASE**

[Filed Concurrently with Declaration of Paul
Bender]

Date:     November 18, 2016
Time:     1:30 p.m.
Dept:     323

Assigned for All Purposes to the
Hon. Elihu M. Berle, Dept. 323

Action Filed:      April 1, 2015
Trial Date:        None Set

1       Plaintiff Antwon Jones ("Plaintiff") and Defendant City of Los Angeles by and through the

2   Los Angeles Department of Water and Power (the "LADWP") (collectively the "Parties") hereby

3   jointly submit the attached Revised Class Action Settlement Agreement and Limited Release (the

4   "Revised Settlement Agreement") (attached hereto as Exhibit 1[1]), which resolves claims involving

5   customer overbilling and other billing errors that were caused by, and are related to, the defective

6   implementation of the LADWP's new Customer Care and Billing system (the "CC&B System")

7   or damages incurred by customers arising from their participation in the LADWP's solar program.

8   The Revised Settlement Agreement addresses the Court's prior concerns, incorporates revisions

9   based on recommendations of the Independent CC&B Billing System Monitor, and maintains the

10  goal of making whole every customer who has been erroneously charged.

11      The Court conditionally approved the Settlement on December 21, 2015, with instructions

12  regarding changes the Court required before issuing a preliminary approval order.  At that hearing,

13  the Court recognized that the estimated $44.7 million in credits and refunds to be issued was

14  simply that, stating "this is not a cap; it's just an estimate."  Since that hearing, the LADWP has

15  spent thousands of high level IT hours investigating potential inaccuracies in its billing and

16  developing the programs necessary to implement the Settlement.  As a result of this work,

17  additional class members and amounts owed have been identified.  Specifically, the estimated

18  credit/refund amount has increased by approximately $25 million.  This increase brings the

19  estimated settlement value to approximately $90 million (which includes $20 million the

20  Settlement Agreement requires LADWP appropriate and expend to remediate and stabilize the

21  CC&B Billing System).

22      Additionally, during an October 31st mediation, the Parties negotiated additional limited

23  revisions to the Settlement.  The revisions have the effect of accelerating the deadlines by which

24  the LADWP must comply with its non-monetary relief obligations in the Revised Settlement

25  Agreement and of providing greater independent oversight of the LADWP's compliance with the

26  Revised Settlement Agreement.

27
28

[1] A redline comparison to the Settlement Agreement filed November 18, 2015 is attached hereto as Exhibit 2.

I.   **THE COURT'S INSTRUCTIONS TO THE PARTIES AND WORK PERFORMED ON THE SETTLEMENT SINCE DECEMBER 21, 2015**

A.   **The Court's Conditional Preliminary Approval**

During the December 21, 2015 hearing, the Court:

      (a)     conditionally preliminarily approved the Settlement;

      (b)     appointed Antwon Jones as Class Representative;

      (c)     appointed Yaar Kimhi as the Class Representative for the Solar Customer Subclass;

      (d)     appointed Landskroner Grieco Merriman, LLC as Class Counsel;

      (e)     appointed Mr. Paul Bender as the Independent CC&B Billing System Monitor;

      (f)     appointed Dr. Barbara Barkovich as the Special Master in this case; and

      (g)     instructed the parties to make four additional changes to the Settlement:

            (i)     revise the language with regard to "notice" to clarify the distinction between class notice and a LADWP credit/refund letter notice;

            (ii)     send class notice to class members at the same time as the letters for the pre-identified claims to avoid any ambiguity or misunderstanding;

            (iii)     modify the class notice to set forth a clear schedule or timeline for filing claims in one place; and

            (iv)     clarify the language in the "Minimum Usage" Subclass.

The Parties have revised the Settlement to address each of the Court's concerns.  With respect to the Court's instruction to clarify the language in the "Minimum Usage" Subclass, the Parties have revised the prior subclasses titled: Tiered Billing, Trend Estimate and Estimated Electric Bills with Minimum Charges into a single "Overbilled" subclass to simplify and clarify the scope.  Specifically, this subclass is comprised of all LADWP customers that were overbilled as a result of being charged an incorrect rate, incorrect amount of consumption, incorrect utility tax rate or who did not have a discount applied.

## B.   Substantial Work Performed Since The December 21, 2015 Hearing Has Uncovered Additional Class Members And Amounts To Be Credited/Refunded

Since the December 21, 2015 hearing, the Independent CC&B Billing System Monitor has conducted numerous one and two day-site visits, document review and analysis sessions, and weekly conference calls with LADWP's personnel, Class Counsel and LADWP's Counsel. During the period April 12th through April 29th, 2016, the Independent CC&B Billing System Monitor conducted an extended site visit at LADWP.  As detailed in the *Report of Independent CC&B Systems Monitor Concerning Status of Class Action Settlement for First and Second Quarters of 2016*, filed with the Court on July 14, 2016, following this extended site visit, the Independent CC&B Billing System Monitor informed counsel for all Parties that the then-current Scope of Work and schedule would need to be significantly revised to allow additional time for the LADWP to undertake the additional work the Independent CC&B Billing System Monitor requested.  The Independent CC&B Billing System Monitor also stated that the Monitoring team would, itself, use this additional time to: (i) perform various verification tasks and data analyses required to ensure that the mechanisms and methodologies the LADWP utilized are accurate and reliable; and (ii) continue to work closely with LADWP IT Professionals to ensure that the Settlement's goal of refunding 100% of all overcharges to LADWP customers is achieved.

On July 14, 2016, the Independent CC&B Billing System Monitor: (i) informed the Court that the amount to be refunded to Class members would increase by at least $5.4 million dollars based on additional work the LADWP performed; and (ii) requested that the Court extend the deadline for the LADWP to complete the programming and testing necessary to identify all LADWP customers who have been overcharged and quantify the amounts of such overcharges to November 18, 2016.  On July 28, 2016, the Court granted the Independent CC&B Billing System Monitor's request and extended the deadline to November 18, 2016 to complete the programming and testing necessary for the LADWP to identify customers who have been overcharged and quantify the amounts of such overcharges.

On October 28, 2016, the LADWP concluded the work necessary to identify customers

1    who have been overcharged and quantify the amounts of such over charges, which is estimated to

2    be approximately $70 million in credits/refunds.  Thereafter, the Independent CC&B Billing

3    System Monitor finalized the work it was performing to confirm the accuracy of the LADWP's

4    programming and testing.

5    **C.    The Parties Revise The Settlement To Provide Additional Benefits To The**

6    **Class**

7         On October 31, 2016, the Parties participated in another day-long mediation at JAMS in

8    Los Angeles before the Hon. Dickran Tevrizian (Ret.).  During the October 31st mediation, the

9    Parties negotiated the following revisions to the Settlement:  (i) a revision to Rule 17 of the Rules

10   Governing Water and Electric Service; (ii) a revision to the 18 month Remediation Period; (iii) a

11   revision to the date by which the Tiger Team will be operational; (iv) a revision to the scope of

12   work the Independent CC&B Billing System Monitor is to perform involving the Tiger Team and

13   claims administration activities; (v) a revision to the date by which the Information Technology

14   Department Project Management Office will be operational; (vi) a revision to the claims process

15   for certain Solar Subclass members; and (vii) a revision to the amount of attorneys' fees and

16   expense reimbursement to be sought by Class Counsel.

17        As previously stated, the Parties also revised the Settlement to address the issues the Court

18   raised.

19   **II.   CONCLUSION**

20        The Parties have been engaged in significant efforts to identify all potential billing

21   inaccuracies and to better remediate the errors impacting the LADWP's customers.  The Parties

22   respectfully request the Court grant preliminary approval of the Settlement.

23

24

25

26

27

28

Dated:  November 10, 2016             LANDSKRONER GRIECO MERRIMAN, LLC

By: _____
                         Jack Landskroner
                         Attorneys for Plaintiff Antwon Jones

Dated:  November 10, 2016             LINER LLP

By: _____
                         Maribeth Annaguey
                         Attorneys for Defendant CITY OF LOS
                         ANGELES

**EXHIBIT 1**

[Exempt From Filing Fee
Government Code § 6103]

1   Jack Landskroner (Admitted Pro Hac Vice)
    LANDSKRONER GRIECO MERRIMAN, LLC
2   1360 West 9th Street, Suite 200
    Cleveland, Ohio 44113
3   T. (216) 522-9000
4   F. (216) 522-9007

5   Michael J. Libman (SBN 222353)
    LAW OFFICES OF MICHAEL J. LIBMAN
6   16133 Ventura Blvd., Suite 1200
    Encino, California 91436
7   Telephone (818) 995-7300

8   Attorneys for Plaintiff

9   Michael N. Feuer (SBN 111529)
      City Attorney
10  Joseph A. Brajevich (SBN 156144)
      General Counsel, Department of Water and Power
11  Eskel H. Solomon (SBN 101386)
      Assistant City Attorney
12    Los Angeles City Attorney's Office
    111 N. Hope Street, Room 340
13  Los Angeles, California  90012

14  Angela C. Agrusa (SBN 131337)
    Maribeth Annaguey (SBN 228431)
15  LINER LLP
    1100 Glendon Avenue, 14th Floor
16  Los Angeles, California 90024.3518
    Telephone:    (310) 500-3500
17  Facsimile:    (310) 500-3501

18  Attorneys for Defendant
    CITY OF LOS ANGELES

19
                SUPERIOR COURT OF THE STATE OF CALIFORNIA
20
                COUNTY OF LOS ANGELES, CENTRAL DISTRICT
21

| | |
|---|---|
| 21  ANTWON JONES, on behalf of himself, and all other similarly situated, | Case No. BC577267 |
| 22 | [Related to Case Nos. BC565618 (Lead), BC568722, BC571664, and BC574690] |
| 23          Plaintiff, | |
| 24      vs. | [CLASS ACTION] |
| 25  CITY OF LOS ANGELES, by and through the Los Angeles Department of Water and Power and DOES 1 through 50, inclusive, | **REVISED CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE** |
| 26 | |
| 27          Defendants. | Assigned for All Purposes to the Hon. Elihu M. Berle, Dept. 323 |
| 28 | Action Filed:      April 1, 2015 <br> Trial Date:        None Set |

38457.025-3493122

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.  RECITALS ............................................................................................................1

II.  DEFINITIONS ....................................................................................................8

III.  GENERAL TERMS AND CONDITIONS OF SETTLEMENT ......................14

    A.  Certification of Settlement Class.............................................................14

    B.  Settlement Subclasses .............................................................................15

        1.  Overbilled Subclass.......................................................................15

        2.  Incorrect Fee Subclass...................................................................15

        3.  Unrefunded Balance Subclass........................................................15

        4.  Solar Subclass ...............................................................................15

        5.  Premise Condition/Estimated Bill Subclass ..................................16

        6.  Automatic Bill Payment/Bank Overdraft Charge Subclass ...........16

        7.  Omnibus Subclass .........................................................................16

    C.  Settlement Relief.....................................................................................17

        1.  Monetary Relief.............................................................................17

            a.  Pre-Identified Non-Claims Made Subclass Members......................17

            b.  Pre-Identified Claims Made Subclass Members ..............................18

            c.  Omnibus Subclass Members ...........................................................19

            d.  Timing of Payment.........................................................................20

            e.  Uncashed and Returned Checks ......................................................21

        2.  Remedial Relief and Corrective Actions........................................21

            a.  Create and Adopt CC&B System Performance Metrics and Perform Work Necessary to Achieve and Maintain Compliance with these Metrics ........................................................21

            b.  Appointment of Independent CC&B System Monitoring Expert .............................................................................................36

            c.  Independent CC&B System Audits to Confirm Accuracy of CC&B System ...............................................................................38

            d.  Create and Implement Internal Billing "Tiger Team" To Address Unique or Complex Billing Issues ...................................39

e.  Create and Implement Information Technology Department Project Management Office .................................................... 40

f.  Amend Rule 17 of the Rules Governing Water and Electric Service ........................................................................... 41

g.  Settlement Class Members Who Entered Into A Payment Arrangement Schedule With The LADWP Due To Receiving A Delayed Bill At Any Time From September 3, 2013 Through November 18, 2016 Who Have Outstanding Payment Arrangement Balances Due May Elect To Extend The Term of Their Payment Arrangement Schedule By One Additional Year ................................................................. 42

D.  Class Notice Program ................................................................. 43

1.  Mailed Class Notice ........................................................... 43

2.  Emailed Class Notice .......................................................... 44

3.  Published Class Notice ........................................................ 45

4.  Internet and Website Class Notice ................................... 47

E.  Release, Waiver and Covenant Not To Sue ............................. 47

F.  Confirmatory Discovery ............................................................. 48

G.  Non-Admission of Liability ....................................................... 48

H.  Preliminary Approval ................................................................. 49

I.  Claims Process ............................................................................. 49

1.  Pre-identification ................................................................. 49

a.  Pre-Identified Non-Claims Made Subclass Members ...................... 49

b.  Pre-Identified Claims Made Subclass Members ............................. 50

2.  Self-Identification ................................................................. 51

3.  Pending Field Work Investigations ................................... 52

4.  Claims Administrator .......................................................... 52

5.  Special Master ...................................................................... 52

6.  Costs of Settlement Administration ................................... 54

J.  Requests for Exclusion of Settlement Class ............................. 54

K.  Objections and Requests To Appear At Final Approval Hearing .......................... 55

L.  Attorneys' Fees and Costs .......................................................... 57

|     |     |                                          |     |
| --- | --- | ---------------------------------------- | --- |
|     | M.  | Final Approval                           | 58  |
|     | N.  | Miscellaneous Provisions                 | 60  |
|     | 1.  | Authority of Signatories                 | 60  |
|     | 2.  | Binding Upon Successors                  | 60  |
|     | 3.  | Both Parties as Drafter                  | 60  |
|     | 4.  | Cooperation                              | 60  |
|     | 5.  | Counterpart Execution                    | 61  |
|     | 6.  | Governing Law                            | 61  |
|     | 7.  | Headings                                 | 61  |
|     | 8.  | Integration Clause                       | 61  |
|     | 9.  | Jurisdiction                             | 62  |
|     | 10. | Non-Waiver                               | 62  |
|     | 11. | Notice                                   | 62  |
|     | 12. | Severability                             | 62  |
|     | 13. | Time for Compliance                      | 62  |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

38457.025-3493122

iii

REVISED CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

Exhibit 2
69

This Revised Class Action Settlement Agreement and Limited Release ("Revised Agreement") is submitted pursuant to the California Code of Civil Procedure. Subject to the approval of the Court, this Revised Agreement memorializes the settlement between and among all Parties to fully resolve the Action. This Revised Agreement is entered into by and between Antwon Jones ("Plaintiff" or "Plaintiff Jones"), individually and as a representative of the Settlement Class (as defined herein), and as it pertains to the claims alleged in *Kimhi v. City of Los Angeles*, Case No. BC536272 (the "*Kimhi* Action"), Yaar Kimhi, individually and as the Class Representative for the Solar Customers Subclass, and named plaintiffs, Tahl Beckerman Megerdichian and Yelena Novak, and defendant the City of Los Angeles, by and through the Los Angeles Department of Water and Power ("LADWP" or "Department") and DOES 1 through 50, inclusive (the "City" or "Defendant") (collectively the "Parties"). This Revised Agreement is intended by the Parties to fully and finally compromise, resolve, discharge and settle all Released Claims (as defined herein) on the terms and conditions set forth herein, subject to approval of the Court.

## I.   **RECITALS**

WHEREAS, on April 1, 2015, Plaintiff Jones filed a class action in the Superior Court of the State of California for the County of Los Angeles captioned, *Jones v. City of Los Angeles*, Case No. BC577267 (the "Action");

WHEREAS, the Complaint in the Action alleges claims involving customer over-billing and other billing errors by the LADWP that were caused by, and are related to, the defective implementation of the LADWP's new Customer Care and Billing system (the "CC&B System") and damages incurred by customers arising from their participation in the LADWP's solar incentive program;

WHEREAS, prior to filing the Complaint in the Action, Class Counsel initiated an extensive and very lengthy investigation into the matters alleged in the Complaint and has continued to conduct an ongoing investigation into the facts and law relating to the allegations, claims and defenses asserted in this Action;

1      WHEREAS, Class Counsel's continuing investigation has included, among other things,

2 interviewing current and former LADWP employees and working closely with investigators and

3 Plaintiff Jones' non-testifying experts to diligently investigate the facts relevant to the merits of

4 the claims asserted in the Action, including the functionality of the CC&B System and the

5 LADWP's solar incentive program;

6      WHEREAS, LADWP conducted an internal investigation concerning issues relating to the

7 new CC&B System, and customer billing related matters, including, but not limited to, matters

8 involving claims made against the LADWP by customers involved in the LADWP's solar

9 incentive program, which remains ongoing;

10      WHEREAS, Plaintiff Jones directed his counsel to work with Plaintiff Jones' non-

11 testifying consultants to develop a highly detailed settlement proposal in which Plaintiff Jones

12 proposed to resolve the claims asserted in the Action, as well as the claims asserted in the

13 following three class actions filed against the City and the LADWP: *Bransford, et al. v. City of*

14 *Los Angeles*, Case No. BC565618 (the "*Bransford* Action"), *Fontaine v. City of Los Angeles, et*

15 *al.*, Case No. BC571664 (the "*Fontaine* Action"), and the *Kimhi* Action on terms that would

16 require the LADWP to:

17      (i)     conduct a review and audit of all LADWP customer accounts to determine if billing

18              errors occurred;

19      (ii)    refund or credit one hundred percent of the amounts the LADWP had improperly

20              charged any of its customers as a result of billing errors caused by the LADWP's

21              new CC&B System or because of the customers' participation in the LADWP's

22              solar incentive program;

23      (iii)   take the remedial measures necessary to ensure that the defects in the new CC&B

24              System were permanently corrected; and,

25      (iv)   provide independently verified evidence that the CC&B System was functioning

26              properly and generating accurate customer bills on an ongoing basis;

27

28

1    WHEREAS, after having provided the detailed settlement proposal, Class Counsel met and

2    conferred with counsel for the City and commenced formal settlement negotiations shortly

3    thereafter.  The Parties advanced settlement discussions as far as they could go until these efforts

4    stalled;

5    WHEREAS, after further consideration, the Parties agreed to continue their settlement

6    discussions in a more formal mediation environment and engaged the services of the Hon. Dickran

7    M. Tevrizian (Ret.), one of the most well respected mediators in the United States, to conduct a

8    formal mediation in this matter;

9    WHEREAS, because of the nature of the claims at issue in this litigation and the

10   complexity of the settlement terms proposed by Plaintiff Jones, Judge Tevrizian scheduled the

11   mediation to be conducted over a four day period on June 11-12, July 24 and July 31, 2015;

12   WHEREAS, the Parties thereafter participated in a contentious and protracted two day-

13   long mediation at JAMS in Los Angeles before the Hon. Dickran M. Tevrizian (Ret.) on June 11

14   and 12, 2015.  At the conclusion of that mediation session, the Parties reached an agreement in

15   principal on the material terms of the proposed class action settlement;

16   WHEREAS, following these mediation sessions, the Parties appeared before the Court and

17   informed the Court that the Parties had reached an agreement in principal on the material terms of

18   a proposed class action settlement;

19   WHEREAS, given the complexity of the settlement and the detail necessary to verify the

20   identity of affected accounts, the accuracy of the refunds due to customers and to validate

21   compliance and the completion of agreed-to remediation protocols, Judge Tevrizian scheduled an

22   additional mediation session on July 24, 2015 in which the Parties worked to define and document

23   other non-material terms;

24   WHEREAS, after the Parties had concluded negotiating all of the material and non-

25   material terms, other than the amount of attorneys' fees and expense reimbursement to be paid to

26   Class Counsel, on July 24, 2015 Judge Tevrizian informed the Parties that they could begin

27   negotiating the amount of attorneys' fees and expense reimbursement to be paid to Class Counsel,

28   and conducted a fourth day of mediation concerning this issue on July 31, 2015;

1    WHEREAS, despite the Parties' best efforts, and after a protracted mediation session on

2    July 31, 2015, the Parties reached an impasse with respect to Class Counsel's attorneys' fees and

3    expense reimbursement;

4    WHEREAS, in hopes of bridging this impasse, Judge Tevrizian made a mediator's

5    proposal, which after much discussion over several days, was accepted by the Parties;

6    WHEREAS, based upon the extensive investigation undertaken prior to settlement,

7    discovery provided during the negotiations and the analysis of the facts and the law applicable to

8    Plaintiff Jones' claims, and taking into account the extensive burdens and expense of litigation,

9    including the risks and uncertainties associated with protracted trials and appeals, as well as the

10   fair, cost-effective and assured method of resolving the claims of the Settlement Class, both

11   Plaintiff Jones, Plaintiff Kimhi and Class Counsel have concluded that this settlement provides

12   substantial benefits to the Settlement Class and is fair, reasonable, adequate and in the best

13   interests of Plaintiff Jones and the Settlement Class;

14   WHEREAS, during the September 11, 2015 Preliminary Approval Hearing Class Counsel

15   explained to the Court, *"the monetary relief includes 100 percent of recovery for each customer*

16   *for amounts that they were overbilled by D.W.P., that will result in $44 million in refunds and*

17   *credits, as a starting point."*  See September 11, 2015 Hearing Transcript at 14;

18   WHEREAS, at the conclusion of the initial hearing on Plaintiff's Motion for Preliminary

19   Approval of the Settlement, the Court directed Class Counsel to obtain input with respect to how

20   the settlement could be improved on behalf of Settlement Class Members.  In response to the

21   Court's directive, the Parties met and conferred with related counsel to solicit suggestions as well

22   as take additional steps to improve the settlement.  Class Counsel also actively sought out such

23   input from the Office of Public Accountability (OPA) / Ratepayer Advocate for the City of Los

24   Angeles for the purpose of allowing the Ratepayer Advocate to review the settlement and make

25   any recommendation the Ratepayer Advocate might offer to improve the settlement on behalf of

26   Settlement Class Members;

27   WHEREAS, after reviewing the settlement, the Ratepayer Advocate made only a single

28   recommendation with which Class Counsel agreed.  Class Counsel then negotiated with the City

38457.025-3493122                                           4

REVISED CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE
Exhibit 2

1 and LADWP to obtain the benefit requested by the Ratepayer Advocate, as detailed in Section III.

2 below;

3       WHEREAS, on November 3, 2015, the Court re-convened the hearing on Plaintiff Jones'

4 Motion for Preliminary Approval, which had been commenced on September 11, 2015.  During

5 the November 3, 2015 hearing, the Court again heard argument from the Parties in support of

6 Preliminary Approval and also heard from certain objectors, by their counsel.  At the conclusion

7 of the November 3, 2015 hearing, the Court instructed the Parties to make twelve additional

8 revisions to the settlement, in addition to the revisions that had been called for by the Court during

9 the September 11th hearing.  The Court also instructed the Parties and objectors that any further

10 briefing would be limited to only the twelve issues raised by the Court during the November 3rd

11 hearing and again continued the hearing on Plaintiff Jones' Motion for Preliminary Approval until

12 December 21, 2015;

13       WHEREAS, following the November 3rd hearing, the Parties again met and conferred with

14 each other and counsel for the objectors.  Based on these conferences, additional changes were

15 made to the settlement and presented to the Court on December 21, 2015;

16       WHEREAS, on December 21, 2015, the Court re-convened the hearing on Plaintiff Jones'

17 Motion for Preliminary Approval.  During the December 21, 2015 hearing, the Court again heard

18 argument from the Parties in support of Preliminary Approval and also heard from certain

19 objectors, by their counsel;

20       WHEREAS, during the December 21, 2015 Preliminary Approval Hearing, the Court

21 again recognized that the $44 million in refunds and credits identified by Class Counsel was an

22 estimate and that the aggregate amount to be refunded and credited could grow if additional issues

23 / items were discovered during the course of the remediation effort and stated in relevant part, "*the*

24 *monetary relief portion of the settlement provides settlement class members with an estimated $44*

25 *million in credits or refunds arising from overbilling.  And this is not a cap; it's just an estimate.*"

26 *See* December 21, 2015 Hearing Transcript at 81.

27       WHEREAS, at the conclusion of the December 21, 2015 hearing, the Court: (i)

28 conditionally preliminarily approved the settlement; (ii) appointed Antwon Jones as Class

38457.025-3493122

5

1  Representative; (iii) appointed Yaar Kimhi as the Class Representative for the Solar Subclass; (iv)

2  appointed Landskroner Grieco Merriman, LLC as Class Counsel; (v) appointed Mr. Paul Bender

3  as the CC&B Billing System Monitoring Expert; (vi) appointed Dr. Barbara Barkovich as the

4  Special Master in this case; and (vii) instructed the parties to make four additional changes to the

5  settlement;

6      WHEREAS, since the December 21, 2015 hearing, the CC&B System Monitoring Expert

7  has conducted numerous one and two day-site visits, document review and analysis sessions, and

8  weekly conference calls with LADWP's personnel, Class Counsel and LADWP's Counsel;

9      WHEREAS, during the period April 12th through April 29th, 2016, the CC&B System

10  Monitoring Expert conducted an extended site visit at LADWP;

11     WHEREAS, as detailed in the *Report of Independent CC&B Systems Monitor*

12  *Concerning Status of Class Action Settlement for First and Second Quarters of 2016* filed with

13  the Court on July 14, 2016, following this extended site visit, the CC&B Billing System

14  Monitoring Expert informed counsel for all Parties that the then-current Scope of Work and

15  schedule would need to be significantly revised to allow additional time for the LADWP to

16  undertake the additional work the Monitoring team requested.  The CC&B System Monitoring

17  Expert also stated that the Monitoring team would use this additional time to:  (i) perform various

18  verification tasks and data analyses required to ensure that the mechanisms and methodologies the

19  LADWP utilized are accurate and reliable; and (ii) continue to work closely with LADWP IT

20  Professionals to ensure that the Settlement's goal of refunding 100% of all overcharges to

21  LADWP customers is achieved;

22     WHEREAS, on July 14, 2016, the CC&B System Monitoring Expert: (i) informed the

23  Court that the amount to be refunded to Class members would increase by at least $5.4 million

24  dollars based on additional work the LADWP performed; and (ii) requested that the Court extend

25  the deadline for the LADWP to complete the programming and testing necessary to identify *all*

26  LADWP customers who have been overcharged and quantify the amounts of such overcharges to

27  November 18, 2016;

28

6

REVISED CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE
Exhibit 2
75

1    WHEREAS, on July 28, 2016, the Court granted the CC&B System Monitoring Expert's

2 request and extended the deadline to November 18, 2016 to complete the programming and testing

3 necessary for the LADWP to identify customers who have been overcharged and quantify the

4 amounts of such overcharges;

5    WHEREAS, on October 28, 2016, the LADWP concluded the work necessary to identify

6 customers who have been overcharged and quantify the amounts of such over charges.  Thereafter,

7 the CC&B System Monitoring Expert finalized the work it was performing to confirm the accuracy

8 of the LADWP's programming and testing;

9    WHEREAS, on October 31, 2016, the Parties participated in another day-long mediation at

10 JAMS in Los Angeles before Judge Tevrizian.  During the October 31st mediation, the Parties

11 negotiated the following revisions to the settlement: (i) a revision to Rule 17 of the Rules Governing

12 Water and Electric Service; (ii) a revision to the 18 month Remediation Period; (iii) a revision to the

13 date by which the Tiger Team will be operational; (iv) a revision to the scope of work the CC&B

14 System Monitoring Expert  is to perform involving the Tiger Team and claims administration

15 activities; (v) a revision to the date by which the Information Technology Department Project

16 Management Office will be operational; (vi) a revision to the claims process for Solar Subclass

17 members; and (vii) a revision to the amount of attorneys' fees and expense reimbursement which

18 may be sought by Class Counsel; and,

19    WHEREAS, the City and the other Released Parties, defined below, have denied, and

20 continue to deny, the substantive claims set forth in the complaints in this Action and in the

21 *Bransford*, *Fontaine*, and *Kimhi* Actions, and have denied and continue to deny any and all

22 wrongdoing and liability of any kind with respect to any and all facts and claims alleged and

23 further deny that any Settlement Class Member has suffered any damage caused by the City and

24 the other Released Parties.

25    **NOW, THEREFORE, IT IS HEREBY STIPULATED, CONSENTED TO AND**

26 **AGREED,** by and between the Parties, through their respective counsel, and subject to the

27 approval of the Court, that the Actions be settled, compromised and dismissed, on the merits and

28

1    with prejudice, and the Released Claims be finally and fully compromised, settled and dismissed

2    as to the Released Parties, subject to and in accordance with the following terms and conditions:

3    **II.     DEFINITIONS**

4             As used in this Revised Agreement and the exhibits thereto, in addition to any definitions

5    elsewhere in this Revised Agreement, the following terms shall have the meanings set forth below:

6             1.      "Action" means *Jones v. City of Los Angeles*, Case No. BC577267 pending in the

7    Superior Court of the State of California for the County of Los Angeles.

8             2.      "Actions" means collectively the Action together with the *Bransford*, *Fontaine*, and

9    *Kimhi* Actions.

10            3.      "Agreement" means the Class Action Settlement Agreement and Limited Release

11   executed on November 18, 2015.

12            4.      "Back-Billing" means the submission of a bill by LADWP to an account holder

13   that includes more than one billing cycle where the prior billing statements had not previously

14   been billed to the account holder.   Back-Billing does not include the issuance of a "Cancel-

15   Rebill."

16            5.      "Cancel-Rebill" means a bill issued that reconciles a customer's charges from prior

17   bills.

18            6.      "CC&B System" means LADWP's Customer Care and Billing System used to bill

19   its customers for electricity and water usage, sewage and sanitation services, which went "live" on

20   September 3, 2013.

21            7.      "CC&B System Auditor" means the audit firm hired to conduct CC&B System

22   audits described in Section III.C.2.b. herein.

23            8.      "CC&B System Monitoring Expert" means Paul Bender of Paul Bender

24   Consulting.

25            9.      "Claims Administrator" means Kurtzman Carson Consultants LLC ("KCC")

26   (formerly known as Gilardi & Co. LLC), an independent service provider whose function shall

27   include the processing of Claim Forms and administration of all claims filed by Settlement Class

28   Members in this Action.

---

38457.025-3493122                                     8

10.     "Claim Form" means a document substantially in the form of the document attached to this Revised Agreement as Exhibit G.

11.     "Claim Period" means:

    a.      for Omnibus Subclass Members, the 60 day period commencing on the date of the Class Notice;

    b.      for Pre-Identified Claims Made Subclass Members, the 60 day period commencing on the date of the Class Notice;

    c.      for Field Work Customers, the 60 day period commencing on the date of the Field Work Determination Letter.

12.     "Claims Processing Unit" means a team of trained LADWP employees responsible for examining Claim Forms and supporting documentation submitted by Settlement Class Members to determine the refunds or credits are due to Settlement Class Members.

13.     "Class Counsel" means Landskroner Grieco Merriman, LLC.

14.     "Class Notice" means the notices disseminated in connection with the Class Notice Program substantially in the form of Exhibits A-B hereto.

15.     "Class Notice Date" means the later of the last date of published notice, or the last date of emailed or mailed notice.

16.     "Class Notice Program" means the plan for disseminating the Class Notices described in Section III.D. herein.

17.     "Class Representative" means Plaintiff Jones.

18.     "Class Representative for the Solar Subclass" means plaintiff Yaar Kimhi.

19.     "Complaint" means the First Amended Class Action Complaint filed in the Action.

20.     "Court" means the Superior Court of the State of California for the County of Los Angeles.

21.     "Credit/Refund Letter" means the letter disseminated to Pre-Identified Non-Claims Made Subclass Members in connection with the claims process substantially in the form of Exhibit D hereto.

22.     "Defense Counsel" means Liner LLP.

23.    "Effective Date" means the later of the date upon which all appeals, if any, from the Final Order and Judgment (defined below) have been finally concluded and exhausted, with the date upon which the time to seek any appellate remedy from the Final Order and Judgment has expired.

24.    "Eligible Claim" means a claim or claims by a Settlement Class Member generally meeting the criteria for settlement benefits under this Revised Agreement.

25.    "Field Work Customer" means any LADWP customer with an open field investigation as of December 21, 2015.

26.    "Field Work Determination Letter" means the letter disseminated to Field Work Customers in connection with the claims process substantially in the form of Exhibit J hereto that informs LADWP customers of the LADWP's determination following the completion of field work.

27.    "Field Work Notification Letter" means the letter disseminated to Field Work Customers in connection with the claims process substantially in the form of Exhibit I hereto that notifies Field Work Customers of a pending field investigation.

28.    "Final Approval Hearing" means the hearing to be held by the Court to consider and determine whether the proposed Settlement should be approved of as fair, reasonable and adequate, and whether the Final Order and Judgment should be entered.

29.    "Final Order and Judgment" means a final judgment entered by the Court in substantially the form attached as Exhibit H to this Revised Agreement.

30.    "Identification Letter" means the letter disseminated to a Pre-Identified Claims Made Subclass Member in connection with the claims process substantially in the form of Exhibit E hereto.

31.    "LADWP" means the Los Angeles Department of Water and Power.

32.    "Liaison Counsel" means the Law Offices of Michael J. Libman.

33.    "Omnibus Subclass Letter" means the letter disseminated to LADWP customers who have not been identified as either:  (i) Pre-Identified Non-Claims Made Subclass Members or

(ii) Pre-Identified Claims Made Subclass Members in connection with the claims process in substantially the form of Exhibit F hereto.

34.     "Parties" means the City of Los Angeles, by and through the Los Angeles Department of Water and Power and Plaintiff Jones on behalf of himself and all others similarly situated.

35.     "Persons" means persons and entities, including, without limitation, any individuals, sole proprietorships, associations, companies, partnerships, joint ventures, corporations, trusts, estates, or any other persons or entities.

36.     "Plaintiff" or "Plaintiff Jones" means Antwon Jones.

37.     "Pre-Identified Subclass Member" means an LADWP customer who has been identified through LADWP's internal records as a member of an identified subclass as addressed herein.

38.     "Preliminary Approval Order" means the proposed order preliminarily approving the settlement, substantially in the form of Exhibit C hereto.

39.     "Released Claims" means all claims, damages, suits, demands, liabilities, judgments, losses and causes of action which have accrued as of the date of entry of the Order of Preliminary Approval relating to or arising from the billing issues alleged in the operative pleadings in the Actions, including:

    (i)    overbilling as a result of charging an incorrect rate, incorrect amount of consumption, incorrect utility tax rate or failing to apply a discount;

    (ii)    billing incorrect fees, including but not limited to late payment fees, reconnect fees and/or start service fees;

    (iii)    retaining refunds during the period of September 3, 2013 to the present that were due;

    (iv)    billing for greater quantities of water, power or sewage than otherwise would have been charged but for the existence of a premise condition;

    (v)    the assessment of overdraft fees resulting from the LADWP having charged customers an incorrect billing amount; and

(vi)　　for solar customers, delay in providing a reservation confirmation to and/or connecting the solar system, and/or failure to bill for energy consumed and/or generated; and/or failure to credit for excess energy generated by the customer's solar power system at any time from February 13, 2010, through the date of the entry of the Order of Preliminary Approval,

sounding in law or equity, seeking damages or any other relief, that are now recognized by law or that may be created or recognized in the future by statute, regulation, judicial decision or in any other manner, based upon any federal or state statutory or common law including but not limited to, claims sounding in tort, contract and the consumer protection laws of the United States or of any state or other jurisdiction within the United States, and all claims, damages, suits, demands, liabilities, judgments, losses or causes of action which have been, might have been, are now, or could be asserted by any plaintiff or any Settlement Class Member arising out of, based upon, or related to, in whole or in part, the facts and circumstances underlying the claims and causes of action set forth in the Actions.

Released claims include claims for economic and non-economic damages that were proximately caused by the LADWP having overbilled its customers during the time periods set forth in the operative Complaint in the *Jones Action*. These economic and non-economic damages may be direct, incidental, or consequential and, by way of example, include:  repair costs; services costs (e.g., the cost of a plumber or electrician to examine or repair a premise condition); finance, interest, or overdraft charges imposed by a third party; costs related to or arising from erroneous disconnections; reconnection fees; loss of perishable items; damage to personal property; or loss of wages or business income.  All such losses and damages are expressly deemed Eligible Claims pursuant to this Revised Agreement and a Settlement Class Member is entitled to seek recovery of 100% of such losses and damages through the Omnibus claims process.

Released Claims also include claims for economic and non-economic damages that resulted in overbilling to customers and were proximately caused by the LADWP's failure to: (i) timely undertake field investigations, conduct field maintenance, perform meter reads, or provide accurate information concerning actual utilization; (ii) prorate or allot utilization in accordance

1    with applicable rate schedules; and (iii) comply with disconnection rules.  All such losses and

2    damage are expressly deemed Eligible Claims pursuant to this Revised Agreement and a

3    Settlement Class Member is entitled to seek recovery of 100% of such losses and damages through

4    the Omnibus claims process.

5        Released Claims do not include:

6    (i)    the claims asserted in the action, *Morski v. City of Los Angeles by, and through, the*

7    *Los Angeles Department of Water & Power*, Los Angeles Superior Court Case No

8    BC 568722 (the "*Morski* Action"), which allege that the LADWP violated

9    Ordinance Nos. 180127, 182273, and 170435 (as amended by Ordinance No.

10   171639, Ordinance No. 173017, Ordinance No. 175964,  Ordinance No. 177968

11   and Ordinance No. 179802) by assessing tiered billing without obtaining actual

12   monthly meter reads and without providing regular, timely, and accurate monthly

13   bills to its customers ("Non-Monthly Tiered Billing Claims");

14   (ii)    causes of Action 27-32 in the First Amended Complaint filed on October 20, 2015

15   in the action entitled *Macias v. City of Los Angeles erroneously sued as Los*

16   *Angeles Department of Water and Power, et al.*, Los Angeles Superior Court Case

17   No. BC594049 (the "*Macias* Action"), which counsel for Plaintiff Macias has

18   represented will also be asserted in the Third Amended Complaint that will be filed

19   in the *Macias* Action on or before November 10, 2016;

20   (iii)    claims for violations of California's Bane Act, Civil Code § 51.2;

21   (iv)    claims arising out of field work investigations created after December 21, 2015;

22   (v)    claims arising out of LADWP's failure to record or credit payments made by

23   customers;

24   (vi)    claims arising from the Back-Billing of customers during the period September 3,

25   2013 through September 10, 2015; and

26   (vii)    claims for personal injury.

27   40.    "Released Parties" means the City of Los Angeles and all of its divisions,

28   departments and bureaus.

---

38457.025-3493122

13

REVISED CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

Exhibit 2

41.    "Remediation Period" means the up to 18-month period during which LADWP will complete stabilization and remediation of the CC&B System immediately following the Effective Date.

42.    "Revised Agreement" means this executed Revised Class Action Settlement Agreement and Limited Release.

43.    "Settlement" means the settlement embodied in and contemplated by this Revised Agreement.

44.    "Settlement Class" is comprised of:

> All LADWP customers who were over-charged for electric, water, sewage or sanitation services between the dates of September 3, 2013 and the present, and who are entitled to credits or refunds for electric, water, sewage or sanitation services and/or for participation in the LADWP's solar incentive program from February 13, 2010.

> Expressly excluded from the Settlement Class are the Judge to whom this case is assigned, any members of the Judge's immediate family, and counsel of record in this action.

45.    "Settlement Class Member" means any person included within the Settlement Class, which includes any person who does not timely exercise his or her right to opt out of the Settlement Class pursuant to Section III.J. herein.

46.    "Special Master" means Barbara R. Barkovich, Ph.D of the firm of Barkovich & Yap, Inc. (B&Y), who shall be responsible for conducting independent reviews and determination of claims as requested by any Settlement Class Member, subject to Court approval.

All references herein to sections, paragraphs, and exhibits refer to sections, paragraphs and exhibits to this Revised Agreement, unless otherwise expressly stated.

Capitalized terms used in this Revised Agreement, but not defined above, shall have the meaning ascribed to them in this Revised Agreement and the exhibits attached hereto.

**III.    GENERAL TERMS AND CONDITIONS OF SETTLEMENT**

**A.    Certification of Settlement Class**

For purposes of settlement only, and not for purposes of liability, and subject to Court approval, the Parties hereby stipulate to the certification of a class in this Action, pursuant to

1   California Code of Civil Procedure Section 382, and California Rules of Court Rules 3.764(e) and

2   3.769(d), with members of the certified Class to comprise only those persons defined herein as the

3   Settlement Class.

4       **B.**    **Settlement Subclasses**

5       The Settlement Class is comprised of the following 7 Subclasses: (i) Overbilled Subclass;

6   (ii) Incorrect Fee Subclass; (iii) Unrefunded Balance Subclass; (iv) Solar Subclass; (v) Premise

7   Condition/Estimated Bill Subclass; (vi) Automatic Bill Payment/Bank Overdraft Charge Subclass;

8   and (vii) Omnibus Subclass.

9           **1.**    **Overbilled Subclass**

10       The Overbilled Subclass is comprised of all LADWP customers that were overbilled as a

11   result of being charged an incorrect rate, incorrect amount of consumption, incorrect utility tax

12   rate or who did not have a discount applied.

13           **2.**    **Incorrect Fee Subclass**

14       The Incorrect Fee Subclass is comprised of all LADWP customers that were charged an

15   incorrect fee, including but not limited to late payment fees, reconnect fees and/or start service

16   fees.

17           **3.**    **Unrefunded Balance Subclass**

18       The Unrefunded Balance Subclass is comprised of all LADWP customers that:  (i) have

19   "Closed Accounts" with credit balances and (ii) are owed refunds that have been withheld by the

20   LADWP during the period of September 3, 2013 to the present.

21           **4.**    **Solar Subclass**

22       All LADWP customers that have installed solar systems and applied to participate in the

23   Solar Photovoltaic Incentive Program from February 13, 2010 to date and:  (i) experienced delay

24   beyond 30 days after submission of a complete Incentive Application and Supporting

25   Documentation and/or indication that the solar system was fully permitted and ready for

26   inspection in receiving a reservation confirmation and/or connecting the solar system; and/or (ii)

27   have not been billed for energy consumed and/or generated; and/or (iii) have not been credited for

28   excess energy generated by the customer's solar power system.

### 5.   Premise Condition/Estimated Bill Subclass

The Premise Condition/Estimated Bill Subclass is comprised of all LADWP customers that: (i) unbeknownst to the customer, had a premise condition that caused excessive consumption of water and/or power; (ii) received estimated bills for multiple billing periods after September 3, 2013; (iii) because of these estimated bills, were prevented from timely discovering the premise condition; and (iv) were charged for greater quantities of water, power or sewage than they otherwise would have been charged.

### 6.   Automatic Bill Payment/Bank Overdraft Charge Subclass

The Automatic Bill Payment/Bank Overdraft Charge Subclass is comprised of all LADWP customers that:  (i) were enrolled in an automatic bill payment plan with a bank and (ii) were charged overdraft fees because the LADWP charged the customer an incorrect amount, which, in turn, resulted in the customer's bank account being overdrawn.

### 7.   Omnibus Subclass

All LADWP customers that believe that they were: (i) incorrectly assessed a charge associated with their power, water, sewage or sanitation services at any time from September 3, 2013 to the present, that is not covered by any of the Subclasses listed herein; or (ii) otherwise damaged as a result from their participation in the LADWP's solar incentive program at any time from February 13, 2010 to the present.

A Settlement Class Member may be a member of one or more of the subclasses listed above.  Subject to the terms and conditions of this Revised Agreement, the Parties agree not to oppose any efforts to certify such a class.  A certification pursuant to this paragraph shall not constitute, in this or any other proceeding, an admission, finding or evidence that any requirement for class certification is otherwise satisfied, except for the expressly enumerated purposes in this Revised Agreement.

If the CC&B System Monitoring Expert identifies customers who have not been identified as belonging to a subclass but who have received bills with billing errors, such customers will be entitled to 100% credit (in the case of current customers) or refund (in the case of former customers) of the overcharge or damage caused by the LADWP.

### C.     Settlement Relief

In consideration for the dismissal of the Actions and the covenants arising under the terms of this Revised Agreement, the Parties hereby agree as follows:

#### 1.     Monetary Relief

##### a.     Pre-Identified Non-Claims Made Subclass Members

The Parties agree that members of the: (i) Overbilled Subclass; (ii) Incorrect Fee Subclass; (iii) Unrefunded Balance Subclass; and (iv) Solar Subclass ("Pre-Identified Non-Claims Made Subclass Members") shall be pre-identified as members of each of these subclasses from the internal records of the LADWP and the methodology for identification shall be verified and tested for fairness and for reasonableness by the CC&B System Monitoring Expert.

The Parties further agree that the LADWP shall credit (in the case of current customers) or refund (in the case of former customers) 100% of any amounts that the LADWP overcharged or damaged "Pre-Identified Non-Claims Made Subclass Members" during the period September 3, 2013 through the present for electric, water, sewage, and sanitation customers, and during the period February 13, 2010 through the present for members of the Solar Subclass. The amounts to be: (i) credited to current customers; and (ii) refunded to former customers who are "Pre-Identified Non-Claims Made Subclass Members" shall be determined by the LADWP, and the methodology used to determine the amounts shall be verified for fairness and for reasonableness by the CC&B System Monitoring Expert and subject to Court approval. In determining such amount, the LADWP shall calculate the amount to be credited or refunded by applying the applicable rates and recoverable actual customer usage data for the periods in question for each Subclass Member. The Parties further agree that Pre-Identified Non-Claims Made Subclass Members who do not timely exclude themselves as Class Members shall automatically receive the amount of the credit or refund determined by the LADWP through this process without the need to file a Claim Form. The terms of any payment will be made as stated in the Class Notice and the Credit/Refund Letter. Any Pre-Identified Non-Claims Made Subclass Member may seek an independent review by the Special Master of the determination made by LADWP as set forth in Section III.I.5. herein.

**b.**   **Pre-Identified Claims Made Subclass Members**

The Parties agree that members of the:  (i) Premise Condition/Estimated Bill Subclass; and (ii) Automatic Bill Payment/Bank Overdraft Charge Subclass ("Pre-Identified Claims Made Subclass Members") shall be pre-identified as members of each of these subclasses from the internal records of the LADWP through a methodology and process verified for fairness and for reasonableness by the CC&B System Monitoring Expert.

The Parties agree that any member of the "Pre-Identified Claims Made Subclass" who wishes to file a claim must timely complete and submit a valid Claim Form substantiated by the documentary evidence specified in the Claim Form to the Court-appointed Claims Administrator. The Claims Administrator shall be responsible for making an initial determination as to whether such Claim Forms are complete and working with Pre-Identified Claims Made Subclass Members who submit incomplete claims to satisfactorily complete the claims process.   The Claims Administrator shall timely provide all completed claims to the Claims Processing Unit at LADWP.

The Claims Processing Unit at LADWP shall examine all Claim Forms and supporting documentation submitted in support thereof and determine if any refund or credit is due a Pre-Identified Claims Made Subclass Member who has timely submitted a completed claim.   The criteria used to determine the claims of the Pre-Identified Claims Made Subclass Members by the Claims Processing Unit shall be independently evaluated by the CC&B System Monitoring Expert to determine if they are fair and reasonable, subject to the Court's oversight and continuing jurisdiction.

In the event that the Claims Processing Unit at LADWP determines that a Pre-Identified Claims Made Subclass Member who has timely submitted a completed claim is due a refund or credit, the Claims Processing Unit at LADWP shall calculate the amount to be refunded, credited or otherwise paid to any member of the Pre-Identified Claims Made Subclass on the submitted claim.

The Parties agree that, subject to Court approval, the LADWP shall refund 100% of any: (i) amount the LADWP overcharged any member of the Premise Condition/Estimated Bill

1    Subclass; and/or (ii) damages the LADWP caused any member of the Automatic Bill

2    Payment/Bank Overdraft Charge Subclass to incur during the period September 3, 2013 through

3    the present. Any Pre-Identified Claims Made Subclass Member may seek an independent review

4    by the Special Master of any determinations made by LADWP as set forth in Section III.I.5.

5    herein.

6                           c.     **Omnibus Subclass Members**

7         In recognition of the possibility that some LADWP customers who have not been "pre-

8    identified" through LADWP's internal records may believe that they were overcharged or

9    otherwise damaged as a result of the matters alleged in the Complaint:

10        Any current or former LADWP customers, whether "pre-identified" as a member of any

11   Subclass, or not, who nevertheless believe they have been otherwise: (i) overcharged as a result of

12   a billing error made by LADWP at any time since September 3, 2013; or (ii) damaged as a result

13   of their participation in the LADWP's solar incentive program at any time since February 13,

14   2010, may file a Claim Form to recover such overcharge or damages. A claim may be made for

15   economic and non-economic damages which were proximately caused by an overbilling error.

16   Such claims can be asserted and will be considered through the claims process. A Settlement

17   Class Member who wishes to pursue such a claim through a separate lawsuit or a means, other

18   than the claims process, can request exclusion from the Settlement Class pursuant to Section III.H

19   of this Revised Agreement.

20        The Parties agree that any member of the Omnibus Subclass who wishes to file a claim

21   must timely complete and submit a valid Claim Form substantiated by the documentary evidence

22   specified in the Claim Form to the Court-appointed Claims Administrator. The Claims

23   Administrator shall be responsible for making an initial determination as to whether such Claim

24   Forms are complete and shall work with Omnibus Subclass Members who submit incomplete

25   claims to satisfactorily complete the claims process. The Claims Administrator shall timely

26   provide all completed claims to the Claims Processing Unit at LADWP.

27        The Claims Processing Unit at LADWP shall examine all Claim Forms and supporting

28   documentation submitted in support thereof and determine whether any refund or credit is due an

1  Omnibus Subclass Member who has timely submitted a completed claim.  The criteria used to

2  determine the claims of the Omnibus Subclass Members by the Claims Processing Unit shall be

3  independently evaluated by the CC&B System Monitoring Expert to determine they are fair and

4  reasonable, subject to the Court's oversight and continuing jurisdiction.

5       In the event that the Claims Processing Unit at LADWP determines that an Omnibus

6  Subclass Member who has timely submitted a completed claim is due a refund or credit, the

7  Claims Processing Unit at LADWP shall calculate the amount to be refunded, credited or

8  otherwise paid to any member of the Omnibus Subclass on the submitted Claim.

9       The Parties agree that, subject to Court approval, the LADWP shall refund 100% of any

10  amount the LADWP damaged or overcharged any member of the Omnibus Subclass arising from

11  the allegations in the Complaint, during the period September 3, 2013 through the present, as

12  determined by the Claims Processing Unit at LADWP.

13       The Parties further agree that, subject to Court approval, LADWP shall refund 100% of

14  any damages that the Claims Processing Unit at LADWP determines the LADWP caused any

15  member of the Omnibus Subclass to incur as a result of their participation in the LADWP's solar

16  incentive program during the period February 13, 2010 through the present.   Any Omnibus

17  Subclass Member may seek an independent review by the Special Master of any determinations

18  made by LADWP as set forth in Section III.I.5 herein.

19          **d.**   **Timing of Payment**

20       All monetary compensation to be paid out under this Revised Agreement will be paid out

21  as follows:

22                i.   Pre-Identified Non-Claims Made Subclass Members will be

23  paid out by not later than seven months following the Effective Date; and

24                ii.   Pre-Identified Claims Made Subclass Members or Omnibus

25  Subclass Members will be paid out by not later than seven months following expiration of the

26  Claim Period.

27

28

1

e.      **Uncashed and Returned Checks**

2        The funds for any returned or uncashed checks issued to Settlement Class Members will be

3   held for one year following the expiration of the Remediation Period to correct any errors that may

4   arise in the distribution of the Settlement refunds.  After that time and subject to Court approval,

5   any uncashed refund checks shall be paid to Share Project, as administered by the United Way,

6   which is designed for low-income and elderly unemployed LADWP residential customers, who

7   are not eligible for other aid or welfare assistance, to meet their energy and water needs.

8            2.      **Remedial Relief and Corrective Actions**

9        In addition to providing the foregoing monetary consideration, the Parties also hereby

10  agree that the LADWP will undertake the following remedial and corrective measures in

11  connection with the Settlement:

12           a.      **Create and Adopt CC&B System Performance Metrics and
                     Perform Work Necessary to Achieve and Maintain Compliance
13                   with these Metrics**

14       While the LADWP has already undertaken certain remedial measures to stabilize the

15  performance and functioning of the CC&B System, the LADWP hereby agrees that it will

16  appropriate and expend an additional twenty-million dollars ($20 million) over the eighteen-month

17  CC&B System Remediation Period provided for by this Settlement to retain CC&B System

18  consultants and software engineering consultants including, but not limited to Oracle Corp., to

19  assist the LADWP in remediating and stabilizing the LADWP's CC&B System to ensure that the

20  CC&B System generates and delivers timely and accurate customer bills.

21       In addition, to further enhance customer service and ensure timely delivery of accurate

22  customer bills, Defendant agrees that it will also deploy the human and financial resources

23  necessary to enable the LADWP to meet, or exceed, the following thirteen objective performance

24  bench marks on the schedule required by this Revised Agreement:

25           (1)     **Backlogged   Field   Investigation   Cases   Customer
                     High/Low Bill Inquiries**
26
27       Since the implementation of the CC&B System, the number of field investigation cases has

28  increased and has exceeded the ability of LADWP to process these field investigation cases in a

38457.025-3493122                          21
REVISED CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE
Exhibit 2
90

timely manner.  To further enhance customer service and to ensure accurate and timely billing of customers, LADWP commits to working and completing customer high bill and low bill inquiry cases and to do tasks within the service level goals.  Customer high bill and low bill inquiries are tracked in field investigation cases and to do task lists.  The High/Low bill field investigation cases and to do's along with other relevant tasks will be tracked and the service level reported:

- Electric High Bill Complaint for Field Investigation          CM_FIEHB
- Electric Low Bill Complaint for Field Investigation           CM_FIELB
- Water High Bill Complaint for Field Investigation             CM_FIWHB
- Water Low Bill Complaint for Field Investigation              CM_FIWLB

The Department will meet or exceed the following metrics.

**On Time Rate** – The percentage of field investigation cases and To Do tasks that were completed during the month that were within 30 days of the field investigation being created.

**Oldest Order** – The age of the oldest field investigation case and To Do task measured from the date of the field investigation being created to the date that the task was completed.

A) After 180 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 50% |
| Oldest Open FI case or To Do | The age of the oldest field investigation case and To Do task measured from the date of the field investigation being created to the date that the task was completed. | < 90 days |

B) After 360 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the | > 75% |

|   |   |   |
|---|---|---|
|   | initial service window. |   |
| Oldest Open FI case or To Do | The age of the oldest field investigation case and To Do task measured from the date of the field investigation being created to the date that the task was completed. | < 75 days |

C) After 540 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 95% |
| Oldest Open FI case or To Do | The age of the oldest field investigation case and To Do task measured from the date of the field investigation being created to the date that the task was completed. | < 60 days |

<div align="center">

**(2)    Backlogged   Field   Investigation   Cases   with   Billing Instructions**

</div>

Since the implementation of the CC&B System, the number of field investigation cases and to do tasks has increased and has exceeded the ability of LADWP to process these field investigation cases in a timely manner.  Customer requests are tracked in field investigation cases and to do task lists. To further enhance customer service and to ensure accurate and timely billing of customers, LADWP commits to working and completing field investigation cases with billing instructions cases and to do tasks within the service level goals.  The field investigation cases with billing instructions cases and to do tasks along with other relevant tasks will be tracked and the service level reported:

- Account Service FI To Do                      CM_FIASU

The Department will meet or exceed the following metrics.

**On Time Rate** – The percentage of field investigation cases and To Do tasks that were completed during the month that were within 30 days of the field investigation being created.

**Oldest Order** – The age of the oldest field investigation case and To Do task measured

from the date of the field investigation being created to the date that the task was completed.

A) After 180 Days

| Metric | Description | Service Goals |
|--------|-------------|---------------|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 50% |
| Oldest Open FI case or To Do | The age of the oldest field investigation case and To Do task measured from the date of the field investigation being created to the date that the task was completed. | < 90 days |

B) After 360 Days

| Metric | Description | Service Goals |
|--------|-------------|---------------|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 75% |
| Oldest Open FI case or To Do | The age of the oldest field investigation case and To Do task measured from the date of the field investigation being created to the date that the task was completed. | < 75 days |

C) After 540 Days

| Metric | Description | Service Goals |
|--------|-------------|---------------|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 95% |
| Oldest Open FI case or To Do | The age of the oldest field investigation case and To Do task measured from the date of the field investigation being created to the date that the task was completed. | < 60 days |

### (3)   Backlogged Field Investigation Cases Cut-in-Flat and Defective

Since the implementation of the CC&B System, the number of field investigation cases and to do tasks has increased and has exceeded the ability of LADWP to process these field

investigation cases in a timely manner.  LADWP field crews report unmetered electric services that are cut-in-flat, unmetered water service that has a spacer and defective meters.  To ensure accurate and timely billing of the customer, LADWP needs to install working meters by either replacing defective meters or working with the customers to resolve the issue necessitating service to be unmetered.  The field investigation cases and to do's along with other relevant tasks will be tracked and the service level reported:

- Electric Cut Flat Investigation for FI             CM_FIECF
- Electric Defective Meter Investigation for FI      CM_FIEDF
- Pending Cut Flat or Spacer Case for FI             CM_FIPCS
- Pending Defective Meter Case for FI                CM_FIPDM
- Water Defective Meter Investigation for FI         CM_FIWDF
- Water Spacer Investigation for FI                  CM_FIWSP

The Department will meet or exceed the following metrics.

**On Time Rate** – The percentage of field investigation cases and To Do tasks that were completed during the month that were within 30 days of the field investigation being created.

**Oldest Order** – The age of the oldest field investigation case and To Do task measured from the date of the field investigation being created to the date that the task was completed.

A) After 180 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 50% |
| Oldest Open FI case or To Do | The age of the oldest field investigation case and To Do task measured from the date of the field investigation being created to the date that the task was completed. | < 90 days |

B) After 360 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate case or To Do | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 75% |
| Oldest Open FI case or To Do | The age of the oldest field investigation case and To Do task measured from the date of the field investigation being created to the date that the task was completed. | < 75 days |

C) After 540 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 95% |
| Oldest Open FI | | < 60 days |

### (4)    Backlogged Field Investigation Cases with Other Issues

Since the implementation of the CC&B System, the number of field investigation cases and to do tasks including final inspection of residential solar systems for participation in the solar incentive program has exceeded the ability of the Department to process these field investigation cases in a timely manner.  This metric tracks the field investigation cases and to do's not tracked in other field investigation metrics.  These field investigation cases and to do's will be tracked and the service level reported:

- Electric Why High Investigation for FI                CM_FIEWH
- Electric Why Low Investigation for FI                CM_FIEWL
- Electric Classification Survey Investigation for FI        CM_FIECS
- Electric Meter Survey Switch Investigation for FI        CM_FIEMS
- Electric Rate Survey Investigation for FI            CM_FIERS
- Electric Service Investigation for FI                CM_FIESI
- Electric Meter Survey Serves Investigation for FI        CM_FIESS
- Pending Meter Survey Case for FI                CM_FIPSV

- Water Why High Investigation for FI — CM_FIWWH
- Water Why Low Investigation for FI — CM_FIWWL
- Water Classification Survey Investigation for FI — CM_FIWCS
- Water Meter Survey Switch Investigation for FI — CM_FIWMS
- Water Rate Survey Investigation for FI — CM_FIWRS
- Water Service Investigation for FI — CM_FIWSI
- Water Meter Survey Serves Investigation for FI — CM_FIWSS
- Request for Meter Survey — CMMTRSUR

The Department will meet or exceed the following metrics.

**On Time Rate** – The percentage of field investigation cases and To Do tasks that were completed during the month that were within 30 days of the field investigation being created.

**Oldest Order** – The age of the oldest field investigation case and To Do task measured from the date of the field investigation being created to the date that the task was completed.

A) After 180 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate case or To Do | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 25% |
| Oldest Open FI | The age of the oldest field investigation case and To Do task measured from the date of the field investigation being created to the date that the task was completed. | < 90 days |

B) After 360 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 50% |
| Oldest Open FI case or To | The age of the oldest field investigation case and To Do task measured from the date of the | < 75 days |

REVISED CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE
Exhibit 2
96

| Do | field investigation being created to the date that the task was completed. | |
|---|---|---|

C) After 540 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 90% |
| Oldest Open FI case or To Do | The age of the oldest field investigation case and To Do task measured from the date of the field investigation being created to the date that the task was completed. | < 60 days |

### (5)  Backlogged Field Services Field Activities

New customers as well as existing customers who wish to start service at a new address or existing customers who wish to stop service at their existing address contact LADWP to request the utility services be connected or disconnected.   LADWP will schedule a Field Service representative to visit the customer's premise and start or stop the service and obtain a meter read, which is used for the opening or closing bill. The field service field activities are tracked and the service level reported:

The Department will meet or exceed the following metrics.

**On Time Rate** – The percentage of field service field activities that were completed during the month that were within 1 business day of the customer requested date for start service and 10 business day of the customer requested date for stop service.

A) After 180 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 75% |

REVISED CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE
Exhibit 2
97

B) After 360 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 85% |

C) After 540 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 95% |

### (6)   Defective Meters

LADWP field crews report unmetered electric and water services that have defective meters.  To ensure accurate and timely billing of the customer, LADWP needs to install working meters by replacing defective meters.  The replacement of defective meters will be tracked and the service level reported:

The Department will meet or exceed the following metrics.

**On Time Rate** – The percentage of field activities to replace defective meters that were completed during the month that were within 90 days of the date the defective meter was first reported.

A) After 180 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 25% |
| Oldest Open Defective Meter | | < 180 days |

B) After 360 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the | > 50% |

| | | |
|---|---|---|
| | initial service window. | |
| Oldest Open Defective Meter | | < 150 days |

**C) After 540 Days**

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 90% |
| Oldest Open Defective Meter | | < 120 days |

### (7)    Cut In Flat Electric Meters and Spacer on Water Meters

LADWP field crews report unmetered electric service that are cut-in-flat and unmetered water service that has a spacer.  To ensure accurate and timely billing of the customer, LADWP needs to work with the customers to resolve the issue necessitating service to be unmetered.  The tasks to install meters on unmetered services will be tracked and the service level reported:

The Department will meet or exceed the following metrics.

**On Time Rate** – The percentage of field activities to install meters on unmetered services that were completed during the month that were within 90 days of the date the defective meter was first reported.

**A) After 180 Days**

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 25% |
| Oldest Open Cut-In-Flat or Spacer | | < 180 days |

B) After 360 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 50% |
| Oldest Open Cut-In-Flat or Spacer | | < 150 days |

C) After 540 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 90% |
| Oldest Open Cut-In-Flat or Spacer | | < 120 days |

**(8)    Backlogged Meter Reread Field Activities**

To further enhance customer service and to ensure accurate and timely billing of the customer, LADWP commits to meeting meter reread field activity service level goals.  LADWP customers who have an outstanding meter read because:  (1) a high low billing exception has occurred and the biller requests a re-read to verify consumption, (2) the customer has requested a re-read of their meter to verify consumption, or (3) the meter reader was unable to gain access to the property to read the meter.  The meter re-read field activities will be tracked and the service level reported:

The Department will meet or exceed the following metrics.

**On Time Rate** – The percentage of meter reread field activities that were within 15 days of the date the defective meter was first reported.

A) After 180 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 50% |

38457.025-3493122

31

REVISED CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

Exhibit 2
100

B) After 360 Days

| Metric | Description | Service Goals |
| --- | --- | --- |
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 75% |

C) After 540 Days

| Metric | Description | Service Goals |
| --- | --- | --- |
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 95% |

### (9)    Backlogged Field Collections Field Activities

To further enhance customer service and to avoid creating a hardship for a customer by allowing them to become over extended by exceeding their ability to pay, LADWP commits to meeting field collection field activity service level goals to reconnect service after payment or sever service for non-payment in a timely manner.  The collection activity will be in compliance with the LADWP field collection policy at the time the collection is attempted.   The field collection field activities will be tracked and the service level reported:

The Department will meet or exceed the following metrics.

**On Time Rate** – The percentage of field collection field activities that were within 30 days of the date the defective meter was first reported.

**Oldest Order** – The age of the oldest field collection field activity measured from the date the field can first be worked.

A) After 180 Days

| Metric | Description | Service Goals |
| --- | --- | --- |
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 25% |
| Oldest Open field collection field activity | | < 90 days |

B) After 360 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 50% |
| Oldest Open field collection field activity | | < 75 days |

C) After 540 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 90% |
| Oldest Open field collection field activity | | < 60 days |

**(10)   Backlogged Water And Power Distribution Meter Exchange**

To further enhance customer service and to ensure accurate and timely billing of the customer, LADWP commits to meeting water and power meter exchange field activity service level goals. The meter exchange field activities will be tracked and the service level reported: The Department will meet or exceed the following metrics.

**On Time Rate** – The percentage of meter exchange field activities that were within 30 days of the date the exchange was scheduled for completion.

**Oldest Order** – The age of the oldest meter exchange field activity measured from the date the field activity was scheduled for completion.

A) After 180 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 25% |

REVISED CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE
Exhibit 2
102

| | | < 90 days |
|---|---|---|
| Oldest Open Meter Exchange | | |

B) After 360 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 50% |
| Oldest Open Meter Exchange | | < 75 days |

C) After 540 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 90% |
| Oldest Open Meter Exchange | | < 60 days |

### (11)    Backlogged Manually Generated Billing To Do's

To further enhance customer service and to ensure accurate and timely billing of customers, LADWP commits to working and completing billing error To Do tasks within the service level goals.  The billing To Do tasks will be tracked and the service level reported: The Department will meet or exceed the following metrics.

**On Time Rate** – The percentage of billing To Do tasks that were completed within 30 days of the date the To Do task was first created.

A) After 180 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of billing To Dos completed within the 30 day service window. | > 25% |

B) After 360 Days

| Metric | Description | Service Goals |
|--------|-------------|---------------|
| On Time Rate | The on time rate is the percentage of billing To Dos completed within the 30 day service window. | > 50% |

C) After 540 Days

| Metric | Description | Service Goals |
|--------|-------------|---------------|
| On Time Rate | The on time rate is the percentage of billing To Dos completed within the 30 day service window. | > 95% |

### (12)   Premise Management

The Premise Management Group will be established primarily to aid customers who have newly installed permanent services, which have not been entered into the CC&B system, and who are therefore not receiving bills.

The Department will establish a premise management group to manage the addition of new premises and services within the LADWP service territories.  The premise management group will be established within 60 days of final approval of the Settlement.

### (13)   Customer Service Call Times And Responses:

To further enhance customer service, the LADWP commits to meeting a monthly Average Speed of Answer ("ASA") in both their residential and commercials call centers as called out below.  The ASA is the average amount of time it takes for a call to be answered in the call centers during the month.  This includes the amount of time callers wait in the automatic call director ("ACD") queue after navigating through the IVR until the agent answers the phone.  It also does not include callers who use a self-service IVR option and never reach the ACD queue.

A) After 180 Days

| Metric | Description | Service Goals |
|--------|-------------|---------------|
| Average Speed of Answer | Average Speed of Answer (ASA) is a call center metric for the average amount of time it takes for calls to be answered in a call | < 5 min |

| | center during a specific time period. | |

B) After 360 Days

| Metric | Description | Service Goals |
|--------|-------------|---------------|
| Average Speed of Answer | Average Speed of Answer (ASA) is a call center metric for the average amount of time it takes for calls to be answered in a call center during a specific time period. | < 4 min |

C) After 540 Days

| Metric | Description | Service Goals |
|--------|-------------|---------------|
| Average Speed of Answer | Average Speed of Answer (ASA) is a call center metric for the average amount of time it takes for calls to be answered in a call center during a specific time period. | < 3 min |

### b. Appointment of Independent CC&B System Monitoring Expert

In furtherance of the LADWP's goal of restoring customer confidence and the public's trust and confidence in the LADWP's ability to deliver timely and accurate customer bills and a level of customer service that consistently meets or exceeds industry standards, the Parties further agree that Plaintiff Jones  has retained the services of a nationally recognized CC&B consulting expert, Paul Bender of Paul Bender Consulting, to: verify data; establish that the mechanism for identifying affected accounts is accurate and reliable; independently evaluate the criteria used to process the claims; and monitor the CC&B remediation efforts and corrective actions undertaken by the LADWP and its independent CC&B consultants during the Remediation Period, subject to the Court's oversight and continuing jurisdiction.

The CC&B System Monitoring Expert is comprised of a team of senior professionals with extensive experience in information technology and programming, quality assurance and CC&B functionality and solution architecture.  The CC&B System Monitoring Expert is owned and operated by Paul L. Bender.  Mr. Bender, who earned an MBA from Boston University and is a Certified Public Accountant, has 30 years of financial management and consulting experience,

1  including 20 years as Chief Financial Officer for two large municipal natural gas, water and waste

2  water utilities (City of Richmond Public Utilities from 1986-1997 and District of Columbia Water

3  and Sewer Authority from 1997-2005).   As a Chief Financial Officer, Mr. Bender successfully

4  implemented the entire range of financial, customer service and information technology systems

5  (i.e., CIS, AMR/AMI, call center), and restructured financial and customer service operations to

6  stabilize systems, to achieve Board of Directors and City Council objectives, and to meet industry

7  standards.   Mr. Bender's most significant and relevant accomplishment as a Chief Financial

8  Officer involved the successful remediation of a failed CC&B system implementation by

9  Pricewaterhouse Coopers, LLP at the Water Department for the City of Cleveland.  As a result of

10  the efforts undertaken by Mr. Bender, and the same team of individuals that Mr. Bender has tasked

11  to work on the LADWP CC&B remediation project, Mr. Bender and his team were able to achieve

12  virtually 100% meter reading accuracy and customer billings with industry-leading customer

13  service survey ratings.  Mr. Bender's credentials and experience, as well as the credentials and

14  experience possessed by the individuals assisting Mr. Bender in his work on the LADWP CC&B

15  remediation project, are detailed in the exhibits to the Supplemental Declaration of Paul L. Bender

16  in Further Support of Plaintiffs' Motion for Preliminary Approval (the "Supplemental Bender

17  Decl.").

18  The Parties further agree that the CC&B System Monitoring Expert has been, and will

19  continue to be afforded reasonable access to the LADWP's CC&B System and its CC&B System

20  remediation plan and, has been and will continue to be routinely permitted to interview LADWP's

21  IT staff assigned to the CC&B System remediation project and CC&B System consultants

22  working on the remediation project for the purpose of monitoring the resources devoted to the

23  remediation project and LADWP's progress toward meeting or exceeding the metrics specified in

24  Section III.C.2.a. above.  The Parties hereto further agree that the CC&B System Monitoring

25  Expert has already provided, and will continue to provide independent, detailed written quarterly

26  reports to Class Counsel, Defense Counsel, the LADWP Board of Commissioners, the Executive

27  Management of the LADWP, and the Office of Public Accountability, detailing his quarterly

28  findings.

1    The Parties further agree that Class Counsel shall be responsible for preparing and filing

2  quarterly status reports with the Court that inform the Court of the CC&B System Monitoring

3  Expert's quarterly findings. The quarterly reports prepared by the CC&B System Monitoring

4  Expert will also be attached as Exhibits to the Status Reports to the Court. *The Report of the*

5  *Independent CC&B System Monitor Concerning Status of Class Action Settlement for the First*

6  *and Second Quarters of 2016*, dated July 14, 2016, was filed with the Court on or about July 14,

7  2016. LADWP agrees to pay Class Counsel the costs of the CC&B System Monitoring Expert

8  based on invoices submitted through Class Counsel. Given that the CC&B System Monitoring

9  Expert has begun its evaluation, LADWP agrees that invoices may be submitted and, upon

10  approval, paid prior to Preliminary or Final Approval of the Revised Agreement.

### c. Independent CC&B System Audits to Confirm Accuracy of CC&B System

12   In furtherance of the LADWP's goal to restore customer and public trust and confidence in

13  the LADWP's ability to deliver accurate and timely customer bills and to consistently deliver

14  customer service that meets or exceeds industry standards, the Parties hereto further agree that, at

15  the conclusion of the Remediation Period, the performance capabilities, including the ability of the

16  CC&B System to consistently deliver timely and accurate customer bills, shall be audited by the

17  CC&B System Auditor at LADWP's cost. This initial audit report will be completed immediately

18  following the Remediation Period.

19   The results of the independent CC&B System audit conducted at the end of the

20  Remediation Period shall be set forth in a detailed audit report that will be provided to the

21  LADWP Board of Commissioners, the General Manager of the LADWP, the Office of Public

22  Accountability, Class Counsel, and Defense Counsel.

23   The Parties further agree that 18 months *after* the conclusion of the Remediation Period,

24  the performance capabilities, including the ability of the CC&B System to consistently deliver

25  timely and accurate customer bills, shall be audited by the CC&B System Auditor for a second

26  time at LADWP's cost. The purpose of this second audit shall be to determine and report on

28

REVISED CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE
Exhibit 2
107

1  whether the CC&B System continues to consistently deliver timely and accurate customer bills 18

2  months after the Remediation Period has been concluded.

3      The results of this second independent CC&B System audit shall also be set forth in a

4  detailed audit report that will be provided to the LADWP Board of Commissioners, the General

5  Manager of the LADWP, the Office of Public Accountability, Class Counsel, and Defense

6  Counsel.

7      The Parties further agree that, in the event that the second independent audit confirms that

8  the LADWP is in substantial compliance with its obligations arising under this Revised

9  Agreement, LADWP's obligations under the Settlement will terminate upon the LADWP's Board

10 of Commissioners approving the second audit and the Court issuing a final order terminating the

11 litigation.   In addition, the Parties agree that Class Counsel will have access to confirmatory

12 discovery for the purpose of assessing the LADWP's compliance, or lack thereof, with LADWP's

13 obligations arising under this Revised Agreement until such time as the Court issues an Order

14 terminating the litigation.

15     The Parties further agree that Class Counsel shall be responsible for preparing and filing

16 status reports with the Court that inform the Court of the results of the initial and second

17 independent CC&B System audits.  The independent audit reports prepared by the CC&B System

18 Auditor will also be attached as Exhibits to all such Status Reports to the Court.

19          **d.    Create and Implement Internal Billing "Tiger Team" To
            Address Unique or Complex Billing Issues**

20

21     In recognition of the fact that certain types of customer bills often require a heightened

22 level of customer service, and in furtherance of the LADWP's goal to deliver accurate and timely

23 bills to all of its customers, including those customers who require a heightened level of customer

24 care and service, the Parties hereby agree that the LADWP has established and is in the process of

25 fully staffing a "Tiger Team" with not less than ten customer service representatives who have

26 extensive training and experience in complex billing matters to address escalated or complex

27 customer billing concerns.

28

1    The LADWP has worked with Class Counsel to develop internal guidelines and a process

2  for identifying and escalating all highly complex customer billing issues to ensure that all

3  customers, including those customers with extremely complex bills, receive the level of customer

4  care necessary to timely resolve any and all billing issues.

5    The Tiger Team has become a permanent unit within the LADWP's Customer Service

6  organization and will be fully staffed within 60 days of the Settlement being preliminarily

7  approved by the Court.

8         **e.    Create and Implement Information Technology Department**
             **Project Management Office**

9

10    In recognition of the fact that the LADWP is the largest municipal utility in the United

11  States and is anticipated to be replacing and/or significantly upgrading significant portions of its

12  information technology infrastructure over the course of the next several years, the Parties agree

13  that the LADWP will permanently establish a Project Management Organization ("PMO") within

14  six months of the Court preliminarily approving the Settlement. The PMO will be responsible for

15  managing and implementing all aspects of all future significant information technology projects

16  undertaken by the LADWP.

17    To properly staff and manage the PMO, the Parties further agree that the LADWP has

18  created a position titled "Director of Corporate Program Management," conducted a recruiting

19  campaign and recruited and hired the most qualified candidate available. The Director of

20  Corporate Program Management will report directly to the LADWP's Chief Administrative

21  Officer.

22    The Parties further agree that the PMO organization shall be organized, staffed and

23  managed so as to ensure continuity and adherence to then-current industry best practices. In

24  addition to the Director of Corporate Program Management the PMO will also be staffed with at

25  least three Senior Project Managers who will be selected through a competitive process by, and

26  report directly to, the LADWP's Director of Corporate Program Management. Each of the three

27  Senior Project Managers will be assigned various IT related projects to be undertaken by the

28  LADWP and will be responsible for assembling Project Teams of varying size and membership.

1  Each Project Team will be staffed with qualified individuals drawn from the LADWP's Customer

2  Service Division, IT Division, Field Services, Water Services, Power Services, Financial Services

3  Organization, external consultants and in-house or outside legal counsel, as appropriate to ensure

4  the successful implementation and completion of each IT related project undertaken by the

5  LADWP.

6            **f.**   **Amend Rule 17 of the Rules Governing Water and Electric**

7                 **Service**

The Parties recognize and agree that:

8
9      i.    the timely issuance and collection of accurate customer bills is a
            cornerstone of sound business practices at the LADWP;

10     ii.   as a matter of fairness and customer relations, the LADWP is responsible
            for timely and accurate billing;

11
12     iii.  receiving accurate bills at regular intervals in accordance with applicable
            rules is a basic LADWP customer right;

13     iv.  the LADWP's failure to issue a bill, as well as issuing an estimated bill due
            to circumstances within the LADWP's control, may constitute a billing
14          error in certain circumstances; and

15     v.   in the situations where the LADWP has not issued timely or accurate bills
            and has nevertheless undertaken to retroactively collect such bills to bring
16          customer accounts current, the LADWP may have created a hardship for its
            customers.

17

18       In recognition of the fact that the LADWP is committed to the issuance of timely and

19 accurate bills to its customers and, pursuant to the terms of this Settlement, the Parties agree that

20 the Board of Commissioners of the LADWP will amend Rule 17 of the Rules Governing Water

21 and Electric Service ("Rule 17") to provide in relevant part:

22           **1.**   **Residential Customers**

23          The Department will not back-bill its Residential Customers for a
            period of time in excess of (i) 3 billing cycles for customers billed
24          bi-monthly or (ii) 6 billing cycles for customers billed monthly,
            from the date of the last regular read within the customer's most
25          recent billing cycle.

26          The foregoing back billing limitation is not applicable to: (i) "back-
            dated service connection"; (ii) energy theft; (iii) water theft; (iv)
27          illegal diversion; (v) fraud; (vi) customer refusing access; and (vii)
            all instances where delay or error in billing is solely attributable to
28          customer action or inaction which serves to impede LADWP's

ability to conduct its business.

## 2.   Commercial Customers

The Department will not back-bill its Commercial Customers for a period of time in excess of (i) 3 billing cycles for customers billed bi-monthly or (ii) 6 billing cycles for customers billed monthly, from the date of the last regular read within the customer's most recent billing cycle.

The foregoing back billing limitation is not applicable to: (i) "back-dated service connection"; (ii) energy theft; (iii) water theft; (iv) illegal diversion; (v) fraud; (vi) customer refusing access; and (vii) all instances where delay or error in billing is solely attributable to customer action or inaction which serves to impede LADWP's ability to conduct its business.

The Parties hereto also agree that all residential and commercial customers that have been Back-Billed at any time since September 11, 2015 through November 18, 2016 will be credited for any amounts billed in excess of 3 billing cycles for those customers billed bi-monthly, or 6 billing cycles for those customers billed monthly.  The Parties also agree that all residential and commercial customers who receive a Back-Bill between the dates of September 3, 2013 and the close of the Remediation Period shall have a period of four years from the date on which they receive the Back-Bill to pay the entirety of the Back-Billed amount only, in full, without penalty or interest, in equal monthly installments.  To qualify for the foregoing, customers must remain current on their most recent bill.  The Parties further agree that, in the event that any residential or commercial customer fails to timely make any payments due of any portion of the Back-Billed amounts in accordance with these terms, the entirety of the Back-Billed amount shall immediately become due and payable.

g.   **Settlement Class Members Who Entered Into A Payment Arrangement Schedule With The LADWP Due To Receiving A Delayed Bill At Any Time From September 3, 2013 Through November 18, 2016 Who Have Outstanding Payment Arrangement Balances Due May Elect To Extend The Term of Their Payment Arrangement Schedule By One Additional Year**

The Parties agree that any Settlement Class Member who: (i) has entered into a Payment Arrangement Schedule with the LADWP at any time from September 3, 2013 through November 18, 2016, (ii) has an outstanding Payment Arrangement balance due, and (iii) is current on their

1  Payment Arrangement payments, may elect to extend the term of their Payment Arrangement

2  schedule by one additional year.

3      Qualified Settlement Class Members may extend the term of a Payment Arrangement

4  schedule by one additional year by contacting the LADWP.

5      Once qualified Settlement Class Members have made this election, the LADWP will

6  process all qualifying requests within thirty (30) days of such election having been made and will

7  provide such Settlement Class Members with a new Payment Arrangement schedule that reflects

8  the new terms and payment structure.

9      **D.    Class Notice Program**

10      Not later than 90 business days after the entry of the Order granting Preliminary Approval,

11  Class Counsel shall cause Class Notice to be disseminated as directed in the Order of Preliminary

12  Approval as follows:

13          **1.    Mailed Class Notice**

14      Defendant shall directly mail, via United States First Class Mail, a long form Class Notice

15  to all those customers of LADWP for whom Defendant has street addresses and with whom

16  Defendant routinely communicates via United States First Class Mail pursuant to customers'

17  instructions in substantially the form of Exhibit A hereto.  Prior to mailing the Class Notice, the

18  National Change of Address Clearance database will be checked to verify updated address listings.

19  The Mailed Class Notice shall:

20          a.      contain a short, plain statement of the background of the Action and the

21                  Settlement;

22          b.      describe the relief outlined in this Revised Agreement;

23          c.      state that any relief to Settlement Class Members is contingent on the

24                  Court's final approval of the Settlement;

25          d.      inform Settlement Class Members that, if they do not exclude themselves

26                  from the Settlement Class, they may be eligible to receive the relief under

27                  the Settlement;

28          e.      inform Settlement Class Members that they may exclude themselves from

---

38457.025-3493122                    43

1       the Class by mailing to the Claims Administrator a written exclusion

2       request postmarked no later than 30 days after the Class Notice Date;

3   f.   inform Settlement Class Members that they may object to the proposed

4       Settlement by mailing to the Claims Administrator a written statement of

5       objections no later than 30 days after the Class Notice Date;

6   g.   inform Settlement Class Members that any Final Order and Judgment

7       entered, whether favorable or unfavorable to the Settlement Class, shall

8       include, and be binding on, all Settlement Class Members who have not

9       been excluded from the Class, even if they have objected to the Settlement;

10   h.   inform Settlement Class Members of the terms of the Release; and

11   i.   inform Settlement Class Members that they may seek an independent

12       review by the Special Master of any determinations made by LADWP and

13       provide instructions for how to do so;

14   j.   be made available, upon request, in the following languages in addition to

15       English: Spanish; Chinese; Korean; Vietnamese; and Tagalog.

16   **2.**   <u>**Emailed Class Notice**</u>

17     Defendant shall send via email, a long form Class Notice to all those customers of

18 LADWP for whom Defendant has email addresses and with whom Defendant routinely

19 communicates via email pursuant to customers' instructions in substantially the form of Exhibit A

20 hereto. The Emailed Class Notice shall:

21   a.   contain a short, plain statement of the background of the Action and the

22       Settlement;

23   b.   describe the relief outlined in this Revised Agreement;

24   c.   state that any relief to Settlement Class Members is contingent on the

25       Court's final approval of the Settlement;

26   d.   inform Settlement Class Members that, if they do not exclude themselves

27       from the Settlement Class, they may be eligible to receive the relief under

28       the Settlement;

e.    inform Settlement Class Members that they may exclude themselves from the Class by mailing to the Claims Administrator a written exclusion request postmarked no later than 30 days after the Class Notice Date;

f.    inform Settlement Class Members that they may object to the proposed Settlement by mailing to the Claims Administrator a written statement of objections no later than 30 days after the Class Notice Date;

g.    inform Settlement Class Members that any Final Order and Judgment entered, whether favorable or unfavorable to the Settlement Class, shall include, and be binding on, all Settlement Class Members who have not been excluded from the Class, even if they have objected to the Settlement;

h.    inform Settlement Class Members of the terms of the Release; and

i.    inform Settlement Class Members that they may seek an independent review by the Special Master of any determinations made by LADWP and provide instructions for how to do so;

j.    be made available, upon request, in the following languages in addition to English: Spanish; Chinese; Korean; Vietnamese; and Tagalog.

**3.**    **Published Class Notice**

Defendant shall cause a summary notice to be published in the form of Exhibit B hereto one time in *The Los Angeles Times* and one time in *La Opinion*. The Published Class Notice shall not be less than ¼ of a page. The Published Class Notice shall:

a.    contain a short, plain statement of the background of the Action and the Settlement;

b.    describe the relief outlined in this Revised Agreement;

c.    inform Settlement Class Members that, if they do not exclude themselves from the Settlement Class, they may be eligible to receive the relief under the Settlement;

d.    inform Settlement Class Members that they may exclude themselves from the Class by mailing to the Claims Administrator a written exclusion

38457.025-3493122

45

request postmarked no later than 30 days after the Class Notice Date;

e.    inform Settlement Class Members that they may object to the proposed Settlement by mailing to the Claims Administrator a written statement of objections no later than 30 days after the Class Notice Date; and

f.    inform Settlement Class Members that any Final Order and Judgment entered, whether favorable or unfavorable to the Settlement Class, shall include, and be binding on, all Settlement Class Members who have not been excluded from the Class, even if they have objected to the Settlement.

### 4. Internet and Website Class Notice

Class Notice of the Settlement will also be published on LADWP's website and on the Claims Administrator's website, which the Claims Administrator will maintain to facilitate the administration of the Settlement and to facilitate the online exchange of information with Class Members.

The Parties agree that the methods of Class Notice set forth in these Sections D.1.-D.4. constitute the best form of notice to the Settlement Class that is practicable under the circumstances.

Defendant shall pay all costs and expenses associated with disseminating the Class Notice described herein.

### E. Release, Waiver and Covenant Not To Sue

As of the Effective Date, and in consideration of this Revised Agreement and the benefits extended to the Settlement Class, Plaintiff Jones, on behalf of himself and the Settlement Class Members, and each Settlement Class Member, on behalf of himself or herself and his or her respective successors and assigns hereby fully releases and forever discharges the Released Parties from the Released Claims.

Plaintiff Jones, on behalf of himself and the Settlement Class Members, fully understands that if any fact relating to any matter covered by this Revised Agreement is later found to be other than, or different from, the facts now believed by Plaintiff Jones to be true, Plaintiff Jones, on behalf of himself and the Settlement Class Members, expressly accepts and assumes the risk of such possible differences in fact and acknowledge that this Revised Agreement shall nevertheless remain fully binding and effective.

Upon entry of the Final Order and Judgment, Plaintiff Jones shall have, and each and every Settlement Class Member shall be deemed to have, on behalf of the Settlement Class Member and the Settlement Class Members' respective successors and assigns, covenanted and agreed to: (i) forever refrain from instituting, maintaining or proceeding in any action against the Released Parties with respect to any Released Claims; (ii) release and forever discharge the Released Parties from each and every such Released Claim; and (iii) this Revised Agreement being pleaded as a

full and complete defense to, and being used as the basis for a temporary restraining order or preliminary or permanent injunction against, any action, suit or other proceeding which has been or may be instituted, prosecuted, continued to be prosecuted, or attempted, asserting any Released Claim.

In addition, Defendant hereby releases, discharges and waives any and all claims that Defendant had or may have had, asserted or not, against Plaintiff Jones or Plaintiff Jones' counsel.

**F.     Confirmatory Discovery**

The Settlement is subject to Plaintiff Jones completing reasonable confirmatory discovery including, but not limited to, any of the following:  (1) requesting that LADWP respond to and produce documents responsive to a request by Plaintiff Jones for the information below and (2) requesting that LADWP provide evidence from designated LADWP representatives in the subject areas of requested inquiry:

- Criteria used for identification of membership in each identified sub-class;

- The internal methodology, criteria, queries used and data relied upon for the evaluation of all class members' accounts to determine credit or refund eligibility and amount of credit or refund and validation protocols;

- Reports and all data documenting the total payment of credits and/or refunds issued to customers and from ongoing remediation efforts;

- Remediation implementation protocols, progress reports, updates, and the metrics generated from reporting; and

- Such other items as are mutually agreed upon to confirm the fairness, reasonableness and adequacy of the Settlement.

**G.     Non-Admission of Liability**

This Revised Agreement is made for settlement purposes only, neither the fact of nor any specific provision contained in this Revised Agreement nor any action taken hereunder shall constitute, or be construed as, any admission of the validity of any claim or any fact alleged by Plaintiff Jones or by any other person included within the Settlement Class of any wrongdoing, fault, violation of law, or liability of any kind on the part of Defendant.  This Revised Agreement constitutes a compromise pursuant to California Evidence Code Section 1152(a).  It shall not be

1  offered or be admissible, either in whole or in part, as evidence against Defendant, except in any

2  action or proceeding to enforce its terms.

3       **H.**    **Preliminary Approval**

4       Plaintiff Jones shall present this Revised Agreement to the Court seeking certification of

5  the Settlement Class and preliminary approval of the Settlement reflected in this Revised

6  Agreement on November 18, 2016. Defendant shall join in Plaintiff Jones' request for

7  preliminary approval of this Revised Agreement and certification of the Settlement Class. The

8  Parties shall apply for an order substantially in the form of Exhibit C hereto ("Preliminary

9  Approval Order"). The Parties shall request an order that seeks, among other things:

10       a.    the consolidation of the *Jones*, *Bransford*, *Fontaine*, and *Kimhi* Actions;

11       b.    preliminary approval of this Revised Agreement;

12       c.    certification, for settlement purposes, of the Settlement Class;

13       d.    approval of the Notices in the form substantially similar to those attached as

14           Exhibits A and B hereto; and

15       e.    a schedule for final approval of the Settlement.

16       **I.**    **Claims Process**

17       Settlement Class membership and the amount of monetary relief to which each Settlement

18  Class Member may be entitled will be accomplished by a process that includes: (i) pre-

19  identification and/or (ii) self-identification of Settlement Class Members. The date of mailing

20  Identification or Omnibus Subclass Letters will correspond to the date on the letters.

21       **1.**    **Pre-identification**

22       **a.**    **Pre-Identified Non-Claims Made Subclass Members**

23       Simultaneous with the Class Notice being provided, Defendant shall also provide each Pre-

24  Identified Non-Claims Made Subclass Member with a Credit/Refund Letter in substantially the

25  form of Exhibit D hereto, either by United States First Class Mail or email. The Credit/Refund

26  Letter shall identify those Settlement Class Members that are included in the Pre-Identified Non-

27  Claims Made Subclass and the amount of monetary credit (if the Pre-Identified Non-Claims Made

28  Subclass Member is a current LADWP customer) or refund (if the Pre-Identified Non-Claims

1   Made Subclass Member is a former LADWP customer with a closed LADWP account) to which

2   each Pre-Identified Non-Claims Made Subclass Member is entitled, based on computations

3   performed by Defendant and criteria for those computations shall be verified for fairness and for

4   reasonableness by the CC&B System Monitoring Expert.

5       Such Credit/Refund Letters shall indicate: (a) the particular Subclass(es) in which each

6   Pre-Identified Non-Claims Made Subclass Member is included; (b) the amount of the monetary

7   credit or refund that each Pre-Identified Non-Claims Made Subclass Member is entitled; and (c)

8   instructions on how to opt-out, in the event that a Pre-Identified Non-Claims Made Subclass

9   Member wishes to exclude himself/herself from the Settlement Class.  Such Credit/Refund Letters

10  shall further state that, in the event the Court finally approves the Settlement, and the Pre-

11  Identified Non-Claims Made Subclass Member is satisfied with the amount of the monetary credit

12  or refund identified in the Credit/Refund Letter, the Pre-Identified Non-Claims Made Subclass

13  Member need not take any further action to recover the credit or refund.  Such Credit/Refund

14  Letters shall also further state that any Pre-Identified Non-Claims Made Subclass Member who is

15  not satisfied with the amount of the monetary credit or refund identified in the Credit/Refund

16  Letter shall be entitled to request that an independent review be conducted by the Special Master.

17  For those Subclass Members who wish to pursue an independent review, the Class Notice will

18  provide information and instructions for how to do so.

19          **b.    Pre-Identified Claims Made Subclass Members**

20          Simultaneous with the Class Notice being provided, Defendant shall also provide each Pre-

21  Identified Claims Made Subclass Member with an Identification Letter in substantially the form of

22  Exhibit E hereto, either by United States First Class Mail or email.  The Identification Letter shall

23  identify those Settlement Class Members that are included in the Pre-Identified Claims Made

24  Subclass.

25          Such Identification Letters shall indicate: (a) the particular Subclass(es) in which each Pre-

26  Identified Claims Made Subclass Member is included; (b) instructions on how to obtain a Claim

27  Form or file an electronic claim via the Claims Administrator's website, which will detail the

28  necessary information that each Pre-Identified Claims Made Subclass Member must provide in

1  order to receive a monetary credit (if the Pre-Identified Claims Made Subclass Member is a
2  current LADWP customer) or refund (if the Pre-Identified Claims Made Subclass Member is a
3  former LADWP customer with a closed LADWP account), if so entitled; and (c) instructions on
4  how to opt-out, in the event that a Pre-Identified Claims Made Subclass Member wishes to
5  excluded himself/herself from the Settlement Class.  Such Identification Letters shall also further
6  state that any Pre-Identified Claims Made Subclass Member who is not satisfied with the amount
7  of the monetary credit or refund ultimately determined to be due such Subclass Member by the
8  Claims Processing Unit shall be entitled to request that an independent review be conducted by the
9  Special Master.  For those Subclass Members who wish to pursue an independent review, the
10  Class Notice will provide information and instructions for how to do so.

11       **2.**    **<u>Self-Identification</u>**

12       Simultaneous with the Class Notice being provided, Defendant shall also provide each
13  LADWP customer that has not been identified as either a: (i) Pre-Identified Non-Claims Made
14  Subclass Member or (ii) Pre-Identified Claims Made Subclass Member with an Omnibus Subclass
15  Letter in substantially the form of Exhibit F hereto, either by United States First Class Mail or
16  email.  The Omnibus Subclass Letter shall notify these LADWP customers that, despite not
17  having been identified as a member of the Pre-Identified Non-Claims Made Subclass or the Pre-
18  Identified Claims Made Subclass, these LADWP customers may submit a Claim Form in order to
19  receive a monetary credit, (if a current LADWP customer) or refund (if a former LADWP
20  customer with a closed LADWP account), as a result of:  (i) a billing error made by LADWP at
21  any time since September 3, 2013; or (ii) damage as a result of their participation in LADWP's
22  solar incentive program at any time since February 13, 2010.  Such Omnibus Subclass Letters
23  shall indicate: (a) instructions on how to obtain a Claim Form or file an electronic claim via the
24  Claims Administrator's website; and (b) instructions on how to opt-out to excluded himself/herself
25  from the Settlement Class.  Such Omnibus Subclass Letters shall also further state that any
26  Subclass Member who reasonably believes that the amount of the monetary credit or refund
27  ultimately determined to be due such Subclass Member by the Claims Processing Unit is incorrect
28  shall be entitled to request that an independent review be conducted by the Special Master.  For

1   those Subclass Members who wish to pursue an independent review, the Class Notice will provide

2   information and instructions for how to do so.

3   The Claim Form shall be made available, upon request, in the following languages in

4   addition to English:   Spanish; Chinese; Korean; Vietnamese; and Tagalog.   Any Omnibus

5   Subclass Member who is not satisfied with the amount of the monetary credit or refund

6   determined to be due such Subclass Member by the Claims Processing Unit shall be entitled to

7   request that an independent review be conducted by the Special Master.   For those Omnibus

8   Subclass Members who wish to pursue an independent review, the Class Notice will provide

9   information and instructions for how to do so.

10   **3.     Pending Field Work Investigations**

11   Simultaneous with the Class Notice being provided, each Field Work Customer will

12   receive a Field Work Investigation Notification Letter substantially in the form of Exhibit I

13   advising the customer of a pending field work investigation.   Once the field work investigation is

14   completed, a Field Work Customer will be sent a Field Work Investigation Determination Letter

15   substantially in the form of Exhibit J informing the Field Work Customer of the result of the

16   LADWP's field work investigation.   If, after receiving a Field Work Investigation Determination

17   Letter, a Field Work Customer believes s/he was incorrectly assessed a charge associated with

18   his/her power, water, sewage or sanitation services, the customer may submit a Claim Form within

19   60 days of the date of the Field Work Investigation Determination Letter.

20   **4.     Claims Administrator**

21   The Court has appointed Kurtzman Carson Consultants LLC ("KCC") as the independent

22   Claims Administrator. The Claims Administrator shall be responsible for effectuating the claims

23   process under the supervision of Class Counsel and the Independent CC&B Billing System

24   Monitoring Expert.   The Claims Administrator shall be delegated the authority to administer and

25   process eligible claims during the Claim Period.

26   **5.     Special Master**

27   Any Settlement Class Member who wishes to dispute the amount of the monetary credit or

28   refund determined by the LADWP or the Claims Processing Unit may request that an independent

REVISED CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE
Exhibit 2
121

1   review be conducted by the Court-appointed Special Master (a "Special Master Review").  A

2   request for Special Master Review must be made to the Claims Administrator within 30 days as

3   specified in the Notice.  Any Settlement Class Member seeking a Special Master Review shall

4   initiate this process by sending a letter, via First Class Mail, which:  (a) states that the Settlement

5   Class Member disputes the amount of the monetary credit or refund and desires to initiate a

6   Special Master Review; (b) explains the reason(s) the Settlement Class Member is disputing the

7   amount of the monetary credit or refund and states all facts relied upon by such Settlement Class

8   Member in disputing the amount of the monetary credit or refund; (c) attaches all documents

9   relied upon by the Settlement Class Member in disputing the amount of the monetary credit or

10  refund;  and  (d)  requests  that  the  Special  Master  review  the  determination  and  make  a

11  determination as to whether:  (i) the LADWP or the Claims Processing Unit's determination

12  should be adopted; or (ii) an alternative finding should be made.  A request for a Special Master

13  Review must be dated and signed by the Settlement Class Member and sent to:  Special Master

14  Barbara R. Barkovich, Ph.D - LADWP Billing Class Action, c/o Kurtzman Carson Consultants.

15  All requests for a Special Master Review must be postmarked within 30 days of the date of the

16  letter informing the Settlement Class Member of the amount of the monetary credit or refund

17  determined by the LADWP or the Claims Processing Unit that is being disputed.

18        The Court has appointed Barbara R. Barkovich, Ph.D as the independent Special Master,

19  who shall be responsible for conducting all independent reviews requested by any Settlement

20  Class Member.  The Special Master shall be responsible for obtaining from LADWP and/or the

21  Class Member the information the Special Master deems necessary and required to review and

22  adjudicate each request for independent review.  The Special Master will determine the validity of

23  claims on a *de novo* review decided upon the preponderance of the evidence.  LADWP agrees to

24  provide the Special Master with any information requested.  All determinations made by the

25  Special Master shall be made solely by the Special Master and shall be submitted to the Court in

26  the form of a "Report and Recommendation."  The Special Master shall inform individual Class

27  Members by letter as to her determinations of their respective claims. Any Class Member who

28  wishes to contest the Special Master's determination of that Class Member's claim shall submit,

1  via First Class Mail and within 30 days of the date of the Special Master's determination letter, a

2  letter to the Court requesting a review by the Court, stating the grounds for disputing the

3  determination, and submitting any supportive documentation.

4     Special Master Dr. Barbara Barkovich has been a consultant and expert on energy and

5  regulatory matters since 1985.  Dr. Barkovich has extensive experience in assisting consumers of

6  utility services in negotiations with utilities on pricing and service matters and in negotiation of

7  settlement agreements on complex regulatory matters.  She holds a BA in physics from the

8  University of California at San Diego, an MS in Urban and Policy Sciences from the State

9  University of New York at Stony Brook, and a Ph.D in Energy and Resources from the University

10  of California at Berkeley.  Dr. Barkovich is the owner and operator of Barkovich & Yap.   Dr.

11  Barkovich's credentials and experience, as well as the credentials and experience possessed by the

12  individuals assisting Dr. Barkovich in her work as the Court-appointed Special Master in this

13  litigation, are detailed in Exhibit 3 to the Supplemental Declaration of Jack Landskroner in Further

14  Support of Plaintiffs' Motion for Preliminary Approval (the "Supplemental Landskroner Decl.").

15  LADWP agrees to pay the costs of the Special Master.

16       **6.**    **Costs of Settlement Administration**

17     All costs and expenses incurred in implementing and administering the Settlement shall be

18  paid by Defendant.   The Claims Administrator shall, under the supervision of the Court,

19  administer the Settlement provided by this Revised Agreement by processing and resolving claims

20  in a rational, responsive, cost-effective, and timely manner.   The Claims Administrator shall

21  maintain detailed records of its activities under this Revised Agreement in a computerized

22  database and shall furnish counsel for the Parties with monthly reports of the activities undertaken

23  by the Claims Administrator in administering the Settlement.

24     **J.**    **Requests for Exclusion From The Settlement Class**

25     Any person included within the Settlement Class who wishes to be excluded from

26  membership in the Settlement Class must do so in writing by mailing a written request for

27  exclusion to the Claims Administrator.  Such requests must be postmarked no later than 30 days

28  from the Class Notice Date.  The request must: (i) clearly express the Settlement Class Member's

1   desire to be excluded or to "opt out" from the Settlement Class; (ii) include the Settlement Class

2   Member's name, address, telephone number, LADWP account number and, if represented by

3   counsel, counsel's name, address and telephone number; and (iii) be signed by the Settlement

4   Class Member.

5        If a Settlement Class Member has multiple LADWP accounts and wishes to be excluded

6   from membership in the Settlement Class, the Settlement Class Member must submit a request for

7   exclusion for each separate account.

8        Any Person who is a member of the Settlement Class who wishes to be excluded from the

9   Settlement Class can only opt out for him or herself, and cannot opt out for any other Person.  Nor

10   can any Person who is a Settlement Class Member authorize any other Person to opt out on his or

11   her behalf.

12        Any Settlement Class Member who has filed an objection to the fairness, reasonableness or

13   adequacy of the proposed Settlement pursuant to Section III.K. herein shall be deemed not to have

14   opted out of the Settlement Class pursuant to this paragraph.  However, in the event that a

15   Settlement Class Member makes a submission to the Court and the Parties that appears to assert

16   both an objection to the fairness, reasonableness or adequacy of the proposed Settlement, and a

17   statement of intent to opt out of the Settlement Class, such submission shall be treated as a

18   statement of intent to opt out of the Settlement Class, but not an objection.

19       **K.**    **Objections and Requests To Appear At Final Approval Hearing**

20        Any Settlement Class Member who has not timely filed a written request for exclusion

21   from the Settlement Class pursuant to Section III.J. herein may object to the fairness,

22   reasonableness or adequacy of the proposed Settlement, Plaintiff Jones' application for a

23   reimbursement award, or Class Counsel's application for an award of attorneys' fees or

24   reimbursement of expenses.  Each Settlement Class Member who wishes to object must do so in

25   writing by mailing a written objection to the Claims Administrator, who shall submit all objections

26   to the Court and mail them to the Parties' respective counsel at the addresses set forth in Section

27   III.N.11. herein.  Any such objection must be mailed to the Claims Administrator no later than 30

28   days after the Class Notice Date.  Any such objection must: (i) state, in detail, the legal and factual

---

38457.025-3493122

55

REVISED CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

Exhibit 2
124

1   ground(s) for the objection; (ii) include the Settlement Class Member's name, address and

2   telephone number and LADWP account number, and, if represented by counsel, counsel's name,

3   address and telephone number; and (iii) be signed by the Settlement Class Member.

4          Settlement Class Members may object either on their own or through an attorney hired at

5   their own expense. If the objecting Settlement Class Member hires an attorney to represent him or

6   her, that attorney must file with the Court and serve upon the Parties' respective counsel at the

7   addresses set forth in Section III.N.11. herein, a notice of appearance no later than 30 days prior to

8   the Final Approval Hearing.

9          Any objection that fails to satisfy the requirements of this Section, or that is not properly

10  and timely submitted, will be deemed ineffective, and will be deemed by the Parties to have been

11  waived, and the Parties reserve their right to argue that the Settlement Class Member asserting

12  such objection is therefore not entitled to have his or her objection heard or otherwise considered

13  by the Court.

14         Settlement Class Members or their counsel who wish to appear at the Final Approval

15  Hearing must make such request by notifying the Clerk of the Court and the Parties' respective

16  counsel in writing at the addresses set forth in Section III.N.11. herein ("Notice of Intention to

17  Appear"). Any such request must be filed with the Clerk of the Court and received by the Parties'

18  respective counsel no later than 30 days prior to the Final Approval Hearing and must state the

19  name, address, telephone number and LADWP account number of the Settlement Class Member,

20  as well as the name, address and telephone number of the person who will appear on his or her

21  behalf. Any such request must further indicate that the Settlement Class Member has timely

22  objected to the Settlement in compliance with the requirements of this Section of this Revised

23  Agreement. Any request for appearance that fails to satisfy the requirements of this Section, or

24  that has not been properly or timely submitted, may be deemed ineffective and shall be deemed to

25  constitute a waiver of such Settlement Class Member's right to appear and to be heard on the

26  Settlement at the Final Approval Hearing.

27

28

## L.    Attorneys' Fees and Costs

In connection with the June/July, 2015 mediation, the Parties did not conduct any negotiations concerning the amount of attorneys' fees to be paid or expenses to be reimbursed until *after* the Parties had reached agreement on the *entirety* of the Settlement.  Similarly, in connection with the October 31, 2016 mediation, the Parties did not conduct any negotiations concerning the amount of any incremental increase in reasonable attorneys' fees to be paid or expenses to be reimbursed until *after* the Parties had reached agreement on the *entirety* of the Settlement Agreement revisions.  All negotiations concerning the amount of attorneys' fees to be paid or expenses to be reimbursed were conducted exclusively by the Parties through the mediator, the Hon. Dickran Tevrizian (Ret.).

Plaintiff Jones will make an application to the Court for:  (i) an award of attorneys' fees in an amount not to exceed $19,000,000 at the time of Final Approval, from which all Court-approved plaintiffs' attorneys' fees applications shall be paid; (ii) reimbursement of expenses incurred in connection with the prosecution of the litigation in an amount not to exceed $3,000,000 (reimbursement of expenses incurred by the CC&B System Monitoring Expert is capped at $2,500,000 and reimbursement of expenses incurred by all plaintiffs' counsel is capped at $500,000); and (iii)  service awards in the amount of $5,000 each for Plaintiff Jones, Yaar Kimhi, Tahl Beckerman Megerdichian and Yelena Novak.  Defendant has agreed it will not object to such an application.

Defendant has agreed that, should the Court finally approve the Settlement and award attorneys' fees and expense reimbursement to Class Counsel and service awards to Plaintiff Jones, Yaar Kimhi, Tahl Beckerman Megerdichian and Yelena Novak, Defendant will pay the amount of attorneys' fees, expenses and service awards awarded by the Court within 7 business days after the Settlement is finally approved by the Court.  Defendant will pay the amount awarded by the Court directly to an account established by Class Counsel and Liaison Counsel.  Class Counsel shall be responsible for allocating the attorneys' fees and expenses among plaintiffs' counsel.

Additionally, the Parties agree that Class Counsel will be responsible for aiding the Claims Administrator by monitoring and supervising the administration of the Settlement during the

1   Remediation Period. Defendant has further agreed that, subject to Court approval, Class Counsel

2   may make applications to the Court to be compensated at the rate of twenty-nine percent (29%) of

3   all future recoveries by Class Members subsequent to Final Approval for: (i) Field Work claims;

4   (ii) Pre-Identified Claims Made claims; (iii) Omnibus claims; and (iv) all claims paid in

5   connection with the Settlement by, or on behalf of the City of Los Angeles, including all

6   departments thereof. Class Counsel shall submit to the Court quarterly applications for additional

7   awards of such attorneys' fees. The Parties have also agreed that the Defendant will not object to

8   such quarterly applications as set forth herein.

9       Defendant has agreed that, in connection with these quarterly applications, should the

10   Court award attorneys' fees to Class Counsel, Defendant will pay the amount of attorneys' fees

11   awarded by the Court within 7 business days after the Court issues an order granting Class

12   Counsel's application. Defendant will pay the amount awarded by the Court directly to an account

13   established by Class Counsel and Liaison Counsel. Class Counsel shall be responsible for

14   allocating the attorneys' fees among plaintiffs' counsel.

15       There are no "fee splitting" agreements between the various counsel involved in this

16   action, however, the law firm of Knapp, Petersen & Clark, counsel in the *Kimhi* Action, has

17   agreed to work with Class Counsel to help answer questions and to identify and assist Solar

18   Customers Subclass members in processing claims. The Knapp, Petersen & Clark firm has agreed

19   that, based on the work they have performed, and will continue to perform, for the benefit of Solar

20   Customers Subclass, that the fee application they submit to the Court, through Counsel for

21   Plaintiff Jones, for consideration will not exceed $1,999,999 of fees applied for and/or awarded to

22   Class Counsel at final approval.

23     **M.**    **Final Approval**

24       The Court shall schedule a date for the Final Approval Hearing. At the Final Approval

25   Hearing, the Parties shall join the request that the Court enter an order and judgment in

26   substantially the form of Exhibit H to this Revised Agreement (the "Final Order and Judgment"),

27   which will finally approve the terms of this Revised Agreement, discharge the Released Parties of

28   and from all further liability to Plaintiff Jones, Plaintiffs Kimhi, Megerdichian and Novak, and

1  Settlement Class Members with respect to the Released Claims (but not as to any obligations

2  created or owed pursuant to this Revised Agreement), and permanently bar Plaintiff Jones and

3  Settlement Class Members from bringing, filing, commencing, prosecuting, maintaining,

4  intervening in, participating in, or receiving any benefits from, any other lawsuit, arbitration or

5  administrative, regulatory or other proceeding or cause of action, formally or informally, that

6  asserts, arises from, concerns, or is in any way related to the Released Claims, except as required

7  by law.  Following the entry of the Final Order and Judgment, the Court shall maintain continuing

8  jurisdiction over the enforcement and implementation of this Revised Agreement and the Final

9  Order and Judgment shall indicate that the Court maintains such continuing jurisdiction. The

10  actual form of the Final Judgment and Order entered by the Court may include provisions as to

11  which the Parties may subsequently agree, or which the Court may direct, that are not inconsistent

12  with any of the express terms or conditions of this Revised Agreement.

13  Following entry of the Final Order and Judgment by the Court, no default by any Person in

14  the performance of any covenant or any obligation arising under this Revised Agreement shall

15  affect the discharge and release of the Released Parties, or any other provision of this Revised

16  Agreement.  The above notwithstanding, nothing in this Section shall prevent a Party from seeking

17  enforcement of or compliance with the terms of this Revised Agreement, or the intervention of the

18  Court to compel any such default be cured, pursuant to the Court's continuing jurisdiction.

19  If:  (a) the preliminary approval of this Revised Agreement and the Settlement described

20  herein or the Final Judgment and Order is not obtained from the Court in substantially the form

21  attached hereto as Exhibits C and H, respectively; or (b) the Court fails to grant final approval to

22  the Settlement, this Revised Agreement shall be null and void, shall have no further force and

23  effect, and shall not be offered in evidence or used in any litigation for any purpose, including the

24  existence, certification, or maintenance of any purported class.  Further, if either (a) or (b) occurs,

25  this Revised Agreement and all negotiations, proceedings, documents prepared, and statements

26  made in connection herewith shall be without prejudice to the Parties, shall not be deemed or

27  construed to be an admission or confession by any Party of any fact, matter, or proposition of law,

28  shall not be used in any manner for any purposes, and all Parties to the Action shall stand in the

same position as if this Revised Agreement had not been negotiated, made or filed with the Court. If the Revised Agreement is terminated, any and all orders entered by the Court pursuant to the provisions of the Revised Agreement shall be vacated *nunc pro tunc*.

In the event this Revised Agreement is not approved by the Court or the Settlement is terminated or fails to become effective in accordance with its terms, all orders entered as of the date on which this Settlement was executed shall become operative and fully effective, as if the proceedings relating to this Settlement had not occurred.

### N.    Miscellaneous Provisions

#### 1.    Authority of Signatories

Subject to approval by the Los Angeles City Council, where necessary, each person signing this Revised Agreement represents and warrants that he or she has full authority to sign this Revised Agreement on behalf of the Party for whom he or she is signing and warrants that he or she has the ability to bind that Party to the obligations and commitments set forth herein.

#### 2.    Binding Upon Successors

This Revised Agreement shall be binding upon and inure to the benefit of the Parties and their representatives, heirs, predecessors, successors, and assigns.

#### 3.    Both Parties as Drafter

The Parties stipulate and agree that this Revised Agreement was negotiated on an "arms-length" basis between Parties of equal bargaining power, and drafted jointly by the Parties and, accordingly, no ambiguity in this Revised Agreement shall be construed in favor of or against any of the Parties.

#### 4.    Cooperation

The Parties to this Revised Agreement and their counsel agree that they shall act in good faith and exercise their best efforts to secure approval of this Revised Agreement and full participation by all members of the Settlement Class and that they will take such other reasonable steps as are necessary to implement this Revised Agreement.

**5.      Counterpart Execution**

This Revised Agreement may be executed in any number of counterparts. A facsimile or electronically transmitted signature shall be deemed to constitute an original signature for purposes of this Revised Agreement. Each counterpart when so executed shall be deemed to be an original, and all such counterparts together shall constitute the same instrument. This Revised Agreement will be binding when it has been executed and delivered by the last signatory hereto to execute a counterpart.

**6.      Governing Law**

The construction, interpretation, operation, effect, validity and enforcement of this Revised Agreement and all documents necessary to effectuate it shall be governed by the laws of the State of California without regard to principles of conflict of laws, except to the extent that federal law requires that federal law govern.

**7.      Headings**

Headings contained in this Revised Agreement are for convenience and reference only and are not intended to alter or vary the construction and meaning of this Agreement.

**8.      Integration Clause**

This Revised Agreement, including all exhibits hereto, contains a full, complete, and integrated statement of each and every term and provision agreed to between and among the Parties and supersedes any prior representations, writings or agreements (written or oral) between or among the Parties, which prior agreements may no longer be relied upon for any purpose. This Revised Agreement may not be orally modified in any respect and may be modified only by the written agreement of the Parties. In the event a dispute arises between the Parties over the meaning or intent of any provision of this Revised Agreement, the Parties agree that prior drafts, notes, memoranda, discussions or any other oral communications or documents regarding the negotiations, meaning or intent of this Revised Agreement shall not be offered or admitted into evidence.

### 9. Jurisdiction

The Court retains exclusive and continuing jurisdiction over the Actions, the Parties, Settlement Class Members, and the Claims Administrator in order to interpret and enforce the terms, conditions and obligations under this Revised Agreement.

### 10. Non-Waiver

The waiver by one Party of any provision or breach of this Revised Agreement shall not be deemed a waiver of any other provision or breach of this Revised Agreement.

### 11. Notice

Except as otherwise described in the Class Notice attached as Exhibits A and B to this Revised Agreement, all notices and other communications referenced in this Revised Agreement shall be addressed to the Parties' counsel at their respective addresses as set forth below:

Notices to Plaintiff or the Settlement Class Members

Jack Landskroner, Esq.
Landskroner Grieco Merriman, LLC
1360 West 9th St., Suite 200
Cleveland, Ohio 44113

Notices to Defendant

Maribeth Annaguey, Esq.
LINER LLP
1100 Glendon Avenue, 14th Floor
Los Angeles, California 90024

### 12. Severability

In the event any one or more of the provisions contained in this Revised Agreement shall be held invalid, illegal, or unenforceable for any reason, such invalidity, illegality, or unenforceability shall not affect any other provisions of this Revised Agreement

### 13. Time for Compliance

If the date for performance of any act required by or under this Revised Agreement is to be performed on a particular day or within a specified period of time that falls on a Saturday, Sunday or legal or Court holiday, such act may be performed upon the next business day, with the same

1   effect as if it had been performed on the day or within the computer time specified by or under this

2   Revised Agreement.

3        **IN WITNESS WHEREOF**, each of the Parties hereto has caused this Revised Agreement

4   to be executed on its, his, her or their behalf by its, his, her or their duly authorized counsel of

5   record, all as of the day set forth below.

6

7          *SIGNATURES APPEAR ON THE FOLLOWING PAGES*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2  Dated: November 10th, 2016

3

4                                          **DEFENDANT:**

5                                          By: _David Wright / by permission_
                                               _____
                                               David Wright, General Manager
6                                              Los Angeles Department of Water and Power

7                                          **PLAINTIFF:**

8

9  Dated:  November ___, 2016

10                                         _____
                                           Antwon Jones
11                                         Plaintiff, Individually and as Class Representative

12  Dated: November ___, 2016

13                                         _____
                                           Yaar Kimhi
14                                         Plaintiff, Individually and as Class Representative for
                                           the Solar Subclass

15

16  Dated:  November ___, 2016

17                                         _____
                                           Tahl Beckerman Megerdichian
18                                         Plaintiff, Individually and as a Member of the
                                           Solar Subclass

19  Dated: November ___, 2016

20                                         _____
                                           Yelena Novak
21                                         Plaintiff, Individually and as a Member of the
                                           Solar Subclass

22

23

24

25

26

27

28

REVISED CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

Exhibit 2
133

Dated:  November ___, 2016

**DEFENDANT:**

By: _____
        David Wright, General Manager
        Los Angeles Department of Water and Power

**PLAINTIFF:**

_____
Antwon Jones
Plaintiff, Individually and as Class Representative

Dated:  November ___, 2016

_____
Yaar Kimhi
Plaintiff, Individually and as Class Representative for
the Solar Subclass

Dated:  November ___, 2016

_____
Tahl Beckerman Megerdichian
Plaintiff, Individually and as a Member of the
Solar Subclass

Dated:  November ___, 2016

_____
Yelena Novak
Plaintiff, Individually and as a Member of the
Solar Subclass

64

REVISED CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

Exhibit 2
134

1

2 | Dated: November ___, 2016

**DEFENDANT:**

3

4

By: _____

5   David Wright, General Manager
Los Angeles Department of Water and Power

6

7   **PLAINTIFF:**

8

9 | Dated:  November ___, 2016

10  _____
Antwon Jones
Plaintiff, Individually and as Class Representative

11

12 | Dated:  November 10, 2016

_____
Yaar Kimhi
13  Plaintiff, Individually and as Class Representative for
the Solar Subclass

14

15

16 | Dated:  November ___, 2016

17  _____
Tahl Beckerman Megerdichian
Plaintiff, Individually and as a Member of the
18  Solar Subclass

19 | Dated:  November ___, 2016

20  _____
Yelena Novak
Plaintiff, Individually and as a Member of the
21  Solar Subclass

22

23

24

25

26

27

28

64

**REVISED CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE**

Exhibit 2
135

Dated: November ___, 2016

**DEFENDANT:**

By: _____
    David Wright, General Manager
    Los Angeles Department of Water and Power

**PLAINTIFF:**

Dated:  November ___, 2016

_____
Antwon Jones
Plaintiff, Individually and as Class Representative

Dated: November ___, 2016

_____
Yaar Kimhi
Plaintiff, Individually and as Class Representative for the Solar Subclass

Dated:  November ___, 2016

_____
Tahl Beckerman Megerdichian
Plaintiff, Individually and as a Member of the Solar Subclass

Dated: November 9, 2016

_____
Yelena Novak
Plaintiff, Individually and as a Member of the Solar Subclass

64

REVISED CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

Exhibit 2
136

Dated: November ___, 2016

**DEFENDANT:**

By: _____
David Wright, General Manager
Los Angeles Department of Water and Power

**PLAINTIFF:**

Dated:  November ___, 2016

_____
Antwon Jones
Plaintiff, Individually and as Class Representative

Dated: November ___, 2016

_____
Yaar Kimhi
Plaintiff, Individually and as Class Representative for
the Solar Subclass

Dated:  November 10, 2016

_____
Tahl Beckerman Megerdichian
Plaintiff, Individually and as a Member of the
Solar Subclass

Dated:  November ___, 2016

_____
Yelena Novak
Plaintiff, Individually and as a Member of the
Solar Subclass

64
REVISED CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

Exhibit 2
137

**EXHIBIT A**

**Exhibit A**

**[Long Form Class Notice]**

**Jones v. City of Los Angeles**
**Case No. BC577267**
**Certain Customers of the Los Angeles Department of Water and Power**
**May Claim Settlement Benefits**

**This Class Action Settlement May Affect Your Rights**
*A court authorized this Class Notice. This is not a solicitation from a lawyer.*

- The Settlement resolves a lawsuit concerning complaints arising out of customer overbilling and other billing errors by the Los Angeles Department of Water and Power ("LADWP") that were caused by, and are related to, the defective implementation of the LADWP's new billing system and/or damages incurred by customers' participation in the LADWP's solar incentive program.

- If you are an LADWP customer who was overcharged for electric, water, sewage or sanitation services or were otherwise damaged between the dates of September 3, 2013, and the present, and who is entitled to credits or refunds for electric, water, sewage or sanitation services and/or for participation in the LADWP's solar incentive program from February 13, 2010, you may be eligible to obtain Settlement benefits.

**Read this Notice carefully because your legal rights could be affected.**

| SUMMARY OF IMPORTANT DATES AND DEADLINES | |
|---|---|
| **Event** | **Date** |
| Preliminary Approval | _____, 2016 |
| Class Notice Date | _____, 2017 |
| Last Day To Submit A Claim Form (for all Settlement Class Members except Field Work Customers) | _____, 2017 |
| Last Day To Submit A Claim Form (for Field Work Customers) | 60 days from date of Field Work Determination Letter |
| Last Day To Opt Out | _____, 2017 |
| Last Day To Object | _____, 2017 |

38457.025-3492687v6

1

Exhibit 2
139

| | |
|---|---|
| Last Day To Seek Special Master Review (for Pre-Identified Non Claims Made Class Members) | _____, 2017 |
| Last Day To Seek Special Master Review (for Pre-Identified Claims Made Class Members, Omnibus Class Members) | 30 days from date of claim determination letter |
| Last Day To Seek Special Master Review (for Field Work Customers) | 30 days from date of Field Work Determination letter |
| Last Day To Contest Special Master's determination (for all Settlement Class Members that have requested a review by the Special Master) | 30 days from date of Special Master's determination letter |
| Last Day to File Notice of Appearance | _____, 2017 |
| Final Approval | _____, 2017 |

---

**YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT INCLUDE:**

**Obtain settlement benefits** - You may be pre-identified to receive Settlement benefits, in which case, you may not need to take any further action to receive your credit or refund.  Additionally, if you are not pre-identified, you may submit a Claim Form, which is included with this Class Notice and available at www._____.com, to determine if you qualify for Settlement benefits.  The deadline to submit this Claim Form is _____, 2017.

**Opt Out** - Write to the Claims Administrator if you do not want to be included in the Settlement.  You have a right to opt out of the Settlement only if you are a member of the Settlement Class and have not objected to the Settlement.  The deadline to opt-out is ____, 2017.

**Object** - Write to the Claims Administrator if you disagree with the Settlement.  As set forth in the Answers to Questions 16 through 19 below, you may attend a hearing on the fairness of the Settlement after giving appropriate notice.  You have a right to object to the Settlement only if you are a member of the Settlement Class and have not opted out of the Settlement.  The deadline to submit an objection is _____, 2017.

These rights and options – **and the deadlines by which to exercise them** – are explained more fully in this Class Notice.

---

    The Court that is supervising this case has granted Preliminary Approval to the Settlement, but still has to decide whether to grant Final Approval.  The Final Approval Hearing will take place on _____, 2017.  Settlement benefits will be distributed only if, and after, the Court grants Final Approval of the Settlement and any appeals are resolved.

38457.025-3492687v6

2

Exhibit 2
140

## WHAT THIS CLASS NOTICE CONTAINS

**Page**

**BASIC INFORMATION**

1. Why was this Class Notice issued? ....................................................................X

2. What is this lawsuit about? ...........................................................................X

3. Why is this a class action? ............................................................................X

4. Why is there a Settlement? ...........................................................................X

**WHO IS IN THE SETTLEMENT?** ...........................................................X

5. How do I know if I am part of the Settlement? .....................................X

6. Are there exceptions to being included in the Settlement? ....................X

7. What if I am not sure whether I am included in the Settlement? ...........X

**THE SETTLEMENT BENEFITS:**
**WHAT YOU GET AND HOW YOU GET IT** ..........................................X

8. What does the Settlement provide? ..................................................X

9. How do I submit a Claim Form? ...................................................X

10. What claims am I releasing? .........................................................X

**THE LAWYERS REPRESENTING PLAINTIFF** ...............................X

11. Do I have a lawyer in this case? ..................................................X

12. How will the lawyers be paid? ....................................................X

**SEEKING AN INDEPENDENT REVIEW BY THE SPECIAL MASTER** ......X

13. What do I do if I do not agree with the amount of the credit or refund that is determined is owed to me? ..........................................................X

**EXCLUDING YOURSELF FROM THE SETTLEMENT** ................................X

14. What do I do if I do not want to be included in the Settlement? ......................11

15. What happens if I don't opt out before _____? .............................X

38457.025-3492687v6

3

Exhibit 2
141

**OBJECTING TO THE SETTLEMENT** ..............................................................X

16. How do I tell the Court that I don't like the Settlement? .....................................X

17. When/where will the Court decide whether to approve the Settlement? ............X

18. Do I have to attend the hearing? ........................................................................X

19. May I speak at the hearing? ...............................................................................X

20. How do I get more information? ........................................................................X

## BASIC INFORMATION

**1. Why was this Class Notice issued?**

The Court issued this Class Notice because you have a right to know about a proposed settlement of a class action lawsuit that the Court has preliminarily approved. You also are entitled to know how you may make a claim for certain benefits of the Settlement and about all of your options under the Settlement. If the Court grants Final Approval and all appeals, if any, are resolved, valuable benefits will be distributed to qualifying class members.

**2. What is this lawsuit about?**

The person who filed this class action is called the "Plaintiff" and the City of Los Angeles, by and through LADWP, is the "Defendant." A lawsuit filed in the Superior Court of California, captioned *Jones v. City of Los Angeles*, Case No. BC577267, alleges claims involving customer overbilling and other billing errors by the LADWP that were caused by, and are related to, the defective implementation of the LADWP's new Customer Care and Billing system (the "CC&B System") and damages incurred by customers arising from their participation in the LADWP's solar incentive program. Plaintiff's claims include, among others, claims for fraud, negligent misrepresentation, breach of contract, unjust enrichment, and violations of the California Consumer Legal Remedies Act and the California Unfair Competition Law. More information can be found at www._____.com, by calling 1-(800) _____, or by writing to Class Counsel: Jack Landskroner, Esq., Landskroner Grieco Merriman, LLC, 1360 West 9th Street, Suite 200, Cleveland, Ohio 44113. A copy of the Settlement Agreement will be available at www._____.com, and is also on file with the Court.

**3. Why is this a class action?**

In a class action, one or more person(s) called "Class Representatives" sue on behalf of themselves and others with similar claims. All of these people together are called a "class." The Court appointed certain plaintiffs as the Class Representatives for purposes of this Settlement. The "Settlement Class Members" are all LADWP customers who were overcharged for electric, water, sewage or sanitation services between the dates of September 3, 2013, and the present, and who are entitled to credits or refunds for electric, water, sewage or sanitation services and/or for participation in the LADWP's solar incentive program from February 13, 2010.

**4. Why is there a Settlement?**

The Court did not decide in favor of either Plaintiff or Defendant. Instead, both sides agreed to a settlement. The Class Representatives and the attorneys that have been appointed by the Court to represent the Settlement Class believe that the Settlement is in the best interests of all Settlement Class Members.

38457.025-3492687v6

5

Exhibit 2
143

## WHO IS IN THE SETTLEMENT?

**5. How do I know if I am part of the Settlement?**

You may be entitled to Settlement benefits if you are an LADWP customer who was overcharged for electric, water, sewage or sanitation services or were otherwise damaged from billing practices between the dates of September 3, 2013 and the present, and/or for participation in the LADWP's solar incentive program from February 13, 2010.

**6. Are there exceptions to being included in the Settlement?**

Excluded from the Class is the Judge to whom this case is assigned, any members of the Judge's immediate family, and any counsel of record in this action.

**7. What if I am not sure whether I am included in the Settlement?**

If you are not sure whether you are included in the Settlement Class, you may visit www._____.com for more information, or call _____ , and ask for assistance.

## THE SETTLEMENT BENEFITS: <br> WHAT YOU GET AND HOW YOU GET IT

**8. What does the Settlement provide?**

The Settlement provides two types of relief:  (i) monetary relief and (ii) non-monetary remedial relief.

### i. Monetary Relief

Settlement Class Members that are members of one or more of the following seven Subclasses may be entitled to monetary relief for each group they are part of:

- **Overbilled**: This group includes all LADWP customers that were overbilled as a result of being charged an incorrect rate, incorrect amount of consumption, incorrect utility tax rate or who did not have a discount applied.

- **Incorrect Fee**: This group includes all LADWP customers that were charged an incorrect fee, including but not limited to late payment fees, reconnect fees and/or start service fees.

- **Unrefunded Balance**: This group includes all LADWP customers that: (i) have "Closed Accounts" with credit balances and (ii) are owed refunds

that have been withheld by the LADWP during the period of September 3, 2013 to the present.

- **Solar**: This group includes all LADWP customers that have installed solar systems and applied to participate in the Solar Photovoltaic Incentive Program from February 13, 2010 to date and: (i) experienced delay beyond 30 days after submission of a complete Incentive Application and Supporting Documentation and/or indication that the solar system was fully permitted and ready for inspection in receiving a reservation confirmation and/or connecting the solar system; and/or (ii) have not been billed for energy consumed and/or generated; and/or (iii) have not been credited for excess energy generated by the customer's solar power system.

*If you are part of the **Overbilled, Incorrect Fee, Unrefunded Balance and/or Solar** groups, the LADWP has already identified you and the letter included with this Class Notice informs you of the amount you were overbilled.*

*To receive 100% of that amount, you don't need to do anything.*

*To dispute that amount, you must request Special Master review by sending a written request for review to the Claims Administrator. If you dispute the Special Master's decision, you can appeal to the Court. See Question 13.*

*If you believe you have additional damages beyond that which has been identified, you must submit a Claim Form, which is included with this Class Notice. See Question 9.*

- **Premise Condition/Estimated Bill**: This group includes all LADWP customers that: (i) unbeknownst to the customer, had a premise condition that caused excessive consumption of water and/or power; (ii) received estimated bills for multiple billing periods after September 3, 2013; (iii) because of these estimated bills, were prevented from timely discovering the premise condition; and (iv) were charged for greater quantities of water, power or sewage than they otherwise would have been charged.

- **Automatic Bill Payment/Bank Overdraft Charge**: This group includes all LADWP customers that: (i) were enrolled in an automatic bill payment plan with a bank and (ii) were charged overdraft fees because the LADWP charged the customer an incorrect amount, which, in turn, resulted in the customer's bank account being overdrawn.

*If you are part of the **Premise Condition/Estimated Billing and/or Automatic Bill Payment/Bank Overdraft Charge** groups, the LADWP has*

Exhibit 2
145

*already identified you and the letter included with this Class Notice
informs you that you are a member of this/these Subclass(es).*

*The LADWP, however, cannot determine the amount of damages that you
may have incurred, if any, unless you submit a Claim Form, which is
included with this Class Notice.* **You must submit a Claim Form.** *If you
believe you have additional damages beyond overbilling as a consequence
of an automatic bill payment/bank overdraft charge, you must include
those damages on your Claim Form. See Question 9.*

*Based on your Claim Form, the LADWP will determine the amount you
are owed.   To dispute that amount, you must request Special Master
review.  If you dispute the Special Master's decision, you can appeal to
the Court. See Question 13.*

- **Omnibus**: This group includes all LADWP customers that were not
  otherwise identified as members of one of the Subclasses listed above but
  believe that they were:  (i) incorrectly assessed a charge associated with
  their power, water, sewage or sanitation services at any time from
  September 3, 2013 to the present, that is not covered by any of the
  Subclasses listed herein; or (ii) otherwise damaged as a result from their
  participation in the LADWP's solar incentive program at any time from
  February 13, 2010 to the present.

  *If you are part of this group that means that the LADWP has not been able
  to identify you as a member of one of the Subclasses listed above.   The
  letter included with this Class Notice informs you that you may, however,
  still submit a Claim Form, which is included with this Class Notice.*

  *Based on your Claim Form, the LADWP will determine the amount you
  are owed.   To dispute that amount, you must request Special Master
  review.  If you dispute the Special Master's decision, you can appeal to
  the Court. See Question 13.*

If you are a Field Work Customer, there is a pending field work investigation that
requires further investigation of property conditions that might have caused you to be
overcharged or to have experienced other billing errors or monetary damages.  Once the
field work investigation has been completed, the LADWP will inform you, by letter, of
its determination in connection with this field work investigation.

If you are a Field Work Customer, you must submit a Claim Form after receiving
the letter informing you of the LADWP's determination.  Based on your Claim Form, the
LADWP will determine the amount you are owed.  To dispute that amount, you must
request Special Master review.  If you dispute the Special Master's decision, you can
appeal to the Court.  See Question 13.

38457.025-3492687v6

8

Exhibit 2
146

ii.    **Non-Monetary Remedial Relief**

The Settlement also provides non-monetary remedial relief including: (i) the creation and adoption of certain billing system metrics; (ii) the appointment of an independent billing system monitoring expert; (iii) audits of LADWP's billing system to confirm billing accuracy; (iv) the creation and implementation of a team at LADWP to address unique or complex billing issues; (v) the adoption of an amendment to the Rules Governing Water and Electric Service to provide for a shorter period of time for which LADWP may collect payment from customers whose bills are delayed due to billing errors; (vi) the creation and implementation of an information technology Project Management Office; and (vii) a payment arrangement for back-billed customers allowing for up to 4 years to pay back the back-billed amount without penalty or interest, in equal monthly installments, provided you remain current on your most recent bill.  If you are already on a payment plan, the plan may be extended by one year.

**9.  How do I submit a Claim Form?**

A Claim Form is included with this Class Notice.  A Claim Form can also be obtained online at www._____.com, by calling 1-800_____ or by writing to the Claims Administrator at the address below.  Completed Claim Forms can be submitted either on line at _____.com or by regular U.S. mail to:

> LADWP Billing Class Action
> c/o Kurtzman Carson Consultants LLC
> XXXXXXX
> XXXXXXX
> XXXXXXX

**10.  What claims am I releasing?**

If you are a Settlement Class Member, and you do not opt out from the Settlement Class, when the Settlement becomes final, you will be releasing Defendant and its departments and bureaus, from any liability for all claims associated with this case, and you will be bound by the release included in the Settlement Agreement.  A copy of the Settlement Agreement containing the release is available at www._____.com

### THE LAWYERS REPRESENTING PLAINTIFF

**11.  Do I have a lawyer in this case?**

Yes. Jack Landskroner Esq. of Landskroner Grieco Merriman, LLC, 1360 West 9th Street, Suite 200, Cleveland, Ohio 44113 (Class Counsel) and Michael J. Libman, Esq. of the Law Offices of Michael J. Libman, 16133 Ventura Blvd., Ste. 1200, Encino, CA 91436 (Liaison Counsel) have been appointed by the Court to represent you and the

other Settlement Class Members.  If you want to be represented by your own lawyer, you may hire one at your own expense.

**12.  How will the lawyers be paid?**

Class Counsel will ask the Court at the Final Approval Hearing to award attorneys' fees in an amount not to exceed $19,000,000 and to award reimbursement of expenses incurred in litigating this case in an amount not to exceed $3,000,000 (reimbursement of expenses incurred by the Independent CC&B System Monitoring Expert is capped at $2,500,000 and reimbursement of expenses incurred by all Plaintiff's counsel is capped at $500,000).  The fees and reimbursed expenses will be determined by the Court based on the work performed by Counsel who have participated in securing this settlement for the Class and facilitating its implementation.  All fees in this matter will be requested by way of application to the Court based on the efforts of counsel.  There are no "fee splitting" agreements between the various counsel involved in this action, however, the law firm of Knapp, Petersen & Clark has agreed to work with Class Counsel, Landskroner Grieco Merriman, to help answer questions and to identify and assist solar customers in processing claims.  The Knapp, Petersen & Clark firm has agreed that based on the work they have performed and will continue to perform for the benefit of solar customers, Knapp's fee application to the Court will not exceed $1,999,999 of fees applied for and/or awarded to Class Counsel at Final Approval.  If the Court does award attorneys' fees and reimbursement of expenses, Defendant has agreed to pay whatever amounts are awarded by the Court.

Additionally, the Parties agree that Class Counsel will be responsible for aiding the Claims Administrator by monitoring and supervising the administration of the Settlement during the Remediation Period.  Defendant has further agreed that, subject to Court approval, Class Counsel may make applications to the Court to be compensated at the rate of twenty-nine percent (29%) of all future recoveries by Class Members subsequent to Final Approval for: (i) Field Work claims; (ii) Pre-Identified Claims Made claims; (iii) Omnibus claims; and (iv) all claims paid in connection with the Settlement by, or on behalf of the City of Los Angeles, including all departments thereof.  Class Counsel shall submit to the Court quarterly applications for additional awards of such attorneys' fees.  Defendant has agreed it will not object to such quarterly applications.

Separate and apart from the Settlement consideration described in Answer to Question 8 above, Defendant will separately pay the fees and expenses that the Court awards, as well as the costs to provide Notice to the Settlement Class and to administer the Settlement.  These amounts will not come out of the funds for benefits to Settlement Class Members.

## **SEEKING AN INDEPENDENT REVIEW BY THE SPECIAL MASTER**

**13.    What do I do if I do not agree with the amount of the credit or refund that
is determined is owed to me?**

If you disagree with the amount of the credit or refund that is determined is owed
to you, you may request that an independent review be conducted by the Special Master
by sending a letter, via First Class Mail that:

(a) states that you dispute the amount of the credit or refund that was determined is
owed to you and that you desire to initiate a review by the Special Master;

(b) explains the reason(s) that you are disputing the amount of the credit or refund;
and

(c) attaches all documents relied upon by you in disputing the amount of the credit
or refund.

You must sign and date your request for an independent review.  Your request must be
sent to:

> Special Master - LADWP Billing Class Action
> c/o Kurtzman Carson Consultants LLC
> XXXXXXX
> XXXXXXX
> XXXXXXX

**If you are not submitting a Claim Form, any request for a Special Master Review
must be postmarked within 30 days of the date of the letter from LADWP informing
you of the amount of the credit or refund that has been determined to be owed to
you.**

**If you do submit a Claim Form, any request for a Special Master Review must be
postmarked within 30 days of the date of the response from LADWP regarding its
determination on your claim.**

**In either case, failure to file a timely Special Master Review will automatically result
in a denial of your request for review.**

Any Class Member who wishes to contest the Special Master's determination of that
Class Member's claim shall submit, via First Class Mail and within 30 days of the date of
the Special Master's determination letter, a letter to the Court requesting a review by the
Court, stating the grounds for disputing the determination, and submitting any supporting
documentation.

38457.025-3492687v6

Exhibit 2
149

## EXCLUDING YOURSELF FROM THE SETTLEMENT

**14.  What do I do if I do not want to be included in the Settlement?**

You have a right to exclude yourself or "opt out" of the Settlement.  To opt out, you must mail a request for exclusion to the Claims Administrator at the following address:

<div align="center">

XXXXXXX
XXXXXXX
XXXXXXX

</div>

You must personally sign the exclusion request.  Your request must: (i) clearly express your desire to be excluded or to "opt out" from the Settlement Class; (ii) include your name, address and telephone number, LADWP account number and, if represented by counsel, counsel's name, address and telephone number.

**Your exclusion request must be mailed to the address set forth above and must be postmarked no later than _____ or it will not be accepted. If you do not specifically request to be excluded by following these directions, you will automatically be a member of the Settlement Class.**

If you opt out of the Settlement Class, you will not be eligible for any Settlement benefits, and will waive all rights to object to the Settlement.  Additionally, if you file an objection to the Settlement, you will not be able to exclude yourself from the Settlement Class.

**15.  What happens if I don't opt out before _____?**

If the proposed Settlement is approved and you are a Settlement Class Member who does not properly and timely exclude yourself from the Settlement Class, all claims that you may have now against Defendant with respect to certain billing errors or damages relating to your participation in LADWP's solar incentive program will be **WAIVED AND RELEASED,** and you will be prohibited from bringing any such claims in the future on your own behalf.

## OBJECTING TO THE SETTLEMENT

**16.  How do I tell the Court that I don't like the Settlement?**

If you are a Settlement Class Member, you can express your objection to the Settlement.  The Court will consider your views.  To object, you must send a letter to the Claims Administrator, which will be provided to the Court and counsel, saying that you object to the terms of the Settlement.  Your objection must: (i) state, in detail, the legal and factual ground(s) for your objection; (ii) include your name, address and telephone number and LADWP account number, and, if represented by counsel, counsel's name,

address and telephone number; and (iii) be signed by you.  If you are represented by your own separate counsel, that attorney will also need to file his or her appearance with the Court by no later than _____.

To object, you must mail your objection the Claims Administrator, postmarked no later than _____ to:

<center>

XXXXXX
XXXXXX
XXXXXX

</center>

Please include the phrase "*Jones v. City of Los Angeles*, Case No. BC577267" on the envelope containing your objection.

### 17.  When and where will the Court decide whether to approve the Settlement?

The Court will hold a Final Approval Hearing before the Honorable Elihu M. Berle at _:__ _.m. on _____, 2017 in Department 323 of the Superior Court of California, County of Los Angeles, Central District, Central Civil West, 600 South Commonwealth Avenue, Los Angeles, California, 90005.  At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate.  If there are objections, the Court will consider them.  The Court also may decide how much to pay Class Counsel.  After the hearing, the Court will decide whether to grant Final Approval to the Settlement.  We do not know how long these decisions will take.

### 18.  Do I have to attend the hearing?

No.  Class Counsel will answer any questions that Judge Berle may have.  However, you are welcome to come at your own expense.  You also may pay your own lawyer to attend the Final Approval Hearing on your behalf.  If you file an objection, you do not have to come to Court to discuss it.  As long as your written objection is received before the deadline, and you have followed the directions contained in the Answer to Question 16 above, the Court will consider the information provided in your written objection.

### 19.  May I speak at the hearing?

That will be up to Judge Berle.  You may ask the Court for permission to speak at the Final Approval Hearing.  To do so, you must send a letter saying that it is your "Notice of Intention to Appear in *Jones v. City of Los Angeles*, Case No. BC577267." You must include your name, address, telephone number and LADWP account number, as well as the name, address and telephone number of any attorney who will appear at the Final Approval Hearing on your behalf.  Your request must also indicate that you timely objected to the Settlement pursuant to the directions contained in the Answer to Question 16 above.

Your Notice of Intention to Appear must be filed with the Clerk of the Court at the address listed in the Answer to Question 17 above no later than _____, 2017. Please include the phrase "*Jones v. City of Los Angeles*, Case No. BC577267" below the Court's address on the envelope containing your notice.  Your notice must also be received by Class Counsel and Defendant's counsel at the addresses listed below no later than _____.

<u>Counsel for the Class</u>

· Jack Landskroner, Esq.
Landskroner Grieco Merriman, LLC
1360 West 9th St., Suite 200
Cleveland, Ohio 44113

<u>Counsel for Defendant</u>

Maribeth Annaguey, Esq.
LINER LLP
1100 Glendon Avenue, 14th Floor
Los Angeles, California 90024

**20.  How do I get more information?**

If you think you may be a Settlement Class Member and would like more information about the lawsuit or the terms of the proposed Settlement, you may review the pleadings, records and other papers on file in this lawsuit, including the Court's Order granting Preliminary Approval and the proposed Settlement Agreement, which may be inspected on weekdays, during normal business hours, at the Clerk's Office of the Superior Court of California, County of Los Angeles, Central District, Central Civil West, 600 South Commonwealth Avenue, Los Angeles, California, 90005.  The Preliminary Approval Order and Settlement Agreement will also be available on www._____.com. For information on any matters contained in this Notice, you may write to or call Class Counsel at:

Jack Landskroner, Esq.
LANDSKRONER, GRIECO MERRIMAN LLC
1360 W 9th Street,  Ste. 200
Cleveland, OH 44113
(216) 522-9000

You may also visit www._____.com for more information, or call _____, and ask for assistance.

**PLEASE DO NOT CONTACT THE COURT DIRECTLY WITH QUESTIONS ABOUT THE SETTLEMENT.**

Dated: November ___, 2016.

38457.025-3492687v6

14

Exhibit 2
152

**EXHIBIT B**

**Exhibit B**

**[Class Notice Short Form]**

**Certain Customers of the Los Angeles Department of Water and Power
May Claim Benefits from a Class Action Settlement**

### WHAT'S THIS CASE ABOUT?

A lawsuit filed in the Superior Court of California, captioned *Jones v. City of Los Angeles*, Case No. BC577267, alleges claims involving customer overbilling and other billing errors by the Los Angeles Department of Water and Power ("LADWP") that were caused by, and are related to, the defective implementation of the LADWP's new Customer Care and Billing system and damages incurred by customers arising from their participation in the LADWP's solar incentive program. Plaintiff's claims include, among others, claims for fraud, negligent misrepresentation, breach of contract, unjust enrichment, and violations of the California Consumer Legal Remedies Act and the California Unfair Competition Law. More information can be found at www._____.com, by writing to Class Counsel: Jack Landskroner, Esq., Landskroner Grieco Merriman, LLC, 1360 West 9th Street, Suite 200, Cleveland, Ohio 44113 or by calling 1-(800) _____. A copy of the Settlement Agreement will be available at www._____.com, and is also on file with the Court.

### WILL THERE BE A HEARING?

The Court will hold a Final Approval Hearing before the Honorable Elihu M. Berle at __:__ _.m. on _____, 2017 in Department 323 of the Superior Court of California, County of Los Angeles, Central District, Central Civil West, 600 South Commonwealth Avenue, Los Angeles, California, 90005. You may appear at the Final Approval Hearing, but it is not required.

### WHO IS INCLUDED?

You may be entitled to Settlement benefits if you are an LADWP customer who: was overcharged for electric, water, sewage or sanitation services between the dates of September 3, 2013 and the present, and/or for participation in the LADWP's solar incentive program from February 13, 2010.

### WHAT BENEFITS DOES THE SETTLEMENT PROVIDE?

The Settlement provides two types of relief: (i) monetary relief and (ii) non-monetary remedial relief.

   i. **Monetary Relief**

Settlement Class Members that are members of one or more of the following seven Subclasses may be entitled to monetary relief for each group they are part of:

- **Overbilled**: This group includes all LADWP customers that were overbilled as a result of being charged an incorrect rate, incorrect amount

1

Exhibit 2
154

of consumption, incorrect utility tax rate or who did not have a discount applied.

- **Incorrect Fee**: This group includes all LADWP customers that were charged an incorrect fee, including but not limited to late payment fees, reconnect fees and/or start service fees.

- **Unrefunded Balance**: This group includes all LADWP customers that: (i) have "Closed Accounts" with credit balances and (ii) are owed refunds that have been withheld by the LADWP during the period of September 3, 2013 to the present.

- **Solar**: This group includes all LADWP customers that have installed solar systems and applied to participate in the Solar Photovoltaic Incentive Program from February 13, 2010 to date and: (i) experienced delay beyond 30 days after submission of a complete Incentive Application and Supporting Documentation and/or indication that the solar system was fully permitted and ready for inspection in receiving a reservation confirmation and/or connecting the solar system; and/or (ii) have not been billed for energy consumed and/or generated; and/or (iii) have not been credited for excess energy generated by the customer's solar power system.

*If you are part of the **Overbilled, Incorrect Fee, Unrefunded Balance and/or Solar** groups, the LADWP has already identified you and the amount that you were overbilled.*

*To receive 100% of that amount, you don't need to do anything.*

*If you believe you have additional damages beyond that which has been identified, you must submit a Claim Form.*

38457.025-3492954v4

Exhibit 2
155

- **Premise Condition/Estimated Bill**: This group includes all LADWP customers that: (i) unbeknownst to the customer, had a premise condition that caused excessive consumption of water and/or power; (ii) received estimated bills for multiple billing periods after September 3, 2013; (iii) because of these estimated bills, were prevented from timely discovering the premise condition; and (iv) were charged for greater quantities of water, power or sewage than they otherwise would have been charged.

- **Automatic Bill Payment/Bank Overdraft Charge**: This group includes all LADWP customers that: (i) were enrolled in an automatic bill payment plan with a bank and (ii) were charged overdraft fees because the LADWP charged the customer an incorrect amount, which, in turn, resulted in the customer's bank account being overdrawn.

    *If you are part of the **Premise Condition/Estimated Billing and/or Automatic Bill Payment/Bank Overdraft Charge** groups, the LADWP has already identified you.*

    *The LADWP, however, cannot determine the amount of damages that you may have incurred, if any, unless you submit a Claim Form, which is included with this Class Notice. **You must submit a Claim Form.** If you believe you have additional damages beyond overbilling as a consequence of an automatic bill payment/bank overdraft charge, you must include those damages on your Claim Form.*

- **Omnibus**: This group includes all LADWP customers that were not otherwise identified as members of one of the Subclasses listed above but believe that they were: (i) incorrectly assessed a charge associated with their power, water, sewage or sanitation services at any time from September 3, 2013 to the present, that is not covered by any of the Subclasses listed herein; or (ii) otherwise damaged as a result from their participation in the LADWP's solar incentive program at any time from February 13, 2010 to the present.

    *If you are part of this group that means that the LADWP has not been able to identify you as a member of one of the Subclasses listed above. You may, however, still submit a Claim Form.*

If you are a Field Work Customer, there is a pending field work investigation that requires further investigation of property conditions that might have caused you to be overcharged or to have experienced other billing errors or monetary damages. Once the field work investigation has been completed, the LADWP will inform you, by letter, of its determination in connection with this field work investigation. If you are a Field Work Customer, you must submit a Claim Form after receiving the letter informing you of the LADWP's determination. Based on your Claim Form, the LADWP will determine the amount you are owed.

Any customer that disagrees with the amount of the credit or refund that is determined is owed may seek an independent review by a Special Master.

3

38457.025-3492954v4

Exhibit 2
156

ii.                    **Non-Monetary Remedial Relief**

The Settlement also provides non-monetary remedial relief including: (i) the creation and adoption of certain billing system metrics; (ii) the appointment of an independent billing system monitoring expert; (iii) audits of LADWP's billing system to confirm billing accuracy; (iv) the creation and implementation of a team at LADWP to address unique or complex billing issues; (v) the adoption of an amendment to the Rules Governing Water and Electric Service to provide for a shorter period of time for which LADWP may collect payment from customers whose bills are delayed due to billing errors; (vi) the creation and implementation of an information technology Project Management Office; and (vii) a payment arrangement for back-billed customers allowing for up to 4 years to pay back the back-billed amount without penalty or interest, in equal monthly installments, provided you remain current on your most recent bill. If you are already on a payment plan, the plan may be extended by one year.

**WHAT ARE THE ATTORNEYS' FEES?**

Class Counsel will ask the Court at the Final Approval Hearing to award attorneys' fees in an amount not to exceed $19,000,000 and to award reimbursement of expenses incurred in litigating this case in an amount not to exceed $3,000,000 (reimbursement of expenses incurred by the Independent CC&B System Monitoring Expert is capped at $2,500,000 and reimbursement of expenses incurred by all Plaintiff's counsel is capped at $500,000). The fees and reimbursed expenses will be determined by the Court based on the work performed by Counsel who have participated in securing this settlement for the Class and facilitating its implementation. All fees in this matter will be requested by way of application to the Court based on the efforts of counsel. If the Court does award attorneys' fees and reimbursement of expenses, Defendant has agreed to pay whatever amounts are awarded by the Court.

Additionally, the Parties agree that Class Counsel will be responsible for aiding the Claims Administrator by monitoring and supervising the administration of the Settlement during the Remediation Period. Defendant has further agreed that, subject to Court approval, Class Counsel may make applications to the Court to be compensated at the rate of twenty-nine percent (29%) of all future recoveries by Class Members subsequent to Final Approval for: (i) Field Work claims; (ii) Pre-Identified Claims Made claims; (iii) Omnibus claims; and (iv) all claims paid in connection with the Settlement by, or on behalf of the City of Los Angeles, including all departments thereof. Class Counsel shall submit to the Court quarterly applications for additional awards of such attorneys' fees. Defendant has agreed it will not object to such quarterly applications.

Separate and apart from the Settlement consideration, Defendant will separately pay the fees and expenses that the Court awards, as well as the costs to provide Class Notice to the Settlement Class and to administer the Settlement. These amounts will not come out of the funds for benefits to Settlement Class Members.

38457.025-3492954v4

4

Exhibit 2
157

**WHAT ARE YOUR OPTIONS?**

A.  If you receive a letter identifying you as a member of the: (i) Overbilled Subclass; (ii) Unrefunded Balance Subclass; (iii) Incorrect Fee Subclass; and/or (vi) Solar Subclass, you can:

   1.  Do nothing.  You will receive a credit or refund in the amount indicated in the letter that you will receive and/or file a Claim Form if you believe you are entitled to other damages in addition to the amount in the letter.  Instructions on how to submit a Claim Form are set forth below in Section B.1.

   2.  Request an independent review by a Special Master.  If you disagree with the amount of the credit or refund that is determined is owed to you, you may request, in writing, that an independent review be conducted by the Special Master.  The detailed Class Notice provides full details on how to request an independent review by the Special Master and can be found on the settlement website at www._____.com.

   3.  Object.  Written objections must be mailed the Claims Administrator at:

       XXXXXXX
       XXXXXXX
       XXXXXXX

       and postmarked no later than _____.  The detailed Class Notice provides full details on how to object and can be found on the Settlement website at www._____.com.

   4.  Opt out of the settlement.  Written request for exclusion must be mailed to the Claims Administrator at:

       XXXXXXX
       XXXXXXX
       XXXXXXX

       and postmarked no later than _____.  If you opt out of the Settlement, you will no longer be a Settlement Class Member, and you will not be bound by the Settlement and cannot file a claim.  The detailed Class Notice provides full details on how to opt out and can be found on the settlement website at www._____.com.

B.  If you receive a letter identifying you as a member of the: (i) Premise Condition/Estimated Bill Subclass; and/or (ii) Automatic Bill Payment/Bank Overdraft Charge Subclass, you can:

   1.  Submit a claim.  A Claim Form can be found at www._____.com or by calling 1-(800) _____.  You must submit your Claim Form by _____, 2017 in order to be eligible to receive a credit or refund.  A Claim Form may be submitted to the Claims Administrator by regular U.S. Mail or online at _____.com.  If it is determined that you have been overcharged or damaged, and you agree with this determination, you need not take any further action.  You will receive a credit or refund in the amount indicated.  If you disagree with the amount of the credit or refund that is determined is owed to you, you may seek an independent review by a

5

Exhibit 2
158

Special Master.  The detailed Class Notice provides full details on how to request an independent review by the Special Master and can be found on the Settlement website at www._____.com.

2.   Object.  Written objections must be mailed the Claims Administrator at:

**XXXXXXX**
**XXXXXXX**
**XXXXXXX**

and postmarked no later than _____, 2017.   The detailed Class Notice provides full details on how to object and can be found on the Settlement website at www._____.com.

3.   Opt out of the Settlement.    Written request for exclusion must be mailed to the Claims Administrator at:

**XXXXXXX**
**XXXXXXX**
**XXXXXXX**

and postmarked no later than _____, 2017.  If you opt out of the Settlement, you will no longer be a Settlement Class Member, and you will not be bound by the Settlement and cannot file a claim.  The detailed notice provides full details on how to opt out and can be found on the settlement website at www._____.com.

4.   Do nothing. If you do nothing, you will not receive any Settlement benefits, and you give up rights.

C.  If you receive a letter stating that the LADWP has not been able to identify you as a member of any Subclass, but you nevertheless believe that you have been: (i) incorrectly assessed a charge associated with your power, water, sewage or sanitation services at any time from September 3, 2013 to the present, that is not covered by any of the Subclasses listed herein; or (ii) otherwise damaged as a result from your participation in the LADWP's solar incentive program at any time from February 13, 2010 to the present, you can:

1.   Submit a claim.  A Claim Form can be found at www._____.com or by calling 1-(800) _____.   You must submit your Claim Form by _____ in order to be eligible to receive a credit or refund.  A Claim Form may be submitted to the Claims Administrator by regular U.S. Mail or online at _____.com.  If it is determined that you have been overcharged or damaged, and you agree with this determination, you need not take any further action.  You will receive a credit or refund in the amount indicated.  If you disagree with the amount of the credit or refund that is determined is owed to you, you may seek an independent review by a Special Master.  The detailed Class Notice provides full details on how to request an independent review by the Special Master and can be found on the settlement website at www._____.com.

2.   Object.  Written objections must be mailed the Claims Administrator at:

38457.025-3492954v4

Exhibit 2
- 159

XXXXXXX
XXXXXXX
XXXXXXX

and postmarked no later than _____, 2017.  The detailed Class Notice provides full details on how to object and can be found on the Settlement website at www._____.com.

3.  Opt out of the Settlement.  Written request for exclusion must be mailed to the Claims Administrator at:

XXXXXXX
XXXXXXX
XXXXXXX

and postmarked no later than _____, 2017.  If you opt out of the Settlement, you will no longer be a Settlement Class Member, and you will not be bound by the Settlement and cannot file a claim.  The detailed Class Notice provides full details on how to opt out and can be found on the settlement website at www._____.com.

4.  Do nothing. If you do nothing, you will not receive any Settlement benefits, and you give up rights.

**HOW DO I GET MORE INFORMATION?**

For further details, visit the Settlement website at www._____.com, call 1-800_____ for assistance, or write to Class Counsel:

> Jack Landskroner, Esq.
> LANDSKRONER GRIECO MERRIMAN, LLC
> 1360 W. 9th Street, Ste. 200
> Cleveland, OH 44113

**PLEASE DO NOT CONTACT THE COURT DIRECTLY WITH QUESTIONS ABOUT THE SETTLEMENT.**

7

Exhibit 2
160

Exhibit 2
**EXHIBIT  C**

1

2         **Exhibit C**

3   **[Proposed Order Granting Preliminary Approval]**

4

5

6   **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

7     **COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

8
| | |
|---|---|
| ANTWON JONES, on behalf of himself and all others similarly situated, | Case No. BC577267 |
|     Plaintiff, | [Related to Case Nos. BC565618 (Lead), BC568722, BC571664 and BC574690] |
|  vs. | [PROPOSED] ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND DIRECTING DISSEMINATION OF CLASS NOTICE |
| CITY OF LOS ANGELES, by and through the LOS ANGELES DEPARTMENT OF WATER AND POWER, and DOES 1 through 50, inclusive, | |
|     Defendants. | Date:  November 18, 2016<br>Time:  1:30 p.m.<br>Place: Dept. 323 |
| | Assigned for All Purposes to the Hon. Elihu M. Berle, Dept. 323 |
| | Action Filed: April 1, 2015<br>Trial Date:  None Set |

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

38457.025-3492708v2           1

[PROPOSED] ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL

Exhibit 2
162

1    WHEREAS, plaintiff Antwon Jones ("Plaintiff"), moved this Court for an Order,

2  pursuant to California Code of Civil Procedure § 382 ("Section 382") and California Civil Code §

3  1781 ("Section 1781"), seeking preliminary approval of a class action settlement, and directing

4  the dissemination of class notice (the "Motion"); and

5    WHEREAS, plaintiffs Yaar Kimhi, Tahl Beckerman Megerdichian and Yelena Novak (the

6  "Solar Plaintiffs") join Plaintiff in this request;

7    WHEREAS,  defendant the City of Los Angeles, by and through the Los Angeles

8  Department of Power and Water ("LADWP") and DOES 1 through 50, inclusive (collectively,

9  "Defendant") joins Plaintiff in seeking this same relief; and

10    WHEREAS, the Court reviewed the submissions of the Parties, held hearings on

11  September 11, 2015, November 3, 2015, December 21, 2015 and November 18, 2016 (the

12  "Preliminary Approval Hearing"), and found that the Parties are entitled to the relief they seek;

13    IT IS ORDERED that the Motion is GRANTED, subject to the following terms and

14  conditions:

15    1.    The related actions, *Jones v. City of Los Angeles*, Case No. BC577267, *Bransford,*

16  *et al. v. City of Los Angeles*, Case No. BC565618, *Fontaine v. City of Los Angeles, et al.*, Case No.

17  BC571664, *Kimhi v. City of Los Angeles*, Case No. BC536272 (collectively, the "Action") are

18  consolidated for all purposes.

19    2.    This Court has both subject matter jurisdiction and personal jurisdiction as to the

20  Action and all Parties.

21    3.    The proposed Settlement set forth in the Revised Class Action Settlement

22  Agreement and Limited Release dated November 9, 2016 (the "Settlement Agreement") is

23  preliminarily approved.

24    4.    Based upon the submissions of the Parties, and for purposes of this Settlement only,

25  the Court conditionally makes the following findings:

26      a.   The members of the Settlement Class are so numerous as to make joinder

27        impracticable.

28      b.  There are questions of law and fact common to the Settlement Class, and such

38457.025-3492708v2

2

[PROPOSED] ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL

Exhibit 2
163

questions predominate over any questions affecting only individual Settlement
Class Members for purposes of the Settlement.

c.  Plaintiff Jones' claims and the defenses thereto are typical of the claims of the
Settlement Class Members and the defenses thereto for purposes of the
Settlement.

d.  Plaintiff Kimhi's claims and the defenses thereto are typical of the claims of the
Solar Subclass Members and the defenses thereto for purposes of the Settlement.

e.  Plaintiff and his counsel have fairly and adequately protected, and will continue
to fairly and adequately protect, the interests of the Settlement Class Members
with respect to the Settlement.

f.  The proposed Settlement is superior to all other available methods for fairly and
efficiently resolving this Action.

g.  Accordingly, for settlement purposes only, the Court conditionally certifies a
Settlement Class comprised of

All LADWP customers who were over-charged for electric, water,
sewage or sanitation services between the dates of September 3,
2013 and the present, and who are entitled to credits or refunds for
electric, water, sewage or sanitation services and/or for participation
in the LADWP's solar incentive program from February 13, 2010.

Expressly excluded from the Settlement Class are the Judge to
whom this case is assigned, any members of the Judge's immediate
family, and counsel of record in this action.

5.     This matter is preliminarily certified as a class action for settlement purposes only,
pursuant to Section 382, Section 1781 and Rule 3.769(c) and (d) of the California Rules of Court.
If the Court does not finally approve the Settlement, Defendant retains the right to assert that this
Action may not be certified as a class action for liability purposes, and no Party shall rely on this
preliminary approval as support for the certification of a class in this or any other action.

6.     The Court hereby appoints: (i) Antwon Jones as representative of the Settlement
Class and (ii) Yaar Kimhi as the representative of the Solar Subclass.

7.     Jack Landskroner of Landskroner Grieco Merriman, LLC is appointed as Class
Counsel.

8.      Michael J. Libman of the Law Offices of Michael J. Libman is appointed Liaison Counsel.

9.      Kurtzman Carson Consultants, LLC is appointed to serve as Claims Administrator.

10.     Paul Bender of Paul Bender Consulting is appointed to serve as the CC&B System Monitoring Expert.

11.     Barbara R. Barkovich, Ph.D of the firm of Barkovich & Yap, Inc. is appointed to serve as Special Master.

12.     The Settlement Agreement shall be used for settlement purposes only.  The fact of, or any provision contained in, the Settlement Agreement or any action taken pursuant to it shall not constitute an admission of the validity of any claim or any factual allegation that was or could have been made by Plaintiff and members of the Settlement Class in the present action or of any wrongdoing or liability of any kind on the part of Defendant.  The Settlement Agreement shall not be offered or be admissible in evidence by or against Defendant (or any Released Parties as defined in the Settlement Agreement) or cited or referred to in any other action or proceeding, except (a) in any action or proceeding brought by or against the Parties to enforce or otherwise implement the terms of the Settlement Agreement, or (b) in any action involving Plaintiff, or members of Settlement Class, in which the allegations are based on the same factual bases and allegations set forth in this case, to support a defense of res judicata, collateral estoppel, release, waiver or other theory of claim preclusion, issue preclusion, or similar defense.

13.     A final hearing (the "Final Approval Hearing") shall be held before this Court on _____, 2017 at __ _.m., to determine whether (a) this Action meets each of the prerequisites for class certification set forth in Section 382 and Section 1781, and may properly be maintained as a class action on behalf of the Settlement Class; (b) the Settlement Agreement should receive final approval as fair, reasonable, adequate, and is in the best interests of the Settlement Class in light of any objections presented by Settlement Class Members and the Parties' responses to any such objections; (c) an order granting final approval of the Settlement Agreement and entering final judgment, as provided in the Settlement Agreement, should be entered; and (d) the applications of Class Counsel for the payment of attorneys' fees and expenses, and service awards are reasonable and should be approved.  The Final Approval Hearing may be postponed,

1  adjourned or continued by further order of this Court, without further notice to the Parties or the

2  Settlement Class Members.

3       14.     Settlement Class Members or their counsel who wish to appear at the Final

4  Approval Hearing must make such request by notifying the Clerk of the Court and the Parties'

5  respective counsel in writing at the following addresses:

6       **Plaintiff's Counsel**
     Jack Landskroner, Esq.

7       **LANDSKRONER GRIECO MERRIMAN, LLC**
     1360 W 9th Street, #200

8       Cleveland, OH 44113

9       **Defendant's Counsel**
     Maribeth Annaguey, Esq.

10       **LINER LLP**
     1100 Glendon Avenue, 14th Floor

11       Los Angeles, California 90024

12

13       Any such request must be filed with the Clerk of the Court and received by the Parties'

14  respective counsel no later than _____, 2017 and must state the name, address and

15  telephone number and LADWP account number of the Settlement Class Member, as well as the

16  name, address and telephone number of the person who will appear on his or her behalf. Any

17  request for appearance that fails to satisfy the requirements of this paragraph, or that has not been

18  properly or timely submitted, may be deemed ineffective and shall be deemed to constitute a

19  waiver of such Settlement Class Members' rights to appear and to be heard on the Settlement at the

20  Final Approval Hearing.

21       15.     Any person included within the Settlement Class who wishes to be excluded from

22  membership in the Settlement Class must do so in writing by mailing a written request for

23  exclusion to the Claims Administrator at _____ by no later than _____, 2017.

24  The request must: (i) clearly express the Settlement Class Member's desire to be excluded or to

25  "opt out" from the Settlement Class; (ii) include the Settlement Class Member's name, address and

26  telephone number, LADWP account number and, if represented by counsel, counsel's name,

27  address and telephone number; and (iii) be signed by the Settlement Class Member.

28       a.     If a Settlement Class Member has multiple LADWP accounts and wishes to be
          excluded from membership in the Settlement Class, the Settlement Class

Member must submit a request for exclusion for each separate account.

b.  Any Person who is a member of the Settlement Class who wishes to be excluded from the Settlement Class can only opt out for him or herself, and cannot opt out for any other Person. Nor can any Person who is a Settlement Class Member authorize any other Person to opt out on his or her behalf.

c.  Any Settlement Class Member who has filed an objection to the fairness, reasonableness or adequacy of the proposed Settlement shall be deemed not to have opted out of the Settlement Class pursuant to this paragraph. However, in the event that a Settlement Class Member makes a submission to the Court and the Parties that appears to assert both an objection to the fairness, reasonableness or adequacy of the proposed Settlement, and a statement of intent to opt out of the Settlement Class, such submission shall be treated as a statement of intent to opt out of the Settlement Class, but not an objection.

16.     Any Settlement Class Member who has not timely mailed a written request for exclusion from the Settlement Class may object to the fairness, reasonableness or adequacy of the proposed Settlement. Each Settlement Class Member who wishes to object to any term of this agreement must do so in writing by mailing a written objection to the Claims Administrator at _____ by no later than _____, 2017. Any such objection must: (i) state, in detail, the legal and factual ground(s) for the objection; (ii) include the Settlement Class Members name, address and telephone number and LADWP account number, and, if represented by counsel, counsel's name, address and telephone number; and (iii) be signed by the Settlement Class Member.

a.  Settlement Class Members may object either on their own, or through an attorney hired at their own expense. If the objecting Settlement Class Member hires an attorney to represent him or her, that attorney must file with the Court and serve upon the Parties' respective counsel at the addresses set forth in Paragraph 14 herein, a notice of appearance no later than _____, 2017.

b.  Any objection that fails to satisfy the requirements stated herein, or that is not properly and timely submitted, will be deemed ineffective, and will be deemed by the Parties to have been waived, and the Parties reserve their right to argue that the Settlement Class Member asserting such objection is not entitled to have his or her objection heard or otherwise considered by the Court.

17.     The Court finds that the form, manner and content of the Class Notice will provide the best notice practicable to the Settlement Class under the circumstances and constitute valid, due, and sufficient notice to all Settlement Class Members, fully complying with California Code of Civil Procedure § 382, California Code of Civil Procedure § 1781, the Constitution of the State of California, the Constitution of the United States, and other applicable law. All costs incurred in connection with the preparation and dissemination of any notices to the Settlement Class shall be

1  borne by Defendant.

2      18.    Not later than 90 business days after the entry of this Order of Preliminary

3  Approval, Defendant shall cause Class Notice to be disseminated as follows:

4           i.    direct Mailed Class Notice to all those customers of LADWP for
5                 which Defendant has street addresses and with whom Defendant
                  routinely communicates via United States First Class Mail pursuant
6                 to customers' instructions;

7           ii.   direct Emailed Class Notice to all those customers of LADWP for
                  which Defendant has email addresses and with whom Defendant
8                 routinely communicates via email pursuant to customers'
                  instructions;

9           iii.  publication of a summary Class Notice in *The Los Angeles Times*
10                and *La Opinion*;

11          iv.   establishment of a Settlement website by the Claims Administrator;
12                and

            v.    publication notice on LADWP's website.
13

14     19.    The Parties shall file and serve papers in support of final approval of the Settlement

   by _____, 2017.
15

16     20.    Class Counsel shall file any applications for an award of attorneys' fees, costs and

   litigation expenses, and reimbursement awards for Plaintiff's expenses by _____, 2017.
17

18     21.    Class Counsel shall file a single memorandum of law that addresses:  (i) arguments

19  in favor of final approval of the Settlement; and (ii) Class Counsel's application for an award of

20  attorneys' fees, costs and litigation expenses, and service awards for Plaintiff's efforts and

   expenses.  Such memorandum of law shall not exceed 50 pages in length.
21

22     22.    The Parties shall file and serve reply papers in further support of final approval of

   the Settlement and/or Class Counsel's application for an award of attorneys' fees, costs and
23

24  litigation expenses, and reimbursement awards for Plaintiffs' expenses by no later than

   _____, 2017.
25

26     23.    The Final Approval Hearing shall be held at ____ _.m. on _____, 2017 in

   Department _____.
27

28     24.    If the proposed Settlement is finally approved, the Court shall enter a separate order

   finally approving the Settlement and entering judgment.  Such order and judgment shall be fully

   38457.025-3492708v2                    7
   _____
                  [PROPOSED] ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL

Exhibit 2
168

1 | binding with respect to all members of the Settlement Class.

2 |      25.      Pending further orders by this Court, all proceedings in this Action or Actions –

3 | other than proceedings pursuant to this Order – shall be stayed and all members of the Settlement

4 | Class who do not request exclusion from the Settlement Class in the manner required by this Order

5 | shall be enjoined from commencing or prosecuting any action, suit, proceeding, claim, or cause of

6 | action (except those based on or relating to personal injury or wrongful death), in any jurisdiction

7 | or court against Defendant relating to or arising out of the subject matter of this action.

Dated: _____          SO ORDERED:

Hon. Elihu M. Berle

**EXHIBIT D**

## Exhibit D

### [Credit/Refund Letter – Pre-Identified Non-Claims Made Subclass]

Dear _____,

A class action lawsuit was filed in the Superior Court of California, captioned *Jones v. City of Los Angeles*, No. BC577267, which alleges that customers of the Los Angeles Department of Water and Power (the "LADWP") were overbilled or otherwise damaged by the defective implementation of the LADWP's new billing system, or were damaged as a result of participating in the LADWP's solar incentive program (the "Lawsuit").

In connection with the Settlement of the Lawsuit, the LADWP has reviewed its records and has determined that you are a member of the following Subclass(es) and you have been overcharged in the following amounts:

[Insert Subclass Group]        [Insert Amount]

As a Settlement Class Member, you are entitled to receive 100% of the overcharges as well as other damages you may have incurred that are causally related to the overcharge.

(1) If you wish to receive this amount, you do not need to anything.  [The LADWP will credit your account in the amount stated above, and this amount will be reflected on your billing statement.] [The LADWP will send you a check in the amount stated above.]

(2) If you disagree with the amount stated above you have 30 days to request an independent review by a Special Master.  To request an independent review, send a signed letter that: (i) states that you dispute your settlement award as determined by the LADWP; and (ii) explains the reasons you dispute this amount and what amount you believe you are entitled to and why.  You must attach to your letter copies of all documents that you believe support your position.

Send your request for independent review to:

Special Master – LADWP Billing Class Action
c/o Kurtzman Carson Consultants
XXXXX
XXXXX

Remember, your request for the Special Master review must be postmarked **no later than 30 days from the date of this letter**.

(3) If you believe you have been damaged by the LADWP in any other way (in addition to the overcharge amount stated above), you may be entitled to recover some or all of those other damages.  In order to receive any such damages, you **must submit a Claim Form postmarked no later than _____, 2017.** A Claim Form is included with this letter and can also be obtained at www._____.com.

Your Claim Form will be reviewed and you will be notified by letter of the amount of money, if any, you will receive in connection with your claim.  If you disagree with the determination, you will have 30 days to request review by the Special Master.

(4) If you wish to exclude yourself from this Settlement, you must do so no later than _____, 2017. If you exclude yourself from the Settlement, you will not be eligible for any settlement benefits, including receipt of the amount indicated in this letter, and you will waive all rights to object to the settlement. For directions on how to exclude yourself from the Settlement, please refer to the Class Notice included with this letter or call 1-800-_____.

If you have questions regarding this letter or your options under the Settlement, you may call 1-800-_____.

38457.025-3492953v1

Exhibit 2
172

**EXHIBIT E**

**EXHIBIT E**

**[Identification Letter – Pre-Identified Claims Made Subclass]**

Dear _____:

A class action lawsuit was filed in the Superior Court California, captioned *Jones v. City of Los Angeles,* Case No. BC577267, which alleges that customers of the Los Angeles Department of Water and Power (the "LADWP") were overbilled or experienced other billing errors that were caused by, and are related to, the defective implementation of the LADWP's new billing system or incurred damages as a result of participating in the LADWP's solar incentive program (the "Lawsuit").

In connection with the Settlement of the Lawsuit, the LADWP has conducted a search of its internal records, and has determined that you are a member of the _____ Subclass and you may be entitled to a [credit] [refund]

In order to determine the amount of the [credit] [refund], if any, that you may be entitled to receive, you must submit a Claim Form, which is included with this letter, postmarked no later than _____, 2017, to the following address:

> **Claims Administrator**
> **Address**
> **Address**
> **City, State, ZIP**

You may also complete and electronically submit a Claim Form at www._____.com no later than _____, 2017, if you prefer.

Additionally, you must provide the required documents specified in the Claim Form in order to receive a [credit] [refund]. If you do not submit a timely Claim Form and the required documentation, you will not receive a [credit] [refund], if one may be owed to you.

Your Claim Form will be reviewed and you will be notified by letter of the amount, if any, you will receive. If you disagree with the determination, you will have 30 days to request an independent review by the Special Master by sending a letter, via First Class Mail that: (a) states that you dispute the amount of the credit or refund that was determined is owed to you and that you desire to initiate a review by the Special Master; (b) explains the reason(s) that you are disputing the amount of the credit or refund; (c) and attaches all documents relied upon by you in disputing the amount of the credit or refund.

Your request must be sent to:

Special Master - LADWP Billing Class Action

c/o Kurtzman Carson Consultants LLC
XXXXXXX
XXXXXXX
XXXXXXX

**All requests for a Special Master Review must be postmarked within 30 days of the date of the letter informing you of the amount of the credit or refund that is determined is owed to you. Failure to file a timely request for a review will automatically result in a denial of your request.**

If you wish to exclude yourself from the Settlement, you must mail a request for exclusion to the following address:

XXXXXXX
XXXXXXX
XXXXXXX

You must personally sign the exclusion request. Your request must: (i) clearly express your desire to be excluded or to "opt out" from the Settlement; (ii) include your name, address and telephone number, LADWP account number and, if represented by counsel, counsel's name, address and telephone number. **Your exclusion request must be postmarked no later than _____ or it will not be accepted.**

If you exclude yourself from the Settlement, you will not be eligible for any Settlement benefits, including receipt of the amount you are seeking in any claim form submitted, and you will waive all rights to object to the Settlement.

If you have questions regarding this letter, you may call _____ and ask for assistance.

38457.025-3492952v1

Exhibit 2
175

1145204-6

**EXHIBIT F**

**EXHIBIT F**

**[Omnibus Subclass Letter]**

Dear _____:

A class action lawsuit was filed in the Superior Court California, captioned *Jones v. City of Los Angeles,* Case No. BC577267, which alleges that customers of the Los Angeles Department of Water and Power (the "LADWP") were over-billed or experienced other billing errors that were caused by, and are related to, the defective implementation of the LADWP's new billing system or incurred damages as a result of participating in the LADWP's solar incentive program (the "Lawsuit").

In connection with the Settlement of the Lawsuit, the LADWP has conducted a search of its internal records in order to determine which customers are members of the Subclass(es).   The LADWP has not identified you as a member of any Subclass. Although you were not identified as a member of any Subclass, you may still submit a Claim Form in order to receive a monetary credit or a refund if you believe that you were: (i) incorrectly assessed a charge associated with your power, water, sewage or sanitation services at any time from September 3, 2013 to the present, that is not covered by any of the Subclasses listed in the Settlement; or (ii) otherwise damaged as a result of your participation in the LADWP's solar incentive program at any time from February 13, 2010 to the present.

In order to determine the amount of the credit or refund, if any, that you may be entitled to receive, you must submit a Claim Form, which is included with this letter, postmarked no later than _____, 2017 to the following address:

> **Claims Administrator**
> **Address**
> **Address**
> **City, State, ZIP**

You may also complete and electronically submit a Claim Form at www.\_\_\_\_\_.com no later than _____, 2017, if you prefer.

Additionally, you must provide the required documents specified in the Claim Form in order to receive a credit or refund.  If you do not submit a timely Claim Form and the required documentation, you will not receive a credit or refund, if one may be owed to you.

Your Claim Form will be reviewed and you will be notified by letter of the amount, if any, you will receive. If you disagree with the determination, you will have 30 days to request an independent review by the Special Master by sending a letter, via First Class Mail that: (a) states that you dispute the amount of the credit or refund that was determined is owed to you and that you desire to initiate a review by the Special Master;

38457.025-3492951v3

Exhibit 2
177

(b) explains the reason(s) that you are disputing the amount of the credit or refund; (c) and attaches all documents relied upon by you in disputing the amount of the credit or refund.

Your request must be sent to:

Special Master - LADWP Billing Class Action
c/o Kurtzman Carson Consultants LLC
XXXXXXX
XXXXXXX
XXXXXXX

**All requests for a Special Master Review must be postmarked within 30 days of the date of the letter informing you of the amount of the credit or refund that is determined is owed to you. Failure to file a timely request for a review will automatically result in a denial of your request.**

If you wish to exclude yourself or "opt out" from the Settlement, you must mail a request for exclusion to the following address:

XXXXXXX
XXXXXXX
XXXXXXX

You must personally sign the exclusion request. Your request must: (i) clearly express your desire to be excluded or to "opt out" from the Settlement; (ii) include your name, address and telephone number, LADWP account number and, if represented by counsel, counsel's name, address and telephone number. **Your exclusion request must be postmarked no later than _____ or it will not be accepted.**

If you exclude yourself from the Settlement, you will not be eligible for any Settlement benefits, including receipt of the amount you are seeking in any claim form submitted, and you will waive all rights to object to the Settlement.

If you have questions regarding this letter, you may call _____ and ask for assistance.

38457.025-3492951v3

Exhibit 2
178

**EXHIBIT  G**

## Exhibit G

## [Claim Form and Settlement Declaration]

### *Jones v. City of Los Angeles*
### Case No. BC577267

## Claim Form and Settlement Declaration

Name: _____

Company Name
(if applicable): _____

Address: _____

_____

City, State, Zip: _____

LADWP Account No.: _____

### GENERAL INSTRUCTIONS

A class action lawsuit was filed in the Superior Court of the State of California, County of Los Angeles, captioned *Jones v. City of Los Angeles,* Case No. BC577267, which alleges that customers of the Los Angeles Department of Water and Power (the "LADWP") were over-billed or experienced other billing errors that were caused by, and are related to, the defective implementation of the LADWP's new billing system, or incurred damages as a result of participating in the LADWP's solar incentive program.

The LADWP has agreed to reimburse customers for 100% of the amount(s) that they were over-billed or damaged.

Please read *each* Part of this Claim Form carefully because you may be eligible to submit a claim under more than one Part.

This Claim Form, and all required documentation, must be submitted **no later than** _____, **2017**. You must keep all original documents. **Please submit copies, only**.

This Claim Form may be submitted by regular U.S. Mail to:

   **Claims Administrator**
   **Address**

38457.025-3494421v3          1

Exhibit 2
180

**Address**
**City, State, ZIP**

**If you choose to submit this Claim Form by U.S. Mail, it must be postmarked by _____, 2017.**

A Claim Form may also be submitted electronically at www._____.com.

**If you choose to electronically submit a Claim Form, you must do so by _____, 2017.**

## MAKING A CLAIM

**PART 1:**     **Overbilled, Incorrect Fee, Unrefunded Balance and Solar Subclasses**[1]

    (a) **If:**

- the LADWP has sent you a letter that identifies you as a member of the: (i) **Overbilled Subclass**; (ii) **Incorrect Fee Subclass**; (iii) **Unrefunded Balance Subclass** and/or (iv) **Solar Subclass**

**AND**

- you wish to receive the amount stated in the letter,

**Then: Do Nothing.**  If you are a current LADWP customer, the LADWP will provide you with a credit that will be reflected on your billing statement.  If you are a former LADWP customer, the LADWP will send a check to you at your current address.

    (b) **If:**

- the LADWP has sent you a letter that identifies you as a member of the: (i) **Overbilled Subclass**; (ii) **Incorrect Fee Subclass**; (iii) **Unrefunded Balance Subclass** and/or (iv) **Solar Subclass**

**AND**

- you believe that you have incurred damages or losses **beyond** the amount stated in your letter,

**Then: Provide the information requested in this Part directly below and submit this**

---

[1]     The definitions of each Subclass may be found on pages xx-xx of the accompanying Class Notice.

38457.025-3494421v3                                         2

Exhibit 2
181

**Claim Form**.

Please provide a brief explanation of the damages or losses that you believe you have incurred. (These damages or losses can include:  repair costs; service costs (*e.g.*, the cost of a plumber or repair person); finance, interest, or overdraft charges imposed by a third-party; costs related to erroneous disconnection; reconnection fees; loss of perishable items; damage to personal property; loss of wages or business income; or other losses not listed here).

_____

_____

_____

_____

_____

_____

_____

_____

_____

Please submit copies of any relevant documentation to support your claim.  You may be asked for additional documentation.

**PART 2:**     **Premise Condition/Estimated Bills and Automatic Bill Payment/Bank Overdraft Charge Subclasses**[2]

    **(a) If**:

- the LADWP has sent you a letter that identifies you as a member of the **Premise Condition/Estimated Bills Subclass,**

    **Then: Provide the information requested in this Part directly below and submit this Claim Form**.

Please describe the premise condition on your property, including the dates that the condition existed, when it was fixed, and the amount you paid to fix the condition.  In you believe that you have incurred any other damages or losses that you believe resulted from this condition, please explain.  (These damages or losses can include:  repair costs; service costs (*e.g.*, the cost of a plumber or repair person); finance, interest, or overdraft charges imposed by a third-party; costs related to erroneous disconnection; reconnection fees; loss of perishable items; damage to personal property; loss of wages or business income; or other losses not listed here).

_____

_____

---

[2]     The definitions of each Subclass may be found on pages xx-xx of the accompanying Class Notice.

38457.025-3494421v3                                3

Exhibit 2
182

_____
_____
_____
_____
_____

Please submit copies of any relevant documentation to support your claim. You may be asked for additional documentation.

   (b) **If**:

- the LADWP has sent you a letter that identifies you as a member of the **Automatic Bill Payment/Bank Overdraft Charge Subclass**,[3]

   **Then: Provide the information requested in this Part directly below and submit this Claim Form.**

Please identify the bank at which the overdraft charges occurred, the dates of all overdrafts, and the amounts of any overdraft fees that were charged by the bank as a result of your bank account being overdrawn after a payment was made out of the account to the LADWP. If you believe that you have incurred any damages or losses beyond the amount of the overdraft fees, please explain. (These damages or losses can include: finance, interest, or overdraft charges imposed by a third-party; or other losses not listed here).

_____
_____
_____
_____
_____

Please submit copies of any relevant documentation to support your claim. You may be asked for additional documentation.

**PART 3:**    **Field Work Investigation Claim**

The LADWP has sent you a letter informing you that there is a pending field work investigation for your Property, you will not need to consider filing a claim form until such time as you receive a letter informing you of the its determination of the field work investigation.

   (a) **If**:

_____

[3]    The definitions of each Subclass may be found on pages xx-xx of the accompanying Class Notice.

38457.025-3494421v3             4

Exhibit 2
183

- the LADWP has sent you a letter informing you of its determination of a field work investigation,

## AND

- the LADWP has requested, in its determination letter, that you submit a Claim Form,

**Then: Provide the information requested in this Part directly below and submit this Claim Form.**

Please provide the Field Work Identification Number found in the top left portion of your Field Work Investigation Determination Letter and provide a brief explanation of the damages or losses that you believe you have incurred.  (These damages or losses can include:  repair costs; service costs (e.g., the cost of a plumber or repair person); finance, interest, or overdraft charges imposed by a third-party; costs related to erroneous disconnection; reconnection fees; loss of perishable items; damage to personal property; loss of wages or business income; or other losses not listed here).

_____

_____

(b) **If:**

- the LADWP has sent you a letter informing you of its determination of a field work investigation,

## AND

- you disagree with the LADWP's determination,

**Then: Provide the information requested in this Part directly below and submit this Claim Form.**

Please provide the Field Work Identification Number found in the top left portion of your Field Work Investigation Determination Letter and please provide a brief explanation as to why you disagree with the conclusions and the damages or losses that you believe you have incurred. (These damages or losses can include:  repair costs; service costs (e.g., the cost of a plumber or repair person); finance, interest, or overdraft charges imposed by a third-party; costs related to erroneous disconnection; reconnection fees; loss of perishable items; damage to personal property; loss of wages or business income; or other losses not listed here).

_____

_____

_____

38457.025-3494421v3                                         5

Exhibit 2
184

_____
_____
_____
_____
_____

Please submit copies of any relevant documentation to support your claim.  You may be asked
for additional documentation.

**PART 4:**        **Omnibus Subclass[4]**

    **(a) If:**

- the LADWP has sent you a letter stating that you have not been identified as a
member of any Subclass

                    **AND**

- you believe that you were:

      o incorrectly assessed a charge associated with your power, water,
sewage or sanitation services at any time from September 3, 2013 to
the present, that is not covered by any of the Subclasses listed in the
Settlement

                 **OR**

      o damaged as a result of your participation in the LADWP's solar
incentive program at any time from February 13, 2010 to the present

**Then:  Provide the information requested in this Part directly below and submit this
Claim Form.**

Please provide a brief explanation of the damages or losses that you believe you have incurred.
(These damages or losses can include:  repair costs; service costs (*e.g.*, the cost of a plumber or
repair person); finance, interest, or overdraft charges imposed by a third-party; costs related to
erroneous disconnection; reconnection fees; loss of perishable items; damage to personal
property; loss of wages or business income; or other losses not listed here).

_____
_____
_____

_____

4.        The definitions of each Subclass may be found on pages xx-xx of the accompanying Class Notice.

Exhibit 2
185

_____
_____
_____
_____

Please submit copies of any relevant documentation to support your claim.  You may be asked for additional documentation.

_____

### **Declaration**

       I, _____, hereby declare under penalty of perjury, under the laws of the United States and the State of California, that the information provided in this Claim Form is true and correct.  By submitting this Claim Form, I also hereby submit and consent to the jurisdiction of the Superior Court of the State of California, County of Los Angeles, in this matter.

_____       _____
Date: (mm/dd/yyyy)                Signature or Electronic Signature

# THIS DECLARATION IS MADE UNDER PENALTY OF PERJURY

38457.025-3494421v3             7

Exhibit 2
186

Exhibit 2
**EXHIBIT  H**

1

2          **Exhibit H**

3

4          **[Final Order and Judgment]**

5

6

7

8

9

10              SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                COUNTY OF LOS ANGELES, CENTRAL DISTRICT

12

| ANTWON JONES, on behalf of himself and all others similarly situated, | Case No. BC577267 |
|---|---|
| Plaintiff, | [Related to Case Nos. BC565618 (Lead), BC568722, BC571664 and BC574690] |
| vs. | [PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT and FINAL JUDGMENT |
| CITY OF LOS ANGELES, by and through the LOS ANGELES DEPARTMENT OF WATER AND POWER, and DOES 1 through 50, inclusive, | |
| Defendants. | Date:<br>Time:<br>Place: |
| | Assigned for All Purposes to the Hon. Elihu M. Berle, Dept. 323 |
| | Action Filed:   January 7, 2015<br>Trial Date:      None Set |

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---
                                1
          [PROPOSED] ORDER GRANTING MOTION FOR FINAL APPROVAL

38457.025-3492950v3

Exhibit 2
188

1

2      WHEREAS, plaintiff Antwon Jones ("Plaintiff") moved this Court for an Order, pursuant

3  to Section 382 of the California Code of Civil Procedure ("Section 382") and California Civil

4  Code § 1781 ("Section 1781"), seeking final approval of a class action settlement and entry of final

5  judgment (the "Motion"); and

6

7      WHEREAS, defendant the City of Los Angeles, by and through the Los Angeles

8  Department of Power and Water ("LADWP") and DOES 1 through 50, inclusive (collectively,

9  "Defendant") joins Plaintiff in seeking this same relief; and

10      WHEREAS, the Court reviewed the submissions of the parties, all properly and timely filed

11  objections to the Settlement, and the Parties' responses to such objections, and held a Final

12  Approval Hearing on _____, 2017 (the "Final Approval Hearing"), and good cause

13  appearing;

14      IT IS ORDERED that the Motion is GRANTED, subject to the following terms and

15  conditions:

16      1.     With respect to the capitalized terms set forth herein, the Court, for purposes of

17  this Final Judgment and Order ("Final Order"), adopts the definitions set forth in the Revised

18  Class Action Settlement Agreement and Limited Release dated November 9, 2016 (the

19  "Settlement Agreement").

20      2.     This Court has continuing and exclusive jurisdiction over the Settlement and all

21  Parties hereto for the purpose of construing, enforcing and administering the Settlement

22  Agreement.

23      3.     The Court finally certifies, for settlement purposes only, the following Settlement

24  Class:

25          All LADWP customers who were over-charged for electric, water,

26          sewage or sanitation services between the dates of September 3,
               2013 and the present, and who are entitled to credits or refunds for

27          electric, water, sewage or sanitation services and/or for

28          participation in the LADWP's solar incentive program from

---

2

[PROPOSED] ORDER GRANTING MOTION FOR FINAL APPROVAL

38457.025-3492950v3

Exhibit 2
189

1   February 13, 2010.

2   Expressly excluded from the Settlement Class are the Judge to
3   whom this case is assigned, any members of the Judge's immediate
    family, and counsel of record in this action.
4

5   4.      With respect to the Settlement Class, this Court finds that: (a) the members of the

6   Settlement Class are so numerous their joinder is impracticable; (b) there are questions of law

7   and fact common to the Settlement Class which predominate over any individual questions; (c)

8   the claims of Plaintiff are typical of the claims of the Settlement Class; (d) Plaintiff and Class

9   Counsel have fairly and adequately represented and protected the interests of the Settlement

10  Class; and (e) a class action is superior to other available methods for the fair and efficient

11  adjudication of the controversy, considering: (i) the interests of the Settlement Class in

12  individually controlling the prosecution of the separate actions, (ii) the extent and nature of any

13  litigation concerning the controversy already commenced by the Settlement Class, (iii) the

14  desirability or undesirability of concentrating the litigation of these claims in this particular

15  forum, and (iv) the difficulties likely to be encountered in the management of the action.

16  5.      Class Notice to the Settlement Class has been provided in accordance with the

17  Preliminary Approval Order. These materials satisfied the requirements of California Code of

18  Civil Procedure § 382 and California Civil Code § 1781  and Rule 3.766 of the California Rules

19  of Court and (a) provided the best practicable notice, (b) were reasonably calculated, under the

20  circumstances, to apprise the Settlement Class of the pendency of the Action, the terms of the

21  Settlement Agreement, and of their right to appear or object to or exclude themselves from the

22  Settlement Class, (c) were reasonable and constituted due, adequate, and sufficient notice to all

23  persons entitled to receive notice, and (d) fully complied with the applicable laws of the State of

24  California. Accordingly, the Court determines that all members of the Settlement Class are

25  bound by this Order and by the final judgment to be entered pursuant thereto.

26  6.      The Settlement Agreement was arrived at after extensive arm's length

27  negotiations conducted in good faith by counsel for the parties, and is supported by the majority

28  of the members of the Settlement Class.  Accordingly, this Court hereby approves the Settlement

---

3
[PROPOSED] ORDER GRANTING MOTION FOR FINAL APPROVAL

38457.025-3492950v3

Exhibit 2
190

1   Agreement as fair, reasonable and adequate in light of the complexity, expense and duration of

2   the litigation, and the risks inherent and involved in establishing liability and damages, and in

3   maintaining the class action as to liability issues through trial and appeal.

4        7.     The promises and commitments of the Parties under the terms of the Settlement

5   Agreement constitute fair value given in exchange for the releases of the Released Claims. The

6   following claims are therefore released against Defendant:

> any claims, damages, suits, demands, liabilities, judgments, losses and causes of action which have accrued as of the date of entry of the Order of Preliminary Approval relating to or arising from the billing issues alleged in the operative pleadings in the Actions, including:

>     (i)    overbilling as a result of charging an incorrect rate, incorrect amount of consumption, incorrect utility tax rate or the failing to apply a discount;

>     (ii)    billing incorrect fees, including but not limited to late payment fees, reconnect fees and/or start service fees;

>     (iii)    retaining refunds during the period of September 3, 2013 to the present that were due;

>     (iv)    billing for greater quantities of water, power or sewage than otherwise would have been charged but for the existence of a premise condition;

>     (v)    the assessment of overdraft fees resulting from the LADWP having charged customers an incorrect billing amount; and

>     (vi)    for solar customers, delay in providing a reservation confirmation to and/or connecting the solar system, and/or failure to bill for energy consumed and/or generated; and/or failure to credit for excess energy generated by the customer's solar power system at any time from February 13, 2010, through the date of the entry of the Order of Preliminary Approval

> sounding in law or equity, seeking damages or any other relief, that are now recognized by law or that may be created or recognized in the future by statute, regulation, judicial decision or in any other manner, based upon any federal or state statutory or common law including but not limited to, claims sounding in tort, contract and the consumer protection laws of the United States or of any state or other jurisdiction within the United States, and all claims, damages, suits, demands, liabilities, judgments, losses or causes of action which have been, might have been, are now, or could be asserted by any plaintiff or any Settlement Class Member arising out of, based upon, or related to, in whole or in part, the facts and circumstances underlying the claims and causes of action set forth in the Actions.

4

[PROPOSED] ORDER GRANTING MOTION FOR FINAL APPROVAL

38457.025-3492950v3

Exhibit 2
191

Released Claims include claims for economic and non-economic damages that were proximately caused by the LADWP having overbilled its customers during the time periods set forth in the operative Complaint in the *Jones Action*. These economic and non-economic damages may be direct, incidental, or consequential and, by way of example, include:   repair costs; services costs (e.g., the cost of a plumber or electrician to examine or repair a premise condition); finance, interest, or overdraft charges imposed by a third party; costs related to or arising from erroneous disconnections; reconnection fees; loss of perishable items; damage to personal property; personal injury or illness; or loss of wages or business income. All such losses and damages are expressly deemed Eligible Claims pursuant to this Revised Agreement and a Settlement Class Member is entitled to seek recovery of 100% of such losses and damages through the Omnibus claims process.

Released Claims also include claims for economic and non-economic damages that resulted in overbilling customers and were proximately caused by the LADWP's failure to: (i) timely undertake field investigations, conduct field maintenance, perform meter reads, or provide accurate information concerning actual utilization; (ii) prorate or allot utilization in accordance with applicable rate schedules; and (iii) comply with disconnection rules and the imposition of associated charges.  All such losses and damage are expressly deemed Eligible Claims pursuant to this Revised Agreement and a Settlement Class Member is entitled to seek recovery of 100% of such losses and damages through the Omnibus claims process.

Released Claims do not include:

(i)      the claims asserted in the action, *Morski v. City of Los Angeles by, and through, the Los Angeles Department of Water & Power*, Los Angeles Superior Court Case No BC 568722 (the "*Morski* Action"), which allege that the LADWP violated Ordinance Nos. 180127, 182273, and 170435 (as amended by Ordinance No. 171639, Ordinance No. 173017, Ordinance No. 175964, Ordinance No. 177968 and Ordinance No. 179802) by assessing tiered billing without obtaining actual monthly meter reads and without providing regular, timely, and accurate monthly bills to its customers ("Non-Monthly Tiered Billing Claims");

(ii)     causes of Action 27-32 in the First Amended Complaint filed on October 20, 2015 in the action entitled *Macias v. City of Los Angeles erroneously sued as Los Angeles Department of Water and Power, et al.*, Los Angeles Superior Court Case No. BC594049 (the "*Macias* Action"), which counsel for Plaintiff Macias has represented will also be asserted in the Third Amended Complaint that will be filed in the *Macias* Action on or before November 10, 2016;

(iii)    claims for violations of California's Bane Act, Civil Code § 51.2;

---

5

[PROPOSED] ORDER GRANTING MOTION FOR FINAL APPROVAL

38457.025-3492950v3

Exhibit 2
192

(iv)   claims arising out of field work investigations created after December 21, 2015;

(v)    claims arising out of LADWP's failure to record or credit payments made by customers;

(vi)   claims arising from the Back-Billing of customers during the period September 3, 2013 through September 10, 2015; and

(vii)  claims for personal injury.

8.     All members of the Settlement Class who did not make a valid request for exclusion from the Settlement Class in the time and manner provided in the Settlement Agreement are barred, permanently enjoined, and restrained from commencing or prosecuting any action, suit, proceeding, claim, or cause of action in any jurisdiction or court against Defendant and/or the Released Parties based upon, relating to, or arising out of, any of the Released Claims.  However, all members of the Settlement Class who did make a valid request for exclusion from the Settlement Class in the time and manner provided in the Settlement Agreement are not barred, permanently enjoined, or restrained from commencing or prosecuting any action, suit, proceeding, claim, or cause of action in any jurisdiction or court against Defendant and/or the Released Parties based upon, relating to, or arising out of, any of the Released Claims.

9.     By operation of this Final Order and upon the occurrence of the Effective Date, Defendant and/or the Released Parties shall be deemed to have, and by operation of this Final Order shall have, fully, finally, and forever released, relinquished and discharged each and all members of the Settlement Class, Plaintiff and Class Counsel from all claims (including unknown claims), arising out of, relating to, or in connection with the institution, prosecution, assertion, settlement or resolution of this litigation or the Released Claims.

10.    For good cause shown, the Court awards a service award to Plaintiff Jones and Yaar Kimhi, Tahl Beckerman Megerdichian and Yelena Novak in the amount of $_____ each for the time and expenses expended in connection with the prosecution of the Action, which shall be paid by Defendant.

---

6

[PROPOSED] ORDER GRANTING MOTION FOR FINAL APPROVAL

38457.025-3492950v3

Exhibit 2
193

1     11.    For good cause shown, the Court awards Class Counsel: (i) reasonable attorney

2 fees in the amount of $_____; and (ii) expenses in the amount of

3 $_____.  The attorneys' fees and reimbursement of expenses awarded by the

4 Court shall be paid by Defendant within 7 business days after this Order has been entered.

5 Defendant will pay the amount awarded by the Court directly to an account established by Class

6 Counsel.  Class Counsel shall be responsible for allocating the attorneys' fees and expenses

7 among Plaintiff's counsel.

8     12.    For good cause shown, the Court approves the right of Class and Liaison Counsel

9 to make quarterly applications to this Court for additional awards of reasonable attorneys' fees at

10 the rate of twenty-nine percent (29%) of all future recoveries by Class Members subsequent to

11 Final Approval for (i) Field Work claims; (ii) Pre-Identified Claims Made claims; (iii) Omnibus

12 claims; and (iv) all claims paid in connection with the Settlement by, or on behalf of, the City of

13 Los Angeles, including all departments thereof.  The $1 million of future attorneys' fees

14 identified in the Memorandum of Understanding executed on June 12, 2015 shall be utilized to

15 pay any such future attorneys' fees awarded to Class Counsel by the Court and shall not be in

16 addition to any future attorneys' fees awarded by the Court, as set forth in the Settlement

17 Agreement.  Should the Court award such future attorneys' fees to Class Counsel, Defendant will

18 pay the amount of attorneys' fees awarded by the Court within 7 business days after the Court

19 issues an order granting Class Counsel's application.  Defendant will pay the amount awarded by

20 the Court directly to an account established by Class Counsel and Liaison Counsel, and Class

21 Counsel shall be responsible for allocating any future attorneys' fees.

22     13.    The Settlement Agreement shall not be offered or be admissible in evidence by or

23 against Defendant or cited or referred to in any other action or proceeding, except (1) in any

24 action or proceeding brought by or against the Parties to enforce or otherwise implement the

25 terms of the Settlement Agreement, or (2) in any action involving Plaintiff, members of the

26 Settlement Class, or any of them, to support a defense of res judicata, collateral estoppel, release,

27 or other theory of claim preclusion, issue preclusion, or similar defense.

28

7
[PROPOSED] ORDER GRANTING MOTION FOR FINAL APPROVAL

38457.025-3492950v3

Exhibit 2
194

14.     If, for any reason, the Effective Date does not occur, this Final Judgment shall be deemed vacated and shall have no force or effect whatsoever.

15.     Without affecting the finality of this Judgment in any way, the Court hereby retains continuing jurisdiction over (a) the implementation of this Settlement and any award or distribution to the Settlement Class members; (b) hearing and determining an application for attorneys' fees and costs and (c) all parties for the purpose of enforcing and administering the Settlement Agreement pursuant to California Code of Civil Procedure § 664.6 or otherwise.

16.     The Clerk is directed to enter this Final Order forthwith.


Dated: _____, 2017                    SO ORDERED:



                                                 _____
                                                 HON. ELIHU M. BERLE

[PROPOSED] ORDER GRANTING MOTION FOR FINAL APPROVAL

38457.025-3492950v3

Exhibit 2
195

**EXHIBIT I**

**Exhibit I**

**[Field Work Notification Letter]**

Dear _____:

      As you may be aware, a class action lawsuit was filed in the Superior Court of California, captioned *Jones v. City of Los Angeles*, Case No. BC577267, which alleges that customers of the Los Angeles Department of Water and Power (the "LADWP") were overcharged or experienced other billing errors that were caused by, and are related to, the defective implementation of the LADWP's new billing system or incurred damages as a result of participating in the LADWP's solar incentive program (the "Lawsuit").

      In connection with the settlement of the Lawsuit, the LADWP is writing to inform you that, as of the date of this letter, there is a pending field work investigation for the property located at _____ (the "Property"). The purpose of this field work investigation is to investigate whether any conditions exist on the Property that might have caused you to be overcharged or to have experienced other billing errors or monetary damages.

      Once the field work investigation has been completed, the LADWP will inform you, by letter, of its determination in connection with this field work investigation. A claim for damages that results from the findings of a field work investigation can be initiated by filing a claim form postmarked within 60 days of the date of the determination letter.

      If you have questions regarding this letter, you may contact the Claims Administrator at 1-800-_____ and ask for assistance.

38457.025-3492949v1

Exhibit 2
197

EXHIBIT J

## Exhibit J

### [Field Work Determination Letter]

Dear _____,

On _____, the Los Angeles Department of Water and Power ("LADWP") informed you of the pending field work investigation on the property located at _____. The purpose of the field work investigation was to determine if any conditions exist on the property that might have caused utility overcharges or other damage to you. The field work investigation is now completed.

[Based on its field work investigation, the LADWP has determined that no such conditions exist on the property and you are not entitled to a refund of overcharges or any other damages.

However, if you disagree with this determination and nevertheless believe you are entitled to damages, you **must submit a Claim Form postmarked within 60 days of the date of this letter.** You may request a Claim Form from the Claim Administrator by contacting them at _____ or _____. Or, you may complete and electronically submit a Claim Form at www._____.com within 60 days of the date of this letter.

Your Claim Form will be reviewed and you will be notified by letter of the amount of money, if any, you will receive. If you disagree with this determination, you have 30 days to request an independent review by a Special Master. To request an independent review, send a signed letter that: (i) states that you dispute the LADWP's determination; and (ii) explains the reasons you dispute the determination and what amount you believe you are entitled to and why. You must attach to your letter copies of all documents that you believe support your position.

Send your request for independent review to:
Special Master – LADWP Billing Class Action
c/o Kurtzman Carson Consultants
XXXXX
XXXXX

Remember, your request for the Special Master review must be postmarked **no later than 30 days from the date of this letter**. If you do not request a Special Master review within the stated time, the LADWP's determination that you are not entitled to a recovery will be final.]

[Based on its field work investigation, the LADWP has determined that you may be entitled to a refund of overcharges and other damages.

In order to receive the overcharges and other damages, if any, you **must submit a Claim Form postmarked within 60 days of the date of this letter.** You may request a Claim Form from the Claim Administrator by contacting them at _____ or _____. Or, you may complete

and electronically submit a Claim Form at www._____.com within 60 days of the date of this letter.

Your Claim Form will be reviewed and you will be notified by letter of the amount of money, if any, you will receive.  If you disagree with the determination, you will have 30 days to request review by the Special Master.

If you disagree with this determination, you have 30 days to request an independent review by a Special Master.  To request an independent review, send a signed letter that: (i) states that you dispute the LADWP's determination; and (ii) explains the reasons you dispute the determination and what amount you believe you are entitled to and why.  You must attach to your letter copies of all documents that you believe support your position.

Send your request for independent review to:

Special Master – LADWP Billing Class Action

c/o Kurtzman Carson Consultants

XXXXX

Remember, your request for the Special Master review must be postmarked **no later than 30 days from the date of this letter**.  If you do not request a Special Master review within the stated time, the LADWP's determination that you are not entitled to a recovery will be final.]

If you have questions regarding this letter, you may call 1-800-_____.

38457.025-3492773v2

Exhibit 2
200

**EXHIBIT 2**

[Exempt From Filing Fee
Government Code § 6103]

1  Jack Landskroner (Admitted Pro Hac Vice)
   LANDSKRONER GRIECO MERRIMAN, LLC
2  1360 West 9th Street, Suite 200
   Cleveland, Ohio 44113
3  T. (216) 522-9000
4  F. (216) 522-9007

5  Michael J. Libman (SBN 222353)
   LAW OFFICES OF MICHAEL J. LIBMAN
6  16133 Ventura Blvd., Suite 1200
   Encino, California 91436
7  Telephone: (818) 995-7300

8  Attorneys for Plaintiff

9  Michael N. Feuer (SBN 111529)
    City Attorney
   ~~Richard M. Brown~~Joseph A. Brajevich (SBN ~~041277~~156144)
10  General Counsel, Department of Water and Power
   Eskel H. Solomon (SBN 101386)
11  ~~Deputy~~Assistant City Attorney
    Los Angeles City Attorney's Office
12 111 N. Hope Street, Room 340
   Los Angeles, California 90012
13

14 Angela C. Agrusa (SBN 131337)
   Maribeth Annaguey (SBN 228431)
15 LINER LLP
   1100 Glendon Avenue, 14th Floor
16 Los Angeles, California 90024.3518
   Telephone:   (310) 500-3500
17 Facsimile:    (310) 500-3501

18 Attorneys for Defendant
   CITY OF LOS ANGELES

19          **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

20          **COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

21 ANTWON JONES, on behalf of himself, and    Case No. BC577267
   all other similarly situated,
22                                             [Related to Case Nos. BC565618 (Lead),
                                               BC568722, BC571664, and BC574690]
23          Plaintiff,
                                               [CLASS ACTION]
24     vs.
                                               **REVISED CLASS ACTION**
25 CITY OF LOS ANGELES, by and through the    **SETTLEMENT AGREEMENT AND**
   Los Angeles Department of Water and Power  **LIMITED RELEASE**
26 and DOES 1 through 50, inclusive,
                                               Assigned for All Purposes to the
27          Defendants.                        Hon. Elihu M. Berle, Dept. 323

28                                             Action Filed:      April 1, 2015
                                               Trial Date:        None Set

   LINER LLP
   1100 Glendon Avenue | 14th Floor
   Los Angeles, CA 90024-3518

38457.025-3494420
                              Exhibit 2
           REVISED CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

# TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | RECITALS | 1 |
| II. | DEFINITIONS | 6 |
| III. | GENERAL TERMS AND CONDITIONS OF SETTLEMENT | 13 |
| | A. Certification of Settlement Class | 13 |
| | B. Settlement Relief | 14 |
| | 1. Monetary Relief | 15 |
| | a. Pre-Identified Non-Claims Made Subclass Members | 15 |
| | b. Pre-Identified Claims Made Subclass Members | 16 |
| | c. Omnibus Subclass Members | 17 |
| | d. Timing Of Payment | 19 |
| | e. Uncashed And Returned Checks | 19 |
| | 2. Remedial Relief and Corrective Actions | 19 |
| | a. Create and Adopt CC&B System Performance Metrics and Perform Work Necessary to Achieve and Maintain Compliance with these Metrics | 19 |
| | 1) Backlogged Field Investigation Cases Customer High/Low Bill Inquiries | 20 |
| | 2) Backlogged Field Investigation Cases with Billing Instructions | 21 |
| | 3) Backlogged Field Investigation Cases Cut-in-Flat and Defective | 23 |
| | 4) Backlogged Field Investigation Cases with Other Issues | 24 |
| | 5) Backlogged Field Services Field Activities | 26 |
| | 6) Defective Meters | 28 |
| | 7) Cut In Flat Electric Meters and Spacer on Water Meters | 29 |
| | 8) Backlogged Meter Reread Field Activities | 30 |
| | 9) Backlogged Field Collections Field Activities | 31 |

LINER LLP
1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024.3518

38457.025-3494420

Exhibit 2

i

REVISED CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

10) Backlogged Water And Power Distribution Meter Exchange ....................................32

11) Backlogged Manually Generated Billing To Do's ..........................................................33

12) Premise Management ...............................................34

13) Customer Service Call Times And Responses: ........34

b. Appointment of Independent CC&B System Monitoring Expert ..........................................................................35

c. Independent CC&B System Audits to Confirm Accuracy of CC&B System ......................................................................37

d. Create and Implement Internal Billing "Tiger Team" To Address Unique or Complex Billing Issues .........................38

e. Create and Implement Information Technology Department Project Management Office .........................................................38

f. Amend Rule 17 of the Rules Governing Water and Electric Service ......................................................................................39

g. Settlement Class Members Who Entered Into A Payment Arrangement Schedule With The LADWP Due To Receiving A Delayed Bill At Any Time From September 3, 2013 Through November 3, 2015 Who Have Outstanding Payment Arrangement Balances Due May Elect To Extend The Term of Their Payment Arrangement Schedule By One Additional Year ...............................................................................41

C. Notice Program ..................................................................................41

1. Mailed Notice ...........................................................................41

2. Emailed Notice .........................................................................43

3. Published Notice ......................................................................44

4. Internet and Website Notice ...................................................44

D. Release, Waiver and Covenant Not To Sue ..................................45

E. Confirmatory Discovery......................................................................45

F. Non-Admission of Liability ...............................................................46

G. Preliminary Approval ........................................................................46

H. Claims Process ....................................................................................47

1. Pre-identification .....................................................................47

LINER LLP
1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024-3518

a.      Pre-Identified Non-Claims Made Subclass Members ....................47

b.      Pre-Identified Claims Made Subclass Members .....................48

2.      Self-Identification ...............................................49

3.      Pending Field Investigation .................................50

4.      Claims Administration ......................................50

5.      Special Master ..................................................50

6.      Costs of Settlement Administration ........................52

I.      Requests for Exclusion of Settlement Class ................................52

J.      Objections and Requests To Appear At Final Approval Hearing .................53

K.      Attorneys' Fees and Costs ...............................................54

L.      Final Approval ...........................................................56

M.      Miscellaneous Provisions ...............................................57

1.      Authority Of Signatories ....................................57

2.      Binding Upon Successors .....................................57

3.      Both Parties As Drafter ......................................58

4.      Cooperation ....................................................58

5.      Counterpart Execution ......................................58

6.      Governing Law ................................................58

7.      Headings ........................................................58

8.      Integration Clause ............................................58

9.      Jurisdiction .....................................................59

10.     Non-Waiver ....................................................59

11.     Notice ...........................................................59

12.     Severability ....................................................60

13.     Time for Compliance .........................................60

I.      RECITALS ...............................................................1

II.     DEFINITIONS ..........................................................9

III.    GENERAL TERMS AND CONDITIONS OF SETTLEMENT ...................17

LINER LLP
1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024.3518

38457.025-3494420

Exhibit 2    iii
205

REVISED CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

A.      Certification of Settlement Class..............................................................17

B.      Settlement Subclasses ............................................................................17

   1.      Overbilled Subclass .......................................................................17

   2.      Incorrect Fee Subclass...................................................................18

   3.      Unrefunded Balance Subclass .......................................................18

   4.      Solar Subclass ...............................................................................18

   5.      Premise Condition/Estimated Bill Subclass ..................................18

   6.      Automatic Bill Payment/Bank Overdraft Charge Subclass ...........18

   7.      Omnibus Subclass ..........................................................................19

C.      Settlement Relief....................................................................................20

   1.      Monetary Relief..............................................................................20

      a.      Pre-Identified Non-Claims Made Subclass Members......................20

      b.      Pre-Identified Claims Made Subclass Members .............................21

      c.      Omnibus Subclass Members ...........................................................22

      d.      Timing of Payment.........................................................................24

      e.      Uncashed and Returned Checks......................................................24

   2.      Remedial Relief and Corrective Actions........................................24

      a.      Create and Adopt CC&B System Performance Metrics and
              Perform Work Necessary to Achieve and Maintain
              Compliance with these Metrics ......................................................25

      b.      Appointment of Independent CC&B System Monitoring
              Expert ...........................................................................................40

      c.      Independent CC&B System Audits to Confirm Accuracy of
              CC&B System..................................................................................42

      d.      Create and Implement Internal Billing "Tiger Team" To
              Address Unique or Complex Billing Issues .....................................43

      e.      Create and Implement Information Technology Department
              Project Management Office ............................................................44

      f.      Amend Rule 17 of the Rules Governing Water and Electric
              Service...........................................................................................45

      g.      Settlement Class Members Who Entered Into A Payment
              Arrangement Schedule With The LADWP Due To

LINER LLP
1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024-3518

38457.025-3494420                         Exhibit 2    iv

Receiving A Delayed Bill At Any Time From September 3, 2013 Through November 18, 2016 Who Have Outstanding Payment Arrangement Balances Due May Elect To Extend The Term of Their Payment Arrangement Schedule By One Additional Year ................................................................46

D.    Class Notice Program ..........................................................47

    1.    Mailed Class Notice .....................................................47

    2.    Emailed Class Notice ...................................................48

    3.    Published Class Notice .................................................49

    4.    Internet and Website Class Notice ..............................51

E.    Release, Waiver and Covenant Not To Sue .........................51

F.    Confirmatory Discovery ......................................................52

G.    Non-Admission of Liability .................................................52

H.    Preliminary Approval ..........................................................53

I.    Claims Process .....................................................................54

    1.    Pre-identification .........................................................54

        a.    Pre-Identified Non-Claims Made Subclass Members ....................54

        b.    Pre-Identified Claims Made Subclass Members ..............................55

    2.    Self-Identification .......................................................56

    3.    Pending Field Work Investigations ............................57

    4.    Claims Administrator ..................................................57

    5.    Special Master .............................................................57

    6.    Costs of Settlement Administration ............................59

J.    Requests for Exclusion of Settlement Class ........................59

K.    Objections and Requests To Appear At Final Approval Hearing ..........................60

L.    Attorneys' Fees and Costs ...................................................62

M.    Final Approval .....................................................................64

N.    Miscellaneous Provisions ....................................................65

    1.    Authority of Signatories ..............................................65

    2.    Binding Upon Successors ............................................65

LINER LLP
1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024-3518

| | | | |
|---|---|---|---|
| 3. | Both Parties as Drafter | ...................................................... | 66 |
| 4. | Cooperation | ...................................................... | 66 |
| 5. | Counterpart Execution | ...................................................... | 66 |
| 6. | Governing Law | ...................................................... | 66 |
| 7. | Headings | ...................................................... | 66 |
| 8. | Integration Clause | ...................................................... | 66 |
| 9. | Jurisdiction | ...................................................... | 67 |
| 10. | Non-Waiver | ...................................................... | 67 |
| 11. | Notice | ...................................................... | 67 |
| 12. | Severability | ...................................................... | 68 |
| 13. | Time for Compliance | ...................................................... | 68 |

LINER LLP
1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024.3518

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

This Revised Class Action Settlement Agreement and Limited Release ("Revised Agreement") is submitted pursuant to the California Code of Civil Procedure. Subject to the approval of the Court, this Revised Agreement memorializes the settlement between and among all Parties to fully resolve the Action. This Revised Agreement is entered into by and between Antwon Jones ("Plaintiff" or "Plaintiff Jones"), individually and as a representative of the Settlement Class (as defined herein), and as it pertains to the claims alleged in *Kimhi v. City of Los Angeles*, Case No. BC536272 (the "*Kimhi* Action"), Yaar Kimhi, individually and as the Class Representative for the Solar Customers Subclass, and named plaintiffs, Tahl Beckerman Megerdichian and Yelena Novak, and defendant the City of Los Angeles, by and through the Los Angeles Department of Water and Power ("LADWP" or "Department") and DOES 1 through 50, inclusive (the "City" or "Defendant") (collectively the "Parties"). This Revised Agreement is intended by the Parties to fully and finally compromise, resolve, discharge and settle all Released Claims (as defined herein) on the terms and conditions set forth herein, subject to approval of the Court.

## I.      RECITALS

WHEREAS, on April 1, 2015, Plaintiff Jones filed a class action in the Superior Court of the State of California for the County of Los Angeles captioned, *Jones v. City of Los Angeles*, Case No. BC577267 (the "Action");

WHEREAS, the Complaint in the Action alleges claims involving customer over-billing and other billing errors by the LADWP that were caused by, and are related to, the defective implementation of the LADWP's new Customer Care and Billing system (the "CC&B System") and damages incurred by customers arising from their participation in the LADWP's solar incentive program;

WHEREAS, prior to filing the Complaint in the Action, Class Counsel initiated an extensive and very lengthy investigation into the matters alleged in the Complaint and has continued to conduct an ongoing investigation into the facts and law relating to the allegations, claims and defenses asserted in this Action;

LINER LLP
1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024-3518

1    WHEREAS, Class Counsel's continuing investigation has included, among other things,

2    interviewing current and former LADWP employees and working closely with investigators and

3    Plaintiff Jones' non-testifying experts to diligently investigate the facts relevant to the merits of

4    the claims asserted in the Action, including the functionality of the CC&B System and the

5    LADWP's solar incentive program;

6    WHEREAS, LADWP conducted an internal investigation concerning issues relating to the

7    new CC&B System, and customer billing related matters, including, but not limited to, matters

8    involving claims made against the LADWP by customers involved in the LADWP's solar

9    incentive program, which remains ongoing;

10   WHEREAS, Plaintiff Jones directed his counsel to work with Plaintiff Jones' non-

11   testifying consultants to develop a highly detailed settlement proposal in which Plaintiff Jones

12   proposed to resolve the claims asserted in the Action, as well as the claims asserted in the

13   following three class actions filed against the City and the LADWP: *Bransford, et al. v. City of

14   Los Angeles*, Case No. BC565618 (the "*Bransford* Action"), *Fontaine v. City of Los Angeles, et

15   al.*, Case No. BC571664 (the "*Fontaine* Action"), and the *Kimhi* Action on terms that would

16   require the LADWP to:

17   (i)    conduct a review and audit of all LADWP customer accounts to determine if billing

18          errors occurred;

19   (ii)   refund or credit one hundred percent of the amounts the LADWP had improperly

20          charged any of its customers as a result of billing errors caused by the LADWP's

21          new CC&B System or because of the customers' participation in the LADWP's

22          solar incentive program;

23   (iii)  take the remedial measures necessary to ensure that the defects in the new CC&B

24          System were permanently corrected; and,

25   (iv)   provide independently verified evidence that the CC&B System was functioning

26          properly and generating accurate customer bills on an ongoing basis;

27

28

LINER LLP
1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024-3518

1   WHEREAS, after having provided the detailed settlement proposal, Class Counsel met and

2   conferred with counsel for the City and commenced formal settlement negotiations shortly

3   thereafter. The Parties advanced settlement discussions as far as they could go until these efforts

4   stalled;

5   WHEREAS, after further consideration, the Parties agreed to continue their settlement

6   discussions in a more formal mediation environment and engaged the services of the Hon. Dickran

7   M. Tevrizian (Ret.), one of the most well respected mediators in the United States, to conduct a

8   formal mediation in this matter;

9   WHEREAS, because of the nature of the claims at issue in this litigation and the

10  complexity of the settlement terms proposed by Plaintiff Jones, Judge Tevrizian scheduled the

11  mediation to be conducted over a four day period on June 11-12, July 24 and July 31, 2015;

12  WHEREAS, the Parties thereafter participated in a contentious and protracted two day-

13  long mediation at JAMS in Los Angeles before the Hon. Dickran M. Tevrizian (Ret.) on June 11

14  and 12, 2015. At the conclusion of that mediation session, the Parties reached an agreement in

15  principal on the material terms of the proposed class action settlement ~~reflected in this Agreement~~;

16  WHEREAS, following these mediation sessions, the Parties appeared before the Court and

17  informed the Court that the Parties had reached an agreement in principal on the material terms of

18  a proposed class action settlement;

19  WHEREAS, given the complexity of the settlement and the detail necessary to verify the

20  identity of affected accounts, the accuracy of the refunds due to customers and to validate

21  compliance and the completion of agreed-to remediation protocols, Judge Tevrizian scheduled an

22  additional mediation session on July 24, 2015 in which the Parties worked to define and document

23  other non-material terms ~~presented in this Agreement~~;

24  WHEREAS, after the Parties had concluded negotiating all of the material and non-

25  material terms ~~of the Agreement~~, other than the amount of attorneys' fees and expense

26  reimbursement to be paid to Class Counsel, on July 24, 2015 Judge Tevrizian informed the Parties

27  that they could begin negotiating the amount of attorneys' fees and expense reimbursement to be

28

38457.025-3494420

Exhibit 2    3

REVIESED CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

LINER LLP
1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024-3518

LINER LLP
1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024-3518

1    paid to Class Counsel, and conducted a fourth day of mediation concerning this issue on July 31,

2    2015;

3         WHEREAS, despite the Parties' best efforts, and after a protracted mediation session on

4    July 31, 2015, the Parties reached an impasse with respect to Class Counsel's attorneys' fees and

5    expense reimbursement;

6         WHEREAS, in hopes of bridging this impasse, Judge Tevrizian made a mediator's

7    proposal, which after much discussion over several days, was accepted by the Parties;

8         WHEREAS, based upon the extensive investigation undertaken prior to ~~execution of this~~

9    ~~Agreement~~settlement, discovery provided during the negotiations and the analysis of the facts and

10   the law applicable to Plaintiff Jones' claims, and taking into account the extensive burdens and

11   expense of litigation, including the risks and uncertainties associated with protracted trials and

12   appeals, as well as the fair, cost-effective and assured method of resolving the claims of the

13   Settlement Class, both Plaintiff Jones, Plaintiff Kimhi and Class Counsel have concluded that this

14   ~~Agreement~~settlement provides substantial benefits to the Settlement Class and is fair, reasonable,

15   adequate and in the best interests of Plaintiff Jones and the Settlement Class;

16   WHEREAS, during the September 11, 2015 Preliminary Approval Hearing Class Counsel

17   explained to the Court, "*the monetary relief includes 100 percent of recovery for each customer*

18   *for amounts that they were overbilled by D.W.P., that will result in $44 million in refunds and*

19   *credits, as a starting point.*" See September 11, 2015 Hearing Transcript at 14;

20        WHEREAS, at the conclusion of the initial hearing on Plaintiff's Motion for Preliminary

21   Approval of the Settlement, the Court directed ~~proposed~~ Class Counsel to obtain input with

22   respect to how the ~~Settlement Agreement~~settlement could be improved on behalf of Settlement

23   Class Members. In response to the Court's directive, the Parties met and conferred with related

24   counsel to solicit suggestions as well as take additional steps to improve the ~~Settlement~~

25   ~~Agreement.~~settlement. Class Counsel also actively sought out such input from the Office of

26   Public Accountability (OPA) / Ratepayer Advocate for the City of Los Angeles for the purpose of

27   allowing the Ratepayer Advocate to review the ~~Settlement Agreement~~settlement and make any

28

38457.025-3494420                          Exhibit 2    4
          REVISED CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

1 recommendation the Ratepayer Advocate might offer to improve the ~~Settlement~~settlement on

2 behalf of Settlement Class Members;

3       WHEREAS, after reviewing the ~~Settlement Agreement~~settlement, the Ratepayer Advocate

4 made only a single recommendation with which Class Counsel agreed.  Class Counsel then

5 negotiated with the City and LADWP to obtain the benefit -requested by the Ratepayer Advocate,

6 as detailed in Section III. below;

7

8       WHEREAS, on November 3, 2015, the Court re-convened the hearing on Plaintiff Jones'

9 Motion for Preliminary Approval, which had commenced on September 11, 2015.  During

10 the November 3, 2015 hearing, the Court again heard argument from the Parties in support of

11 Preliminary Approval and also heard from certain objectors, by their counsel.  At the conclusion

12 of the November 3, 2015 hearing, the Court instructed the Parties to make twelve additional

13 revisions to the ~~Agreement~~settlement, in addition to the revisions that had been called for by the

14 Court during the September 11th hearing.  The Court also instructed the Parties and objectors that

15 any further briefing would be limited to only the twelve issues raised by the Court during the

16 November 3rd hearing and again continued the hearing on Plaintiff Jones' Motion for Preliminary

17 Approval until December 21, 2015~~.~~;

18       WHEREAS, following the November 3rd hearing, the Parties again met and conferred with

19 each other and counsel for the objectors.  Based on these conferences, additional changes were

20 made to the ~~Settlement Agreement;~~ settlement and presented to the Court on December 21, 2015;

21       ~~WHEREAS, excluded from this Settlement, and, therefore, not released, are the claims in~~

22 ~~the related lawsuit entitled Morski v. City of Los Angeles by, and through, the Los Angeles~~

23 ~~Department of Water & Power, Los Angeles Superior Court Case No BC 568722 (the "Morski~~

24 ~~Action").  The Morski Action alleges at paragraph 4 of the Second Amended Complaint that it~~

25 ~~"does not include within its scope the erroneous billing claims included within the case of~~

26 ~~Bransford et al. v. City of Los Angeles, Los Angeles Superior Court Case No. BC565618."  The~~

27 ~~Morski Action pursues claims based on the allegation that the LADWP assessed tiered billing~~

28 ~~without obtaining actual monthly meter reads and without providing regular, timely, and accurate~~

LINER LLP
1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024-3518

LINER LLP
1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024-3518

1   monthly bills to its customers in violation of Ordinance Nos. 180127, 182273, and 170435 (as

2   amended by Ordinance No. 171639, Ordinance No. 173017, Ordinance No. 175964,  Ordinance

3   No. 177968 and Ordinance No. 179802) (collectively, the "Ordinances").

4        WHEREAS, excluded from this Settlement, and, therefore, not released are the following

5   claims alleged in the lawsuit entitled *Macias v. City of Los Angeles erroneously sued as Los*

6   *Angeles Department of Water and Power, et al.*, Los Angeles Superior Court Case No. BC594049

7   (the "*Macias* Action"):  (i)  Non-Monthly Tiered Billing claims (as referenced in Paragraph 38

8   below); (ii) "Cancel Rebill" claims arising from Non-Monthly Tiered Billing claims (as

9   referenced in Paragraphs 5 and 38) (iii) violations of California's Bane Act, Civil Code § 51.2 (the

10  "Bane Act"); (iv) claims based on the Back-Billing of customers during the period September 3,

11  2013 and September 10, 2015; and (v) claims arising out of LADWP's failure to record or credit

12  payments by customers;

13       WHEREAS, excluded from this Settlement and, therefore, not released are:  (i) claims

14  arising out of field investigations created after December 21, 2015; and (ii)  claims for personal

15  injury;

16       WHEREAS, on December 21, 2015, the Court re-convened the hearing on Plaintiff Jones'

17  Motion for Preliminary Approval.  During the December 21, 2015 hearing, the Court again heard

18  argument from the Parties in support of Preliminary Approval and also heard from certain

19  objectors, by their counsel;

20       WHEREAS, during the December 21, 2015 Preliminary Approval Hearing, the Court

21  again recognized that the $44 million in refunds and credits identified by Class Counsel was an

22  estimate and that the aggregate amount to be refunded and credited could grow if additional issues

23  / items were discovered during the course of the remediation effort and stated in relevant part, "*the*

24  *monetary relief portion of the settlement provides settlement class members with an estimated $44*

25  *million in credits or refunds arising from overbilling.  And this is not a cap; it's just an estimate.*"

26  *See* December 21, 2015 Hearing Transcript at 81.

27       WHEREAS, at the conclusion of the December 21, 2015 hearing, the Court: (i)

28  conditionally preliminarily approved the settlement; (ii) appointed Antwon Jones as Class

1 | Representative; (iii) appointed Yaar Kimhi as the Class Representative for the Solar Subclass; (iv)

2 | appointed Landskroner Grieco Merriman, LLC as Class Counsel; (v) appointed Mr. Paul Bender

3 | as the CC&B Billing System Monitoring Expert; (vi) appointed Dr. Barbara Barkovich as the

4 | Special Master in this case; and (vii) instructed the parties to make four additional changes to the

5 | settlement;

6 |      WHEREAS, since the December 21, 2015 hearing, the CC&B System Monitoring Expert

7 | has conducted numerous one and two day-site visits, document review and analysis sessions, and

8 | weekly conference calls with LADWP's personnel, Class Counsel and LADWP's Counsel;

9 |      WHEREAS, during the period April 12th through April 29th, 2016, the CC&B System

10 | Monitoring Expert conducted an extended site visit at LADWP;

11 |      WHEREAS, as detailed in the **_Report of Independent CC&B Systems Monitor_**

12 | **_Concerning Status of Class Action Settlement for First and Second Quarters of 2016_** filed with

13 | the Court on July 14, 2016, following this extended site visit, the CC&B Billing System

14 | Monitoring Expert informed counsel for all Parties that the then-current Scope of Work and

15 | schedule would need to be significantly revised to allow additional time for the LADWP to

16 | undertake the additional work the Monitoring team requested.  The CC&B System Monitoring

17 | Expert also stated that the Monitoring team would use this additional time to:  (i) perform various

18 | verification tasks and data analyses required to ensure that the mechanisms and methodologies the

19 | LADWP utilized are accurate and reliable; and (ii) continue to work closely with LADWP IT

20 | Professionals to ensure that the Settlement's goal of refunding 100% of all overcharges to

21 | LADWP customers is achieved;

22 |      WHEREAS, on July 14, 2016, the CC&B System Monitoring Expert: (i) informed the

23 | Court that the amount to be refunded to Class members would increase by at least $5.4 million

24 | dollars based on additional work the LADWP performed; and (ii) requested that the Court extend

25 | the deadline for the LADWP to complete the programming and testing necessary to identify **_all_**

26 | LADWP customers who have been overcharged and quantify the amounts of such overcharges to

27 | November 18, 2016;

28 |

LINER LLP
1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024-3518

Exhibit 2        7

LINER LLP
1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024-3518

1  WHEREAS, on July 28, 2016, the Court granted the CC&B System Monitoring Expert's

2  request and extended the deadline to November 18, 2016 to complete the programming and testing

3  necessary for the LADWP to identify customers who have been overcharged and quantify the

4  amounts of such overcharges;

5  WHEREAS, on October 28, 2016, the LADWP concluded the work necessary to identify

6  customers who have been overcharged and quantify the amounts of such over charges.  Thereafter,

7  the CC&B System Monitoring Expert finalized the work it was performing to confirm the accuracy

8  of the LADWP's programming and testing;

9  WHEREAS, on October 31, 2016, the Parties participated in another day-long mediation at

10  JAMS in Los Angeles before Judge Tevrizian.  During the October 31st mediation, the Parties

11  negotiated the following revisions to the settlement:  (i) a revision to Rule 17 of the Rules Governing

12  Water and Electric Service; (ii) a revision to the 18 month Remediation Period; (iii) a revision to the

13  date by which the Tiger Team will be operational; (iv) a revision to the scope of work the CC&B

14  System Monitoring Expert   is to perform involving the Tiger Team and claims administration

15  activities; (v) a revision to the date by which the Information Technology Department Project

16  Management Office will be operational; (vi) a revision to the claims process for Solar Subclass

17  members; and (vii) a revision to the amount of attorneys' fees and expense reimbursement which

18  may be sought by Class Counsel; and,

19  WHEREAS, the City and the other Released Parties, defined below, have denied, and

20  continue to deny, the substantive claims set forth in the complaints in this Action and in the

21  *Bransford*, *Fontaine*, and *Kimhi* Actions, and have denied and continue to deny any and all

22  wrongdoing and liability of any kind with respect to any and all facts and claims alleged and

23  further deny that any Settlement Class Member has suffered any damage caused by the City and

24  the other Released Parties;

25  **NOW, THEREFORE, IT IS HEREBY STIPULATED, CONSENTED TO AND**

26  **AGREED,** by and between the Parties, through their respective counsel, and subject to the

27  approval of the Court, that the Actions be settled, compromised and dismissed, on the merits and

28

38457.025-3494420

Exhibit 2    8

1  with prejudice, and the Released Claims be finally and fully compromised, settled and dismissed

2  as to the Released Parties, subject to and in accordance with the following terms and conditions:

3  **II.**    **DEFINITIONS**

4        As used in this Revised Agreement and the exhibits thereto, in addition to any definitions

5  elsewhere in this Revised Agreement, the following terms shall have the meanings set forth below:

6        1.    "Action" means *Jones v. City of Los Angeles*, Case No. BC577267- pending in the

7  Superior Court of the State of California for the County of Los Angeles.

8        2.    "Actions" means collectively the Action together with the *Bransford*, *Fontaine*, and

9  *Kimhi* Actions.

10        3.    "Agreement" means ~~this executed~~ the Class Action Settlement Agreement and

11  Limited Release executed on November 18, 2015.

12        4.    "Back-Billing" means the submission of a bill by LADWP to an account holder

13  that includes more than one billing cycle where the prior billing statements had not previously

14  been billed to the account holder.  Back-Billing does not include the issuance of a "Cancel-

15  Rebill."

16        5.    "Cancel-Rebill" means a bill issued that reconciles a customer's charges from prior

17  bills.

18        6.    "CC&B System" means LADWP's Customer Care and Billing System used to bill

19  its customers for electricity and water usage ~~and the City of Los Angeles Bureau of Sanitation's~~

20  ~~customers for sewage and trash collection~~, sewage and sanitation services, which went "live" on

21  September 3, 2013.

22        7.    "CC&B System Auditor" means the audit firm hired to conduct CC&B System

23  audits described in Section III.C.2.b. herein.

24        8.    "CC&B System Monitoring Expert" means Paul Bender of Paul Bender

25  Consulting.

26        9.    "Claims Administrator" means Kurtzman Carson Consultants LLC ("KCC")

27  (formerly known as Gilardi & Co. LLC), an independent service provider whose function shall

28

LINER LLP
1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024-3518

1  include the processing of Claim Forms and administration of all claims filed by Settlement Class

2  Members in this Action.

3      10.    "Claim Form" means a document substantially in the form of the document

4  attached to this ~~agreement~~Revised Agreement as Exhibit ~~F~~G.

5      11.    "Claim Period" means:

6          a.    for Omnibus Subclass Members, the ~~120~~60 day period commencing on

7          the date of the <u>Class </u>Notice;

8          b.    for Pre-Identified Claims Made Subclass Members, the ~~120~~60 day period

9          commencing on the date of the ~~Identification Letter;~~<u>Class Notice;</u>

10         c.    for Field ~~Investigation~~<u>Work</u> Customers, the ~~120~~60 day period

11         commencing on the date of the Field ~~Investigation~~<u>Work</u> Determination

12         Letter.

13     12.    "Claims Processing Unit" means a team of trained LADWP employees responsible

14 for examining Claim Forms and supporting documentation submitted by Settlement Class

15 Members to determine the refunds or credits are due to Settlement Class Members.

16     13.    "Class Counsel" means Landskroner Grieco Merriman, LLC.

17     <u>14.    "Class Notice" means the notices disseminated in connection with the Class Notice</u>

18 <u>Program substantially in the form of Exhibits A-B hereto.</u>

19     <u>15.    "Class Notice Date" means the later of the last date of published notice, or the last</u>

20 <u>date of emailed or mailed notice.</u>

21     <u>16.    "Class Notice Program" means the plan for disseminating the Class Notices</u>

22 <u>described in Section III.D. herein.</u>

23     ~~14.~~<u>17.</u>  "Class Representative" means Plaintiff Jones.

24     ~~15.~~<u>18.</u>  "Class Representative for the Solar ~~Customer~~ Subclass" means plaintiff Yaar

25 Kimhi.

26     ~~16.~~<u>19.</u>  "Complaint" means the First Amended Class Action Complaint filed in the Action.

27     ~~17.~~<u>20.</u>  "Court" means the Superior Court of the State of California for the County of Los

28 Angeles.

38457.025-3494420

Exhibit 2   10

<u>REVISED </u>CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

LINER LLP
1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024-3518

18.21. "Credit/Refund Letter" means the letter disseminated to Pre-Identified Non-Claims Made Subclass Members in connection with the claims process substantially in the form of Exhibit D hereto,

19.22. "Defense Counsel" means Liner LLP.

20.23. "Effective Date" means the later of the date upon which all appeals, if any, from the Final Order and Judgment (defined below) have been finally concluded and exhausted, with the date upon which the time to seek any appellate remedy from the Final Order and Judgment has expired.

21.24. "Eligible Claim" means a claim or claims by a Settlement Class Member generally meeting the criteria for settlement benefits under this Revised Agreement.

22.25. "Field InvestigationWork Customer" means any LADWP customer with an open field investigation as of December 21, 2015.

23.26. "Field InvestigationWork Determination Letter" means the letter disseminated to Field InvestigationWork Customers in connection with the claims process substantially in the form of Exhibit IJ hereto that informs LADWP customers of the LADWP's determination following the completion of a field investigationwork.

24.27. "Field InvestigationWork Notification Letter" means the letter disseminated to Field InvestigationWork Customers in connection with the claims process substantially in the form of Exhibit HI hereto that notifies Field InvestigationWork Customers of a pending field investigation.

25.28. "Final Approval Hearing" means the hearing to be held by the Court to consider and determine whether the proposed Settlement should be approved of as fair, reasonable and adequate, and whether the Final Order and Judgment should be entered.

26.29. "Final Order and Judgment" means a final judgment entered by the Court in substantially the form attached as Exhibit GH to this Revised Agreement.

27.30. "Identification Letter" means the letter disseminated to a Pre-Identified Claims Made Subclass Member in connection with the claims process substantially in the form of Exhibit E hereto.

LiNER LLP
1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024-3518

1    ~~28.~~31.  "LADWP" means the Los Angeles Department of Water and Power.

2    ~~29.~~32.  ~~-~~"Liaison Counsel" means the Law Offices of Michael J. Libman.

3    ~~30.~~33.  ~~"Notice~~"Omnibus Subclass Letter" means the ~~notices~~letter disseminated to

4    LADWP customers who have not been identified as either:  (i) Pre-Identified Non-Claims Made

5    Subclass Members or (ii) Pre-Identified Claims Made Subclass Members in connection with the

6    ~~Notice Program~~ claims process in substantially ~~in~~ the form of ~~Exhibits A-B~~Exhibit F hereto.

7    ~~31.      "Notice Date" means the later of the last date of Published Notice, or the last date~~

8    ~~of emailed or mailed Notice.~~

9    ~~32.      "Notice Program" means the plan for disseminating the Notices described in~~

10   ~~Section III.C. herein.~~

11   ~~33.~~34.  "Parties" means the City of Los Angeles, by and through the Los Angeles

12   Department of Water and Power~~, on behalf of itself, its subsidiaries, affiliates, directors, officers,~~

13   ~~and their successor(s)~~ and Plaintiff Jones on behalf of himself and all others similarly situated.

14   ~~34.~~35.  "Persons" means persons and entities, including, without limitation, any

15   individuals,  sole  proprietorships,  associations,  companies,  partnerships,  joint  ventures,

16   corporations, trusts, estates, or any other persons or entities.

17   ~~35.~~36.  "Plaintiff" or "Plaintiff Jones" means Antwon Jones.

18   ~~36.~~37.  "Pre-Identified~~"~~ Subclass Member~~"~~ means an LADWP customer who has been

19   identified through LADWP's internal records as a member of an identified subclass as addressed

20   herein.

21   ~~37.~~38.  "Preliminary Approval Order" means the proposed order preliminarily approving

22   the ~~Settlement~~settlement, substantially in the form of Exhibit C hereto.

23   39.      "Released Claims" means ~~any and~~ all claims, damages, suits, demands, liabilities,

24   judgments, losses and causes of action which have accrued as of the date of entry of the Order of

25   Preliminary  Approval  relating  to  or  arising  from  the  billing  issues  alleged  in  the  operative

26   pleadings in the Actions, including ~~(i) any error committed by the LADWP in billing customers~~

27   ~~for electric, water, sewage or sanitation services in amounts deviating from the customers' usage~~

28   ~~billed in accordance with the applicable rules and rates set by City Ordinance on bills LADWP~~

38457.025-3494420                                    Exhibit 2    12

1  ~~issued between September 3, 2013 through the date of entry of the Order of Preliminary Approval;~~

2  ~~(ii) any error committed by the LADWP in billing customers between September 3, 2013 through~~

3  ~~the date of entry of the Order of Preliminary Approval resulting in fees or other charges incurred~~

4  ~~by customers; (iii) any error committed by the LADWP in improperly assessing fees or other~~

5  ~~charges on bills LADWP issued between September 3, 2013 through the date of entry of the Order~~

6  ~~of Preliminary Approval; and (iv) failing to timely include customers in the LADWP's solar~~

7  ~~incentive program and/or to provide credit for excess energy generated by solar customers;~~

8        (i)    overbilling as a result of charging an incorrect rate, incorrect amount of

9               consumption, incorrect utility tax rate or failing to apply a discount;

10       (ii)   billing incorrect fees, including but not limited to late payment fees,

11              reconnect fees and/or start service fees;

12       (iii)  retaining refunds during the period of September 3, 2013 to the present that

13              were due;

14       (iv)  billing for greater quantities of water, power or sewage than otherwise

15              would have been charged but for the existence of a premise condition;

16       (v)   the assessment of overdraft fees resulting from the LADWP having charged

17              customers an incorrect billing amount; and

18       (vi)  for solar customers, delay in providing a reservation confirmation to and/or

19              connecting the solar system, and/or failure to bill for energy consumed

20              and/or generated; and/or failure to credit for excess energy generated by the

21              customer's solar power system at any time from February 13, 2010, through

22              the date of the entry of the Order of Preliminary Approval, ~~whether known~~

23              ~~or unknown,~~

24 sounding in law or equity, seeking damages or any other relief, that are now recognized by law or

25 that may be created or recognized in the future by statute, regulation, judicial decision or in any

26 other manner, based upon any federal or state statutory or common law including but not limited

27 to, claims sounding in tort, contract and the consumer protection laws of the United States or of

28 any state or other jurisdiction within the United States, and all claims, damages, suits, demands,

LINER LLP
1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024.3518

38457.025-3494420

Exhibit 2  13

REVISED CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

1  liabilities, judgments, losses or causes of action which have been, might have been, are now, or

2  could be asserted by any plaintiff or any Settlement Class Member arising out of, based upon, or

3  related to, in whole or in part, the facts and circumstances underlying the claims and causes of

4  action set forth in the Actions.

5       Released claims include claims for economic and non-economic damages that were

6  proximately caused by the LADWP having overbilled its customers during the time periods set

7  forth in the operative Complaint in the *Jones Action*.  These economic and non-economic damages

8  may be direct, incidental, or consequential and, by way of example, include:   repair costs; services

9  costs (e.g., the cost of a plumber or electrician to examine or repair a premise condition); finance,

10  interest, or overdraft charges imposed by a third party; costs related to or arising from erroneous

11  disconnections; reconnection fees; loss of perishable items; damage to personal property; ~~personal~~

12  ~~injury or illness;~~ or loss of wages or business income.  All such losses and damages are expressly

13  deemed Eligible Claims pursuant to this <u>Revised</u> Agreement and a Settlement Class Member is

14  entitled to seek recovery of 100% of such losses and damages through the Omnibus claims

15  process.

16       Released Claims also include claims for economic and non-economic damages that

17  resulted in ~~an overcharge~~<u>overbilling</u> to customers and were proximately caused by the LADWP's

18  failure to:~~-~~ (i) timely undertake field investigations, conduct field maintenance, perform meter

19  reads, or provide accurate information concerning actual utilization; (ii) prorate or allot utilization

20  in accordance with applicable rate schedules; and (iii) comply with disconnection rules ~~and the~~

21  ~~imposition of associated charges.~~<u>.</u>   All such losses and damage are expressly deemed Eligible

22  Claims pursuant to this<u> Revised</u> Agreement and a Settlement Class Member is entitled to seek

23  recovery of 100% of such losses and damages through the Omnibus claims process.

24       Released Claims do not include~~:~~<u>:</u>

25       <u>(i)</u>    the claims ~~alleged~~<u>asserted</u> in the <u>action, *Morski v. City of Los Angeles by, and</u>

26       <u>through, the Los Angeles Department of Water & Power,* Los Angeles Superior</u>

27       <u>Court Case No BC 568722 (the "*Morski*</u> Action~~, hereinafter referred to as "Non Monthly Tiered~~

28       ~~Billing Claims." The *Morski* Action alleges~~<u>"), which allege</u> that the ~~applicable City Council Ordinances~~

LINER LLP
1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024-3518

1    (LADWP violated Ordinance Nos. 180127, 182273, and 170435 (as amended by

2    Ordinance No. 171639, Ordinance No. 173017, Ordinance No. 175964,  Ordinance

3    No. 177968 and Ordinance No. 179802)) require the LADWP to take actual meter reads on a monthly

4    basis and do not permit the LADWP to assess 179802) by assessing tiered billing without

5    obtaining actual monthly meter reads and without providing regular, timely, and

6    accurate monthly bills to its customers based on such monthly meter reads. Each of the ("Non-

7    Monthly Tiered Billing Claims");

8    (ii)    causes of action Action 27-32 in the Morski Action are based on the allegation that the LADWP

9    assessed tiered billing without obtaining actual monthly meter reads and without providing regular, timely, and

10   accurate monthly bills to its customers in violation of the applicable Ordinances. The Morski Action alleges at

11   paragraph 4 of the Second First Amended Complaint that it "does not include within its scope the

12   erroneous billing claims included within the case of Bransford et al. v. filed on October 20, 2015 in the

13   action entitled Macias v. City of Los Angeles, erroneously sued as Los Angeles

14   Department of Water and Power, et al., Los Angeles Superior Court Case No.

15   BC565618." Other than BC594049 (the Non-Monthly Tiered Billing Claims, the Morski "Macias Action

16   does not allege any claims based on the incorrect or erroneous calculation of bills or improper assessment of

17   fees, and such claims are expressly released by this Settlement. Released Claims"), which counsel for

18   Plaintiff Macias has represented will also do not include:  (i) the Non Monthly Tiered Billing claims

19   pled be asserted in the Macias Action; (ii) "Cancel Rebill" claims arising from Non-Monthly Tiered Billing as

20   pled Third Amended Complaint that will be filed in the Macias Action (iii) the on or

21   before November 10, 2016;

22   (iii)    claims for violations of California's Bane Act including those pled in the Macias Action; (iv),

23   Civil Code § 51.2;

24   (iv)    claims arising out of field work investigations created after December 21, 2015; (v)

25   (v)    claims arising out of LADWP's failure to record or credit payments made by

26   customers; (vi)

27   (vi)    claims arising from the Back-Billing of customers during the period September 3,

28   2013 through September 10, 2015; and (vii)

     (i)(vii) claims for personal injury.

1   38.40.  "Released Parties" means individually and collectively, as appropriate, the City of

2   Los Angeles, by and through the Los Angeles Department of Water and Power, and all of its

3   predecessors and successors in interest, including but not limited to, all of its respective past and

4   present parents and subsidiaries and current and former directors, officers, employees and

5   attorneys divisions, departments and bureaus.

6   39.41.  "Remediation Period" means the up to 18--month period during which LADWP

7   will complete stabilization and remediation of the CC&B System immediately following the

8   Effective Date.

9   42.   "Revised Agreement" means this executed Revised Class Action Settlement

10  Agreement and Limited Release.

11  40.43.  "Settlement" means the settlement embodied in and contemplated by this Revised

12  Agreement.

13  41.44.  "Settlement Class" is comprised of:

14      All LADWP customers who were over-charged for electric, water,
        sewage or sanitation services between the dates of September 3,
15      2013 and the present, and who are entitled to credits or refunds for
        electric, water, sewage or sanitation services and/or for participation
16      in the LADWP's solar incentive program from February 13, 2010.

17      Expressly excluded from the Settlement Class are the Judge to
18      whom this case is assigned, any members of the Judge's immediate
        family, and counsel of record in this action.
19

20  42.45.  "Settlement Class Member" means any person included within the Settlement

21  Class, which includes any person who does not timely exercise his or her right to opt out of the

22  Settlement Class pursuant to Section III.I.J. herein.

23  43.46.  "Special Master" means Barbara R. Barkovich, Ph.D of the firm of Barkovich &

24  Yap, Inc. (B&Y), who shall be responsible for conducting  independent reviews and determination

25  of claims as requested by any Settlement Class Member, subject to Court approval.

26  All references herein to sections, paragraphs, and exhibits refer to sections, paragraphs and

27  exhibits to this Revised Agreement, unless otherwise expressly stated.

28

LINER LLP
1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024-3518

Capitalized terms used in this Revised Agreement, but not defined above, shall have the meaning ascribed to them in this Revised Agreement and the exhibits attached hereto.

## III. GENERAL TERMS AND CONDITIONS OF SETTLEMENT

### A. Certification of Settlement Class

For purposes of ~~Settlement~~settlement only, and not for purposes of liability, and subject to Court approval, the Parties hereby stipulate to the certification of a class in this Action, pursuant to California Code of Civil Procedure Section 382, and California Rules of Court Rules 3.764(e) and 3.769(d), with members of the certified Class to comprise only those persons defined herein as the Settlement Class.

### B. Settlement Subclasses

The Settlement Class is comprised of the following 7 Subclasses:

~~Tiered Billing~~ (i) Overbilled Subclass: ~~all residential~~; (ii) Incorrect Fee Subclass; (iii) Unrefunded Balance Subclass; (iv) Solar Subclass; (v) Premise Condition/Estimated Bill Subclass; (vi) Automatic Bill Payment/Bank Overdraft Charge Subclass; and ~~commercial customers of LADWP who were billed and paid for electricity or water usage at tiered rates higher than those rates that would otherwise have been used to bill these customers pursuant to the applicable City Ordinances. The Tiered Billing Subclass does not include, and, therefore, does not release, claims based on the allegation that the LADWP assessed tiered billing without obtaining actual monthly meter reads and without providing monthly bills to its customers in violation of the applicable Ordinances or claims for violations of California's Bane Act~~(vii) Omnibus Subclass.

#### 1. ~~Trend Estimate~~Overbilled Subclass:

The Overbilled Subclass is comprised of all ~~residential and commercial~~ LADWP customers ~~of LADWP who paid electricity or water and sewer bills~~ that were ~~incorrectly estimated due~~overbilled as a result of being charged an incorrect rate, incorrect amount of consumption, incorrect utility tax rate or who did not have a discount applied.

---

38457.025-3494420

LINER LLP
1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024-3518

LINER LLP
1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024-3518

2.    **Incorrect Fee Subclass**

The Incorrect Fee Subclass is comprised of all LADWP customers that were charged an incorrect fee, including but not limited to ~~a defect in the Trend Estimation Algorithm used to compute these estimates~~late payment fees, reconnect fees and/or start service fees.

3.    ~~Closed Account with Credit~~**Unrefunded Balance Subclass:**

The Unrefunded Balance Subclass is comprised of all ~~residential and commercial~~ LADWP customers ~~of LADWP who~~that: (i) have "Closed Accounts" with credit balances and (ii) are owed refunds that have been withheld by the LADWP during the period of September 3, 2013 to the present.

4.    **Solar Subclass**

All LADWP customers that have installed solar systems and applied to participate in the Solar Photovoltaic Incentive Program from February 13, 2010 to date and: (i) experienced delay beyond 30 days after submission of a complete Incentive Application and Supporting Documentation and/or indication that the solar system was fully permitted and ready for inspection in receiving a reservation confirmation and/or connecting the solar system; and/or (ii) have not been billed for energy consumed and/or generated; and/or (iii) have not been credited for excess energy generated by the customer's solar power system.

5.    **Premise Condition/Estimated Bill Subclass:**

The Premise Condition/Estimated Bill Subclass is comprised of all ~~residential and commercial~~ LADWP customers ~~of LADWP who~~that: (i) unbeknownst to the customer, had a premise condition that caused excessive consumption of water and/or power; (ii) received estimated bills for multiple billing periods after September 3, 2013; (iii) because of these estimated bills, were prevented from timely discovering the premise condition; and (iv) were charged for greater quantities of water, power or sewage than they otherwise would have been charged.

- ~~**Solar Customers Subclass:** all LADWP customers who have installed solar systems and applied to participate in the LADWP's solar incentive program from February 13, 2010 to date and: (i) experienced delay in the final approval process beyond 30 days after submission of a complete Incentive Application and Supporting Documentation and indication that the solar system was fully~~

1   ~~permitted and ready for inspection; and/or (ii) have not been properly billed for~~
2   ~~energy consumed and/or generated; and/or (iii) have not been properly credited~~
    ~~for excess energy generated by the customer's solar power system.~~

3   ### 6.   Automatic Bill Payment/Bank Overdraft Charge Subclass

4   The Automatic Bill Payment/Bank Overdraft Charge Subclass:_ is comprised of all
5   LADWP customers ~~who~~that: (i) were enrolled in an automatic bill payment plan with a bank and
6   (ii) were charged overdraft fees because the LADWP charged the customer an incorrect amount,
7   which, in turn, resulted in the customer's bank account being overdrawn.

8   ### 7.   ~~Late Payment Charge~~Omnibus Subclass:_ all

9   •—All LADWP customers ~~who were assessed an inaccurate Late Payment Charge.~~

10  •—~~Estimated Electric Bills with "Minimum Charge" Subclass: all LADWP~~
11  ~~residential and small commercial customers: (i) whose consumption was~~
    ~~estimated to be zero and (ii) who were, therefore, assessed a "Minimum~~
12  ~~Charge" on an electric bill when the actual usage was above the "Minimum~~
    ~~Charge."~~

13  ~~Omnibus Subclass: all LADWP residential and commercial customers~~ that believe that
14  they were: ~~-~~(i) incorrectly assessed a charge associated with their power, water, sewage or ~~trash~~
15  ~~collection~~sanitation services at any time from September 3, 2013 to the present, that is not covered
16  by any of the Subclasses listed herein; or (ii) otherwise damaged as a result ~~of~~from their
17  participation in the LADWP's solar incentive program at any time from February 13, 2010 to the
18  present~~, that is not covered by any of the other Subclasses listed herein.~~

19  A Settlement Class Member may be a member of one or more of the subclasses listed
20  above. Subject to the terms and conditions of this Revised Agreement, the Parties agree not to
21  oppose any efforts to certify such a class._ A certification pursuant to this paragraph shall not
22  constitute, in this or any other proceeding, an admission, finding or evidence that any requirement
23  for class certification is otherwise satisfied, except for the expressly enumerated purposes in this
24  Revised Agreement.

25  If the CC&B System Monitoring Expert identifies customers who have not been identified
26  as belonging to a subclass but who have received bills with billing errors, such customers will be
27  entitled to 100% credit (in the case of current customers) or refund (in the case of former
28  customers) of the overcharge or damage caused by the LADWP.

LINER LLP
1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024-3518

**B.C.    Settlement Relief**

In consideration for the dismissal of the Actions and the covenants arising under the terms of this Revised Agreement, the Parties hereby agree as follows:

### 1.    Monetary Relief

#### a.    Pre-Identified Non-Claims Made Subclass Members

The Parties agree that members of the:  (i) ~~Tiered Billing~~Overbilled Subclass; (ii) ~~Trend Estimate~~Incorrect Fee Subclass; (iii) ~~Closed Account with Credit~~Unrefunded Balance Subclass; and (iv) ~~Late Payment Charge~~ Solar Subclass~~; (v) Estimated Electric Bills with "Minimum Charge" Subclass; and (vi) those members of the Solar Customers Subclass who have not been properly credited for excess energy generated by the customer's solar power system~~ ("Pre-Identified Non-Claims Made Subclass Members") shall be pre-identified as members of each of these subclasses from the internal records of the LADWP and the methodology for identification shall be verified and tested for fairness and for reasonableness by the CC&B System Monitoring Expert.

The Parties further agree that the LADWP shall credit (in the case of current customers) or refund (in the case of former customers) 100% of any amounts that the LADWP overcharged or damaged "Pre-Identified Non-Claims Made Subclass Members" during the period September 3, 2013 through the present for electric, water, sewage, and sanitation customers, and during the period February 13, 2010 through the present for ~~participants in LADWP's solar incentive program who were not properly billed for energy consumed and/or generated or have not been properly credited for excess energy generated by the customer's solar power system.~~members of the Solar Subclass.  The amounts to be:  (i) credited to current customers; and (ii) refunded to former customers who are "Pre-Identified Non-Claims Made Subclass Members" shall be determined by the LADWP, and the methodology used to determine the amounts shall be verified for fairness and for reasonableness by the CC&B System Monitoring Expert and subject to Court approval.  In determining such amount, the LADWP shall calculate the amount to be credited or refunded by applying the applicable rates and recoverable actual customer usage data for the periods in question for each Subclass Member.  The Parties further agree that Pre-Identified Non-

1  Claims Made Subclass Members who do not timely exclude themselves as Class Members shall
2  automatically receive the amount of the credit or refund determined by the LADWP through this
3  process without the need to file a Claim Form.  The terms of any payment will be made as stated
4  in the Class Notice and the Credit/Refund Letter.  Any Pre-Identified Non-~Claims Made Subclass
5  Member may seek an independent review by the Special Master of the determination made by
6  LADWP as set forth in Section III.HI.5. herein.

7  <center>**b.**   **Pre-Identified Claims Made Subclass Members**</center>

8       The Parties agree that members of the:  (i) Premise Condition/Estimated Bill Subclass; and
9  (ii) Automatic Bill Payment/Bank Overdraft Charge Subclass and (iii) Solar Customer Subclass
10 who experienced delay in having the solar system energized ("Pre-Identified Claims Made
11 Subclass Members") shall be pre-identified as members of each of these subclasses from the
12 internal records of the LADWP through a methodology and process verified for fairness and for
13 reasonableness by the CC&B System Monitoring Expert.

14      The Parties agree that any member of the "Pre-Identified Claims Made Subclass" who
15 wishes to file a claim must timely complete and submit a valid Claim Form substantiated by the
16 documentary evidence specified in the Claim Form to the Court-appointed Claims Administrator.
17 The Claims Administrator shall be responsible for making an initial determination as to whether
18 such Claim Forms are complete and working with Pre-Identified Claims Made Subclass Members
19 who submit incomplete claims to satisfactorily complete the claims process.   The Claims
20 Administrator shall timely provide all completed claims to the Claims Processing Unit at
21 LADWP.

22      The Claims Processing Unit at LADWP shall examine all Claim Forms and supporting
23 documentation submitted in support thereof and determine if any refund or credit is due a Pre-
24 Identified Claims Made Subclass Member who has timely submitted a completed claim.   The
25 criteria used to determine the claims of the Pre-Identified Claims Made Subclass Members by the
26 Claims Processing Unit shall be independently evaluated by the CC&B System Monitoring Expert
27 to determine if they are fair and reasonable, subject to the Court's oversight and continuing
28 jurisdiction.

---

38457.025-3494420

Exhibit 2    21

In the event that the Claims Processing Unit at LADWP determines that a Pre-Identified Claims Made Subclass Member who has timely submitted a completed claim is due a refund or credit, the Claims Processing Unit at LADWP shall calculate the amount to be refunded, credited or otherwise paid to any member of the Pre-Identified Claims Made Subclass on the submitted claim.

The Parties agree that, subject to Court approval, the LADWP shall refund 100% of any: (i) amount the LADWP overcharged any member of the Premise Condition/Estimated Bill Subclass;_ and/or (ii) damages the LADWP caused any member of the Automatic Bill Payment/Bank Overdraft Charge Subclass to incur during the period September 3, 2013 through the present, both  or (iii) damages caused by the delay in energizing a Solar Customer Subclass member's solar power system as determined by the Claims Processing Unit at LADWP.

The Parties further agree that, subject to Court approval, LADWP shall refund 100% of any damages that the Claims Processing Unit at LADWP determines the LADWP caused any member of the Solar Customer Subclass to incur as a result of their participation in the LADWP's solar incentive program during the period February 13, 2010 through the present., Any Pre-Identified Claims Made Subclass Member may seek an independent review by the Special Master of any determinations made by LADWP as set forth in Section III.HI.5. herein.

<p style="text-align:center"><b>c.   Omnibus Subclass Members</b></p>

In recognition of the possibility that some LADWP customers who have not been "pre-identified" through LADWP's internal records may believe that they were overcharged or otherwise damaged as a result of the matters alleged in the Complaint:

Any current or former LADWP customers, whether "pre-identified" as a member of any Subclass, or not, who nevertheless believe they have been otherwise:  (i) overcharged -as a result of a billing error made by LADWP at any time since September 3, 2013; or (ii) damaged as a result of their participation in the LADWP's solar incentive program at any time since February 13, 2010, may file a Claim Form to recover such overcharge or damages.  A claim may be made for economic and non-economic damages which were proximately caused by a an overbilling error. Such claims can be asserted and will be considered through the claims process._  A

LINER LLP
1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024-3518

1    Settlement Class Member who wishes to pursue such a claim through a separate lawsuit or a

2    means, other than the claims process, can request exclusion from the Settlement Class pursuant to

3    Section IIII.H of this Revised Agreement.

4          The Parties agree that any member of the Omnibus Subclass who wishes to file a claim

5    must timely complete and submit a valid Claim Form substantiated by the documentary evidence

6    specified in the Claim Form to the Court-appointed Claims Administrator.  The Claims

7    Administrator shall be responsible for making an initial determination as to whether such Claim

8    Forms are complete and shall work with Omnibus Subclass Members who submit incomplete

9    claims to satisfactorily complete the claims process.  The Claims Administrator shall timely

10   provide all completed claims to the Claims Processing Unit at LADWP.

11         The Claims Processing Unit at LADWP shall examine all Claim Forms and supporting

12   documentation submitted in support thereof and determine whether any refund or credit is due an

13   Omnibus Subclass Member who has timely submitted a completed claim.  The criteria used to

14   determine the claims of the Omnibus Subclass Members by the Claims Processing Unit shall be

15   independently evaluated by the CC&B System Monitoring Expert to determine they are fair and

16   reasonable, subject to the Court's oversight and continuing jurisdiction.

17         In the event that the Claims Processing Unit at LADWP determines that an Omnibus

18   Subclass Member who has timely submitted a completed claim is due a refund or credit, the

19   Claims Processing Unit at LADWP shall calculate the amount to be refunded, credited or

20   otherwise paid to any member of the Omnibus Subclass on the submitted Claim.

21         The Parties agree that, subject to Court approval, the LADWP shall refund 100% of any

22   amount the LADWP damaged or overcharged any member of the Omnibus Subclass arising from

23   the allegations in the Complaint, during the period September 3, 2013 through the present, as

24   determined by the Claims Processing Unit at LADWP.

25         The Parties further agree that, subject to Court approval, LADWP shall refund 100% of

26   any damages that the Claims Processing Unit at LADWP determines the LADWP caused any

27   member of the Omnibus Subclass to incur as a result of their participation in the LADWP's solar

28   incentive program during the period February 13, 2010 through the present.  Any Omnibus

38457.025-3494420                        Exhibit 2    23
REVISED CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

1  Subclass Member may seek an independent review by the Special Master of any determinations

2  made by LADWP as set forth in Section III.HI.5 herein.

<div align="center">

d.  **Timing Ofof Payment**
</div>

4       All monetary compensation to be paid out under this SettlementRevised Agreement will be

5  paid out as follows:

6                 i.     Pre-Identified Non-Claims Made Subclass Members will be

7  paid out by not later than seven months following the Effective Date; and

8                 ii.     Pre-Identified Claims Made Subclass Members (as defined at

9  Section III.B.1.b. below) or Omnibus Subclass Members will be paid out by not later than seven

10  months following expiration of the Claim Period.

<div align="center">

e.  **Uncashed Andand Returned Checks**
</div>

12       The funds for any returned or uncashed checks issued to Settlement Class Members will be

13  held for one year following the expiration of the Remediation Period to correct any errors that may

14  arise in the distribution of the Settlement refunds.  After that time and subject to Court approval,

15  any uncashed refund checks shall be paid to Share Project, as administered by the United Way,

16  which is designed for low-income and elderly unemployed LADWP residential customers, who

17  are not eligible for other aid or welfare assistance, to meet their energy and water needs.

<div align="center">

2.  **Remedial Relief and Corrective Actions**
</div>

19       In addition to providing the foregoing monetary consideration, the Parties also hereby

20  agree that the LADWP will undertake the following remedial and corrective measures in

21  connection with the Settlement:

LINER LLP
1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024-3518

a.   **Create and Adopt CC&B System Performance Metrics and Perform Work Necessary to Achieve and Maintain Compliance with these Metrics**

While the LADWP has already undertaken certain remedial measures to stabilize the performance and functioning of the CC&B System, the LADWP hereby agrees that it will appropriate and expend an additional twenty-million dollars ($20 million) over the eighteen-month CC&B System Remediation Period provided for by this Settlement to retain CC&B System consultants and software engineering consultants including, but not limited to Oracle Corp., to assist the LADWP in remediating and stabilizing the LADWP's CC&B System to ensure that the CC&B System generates and delivers timely and accurate customer bills.

In addition, to further enhance customer service and ensure timely delivery of accurate customer bills, Defendant agrees that it will also deploy the human and financial resources necessary to enable the LADWP to meet, or exceed, the following thirteen objective performance bench marks on the schedule required by this Revised Agreement:

(1)   **Backlogged Field Investigation Cases Customer High/Low Bill Inquiries**

Since the implementation of the CC&B System, the number of field investigation cases has increased and has exceeded the ability of LADWP to process these field investigation cases in a timely manner.  To further enhance customer service and to ensure accurate and timely billing of customers, LADWP commits to working and completing customer high bill and low bill inquiry cases and to do tasks within the service level goals.  Customer high bill and low bill inquiries are tracked in field investigation cases and to do task lists.  The High/Low bill field investigation cases and to do's along with other relevant tasks will be tracked and the service level reported:

- Electric High Bill Complaint for Field Investigation          CM_FIEHB
- Electric Low Bill Complaint for Field Investigation           CM_FIELB
- Water High Bill Complaint for Field Investigation            CM_FIWHB
- Water Low Bill Complaint for Field Investigation             CM_FIWLB

The Department will meet or exceed the following metrics.

**On Time Rate** – The percentage of field investigation cases and To Do tasks that were

LINER LLP
1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024-3518

completed during the month that were within 30 days of the field investigation being created.

**Oldest Order** – The age of the oldest field investigation case and To Do task measured from the date of the field investigation being created to the date that the task was completed.

A) After 180 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 50% |
| Oldest Open FI case or To Do | The age of the oldest field investigation case and To Do task measured from the date of the field investigation being created to the date that the task was completed. | < 90 days |

B) After 360 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 75% |
| Oldest Open FI case or To Do | The age of the oldest field investigation case and To Do task measured from the date of the field investigation being created to the date that the task was completed. | < 75 days |

C) After 540 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 95% |
| Oldest Open FI case or To Do | The age of the oldest field investigation case and To Do task measured from the date of the field investigation being created to the date that the task was completed. | < 60 days |

**(2)    Backlogged Field Investigation Cases with Billing Instructions**

Since the implementation of the CC&B System, the number of field investigation cases and to do tasks has increased and has exceeded the ability of LADWP to process these field investigation cases in a timely manner.  Customer requests are tracked in field investigation cases and to do task lists. To further enhance customer service and to ensure accurate and timely billing of customers, LADWP commits to working and completing field investigation cases with billing instructions cases and to do tasks within the service level goals.  The field investigation cases with billing instructions cases and to do tasks along with other relevant tasks will be tracked and the service level reported:

- Account Service FI To Do                          CM_FIASU

The Department will meet or exceed the following metrics.

**On Time Rate** – The percentage of field investigation cases and To Do tasks that were completed during the month that were within 30 days of the field investigation being created.

**Oldest Order** – The age of the oldest field investigation case and To Do task measured from the date of the field investigation being created to the date that the task was completed.

A) After 180 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 50% |
| Oldest Open FI case or To Do | The age of the oldest field investigation case and To Do task measured from the date of the field investigation being created to the date that the task was completed. | < 90 days |

B) After 360 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within | > 75% |

38457.025-3494420

Exhibit 2    27

| 1 | | the initial service window. | |
|---|---|---|---|
| 2 3 4 | Oldest Open FI case or To Do | The age of the oldest field investigation case and To Do task measured from the date of the field investigation being created to the date that the task was completed. | < 75 days |

C) After 540 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 95% |
| Oldest Open FI case or To Do | The age of the oldest field investigation case and To Do task measured from the date of the field investigation being created to the date that the task was completed. | < 60 days |

**(3)    Backlogged Field Investigation Cases Cut-in-Flat and Defective**

Since the implementation of the CC&B System, the number of field investigation cases and to do tasks has increased and has exceeded the ability of LADWP to process these field investigation cases in a timely manner.  LADWP field crews report unmetered electric services that are cut-in-flat, unmetered water service that has a spacer and defective meters.  To ensure accurate and timely billing of the customer, LADWP needs to install working meters by either replacing defective meters or working with the customers to resolve the issue necessitating service to be unmetered.  The field investigation cases and to do's along with other relevant tasks will be tracked and the service level reported:

- Electric Cut Flat Investigation for FI          CM_FIECF
- Electric Defective Meter Investigation for FI     CM_FIEDF
- Pending Cut Flat or Spacer Case for FI          CM_FIPCS
- Pending Defective Meter Case for FI            CM_FIPDM
- Water Defective Meter Investigation for FI       CM_FIWDF
- Water Spacer Investigation for FI              CM_FIWSP

The Department will meet or exceed the following metrics.

**On Time Rate** – The percentage of field investigation cases and To Do tasks that were completed during the month that were within 30 days of the field investigation being created.

**Oldest Order** – The age of the oldest field investigation case and To Do task measured from the date of the field investigation being created to the date that the task was completed.

A) After 180 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 50% |
| Oldest Open FI case or To Do | The age of the oldest field investigation case and To Do task measured from the date of the field investigation being created to the date that the task was completed. | < 90 days |

B) After 360 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate case or To Do | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 75% |
| Oldest Open FI case or To Do | The age of the oldest field investigation case and To Do task measured from the date of the field investigation being created to the date that the task was completed. | < 75 days |

C) After 540 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 95% |
| Oldest Open FI | | < 60 days |

38457.025-3494420

Exhibit 2    29

LINER LLP
1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024-3518

### (4)   Backlogged Field Investigation Cases with Other Issues

Since the implementation of the CC&B System, the number of field investigation cases and to do tasks including final inspection of residential solar systems for participation in the solar incentive program has exceeded the ability of the Department to process these field investigation cases in a timely manner.  This metric tracks the field investigation cases and to do's not tracked in other field investigation metrics.  These field investigation cases and to do's will be tracked and the service level reported:

- Electric Why High Investigation for FI          CM_FIEWH
- Electric Why Low Investigation for FI           CM_FIEWL
- Electric Classification Survey Investigation for FI     CM_FIECS
- Electric Meter Survey Switch Investigation for FI     CM_FIEMS
- Electric Rate Survey Investigation for FI        CM_FIERS
- Electric Service Investigation for FI            CM_FIESI
- Electric Meter Survey Serves Investigation for FI     CM_FIESS
- Pending Meter Survey Case for FI               CM_FIPSV
- Water Why High Investigation for FI            CM_FIWWH
- Water Why Low Investigation for FI             CM_FIWWL
- Water Classification Survey Investigation for FI      CM_FIWCS
- Water Meter Survey Switch Investigation for FI      CM_FIWMS
- Water Rate Survey Investigation for FI           CM_FIWRS
- Water Service Investigation for FI              CM_FIWSI
- Water Meter Survey Serves Investigation for FI      CM_FIWSS
- Request for Meter Survey                       CMMTRSUR

The Department will meet or exceed the following metrics.

**On Time Rate** – The percentage of field investigation cases and To Do tasks that were completed during the month that were within 30 days of the field investigation being created.

**Oldest Order** – The age of the oldest field investigation case and To Do task measured

LINER LLP
1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024-3518

from the date of the field investigation being created to the date that the task was completed.

A) After 180 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate case or To Do | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 25% |
| Oldest Open FI | The age of the oldest field investigation case and To Do task measured from the date of the field investigation being created to the date that the task was completed. | < 90 days |

B) After 360 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 50% |
| Oldest Open FI case or To Do | The age of the oldest field investigation case and To Do task measured from the date of the field investigation being created to the date that the task was completed. | < 75 days |

C) After 540 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 90% |
| Oldest Open FI case or To Do | The age of the oldest field investigation case and To Do task measured from the date of the field investigation being created to the date that the task was completed. | < 60 days |

### (5)   Backlogged Field Services Field Activities

New customers as well as existing customers who wish to start service at a new address or existing customers who wish to stop service at their existing address contact LADWP to request the utility services be connected or disconnected. _LADWP will schedule a Field Service representative to visit the ~~customer's~~customer's premise and start or stop the service and obtain a meter read, which is used for the opening or closing bill. The field service field activities are tracked and the service level reported:

The Department will meet or exceed the following metrics.

**On Time Rate** – The percentage of field service field activities that were completed during the month that were within 1 business day of the customer requested date for start service and 10 business day of the customer requested date for stop service.

A) After 180 Days

| Metric | Description | Service Goals |
|--------|-------------|---------------|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 75% |

B) After 360 Days

| Metric | Description | Service Goals |
|--------|-------------|---------------|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 85% |

C) After 540 Days

| Metric | Description | Service Goals |
|--------|-------------|---------------|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 95% |

LINER LLP
1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024-3518

## (6) Defective Meters

LADWP field crews report unmetered electric and water services that have defective meters. To ensure accurate and timely billing of the customer, LADWP needs to install working meters by replacing defective meters. The replacement of defective meters will be tracked and the service level reported:

The Department will meet or exceed the following metrics.

**On Time Rate** – The percentage of field activities to replace defective meters that were completed during the month that were within 90 days of the date the defective meter was first reported.

A) After 180 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 25% |
| Oldest Open Defective Meter | | < 180 days |

B) After 360 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 50% |
| Oldest Open Defective Meter | | < 150 days |

C) After 540 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 90% |
| Oldest Open Defective Meter | | < 120 days |

1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024-3518
LINER LLP

### (7)    Cut In Flat Electric Meters and Spacer on Water Meters

LADWP field crews report unmetered electric service that are cut-in-flat and unmetered water service that has a spacer. To ensure accurate and timely billing of the customer, LADWP needs to work with the customers to resolve the issue necessitating service to be unmetered. The tasks to install meters on unmetered services will be tracked and the service level reported: The Department will meet or exceed the following metrics.

**On Time Rate** – The percentage of field activities to install meters on unmetered services that were completed during the month that were within 90 days of the date the defective meter was first reported.

A) After 180 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 25% |
| Oldest Open Cut-In-Flat or Spacer | | < 180 days |

B) After 360 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 50% |
| Oldest Open Cut-In-Flat or Spacer | | < 150 days |

C) After 540 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 90% |
| Oldest Open Cut-In-Flat or Spacer | | < 120 days |

LINER LLP
1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024-3518

(8) **Backlogged Meter Reread Field Activities**

To further enhance customer service and to ensure accurate and timely billing of the customer, LADWP commits to meeting meter reread field activity service level goals. LADWP customers who have an outstanding meter read because: (1) a high low billing exception has occurred and the biller requests a re-read to verify consumption, (2) the customer has requested a re-read of their meter to verify consumption, or (3) the meter reader was unable to gain access to the property to read the meter. The meter re-read field activities will be tracked and the service level reported:

The Department will meet or exceed the following metrics.

**On Time Rate** – The percentage of meter reread field activities that were within 15 days of the date the defective meter was first reported.

A) After 180 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 50% |

B) After 360 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 75% |

C) After 540 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 95% |

(9) **Backlogged Field Collections Field Activities**

To further enhance customer service and to avoid creating a hardship for a customer by allowing them to become over extended by exceeding their ability to pay, LADWP commits to meeting field collection field activity service level goals to reconnect service after payment or sever service for non-payment in a timely manner.  The collection activity will be in compliance with the LADWP field collection policy at the time the collection is attempted.  The field collection field activities will be tracked and the service level reported:

The Department will meet or exceed the following metrics.

**On Time Rate** – The percentage of field collection field activities that were within 30 days of the date the defective meter was first reported.

**Oldest Order** – The age of the oldest field collection field activity measured from the date the field can first be worked.

A) After 180 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 25% |
| Oldest Open field collection field activity | | < 90 days |

B) After 360 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 50% |
| Oldest Open field collection field activity | | < 75 days |

C) After 540 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the | > 90% |

38457.025-3494420

Exhibit 2   36

REVISED CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

LINER LLP
1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024-3518

| | | |
|---|---|---|
| | initial service window. | |
| Oldest Open field collection field activity | | < 60 days |

**(10)  Backlogged Water And Power Distribution Meter Exchange**

To further enhance customer service and to ensure accurate and timely billing of the customer, LADWP commits to meeting water and power meter exchange field activity service level goals. The meter exchange field activities will be tracked and the service level reported: The Department will meet or exceed the following metrics.

**On Time Rate** – The percentage of meter exchange field activities that were within 30 days of the date the exchange was scheduled for completion.

**Oldest Order** – The age of the oldest meter exchange field activity measured from the date the field activity was scheduled for completion.

A) After 180 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 25% |
| Oldest Open Meter Exchange | | < 90 days |

B) After 360 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 50% |
| Oldest Open Meter Exchange | | < 75 days |

1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024-3518
LINER LLP

C) After 540 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 90% |
| Oldest Open Meter Exchange | | < 60 days |

### (11)   Backlogged Manually Generated Billing To Do's

To further enhance customer service and to ensure accurate and timely billing of customers, LADWP commits to working and completing billing error To Do tasks within the service level goals. The billing To Do tasks will be tracked and the service level reported: The Department will meet or exceed the following metrics.

**On Time Rate** – The percentage of billing To Do tasks that were completed within 30 days of the date the To Do task was first created.

A) After 180 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of billing To Dos completed within the 30 day service window. | > 25% |

B) After 360 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of billing To Dos completed within the 30 day service window. | > 50% |

C) After 540 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of billing To Dos completed within the 30 day service window. | > 95% |

### (12)   Premise Management

The Premise Management Group will be established primarily to aid customers who have newly installed permanent services, which have not been entered into the CC&B system, and who are therefore not receiving bills.

The Department will establish a premise management group to manage the addition of new premises and services within the LADWP service territories.  The premise management group will be established within 60 days of final approval of the Settlement.

### (13)   Customer Service Call Times And Responses:

To further enhance customer service, the LADWP commits to meeting a monthly Average Speed of Answer ("ASA") in both their residential and commercials call centers as called out below.  The ASA is the average amount of time it takes for a call to be answered in the call centers during the month.  This includes the amount of time callers wait in the automatic call director ("ACD") queue after navigating through the IVR until the agent answers the phone.  It also does not include callers who use a self-service IVR option and never reach the ACD queue.

A) After 180 Days

| Metric | Description | Service Goals |
|---|---|---|
| Average Speed of Answer | Average Speed of Answer (ASA) is a call center metric for the average amount of time it takes for calls to be answered in a call center during a specific time period. | < 5 min |

B) After 360 Days

| Metric | Description | Service Goals |
|---|---|---|
| Average Speed of Answer | Average Speed of Answer (ASA) is a call center metric for the average amount of time | < 4 min |

LINER LLP
1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024.3518

| Answer . | it takes for calls to be answered in a call center during a specific time period. | |

C) After 540 Days

| Metric | Description | Service Goals |
|---|---|---|
| Average Speed of Answer | Average Speed of Answer (ASA) is a call center metric for the average amount of time it takes for calls to be answered in a call center during a specific time period. | < 3 min |

### b.   Appointment of Independent CC&B System Monitoring Expert

In furtherance of the LADWP's goal of restoring customer confidence and the public's trust and confidence in the LADWP's ability to deliver timely and accurate customer bills and a level of customer service that consistently meets or exceeds industry standards, the Parties further agree that Plaintiff Jones ~~will retain~~ has retained the services of a nationally recognized CC&B consulting expert, Paul Bender of Paul Bender Consulting, to: verify data; establish that the mechanism for identifying affected accounts is accurate and reliable; independently evaluate the criteria used to process the claims; and monitor the CC&B remediation efforts and corrective actions undertaken by the LADWP and its independent CC&B consultants during the ~~18-month~~ Remediation Period, subject to the Court's oversight and continuing jurisdiction.

The CC&B System Monitoring Expert is comprised of a team of senior professionals with extensive experience in information technology and programming, quality assurance and CC&B functionality and solution architecture.   The CC&B System Monitoring Expert is owned and operated by Paul L. Bender.   Mr. Bender, who earned an MBA from Boston University and is a Certified Public Accountant, has 30 years of financial management and consulting experience, including 20 years as Chief Financial Officer for two large municipal natural gas, water and waste water utilities (City of Richmond Public Utilities from 1986-1997 and District of Columbia Water and Sewer Authority from 1997-2005).   As a Chief Financial Officer, Mr. Bender successfully implemented the entire range of financial, customer service and information technology systems (i.e., CIS, AMR/AMI, call center), and restructured financial and customer service operations to

LINER LLP
1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024-3518

1  stabilize systems, to achieve Board of Directors and City Council objectives, and to meet industry

2  standards.   Mr. Bender's most significant and relevant accomplishment as a Chief Financial

3  Officer involved the successful remediation of a failed CC&B system implementation by

4  Pricewaterhouse Coopers, LLP at the Water Department for the City of Cleveland.  As a result of

5  the efforts undertaken by Mr. Bender, and the same team of individuals that Mr. Bender has tasked

6  to work on the LADWP CC&B remediation project, Mr. Bender and his team were able to achieve

7  virtually 100% meter reading accuracy and customer billings with industry-leading customer

8  service survey ratings.  Mr. Bender's credentials and experience, as well as the credentials and

9  experience possessed by the individuals assisting Mr. Bender in his work on the LADWP CC&B

10  remediation project, are detailed in the exhibits to the Supplemental Declaration of Paul L. Bender

11  in Further Support of Plaintiffs' Motion for Preliminary Approval (the "Supplemental Bender

12  Decl.").

13        The Parties further agree that the CC&B System Monitoring Expert has been, and will

14  continue to be afforded reasonable access to the LADWP's CC&B System and its CC&B System

15  remediation plan and, has been and will continue to be routinely permitted to interview LADWP's

16  IT staff assigned to the CC&B System remediation project and CC&B System consultants

17  working on the remediation project for the purpose of monitoring the resources devoted to the

18  remediation project and LADWP's progress toward meeting or exceeding the metrics specified in

19  Section III.BC.2.a. above.  The Parties hereto further agree that the CC&B System Monitoring

20  Expert willhas already provided, and will continue to provide independent, detailed written

21  quarterly reports to Class Counsel, Defense Counsel, the LADWP Board of Commissioners, the

22  Executive Management of the LADWP, and the Office of Public Accountability, detailing itshis

23  quarterly findings.

24        The Parties further agree that Class Counsel shall be responsible for preparing and filing

25  quarterly status reports with the Court that inform the Court of the CC&B System Monitoring

26  Expert's quarterly findings.  The quarterly reports prepared by the CC&B System Monitoring

27  Expert will also be attached as Exhibits to the Status Reports to the Court.  *The Report of the*

28  *Independent CC&B System Monitor Concerning Status of Class Action Settlement for the First*

LINER LLP
1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024-3518

1 | *and Second Quarters of 2016,* dated July 14, 2016, was filed with the Court on or about July 14,

2 | 2016. LADWP agrees to pay Class Counsel the costs of the CC&B System Monitoring Expert

3 | based on invoices submitted through Class Counsel. Given that the CC&B System Monitoring

4 | Expert has begun its evaluation, LADWP agrees that invoices may be submitted and, upon

5 | approval, paid prior to Preliminary or Final Approval of the Revised Agreement.

### c. Independent CC&B System Audits to Confirm Accuracy of CC&B System

In furtherance of the LADWP's goal to restore customer and public trust and confidence in the LADWP's ability to deliver accurate and timely customer bills and to consistently deliver customer service that meets or exceeds industry standards, the Parties hereto further agree that, at the conclusion of the 18-month Remediation Period, the performance capabilities, including the ability of the CC&B System to consistently deliver timely and accurate customer bills, shall be audited by the CC&B System Auditor at LADWP's cost. This initial audit report will be completed immediately following the 18-month Remediation Period.

The results of the independent CC&B System audit conducted at the end of the 18-month Remediation Period shall be set forth in a detailed audit report that will be provided to the LADWP Board of Commissioners, the General Manager of the LADWP, the Office of Public Accountability, Class Counsel, and Defense Counsel.

The Parties further agree that 18 months *after* the conclusion of the 18-month Remediation Period, the performance capabilities, including the ability of the CC&B System to consistently deliver timely and accurate customer bills, shall be audited by the CC&B System Auditor for a second time at LADWP's cost. The purpose of this second audit shall be to determine and report on whether the CC&B System continues to consistently deliver timely and accurate customer bills 18 months after the Remediation Period has been concluded.

The results of this second independent CC&B System audit shall also be set forth in a detailed audit report that will be provided to the LADWP Board of Commissioners, the General Manager of the LADWP, the Office of Public Accountability, Class Counsel, and Defense Counsel.

The Parties further agree that, in the event that the second independent audit confirms that the LADWP is in substantial compliance with its obligations arising under this Revised Agreement, LADWP's obligations under the Settlement will terminate upon the LADWP's Board of Commissioners approving the second audit and the Court issuing a final order terminating the litigation. In addition, the Parties agree that Class Counsel will have access to confirmatory discovery for the purpose of assessing the LADWP's compliance, or lack thereof, with LADWP's obligations arising under this Revised Agreement until such time as the Court issues an Order terminating the litigation.

The Parties further agree that Class Counsel shall be responsible for preparing and filing status reports with the Court that inform the Court of the results of the initial and second independent CC&B System audits. The independent audit reports prepared by the CC&B System Auditor will also be attached as Exhibits to all such Status Reports to the Court.

> **d.** **Create and Implement Internal Billing "Tiger Team" To Address Unique or Complex Billing Issues**

In recognition of the fact that certain types of customer bills often require a heightened level of customer service, and in furtherance of the LADWP's goal to deliver accurate and timely bills to all of its customers, including those customers who require a heightened level of customer care and service, the Parties hereby agree that the LADWP ~~will establish~~has established and is in the process of fully ~~staff~~staffing a "Tiger Team" with not less than ten customer service representatives who have extensive training and experience in complex billing matters to address escalated or complex customer billing concerns.

The LADWP ~~will work~~has worked with Class Counsel to develop internal guidelines and a process for identifying and escalating all highly complex customer billing issues to ensure that all customers, including those customers with extremely complex bills, receive the level of customer care necessary to timely resolve any and all billing issues.

The Tiger Team ~~will~~has become a permanent unit within the LADWP's Customer Service organization and will be ~~established and~~ fully staffed within 60 days of the Settlement being ~~finally~~preliminarily approved by the Court.

LINER LLP
1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024-3518

e.     **Create and Implement Information Technology Department Project Management Office**

In recognition of the fact that the LADWP is the largest municipal utility in the United States and is anticipated to be replacing and/or significantly upgrading significant portions of its information technology infrastructure over the course of the next several years, the Parties agree that the LADWP will permanently establish a Project Management Organization ("PMO") within six months of the Court ~~finally~~preliminarily approving the Settlement.   The PMO will be responsible for managing and implementing all aspects of all future significant information technology projects undertaken by the LADWP.

To ~~create~~properly staff and manage the PMO, the Parties further agree that the LADWP ~~will seek the necessary authority to create an exempt~~ has created a position that ~~will be~~ titled ~~"Chief Project Manager." Upon approval~~Director of ~~this exempt position, the LADWP will then seek authority to conduct a national~~Corporate Program Management," conducted a recruiting campaign ~~to recruit~~and ~~hire~~recruited and hired the most qualified candidate available.   ~~Once hired, the Chief Project Manager~~The Director of Corporate Program Management will report directly to the LADWP's Chief Administrative Officer.

The Parties further agree that the PMO organization shall be organized, staffed and managed so as to ensure continuity and adherence to then-current industry best practices.   ~~The PMO will~~In addition to the Director of Corporate Program Management the PMO will also be staffed with at least three Senior Project Managers who will be selected through a competitive process by, and report directly to, the LADWP's ~~Chief Project Manager.~~Director of Corporate Program Management.   Each of the three Senior Project Managers will be assigned various IT related projects to be undertaken by the LADWP and will be responsible for assembling Project Teams of varying size and membership.   Each Project Team will be staffed with qualified individuals drawn from the LADWP's Customer Service Division, IT Division, Field Services, Water Services, Power Services, Financial Services Organization, external consultants and in-house or outside legal counsel, as appropriate to ensure the successful implementation and completion of each IT related project undertaken by the LADWP.

LINER LLP
1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024-3518

### f. Amend Rule 17 of the Rules Governing Water and Electric Service

The Parties recognize and agree that:

i. the timely issuance and collection of accurate customer bills is a cornerstone of sound business practices at the LADWP;

ii. as a matter of fairness and customer relations, the LADWP is responsible for timely and accurate billing;

iii. receiving accurate bills at regular intervals in accordance with applicable rules is a basic LADWP customer right;

iv. the LADWP's failure to issue a bill, as well as issuing an estimated bill due to circumstances within the LADWP's control, may constitute a billing error in certain circumstances; and

v. in the situations where the LADWP has not issued timely or accurate bills and has nevertheless undertaken to retroactively collect such bills to bring customer accounts current, the LADWP may have created a hardship for its customers.

In recognition of the fact that the LADWP is committed to the issuance of timely and accurate bills to its customers and, pursuant to the terms of this Settlement, the Parties agree that the Board of Commissioners of the LADWP will amend Rule 17 of the Rules Governing Water and Electric Service ("Rule 17") to provide in relevant part:

#### 1. Residential Customers

The Department will not back-bill its Residential Customers for a period of time in excess of ~~270 days from the date the back-bill is generated.~~ (i) 3 billing cycles for customers billed bi-monthly or (ii) 6 billing cycles for customers billed monthly, from the date of the last regular read within the customer's most recent billing cycle.

~~When a Department error in billing is discovered on a Residential Customer's account and the date of its occurrence can be determined, the overcharge or undercharge will be computed back to but not beyond that date, but not in any event exceeding four years from the date the corrected bill is generated.~~

The foregoing back billing limitation is not applicable to:- (i) "back-dated service connection"; (ii) energy theft; (iii) water theft; (iv) illegal diversion; (v) fraud; (vi) customer refusing access; and (vii) all instances where delay or error in billing is solely attributable to customer action or inaction which serves to impede LADWP's ability to conduct its business.

#### 2. Commercial Customers

LINER LLP
1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024-3518

1  ~~When a Department error in billing is discovered on a Commercial Customer's account and the date of its occurrence can be determined, the overcharge or undercharge will be computed back to, but not beyond that date, but not in any event exceeding four years from the date the corrected bill is generated.~~

4  ~~The foregoing provision is subject only to the "extreme hardship exception" which is only applicable to businesses that employ 25 or fewer employees ("Qualified Businesses"). Pursuant to the "extreme hardship exception," a Qualified Business may apply to the LADWP for additional time to pay the back-billed amount and such applications will be considered on a case-by-case basis by the LADWP.~~

8  <u>The Department will not back-bill its Commercial Customers for a period of time in excess of (i) 3 billing cycles for customers billed bi-monthly or (ii) 6 billing cycles for customers billed monthly, from the date of the last regular read within the customer's most recent billing cycle.</u>

11 <u>The foregoing back billing limitation is not applicable to: (i) "back-dated service connection"; (ii) energy theft; (iii) water theft; (iv) illegal diversion; (v) fraud; (vi) customer refusing access; and (vii) all instances where delay or error in billing is solely attributable to customer action or inaction which serves to impede LADWP's ability to conduct its business.</u>

15      The Parties hereto <u>also</u> agree that all residential <u>and commercial</u> customers that have been

16 Back-Billed ~~on~~<u>at any time since</u> September 11, 2015 ~~or thereafter~~<u>through November 18, 2016</u> will

17 be credited for any amounts billed in excess of ~~270 days~~<u>3 billing cycles for those customers billed</u>

18 <u>bi-monthly, or 6 billing cycles for those customers billed monthly</u>. The Parties also agree that all

19 residential and commercial customers who receive a Back-Bill between the dates of September 3,

20 2013 and the close of the Remediation Period shall have a period of four years from the date on

21 which they receive the Back-Bill to pay the entirety of the Back-Billed amount only, in full,

22 without penalty or interest, in equal monthly installments. To qualify for the foregoing, customers

23 must remain current on their most recent bill. The Parties further agree that, in the event that any

24 residential or commercial customer fails to timely make any payments due of any portion of the

25 Back-Billed amounts in accordance with these terms, the entirety of the Back-Billed amount shall

26 immediately become due and payable.

27                 g.    <u>**Settlement Class Members Who Entered Into A Payment Arrangement Schedule With The LADWP Due To Receiving A Delayed Bill At Any Time From September 3, 2013 Through**</u>

**November 3, 201518, 2016 Who Have Outstanding Payment Arrangement Balances Due May Elect To Extend The Term of Their Payment Arrangement Schedule By One Additional Year**

The Parties agree that any Settlement Class Member who: -(i) has entered into a Payment Arrangement Schedule with the LADWP -at any time from September 3, 2013 through November 3, 201518, 2016, (ii) has an outstanding Payment Arrangement balance due, and (iii) is current on their Payment Arrangement payments, may elect to extend the term of their Payment Arrangement schedule by one additional year.

Qualified Settlement Class Members may extend the term of a Payment Arrangement schedule by one additional year by contacting the LADWP.

Once qualified Settlement Class Members have made this election, the LADWP will process all qualifying requests within thirty (30) days of such election having been made and will provide such Settlement Class Members with a new Payment Arrangement schedule that reflects the new terms and payment structure.

C.**D.**    **Class Notice Program**

Not later than 3090 business days after the entry of the Order granting Preliminary Approval, Class Counsel shall cause Class Notice to be disseminated as directed in the Order of Preliminary Approval as follows:

1.        **Mailed Class Notice**

Defendant shall directly mail, via United States First Class Mail, a long form noticeClass Notice to all those customers of LADWP for whom Defendant has street addresses and with whom Defendant routinely communicates via United States First Class Mail pursuant to customers' instructions in substantially the form of Exhibit A hereto. Prior to mailing the Class Notice, the National Change of Address Clearance database will be checked to verify updated address listings. The Mailed Class Notice shall:

a.        contain a short, plain statement of the background of the Action and the Settlement;

b.        describe the relief outlined in this Revised Agreement;

LINER LLP
1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024-3518

1      c.    state that any relief to Settlement Class Members is contingent on the

2      Court's final approval of the Settlement;

3      d.    inform Settlement Class Members that, if they do not exclude themselves

4      from the Settlement Class, they may be eligible to receive the relief under

5      the Settlement;

6      e.    inform Settlement Class Members that they may exclude themselves from

7      the Class by mailing to the Claims Administrator a written exclusion

8      request postmarked no later than ~~90~~30 days after the Class Notice Date;

9      f.    inform Settlement Class Members that they may object to the proposed

10      Settlement by mailing to the Claims Administrator a written statement of

11      objections no later than ~~90~~30 days after the Class Notice Date;

12      g.    inform Settlement Class Members that any Final Order and Judgment

13      entered, whether favorable or unfavorable to the Settlement Class, shall

14      include, and be binding on, all Settlement Class Members who have not

15      been excluded from the Class, even if they have objected to the Settlement;

16      h.    inform Settlement Class Members of the terms of the Release; and

17      i.    inform Settlement Class Members that they may seek an independent

18      review by the Special Master of any determinations made by LADWP and

19      provide instructions for how to do so;

20      j.    be made available, upon request, in the following languages in addition to

21      English:  Spanish; Chinese; Korean; Vietnamese; and Tagalog.

22      **2.**    **Emailed Class Notice**

23      Defendant shall send via email, a long form ~~notice~~Class Notice to all those customers of

24 LADWP for whom Defendant has email addresses and with whom Defendant routinely

25 communicates via email pursuant to customers' instructions in substantially the form of Exhibit A

26 hereto.  The Emailed Class Notice shall:

27      a.    contain a short, plain statement of the background of the Action and the

28      Settlement;

LINER LLP
1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024.3518

b.      describe the relief outlined in this Revised Agreement;

c.      state that any relief to Settlement Class Members is contingent on the Court's final approval of the Settlement;

d.      inform Settlement Class Members that, if they do not exclude themselves from the Settlement Class, they may be eligible to receive the relief under the Settlement;

e.      inform Settlement Class Members that they may exclude themselves from the Class by mailing to the Claims Administrator a written exclusion request postmarked no later than 9030 days after the Class Notice Date;

f.      inform Settlement Class Members that they may object to the proposed Settlement by mailing to the Claims Administrator a written statement of objections no later than 9030 days after the Class Notice Date;

g.      inform Settlement Class Members that any Final Order and Judgment entered, whether favorable or unfavorable to the Settlement Class, shall include, and be binding on, all Settlement Class Members who have not been excluded from the Class, even if they have objected to the Settlement;

h.      inform Settlement Class Members of the terms of the Release; and

i.      inform Settlement Class Members that they may seek an independent review by the Special Master of any determinations made by LADWP and provide instructions for how to do so;

j.      be made available, upon request, in the following languages in addition to English: Spanish; Chinese; Korean; Vietnamese; and Tagalog.

**3.    Published Class Notice**

Defendant shall cause a summary notice to be published in the form of Exhibit B hereto one time in *The Los Angeles Times* and one time in *La Opinion*. The Published Class Notice shall not be less than ¼ of a page. The Published Class Notice shall:

a.      contain a short, plain statement of the background of the Action and the

1               Settlement;

2        b.     describe the relief outlined in this Revised Agreement;

3        c.     inform Settlement Class Members that, if they do not exclude themselves

4               from the Settlement Class, they may be eligible to receive the relief under

5               the Settlement;

6        d.     inform Settlement Class Members that they may exclude themselves from

7               the Class by mailing to the Claims Administrator a written exclusion

8               request postmarked no later than 9030 days after the Class Notice Date;

9        e.     inform Settlement Class Members that they may object to the proposed

10            Settlement by mailing to the Claims Administrator a written statement of

11            objections no later than 9030 days after the Class Notice Date; and

12       f.     inform Settlement Class Members that any Final Order and Judgment

13            entered, whether favorable or unfavorable to the Settlement Class, shall

14            include, and be binding on, all Settlement Class Members who have not

15            been excluded from the Class, even if they have objected to the Settlement.

### 4. **Internet and Website Class Notice**

Class Notice of the Settlement will also be published on LADWP's website and on the Claims Administrator's website, which the Claims Administrator will maintain to facilitate the administration of the ~~settlement~~Settlement and to facilitate the online exchange of information with Class Members.

The Parties agree that the methods of Class Notice set forth in these Sections ~~C~~D.1.-~~C~~D.4. constitute the best form of ~~Notice~~notice to the Settlement Class that is practicable under the circumstances.

Defendant shall pay all costs and expenses associated with disseminating the ~~Notices~~Class Notice described herein.

### ~~D.~~E. **Release, Waiver and Covenant Not To Sue**

As of the Effective Date, and in consideration of this Revised Agreement and the benefits extended to the Settlement Class, Plaintiff Jones, on behalf of himself and the Settlement Class Members, and each Settlement Class Member, on behalf of himself or herself and his or her respective successors and assigns hereby fully releases and forever discharges the Released Parties from the Released Claims.

Plaintiff Jones, on behalf of himself and the Settlement Class Members, fully understands that if any fact relating to any matter covered by this Revised Agreement is later found to be other than, or different from, the facts now believed by Plaintiff Jones to be true, Plaintiff Jones, on behalf of himself and the Settlement Class Members, expressly accepts and assumes the risk of such possible differences in fact and acknowledge that this Revised Agreement shall nevertheless remain fully binding and effective.

Upon entry of the Final Order and Judgment, Plaintiff Jones shall have, and each and every Settlement Class Member shall be deemed to have, on behalf of the Settlement Class Member and the Settlement Class Members' respective successors and assigns, covenanted and agreed to:  (i) forever refrain from instituting, maintaining or proceeding in any action against the Released Parties with respect to any Released Claims; (ii) release and forever discharge the Released Parties from each and every such Released Claim; and (iii) this Revised Agreement being pleaded as a

LINER LLP
1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024-3518

1  full and complete defense to, and being used as the basis for a temporary restraining order or

2  preliminary or permanent injunction against, any action, suit or other proceeding which has been

3  or may be instituted, prosecuted, continued to be prosecuted, or attempted, asserting any Released

4  Claim.

5      In addition, Defendant hereby releases, discharges and waives any and all claims that

6  Defendant had or may have had, asserted or not, against Plaintiff Jones or Plaintiff Jones' counsel.

7  **E.F.   Confirmatory Discovery**

8      The Settlement is subject to Plaintiff Jones completing reasonable confirmatory discovery

9  including, but not limited to, any of the following:  (1) requesting that LADWP respond to and

10  produce documents responsive to a request by Plaintiff Jones for the information below and (2)

11  requesting that LADWP provide evidence from designated LADWP representatives in the subject

12  areas of requested inquiry:

13    ▪ Criteria used for identification of membership in each identified sub-class;

14    ▪ The internal methodology, criteria, queries used and data relied upon for the
       evaluation of all class members' accounts to determine credit or refund

15       eligibility and amount of credit or refund and validation protocols;

16    ▪ Reports and all data documenting the total payment of credits and/or refunds
       issued to customers and from ongoing remediation efforts;

17
      ▪ Remediation implementation protocols, progress reports, updates, and the
18       metrics generated from reporting; and

19    ▪ Such other items as are mutually agreed upon to confirm the fairness,
       reasonableness and adequacy of the Settlement.

20
   **F.G.   Non-Admission of Liability**
21
      This Revised Agreement is made for settlement purposes only, neither the fact of nor any
22
   specific provision contained in this Revised Agreement nor any action taken hereunder shall
23
   constitute, or be construed as, any admission of the validity of any claim or any fact alleged by
24
   Plaintiff Jones or by any other person included within the Settlement Class of any wrongdoing,
25
   fault, violation of law, or liability of any kind on the part of Defendant.  This Revised Agreement
26
   constitutes a compromise pursuant to California Evidence Code Section 1152(a).  It shall not be
27

28

LINER LLP
1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024-3518

1  offered or be admissible, either in whole or in part, as evidence against Defendant, except in any

2  action or proceeding to enforce its terms.

3       ~~G.~~**H.**   **Preliminary Approval**

4       Plaintiff Jones shall present this Revised Agreement to the Court ~~by way of a motion~~

5  seeking certification of the Settlement Class and preliminary approval of the Settlement reflected

6  in this Revised Agreement ~~(the "Motion for Preliminary Approval")~~ by no later than on November

7  ~~17, 2015, with an oral hearing on the motion set for December 21, 2015.~~18, 2016. Defendant shall

8  join in Plaintiff Jones' request for preliminary approval of this Revised Agreement and

9  certification of the Settlement Class.  The ~~Motion for Preliminary Approval~~Parties shall apply for

10  an order substantially in the form of Exhibit C hereto ("Preliminary Approval Order").   The

11  ~~Motion for Preliminary Approval~~Parties shall request an order that seeks, among other things:

12          a.   ~~consolidating~~ the consolidation of the *Jones*, *Bransford*, *Fontaine*, and

13               *Kimhi* Actions;

14          b.   ~~for~~ preliminary approval of this Revised Agreement;

15          c.   ~~for~~ certification, for settlement purposes, of the Settlement Class;

16        ~~d.~~   ~~for the appointment of Class Counsel and Liaison Counsel as counsel for~~

17               ~~the Settlement Class;~~

18        ~~e.~~   ~~for the appointment of Plaintiff Antwon Jones as the Class Representative~~

19               ~~of the Settlement Class;~~

20        ~~f.~~   ~~for the appointment of Plaintiff Yaar Kimhi as the Class Representative of~~

21               ~~the Solar Customers Subclass;~~

22        ~~g.~~   ~~for the appointment of Kurtzman Carson Consultants, LLC as Claims~~

23               ~~Administrator;~~

24        ~~h.~~   ~~for the appointment of Paul Bender of Paul Bender Consulting to serve as~~

25               ~~the CC&B System Monitoring Expert;~~

26        ~~i.~~   ~~for the appointment of Barbara R. Barkovich, Ph.D of the firm of Barkovich~~

27               ~~& Yap, Inc. to serve as Special Master;~~

28        ~~j.~~   ~~for the~~ d.   approval of the Notices in the form substantially similar to

LINER LLP
1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024-3518

1        those attached as Exhibits A and B hereto; and

2        k.   setting e.   a schedule for final approval of the Settlement.   .

3      H.I.   **Claims Process**

4        Settlement Class membership and the amount of monetary relief to which each Settlement

5 Class Member may be entitled will be accomplished by a process that includes: —(i) pre-

6 identification and/or (ii) self-identification of Settlement Class Members.  The date of mailing

7 Identification or Omnibus Subclass Letters will correspond to the date on the letters.

8        1.   **Pre-identification**

9        a.   **Pre-Identified Non-Claims Made Subclass Members**

10      Within sixty (60) days of the Notice Date, DefendantSimultaneous with the Class Notice

11 being provided, Defendant shall also provide each Pre-Identified Non-Claims Made Subclass

12 Member with a Credit/Refund Letter in substantially the form of Exhibit D hereto, either by

13 United States First Class Mail or email.  The Credit/Refund Letter shall identify those Settlement

14 Class Members that are included in the Pre-Identified Non-Claims Made Subclass and the amount

15 of monetary credit (if the Pre-Identified Non-Claims Made Subclass Member is a current LADWP

16 customer) or refund (if the Pre-Identified Non-Claims Made Subclass Member is a former

17 LADWP customer with a closed LADWP account) to which each Pre-Identified Non-Claims

18 Made Subclass Member is entitled, based on computations performed by Defendant and criteria

19 for those computations shall be verified for fairness and for reasonableness by the CC&B System

20 Monitoring Expert.

21      Defendant shall provide each Pre-Identified Non-Claims Made Subclass Member with a

22 Credit/Refund Letter in substantially the form of Exhibit D hereto, either by United States First

23 Class Mail or email during the 18-month Remediation Period.

24        Such Credit/Refund Letters shall indicate:— (a) the particular Subclass(es) in which each

25 Pre-Identified Non-Claims Made Subclass Member is included; (b) the amount of the monetary

26 credit or refund that each Pre-Identified Non-Claims Made Subclass Member is entitled; and (c)

27 instructions on how to opt-out, in the event that a Pre-Identified Non-Claims Made Subclass

28 Member wishes to exclude himself/herself from the Settlement Class.  Such Credit/Refund Letters

1    shall further state that, in the event the Court finally approves the Settlement, and the Pre-

2    Identified Non-Claims Made Subclass Member is satisfied with the amount of the monetary credit

3    or refund identified in the Credit/Refund Letter, the Pre-Identified Non-Claims Made Subclass

4    Member need not take any further action to recover the credit or refund.  Such Credit/Refund

5    Letters shall also further state that any Pre-Identified Non-Claims Made Subclass Member who is

6    not satisfied with the amount of the monetary credit or refund identified in the Credit/Refund

7    Letter shall be entitled to request that an independent review be conducted by the Special Master.

8    For those Subclass Members who wish to pursue an independent review, the Class Notice will

9    provide information and instructions for how to do so.

10                    **b.        Pre-Identified Claims Made Subclass Members**

11        ~~Additionally, within sixty (60) days of~~ Simultaneous   with    the    Class    Notice

12    ~~Date~~being provided, Defendant shall ~~identify those Settlement Class Members that are included in~~

13    ~~the Pre-Identified Claims Made Subclass.~~

14    ~~Defendant shall~~also provide each Pre-Identified Claims Made Subclass Member with an

15    Identification Letter in substantially the form of Exhibit E hereto, either by United States First

16    Class Mail or email ~~during the 18 month Remediation Period.~~   The Identification Letter shall

17    identify those Settlement Class Members that are included in the Pre-Identified Claims Made

18    Subclass.

19        Such Identification Letters shall indicate:~~-~~ (a) the particular Subclass(es) in which each

20    Pre-Identified Claims Made Subclass Member is included; (b) instructions on how to obtain a

21    Claim Form or file an electronic claim via the Claims Administrator's website, which will detail

22    the necessary information that each Pre-Identified Claims Made Subclass Member must provide in

23    order to receive a monetary credit (if the Pre-Identified Claims Made Subclass Member is a

24    current LADWP customer) or refund (if the Pre-Identified Claims Made Subclass Member is a

25    former LADWP customer with a closed LADWP account), if so entitled; and (c) instructions on

26    how to opt-out, in the event that a Pre-Identified Claims Made Subclass Member wishes to

27    excluded himself/herself from the Settlement Class.  Such Identification Letters shall also further

28    state that any Pre-Identified Claims Made Subclass Member who is not satisfied with the amount

38457.025-3494420

Exhibit 2    55

of the monetary credit or refund ultimately determined to be due such Subclass Member by the Claims Processing Unit shall be entitled to request that an independent review be conducted by the Special Master.  For those Subclass Members who wish to pursue an independent review, the Class Notice will provide information and instructions for how to do so.

## 2.    Self-Identification

~~Regardless of whether he/she has~~Simultaneous with the Class Notice being provided, Defendant shall also provide each LADWP customer that has not been identified as either a: (i) Pre-Identified Non-Claims Made Subclass Member or (ii) Pre-Identified Claims Made Subclass Member with an Omnibus Subclass Letter in substantially the form of Exhibit F hereto, either by United States First Class Mail or email.  The Omnibus Subclass Letter shall notify these LADWP customers that, despite not having been identified as a member of the Pre-Identified Non-Claims Made Subclass or the Pre-Identified Claims Made Subclass, ~~any current or former customer of the~~these LADWP customers may ~~also~~submit a Claim Form ~~in substantially the form of Exhibit F hereto or file an electronic claim via the Claims Administrator's website~~ in order to receive a monetary credit, (if a current LADWP customer) or refund (if a former LADWP customer with a closed LADWP account), as a result of:  (i) a billing error made by LADWP at any time since September 3, 2013; or (ii) damage as a result of their participation in LADWP's solar incentive program at any time since February 13, 2010.  Such Omnibus Subclass Letters shall indicate: (a) instructions on how to obtain a Claim Form or file an electronic claim via the Claims Administrator's website; and (b) instructions on how to opt-out to excluded himself/herself from the Settlement Class.  Such Omnibus Subclass Letters shall also further state that any Subclass Member who reasonably believes that the amount of the monetary credit or refund ultimately determined to be due such Subclass Member by the Claims Processing Unit is incorrect shall be entitled to request that an independent review be conducted by the Special Master.  For those Subclass Members who wish to pursue an independent review, the Class Notice will provide information and instructions for how to do so.

The Claim Form shall be made available, upon request, in the following languages in addition to English:   Spanish; Chinese; Korean; Vietnamese; and Tagalog.  _Any Omnibus

38457.025-3494420

Exhibit 2      56

1 Subclass Member who is not satisfied with the amount of the monetary credit or refund

2 determined to be due such Subclass Member by the Claims Processing Unit shall be entitled to

3 request that an independent review be conducted by the Special Master.  For those Omnibus

4 Subclass Members who wish to pursue an independent review, the Class Notice will provide

5 information and instructions for how to do so.

### 3.   Pending Field ~~Investigation~~Work Investigations

7 ~~Within sixty (60) days of~~ Simultaneous with the Class Notice ~~Date~~being provided, each

8 Field ~~Investigation~~Work Customer will receive a Field Work Investigation Notification Letter

9 substantially in the form of Exhibit ~~H~~I advising the customer of a pending field work

10 investigation.   Once the field work investigation is completed, a Field ~~Investigation~~ Work

11 Customer will ~~receive~~be sent a Field Work Investigation Determination Letter substantially in the

12 form of Exhibit ~~I~~J informing the Field ~~Investigation~~Work Customer of the ~~LADWP's~~result of the

13 LADWP's field work investigation.   If, after ~~the field investigation determination, the~~

14 ~~customer~~receiving a Field Work Investigation Determination Letter, a Field Work Customer

15 believes s/he was incorrectly assessed a charge associated with his/her power, water, sewage or

16 ~~trash collection~~sanitation services, the customer may submit a Claim Form within ~~120~~60 days of

17 the date of the Field Work Investigation Determination Letter.

### 4.   Claims ~~Administration~~Administrator

19 ~~An~~ The Court has appointed Kurtzman Carson Consultants LLC ("KCC") as the

20 independent Claims Administrator ~~shall be retained subject to the Court's approval~~. The Claims

21 Administrator shall be responsible for effectuating the claims process under the supervision of

22 Class Counsel. and the Independent CC&B Billing System Monitoring Expert.   The Claims

23 Administrator shall be delegated the authority to administer and process eligible claims during the

24 Claim Period.

### 5.   Special Master

26 Any Settlement Class Member who wishes to dispute the amount of the monetary credit or

27 refund determined by the LADWP or the Claims Processing Unit may request that an independent

28 review be conducted by the Court-appointed Special Master (a "Special Master Review").   A

1   request for Special Master Review must be made to the Claims Administrator within 30 days as

2   specified in the Notice.  Any Settlement Class Member seeking a Special Master Review shall

3   initiate this process by sending a letter, via First Class Mail, which:  (a) states that the Settlement

4   Class Member disputes the amount of the monetary credit or refund and desires to initiate a

5   Special Master Review; (b) explains the reason(s) the Settlement Class Member is disputing the

6   amount of the monetary credit or refund and states all facts relied upon by such Settlement Class

7   Member in disputing the amount of the monetary credit or refund; (c) attaches all documents

8   relied upon by the Settlement Class Member in disputing the amount of the monetary credit or

9   refund; and (d) requests that the Special Master review the determination and make a

10  determination as to whether:  (i) the LADWP or the Claims Processing Unit's determination

11  should be adopted; or (ii) an alternative finding should be made.  A request for a Special Master

12  Review must be dated and signed by the Settlement Class Member and sent to:  Special Master

13  Barbara R. Barkovich, Ph.D - LADWP Billing Class Action, c/o Kurtzman Carson Consultants.

14  All requests for a Special Master Review must be postmarked within 30 days of the date of the

15  letter informing the Settlement Class Member of the amount of the monetary credit or refund

16  determined by the LADWP or the Claims Processing Unit that is being disputed.

17          The ~~Parties have agreed that~~ _Court has appointed_ Barbara R. Barkovich, Ph.D ~~shall serve~~

18  as the ~~Court-appointed~~ independent Special Master ~~and~~_, who shall_ be responsible for conducting

19  all independent reviews requested by any Settlement Class Member.  The Special Master shall be

20  responsible for obtaining from LADWP and/or the Class Member the information the Special

21  Master deems necessary and required to review and adjudicate each request for independent

22  review.  The Special Master will determine the validity of claims on a _de novo_ review decided

23  upon the preponderance of the evidence.  LADWP agrees to provide the Special Master with any

24  information requested.  All determinations made by the Special Master shall be made solely by the

25  Special Master and shall be submitted to the Court in the form of a "Report and

26  Recommendation."  The Special Master shall inform individual Class Members by letter as to her

27  determinations of their respective claims. Any Class Member who wishes to contest the Special

28  Master's determination of that Class Member's claim shall submit, via First Class Mail and within

LINER LLP
1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024-3518

1  30 days of the date of the Special Master's determination letter, a letter to the Court requesting a

2  review by the Court, stating the grounds for disputing the determination, and submitting any

3  supportive documentation.

4      Special Master Dr. Barbara Barkovich has been a consultant and expert on energy and

5  regulatory matters since 1985.  Dr. Barkovich has extensive experience in assisting consumers of

6  utility services in negotiations with utilities on pricing and service matters and in negotiation of

7  settlement agreements on complex regulatory matters. She holds a BA in physics from the

8  University of California at San Diego, an MS in Urban and Policy Sciences from the State

9  University of New York at Stony Brook, and a Ph.D in Energy and Resources from the University

10  of California at Berkeley.  Dr. Barkovich is the owner and operator of Barkovich & Yap.  Dr.

11  Barkovich's credentials and experience, as well as the credentials and experience possessed by the

12  individuals assisting Dr. Barkovich in her work as the Court-appointed Special Master in this

13  litigation, are detailed in Exhibit 3 to the Supplemental Declaration of Jack Landskroner in Further

14  Support of Plaintiffs' Motion for Preliminary Approval (the "Supplemental Landskroner Decl.").

15  LADWP agrees to pay the costs of the Special Master.

16  **6.    Costs of Settlement Administration**

17      All costs and expenses incurred in implementing and administering the Settlement shall be

18  paid by Defendant.   The Claims Administrator shall, under the supervision of the Court,

19  administer the Settlement provided by this Revised Agreement by processing and resolving claims

20  in a rational, responsive, cost-effective, and timely manner.   The Claims Administrator shall

21  maintain detailed records of its activities under this Revised Agreement in a computerized

22  database and shall furnish counsel for the Parties with monthly reports of the activities undertaken

23  by the Claims Administrator in administering the Settlement.

24  **I.J.    Requests for Exclusion ofFrom The Settlement Class**

25      Any person included within the Settlement Class who wishes to be excluded from

26  membership in the Settlement Class must do so in writing by mailing a written request for

27  exclusion to the Claims Administrator.  Such requests must be postmarked no later than 9030 days

28  from the Class Notice Date.  The request must:- (i) clearly express the Settlement Class Member's

LINER LLP
1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024-3518

38457.025-3494420                           Exhibit 2    59
REVISED CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

1   desire to be excluded or to "opt out" from the Settlement Class; (ii) include the Settlement Class

2   Member's name, address, telephone number, LADWP account number and, if represented by

3   counsel, counsel's name, address and telephone number; and (iii) be signed by the Settlement

4   Class Member.

5         If a Settlement Class Member has multiple LADWP accounts and wishes to be excluded

6   from membership in the Settlement Class, the Settlement Class Member must submit a request for

7   exclusion for each separate account.

8         Any Person who is a member of the Settlement Class who wishes to be excluded from the

9   Settlement Class can only opt out for him or herself, and cannot opt out for any other Person.  Nor

10  can any Person who is a Settlement Class Member authorize any other Person to opt out on his or

11  her behalf.

12        Any Settlement Class ~~member~~Member who has filed an objection to the fairness,

13  reasonableness or adequacy of the proposed Settlement pursuant to Section III.~~J~~K. herein shall be

14  deemed not to have opted out of the Settlement Class pursuant to this paragraph.  However, in the

15  event that a Settlement Class ~~member~~Member makes a submission to the Court and the Parties

16  that appears to assert both an objection to the fairness, reasonableness or adequacy of the proposed

17  Settlement, and a statement of intent to opt out of the Settlement Class, such submission shall be

18  treated as a statement of intent to opt out of the Settlement Class, but not an objection.

19      **~~J.~~K.   Objections and Requests To Appear At Final Approval Hearing**

20        Any Settlement Class ~~member~~Member who has not timely filed a written request for

21  exclusion from the Settlement Class pursuant to Section III.~~I~~J. herein may object to the fairness,

22  reasonableness or adequacy of the proposed Settlement, Plaintiff Jones' application for a

23  reimbursement award, or Class Counsel's application for an award of attorneys' fees or

24  reimbursement of expenses.  Each Settlement Class Member who wishes to object must do so in

25  writing by mailing a written objection to the Claims Administrator, who shall submit all objections

26  to ~~the~~ Court and mail them to the Parties' respective counsel at the addresses set forth in Section

27  III.~~M~~N.11. herein.  Any such objection must be mailed to the Claims Administrator ~~no~~ later than

28  ~~90~~30 days after the Class Notice Date. ~~Any such objection must:~~ (i) state, in detail, the legal and

1  factual ground(s) for the objection; (ii) include the Settlement Class Member's name, address and

2  telephone number and LADWP account number, and, if represented by counsel, counsel's name,

3  address and telephone number; and (iii) be signed by the Settlement Class Member.

4        Settlement Class Members may object either on their own or through an attorney hired at

5  their own expense. If the objecting Settlement Class Member hires an attorney to represent him or

6  her, that attorney must file with the Court and serve upon the Parties' respective counsel at the

7  addresses set forth in Section III.MN.11. herein, a notice of appearance no later than 30 days prior

8  to the Final Approval Hearing.

9        Any objection that fails to satisfy the requirements of this Section, or that is not properly

10  and timely submitted, will be deemed ineffective, and will be deemed by the Parties to have been

11  waived, and the Parties reserve their right to argue that the Settlement Class Member asserting

12  such objection is therefore not entitled to have his or her objection heard or otherwise considered

13  by the Court.

14        Settlement Class Members or their counsel who wish to appear at the Final Approval

15  Hearing must make such request by notifying the Clerk of the Court and the Parties' respective

16  counsel in writing at the addresses set forth in Section III.MN.11. herein ("Notice of Intention to

17  Appear"). Any such request must be filed with the Clerk of the Court and received by the Parties'

18  respective counsel no later than 30 days prior to the Final Approval Hearing and must state the

19  name, address, telephone number and LADWP account number of the Settlement Class Member,

20  as well as the name, address and telephone number of the person who will appear on his or her

21  behalf. Any such request must further indicate that the Settlement Class memberMember has

22  timely objected to the Settlement in compliance with the requirements of this Section of this

23  Revised Agreement. Any request for appearance that fails to satisfy the requirements of this

24  Section, or that has not been properly or timely submitted, may be deemed ineffective and shall be

25  deemed to constitute a waiver of such Settlement Class Member's right to appear and to be heard

26  on the Settlement at the Final Approval Hearing.

27

28

LINER LLP
1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024.3518

1   **K.L.   Attorneys' Fees and Costs**

2   ~~The~~In connection with the June/July, 2015 mediation, the Parties did not conduct any

3   negotiations concerning the amount of attorneys' fees to be paid or expenses to be reimbursed

4   until *after* the Parties had reached agreement on the *entirety* of the Settlement.  Similarly, in

5   connection with the October 31, 2016 mediation, the Parties did not conduct any negotiations

6   concerning the amount of any incremental increase in reasonable attorneys' fees to be paid or

7   expenses to be reimbursed until *after* the Parties had reached agreement on the *entirety* of the

8   Settlement Agreement revisions.  All negotiations concerning the amount of attorneys' fees to be

9   paid or expenses to be reimbursed were conducted exclusively by the Parties through the mediator,

10   the Hon. Dickran Tevrizian (Ret.).

11       Plaintiff Jones will make an application to the Court for: (i) an award of attorneys' fees in

12   an amount not to exceed $~~13,000,000~~19,000,000 at the time of Final Approval, from which all

13   Court-approved plaintiffs' attorneys' fees applications shall be paid; (ii) reimbursement of

14   expenses incurred in connection with the prosecution of the litigation in an amount not to exceed

15   $~~750~~3,000,~~000~~ (reimbursement of expenses incurred by the CC&B System Monitoring Expert is

16   capped at $2,500,000 and reimbursement of expenses incurred by all plaintiffs' counsel is capped

17   at $500,000); and (iii) a service ~~award~~awards in the amount of $5,000 each for Plaintiff Jones ~~and,~~

18   Yaar Kimhi, Tahl Beckerman Megerdichian and Yelena Novak.  Defendant has agreed it will not

19   object to such an application.

20       Defendant has agreed that, should the Court finally approve the Settlement and award

21   attorneys' fees and expense reimbursement to Class Counsel and ~~a reimbursement award~~service

22   awards to Plaintiff Jones, Yaar Kimhi, Tahl Beckerman Megerdichian and Yelena Novak,

23   Defendant will pay the amount of attorneys' fees, expenses and ~~reimbursement award~~service

24   awards awarded by the Court within 7 business days after the Settlement is finally approved by the

25   Court.  Defendant will pay the amount awarded by the Court directly to an account established by

26   Class Counsel and Liaison Counsel.  Class Counsel shall be responsible for allocating the

27   attorneys' fees and expenses among plaintiffs' counsel.

28

LINER LLP
1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024-3518

1   Additionally, the Parties agree that Class Counsel will be responsible for aiding the Claims

2   Administrator by monitoring and supervising the administration of the Settlement during the 18

3   month remediation period.Remediation Period.   Defendant has further agreed that, subject to

4   Court approval, Class Counsel may make applications to the Court to be compensated at the rate

5   of twenty-nine percent (29%) of all future recoveries by Class Members subsequent to Final

6   Approval for:   (i) Field Work claims; (ii) Pre-Identified Claims Made claims; (iii) Omnibus

7   claims; and (iv) all claims paid in connection with the Settlement by, or on behalf of the City of

8   Los Angeles, including all departments thereof.   Class Counsel shall submit to the Court quarterly

9   applications for additional awards of such attorneys' fees for the work performed by Class

10  Counsel in connection with its monitoring and supervision of the Settlement during the 18 month

11  remediation period. .   The Parties have also agreed that the Defendant has agreedwill not to

12  oppose additional applications by Class Counsel for awards of attorneys' fees in a total amount not

13  to exceed $1,000,000.  Notwithstanding the foregoing, if Class Counsel's work and fee submission

14  exceeds this threshold, Class Counsel may submitobject to such quarterly applications for awards

15  of attorneys' fees to the Court greater than $1,000,000, which Defendant may oppose, for the

16  additional work performed by Class Counsel in connection with its monitoring and supervision of

17  the Settlement during the remediation period.as set forth herein.

18  Defendant has agreed that, in connection with these quarterly applications, should the

19  Court award attorneys' fees to Class Counsel, Defendant will pay the amount of attorneys' fees

20  awarded by the Court within 7 business days after the Court issues an order granting Class

21  Counsel's application.  Defendant will pay the amount awarded by the Court directly to an account

22  established by Class Counsel and Liaison Counsel.   Class Counsel shall be responsible for

23  allocating the attorneys' fees among plaintiffs' counsel.

24  There are no "fee splitting" agreements between the various counsel involved in this

25  action, however, the law firm of Knapp, Petersen & Clark, counsel in the *Kimhi* Action, has

26  agreed to work with Class Counsel to help answer questions and to identify and assist Solar

27  Customers Subclass members in processing claims.  The Knapp, Petersen & Clark firm has agreed

28  that, based on the work they have performed, and will continue to perform, for the benefit of Solar

REVISED CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

1   Customers Subclass, that the fee application they submit to the Court, through Counsel for

2   Plaintiff Jones, for consideration will not exceed $1,999,999 of fees applied for and/or awarded to

3   Class Counsel at final approval.

4       **L.M.   Final Approval**

5       The Court shall schedule a date for the Final Approval Hearing.  At the Final Approval

6   Hearing, the Parties shall join the request that the Court enter an order and judgment in

7   substantially the form of Exhibit GH to this Revised Agreement (the "Final Order and Judgment"),

8   which will finally approve the terms of this Revised Agreement,  discharge the Released Parties of

9   and from all further liability to Plaintiff Jones, Plaintiffs Kimhi, Megerdichian and Novak, and

10  Settlement Class Members with respect to the Released Claims (but not as to any obligations

11  created or owed pursuant to this Revised Agreement), and permanently bar Plaintiff Jones and

12  Settlement Class Members from bringing, filing, commencing, prosecuting, maintaining,

13  intervening in, participating in, or receiving any benefits from, any other lawsuit, arbitration or

14  administrative, regulatory or other proceeding or cause of action, formally or informally, that

15  asserts, arises from, concerns, or is in any way related to the Released Claims, except as required

16  by law.  Following the entry of the Final Order and Judgment, the Court shall maintain continuing

17  jurisdiction over the enforcement and implementation of this Revised Agreement and the Final

18  Order and Judgment shall– indicate that the Court maintains such continuing jurisdiction. The

19  actual form of the Final Judgment and Order entered by the Court may include provisions as to

20  which the Parties may subsequently agree, or which the Court may direct, that are not inconsistent

21  with any of the express terms or conditions of this Revised Agreement.

22      Following entry of the Final Order and Judgment by the Court, no default by any Person in

23  the performance of any covenant or any obligation arising under this Revised Agreement shall

24  affect the –discharge and release of the Released Parties, or any other provision of this Revised

25  Agreement._ The above notwithstanding, nothing in this Section shall prevent a Party from seeking

26  enforcement of or compliance with the terms of this Revised Agreement, or the intervention of the

27  Court to compel any such default be cured, pursuant to the Court's continuing jurisdiction.

28

1      If:  (a) the preliminary approval of this Revised Agreement and the Settlement described

2  herein or the Final Judgment and Order is not obtained from the Court in substantially the form

3  attached hereto as Exhibits C and G̶H, respectively; or (b) the Court fails to grant final approval to

4  the Settlement, this Revised Agreement shall be null and void, shall have no further force and

5  effect, and shall not be offered in evidence or used in any litigation for any purpose, including the

6  existence, certification, or maintenance of any purported class.  Further, if either (a) or (b) occurs,

7  this Revised Agreement and all negotiations, proceedings, documents prepared, and statements

8  made in connection herewith shall be without prejudice to the Parties, shall not be deemed or

9  construed to be an admission or confession by any Party of any fact, matter, or proposition of law,

10  shall not be used in any manner for any purposes, and all Parties to the Action shall stand in the

11  same position as if this Revised Agreement had not been negotiated, made or filed with the Court.

12  If the Revised Agreement is terminated, any and all orders entered by the Court pursuant to the

13  provisions of the Revised Agreement shall be vacated *nunc pro tunc*.

14      In the event this Revised Agreement is not approved by the Court or the Settlement is

15  terminated or fails to become effective in accordance with its terms, all orders entered as of the

16  date on which this Settlement was executed shall become operative and fully effective, as if the

17  proceedings relating to this Settlement had not occurred.

18  **M̶.N.   Miscellaneous Provisions**

19         **1.   Authority O̶fof Signatories**

20  E̶a̶c̶h̶Subject to approval by the Los Angeles City Council, where necessary, each person

21  signing this Revised Agreement represents and warrants that he or she has full authority to sign

22  this Revised Agreement on behalf of the Party for whom he or she is signing and warrants that he

23  or she has the ability to bind that Party to the obligations and commitments set forth herein.

24         **2.   Binding Upon Successors**

25  This Revised Agreement shall be binding upon and inure to the benefit of the Parties and

26  their representatives, heirs, predecessors, successors, and assigns.

27

28

38457.025-3494420

Exhibit 2   65

LINER LLP
1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024-3518

3.      **Both Parties ~~As~~as Drafter**

The Parties stipulate and agree that this Revised Agreement was negotiated on an "arms-length" basis between Parties of equal bargaining power, and drafted jointly by the Parties and, accordingly, no ambiguity in this Revised Agreement shall be construed in favor of or against any of the Parties.

4.      **Cooperation**

The Parties to this Revised Agreement and their counsel agree that they shall act in good faith and exercise their best efforts to secure approval of this Revised Agreement and full participation by all members of the Settlement Class and that they will take such other reasonable steps as are necessary to implement this Revised Agreement.

5.      **Counterpart Execution**

This Revised Agreement may be executed in any number of counterparts. A facsimile or electronically transmitted signature shall be deemed to constitute an original signature for purposes of this Revised Agreement. Each counterpart when so executed shall be deemed to be an original, and all such counterparts together shall constitute the same instrument. This Revised Agreement will be binding when it has been executed and delivered by the last signatory hereto to execute a counterpart.

6.      **Governing Law**

The construction, interpretation, operation, effect, validity and enforcement of this Revised Agreement and all documents necessary to effectuate it shall be governed by the laws of the State of California without regard to principles of conflict of laws, except to the extent that federal law requires that federal law govern.

7.      **Headings**

Headings contained in this Revised Agreement are for convenience and reference only and are not intended to alter or vary the construction and meaning of this Agreement.

8.      **Integration Clause**

This Revised Agreement, including all exhibits hereto, contains a full, complete, and integrated statement of each and every term and provision agreed to between and among the

38457.025-3494420

Exhibit 2    66

LINER LLP
1100 Glendon Avenue | 14th Floor
Los Angeles, CA 90024-3518

1  Parties and supersedes any prior representations, writings or agreements (written or oral) between

2  or among the Parties, which prior agreements may no longer be relied upon for any purpose.  This

3  Revised Agreement may not be orally modified in any respect and may be modified only by the

4  written agreement of the Parties.   In the event a dispute arises between the Parties over the

5  meaning or intent of any provision of this Revised Agreement, the Parties agree that prior drafts,

6  notes, memoranda, discussions or any other oral communications or documents regarding the

7  negotiations, meaning or intent of this Revised Agreement shall not be offered or admitted into

8  evidence.

9              **9.       Jurisdiction**

10          The Court retains exclusive and continuing jurisdiction over the Actions, the Parties,

11  Settlement Class Members, and the Claims Administrator in order to interpret and enforce the

12  terms, conditions and obligations under this Revised Agreement.

13             **10.      Non-Waiver**

14          The waiver by one Party of any provision or breach of this Revised Agreement shall not be

15  deemed a waiver of any other provision or breach of this Revised Agreement.

16             **11.      Notice**

17          Except as otherwise described in the ~~settlement notice~~Class Notice attached as Exhibits A

18  and B to this Revised Agreement, all notices and other communications referenced in this Revised

19  Agreement shall be addressed to the Parties' counsel at their respective addresses as set forth

20  below:

21             Notices to Plaintiff or the Settlement Class Members

22             Jack Landskroner, Esq.
               Landskroner Grieco Merriman, LLC
23             1360 West 9th St., Suite 200
                Cleveland, Ohio 44113

24             Notices to Defendant

25             ~~Angela C. Agrusa (SBN 131337)~~Maribeth Annaguey, Esq.
26             LINER LLP
               1100 Glendon Avenue, 14th Floor
27             Los Angeles, California 90024

28

1    **12.    <u>Severability</u>**

2         In the event any one or more of the provisions contained in this <u>Revised</u> Agreement shall

3    be held invalid, illegal, or unenforceable for any reason, such invalidity, illegality, or

4    unenforceability shall not affect any other provisions of this <u>Revised</u> Agreement

5    **13.    <u>Time for Compliance</u>**

6         If the date for performance of any act required by or under this <u>Revised</u> Agreement is to be

7    performed on a particular day or within a specified period of time that falls on a Saturday, Sunday

8    or legal or Court holiday, such act may be performed upon the next business day, with the same

9    effect as if it had been performed on the day or within the computer time specified by or under this

10   <u>Revised</u> Agreement.

11        **IN WITNESS WHEREOF**, each of the Parties hereto has caused this <u>Revised</u> Agreement

12   to be executed on its, his, her or their behalf by its, his, her or their duly authorized counsel of

13   record, all as of the day set forth below.

14

15                    *SIGNATURES APPEAR ON THE FOLLOWING PAGES*

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated:  November        , 2016            **DEFENDANT:**


By: _____
     David Wright, General Manager
     Los Angeles Department of Water and Power


**PLAINTIFF:**

Dated:  November        , 2016

_____
Antwon Jones
Plaintiff, Individually and as Class Representative


Dated:  November        , 2016

_____
Yaar Kimhi
Plaintiff, Individually and as Class Representative for
the Solar Subclass


Dated:  November        , 2016

_____
Tahl Beckerman Megerdichian
Plaintiff, Individually and as a Member of the
Solar Subclass


Dated:  November        , 2016

_____
Yelena Novak
Plaintiff, Individually and as a Member of the
Solar Subclass

ORIGINAL

1  Michael J. Libman (SBN 222353)
   **LAW OFFICES OF MICHAEL J. LIBMAN**
2  18321 Ventura Boulevard, Suite 700
   Tarzana, California 91356
3  Telephone: 818-995-7300

4
   *Liaison Counsel*
5

6  Jack Landskroner (Admitted Pro Hac Vice )
   Drew Legando (Admitted Pro Hac Vice )
7  **LANDSKRONER GRIECO MERRIMAN LLC**
   1360 West 9th Street, Suite 200
8  Cleveland, Ohio 44113
   T. (216) 522-9000
9  F. (216) 522-9007

10 *Class Counsel*

11

12             **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

13                   **COUNTY OF LOS ANGELES**           By Fax

14 **ANTWON JONES,** on behalf of himself,     )  Case No:  BC577267
   and all other similarly situated,          )
15                                             )  [Related to Case Nos. BC565618 (Lead),
                                               )  BC568722, BC571664, and BC574690]
16            Plaintiff,                       )
                                               )  [CLASS ACTION]
17        v.                                   )
                                               )  **PLAINTIFF'S NOTICE OF UNOPPOSED**
18 **CITY OF LOS ANGELES,** by and            )  **MOTION AND MOTION FOR FINAL**
   through the Los Angeles Department of       )  **APPROVAL OF CLASS ACTION**
19 Water and Power and DOES 1 through          )  **SETTLEMENT AND AWARD OF**
   50, inclusive,                              )  **ATTORNEYS' FEES, COSTS AND**
20                                             )  **SERVICE AWARDS**
            Defendant.                         )
21                                             )  Assigned for All Purposes to the Hon. Elihu M.
                                               )  Berle, Dept. 323
22                                             )
                                               )  Date:     July 7, 2017
23                                             )  Time:     9:00 a.m.
                                               )  Dept:     323
24                                             )

25

26

27

28

**FILED**
Superior Court of California
County of Los Angeles

MAY 0 5 2017

Sherri R. Carter, Executive Officer/Clerk
By: _____ , Deputy
Rita Nazaryan

1

2     **TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

3     **PLEASE TAKE NOTICE** that on July 7, 2017, at 9:00 a.m. or as soon thereafter as the

4 matter may be heard by the Honorable Elihu M. Berle in Department 323 of the Los Angeles

5 Superior Court, Central Civil West Courthouse, located at 600 South Commonwealth Avenue, Los

6 Angeles, California 90005, Plaintiff Antwon Jones, on behalf of himself and the putative class in

7 this case, as well as the putative classes in *Kimhi v. The City of Los Angeles*, Case No. BC536272;

8 *Bransford v. City of Los Angeles*, Case No. BC565618; and *Fontaine v. City of Los Angeles*, Case

9 No. BC577267 (collectively, the "Actions"), will and hereby does apply for an order of final

10 approval of the proposed class action settlement (the "Settlement") and an award of attorneys' fees,

11 expenses and service awards.

12     The Settlement, *which recoups 100% of the losses to every customer* that was: (1) overbilled

13 by the Los Angeles Department of Water and Power ("LADWP") for water, electricity, sewage or

14 sanitation services between September 13, 2013 and December 30, 2016 and/or (2) damaged by

15 participation in LADWP's Solar Incentive Program from February 13, 2010 to December 30, 2016,

16 was reached after extensive mediation sessions with the Honorable Dickran M. Tevrizian (Ret.), one

17 of the most well respected mediators in the United States. The results achieved by this Settlement

18 are in the best interest of the putative class because this Settlement provides not only economic

19 recovery for the Settlement Class, but also significant changes to LADWP operations in order to

20 ensure that there is accuracy in billing, reliability in service and overall improved accountability to

21 customers.

22     Plaintiff herein serves his notice of his unopposed motion for an order: (i)  finally

23 approving the Settlement; (ii) certifying the Settlement Class for Settlement purposes; (iii) finding

24 that the Class Notice constituted the best practicable notice; (iv) awarding Class Counsel

25 $17,453,977.00 in attorneys' fees and $2,712,035.28 in expenses ($2.5 million for reimbursement

26 of expenses which have and will be incurred by the CC&B System Monitoring Expert and

27 $212,035.28 for reimbursement of expenses incurred by all Plaintiffs' Counsel) and (v) awarding

28

---

1

**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT**

Exhibit 3
279

1  Plaintiffs Jones and Yaar Kimhi, Tahl Beckerman Megerdichian and Yelena Novak service

2  awards in the amount of $5,000 each.

3      This Motion is made pursuant to California Code of Civil Procedure Section 382 and

4  California Rule of Court 3.760 *et seq.* and is based on this Notice, the attached Memorandum of

5  Law, the declarations and other documents filed in support thereof, the pleadings and papers on

6  file in this action, and such oral and documentary evidence as may be presented at the hearing on

7  this Motion.

8  Dated: May 5, 2017                    Respectfully submitted,

9

10                                       Jack Landskroner (Admitted Pro Hac Vice)

11                                       Drew Legando (Admitted Pro Hac Vice)
                                         LANDSKRONER GRIECO MERRIMAN, LLC

12                                       1360 W. 9th Street, Ste. 200
                                         Cleveland, OH 44113

13                                       Telephone:  216-522-9000

14                                       *Class Counsel*

15
                                         Michael J. Libman (SBN 222353)

16                                       LAW OFFICES OF MICHAEL J. LIBMAN
                                         18321 Ventura Boulevard, Suite 700

17                                       Tarzana, California 91356
                                         Telephone: 818-995-7300

18

19                                       *Liaison Counsel*

20

21

22

23

24

25

26

27

28

                                         2

1  Michael J. Libman (SBN 222353)
   **LAW OFFICES OF MICHAEL J. LIBMAN**
2  18321 Ventura Boulevard, Suite 700
   Tarzana, California 91356
3  Telephone: 818-995-7300

4  *Liaison Counsel*

5
   Jack Landskroner (Admitted Pro Hac Vice)
6  Drew Legando (Admitted Pro Hac Vice)
   **LANDSKRONER GRIECO MERRIMAN LLC**
7  1360 West 9th Street, Suite 200
   Cleveland, Ohio 44113
8  T. (216) 522-9000
9  F. (216) 522-9007

10 *Class Counsel*

11

12              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

13                    **COUNTY OF LOS ANGELES**

14 **ANTWON JONES**, on behalf of himself,    ) Case No: BC577267
   and all other similarly situated,          )
15                                             )
                                               ) [Related to Case Nos. BC565618 (Lead),
16           Plaintiff,                        ) BC568722, BC571664, and BC574690]
                                               )
17      v.                                     ) [CLASS ACTION]
                                               )
18 **CITY OF LOS ANGELES**, by and            ) **PLAINTIFF'S MEMORANDUM OF LAW IN**
   through the Los Angeles Department of       ) **SUPPORT OF PLAINTIFF'S UNOPPOSED**
19 Water and Power and DOES 1 through 50,      ) **MOTION FOR FINAL APPROVAL OF**
   inclusive,                                  ) **CLASS ACTION SETTLEMENT AND**
20                                             ) **AWARD OF ATTORNEYS' FEES, COSTS**
                                               ) **AND SERVICE AWARDS**
21           Defendant.                        )
                                               ) Assigned for All Purposes to the Hon. Elihu
22                                             ) M. Berle, Dept. 323
                                               )
23                                             ) Date:     July 7, 2017
                                               ) Time:     9:00 a.m.
24                                             ) Dept:     323
                                               )
25 _____ )

26

27

28

                                         i
   _____
    **MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF**
                    **CLASS ACTION SETTLEMENT**

Exhibit 3
281

# I.    TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

STATEMENT OF FACTS ........................................................................................... 2

I.      SUMMARY OF THE LITIGATION ............................................................... 2

    A.      The Kimhi Action .......................................................................... 2

    B.      The Jones Action ........................................................................... 3

    C.      The History of the Parties' Mediation Efforts ........................... 4

II.     SUMMARY OF THE SETTLEMENT ........................................................... 8

    A.      The Proposed Settlement Class .................................................... 8

    B.      Benefits to the Settlement Class .................................................. 9

    C.      Narrowly Tailored Release ......................................................... 11

    D.      Requested Attorneys' Fees and Costs and Service Awards ...... 13

III.    PRELIMINARY APPROVAL ...................................................................... 14

ARGUMENT ............................................................................................................. 15

I.      THE PROPOSED SETTLEMENT MEETS THE STANDARDS FOR FINAL APPROVAL ........................................................................................ 15

    A.      The Settlement Is Entitled to a Presumption of Fairness ........ 16

        1.      The Proposed Settlement Was Reached Through Arm's-Length Bargaining ............................................................... 16

        2.      Plaintiff's Investigation and Discovery Favors A Finding That The Settlement Is Presumptively Fair ................................ 16

        3.      The Recommendation of Experienced Counsel Favors A Finding That The Settlement Is Presumptively Fair ................. 18

    B.      The Settlement Satisfies The *Dunk* Factors .......................... 18

        1.      The Strength of Plaintiff's Case Compared to the Risk, Expense, Complexity, and Likely Duration of Further Litigation Favors Final Approval ................................................................... 18

        2.      The Risk of Maintaining Class Action Status Through Trial Favors Final Approval ...................................................... 19

        3.      The Amount Offered in Settlement Favors Final Approval ...... 19

        4.      The Extent of Discovery Completed Favors Final Approval ..... 20

ii

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Exhibit 3
282

5.     The Experience and Views of Counsel Favors Final Approval .................. 20

6.     Presence of A Governmental Participant Favors Final Approval .............. 20

C.     The Overwhelmingly Positive Reaction of the Settlement Class Members To the Settlement Confirms That Final Approval Is Warranted ............................ 20

II.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS ................................... 21

A.     The Settlement Class Is Sufficiently Numerous ...................................... 22

B.     There Is a Well-Defined Community of Interest Among the Class ........................ 22

1.     Common Questions of Law and Fact Predominate .................................... 23

2.     Plaintiffs Jones and Kimhi's Claims Are Typical of the Settlement Class ...................................................................... 23

3.     Plaintiffs and Class Counsel Are Adequate Representatives ....................... 24

C.     A Class Action Is the Superior Method for Adjudicating The Claims of Settlement Class Members ...................................................................... 25

III.   THE BEST PRACTICABLE NOTICE WAS GIVEN TO THE CLASS ........................... 25

IV.    CLASS COUNSEL'S REQUEST FOR ATTORNEYS' FEES AND EXPENSES SHOULD BE GRANTED ...................................................................... 27

A.     Plaintiff's Counsel's Lodestar Is Reasonable ...................................... 29

1.     The Number of Hours Spent Litigating This Action Is Reasonable ........... 29

2.     Plaintiff's Counsel's Hourly Billing Rates Are Reasonable ....................... 31

a)     Landskroner Grieco Merriman ...................................................... 31

b)     The Libman Firm ...................................................................... 31

c)     Knapp, Peterson & Clarke ............................................................ 32

d)     The Himmelfarb Firm ................................................................ 32

3.     Enhancing Plaintiffs' Counsel's Lodestar By A Multiplier of 2.15 Is Reasonable ...................................................................... 33

a)     The Results Achieved Through the Settlement Favor A Multiplier .............................................................................. 33

b)     The Novelty and Difficulty of the Litigation Favors A Multiplier .............................................................................. 34

c)     Class Counsel's Skill In Obtaining the Settlement Favors A Multiplier .............................................................................. 34

d)     The Burdens Imposed By the Action Favors A Multiplier ............. 35

iii

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Exhibit 3
283

e)      The Contingent Nature of the Fee Favors A Multiplier .................. 35

4.      The Requested Multiplier of 2.15 is Reasonable ......................................... 35

5.      A "Cross-Check" of The Requested Fee Under the Percentage-
of-RecoveryApproach Confirms That The Requested Fee Is
Reasonable................................................................................................. 36

V.    PLAINTIFF'S   COUNSEL   SHOULD   BE   REIMBURSED   LITIGATION
EXPENSES ..................................................................................................... 37

VI.   THE COURT SHOULD GRANTED THE REQUESTED SERVICE AWARDS ........... 37

CONCLUSION ................................................................................................. 38

iv

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT**

Exhibit 3
284

1

## **TABLE OF AUTHORITIES**

2

3    <u>CASES</u>

4    *Altavion, Inc. v. Konica Minolta Systems Laboratory Inc.,*
         (2014) 226 Cal.App.4th 26 ................................................................. 32
5
     *Bufil v. Dollar Financial Group, Inc.,*
6        (2008) 162 Cal.App.4th 1193 ............................................................ 22

7    *California Indirect Purchaser X-Ray Film Antitrust Litig.,*
         1998 WL 1031494 ............................................................................. 37
8
     *Children's Hospital & Medical Center v. Bontá,*
9        (2002) 97 Cal.App.4th 740 ................................................................ 31

10   *Cho v. Seagate Tech. Holdings, Inc.,*
         (2009) 177 Cal.App.4th 734 .............................................................. 27
11
     *Clark v. American Residential Services LLC,*
12       (2009) 175 Cal.App.4th 785 .............................................................. 16

13   *Classen v. Weller,*
         (1983) 145 Cal.App.3d 27 ................................................................. 23
14
     *Clejan v. Reisman,*
15       (1970) 5 Cal.App.3d 224 ................................................................... 28

16   *Colin Higgins Prod. v. Universal City Studios,*
         BC499180 (Dec. 28, 2015) ............................................................... 35
17
     *Collins v. Rocha,*
18       (1971) 7 Cal.3d 232 .......................................................................... 22

19   *Craft v. County of San Bernardino,*
         624 F.Supp.2d 1113 (C.D. Cal. 2008) .............................................. 33
20
     *Daar v. Yellow Cab Co.,*
21       (1967) 67 Cal.2d 695 .................................................................. 22, 25

22   *Dunk v. Ford Motor Co.,*
         (1996) 48 Cal.App.4th 1794 ...................................................... passim
23
     *Elliott v. Rolling Frito-Lay Sales, LP,*
24       2014 U.S. Dist. LEXIS 83796 (C.D. Ca. June 12, 2014) ................. 32

25   *Fed-Mart Corp. v. Pell Enterprises,*
         (1980) 111 Cal.App.3d 215 ............................................................... 28
26
     *Heritage Pacific Financial. LLC v. Monroy,*
27       (2013) 215 Cal.App.4th 972 .............................................................. 31

28

v

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT**

Exhibit 3
285

*Hicks v. Kaufman & Broad Home Corp.,*
    (2001) 89 Cal.App.4th 908.................................................................................... 24

*In re Cellphone Fee Termination Cases,*
    (2010) 186 Cal.App.4th 1380.............................................................................. 37

*In re Sutter Health Uninsured Pricing Cases,*
    (2009) 171 Cal.App.4th 495................................................................................ 29

*In re Tobacco II Cases,*
    (2009) 46 Cal.4th 298......................................................................................... 22

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices,*
    *& Prods. Liab. Litig.*, 2013 U.S. Dist. LEXIS 123298 (C.D. Ca. July 24, 2013) ............... 32

*Kearney v. Hyundai Motor Co.,*
    2013 U.S. Dist. LEXIS 91636, (C.D. Ca. 2013) ................................................ 32

*Ketchum v. Moses,*
    (2001) 24 Cal.4th 1127............................................................................ 29, 33, 35

*Lealao v. Beneficial California, Inc.,*
    (2000) 82 Cal.App.4th 19......................................................................... 28, 29, 36

*Meister v. Regents of Univ. of Calif.,*
    (1998) 67 Cal.App.4th 437.................................................................................. 28

*Melnyk v. Robledo,*
    (1976) 64 Cal.App.3d 618................................................................................... 28

*Munoz v. BCI Coca-Cola Bottling Co. of Los Angeles,*
    (2010) 186 Cal.App.4th 399................................................................................ 15

*Natural Gas Anti-Trust Cases,*
    2006 WL 5377849................................................................................................ 37

*Oakland Raiders,*
    (1988) 203 Cal.App.3d 79......................................................................... 29, 31, 33, 35

*Parkinson v. Hyundai Motor America,*
    796 F.Supp.2d 1160 (C.D. Cal. 2010)................................................................ 32

*PLCM Group. Inc. v. Drexler.*
    (2000) 22 Cal.4th 1088........................................................................................ 31

*POM Wonderful, LLC v. Purely Juice, Inc.,*
    No. CV 07-2633, 2008 U.S. Dist. LEXIS 110460 ........................................... 32

*Redwen v. Sino Clean Energy, Inc.,*
    2013 U.S. Dist. LEXIS 100275 (C.D. Ca. July 9, 2013) ................................. 32

*Richmond v. Dart Indus.,*
    (1981) 29 Cal.3d 462..................................................................................... 23, 24

vi

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT**

Exhibit 3
286

*Rose v. City of Hayward,*
   (1981) 126 Cal.App.3d 926 ................................................................... 22

*Sanders v. City of Los Angeles,*
   (1970) 3 Cal.3d 252 .......................................................................... 36

*Sav-On Drug Stores, Inc. v. Superior Court,*
   (2004) 34 Cal.4th 319 ....................................................................... 22

*Schwartz v. Sec'y of Health and Human Serv.,*
   73 F.3d 895 (9th Cir. 1995) ............................................................... 31

*Serrano v. Priest ("Serrano III"),*
   (1977) 20 Cal.3d 25 ...................................................................... 28, 33

*Shames v. Hertz Corp.,*
   2012 U.S. Dist. LEXIS 158577 .......................................................... 36

*Stambaugh v. Superior Court,*
   62 Cal.App.3d 231, 236 (1976) .......................................................... 15

*Stokus v. Marsh,*
   (1990) 217 Cal.App.3d 647 ............................................................... 29

*Tait v. BSH Home Appliances Corp.*
   No. SACV100711DOCANX, 2015 WL4537463 (C.D. Cal., July 27, 2015) ............. 32

*The People ex rel. Dep't. of Transp. v. Yuki,*
   (1995) 31 Cal.App.4th 1754 .............................................................. 33

*Touhey v. United States,*
   2011 U.S. Dist. LEXIS 81308 (C.D. Cal., July 25, 2011) .............................. 20

*United Desert Charities, et al., v. Sloane Valve Co., et al.,*
   No. 12cv06878 SJO (SHx) (C.D. Ca. Aug. 25, 2014) .................................. 32

*Vasquez v. Superior Court,*
   (1971) 4 Cal.3d 800 .......................................................................... 23

*Vinh Nguyen v. Radient Pharm. Corp.,.*
   No. 11-00406,2014 WL 1802293 (C.D. Cal., May 6, 2014) .......................... 32

*Vo v. Los Virgenes Municipal Water Dist.,*
   (2000) 79 Cal.App.4th 442 ................................................................ 29

*Webb v. Board of Education,*
   471 U.S. 234 (1985) ........................................................................ 29

*Weeks v. Baker & McKenzie,*
   (1998) 63 Cal.App.4th 1128 .............................................................. 29

*Wershba v. Apple Computer, Inc.,*
   (2001) 91 Cal.App.4th 224 .......................................................... passim

vii

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT**

Exhibit 3
287

1

*Wren v. RGIS Inventory Specialists,*
   2011 U.S..Dist. LEXIS 38667 (N.D. Cal., Apr. 1, 2011) ............................................... 32

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT**

Exhibit 3
288

## INTRODUCTION

Plaintiff Antwon Jones ("Plaintiff") moves this Court for final approval of the proposed class action settlement (the "Settlement"), which resolves claims involving customer over-billing and other billing errors by the Los Angeles Department of Water and Power (the "LADWP") that were caused by, and are related to, the defective implementation of the LADWP's new Customer Care and Billing system (the "CC&B System") or damages incurred by customers arising from their participation in the LADWP's Solar Incentive Program.

This landmark Settlement involves over 1.6 million customers of the LADWP and **makes whole every customer** who was overcharged as a result of the wrongful billing practices effectuated by the City of Los Angeles (the "City"), by and through the LADWP ("Defendant"). This Settlement, however, goes well beyond the recovery of economic loss to the Settlement Class Members; it also achieves substantial reforms and governance changes to the LADWP's rules, practices, procedures, as well as the implementation of system performance metrics and corrective measures to stabilize the functioning of LADWP's billing system.

As demonstrated below, the Settlement is fair, reasonable and adequate, and more than satisfies all of the criteria for final approval. The Settlement Class also meets the requirements for class certification. Additionally, Class Notice, given pursuant to the Order Granting Preliminary Approval entered December 31, 2016 (hereinafter the "Preliminary Approval Order"), complied with all applicable laws and constituted the best notice practicable. Finally, as demonstrated herein, the requested amount of attorneys' fees and expenses, as well as service awards, are all reasonable.

Accordingly, Plaintiff respectfully requests that the Court enter an order: (i)  finally approving the Settlement; (ii) certifying the Settlement Class for Settlement purposes; (iii) finding that the Class Notice constituted the best practicable notice; (iv) awarding Class Counsel $17,453,977.00 in attorneys' fees and $2,712,035.28 in expenses ($2.5 million for reimbursement of expenses which have and will be incurred by the CC&B System Monitoring Expert and $212,035,28 for reimbursement of expenses incurred by all Plaintiffs' Counsel) and (v) awarding Plaintiffs Jones and Yaar Kimhi, Tahl Beckerman Megerdichian and Yelena Novak service awards in the amount of $5,000 each.

## STATEMENT OF FACTS

I.   **SUMMARY OF THE LITIGATION**

    A.   **The Kimhi Action**

In 2013, Plaintiff Yaar Kimhi began conducting an in-depth investigation into what he believed to be serious irregularities in the LADWP's Solar Photovoltaic Incentive Program designed to provide financial incentives to LADWP customers who purchase (or lease) and install their own solar power systems. *See Declaration of Jack Landskroner in Support of Plaintiff's Unopposed Motion for Final Approval and Award of Attorneys' Fees, Costs and Service Awards* (the "Landskroner Decl.") at Ex. 4 (Declaration of K.L. Myles in Support of Plaintiff's Unopposed Motion for Final Approval and Award of Attorneys' Fees, Costs and Service Awards (the "Myles Decl.") at ¶ 2.

In early January 2014, Kimhi met with attorneys at Knapp Petersen & Clarke ("KPC") to further discuss these irregularities which included, but were not limited to, LADWP's failure to timely inspect solar systems to permit the solar system to be activated by LADWP, failure account for the existence of solar systems such that the LADWP continued to charge for electric power without consideration for the solar power generated by these systems and other assorted defects in the solar billing.

On February 13, 2014, Plaintiff Kimhi, through KPC, filed a class action lawsuit against the City of Los Angeles, on behalf of himself and other similarly situated LADWP solar users (the "Kimhi Action"). Myles Decl. ¶4. Among other billing defects, LADWP unreasonably delayed in inspecting Kimhi's solar system and LADWP failed to account for the existence of the solar system for an extended period, such that LADWP continued to charge for electric power without consideration for the solar power generated by Kimhi's solar system. The Kimhi matter was assigned to the Honorable Jane Johnson. Myles Decl. ¶ 4. On February 14, 2014, Kimhi filed a first amended complaint. Myles Decl. ¶ 5.

On June 17, 2014, Kimhi served written discovery, including special interrogatories, requests for·production and requests for admission. In response to Kimhi's discovery requests, Defendant produced 1,277 documents.

On December 8, 2014, Kimhi noticed the deposition of the person most qualified of the City of Los Angeles ("PMQ") with a request for production of documents at time of deposition. Myles Decl. ¶ 13.

On January 2, 2015, Kimhi, represented by KPC, and Defendant, represented by Liner LLP and the City Attorney's Office attended an all-day mediation with the Hon. Enrique Romero, Judge (Ret.). A settlement was not reached and the parties continued to litigate Plaintiff Kimhi's claims. On April 15, 2015, Kimhi filed a second amended complaint to name Tahl Beckerman Megerdichian and Yelena Novak as additional class representatives.

**B.     The Jones Action**

On April 1, 2015, Plaintiff Jones filed a class action in the Superior Court of the State of California for the County of Los Angeles captioned, *Jones v. City of Los Angeles*, Case No. BC577267 (the "*Jones* Action"), which alleges claims involving customer over-billing and other billing errors by the LADWP that were caused by, and are related to, the defective implementation of the LADWP's new Customer Care & Billing System (the "CC&B System") or damages incurred by customers arising from their participation in the LADWP's Solar Incentive Program. Landskroner Decl. ¶4.

In addition to the *Kimhi* Action discussed above, four additional actions were filed against the City of Los Angeles, namely *Bransford, et al. v. City of Los Angeles*, Case No. BC565618 (the "*Bransford* Action"), *Fontaine v. City of Los Angeles, et al.*, Case No. BC571664 (the "*Fontaine* Action"), *Morski v. City of Los Angeles by, and though, the Los Angeles Department of Water & Power*, Case No. BC 568722 (the "*Morski* Action"), and *Macias v. City of Los Angeles erroneously sued as Los Angeles Department of Water and Power, et al.*, Case No. BC 594094 (the "*Macias* Action"), all of which asserted allegations similar to those asserted in the *Jones* Action. Landskroner Decl. ¶5. On May 22, 2015, the Court found that the *Jones, Fontaine, Bransford* and *Morski* Actions, were related but did not consolidate these actions. On October 22, 2015, the Court entered an order relating the *Kimhi* Action to the *Jones* Action. On November 3, 2015, the Court also related the *Macias* Action. Landskroner Decl. ¶6.

Both prior to, and after, the filing of the initial complaint in the *Jones* Action, Plaintiff Jones, by and through his counsel, undertook an extensive investigation into the failure of the

3

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Exhibit 3
291

1   CC&B system in order to understand the defects which directly resulted in the harms and losses

2   experienced by LADWP customers. Landskroner Decl. ¶7.

3       This investigation included interviews with confidential witnesses, multiple reviews of

4   documents and consultations with non- testifying experts, all of which confirmed the widespread

5   nature of the defects in the CC&B System. Plaintiff's counsel's investigation also revealed that

6   customers of the LADWP's Solar Incentive Program had been damaged as a result of extensive

7   delays in energizing their systems and by LADWP's failure to properly credit them for energy

8   produced. Landskroner Decl. ¶¶8 - 9.

9       **C.**    **The History of the Parties' Mediation Efforts**

10       Shortly after filing his initial complaint in the *Jones* Action, Plaintiff Jones submitted a

11   comprehensive settlement demand to Defendant, explaining the nature of the defects, as revealed

12   by Plaintiff's counsel's investigation, discussing the strength and merits of the *Jones* Action and

13   proposing a complex framework to structure a settlement. Landskroner Decl. ¶10. Class Counsel

14   and Counsel for Defendant met to further explore Plaintiff Jones' proposal and to initiate

15   settlement negotiations of the class claims. These negotiations advanced somewhat, but eventually

16   stalled. Landskroner Decl. ¶11.

17       Thereafter, the Parties agreed to continue their efforts to reach settlement by soliciting the

18   assistance of well-respected Los Angeles based mediator, the Honorable Dickran M Tevrizian

19   (Ret.). Judge Tevrizian conducted the initial mediation sessions on June 11 and 12, 2015.

20   Landskroner Decl. ¶12. After two full hard fought days of mediation, the parties reached an

21   agreement in principle on the essential terms of a proposed settlement, which included the

22   concession by Defendant that each and every LADWP customer that had been overcharged would

23   receive either a credit or refund in the amount of 100% of the overcharge. The Parties'

24   negotiations, although contentious, were undertaken in good faith and at arms' length with the

25   assistance of and through the diligent efforts of Judge Tevrizian. Landskroner Decl. ¶14;

26   *Declaration of Hon. Dickran Tevrizian (Ret.) in Support of Plaintiff's Unopposed Motion for*

27   *Final Approval and Award of Attorneys' Fees, Costs and Service Awards* ¶12.

28       On July 24, 2015, given the complexity of the proposed settlement and the detail necessary

    to verify the identity of the affected accounts and the accuracy of the refunds/credits due to

<div align="center">4

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT**</div>

Exhibit 3
292

customers, as well as defining the validation mechanisms for compliance and the progression of the negotiated remediation protocols, the Parties returned to mediation with Judge Tevrizian to continue discussions related to those and other non-material terms of proposed Settlement. Landskroner Decl. ¶16. On July 31, 2015, only after all essential and non-essential terms of the settlement were resolved by the Parties, the Parties, with the assistance of Judge Tevrizian, mediated the amount of attorneys' fees and costs to a successful conclusion. Landskroner Decl. ¶17. On or about August 7, 2015, the Parties executed a settlement agreement. Landskroner Decl. ¶18.

On September 11, 2015, Plaintiff moved the Court for preliminary approval of the Parties August 7, 2015 settlement agreement. At the conclusion of this initial hearing on Plaintiff's Motion for Preliminary Approval, the Court directed that the Parties obtain input with respect to how the settlement could be improved on behalf of Settlement Class Members. Landskroner Decl. ¶20.

In response to the Court's directive, the Parties met and conferred with counsel in the related actions to solicit suggestions as well as take additional steps to improve the settlement. Class Counsel also actively sought out such input from the Office of Public Accountability (OPA) / Ratepayer Advocate for the City of Los Angeles for the purpose of allowing the Ratepayer Advocate to review the settlement and make any recommendation the Ratepayer Advocate might offer to improve the settlement on behalf of Settlement Class Members. Landskroner Decl. ¶21.

After reviewing the Parties August 7, 2015 settlement, the Ratepayer Advocate made only a single recommendation namely, that the settlement include a provision that provides for the extension of time for Payment Arrangement schedules for certain customers of the LADWP. Class Counsel then negotiated with the City and LADWP to obtain the benefit requested by the Ratepayer Advocate. Landskroner Decl. ¶22.

On November 3, 2015, the Court re-convened the hearing on Plaintiff Jones' Motion for Preliminary Approval, which had been commenced on September 11, 2015. During the November 3, 2015 hearing, the Court again heard argument from the Parties in support of Preliminary Approval. Landskroner Decl. ¶23. At the conclusion of the November 3, 2015 hearing, the Court instructed the Parties to make twelve additional revisions to the settlement, in addition to the

5

1  revisions that had been called for by the Court during the September 11th hearing. Landskroner

2  Decl. ¶24.

3       On December 21, 2015, the Court re-convened the hearing on Plaintiff's Motion for

4  Preliminary Approval. At the conclusion of the December 21, 2015 hearing, the Court: (i)

5  conditionally preliminarily approved the settlement; (ii) appointed Antwon Jones as Class

6  Representative; (iii) appointed Yaar Kimhi as the Class Representative for the Solar Customer

7  Subclass; (iv) appointed Landskroner Grieco Merriman, LLC as Class Counsel; (v) appointed Mr.

8  Paul Bender as the Independent CC&B Billing System Monitoring Expert; (vi) appointed Dr.

9  Barbara Barkovich as the Special Master in this case; and (vii) instructed the parties to make four

10 additional changes to the settlement. The Court also continued Plaintiff's Motion for Preliminary

11 Approval to February 5, 2016, and then, again to April 15, 2016. Landskroner Decl. ¶25.

12      Since the December 21, 2015 hearing, the Independent CC&B Billing System Monitoring

13 team, along with Class Counsel, has conducted numerous one and two day-site visits, document

14 review and analysis sessions, and weekly conference calls with LADWP's personnel, Class

15 Counsel and LADWP's Counsel. Landskroner Decl. ¶26. Further, since December 21, 2015, the

16 Independent CC&B Billing System Monitoring team, acting on behalf of Plaintiff and the

17 Settlement Class, has been provided unrestricted access to necessary data, information and

18 personnel of the LADWP. Also since that time, Class Counsel and Counsel for LADWP have

19 worked cooperatively with the Independent CC&B Billing System Monitoring team to facilitate
their efforts. Landskroner Decl. ¶26.

20      Despite having made great efforts with respect to identifying Settlement Class Members and

21 the amount of damages incurred, on or about April 4, 2016, the Independent CC&B Billing System

22 Monitor determined that it was necessary for his team to add additional human resources to the

23 *Jones* project and requested that the Court provide the Parties with additional time to perform the

24 work required of the Independent CC&B System Monitoring Expert. Accordingly, the Independent

25 CC&B Billing System Monitor requested that the Court continue the hearing on Plaintiff's Motion

26 for Preliminary Approval from April 15, 2016 to July 29, 2016. Landskroner Decl. ¶27.

27      As detailed in the ***Report of Independent CC&B Systems Monitor Concerning Status of***

28 ***Class Action Settlement for First and Second Quarters of 2016*** filed with the Court on July 14,

6

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

Exhibit 3
294

2016 (the "First and Second Quarter Report"), following an April 12th through April 29th, 2016 extended site visit, the Independent CC&B Billing System Monitor informed counsel for the Parties that the then-current Scope of Work and schedule would need to be significantly revised to allow additional time for the LADWP to undertake the additional work the Monitoring team requested. The Independent CC&B Billing System Monitor also stated that the Monitoring team would, itself, use this additional time to: (i) perform various verification tasks and data analyses required to ensure that the mechanisms and methodologies the LADWP utilized are accurate and reliable; and (ii) continue to work closely with LADWP IT Professionals to ensure that the Settlement's goal of refunding 100% of all overcharges to LADWP customers is achieved. Landskroner Decl. ¶28.

Significantly, the Independent CC&B Billing System Monitor also: (i) informed the Court that the amount to be refunded to Settlement Class Members would increase by at least $5.4 million dollars based on additional work the LADWP performed; and (ii) requested that the Court extend the deadline for the LADWP to complete the programming and testing necessary to identify *all* LADWP customers who have been overcharged and quantify the amounts of such overcharges to November 18, 2016. Landskroner Decl. ¶29.

On July 28, 2016, the Court granted the Independent CC&B Billing System Monitor's request and extended the deadline to November 18, 2016 to complete the programming and testing necessary for the LADWP to identify customers who have been overcharged and quantify the amounts of such overcharges. Landskroner Decl. ¶30.

Because the Court permitted the Parties until November 2016 to complete all of the programming and testing necessary to confirm the accuracy of the mechanisms utilized by the LADWP to: (i) identify customers who have been overcharged; and (ii) quantify the amounts of such over charges -- and because the parties have worked in a highly cooperative and diligent manner under the watchful eye of the independent monitoring team, additional credits and refunds were identified totaling approximately $22.8 million dollars beyond the initial estimate of $44.7 million in refunds and credits identified to the Court at the December 21, 2015 hearing. As a result, the value of the original settlement increased to $67.5 million. Landskroner Decl. ¶31.

Due, in part to the identification of additional damages, on October 31, 2016, the Parties participated in another day-long mediation at JAMS in Los Angeles before the Judge Tevrizian. During the October 31st mediation, the Parties negotiated the following revisions to the settlement: (i) payment of an additional $22.8 million to Settlement Class members who were overcharged, (ii) a revision to Rule 17 of the Rules Governing Water and Electric Service; (iii) a revision to the 18 month Remediation Period; (iv) a revision to the date by which the Tiger Team will be operational; (v) a revision to the scope of work the Independent CC&B Billing System Monitor is to perform involving the Tiger Team and claims administration activities; (vi) a revision to the date by which the Information Technology Department Project Management Office will be operational; (vii) a revision to the claims process for certain Solar Subclass members; and (viii) a revision to the amount of attorneys' fees and expense reimbursement to be sought by Class Counsel. Landskroner Decl. ¶32. These changes were incorporated into the Settlement that is the subject of this instant motion. Landskroner Decl. ¶33.

## II.     SUMMARY OF THE SETTLEMENT

### A.     The Proposed Settlement Class

The Settlement is entered into on behalf of the following Settlement Class:

> All LADWP customers who were over-charged for electric, water, sewage or sanitation services between the dates of September 3, 2013 and December 30, 2016, and who are entitled to credits or refunds for electric, water, sewage or sanitation services and/or for participation in the LADWP's solar incentive program between February 13, 2010 and December 30, 2016.

> Expressly excluded from the Settlement Class are the Judge to whom this case is assigned, any members of the Judge's immediate family, and counsel of record in this action.

Furthermore, the Settlement Class is comprised of the following 7 Subclasses:

- **Overbilled Subclass** - The Overbilled Subclass is comprised of all LADWP customers that were overbilled as a result of being charged an incorrect rate, incorrect amount of consumption, incorrect utility tax rate or who did not have a discount applied.

- **Incorrect Fee Subclass** - The Incorrect Fee Subclass is comprised of all LADWP customers that were charged an incorrect fee, including but not limited to late payment fees, reconnect fees and/or start service fees.

8

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

Exhibit 3
296

- **Unrefunded Balance Subclass** - The Unrefunded Balance Subclass is comprised of all LADWP customers that: (i) have "Closed Accounts" with credit balances and (ii) are owed refunds that have been withheld by the LADWP during the period of September 3, 2013 to December 30, 2016.

- **Solar Subclass** - All LADWP that have installed solar systems and applied to participate in the LADWP's solar incentive program from February 13, 2010 to December 30, 2016 and were not: (i) timely included in the LADWP's solar incentive program or (ii) provided credit for excess energy generated.

- **Premise Condition/Estimated Bill Subclass** - The Premise Condition/Estimated Bill Subclass is comprised of all LADWP customers that: (i) unbeknownst to the customer, had a premise condition that caused excessive consumption of water and/or power; (ii) received estimated bills for multiple billing periods after September 3, 2013; (iii) because of these estimated bills, were prevented from timely discovering the premise condition; and (iv) were charged for greater quantities of water, power or sewage than they otherwise would have been charged.

- **Automatic Bill Payment/Bank Overdraft Charge Subclass** - The Automatic Bill Payment/Bank Overdraft Charge Subclass is comprised of all LADWP customers that: (i) were enrolled in an automatic bill payment plan with a bank and (ii) were charged overdraft fees because the LADWP charged the customer an incorrect amount, which, in turn, resulted in the customer's bank account being overdrawn.

- **Omnibus Subclass -** All LADWP customers that believe that they were incorrectly assessed a charge associated with their power, water, sewage or trash collection at any time from September 3, 2013 to December 30, 2016, that is not covered by any of the Subclasses listed herein; or (ii) otherwise damaged as a result from their participation in the LADWP's solar incentive program at any time from February 13, 2010 to December 30, 2016.

Landskroner Decl. Ex. 1 at 15-16

**B.**     **Benefits to the Settlement Class**

The Settlement provides Settlement Class Members with two types of relief: (i) monetary relief and (ii) non-monetary remedial relief.

**1.   Monetary Relief**

Settlement Class Members of the: (i) Overbilled Subclass; (ii) Incorrect Fee Subclass; (iii) Unrefunded Balance Subclass and (iv)Solar Subclass will be pre-identified as members of one or more of these Subclasses based upon internal records of the LADWP. The LADWP will credit (in the case of current customers) or refund (in the case of former customers) 100% of any damages incurred by these Subclass Members during the period September 3, 2013 through December 30,

9

2016 (for members of the Overbilled, Incorrect Fee and Unrefunded Balance Subclasses) or from February 13, 2010 through December 30, 2016 (for members of the Solar Subclass). The amounts to be credited or refunded shall be determined by the LADWP, and the methodology used to determine the amounts shall be verified by the Independent CC&B System Monitoring Expert and subject to Court approval. Members of these Subclasses will not be required to submit a Claim Form in order to recover any funds. Rather, any amounts owed to these Subclass Members will be automatically credited to their LADWP account or refunded by check automatically cut by the LADWP.

Settlement Class Members of the: (i) Premise Condition/Estimated Bill Subclass; and (ii) Automatic Bill Payment/Bank Overdraft Charge Subclass will be pre-identified as members of each of these Subclasses from the internal records of the LADWP. Members of these Subclasses must submit a valid claim form substantiated by the documentary evidence specified in the Claim Form to the Court-appointed Claims Administrator in order to determine the amount by which they were overcharged by the LADWP. The LADWP will credit (in the case of current customers) or refund (in the case of former customers) 100% of any amounts that the LADWP overcharged these Subclass Members during the period September 3, 2013 through December 30, 2016. The amounts to be credited or refunded shall be determined by the LADWP, and the methodology used to determine the amounts shall be verified by the CC&B System monitoring expert and subject to Court approval.

Finally, in recognition of the possibility that some LADWP customers who have not been "pre-identified" through LADWP's internal records may believe that they were: (i) incorrectly assessed a charge associated with their power, water, sewage or trash collection at any time from September 3, 2013 to the present or (ii) otherwise damaged as a result from their participation in the LADWP's solar incentive program at any time from February 13, 2010 to December 30, 2016 (i.e., Omnibus Subclass Members), such Omnibus Subclass Members will receive a credit or refund of 100% of any amounts of which they were overcharged by the LADWP during the period September 3, 2013 through December 30, 2016. Landskroner Decl. Ex. 1 at 16.

---

<div align="center">10</div>

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Exhibit 3
298

1     The value of this monetary relief portion of the Settlement is at least $67 million.

2   Declaration of the Independent CC&B System Monitor (the "Independent CC&B System Monitor

3   Decl.") at ¶37.

4                    **2.      Non-monetary Remedial Relief**

5     The Settlement also provides non-monetary remedial relief including: (i) the creation and

6   adoption of certain billing system metrics; (ii) the appointment of an independent billing system

7   monitoring expert; (iii) audits of LADWP's billing system to confirm billing accuracy; (iv) the

8   creation and implementation of a team at LADWP to address unique or complex billing issues; (v)

9   the adoption of an amendment to the Rules Governing Water and Electric Service to provide for a

10   shorter period of time for which LADWP may collect payment from customers whose bills are

11   delayed due to billing errors; (vi) the creation and implementation of an information technology

12   Project Management Office; and (vii) a payment arrangement for back-billed customers allowing

13   for up to 4 years to pay back the back-billed amount without penalty or interest,  in equal monthly

14   installments, provided such customers remain current on their most recent bill. Landskroner Decl.

15   Ex. 1 at 21 - 42.

16     The value of these non-monetary remedial measures which mandate the creation and

17   implementation of system performance metrics as well as a required continued compliance with

18   these metrics is at least $20 million. Independent CC&B Monitor Decl. ¶37.

19                    **C.      Narrowly Tailored Release**

20     The Settlement designates the claims released against Defendant. .For all claims other than

21   solar, this Release is effective for claims that have accrued during the period of September 3, 2013

22   through December 30, 2016. For solar claims arising out of the solar incentive program and/or

23   credit for excess energy, this Release is effective for claims accruing during the period from

24   February 13, 2010 to December 30, 2016. Released claims include:

25

26

27

28

any claims, damages, suits, demands, liabilities, judgments, losses and causes of action which have accrued as of the date of entry of the Order of Preliminary Approval relating to or arising from the billing issues alleged in the operative pleadings in the Actions, including:

(i)      overbilling as a result of charging an incorrect rate, incorrect amount of consumption, incorrect utility tax rate or the failing to apply a discount;

(ii)      billing incorrect fees, including but not limited to late payment fees, reconnect fees and/or start service fees;

(iii)      retaining refunds during the period of September 3, 2013 to December 30, 2016 that were due;

(iv)      billing for greater quantities of water, power or sewage than otherwise would have been charged but for the existence of a premise condition;

(v)      the assessment of overdraft fees resulting from the LADWP having charged customers an incorrect billing amount; and

(vi)      for solar customers, delay in providing a reservation confirmation to and/or connecting the solar system, and/or failure to bill for energy consumed and/or generated; and/or failure to credit for excess energy generated by the customer's solar power system at any time from February 13, 2010, through December 30, 2016,

sounding in law or equity, seeking damages or any other relief, that are now recognized by law or that may be created or recognized in the future by statute, regulation, judicial decision or in any other manner, based upon any federal or state statutory or common law including but not limited to, claims sounding in tort, contract and the consumer protection laws of the United States or of any state or other jurisdiction within the United States, and all claims, damages, suits, demands, liabilities, judgments, losses or causes of action which have been, might have been, are now, or could be asserted by any plaintiff or any Settlement Class Member arising out of, based upon, or related to, in whole or in part, the facts and circumstances underlying the claims and causes of action set forth in the Actions.

Released Claims include claims, accrued during the time periods set forth above, for economic and non-economic damages that were proximately caused by the LADWP having overbilled its customers during the time periods set forth in the operative Complaint in the Jones Action. These economic and non-economic damages may be direct, incidental, or consequential and, by way of example, include:   repair costs; services costs (e.g., the cost of a plumber or electrician to examine or repair a premise condition); finance, interest, or overdraft charges imposed by a third party; costs related to or arising from erroneous disconnections; reconnection fees; loss of perishable items; damage to personal property; or loss of wages or business income. All such losses and damages are expressly deemed Eligible Claims pursuant to this Revised Agreement and a Settlement Class

Member is entitled to seek recovery of 100% of such losses and damages through the Omnibus claims process.

Released Claims also include claims, accrued during the time periods set forth above, for economic and non-economic damages that resulted in overbilling customers and were proximately caused by the LADWP's failure to: (i) timely undertake field investigations, conduct field maintenance, perform meter reads, or provide accurate information concerning actual utilization; (ii) prorate or allot utilization in accordance with applicable rate schedules; and (iii) comply with disconnection rules and the imposition of associated charges. All such losses and damage are expressly deemed Eligible Claims pursuant to this Revised Agreement and a Settlement Class Member is entitled to seek recovery of 100% of such losses and damages through the Omnibus claims process.

Released Claims do not include:

(i)     the claims asserted in the action, the *Morski* Action, which allege that the LADWP violated Ordinance Nos. 180127, 182273, and 170435 (as amended by Ordinance No. 171639, Ordinance No. 173017, Ordinance No. 175964, Ordinance No. 177968 and Ordinance No. 179802) by assessing tiered billing without obtaining actual monthly meter reads and without providing regular, timely, and accurate monthly bills to its customers ("Non-Monthly Tiered Billing Claims") This released claims exclusion also includes within its scope the assessment of tiered billing without obtaining actual monthly meter reads and without providing regular, timely, and accurate monthly bills to its customers pursuant to Ordinance Nos. 184133 and 184130;

(ii)    Causes of Action 27-32 in the Third Amended Complaint filed on November 10, 2016 in the *Macias* Action;

(iii)   claims for violations of California's Bane Act, Civil Code § 51.2;

(iv)    claims arising out of field work investigations created after December 21, 2015;

(v)     claims arising out of LADWP's failure to record or credit payments made by customers;

(vi)    claims arising from the Back-Billing of customers during the period September 3, 2013 through September 10, 2015; and

(vii)   claims for personal injury.

Landskroner Decl. Ex. 1 ¶39.

## D.   Requested Attorneys' Fees and Costs and Service Awards

The Settlement provides that Class Counsel may apply for an award of attorneys' fees in an amount not to exceed $19 million and expenses in an amount not to exceed $3,000,000

13

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

Exhibit 3
301

constituting reimbursement of expenses incurred by the CC&B System Monitoring Expert to be capped at $2,500,000 and reimbursement of expenses incurred by all Plaintiffs' Counsel, capped at $500,000. Landskroner Decl. Ex. 1 at 57. Here, Class Counsel has applied for attorneys' fees in the amounts of $17,453,977 and seeks reimbursement of expenses in the amount of $2,712,035.28 ($2.5 million for reimbursement of expenses which have and will be incurred by the CC&B System Monitoring Expert and $212,035,28 for reimbursement of expenses incurred by all Plaintiffs' Counsel).

The Settlement further provides that Plaintiff may seek service awards. Landskroner Decl. Ex. 1 at 57. By this motion, Plaintiff seeks service awards for Plaintiffs Jones and Yaar Kimhi, Tahl Beckerman Megerdichian and Yelena Novak in the amount of $5,000 each. These attorney's fees, costs and service awards are reasonable and justified, as demonstrated herein.

## III. PRELIMINARY APPROVAL

On December 21, 2015, the Court conditionally, preliminarily approved the Settlement and on December 31, 2016, entered the Preliminary Approval Order granting preliminary approval of the proposed Settlement, directed notice to Settlement Class Members, and scheduled a hearing on final approval. Landskroner Decl. ¶25. Class Notice was disseminated to the Settlement Class by Kurtzman Carson Consultants, LLC ("KCC"), the Court-appointed Claims Administrator. *See, generally, Declaration of Ryanne Cozzi On Behalf of Claims Administrator In Support of Plaintiff's Unopposed Motion for Final Approval and Award of Attorneys' Fees, Costs and Service Awards* (the "Cozzi Decl."). Pursuant to the Preliminary Approval Order, Settlement Class Members have until June 5, 2017, to submit a claim, object to the Settlement or exclude themselves from it. As of the date of this filing, only two customers have objected to the Settlement. Cozzi Decl. ¶12.

In light of the foregoing, the Settlement easily satisfies the standard for final approval and class certification. Additionally, as explained below, the Class Notice, disseminated pursuant to the Preliminary Approval Order, constituted the best notice practicable. Finally, the requested attorneys' fees, expenses and service awards are reasonable. Accordingly, Plaintiff respectfully requests that the Court enter an order: (i)  finally approving the Settlement; (ii) certifying the Settlement Class for Settlement purposes; (iii) finding that the Class Notice constituted the best

14

practicable notice; (iv) awarding Class Counsel $17,453,977 in attorneys' fees and $2,712,035.28 in expenses ($2.5 million for reimbursement of expenses which have and will be incurred by the CC&B System Monitoring Expert and $212,035,28 for reimbursement of expenses incurred by all Plaintiffs' Counsel) and (v) awarding Plaintiffs Jones and Yaar Kimhi, Tahl Beckerman Megerdichian and Yelena Novak service awards in the amount of $5,000 each.

## **ARGUMENT**

### I. **THE PROPOSED SETTLEMENT MEETS THE STANDARDS FOR FINAL APPROVAL**

California Court Rule 3.769(g) states that "[b]efore final approval, the court must conduct an inquiry into the fairness of the proposed settlement." Cal. R. Ct. 3.769(g). To be approved, a class action settlement must be "fair, adequate, and reasonable" and fall within the "range of approval." *Dunk*, 48 Cal.App.4th at 1801-02. A court's analysis of a settlement should be conducted in light of the favorable view of settling disputes. *See, e.g., Stambaugh v. Superior Court*, 62 Cal.App.3d 231, 236 (1976). Indeed, this is particularly so in class actions where substantial resources will be conserved by avoiding litigation: "In reviewing the fairness of a class action settlement, "'[d]ue regard' ... 'should be given to what is otherwise a private consensual agreement between the parties. The inquiry "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." [Citation.] ...'" *Cellphone*, 186 Cal.App.4th at 1389.

Courts have found that a "presumption of fairness" is created where, like here (as demonstrated below), a settlement has been "reached through arm's-length bargaining," the "investigation and discovery are sufficient to allow counsel and the court to act intelligently" and "counsel is experienced in similar litigation." *Cellphone Termination Fee Cases* (2010) 186 Cal.App.4th 1380, 1389; *Dunk*, 48 Cal.App.4th at 1802; *Wershba*, 91 Cal.App.4th at 245.

Because the presumption of fairness is "only an initial presumption; a trial court's approval of a class action settlement will be vacated if the court 'is not provided with basic information about the nature and magnitude of the claims in question and the basis for concluding that the consideration being paid for the release of those claims represents a reasonable compromise." *Munoz v. BCI Coca-Cola Bottling Co. of Los Angeles* (2010) 186 Cal.App.4th 399, 408; *see*

15

*also Clark v. American Residential Services LLC* (2009) 175 Cal.App.4th 785, 801(*Clark*) [the trial court must have information necessary "for 'an understanding of the amount that is in controversy and the realistic range of outcomes of the litigation.'"].)

Beyond determining whether a settlement is entitled to a presumption of fairness, a court must further consider factors such as: (1) the strength of the plaintiffs' claims, (2) the risk and expense of further litigation, (3) the risk of maintaining class action status through trial, (4) the amount offered in settlement, (5) the extent of discovery completed, (6) the experience and views of counsel and (7) the presence of a government participant (the "*Dunk* Factors"). *Dunk,* 48 Cal.App.4th at 1801. However, "[t]he list of factors is not exclusive and the court is free to engage in a balancing and weighing of factors depending on the circumstances of each case." *Wershba*, 91 Cal.App.4th at 245.

As demonstrated herein, the Settlement is entitled to a presumption of fairness. Furthermore, the Settlement satisfies the *Dunk* Factors. Accordingly, final approval is warranted.

### A.     The Settlement Is Entitled to a Presumption of Fairness

#### 1.     The Proposed Settlement Was Reached Through Arm's-Length Bargaining

The proposed Settlement is presumptively fair because it was reached following protracted, and at times contentious, arms-length negotiations. Landskroner Decl. ¶54; Tevrizian Decl. ¶9, 24. Although the Parties initiated settlement discussions on their own, the Parties engaged the services of the Hon. Dickran Tevrizian (Ret.) once informal settlement conversations stalled. Landskroner Decl. ¶55, Tevrizian Decl. ¶5. The fact that mediation was overseen by a neutral third party is proof of the non-collusive nature of the negotiations. *Clark v. American Residential Services LLC* (2009) 175 Cal.App.4th 785, 800 ("'The court undoubtedly should give considerable weight to the competency and integrity of counsel and the involvement of a neutral mediator in assuring itself that a settlement agreement represents an arm's-length transaction entered without self-dealing or other potential misconduct.'").

#### 2.     Plaintiff's Investigation and Discovery Favors A Finding That The Settlement Is Presumptively Fair

Extensive discovery is not a prerequisite to the approval of a settlement. *See 7-Eleven*, 85 Cal.App.4th at 1150 ("formal discovery is not a necessary ticket to the bargaining table where the

16

---

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Exhibit 3
304

parties had sufficient information to make an informed.")  Given the: (i) significant investigation conducted by Class Counsel, both prior to and after the filing of the initial complaint in this Action (ii) the access to data and documents provided to Class Counsel and the Independent CC&B System Monitoring Expert and (iii) confirmatory discovery that Class Counsel has conducted in working hand in hand with the Independent Monitoring team throughout the verification process while determining the accuracy and reliability of the mechanism for identifying affected accounts, Class Counsel is in an excellent position to judge the strengths and weaknesses of the claims asserted by Plaintiff, as well as the propriety of the Settlement.

Prior to and after the filing of the initial complaint, Class Counsel conducted an extensive and very lengthy investigation into the matters alleged in the initial complaint, which included, among other things, interviewing current and former LADWP employees and working closely with investigators and Plaintiff's non-testifying experts to diligently investigate the facts relevant to the merits of the claims asserted in the Action, including the functionality of the CC&B System and the LADWP's solar program. Landskroner Decl. ¶57.

Additionally, the Independent CC&B System Monitoring Expert, on behalf of Plaintiff and the Settlement Class, has spent hundreds of hours reviewing LADWP's internal protocols, SQL queries, and specific methodologies LADWP used to identify all Settlement Class Members and to calculate damages. Landskroner Decl. ¶58.

Finally, Class Counsel has conducted worked with the monitoring team on confirming the following issues: (i) the internal methodology relied upon for the evaluation of all Settlement Class Members' accounts to determine credit or refund eligibility and amount of credit or refund; (ii) criteria used for identification of membership in each identified Subclass; (iii) the total payment of credits and/or refunds issued to customers and from ongoing remediation efforts; and (iv) remediation implementation protocols. Landskroner Decl. ¶59.

In light of Class Counsel's extensive investigation and access to discovery both through the Independent CC&B System Monitoring Expert and independently, Class Counsel has developed sufficient information to conclude that the Settlement is in the best interest of the Settlement Class, further confirming that the Settlement is entitled to a presumption of fairness.

3. **The Recommendation of Experienced Counsel Favors A
Finding That The Settlement Is Presumptively Fair**

Class Counsel, having carefully considered and evaluated, among other things, the relevant legal authorities and evidence to support the claims asserted against Defendant, the likelihood of prevailing on Plaintiff's claims, the risk, expense and duration of continued litigation and the likelihood of appeals, has concluded that the proposed Settlement is fair, reasonable, and adequate and in the best interest of the Settlement Class. Landskroner Decl. ¶61. The fact that Class Counsel, an experienced complex litigator, supports the Settlement further demonstrates that the Settlement is presumptively fair.

Class Counsel has significant experience in complex class action litigation and has negotiated numerous other substantial class action settlements throughout the country. Where, as here, the Settlement is the product of serious, informed, non-collusive negotiations and years of investigation into an understanding of the origins of Defendant's overbilling practices, significant weight should be attributed to the belief of experienced counsel that the Settlement is in the best interest of the Settlement Class. *See In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.,* MDL Docket No. 901, 1992 U.S. Dist. LEXIS 14337, at *12-13 (C.D. Cal., June 10, 1992); *In re Wash. Pub. Power Supply Sys. Sec. Litig.,* 720 F. Supp. 1379, 1392 (D. Ariz. 1989).

Additionally, it is the opinion of Judge Tevrizian, a former United States District Court Judge and well–respected mediator, that the Settlement provides an excellent recovery for Settlement Class Members and is fair, reasonable and adequate. Tevrizian Decl. ¶32.

Accordingly, based on the foregoing, the Settlement is entitled to a "presumption of fairness."

B. **The Settlement Satisfies The *Dunk* Factors**

Although the Settlement is entitled to a "presumption of fairness," as set forth below, the Settlement also satisfies the *Dunk* Factors, and, accordingly, warrants final approval.

1. **The Strength of Plaintiff's Case Compared to the Risk,
Expense, Complexity, and Likely Duration of Further
Litigation Favors Final Approval**

Although Plaintiff believes that it would have successfully prevailed on the merits of its claims against Defendant, there is no guarantee. Landskroner Decl. ¶63. Defendant could have

18

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT**

Exhibit 3
306

asserted numerous factual and/or legal defenses that could have defeated Plaintiff's claims, in whole or in part. This is particularly true, here, because this Action is a complex class action that involves numerous novel factual and legal issues compounded by the complexity of Defendant's billing system and operations. Landskroner Decl. ¶63. Even if Plaintiff had prevailed at trial, Defendant right to appeal, could lead to further expense, delay, and uncertainty. Landskroner Decl. ¶64. Thus, further adjudication of this case carried significant risks to Plaintiff and Settlement Class Members. This Settlement, however, eliminates the possibility that Settlement Class Members might not recover anything at all. Landskroner Decl. ¶65. By obtaining a settlement that provides 100% of damages incurred, Plaintiff has secured a guaranteed victory for the Settlement Class Members without further delay.

### 2. The Risk of Maintaining Class Action Status Through Trial Favors Final Approval

Although Plaintiff believes that this case can be certified as a class action, as set forth below, Plaintiff recognizes that Defendant intended to zealously oppose class certification. Landskroner Decl. ¶66. Even if Plaintiff prevailed at trial, Defendant would have likely appealed the Court's class certification decision and judgment at trial. While Plaintiff is confident that this action could be properly maintained as a class action, these risks of maintaining class action status through trial weigh in favor of final approval of the Settlement. *Id.*

### 3. The Amount Offered in Settlement Favors Final Approval

The Settlement provides 100% relief to Settlement Class Members. As explained herein, as well as in the Landskroner Declaration, the Settlement provides Settlement Class Members with 100% of any amounts that Settlement Class Members were overcharged by the LADWP for services and/or damaged as a result of participation in LADWP's Solar Incentive Program. Landskroner Decl. ¶67. This monetary relief is valued at over $67 million. Independent CC&B Monitor Decl. ¶37. Furthermore, the Settlement's non-monetary relief adds substantial value to the proposed Settlement, including an additional $20 million. *Id.*

As set forth in the Cozzi Declaration, the Settlement stands to provide concrete relief to Settlement Class Members. To date, 83,652 subclass claims over $100 have been identified and quantified; 839,450 subclass claims under $100 have been identified and quantified; and the largest subclass claim identified and quantified is in the amount of $1,036,007.35. Cozzi Decl. at ¶13.

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Exhibit 3
307

Accordingly, the amount of the recovery provided by the Settlement strongly favors final approval.

### 4. The Extent of Discovery Completed Favors Final Approval

As discussed above, Class Counsel, independently, and in conjunction with the Independent CC&B System Monitoring Expert, has conducted sufficient discovery to conclude that the Settlement is in the best interest of the Settlement Class. Landskroner Decl. ¶70. Accordingly, this *Dunk* Factor weighs in favor of final approval.

### 5. The Experience and Views of Counsel Favors Final Approval

Also as discussed above, Plaintiffs' Counsel, as well as Judge Tevrizian, the mediator, believe that this Settlement is fair and reasonable and, under the circumstances, represents the best possible recovery for Settlement Class Members. Landskroner Decl. ¶71; Tevrizian Decl. ¶32. This *Dunk* Factor, therefore, weighs in favor of final approval.

### 6. Presence of A Governmental Participant Favors Final Approval

Finally, the fact that Defendant is a governmental entity weighs in favor of final approval. Landskroner Decl. ¶72. *See Touhey v. United States*, 2011 U.S. Dist. LEXIS 81308, **20-21 (C.D. Cal., July 25, 2011).

Based on the foregoing, the Settlement satisfies the *Dunk* Factors and, therefore, demonstrates that final approval is warranted.

### C. The Overwhelmingly Positive Reaction of the Settlement Class Members To the Settlement Confirms That Final Approval Is Warranted

The positive reaction of Settlement Class Members to the Settlement confirms that the Settlement should be finally approved.

As set forth in the *Cozzi* Decl., 2,605,826 Class Notices were sent vial U.S. mail and email to Settlement Class Members by the Claims Administrator and as of the filing of this motion, only two customers have objected and only 417 customers have opted out. Cozzi Decl. ¶¶3, 4, 10, 11. Stated differently, only .0001% of the Settlement Class Members have objected and only .0261%

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT**

Exhibit 3
308

1  have opted out. Thus, the reaction of the Class to the Settlement has been overwhelmingly favorable

2  and, therefore, favors final approval.

3      Furthermore, the two objections that have been filed; one by Mr. Stanley Furmanski and one

4  by Mr. Marc Wutschke, are both without merit.

5      *The Furmanski Objection –*   The crux of Mr. Furmanski's objection is that the Settlement

6  purportedly does not prevent the LADWP from issuing bills that "demand money in excess of

7  usage." Furmanski Obj. The Settlement, however, squarely addresses the concerns raised in Mr.

8  Furmanski's objection. In particular, the Settlement provides for comprehensive remediation

9  measures to consistently deliver timely *and accurate* bills—the process for which will verified by

10  the Independent CC&B System Monitoring Expert, subject to review by the Court. The Settlement

11  also provides for audits of LADWP's CC&B system to ensure long-term results for timeliness and

12  billing accuracy. Accordingly, these safeguards provided by the Settlement are designed to address

13  the very concern of Mr. Furmanski. Accordingly, Mr. Furmanski's objection to the Settlement

14  which does, indeed, address his very concerns, is without merit and should be overruled.

15      The *Wutschke Objection* – Mr. Wutschke objects, not to the Settlement, itself, but rather to

16  the amount of attorneys' fees sought, which Mr. Wutschke "suspects" is "excessive." Wutschke

17  Obj. at 1. As set forth in Section IV below, however, the amount of attorneys' fees sought,

18  $17,453,977, is not "excessive" but is reasonable, as demonstrated by application of the lodestar

19  analysis. Also as explained below, because the requested attorneys' fees represents only 20% of the

20  total value of the Settlement (at least $87 million constituting $67 million in pre-identified

21  economic damages plus $20 million for remediation measures to stabilize performance and

22  functioning of the CC&B system.), which is well below the 25% benchmark of reasonableness

23  recognized by California courts, the requested attorneys' fee is not excessive. Accordingly, Mr.

24  Wutchke's objection is without merit and should be overruled.

**II.   THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS**

25      In addition to determining whether final approval is appropriate, the Court must determine

26  whether the Settlement Class satisfies the requirements for class certification. Code of Civil

27  Procedure Section 382 authorizes the use of the class action "when the question is one of a common

28  or general interest, of many persons, or when the parties are numerous, and it is impracticable to

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

Exhibit 3
309

bring them all before the court, one or more may sue or defend for the benefit of all." Certification
of a class under California law "'requires proof (1) of a sufficiently numerous, ascertainable class,
(2) of a well-defined community of interest, and (3) that certification will provide substantial
benefits to litigants and the courts, i.e., that proceeding as a class is superior to other methods.'" *In
re Tobacco II Cases* (2009) 46 Cal.4th 298, 313 . The legal standard applicable to a class
certification motion is whether the plaintiff has "established 'by a preponderance of the evidence
that the class action proceeding is superior to alternate means for a fair and efficient adjudication of
the litigation.'" *Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 332. Of note,
"[t]he certification question is 'essentially a procedural one that does not ask whether an action is
legally or factually meritorious.'" *Id.* at 326. A review of these factors demonstrates that the
Settlement Class should be certified.

### A.    The Settlement Class Is Sufficiently Numerous

Under California law, a class that is comprised of 30 to 40 class members satisfies the
numerosity requirement because joinder of that many class members is impractical. *See Rose v. City
of Hayward* (1981) 126 Cal.App.3d 926, 934; *Collins v. Rocha* (1972) 7 Cal.3d 232, 235. Here,
there are at least 1.6 million Settlement Class Members, which easily satisfies the numerosity
requirement. Landskroner Decl. ¶80. Additionally, implicit in the requirement of numerosity is that
the identities of class members be ascertained. *See Daar v. Yellow Cab Co.* (1967) 67 Cal.2d 695,
706. "Class members are ascertainable where they may be readily identified without unreasonable
expense or time by reference to official records." *See Bufil v. Dollar Financial Group, Inc.* (2008)
162 Cal.App.4th 1193, 1206. Here, the Settlement Class is ascertainable because members have
been identified through Defendant's internal records. Landskroner Decl. ¶82.

### B.    There Is a Well-Defined Community of Interest Among the Class

The "community of interest requirement embodies three factors: (1) predominant common
questions of law or fact; (2) class representatives with claims or defenses typical of the class; and
(3) class representatives who can adequately represent the class."' *In re Tobacco II Cases*, 46
Cal.4th 298, 313. All of those factors are satisfied, here.

### 1.   **Common Questions of Law and Fact Predominate**

The "predominance" requirement is satisfied when questions of law or fact common to the class predominate over individual questions. Common questions may predominate even if "each member of the class must prove his separate claim to a portion of any recovery by the class." *Vasquez v. Superior Court* (1971) 4 Cal.3d 800, 809. While in a disputed class certification motion the predominance element is extremely important, courts apply a "lesser standard of scrutiny in settlement cases" where the court does not need to concentrate on whether the lawsuit is manageable for a common trial. *See Dunk v. Ford Motor Co.* (1996) 48 Cal.App.4th 1794, 1807 n.19

Here, the Settlement Class satisfies the predominance requirement because this Action centers on common legal questions including whether: (i) the LADWP's billing practices constitute fraud and/or violations of consumer protection statutes; (ii) the LADWP breached its contracts with Settlement Class Members by overbilling them for services that they did not consume; (iii) the CC&B System is defective; and (iii) defects in the CC&B System caused Settlement Class Members to incur damages, and the amount of such damages. Landskroner Decl. ¶84.

### 2.   **Plaintiffs Jones and Kimhi's Claims Are Typical of the Settlement Class**

A class representative's claims are typical of the class if the individual facts applicable to the class representative are very similar, but not necessarily identical, to the facts that are common to the class. *See Classen v. Weller* (1983) 145 Cal.App.3d 27, 45; *Richmond v. Dart Indus.*, (1981) 29 Cal.3d 462, 470. It is sufficient that the class representative is similarly situated so that he or she will be motivated to litigate on behalf of all class members. *Classen,* 145 Cal.App.3d at 46. Furthermore, "[t]he fact that the class representatives had not personally incurred all of the damages suffered by each different class member" does not defeat a motion for class certification. *See Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, 238.

Here, Plaintiff Jones' injuries arise out of the fact that Plaintiff Jones was overcharged as a result of Defendant's defective billing practices, including Defendant's use of its defective CC&B System. The injuries incurred by other members of the Settlement Class are also attributable to Defendant's defective billing practices, including Defendant's use of its defective CC&B System. Landskroner Decl. ¶85; *Declaration of Antwon Jones In Support of Plaintiff's Unopposed Motion*

23

*for Final Approval and Award of Attorneys' Fees, Costs and Service Awards* (the "Jones Decl.") ¶4. Additionally, Plaintiff Kimhi, the representative of the Solar Subclass, has claims typical of other members of the Solar Subclass because Plaintiff Kimhi was damaged as a result of participation in Defendant's Solar Incentive Program. The damages incurred by other members of the Solar Subclass also arise out of their participation in Defendant's Solar Incentive Program. Myles Decl. (Exhibit 4 to the Landskroner Decl.)*; Declaration of Yaar Kimhi In Support of Plaintiff's Unopposed Motion for Final Approval and Award of Attorneys' Fees, Costs and Service Awards* (the "Kimhi Decl.") ¶4-5. Accordingly, Plaintiffs Jones and Kimhi satisfy the typicality requirement.

### 3. Plaintiffs and Class Counsel Are Adequate Representatives

"Class status may be denied [on the basis of adequacy of representation] only if antagonism of such a substantial degree is shown that the purpose of class certification would be defeated if the motion were granted." *Richmond,* 29 Cal.3d at 472; *see also Hicks v. Kaufman & Broad Home Corp.* (2001) 89 Cal.App.4th 908, 925-26. There are two components of the adequacy requirement: (1) adequacy of the proposed class representative; and (2) adequacy of proposed class counsel. Plaintiffs Jones and Kimhi and Class Counsel satisfy both of these requirements.

Plaintiffs Jones and Kimhi have no antagonism or conflicts of interest with the Settlement Class. Plaintiffs' claims are typical of the claims of the other Settlement Class Members and arise from the same conduct by Defendant. Plaintiffs have embraced their responsibilities as class representatives by actively participating in the Action, including monitoring, supervising and directing Class Counsel and engaging in the settlement process.

Additionally, the Settlement Class is represented by qualified and competent counsel who have the experience and resources necessary to vigorously pursue this action. Class Counsel is an AV rated attorney, is board certified by the National Board of Trial Advocacy, and has served as past president of the Public Justice Foundation, a 3000-member national public interest organization that litigates to protect the rights of consumers. Landskroner Decl. ¶89. He has represented plaintiffs in dozens of consumer fraud, defective product and securities class actions, and are among the nation's most respected attorneys involved in complex litigation. Landskroner Decl. ¶89. Liaison Counsel is a trial attorney regularly practicing in the state and federal courts of California

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT

Exhibit 3
312

representing the rights of consumers. *Declaration of Michael J. Libman In Support of Plaintiff's Unopposed Motion for Final Approval and Award of Attorneys' Fees, Costs and Service Awards* (Exhibit 3 to the Landskroner Decl.). The knowledge and experience of Plaintiff's Counsel was essential in ensuring that the Settlement Class Members' interests were protected in this Action.

**C.    A Class Action Is the Superior Method for Adjudicating The Claims of Settlement Class Members**

Particularly in the settlement context, class resolution is superior to other available methods for the fair and efficient adjudication of the controversy. Here, individual Settlement Class Members have incurred relatively small damages. Landskroner Decl. ¶92. Thus, it would not be economical to pursue their claims on an individual basis because the litigation costs would greatly exceed potential recovery. *See Daar*, 67 Cal.2d 695, 714-15. Therefore, a class action is superior to other available methods of resolution.

Accordingly, the Settlement Class satisfies the requirements for class certification. Plaintiff, therefore, respectfully requests that the Court certify the Settlement Class for purposes of this Settlement.

**III.    THE BEST PRACTICABLE NOTICE WAS GIVEN TO THE CLASS**

Pursuant to this Court's Preliminary Approval Order, Settlement Class Members received notice of the pendency of this Action and the Settlement in order to provide Settlement Class Members with an adequate opportunity to object or exclude themselves. The comprehensive Class Notice program approved by the Court satisfied the requirements of Rules of Court 3.766 and 3.769 and was designed to ensure Settlement Class Members received the best notice practicable (Cal. R. Ct. 3.766(e).

Pursuant to the Preliminary Approval Order, KCC an experienced class action administrator, was appointed to disseminate the Court-approved Class Notice and did so in the manner prescribed by this Court. As explained in the Cozzi Declaration, Class Notice was disseminated by: U.S. mail, email, publication in two widely circulated newspapers, *i.e., The Los Angeles Times* and *La Opinion*, and on-line via a website dedicate to providing Settlement Class Members with information regarding the Settlement established by the Claims Administrator. *See, generally* Cozzi Decl.

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Exhibit 3
313

As further explained in the Cozzi Declaration, on March 9, 2017, KCC received a dataset from Defendant for purpose of providing Class Notice to Settlement Class Members. This dataset included 2,330,435 records of contact information at the LADWP account level and 323,847 email addresses. On March 27, 2017, LADWP provided another dataset to KCC consisting of 8,030 additional account records. Cozzi Decl. ¶¶2, 3.

Beginning on March 28, 2017 and ending on April 4, 2017, KCC mailed 2,322,405 Class Notices and account specific subclass letters (collectively, the "Claim Packets"). On April 4, 2017, KCC sent the Emailed Class Notice to 275,391 email addresses. On April 4, 2017, KCC sent via Federal Express, Claim Packets to 8,030 in additional accounts. Cozzi Decl. ¶4.

To date, the USPS has indicated that 108,557 Claim Packets have been returned as undeliverable. KCC ran a search for an updated address for these Claim Packets, and re-mailed 58,401 Claim Packets. Additionally, the USPS has indicated that 152 Claim Packets were forwarded to updated addresses and provided the updated addresses to KCC. Cozzi Decl. ¶5.

On April 4, 2017, the Summary Class Notice was published in the *Los Angeles Times* in English and *La Opinion* in Spanish. Cozzi Decl. ¶6. Subsequently, the Settlement website located at www.LADWPBillingSettlement.com was updated with copies of the Mailed Class Notice, subclass letters, and printable Claim Forms in English, Spanish, Korean, Chinese, Vietnamese, and Tagalog. Cozzi Decl. ¶¶7-8. The settlement website also allows claimants to submit claims electronically in English and Spanish and download important Court documents. To date, there have been 27,581 visitors to the website. Cozzi Decl. ¶¶7-8.

KCC has also established a toll free telephone number that Settlement Class Members can call to: (i) listen to answers to Frequently Asked Questions in English and Spanish; (ii) request a Claim Packet or (iii) speak to a live operator with multilingual support during business hours. To date, there have been 28,341 calls to the toll free settlement line. Cozzi Decl. ¶9.

Each Class Notice, whether mailed, emailed or published: (i) contained a short, plain statement of the background of the Action and the Settlement; (ii) described the relief outlined in the Settlement Agreement; (iii) informed Settlement Class Members that, if they did not exclude themselves from the Settlement Class, they would be eligible to receive the relief under the Settlement; (iv) informed Settlement Class Members that they could exclude themselves from the

26

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Exhibit 3
314

1  Class by submitting a written exclusion request postmarked no later than June 5, 2017; (v) informed

2  Settlement Class Members that they could object to the proposed Settlement by filing and serving a

3  written statement of objections no later June 5, 2017; and (vi) informed Settlement Class Members

4  that any Final Order and Judgment entered in the Action, whether favorable or unfavorable to the

5  Settlement Class, would include, and would be binding on, all Settlement Class Members who have

6  not been excluded from the Class, even if they have objected.

7       Defendant paid, and will continue to pay, all costs and expenses associated with

8  disseminating and publishing the Class Notices, which is in addition to, and not deducted from,

9  either the Settlement compensation, or the amount of attorney's fees and expenses that will be
   awarded by the Court.

10

11       The Class Notice program more than satisfied its purpose which "is the protection of the

12  integrity of the class action process, one of the functions of which is to prevent burdening the courts

13  with multiple claims where one will do." *Cho v. Seagate Tech. Holdings, Inc.* (2009) 177

14  Cal.App.4th 734, 745-46; *see also, Wershba*, 91 Cal.App.4th at 252. Finally, the Class Notice was

15  content-neutral and clearly set out the terms of the Settlement, and complied with all standards of

16  fairness, completeness and neutrality. *See Cho*, 177 Cal.App.4th at 745-46; *see also Wershba*, 91
   Cal.App.4th at 252.

17       Given the foregoing, the Court should find that the Class Notice program constituted the

18  best practicable notice.

19  **IV.  CLASS COUNSEL'S REQUEST FOR ATTORNEYS' FEES AND
        EXPENSES SHOULD BE GRANTED**

20       Class Counsel has applied to the Court for attorneys' fees in the amount of $17,453,977

21  and expenses in the amount of $2,712,035.28 ($2.5 million for reimbursement of expenses which

22  have and will be incurred by the CC&B System Monitoring Expert and $212,035,28 for

23  reimbursement of expenses incurred by all Plaintiffs' Counsel). As demonstrated below, these

24  amounts are reasonable and fall within the range of amounts approved by California state and

25  federal courts. Accordingly, Plaintiff respectfully requests that the Court grant Class Counsel's

26  application and award Class Counsel attorneys' fees in the amount of $17,453,977 and expenses in

27  the amount of $2,712,035.28 ($2.5 million for reimbursement of expenses which have and will be

28

<div align="center">27</div>

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT**

Exhibit 3
315

1   incurred by the CC&B System Monitoring Expert and $212,035,28 for reimbursement of expenses

2   incurred by all Plaintiffs' Counsel).[1]

3       A court may use one of two methods to calculate attorneys' fees, depending on the type of

4   settlement involved: (i) the lodestar method or (ii) the percentage-of-recovery method. *See*

5   *Serrano v. Priest ("Serrano III")* (1977) 20 Cal.3d 25, 48-49; *see also Meister v. Regents of*

6   *Univ. of Calif.,* (1998) 67 Cal.App.4th 437, 449; *Melnyk v. Robledo* (1976) 64 Cal.App.3d 618,

7   624-25; *Clejan v. Reisman* (1970) 5 Cal.App.3d 224,241; *Fed-Mart Corp.* v. *Pell Enterprises*

8   (1980) 111 Cal.App.3d 215, 222.

9       The percentage-of-recovery approach is  applied where a settlement creates a "common

10  fund" *out of* or *from which* attorneys' fees are paid. Where a settlement provides for the payment

11  of attorneys' fee *"on top"* of the relief provided to class members (as opposed to *out of* such

12  relief)[2], courts generally apply the lodestar method. *Lealao v. Beneficial California, Inc.* (2000)

13  82 Cal.App.4th 19, 26.

14      Here, the Settlement is a "hybrid settlement" or "constructive common fund" settlement

15  because Defendant has agreed to pay attorneys' fees *on top* of the recovery provided to Settlement

16  Class Members. See Revised Class Action Settlement Agreement at Section III.L. (pp. 57-58.).

17  Accordingly, application of the lodestar method is appropriate, here. *Lealao,* 82 Cal.App.4th at

18  26.

---

[1]   Under the Settlement, Defendant has further agreed that, subject to Court approval, Class Counsel may make applications to the Court to be compensated at the rate of twenty-nine percent (29%) of all future recoveries by Settlement Class Members subsequent to Final Approval for: (i) Field Work claims; (ii) Pre-Identified Claims Made claims; (iii) Omnibus claims; and (iv) all claims paid in connection with the Settlement by, or on behalf of the City of Los Angeles, including all departments thereof. Class Counsel shall submit to the Court quarterly applications for additional awards of such attorneys' fees. The Parties have also agreed that the: (i) Defendant has agreed it will not object to such quarterly applications; and (ii) additional future attorneys' fees of $1 million shall be utilized to pay any future attorneys' fee awarded to Class Counsel by the Court and shall not be in addition to any future attorneys' fees awarded by the Court. Landskroner Decl. Ex. 1 at 59.

[2]   Such settlements are often referred to as "hybrid settlements" or "constructive common fund" settlements.

---

28

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT**

Exhibit 3
316

The lodestar method involves a two-step approach. Under the first step, the Court must analyze the reasonableness of the lodestar, itself, *i.e.*, the number of hours expended by counsel and counsel's hourly rate. Under the second step, the Court must determine whether to apply an "enhancement" or "multiplier" to the lodestar. In making this determination, the Court must analyze several factors, including the quality of the results achieved. *See Ketchum v. Moses* (2001) 24 Cal.4th 1127, 1132; *Oakland Raiders* (1988) 203 Cal.App.3d 79, 83. *Serrano III*, 20 Cal.3d at 49; *Lealao*, 82 Cal.App.4th at 26.

As set forth herein, Plaintiff's Counsel's lodestar and an enhancement of this lodestar by a multiplier of 2.15 is reasonable. Accordingly, Class Counsel's request of an award of attorneys' fees in the amount of $17,453,977 is reasonable and should be approved.

## A.   **Plaintiff's Counsel's Lodestar Is Reasonable**

As demonstrated in Exhibits 2 - 5 to the Landskroner Declaration, the number of hours spent litigating this Action is reasonable, as are the hourly rates charged by Plaintiff's Counsel.

### 1.   **The Number of Hours Spent Litigating This Action Is Reasonable**

"Under the lodestar method, a party who qualifies for a fee should recover for all hours reasonably spent unless special circumstances would render the award unjust." *Vo v. Los Virgenes Municipal Water Dist.* (2000) 79 Cal.App.4th 442, 446; *see also Weeks v. Baker & McKenzie* (1998) 63 Cal.App.4th 1128, 1175 ("[A]n attorney who takes on [a complex] case can anticipate receiving full compensation for every hour spent litigating a claim against even the most polemic opponent."); *Ketchum,* 24 Cal.4th at 1132. Compensable activities under the lodestar method include both pre-litigation activities (*e.g.*, interviewing the client, investigating the facts, researching the law and preparing the initial pleading) and litigation activities (*e.g.*, conducting discovery, conferring with clients, drafting pleadings, making court appearances, travel time and settlement negotiations). *Webb v. Board of Education*, 471 U.S. 234, 243 (1985); *Stokus v. Marsh* (1990) 217 Cal.App.3d 647, 655-56. A review of billing records is not necessary to award attorneys' fees; the court can accept declarations of counsel setting forth the hours worked and tasks performed. *See In re Sutter Health Uninsured Pricing Cases* (2009) 171 Cal.App.4th 495, 511-12 ("We see no reason why [the court] could not accept the declarations of counsel attesting to the hours worked, particularly as he was in the best position to verify those claims by reference

29

to the various proceedings in the case."); *Wershba v. Apple Computer, Inc.* (2001) 91 Cal.App.4th 224, 254-55 ("California case law permits fee awards in the absence of detailed time sheets.").

As of May 5, 2017, Plaintiff's Counsel spent a total of 12,721.00 hours working on this case and incurred a combined lodestar of $8,118,129.00. Landskroner Decl. ¶95; Landskroner Decl. Exs. 2-5. A breakdown of these fees and hours between the law firms is set forth in the below chart:

| Plaintiff's Counsel | Hours | Lodestar |
|---|---|---|
| Landskroner Grieco Merriman | 8,117.50 | $5,305,758.00 |
| Law Offices of Michel J. Libman | 1,444.00 | $799,100.00 |
| Knapp, Peterson & Clarke | 1,798.30 | $1,264,611.00 |
| Law Offices of Alan Himmelfarb | 1,361.20 | $748,660.00 |
| **Total** | **12,721.00** | **$8,118,129.00** |

A more comprehensive breakdown of these hours, by task, is also provided in the Declarations annexed to the Landskroner Declaration as Exhibits 2-5. These Declarations detail the amount of work that was necessary in order to obtain a successful result on behalf of the Settlement Class Members.

Of great significance, here, is the fact that, given the complexity of this matter, Plaintiff's Counsel spent a considerable amount of time working alongside the Independent CC&B System Monitoring Expert in order to aid the Independent CC&B System Monitoring Expert in verifying data, and establishing that the mechanism for identifying affected accounts as accurate and reliable as well as in oversight of highly complex and involved notice process. Landskroner Decl. ¶97. Such efforts included, but were not limited to, participating in multiple on-site visits to the LADWP and participation in weekly and ultimately daily telephone conference calls over a period of 19 months and in providing independent experiential data from LADWP customers to crosscheck DWP reports. Landskroner Decl. ¶97.

Given Plaintiff's Counsel's deep level of involvement in these efforts, the number of hours expended by Plaintiff's Counsel in litigating this Action and protecting the interests of members of the Settlement Class is more than reasonable. Tevrizian Decl. ¶38.

### 2.   Plaintiff's Counsel's Hourly Billing Rates Are Reasonable

The hourly rates to be used in computing the lodestar must be "within the range of reasonable rates charged by and judicially awarded comparable attorneys for comparable work." *Children's Hospital & Medical Center v. Bontá* (2002) 97 Cal.App.4th 740, 783. The reasonable hourly rate is that prevailing in the community for similar work." *PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1088, 1095. The relevant "community" is the legal community in which the presiding court sits. *See Schwartz v. Sec'y of Health and Human Serv.*, 73 F.3d 895, 906 (9th Cir. 1995). *See also Oakland Raiders*, 203 Cal.App.3d at 82 (affirming a trial court's award based on an hourly rate that falls in line with the rates charged by "top law firms in the Bay Area").

"'Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate.'" (*Heritage Pacific Financial, LLC v. Monroy* (2013) 215 Cal.App.4th 972, 1009, citing *United Steelworkers of America v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990)). Here, the hourly billing rates charged by Plaintiff's Counsel are in line with those that have been approved by California state and federal courts.

#### a)   Landskroner Grieco Merriman

The hourly billing rate for partners ranges between $695 and $795. The hourly billing rate for associates ranges between $550 and $695. The hourly billing rate for paralegals ranges between $200 and $250. Landskroner Decl. Ex. 2.

#### b)   The Libman Firm

The hourly billing rate for the firm's senior partner is $575 and the hourly billing rate for the senior paralegal is $275. Landskroner Decl. Ex. 3.

---

31

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Exhibit 3
319

c)   **Knapp, Peterson & Clarke**

The hourly billing rate for directors ranges between $702.47 and $847.06. The hourly billing rate for paralegals is $191.77. Landskroner Decl. Ex. 4.

d)   **The Himmelfarb Firm**

The hourly billing rate for the firm's senior partner is $550. Landskroner Decl. Ex. 5.

Plaintiff's Counsel's hourly billing rates for partners, associates and paralegals are in line with rates that have been approved by California state and federal courts. *See, e.g., Altavion, Inc. v. Konica Minolta Systems Laboratory Inc.* (2014) 226 Cal.App.4th 26, 71 ($600 for attorneys admitted in 1986 in technology-related trade secret litigation). *See also Tait v. BSH Home Appliances Corp.,* No. SACV100711DOCANX, 2015 WL4537463 (C.D. Cal., July 27, 2015) , at *12 (approving as reasonable $800 per hour for partners, associate time to a maximum of $550 per hour, and paralegal time to a maximum of $225 per hour); *United Desert Charities, et al., v. Sloane Valve Co., et al.,* No. 12cv06878 SJO (SHx) (C.D. Ca. Aug. 25, 2014) (finding partner hourly rate as high as $1500 reasonable); *Elliott v. Rolling Frito-Lay Sales,* LP, 2014 U.S. Dist. LEXIS 83796, *23 (C.D. Ca. June 12, 2014)(finding partner hourly rate as high as $700 reasonable); *Aarons,* 2014 U.S. Dist. LEXIS 118442, * 37 (finding partner hourly rate as high as $775 reasonable); *Vinh Nguyen v. Radient Pharm. Corp.,* No. 11-00406, 2014 WL 1802293 (C.D. Cal., May 6, 2014) , at *11 (approving 2014 rates up to $750 per hour for partners, $550 per hour for associates, and $225 per hour for paralegals); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.,* 2013 U.S. Dist. LEXIS 123298, *305, n. 13 (C.D. Ca. July 24, 2013) (finding partner hourly rate as high as $950 reasonable); *Redwen v. Sino Clean Energy, Inc.,* 2013 U.S. Dist. LEXIS 100275, *29 (C.D. Ca. July 9, 2013)( finding partner hourly rate as high as $800 reasonable); *Kearney v. Hyundai Motor Co.,* 2013 U.S. Dist. LEXIS 91636, *8 (C.D. Ca. 2013)(approving hourly rates between $650 and $800 for class counsel in a consumer class action); *Wren v. RGIS Inventory Specialists,* 2011 U.S..Dist. LEXIS 38667 (N.D. Cal., Apr. 1, 2011)  (finding as reasonable $650 per hour for a 1993 graduate); *Parkinson v. Hyundai Motor America,* 796 F.Supp.2d 1160, 1172 (C.D. Cal. 2010) (approving hourly rates between $445 and $675 for class counsel in consumer class action); *POM Wonderful, LLC v. Purely Juice, Inc.,* No. CV 07-2633, 2008 U.S. Dist. LEXIS 110460, 2008 WL

1   4351842, *4 (C.D. Cal., Sept. 22, 2008) (finding rate of $750 for partners and $275 to $425 for

2   associates reasonable in consumer class action); *Craft v. County of San Bernardino*, 624

3   F.Supp.2d 1113, 1122 (C.D. Cal. 2008) (finding a $225 rate reasonable for paralegals).

4        Based on the foregoing, it is clear that Plaintiff's Counsel's hourly billing rates are

5   reasonable. Tevrizian Decl. ¶38.

6        Because the number of hours spent by Plaintiff's Counsel litigating and settling this Action

7   is reasonable, and because Plaintiff's Counsel's hourly billing rates are reasonable, Plaintiffs'

8   Counsel's lodestar is reasonable.

9   **3.    Enhancing Plaintiffs' Counsel's Lodestar By A
            Multiplier of 2.15 Is Reasonable**

10       Once calculated, the court may adjust counsel's lodestar upward using a "multiplier" or

11  "enhancement" based on several factors, including: the quality of the results achieved; the novelty

12  and difficulty of the litigation; class counsel's skill in handling it; the burdens imposed by taking

13  on the case; and the contingent nature of the fee award. *See Ketchum*, 24 Cal.4th at 1132; *Oakland*

14  *Raiders*, 203 Cal.App.3d at 83. There is no rigid formula and each factor should be considered

15  only where appropriate. *See Serrano*, 20 Cal.3d at 49; *The People ex rel. Dep't. of Transp. v. Yuki*

16  (1995) 31 Cal.App.4th 1754, 1771. An analysis of these factors demonstrates that the proposed

17  multiplier of 2.15 is reasonable and in line with permissible multipliers in this jurisdiction.

18  **a)    The Results Achieved Through the Settlement
            Favor A Multiplier**

19       While all of the foregoing factors carry weight, "foremost among these considerations,

20  however, is the benefit obtained for the class." *In re Toys "R" Us*, 295 F.R.D. 438, 460-461

21  (citing *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 941-942 (9th Cir.

22  2011)).

23       As explained above, this landmark Settlement provides Settlement Class Members

24  excellent benefits. In particular, Settlement Class Members will receive *100%* of the amounts of

25  that Settlement Class Members were overcharged by the LADWP for services and/or damaged as

26  a result of their participation in Defendant's Solar Incentive Program. The monetary component of

27  the Settlement is valued at over $67 million.

28

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT**

Exhibit 3
321

Furthermore, the non-monetary benefits provided by the Settlement, the value of which is more than $20 million, provide Settlement Class Members with additional benefits that address the very deficiencies that gave rise to the Actions in the first instance.

In light of the high quality of benefits obtained as a result of this Settlement, an enhancement to the lodestar is warranted.

### b) The Novelty and Difficulty of the Litigation Favors A Multiplier

As set forth in the Landskroner Declaration, the litigation and settlement of this Action has presented extremely novel and difficult issues. The following facts have contributed to both this novelty and difficulty: (i) the number of Settlement Class Members; (ii) the number of accounts involved; (iii) the complex nature of Defendant's billing system; (iv) the number of services provided by Defendant to Settlement Class Members; (v) the impact that any one service may have on other services (i.e., the impact of water use on sewer charges); (vi) the presence of various rate schedules used by the LADWP; and (vii) the highly-customized Class Notice packets sent to Settlement Class Members. In light of these novel, complex and difficult issues, Class Counsel has devoted more time and effort to this Action and Settlement than Class Counsel would have devoted to similar litigations. Accordingly, the novelty and difficulty of the issues presented here favors the requested enhancement to the lodestar.

### c) Class Counsel's Skill In Obtaining the Settlement Favors A Multiplier

Nothing speaks more to Class Counsel's skill than the results achieved by the Settlement, which includes reimbursement of 100% of damages incurred by Settlement Class Members. Class Counsel was able to leverage the information learned in connection with Class Counsel's pre-suit investigation (which included interviews with confidential witnesses, a full analysis of prior CC&B software installation failure and multiple reviews of documents and consultations with non-testifying experts), as well as the information learned through confirmatory discovery (via the Independent CC&B System Monitoring Expert) to achieve these outstanding results.

///

///

///

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Exhibit 3
322

1
     **d)    The Burdens Imposed By the Action Favors A
Multiplier**

2

3      As detailed in the Landskroner Declaration, the prosecution of this Action was extremely

4 time consuming. In light of the highly complex nature of Defendant's billing system and the

degree of skill needed to accurately identify Settlement Class Members, as well as the amount of

5 damages incurred, Class Counsel was required to devote an enormous amount of time to this

6 Action and the Settlement process. As a result of the time consuming nature of this Action, Class

7 Counsel had to refuse engagements in other matters and actions in order to ensure that Plaintiff

8 and Settlement Class Members received superior representation. Landskroner Decl. ¶107.

9      **e)    The Contingent Nature of the Fee Favors A
Multiplier**

10

11      It is an established practice in the private legal market to reward attorneys for taking on the

risk of non-payment by paying them a premium over their normal hourly rates for winning

12 contingency cases. Courts have recognized that the risk of receiving little or no recovery is a factor

13 in considering an award of attorney's fees. *See Ketchum*, 24 Cal.4th at 1132; *Oakland Raiders*,

14 203 Cal.App.3d at 83. Given the contingent nature of this Action, an enhancement to the lodestar

15 is warranted.

16      **4.    The Requested Multiplier of 2.15 is Reasonable**

17      In appropriate cases, "[m]ultipliers can range from 2 to 4 or even higher." *Wershba*, 91

18 Cal.App.4th at 225; *see also Chavez*, 162 Cal.App.4th at 66 (affirming 2.5 multiplier); *Oakland

19 Raiders*, 203 Cal.App.3d at 83 (affirming 2.34 multiplier).

20      In fact, this Court recently awarded a multiplier of 3.39. *See Colin Higgins Prod. v.

21 Universal City Studios*, BC499180 (Dec. 28, 2015)(awarding class counsel $4,333,333.33 based

22 on a lodestar of $1,278,122.03).

23      Despite the fact that California courts have recognized the propriety of multipliers as high

24 as four, Class Counsel seeks a multiplier of 2.15. In light of the fact that the analysis of the

25 lodestar factors set forth above demonstrates that an enhancement to Plaintiff's Counsel's lodestar

26 is warranted and that the requested multiplier is reasonable, Plaintiff respectfully requests that the

27 Court grant the requested multiplier of 2.15 and award attorneys' fees in the amount of

28 $17,453,977.

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT**

Exhibit 3
323

1

        **5.**     **A "Cross-Check" of The Requested Fee Under the
Percentage-of-Recovery Approach Confirms That
The Requested Fee Is Reasonable**

2

3        In evaluating Class Counsel's application, the Court may consider the requested fees

4 as a percentage of the total settlement value. In other words, the Court may "cross-check" the

5 reasonableness of the requested fee under the percentage-of-recovery approach if the value of

6 the Settlement "can be monetized with a reasonable degree of certainty." *See Lealao,* 82

7 Cal.App.4th at 39-40, 49.

8        Here, the value of the recovery "can be monetized with a reasonable degree of

9 certainty." As stated above, and in the Independent CC&B Monitor Declaration, the value of

10 the monetary relief provided by the Settlement is valued at over $67 million. Independent

11 CC&B Monitor Decl. ¶37. Additionally, the value of the non-monetary relief provided by the

12 Settlement is at least $20 million. *Id.* Accordingly, the value of the Settlement is at least $87

13 million.[3]

        Class Counsel has requested a fee of $17,453,977, which represents approximately

14 20% the value of the Settlement. Landskroner Decl. ¶115. The requested fee is well below the

15 25% benchmark recognized by California State courts. *Lealao,* 82 Cal.App.4th at p. 24, fn. 1,

16 (quoting *Six Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir. 1990));

17 *Sanders v. City of Los Angeles* (1970) 3 Cal.3d 252, 261; *Consumer Privacy Cases,* 175

18 Cal.App.4th at 557.

19        Because the requested fee falls below the 25% benchmark, the percentage-of-recovery

20 cross-check confirms the reasonableness of the requested fee.

21        Based on the foregoing, Plaintiff respectfully requests that the Court grant Class

22 Counsel's request for $17,453,977 in attorneys' fees.

23

24

25 [3]  In evaluating the value of the Settlement, the Court must look at the value of the full benefits
made available to the Settlement Class, not the value of the claims actually made. *Shames v. Hertz
26 Corp.,* 2012 U.S. Dist. LEXIS 158577, 2012-2 Trade Cas. (CCH) P78, 120 (S.D. Cal., Nov. 5,
2012) (holding that "the Court is not required to compare requested attorneys' fees against the
27 actual settlement payouts.")

28

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT**

Exhibit 3
324

## V.   PLAINTIFF'S COUNSEL SHOULD BE REIMBURSED LITIGATION EXPENSES

In addition to attorneys' fees incurred, attorneys in a class action may be reimbursed for costs incurred "in the ordinary course of prosecuting [a] case." *California Indirect Purchaser X-Ray Film Antitrust Litig.*, 1998 WL 1031494, at *11; *Natural Gas Anti-Trust Cases*, 2006 WL 5377849, at *4. Under the Settlement, Class Counsel is entitled to apply to the Court for reimbursement of up to $3,000,000 constituting reimbursement of expenses incurred by the CC&B System Monitoring Expert to be capped at $2,500,000 and reimbursement of expenses incurred by all Plaintiffs' counsel to capped at $500.000. Landskroner Decl. Ex. 1 at 57. As set forth in the Landskroner Declaration, Plaintiff's Counsel has incurred $2,712,035.28 in expenses ($2.5 million in expenses which have and will be incurred by the CC&B System Monitoring Expert and $212,035.28 in expenses incurred by all Plaintiffs' Counsel) in litigation costs to date during the ordinary course of this litigation. Landskroner Decl. Exs. 2-5. These costs include filing fees, computerized legal research, travel expenses, and mediation-related expenses that were incurred in the normal course of business. The costs incurred were reasonable and essential to the successful prosecution of this lawsuit, and should be awarded by the Court. Landskroner Decl. Exs. 2-5.

## VI.   THE COURT SHOULD GRANT THE REQUESTED SERVICE AWARDS

Courts typically grant service awards to the named plaintiffs in a class action for their work performed on behalf of the class. *In re Cellphone Fee Termination Cases*, (2010) 186 Cal.App.4th 1380, 1393-94. "Incentive awards are fairly typical in class action cases . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Id.* (citing *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009)) (emphasis omitted). Here, Plaintiff requests a service award of $5,000 for Plaintiffs Jones and Yaar Kimhi, Tahl Beckerman Megerdichian and Yelena Novak. These awards are justified by the time and effort the class representatives dedicated to this case and the reputational risks they faced in associating their names with a well-publicized class action lawsuit against a major movie studio. *See generally,* Jones Decl.; Kimhi Decl.; *Declarations of Tahl*

37

1 | *Beckerman Megerdichian and Yelena Novak In Support of Plaintiff's Unopposed Motion for Final*
2 | *Approval and Award of Attorneys' Fees, Costs and Services Awards. See also In re Netflix Privacy*
3 | *Litig.*, 2013 WL 1120801, at *11 (N.D. Cal., Mar. 18, 2013) (service awards recognized that class
4 | representatives "assumed the responsibilities and burdens of acting as representatives" and faced
5 | "public scrutiny through media coverage of this high profile suit").

The requested service awards are in line with similar awards granted to class
representatives by California courts. California state and federal courts have approved service
awards of $5,000 or more, particularly in class actions that involved significant risk and
substantial efforts expended by the class representatives. *See, e.g., Cellphone Fee Termination
Cases*, 186 Cal.App.4th at 1395 (approving $10,000 service awards to each of the four class
representatives); *In re Warner Music Group Corp. Digital Downloads Litig.*, Case No. 12-cv-
00559-RS (N.D. Cal., Jan. 12, 2015) (approving $10,000 service awards to each of the six current
and former class representatives in a class action against a major music label alleging the
underpayment of royalties); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2013 WL 1365900, at
*17 (N.D. Cal., Apr. 3, 2013) (approving $15,000 service awards to each of the 40 court-
appointed class representatives). Indeed, this Court approved $10,000 service awards in the recent
case, *Colin Higgins*, BC499180. The $5,000 service awards sought here are reasonable and,
accordingly, should be approved.

## CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that this Court enter an order: (i)
finally approving the Settlement; (ii) certifying the Settlement Class for Settlement purposes; (iii)
awarding Class Counsel $17,453,977 in attorneys' fees and $2,712,035.28 in expenses ($2.5
million for reimbursement of expenses which have and will be incurred by the CC&B System
Monitoring Expert and $212,035.28 for reimbursement of expenses incurred by all Plaintiffs'
Counsel) and (iv) awarding Plaintiffs Jones and Yaar Kimhi, Tahl Beckerman Megerdichian and

///
///
///

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT**

Exhibit 3
326

1 | Yelena Novak service awards in the amount of $5,000 each.

2 | Dated: May 5, 2017                    Respectfully submitted,

3

4

    _____
5 |                                  Jack Landskroner (Admitted Pro Hac Vice)
                                      Drew Legando (Admitted Pro Hac Vice)
6 |                                  LANDSKRONER GRIECO MERRIMAN, LLC
                                      1360 W. 9th Street, Ste. 200
7 |                                  Cleveland, OH 44113
                                      Telephone: 216-522-9000
8

9 |                                  *Class Counsel*

10 |                                 Michael J. Libman (SBN 222353)
                                      LAW OFFICES OF MICHAEL J. LIBMAN
11 |                                 18321 Ventura Boulevard, Suite 700
                                      Tarzana, California 91356
12 |                                 Telephone: 818-995-7300

13 |                                 *Liaison Counsel*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Exhibit 3
327

## **ELECTRONIC PROOF OF SERVICE**

**STATE OF OHIO, COUNTY OF CUYAHOGA**

I am a paralegal with Landskroner Grieco Merriman, LLC in the County of Cuyahoga, State of Ohio. I am over the age of 18 and not a party to the within action. My business address is 1360 West 9th Street, Suite 200, Cleveland, Ohio 44113.

On May 5, 2017, I served the foregoing document(s) described as **PLAINTIFF'S NOTICE OF UNOPPOSED MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND AWARD OF ATTORNEYS' FEES, COSTS AND SERVICE AWARDS** on the interested parties in this action as follows:

**BY ELECTRONIC SERVICE VIA FILE & SERVEXPRESS:** In accordance with the Court's Order Authorizing Electronic Service governing Case No. BC565618 and related matters requiring all documents to be served upon interested parties via the File & ServeXpress Service system.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on May 5, 2017, at Cleveland, Ohio.

_Deborah A. Kessel_
Deborah A. Kessel

40

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Exhibit 3
328

ORIGINAL

RECEIVED

JUL 14 2017

Dept. 323

FILED
Superior Court of California
County of Los Angeles

JUL 20 2017

Sherri R. Carter, Executive Officer/Clerk

By_____, Deputy
Kelly Jameson

BY FAX

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

| | |
|---|---|
| ANTWON JONES, on behalf of himself, and all other similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> CITY OF LOS ANGELES, by and through the LOS ANGELES DEPARTMENT OF WATER AND POWER, and DOES 1 through 50, inclusive, <br><br> Defendants. | Case No. BC577267 <br> [Related to Case Nos. BC565618 (Lead), BC568722, BC571664, and BC574690] <br><br> [CLASS ACTION] <br><br> [~~PROPOSED~~] <br> **ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT and FINAL JUDGMENT** <br><br> Judge: Hon. Elihu M. Berle <br> Date: July 7, 2017 <br> Time: 9:00 a.m. <br> Dept.: 323 <br><br> Assigned for All Purposes to the Hon. Elihu M. Berle, Dept. 323 <br><br> Action Filed: April 1, 2015 <br> Trial Date: None Set |

WHEREAS, plaintiff Antwon Jones ("Plaintiff"), on behalf of himself and the putative

class in this case, as well as the putative classes in the consolidated actions, *Kimhi v. The City of*

*Los Angeles*, Case No. BC536272; *Bransford v. City of Los Angeles*, Case No. BC565618; and

*Fontaine v. City of Los Angeles*, Case No. ~~BC577267~~ BC571664 (collectively, the "Actions"), moved this

1    Court for an Order, pursuant to Section 382 of the California Code of Civil Procedure ("Section

2    382") and California Civil Code § 1781 ("Section 1781"), seeking final approval of a class action

3    settlement and entry of final judgment (the "Motion"); and

4            WHEREAS, defendant the City of Los Angeles, by and through the Los Angeles

5    Department of Power and Water ("LADWP") and DOES 1 through 50, inclusive (collectively,

6    "Defendant") joins Plaintiff in seeking this same relief; and

7

8            WHEREAS, the Court reviewed the submissions of the parties, all properly and timely

9    filed objections to the Settlement, and the Parties' responses to such objections, and held a Final

10   Approval Hearing on July 7, 2017 (the "Final Approval Hearing"), and good cause appearing;

11           IT IS ORDERED that the Motion is GRANTED, subject to the following terms and

12   conditions:

13           1.       With respect to the capitalized terms set forth herein, the Court, for purposes of this

14   Final Judgment and Order ("Final Order"), adopts the definitions set forth in the Revised Class

15   Action Settlement Agreement and Limited Release dated November 9, 2016 (the "Settlement

16

17   Agreement").

18           2.       This Court has continuing and exclusive jurisdiction over the Settlement and all

19   Parties hereto for the purpose of construing, enforcing and administering the Settlement

20   Agreement.

21

22           3.       The Court finally certifies, for settlement purposes only, the following Settlement

23   Class:

24           All LADWP customers who were over-charged for electric, water,
             sewage or sanitation services between the dates of September 3,
25           2013 and December 30, 2016, and who are entitled to credits or
             refunds for electric, water, sewage or sanitation services and/or for
26           participation in the LADWP's solar incentive program between
             February 13, 2010 and December 30, 2016.
27

28

[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT and FINAL
JUDGMENT
Exhibit 4
330

Expressly excluded from the Settlement Class are the Judge to whom this case is assigned, any members of the Judge's immediate family, and counsel of record in this action.

4. With respect to the Settlement Class, this Court finds that: (a) the members of the Settlement Class are so numerous their joinder is impracticable; (b) there are questions of law and fact common to the Settlement Class which predominate over any individual questions; (c) the claims of Plaintiff are typical of the claims of the Settlement Class; (d) Plaintiff and Class Counsel have fairly and adequately represented and protected the interests of the Settlement Class; and (e) a class action is superior to other available methods for the fair and efficient adjudication of the controversy, considering: (i) the interests of the Settlement Class in individually controlling the prosecution of the separate Actions, (ii) the extent and nature of any litigation concerning the controversy already commenced by the Settlement Class, (iii) the desirability or undesirability of concentrating the litigation of these claims in this particular forum, and (iv) the difficulties likely to be encountered in the management of the Action.

5. Class Notice to the Settlement Class has been provided in accordance with the Preliminary Approval Order. Such notice satisfied the requirements of California Code of Civil Procedure § 382 and California Civil Code § 1781 and Rule 3.766 of the California Rules of Court and: (a) provided the best practicable notice, (b) was reasonably calculated, under the circumstances, to apprise the Settlement Class of the pendency of the Action, the terms of the Settlement Agreement, and of their right to appear or object to or exclude themselves from the Settlement Class, (c) was reasonable and constituted due, adequate, and sufficient notice to all persons entitled to receive notice, and (d) fully complied with the applicable laws of the State of California. Accordingly, the Court determines that all members of the Settlement Class *who have not opted out* are bound by this Final Order and by the final judgment to be entered pursuant thereto.

3

6.     June 5, 2017 was the deadline for Settlement Class Members to submit a request for exclusion, an objection, or (for all Settlement Class Members with the exception of Field Work Sub-Class Members) a claim form.  As of June 26, 2017, KCC received:  (a) 646 timely requests for exclusion and 4 untimely requests for exclusion; and (b) 32,047 timely claims and 211 untimely claims.  The Court orders that the 4 untimely requests for exclusion be deemed timely.  Attached as Exhibit A hereto is a list of the 650 requests for exclusion.  The Court also orders that the 211 untimely claims be deemed timely.

7.     The objections filed by Mr. Steven Brennan, Mr. Stan Furmanski, Ms. Catalina Lopez, Ms. Carol Sidlow, Ms. Cynthia Maxwell and Mr. Marc Wutschke are overruled in their entirety.

8.     The Settlement Agreement was arrived at after extensive arm's length negotiations conducted in good faith by counsel for the parties, and is supported by the majority of the members of the Settlement Class.   Accordingly, this Court hereby approves the Settlement Agreement as fair, reasonable and adequate in light of the complexity, expense and duration of the litigation, and the risks inherent and involved in establishing liability and damages, and in maintaining the class action as to liability issues through trial and appeal.

9.     The promises and commitments of the Parties under the terms of the Settlement Agreement constitute fair value given in exchange for the releases of the Released Claims.  For all claims other than solar, this release is effective for claims which have accrued during the period of September 3, 2013 to December 30, 2016.  For solar claims arising out of the solar incentive program and/or credit for excess energy, this release is effective for claims accruing during the period from February 13, 2010 to December 30, 2016.  The following claims are therefore released against Defendant:

> any and all claims, damages, suits, demands, liabilities, judgments, losses and causes of action which have accrued as of the date of entry of the Order of

4

[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT and FINAL JUDGMENT

Exhibit 4
332

Preliminary Approval relating to or arising from the billing issues alleged in the operative pleadings in the Actions, including:

      (i)    overbilling as a result of charging an incorrect rate, incorrect amount of consumption, incorrect utility tax rate or the failing to apply a discount;

      (ii)   billing incorrect fees, including but not limited to late payment fees, reconnect fees and/or start service fees;

      (iii)  retaining refunds during the period of September 3, 2013 to December 30, 2016 that were due;

      (iv)  billing for greater quantities of water, power or sewage than otherwise would have been charged but for the existence of a premise condition;

      (v)   the assessment of overdraft fees resulting from the LADWP having charged customers an incorrect billing amount; and

      (vi)  for solar customers, delay in providing a reservation confirmation to and/or connecting the solar system, and/or failure to bill for energy consumed and/or generated; and/or failure to credit for excess energy generated by the customer's solar power system at any time from February 13, 2010, through December 30, 2016

sounding in law or equity, seeking damages or any other relief, that are now recognized by law or that may be created or recognized in the future by statute, regulation, judicial decision or in any other manner, based upon any federal or state statutory or common law including but not limited to, claims sounding in tort, contract and the consumer protection laws of the United States or of any state or other jurisdiction within the United States, and all claims, damages, suits, demands, liabilities, judgments, losses or causes of action which have been, might have been, are now, or could be asserted by any plaintiff or any Settlement Class Member arising out of, based upon, or related to, in whole or in part, the facts and circumstances underlying the claims and causes of action set forth in the Actions.

Released Claims include claims, accrued during the time periods set forth above, for economic and non-economic damages that were proximately caused by the LADWP having overbilled its customers during the time periods set forth in the operative Complaint in the *Jones Action.* These economic and non-economic damages may be direct, incidental, or consequential and, by way of example, include: repair costs; services costs (e.g., the cost of a plumber or electrician to examine or repair a premise condition); finance, interest, or overdraft charges imposed by a third party; costs related to or arising from erroneous disconnections; reconnection fees; loss of perishable items; damage to personal property; or loss of wages or business income. All such losses and damages are expressly deemed Eligible Claims pursuant to this Revised Agreement and a Settlement Class Member is entitled to seek recovery of 100% of such losses and damages through the Omnibus claims process.

Released Claims also include claims for economic and non-economic damages that resulted in overbilling customers and were proximately caused by the LADWP's failure to: (i) timely undertake field investigations, conduct field maintenance, perform meter reads, or provide accurate information concerning actual utilization; (ii) prorate or allot utilization in accordance with applicable rate schedules; and (iii) comply with disconnection rules and the imposition of associated charges. All such losses and damage are expressly deemed Eligible Claims pursuant to this Revised Agreement and a Settlement Class Member is entitled to seek recovery of 100% of such losses and damages through the Omnibus claims process.

Released Claims do not include:

(i)     the claims asserted in the action, *Morski v. City of Los Angeles by, and through, the Los Angeles Department of Water & Power*, Los Angeles Superior Court Case No BC568722 (the "*Morski* Action"), which allege that the LADWP violated Ordinance Nos. 180127, 182273, and 170435 (as amended by Ordinance No. 171639, Ordinance No. 173017, Ordinance No. 175964, Ordinance No. 177968 and Ordinance No. 179802) by assessing tiered billing without obtaining actual monthly meter reads and without providing regular, timely, and accurate monthly bills to its customers ("Non-Monthly Tiered Billing Claims"). This released claims exclusion also includes within its scope the assessment of tiered billing without obtaining actual monthly meter reads and without providing regular, timely, and accurate monthly bills to its customers pursuant to Ordinance Nos. 184133 and 184130;

(ii)    Causes of Action 27-32 in the Third Amended Complaint filed on November 10, 2016 in the action entitled *Macias v. City of Los Angeles erroneously sued as Los Angeles Department of Water and Power, et al.*, Los Angeles Superior Court Case No. BC594049 (the "*Macias* Action");

(iii)   claims for violations of California's Bane Act, Civil Code § 51.2;

(iv)    claims arising out of field work investigations created after December 21, 2015;

(v)     claims arising out of LADWP's failure to record or credit payments made by customers;

(vi)    claims arising from the Back-Billing of customers during the period September 3, 2013 through September 10, 2015; and

(vii)   claims for personal injury.

9.      All members of the Settlement Class who did not make a valid request for exclusion from the Settlement Class in the time and manner provided in the Settlement Agreement are barred, permanently enjoined, and restrained from commencing or prosecuting

1   any action, suit, proceeding, claim, or cause of action in any jurisdiction or court against

2   Defendant and/or the Released Parties based upon, relating to, or arising out of, any of the

3   Released Claims.  However, all members of the Settlement Class who did make a valid request

4   for exclusion from the Settlement Class in the time and manner provided in the Settlement

5   Agreement (as set forth in Exhibit A hereto) are not barred, permanently enjoined, or restrained

6   from commencing or prosecuting any action, suit, proceeding, claim, or cause of action in any

7

8   jurisdiction or court against Defendant and/or the Released Parties based upon, relating to, or

9   arising out of, any of the Released Claims.

10       10.    By operation of this Final Order and upon the occurrence of the Effective Date,

11   Defendant and/or the Released Parties shall be deemed to have, and by operation of this Final

12   Order shall have, fully, finally, and forever released, relinquished and discharged each and all

13

14   members of the Settlement Class, Plaintiff and Class Counsel from all claims (including unknown

15   claims), arising out of, relating to, or in connection with the institution, prosecution, assertion,

16   settlement or resolution of this litigation or the Released Claims.

17       11.    For good cause shown, and after review of the declarations of Plaintiffs Jones,

18   *SHARON BRANSFORD, STEVEN SHRAGER, HAYLEY FONTAINE, RACHEL*
    Kimhi, Beckerman Megerdichian, and Novak submitted as evidence in connection with Plaintiff's *TASH*

19   Motion for Final Approval, the Court awards a service award to Plaintiffs Jones, Kimhi,

20   *BRANSFORD, SHRAGER, FONTAINE, TASH*
    Beckerman Megerdichian, and Novak, in the amount of $5,000 each for the time and expenses

21

22   expended in connection with the prosecution of the Action, which shall be paid by Defendant.

23   ~~The Court has reviewed the separate service-award-request submitted by counsel in the *Bransford*~~

24   ~~and *Fontaine* cases, seeking service awards of $5,000 each for Plaintiffs Sharon Bransford, Steven~~

25   ~~Shrager, Rachel Tash and Hayley Fontaine ("*Bransford* and *Fontaine* Plaintiffs"). Counsel in the~~

26   ~~*Bransford* and *Fontaine* cases are ordered to submit declarations from each of the *Bransford* and~~

27   ~~*Fontaine* Plaintiffs to support the requested awards by no later than Friday, July 14, 2017.~~

28

7

[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT and FINAL JUDGMENT

Exhibit 4
335

12.   For good cause shown, the Court awards Class Counsel: (i) reasonable attorneys' fees in the total amount of $19,000,000 ($15,200,000 to Plaintiffs' counsel in the *Jones, Kimhi,* and *Morski* cases, and $3,800,000 to Plaintiffs' counsel in the *Bransford* and *Fontaine* cases); and (ii) expenses in the amount of $2,741,003.99 ($2,500,000 for reimbursement of expenses which have and will be incurred by the CC&B System Monitoring Expert, $212,035.28 for reimbursement of expenses incurred by Plaintiffs' counsel in the *Jones, Kimhi,* and *Morski* cases, and $28,968.71 for reimbursement of expenses incurred by Plaintiffs' counsel in the *Bransford* and *Fontaine* cases).   The attorneys' fees and reimbursement of expenses awarded by the Court shall be paid by Defendant within 7 business days after this Order has been entered.   Defendant will pay the amount awarded by the Court directly to an account established by Class Counsel. Class Counsel shall be responsible for allocating the attorneys' fees and expenses among Plaintiffs' counsel.

13.   For good cause shown, the Court approves the right of Class and Liaison Counsel to make quarterly applications to this Court for additional awards of reasonable attorneys' fees at the rate of twenty-nine percent (29%) of all future recoveries by Class Members subsequent to Final Approval for: (i) Field Work claims; (ii) Pre-Identified Claims Made claims; (iii) Omnibus claims; and (iv) all claims paid in connection with the Settlement by, or on behalf of, the City of Los Angeles, including all departments thereof.   The $1 million of future attorneys' fees identified in the Memorandum of Understanding executed on June 12, 2015 shall be utilized to pay any such future attorneys' fees awarded to Class Counsel by the Court and shall not be in addition to any future attorneys' fees awarded by the Court, as set forth in the Settlement Agreement. Should the Court award such future attorneys' fees to Class Counsel, Defendant will pay the amount of attorneys' fees awarded by the Court within 7 business days after the Court issues an order granting Class Counsel's application.   Defendant will pay the amount awarded by the Court

[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT and FINAL JUDGMENT

Exhibit 4
336

1  directly to an account established by Class Counsel and Liaison Counsel, and Class Counsel shall

2  be responsible for allocating any future attorneys' fees.

3      14.    The Settlement Agreement shall not be offered or be admissible in evidence by or

4  against Defendant or cited or referred to in any other action or proceeding, except: (1) in any

5  action or proceeding brought by or against the Parties to enforce or otherwise implement the terms

6  of the Settlement Agreement, or (2) in any action involving Plaintiff, members of the Settlement

7  Class, or any of them, to support a defense of res judicata, collateral estoppel, release, or other

8  theory of claim preclusion, issue preclusion, or similar defense.

9

10     15.    If, for any reason, the Effective Date does not occur, this Final Judgment shall be

11  deemed vacated and shall have no force or effect whatsoever.

12     16.    Without affecting the finality of this Judgment in any way, the Court hereby retains

13  continuing jurisdiction over: (a) the implementation of this Settlement and any award or

14  distribution to the Settlement Class members; (b) hearing and determining an application for

15  attorneys' fees and costs and (c) all parties for the purpose of enforcing and administering the

16  Settlement Agreement pursuant to California Code of Civil Procedure § 664.6 or otherwise.

17

18     17.    The Clerk is directed to enter this Final Order forthwith.

19

20  DATED: July 20 , 2017          SO ORDERED:

21

22

23                                      Hon. Elihu M. Berle

24

25

26

27

28

9

[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT and FINAL
JUDGMENT

Exhibit 4
337

**EXHIBIT A**

# EXHIBIT A

Exhibit 4
339

City of Los Angeles (Jones) Claims
Opt Outs

| ClaimID | FirstName | LastName | OptOut |
|---|---|---|---|
| JCLA1-1006184040 | LORENA P | RODRIGUEZ | 3/31/2017 |
| JCLA1-1007603852 | | PSW HAY LLC | 3/31/2017 |
| JCLA1-1017606242 | GERMAN | MORAN | 3/31/2017 |
| JCLA1-1022262475 | ALBERT W | FELDMAN | 3/31/2017 |
| JCLA1-1000144194 | ANTHA Y | ABRAHAM | 4/3/2017 |
| JCLA1-1001273974 | CHOON JA | SEO | 4/3/2017 |
| JCLA1-1001364058 | JEAN | HASSELQUIST | 4/3/2017 |
| JCLA1-1001572726 | MARIUS V | ILIESCU | 4/3/2017 |
| JCLA1-1004832044 | RITA | SHELDON | 4/3/2017 |
| JCLA1-1004935897 | MELVIN JOEL | ALVARADO | 4/3/2017 |
| JCLA1-1006065849 | SUNG M | LEE | 4/3/2017 |
| JCLA1-1006915915 | BIENVENIDO TESTA | CRUZ | 4/3/2017 |
| JCLA1-1007015772 | EDNA E | SAGE | 4/3/2017 |
| JCLA1-1007137894 | SAMUEL | OBADIA | 4/3/2017 |
| JCLA1-1009140540 | IRENE | GOLDBERG | 4/3/2017 |
| JCLA1-1009579649 | ANTONIO | PONTIS | 4/3/2017 |
| JCLA1-1010158864 | ANN | SCOTTO | 4/3/2017 |
| JCLA1-1010330624 | AZAD HOUSHANG | PISHVA | 4/3/2017 |
| JCLA1-1010854534 | DOMINIC | HOOD | 4/3/2017 |
| JCLA1-1011024144 | BORIS | SHTERN | 4/3/2017 |
| JCLA1-1011138824 | GHEORGHE | NICOLAE | 4/3/2017 |
| JCLA1-1011227339 | CHANDRA | BOND | 4/3/2017 |
| JCLA1-1011565102 | PAULA | ORSA | 4/3/2017 |
| JCLA1-1012563944 | DIANE | EDINGTON | 4/3/2017 |
| JCLA1-1014987172 | | PINZON MANAGEMENT INC. | 4/3/2017 |
| JCLA1-1015098754 | JEANNE | GOEN | 4/3/2017 |
| JCLA1-1015230768 | HOUSHANG | RAHBAN | 4/3/2017 |
| JCLA1-1016787928 | FLORENCE M | MC CAIN | 4/3/2017 |
| JCLA1-1016818866 | CHUN H | COLTHARP | 4/3/2017 |
| JCLA1-1018281681 | | 13015 WASHINGTON ACQUISITION V | 4/3/2017 |
| JCLA1-1018701648 | AMY S | COHEN | 4/3/2017 |
| JCLA1-1020117800 | HAYK | KHUDOYAN | 4/3/2017 |
| JCLA1-1020995742 | ELIZABETH A | BROWN | 4/3/2017 |
| JCLA1-1022374036 | JUNE | MARTIN | 4/3/2017 |
| JCLA1-1022380524 | R | FARELLO | 4/3/2017 |
| JCLA1-1022456016 | SMITH | TAKAYA | 4/3/2017 |
| JCLA1-1001488245 | | WOODLAND HILLS RETAIL LLC | 4/4/2017 |
| JCLA1-1001725514 | BERYLE | NATHAN | 4/4/2017 |
| JCLA1-1002455901 | JEONG RAN | NA | 4/4/2017 |
| JCLA1-1003500714 | ANDREAS | KRAINER | 4/4/2017 |
| JCLA1-1003633870 | LOLA P | LA COMBE | 4/4/2017 |
| JCLA1-1003811299 | | WOODLAND HILLS RETAIL LLC | 4/4/2017 |
| JCLA1-1004149760 | JOSEPHINE | GONZALEZ | 4/4/2017 |

Exhibit 4
340

| JCLA1-1004350562 | JOHN | TREVINO | 4/4/2017 |
| JCLA1-1005501904 | BRUCE L | BECKER | 4/4/2017 |
| JCLA1-1005523975 | | WOODLAND HILLS RETAIL LLC | 4/4/2017 |
| JCLA1-1006088016 | ARTHUR | CRAIG | 4/4/2017 |
| JCLA1-1006178228 | GLORIA | DONIS | 4/4/2017 |
| JCLA1-1007987243 | ANTON | MAYR | 4/4/2017 |
| JCLA1-1008638803 | | WOODLAND HILLS RETAIL LLC | 4/4/2017 |
| JCLA1-1010339621 | CARLOS A | GONZALEZ | 4/4/2017 |
| JCLA1-1010976443 | PETER | FAIRBROTHER | 4/4/2017 |
| JCLA1-1011246988 | TERESA | RUIZ | 4/4/2017 |
| JCLA1-1011563568 | MANJU K | SHUKLA | 4/4/2017 |
| JCLA1-1012871703 | NANCY | REED | 4/4/2017 |
| JCLA1-1014842905 | EFIM | RUDIN | 4/4/2017 |
| JCLA1-1015371892 | STEVE | LOCKWOOD | 4/4/2017 |
| JCLA1-1015511236 | JERRY | LOCKENOUR | 4/4/2017 |
| JCLA1-1015761372 | SANDRA | GERSTON | 4/4/2017 |
| JCLA1-1016704682 | JENNIFER | IMAMURA | 4/4/2017 |
| JCLA1-1018810315 | JOHN J | ADAME | 4/4/2017 |
| JCLA1-1018930736 | JENNIFER | IMAMURA | 4/4/2017 |
| JCLA1-1019245859 | MARTHA | CASTRO | 4/4/2017 |
| JCLA1-1021324485 | YONG JONG | KIM | 4/4/2017 |
| JCLA1-1021331180 | NANDI | MORGAN | 4/4/2017 |
| JCLA1-1021429538 | F S | GARCIA | 4/4/2017 |
| JCLA1-1021598712 | | WOODLAND HILLS RETAIL LLC | 4/4/2017 |
| JCLA1-1022395785 | J B | GILL | 4/4/2017 |
| JCLA1-1023144514 | ANTONIO | HERNANDEZ | 4/4/2017 |
| JCLA1-1000748570 | SON AE | YI | 4/5/2017 |
| JCLA1-1001075935 | IVY M | LYEW | 4/5/2017 |
| JCLA1-1002853478 | BERT | KALMAN | 4/5/2017 |
| JCLA1-1002890217 | K | MORI | 4/5/2017 |
| JCLA1-1003034900 | FRED | KAJIWARA | 4/5/2017 |
| JCLA1-1003483810 | SONG HA | CHOE | 4/5/2017 |
| JCLA1-1003625029 | VIRGINIA | GUERRERO | 4/5/2017 |
| JCLA1-1004325517 | EVELYN | MARKLEY | 4/5/2017 |
| JCLA1-1005242631 | ALINE C | KONBLETT | 4/5/2017 |
| JCLA1-1005832986 | NAHUM | GARCIA | 4/5/2017 |
| JCLA1-1006378839 | QUI | LI | 4/5/2017 |
| JCLA1-1006616730 | WILLIAM | KIM | 4/5/2017 |
| JCLA1-1007304600 | DEBORAH J | POTTER | 4/5/2017 |
| JCLA1-1007905107 | AZAD | PISHVA | 4/5/2017 |
| JCLA1-1008712655 | DIANA | KOTZIN | 4/5/2017 |
| JCLA1-1009711920 | SUSAN | DINOS | 4/5/2017 |
| JCLA1-1010032399 | FIANA | YERMUS | 4/5/2017 |
| JCLA1-1010656503 | YALE | HUANG | 4/5/2017 |
| JCLA1-1011557126 | MICHAEL | SOPHIE | 4/5/2017 |
| JCLA1-1011983303 | BENJAMIN | FEHRES | 4/5/2017 |
| JCLA1-1012158497 | FIANA | YERMUS | 4/5/2017 |

Exhibit 4
341

| | | | |
|---|---|---|---|
| JCLA1-1012441300 | SHARON A | SAMPLES | 4/5/2017 |
| JCLA1-1012468348 | YUN CHEUNG | TANG | 4/5/2017 |
| JCLA1-1013402693 | KARLA | SEVERSON | 4/5/2017 |
| JCLA1-1013695674 | FRANCISCO | BOLIO | 4/5/2017 |
| JCLA1-1014212103 | DIANE L | SIMPSON | 4/5/2017 |
| JCLA1-1014512638 | MICHELLE | YERMUS | 4/5/2017 |
| JCLA1-1014584531 | CHARLES A | ZAHKA | 4/5/2017 |
| JCLA1-1015262392 | | NEXDON,LLC | 4/5/2017 |
| JCLA1-1015528406 | FIANA | YERMUS | 4/5/2017 |
| JCLA1-1015546986 | CHERYL | WLODINGER | 4/5/2017 |
| JCLA1-1017963282 | WANDA | LA FLEUR | 4/5/2017 |
| JCLA1-1018284303 | KATHERINE | HARTMAN | 4/5/2017 |
| JCLA1-1018448012 | LISA T | WONG | 4/5/2017 |
| JCLA1-1018599983 | DAVID | STADE | 4/5/2017 |
| JCLA1-1019315873 | EDUARDO D | MALDONADO | 4/5/2017 |
| JCLA1-1021263354 | ERNESTO | MEJIA PENA | 4/5/2017 |
| JCLA1-1022619292 | ILL SUNG | LEE | 4/5/2017 |
| JCLA1-1001298004 | KUN ZHEN | YE | 4/6/2017 |
| JCLA1-1002069343 | YOUNG SUP | LIM | 4/6/2017 |
| JCLA1-1003577679 | JUN JIE | JU | 4/6/2017 |
| JCLA1-1004044593 | CHUN Y | YI | 4/6/2017 |
| JCLA1-1004284349 | JOANNA | KU | 4/6/2017 |
| JCLA1-1004365098 | MARGOT ESPERANZA | FERNANDEZ | 4/6/2017 |
| JCLA1-1005039038 | ROBERT G | BADAL | 4/6/2017 |
| JCLA1-1005070547 | LAWRENCE I | KITTIVER | 4/6/2017 |
| JCLA1-1005234752 | JILL | KING | 4/6/2017 |
| JCLA1-1005447667 | MARLENE | LOVINGS | 4/6/2017 |
| JCLA1-1005460787 | GONZALO M | LARENAS | 4/6/2017 |
| JCLA1-1005550670 | FRANCES | HERMAN | 4/6/2017 |
| JCLA1-1005596417 | FREDERICK | KURI | 4/6/2017 |
| JCLA1-1005762260 | KEVORK | ANDONIAN | 4/6/2017 |
| JCLA1-1006945300 | SHIN G | YOON | 4/6/2017 |
| JCLA1-1007361263 | MARIO | SALINAS | 4/6/2017 |
| JCLA1-1008087629 | BENNY | JACKS | 4/6/2017 |
| JCLA1-1008233536 | YOUNG SUK | KIM | 4/6/2017 |
| JCLA1-1008329169 | BARBARA | BITAR | 4/6/2017 |
| JCLA1-1008482153 | JEFFREY | HERSHEY | 4/6/2017 |
| JCLA1-1008515000 | DORIS | KLEGA | 4/6/2017 |
| JCLA1-1008964956 | NAE YUN | PAK | 4/6/2017 |
| JCLA1-1013049667 | SIU YING | WONG | 4/6/2017 |
| JCLA1-1013279476 | JOSE | ALVAREZ | 4/6/2017 |
| JCLA1-1013476859 | ROSLIN L | LEWIS | 4/6/2017 |
| JCLA1-1014401550 | JONG HO | KIM | 4/6/2017 |
| JCLA1-1016316500 | KYE S | KANG | 4/6/2017 |
| JCLA1-1017447357 | JUNE L | ROACH | 4/6/2017 |
| JCLA1-1018087320 | MARIA C | DE LA ROSA | 4/6/2017 |
| JCLA1-1018607099 | BETH | BLACK | 4/6/2017 |

Exhibit 4
342

| JCLA1-1018773355 | LYNNE | MOUNIER | 4/6/2017 |
| JCLA1-1019234431 | FILOMENA | MARALIT | 4/6/2017 |
| JCLA1-1020125063 | J RICHARD | CHAMBERLAIN | 4/6/2017 |
| JCLA1-1020135085 | CHRISTENE | DAGLAS | 4/6/2017 |
| JCLA1-1022151576 | THONGCHAI | WETSUWAN | 4/6/2017 |
| JCLA1-1022372882 | SALVADOR | GODOY | 4/6/2017 |
| JCLA1-1000362957 | HOLLY K | HUBBS | 4/7/2017 |
| JCLA1-1000821358 | LARRY D | SIGLER | 4/7/2017 |
| JCLA1-1000842312 | DOROTHY | REYNOLDS | 4/7/2017 |
| JCLA1-1003017568 | GEORGINA H | ALONSO | 4/7/2017 |
| JCLA1-1003362877 | ERIC | BERKLEY | 4/7/2017 |
| JCLA1-1004226667 | SUZANNE | TATUM | 4/7/2017 |
| JCLA1-1004637209 | HOWARD | ROSEN | 4/7/2017 |
| JCLA1-1005300801 | BESS | SERRANO | 4/7/2017 |
| JCLA1-1005928657 | WILLIAM | DIAZ | 4/7/2017 |
| JCLA1-1006961542 | ROSA | MELGAR | 4/7/2017 |
| JCLA1-1007617080 | ERIC | BERKLEY | 4/7/2017 |
| JCLA1-1007798998 | JEFF | GRAYSON | 4/7/2017 |
| JCLA1-1007824662 | JINGYI | CHEN | 4/7/2017 |
| JCLA1-1009245279 | PHILIP | GLASSBURN | 4/7/2017 |
| JCLA1-1009530739 | MEIRA | PEERY | 4/7/2017 |
| JCLA1-1010472011 | AMY L | LEVINE | 4/7/2017 |
| JCLA1-1011672227 | ANNETTE J | GLONEK | 4/7/2017 |
| JCLA1-1011894220 | ARTHUR R | PRESTON | 4/7/2017 |
| JCLA1-1012208877 | MARILYN M | WARREN | 4/7/2017 |
| JCLA1-1012344924 | LARRY D | SIGLER | 4/7/2017 |
| JCLA1-1012882330 | DELPHA M | INSKEEP | 4/7/2017 |
| JCLA1-1014334071 | DELORES | DIVINE | 4/7/2017 |
| JCLA1-1014520916 | SO YEUN | KIM | 4/7/2017 |
| JCLA1-1014697921 | HO | CHOI | 4/7/2017 |
| JCLA1-1016014147 | BOK YOL | CHO | 4/7/2017 |
| JCLA1-1016193149 | ROBERTO | MENDOZA ALVARADO | 4/7/2017 |
| JCLA1-1016472668 | GINGER LEE DIANE | TEMCHUK | 4/7/2017 |
| JCLA1-1017807981 | GEORGINA H | ALONSO | 4/7/2017 |
| JCLA1-1018693017 | SIGRID E | RAMOS | 4/7/2017 |
| JCLA1-1018786813 | MICHELE | PHILBIN | 4/7/2017 |
| JCLA1-1019448350 | YOUNGMEE | KANG | 4/7/2017 |
| JCLA1-1020617802 | GEORGINA H | ALONSO | 4/7/2017 |
| JCLA1-1020690518 | MICHAEL | CORRADINO | 4/7/2017 |
| JCLA1-1021324078 | JENNETTE | MEARS | 4/7/2017 |
| JCLA1-1021559881 | | PARDEE & FLEMING LANDSCAPE DES | 4/7/2017 |
| JCLA1-1000687970 | MARION L | ROSEN | 4/8/2017 |
| JCLA1-1002050650 | ROXANNE E | CLAY | 4/8/2017 |
| JCLA1-1003588891 | JEANIE | YANG | 4/8/2017 |
| JCLA1-1004742657 | ROBERT | ARROYO JR | 4/8/2017 |
| JCLA1-1005417296 | DANIELLE | SHAPIRA | 4/8/2017 |
| JCLA1-1005435618 | MARISHA | BAILEY | 4/8/2017 |

Exhibit 4
343

| | | | |
|---|---|---|---|
| JCLA1-1005651140 | TERESA | SAN PEDRO VIRAY | 4/8/2017 |
| JCLA1-1007569360 | MICHIRU | OMORI | 4/8/2017 |
| JCLA1-1007945737 | JACOB | HARLOW | 4/8/2017 |
| JCLA1-1008398128 | STARLYNN M | BURNETT | 4/8/2017 |
| JCLA1-1008993344 | AZAD HOUSHANG | PISHVA | 4/8/2017 |
| JCLA1-1009084933 | DONALD E | RENNER | 4/8/2017 |
| JCLA1-1009177770 | HOUSHANG AZAD | PISHVA | 4/8/2017 |
| JCLA1-1014318009 | | RED ROOM FILMS INC | 4/8/2017 |
| JCLA1-1014547601 | W T | MARPLE | 4/8/2017 |
| JCLA1-1018318194 | JOHN | COSTANZO | 4/8/2017 |
| JCLA1-1019463163 | GLORIA | MAULIT | 4/8/2017 |
| JCLA1-1006001166 | JAMES | COOPER | 4/9/2017 |
| JCLA1-1000596028 | A | FAGENSON | 4/10/2017 |
| JCLA1-1000739473 | ALYSSA | JACOBSEN | 4/10/2017 |
| JCLA1-1001481224 | EBERHARD | FRICKE | 4/10/2017 |
| JCLA1-1001543440 | LOYD J | HOPPER | 4/10/2017 |
| JCLA1-1002177685 | MARIA | CUELLAR | 4/10/2017 |
| JCLA1-1002241790 | FRANCISCO | GUERRERO MATA | 4/10/2017 |
| JCLA1-1002953332 | FAY | JEW | 4/10/2017 |
| JCLA1-1003047696 | CHIK | CHIKYARAPPA | 4/10/2017 |
| JCLA1-1003705685 | SAYAKA | ITO | 4/10/2017 |
| JCLA1-1005358869 | THEODORE A | GEIRINGER | 4/10/2017 |
| JCLA1-1006494588 | VICTORIA Y | FUJITA | 4/10/2017 |
| JCLA1-1007400498 | NOBUKO | HIGUCHI | 4/10/2017 |
| JCLA1-1007564458 | STEVE SABORU | KOBAYASHI | 4/10/2017 |
| JCLA1-1007797932 | RICK T | MECHTLY | 4/10/2017 |
| JCLA1-1008242942 | EBRAHIM | HAGHIGHAT | 4/10/2017 |
| JCLA1-1008532584 | JOON RAE | RHO | 4/10/2017 |
| JCLA1-1008736481 | ROBERT B | FENTON | 4/10/2017 |
| JCLA1-1008772577 | CARMELLA | CORNETT | 4/10/2017 |
| JCLA1-1008898147 | G W | GINN | 4/10/2017 |
| JCLA1-1009456083 | ROSA MIRIAM | AGUILAR | 4/10/2017 |
| JCLA1-1011464373 | DONALD | WOMACK | 4/10/2017 |
| JCLA1-1012316289 | J C | GASPAR | 4/10/2017 |
| JCLA1-1012353370 | PATRICIA A | KAATZ | 4/10/2017 |
| JCLA1-1012857670 | LOUISE | RUSSELL | 4/10/2017 |
| JCLA1-1012951375 | JOHN R | HOMES | 4/10/2017 |
| JCLA1-1013817281 | JOHN J | MURPHY III | 4/10/2017 |
| JCLA1-1014271665 | SHELIA | PURWIN | 4/10/2017 |
| JCLA1-1014446716 | PATRICIA | DENNEY | 4/10/2017 |
| JCLA1-1014776279 | VICTORIA Y | FUJITA | 4/10/2017 |
| JCLA1-1016656718 | BARBARA | RABENOWITZ | 4/10/2017 |
| JCLA1-1017833230 | PERRY | HEINITZ | 4/10/2017 |
| JCLA1-1018100695 | WILLIAM | SPEARS | 4/10/2017 |
| JCLA1-1018953574 | | OPTIMUS CONSTRUCTION | 4/10/2017 |
| JCLA1-1019515856 | TERRY | BOWYER | 4/10/2017 |
| JCLA1-1020024925 | VASILE | TERIS | 4/10/2017 |

Exhibit 4
344

| JCLA1-1021049387 | ROBERT B | FENTON | 4/10/2017 |
| JCLA1-1021347159 | MIGUEL A | CASIANO | 4/10/2017 |
| JCLA1-1021393509 | EBERHARD | FRICKE | 4/10/2017 |
| JCLA1-1000489515 | MARY | TOLEDO | 4/11/2017 |
| JCLA1-1000796779 | ZENAIDA | SABINO | 4/11/2017 |
| JCLA1-1002088402 | RICHARD | SANDIFER | 4/11/2017 |
| JCLA1-1002423848 | SVETLANA | HAKOPYAN | 4/11/2017 |
| JCLA1-1003359795 | H G | MC LENNAN | 4/11/2017 |
| JCLA1-1003649360 | CASPER | SAGOIAN | 4/11/2017 |
| JCLA1-1003991688 | HUGH G | MCLENNAN | 4/11/2017 |
| JCLA1-1004013710 | DAVID | LAFEVERS | 4/11/2017 |
| JCLA1-1004536127 | AL A | NIXON | 4/11/2017 |
| JCLA1-1005601860 | ELAINE | LIPSHIN | 4/11/2017 |
| JCLA1-1007782692 | CHARLES G | ARNOLD | 4/11/2017 |
| JCLA1-1008492582 | A A | NIXON | 4/11/2017 |
| JCLA1-1008752614 | MATTHEW | BUESE | 4/11/2017 |
| JCLA1-1009825984 | JORGE E | GRUNAVER | 4/11/2017 |
| JCLA1-1012363171 | ROBERT A | BERMAN | 4/11/2017 |
| JCLA1-1014471826 | H G | MC LENNAN | 4/11/2017 |
| JCLA1-1015297706 | ELEONORA E | NYREN | 4/11/2017 |
| JCLA1-1017744688 | ADRIANA | TRINGONE | 4/11/2017 |
| JCLA1-1020377232 | H G | MC LENNAN | 4/11/2017 |
| JCLA1-1020475412 | AL A | NIXON | 4/11/2017 |
| JCLA1-1020991992 | BERTHA | BARBA | 4/11/2017 |
| JCLA1-1022132792 | CLARA | DRYDEN | 4/11/2017 |
| JCLA1-1000516474 | MARIVICK S | SCHULZ | 4/12/2017 |
| JCLA1-1001097777 | JACINTO | AGUILA | 4/12/2017 |
| JCLA1-1001173678 | | OPTIMUS CONSTRUCTION, INC. | 4/12/2017 |
| JCLA1-1002345456 | ANDREA | JUCKNIESS KEMERER | 4/12/2017 |
| JCLA1-1002634113 | | OPTIMUS CONSTRUCTION | 4/12/2017 |
| JCLA1-1004333447 | MERCEDES | TECSON | 4/12/2017 |
| JCLA1-1004714726 | | OPTIMUS CONSTRUCTION, INC. | 4/12/2017 |
| JCLA1-1006055118 | BARBARA | DARCY | 4/12/2017 |
| JCLA1-1006137548 | | OPTIMUS CONSTRUCTION, INC. | 4/12/2017 |
| JCLA1-1007402075 | HELEN M | HEALY | 4/12/2017 |
| JCLA1-1009778986 | SICHEN | LI | 4/12/2017 |
| JCLA1-1014156068 | | OPTIMUS CONSTRUCTION, INC. | 4/12/2017 |
| JCLA1-1015029647 | MASATO | TAKAHASHI | 4/12/2017 |
| JCLA1-1015556515 | EDWARD | MAZIARZ | 4/12/2017 |
| JCLA1-1019640960 | | OPTIMUS CONSTRUCTION INC | 4/12/2017 |
| JCLA1-1019992123 | E | FLORES | 4/12/2017 |
| JCLA1-1020325402 | DOROTHY | GROSWIRTH | 4/12/2017 |
| JCLA1-1020965002 | LAZARO R | MURILLO | 4/12/2017 |
| JCLA1-1021023957 | JOHN | LLERENAS | 4/12/2017 |
| JCLA1-1022041444 | H G | MC LENNAN | 4/12/2017 |
| JCLA1-1000272079 | PEG A | SHIPMAN | 4/13/2017 |
| JCLA1-1001973089 | JENNIFER R | STERNBACH | 4/13/2017 |

Exhibit 4
345

| JCLA1-1002450926 | VERNITA | JOHNSON | 4/13/2017 |
| JCLA1-1002558956 | NESTOR | GONZALEZ | 4/13/2017 |
| JCLA1-1005394296 | CAROL ANN | BRANT | 4/13/2017 |
| JCLA1-1009124900 | KATHY | HANLON | 4/13/2017 |
| JCLA1-1010131184 | ROLAND | JABONILLO | 4/13/2017 |
| JCLA1-1010822055 | W W | LUND | 4/13/2017 |
| JCLA1-1011333767 | RICHARD A | MURRAY | 4/13/2017 |
| JCLA1-1011377489 | BARBARA J | LE BLANC | 4/13/2017 |
| JCLA1-1014485967 | DIANE | VANETTE | 4/13/2017 |
| JCLA1-1016597908 | JOHN | VANDYGRIFF | 4/13/2017 |
| JCLA1-1021554278 | ANTHONY | EDWARDS | 4/13/2017 |
| JCLA1-1000357031 | ROMERO R | AGCAOILI | 4/14/2017 |
| JCLA1-1001106865 | RICHARD | MICALLEF | 4/14/2017 |
| JCLA1-1005510474 | CATALINA | VILLALOBOS | 4/14/2017 |
| JCLA1-1005805873 | ADAM | HOCHBERG | 4/14/2017 |
| JCLA1-1006135626 | MEGHAN L | BECKMANN | 4/14/2017 |
| JCLA1-1008562807 | BILLIE J | KENDRICK | 4/14/2017 |
| JCLA1-1011220709 | BARRY R | MORA | 4/14/2017 |
| JCLA1-1015738028 | ALEXANDRIA | EN | 4/14/2017 |
| JCLA1-1016379617 | MARIE | MONGES | 4/14/2017 |
| JCLA1-1017324727 | CATALINA | VILLALOBOS | 4/14/2017 |
| JCLA1-1018716505 | MARGARET | KHIN | 4/14/2017 |
| JCLA1-1020903678 | VICTOR | JAUREGUI JR | 4/14/2017 |
| JCLA1-1021911348 | HUNTER | BROWN | 4/14/2017 |
| JCLA1-1008422258 | GAGE | ROARK | 4/15/2017 |
| JCLA1-1012012611 | ROSEMARIE T | BALMACEDA | 4/15/2017 |
| JCLA1-1015028420 | ROSARIO | JURGENS | 4/15/2017 |
| JCLA1-1019639474 | KYE SUN | KIM | 4/15/2017 |
| JCLA1-1020647728 | JESSY | ALFARO | 4/15/2017 |
| JCLA1-1021402290 | GEORGE E | MURPHY | 4/15/2017 |
| JCLA1-1000023818 | CASEY | STOLBERG | 4/17/2017 |
| JCLA1-1000215997 | FRANK G | GOMEZ | 4/17/2017 |
| JCLA1-1000892778 | DIANE | BOOBAR | 4/17/2017 |
| JCLA1-1004843356 | GRACIE | VAN BRUNT | 4/17/2017 |
| JCLA1-1008389161 | SUREEPORN | SOMTAMITWONG | 4/17/2017 |
| JCLA1-1009563726 | M A | ORTNER | 4/17/2017 |
| JCLA1-1012348717 | LARRY Z | SOBEL | 4/17/2017 |
| JCLA1-1013508181 | JEAN | VERNON | 4/17/2017 |
| JCLA1-1014862191 | YIKAI | LIN | 4/17/2017 |
| JCLA1-1015647332 | SHENG | JIANG | 4/17/2017 |
| JCLA1-1017216479 | BORZOUYEH | POURSHARIF | 4/17/2017 |
| JCLA1-1004914270 | YOON SEO | KANG | 4/18/2017 |
| JCLA1-1005676984 | ALYTHEA | READE | 4/18/2017 |
| JCLA1-1007758058 | JOHN | VIDOVICH DBA | 4/18/2017 |
| JCLA1-1008226343 | CHARLES E | MADRID | 4/18/2017 |
| JCLA1-1010051067 | KANA | KAMITO | 4/18/2017 |
| JCLA1-1011461706 | JOHN | VIDOVICH DBA | 4/18/2017 |

Exhibit 4
346

| | | | |
|---|---|---|---|
| JCLA1-1011846195 | JOHN | VIDOVICH DBA | 4/18/2017 |
| JCLA1-1012357589 | JOHN | VIDOVICH DBA | 4/18/2017 |
| JCLA1-1016383150 | DIANE | JORDAN | 4/18/2017 |
| JCLA1-1020839112 | OLIVIA | SONG | 4/18/2017 |
| JCLA1-1000931986 | TERESA | ROMERO | 4/19/2017 |
| JCLA1-1001851617 | REBECCA | DUFENDACH | 4/19/2017 |
| JCLA1-1002789540 | TRACIE | BEER | 4/19/2017 |
| JCLA1-1002886635 | NANCY | TILLOTSON | 4/19/2017 |
| JCLA1-1006498460 | NESIM | HASON | 4/19/2017 |
| JCLA1-1010485431 | CAROLINE | BLACK | 4/19/2017 |
| JCLA1-1010595784 | NANCY | TILLOTSON | 4/19/2017 |
| JCLA1-1011065819 | GEORGE W | TODD | 4/19/2017 |
| JCLA1-1012423204 | AMBER | LASTOSKIE | 4/19/2017 |
| JCLA1-1014188768 | TERESA | ROMERO | 4/19/2017 |
| JCLA1-1017373990 | JASON | BAUSTIN | 4/19/2017 |
| JCLA1-1018252096 | MARGARITA | SUAREZ | 4/19/2017 |
| JCLA1-1022529676 | KENNETH H | FRASER | 4/19/2017 |
| JCLA1-1006822291 | CHRIS | DESSER | 4/20/2017 |
| JCLA1-1007062339 | VIRGINIA | SMITH | 4/20/2017 |
| JCLA1-1009531620 | DAVID | CHIEN | 4/20/2017 |
| JCLA1-1009662112 | IAN | MCCLARREN | 4/20/2017 |
| JCLA1-1011908190 | G | MADRID | 4/20/2017 |
| JCLA1-1011962462 | SEMYON | GINZBURG | 4/20/2017 |
| JCLA1-1011964244 | RODELIO | CADAY | 4/20/2017 |
| JCLA1-1015932142 | RAMONA | YERA | 4/20/2017 |
| JCLA1-1016407939 | RAPHAEL | GARCIA | 4/20/2017 |
| JCLA1-1017305854 | ALEXANDRA | JULIANO | 4/20/2017 |
| JCLA1-1020481137 | OSAMU | SUGIMOTO | 4/20/2017 |
| JCLA1-1020823283 | MIN | KANG | 4/20/2017 |
| JCLA1-1000757552 | D H | LIPPMAN | 4/21/2017 |
| JCLA1-1002167817 | RUTH | RHODES | 4/21/2017 |
| JCLA1-1003861792 | ELIZABETH A | HOAGE | 4/21/2017 |
| JCLA1-1004754957 | NAOMI | BIANGELLA | 4/21/2017 |
| JCLA1-1005437831 | JACKIE | LEDERFINE | 4/21/2017 |
| JCLA1-1005825610 | PHILIP | ANNINOS | 4/21/2017 |
| JCLA1-1006710213 | D H | LIPPMAN | 4/21/2017 |
| JCLA1-1009650050 | DALE | UYEDA | 4/21/2017 |
| JCLA1-1014137489 | DALE | UYEDA | 4/21/2017 |
| JCLA1-1016913869 | ELAINE B | LEIGH | 4/21/2017 |
| JCLA1-1017007217 | JEFF | LEADFORD | 4/21/2017 |
| JCLA1-1018597883 | IDA | ALEXANDER | 4/21/2017 |
| JCLA1-1007628340 | BARBARA | MUSSELL | 4/22/2017 |
| JCLA1-1007899158 | MAEBELL | MARSHALL | 4/22/2017 |
| JCLA1-1012411044 | JUNKO | OSHIRO | 4/22/2017 |
| JCLA1-1014780292 | ORVAL | AUFDEMBERGE | 4/22/2017 |
| JCLA1-1021739197 | MEGAN | SCHILLING | 4/22/2017 |
| JCLA1-1000041077 | LAURA | TIZ | 4/24/2017 |

Exhibit 4
347

| | | | |
|---|---|---|---|
| JCLA1-1000283127 | ALLISON D | OXMAN | 4/24/2017 |
| JCLA1-1000702090 | MICHAEL E | BOWLUS | 4/24/2017 |
| JCLA1-1003833284 | CURTIS H | BAER | 4/24/2017 |
| JCLA1-1004087594 | WOO B | SHIM | 4/24/2017 |
| JCLA1-1004898533 | IMELDA | ACOSTA | 4/24/2017 |
| JCLA1-1006088989 | YONGSHENG | JIAO | 4/24/2017 |
| JCLA1-1006620770 | MAY | BIN-JASSEM | 4/24/2017 |
| JCLA1-1007018518 | RENE | LEMUS | 4/24/2017 |
| JCLA1-1010285009 | NADINE | DE LILLIO | 4/24/2017 |
| JCLA1-1013312988 | ANDREW | JUSTICE | 4/24/2017 |
| JCLA1-1014669561 | BRUCE | AOKI | 4/24/2017 |
| JCLA1-1017608296 | TALAL | ALRABIAH | 4/24/2017 |
| JCLA1-1017643288 | BLANCA M | CALITO | 4/24/2017 |
| JCLA1-1020970499 | SHARON CATHERINE | BROWN | 4/24/2017 |
| JCLA1-1021610771 | ZACHARY | SCHORR | 4/24/2017 |
| JCLA1-1022336223 | MICHAEL | BOWLUS | 4/24/2017 |
| JCLA1-1000497330 | CLAUDIA | FLORES | 4/25/2017 |
| JCLA1-1001069390 | MINJI | KIM | 4/25/2017 |
| JCLA1-1001659481 | DJ | CARLILE | 4/25/2017 |
| JCLA1-1002290708 | CLAUDIA | FLORES | 4/25/2017 |
| JCLA1-1005196761 | HOLLY | GOSNELL | 4/25/2017 |
| JCLA1-1006787330 | ROBERT | KAWAHARA | 4/25/2017 |
| JCLA1-1007958421 | | KESTER SOLUTIONS LLC | 4/25/2017 |
| JCLA1-1007999608 | WM A | ROLSTON | 4/25/2017 |
| JCLA1-1008148040 | CARLO | IRIGOYEN | 4/25/2017 |
| JCLA1-1011659697 | MICHAEL | CASIANO | 4/25/2017 |
| JCLA1-1016293020 | | KESTER SOLUTIONS LLC | 4/25/2017 |
| JCLA1-1016930020 | CLAUDIA | FLORES | 4/25/2017 |
| JCLA1-1008876887 | GEORGETTE | TUCK | 4/26/2017 |
| JCLA1-1009332961 | ELAINE | DALY | 4/26/2017 |
| JCLA1-1015124240 | AREN | AZIZIAN | 4/26/2017 |
| JCLA1-1005016771 | NANCY | GOLDSTEIN | 4/27/2017 |
| JCLA1-1006138684 | RANDY | YAP | 4/27/2017 |
| JCLA1-1012658449 | JAY | STEIN | 4/27/2017 |
| JCLA1-1015197442 | JESSICA | FREITAS | 4/27/2017 |
| JCLA1-1018713565 | CAROLE | HUGHES | 4/27/2017 |
| JCLA1-1019494034 | MIKE L | WORLE | 4/27/2017 |
| JCLA1-1021683671 | EVELYN | HAMMOND | 4/27/2017 |
| JCLA1-1002845009 | TAMMY | SIBLEY | 4/28/2017 |
| JCLA1-1004198280 | WILLIAM M | MACKIE | 4/28/2017 |
| JCLA1-1005105138 | JON K | KENNEDY | 4/28/2017 |
| JCLA1-1009069250 | VIVIAN | LISCANO | 4/28/2017 |
| JCLA1-1010654292 | | AEG MANAGEMENT LACC LLC | 4/28/2017 |
| JCLA1-1012608050 | STUART A | WALL | 4/28/2017 |
| JCLA1-1016911718 | BONNY R | HENDERSON | 4/28/2017 |
| JCLA1-1001306236 | NELSON F | CHAVARRIA | 4/29/2017 |
| JCLA1-1014033470 | HEATHER | JOHNSON | 4/29/2017 |

Exhibit 4
348

| | | | |
|---|---|---|---|
| JCLA1-1002006376 | KATHRYN | CORNFORD | 5/1/2017 |
| JCLA1-1003685781 | TONY | TRAN | 5/1/2017 |
| JCLA1-1003690041 | CHERYL | HODGE | 5/1/2017 |
| JCLA1-1004617712 | ANH N | MA | 5/1/2017 |
| JCLA1-1006623361 | CASSANDRA | BOH KAI TING | 5/1/2017 |
| JCLA1-1011911981 | ANTHONY I | ZABATTA | 5/1/2017 |
| JCLA1-1012801616 | SIMIA | RASSOULI | 5/1/2017 |
| JCLA1-1012870790 | PHYLLIS | MOHR | 5/1/2017 |
| JCLA1-1013460880 | J | WHITE | 5/1/2017 |
| JCLA1-1014984424 | GREGORY | GERARDIS | 5/1/2017 |
| JCLA1-1015778119 | ROSELLEN | TRUNNELL | 5/1/2017 |
| JCLA1-1016386710 | LISA | LJEVAJA | 5/1/2017 |
| JCLA1-1017806535 | CHRISTINE | JOHNSON | 5/1/2017 |
| JCLA1-1020603054 | ERIN | ENG | 5/1/2017 |
| JCLA1-1000957870 | AMANDA | LUCIUS | 5/2/2017 |
| JCLA1-1001341724 | LEONARDO | RAYA | 5/2/2017 |
| JCLA1-1008006602 | KERRY L | MCCUMBER | 5/2/2017 |
| JCLA1-1018015108 | STEPHANE | JAUROYOU | 5/2/2017 |
| JCLA1-1022368753 | CYNTHIA | WRIGHT | 5/2/2017 |
| JCLA1-1008145025 | KARL | LIGON | 5/3/2017 |
| JCLA1-1011972930 | ESTHER | JOO | 5/3/2017 |
| JCLA1-1018302409 | NOEL | BOYT | 5/3/2017 |
| JCLA1-1019783583 | JENNIFER | SALDANA | 5/3/2017 |
| JCLA1-1022111167 | ISSABELL | HOKE | 5/3/2017 |
| JCLA1-1002240700 | C | JARAMILLO | 5/4/2017 |
| JCLA1-1005648603 | HENRY A | KELLY | 5/4/2017 |
| JCLA1-1009029487 | MARY | JARAMILLO | 5/4/2017 |
| JCLA1-1009879260 | KEVIN | CLOOBECK | 5/4/2017 |
| JCLA1-1020550252 | CARLA | SCHILLER | 5/4/2017 |
| JCLA1-1000995496 | GUISELA | URRUTIA | 5/5/2017 |
| JCLA1-1004669836 | SUSAN | CHISHOLM | 5/5/2017 |
| JCLA1-1007222743 | ANJALEE | KHARKAR | 5/5/2017 |
| JCLA1-1007407263 | SUSAN | CHISHOLM | 5/5/2017 |
| JCLA1-1007622369 | ANNAMARIE | TROHA | 5/5/2017 |
| JCLA1-1012320260 | TADASHI | KOWTA | 5/5/2017 |
| JCLA1-1013679334 | SUSAN | CHISHOLM | 5/5/2017 |
| JCLA1-1016712707 | ESTHER | URIBE | 5/5/2017 |
| JCLA1-1018027823 | DORIS | FASE | 5/5/2017 |
| JCLA1-1021766186 | ANEL | MORALES | 5/5/2017 |
| JCLA1-1021982091 | SUSAN | CHISHOLM | 5/5/2017 |
| JCLA1-1002683408 | INGA | SREBNYTSKA | 5/6/2017 |
| JCLA1-1012857204 | JAMES | SHEETS | 5/6/2017 |
| JCLA1-1001201965 | GAYANTHI | MADUGALLE | 5/8/2017 |
| JCLA1-1002426880 | ERNEST | KUNG | 5/8/2017 |
| JCLA1-1003851096 | JARED | HODES | 5/8/2017 |
| JCLA1-1008209856 | MELISSA | LEE | 5/8/2017 |
| JCLA1-1014017530 | ELHAM | HAMZEH | 5/8/2017 |

Exhibit 4
349

| | | | |
|---|---|---|---|
| JCLA1-1019299436 | SURJAN | SINGH | 5/8/2017 |
| JCLA1-1023005786 | MARLENE S | LESSIN | 5/8/2017 |
| JCLA1-1015154352 | JARADPORN | WRUWATTANANON | 5/9/2017 |
| JCLA1-1019135409 | LESLIE | BERLIN | 5/9/2017 |
| JCLA1-1022698796 | LESLIE | BERLIN | 5/9/2017 |
| JCLA1-1002125324 | WILLIAM | WAGNER | 5/10/2017 |
| JCLA1-1007252847 | MARLA | KOMOROWSKI | 5/10/2017 |
| JCLA1-1011146975 | | CENTER FOR LIFELONG LEARNERS C | 5/10/2017 |
| JCLA1-1015130704 | JOAN P | BARROW | 5/10/2017 |
| JCLA1-1004550367 | SANDRA | DAVIDSON | 5/11/2017 |
| JCLA1-1010657410 | LIA C | AZEAL | 5/11/2017 |
| JCLA1-1017330867 | NGAN S | WONG | 5/11/2017 |
| JCLA1-1000270009 | YOOVABEE | PHUAPHES | 5/15/2017 |
| JCLA1-1002318335 | ELISSA R | GREENE | 5/15/2017 |
| JCLA1-1002707250 | ILSE | COTA | 5/15/2017 |
| JCLA1-1003686192 | DELIA | ALVIDREZ | 5/15/2017 |
| JCLA1-1007605626 | ARDIS | FLENNIKEN | 5/15/2017 |
| JCLA1-1009218212 | CARLOS | PALOMO | 5/15/2017 |
| JCLA1-1009226622 | MATIN | SHARAFATKHAH | 5/15/2017 |
| JCLA1-1014987202 | JANE EDWINA | SEYMOUR | 5/15/2017 |
| JCLA1-1018995811 | HEATHER | VICKERS | 5/15/2017 |
| JCLA1-1021218421 | NANETTE M | THOMAS | 5/15/2017 |
| JCLA1-1023022052 | ALI | PEREZ | 5/15/2017 |
| JCLA1-1002897084 | JOYCE M | PATTENSON | 5/16/2017 |
| JCLA1-1004758049 | LYNETTE M | ODEN | 5/16/2017 |
| JCLA1-1009765671 | DAGMAR C | SZABADOS | 5/16/2017 |
| JCLA1-1010615653 | CATALINA M | FREDELUCES | 5/16/2017 |
| JCLA1-1017576807 | DUEK SOON | SUNG | 5/17/2017 |
| JCLA1-1002512646 | TAE EUN | KIM | 5/18/2017 |
| JCLA1-1006652434 | MARJORIE | WALLACE | 5/18/2017 |
| JCLA1-1010078283 | MARJORIE A | WALLACE | 5/18/2017 |
| JCLA1-1017289816 | ZEEWAN | LEE | 5/18/2017 |
| JCLA1-1017431590 | BRIAN | AARON | 5/18/2017 |
| JCLA1-1001783220 | SARA | AVILA | 5/19/2017 |
| JCLA1-1005936722 | | COFFMAN SPECIALTIES INC | 5/19/2017 |
| JCLA1-1006211900 | SUSAN | MCCARTHY | 5/19/2017 |
| JCLA1-1011093510 | RICHARD A | HAMPTON | 5/19/2017 |
| JCLA1-1012643131 | WILLIAM H | SHARPE | 5/19/2017 |
| JCLA1-1016851448 | JON | MILANO | 5/19/2017 |
| JCLA1-1020811005 | LEWIS | MORRIS | 5/19/2017 |
| JCLA1-1000705528 | ELEANOR | MEYER | 5/20/2017 |
| JCLA1-1005667446 | ELEANOR | MEYER | 5/20/2017 |
| JCLA1-1013551893 | BARBARA E | HOLLAND | 5/20/2017 |
| JCLA1-1006025677 | FRANCISCO | CARCAMO | 5/22/2017 |
| JCLA1-1015780350 | MILAGROS | RAMOS | 5/22/2017 |
| JCLA1-1017346089 | MINORU | HIRUTA | 5/22/2017 |
| JCLA1-1017795878 | ANDREAA | FRINCU | 5/22/2017 |

Exhibit 4
350

| | | | |
|---|---|---|---|
| JCLA1-1019254408 | J V | SIEBERT | 5/22/2017 |
| JCLA1-1022889443 | NERMEEN | ALDAOUD | 5/22/2017 |
| JCLA1-1000731880 | PATRICIA | ROSKI | 5/23/2017 |
| JCLA1-1003346294 | PATRICIA | ROSKI | 5/23/2017 |
| JCLA1-1005154643 | WEN SHENG | YEH | 5/23/2017 |
| JCLA1-1005447365 | KATHY | ORRICO | 5/24/2017 |
| JCLA1-1005591652 | MIKE G | KIM | 5/24/2017 |
| JCLA1-1007301970 | HEATHER | LEFEVRE | 5/24/2017 |
| JCLA1-1007724730 | FRED J | RODRIGUEZ | 5/24/2017 |
| JCLA1-1011555182 | ELEANOR J | RAUCHER | 5/24/2017 |
| JCLA1-1012237630 | ELISA | VITALICIO | 5/24/2017 |
| JCLA1-1016945671 | TRACY | KIMBALL | 5/24/2017 |
| JCLA1-1001338790 | | LESTER BROS | 5/25/2017 |
| JCLA1-1003838413 | ANNIE S | SZETO | 5/25/2017 |
| JCLA1-1004158084 | NICK G | KONAKAS | 5/25/2017 |
| JCLA1-1004510870 | | OPTIMUS CONSTRUCTION, INC. | 5/25/2017 |
| JCLA1-1006423060 | UBALDO | RAMOS | 5/25/2017 |
| JCLA1-1007771313 | | OPTIMUS CONSTRUCTION, INC. | 5/25/2017 |
| JCLA1-1011012472 | BARBARA J | KONAKAS | 5/25/2017 |
| JCLA1-1006618520 | AMY | LIN | 5/26/2017 |
| JCLA1-1006707085 | ETHAN | ADKINS | 5/26/2017 |
| JCLA1-1011529262 | XIAOKAI | QIAN | 5/26/2017 |
| JCLA1-1018817697 | ROSEMARY | LUISI | 5/26/2017 |
| JCLA1-1020451874 | AMY | LIN | 5/26/2017 |
| JCLA1-1020636777 | MONIQUE | VAN STEENKISTE | 5/26/2017 |
| JCLA1-1022516205 | KELLY | NAM | 5/26/2017 |
| JCLA1-1013369998 | VERNA J | MC ADAM | 5/27/2017 |
| JCLA1-1004562365 | DAVID L | RIVERA | 5/30/2017 |
| JCLA1-1007138963 | JEFFREY | PIFKO | 5/30/2017 |
| JCLA1-1007175710 | GLEN W | REDMAN | 5/30/2017 |
| JCLA1-1007195789 | ELYNE C | RUDIN | 5/30/2017 |
| JCLA1-1009970992 | JEFFREY R | PIFKO | 5/30/2017 |
| JCLA1-1011147165 | LORCAN | KILROY | 5/30/2017 |
| JCLA1-1015259855 | DAVID L | RIVERA | 5/30/2017 |
| JCLA1-1016665890 | INGRID | MUELLER | 5/30/2017 |
| JCLA1-1017799318 | JOHN P | HARTWELL | 5/30/2017 |
| JCLA1-1018744312 | INAN | OLMEZ | 5/30/2017 |
| JCLA1-1023082888 | DAVID L | RIVERA | 5/30/2017 |
| JCLA1-1002772311 | MICHELLE E | MC CONNELL | 5/31/2017 |
| JCLA1-1004884800 | CARMEN | PEREZ | 5/31/2017 |
| JCLA1-1006896244 | MARYAM | SHAHREZA | 5/31/2017 |
| JCLA1-1007174935 | CARMEN | PEREZ | 5/31/2017 |
| JCLA1-1007214414 | DAVID | MCDOWELL | 5/31/2017 |
| JCLA1-1007862688 | ROBERT A | KLEIN | 5/31/2017 |
| JCLA1-1008151050 | BINGEN | CORTAZAR | 5/31/2017 |
| JCLA1-1010052349 | MATTHEW | BEALE | 5/31/2017 |
| JCLA1-1012278867 | EDYTHE | BRONSTON | 5/31/2017 |

Exhibit 4
351

| | | | |
|---|---|---|---|
| JCLA1-1013168780 | DANIELA YAZMIN | ROJAS-RAMIREZ | 5/31/2017 |
| JCLA1-1018788727 | CARMEN | PEREZ | 5/31/2017 |
| JCLA1-1019373776 | IGOR | GRANIZO | 5/31/2017 |
| JCLA1-1020048395 | ERIN | GONZALES | 5/31/2017 |
| JCLA1-1022346920 | DANIEL | MONTOYA | 5/31/2017 |
| JCLA1-1000699633 | MYUNG JI | KIM | 6/1/2017 |
| JCLA1-1001599969 | JEANNE | WANLASS | 6/1/2017 |
| JCLA1-1002199620 | RYAN T | HURST | 6/1/2017 |
| JCLA1-1003207260 | JEANNIE C | WANLASS | 6/1/2017 |
| JCLA1-1003743102 | LEM | BUI | 6/1/2017 |
| JCLA1-1004300859 | LISA | REDDICK | 6/1/2017 |
| JCLA1-1008971618 | JEANNE | WANLASS | 6/1/2017 |
| JCLA1-1010160354 | KORIE | SCHMIDT | 6/1/2017 |
| JCLA1-1012124819 | GILLIAN L | ANGLIN | 6/1/2017 |
| JCLA1-1014456720 | VINCENT | MANZULLO | 6/1/2017 |
| JCLA1-1019080396 | JEANNE | WANLASS | 6/1/2017 |
| JCLA1-1019288183 | ZINA | HANDLEY | 6/1/2017 |
| JCLA1-1019681608 | ALICE | PICCININI | 6/1/2017 |
| JCLA1-1021143855 | ANDREW | MUSISI | 6/1/2017 |
| JCLA1-1002818672 | CONSTANCIO | LAZCANO- | 6/2/2017 |
| JCLA1-1006615482 | M | RICHEY | 6/2/2017 |
| JCLA1-1007610590 | RICARDO A | PEREZ | 6/2/2017 |
| JCLA1-1009368664 | WAYNE | IMBER MD | 6/2/2017 |
| JCLA1-1009482220 | GWENN A | MOXLEY | 6/2/2017 |
| JCLA1-1011720442 | GURDEZ | SIGNH | 6/2/2017 |
| JCLA1-1012982327 | PRISCILLA | JAYLONI | 6/2/2017 |
| JCLA1-1015161316 | MAC | DI ROSARIO | 6/2/2017 |
| JCLA1-1016097751 | LYUBOV | KAMENETSKAYA | 6/2/2017 |
| JCLA1-1018269584 | SHERRY | HUGHES | 6/2/2017 |
| JCLA1-1019752858 | PATRICIA | HORTON | 6/2/2017 |
| JCLA1-1021709492 | NINA | LEONARD | 6/2/2017 |
| JCLA1-8000000016 | GURDEV | SINGH | 6/2/2017 |
| JCLA1-1000044190 | DAVID P | KAPLAN | 6/3/2017 |
| JCLA1-1002803551 | RUDOLFO | CALIMAG | 6/3/2017 |
| JCLA1-1011990180 | ASHLYNN | PASTOREK | 6/3/2017 |
| JCLA1-1012378187 | BRUCE | ARNOLD | 6/3/2017 |
| JCLA1-1013079540 | PETRA | CASTRO DELGADO | 6/3/2017 |
| JCLA1-1015779301 | MARIA VIRGINIA | GUERRERO | 6/3/2017 |
| JCLA1-1015846548 | RATIROM | AWAIYAWANON | 6/3/2017 |
| JCLA1-1016079702 | ANTHONY R | DESOTO | 6/3/2017 |
| JCLA1-1016441380 | HERSCHEL E | LYONS | 6/3/2017 |
| JCLA1-1017978131 | RENEE | HAROUTUNIAN | 6/3/2017 |
| JCLA1-1019159618 | LUZ | CRUZ | 6/3/2017 |
| JCLA1-1020499532 | KERIM | OMAROV | 6/3/2017 |
| JCLA1-1020613718 | GRIFFIN | FONTANA | 6/3/2017 |
| JCLA1-1021359467 | EUGENIA E | GONZALEZ | 6/3/2017 |
| JCLA1-1000404803 | KATIE | MITASZKA | 6/5/2017 |

Exhibit 4
352

| | | | |
|---|---|---|---|
| JCLA1-1000486982 | KATHY REITHERMAN | BAUER | 6/5/2017 |
| JCLA1-1000821781 | DARRYL | BURTON | 6/5/2017 |
| JCLA1-1001947720 | KATHY | BAUER | 6/5/2017 |
| JCLA1-1002335868 | SUPHASUTA | DOUNGRAKSA | 6/5/2017 |
| JCLA1-1002407338 | CHRISTIANN M | ADAMS | 6/5/2017 |
| JCLA1-1002480000 | DARRYL | BURTON | 6/5/2017 |
| JCLA1-1002624916 | BELLA | YOUSSEF | 6/5/2017 |
| JCLA1-1003972136 | BRANDON | BUCHLER | 6/5/2017 |
| JCLA1-1004887140 | KATHY J | BAUER | 6/5/2017 |
| JCLA1-1005239746 | KATHY REITHERMAN | BAUER | 6/5/2017 |
| JCLA1-1005441464 | NABIL | TERTA | 6/5/2017 |
| JCLA1-1005642958 | KATHY REITHERMAN | BAUER | 6/5/2017 |
| JCLA1-1006050191 | THERESA | DAUGHERTY | 6/5/2017 |
| JCLA1-1006871926 | TERRI K | TOGIAI | 6/5/2017 |
| JCLA1-1007039183 | KATHY REITERMAN | BAUER | 6/5/2017 |
| JCLA1-1009466275 | HARRY | WACHTEL | 6/5/2017 |
| JCLA1-1010647512 | KATHY | BAUER | 6/5/2017 |
| JCLA1-1011983460 | JEONG EUN | BAEK | 6/5/2017 |
| JCLA1-1011987902 | KATHY REITHMAN | BAUER | 6/5/2017 |
| JCLA1-1012762068 | ALEJANDRA | ROJAS | 6/5/2017 |
| JCLA1-1012818314 | DARRYL | BURTON | 6/5/2017 |
| JCLA1-1013042670 | ORAZIA | CASTILLE | 6/5/2017 |
| JCLA1-1014334543 | KATHY REITHERMAN | BAUER | 6/5/2017 |
| JCLA1-1014785936 | CARON | VEAZEY | 6/5/2017 |
| JCLA1-1015626769 | FLORA | CHEUNG | 6/5/2017 |
| JCLA1-1016498276 | KATHY REITERMAN | BAUER | 6/5/2017 |
| JCLA1-1017068615 | KATHY REITHERMAN | BAUER | 6/5/2017 |
| JCLA1-1017925054 | ALESSANDRO | AMANTE | 6/5/2017 |
| JCLA1-1018007431 | KATHY J | BAUER | 6/5/2017 |
| JCLA1-1018108904 | KATHY J | BAUER | 6/5/2017 |
| JCLA1-1018185321 | JODI | ROWE | 6/5/2017 |
| JCLA1-1018842063 | NICK | PRIOVOLOS | 6/5/2017 |
| JCLA1-1019163178 | CHRISTOPHER | BROWN | 6/5/2017 |
| JCLA1-1019379324 | KATHY J | BAUER | 6/5/2017 |
| JCLA1-1019640537 | DARRYL | BURTON | 6/5/2017 |
| JCLA1-1019669632 | ARNOLD | LINARES | 6/5/2017 |
| JCLA1-1021580783 | JO ANN | WESLEY | 6/5/2017 |
| JCLA1-1022016881 | DEBORAH | HOLLAND | 6/5/2017 |
| JCLA1-1022328980 | KATHY J | BAUER | 6/5/2017 |
| JCLA1-1012920208 | HENOCH | AZALI | 6/9/2017 Late |
| JCLA1-1020055960 | MARIA | MONTGOMERY | 6/10/2017 Late |
| JCLA1-1002396450 | DIANNE | MCDANIEL | 6/12/2017 Late |
| JCLA1-1000609634 | GAVRIELLE | WOLF | 6/20/2017 Late |

Exhibit 4
353

Filippo Marchino, Esq. (SBN 256011)
FM@xlawx.com
Damon Rogers, Esq. (SBN 263853)
DR@xlawx.com
Thomas E. Gray, Esq. (SBN 299898)
TG@xlawx.com
**THE X-LAW GROUP, P.C.**
625 Fair Oaks Ave, Suite 390
South Pasadena, CA 91030
Tel: (213) 599-3380
Fax: (213) 599-3370

Attorneys for Plaintiff Dennis Bradshaw

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS BRADSHAW, Individually and on Behalf of All Others Similarly Situated, | Case No. |
| | **CLASS ACTION COMPLAINT** |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| CITY OF LOS ANGELES, a municipal entity; MICHAEL FEUER, in his individual and official capacity; JAMES CLARK, in his individual and official capacity; THOMAS PETERS, in his individual and official capacity; THE LANDSKRONER LAW FIRM, LTD. dba LANDSKRONER GRIECO MERRIMAN, LLC, a limited liability company; JACK LANDSKRONER, an individual; LAW OFFICES OF MICHAEL J LIBMAN APC, a California Professional Corporation; MICHAEL J. LIBMAN, an individual, | |
| Defendants. | |

Exhibit 5
355

**CLASS ACTION COMPLAINT**

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

## INTRODUCTION

1.    Plaintiff Dennis Bradshaw ("Plaintiff" or "Bradshaw") brings this suit against the City of Los Angeles ("LA" or "The City"), Michael Feuer ("Feuer"), James Clark ("Clark"), Thomas Peters ("Peters"), The Landskroner Law Firm, LTD. ("The Landskroner Firm"), Jack Landskroner ("Landskroner"), Law Offices Of Michael J Libman APC, and Michael J. Libman ("Libman") (collectively, "Defendants") to recover damages owed to him and others similarly situated.

2.    This lawsuit arises out of professional misconduct at an almost unfathomable level by Defendants, most of whom are attorneys, or law corporations involved in the practice of law.  When the Los Angeles Department of Water and Power ("LADWP") switched to a new billing system, it began billing hundreds of thousands of ratepayers incorrect amounts.  However, rather than simply refund consumers and resolve the problem, attorneys at the Los Angeles City Attorney's Office, along with outside counsel, instead decided to eliminate ratepayers' claims through a class action.  In essence, they chose to prophylactically sanitize the problem and prevent any true legal exposure. Although Los Angeles' outside counsel initially planned to represent a ratepayer in a class action against the company that developed the billing system, PricewaterhouseCoopers, LLP ("PwC"), they instead passed the ratepayer off to an attorney so that he could file a class action against *The City of Los Angeles*.  The attorneys who were given this ratepayer almost immediately filed the class action, *Jones v. City of Los Angeles*, and almost as quickly settled it with The City.  However, at no time during the settlement approval process or the notice period for ratepayers to object or opt out did the attorneys disclose their conflict of interest or that they were plotting with the defendant in that case, The City, for a quick settlement.  As a result, the ratepayers lost their ability to obtain a fair settlement from The City and the attorneys went on to obtain tens of millions of dollars in fees and benefits.  The truth only came to light

PLAINTIFFS' COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Exhibit 5
355

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

1   by happenstance, when the company that developed the billing system, which is

2   involved in litigation with The City, learned that The City had originally intended

3   that the plaintiff in the class action was originally supposed to sue PwC, rather than

4   The City.

5       3.    As a result of Defendants' conduct, Plaintiff and other LADWP

6   ratepayers who were *Jones* class members have suffered significant damages.

7

8   <div align="center">**PARTIES**</div>

9       4.    Plaintiff Dennis Bradshaw is the renter of a house in the City of Los

10   Angeles and an LADWP customer. He is a citizen of the State of Nevada.

11       5.    Defendant City of Los Angeles is a public entity organized and existing

12   under the laws of the State of California.

13       6.    Defendant Michael Feuer is the elected City Attorney of the City of Los

14   Angeles, head attorney and policymaker of the Los Angeles City Attorney's office,

15   a citizen of the State of California, and a resident of Los Angeles County, California.

16   He is sued in both his individual and official capacity.

17       7.    Defendant James Clark was at all times relevant to this action the Chief

18   Deputy City Attorney of the Los Angeles City Attorney's Office and reported

19   directly to Michael Feuer. Clark is a citizen of the State of California, and a resident

20   of Los Angeles County, California. He is sued in both his individual and official

21   capacity.

22       8.    Defendant Thomas Peters was at all times relevant in this action the chief

23   of the Civil Litigation Branch of the Los Angeles City Attorney's Office and

24   reported directly to Clark. Peters is a citizen of the State of California, and a resident

25   of Los Angeles County, California. He is sued in both his individual and official

26   capacity.

27       9.    City of Los Angeles, Feuer, Clark, and Peters are collectively referred to

28   in this Complaint as "LA Defendants."

<div align="center">3</div>

Exhibit 5
350

<div align="center">PLAINTIFFS' COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL</div>

10.     Defendant The Landskroner Law Firm, Ltd dba Landskroner Grieco Merriman, LLC is an Ohio limited liability company with its principal place of business in Ohio.

11.     Defendant Jack Landskroner is an attorney with The Landskroner Firm and a citizen of Ohio.

12.     Defendant Law Offices of Michael J Libman APC is a California professional corporation with its principal place of business in Los Angeles County, California.

13.     Defendant Michael J. Libman is an attorney with Law Offices of Michael J Libman APC, a citizen of the State of California, and a resident of Los Angeles County, California.

14.     The Landskroner Firm, Jack Landskroner, Law Offices of Michael J Libman, and Michael J. Libman are collectively referred to in this Complaint as "Class Counsel Defendants."

15.     LA Defendants and Class Counsel Defendants are collectively referred to in this Complaint as "Defendants."

16.     Plaintiff is informed and believes, and upon such basis alleges, that at all times herein mentioned, each of the Defendants herein was an agent, servant, employee, co-conspirator, partner, joint venturer, wholly owned and controlled subsidiary and/or alter ego of each of the remaining Defendants, and was at all times acting within the course and scope of said agency, service, employment, conspiracy, partnership and/or joint venture.

17.     Defendants, and each of them, aided and abetted, encouraged and rendered substantial assistance in accomplishing the wrongful conduct and their wrongful goals and other wrongdoing complained of herein.  In taking action, as particularized herein, to aid and abet and substantially assist the commission of these wrongful acts and other wrongdoings complained of, each of the Defendants acted with an awareness of their primary wrongdoing and realized that their conduct

4

Exhibit 5
357

PLAINTIFFS' COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1    would substantially assist the accomplishment of the wrongful conduct, wrongful

2    goals, and wrongdoing.

3

4                    **JURISDICTION AND VENUE**

5        18.    This Court has subject matter jurisdiction over this action pursuant to the

6    Class Action Fairness Act of 2005 and 28 U.S.C. § 1332 because there are over 100

7    members of the proposed class, at least one member of the proposed class has a

8    different citizenship from a defendant and the total matter in controversy exceeds

9    $5,000,000.  This Court also has subject matter jurisdiction over Plaintiffs' federal

10   claims for relief under 42 U.S.C. § 1983 and  § 18 U.S.C. § 1961 pursuant to 28 §

11   1331 and over Plaintiffs' state law claims, because they are so related to their federal

12   law claims as to form part of the same case or controversy, pursuant to 28 U.S.C. §

13   1367(a).

14       19.    Venue is proper pursuant to 28 U.S.C. § 1391(b) & (c) because a

15   substantial part of the events or omissions giving rise to the claim occurred in this

16   judicial district and because Defendants are subject to the Court's personal

17   jurisdiction in this judicial district.

18

19                    **FACTUAL ALLEGATIONS**

20   **I.    <u>LADWP Overcharges Customers.</u>**

21       20.    On or about September 3, 2013 LADWP implemented a Customer Care

22   and Billing software platform (the "CC&B System"), which had been developed

23   and implemented by PricewaterhouseCoopers, LLP ("PwC"), to bill customers for

24   water, electricity, and other utility services as well as to administer solar-power

25   accounts.  The CC&B System was inherently and fundamentally flawed, causing

26   over-billing and other billing problems for LADWP's customers.  As was alleged in

27   the Amended Class Action Complaint that was filed in *Jones*, the CC&B System

28   billed incorrectly in at least the following ways:

5

**A.     Tiered Billing Issue.**

21.    Pursuant to Incremental Electric Rate Ordinance No. 182273, the LADWP was permitted to charge its customers for electricity and water usage according to tiers. This Ordinance provided for three tiers of pricing: Tier 1, Tier 2 and Tier 3.

22.    The Tier at which a customer is charged was dependent upon the amount of electricity or water a customer used in a given billing period. The more electricity and/or water that a customer used, the higher the Tier at which the customer would be charged.  Accordingly, Tier 1 customers would be charged lower rates than Tier 2 customers and Tier 3 customers would be charged higher rates than Tier 1 or Tier 2 customers. One of the laudable purposes behind this tiered structure was to allow a customer to adjust their usage downward so as to prevent billing at a higher Tier, and to simultaneously conserve resources.

23.    Due to programming defects in the CC&B System, LADWP improperly assigned customers to Tiers higher than those to which the customer should have been assigned based on usage. This, in turn, resulted in customers being billed at an erroneously higher rate than otherwise legal and valid.

**B.     Trend Estimate Issue.**

24.    Pursuant to the Rules Governing Water and Electric Service (the "Rules"), under certain circumstances LADWP was permitted to charge its customers using "estimated" rather than "actual" usage.

25.    Estimated billing, however, was permitted under the Rules in only a limited number of circumstances including: (i) where a customer paid on a "flat rate" schedule (regardless of usage); (ii) for deposits; (iii) for improper consumption of services; (iv) to recoup monies due to theft of services; and (v) where a meter is maintained in a locked compartment or otherwise fails to register correctly.

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

6

Exhibit 5
359

PLAINTIFFS' COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

26.     Unbeknownst to its customers, and despite the very limited circumstances in which LADWP is permitted to use estimated billing, LADWP intentionally violated the Rules by sending out millions of estimated bills since 2013. The vast majority of these bills did not satisfy the criteria under the Rules which would have allowed for "estimated" billing.

27.     The CC&B System's Trend Estimation Algorithm was defective.

28.     To perform "Trend Estimation" properly, a utility billing system utilized a series of algorithms that analyzed such things as geographic area, type of customer, etc. in order to estimate a customer's usage.

29.     These criteria were examined and utilized in calculating a "Trend Estimate" to ensure that the "Trend Estimate" used to bill customers is as close to actual usage data as possible, and that the "estimated" bill is therefore as close to what a bill based on actual usage data would be.

30.     When configured properly, the algorithms that calculated the "Trend Estimate" would use a "neighborhood" attribute to ensure that the usage patterns employed to calculate a "Trend Estimate" for a customer were based on the usage patterns of other customers who also lived in the immediate geographic area, rather than on the usage patterns of customers who lived in, for example, disparate geographic locations, i.e., similar customers. Stated another way, in order to calculate a reliable and valid – and therefore, reasonable - "Trend Estimate," it was critical that the billing system used to calculate the Trend Estimate be programmed in such a way that the billing system compared apples with apples, as opposed to apples and oranges, and generated the Trend Estimate based on the billing system having done so.

31.     Rather than configuring the Trend Estimate based on "similar" customers, PwC configured the Trend Estimate algorithm to estimate a customer's usage based on a straight average of all customer types.

7

Exhibit 5
360

PLAINTIFFS' COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

32.    Because the Trend Estimate was mis-configured, estimates generated by the CC&B system were inaccurate.

33.    Accordingly, as a result of this programming, customers were damaged. In particular, customers were either overbilled based on inflated estimates or were underbilled, but forced into a higher Tier (along with higher taxes and surcharges) as a result of being billed in one-lump sum at the time when their bills were reconciled with their actual usage:

34.    First, LADWP billed its customers for greater quantities of electricity, water and sewage than they had actually used because the estimates themselves were higher than any customer's actual usage.

35.    Second, because the estimates themselves were randomly generated, the estimates have no correlation to actual usage, which could negatively impact a customer by forcing him into a Tier higher than that which he would be assigned had his usage not been estimated.

36.    Third, although LADWP could ultimately reconcile the estimate with a customer's actual usage, if, in the interim, a rate increase was implemented, or if a customer's actual usage was shifted into a higher cost season, all of the shifted usage would be improperly billed at a higher rate.

37.    Fourth, because estimated bills do not reflect actual consumption, consumers were deprived of the knowledge of whether their actual consumption required a downward modification so as to prevent them from being billed at a higher Tier, which, in turn, violates the spirit of tiered pricing.

**C.    Closed Account with Credit Balance Issue.**

38.    When an LADWP customer closes his or her account, and the account has a positive balance or credit, those funds must be refunded to the customer.

39.    Due to programming defects in the CC&B System, customers with closed accounts with positive balances did not receive refunds.

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

8

Exhibit 5
86

PLAINTIFFS' COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

### D. Premise Condition/Estimated Bill Issue.

40. Unbeknownst to some customers, there were conditions on their premises which caused excessive consumption of water or power or sewage, increasing their usage from ordinary levels.

41. LADWP's use of estimated bills for such customers for multiple billing periods resulted in these customers failing to appreciate that their consumption had increased from ordinary levels as a result of an unknown premise condition.

42. Ultimately, upon reconciliation, these customers were charged for far greater usage than they otherwise would have been had the increased consumption appeared on an initial actual bill, such that the customer could remediate it instead of being hidden in multiple improperly-estimated bills.

### E. Solar Customer Issues.

43. Defects in the CC&B System have caused several problems with respect to utility bills issued to those customers of the LADWP that installed their own solar power systems.

44. First, defects in the CC&B System caused the CC&B System to fail to recognize when LADWP customers switched from traditional electric power to solar power. As a result, the CC&B System continued to charge these customers for electric power without consideration of the solar power generated by their systems. Moreover, the delay in recognizing that a customer was producing excess energy resulted in a failure to credit that customer's account for power generated, and/or a failure to pay for excess energy under the applicable rate schedule, City Ordinance 182273.

45. Second, where the CC&B System did recognize that a household had converted to solar power, defects in the CC&B System caused the CC&B System to miscalculate rates and credits due to these solar power customers.

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

PLAINTIFFS' COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Exhibit 5
362

46.   As a result of these defects in the CC&B System, LADWP customers that used solar power were overcharged for electricity and were not credited appropriately for electricity that they had produced and generated into the grid.

**F.   Automatic Bill Payment/Bank Overdraft Charge Issues.**

47.   Many LADWP customers were enrolled in an automatic bill-payment plan. Due to the over-billing errors resulting from the flaws in the CC&B System, the automatic withdrawals were for greater amounts than customers reasonably expected to pay (or should have been required to pay) and resulted in overdrafts of the customers' bank accounts—and fees and penalties associated with such overdrafts.

**G.   Late Payment Charge Issue.**

48.   Due to defects in the CC&B System, certain customers were improperly assessed an inaccurate Late Payment Charge.

**H.   Estimated Electric Bills with "Minimum Charge" Issue.**

49.   Due to the defects in the CC&B System, certain customers received estimated bills for zero consumption, when, in fact, they had actual usage.

50.   These customers were assessed a "Minimum Charge" fee when they should have received a bill for actual usage without such a fee.

**I.   Other Billing and Customer Service Issues.**

51.   Defects in the CC&B System caused LADWP to delay the issuance of its customers' bills for electricity, water, sewage and sanitation services for multiple billing cycles.

52.   The failure to timely issue bills was a result of an error in the CC&B System related to the integration of a particular interface, the responsibility of which

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California  91030
213.599.3380 phone • 213.599.3370 fax

10

Exhibit 5
363

PLAINTIFFS' COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

was to upload meter read data into the CC&B System. This interface was known as the "Meter Read Upload Interface" or "MRU Interface," which was created and programmed by PwC.

53.    The Meter Read Upload Interface was designed to take meter read data, which is collected by meter readers in the field, and to then transmit or "upload" that data to the CC&B System for the generation of bills.

54.    Because PwC created and programmed the MRU Interface in a defective manner, the MRU Interface did not function properly and LADWP could not issue bills to many of its customers for long periods of time.

55.    After failing to issue bills for many months, LADWP then billed its customers for four, six, or even eight months of water and electricity in one "lump sum."

56.    The impact of LADWP's "lump sum" billing was that it resulted in inappropriately high bills, as it caused customers to be bumped up from lower pricing Tiers to higher pricing Tiers. As a direct result of being billed at higher Tiers, these LADWP customers have also improperly incurred higher utility taxes and energy surcharges. Moreover, such customers were not necessarily in a financial position to pay large lump-sum bills.

57.    Additional defects in the CC&B System caused the LADWP to:

(i) continue to bill customers who requested that their services be terminated;

(ii) fail to issue refunds for the overpayment of services; and

(iii) inaccurately calculate bills that involved multiple billing periods.

58.    The CC&B System was intended to be programmed to automatically close out "off orders" that were not completed in the field upon the occurrence of a subsequent "on order" at the same location, thereby ensuring that billing was stopped and started properly. This programming component or "enhancement" of the CC&B System was known as "Auto-Close of Off Orders."

Exhibit 5
364
PLAINTIFFS' COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

59.   By way of example, assume an LADWP customer is moving out of an apartment and places an "Off Order" so that service to the apartment is terminated. Then assume that a new resident moves into that same apartment days later. The "Auto-Close on Off Orders" enhancement was intended to ensure that billing to the customer who is moving out of the apartment is completely stopped when the "On Order" is placed, so that the new resident – rather than the resident who is moving out – is billed for service once the "On Order" is placed.

60.   The "Auto-Close on Off Orders" enhancement was not programmed properly. As a result, the LADWP continued to bill customers *after* they had placed "Off Orders."

61.   Additionally, defects in the CC&B System have caused the LADWP to inaccurately calculate bills that involve multiple billing periods.

## II.   Defendants Collude To Settle The Claims.

62.   By January 1, 2015, if not earlier, attorneys Paul Kiesel ("Kiesel") and Paul Paradis ("Paradis") (collectively, "Special Counsel") had been retained by Los Angeles to serve as Special Counsel to the City with regard to all disputes arising out of the performance of the CC&B billing issues.  Under the terms of the contract with the City, Special Counsel would be closely supervised by the Los Angeles City Attorney, which would "supervise and retain final authority over all aspects of the Dispute Resolution Process and, if litigation is commenced, all aspects of the Litigation" and its approval was required before standard litigation tasks such as filing motions could be performed.  In addition, Special Counsel were required to ensure that the City Attorney was kept fully informed of all material case developments at all times and would provide the City Attorney with copies of all correspondence and pleadings related to the litigation.  On information and belief, LA Defendants supervised, ratified, and directed the conduct of Special Counsel, including the decision to file and settle *Jones* as a collusive class action.

12

PLAINTIFFS' COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Exhibit 5
365

63.   In or around 2014 Antwon Jones ("Jones") submitted a complaint about his LADWP bill to a website he thought to be affiliated with a governmental agency, checking a box consenting to be contacted by counsel.

64.   The website that drew Jones's attention had been created by Paradis, and it was Paradis who contacted Jones and was retained by him as counsel on December 8, 2014.  Mr. Jones explained in a sworn declaration submitted in Los Angeles Superior Court on May 5, 2017 that he had retained counsel to **"conduct an investigation to determine whether I had any claims that could be brought against the LADWP and the City of Los Angeles** to recover for the amounts that I had been overcharged by the LADWP for electricity."

65.   Paradis was overseeing remediation work on the CC&B system at LADWP when Jones retained him.  Apparently, within days of that retention by Jones, Paradis expanded his role for LADWP in mid-December 2014 to serve as "Special Counsel" to the City.

66.   By mid-March 2015, Jones instructed Paradis to file suit against the City. Paradis, as Special Counsel to the City could not, of course, appear on a complaint against the City. On or about March 26, 2015, Paradis introduced Landskroner as an expert in municipal lawsuits who should be added to Jones's legal team. Jones has testified that he understood he was *adding* an attorney to his case-not switching attorneys-and never received any notification that Paradis would no longer be serving as his attorney in connection with his claims against LADWP.  According to his testimony in another action, although Jones began communicating with Landskroner beginning on March 26, 2015, he understood that Paradis was remaining involved as his counsel. Jones did not know that Paradis did not sign the complaint when the complaint was filed- indeed, he was unaware of that fact prior to being subpoenaed in another case.

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

Exhibit 5
366

PLAINTIFFS' COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

67. Jones's actions following the filing of the complaint are entirely consistent with his understanding that Paradis remained his lawyer in his suit against LADWP: For example, Jones emailed **both** Paradis and Landskroner to complain that his power had been shut off in an apparent act of retaliation by LADWP to the April 1 filing of the case. Jones further testified that Paradis had never sought to formally disengage from his representation of Jones's interests against LADWP.

68. Thus from mid-December 2014 onwards, Paradis was simultaneously representing two clients–Jones and the City–in regards to disputes arising from LADWP's rollout of the CC&B system, notwithstanding that Jones and the City had conflicting interests. Yet, according to Jones's deposition testimony, Paradis did not once disclose his affiliation with the City to Jones–not when Paradis first offered up his services as a class-action attorney, nor when he apparently performed a pre-suit investigation in early 2015, nor when he introduced Jones to Landskroner, nor even when Jones asked for Paradis's help to get LADWP to turn his power back on after the complaint was filed. To the contrary, Jones was kept in the dark that Paradis was providing CC&B remediation management services, and testified that he would **not have consented** to be represented by an attorney who was concurrently representing the City.

69. Indeed, even Paradis's justification to Jones for adding Landskroner to the case-that he had more specialized knowledge than Paradis- was fundamentally misleading. Clark made clear that Landskroner was brought in at Paradis's recommendation to the City. Paradis had been co-counsel with Landskroner previously and Landskroner had been seen as an "advantage" to the City and "in moving towards settlement," and because he was not likely to be "the most zealous advocate available for Mr. Jones to pursue claims." The City had no interest in having Jones referred to other plaintiffs' class action lawyers, including Timothy Blood and Alan Himmelfarb, who already had ratepayer cases pending on the same subject matter, as they were viewed by the City as "unreasonable" attorneys who

14

1    would be difficult to deal with as class counsel. Consistent with what most

2    advantaged the City's interests, Paradis introduced Landskroner to Jones. Six days

3    later, Landskroner filed the class action <u>Jones v. City of Los Angeles</u>, Los Angeles

4    County Superior Court Case No. BC577267. The case was assigned to Judge Elihu

5    Berle ("Berle") and almost immediately entered into settlement negotiations.

6        70.    What makes this total lack of disclosure about conflicted interests

7    astonishing is that Paradis apparently attempted to influence Jones away from his

8    initial inclination to sue the City in favor of a possible action against PwC, without

9    disclosing that he (Paradis) was actively representing the City at that very time.

10   Although Paradis kept Jones in the dark about his representation of the City, Paradis

11   fully informed the City about his representation of Jones. On January 24, 2015, a

12   draft complaint captioned "Jones v. PwC" – displaying Paradis and Kiesel as Jones's

13   attorneys – was circulated within the City Attorney's Office, having been provided

14   by Paradis. Just two weeks earlier, on January 9, 2015, Paradis, as Jones's counsel,

15   prepared a Complaint that was styled Jones versus PricewaterhouseCoopers and

16   provided it to Jones. Clark has stated in a deposition that the City's outside counsel

17   (Liner LLP) wrote a memorandum recommending against filing the Jones v. PwC

18   complaint after it had been circulated for discussion ***because it "wasn't going to***

19   ***accomplish [the City's] goals."***  The conflict of interest could not be clearer:

20   Paradis's draft complaint on behalf of his client Jones was provided to the City to

21   evaluate it for filing based on whether it served the City's interests, not Jones's

22   interests.

23       71.    Nor did Paradis make any effort to withdraw or disclose potential

24   conflicts to Jones after it became clear–upon the filing of the *Jones* case–that Jones

25   and LADWP had become adverse parties on opposing sides of the litigation.

26   Instead, Special Counsel continued to play both sides of the caption. Mr. Clark

27   testified that to the best of his recollection, at the June 2015 mediation of Jones's

28   claims, the participants included Paradis-who had never terminated his relationship

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

15

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

1   with plaintiff Jones but who was representing defendant LADWP "against" Jones,

2   to the extent that there was any actual adversity between the parties.   And at

3   subsequent hearings to approve the *Jones* settlement, Paradis stated that he had

4   investigated, **on behalf of the City,** objections raised by other plaintiffs' attorneys

5   while his co-counsel Kiesel urged ratification because the terms were fair to the

6   Class.

7         72.   Unlike Jones, Judge Berle was not merely left in the dark; rather, he was

8   actively misled regarding the development, conduct, and resolution of the *Jones*

9   case. In particular, Judge Berle was persuaded to bless a settlement without being

10   told necessary qualifying facts about the relationship between counsel for the

11   adverse parties.   In petitioning the Court to approve the Jones settlement,

12   Landskroner represented that "[t]he Parties' negotiations, although contentious,

13   were undertaken in good faith and **at arms' length."**   Landskroner repeatedly touted

14   transparency and independence in the parties' discussions, underscoring that the

15   settlement was the product of "two full hard fought days of mediation in June 2015"

16   and was "presumptively fair because it was reached following protracted, and at

17   times contentious, arms-length negotiations."   Landskroner added that "[t]he

18   fact that mediation was overseen by a neutral third party is proof of the noncollusive

19   nature of the negotiations."

20         73.   In fact, every one of those representations was misleading because

21   Landskroner suppressed facts which materially qualified those statements regarding

22   the independence of the parties and the adversarial nature of negotiations. It was not

23   disclosed that Paradis (Special Counsel to the City in the simultaneously pending

24   LADWP case over CC&B billing issues) represented the plaintiff, Jones, for over

25   four months in the run-up to the filing of the complaint (and was Jones's sole

26   attorney for the majority of that time).   It was not disclosed that a lawyer for the City

27   (Special Counsel Paradis) **introduced the putative Class Counsel** (Landskroner) to

28   the ratepayer plaintiff-that too, a scant one week before the plaintiff's lengthy

PLAINTIFFS' COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Exhibit 5
369

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

1   complaint was filed.  And it was not disclosed that Landskroner began settlement
2   overtures the day after the filing of the complaint, without Jones knowing until two
3   months later that such discussions had begun.  For its part, the City Attorney's Office
4   knew or, at a minimum, was on notice of all those material qualifiers, but did not
5   fulfill its duty of candor to the Court by correcting the misimpression that
6   Landskroner created regarding "hard fought" settlement talks.  As for the conclusory
7   representation that the mediator's oversight sufficed to guarantee arms–length
8   dealing, there is no evidence that the ***mediator*** was told anything about relationships
9   between Paradis, Landskroner, and Jones either. In fact, on information and belief,
10  the mediator had been hoodwinked into being used as a prop by the attorneys and
11  was in fact under the belief that he was conducting a legitimate adversarial mediation
12  session, when in fact he wasn't.  In fact, the *Jones* complaint and friendly opposing
13  counsel enabled the City to arrive at a settlement of all ratepayer litigation that
14  worked to its own interests. When Judge Berle was asked to approve the settlement
15  over objections of collusion, he did not have any of this information available. But
16  such information would have had immense relevance to Judge Berle's evaluation of
17  whether Landskroner was an independent and adequate counsel to appropriately
18  represent Jones and a Class that was releasing broad claims against the City.

19         74.    Tellingly, the only response Landskroner had to allegations of collusion
20  between counsel for the City and counsel for Jones was itself misleading. In a
21  February 2017 response to settlement objections, Landskroner swore that any
22  "suggestion that the attorneys from the Landskroner Firm have an inappropriate
23  relationship with any of the attorneys from … the Office of the City Attorney of Los
24  Angeles is false" because "[p]rior to the Jones Action, ... the Landskroner Firm had
25  never worked on any matter with ... the Office of the City Attorney of Los Angeles
26  (defense counsel, here) either as co-counsel or as opposing counsel."  Landskroner
27  failed to tell Judge Berle that Special Counsel Paradis had previously represented
28  Jones while representing the City, a fact well known to Landskroner, and brought

17

Exhibit 5
370
PLAINTIFFS' COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1    Landskroner into the case based on Paradis's prior relationship with Landskroner.

2    75.    The *Jones* settlement was formulated collusively and not through

3    adversarial negotiation, which enabled the parties to the scheme to include

4    extraordinary elements for their respective benefit.  Landskroner, without taking or

5    defending a single deposition, garnered the majority of $19 million in total fees

6    divided among counsel, a significant portion of which appears attributable to work

7    performed before he was even introduced to Jones. The City shoehorned in a

8    remediation component never sought by the Class and used the Court's approval of

9    that component to rush through contracts without competitive bidding. Ultimately,

10   Special Counsel Paradis's law firm and a company formed by Paradis during the

11   course of the *Jones* case were awarded no-bid contracts of some $36 million to

12   provide project management services in connection with the remediation required

13   by the *Jones* settlement.

14   76.    In his declaration supporting the $19 million aggregate fee request,

15   Landskroner stated that "[p]rior to and after the filing of the initial complaint, ***Class***

16   ***Counsel conducted an extensive and very lengthy investigation*** into the matters

17   alleged in the initial complaint, which included, among other things, interviewing

18   current and former LADWP employees and working closely with investigators."

19   Landskroner boasted that the "outstanding results provided by the Settlement" were

20   achieved because "Class Counsel was able to leverage the information learned in

21   connection with Class Counsel's pre-suit investigation."  Landskroner repeated the

22   same representations in the Settlement Agreement presented to Judge Berle, stating

23   that "prior to filing the Complaint in the Action, Class Counsel initiated an extensive

24   and very lengthy investigation."

25   77.    However, the timing of that "extensive and very lengthy [pre-suit]

26   investigation" by Class Counsel Landskroner does not make sense.  Jones testified

27   that the first time he was introduced to Landskroner by Paradis was March 26, 2015,

28   and further testified that he had no other attorneys before that date for his potential

PLAINTIFFS' COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Exhibit 5
37

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

1    suit against LADWP.  Thus, when Jones declared–also in support of the fee request–

2    that his "counsel" conducted pre-suit work like investigating the claims, hiring

3    experts, and preparing a draft complaint, Jones thought his declaration was referring

4    to Paradis but, of course, there was no way for Judge Berle to know that given

5    Paradis's status as Special Counsel to the City. Yet Landskroner passed off all that

6    pre-March 26 activity as his own, demanding more than $500,000 (using a

7    multiplier) for *355.75 hours of work he did before he had ever met his client.*

8    Landskroner and Special Counsel all knew that Landskroner was seeking fees for

9    work performed during the time period in which Jones was, to his knowledge,

10   represented only by Paradis.  None spoke up.

11        78.    But the fraud on the public extends further. The only relief sought by the

12   *Jones* complaint was refunds of overcharges and imposition of a monitor to identify

13   affected ratepayers while overseeing the refund process. Yet the City inserted into

14   the settlement a substantial remediation component for which there was no

15   discernible reason or request by plaintiffs.  The City then presented that remediation

16   order, bearing the court's imprimatur, to the LADWP Board of Commissioners as

17   requiring immediate approval and implementation of no-bid contracts.  A company

18   founded by Special Counsel Paradis (Aventador Utility Solutions, LLC) was then

19   awarded a *$30 million contract on a no-bid basis* (this in addition to the $6 million

20   the Paradis Firm had already received for remediation-related services).

21        79.    When Defendants submitted their proposed settlement to Judge Berle for

22   approval, they included draft notices to class members of the settlement.  As

23   Defendants intended, these drafts formed the basis of the notices that Judge Berle

24   ordered to be sent out to the *Jones* class members.  They opted to include such

25   statements as that "The Class Representatives and the attorneys that have been

26   appointed by the Court to represent the Settlement Class believe that the Settlement

27   is in the best interests of all Settlement Class Members."  They also included

28   language stating that class members "have a lawyer in this case," namely Class

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

19

Exhibit 5
372

PLAINTIFFS' COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Counsel Defendants, who the notice states "have been appointed by the Court to represent you and the other Settlement Class Members." Nowhere in the draft notices did Defendants disclose the collusive relationship between Class Counsel Defendants and The City. Judge Berle ordered that the notice be disseminated by email and mail to LADWP customers and published, among other places in *The Los Angeles Times* and *La Opinion* as well as on LADWP's website.

80. Ultimately, Judge Berle issued his order granting final approval of the class action settlement and a final judgment on July 20, 2017. Class Counsel Defendants were awarded $19,000,000 in attorneys' fees and an additional $2,741,003.99 in expenses. These fees and reimbursement of expenses were ordered to be paid by The City to Defendants within 7 business days after entry of the order, with class counsel responsible for the allocation of fees and expenses among themselves. On information and belief, The City did in fact disburse these fees to Class Counsel Defendants. In addition, Class Counsel Defendants retained the right to make quarterly applications to the court for additional awards of attorneys' fees at a rate of 29% of all future recoveries by class members.

81. On information and belief, Defendants Law Offices of Michael J Libman and Michael J. Libman, by virtue of their role as local counsel in the *Jones* class action, were aware of and participated in Landskroner's and his firm's misconduct and were aware of Landskroner's connection to The City and Special Counsel as well as the fact that the *Jones* settlement was collusive.

82. On information and belief, Peters and Clark, as the attorneys who would have directly dealt with Special Counsel and supervised and directed them, both personally participated in and were aware of the scheme to collusively settle the LADWP litigation. In fact, Peters has admitted that he came up with the idea of drafting a Jones v. PwC complaint in late 2014 or early 2015. Clark has also testified that he participated in meetings where the Jones v. PwC draft complaint was discussed. Moreover, he has testified that he was aware that Paradis represented

20

1    Jones.  Further, Clark has testified that he was aware that Paradis at a minimum

2    provided Landskroner with copies of the other pending LADWP class actions.

3    Furthermore, Clark has testified that he was personally aware that once there was a

4    conflict between Jones and The City, Paradis specifically recommended

5    Landskroner as the attorney to sue The City.  He has also testified that he understood

6    Landskroner's involvement would be to The City's advantage because he was "seen

7    as a more reasonable ... person to deal with" over other plaintiff's attorneys involved

8    in other LADWP actions.  According to Clark, these other attorneys were considered

9    "intransigent" and might not do what LADWP wanted.  Clark has testified that he

10   never considered whether it was ethical for Paradis to recommend the attorney to

11   sue The City.

12        83.    Furthermore, on information and belief, Feuer, as the individual who

13   Clark directly reported to, was aware of and ratified decisions made by Special

14   Counsel.  Among other things, Clark has testified that he would have shown Feuer

15   the Jones v. PwC draft complaint.  In addition, as City Attorney, Feuer's approval

16   would have been necessary during the settlement of the *Jones* class action.

17   Therefore, among other things, Feuer would have known that Special Counsel were

18   listed on the Jones v. PwC draft complaint as counsel for Jones, but ultimately

19   defended The City in a lawsuit brought by Jones.  Therefore, when Feuer was

20   involved in the settlement, he was aware of the improprieties that occurred, but

21   nevertheless pressed forward with supporting the settlement of a case where

22   improprieties that were obvious to anyone were present.

23

24   **III.  Defendants' Collusion Is Revealed.**

25        84.    While *Jones* was proceeding, The City was engaged in a parallel lawsuit

26   against PwC.  In the course of discovery, PwC's counsel noticed that a document

27   identified as "Jones v. PwC–Initial Complaint–FINAL.DOC" was identified on a

28   LADWP privilege log.  PwC then moved to compel production of that document,

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

21

1    and in doing so began a months-long saga culminating in 2019 with the public

2    disclosure of the collusive nature of Defendants' settlement of *Jones*.  Although the

3    full scope of the fraud on the court and the ratepayers is as yet unknown, as is the

4    identities of all those involved, it is apparent that each Defendant has engaged in

5    severe wrongdoing.

6

7    **IV.  <u>The Class Representative.</u>**

8         85.   Plaintiff Dennis Bradshaw is the renter of a house in The City of Los

9    Angeles and is an LADWP ratepayer who was a member of the *Jones* class and did

10   not opt out of the *Jones* class action settlement.  Bradshaw received a credit to his

11   December 2017 bill as part of the Jones *settlement*.  Like other class members in

12   *Jones*, Bradshaw reasonably relied on the statements contained in the notice he

13   received stating that Judge Berle had preliminarily approved of the settlement, that

14   class counsel fairly and adequately protected class members, and that the settlement

15   was superior to all other available methods for fairly and efficiently resolving the

16   dispute with LADWP.  In addition, he was unaware that The City, acting through

17   Special Counsel, had actually selected the class counsel in *Jones* and reasonably

18   expected that Class Counsel Defendants would represent the interests of the class

19   and had actually litigated the case, rather than quickly reaching a collusive

20   settlement with The City.   Furthermore, like other class members, Plaintiff

21   reasonably relied on Judge Berle's evaluation that the settlement was fair and

22   reasonable.  Because of Defendants' actions, Plaintiff did not object or otherwise

23   opt out of the settlement or take other action.

24

25                        **CLASS ACTION ALLEGATIONS**

26        86.   Plaintiff brings this action on his own behalf, and as a class action on

27   behalf of the Class defined herein, pursuant to, and properly maintainable under Fed.

28   R. Civ. P. 23(a) and Fed. R. Civ. P. 23(b)(3).  The Class is also maintainable as a

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

22

Exhibit 5
375

PLAINTIFFS' COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

1  class for declaratory and injunctive relief under Fed. R. Civ. P. 23(b)(2). The Class

2  consists of hundreds of thousands of LADWP Settlement Class members victimized

3  by Defendants' collusive and fraudulent settlement of <u>Jones v. City of Los Angeles</u>,

4  Los Angeles County Superior Court Case No. BC577267. Specifically, Plaintiff

5  brings this suit on behalf of the following Class:

> The "**LADWP SETTLEMENT CLASS**": All persons who were members of the Settlement Class in <u>Jones v. City of Los Angeles</u>, Los Angeles County Superior Court Case No. BC577267. The class excludes all persons who timely exercised their right to opt out of the Settlement Class in <u>Jones v. City of Los Angeles</u> as well as all named plaintiffs and defendants in cases that were related to <u>Jones</u> under California Rules of Court, Rule 3.300. The class also excludes counsel representing the class and all persons employed by said counsel, governmental entities, City of Los Angeles, Michael Feuer, James Clark, Thomas Peters, The Landskroner Law Firm, LTD., Jack Landskroner, Law Offices Of Michael J Libman APC, and Michael J. Libman, any entity in which Defendants City of Los Angeles, Michael Feuer, James Clark, Thomas Peters, The Landskroner Law Firm, LTD., Jack Landskroner, Law Offices Of Michael J Libman APC, and Michael J. Libman have a controlling interest, Defendants City of Los Angeles, The Landskroner Law Firm, LTD., and Law Offices Of Michael J Libman APC, officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns, any judicial officer presiding over this matter, the members of their immediate families and judicial staff, and any individual whose interests are antagonistic to other class members.

> The "LADWP Settlement Class" shall contain the following subclass:
> The "**RESIDENTIAL CUSTOMER SUBCLASS**": All persons who are residential LADWP customers and members of the "LADWP Settlement Class."

87.  Plaintiff shall serve as class representative of both the LADWP

Settlement Class and the Residential Customer Subclass.

88.  Defendants subjected Plaintiff and the Class to the same wrongdoing and

harmed them in the same manner. Now, Plaintiff and the Class seek to enforce the

same rights and remedies pursuant to the same legal theories: violation of 42 U.S.C.

Exhibit 5
376
PLAINTIFFS' COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

§ 1983, unjust enrichment, breach of fiduciary duty, professional malpractice, affirmative misrepresentation, negligent misrepresentation, fraudulent concealment, violation of the Consumer Legal Remedies Act, violation of the Unfair Competition Law, declaratory judgment, and violation of the Racketeer Influenced and Corrupt Organizations Act.

89.  <u>Numerosity</u>: The proposed class and subclass are so numerous that individual joinder of all their members is impracticable. While the exact number and identities of the Class Members are unknown at this time, such information can be ascertained through appropriate investigation and discovery. It is estimated that both the "LADWP Settlement Class" and "Residential Customer Subclass" consist of hundreds of thousands of members. The disposition of the claims of these Class Members in a single class action will provide substantial benefits to all parties and to the Court.

90.  <u>Typicality</u>: Plaintiff's claims are typical of the claims of his respective Class in that his claims arise from the same event or practice or course of conduct that gives rise to the claims of other class members and is based on the same legal theory as their claims.

91.  <u>Adequacy of Representation</u>: Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has further retained the undersigned counsel, who have substantial experience in prosecuting complex lawsuits and class action litigation. Plaintiff and undersigned counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so. Neither Plaintiff nor his counsel have any interests adverse to the Class.

92.  <u>Superiority of Class Action and Impracticability of Individual Actions</u>: Plaintiff and the members of the Class suffered harm as a result of Defendants' unlawful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Individual joinder of all members of

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

Exhibit 5
37

PLAINTIFFS' COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

THE X-LAW GROUP P.C.

625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

1   the Class is impractical. Even if individual Class Members had the resources to

2   pursue individual litigation, it would be unduly burdensome to the courts in which

3   the individual litigation would proceed. Individual litigation magnifies the delay and

4   expense to all parties in the court system of resolving the controversies engendered

5   by the Defendants' common course of conduct. The class action device allows a

6   single court to provide the benefits of unitary adjudication, judicial economy, and

7   the fair and equitable handling of all Class Members' claims in a single forum. The

8   conduct of this action as a class action conserves the resources of the parties and of

9   the judicial system and protects the rights of the Class Members. Adjudication of

10  individual Class Members' claims with respect to Defendants would, as a practical

11  matter, be dispositive of the interests of other members not parties to the

12  adjudication and could substantially impair or impede the ability of other Class

13  Members to protect their interests.

14      93.   <u>Common Questions of Law and Fact Predominate</u>: In addition, the

15  requirements of Federal Rule of Civil Procedure 23 are satisfied by questions of law

16  and fact common to the claims of Plaintiff and of each member of the LADWP

17  Settlement Class and Residential Customer Subclass and which predominate over

18  any question of law or fact affecting only individual members of the LADWP

19  Settlement Class and Residential Customer Subclass. Common questions of law and

20  fact include, but are not limited to, the following:

21          1. Did Special Counsel recruit Class Counsel Defendants to be class

22              counsel in the *Jones* class action?

23          2. Did Class Counsel Defendants misrepresent their relationship with

24              The City in the Jones class action to Judge Berle?

25          3. Did Class Counsel Defendants omit material information about their

26              relationship to The City in the Jones Class action to Jones Class

27              members?

28

25

Exhibit 5
375

PLAINTIFFS' COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

4. Did the LA Defendants supervise, direct, and/or ratify the conduct of Special Counsel in recruiting Class Counsel Defendants?

5. Did the LA Defendants violate the 14th Amendment Rights of members of the LADWP Settlement Class?

6. Did the LA Defendants violate 42 U.S.C. § 1983?

7. Did Class Counsel Defendants violate the California Rules of Professional Conduct?

8. Did Class Counsel Defendants unjustly enrich themselves at the expense of the LADWP Settlement Class?

9. Does the severe ethical misconduct by Class Counsel Defendants require disgorgement by them of all attorneys' fees and costs received in the Jones class action?

10. Do Class Counsel Defendants, as class counsel in the Jones class action, owe fiduciary duties to the LADWP Settlement Class?

11. Did Class Counsel Defendants breach the fiduciary duties they owed to the LADWP Settlement Class?

12. Did The City aid and abet the breach of fiduciary duty by the Class Counsel Defendants owed to the LADWP Settlement Class?

13. Did Class Counsel Defendants owe a duty of reasonable care to Plaintiff and the LADWP Settlement Class in Jones?

14. Did Class Counsel Defendants commit professional malpractice with regards to their representation of the LADWP Settlement Class in Jones?

15. Did The City aid and abet professional malpractice by the Class Counsel Defendants as against the LADWP Settlement Class?

16. Did Class Counsel Defendants make affirmative misrepresentations to Plaintiff and the Class?

Exhibit 5
376

PLAINTIFFS' COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

17. Did Class Counsel Defendants make misrepresentations to Plaintiff and the Class?

18. Did Class Counsel Defendants fraudulently conceal material facts from Plaintiff and the Class?

19. Did The City aid and abet the fraudulent concealment by the Class Counsel Defendants towards the Plaintiff and the Class?

20. Are Plaintiff and the Residential Customer Subclass consumers within the meaning of Civ. Code, § 1761(d)?

21. Are Class Counsel Defendants persons within the meaning of Civ. Code, § 1761(c)?

22. Did Class Counsel Defendants provide services to Plaintiff and the Residential Customer Subclass within the meaning of Civ. Code, § 1761(b)?

23. Did Class Counsel Defendants misrepresent the source, sponsorship, approval, or certification of legal services by misrepresenting and/or concealing from Plaintiff and the Residential Customer Subclass as well as Judge Berle that they did not in fact represent the interests of ratepayers in Jones, when they instead were plotting with Special Counsel and The City to reach a collusive class action settlement?

24. Did Class Counsel Defendants misrepresent their affiliation, connection, or association with another by misrepresenting and/or concealing from Plaintiff and the Class as well as Judge Berle that they did not in fact represent the interests of the ratepayer in Jones, when they instead were plotting with Special Counsel and The City to reach a collusive class action settlement?

25. Did Class Counsel Defendants represent that their legal services have sponsorship, approval, characteristics, ingredients, uses or benefits that they did not have, or that they had a sponsorship, approval, status,

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

27

Exhibit 5
380

PLAINTIFFS' COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Case 2:19-cv-06661-VAP-JC   Document 77-1   Filed 07/31/19   Page 381 of 408   Page ID
Case 2:19-cv-06661-VAP-JC   Document 77-1   Filed 07/31/19   Page 26 of 51   Page ID #:4251
#:4251

1    affiliation or connection that they do not have, by misrepresenting

2    and/or concealing from Plaintiff and the Class as well as Judge Berle

3    that they did not in fact represent the interests of ratepayers in Jones,

4    when they instead were plotting with Special Counsel and The City

5    to reach a collusive class action settlement?

6    26. Did Class Counsel Defendants represent that their legal services are

7        of a particular standard, quality, or grade, or that they are of a

8        particular style or model, when they were in fact of another by

9        misrepresenting and/or concealing from Plaintiff and the Class as

10       well as Judge Berle that they did not in fact represent the interests of

11       ratepayers in Jones, but that they were instead plotting with Special

12       Counsel and The City to reach a collusive class action settlement?

13   27. Did Class Counsel Defendants violate the Consumer Legal

14       Remedies Act?

15   28. Did Class Counsel Defendants violate the Unfair Competition Law?

16   29. Did Defendants engage in mail fraud?

17   30. Did Defendants engage in wire fraud?

18   31. Did Defendants violate the Racketeer Influenced and Corrupt

19       Organizations Act?

20   32. Are Plaintiff and the Class entitled to compensatory damages?

21   33. Are plaintiff and the Class entitled to punitive damages?

22   34. Are Plaintiff and the Class entitled to an award of attorneys' fees?

23       94.    Notice: Notice can be provided via internet publication, published notice

24   and/or through mail and paid for by the Defendants.

25

26

27   //

28   //

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

28

# FIRST CLAIM FOR RELIEF

## VIOLATION OF 42 U.S.C. § 1983

### (By All Plaintiffs Against the LA Defendants)

95.   The allegations of paragraphs 1 through 94 are re-alleged and incorporated herein by reference, and Plaintiff alleges as follows a cause of action on behalf of himself and the class of similarly situated LADWP Settlement Class members.

96.   LA Defendants acted under color of law.

97.   The acts of LA Defendants deprived Plaintiff and the Class of their rights under the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

98.   Specifically, LA Defendants directed, supervised, and/or ratified the conduct of Special Counsel and together with Special Counsel, conspired to and in fact did deprive Plaintiff and the Class of their due process rights in the *Jones* class action.

99.   LA Defendants disregarded every norm of the American common law adversarial legal system by selecting the attorneys who would represent the opposing party in the LADWP rate litigation.  In so doing, they prevented Plaintiff and the Class from being represented by counsel who would represent their interests and deprived them of meaningful access to the courts.

100.  As a result of LA Defendants' conduct, Class Counsel Defendants, together with Special Counsel, negotiated a collusive settlement that was approved by Judge Berle, who was unaware of the collusion.

101.  Plaintiff and the Class, who were also unaware of the true nature of the settlement, had no reason to object or exclude themselves from the *Jones* class and thus lost their ability to obtain fair and adequate compensation for their claims.

//

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

29

Exhibit 5
382

PLAINTIFFS' COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

102.  Had the truth come to light, Judge Berle would not have and could not have approved of the *Jones* settlement, and any class action settlement would have been entered into by adequate class counsel, would have been made at arm's length, and would have reflected the full value of the case.

103.  As a result of LA Defendants' conduct, Plaintiff and the Class have suffered damages.

104.  In addition, because LA Defendants acted with evil motive or intent and/or reckless or callous indifference to the constitutional rights of the *Jones* class members, Plaintiff and the Class are entitled to punitive damages in an amount according to proof at trial.

105.  Plaintiff also seeks an injunction prohibiting The City from directly or indirectly selecting the counsel that would bring lawsuits against it.

## SECOND CLAIM FOR RELIEF

## UNJUST ENRICHMENT

### (By All Plaintiffs Against Class Counsel Defendants)

106.  The allegations of paragraphs 1 through 105 are re-alleged and incorporated herein by reference, and Plaintiff alleges as follows a cause of action on behalf of himself and the class of similarly situated LADWP Settlement Class members.

107.  Class Counsel Defendants received a benefit in the form of attorneys' fees from the settlement of the *Jones* class action.

108.  Because of the severe ethical violations by Class Counsel Defendants, they have forfeited their right to any of the attorneys' fees awarded in *Jones*, whether already collected or otherwise.

109.  These ethical duties include, but are not limited to, California Rules of Professional Conduct Rule 3-310's restrictions on the representation of adverse interests.  Class Counsel Defendants failed to disclose to Plaintiff and the Class and

30

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

1    to Judge Berle that they had a relationship with Special Counsel and were in fact

2    selected by them to be class counsel in the LADWP class action.  Moreover, they

3    failed to disclose that they were engaged in simultaneous representation of both The

4    City and the ratepayer's interests in *Jones*.

5        110.  In pursuing the interests of The City and their own interests in making a

6    quick profit, and by putting those interests ahead of their clients' interests and

7    reaching a quick and collusive settlement with The City, Class Counsel Defendants

8    also violated their fiduciary duty of loyalty that all attorneys owe to their clients.

9        111. Through false representations and material omissions to the Court

10   regarding, among other things, their independence, that they had reached a

11   settlement in *Jones* through arm's length negotiations, and the amount of hours they

12   had spent working on the case, Class Counsel Defendants also violated California

13   Rules of Professional Conduct Rule 5-200's requirement that attorneys employ

14   "such means only as are consistent with truth" and the prohibition that they may not

15   "seek to mislead the judge ... by an artifice or false statement of fact."  For the same

16   reasons, Class Counsel Defendants violated Business and Professions Code section

17   6068(d)'s requirement that an attorney "employ, for the purpose of maintaining the

18   causes confided to him or her those means only as are consistent with truth, and

19   never to seek to mislead the judge or any judicial officer by an artifice or false

20   statement of fact or law."

21       112. It would be unjust for Class Counsel Defendants to retain the money

22   taken out of the commission of Plaintiff and the Class.

23       113. In addition, Class Counsel Defendants' conduct was a substantial factor

24   in causing Plaintiff and the Class injury and Plaintiffs and the Class are therefore

25   entitled to damages.

26       114.  In addition, a constructive trust must be imposed on the *Jones* attorneys'

27   fees and any other revenue generated as a result of Class Counsel Defendants'

28   participation in *Jones*.

31

Exhibit 5
384
PLAINTIFFS' COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Case 2:19-cv-06661-VAP-JC    Document 77-1    Filed 07/31/20    Page 385 of 408    Page ID
#:4255
Case 2:19-cv-06661-VAP-JC    Document 77-1    Filed 07/31/20    Page 32 of 51    Page ID #:4255

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

115. Class Counsel Defendants acted in conscious disregard for the rights of others and put their own interests ahead of the interests of Plaintiff and the Class when representing the class in *Jones*, which constitutes malice.

116. Class Counsel Defendants engaged in despicable conduct that subjected Plaintiff and the Class to cruel and unjust hardship in conscious disregard of their rights, which constitutes Oppression.

117. Class Counsel Defendants intentionally misrepresented and/or concealed material information regarding their relationship with The City, their adequacy as class counsel, and that they were actually representing The City's interests.  These misrepresentations and concealment were directed to Plaintiff and the Class as well as to Judge Berle, which constitutes fraud.

118. Therefore, Class Counsel Defendants, and each of them, acted with oppression, fraud, and/or malice and Plaintiff and the Class are therefore entitled to punitive damages in an amount according to proof at trial.

### THIRD CLAIM FOR RELIEF
### BREACH OF FIDUCIARY DUTY
### (By All Plaintiffs Against Class Counsel Defendants)

119. The allegations of paragraphs 1 through 118 are re-alleged and incorporated herein by reference, and Plaintiff alleges, as follows, a cause of action on behalf of himself and the class of similarly situated LADWP Settlement Class members.

120.  Class Counsel Defendants owed Plaintiff and the Class a fiduciary duty because they were in "attorney-client" relationships with Plaintiff and the Class. Their fiduciary duty included to follow the California Rules of Professional Conduct and other authorities regulating attorney behavior.

//

32

Exhibit 5
385

PLAINTIFFS' COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

121.  These ethical duties include, but are not limited to, California Rules of Professional Conduct Rule 3-310's restrictions on the representation of adverse interests.  Class Counsel Defendants failed to disclose to Plaintiff and the Class and to Judge Berle that they had a relationship with Special Counsel and were in fact selected by them to be class counsel in the LADWP class action.  Moreover, they failed to disclose that they were engaged in simultaneous representation of both The City and the ratepayers in *Jones*.

122.  In pursuing the interests of The City and their own interests in making a quick profit, and by putting those interests ahead of their clients' interests and reaching a quick and collusive settlement with The City, Class Counsel Defendants also violated their fiduciary duty of loyalty that all attorneys owe to their clients.

123.  Through false representations and material omissions to the Court regarding, among other things, their independence, that they had reached a settlement in *Jones* through arm's length negotiations, and the amount of hours they had spent working on the case, Class Counsel Defendants also violated California Rules of Professional Conduct Rule 5-200's requirement that attorneys employ "such means only as are consistent with truth" and the prohibition that they may not "seek to mislead the judge ... by an artifice or false statement of fact."  For the same reasons, Class Counsel Defendants violated Business and Professions Code section 6068(d)'s requirement that an attorney "employ, for the purpose of maintaining the causes confided to him or her those means only as are consistent with truth, and never to seek to mislead the judge or any judicial officer by an artifice or false statement of fact or law."

124.  Class Counsel Defendants' conduct was a substantial factor in causing Plaintiffs and the Class injury and Plaintiffs and the Class are therefore entitled to damages.

//

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

33

Exhibit 5
386

PLAINTIFFS' COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

125.  In addition, a constructive trust must be imposed on the *Jones* attorneys' fees and any other revenue generated as a result of Class Counsel Defendants' participation in *Jones*.

126. Class Counsel Defendants acted in conscious disregard for the rights of others and put their own interests ahead of the interests of Plaintiff and the Class when representing the class in *Jones*, which constitutes malice.

127. Class Counsel Defendants engaged in despicable conduct that subjected Plaintiff and the Class to cruel and unjust hardship in conscious disregard of their rights, which constitutes Oppression.

128. Class Counsel Defendants intentionally misrepresented and/or concealed material information regarding their relationship with The City, their adequacy as class counsel, and that they were actually representing The City's interests.  These misrepresentations and concealment were directed to Plaintiff and the Class as well as to Judge Berle, which constitutes fraud.

129. Therefore, Class Counsel Defendants, and each of them, acted with oppression, fraud, and/or malice and Plaintiff and the Class are therefore entitled to punitive damages in an amount according to proof at trial.

## FOURTH CLAIM FOR RELIEF
## PROFESSIONAL MALPRACTICE
### (By All Plaintiffs Against Class Counsel Defendants)

130. The allegations of paragraphs 1 through 129 are re-alleged and incorporated herein by reference, and Plaintiff alleges as follows a cause of action on behalf of himself and the class of similarly situated LADWP Settlement Class members.

131. Class Counsel Defendants were in attorney-client relationships with Plaintiff and the Class.

//

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

34

Exhibit 5
387

PLAINTIFFS' COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

1   132.  Accordingly, Class Counsel Defendants owed Plaintiff and the Class the

2   duty of all attorneys to use such skill, prudence, and diligence as members of their

3   profession commonly possess and exercise.

4   133.  In addition, Class Counsel Defendants are required to comply with their

5   ethical duties as attorneys.  These ethical duties include, but are not limited to,

6   California Rules of Professional Conduct Rule 3-310's restrictions on the

7   representation of adverse interests.  Class Counsel Defendants failed to disclose to

8   Plaintiff and the Class and to Judge Berle that they had a relationship with Special

9   Counsel and were in fact selected by them to be class counsel in the LADWP class

10  action.  Moreover, they failed to disclose that they were engaged in simultaneous

11  representation of both The City and the ratepayers in *Jones*.

12  134.  Class Counsel Defendants also violated their fiduciary duty of loyalty

13  that all attorneys owe to their clients. They did so by reaching a quick and collusive

14  settlement with The City and pursuing the interests of The City and their own

15  interests in making a quick profit rather than pursuing the interests of Plaintiff and

16  the Class.

17  135.  Through false representations and material omissions to the Court

18  regarding, among other things, their independence, that they had reached a

19  settlement in *Jones* through arm's length negotiations, and the amount of hours they

20  had spent working on the case, Class Counsel Defendants also violated California

21  Rules of Professional Conduct Rule 5-200's requirement that attorneys employ

22  "such means only as are consistent with truth" and the prohibition that they may not

23  "seek to mislead the judge ... by an artifice or false statement of fact."  For the same

24  reasons, Class Counsel Defendants violated Business and Professions Code section

25  6068(d)'s requirement that an attorney "employ, for the purpose of maintaining the

26  causes confided to him or her those means only as are consistent with truth, and

27  never to seek to mislead the judge or any judicial officer by an artifice or false

28  statement of fact or law."

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

35

Exhibit 5
388
PLAINTIFFS' COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

136.  Class Counsel Defendants' conduct was a substantial factor in causing Plaintiffs and the Class injury and Plaintiffs and the Class are therefore entitled to damages.

137.  In addition, a constructive trust must be imposed on the *Jones* attorneys' fees and any other revenue generated as a result of Class Counsel Defendants' participation in *Jones*.

138. Class Counsel Defendants acted in conscious disregard for the rights of others and put their own interests ahead of the interests of Plaintiff and the Class when representing the class in *Jones*, which constitutes malice.

139. Class Counsel Defendants engaged in despicable conduct that subjected Plaintiff and the Class to cruel and unjust hardship in conscious disregard of their rights, which constitutes Oppression.

140. Class Counsel Defendants intentionally misrepresented and/or concealed material information regarding their relationship with The City, their adequacy as class counsel, and that they were actually representing The City's interests.  These misrepresentations and concealment were directed to Plaintiff and the Class as well as to Judge Berle, which constitutes fraud.

141. Therefore, Class Counsel Defendants, and each of them, acted with oppression, fraud, and/or malice and Plaintiff and the Class are therefore entitled to punitive damages in an amount according to proof at trial.

### FIFTH CLAIM FOR RELIEF
### AFFIRMATIVE MISREPRESENTATION
### (By All Plaintiffs Against Class Counsel Defendants)

142. The allegations of paragraphs 1 through 141 are re-alleged and incorporated herein by reference, and Plaintiff alleges as follows a cause of action on behalf of himself and the class of similarly situated LADWP Settlement Class members.

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

143.  Class Counsel Defendants represented to Plaintiff and the Class as well as to the Court that they would represent the interests of the *Jones* class members and had entered into a fair settlement with The City.   They made these representations by, among other methods, in-court filings and orally in *Jones* to Judge Berle.  This included the draft notice they prepared, which formed the basis for the notice that Judge Berle ordered to be sent out to members of the *Jones* class.

144. Class Counsel Defendants' representations were false.  In fact, Class Counsel Defendants had been selected as class counsel by and were colluding with The City to settle the LADWP claims and were acting in violation of the California Rules of Professional Conduct and other regulations that govern the legal profession.

145.  Class Counsel Defendants either knew that their representations were false when they made them or made the representations recklessly and without regard for their truth.

146.  Class Counsel Defendants intended that Plaintiff and the Class rely on the representations.

147.  Plaintiffs and the Class reasonably relied on Class Counsel Defendants' representations.

148.  Class counsel Defendants' conduct was a substantial factor in causing Plaintiff and the Class injury and Plaintiff and the Class are therefore entitled to damages.

149. Class Counsel Defendants acted in conscious disregard for the rights of others and put their own interests ahead of the interests of Plaintiff and the Class when representing the class in *Jones*, which constitutes malice.

150. Class Counsel Defendants engaged in despicable conduct that subjected Plaintiff and the Class to cruel and unjust hardship in conscious disregard of their rights, which constitutes Oppression.

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

Exhibit 5
390

PLAINTIFFS' COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

151. Class Counsel Defendants intentionally misrepresented and/or concealed material information regarding their relationship with The City, their adequacy as class counsel, and that they were actually representing The City's interests. These misrepresentations and concealment were directed to Plaintiff and the Class as well as to Judge Berle, which constitutes fraud.

152. Therefore, Class Counsel Defendants, and each of them, acted with oppression, fraud, and/or malice and Plaintiff and the Class are therefore entitled to punitive damages in an amount according to proof at trial.

## SIXTH CLAIM FOR RELIEF
## NEGLIGENT MISREPRESENTATION
### (By All Plaintiffs Against Class Counsel Defendants)

153. The allegations of paragraphs 1 through 152 are re-alleged and incorporated herein by reference, and Plaintiff alleges as follows a cause of action on behalf of himself and the class of similarly situated LADWP Settlement Class members.

154. Class Counsel Defendants represented to Plaintiff and the Class as well as to the Court that they would represent the interests of the *Jones* class members and had entered into a fair settlement with The City. They made these representations by, among other methods, in-court filings and orally in *Jones* to Judge Berle. This included the draft notice they prepared, which formed the basis for the notice that Judge Berle ordered to be sent out to members of the *Jones* class.

155. Class Counsel Defendants' representations were false. In fact, Class Counsel Defendants had been selected as class counsel by and were colluding with The City to settle the LADWP claims and were acting in violation of the California Rules of Professional Conduct and other regulations that govern the legal profession.

//

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

PLAINTIFFS' COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Exhibit 5
38

156.  Regardless of whether Class Counsel Defendants honestly believed that the representations were true, Class Counsel Defendants had no reasonable grounds for believing the representations were true when they made them.

157.  Class Counsel Defendants intended that Plaintiff and the Class rely on these representations.

158.  Plaintiff and the Class reasonably relied on Class counsel Defendants' representations.

159.  Class Counsel Defendants' conduct was a substantial factor in causing Plaintiff and the Class injury and Plaintiff and the Class are therefore entitled to damages.

160. Class Counsel Defendants acted in conscious disregard for the rights of others and put their own interests ahead of the interests of Plaintiff and the Class when representing the class in *Jones*, which constitutes malice.

161. Class Counsel Defendants engaged in despicable conduct that subjected Plaintiff and the Class to cruel and unjust hardship in conscious disregard of their rights, which constitutes Oppression.

162. Class Counsel Defendants intentionally misrepresented and/or concealed material information regarding their relationship with The City, their adequacy as class counsel, and that they were actually representing The City's interests.  These misrepresentations and concealment were directed to Plaintiff and the Class as well as to Judge Berle, which constitutes fraud.

163. Therefore, Class Counsel Defendants, and each of them, acted with oppression, fraud, and/or malice and Plaintiff and the Class are therefore entitled to punitive damages in an amount according to proof at trial.

//

//

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

## SEVENTH CLAIM FOR RELIEF

## FRAUDULENT CONCEALMENT

### (By All Plaintiffs Against Class Counsel Defendants)

164. The allegations of paragraphs 1 through 163 are re-alleged and incorporated herein by reference, and Plaintiff alleges as follows a cause of action on behalf of himself and the class of similarly situated LADWP Settlement Class members.

165. Plaintiff and the Class were in fiduciary and attorney-client relationships with Class Counsel Defendants.

166. Moreover, Class Counsel Defendants intentionally failed to disclose certain facts that were known only to them, namely that Class Counsel Defendants had been handpicked by the City and its Special Counsel to bring a class action against it and then quickly and collusively settle the class action for less than the claims' true value.

167. Plaintiff and the Class did not know that Class Counsel Defendants had been handpicked by the City and its Special Counsel to bring a class action against it or that they intended to quickly and collusively settle the class action for less than the claims' true value.

168. Class Counsel Defendants intended to deceive Plaintiff and the Class by concealing the facts.

169. Had the omitted information been disclosed, Plaintiff and the Class reasonably would have behaved differently.

170. Class Counsel Defendants' conduct was a substantial factor in causing Plaintiff and the Class injury and Plaintiffs and the Class are therefore entitled to damages.

171. Class Counsel Defendants acted in conscious disregard for the rights of others and put their own interests ahead of the interests of Plaintiff and the Class when representing the class in *Jones*, which constitutes malice.

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

40

172. Class Counsel Defendants engaged in despicable conduct that subjected Plaintiff and the Class to cruel and unjust hardship in conscious disregard of their rights, which constitutes Oppression.

173. Class Counsel Defendants intentionally misrepresented and/or concealed material information regarding their relationship with The City, their adequacy as class counsel, and that they were actually representing The City's interests. These misrepresentations and concealment were directed to Plaintiff and the Class as well as to Judge Berle, which constitutes fraud.

174. Therefore, Class Counsel Defendants, and each of them, acted with oppression, fraud, and/or malice and Plaintiff and the Class are therefore entitled to punitive damages in an amount according to proof at trial.

## EIGHTH CLAIM FOR RELIEF
## VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT, CALIFORNIA CIVIL CODE § 1750 *ET SEQ.*
### (By the Residential Customer Subclass Against Class Counsel Defendants)

175. The allegations of paragraphs 1 through 174 are re-alleged and incorporated herein by reference, and Plaintiff alleges as follows a cause of action on behalf of himself and the class of similarly situated LADWP Settlement Class members.

176. Plaintiff and the Class are consumers within the meaning of Civ. Code, § 1761(d).

177. Class Counsel Defendants are persons within the meaning of Civ. Code, § 1761(c).

178. Class Counsel Defendants provide legal services, which constitutes a service within the meaning of Civ. Code, § 1761(b).

179. Class Counsel Defendants' conduct violated Civ. Code, § 1770(a) for at least the following reasons:

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

41

180. Class Counsel Defendants misrepresented the source, sponsorship, approval, or certification of legal services by misrepresenting and/or concealing from Plaintiff and the Class as well as Judge Berle that they did not in fact represent the interests of ratepayers in *Jones*, but instead were plotting with Special Counsel and The City to reach a collusive class action settlement.

181. Class Counsel Defendants misrepresented their affiliation, connection, or association with another by misrepresenting and/or concealing from Plaintiff and the Class as well as Judge Berle that they did not in fact represent the interests of the ratepayers in *Jones*, but instead were plotting with Special Counsel and The City to reach a collusive class action settlement.

182. Class Counsel Defendants represented that their legal services have sponsorship, approval, characteristics, ingredients, uses or benefits that they did not have, or that they had a sponsorship, approval, status, affiliation or connection that they do not have, by misrepresenting and/or concealing from Plaintiff and the Class as well as Judge Berle that they did not in fact represent the interests of ratepayers in *Jones*, but instead were plotting with Special Counsel and The City to reach a collusive class action settlement.

183. Class Counsel Defendants represented that their legal services are of a particular standard, quality, or grade, or of a particular style or model, when they were in fact of another by misrepresenting and/or concealing from Plaintiff and the Class as well as Judge Berle that they did not in fact represent the interests of ratepayers in *Jones*, but instead were plotting with Special Counsel and The City to reach a collusive class action settlement.

184. As a direct and proximate result of the aforesaid conduct of Class Counsel Defendants, and each of them, Plaintiff and the Class have been damaged.

185. By reason of the foregoing, Plaintiff and the Class have been irreparably harmed entitling them to injunctive relief, disgorgement and restitution.

Exhibit 5
395

PLAINTIFFS' COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

186. Pursuant to §1782 of the CLRA, Plaintiff notified Class Counsel Defendants in writing of the particular violations of §1770 of the CLRA and demanded Class Counsel Defendants rectify the actions described above by providing complete monetary relief, agreeing to be bound by their legal obligations and to give notice to all affected customers of their intent to do so. Plaintiff sent this notice by certified mail, return receipt requested, to Class Counsel Defendants' principal place of business.

187. If Class Counsel Defendants fail to adequately respond to Plaintiff's demand within 30 days of the letter pursuant to §1782 of the CLRA, Plaintiff will amend this claim to add additional claims for relief, including claims for compensatory and exemplary damages. Plaintiff and the Class are already entitled to the relief set forth above, along with costs, attorneys' fees and any other relief which the Court deems proper.

## NINTH CLAIM FOR RELIEF
## VIOLATION OF THE UNFAIR COMPETITION LAW, CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200 *ET SEQ.*
### (By All Plaintiffs Against Class Counsel Defendants)

188. The allegations of paragraphs 1 through 187 are re-alleged and incorporated herein by reference, and Plaintiff alleges as follows a cause of action on behalf of himself and the class of similarly situated LADWP Settlement Class members.

189. Business & Professions Code § 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." Class Counsel Defendants engaged in conduct that violated each of the statute's three prongs.

//

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

43

190. As outlined above in the claims for relief above, Class Counsel Defendants violated the unlawful prong through their violations of the CLRA, their violations of rules 3-310 and 5-200 of the California Rules of Professional Conduct, among others, and their violation of Business and Professions Code section 6068(d).

191. Class Counsel Defendants violated the unfair prong because Class Counsel Defendants' practices of purporting to serve as adequate class counsel in *Jones* while concealing from Plaintiff and the Class as well as Judge Berle that they did not in fact represent the interests of ratepayers in *Jones*, but instead were plotting with Special Counsel and The City to reach a collusive class action settlement, offend an established public policy, are immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers. The utility of Class Counsel Defendants' conduct is greatly outweighed by the substantial harm to Plaintiff and the Class and Plaintiff and the Class could not have avoided the harm themselves.

192. Class Counsel Defendants violated the fraudulent prong through their acts and practices as described above, including by misrepresenting and/or concealing material information regarding their relationship with The City, their adequacy as class counsel, and that they were actually representing The City's interests. This information was misrepresented to and/or concealed from Plaintiff and the Class as well as Judge Berle. Plaintiff and the Class could not have learned this information from anyone else and Class Counsel Defendants as attorneys purportedly representing the interests of Plaintiff and the Class owed them a duty to not conceal this information from them.

193. Class Counsel Defendants' representations and omissions were likely to deceive consumers, including Plaintiff and the Class. Moreover, Class Counsel Defendants' representations and omissions were material to the reasonable consumer, including Plaintiff and the Class.

//

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

44

1    194. Plaintiff and the Class reasonably relied on Class Counsel Defendants'

2    representations.

3    195. Class Counsel Defendants' conduct was a substantial factor in causing

4    Plaintiff and the Class injury and Plaintiffs and the Class are therefore entitled to

5    damages.

6

7    **TENTH CLAIM FOR RELIEF**

8    **DECLARATORY JUDGMENT**

9    **(By All Plaintiffs Against Class Counsel Defendants)**

10    196. The allegations of paragraphs 1 through 195 are re-alleged and

11    incorporated herein by reference, and Plaintiff alleges as follows a cause of action

12    on behalf of himself and the class of similarly situated LADWP Settlement Class

13    members.

14    197. An actual controversy has arisen and now exists between Plaintiff and

15    the Class and Class Counsel Defendants as set forth above, for which Plaintiffs

16    desire a declaration or rights.

17    198. A declaratory judgment is necessary and proper in that Plaintiffs contend

18    that due to their severe ethical violations, Class Counsel Defendants must forfeit the

19    attorneys' fees and costs they have collected in *Jones*, resulting in the creation of a

20    constructive trust for the benefit of Plaintiff and the Class. On information and

21    belief, Class Counsel Defendants will argue that they are entitled to retain the

22    attorneys' fees and costs they have collected.

23

24

25

26

27    //

28    //

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

45

PLAINTIFFS' COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Exhibit 5
398

# ELEVENTH CLAIM FOR RELIEF

## RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT §
## 18 U.S.C. § 1961 *ET SEQ.*

### (By All Plaintiffs Against All Defendants)

199. The allegations of paragraphs 1 through 198 are re-alleged and incorporated herein by reference, and Plaintiff alleges as follows a cause of action on behalf of himself and the class of similarly situated LADWP Settlement Class members.

200. Defendants are "persons" under 18 U.S.C. § 1961(3) because they are capable of holding, and do hold, "a legal or beneficial interest in property."

201. Section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."

202. Section 1962(d) makes it unlawful for "any person to conspire to violate" Section 1962(c), among other provisions.

203. At all relevant times, Defendants, along with other individuals and entities, including unknown third parties, operated an association-in-fact enterprise, which was formed for the purpose of allowing The City to minimize its liability in LADWP ratepayer litigation while simultaneously enriching Special Counsel and Class Counsel Defendants within the meaning of 18 U.S.C. § 1961(4). Alternatively, The City, The Landskroner Law Firm, and Law Offices of Michael J Libman APC are each legal enterprises within the meaning of 18 U.S.C. § 1961(4), through which Defendants conducted their pattern of racketeering activity.  By entering into a collusive class action settlement, The City could settle the claims of ratepayers for less than it would as a result of an arm's length class action lawsuit. Special Counsel were able to use the *Jones* settlement as a vehicle to be awarded a $30 million contract on a no-bid basis.

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

46

1    204. Class Counsel Defendants used the *Jones* settlement to obtain millions

2    of dollars in attorneys' fees in in a class action settlement that was essentially

3    prepackaged for them by The City.  The enterprises, alleged in this paragraph, are

4    referred to collectively as the "LADWP RICO Enterprise."

5    205. The LADWP RICO Enterprise began on January 1, 2015 at the latest and

6    grew to encompass more members as it proceeded.  Defendants maintained

7    throughout a pattern of racketeering activity and acquired and/or maintained,

8    directly or indirectly, an interest in or control in the LADWP RICO Enterprise.  The

9    LADWP RICO Enterprise was engaged in and affected interstate commerce because

10   some of the members of the Enterprise were residing in other states, including Ohio.

11   In addition, the *Jones* litigation and its settlement, as a multimillion-dollar class

12   action, impacted interstate commerce.

13   206. In addition, Defendants, who were employed by or associated with the

14   LADWP RICO Enterprise, engaged in and/or conducted activities that affected

15   interstate commerce for the reasons sated above.  In doing so, Defendants, directly

16   or indirectly, conducted or participated in the conduct of the LADWP RICO

17   Enterprise through a pattern of racketeering activity.

18   207. On information and belief, Defendants' pattern of racketeering activity

19   included both mail and wire fraud under 18 U.S.C. § 1341 and 18 U.S.C. § 1343

20   respectively.  Specifically, Defendants devised and/or intended to devise a scheme

21   or artifice to defraud.

22   208. This scheme entailed a series of misrepresentations and/or concealment,

23   as discussed above, to create the illusion that the *Jones* litigation was a legitimate

24   class action lawsuit and that its subsequent settlement was made at arm's length.  It

25   created the illusion that Class Counsel Defendants were representing the interests of

26   Plaintiff and the Class.  In fact, Class Counsel Defendants had colluded with LA

27   Defendants and Special Counsel from before the *Jones* lawsuit was even filed.

28   Judge Berle relied on the representations and omissions recounted above regarding

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California  91030
213.599.3380 phone • 213.599.3370 fax

47

Exhibit 5
180

1 the adequacy of Class Counsel Defendants as Class counsel, that they were
2 representing the interests of class members, rather than the City of LA, that they
3 were not plotting with The City and Special Counsel, that the case settled as a result
4 of an arm's length mediation, and that Class Counsel Defendants did in fact work
5 the hours they claimed. As a result of Judge Berle's reliance, he approved settlement
6 of the *Jones* class action, and in so doing caused substantial economic damages to
7 Plaintiff and the Class.

8     209. Plaintiff and the Class relied on the statements contained in the notice he
9 received stating that Judge Berle had preliminarily approved of the settlement, that
10 class counsel fairly and adequately protected class members, and that the settlement
11 was superior to all other available methods for fairly and efficiently resolving the
12 dispute with LADWP. They reasonably relied on Judge Berle's evaluation that the
13 settlement was fair and reasonable. Because of Defendants' actions, Plaintiff and
14 the Class did not object or otherwise opt out of the settlement or take other action
15 and in so doing, incurred substantial economic damages.

16     210. On information and belief, as a result of Class Counsel Defendants'
17 collusive settlement, Plaintiff and the Class incurred damages from the *Jones* action
18 settling for less than it would have in an arm's length settlement.

19     211. On information and belief, Defendants used the Postal Service and/or
20 private or commercial interstate carriers such as FedEx as well as the wires (e.g.
21 internet and phone) in interstate commerce in order to further and execute their
22 fraudulent scheme on countless occasions. This included, but was not limited to,
23 mailing and FedExing to communicate among themselves, mailing and FedExing
24 litigation documents to parties in the *Jones* lawsuit and related lawsuits, and mailing
25 class notice to class members in *Jones*.

26     212. On information and belief, Defendants also used wires in interstate
27 commerce in order to further and execute the fraudulent scheme. In the course of
28 litigating *Jones*, Defendants communicated through phone calls, emails, and faxes

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

48

Exhibit 5
48
PLAINTIFFS' COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Case 2:19-cv-06661-VAP-JC   Document 77-1   Filed 01/03/20   Page 402 of 408   Page ID
Case 2:19-cv-06661-VAP-JC   Document 77-1   Filed 07/31/19   Page 49 of 51   Page ID 9:49
#:4272

1    among themselves and with other parties in the *Jones* lawsuit and related lawsuits.

2    In addition, they emailed class notice to class members in *Jones*.  Furthermore, on

3    information and belief, Defendants would have used the wires in the course of filing

4    documents   in   the   *Jones*   action,   including   the   documents   where   the

5    misrepresentations and omissions were made that falsely implied that *Jones* was a

6    legitimate class action.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27    //

28    //

Exhibit 5
182

PLAINTIFFS' COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California  91030
213.599.3380 phone • 213.599.3370 fax

Case 2:19-cv-06661-VAP-JC Document 77-1 Filed 07/31/20 Page 403 of 408 Page ID
Case 2:19-cv-06661-VAP-JC Document 77-1 Filed 07/31/20 Page 50 of 51 Page ID #:4350
#:4273

# PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

Plaintiffs seek to recover the following damages and obtain the following relief from Defendants:

(a)  Economic loss and damages suffered by Plaintiff and the Class;

(b)  Restitution;

(c)  Creation of a constructive trust;

(d)  Punitive damages;

(e)  All reasonable and necessary attorneys' fees;

(f)  Court costs;

(g)  Pre and post-judgment interest;

(h)  A declaratory judgment as to Class Counsel Defendants' non-entitlement to attorneys' fees in *Jones*;

(i)  An injunction prohibiting The City from directly or indirectly selecting the counsel that would bring lawsuits against it;

(j)  And such other relief to which Plaintiffs may show themselves justly entitled.

DATED: July 31, 2019          **THE X-LAW GROUP, P.C.**

By: _____

FILIPPO MARCHINO, ESQ.,
Attorneys for Plaintiff

//

//

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

50

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED: July 31, 2019                    **THE X-LAW GROUP, P.C.**

By: _____

FILIPPO MARCHINO, ESQ.,
Attorneys for Plaintiff

THE X-LAW GROUP P.C.
625 Fair Oaks Ave., Suite 390
South Pasadena, California 91030
213.599.3380 phone • 213.599.3370 fax

ORIGINAL

1  BRIAN S. KABATECK (SBN 152054)
   bsk@kbklawyers.com
2  ANASTASIA K. MAZZELLA (SBN 245201)
   am@kbklawyers.com
3  BRIAN HONG (SBN 271932)
   byh@kbklawyers.com
4  **KABATECK LLP**
   633 West Fifth Street, Suite 3200
5  Los Angeles, CA 90071
   Telephone:    (213) 217-5000
6  Facsimile:    (213) 217-5010

7  Attorney for the Class

**FILED**
Superior Court of California
County of Los Angeles

MAY 0 7 2019

Sherri R. Carter, Executive Officer/Clerk
By_____, Deputy
Pedro Martinez

8

9

10

11

12

13        **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

14              **COUNTY OF LOS ANGELES**

15  ANTWON JONES, individually and on            Lead Case No.: BC577267
    behalf of the class,
16
                   Plaintiffs,
17                                               **[PROPOSED] ORDER RE: APPOINTMENT
                                                 OF BRIAN S. KABATECK AS CLASS
18       v.                                      COUNSEL**

19  CITY OF LOS ANGELES, *et al.*,
                                                 Dept.:     6
20                 Defendants.                   Judge:     Honorable Elihu M. Berle

21

22

23

24                                      LOS ANGELES SUPERIOR COURT
                                        RECEIVED
25
                                        APR 30 2019
26
                                        S. DREW
27

28
    **[PROPOSED] ORDER RE: APPOINTMENT OF BRIAN S. KABATECK AS CLASS COUNSEL**
    **Case No. BC577267**

Exhibit 6
405

**IT IS HEREBY ORDERED:**

1. As class counsel, Brian S. Kabateck will further the interests of the class, including any and all subclasses, above all other interests;

2. Mr. Kabateck shall owe a duty of care to the class as a whole, to represent all class members with such skill, prudence, and diligence as attorneys of ordinary skill and capacity commonly possess and exercise in performing their tasks;

3. Mr. Kabateck will protect all claims that all class members would reasonably expected to be asserted in the litigation;

4. Mr. Kabateck will focus on the class, that is, to protect the class and its rights which may include an investigation as to how the settlement was arrived at and an analysis as to whether the settlement of the class action was fair, reasonable, and adequate under all the circumstances;

5. Mr. Kabateck will not conduct an open-ended investigation of all other parties and their counsel and potential conflicts of interest to the extent they are unrelated to the claims and benefits of the class members;

6. To the extent it is necessary to further the interests of the class, Mr. Kabateck will educate himself as to how the settlement was ultimately reached by, among other things, reviewing all pertinent pleadings, motions, settlement documents, and accountings, and conferring with counsel who have appeared in the above-referenced matter and all related matters;

7. After evaluating whether the settlement of the class action was fair, reasonable, and adequate under all the circumstances, Mr. Kabateck shall, should he deem it necessary to protect the interests of the class, seek appropriate relief on behalf of the class; and

8. Mr. Kabateck will coordinate with the special master and auditor with respect to protecting the interests of the class.

[PROPOSED] ORDER RE: APPOINTMENT OF BRIAN S. KABATECK AS CLASS COUNSEL
Case No. BC577267

1

Exhibit 6
406

1

2

3   **IT IS FURTHER ORDERED:** _____

4   _____

5

6   Dated: _May 7, 2019_            [signature]

7

8                                    JUDGE OF THE SUPERIOR COURT

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[PROPOSED] ORDER RE: APPOINTMENT OF BRIAN S. KABATECK AS CLASS COUNSEL
Case No. BC577267                                                          2

Exhibit 6
407

## PROOF OF SERVICE

### STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles. I am over the age of eighteen years and not a party to the within entitled action; my business address is 633 West Fifth Street, Suite 3200, Los Angeles, CA 90071.

On April 30, 2019, I served a copy of the following document(s) described as **[PROPOSED] ORDER RE: APPOINTMENT OF BRIAN S. KABATECK AS CLASS COUNSEL** on the interested party(ies) in this action as follows:

[ ]    **BY MAIL:**    By placing a true copy thereof enclosed in a sealed envelope(s) addressed as above, and placing each for collection and mailing on that date following ordinary business practices. I am "readily familiar" with this business practice for collecting and processing correspondence for mailing. On the same day that correspondence IS placed for collection and mailing, it is deposited in the ordinary course of business with the U.S. Postal Service in Los Angeles, California, in a sealed envelope with postage fully prepaid.

[ ]    **BY OVERNIGHT DELIVERY:**    I enclosed the document(s) in an envelope or package provided by an overnight delivery carrier and addressed as above. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

[X]    **VIA FILE AND SERVE:**    I caused such documents described herein to be uploaded electronically onto the website www.fileandservexpress.com per a mutual agreement between the parties. I uploaded the above entitled document(s) with the understanding that all parties will have access and be able to download said documents

[X]    **STATE:**    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed April 30, 2019, at Los Angeles, California.

*Irma DeLeon*
**Irma Deleon**