Leela Kapur (SBN 125548)
  leela.kapur@lacity.org
Kathleen A. Kenealy (SBN 212289)
  kathleen.kenealy@lacity.org
Joseph A. Brajevich (SBN 156144)
  joseph.brajevich@ladwp.com
LOS ANGELES CITY ATTORNEY'S OFFICE
200 Main Street, 800 City Hall East
Los Angeles, California 90012
Telephone: (213) 978-8100
Facsimile: (213) 978-8312

BROWNE GEORGE ROSS LLP
Eric M. George (SBN 166403)
  egeorge@bgrfirm.com
Maribeth Annaguey (State Bar No. 228431)
  mannaguey@bgrfirm.com
Kim S. Zeldin (State Bar No. 135780)
  kzeldin@bgrfirm.com
2121 Avenue of the Stars, Suite 2800
Los Angeles, California 90067
Tel: (310) 274-7100
Fax: (310) 275-5697

Attorneys for Defendants
City of Los Angeles and Michael N. Feuer

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| DENNIS BRADSHAW, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>        vs.<br><br>CITY OF LOS ANGELES, a municipal entity; MICHAEL FEUER, in his individual and official capacity; JAMES CLARK, in his individual and official capacity; et al.,<br><br>        Defendants. | Case No. 2:19-cv-06661-VAP (JCx)<br><br>Hon. Virginia A. Phillips<br><br>**CITY OF LOS ANGELES AND MICHAEL N. FEUER'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FRCP 12(b)(1) AND 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:    February 3, 2020<br>Time:   2:00 p.m.<br>Crtrm.: 8A<br><br>Trial Date:   None Set |

1377564

Case No. 2:19-cv-06661-VAP (JCx)

CITY OF LOS ANGELES AND MICHAEL N. FEUER'S MOTION TO DISMISS FAC
PURSUANT TO FRCP 12(b)(1) AND 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on February 3, 2020, at 2:00 p.m., or as soon thereafter as this matter may be heard before the Honorable Virginia A. Phillips, United States District Judge, in the above-entitled Court, located at the First Street Courthouse, Courtroom 8A, 8th Floor, 350 West 1st Street, Los Angeles, California, 90012, Defendants City of Los Angeles (the "City") and Michael N. Feuer ("Mr. Feuer") (collectively, the "City/Feuer Defendants") will and hereby do move the Court for an order dismissing with prejudice the First Amended Class Action Complaint (the "FAC") (Doc. No. 48) pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on the following grounds:

1.    Res judicata bars each of the claims against the City/Feuer Defendants because the same claims have been fully resolved, on the merits, between the parties via a class action settlement and final judgment in the Los Angeles Superior Court (the "State Court");

2.    The *Rooker-Feldman* doctrine bars each of the pleaded claims, which seek improperly to attack, and improperly to pursue, a de facto appeal of the aforementioned final State Court judgment;

3.    The *Noerr-Pennington* doctrine bars each of the pleaded claims, which are based on protected litigation and/or petitioning activities;

4.    Plaintiff Dennis Bradshaw ("Plaintiff") lacks Article III standing to bring each of the claims alleged in the FAC against the City/Feuer Defendants because he fails to identify an injury in fact, which is traceable to their supposed conduct, and that can be redressed by this Court; and, Plaintiff also lacks standing to seek injunctive relief under 42 U.S.C. § 1983 because the FAC does not allege he will suffer the same injury in the future;

5.    Plaintiff's Nineteenth Claim for violations of the Racketeer Influenced and Corrupt Organizations Act, pursuant to 18 U.S.C. § 1962(c) and (d) (the "RICO" claim), fails for the following additional and independent reasons:

1    a.    The City and Mr. Feuer (in his official capacity) are not subject to

2  civil RICO liability as a matter of law;

3    b.    The FAC fails to plead that Mr. Feuer acted outside his official

4  duties as the Los Angeles City Attorney;

5    c.    The FAC fails to allege the requisite elements for a claim under

6  RICO in that it fails to plead with the requisite specificity (i) the predicate acts of

7  mail and wire fraud against Mr. Feuer, (ii) a pattern of racketeering, and (iii) a RICO

8  enterprise; and

9    d.    Plaintiff lacks standing under RICO because his purported loss is

10  not clear and definite but instead, at best, is theoretical and remote;

11    6.    Plaintiff's First Claim for violations of 42 U.S.C. § 1983 (the

12  "Section 1983" claim) fails for the following additional and independent reasons:

13    a.    The Section 1983 claim is not ripe;

14    b.    Plaintiff fails to plead facts necessary to establish municipal

15  liability against the City or Mr. Feuer in his official capacity; and

16    c.    Plaintiff fails to plead a claim against Mr. Feuer in his individual

17  capacity as Plaintiff fails to allege that Mr. Feuer personally participated in the

18  alleged constitutional violations, and in any event, Mr. Feuer's actions are protected

19  by qualified immunity.

20    This motion is based on this notice of motion, the accompanying memorandum

21  of points and authorities, the request for judicial notice and for incorporation by

22  reference, the proposed orders for the request and this motion, all pleadings and

23  documents on file with the Court, and such further written and/or oral evidence and

24  argument as the Court may allow.

25    This motion is made following the conferences of Plaintiff's counsel, the

26  City/Feuer Defendants' counsel, Mr. Thomas Peters's counsel, and Mr. James

27  Clark's counsel, pursuant to L.R. 7-3, which took place between November 21-23,

28  2019.

1   The City/Feuer Defendants respectfully request that the Court dismiss the

2   FAC, and each claim for relief therein against them, with prejudice.

3

4   DATED:  January 6, 2020                    BROWNE GEORGE ROSS LLP
                                                         Eric M. George
5                                                        Maribeth Annaguey
                                                         Kim S. Zeldin
6

7                                              By:  _____/s/ Kim S. Zeldin_____
8                                                         Kim S. Zeldin
                                               Attorneys for Defendants City of Los Angeles
9                                              and Michael N. Feuer

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CITY OF LOS ANGELES AND MICHAEL N. FEUER'S MOTION TO DISMISS FAC PURSUANT
TO FRCP 12(b)(1) AND 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES

# **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 16

I.      INTRODUCTION ......................................................................................... 16

II.     FACTUAL BACKGROUND ....................................................................... 16

    A.  Plaintiff Seeks To Represent A State Court Settlement Class In Federal Court To Recover The "Full Value" Of Those Claims ............. 16

    B.  The *Jones* Action, Settlement, And Final Judgment .............................. 18

    C.  The State Court Is Already Evaluating Whether Any Purported Conflict Of Interest Adversely Impacted The Settlement ...................... 19

III.    REPLETE WITH VAGUE, EQUIVOCAL ALLEGATIONS, THE FAC DOES NOT STATE A PLAUSIBLE CLAIM ............................................... 21

    A.  The FAC's Conclusory "Information and Belief" Allegations Against The City Are Not Plausible ........................................................ 22

    B.  The FAC's Vague And Equivocal "Information and Belief" Allegations Against Mr. Feuer Are Not Plausible ................................. 25

IV.     THE STATE COURT'S FINAL JUDGMENT BARS THE CLAIMS ........... 27

    A.  Res Judicata Bars The Claims ................................................................ 27

    B.  The *Rooker-Feldman* Doctrine Bars The Claims ................................. 30

V.      THE *NOERR-PENNINGTON* DOCTRINE BARS THE CLAIMS ................. 31

VI.     PLAINTIFF LACKS ARTICLE III STANDING ......................................... 32

VII.    THE RICO CLAIM AGAINST THE CITY AND MR. FEUER MUST BE DISMISSED ........................................................................................... 33

    A.  The City And Mr. Feuer, In His Official Capacity, Are Not Subject To RICO Liability ...................................................................... 33

    B.  The RICO Claim Against Mr. Feuer, In His Individual Capacity, Must Be Dismissed ................................................................................ 34

        1.  The FAC Fatally Fails To Allege That Mr. Feuer Acted Outside Of, Or Independent Of, His Official Duties ................... 34

        2.  In Any Event, Plaintiff Fails To Adequately Plead The Required Elements Of A RICO Claim Against Mr. Feuer ........... 35

            a.  Mail And Wire Fraud Have Not Been Adequately Pled ................................................................................... 36

CITY OF LOS ANGELES AND MICHAEL N. FEUER'S MOTION TO DISMISS FAC PURSUANT
TO FRCP 12(b)(1) AND 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES

1

## TABLE OF CONTENTS
### (Continued)

2                                                                      **Page**

3          b.    Plaintiff Has Not Adequately Alleged A Pattern Of
                 Racketeering ................................................ 38

4          c.    There Is No RICO Enterprise ............................... 39

5
   VIII. THE SECTION 1983 CLAIM AGAINST THE CITY/FEUER
6        DEFENDANTS MUST BE DISMISSED ...................... 40

7     A.   The Section 1983 Claim Is Premature .................... 40

8     B.   In Any Event, The Claim Against The City And Mr. Feuer, In His
              Official Capacity, Must Be Dismissed.................... 41

9
      C.   The Section 1983 Claim Against Mr. Feuer, In His Individual
10             Capacity, Must Be Dismissed ........................... 43

11 IX.   CONCLUSION ................................................ 45

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CITY OF LOS ANGELES AND MICHAEL N. FEUER'S MOTION TO DISMISS FAC PURSUANT
TO FRCP 12(b)(1) AND 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES

1

<u>**TABLE OF AUTHORITIES**</u>

2

**Page(s)**

3

4

<u>**FEDERAL CASES**</u>

5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................21, 26, 44

6

7

*Bell Atlantic Corporation v. Twombly*,
550 U.S. 544 (2007) ..........................................................21, 25, 26, 44

8

9

*Bellinghausen v. Tractor Supply Co.*,
306 F.R.D. 245 (N.D. Cal. 2015) ...................................................... 24

10

11

*Bianchi v. Rylaarsdam*,
334 F.3d 895 (9th Cir. 2003), *cert. denied*, 540 U.S. 1213 (2004) ...................... 30

12

13

*Chan v. City of Los Angeles*,
31 Fed. Appx. 568 (9th Cir. 2002) ........................................................ 34

14

15

*Christie v. Iopa*,
176 F.3d 1231 (9th Cir. 1999) .............................................................. 42

16

17

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) ........................................................................... 33

18

*City of Newport v. Fact Concerts, Inc.*,
453 U.S. 247 (1981) ......................................................................... 43

19

20

*Clark v. Yosemite Community College District*,
785 F.2d 781 (9th Cir. 1986) .............................................................. 28

21

22

*Collins v. City of San Diego*,
841 F.2d 337 (9th Cir. 1988) .............................................................. 42

23

24

*Columbia Pictures Indus., Inc. v. Prof'l Real Estate Investors, Inc.*,
944 F.2d 1525 (9th Cir. 1991), *aff'd*, 508 U.S. 49 (1993) ...................... 31

25

26

*Cooper v. Ramos*,
704 F.3d 772 (9th Cir. 2012) .............................................................. 30

27

*Crawford v. Beard*,
No. 14-cv-5578, 2016 WL 2865891 (N.D. Cal. May 17, 2016) ............................ 43

28

1377564

-7-

Case No. 2:19-cv-06661-VAP (JCx)

CITY OF LOS ANGELES AND MICHAEL N. FEUER'S MOTION TO DISMISS FAC PURSUANT
TO FRCP 12(b)(1) AND 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES

1

**TABLE OF AUTHORITIES**
(Continued)

2

Page(s)

3

*Daniel v. City of Glendale*,
No. 14-cv-3864 (VAP), 2015 WL 5446924 (C.D. Cal. Mar. 19, 2015) ............... 42

4

5

*Delew v. Wagner*,
143 F.3d 1219 (9th Cir. 1988) ................................................................. 40

6

7

*Eclectic Properties East., LLC v. Marcus & Millichap Co.*,
751 F.3d 990 (9th Cir. 2014) ...........................................................21, 40

8

*Eclectic Properties East, LLC v. Marcus & Millichap Co.*,
No. 09-cv-511, 2011 WL 1375164 (N.D. Cal. Apr. 12, 2011) ............................ 37

9

10

*Edwards v. Marin Park, Inc.*,
356 F.3d 1058 (9th Cir. 2004) ............................................................... 36

11

12

*Eller v. EquiTrust Life Ins. Co.*,
778 F.3d 1089 (9th Cir. 2015) ............................................................... 37

13

14

*Empress LLC v. City & Cty. of San Francisco*,
419 F.3d 1052 (9th Cir. 2005) ............................................................... 32

15

16

*Estate of Duran v. Chavez*,
No. 14-cv-02048, 2015 WL 8011685 (E.D. Cal. Dec. 4, 2015) .......................... 43

17

18

*Forest Service Employees for Environmental Ethics v. U.S. Forest Service*,
338 F. Supp. 2d 1135 (D. Mont. 2004) ................................................... 33

19

20

*Freeman v. Lasky, Haas & Cohler*,
410 F.3d 1180 (9th Cir. 2005) ............................................................... 31

21

22

*Gillette v. Delmore*,
979 F.2d 1342 (9th Cir. 1992) ............................................................... 41

23

24

*Glass v. UBS Financial Services, Inc.*,
No. 06-cv-4068 (MMC), 2007 WL 221862 (N.D. Cal. Jan. 26, 2007),
*aff'd*, 331 Fed. Appx. 452 (9th Cir. 2009)............................................... 24

25

26

*Gomes v. City of Los Angeles*,
No. 18-cv-8245, 2018 WL 4945691 (C.D. Cal. Oct. 10, 2018)........................... 45

27

28

1377564

-8-

Case No. 2:19-cv-06661-VAP (JCx)

CITY OF LOS ANGELES AND MICHAEL N. FEUER'S MOTION TO DISMISS FAC PURSUANT
TO FRCP 12(b)(1) AND 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES

1

**TABLE OF AUTHORITIES**
(Continued)

2

Page(s)

3

*Graco, Inc. v. PMC Global, Inc.*,
No. 08-cv-1304 (FLW), 2009 WL 904010 (D.N.J. Mar. 31, 2009) ...................... 26

4

5

*Gregory v. Dillard's, Inc.*,
565 F.3d 464 (8th Cir. 2009) .................................................................. 26

6

7

*Greko v. Diesel U.S.A., Inc.*,
No. 10-CV-02576 NC, 2013 WL 1789602 (N.D. Cal. Apr. 26, 2013) ................. 24

8

9

*Grizzle v. County of San Diego*,
No. 17-cv-813, 2018 WL 3689153 (S.D. Cal. Aug. 3, 2018) ................................ 41

10

11

*Groh v. Ramirez*,
540 U.S. 551 (2004) ............................................................................. 44

12

13

*GSI Technology v. United Memories, Inc.*,
No. 13-01081-PSG, 2014 WL 1572358 (N.D. Cal. Apr. 18, 2014) ..................... 38

14

15

*GWG MCA Capital, Inc. v. Nulook Capital, LLC*,
No. 17-CV-1724, 2019 WL 1084777 (E.D.N.Y. Mar. 7, 2019) ........................... 36

16

17

*Hirsch v. City of New York*,
300 F. Supp. 3d 501 (S.D.N.Y. 2018) .................................................... 34

18

19

*Howard v. America Online Inc.*,
208 F.3d 741 (9th Cir. 2000), *cert. denied*, 53 U.S. 828 (2000) ..................... 38, 39

20

21

*Howard v. County of Riverside*,
No. EDCV 12-00700 VAP, 2013 WL 12138760
(C.D. Cal. Jan. 10, 2013) ................................................................... 26

22

23

*Hullings v. Johnson*,
No. 13-cv-2320, 2014 WL 2931348 (C.D. Cal. June 30, 2014) ........................... 40

24

25

*In re Century Aluminum Co. Securities Litigation*,
729 F.3d 1104 (9th Cir. 2013) .......................................................... 21, 24, 25

26

*In re Omnivision Technologies, Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................................. 24

27

28

<u>**TABLE OF AUTHORITIES**</u>
**(Continued)**

Page(s)

*In re Palmdale Hills Property, LLC*,
   654 F.3d 868 (9th Cir. 2011) ................................................................. 33

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,
   865 F. Supp. 2d 1002 (C.D. Cal. 2011) ................................................ 37

*Jarvis v. Regan*,
   833 F.2d 149 (9th Cir. 1987) ................................................................. 38

*Kamilewicz v. Bank of Boston Corp.*,
   92 F.3d 506 (7th Cir. 1996), *cert. denied*, 520 U.S. 1204 (1997) .......... 31

*Kentucky v. Graham*,
   473 U.S. 159 (1985) ...................................................................... 41, 43

*Kinney v. State Bar of California*,
   No. 14-cv-1591, 2014 WL 12689943 (C.D. Cal. May 6, 2014) ........... 41

*Kougasian v. TMSL, Inc.*,
   359 F.3d 1136 (9th Cir. 2004) ............................................................... 30

*Lancaster Community Hospital v. Antelope Valley Hospital District*,
   940 F.2d 397 (9th Cir. 1991) .......................................................... 34, 36

*Leadsinger, Inc. v. BMG Music Publishing*,
   512 F.3d 522 (9th Cir. 2008) ................................................................. 45

*Lewis v. City of Fresno*,
   No. CVF 08-1062 OWW, 2009 WL 2905738 (E.D. Cal. Sept. 4, 2009) ............. 44

*Manistee Town Center v. City of Glendale*,
   227 F.3d 1090 (9th Cir. 2000) ............................................................... 31

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
   519 F.3d 1025 (9th Cir. 2008) ............................................................... 26

*Medallion Television Enterprises, Inc. v. SelecTV of California, Inc.*,
   833 F.2d 1360 (9th Cir. 1987) ............................................................... 39

*Mir v. Little Co. of Mary Hosp.*,
   844 F.2d 646 (9th Cir. 1988) ................................................................. 17

## TABLE OF AUTHORITIES
### (Continued)

Page(s)

*Mitchell v. Dupnik*,
  75 F.3d 517 (9th Cir. 1996) .................................................................. 43

*Monell v. Dept. of Social Services of the City of New York*,
  436 U.S. 658 (1978) ............................................................................. 41

*Moore v. Kayport Package Express, Inc.*,
  885 F.2d 531 (9th Cir. 1989) ............................................................... 36

*Neubronner v. Milken*,
  6 F.3d 666 (9th Cir. 1993) ............................................................ 22, 23

*Nichols v. Brown*,
  945 F. Supp. 2d 1079 (C.D. Cal. 2013) ............................................... 44

*Ochoa v. Housing Authority of the City of Los Angeles*,
  47 Fed. Appx. 484 (9th Cir. 2002) ...................................................... 33

*Oregon Natural Resources Council v. Mohla*,
  944 F.2d 531 (9th Cir. 1991) ............................................................... 32

*Pearson v. Callahan*,
  555 U.S. 223 (2009) ............................................................................. 44

*Pedrina v. Chun*,
  97 F.3d 1296 (9th Cir. 1996), *cert. denied*, 520 U.S. 1268 (1997) ................. 29, 34

*Pembaur v. City of Cincinnati*,
  475 U.S. 469 (1986) ............................................................................. 42

*Pennsylvania Employees Benefit Trust Fund v. AstraZeneca Pharm. LP*,
  No. 6:09-cv-5003-Orl-22DAB, 2009 WL 2231686 (M.D. Fla. July 20, 2009) ............................................................................................ 26

*Quan v. San Francisco Police Department*,
  No. C 10-01835 MEJ, 2012 WL 4477621 (N.D. Cal. Sept. 27, 2012) ........... 34, 35

*Rangel v PLS Check Cashers of California, Inc.*,
  899 F.3d 1106 (9th Cir. 2018) ............................................................. 29

CITY OF LOS ANGELES AND MICHAEL N. FEUER'S MOTION TO DISMISS FAC PURSUANT
TO FRCP 12(b)(1) AND 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES

1

**TABLE OF AUTHORITIES**
(Continued)

2

Page(s)

3   *Religious Technology Center v. Wollersheim,*

4       971 F.2d 364 (9th Cir. 1992) ................................................................. 39

5   *Richard v. Hoechst Celanese Chem. Grp., Inc.,*
        355 F.3d 345 (5th Cir. 2003), *cert. denied*, 543 U.S. 917 (2004) ......................... 30
6

7   *River City Markets, Inc. v. Fleming Foods West, Inc.,*
        960 F.2d 1458 (9th Cir. 1992) ................................................................. 40

8   *San Diego Police Officers' Association v. San Diego City Employees'*
9       *Retirement System,*
        568 F.3d 725 (9th Cir. 2009) ............................................................. 27, 28
10

11  *Sanders v. Lockyer,*
        365 F. Supp. 2d 1093 (N.D. Cal. 2005), *aff'd*, 504 F.3d 903 (9th Cir.
12      2007), *cert. denied*, 553 U.S. 1031 (2008) ............................................... 31

13
    *Schiff v. City and County of San Francisco,*
14      816 F. Supp. 2d 798 (N.D. Cal. 2011) ....................................................... 42

15  *Schreiber Distributing Co. v. Serv-Well Furniture Company, Inc.,*
16      806 F.2d 1393 (9th Cir. 1986) ................................................................. 36

17  *Scott v. Kuhlmann,*
18      746 F.2d 1377 (9th Cir. 1984) ................................................................. 29

19  *SeaTrepid Int'l, LLC v. MK Salvage Venture, LLC,*
20      No. 13-51, 2013 WL 968098 (E.D. La. Mar. 11, 2013) ......................................... 27

21  *Simms v. City and County of Honolulu,*
        No. 06-cv-669, 2007 WL 9711133 (D. Haw. Dec. 20, 2007) ..................................... 43
22

23  *Snider v. City of Excelsior Springs, Mo.,*
        154 F.3d 809 (8th Cir. 1998) ................................................................. 30
24

25  *Sosa v. DIRECTV, Inc.,*
        437 F.3d 923 (9th Cir. 2006) ............................................................. 31, 32
26

27  *Spokeo, Inc. v. Robins,*
        578 U.S. ___, 136 S. Ct. 1540 (2016) .................................................... 32, 33

28

1

**TABLE OF AUTHORITIES**
(Continued)

2

Page(s)

3

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) .................................................................. 37

4

5

*Tate v. Board of Prison Terms*,
    No. CV 06-04505-AHM (VBK), 2010 WL 1980141 (C.D. Cal. April 9,

6

    2010) .................................................................................................. 34

7

*Tatung Co., Ltd. v. Shu Tze Hsu*,
    217 F. Supp. 3d 1138 (C.D. Cal. 2016) .................................................. 38

8

9

*United Brotherhood of Carpenters & Joiners of America v. Building and
    Construction Trades Department, AFL-CIO*,

10

    770 F.3d 834 (9th Cir. 2014) .................................................................. 36

11

12

*United Food & Commercial Workers Unions & Employers Midwest Health
    Benefits Fund v. Walgreen Co.*,

13

    719 F.3d 849 (7th Cir. 2013) .................................................................. 40

14

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ................................................................ 36

15

16

*Warth v. Seldin*,
    422 U.S. 490 (1975) .............................................................................. 32

17

18

*Wilkie v. Robbins*,
    551 U.S. 537 (2007) .............................................................................. 34

19

20

**STATE CASES**

21

*Boeken v. Philip Morris USA, Inc.*,
    48 Cal. 4th 788 (2010) ....................................................................... 27, 28

22

23

*Citizens for Open Access to Sand & Tide, Inc. v. Seadrift Ass'n*,
    60 Cal. App. 4th 1053 (1998) ................................................................. 29

24

25

*City and County of San Francisco v. Patterson*,
    202 Cal. App. 3d 95 (1988) .................................................................... 42

26

27

*Edwards v. Heartland Payment Sys., Inc.*,
    29 Cal. App. 5th 725 (2018) ................................................................... 23

28

CITY OF LOS ANGELES AND MICHAEL N. FEUER'S MOTION TO DISMISS FAC PURSUANT
TO FRCP 12(b)(1) AND 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES

**TABLE OF AUTHORITIES**
(Continued)

Page(s)

*Le Parc Community Association v. Workers' Comp. Appeals Board,*
110 Cal. App. 4th 1161 (2003) ............................................................................. 27

*Lerner v. Los Angeles City Board of Education,*
59 Cal. 2d 382 (1963) ......................................................................................... 29

*Rios v. Allstate Ins. Co.,*
68 Cal. App. 3d 811 (1977) ................................................................................. 28

*Villacres v. ABM Industries Inc.,*
189 Cal. App. 4th 562 (2010) ............................................................................. 29

**FEDERAL STATUTES**

18 U.S.C.
§ 1341 ................................................................................................................ 36
§ 1343 ................................................................................................................ 36
§ 1961(5) ........................................................................................................... 38
§ 1962 ....................................... 16, 17, 28, 30, 32, 33, 34, 35, 36, 37, 38, 39, 40

28 U.S.C.
§ 1738 ................................................................................................................ 27

42 U.S.C.
§ 1983 ............................................... 16, 28, 30, 31, 32, 33, 40, 41, 42, 43, 44

**RULES**

Federal Rules of Civil Procedure
Rule 8 ........................................................................................................... 21, 37
Rule 8(a)(2) ........................................................................................................ 21
Rule 9 ................................................................................................................ 37
Rule 9(b) ....................................................................................................... 36, 37
Rule 11 ................................................................................................................ 44
Rule 12(b)(6) ................................................................................................. 17, 34

**CONSTITUTIONAL PROVISIONS**

U.S. Const. Article III ............................................................................... 32, 33, 36

1

**TABLE OF AUTHORITIES**
**(Continued)**

2

**Page(s)**

3

**OTHER AUTHORITIES**

4

Los Angeles Charter and Administrative Code

5    § 271 .................................................................................................. 43

   § 272 .................................................................................................. 43

6    § 273 .................................................................................................. 26

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1377564

-15-

Case No. 2:19-cv-06661-VAP (JCx)

CITY OF LOS ANGELES AND MICHAEL N. FEUER'S MOTION TO DISMISS FAC PURSUANT
TO FRCP 12(b)(1) AND 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This action, riddled with insuperable obstacles to federal court jurisdiction that Plaintiff makes no attempt to navigate, should be dismissed with prejudice for several separate and independent reasons.

For starters, Plaintiff -- a member of a state court consumer class from which he did not opt out and he did receive settlement compensation -- seeks by this lawsuit to challenge the judgment approving the settlement. This he cannot do. The State Court released, through its judgment, the very claims Plaintiff now purports to bring, and also expressly retained jurisdiction over the administration of the settlement (which -- with the City's cooperation -- it has been exercising).[1] These incontestable facts compel the dismissal of the FAC[2] under res judicata principles and related doctrines prohibiting collateral attacks on final judgments.

Equally fatal are Plaintiff's attempts to manufacture RICO and federal due process claims against the City/Feuer Defendants. These claims must be dismissed for failure to state a claim under RICO and Section 1983.

For these reasons, as set forth more fully below, Plaintiff's FAC must be dismissed, and with prejudice, given the incurability of its defects.

## II.   FACTUAL BACKGROUND

### A.   Plaintiff Seeks To Represent A State Court Settlement Class In Federal Court To Recover The "Full Value" Of Those Claims

Plaintiff defines his proposed class as a mirror image of an action that was filed and settled in the State Court in 2017: "All persons who were members of the Settlement Class in Jones v. City of Los Angeles, Los Angeles County Superior Court

---

[1] Defined terms in the Notice of Motion shall have the same meaning in the Memorandum of Points and Authorities.

[2] On September 26, 2019, the City/Feuer Defendants filed a motion to dismiss Plaintiff's initial complaint. Doc. No. 28. Plaintiff filed the FAC on October 17, 2019 (Doc. No. 48), thereby mooting the motion. Doc. No. 55.

1   Case No. BC577267." FAC ¶ 108 ("*Jones*" or the "*Jones* Action"). Copying the

2   *Jones* complaint allegations into his FAC (*cf.* FAC ¶¶ 25-66 with City of Los Angeles

3   and Michael N. Feuer's Request For Judicial Notice And For Incorporation By

4   Reference ("RJN") Ex. 12 (¶¶ 17-48), Plaintiff alleges he and the class were

5   overcharged for water and power by LADWP's newly-implemented billing system.[3]

6       Plaintiff theorizes that the settlement and the related State Court judgment

7   approving the settlement in *Jones* were "collusive," and he seeks to recover the "full

8   value" of what he and the class sought in the *Jones* Action. FAC ¶¶ 124, 126. Plaintiff

9   admits that he did not "object or otherwise opt out of the settlement or take other

10  action," and that he "received a credit to his December 2017 bill as part of the Jones

11  *settlement.*" *Id.* ¶¶ 107, 336. Plaintiff does not allege that he personally received less

12  than the full amount of any overcharges.

13      Plaintiff nevertheless sues the City and three individual lawyers who were in the

14  City Attorney's office when *Jones w*as settled for allegedly running afoul of the RICO

15  laws and somehow violating his civil rights: City Attorney, Michael Feuer; Chief

16  Deputy City Attorney, James Clark; and former chief of the Civil Litigation Branch,

17  Thomas Peters (collectively, with the City, the "City Defendants"). He alleges that

18  they participated in a conspiracy with *Jones* class counsel to gain an unfair and

19  unethical advantage for the City in connection with the settlement of those actions.[4]

20

21

22

---

23   [3]  In ruling on a Rule 12(b)(6) motion, a court may "take judicial notice of matters of

24   public record outside the pleadings." *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988) (citations and quotation omitted).

25   [4]  Plaintiff also sues the law firms and lawyers who represented class representative,

26   Antwon Jones, and the *Jones* class (Jack Landskroner, the Landskroner Law Firm, Michael J. Libman, and the Law Offices of Michael J. Libman) (collectively, "Class Counsel Defendants") alleging they conspired with the City's former special counsel

27   (and also defendants), Paul Paradis and Paul Kiesel (together, "Former Special Counsel") and their respective law firms, to settle *Jones* to enrich themselves through

28   attorneys' fees.

**B.      The *Jones* Action, Settlement, And Final Judgment**

The *Jones* Action was the fifth of six class actions filed between February 13, 2014 and September 10, 2015 in the State Court against the City and its Department of Water and Power ("LADWP") (collectively, the "State Court Actions").  RJN Exs. 1-4, 7, 14.  Generally, the State Court Actions alleged that consumers were harmed as a result of overcharges caused by the billing system that PricewaterhouseCoopers ("PwC") implemented in September 2013.  FAC ¶ 74.[5]  The State Court Actions were related and assigned to Judge Elihu M. Berle.  RJN Exs. 5, 8, 10 (at 24:10-12), 11, 15, 16.  From the outset, LADWP expressed its willingness to reimburse its customers for the overcharges (FAC ¶ 74) and settle the State Court Actions.

In August 2015, the City reached a settlement in the *Jones* Action, resolving all but two of the State Court Actions (the "*Jones* Settlement").  RJN Ex. 13.  Following revisions to the initial settlement agreement, incorporating comments from counsel for the other State Court Actions who had initially objected to the *Jones* Settlement, and after several hearings, the State Court granted preliminary approval of the revised settlement agreement (the "Settlement Agreement") on December 30, 2016, appointing Jack Landskroner as class counsel and Mr. Jones as one of two class representatives. RJN Exs. 33 (at 2:10-12, 3:25-28), 37 (at 4:5-16).

In July 2017, the State Court issued an "Order Granting Final Approval Of Class Action Settlement And Final Judgment" ("Final Judgment").  RJN Exs. 18, 32; FAC ¶ 98.  Although the City never disputed its obligation to fully reimburse ratepayers for any overcharge no matter how small, the Settlement Agreement and related Final Judgment obligated the City to reimburse 100% of all overcharges to the ratepayer class members, and imposed safeguards to prevent a recurrence of the billing

---

[5]  On March 6, 2015, the City, by and through LADWP, sued PwC in the State Court (before Judge Berle) and alleged, *inter alia*, that PwC fraudulently induced the City to select PwC to implement the new billing system.  RJN Ex. 6; FAC ¶ 2.  The City recently voluntarily dismissed that action.

1377564

-18-

Case No. 2:19-cv-06661-VAP (JCx)

CITY OF LOS ANGELES AND MICHAEL N. FEUER'S MOTION TO DISMISS FAC PURSUANT
TO FRCP 12(b)(1) AND 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES

1  problems.  RJN Exs. 18, 32 (at 17:11-15, 18:27-19:3, 20:13-16).  As the State Court

2  acknowledged at the final fairness hearing, "[t]he settlement in this case goes further

3  than most settlements in providing complete monetary recovery for the losses of

4  overbilling, misbilling and errors in billing."  RJN Ex. 17 (at 35:5-8).

5       Independent levels of review were also ordered to ensure that the City performed

6  its settlement obligations.  RJN Ex. 17 (at 5:20-6:2), 18.  For example, LADWP

7  expressly agreed that:  "If the CC&B System Monitoring Expert identifies customers

8  who have not been identified as belonging to a subclass but who have received bills

9  with billing errors, such customers will be entitled to 100% credit (in the case of

10 current customers) or refund (in the case of former customers) of the overcharge or

11 damage caused by the LADWP."  RJN Ex. 32 (at 16:25-28).[6]

12      In consideration for receiving a full recovery, the settlement class (the "*Jones*

13 Class") released LADWP and the City, and its divisions, departments and bureaus,

14 from "all claims, damages, suits, demands, liabilities, judgments, losses and causes of

15 action . . . relating to or arising from the billing issues."  RJN Exs. 18 (at 4:1-7:16), 32

16 (at 11:15-17, 47:12-16).  Most importantly, the Final Judgment also "permanently

17 enjoined, and restrained" the *Jones* Class, including Plaintiff, from "commencing or

18 prosecuting any action, suit, proceeding, claim, or cause of action in any jurisdiction or

19 court against Defendant and/or the Released Parties based upon, relating to, or arising

20 out of, any of the Released Claims [defined as "claims for economic and non-economic

21 damages that were proximately caused by the LADWP having overbilled its customers

22 . . . .")."  RJN Exs. 18 (at 6:28-7:3), 32 (at 12:15-16).

23      **C.     The State Court Is Already Evaluating Whether Any Purported**

24          **Conflict Of Interest Adversely Impacted The Settlement**

25      For at least the past eleven months, in connection with its jurisdiction over

---

26 [6]  The Final Judgment awarded $19 million in attorneys' fees, which did not come from

27 a common fund or otherwise reduce or affect class members' recoveries.  RJN Ex. 18
   (at 8:1-14); FAC ¶ 98.  The City recently filed a motion seeking disgorgement of the

28 attorneys' fees paid to Class Counsel Defendants.  RJN Ex. 35.

implementation of the *Jones* Settlement (RJN Ex. 18 (at 9:12-17)), the State Court has been actively evaluating the nature and breadth of Mr. Landskroner's and Former Special Counsel's relationships, and the impact, if any, of any conflict of interest on the *Jones* Settlement and Final Judgment. *See, e.g.*, RJN Ex. 19 (12/12/2018 Transcript ("Tr.") at 9:25-10:1, 25:27-26:7, 28:25-29:11, 41:24-43:10); FAC ¶ 105. The State Court communicated its concerns to the City Attorney's Office, thereby ensuring it too took an active role in evaluating the issues. At a January 23, 2019 hearing, the State Court directed Mr. Kiesel to bring Former Special Counsel's possible conflict directly to Mr. Feuer's attention. RJN Ex. 20 (1/23/2019 Tr. at 25:3-19, 27:22-26).[7]

Following required briefing by all parties in the related actions regarding conflicts of interest, the attorney-client and work-product privileges, and the "fraud" exception to those privileges, at a March 4, 2019 hearing, the State Court ordered the depositions of Mr. Landskroner and Mr. Paradis after Mr. Landskroner invoked the Fifth Amendment in response to a question from the State Court about whether undisclosed fee sharing had occurred between Jones' counsel, Mr. Landskroner, and the City's former special counsel, Mr. Paradis. RJN Ex. 21 (3/4/2019 Tr. at 66:18-67:25).[8] To ensure the *Jones* Class is protected and to assist in evaluating the issues raised by the alleged conflicts, the State Court, with the City's cooperation, selected Brian S. Kabateck as new Class Counsel (on April 17, 2019 (RJN Exs. 28-29)) and Edward M. Robbins, Jr. as the Special Master (on June 17, 2019 (RJN Ex. 30)).

The State Court ordered Mr. Kabateck to "focus on the class, that is, to protect the class and its rights which may include an investigation as to how the settlement was

---

[7] The City Attorney's Office commissioned an ethics inquiry, which attorney Ellen Pansky conducted. Ms. Pansky's 150-page report concluded that the City Attorney's Office violated "no ethical duties in seeking to obtain the most favorable" terms to settle the class-action litigation over the LADWP billing issues. RJN Ex. 36 (at 148).

[8] Soon after that hearing, on March 8, 2019, Mr. Landskroner moved to withdraw as counsel for Mr. Jones and the *Jones* Class, citing ethical issues. RJN Exs. 24-26. Former Special Counsel filed notices of withdrawal as counsel for the City on March 6 and 7, 2019. RJN Exs. 22-23.

1  arrived at and an analysis as to whether the settlement of the class action was fair,

2  reasonable, and adequate under all the circumstances."  RJN Ex. 29 (5/7/2019 Order

3  ¶ 4); FAC ¶¶ 98, 105.  It ordered Mr. Robbins to assist the Court "in determining the

4  full extent of any violations surrounding" the *Jones* Settlement and to conduct an audit

5  of payments made to various individuals.  RJN Ex. 30 (at 2:3, 2:16-5:7).  The State

6  Court also ordered Mr. Landskroner to provide an accounting of all sums received by

7  himself, his firm, and all counsel and parties in connection with *Jones*.  RJN Ex. 27

8  (4/10/2019 Tr. at 8:17-9:8).

9  **III.    REPLETE WITH VAGUE, EQUIVOCAL ALLEGATIONS, THE FAC**

10        **DOES NOT STATE A PLAUSIBLE CLAIM**

11        Federal Rule of Civil Procedure 8 "requires 'more than labels and conclusions'"

12  and that "plaintiffs must include sufficient 'factual enhancement' to cross 'the line

13  between possibility and plausibility.'"  *Eclectic Props. E., LLC v. Marcus & Millichap*

14  *Co.*, 751 F.3d 990, 995 (9th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

15  544, 557 (2007)); Fed. R. Civ. P. 8(a)(2).  "A claim has facial plausibility when the

16  plaintiff pleads factual content that allows the court to draw the reasonable inference

17  that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S.

18  662, 678 (2009).

19            "When faced with two possible explanations, only one of which

20            can be true and only one of which results in liability, plaintiffs

21            cannot offer allegations that are 'merely consistent with' their

22            favored explanation but are also consistent with the alternative

23            explanation.  Something more is needed, such as facts tending to

24            exclude the possibility that the alternative explanation is true, in

25            order to render plaintiffs' allegations plausible within the

26            meaning of *Iqbal* and *Twombly*."

27  *In re Century Aluminum Co. Secs. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013) (internal

28  citations omitted).

**A.**     **The FAC's Conclusory "Information and Belief" Allegations Against The City Are Not Plausible**

Plaintiff concludes, "on information and belief," that City Attorneys James Clark and Thomas Peters "supervised," "directed," and "ratified" "the decision to file and settle *Jones* as a collusive class action." FAC ¶ 67. "[A] plaintiff who makes allegations on information and belief must state the factual basis for the belief." *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993). Nothing Plaintiff pleads leads to his proposed conclusion.

Several of the purportedly supporting allegations merely relate to the City's discussion about a possible ratepayer action against ***PwC*** -- not an action against the City itself. Plaintiff alleges: (a) Mr. Peters "came up with the idea" of drafting a ratepayer case ***against PwC*** in late 2014 or early 2015 (FAC ¶ 100); (b) Mr. Clark "participated in meetings" where a draft *Jones v. **PwC*** complaint was discussed (*id.*); (c) the City's outside counsel (Liner LLP) wrote a memorandum advising against Former Special Counsel's simultaneous representation of LADWP and the representation of a LADWP ratepayer ***against PwC***, noting it would present a potential conflict of interest (*id.* ¶ 72); and (d) Mr. Clark "and/or" Mr. Peters decided, after reading that memo, that Former Special Counsel could not simultaneously represent the City and a ratepayer against ***PwC***; no such lawsuit was filed (*id.* ¶ 73). Instead, the City brought its own suit against PwC. *Id.* ¶¶ 87, 104; RJN Ex. 6. At best, these allegations support Plaintiff's contention that Messrs. Clark and/or Peters should have recognized the name "Jones" on the draft PwC pleading and questioned whether Former Special Counsel had a conflict of interest. Yet, Plaintiff only alleges that Mr. Clark knew that Mr. Paradis represented Mr. Jones at ***some*** point in time (*see* FAC ¶ 71). It would have been reasonable for Mr. Clark to conclude that there was no overlap in any such representation because, in their contract with the City, Former Special Counsel warranted that they did not have a conflict of interest and promised to disclose any potential conflict of interest should one arise. RJN Ex. 9 (at 14).

1    Many of Plaintiff's alleged facts are innocuous and inconsequential acts that do
2    not support his conclusions:  (a) Mr. Clark was "aware" that at some point in time
3    Mr. Paradis provided Mr. Landskroner with copies of the publicly-filed and available
4    complaints against the City (FAC ¶ 78); (b) Mr. Clark properly believed that, because
5    Mr. Paradis could not represent Mr. Jones in an action against the City without creating
6    a conflict of interest, Mr. Paradis referred Mr. Jones to Mr. Landskroner for potential
7    representation (*id.*); and (c) Mr. Clark thereafter concluded Mr. Landskroner was more
8    "reasonable" to "deal with" than the other plaintiffs' counsel for purposes of discussing
9    settlement (*id.* ¶ 100).

10    Plaintiff's partial quote (peppered with ellipses) from Mr. Kiesel's deposition
11    testimony does not support Plaintiff's theoretical supposition that the City's attorneys
12    instructed a plaintiff's lawyer to file a suit against their own client (the City) because
13    they wanted one comprehensive complaint that would resolve all of the billing issues
14    alleged in all of the various outstanding complaints.  *See id.* ¶ 76.  Mr. Kiesel testified
15    that someone from the City asked him if Mr. Jones would be able to be a plaintiff in a
16    suit against the City.  Mr. Kiesel was unable to identify who he allegedly spoke with
17    about Mr. Jones [although he admitted it was not Mr. Feuer (RJN Ex. 34 (Kiesel Dep.
18    Tr. Vol. III at 39:18-40:2))]; and the preface Mr. Kiesel employed in the quoted
19    testimony -- "[t]o the best of [his] recollection" -- reveals his memory on the subject is
20    unclear (*see* FAC ¶ 75).  In any event, Plaintiff's conclusory allegation that the
21    unknown person's purpose in asking about Mr. Jones was so that the City could
22    resolve billing issues with the class (*id.* ¶¶ 75-76) is patently implausible.  A new
23    lawsuit would have been completely unnecessary to accomplish the stated goal -- any
24    of the plaintiffs' lawyers with complaints pending could have amended their complaint
25    to encompass the claims made by other plaintiffs in separately filed complaints in
26    connection with a comprehensive settlement.  This is frequently done.  *See, e.g.*,
27    *Edwards v. Heartland Payment Sys., Inc.*, 29 Cal. App. 5th 725, 727-28 (2018)
28    (employee, who filed putative class action lawsuit against employer for wage and hour

1  violations, amended complaint to encompass claims asserted by other employees in

2  separate action in connection with proposed class action settlement).

3       Nor does Mr. Kiesel's testimony plausibly support Plaintiff's conclusion that the

4  City "instructed" Former Special Counsel to have a new complaint against the City

5  filed for the purpose of using unethical means to obtain a more favorable settlement

6  than it otherwise would have been able to do (*see, e.g.*, FAC ¶¶ 76, 340).  Plaintiff fails

7  to articulate, as he is required to do to support such an allegation, what advantage the

8  City was supposedly able to leverage in connection with the *Jones* Settlement, which

9  requires the City to pay class members a 100% recovery and prevented the City from

10  objecting to fee applications up to $19 million.  A settlement representing a much

11  smaller percentage of the gross recovery would likely have been approved by the State

12  Court.  Indeed, settlements have been approved by courts as fair and reasonable where

13  the average settlement payment amounted to rates between 3% to 35% of the gross

14  settlement value.  *See, e.g.*, *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 256

15  (N.D. Cal. 2015) (approving settlement where the "common fund represent[ed]

16  between 27 percent and 11 percent of the total potential recovery").[9]

17       Plaintiff -- "faced with two possible explanations" -- fails to allege any facts

18  tending to "exclude" the logical conclusion that, because the settlement did not provide

19  the City with any advantage, it did not participate in the alleged collusion.  *See In re*

20  *Century Aluminum*, 729 F.3d at 1108.  Instead, Plaintiff speculates that, despite the

21  language in the Settlement Agreement and Final Judgment, and the requirements for

22  various levels of independent supervision of the settlement process, "any argument that

23

24  [9]  *See, e.g.*, *Greko v. Diesel U.S.A., Inc.*, No. 10-CV-02576 NC, 2013 WL 1789602, at
    *5 (N.D. Cal. Apr. 26, 2013) (approving settlement in which the average settlement

25  payment amounted to under 3% of the gross settlement value); *In re Omnivision Techs.,*
    *Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (approving settlement in which class

26  received payments in excess of 9% of potential damages); *Glass v. UBS Fin. Servs.,*
    *Inc.*, No. 06-cv-4068 (MMC), 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007), *aff'd*,

27  331 Fed. Appx. 452 (9th Cir. 2009) (approving settlement in which settlement amount

28  constituted approximately 25% to 35% of potential damages).

Jones class members in fact received full refunds is ludicrous." FAC ¶ 105. Plaintiff claims that it would be "irrational" for the City to conspire to "perpetrate this complex scheme," if in fact the settlement requires a 100% recovery. *Id.* He therefore pleads, without the slightest factual support, that the *Jones* Class did not obtain full recovery. This Court should not accept as true Plaintiff's unreasonable inferences and conclusions miscast as factual allegations. *See Twombly*, 550 U.S. at 555-56.

## B.    The FAC's Vague And Equivocal "Information and Belief" Allegations Against Mr. Feuer Are Not Plausible

Plaintiff's allegations against Mr. Feuer are primarily contained in paragraph 102 of the FAC: "*[O]n information and belief*, Feuer, as the individual who Clark directly reported to, was aware of and ratified decisions made by Special Counsel." FAC ¶ 102 (emphasis added.) Plaintiff does not bother to identify what alleged "decisions" Mr. Feuer was allegedly aware of, let alone any he supposedly "ratified." Plaintiff also accuses Mr. Feuer of knowing about "improprieties," without providing any factual averment for such supposed knowledge (there was none). *Id.* Nor does Plaintiff specify those supposed improprieties. *Id.* Assuming Plaintiff meant to allege that Mr. Feuer was aware of, and ratified, Former Special Counsel's decision to file and settle *Jones* as a collusive class action, the supposed "facts" he supplies (alleged on information and belief) are several steps attenuated from plausibly leading to any such inference.

Plaintiff further speculates that, because "Clark has testified that he ***would have*** shown Feuer the Jones v. PwC draft complaint," Mr. Feuer "***would have*** known that Special Counsel were listed on the Jones v. PwC draft complaint as counsel for Jones." *Id.* (emphasis added). A "draft" complaint is not evidence of representation. Nor is a draft complaint against an entity (PwC) that was also adverse to the City, probative of a conflict of interest involving the City's Former Special Counsel. There are no allegations to support an inference -- even an implausible one -- that Mr. Feuer had reason to believe that Former Special Counsel orchestrated the filing and settling of the

*Jones* Action against the City itself in order to somehow benefit the City.

The hopelessly vague allegation that Mr. Feuer "supported" the settlement does not establish that he ratified unspecified misconduct, let alone that he, as an attorney for the City, had authority to "ratify" the conduct. Plaintiff does not allege, nor could he, that Mr. Feuer had the authority to agree to the *Jones* Settlement on behalf of LADWP. To the contrary, Mr. Feuer did not have such authority pursuant to the Los Angeles Charter and Administrative Code. RJN Ex. 31 (§ 273).[10]

Plaintiff's allegation "on information and belief" that "Feuer, Peters ***and/or*** Clark" instructed Mr. Paradis to have a new lawsuit filed and suggested the complaint "use" Mr. Jones as the plaintiff (FAC ¶¶ 75-76) reveals that Plaintiff is merely guessing that one of these individuals might have provided such direction. The *Twombly/Iqbal* standard is not satisfied by equivocal allegations, including those that use the phrase "and/or," which make a defendant's liability only one of several possibilities. *See, e.g.*, *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 n.9 (8th Cir. 2009) ("Because this section refers to all plaintiffs and uses the 'and/or' formulation, it does not connect any particular plaintiff to any particular allegation."); *Graco, Inc. v. PMC Global, Inc.*, No. 08-cv-1304 (FLW), 2009 WL 904010, at *29 n.25 (D.N.J. Mar. 31, 2009) (using "and/or" in list of possible defendants was "too vague under *Twombly*" because the counterclaimants "fail[ed] to allege with specificity that any other conspirator was involved"); *Pa. Emps. Benefit Trust Fund v. AstraZeneca Pharm. LP*, No. 6:09-cv-5003-Orl-22DAB, 2009 WL 2231686, at *3 (M.D. Fla. July 20, 2009) (dismissing

---

[10] Plaintiff's allegation that Mr. Feuer ratified Former Special Counsel's conduct because Mr. Feuer "was the one who ultimately approved of the hiring of Kiesel and Paradis" and had the "authority to fire them" is contradicted by the City Charter, which requires Board approval for this type of engagement. RJN Ex. 31 (§ 273). The Court "need not accept as true conclusory allegations that are contradicted by documents referred to in the complaint," *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008), or which are contradicted by judicially noticeable materials, *Howard v. Cty. of Riverside*, No. EDCV 12-00700 VAP, 2013 WL 12138760, at *5 (C.D. Cal. Jan. 10, 2013).

1  complaint that employed "and/or" pleading because they advanced only "equivocal

2  allegations suggest[ing] that [plaintiff] itself is unsure" of their veracity); *SeaTrepid*

3  *Int'l, LLC v. MK Salvage Venture, LLC*, No. 13-51, 2013 WL 968098, at *2 (E.D. La.

4  Mar. 11, 2013) (rejecting "equivocal language such as 'and/or' and qualifiers such as

5  'on information and belief'" in addressing a motion to remand).

6  **IV.   THE STATE COURT'S FINAL JUDGMENT BARS THE CLAIMS**

7       **A.   Res Judicata Bars The Claims**

8       Res judicata unequivocally bars Plaintiff from now seeking additional

9  compensation because, as a member of the *Jones* Class, Plaintiff has already received

10  full compensation for the harms alleged in the *Jones* Action.

11       Federal courts must give state proceedings "the same full faith and credit . . . as

12  they have by law or usage in the courts of such State . . . from which they are taken."

13  28 U.S.C. § 1738.  Hence, to determine whether res judicata applies, the Court should

14  follow California law governing claim preclusion.  *San Diego Police Officers' Ass'n v.*

15  *San Diego City Employees' Ret. Sys.*, 568 F.3d 725, 734 (9th Cir. 2009).  Under

16  California law, res judicata applies when three requirements have been met:  "(1) the

17  second lawsuit must involve the same 'cause of action' as the first one, (2) there must

18  have been a final judgment on the merits in the first lawsuit, and (3) the party to be

19  precluded must itself have been a party, or in privity with a party, to that first lawsuit."

20  *San Diego Police Officers' Ass'n*, 568 F.3d at 734.  *Accord Boeken v. Philip Morris*

21  *USA, Inc.*, 48 Cal. 4th 788, 797 (2010).  All three requirements are satisfied here.

22       *First*, Plaintiff's claims involve the same causes of action as the *Jones* Action.

23  "California law defines a 'cause of action' for purposes of the res judicata doctrine by

24  analyzing the primary right at stake."  *San Diego Police Officers' Ass'n*, 568 F.3d at

25  734 (citations omitted).  Under this theory, "the violation of a single primary right

26  gives rise to but a single cause of action."  *Id.* (quoting *Le Parc Cmty. Ass'n v.*

27  *Workers' Comp. Appeals Bd.*, 110 Cal. App. 4th 1161, 1170 (2003)).  For res judicata

28  analysis, therefore, "*[t]he cause of action is the right to obtain redress for a harm*

1    *suffered,* regardless of the specific remedy sought or the legal theory (common law or

2    statutory) advanced." *Boeken*, 48 Cal. 4th at 798 (emphasis added).  "Thus, under the

3    primary rights theory, ***the determinative factor is the harm suffered***.  When two

4    actions involving the same parties seek compensation for the same harm, they

5    generally involve the same primary right." *Id.* (emphasis added).  *Accord San Diego*

6    *Police Officers' Ass'n*, 568 F.3d at 734 ("What is critical to the analysis 'is the harm

7    suffered . . . .'") (citations omitted).

8         In the present case, Plaintiff's claims against the City/Feuer Defendants seek

9    compensation for the same harm alleged in the *Jones* Action:  that he and other

10   ratepayers allegedly "lost their ability to obtain a fair settlement from The City"

11   because of the Final Judgment.  FAC ¶ 2.[11]  As pled throughout the FAC, ***Plaintiff is***

12   ***seeking to recover additional compensation for the harms alleged in the Jones***

13   ***Action***.  Because Plaintiff is "seek[ing] compensation for the same harm" as in the

14   *Jones* Action, this lawsuit implicates the same primary right as the *Jones* Action, and is

15   barred by res judicata principles.  *Boeken*, 48 Cal. 4th at 798; *see Clark v. Yosemite*

16   *Cmty. Coll. Dist.*, 785 F.2d 781, 786-87 (9th Cir. 1986) (Section 1983 claim based on

17   conduct prior to state court judgment barred by res judicata).[12]

18        *Second*, as the FAC concedes, there was a final judgment on the merits in the

19

20   _____

     [11]  *See also* FAC ¶ 125 (Section 1983 claim:  Plaintiff and the putative class "lost their

21   ability to obtain fair and adequate compensation ***for their claims***") (emphasis added));
     *id.* ¶ 337 (RICO claim:  "Plaintiff and the Class incurred damages from the *Jones* action

22   settling for less than it would have in an arm's length settlement").

23   [12]  Even if Plaintiff could dodge the FAC's allegations and argue that he is not
     'technically' seeking to collaterally attack the *Jones* Settlement, this does not preclude

24   a res judicata bar.  *See Rios v. Allstate Ins. Co.*, 68 Cal. App. 3d 811, 818 (1977)
     (rejecting plaintiff's argument that "technically" his bad faith cause of action may not

25   be a collateral attack upon the arbitration award; it was "clear that plaintiff's bad faith
     cause of action arises out of Allstate's alleged subversion of the arbitration proceeding

26   and that if he should prevail on this new cause of action, he would be compensated for
     damages sustained by reason of Allstate's alleged oppressive conduct [during the

27   arbitral proceedings].  The course pursued by plaintiff thus collides with the policy
     underlying the doctrine of finality of judgments").

28

*Jones* Action.  FAC ¶ 98.  Plaintiff alleges that this federal action is necessary because "Jones is a settled class action" and, therefore, it is "impossible" for the *Jones* class (and the Bradshaw putative class) to obtain "meaningful relief."  *Id.* ¶ 106.  "It is well-settled that a class settlement resulting in final judgment is sufficient to meet the 'final and on the merits' element of res judicata, and 'is as conclusive a bar as a judgment rendered after trial.'"  *Rangel v. PLS Check Cashers of Cal., Inc.*, 899 F.3d 1106, 1110 (9th Cir. 2018) (quoting *Citizens for Open Access to Sand & Tide, Inc. v. Seadrift Ass'n*, 60 Cal. App. 4th 1053, 1065 (1998)).

*Third*, for res judicata purposes, Plaintiff was a party to the *Jones* Action, "was a member of the *Jones* class and did not opt out of the *Jones* class action settlement."  FAC ¶ 107.  Plaintiff is thus bound by the Final Judgment.  The Ninth Circuit applied California law to similar facts:  "[I]t is beyond dispute that [plaintiff] was party to [the previous class action] because she did not opt out.  She was therefore a party to the settlement and bound by the resulting judgment."  *Rangel*, 899 F.3d at 1111; *see also Villacres v. ABM Indus. Inc.*, 189 Cal. App. 4th 562, 569 (2010) (plaintiff who does not opt out of the class but instead reaps the benefits of a class action settlement is barred by res judicata from filing a second suit).  In paragraph 107 of the FAC, Plaintiff admits he received a credit on his utility bill as the *Jones* Settlement requires and tellingly does not aver that another dime is due.

The City was the defendant in the *Jones* Action, and is the defendant here.  As an official for the City, Mr. Feuer is in privity with the City.  "[A]gents of the same government are in privity with each other, since they represent not their own rights but the right of the government."  *Lerner v. Los Angeles City Bd. of Educ.*, 59 Cal. 2d 382, 398 (1963).  *Accord Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984).  Plaintiff cannot avoid the effect of res judicata by naming Mr. Feuer "in his individual and official capacity"; all of the allegations against him relate to actions taken only in his official capacity.  *See Pedrina v. Chun*, 97 F.3d 1296, 1302 (9th Cir. 1996), *cert. denied*, 520 U.S. 1268 (1997) ("The fact that certain of those defendants are being sued

-29-

1  in their individual capacities does not weigh against a finding of privity with the

2  corporation, as the allegations against them relate to actions taken in their official,

3  rather than their individual, capacities.").  Therefore, Plaintiff cannot relitigate his

4  overbilling claims; his claims against the City and Mr. Feuer under Section 1983 and

5  RICO fail.

6          **B.**     **The *Rooker-Feldman* Doctrine Bars The Claims**

7         The *Rooker-Feldman* doctrine "instructs that federal district courts are without

8  jurisdiction to hear direct appeals from the judgments of state courts."  *Cooper v.*

9  *Ramos*, 704 F.3d 772, 777 (9th Cir. 2012).  "If a plaintiff brings a de facto appeal from

10  a state court judgment, *Rooker-Feldman* requires that the district court dismiss the suit

11  for lack of subject matter jurisdiction."  *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1139

12  (9th Cir. 2004).  In determining if *Rooker-Feldman* applies, courts "pay close attention

13  to the ***relief*** sought by the federal-court plaintiff."  *Bianchi v. Rylaarsdam*, 334 F.3d

14  895, 900 (9th Cir. 2003), *cert. denied*, 540 U.S. 1213 (2004) (emphasis in original)

15  (citation omitted).  If the court cannot grant the relief sought without "undoing" the

16  decision of the state court, the *Rooker-Feldman* doctrine bars the claim.  *Id.*

17         Here, given Plaintiff's allegation that his injury resulted from the Final

18  Judgment, his lawsuit is a "de facto appeal" from the Final Judgment.  *See id.* at 900-

19  01.  But for defendants' conduct, according to Plaintiff, "any class action settlement

20  would have been entered into by adequate class counsel," and "***would have reflected***

21  ***the full value of the case***."  FAC ¶ 126 (emphasis added).  This Court cannot grant the

22  relief that Plaintiff seeks without "undoing" the release of claims in the Final Judgment.

23  To do so would constitute a de facto appeal of the state court judgment, which is barred

24  by the *Rooker-Feldman* doctrine.  *See, e.g.*, *Richard v. Hoechst Celanese Chem. Grp.,*

25  *Inc.*, 355 F.3d 345, 351-54 (5th Cir. 2003), *cert. denied*, 543 U.S. 917 (2004) (applying

26  *Rooker-Feldman* where state court's findings were "intertwin[ed]" with plaintiff's

27  Section 1983 claim); *Snider v. City of Excelsior Springs, Mo.*, 154 F.3d 809, 811-12

28  (8th Cir. 1998) (applying *Rooker-Feldman* where "the relief for which the plaintiffs

1377564                       -30-                 Case No. 2:19-cv-06661-VAP (JCx)
CITY OF LOS ANGELES AND MICHAEL N. FEUER'S MOTION TO DISMISS FAC PURSUANT
TO FRCP 12(b)(1) AND 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES

1  prayed would, if granted, effectively void the state court's judgment"); *Kamilewicz v.*

2  *Bank of Boston Corp.*, 92 F.3d 506, 511 (7th Cir. 1996), *cert. denied*, 520 U.S. 1204

3  (1997) ("The fact is that the proper court for an assertion of fraud in the procurement of

4  a judgment is the one which rendered the judgment)".)

5  **V.    THE *NOERR-PENNINGTON* DOCTRINE BARS THE CLAIMS**

6         "Under the *Noerr-Pennington* doctrine, those who petition any department of the

7  government for redress are generally immune from statutory liability for their

8  petitioning conduct." *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006).[13]

9  Petitioning conduct includes all "litigation activities which constitute

10  'communication[s] to the court,'" such as complaints, answers, and "'other assorted

11  documents and pleadings, in which plaintiffs or defendants make representations and

12  present arguments to support their request that the court do or not do something.'" *Id.*

13  at 933 (quoting *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1184 (9th Cir.

14  2005)).  The *Noerr-Pennington* doctrine protects "not only petitions sent directly to the

15  court in the course of litigation, but also 'conduct incidental to the prosecution of the

16  suit.'"  *Id.* at 934-35 (citing *Columbia Pictures Indus., Inc. v. Prof'l Real Estate

17  Investors, Inc.*, 944 F.2d 1525, 1528-29 (9th Cir. 1991), *aff'd*, 508 U.S. 49 (1993)).

18  "[C]ommunications between private parties are sufficiently within the protection of the

19  Petition Clause to trigger the *Noerr-Pennington* doctrine, so long as they are

20  sufficiently related to petitioning activity."  *Id.* at 935.  Thus, the doctrine bars claims

21  based upon decisions to accept or reject a settlement demand.  *Columbia Pictures

22  Indus., Inc.*, 944 F.2d at 1528 ("[a] decision to accept or reject an offer of settlement is

23  conduct incidental to the prosecution of the suit"); *Sanders v. Lockyer*, 365 F. Supp. 2d

24  1093, 1103 (N.D. Cal. 2005), *aff'd*, 504 F.3d 903 (9th Cir. 2007), *cert. denied*, 553 U.S.

25  1031 (2008) (*Noerr-Pennington* doctrine applied to a master settlement agreement).

26  ————————————

27  [13]  Government entities may invoke *Noerr-Pennington* immunity.  *Manistee Town Ctr. v. City of Glendale*, 227 F.3d 1090, 1092 (9th Cir. 2000) (applying *Noerr-Pennington*

28  doctrine to Section 1983 claim against governmental entity).

Plaintiff's RICO and Section 1983 claims[14] are based on the City's lawyers' petitioning conduct, *i.e.*, conduct in connection with the *Jones* Settlement approval proceedings brought in the State Court.[15]  The crux of Plaintiff's claims against the City/Feuer Defendants are the City's alleged "supervis[ion]" and "ratifi[cation]" of the alleged "*fil[ing] and settl[ing]*" of the *Jones* Action.  *See, e.g.*, FAC ¶ 67.  Plaintiff claims the City "did not fulfill its duty of candor to the Court by correcting the misimpression" Mr. Landskroner created in "*petitioning* the Court to approve the Jones settlement" that the *Jones* Settlement was "hard fought." *Id.* ¶¶ 90, 91 (emphasis added).  Plaintiff's alleged predicate RICO acts consist of "mailing and FedExing *litigation documents* to parties in the *Jones* lawsuit and related lawsuits, and mailing class notice to class members in *Jones*." *Id.* ¶ 338 (emphasis added).  He also alleges that "Defendants would have used the wires in the course of *filing* documents in the *Jones* action ...." *Id.* ¶ 339 (emphasis added).  Therefore, under the *Noerr-Pennington* doctrine, Plaintiff's claims against the City/Feuer Defendants based on their petitioning conduct are barred and should be dismissed.

## VI.  <u>PLAINTIFF LACKS ARTICLE III STANDING</u>

Plaintiff lacks Article III standing because he fails to "clearly" allege facts showing he has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. ___, 136 S. Ct. 1540, 1547 (2016).

First, Plaintiff does not allege *he* was personally injured. *Warth v. Seldin*, 422 U.S. 490, 502 (1975) (standing requires plaintiff to be injured, "not that injury has been suffered by other, unidentified members of the class").  To the contrary, the FAC

---

14  The *Noerr-Pennington* doctrine applies to RICO and Section 1983 claims. *See, e.g.*, *Sosa*, 437 F.3d at 942 (RICO); *Empress LLC v. City & Cty. of San Francisco*, 419 F.3d 1052, 1056-57 (9th Cir. 2005) (Section 1983).

15  A heightened pleading standard applies to claims involving *Noerr-Pennington* protection. *Or. Nat'l Res. Council v. Mohla*, 944 F.2d 531, 533 (9th Cir. 1991).

acknowledges Plaintiff received the credit on his LADWP bill he was entitled to "as part of the Jones settlement" and he "did not object or otherwise opt out of the settlement or take other action."  FAC ¶ 107.  Any claimed injury based on a "lack" of full recovery in a settlement, rather than a judgment awarding full recovery, would be speculative and insufficient to establish standing.  *Spokeo*, 136 S. Ct. at 1548 (alleged injury must be "concrete and particularized," "not conjectural or hypothetical").[16]

Second, the FAC fails to allege "that 'but for' [the City or Mr. Feuer's] action the alleged injury would not have not occurred," and consequently, does not allege an injury traceable to their conduct.  *Forest Serv. Emps. for Envtl. Ethics v. U.S. Forest Serv.*, 338 F. Supp. 2d 1135, 1143 (D. Mon. 2004) (collecting cases).  Several independent actors, including the State Court, assessed, impacted, or approved the relief in the *Jones* Settlement.  This destroys the causation necessary for Article III standing.

Finally, it is unlikely "a favorable decision" here can redress any claimed injury.  *In re Palmdale Hills Prop., LLC*, 654 F.3d 868, 873 (9th Cir. 2011).  Any decision by this Court would effectively usurp the Final Judgment and require re-evaluating "the full value" of *Jones* -- a case pending in another court where non-diverse parties are asserting only state law claims.  FAC ¶ 126.

## VII.   THE RICO CLAIM AGAINST THE CITY AND MR. FEUER MUST BE DISMISSED

### A.   The City And Mr. Feuer, In His Official Capacity, Are Not Subject To RICO Liability

"Neither a municipal corporation nor its employees in their official capacities are subject to civil RICO liability."  *Ochoa v. Hous. Auth.*, 47 Fed. Appx. 484, 486 (9th

---

[16]  Plaintiff also lacks standing to seek injunctive relief under Section 1983 (FAC ¶ 129) because he does not allege he will suffer the same injury in the future.  *See City of L.A. v. Lyons*, 461 U.S. 95, 104-05 (1983) (plaintiff lacked standing to seek injunctive relief because it was unlikely he would "suffer future injury from the use of the chokeholds by police officers").

Cir. 2002); *Pedrina*, 97 F.3d at 1300 (dismissing RICO claim against a city); *Chan v. City of Los Angeles*, 31 Fed. Appx. 568, at *1 (9th Cir. 2002) (affirming dismissal pursuant to FRCP 12(b)(6) of the City of Los Angeles and the City of Los Angeles Parking Violations Bureau because both are governmental entities); *Tate v. Bd. of Prison Terms*, No. CV 06-04505-AHM (VBK), 2010 WL 1980141, at *13 (C.D. Cal. April 9, 2010) ("[s]uing a government official in his official capacity is the equivalent of suing the government, and the government cannot form the requisite criminal intent to be sued under RICO").  In order to prevail on a RICO claim, a plaintiff must prove that defendants acted with a "specific intent to deceive," and "government entities are incapable of forming a malicious intent."  *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.,* 940 F.2d 397, 404 (9th Cir. 1991).  Therefore, the RICO claims against the City and Mr. Feuer, in his official capacity, must be dismissed.

**B.**     **The RICO Claim Against Mr. Feuer, In His Individual Capacity, Must Be Dismissed**

**1.**     **The FAC Fatally Fails To Allege That Mr. Feuer Acted Outside Of, Or Independent Of, His Official Duties**

Although the FAC superficially alleges that Mr. Feuer is being sued in his individual capacity, there are no allegations that he acted outside of, or independent of, his official duties as City Attorney.  To assert a RICO claim against a government official in his individual capacity, a plaintiff must allege an action taken by the official that was "outside of his official duties" (such as taking a bribe) and "was not taken on behalf of" the municipality.  *Quan v. San Francisco Police Dept.*, No. C 10-01835 MEJ, 2012 WL 4477621, at *17 (N.D. Cal. Sept. 27, 2012); *Hirsch v. City of New York*, 300 F. Supp. 3d 501, 515 (S.D.N.Y. 2018) (dismissing claim against an official in his individual capacity for RICO violations, because plaintiff failed to assert "that the defendant did something . . . that is tortious independent of the office that the defendant holds"); *see also Wilkie v. Robbins*, 551 U.S. 537, 566-67 (2007) (RICO targets harm created by public officials who act for their personal gain, not alleged harm caused by

1  government officials attempting to obtain property for the government).  For example,

2  in *Quan*, the court dismissed the individual claims against then-San Francisco Mayor

3  Newsom because the allegations against him, although purporting to be in his

4  individual capacity, were only directed at conduct taken in his official role as mayor.

5  *Quan*, 2012 WL 4477621, at *17.

6       Plaintiff only alleges that Mr. Feuer in his capacity "***as City Attorney***" "pressed

7  forward with supporting the settlement of a case" with "improprieties."  FAC ¶ 102

8  (emphasis added).  Plaintiff attributes no specific purpose to ***Mr. Feuer's*** support of the

9  allegedly improper *Jones* Settlement, let alone a purpose that would reflect he was

10 acting outside of his role as City Attorney.  The only purpose attributed to any of the

11 individual City Defendants' alleged malfeasance is to benefit the City -- not themselves

12 individually.  Plaintiff alleges that the City's purpose in participating in the alleged

13 RICO enterprise was to allow the "City to minimize its liability in LADWP ratepayer

14 litigation," and the "City could settle the claims of ratepayers for less than it would as a

15 result of an arm's length class action lawsuit."  FAC ¶ 330.  Plaintiff also alleges that

16 the reason Former Special Counsel circulated the *Jones v. PwC* complaint to the City's

17 attorneys was to determine "whether it served the City's interests" -- not Mr. Feuer's

18 personal interests.  *Id.* ¶ 72.  Plaintiff further claims the "*Jones* complaint and friendly

19 opposing counsel enabled the City to arrive at a settlement of all ratepayer litigation

20 that worked to [the City's] own interests."  *Id.* ¶ 91.

21       Because Plaintiff's allegations confirm that Mr. Feuer is sued only in his official

22 capacity (despite the FAC's naked averment that he is sued officially and individually),

23 the claim against Mr. Feuer in his individual capacity cannot lawfully proceed.

24            **2.   In Any Event, Plaintiff Fails To Adequately Plead The Required**

25                 **Elements Of A RICO Claim Against Mr. Feuer**

26       Assuming that Plaintiff has alleged, or could sufficiently allege, that Mr. Feuer

27 acted outside the scope of his official capacity, the RICO claim against him in his

28 individual capacity must still be dismissed because Plaintiff fails to adequately allege

1  facts sufficient to establish (a) Mr. Feuer engaged in mail or wire fraud (*i.e.*, the

2  alleged racketeering activity), (b) a pattern of racketeering, or (c) the existence of an

3  enterprise.  *See United Bhd. of Carpenters & Joiners of Am. v. Bldg. & Const. Trades*

4  *Dep't, AFL-CIO*, 770 F.3d 834, 837 (9th Cir. 2014).[17]

5       **a.**    **Mail And Wire Fraud Have Not Been Adequately Pled**

6       Civil RICO claims based on predicate acts of mail and wire fraud under 18

7  U.S.C. §§ 1341, 1343, as Plaintiff pleads here (FAC ¶ 334), are subject to the

8  heightened pleading standard of Federal Rule of Civil Procedure 9(b) and must be pled

9  with particularity.  *See Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065-66 (9th Cir.

10  2004).  A pleader of mail and wire fraud in a RICO action must allege "'the who, what,

11  when, where, and how' of the misconduct charged," *Vess v. Ciba-Geigy Corp. USA*,

12  317 F.3d 1097, 1106 (9th Cir. 2003), and set forth facts establishing the role of each

13  defendant in each scheme, *Lancaster*, 940 F.2d at 405.  To plead mail and wire fraud,

14  therefore, Plaintiff must allege with specificity that Mr. Feuer "formed a scheme" to

15  defraud, that he used the United States mails and wires in furtherance of that scheme,

16  that he sent particular documents via mail or wire, and that he did so with the "specific

17  intent to deceive or defraud." *Schreiber Distrib. Co. v. Serv-Well Furniture Co., Inc.*,

18  806 F.2d 1393, 1400 (9th Cir. 1986); *Moore v. Kayport Package Exp., Inc.*, 885 F.2d

19  531, 541 (9th Cir. 1989) (affirming dismissal of RICO claim for failure to plead "time,

20  place, and specific content" and the role of each defendant in each scheme).

21       With the exception of the class notice, Plaintiff fails to identify what allegedly

22  fraudulent document was mailed or wired, when or where it was wired and what the

23  allegedly fraudulent content of the document was.  FAC ¶¶ 338-40.  He fails to identify

24  any other documents with particularity, whether they were transmitted via mail or wire,

25

26  ---
   [17]  Plaintiff also lacks standing under RICO, which is "a more rigorous matter than

27  standing under Article III," because his loss is not "clear and definite."  *GWG MCA*
*Capital, Inc. v. Nulook Capital, LLC*, No. 17-CV-1724, 2019 WL 1084777, at *4

28  (E.D.N.Y. Mar. 7, 2019).  *Supra* Section VI.

1   when they were transmitted, and between whom.  There are no specific allegations of
2   any wires, *i.e.*, no specific phone calls, emails, or faxes.  *Id.*

3       As for the class notice, Plaintiff merely alleges the class notice, drafted by the
4   Class Counsel Defendants (*id.* ¶ 216), was misleading because it omitted "material
5   qualifiers."  *Id.* ¶ 91.  He alleges some unidentified person in "the City Attorney's
6   Office" had a duty to correct those omissions.  *Id.*  Even assuming Mr. Feuer knew of
7   the alleged "material qualifiers" (which has not been pled), he did not have a fiduciary
8   duty to the plaintiff class, which was never his client.  "Absent an independent duty,
9   such as a fiduciary duty or an explicit statutory duty, failure to disclose cannot be the
10  basis of a [RICO] fraudulent scheme."  *Eller v. EquiTrust Life Ins. Co.*, 778 F.3d 1089,
11  1092 (9th Cir. 2015).  Therefore, the notice cannot be used against Mr. Feuer to
12  establish mail or wire fraud.

13      In any event, Plaintiff fails to allege any facts showing Mr. Feuer "'knowingly
14  cause[d]' use of the mails or wires to further that alleged scheme."  *Eclectic Props. E.,*
15  *LLC v. Marcus & Millichap Co.*, No. 09-cv-511, 2011 WL 1375164, at *5 (N.D. Cal.
16  Apr. 12, 2011).  Where multiple defendants allegedly engaged in fraudulent activity,
17  "Rule 9(b) does not allow a complaint to merely lump multiple defendants together."
18  *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007).  Where a plaintiff alleges
19  RICO claims against multiple defendants, the "plaintiff must allege ***at least*** two
20  predicate acts by ***each*** defendant."  *In re WellPoint, Inc. Out-of-Network UCR Rates*
21  *Litig.*, 865 F. Supp. 2d 1002, 1035 (C.D. Cal. 2011) (emphasis in original).  Plaintiff
22  does not attribute any predicate acts of mail or wire fraud directly to Mr. Feuer; instead
23  he alleges only, on information and belief, that "Defendants" collectively used the
24  mails or wires.  FAC ¶¶ 338, 339.  The FAC speculates, again, on information and
25  belief, that "Feuer, Peters, and/or Clark" gave "instructions" to Mr. Paradis to file an
26  action against the City and they "would have" used phone or email to "instruct"
27  because Mr. Paradis's firm was based in New York.  *Id.* ¶¶ 76, 103, 340.  This
28  equivocal guess is insufficient under Rule 8 -- let alone under Rule 9.

1   Plaintiff misstates the law in the FAC, alleging that "[t]o the extent that one or
2   more of the Defendants did not personally participate in the violation of RICO, they are
3   nevertheless liable as conspirators with the other Defendants." *Id.* ¶ 341. That is not
4   the law. Plaintiff must specifically allege that each named defendant committed the
5   alleged RICO predicate acts -- general allegations that a defendant was involved
6   generally in a supposedly fraudulent enterprise as a "conspirator" are not sufficient.
7   *Tatung Co., Ltd. v. Shu Tze Hsu*, 217 F. Supp. 3d 1138, 1169-70 (C.D. Cal. 2016)
8   (plaintiff's allegations that defendant was "'the architect of many facets of fraud,'" and
9   another party "took direction" from the defendant, were insufficient to infer that this
10   defendant actually committed the predicate acts).

11   **b.**   **Plaintiff Has Not Adequately Alleged A Pattern**
12   **Of Racketeering**

13   A "pattern" of racketeering activity requires "at least two acts of racketeering
14   activity" within ten years of each other, 18 U.S.C. § 1961(5), and a related "threat of
15   continuing activity." *Howard v. America Online Inc.*, 208 F.3d 741, 746 (9th Cir.
16   2000), *cert. denied*, 53 U.S. 828 (2000). Plaintiff has not pled a "pattern" of
17   racketeering activity because the mail and wire activities he alleges arise from a single
18   event and for a single purpose -- the alleged "collusive settlement." Multiple RICO
19   offenses, if arising from a single event or for a single purpose, are insufficient to
20   establish a pattern of racketeering. *See Howard*, 208 F.3d at 750 (a "'flurry' of false
21   and misleading advertising" and other "repeated fraudulent schemes" were insufficient
22   to show a pattern of racketeering because it all related to AOL's flat-fee program, a
23   single business campaign); *Jarvis v. Regan*, 833 F.2d 149, 152-53 (9th Cir. 1987)
24   (affirming dismissal of a RICO claim where the alleged pattern consisted of three acts
25   of mail and wire fraud committed by legal aid organizations in obtaining a single
26   federal grant); *GSI Tech. v. United Memories, Inc.*, No. 13-01081-PSG, 2014 WL
27   1572358, at *5 (N.D. Cal. Apr. 18, 2014) (alleged series of predicate acts of mail and
28   wire fraud were all operated with a single goal -- the acquisition of a contract to design

1   a memory chip).  Here, Plaintiff alleges the mailings and wires were done for a single

2   goal -- to obtain a "collusive" settlement allegedly favorable to the City.  FAC ¶ 330.

3   This is insufficient.

4        Likewise, Plaintiff does not plead any facts that show a future threat that

5   Mr. Feuer will engage in the alleged activities.  *See Howard*, 208 F.3d at 746 ("[T]he

6   term 'pattern' itself requires the showing of a relationship between the predicates and

7   of the threat of continuing activity.").  To satisfy this requirement, the FAC must allege

8   either illegal activity that is continuing or "past conduct that by its nature projects into

9   the future with a threat of repetition." *Id*. at 750 (quotations and citations omitted).

10       In *Howard*, the Ninth Circuit held that the first test was not met by merely

11  alleging that AOL began its false advertising in October 1996 and "continues to do so

12  [in 2000] as part of its regular way of conducting business," because there were only

13  conclusions and no facts to support the allegation. *Id*.  The second test was not met

14  because AOL failed to show the "relationship between the predicates and of the threat

15  of continuing activity" as plaintiffs did not plead that misleading advertising would

16  continue into the future.  *Id*. at 750-51 (quotations and citations omitted).

17       Here, defendants' alleged goal was the conclusion of the collusive settlement,

18  which necessarily ended with the State Court's final approval of the *Jones* Settlement

19  and Final Judgment in July 2017.  FAC ¶ 98.  The conduct alleged does not satisfy the

20  "continuity" requirement." *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 366

21  (9th Cir. 1992) (where the only "goal" of the defendants was the successful

22  prosecution of a state court tort suit, "there was no threat of activity continuing beyond

23  the conclusion of that suit"); *Medallion Television Enter., Inc. v. SelecTV of Cal., Inc.*,

24  833 F.2d 1360, 1364 (9th Cir. 1987) (where fraud was a joint venture to obtain

25  broadcast rights, the threat ended once the rights were obtained).

26            **c.**    **There Is No RICO Enterprise**

27       "To show the existence of an enterprise . . . plaintiff[] must plead that the

28  enterprise has (A) a common purpose, (B) a structure or organization, and (C) longevity

necessary to accomplish the purpose." *Eclectic Props.*, 751 F.3d at 997. The commonality and coordination must go beyond the level of cooperation inherent in typical commercial relationships. *See*, *e.g.*, *United Food & Commercial Workers Unions & Emp'rs Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 854-55 (7th Cir. 2013) ("enterprise" allegations failed to show that defendants involved themselves in each other's business beyond their usual commercial relationship).

The RICO claim fails because there are no allegations about the "structure or organization" in which Mr. Feuer purportedly participated. The FAC does not allege how the enterprise was structured or organized or what role the participants, including Mr. Feuer, played. Additionally, the FAC's alternative averment that certain defendants (not Mr. Feuer) are each "legal enterprises" through which defendants conducted racketeering activity (FAC ¶ 330) is unfounded because an entity cannot be a RICO defendant and a RICO enterprise simultaneously. *See, e.g.*, *River City Markets, Inc. v. Fleming Foods West, Inc.*, 960 F.2d 1458, 1461 (9th Cir. 1992).

## VIII. THE SECTION 1983 CLAIM AGAINST THE CITY/FEUER DEFENDANTS MUST BE DISMISSED

### A. The Section 1983 Claim Is Premature

Plaintiff claims the City Defendants interfered with his constitutional right to "counsel and effective access to the courts." FAC ¶ 123. To state a Section 1983 claim based on this constitutional right, Plaintiff must allege, *inter alia*, that the conduct rendered "any available state court remedy ineffective." *Delew v. Wagner*, 143 F.3d 1219, 1223 (9th Cir. 1988); *Hullings v. Johnson*, No. 13-cv-2320, 2014 WL 2931348, at *4 (C.D. Cal. June 30, 2014) (collecting cases). Because the State Court retained and is exercising jurisdiction over *Jones* and the *Jones* Settlement, the *Jones* Action remains "pending" in the State Court and it is therefore impossible to determine at this time whether any state remedy is ineffective. Accordingly, the Section 1983 claim should be dismissed. *See, e.g.*, *Delew*, 143 F.3d at 1223 (dismissing Section 1983 claim where state court action was pending).

**B.    In Any Event, The Claim Against The City And Mr. Feuer, In His Official Capacity, Must Be Dismissed**

The Section 1983 claim against the City and Mr. Feuer, in his official capacity, fall together because "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). "A municipal government is subject to liability under § 1983 only when a constitutional violation results from its policies or customs." *Kinney v. State Bar of Cal.*, No. 14-cv-1591, 2014 WL 12689943, at *8 (C.D. Cal. May 6, 2014) (citing *Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658, 694 (1978)). The municipality cannot be held vicariously liable for its employees' unconstitutional acts under a *respondeat-superior* theory. *See Monell*, 436 U.S. at 691.

Plaintiff alleges there was an alleged constitutional violation pursuant to a "policy." FAC ¶ 122. A claim against a municipality based on a "policy" can only be alleged if: (1) an employee "committed the alleged constitutional violation pursuant to a formal governmental policy"; (2) the individual who "committed the constitutional tort was an official with 'final policy-making authority'"; or (3) an official with "final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992) (citations omitted). The FAC does not adequately allege any of these.

The FAC does not articulate what the "City's policy" is or allege facts showing it was "a formal governmental policy." *Gillette*, 979 F.2d at 1346; *see also Grizzle v. Cty. of San Diego*, No. 17-cv-813, 2018 WL 3689153, at *7 (S.D. Cal. Aug. 3, 2018) ("An official policy 'often refers to formal rules or understanding -- often but not always committed to writing -- that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently over time.'").

Moreover, the FAC does not allege facts showing any official with "final policy-making authority" committed a constitutional tort or "ratified a subordinate's unconstitutional decision or action ***and*** the basis for it." *Gillette*, 979 F.2d at 1346-47

1   (emphasis added).  Neither a policymaker's knowledge alone nor a "mere refusal to

2   overrule a subordinate's completed act" is sufficient to constitute ratification.  *Christie*

3   *v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999).  "The fact that a particular official -- even

4   a policymaking official -- has discretion in the exercise of particular functions does not,

5   without more, give rise to municipal liability based on an exercise of that discretion."

6   *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-82 (1986) (personnel decisions of a

7   sheriff, who was not responsible for establishing county employment policy, could not

8   be attributed to the municipality) (footnote omitted); *see also Collins v. City of San*

9   *Diego*, 841 F.2d 337, 341-42 (9th Cir. 1988) (municipality not liable for sergeant's

10  actions; sergeant was not responsible for establishing employment policy).

11       The purported "harm" that Plaintiff (insufficiently) alleges in the Section 1983

12  claim concerns the value of the recovery under the *Jones* Settlement.  FAC ¶¶ 125-27.

13  Contrary to the FAC's conclusory allegations, Messrs. Feuer, Clark, and Peters did not

14  have final policy-making authority over the litigation or settlement in *Jones*; therefore,

15  the City cannot be liable for their actions under Section 1983.  *Id.* ¶ 122.  " It is well

16  established that the charter of a municipality is its constitution.  And the provisions of a

17  city charter respecting purely municipal affairs prevail over related state laws."  *City*

18  *and Cty. of S.F. v. Patterson*, 202 Cal. App. 3d 95, 102 (1988) (internal citation

19  omitted); *see also Daniel v. City of Glendale*, No. 14-cv-3864 (VAP), 2015 WL

20  5446924, at *5 (C.D. Cal. Mar. 19, 2015) ("City charter provisions and municipal

21  ordinances may determine whether an official is a final municipal policymaker.");

22  *Schiff v. City and Cty. of S.F.*, 816 F. Supp. 2d 798, 812 (N.D. Cal. 2011) (relying on

23  city charter to identify "final policymaker" for Section 1983 claim).  The City's Charter

24  states that:  (1) "[i]n the course of litigation, client decisions, including a decision to

25  initiate litigation, shall be made by the Mayor, the Council, or boards of

26  commissioners" (RJN Ex. 31 (§ 272)) and (2) specific boards, the Mayor, a claims

27  board, and the Council share the responsibility to "deci[de] to settle litigation" (*id.*

28  (§§ 272, 273)).

1    The Charter did not give Mr. Feuer, or anyone in the City Attorney's Office,

2  "final policy-making authority" over the *Jones* litigation and settlement.  Instead, it

3  circumscribes Mr. Feuer's responsibilities to that of an attorney who shall "represent

4  the City in all legal proceedings" and be a "legal advisor" to his client, the City.  RJN

5  Ex. 31 (§§ 271-73).  Further, the FAC also does not allege how Messrs. Feuer, Clark,

6  and Peters exercised final policy-making authority or how the Council or any of the

7  officials or boards -- who actually have final policy-making authority -- created a

8  policy that can be the basis for Plaintiff's Section 1983 claim.

9    Because the FAC fails to plead facts sufficient to establish municipal liability,

10  the claim must be dismissed as to the City and Mr. Feuer in his official capacity.

11  *Kentucky*, 473 U.S. at 166 ("an official-capacity suit is, in all respects other than name,

12  to be treated as a suit against the entity").  Additionally, punitive damages (*see* FAC

13  ¶ 128 and Prayer) are not recoverable against the City and officers sued in their official

14  capacities.  *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981);

15  *Mitchell v. Dupnik*, 75 F.3d 517, 527 (9th Cir. 1996) (reversing award of punitive

16  damages alleged under Section 1983 against officers sued in their official capacities).

17    **C.    The Section 1983 Claim Against Mr. Feuer, In His Individual**

18         **Capacity, Must Be Dismissed**

19    Plaintiff's allegation that Mr. Feuer participated in a "conspiracy" to deprive

20  Plaintiff of due process (FAC ¶ 122) lacks the "factual specificity" required to satisfy

21  the heightened-pleading standard applicable "where the defendant is entitled to assert

22  the qualified immunity defense and where her or his knowledge or intent is an element

23  of the plaintiff's constitutional tort."  *Simms v. City and Cty. of Honolulu*, No. 06-cv-

24  669, 2007 WL 9711133, at *4 (D. Haw. Dec. 20, 2007) (requiring heightened

25  pleading); *Estate of Duran v. Chavez*, No. 14-cv-02048, 2015 WL 8011685, at *13

26  (E.D. Cal. Dec. 4, 2015) (requiring "factual specificity" to allege a "conspiracy under a

27  civil rights claim"); *see also Crawford v. Beard*, No. 14-cv-5578, 2016 WL 2865891,

28  at *5 (N.D. Cal. May 17, 2016) (reliance on an incorrect statement did not show an

agreement or "meet the particularized factual requirement for conspiracy claims").

It is not enough for Plaintiff to assert speculative allegations (*e.g.*, FAC ¶¶ 101-103, 122), general allegations based on "information and belief" (*e.g.*, *id.* ¶¶ 76, 102), or general averments that Mr. Feuer "participat[ed]" in an "overall conspiracy" (*id.* ¶ 122) and therefore must somehow bear personal responsibility for what "The City" allegedly did (*id.* ¶ 103). Plaintiff's repeated "***and/or***" allegations regarding Mr. Feuer and other City employees (*e.g.*, *id.* ¶ 76 (claiming "Feuer, Peters, ***and/or*** Clark" decided to file *Jones* against the City)) constitute an admission that he has no idea whether Mr. Feuer participated in some sort of Section 1983 conspiracy. *See, e.g.*, *Lewis v. City of Fresno*, No. CVF 08-1062 OWW, 2009 WL 2905738, at *9-10 (E.D. Cal. Sept. 4, 2009) (Section 1983 claim relying on "and/or" allegations is not "viable" under the *Twombly/Iqbal* standard). Given that such speculative allegations are the best Plaintiff can do (at least without violating Rule 11), the First Claim for Relief against Mr. Feuer must be dismissed without leave to amend.

Regardless of the foregoing, Mr. Feuer's actions are also protected by qualified immunity, which extends to "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004)). "[T]he 'driving force' behind creation of the qualified immunity doctrine was a desire to ensure that 'insubstantial claims' against government officials [will] be resolved prior to discovery." *Id.* The qualified-immunity analysis determines whether "'Defendants' conduct amounted to a constitutional violation, and . . . whether or not the right was clearly established at the time of the violation.'" *Nichols v. Brown*, 945 F. Supp. 2d 1079, 1098 (C.D. Cal. 2013). "'For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id.*

Here, the FAC represents it was "clearly established" that Mr. Feuer's conduct "constituted due process violations." FAC ¶ 123. But the FAC does not allege facts

evidencing a constitutional violation or how it would be sufficiently clear to a reasonable official.  Instead, the FAC unsurprisingly relies "on information and belief" that Mr. Feuer or some other "employee or employees" directed Former Special Counsel to file the *Jones* Action against the City and would have discovered that "Special Counsel Defendants were therefore behind the [] lawsuit filed by Jones."[18] FAC ¶¶ 76, 101, 102.  None of these sparse averments allege a constitutional violation, let alone a right that "was clearly established" at the time.  *Id.* ¶ 123.  Mr. Feuer is undeniably entitled to qualified immunity.

The FAC also fails to allege facts to support a claim for punitive damages against Mr. Feuer in his personal capacity (*id.* ¶ 128), which "can be awarded only when 'the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *Gomes v. City of Los Angeles*, No. 18-cv-8245, 2018 WL 4945691, at *3 (C.D. Cal. Oct. 10, 2018) (collecting cases).  The FAC does not allege facts demonstrating anything of the sort.  *See id.* (finding allegations for punitive damages lacking).

## IX.   **CONCLUSION**

For all the foregoing reasons, the claims against the City/Feuer Defendants should be dismissed with prejudice.  Significantly, under the present circumstances, leave to amend a complaint is properly denied where the amendment would be futile. *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532-33 (9th Cir. 2008).

DATED:  January 6, 2020

BROWNE GEORGE ROSS LLP
Eric M. George
Maribeth Annaguey
Kim S. Zeldin


By: _____*/s/ Kim S. Zeldin*_____
Kim S. Zeldin
Attorneys for Defendants City of Los Angeles and
Michael N. Feuer

---

[18]  These two allegations cannot both be true and further demonstrate that Plaintiff does not have facts to support the claims.