# EXHIBIT 13

EXHIBIT 13
Page 337

(Page 80 of 338)

1  Jack Landskroner (Admitted Pro Hac Vice)
   **LANDSKRONER GRIECO MERRIMAN, LLC**
2  1360 West 9th Street, Suite 200
3  Cleveland, Ohio 44113
   Telephone: (216) 522-9000
4
   Michael J. Libman (SBN 222353)
5  **LAW OFFICES OF MICHAEL J. LIBMAN**
   16133 Ventura Blvd., Suite 1200
6  Encino, California 91436
   Telephone:  (818) 995-7300
7
   Attorneys for Plaintiff
8
   Michael N. Feuer (SBN 111529)
9    City Attorney
   Richard M. Brown (SBN 041277)
10   General Counsel, Department of Water and Power
   Eskel H. Solomon (SBN 101386)
11   Deputy City Attorney
    Los Angeles City Attorney's Office
12 111 N. Hope Street, Room 340
13 Los Angeles, California  90012

14 Angela C. Agrusa (SBN 131337)
   Maribeth Annaguey (SBN 228431)
15 LINER LLP
   1100 Glendon Avenue, 14th Floor
16 Los Angeles, California 90024.3518
   Telephone:    (310) 500-3500
17
   Attorneys for Defendant
18 CITY OF LOS ANGELES

19         SUPERIOR COURT OF THE STATE OF CALIFORNIA

20            COUNTY OF LOS ANGELES, CENTRAL DISTRICT

21
   ANTWON JONES, on behalf of himself, and        Case No. BC577267
22 all other similarly situated,
                                                  [Related to Case Nos. BC565618 (Lead),
23              Plaintiff,                         BC568722, BC571664, and BC574690]
                                                  [CLASS ACTION]
24        vs.
                                                  **DECLARATION OF JACK
25 CITY OF LOS ANGELES, by and through the        LANDSKRONER IN SUPPORT OF
   Los Angeles Department of Water and Power      PLAINTIFF'S MOTION FOR
26 and DOES 1 through 50, inclusive,              PRELIMINARY APPROVAL**
                                                  Hearing Date: September 11, 2015
27              Defendants.                        Time: 9:00 a.m.
                                                  Department: Dept. 323
28                                                Judge: Hon. Elihu M. Berle

                                    1

                DECLARATION OF JACK LANDSKRONER

FILED
Superior Court Of California
County Of Los Angeles

AUG 17 2015

Sherri R. Carter, Executive Officer/Clerk
By_____, Deputy
   M. Barel Moore

EXHIBIT 13
Page 338

Doc# 1 Page# 80 - Doc ID = 1755355499 - Doc Type = Case

1    I, JACK LANDSKRONER, declare the following under the penalty of perjury:

2        1.    I am over the age of 18 and have personal knowledge of the facts set forth herein,

3    which are known to me to be true and correct. I could and would testify competently about the

4    matters set forth herein if called upon to do so.

5        2.    I am an attorney admitted to the practice of law in the State of Ohio. I am a

6    partner at the law firm of Landskroner Grieco Merriman, LLC, which represents Plaintiff

7    Antwon Jones in this matter.

8        3.    I respectfully submit this Declaration in support of Plaintiff's Motion for

9    Preliminary Approval.

10    I.    **Background**

11        4.    On April 1, 2015, Plaintiff filed a class action in the Superior Court of the State of

12    California for the County of Los Angeles captioned, *Jones v. City of Los Angeles*, Case No.

13    BC577267 (the "*Jones* Action"), which alleges claims involving customer over-billing and other

14    billing errors by the Los Angeles Department of Water and Power (the"LADWP") that were

15    caused by, and are related to, the defective implementation of the LADWP's new Customer Care

16    & Billing System (the "CC&B System") or damages incurred by customers arising from their

17    participation in the LADWP's Solar Incentive Program.

18        5.    Three additional actions were previously filed against the City of Los Angeles,

19    namely *Bransford, et al. v. City of Los Angeles*, Case No. BC565618 (the "*Bransford* Action"),

20    *Fontaine v. City of Los Angeles, et al.*, Case No. BC571664 (the "*Fontaine* Action"), and *Kimhi*

21    *v. City of Los Angeles*, Case No. BC536272 (the "*Kimhi* Action"), all of which alleged

22    allegations similar to those asserted in the *Jones* Action.

23        6.    On May 22, 2015, the Court found that the *Jones*, *Fontaine* and *Bransford*

24    Actions were related but did not consolidate these actions.

25        7.    Both prior to, and after, the filing of the Complaint in the *Jones* Action, Plaintiff

26    Jones, by and through his counsel, undertook an extensive investigation into the failure of the

27    CC&B system in order to understand the defects which directly resulted in the harms and losses

28    experienced by LADWP customers.

2

DECLARATION OF JACK LANDSKRONER

EXHIBIT 13

Doc# 1 Page# 81 - Doc ID = 1755355499 - Doc Type = Case

Page 339

8.    This investigation included interviews with confidential witnesses, multiple reviews of documents and consultations with non- testifying experts, all of which confirmed the widespread nature of the defects in the CC&B System.

9.    Plaintiff's counsel's investigation also revealed that customers of the LADWP's Solar Incentive Program had been damaged as a result of extensive delays in energizing their systems and by LADWP's failure to properly credit them for energy produced.

**II.    Mediation of Plaintiff and Settlement Class Members' Claims**

10.    Immediately after filing his Complaint, Plaintiff Jones submitted a comprehensive demand to Defendant, explaining the nature of the defects, as revealed by Plaintiff's counsel's investigation, discussing the strength and merits of the *Jones* Action and proposing a complex framework to structure a settlement.

11.    Class Counsel and Counsel for Defendant met to further explore Plaintiff Jones' proposal and to initiate settlement negotiations of the class claims. These negotiations advanced somewhat, but eventually stalled.

12.    Thereafter, the Parties agreed to continue their efforts to reach settlement by soliciting the assistance of well-respected Los Angeles based mediator, the Hon. Dickran M Tevrizian (Ret.).

13.    Judge Tevrizian conducted the initial mediation sessions on June 11 and 12, 2015.

14.    After 2 full hard fought days of mediation, the parties reached an agreement in principle on the essential terms of the proposed Settlement, which included the concession by Defendant that each and every LADWP customer that had been overcharged would receive either a credit or refund in the amount of 100% of the overcharge.

15.    The Parties' negotiations, although contentious, were undertaken in good faith and at arms' length with the assistance of and through the diligent efforts of Judge Tevrizian.

16.    On July 24, 2015, given the complexity of the Settlement and the detail necessary to verify the identity of the affected accounts and the accuracy of the refunds/credits due to customers, as well as defining the validation mechanisms for compliance and the progression of

---

3

DECLARATION OF JACK LANDSKRONER

EXHIBIT 13

1   the negotiated remediation protocols, the Parties returned to mediation with Judge Tevrizian to

2   continue discussions related to those and other non-material terms of proposed Settlement.

3          17.    On July 31, 2015, only after all essential and non-essential terms of the Settlement

4   were resolved by the Parties, the Parties, with the assistance of Judge Tevrizian, mediated the

5   amount of attorneys' fees and costs to a successful conclusion.

6          18.    A true and correct copy of the Class Action Settlement Agreement and Limited

7   Release dated August 7, 2015 is annexed hereto as Exhibit 1.

8   **III.    Summary Of The Proposed Settlement**

9          **A.    The Settlement Class**

10         19.    The Settlement provides for conditional certification of a Settlement Class, which

11  consists of at least 1,600,000 LADWP customers, and is defined as follows:

12         All LADWP customers who were improperly over-charged for electric, water,
           sewage or sanitation services between the dates of September 3, 2013 and the
13         present, and who are entitled to credits or refunds for electric, water, sewage or
           sanitation services and/or for participation in the LADWP's solar incentive
14         program from February 13, 2010. Excluded from the Settlement Class are the
           Judge to whom this case is assigned, and any members of the Judge's immediate
15         family, and counsel of record in this action.

16

17  Ex. 1 hereto at 7.

18         20.    Furthermore, the Settlement Class is comprised of the following Subclasses:

19     •   **Tiered Billing Subclass:** all residential and commercial customers of
           LADWP who were billed and paid for electricity or water usage at
20         tiered rates higher than those rates that would otherwise have been used
           to bill these customers during the period September 3, 2013 through
21         August 13, 2014.

22     •   **Trend Estimate Subclass:** all residential and commercial customers of
23         LADWP who paid electricity, water or sewage bills that were
           incorrectly estimated due to a defect in the Trend Estimation Algorithm
24         used to compute these estimates during the period September 3, 2013
           through August 13, 2014.

25

26     ○   **Closed Account with Credit Balance Subclass:** all residential and
           commercial customers of LADWP who:  (i) have "Closed Accounts"
27         with credit balances and (ii) are owed refunds that have been withheld
           by LADWP during the period of September 3, 2013 to present.

28

---

4

DECLARATION OF JACK LANDSKRONER

- **Premise Condition/Estimated Bill Subclass:**  all residential and commercial customers of LADWP who:  (i) unbeknownst to the customer, had a premise condition that caused excessive consumption of water and/or power; (ii) received estimated bills for multiple billing periods after September 3, 2013; (iii) because of these estimated bills, were prevented from timely discovering the premise condition; and (iv) were charged for greater quantities of water, power or sewage than they otherwise would have been charged.

- **Solar Customers Subclass:**  all residential LADWP customers who have installed solar systems and applied to participate in the Solar Photovoltaic Incentive Program from February 13, 2010 to date and: (1) experienced delay in the final approval process beyond 30 days after submission of a complete Incentive Application and Supporting Documentation and indication that the solar system was fully permitted and ready for inspection; and/or (2) have not been properly billed for energy consumed and/or generated; and/or (3) have not been properly credited for excess energy generated by the customer's solar power system.

- **Automatic Bill Payment/Bank Overdraft Charge Subclass:**  all LADWP customers who:  (i) were enrolled in an automatic bill payment plan with a bank and (ii) were charged overdraft fees because LADWP charged the customer an incorrect amount, which, in turn, resulted in the customer's bank account being overdrawn.

- **Late Payment Charge Subclass:**  all LADWP customers who were assessed an inaccurate Late Payment Charge.

- **Estimated Electric Bills with "Minimum Charge" Subclass:**  all LADWP residential and small commercial customers:  (i) whose consumption was estimated to be zero and (ii) who were, therefore, assessed a "Minimum Charge" on an electric bill when the actual usage was above the "Minimum Charge."

- **Omnibus Subclass:**  all LADWP residential and commercial customers that believe they were:  (i) incorrectly assessed a charge associated with their power, water, sewage or trash collection at any time from September 3, 2013 to the present; or (ii) otherwise damaged as a result of their participation in the LADWP's Solar Photovoltaic Incentive Program at any time from February 13, 2010 to the present, that is not covered by any of the other Subclasses listed above.

Ex. 1 hereto at 8.

**B.    Benefits to the Settlement Class**

21.    The proposed Settlement provides Settlement Class Members with two types of relief: (i) monetary relief and (ii) non-monetary remedial relief.  Ex. 1 hereto at 9-32.

5

DECLARATION OF JACK LANDSKRONER

EXHIBIT 13
Page 342

### i. Monetary Relief

22.     Settlement Class Members of the: (i) Tiered Billing Subclass; (ii) Trend Estimate Subclass; (iii) Closed Account with Credit Balance Subclass; (iv) Late Payment Charge Subclass and (v) Estimated Electric Bills with "Minimum Charge" Subclass will be pre-identified as members of one or more of these Subclasses based upon internal records of the LADWP.  The LADWP will credit (in the case of current customers) or refund (in the case of former customers) 100% of any amounts that the LADWP overcharged these Subclass Members during the period September 3, 2013 through the present.  The amounts to be credited or refunded shall be determined by the LADWP, and the methodology used to determine the amounts shall be verified by the CC&B System monitoring expert and subject to Court approval.  Members of these Subclasses will not be required to submit a Claim Form in order to recover any funds.  Rather any amounts owed to these Subclass Members will be automatically credited to their LADWP account or refunded by check automatically cut by the LADWP.  Ex. 1 hereto at 9-10.

23.     Settlement Class Members of the: (i) Premise Condition/Estimated Bill Subclass; (ii) Automatic Bill Payment/Bank Overdraft Charge Subclass and (iii) Solar Customer Subclass will be pre-identified as members of each of these Subclasses from the internal records of the LADWP.  Members of these Subclasses must submit a valid claim form substantiated by the documentary evidence specified in the Claim Form to the Court-appointed Claims Administrator in order to determine the amount by which they were overcharged by the LADWP. The LADWP will credit (in the case of current customers) or refund (in the case of former customers) 100% of any amounts that the LADWP overcharged these Subclass Members during the period September 3, 2013 through the present.  The amounts to be credited or refunded shall be determined by the LADWP, and the methodology used to determine the amounts shall be verified by the CC&B System monitoring expert and subject to Court approval.  Ex. 1 hereto at 10-11.

24.     Furthermore, with respect to members of the Solar Customer Subclass, LADWP shall refund 100% of any damages that the Claims Administrator, Court, or its appointed and agreed-to designee determines the LADWP caused any member of the Solar Customer Subclass

6

DECLARATION OF JACK LANDSKRONER

EXHIBIT 13
Page 343

1  to incur as a result of their participation in the LADWP's Solar Program during the period

2  February 13, 2010 through the present. Ex. 1 hereto at 11.

3      25.    Finally, in recognition of the possibility that some LADWP customers who have

4  not been "pre-identified" through LADWP's internal records may believe that they were:  (i)

5  overcharged as a result of a billing error; or (ii) damaged as a result of their participation in the

6  LADWP's Solar Program, the Settlement provides that any current or former LADWP customers

7  who  have  not  otherwise  been  "pre-identified"  as  a  member  of  any  Subclass,  but  who

8  nevertheless believe they have been overcharged as a result of a billing error made by LADWP

9  at any time since September 3, 2013; or (ii) damaged as a result of their participation in the

10  LADWP's Solar Program at any time since February 13, 2010, may file a Claim Form to recover

11  such overcharge or damages.  These Subclass Members will receive a credit or refund of 100%

12  of any amounts of which they were overcharged by the LADWP during the period September 3,

13  2013 through the present. Ex. 1 hereto at 12.

14      26.    The monetary relief portion of the Settlement provides Settlement Class Members

15  with approximately $44 million in credits or refunds arising from overbilling of its customers.

16      ii.    **Non-monetary Remedial Relief**

17      27.    In addition to providing the foregoing monetary consideration, the proposed

18  Settlement also provides for certain remedial and corrective measures including: (i) the creation

19  and adoption of certain billing system metrics; (ii) the appointment of an independent billing

20  system monitoring expert; (iii) audits of LADWP's billing system to confirm billing accuracy;

21  (iv) the creation and implementation of a team at LADWP to address unique or complex billing

22  issues; (v) the adoption of an amendment to the Rules Governing Water and Electric Service to

23  provide for a shorter period of time for which LADWP may collect payment from customers

24  whose bills are delayed due to billing errors; and (vi) the creation and implementation of an

25  information technology Project Management Office. Ex. 1 hereto at 12-32.

26      28.    These remedial measures add substantial value to the proposed Settlement, as

27  well, including an additional $20 million.

28

---

7

DECLARATION OF JACK LANDSKRONER

EXHIBIT 13

Page 344

1    C.    Scope of the Release

2        29.    In exchange for these numerous and valuable benefits, Settlement Class Members

3    will be releasing "any and all claims, damages, suits, demands, liabilities, judgments, losses and

4    causes of action relating to or arising from the billing issues alleged in the operative pleadings in

5    the Actions including but not limited to any error committed by the LADWP in over-billing its

6    customers between September 3, 2013, through the date of entry of the Order of Final Approval,

7    and in failing to timely include customers in the LADWP's Solar Photovoltaic Incentive Program

8    and/or credit for excess energy generated by solar customers at any time from February 13, 2010,

9    through the date of the entry of the Order of Final Approval." Ex. 1 hereto at 6-7, 35-36.

10       D.    Notice and Administration

11       30.    The Notice program provides for: (i) direct mail notice to all those customers of

12   LADWP for whom Defendant has street addresses and with whom Defendant routinely

13   communicates via United States First Class Mail pursuant to customers' instructions; (ii) email

14   notice to all those customers of LADWP for whom Defendant has email addresses and with

15   whom Defendant routinely communicates via email pursuant to customers' instructions; (iii)

16   publication of a "summary" notice in *The Los Angeles Times* and *La Opinion*; (iv) the

17   establishment of a Settlement website by the Court-appointed Claims Administrator and (v)

18   publication on LADWP's website. Ex. 1 hereto at 32-35.

19       31.    Each Notice, whether mailed, emailed or published, will:

20           a.    contain a short, plain statement of the background of the action and the

21                 Settlement;

22           b.    describe the relief outlined in this Agreement;

23           c.    inform Settlement Class Members that, if they do not exclude

24                 themselves from the Settlement Class, they may be eligible to receive

25                 the relief under the Settlement;

26           d.    inform Settlement Class Members that they may exclude themselves

27                 from the Class by submitting a written exclusion request postmarked

28                 no later than 90 days after the Notice Date;

---

8

DECLARATION OF JACK LANDSKRONER

EXHIBIT 13
Page 345

Doc# 1 Page# 87 - Doc ID = 1755355499 - Doc Type = Case.doc

e.   inform Settlement Class Members that they may object to the proposed Settlement by filing and serving a written statement of objections no later than 90 days after the Notice Date; and

f.   inform Settlement Class Members that any Final Order and Judgment entered in the Action, whether favorable or unfavorable to the Settlement Class, shall include, and be binding on, all Settlement Class Members who have not been excluded from the Class, even if they have objected to the Settlement.

Ex. 1 hereto at 32-35.

**E.   Attorneys' Fees and Expenses and Reimbursement Awards**

32.   At the Final Approval Hearing, Class Counsel will make an application to the Court for an award of attorneys' fees not to exceed $13,000,000. Ex. 1 hereto at 42-43. Class counsel's application will be based on Class Counsel's lodestar and a multiplier, which, under California law, will fall within the range of reasonableness. Additionally, Class Counsel will seek reimbursement of expenses in an amount not to exceed $750,000. *Id.*

33.   Additionally, Plaintiff will request the Court grant a service award for Plaintiff Antwon Jones and the named plaintiffs in the *Bransford*, *Fontaine* and *Kimhi* Actions in the amount of $5,000 each. Ex. 1 hereto at 42.

34.   Attorneys' fees, expense reimbursement and Plaintiff's reimbursement award, if granted by the Court, will be paid by Defendant in addition to all of the other benefits provided for under the Settlement.

**F.   Confirmatory Discovery**

35.   In connection with the Settlement, and in order to confirm that the Settlement is in the best interests of the Settlement Class, Class Counsel has reserved the right to conduct confirmatory discovery on certain issues including: (i) the internal methodology relied upon for the evaluation of all Settlement Class Members' accounts to determine credit or refund eligibility and amount of credit or refund; (ii) criteria used for identification of membership in each

9

DECLARATION OF JACK LANDSKRONER

EXHIBIT 13
Page 346

1   identified subclass; (iii) the total payment of credits and/or refunds issued to customers and from

2   ongoing remediation efforts; and (iv) remediation implementation protocols. Ex. 1 hereto at 36.

3       36.    Class Counsel, having carefully considered and evaluated, among other things,

4   the relevant legal authorities and evidence to support the claims asserted against Defendant, the

5   likelihood of prevailing on Plaintiff's claims, the risk, expense and duration of continued

6   litigation and the likelihood of appeals, has concluded that the proposed Settlement is fair,

7   reasonable, and adequate and in the best interest of the Settlement Class.

8       37.    Annexed as Exhibit 2 hereto is a true and correct copy of the firm resume of

9   Landskroner Grieco & Merriman, LLC.

10      38.    Annexed as Exhibit 3 hereto is a true and correct copy of the firm resume of the

11   Law Offices of Michael J. Libman.

12      I declare under penalty of perjury under the laws of the State of California that the

13   foregoing is true and correct.

14   Executed this 17th day of August 2015, at Cleveland, Ohio.

15

16

17

18

19

20                           Jack Landskroner

21

22

23

24

25

26

27

28

<div align="center">10</div>

<div align="center">DECLARATION OF JACK LANDSKRONER</div>

EXHIBIT 13
Page 347

# EXHIBIT 1
# TO DECLARATION OF
# JACK LANDSKRONER

EXHIBIT 1

EXHIBIT 13
Page 349

Doc# 1 Page# 91 - Doc ID = 1755355499 - Doc Type = Case

(Page 92 of 338)

[Exempt From Filing Fee
Government Code § 6103]

1   Jack Landskroner (Admitted Pro Hac Vice)
    **LANDSKRONER GRIECO MERRIMAN, LLC**
2   1360 West 9th Street, Suite 200
    Cleveland, Ohio 44113
3   T. (216) 522-9000
4   F. (216) 522-9007

5   Michael J. Libman (SBN 222353)
    **LAW OFFICES OF MICHAEL J. LIBMAN**
6   16133 Ventura Blvd., Suite 1200
    Encino, California 91436
7   Telephone: (818) 995-7300

8   Attorneys for Plaintiff

9   Michael N. Feuer (SBN 111529)
      City Attorney
10  Richard M. Brown (SBN 041277)
      General Counsel, Department of Water and Power
11  Eskel H. Solomon (SBN 101386)
      Deputy City Attorney
12    Los Angeles City Attorney's Office
    111 N. Hope Street, Room 340
13  Los Angeles, California 90012

14  Angela C. Agrusa (SBN 131337)
    Maribeth Annaguey (SBN 228431)
15  **LINER LLP**
    1100 Glendon Avenue, 14th Floor
16  Los Angeles, California 90024.3518
    Telephone:    (310) 500-3500
17  Facsimile:    (310) 500-3501

18  Attorneys for Defendant
    CITY OF LOS ANGELES

19

20            **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

              **COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

21

22  ANTWON JONES, on behalf of himself, and       Case No. BC577267
    all other similarly situated,
23                                                 [Related to Case Nos. BC565618 (Lead),
              Plaintiff,                           BC568722, BC571664, and BC574690]
24
         vs.                                       [CLASS ACTION]
25
    CITY OF LOS ANGELES, by and through the        *CLASS ACTION SETTLEMENT*
26  Los Angeles Department of Water and Power      *AGREEMENT AND LIMITED RELEASE*
    and DOES 1 through 50, inclusive,
27                                                 Assigned for All Purposes to the
              Defendants.                          Hon. Elihu M. Berle, Dept. 323
28
                                                   Action Filed:      April 1, 2015
                                                   Trial Date:        None Set

    3845?.025-2474794v4

              CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

EXHIBIT 13
Page 350

Doc# 1 Page# 92 - Doc ID = 1755535499 - Doc Type = Case.doc

## TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | RECITALS | 1 |
| II. | DEFINITIONS | 4 |
| III. | GENERAL TERMS AND CONDITIONS OF SETTLEMENT | 8 |
| | A. Certification of Settlement Class | 8 |
| | B. Settlement Relief | 9 |
| | 1. Monetary Relief | 9 |
| | a. Pre-Identified Non-Claims Made Subclass Members | 9 |
| | b. Pre-Identified Claims Made Subclass Members | 10 |
| | c. Self-Identified Claims Made Subclass Members | 11 |
| | 2. Remedial Relief and Corrective Actions | 12 |
| | a. Create and Adopt CC&B System Performance Metrics and Perform Work Necessary to Achieve and Maintain Compliance with these Metrics | 12 |
| | 1) Backlogged Field Investigation Cases Customer High/Low Bill Inquiries | 13 |
| | 2) Backlogged Field Investigation Cases with Billing Instructions | 14 |
| | 3) Backlogged Field Investigation Cases Cut-in-Flat and Defective | 16 |
| | 4) Backlogged Field Investigation Cases with Other Issues | 17 |
| | 5) Backlogged Field Services Field Activities | 19 |
| | 6) Defective Meters | 20 |
| | 7) Cut In Flat Electric Meters and Spacer on Water Meters | 21 |
| | 8) Backlogged Meter Reread Field Activities | 22 |
| | 9) Backlogged Field Collections Field Activities | 23 |
| | 10) Backlogged Water And Power Distribution Meter Exchange | 24 |

LINER LLP
1100 Glendon Avenue 14th Floor
Los Angeles CA 90024-3518

38457.025-2474796v4

i

CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

| | | | | |
|---|---|---|---|---|
| | 11) | Backlogged Manually Generated Billing To Do's | | 25 |
| | 12) | Premise Management | | 26 |
| | 13) | Customer Service Call Times And Responses: | | 26 |
| b. | | Appointment of Independent CC&B System Monitoring Expert | | 27 |
| c. | | Independent CC&B System Audits to Confirm Accuracy of CC&B System | | 28 |
| d. | | Create and Implement Internal Billing "Tiger Team" To Address Unique or Complex Billing Issues | | 29 |
| e. | | Create and Implement Information Technology Department Project Management Office | | 30 |
| f. | | Amend Rule 17 of the Rules Governing Water and Electric Service | | 31 |
| C. | Notice Program | | | 32 |
| | 1. | Mailed Notice | | 32 |
| | 2. | Emailed Notice | | 33 |
| | 3. | Published Notice | | 34 |
| | 4. | Internet and Website Notice | | 35 |
| D. | Release, Waiver and Covenant Not To Sue | | | 35 |
| E. | Confirmatory Discovery | | | 36 |
| F. | Non-Admission of Liability | | | 36 |
| G. | Preliminary Approval | | | 37 |
| H. | Claims Process | | | 37 |
| | 1. | Pre-identification | | 38 |
| | | a. | Pre-Identified Non-Claims Made Subclass Members | 38 |
| | | b. | Pre-Identified Claims Made Subclass Members | 38 |
| | 2. | Self-Identification | | 39 |
| | 3. | Claims Administration | | 39 |
| | 4. | Costs of Settlement Administration | | 39 |
| I. | Requests for Exclusion of Settlement Class | | | 40 |

LINER LLP
1100 Glendon Avenue 14th Floor
Los Angeles CA 90024 3518

30457.025-2474794v4

ii

CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

EXHIBIT 13
Page 352

| | J. | Objections and Requests To Appear At Final Approval Hearing | 41 |
| | K. | Attorneys' Fees and Costs | 42 |
| | L. | Final Approval | 43 |
| | M. | Miscellaneous Provisions | 45 |
| | 1. | Authority Of Signatories | 45 |
| | 2. | Binding Upon Successors | 45 |
| | 3. | Both Parties As Drafter | 45 |
| | 4. | Cooperation | 45 |
| | 5. | Counterpart Execution | 45 |
| | 6. | Governing Law | 45 |
| | 7. | Headings | 46 |
| | 8. | Integration Clause | 46 |
| | 9. | Jurisdiction | 46 |
| | 10. | Non-Waiver | 46 |
| | 11. | Notice | 46 |
| | 12. | Severability | 47 |
| | 13. | Time for Compliance | 47 |

LINER LLP
1100 Glendon Avenue 14th Floor
Los Angeles, CA 90024-3518

38457.025.2471794v4

iii

CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

EXHIBIT 13

Doc# 1 Page# 95 - Doc ID = 1755355499 - Doc Type = Case Document.doc

1    This Class Action Settlement Agreement and Limited Release ("Agreement") is submitted

2    pursuant to the California Code of Civil Procedure.  Subject to the approval of the Court, this

3    Agreement memorializes the settlement between and among all Parties to fully resolve the Action.

4    This Agreement is entered into by and between Antwon Jones ("Jones" or "Plaintiff"),

5    individually and as a representative of the Settlement Class (as defined herein) and the City of Los

6    Angeles, by and through the Los Angeles Department of Water and Power ("LADWP" or

7    "Department") and DOES 1 through 50, inclusive (the "City" or "Defendant") (collectively the

8    "Parties").  This Agreement is intended by the Parties to fully and finally compromise, resolve,

9    discharge and settle all Released Claims (as defined herein) on the terms and conditions set forth

10    herein, subject to approval of the Court.

11   **I.**    **RECITALS**

12    WHEREAS, on April 1, 2015, Plaintiff filed a class action in the Superior Court of the

13    State of California for the County of Los Angeles captioned, *Jones v. City of Los Angeles*, Case

14    No. BC577267 (the "*Jones* Action");

15    WHEREAS, the complaint in the *Jones* Action alleges claims involving customer

16    over-billing and other billing errors by the LADWP that were caused by, and are related to, the

17    defective implementation of the LADWP's new Customer Care and Billing system (the "CC&B

18    System") or damages incurred by customers arising from their participation in the LADWP's solar

19    program;

20    WHEREAS, prior to filing the complaint in the *Jones* Action, Class Counsel (as defined

21    herein) initiated an extensive and very lengthy investigation into the matters alleged in the

22    complaint and has continued to conduct an ongoing investigation into the facts and law relating to

23    the allegations, claims and defenses asserted in this Action;

24    WHEREAS, Class Counsel's continuing investigation has included, among other things,

25    interviewing current and former LADWP employees and working closely with investigators and

26    Plaintiff's non-testifying experts to diligently investigate the facts relevant to the merits of the

27    claims asserted in the *Jones* Action, including the functionality of the CC&B System and the

28    LADWP's solar program;

38457.025-2674794v1    1

CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

1    WHEREAS, LADWP conducted an internal investigation concerning issues relating to the

2    new CC&B System, customer billing related matters, including, but not limited to, matters

3    involving claims made against the LADWP by customers involved in the LADWP's solar

4    program, which remains ongoing;

5    WHEREAS, Plaintiff Jones directed his counsel to work with Plaintiff's non-testifying

6    consultants to develop a highly detailed settlement proposal in which Plaintiff Jones proposed to

7    resolve the claims asserted in the *Jones* Action, as well as the claims asserted in the following

8    three class actions filed against the City and the LADWP: *Bransford, et al. v. City of Los Angeles*,

9    Case No. BC565618 (the "*Bransford* Action"), *Fontaine v. City of Los Angeles, et al.*, Case No.

10   BC571664 (the "*Fontaine* Action"), and *Kimhi v. City of Los Angeles*, Case No. BC536272 (the

11   "*Kimhi* Action") on terms that would require the LADWP to:

12       (i)    conduct a review and audit of all LADWP customer accounts to determine if billing

13             errors occurred;

14       (ii)   refund one hundred percent of the amounts the LADWP had improperly charged

15             any of its customers as a result of billing errors caused by the LADWP's new

16             CC&B System or because of the customers' participation in the LADWP's solar

17             program;

18       (iii)  take the remedial measures necessary to ensure that the defects in the new CC&B

19             System were permanently corrected; and

20       (iv)  provide independently verified evidence that the CC&B System was functioning

21             properly and generating accurate customer bills on an ongoing basis;

22   WHEREAS, after having provided the detailed settlement proposal, Class Counsel met and

23   conferred with counsel for the City and commenced formal settlement negotiations shortly

24   thereafter. The parties advanced settlement discussions as far as they could go until these efforts

25   stalled.

26

27

28

38657.025-2474794v4

2

CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

LINER
1100 Glendon Avenue  14th Floor
Los Angeles, CA 90024-3518

EXHIBIT 13

1    WHEREAS, after further consideration, the parties agreed to continue their settlement

2    discussions in a more formal mediation environment and engaged the services of the Hon. Dickran

3    M. Tevrizian (Ret.), one of the most well respected mediators in the United States, to conduct a

4    formal mediation in this matter;

5    WHEREAS, because of the nature of the claims at issue in this litigation and the

6    complexity of the settlement terms proposed by Plaintiff, Judge Tevrizian scheduled the mediation

7    to be conducted over a four day period on June 11-12, July24 and July 31, 2015;

8    WHEREAS, the parties thereafter participated in a contentious and protracted two day-

9    long mediation at JAMS in Los Angeles before the Hon. Dickran M. Tevrizian (Ret.) on June 11

10   and 12, 2015. At the conclusion of that mediation session, the parties reached an agreement in

11   principal on the material terms of the proposed class action settlement reflected in this Agreement;

12   WHEREAS, following these mediation sessions, the parties appeared before the Court and

13   informed the Court that the parties had reached agreement in principal on the material terms of a

14   proposed class action settlement;

15   WHEREAS, given the complexity of the settlement and the detail necessary to verify the

16   identity of affected accounts, the accuracy of the refunds due to customers and to validate

17   compliance and the completion of agreed to remediation protocols, Judge Tevrizian scheduled an

18   additional mediation session on July 24 in which the parties worked to define and document other

19   non-material terms presented in this Agreement;

20   WHEREAS, after the parties had concluded negotiating all of the material and non-

21   material terms of the Agreement, other than the amount of attorneys' fees and expense

22   reimbursement to be paid to Class Counsel on July 24, Judge Tevrizian informed the parties that

23   they could begin negotiating the amount of attorneys' fees and expense reimbursement to be paid

24   to Class Counsel, and conducted a fourth day of mediation concerning this issue on July 31, 2015;

25   WHEREAS, despite the Parties' best efforts, and after a protracted mediation session on

26   July 31, 2015, the Parties reached an impasse with respect to Class Counsel's attorneys' fees and

27   expense reimbursement;

28

LINER LLP
1100 Glendon Avenue   14th Floor
Los Angeles, CA 90024-3518

38457.025247/4794v4

3

CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

1    WHEREAS, in hopes of bridging this impasse, Judge Tevrizian made a mediator's

2    proposal, which after much discussion over several days, was accepted by the Parties;

3    WHEREAS, based upon the extensive investigation undertaken prior to execution of this

4    Agreement, discovery provided during the negotiations and the analysis of the facts and the law

5    applicable to Plaintiff's claims, and taking into account the extensive burdens and expense of

6    litigation, including the risks and uncertainties associated with protracted trials and appeals, as

7    well as the fair, cost-effective and assured method of resolving the claims of the Settlement Class,

8    both Plaintiff and Class Counsel have concluded that this Agreement provides substantial benefits

9    to the Settlement Class and is fair, reasonable, adequate and in the best interests of Plaintiffs and

10    the Settlement Class;

11    WHEREAS, the City and the other Released Parties, defined below, have denied, and

12    continue to deny, the substantive claims set forth in the complaints in this Action and in the

13    *Bransford, Fontaine* and *Kimhi* Actions (collectively, the "Actions"), and have denied and

14    continue to deny any and all wrongdoing and liability of any kind with respect to any and all facts

15    and claims alleged and further deny that any Class Member has suffered any damage caused by

16    the City and the other Released Parties;

17    **NOW, THEREFORE, IT IS HEREBY STIPULATED, CONSENTED TO AND**

18    **AGREED,** by and between the Parties, through their respective counsel, and subject to the

19    approval of the Court, that the Actions be settled, compromised and dismissed, on the merits and

20    with prejudice, and the Released Claims be finally and fully compromised, settled and dismissed

21    as to the Released Parties, subject to and in accordance with the following terms and conditions:

22    **II.**    **DEFINITIONS**

23    As used in this Agreement and the exhibits thereto, in addition to any definitions elsewhere

24    in this Agreement, the following terms shall have the meanings set forth below:

25    1.    "Action" means *Jones v. City of Los Angeles*, Case No. BC577267 pending in the

26    Superior Court of the State of California for the County of Los Angeles.

27    2.    "Agreement" means this executed Class Action Settlement Agreement and Limited

28    Release.

38457.025-2474791v4

4

CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

3.      "CC&B System" means LADWP's Customer Care and Billing System used to bill its customers for electricity and water usage and the City of Los Angeles Bureau of Sanitation's customers for sewage and trash collection.

4.      "Claims Administrator" means Gilardi & Co., LLC, an independent service provider whose function shall be the analysis, processing and administration of all claims filed by Settlement Class Members in this Action.

5.      "Claim Form" means a document substantially in the form of the document attached to this agreement as Exhibit F.

6.      "Claim Period" means the four month (120) day period of time during which Claim Forms may be submitted to the Claims Administrator, commencing on the Notice Date.

7.      "Class Counsel" means Landskroner Grieco Merriman, LLC.

8.      "Class Representative" means Plaintiff Antwon Jones.

9.      "Complaint" means the First Amended Class Action Complaint filed in the Action.

10.     "Court" means the Superior Court of the State of California for the County of Los Angeles.

11.     "Defense Counsel" means Liner LLP.

12.     "Effective Date" means the later of the date upon which all appeals, if any, from the Final Order and Judgment (defined below) have been finally concluded and exhausted, with the date upon which the time to seek any appellate remedy from the Final Order and Judgment has expired.

13.     "Eligible Claim" means a claim or claims by a Settlement Class Member meeting the criteria for settlement benefits under this Agreement.

14.     "Final Approval Hearing" means the hearing to be held by the Court to consider and determine whether the proposed Settlement should be approved of as fair, reasonable and adequate, and whether the Final Order and Judgment should be entered.

15.     "Final Order and Judgment" means a final judgment entered by the Court in substantially the form attached as Exhibit G to this Agreement.

16.     "LADWP" means the Los Angeles Department of Water and Power.

EXHIBIT 13
Page 358

Doc# 1 Page# 100 - Doc ID = 1755355499 - Doc Type = Case

17.   "Liaison Counsel" means the Law Offices of Michael J. Libman.

18.   "Notice" means the notices disseminated in connection with the Notice Program in the form of Exhibits A-B hereto.

19.   "Notice Date" means the later of the last date of Published Notice, or the last date of emailed or mailed Notice.

20.   "Notice Program" means the plan for disseminating the Notices described in Section III.C. herein.

21.   "Parties" means the City of Los Angeles, by and through the Los Angeles Department of Water and Power, on behalf of itself, its subsidiaries, affiliates, directors, officers, and their successor(s) and Plaintiff on behalf of himself and all others similarly situated.

22.   "Persons" means persons and entities, including, without limitation, any individuals, sole proprietorships, associations, companies, partnerships, joint ventures, corporations, trusts, estates, or any other persons or entities.

23.   "Plaintiff" means Antwon Jones.

24.   "Preliminary Approval Order" means the proposed order preliminarily approving the Settlement, substantially in the form of Exhibit C hereto.

25.   "Released Claims" means any and all claims, damages, suits, demands, liabilities, judgments, losses and causes of action relating to or arising from the billing issues alleged in the operative pleadings in the Actions including but not limited to any error committed by the LADWP in over-billing its customers between September 3, 2013, through the date of entry of the Order of Final Approval, and in failing to timely include customers in the LADWP's Solar Photovoltaic Incentive Program and/or credit for excess energy generated by solar customers at any time from February 13, 2010, through the date of the entry of the Order of Final Approval, whether known or unknown, matured or unmatured, sounding in law or equity, seeking damages or any other relief, that are now recognized by law or that may be created or recognized in the future by statute, regulation, judicial decision or in any other manner, based upon any federal or state statutory or common law including but not limited to, claims sounding in tort, contract and the consumer protection laws of the United States or of any state or other jurisdiction within the

EXHIBIT 13
Page 359

Doc# 1 Page# 101 - Doc ID = 1755355499 - Doc Type = Case File - Public

1  United States, and all claims, damages, suits, demands, liabilities, judgments, losses or causes of

2  action which have been, might have been, are now, or could be asserted by any Plaintiff or any

3  Settlement Class Member arising out of, based upon, or related to, in whole or in part, the facts

4  and circumstances underlying the claims and causes of action set forth in the Action.

5      26.    "Released Parties" means individually and collectively, as appropriate, the City of

6  Los Angeles, by and through the Los Angeles Department of Water and Power, and all of its

7  predecessors and successors in interest, including but not limited to, all of its respective past and

8  present parents and subsidiaries and current and former directors, officers, employees and

9  attorneys.

10     27.    "Remediation Period" means the 18 month period during which LADWP will

11  complete stabilization and remediation of the CC&B System immediately following the date of

12  entry of the Final Order and Judgment.

13     28.    "Settlement" means the settlement embodied in and contemplated by this

14  Agreement.

15     29.    "Settlement Class" is comprised of:

16          All LADWP customers who were improperly over-charged for
            electric, water, sewage or sanitation services between the dates of
17          September 3, 2013 and the present, and who are entitled to credits or
            refunds for electric, water, sewage or sanitation services and/or for
18          participation in the LADWP's solar incentive program from
            February 13, 2010.  Excluded from the Settlement Class are the
19          Judge to whom this case is assigned, any members of the Judge's
            immediate family, and counsel of record in this action.
20

21     30.    "Settlement Class Member" means any person included within the Settlement

22  Class, which includes any person who does not timely exercise his or her right to opt out of the

23  Settlement Class pursuant to Section III.I. herein.

24     All references herein to sections, paragraphs, and exhibits refer to sections, paragraphs and

25  exhibits to this Agreement, unless otherwise expressly stated.

26     Capitalized terms used in this Agreement, but not defined above, shall have the meaning

27  ascribed to them in this Agreement and the exhibits attached hereto.

28

38457.025-2474794v4

7

CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

LINER LLP
1100 Glendon Avenue 14th Floor
Los Angeles, CA 90024-3518

EXHIBIT 13

III.   **GENERAL TERMS AND CONDITIONS OF SETTLEMENT**

   A.   **Certification of Settlement Class**

For purposes of Settlement only, and not for purposes of liability, and subject to Court approval, the Parties hereby stipulate to the certification of a class in this Action, pursuant to California Code of Civil Procedure Section 382, and California Rules of Court Rules 3.764(e) and 3.769(d), with members of the certified Class to comprise only those persons defined herein as the Settlement Class.

The Settlement Class is comprised of the following Subclasses:

- **Tiered Billing Subclass:** all residential and commercial customers of LADWP who were billed and paid for electricity or water usage at tiered rates higher than those rates that would otherwise have been used to bill these customers during the period September 3, 2013 through August 13, 2014.

- **Trend Estimate Subclass:** all residential and commercial customers of LADWP who paid electricity or water and sewer bills that were incorrectly estimated due to a defect in the Trend Estimation Algorithm used to compute these estimates during the period September 3, 2013 through August 13, 2014.

- **Closed Account with Credit Balance Subclass:** all residential and commercial customers of LADWP who: (i) have "Closed Accounts" with credit balances and (ii) are owed refunds that have been withheld by LADWP during the period of September 3, 2013 to present.

- **Premise Condition/Estimated Bill Subclass:** all residential and commercial customers of LADWP who: (i) unbeknownst to the customer, had a premise condition that caused excessive consumption of water and/or power; (ii) received estimated bills for multiple billing periods after September 3, 2013; (iii) because of these estimated bills, were prevented from timely discovering the premise condition; and (iv) were charged for greater quantities of water, power or sewage than they otherwise would have been charged.

- **Solar Customers Subclass:** all residential LADWP customers who have installed solar systems and applied to participate in the Solar Photovoltaic Incentive Program from February 13, 2010 to date and: (i) experienced delay in the final approval process beyond 30 days after submission of a complete Incentive Application and Supporting Documentation and indication that the solar system was fully permitted and ready for inspection; and/or (ii) have not been properly billed for energy consumed and/or generated; and/or (iii) have not been properly credited for excess energy generated by the customer's solar power system;

- **Automatic Bill Payment/Bank Overdraft Charge Subclass:** all LADWP customers who: (i) were enrolled in an automatic bill payment plan with a bank and (ii) were charged overdraft fees because LADWP charged the customer an incorrect amount, which, in turn, resulted in the customer's bank account being overdrawn.

LINER LLP
1100 Glendon Avenue, 14th Floor
Los Angeles, CA 90024-3518

1      ▪ **Late Payment Charge Subclass:** all LADWP customers who were assessed an inaccurate Late Payment Charge,

2

3      ▪ **Estimated Electric Bills with "Minimum Charge" Subclass:** all LADWP residential and small commercial customers: (i) whose consumption was estimated to be zero and (ii) who were, therefore, assessed a "Minimum Charge" on an electric bill when the actual usage was above the "Minimum Charge."

4

5      ▪ **Omnibus Subclass:** all LADWP residential and commercial customers that believe they were: (i) incorrectly assessed a charge associated with their power, water, sewage or trash collection at any time from September 3, 2013 to the present; or (ii) otherwise damaged as a result of their participation in the LADWP's Solar Photovoltaic Incentive Program at any time from February 13, 2010 to the present, that is not covered by any of the other Subclasses listed herein.

6

7

8

9

10         All monetary compensation to be paid out under this Settlement Agreement will be paid

11     out by not later than June 30, 2016.

12         Subject to the terms and conditions of this Agreement, the Parties agree not to oppose any

13     efforts to certify such a class. A certification pursuant to this paragraph shall not constitute, in this

14     or any other proceeding, an admission, finding or evidence that any requirement for class

15     certification is otherwise satisfied, except for the expressly enumerated purposes in this

16     Agreement.

17     **B.      Settlement Relief**

18         In consideration for the dismissal of the Actions and the covenants arising under the terms

19     of this Agreement, the Parties hereby agree as follows:

20         **1.      Monetary Relief**

21             **a.      Pre-Identified Non-Claims Made Subclass Members**

22         The Parties agree that members of the: (i) Tiered Billing Subclass; (ii) Trend Estimate

23     Subclass; (iii) Closed Account with Credit Balance Subclass; (iv) Late Payment Charge Subclass

24     and (v) Estimated Electric Bills with "Minimum Charge" Subclass shall be pre-identified as

25     members of each of these subclasses from the internal records of the LADWP and the

26     methodology for identification shall be verified and tested by the CC&B System monitoring

27     expert ("Pre-Identified Non-Claims Made Subclass Members").

28

30(57.025-2474194v4                                    9

EXHIBIT 13
Page 362

1       The Parties further agree that the LADWP shall credit (in the case of current customers) or

2 refund (in the case of former customers) 100% of any amounts that the LADWP overcharged

3 "Pre-Identified Non-Claims Made Subclass Members" during the period September 3, 2013

4 through the present.  The amounts to be: (i) credited to current customers; and (ii) refunded to

5 former customers who are "Pre-Identified Non-Claims Made Subclass Members" shall be

6 determined by the LADWP, and the methodology used to determine the amounts shall be verified

7 by the CC&B System monitoring expert and subject to Court approval.  In determining such

8 amount, the LADWP shall calculate the amount to be credited or refunded by applying the

9 applicable rates and customer usage data for the periods in question for each subclass member as

10 set forth in Section III. herein.  The Parties further agree that Pre-Identified Non-Claims Made

11 Subclass Members who do not timely exclude themselves as Class Members shall automatically

12 receive the amount of the credit or refund determined by the LADWP through this process without

13 the need to file a claim form.  The payment will be made as stated in the Notice.

14            **b.**    **Pre-Identified Claims Made Subclass Members**

15       The Parties agree that members of the: (i) Premise Condition/Estimated Bill Subclass; (ii)

16 Automatic Bill Payment/Bank Overdraft Charge Subclass and (iii) Solar Customer Subclass shall

17 be pre-identified as members of each of these subclasses from the internal records of the LADWP

18 and verified by the independent consultant ("Pre-Identified Claims Made Subclass Members").

19       The Parties agree that any member of the "Pre-Identified Claims Made Subclass" who

20 wishes to file a claim must timely complete and submit a valid claim form substantiated by the

21 documentary evidence specified in the Claim Form to the Court-appointed Claims Administrator.

22 The Claims Administrator shall be responsible for making an initial determination as to the

23 validity or invalidity of all such Claim Forms, and the final determination of whether any Claim is

24 valid or invalid rests with the Court or duly appointed designee of the Court as agreed to by the

25 Parties.

26

27

28

1    In addition, the Claims Administrator shall also be responsible for examining all Claim

2    Forms and supporting documentation submitted in support thereof and calculating the amount to

3    be refunded, credited or otherwise paid to any member of the "Pre-Identified Claims Made

4    Subclass" who files a timely claim substantiated by the required documentary support.

5    The Parties agree that, subject to Court approval, the LADWP shall refund 100% of any

6    amounts that the Claims Administrator, Court, or its appointed and agreed-to designee determines

7    the LADWP overcharged any member of the (i) Premise Condition/Estimated Bill Subclass or (ii)

8    Automatic Bill Payment/Bank Overdraft Charge Subclass during the period September 3, 2013

9    through the present.

10   The Parties further agree that, subject to Court approval, LADWP shall refund 100% of

11   any damages that the Claims Administrator, Court, or its appointed and agreed-to designee

12   determines the LADWP caused any member of the Solar Customer Subclass to incur as a result of

13   their participation in the LADWP's Solar Program during the period February 13, 2010 through

14   the present.

15   c.   *Self-Identified Claims Made Subclass Members*

16   In recognition of the possibility that some LADWP customers who have not been "pre-

17   identified" through LADWP's internal records may believe that they were: (i) overcharged as a

18   result of a billing error; or (ii) damaged as a result of their participation in the LADWP's Solar

19   Program, the Parties further agree as follows:

20   Any current or former LADWP customers who have not otherwise been "pre-identified" as

21   a member of any Subclass, but who nevertheless believe they have been overcharged as a result of

22   a billing error made by LADWP at any time since September 3, 2013; or (ii) damaged as a result

23   of their participation in the LADWP's Solar Program at any time since February 13, 2010, may

24   file a Claim Form to recover such overcharge or damages (the "Self-Identified Claims Made

25   Subclass").

26   The Parties further agree that any member of the "Self-Identified Claims Made Subclass"

27   who wishes to file a claim must timely complete and submit a valid claim form substantiated by

28   the documentary evidence specified in the Claim Form to the Court-appointed Claims

1    Administrator. The Claims Administrator shall be responsible for making an initial determination

2    as to the validity or invalidity of all such Claim Forms, and the final determination of whether any

3    Claim is valid or invalid rests with the Court or its duly appointed designee as agreed to by the

4    Parties.

5            In addition, the Claims Administrator shall also be responsible for examining all Claim

6    Forms and supporting documentation submitted in support thereof and calculating the amount to

7    be refunded, credited or otherwise paid to any member of the "Self-Identified Claims Made

8    Subclass" who files a timely claim substantiated by the required documentary support.

9            The Parties agree that, subject to Court approval, the LADWP shall refund 100% of any

10   amounts that the Claims Administrator, Court or its appointed and agreed-to designee determines

11   the LADWP overcharged any member of the "Self-Identified Claims Made Subclass" during the

12   period September 3, 2013 through the present.

13           The Parties further agree that, subject to Court approval, LADWP shall refund 100% of

14   any damages that the Claims Administrator, Court or its appointed and agreed-to designee

15   determines the LADWP caused any member of the "Self-Identified Claims Made Subclass" to

16   incur as a result of their participation in the LADWP's Solar Program during the period February

17   13, 2010 through the present.

18           2.      Remedial Relief and Corrective Actions

19           In addition to providing the foregoing monetary consideration, the Parties also hereby

20   agree that the LADWP will undertake the following remedial and corrective measures in

21   connection with the Settlement:

22                  a.      **Create and Adopt CC&B System Performance Metrics and
                            Perform Work Necessary to Achieve and Maintain Compliance
23                          with these Metrics**

24           While the LADWP has already undertaken certain remedial measures to stabilize the

25   performance and functioning of the CC&B System, the LADWP hereby agrees that it will

26   appropriate and expend an additional twenty-million dollars ($20 million) over the eighteen-month

27   CC&B System Remediation Period provided for by this Settlement to retain CC&B System

28   consultants and software engineering consultants including, but not limited to Oracle Corp., to

36457.025-2474794v.4                                12

                     CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

EXHIBIT 13
Page 365

1  assist the LADWP in remediating and stabilizing the LADWP's CC&B System to ensure that the

2  CC&B System generates and delivers timely and accurate customer bills.

3      In addition, to further enhance customer service and ensure timely delivery of accurate

4  customer bills, Defendant agrees that it will also deploy the human and financial resources

5  necessary to enable the LADWP to meet, or exceed, the following thirteen objective performance

6  benchmarks on the schedule required by this Agreement:

7      1)    **Backlogged Field Investigation Cases Customer High/Low Bill Inquiries**

8

9      Since the implementation of the CC&B System, the number of field investigation cases has

10  increased and has exceeded the ability of LADWP to process these field investigation cases in a

11  timely manner.  To further enhance customer service and to ensure accurate and timely billing of

12  customers, LADWP commits to working and completing customer high bill and low bill inquiry

13  cases and to do tasks within the service level goals.  Customer high bill and low bill inquiries are

14  tracked in field investigation cases and to do task lists.  The High/Low bill field investigation

15  cases and to do's along with other relevant tasks will be tracked and the service level reported:

16      •   Electric High Bill Complaint for Field Investigation      CM_FIEHB

17      •   Electric Low Bill Complaint for Field Investigation       CM_FIELB

18      •   Water High Bill Complaint for Field Investigation        CM_FIWHB

19      •   Water Low Bill Complaint for Field Investigation         CM_FIWLB

20  The Department will meet or exceed the following metrics.

21      **On Time Rate** – The percentage of field investigation cases and To Do tasks that were

22  completed during the month that were within 30 days of the customer request.

23      **Oldest Order** – The age of the oldest field investigation case and To Do task measured

24  from the date of the customer request to the date that the task was completed.

25

26

27

28

13

CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

Doc# 1 Page# 108 - Doc ID = 1755355499 - Doc Type = Case File - Public

EXHIBIT 13
Page 366

**A) After 180 Days**

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 50% |
| Oldest Open FI case or To Do | The age of the oldest field investigation case and To Do task measured from the date of the customer request to the date that the task was completed. | < 90 days |

**B) After 360 Days**

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 75% |
| Oldest Open FI case or To Do | The age of the oldest field investigation case and To Do task measured from the date of the customer request to the date that the task was completed. | < 75 days |

**C) After 540 Days**

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 95% |
| Oldest Open FI case or To Do | The age of the oldest field investigation case and To Do task measured from the date of the customer request to the date that the task was completed. | < 60 days |

2)    Backlogged Field Investigation Cases with Billing Instructions

Since the implementation of the CC&B System, the number of field investigation cases and to do tasks has increased and has exceeded the ability of LADWP to process these field investigation cases in a timely manner. Customer requests are tracked in field investigation cases and to do task lists. To further enhance customer service and to ensure accurate and timely billing

38457.025-2474.794v4

14

CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

of customers, LADWP commits to working and completing field investigation cases with billing instructions cases and to do tasks within the service level goals. The field investigation cases with billing instructions cases and to do tasks along with other relevant tasks will be tracked and the service level reported:

- Account Service FI To Do                    CM_FIASU

The Department will meet or exceed the following metrics.

**On Time Rate** – The percentage of field investigation cases and To Do tasks that were completed during the month that were within 30 days of the customer request.

**Oldest Order** – The age of the oldest field investigation case and To Do task measured from the date of the customer request to the date that the task was completed.

A) After 180 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 50% |
| Oldest Open FI case or To Do | The age of the oldest field investigation case and To Do task measured from the date of the customer request to the date that the task was completed. | < 90 days |

B) After 360 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 75% |
| Oldest Open FI case or To Do | The age of the oldest field investigation case and To Do task measured from the date of the customer request to the date that the task was completed. | < 75 days |

C) After 540 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within | > 95% |

38457,025-2474099v4

15

CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

EXHIBIT 13
Page 368

Doc# 1 Page# 110 – Doc ID = 1755355499 – Doc Type = Case

| | | | |
|---|---|---|---|
| 1 | | the initial service window. | |
| 2 | Oldest Open FI case or To Do | The age of the oldest field investigation case and To Do task measured from the date of the customer request to the date that the task was completed. | < 60 days |

3)      **Backlogged Field Investigation Cases Cut-in-Flat and Defective**

Since the implementation of the CC&B System, the number of field investigation cases and to do tasks has increased and has exceeded the ability of LADWP to process these field investigation cases in a timely manner.  LADWP field crews report unmetered electric services that are cut-in-flat, unmetered water service that has a spacer and defective meters.  To ensure accurate and timely billing of the customer, LADWP needs to install working meters by either replacing defective meters or working with the customers to resolve the issue necessitating service to be unmetered.  The field investigation cases and to do's along with other relevant tasks will be tracked and the service level reported:

- Electric Cut Flat Investigation for FI          CM_FIECF
- Electric Defective Meter Investigation for FI          CM_FIEDF
- Pending Cut Flat or Spacer Case for FI          CM_FIPCS
- Pending Defective Meter Case for FI          CM_FIPDM
- Water Defective Meter Investigation for FI          CM_FIWDF
- Water Spacer Investigation for FI          CM_FIWSP

The Department will meet or exceed the following metrics.

**On Time Rate** – The percentage of field investigation cases and To Do tasks that were completed during the month that were within 30 days of the customer request.

**Oldest Order** – The age of the oldest field investigation case and To Do task measured from the date of the customer request to the date that the task was completed.

A) After 180 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 50% |

38457.025-2/74794v4

16

CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

LINER LLP
1100 Glendon Avenue   14th Floor
Los Angeles, CA 90024-3518

EXHIBIT 13

(Page 112 of 338)

| 1 | Oldest Open FI case or To Do | The age of the oldest field investigation case and To Do task measured from the date of the customer request to the date that the task was completed. | < 90 days |

B) After 360 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate case or To Do | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 75% |
| Oldest Open FI case or To Do | The age of the oldest field investigation case and To Do task measured from the date of the customer request to the date that the task was completed. | < 75 days |

C) After 540 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 95% |
| Oldest Open FI | | < 60 days |

4)   **Backlogged Field Investigation Cases with Other Issues**

Since the implementation of the CC&B System, the number of field investigation cases and to do tasks including final inspection of residential solar systems for participation in the Solar Incentive Program has exceeded the ability of the Department to process these field investigation cases in a timely manner. This metric tracks the field investigation cases and to do's not tracked in other field investigation metrics. These field investigation cases and to do's will be tracked and the service level reported:

- Electric Why High Investigation for FI          CM_FIEWH
- Electric Why Low Investigation for FI           CM_FIEWL
- Electric Classification Survey Investigation for FI   CM_FIECS
- Electric Meter Survey Switch Investigation for FI    CM_FIEMS

38457.02 S-2474794v4                    17

EXHIBIT 13
Page 370

(Page 113 of 338)

1. Electric Rate Survey Investigation for FI — CM_FIERS
2. Electric Service Investigation for FI — CM_FIESI
3. Electric Meter Survey Serves Investigation for FI — CM_FIESS
4. Pending Meter Survey Case for FI — CM_FIPSV
5. Water Why High Investigation for FI — CM_FIWWH
6. Water Why Low Investigation for FI — CM_FIWWL
7. Water Classification Survey Investigation for FI — CM_FIWCS
8. Water Meter Survey Switch Investigation for FI — CM_FIWMS
9. Water Rate Survey Investigation for FI — CM_FIWRS
10. Water Service Investigation for FI — CM_FIWSI
11. Water Meter Survey Serves Investigation for FI — CM_FIWSS
12. Request for Meter Survey — CMMTRSUR
13. Electric Classification Survey Investigation for FI — CM_FIECS
14. Electric Meter Survey Switch Investigation for FI — CM_FIEMS
15. Electric Rate Survey Investigation for FI — CM_FIERS
16. Electric Service Investigation for FI — CM_FIESI
17. Electric Meter Survey Serves Investigation for FI — CM_FIESS
18. Pending Meter Survey Case for FI — CM_FIPSV
19. Water Classification Survey Investigation for FI — CM_FIWCS
20. Water Meter Survey Switch Investigation for FI — CM_FIWMS
21. Water Rate Survey Investigation for FI — CM_FIWRS
22. Water Service Investigation for FI — CM_FIWSI
23. Water Meter Survey Serves Investigation for FI — CM_FIWSS
24. Request for Meter Survey — CMMTRSUR

25. The Department will meet or exceed the following metrics.

26. On Time Rate – The percentage of field investigation cases and To Do tasks that were
27. completed during the month that were within 30 days of the customer request.
28. Oldest Order – The age of the oldest field investigation case and To Do task measured

38457.025 2474794v4

18

CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

EXHIBIT 13
Page 371

Doc# 1 Page# 113 – Doc ID = 1755355499 – Doc Type = Case Public

from the date of the customer request to the date that the task was completed.

2  A) After 180 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate case or To Do | The on time rate is the percentage of field activities completed in a time period within the initial service window. | >25% |
| Oldest Open FI | The age of the oldest field investigation case and To Do task measured from the date of the customer request to the date that the task was completed. | <90 days |

B) After 360 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 50% |
| Oldest Open FI case or To Do | The age of the oldest field investigation case and To Do task measured from the date of the customer request to the date that the task was completed. | < 75 days |

C) After 540 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 90% |
| Oldest Open FI case or To Do | The age of the oldest field investigation case and To Do task measured from the date of the customer request to the date that the task was completed. | < 60 days |

5)  Backlogged Field Services Field Activities

New customers as well as existing customers who wish to start service at a new address or existing customers who wish to stop service at their existing address contact LADWP to request the utility services be connected or disconnected. LADWP will schedule a Field Service

LINER
1100 Glendon Avenue, 14th Floor
Los Angeles, CA 90024-3518

EXHIBIT 13
Page 372

Doc# 1 Page# 114 - Doc ID = 1755355499 - Doc Type = Case

1 representative to visit the customer's premise and start or stop the service and obtain a meter read,

2 which is used for the opening or closing bill. The field service field activities are tracked and the

3 service level reported:

4 The Department will meet or exceed the following metrics.

5     On Time Rate – The percentage of field service field activities that were completed during

6     the month that were within 1 business day of the customer requested date for start service

7     and 10 business day of the customer requested date for stop service.

8 A) After 180 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 75% |

13 B) After 360 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 85% |

17 C) After 540 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 95% |

22     6)    Defective Meters

23     LADWP field crews report unmetered electric and water services that have defective

24 meters. To ensure accurate and timely billing of the customer, LADWP needs to install working

25 meters by replacing defective meters. The replacement of defective meters will be tracked and the

26 service level reported:

27 The Department will meet or exceed the following metrics.

28     On Time Rate – The percentage of field activities to replace defective meters that were

(Page 116 of 338)

completed during the month that were within 90 days of the date the defective meter was first reported.

A) After 180 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 25% |
| Oldest Open Defective Meter | | < 180 days |

B) After 360 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 50% |
| Oldest Open Defective Meter | | < 150 days |

C) After 540 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 90% |
| Oldest Open Defective Meter | | < 120 days |

7)    Cut In Flat Electric Meters and Spacer on Water Meters

LADWP field crews report unmetered electric service that are cut-in-flat and unmetered water service that has a spacer. To ensure accurate and timely billing of the customer, LADWP needs to work with the customers to resolve the issue necessitating service to be unmetered. The tasks to install meters on unmetered services will be tracked and the service level reported. The Department will meet or exceed the following metrics.

LINER LLP
1100 Glendon Avenue 14th Floor
Los Angeles, CA 90024-3518

1  **On Time Rate** – The percentage of field activities to install meters on unmetered services

2  that were completed during the month that were within 90 days of the date the defective

3  meter was first reported.

4  A) After 180 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 25% |
| Oldest Open Cut-In-Flat or Spacer | | < 180 days |

B) After 360 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 50% |
| Oldest Open Cut-In-Flat or Spacer | | < 150 days |

C) After 540 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 90% |
| Oldest Open Cut-In-Flat or Spacer | | < 120 days |

    8)    **Backlogged Meter Reread Field Activities**

To further enhance customer service and to ensure accurate and timely billing of the customer, LADWP commits to meeting meter reread field activity service level goals. LADWP customers who have an outstanding meter read because: (1) a high low billing exception has occurred and the biller requests a re-read to verify consumption, (2) the customer has requested a re-read of their meter to verify consumption, or (3) the meter reader was unable to gain access to

22

LINER LLP
1100 Gordon Avenue, 14th Floor
Los Angeles, CA 90024-3608

EXHIBIT 13
Page 375

Doc# 1 Page# 117 - Doc ID = 1755355499 - Doc Type = Case Misc

1   the property to read the meter.   The meter re-read field activities will be tracked and the service

2   level reported:

3   The Department will meet or exceed the following metrics.

4       **On Time Rate** – The percentage of meter reread field activities that were within 15 days

5       of the date the defective meter was first reported.

6   A) After 180 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 50% |

11  B) After 360 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 75% |

16  C) After 540 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 95% |

21       9)      **Backlogged Field Collections Field Activities**

22       To further enhance customer service and to avoid creating a hardship for a customer by

23  allowing them to become over extended by exceeding their ability to pay, LADWP commits to

24  meeting field collection field activity service level goals to reconnect service after payment or

25  sever service for non-payment in a timely manner.  The collection activity will be in compliance

26  with the LADWP field collection policy at the time the collection is attempted.  The field

27  collection field activities will be tracked and the service level reported:

28  The Department will meet or exceed the following metrics.

38457.025-2474794v4                          23
                CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

EXHIBIT 13
Page 376

Doc# 1 Page# 118 - Doc ID = 1755355499 - Doc Type = Case_File - Public

LINER LLP
1100 Glendon Avenue 14th Floor
Los Angeles, CA 90024-3518

On Time Rate — The percentage of field collection field activities that were within 30 days of the date the defective meter was first reported.

Oldest Order — The age of the oldest field collection field activity measured from the date the field can first be worked.

A) After 180 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 25% |
| Oldest Open field collection field activity | | < 90 days |

B) After 360 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 50% |
| Oldest Open field collection field activity | | < 75 days |

C) After 540 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 90% |
| Oldest Open field collection field activity | | < 60 days |

10)    Backlogged Water And Power Distribution Meter Exchange

To further enhance customer service and to ensure accurate and timely billing of the customer, LADWP commits to meeting water and power meter exchange field activity service level goals. The meter exchange field activities will be tracked and the service level reported. The Department will meet or exceed the following metrics.

38457.003-2472794v4                          24
CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

EXHIBIT 13

**On Time Rate** – The percentage of meter exchange field activities that were within 30 days of the date the exchange was scheduled for completion.

**Oldest Order** -– The age of the oldest meter exchange field activity measured from the date the field activity was scheduled for completion.

A) After 180 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activites completed in a time period within the initial service window. | > 25% |
| Oldest Open Meter Exchange | | < 90 days |

B) After 360 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activites completed in a time period within the initial service window. | > 50% |
| Oldest Open Meter Exchange | | < 75 days |

C) After 540 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 90% |
| Oldest Open Meter Exchange | | < 60 days |

11)     Backlogged Manually Generated Billing To Do's

To further enhance customer service and to ensure accurate and timely billing of customers, LADWP commits to working and completing billing error To Do tasks within the service level goals. The billing To Do tasks will be tracked and the service level reported: The Department will meet or exceed the following metrics.

LINER LLP
1100 Glendon Avenue · 14th Floor
Los Angeles, CA 90024-3503

EXHIBIT 13
Page 378

Doc# 1 Page# 120 - Doc ID = 1755355499 - Doc Type = Case

On Time Rate – The percentage of billing To Do tasks that were completed within 30 days of the date the To Do task was first created.

A) After 180 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of billing To Dos completed within the 30 day service window. | > 25% |

B) After 360 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of billing To Dos completed within the 30 day service window. | > 50% |

C) After 540 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of billing To Dos completed within the 30 day service window. | > 95% |

12)   Premise Management

The Premise Management Group will be established primarily to aid customers who have newly installed permanent services, which have not been entered into the CC&B system, and who are therefore not receiving bills.

The Department will establish a premise management group to manage the addition of new premises and services within the LADWP service territories. The premise management group will be established within 60 days of final approval of the Settlement.

13)   Customer Service Call Times And Responses

To further enhance customer service, the LADWP commits to meeting a monthly Average Speed of Answer ("ASA") in both their residential and commercials call centers as called out below. The ASA is the average amount of time it takes for a call to be answered in the call centers

38457.025-2474784v4

26

CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

EXHIBIT 13
Page 379

1  during the month. This includes the amount of time callers wait in the automatic call director

2  ("ACD") queue after navigating through the IVR until the agent answers the phone. It also does

3  not include callers who use a self-service IVR option and never reach the ACD queue.

4  A) After 180 Days

| Metric | Description | Service Goals |
|---|---|---|
| Average Speed of Answer | Average Speed of Answer (ASA) is a call center metric for the average amount of time it takes for calls to be answered in a call center during a specific time period. | < 5 min |

B) After 360 Days

| Metric | Description | Service Goals |
|---|---|---|
| Average Speed of Answer | Average Speed of Answer (ASA) is a call center metric for the average amount of time it takes for calls to be answered in a call center during a specific time period. | < 4 min |

C) After 540 Days

| Metric | Description | Service Goals |
|---|---|---|
| Average Speed of Answer | Average Speed of Answer (ASA) is a call center metric for the average amount of time it takes for calls to be answered in a call center during a specific time period. | < 3 min |

20        **b.**    **Appointment of Independent CC&B System Monitoring Expert**

21       In furtherance of the LADWP's goal of restoring customer confidence and the public's

22  trust and confidence in the LADWP's ability to deliver timely and accurate customer bills and a

23  level of customer service that consistently meets or exceeds industry standards, the Parties further

24  agree that Plaintiff will retain the services of a nationally recognized CC&B consulting expert,

25  Paul Bender Consulting ("Bender Consulting"), to verify data, establish that the mechanism for

26  identifying affected accounts is fair and reasonable, confirm the accuracy of credits and refunds

27  due to current and former customers, and monitor the CC&B remediation effort undertaken by the

28  LADWP and its independent CC&B consultants during the 18 month Remediation Period.

38457.025D4747D4v4               27
CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

EXHIBIT 13
Page 380

Doc# 1 Page# 122 - Doc ID = 1755355499 - Doc Type = Case Doc

1    The Parties further agree that Bender Consulting will be afforded reasonable access to the

2  LADWP's CC&B System remediation plan and will be routinely permitted to interview

3  LADWP's IT staff assigned to the CC&B remediation project and CC&B System consultants

4  working on the remediation project for the purpose of monitoring the resources devoted to the

5  remediation project and LADWP's progress toward meeting or exceeding the metrics specified in

6  Section III.B.2.a. above.  The Parties hereto further agree that Bender Consulting will provide

7  independent detailed written quarterly reports to Class Counsel, Defense Counsel, the LADWP

8  Board of Commissioners, the General Manager of the LADWP, and the Office of Public

9  Accountability, detailing its quarterly findings.

10    The Parties further agree that Class Counsel shall be responsible for preparing and filing

11  quarterly status reports with the Court that inform the Court of Bender Consulting's quarterly

12  findings.  The quarterly reports prepared by Bender Consulting will also be attached as Exhibits to

13  the Status Reports to the Court.

14         c.      **Independent CC&B System Audits to Confirm Accuracy of CC&B System**

15

16    In furtherance of the LADWP's goal to restore customer and public trust and confidence in

17  the LADWP's ability to deliver accurate and timely customer bills and to consistently deliver

18  customer service that meets or exceeds industry standards, the Parties hereto further agree that, at

19  the conclusion of the 18 month Remediation Period, the performance capabilities, including the

20  ability of the CC&B System to consistently deliver timely and accurate customer bills, shall be

21  audited by an independent auditing firm at LADWP's cost.  This initial audit report will be

22  completed immediately following the 18 month Remediation Period.

23    The results of the independent CC&B System audit conducted at the end of the 18 month

24  Remediation Period shall be set forth in a detailed audit report that will be provided to the

25  LADWP Board of Commissioners, the General Manager of the LADWP, the Office of Public

26  Accountability, Class Counsel, and Defense Counsel.

27    The Parties further agree that 12 months *after* the conclusion of the 18 month Remediation

28  Period, the performance capabilities, including the ability of the CC&B System to consistently

38457.025-2/76794v4                    28

CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

1   deliver timely and accurate customer bills, shall be audited by an independent auditing firm for a

2   second time at LADWP's cost.  The purpose of this second audit shall be to determine and report

3   on whether the CC&B System continues to consistently deliver timely and accurate customer bills

4   18 months after the Remediation Period has been concluded.

5          The results of this second independent CC&B System audit shall also be set forth in a

6   detailed audit report that will be provided to the LADWP Board of Commissioners, the General

7   Manager of the LADWP, the Office of Public Accountability, Class Counsel, and Defense

8   Counsel.

9          The Parties further agree that, in the event that the second independent audit confirms that

10  the LADWP is in substantial compliance with its obligations arising under this Agreement,

11  LADWP's obligations under the Settlement will terminate upon the LADWP's Board of

12  Commissioners approving the second audit and the Court issuing a final order terminating the

13  litigation.  In addition, the Parties agree that Class Counsel will have access to confirmatory

14  discovery for the purpose of assessing the LADWP's compliance, or lack thereof, with LADWP's

15  obligations arising under this Agreement until such time as the Court issues an Order terminating

16  the litigation.

17         The Parties further agree that Class Counsel shall be responsible for preparing and filing

18  status reports with the Court that inform the Court of the results of the initial and second

19  independent CC&B System audits.  The independent audit reports prepared by the CC&B System

20  monitoring expert will also be attached as Exhibits to all such Status Reports to the Court.

21                 d.     Create and Implement Internal Billing "Tiger Team" To
                          Address Unique or Complex Billing Issues
22

23         In recognition of the fact that certain types of customer bills often require a heightened

24  level of customer service and in furtherance of the LADWP's goal to deliver accurate and timely

25  bills to all of its customers, including those customers who require a heightened level of customer

26  care and service, the Parties hereby agree that the LADWP will establish and fully staff a "Tiger

27  Team" with not less than ten customer service representatives who have extensive training in

28  complex billing matters to address escalated or complex customer billing concerns.

EXHIBIT 13
Page 382

1    The LADWP will work with Class Counsel to develop internal guidelines and a process

2    for identifying and escalating all highly complex customer billing issues to ensure that all

3    customers, including those customers with extremely complex bills, receive the level of customer

4    care necessary to timely resolve any and all billing issues.

5    The Tiger Team will become a permanent unit within the LADWP's Customer Service

6    organization and will be established and fully staffed within 60 days of the Settlement being

7    finally approved by the Court.

8        e. **Create and Implement Information Technology Department Project Management Office**

9

10    In recognition of the fact that the LADWP is the largest municipal utility in the United

11    States and is anticipated to be replacing and/or significantly upgrading significant portions of its

12    information technology infrastructure over the course of the next several years, the Parties agree

13    that the LADWP will permanently establish a Project Management Organization ("PMO") within

14    six months of the Court finally approving the Settlement.  The PMO will be responsible for

15    managing and implementing all aspects of all future significant information technology projects

16    undertaken by the LADWP.

17    To create the PMO, the Parties further agree that the LADWP will seek the necessary

18    authority to create an exempt position that will be titled "Chief Project Manager." Upon approval

19    of this exempt position, the LADWP will then seek authority to conduct a national recruiting

20    campaign to recruit and hire the most qualified candidate available.  Once hired, the Chief Project

21    Manager will report directly to the LADWP's Chief Administrative Officer.

22    The Parties further agree that the PMO organization shall be organized, staffed and

23    managed so as to ensure continuity and adherence to then-current industry best practices.  The

24    PMO will be staffed with at least three Senior Project Managers who will be selected through a

25    competitive process by, and report directly to, the LADWP's Chief Project Manager.  Each of the

26    three Senior Project Managers will be assigned various IT related projects to be undertaken by the

27    LADWP and will be responsible for assembling Project Teams of varying size and membership.

28    Each Project Team will be staffed with qualified individuals drawn from the LADWP's Customer

CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

EXHIBIT 13

1  Service Division, IT Division, Field Services, Water Services, Power Services, Financial Services

2  Organization, external consultants and in-house or outside legal counsel, as appropriate to ensure

3  the successful implementation and completion of each IT related project undertaken by the

4  LADWP.

        **f.    Amend Rule 17 of the Rules Governing Water and Electric Service**

7  The Parties recognize and agree that:

8      i.   the timely issuance and collection of accurate customer bills is a cornerstone of sound business practices at the LADWP;

9,10      ii.   as a matter of fairness and customer relations, the LADWP is responsible for timely and accurate billing;

11,12      iii.   receiving accurate bills at regular intervals in accordance with applicable rules is a basic LADWP customer right;

13      iv.   the LADWP's failure to issue a bill, as well as issuing an estimated bill due to circumstances within the LADWP's control, may constitute a billing error in certain circumstances; and

14,15,16      v.   in the situations where the LADWP has not issued timely or accurate bills and has nevertheless undertaken to retroactively collect such bills to bring customer accounts current, the LADWP may have created a hardship for its customers.

17      In recognition of the fact that the LADWP is committed to the issuance of timely and

18  accurate bills to its customers and, pursuant to the terms of this Settlement, the Parties agree that

19  the Board of Commissioners of the LADWP will amend Rule 17 of the Rules Governing Water

20  and Electric Service ("Rule 17") to provide in relevant part:

21      1.   **Residential Customers**

22,23,24  When a Department error in billing is discovered on a Residential Customer's account and the date of its occurrence can be determined, the overcharge or undercharge will be computed back to, but not beyond that date, but not in any event exceeding a maximum of 270 days prior to the date of discovery of the overcharge or undercharge.

25,26,27,28  The foregoing is not applicable to: (i) "back-dated service connection"; (ii) energy theft; (iii) water theft; (iv) illegal diversion; (v) fraud; (vi) customer refusing access; and (vii) all instances where delay or error in billing is solely attributable to customer action or inaction which serves to impede LADWP's ability to conduct its business.

2.     **Commercial Customers**

When a Department error in billing is discovered on a Commercial Customer's account and the date of its occurrence can be determined, the overcharge or undercharge will be computed back to, but not beyond that date, but not in any event exceeding four years prior to the date of discovery of the overcharge or undercharge.

The foregoing provision is subject only to the "extreme hardship exception" which is only applicable to businesses that employ 25 or fewer employees ("Qualified Businesses").    Pursuant to the "extreme hardship exception," a Qualified Business may apply to the LADWP for additional time to pay the back-billed amount and such applications will be considered on a case by case basis by the LADWP.

The Parties hereto also agree that all residential and commercial customers who receive a corrected back-bill after the Settlement is finally approved by the Court shall have a period of four years from the date on which they receive a corrected back-bill to pay the entirety of the back-billed amount only, in full, without penalty or interest, in equal monthly installments.  To qualify for the foregoing, customers must remain current on their most recent bill.  The Parties further agree that, in the event that any residential or commercial customer fails to timely make any payments due of any portion of the back-billed amounts in accordance with these terms, the entirety of the back-billed amount shall immediately become due and payable.

C.     **Notice Program**

Not later than 30 business days after the entry of the Order granting Preliminary Approval, Class Counsel shall cause Notice to be disseminated as directed in the Order of Preliminary Approval as follows:

1.     **Mailed Notice**

Defendant shall directly mail, via United States First Class Mail, a long form notice to all those customers of LADWP for whom Defendant has street addresses and with whom Defendant routinely communicates via United States First Class Mail pursuant to customers' instructions in the form of Exhibit A hereto.  The Mailed Notice shall:

a.     contain a short, plain statement of the background of the Action and the Settlement;

38457.025-2474784v4                                    32
CLASS ACTION SETTLEMENT AGREEMENT / ND LIMITED RELEASE

EXHIBIT 13
Page 385

1  b.  describe the relief outlined in this Agreement;

2  c.  state that any relief to Settlement Class Members is contingent on the

3     Court's final approval of the Settlement;

4  d.  inform Settlement Class Members that, if they do not exclude themselves

5     from the Settlement Class, they may be eligible to receive the relief under

6     the Settlement;

7  e.  inform Settlement Class Members that they may exclude themselves from

8     the Class by submitting a written exclusion request postmarked no later than

9     90 days after the Notice Date;

10 f.  inform Settlement Class Members that they may object to the proposed

11    Settlement by filing and serving a written statement of objections no later

12    than 90 days after the Notice Date;

13 g.  inform Settlement Class Members that any Final Order and Judgment

14    entered in the Action, whether favorable or unfavorable to the Settlement

15    Class, shall include, and be binding on, all Settlement Class Members who

16    have not been excluded from the Class, even if they have objected to the

17    Settlement; and

18 h.  inform Settlement Class Members of the terms of the Release.

19 2.  **Emailed Notice**

20 Defendant shall send via email, a long form notice to all those customers of LADWP for

21 whom Defendant has email addresses and with whom Defendant routinely communicates via

22 email pursuant to customers' instructions in the form of Exhibit A hereto.  The Emailed Notice

23 shall:

24 a.  contain a short, plain statement of the background of the Action and the

25    Settlement;

26 b.  describe the relief outlined in this Agreement;

27 c.  state that any relief to Settlement Class Members is contingent on the

28    Court's final approval of the Settlement;

1      d.    inform Settlement Class Members that, if they do not exclude themselves

2            from the Settlement Class, they may be eligible to receive the relief under

3            the Settlement;

4      e.    inform Settlement Class Members that they may exclude themselves from

5            the Class by submitting a written exclusion request postmarked no later than

6            90 days after the Notice Date;

7      f.    inform Settlement Class Members that they may object to the proposed

8            Settlement by filing and serving a written statement of objections no later

9            than 90 days after the Notice Date;

10     g.    inform Settlement Class Members that any Final Order and Judgment

11           entered in the Action, whether favorable or unfavorable to the Settlement

12           Class, shall include, and be binding on, all Settlement Class Members who

13           have not been excluded from the Class, even if they have objected to the

14           Settlement; and

15     h.    inform Settlement Class Members of the terms of the Release.

16    3.    **Published Notice**

17        Defendant shall cause a summary notice to be published in the form of Exhibit B hereto

18 one time in *The Los Angeles Times* and one time in *La Opinion*. The Published Notice shall not be

19 less than ¼ of a page. The Published Notice shall:

20     a.    contain a short, plain statement of the background of the Action and the

21           Settlement;

22     b.    describe the relief outlined in this Agreement;

23     c.    inform Settlement Class Members that, if they do not exclude themselves

24           from the Settlement Class, they may be eligible to receive the relief under

25           the Settlement;

26     d.    inform Settlement Class Members that they may exclude themselves from

27           the Class by submitting a written exclusion request postmarked no later than

28           90 days after the Notice Date;

LINER LLP
1100 Glendon Avenue 14th Floor
Los Angeles CA 90024-3518

30457.025-2474794v4

34

CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

EXHIBIT 13
Page 387

Doc# 1 Page# 129 - Doc ID = 1755355499 - Doc Type = Case

e.  inform Settlement Class Members that they may object to the proposed Settlement by filing and serving a written statement of objections no later than 90 days after the Notice Date; and

f.  inform Settlement Class Members that any Final Order and Judgment entered in the Action, whether favorable or unfavorable to the Settlement Class, shall include, and be binding on, all Settlement Class Members who have not been excluded from the Class, even if they have objected to the Settlement.

4.  **Internet and Website Notice**

Notice of the Settlement will also be published on LADWP's website and on the website of the Claims Administrator.

The Parties agree that the methods of Notice set forth in these Sections C.1.-C.4. constitute the best form of Notice to the Settlement Class that is practicable under the circumstances.

Defendant shall pay all costs and expenses associated with disseminating the Notices described herein.

D.  **Release, Waiver and Covenant Not To Sue**

As of the Effective Date, and in consideration of this Agreement and the benefits extended to the Settlement Class, Plaintiff, on behalf of himself and the Settlement Class Members, and each Settlement Class Member, on behalf of himself or herself and his or her respective successors and assigns hereby fully releases and forever discharges the Released Parties from the Released Claims.

Plaintiff, on behalf of himself and the Settlement Class Members, fully understand that if any fact relating to any matter covered by this Agreement is later found to be other than, or different from, the facts now believed by Plaintiff to be true, Plaintiff, on behalf of himself and the Settlement Class Members, expressly accepts and assumes the risk of such possible differences in fact and acknowledge that this Agreement shall nevertheless remain fully binding and effective.

Upon entry of the Final Order and Judgment, Plaintiff shall have, and each and every Settlement Class Member shall be deemed to have, on behalf of the Settlement Class Member and

24457.025-2474794v4

35

CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

EXHIBIT 13
Page 388

1    the Settlement Class Members' respective successors and assigns, covenanted and agreed to:  (i)

2    forever refrain from instituting, maintaining or proceeding in any action against the Released

3    Parties with respect to any Released Claims; (ii) release and forever discharge the Released Parties

4    from each and every such Released Claim; and (iii) this Agreement being pleaded as a full and

5    complete defense to, and being used as the basis for a temporary restraining order or preliminary

6    or permanent injunction against, any action, suit or other proceeding which has been or may be

7    instituted, prosecuted, continued to be prosecuted, or attempted, asserting any Released Claim.

8        In addition, Defendant hereby releases, discharges and waives any and all claims that

9    Defendant had or may have had, asserted or not, against Plaintiff or Plaintiff's counsel.

10       E.    Confirmatory Discovery

11       The Settlement is subject to Plaintiff completing reasonable confirmatory discovery

12   including, but not limited to, any of the following:  (1) responding to and producing documents

13   responsive to a request by Plaintiff for the information below and (2) providing evidence from

14   designated LADWP representatives in the subject areas of requested inquiry:

15           ▪ Criteria used for identification of membership in each identified sub-class;

16           ▪ The internal methodology, criteria, queries used and data relied upon for the
              evaluation of all class members' accounts to determine credit or refund
17            eligibility and amount of credit or refund and validation protocols;

18           ▪ Reports and all data documenting the total payment of credits and/or refunds
              issued to customers and from ongoing remediation efforts ;
19
             ▪ Remediation implementation protocols, progress reports, updates, and the
20            metrics generated from reporting; and

21           ▪ Such other items as are mutually agreed upon to confirm the fairness,
              reasonableness and adequacy of the Settlement.
22

23       F.    Non-Admission of Liability

24       This Agreement is made for settlement purposes only, neither the fact of nor any specific

25   provision contained in this Agreement nor any action taken hereunder shall constitute, or be

26   construed as, any admission of the validity of any claim or any fact alleged by Plaintiff or by any

27   other person included within the Settlement Class of any wrongdoing, fault, violation of law, or

28   liability of any kind on the part of Defendant.  This Agreement constitutes a compromise pursuant

EXHIBIT 13
Page 389

Doc# 1 Page# 131 - Doc ID = 1755355499 - Doc Type = Case

1  to California Evidence Code Section 1152(a).  It shall not be offered or be admissible, either in

2  whole or in part, as evidence against Defendant, except in any action or proceeding to enforce its

3  terms.

4     G.    Preliminary Approval

5        Plaintiff shall present this Agreement to the Court by way of a motion seeking certification

6  of the Settlement Class and preliminary approval of the Settlement reflected in this Agreement

7  (the "Motion for Preliminary Approval") by no later than August 17, 2015, with an oral hearing on

8  the motion set for September 11, 2015.  Defendant shall join in Plaintiff's request for preliminary

9  approval of this Agreement and certification of the Settlement Class.  The Motion for Preliminary

10 Approval shall apply for an order substantially in the form of Exhibit C hereto ("Preliminary

11 Approval Order").  The Motion for Preliminary Approval shall request an order:

12         a.    consolidating the Actions;

13         b.    for preliminary approval of this Agreement;

14         c.    for certification, for settlement purposes, of the Settlement Class;

15         d.    for the appointment of Class Counsel and Liaison Counsel as counsel for

16              the Settlement Class;

17         e.    for the appointment of Plaintiff as the Class Representative for the

18              Settlement Class;

19         f.    for the approval of the Notices in the form substantially similar to those

20              attached as Exhibits A and B hereto; and

21         g.    setting a schedule for final approval of the Settlement.

22    H.    Claims Process

23        Settlement Class membership and the amount of monetary relief to which each Settlement

24 Class Member may be entitled will be accomplished by a process that includes:   (i) pre-

25 identification and/or (ii) self-identification of Settlement Class Members.

26

27

28

38457.025-2474194v4

37

CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

LINER LLP
1100 Glendon Avenue   14th Floor
Los Angeles, CA 90024-3518

EXHIBIT 13
Page 390

Doc# 1 Page# 132 - Doc ID = 1755355499 - Doc Type = Case

1        **1.**    **Pre-identification**

2            **a.**    **Pre-Identified Non-Claims Made Subclass Members**

3        Not later than 90 days after the entry of the Order granting Preliminary Approval,

4 Defendant shall identify those Settlement Class Members that are included in the Pre-Identified

5 Non-Claims Made Subclass and the amount of monetary credit (if the Pre-Identified Non-Claims

6 Made Subclass Member is a current LADWP customer) or refund (if the Pre-Identified Non-

7 Claims Made Subclass Member is a former LADWP customer with a closed LADWP account) to

8 which each Pre-Identified Non-Claims Made Subclass Member is entitled, based on computations

9 performed by Defendant.

10        Defendant shall provide each Pre-Identified Non-Claims Made Subclass Member with a

11 letter in the form of Exhibit D hereto, either by United States First Class Mail or email, no later

12 than 90 days after the entry of the Order granting Preliminary Approval.

13        Such letters shall indicate:  (a) the particular Subclass(es) in which each Pre-Identified

14 Non-Claims Made Subclass Member is included; (b) the amount of the monetary credit or refund

15 that each Pre-Identified Non-Claims Made Subclass Member is entitled; and (c) instructions on

16 how to opt-out, in the event that a Pre-Identified Non-Claims Made Subclass Member wishes to

17 exclude himself/herself from the Settlement Class.  Such letters shall further state that, in the event

18 the Court finally approves the Settlement, and the Pre-Identified Non-Claims Made Subclass

19 Member is satisfied with the amount of the monetary credit or refund identified in the letter, the

20 Pre-Identified Non-Claims Made Subclass Member need not take any further action to recover the

21 credit or refund.

22            **b.**    **Pre-Identified Claims Made Subclass Members**

23        Additionally, not later than 90 days after the entry of the Order granting Preliminary

24 Approval, Defendant shall identify those Settlement Class Members that are included in the Pre-

25 Identified Claims Made Subclass.

26        Defendant shall provide each Pre-Identified Claims Made Subclass Member with a letter in

27 one of the forms of Exhibit E hereto, either by United States First Class Mail or email, no later

28 than 90 days after the entry of the Order granting Preliminary Approval.

EXHIBIT 13
Page 391

1    Such letters shall indicate:  (a) the particular Subclass(es) in which each Pre-Identified

2    Claims Made Subclass Member is included; (b) instructions on how to obtain a Claim Form,

3    which will detail the necessary information that each Pre-Identified Claims Made Subclass

4    Member must provide in order to receive a monetary credit (if the Pre-Identified Claims Made

5    Subclass Member is a current LADWP customer) or refund (if the Pre-Identified Claims Made

6    Subclass Member is a former LADWP customer with a closed LADWP account), if so entitled;

7    and (c) instructions on how to opt-out, in the event that a Pre-Identified Claims Made Subclass

8    Member wishes to excluded himself/herself from the Settlement Class.

9        2.    Self-Identification

10    Any current or former customer of the LADWP, regardless of whether he/she has been

11    identified as a member of the Pre-Identified Non-Claims Made Subclass or the Pre-Identified

12    Claims Made Subclass, may still submit a Claim Form in the form of Exhibit F hereto in order to

13    receive a monetary credit, (if a current LADWP customer) or refund (if a former LADWP

14    customer with a closed LADWP account), as a result of a billing error made by LADWP at any

15    time since September 3, 2013; or (ii) damage as a result of their participation in LADWP's Solar

16    Incentive Program at any time since February 13, 2010.

17        3.    Claims Administration

18    A Claims Administrator shall be retained subject to the Court's approval. The Claims

19    Administrator shall be responsible for effectuating the claims process. The Claims Administrator

20    shall be delegated the authority to administer and process eligible claims during the Claim Period

21    and to disburse Settlement benefits, as computed by Defendant, verified by the independent expert

22    CC&B monitor and approved by the Court, to Settlement Class Members who submit timely

23    eligible claims in accordance with this Settlement Agreement.

24        4.    Costs of Settlement Administration

25    All costs and expenses incurred in implementing and administering the Settlement shall be

26    paid by Defendant.  The Claims Administrator shall, under the supervision of the Court,

27    administer the Settlement provided by this Agreement by processing and resolving claims in a

28    rational, responsive, cost-effective, and timely manner. The Claims Administrator shall maintain

EXHIBIT 13
Page 392

Doc# 1 Page# 134 – Doc ID = 1755355499 – Doc Type = Case

1   detailed records of its activities under this Agreement in a computerized database and shall furnish

2   counsel for the Parties with monthly reports of the activities undertaken by the Claims

3   Administrator in administering the Settlement.

4   I.   <u>Requests for Exclusion of Settlement Class</u>

5        Any person included within the Settlement Class who wishes to be excluded from

6   membership in the Settlement Class must do so in writing by mailing a written request for

7   exclusion to the Claims Administrator.  Such requests must be postmarked no later than 90 days

8   from the Notice Date.  The request must:  (i) clearly express the Settlement Class Member's desire

9   to be excluded or to "opt out" from the Settlement Class; (ii) include the Settlement Class

10  Member's name, address, telephone number, LADWP account number and, if represented by

11  counsel, counsel's name, address and telephone number; and (iii) be signed by the Settlement

12  Class Member.

13       If a Settlement Class Member has multiple LADWP accounts and wishes to be excluded

14  from membership in the Settlement Class, the Settlement Class Member must submit a request for

15  exclusion for each separate account.

16       Any Person who is a member of the Settlement Class who wishes to be excluded from the

17  Settlement Class can only opt out for him or herself, and cannot opt out for any other Person.  Nor

18  can any Person who is a Settlement Class Member authorize any other Person to opt out on his or

19  her behalf.

20       Any Settlement Class member who has filed an objection to the fairness, reasonableness or

21  adequacy of the proposed Settlement pursuant to Section III.J. herein shall be deemed not to have

22  opted out of the Settlement Class pursuant to this paragraph.  However, in the event that a

23  Settlement Class member makes a submission to the Court and the Parties that appears to assert

24  both an objection to the fairness, reasonableness or adequacy of the proposed Settlement, and a

25  statement of intent to opt out of the Settlement Class, such submission shall be treated as a

26  statement of intent to opt out of the Settlement Class, but not an objection.

27

28

LINER LLP
1100 Glendon Avenue  14th Floor
Los Angeles, CA 90024-3518

38457.025-2474794v4                    40
CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

EXHIBIT 13
Page 398

Doc# 1 Page# 135 — Doc ID = 1755355499 — Doc Type = Case...c

**J.    Objections and Requests To Appear At Final Approval Hearing**

1

2       Any Settlement Class member who has not timely filed a written request for exclusion

3   from the Settlement Class pursuant to Section III.I. herein may object to the fairness,

4   reasonableness or adequacy of the proposed Settlement, Plaintiff's application for a

5   reimbursement award, or Class Counsel's application for an award of attorneys' fees or

6   reimbursement of expenses. Each Settlement Class Member who wishes to object must do so in

7   writing by filing a written objection with the Clerk of the Court and mailing it to the Parties'

8   respective counsel at the addresses set forth in Section III.M.11. herein. Any such objection must

9   be filed with the Clerk of the Court and received by the Parties' counsel, no later than 90 days

10  after the Notice Date. Any such objection must: (i) state, in detail, the legal and factual ground(s)

11  for the objection; (ii) include the Settlement Class Member's name, address and telephone number

12  and LADWP account number, and, if represented by counsel, counsel's name, address and

13  telephone number; and (iii) be signed by the Settlement Class Member.

14      Settlement Class Members may object either on their own or through an attorney hired at

15  their own expense. If the objecting Settlement Class Member hires an attorney to represent him or

16  her, that attorney must file with the Court and serve upon the Parties' respective counsel at the

17  addresses set forth in Section III.M.11. herein, a notice of appearance no later than 30 days prior to

18  the Final Approval Hearing.

19      Any objection that fails to satisfy the requirements of this Section, or that is not properly

20  and timely submitted, will be deemed ineffective, and will be deemed by the Parties to have been

21  waived, and the Parties reserve their right to argue that the Settlement Class Member asserting

22  such objection is therefore not entitled to have his or her objection heard or otherwise considered

23  by the Court.

24      Settlement Class Members or their counsel who wish to appear at the Final Approval

25  Hearing must make such request by notifying the Clerk of the Court and the Parties' respective

26  counsel in writing at the addresses set forth in Section III.M.11. herein ("Notice of Intention to

27  Appear"). Any such request must be filed with the Clerk of the Court and received by the Parties'

28  respective counsel no later than 30 days prior to the Final Approval Hearing and must state the

EXHIBIT 13
Page 394

1  name, address, telephone number and LADWP account number of the Settlement Class Member,

2  as well as the name, address and telephone number of the person who will appear on his or her

3  behalf. Any such request must further indicate that the Settlement Class member has timely

4  objected to the Settlement in compliance with the requirements of this Section of this Agreement.

5  Any request for appearance that fails to satisfy the requirements of this Section, or that has not

6  been properly or timely submitted, may be deemed ineffective and shall be deemed to constitute a

7  waiver of such Settlement Class Member's right to appear and to be heard on the Settlement at the

8  Final Approval Hearing.

9  **K.**    **Attorneys' Fees and Costs**

10        The Parties did not conduct any negotiations concerning the amount of attorneys' fees or

11  expenses to be reimbursed until *after* the Parties had reached agreement on the *entirety* of the

12  Settlement.

13        Plaintiff will make an application to the Court for: (i) an award of attorneys' fees in an

14  amount not to exceed $13,000,000; (ii) reimbursement of expenses incurred in connection with the

15  prosecution of the litigation in an amount not to exceed $750,000; and (iii) a service award in the

16  amount of $5,000 for Plaintiff. Defendant has agreed it will not object to such an application.

17        Defendant has agreed that, should the Court finally approve the Settlement and award

18  attorneys' fees and expense reimbursement to Class Counsel and a reimbursement award to

19  Plaintiff, Defendant will pay the amount of attorneys' fees, expenses and reimbursement award

20  awarded by the Court within 7 business days after the Settlement is finally approved by the Court.

21  Defendant will pay the amount awarded by the Court directly to an account established by Class

22  Counsel and Liaison Counsel. Class Counsel shall be responsible for allocating the attorneys' fees

23  and expenses among plaintiffs' counsel.

24        Additionally, the Parties agree that Class Counsel will be responsible for aiding the Claims

25  Administrator by monitoring and supervising the administration of the Settlement during the 18

26  month remediation period. Defendant has agreed that Class Counsel shall submit to the Court

27  quarterly applications for additional awards of attorneys' fees for the work performed by Class

28  Counsel in connection with its monitoring and supervision of the Settlement during the 18 month

30457.025-247/4394v4                                    42

CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

EXHIBIT 13
Page 395

1   remediation period.  Defendant has agreed not to oppose additional applications by Class Counsel

2   for awards of attorneys' fees in a total amount not to exceed $1,000,000.  Notwithstanding the

3   foregoing, if Class Counsel's work and fee submission exceeds this threshold, Class Counsel may

4   submit applications for awards of attorneys' fees to the Court greater than $1,000,000, which

5   Defendant may oppose, for the additional work performed by Class Counsel in connection with its

6   monitoring and supervision of the Settlement during the remediation period.

7         Defendant has agreed that, in connection with these quarterly applications, should the

8   Court award attorneys' fees to Class Counsel, Defendant will pay the amount of attorneys' fees

9   awarded by the Court within 7 business days after the Court issues an order granting Class

10  Counsel's application. Defendant will pay the amount awarded by the Court directly to an account

11  established by Class Counsel and Liaison Counsel.   Class Counsel shall be responsible for

12  allocating the attorneys' fees among plaintiffs' counsel.

13        **L.      Final Approval**

14        The Court shall schedule a date for the Final Approval Hearing.  At the Final Approval

15  Hearing, the Parties shall join the request that the Court enter an order and judgment in the form of

16  Exhibit G to this Agreement (the "Final Order and Judgment"), which will finally approve the

17  terms of this Agreement, dismiss the Actions, discharge the Released Parties of and from all

18  further liability to Plaintiff and Settlement Class Members with respect to the Released Claims

19  (but not as to any obligations created or owed pursuant to this Agreement), and permanently bar

20  and enjoin Plaintiff and Settlement Class Members from bringing, filing, commencing,

21  prosecuting, maintaining, intervening in, participating in, or receiving any benefits from, any other

22  lawsuit, arbitration or administrative, regulatory or other proceeding or cause of action, formally

23  or informally, that asserts, arises from, concerns, or is in any way related to the Released Claims,

24  except as required by law.  The actual form of the Final Judgment and Order entered by the Court

25  may include provisions as to which the Parties may subsequently agree, or which the Court may

26  direct, that are not inconsistent with any of the express terms or conditions of this Agreement.

27

28

301457.025-2474794v4                                13
CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

**LINER** LLP
1100 Glendon Avenue · 14th Floor
Los Angeles, CA 90024-3518

EXHIBIT 13
Page 396

1       Following entry of the Final Order and Judgment by the Court, no default by any Person in

2  the performance of any covenant or any obligation arising under this Agreement shall affect the

3  dismissal of the Actions, the discharge and release of the Released Parties, or any other provision

4  of this Agreement. The above notwithstanding, nothing in this Section shall prevent a Party from

5  seeking enforcement of or compliance with the terms of this Agreement, or the intervention of the

6  Court to compel any such default be cured.

7       If: (a) the preliminary approval of this Agreement and the Settlement described herein or

8  the Final Judgment and Order is not obtained from the Court in substantially the form attached

9  hereto as Exhibits C and G, respectively; or (b) the Court fails to grant final approval to the

10  Settlement; and either Defendant or Plaintiff in their discretion so elect, this Agreement shall be

11  null and void, shall have no further force and effect, and shall not be offered in evidence or used in

12  any litigation for any purpose, including the existence, certification, or maintenance of any

13  purported class. The canceling and terminating Party may make such election only by furnishing

14  written notice of an intent not to proceed with the terms and conditions of this Agreement to the

15  other Parties within fifteen (15) business days of the event constituting the basis for the election to

16  terminate.   In the event of such election, this Agreement and all negotiations, proceedings,

17  documents prepared, and statements made in connection herewith shall be without prejudice to the

18  Parties, shall not be deemed or construed to be an admission or confession by any Party of any

19  fact, matter, or proposition of law, shall not be used in any manner for any purposes, and all

20  parties to the Action shall stand in the same position as if this Agreement had not been negotiated,

21  made or filed with the Court.  If the Agreement is terminated, any and all orders entered by the

22  Court pursuant to the provisions of the Agreement shall be vacated *nunc pro tunc.*

23       In the event this Agreement is not approved by the Court or the Settlement is terminated or

24  fails to become effective in accordance with its terms, all orders entered as of the date on which

25  this Settlement was executed shall become operative and fully effective, as if the proceedings

26  relating to this Settlement had not occurred.

27

28

M.   Miscellaneous Provisions

   1.   Authority Of Signatories

   Each person signing this Agreement represents and warrants that he or she has full authority to sign this Agreement on behalf of the Party for whom he or she is signing and warrants that he or she has the ability to bind that Party to the obligations and commitments set forth herein.

   2.   Binding Upon Successors

   This Agreement shall be binding upon and inure to the benefit of the Parties and their representatives, heirs, predecessors, successors, and assigns.

   3.   Both Parties As Drafter

   The Parties stipulate and agree that this Agreement was negotiated on an "arms-length" basis between parties of equal bargaining power, and drafted jointly by the Parties and, accordingly, no ambiguity in this Agreement shall be construed in favor of or against any of the Parties.

   4.   Cooperation

   The Parties to this Agreement and their counsel agree that they shall act in good faith and exercise their best efforts to secure approval of this Agreement and full participation by all members of the Settlement Class and that they will take such other reasonable steps as are necessary to implement this Agreement.

   5.   Counterpart Execution

   This Agreement may be executed in any number of counterparts.   A facsimile or electronically transmitted signature shall be deemed to constitute an original signature for purposes of this Agreement.   Each counterpart when so executed shall be deemed to be an original, and all such counterparts together shall constitute the same instrument.   This Agreement will be binding when it has been executed and delivered by the last signatory hereto to execute a counterpart.

   6.   Governing Law

   The construction, interpretation, operation, effect, validity and enforcement of this Agreement and all documents necessary to effectuate it shall be governed by the laws of the State

38457.025-2474794v4                        45
      CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

EXHIBIT 13
Page 398

1   of California without regard to principles of conflict of laws, except to the extent that federal law

2   requires that federal law govern.

3       **7.      Headings**

4       Headings contained in this Agreement are for convenience and reference only and are not

5   intended to alter or vary the construction and meaning of this Agreement.

6       **8.      Integration Clause**

7       This Agreement, including all exhibits hereto, contains a full, complete, and integrated

8   statement of each and every term and provision agreed to between and among the Parties and

9   supersedes any prior representations, writings or agreements (written or oral) between or among

10  the Parties, which prior agreements may no longer be relied upon for any purpose.   This

11  Agreement may not be orally modified in any respect and may be modified only by the written

12  agreement of the Parties.  In the event a dispute arises between the Parties over the meaning or

13  intent of any provision of this Agreement, the Parties agree that prior drafts, notes, memoranda,

14  discussions or any other oral communications or documents regarding the negotiations, meaning

15  or intent of this Agreement shall not be offered or admitted into evidence.

16      **9.      Jurisdiction**

17      The Court retains exclusive and continuing jurisdiction over the Actions, the Parties,

18  Settlement Class Members, and the Claims Administrator in order to interpret and enforce the

19  terms, conditions and obligations under this Agreement.

20      **10.     Non-Waiver**

21      The waiver by one Party of any provision or breach of this Agreement shall not be deemed

22  a waiver of any other provision or breach of this Agreement.

23      **11.     Notice**

24      Except as otherwise described in the settlement notice attached as Exhibits A and B to this

25  Agreement, all notices and other communications referenced in this Agreement shall be addressed

26  to the Parties' counsel at their respective addresses as set forth below:

27

28

EXHIBIT 13
Page 399

(Page 142 of 338)

1   Notices to Plaintiff or the Settlement Class Members

2   Jack Landskroner, Esq.
    Landskroner, Grieco Merriman LLC
3   1360 W 9th St #200, Cleveland, OH 44113

4   Notices to Defendant

5   Angela C. Agrusa (SBN 131337)
    LINER LLP
6   1100 Glendon Avenue, 14th Floor
    Los Angeles, California 90024

7

8       12.   Severability

9       In the event any one or more of the provisions contained in this Agreement shall be held

10  invalid, illegal, or unenforceable for any reason, such invalidity, illegality, or unenforceability

11  shall not affect any other provisions of this Agreement

12      13.   Time for Compliance

13      If the date for performance of any act required by or under this Agreement is to be

14  performed on a particular day or within a specified period of time that falls on a Saturday, Sunday

15  or legal or Court holiday, such act may be performed upon the next business day, with the same

16  effect as if it had been performed on the day or within the computer time specified by or under this

17  Agreement.

18      IN WITNESS WHEREOF, each of the Parties hereto has caused this Agreement to be

19  executed on its, his, her or their behalf by its, his, her or their duly authorized counsel of record, all

20  as of the day set forth below.

21  Dated: August 7, 2015          DEFENDANT:

22

23                          By: _____
24                              Marcie Edwards, General Manager
25                              Los Angeles Department of Water and Power
                                by permission _____
26

27

28

38457.025-2474794v4                    47

CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

EXHIBIT 13
Page 400



Dated: August 7, 2015

PLAINTIFF:

By: _____
Jack Landskroner, Esq.
Counsel for Plaintiff Antwon Jones

LINER LLP
1100 Glendon Avenue, 14th Floor
Los Angeles, CA 90024-3518

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

38457.025-2474794v4                    48

CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

# EXHIBIT A
## TO CLASS ACTION SETTLEMENT
## AGREEMENT AND LIMITED RELEASE

EXHIBIT 13
Page 402

(Page 145 of 338)

EXHIBIT A

EXHIBIT 13
Page 403



**Jones v. City of Los Angeles**
Case No. BC577267
Certain Customers of the Los Angeles Department of Water and Power
May Claim Settlement Benefits.

**This Class Action Settlement May Affect Your Rights**
*A court authorized this Notice. This is not a solicitation from a lawyer.*

- The Settlement resolves a lawsuit concerning complaints arising out of customer over-billing and other billing errors by the Los Angeles Department of Water and Power ("LADWP") that were caused by, and are related to, the defective implementation of the LADWP's new billing system or damages incurred by customers' participation in the LADWP's solar incentive program.

- If you are an LADWP customer who was improperly over-charged for electric, water, sewage or sanitation services and/or incurred damages as a result of your participation in the LADWP's solar incentive program, you may be eligible obtain Settlement benefits.

**Read this Notice carefully because your legal rights could be affected.**

---

**YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT INCLUDE:**

**Obtain settlement benefits.** You may be pre-identified to receive Settlement benefits, in which case, you may not need to take any further action to receive your credit or refund. Additionally, you may submit a Claim Form, which is available on www._____.com, to determine if you qualify for Settlement benefits.

**Opt Out -** Write to counsel for Plaintiff and Defendant if you do not want to be included in the Settlement. You have a right to opt out of the Settlement only if you are a member of the Settlement Class and have not objected to the Settlement.

**Object -** Write to the Court and to counsel for Plaintiff and Defendant if you disagree with the Settlement. As set forth in the Answers to Questions 14 through 17 below, you may attend a hearing on the fairness of the Settlement after giving appropriate notice. You have a right to object to the Settlement only if you are a member of the Settlement Class and have not opted out of the Settlement.

These rights and options — and the deadlines by which to exercise them — are explained in this Notice.

---

The Court that is supervising this case has granted Preliminary Approval to the Settlement, but still has to decide whether to grant Final Approval. The Final Approval Hearing will take place on _____, 2015. Settlement benefits will be distributed only if and after the Court grants Final Approval of the Settlement and any appeals are resolved.

38457.025-2477969v3

1

## WHAT THIS NOTICE CONTAINS

**Page**

BASIC INFORMATION .................................................................................... 3

1. Why was this Notice issued? ........................................................................3

2. What is this lawsuit about? ..........................................................................3

3. Why is this a class action? ...........................................................................3

4. Why is there a Settlement? ...........................................................................3

WHO IS IN THE SETTLEMENT? ....................................................................4

5. How do I know if I am part of the Settlement? ............................................4

6. Are there exceptions to being included in the Settlement? ..........................4

7. What if I am not sure whether I am included in the Settlement? ..................4

THE SETTLEMENT BENEFITS:
WHAT YOU GET AND HOW YOU GET IT ....................................................4

8. What does the Settlement provide? ..............................................................4

9. What claims am I releasing? .........................................................................6

THE LAWYERS REPRESENTING PLAINTIFF ...............................................7

10. Do I have a lawyer in this case? .................................................................7

11. How will the lawyers be paid? ...................................................................7

EXCLUDING YOURSELF FROM THE SETTLEMENT .................................7

12. What do I do if I do not want to be included in the Settlement? ................7

13. What happens if I don't opt out before _____? ........................8

OBJECTING TO THE SETTLEMENT .............................................................8

14. How do I tell the Court that I like or don't like the Settlement? ................8

15. When/where will the Court decide whether to approve the Settlement?......9

16. Do I have to come to the hearing? ..............................................................9

17. May I speak at the hearing? ........................................................................9

18. How do I get more information? ...............................................................10

3S-167.025-2477959v3

2

EXHIBIT 13
Page 405

## BASIC INFORMATION

**1. Why was this Notice issued?**

The Court issued this Notice because you have a right to know about a proposed settlement of a class action lawsuit that the Court has preliminarily approved. You also are entitled to know how you may make a claim for certain benefits of the Settlement and about all of your options. If the Court grants Final Approval and any appeals are resolved, valuable benefits will be distributed to certain qualifying persons who made a claim within the Claim Period.

**2. What is this lawsuit about?**

The person who filed this class action is called the "Plaintiff" and the City of Los Angeles, by and through LADWP is the "Defendant." A lawsuit filed in the Superior Court of California, captioned *Jones v. City of Los Angeles*, Case No. BC577267, alleges that customers of LADWP were over-billed or experienced other billing errors that were caused by, and are related to, the defective implementation of the LADWP's new billing system or incurred damages as a result of participating in the LADWP's solar incentive program. Plaintiff's claims include, among others, claims for fraud, negligent misrepresentation, breach of contract, unjust enrichment, and violations of the California Consumer Legal Remedies Act and the California Unfair Competition Law.   More information can be found at www._____,com, by writing to Class Counsel: Jack Landskroner, Esq., Landskroner Grieco Merriman, LLC, 1360 West 9th Street, Suite 200, Cleveland, Ohio 44113 or by calling 1-(800) _____. A copy of the Settlement Agreement will be available at www._____.com, and is also on file with the Court.

**3. Why is this a class action?**

In a class action, one or more person(s) called "Class Representatives" sue on behalf of themselves and others with similar claims. All of these people together are called a "class." The Court appointed Plaintiff as the Class Representative for purposes of this Settlement. The "Settlement Class Members" are all LADWP customers who were improperly over-charged for electric, water, sewage or sanitation services and/or incurred damages as a result of participating in the LADWP's solar incentive program.

**4. Why is there a Settlement?**

The Court did not decide in favor of either Plaintiff or Defendant. Instead, both sides agreed to a settlement. The Class Representative and the attorneys that have been appointed by the Court to represent the Settlement Class believe that the Settlement is in the best interests of all Settlement Class Members.

EXHIBIT 3

1   Jack Landskroner (Admitted Pro Hac Vice)
    **LANDSKRONER GRIECO MERRIMAN, LLC**
2   1360 West 9th Street, Suite 200
3   Cleveland, Ohio 44113
    Telephone: (216) 522-9000
4
    Michael J. Libman (SBN 222353)
5   **LAW OFFICES OF MICHAEL J. LIBMAN**
    16133 Ventura Blvd., Suite 1200
6   Encino, California 91436
    Telephone: (818) 995-7300
7
    Attorneys for Plaintiff
8
    Michael N. Feuer (SBN 111529)
9    City Attorney
    Richard M. Brown (SBN 041277)
10    General Counsel, Department of Water and Power
    Eskel H. Solomon (SBN 101386)
11    Deputy City Attorney
     Los Angeles City Attorney's Office
12   111 N. Hope Street, Room 340
13   Los Angeles, California 90012
14   Angela C. Agrusa (SBN 131337)
    Maribeth Annaguey (SBN 228431)
15   LINER LLP
    1100 Glendon Avenue, 14th Floor
16   Los Angeles, California 90024.3518
    Telephone:    (310) 500-3500
17
    Attorneys for Defendant
18   CITY OF LOS ANGELES

19          SUPERIOR COURT OF THE STATE OF CALIFORNIA

20             COUNTY OF LOS ANGELES, CENTRAL DISTRICT

21
    ANTWON JONES, on behalf of himself, and        Case No. BC577267
22   all other similarly situated,
                                                    [Related to Case Nos. BC565618 (Lead),
23                    Plaintiff,                     BC568722, BC571664, and BC574690]
                                                    [CLASS ACTION]
24          vs.
                                                    **DECLARATION OF JACK**
25   CITY OF LOS ANGELES, by and through the        **LANDSKRONER IN SUPPORT OF**
    Los Angeles Department of Water and Power       **PLAINTIFF'S MOTION FOR**
26   and DOES 1 through 50, inclusive,              **PRELIMINARY APPROVAL**
                                                    Hearing Date: September 11, 2015
27                    Defendants.                   Time: 9:00 a.m.
                                                    Department: Dept. 323
28                                                  Judge: Hon. Elihu M. Berle

                                         1

                   DECLARATION OF JACK LANDSKRONER

FILED
Superior Court Of California
County Of Los Angeles

AUG 17 2015

Sherri R. Carter, Executive Officer/Clerk
by _____, Deputy

EXHIBIT 13
Page 407

Doc# 1 Page# 80 – Doc ID = 1755355499 – Doc Type = Case

1        I, JACK LANDSKRONER, declare the following under the penalty of perjury:

2        1.    I am over the age of 18 and have personal knowledge of the facts set forth herein,

3 which are known to me to be true and correct. I could and would testify competently about the

4 matters set forth herein if called upon to do so.

5        2.    I am an attorney admitted to the practice of law in the State of Ohio. I am a

6 partner at the law firm of Landskroner Grieco Merriman, LLC, which represents Plaintiff

7 Antwon Jones in this matter.

8        3.    I respectfully submit this Declaration in support of Plaintiff's Motion for

9 Preliminary Approval.

10    **I.**    **Background**

11        4.    On April 1, 2015, Plaintiff filed a class action in the Superior Court of the State of

12 California for the County of Los Angeles captioned, *Jones v. City of Los Angeles*, Case No.

13 BC577267 (the "*Jones* Action"), which alleges claims involving customer over-billing and other

14 billing errors by the Los Angeles Department of Water and Power (the "LADWP") that were

15 caused by, and are related to, the defective implementation of the LADWP's new Customer Care

16 & Billing System (the "CC&B System") or damages incurred by customers arising from their

17 participation in the LADWP's Solar Incentive Program.

18        5.    Three additional actions were previously filed against the City of Los Angeles,

19 namely *Bransford, et al. v. City of Los Angeles*, Case No. BC565618 (the "*Bransford* Action"),

20 *Fontaine v. City of Los Angeles, et al.*, Case No. BC571664 (the "*Fontaine* Action"), and *Kimhi*

21 *v. City of Los Angeles*, Case No. BC536272 (the "*Kimhi* Action"), all of which alleged

22 allegations similar to those asserted in the *Jones* Action.

23        6.    On May 22, 2015, the Court found that the *Jones*, *Fontaine* and *Bransford*

24 Actions were related but did not consolidate these actions.

25        7.    Both prior to, and after, the filing of the Complaint in the *Jones* Action, Plaintiff

26 Jones, by and through his counsel, undertook an extensive investigation into the failure of the

27 CC&B system in order to understand the defects which directly resulted in the harms and losses

28 experienced by LADWP customers.

<div align="center">2</div>

<div align="center">DECLARATION OF JACK LANDSKRONER</div>

EXHIBIT 3

Page 408

Doc# 1 Page# 81 -- Doc ID = 1755355499 -- Doc Type = Case

8.      This investigation included interviews with confidential witnesses, multiple reviews of documents and consultations with non- testifying experts, all of which confirmed the widespread nature of the defects in the CC&B System.

9.      Plaintiff's counsel's investigation also revealed that customers of the LADWP's Solar Incentive Program had been damaged as a result of extensive delays in energizing their systems and by LADWP's failure to properly credit them for energy produced.

**II.     Mediation of Plaintiff and Settlement Class Members' Claims**

10.     Immediately after filing his Complaint, Plaintiff Jones submitted a comprehensive demand to Defendant, explaining the nature of the defects, as revealed by Plaintiff's counsel's investigation, discussing the strength and merits of the *Jones* Action and proposing a complex framework to structure a settlement.

11.     Class Counsel and Counsel for Defendant met to further explore Plaintiff Jones' proposal and to initiate settlement negotiations of the class claims.  These negotiations advanced somewhat, but eventually stalled.

12.     Thereafter, the Parties agreed to continue their efforts to reach settlement by soliciting the assistance of well-respected Los Angeles based mediator, the Hon. Dickran M Tevrizian (Ret.).

13.     Judge Tevrizian conducted the initial mediation sessions on June 11 and 12, 2015.

14.     After 2 full hard fought days of mediation, the parties reached an agreement in principle on the essential terms of the proposed Settlement, which included the concession by Defendant that each and every LADWP customer that had been overcharged would receive either a credit or refund in the amount of 100% of the overcharge.

15.     The Parties' negotiations, although contentious, were undertaken in good faith and at arms' length with the assistance of and through the diligent efforts of Judge Tevrizian.

16.     On July 24, 2015, given the complexity of the Settlement and the detail necessary to verify the identity of the affected accounts and the accuracy of the refunds/credits due to customers, as well as defining the validation mechanisms for compliance and the progression of

---

3

DECLARATION OF JACK LANDSKRONER

EXHIBIT 13

Page 409

Doc# 1 Page# 82 - Doc ID = 1755355499 - Doc Type = Case

1   the negotiated remediation protocols, the Parties returned to mediation with Judge Tevrizian to

2   continue discussions related to those and other non-material terms of proposed Settlement.

3       17.   On July 31, 2015, only after all essential and non-essential terms of the Settlement

4   were resolved by the Parties, the Parties, with the assistance of Judge Tevrizian, mediated the

5   amount of attorneys' fees and costs to a successful conclusion.

6       18.   A true and correct copy of the Class Action Settlement Agreement and Limited

7   Release dated August 7, 2015 is annexed hereto as Exhibit 1.

8   **III.**   **Summary Of The Proposed Settlement**

9   **A.**   **The Settlement Class**

10      19.   The Settlement provides for conditional certification of a Settlement Class, which

11   consists of at least 1,600,000 LADWP customers, and is defined as follows:

> All LADWP customers who were improperly over-charged for electric, water,
> sewage or sanitation services between the dates of September 3, 2013 and the
> present, and who are entitled to credits or refunds for electric, water, sewage or
> sanitation services and/or for participation in the LADWP's solar incentive
> program from February 13, 2010.  Excluded from the Settlement Class are the
> Judge to whom this case is assigned, and any members of the Judge's immediate
> family, and counsel of record in this action.

17   Ex. 1 hereto at 7.

18      20.   Furthermore, the Settlement Class is comprised of the following Subclasses:

- **Tiered Billing Subclass:**  all residential and commercial customers of
  LADWP who were billed and paid for electricity or water usage at
  tiered rates higher than those rates that would otherwise have been used
  to bill these customers during the period September 3, 2013 through
  August 13, 2014.

- **Trend Estimate Subclass:**  all residential and commercial customers of
  LADWP who paid electricity, water or sewage bills that were
  incorrectly estimated due to a defect in the Trend Estimation Algorithm
  used to compute these estimates during the period September 3, 2013
  through August 13, 2014.

- **Closed Account with Credit Balance Subclass:**  all residential and
  commercial customers of LADWP who:  (i) have "Closed Accounts"
  with credit balances and (ii) are owed refunds that have been withheld
  by LADWP during the period of September 3, 2013 to present.

4

DECLARATION OF JACK LANDSKRONER

EXHIBIT 13
Page 440

Doc# 1 Page# 83 - Doc ID = 1755355499 - Doc Type = Case.doc

1   • **Premise Condition/Estimated Bill Subclass:** all residential and
2   commercial customers of LADWP who: (i) unbeknownst to the
    customer, had a premise condition that caused excessive consumption
3   of water and/or power; (ii) received estimated bills for multiple billing
    periods after September 3, 2013; (iii) because of these estimated bills,
4   were prevented from timely discovering the premise condition; and (iv)
    were charged for greater quantities of water, power or sewage than they
5   otherwise would have been charged.

6   • **Solar Customers Subclass:** all residential LADWP customers who
    have installed solar systems and applied to participate in the Solar
7   Photovoltaic Incentive Program from February 13, 2010 to date and: (1)
    experienced delay in the final approval process beyond 30 days after
8   submission of a complete Incentive Application and Supporting
    Documentation and indication that the solar system was fully permitted
9   and ready for inspection; and/or (2) have not been properly billed for
    energy consumed and/or generated; and/or (3) have not been properly
10  credited for excess energy generated by the customer's solar power
    system.
11
    • **Automatic Bill Payment/Bank Overdraft Charge Subclass:** all
12  LADWP customers who: (i) were enrolled in an automatic bill
    payment plan with a bank and (ii) were charged overdraft fees because
13  LADWP charged the customer an incorrect amount, which, in turn,
    resulted in the customer's bank account being overdrawn.
14
    • **Late Payment Charge Subclass:** all LADWP customers who were
15  assessed an inaccurate Late Payment Charge.

16  • **Estimated Electric Bills with "Minimum Charge" Subclass:** all
17  LADWP residential and small commercial customers: (i) whose
    consumption was estimated to be zero and (ii) who were, therefore,
18  assessed a "Minimum Charge" on an electric bill when the actual usage
    was above the "Minimum Charge."
19
    • **Omnibus Subclass:** all LADWP residential and commercial customers
20  that believe they were: (i) incorrectly assessed a charge associated with
    their power, water, sewage or trash collection at any time from
21  September 3, 2013 to the present; or (ii) otherwise damaged as a result
    of their participation in the LADWP's Solar Photovoltaic Incentive
22  Program at any time from February 13, 2010 to the present, that is not
    covered by any of the other Subclasses listed above.
23
24  Ex. 1 hereto at 8.

25      B.   Benefits to the Settlement Class

26      21.   The proposed Settlement provides Settlement Class Members with two types of

27  relief: (i) monetary relief and (ii) non-monetary remedial relief. Ex. 1 hereto at 9-32.

28

---

5

DECLARATION OF JACK LANDSKRONER

EXHIBIT 13
Page 441

i.   **Monetary Relief**

22.   Settlement Class Members of the:  (i) Tiered Billing Subclass; (ii) Trend Estimate Snbclass; (iii) Closed Account with Credit Balance Subclass; (iv) Late Payment Charge Subclass and (v) Estimated Electric Bills with "Minimum Charge" Subclass will be pre-identified as members of one or more of these Subclasses based upon internal records of the LADWP.  The LADWP will credit (in the case of current customers) or refund (in the case of former customers) 100% of any amounts that the LADWP overcharged these Subclass Members during the period September 3, 2013 through the present.  The amounts to be credited or refunded shall be determined by the LADWP, and the methodology used to determine the amounts shall be verified by the CC&B System monitoring expert and subject to Court approval.  Members of these Subclasses will not be required to submit a Claim Form in order to recover any funds.  Rather any amounts owed to these Subclass Members will be automatically credited to their LADWP account or refunded by check automatically cut by the LADWP. Ex. 1 hereto at 9-10.

23.   Settlement Class Members of the:  (i) Premise Condition/Estimated Bill Subclass; (ii) Automatic Bill Payment/Bank Overdraft Charge Subclass and (iii) Solar Customer Subclass will be pre-identified as members of each of these Subclasses from the internal records of the LADWP.  Members of these Subclasses must submit a valid claim form substantiated by the documentary evidence specified in the Claim Form to the Court-appointed Claims Administrator in order to determine the amount by which they were overcharged by the LADWP. The LADWP will credit (in the case of current customers) or refund (in the case of former customers) 100% of any amounts that the LADWP overcharged these Subclass Members during the period September 3, 2013 through the present.  The amounts to be credited or refunded shall be determined by the LADWP, and the methodology used to determine the amounts shall be verified by the CC&B System monitoring expert and subject to Court approval.  Ex. 1 hereto at 10-11.

24.   Furthermore, with respect to members of the Solar Customer Subclass, LADWP shall refund 100% of any damages that the Claims Administrator, Court, or its appointed and agreed-to designee determines the LADWP caused any member of the Solar Customer Subclass

6

DECLARATION OF JACK LANDSKRONER

EXHIBIT 13
Page 442

Doc# 1 Page# 85 - Doc ID = 1755355499 - Doc Type = Case

1  to incur as a result of their participation in the LADWP's Solar Program during the period

2  February 13, 2010 through the present. Ex. 1 hereto at 11.

3      25.    Finally, in recognition of the possibility that some LADWP customers who have

4  not been "pre-identified" through LADWP's internal records may believe that they were:  (i)

5  overcharged as a result of a billing error; or (ii) damaged as a result of their participation in the

6  LADWP's Solar Program, the Settlement provides that any current or former LADWP customers

7  who have not otherwise been "pre-identified" as a member of any Subclass, but who

8  nevertheless believe they have been overcharged as a result of a billing error made by LADWP

9  at any time since September 3, 2013; or (ii) damaged as a result of their participation in the

10  LADWP's Solar Program at any time since February 13, 2010, may file a Claim Form to recover

11  such overcharge or damages.  These Subclass Members will receive a credit or refund of 100%

12  of any amounts of which they were overcharged by the LADWP during the period September 3,

13  2013 through the present.  Ex. 1 hereto at 12.

14      26.    The monetary relief portion of the Settlement provides Settlement Class Members

15  with approximately $44 million in credits or refunds arising from overbilling of its customers.

16      **ii.**    __Non-monetary Remedial Relief__

17      27.    In addition to providing the foregoing monetary consideration, the proposed

18  Settlement also provides for certain remedial and corrective measures including: (i) the creation

19  and adoption of certain billing system metrics; (ii) the appointment of an independent billing

20  system monitoring expert; (iii) audits of LADWP's billing system to confirm billing accuracy;

21  (iv) the creation and implementation of a team at LADWP to address unique or complex billing

22  issues; (v) the adoption of an amendment to the Rules Governing Water and Electric Service to

23  provide for a shorter period of time for which LADWP may collect payment from customers

24  whose bills are delayed due to billing errors; and (vi) the creation and implementation of an

25  information technology Project Management Office. Ex. 1 hereto at 12-32.

26      28.    These remedial measures add substantial value to the proposed Settlement, as

27  well, including an additional $20 million.

28

---

7

DECLARATION OF JACK LANDSKRONER

EXHIBIT 13
Page 413

**C.    Scope of the Release**

29.    In exchange for these numerous and valuable benefits, Settlement Class Members will be releasing "any and all claims, damages, suits, demands, liabilities, judgments, losses and causes of action relating to or arising from the billing issues alleged in the operative pleadings in the Actions including but not limited to any error committed by the LADWP in over-billing its customers between September 3, 2013, through the date of entry of the Order of Final Approval, and in failing to timely include customers in the LADWP's Solar Photovoltaic Incentive Program and/or credit for excess energy generated by solar customers at any time from February 13, 2010, through the date of the entry of the Order of Final Approval." Ex. 1 hereto at 6-7, 35-36.

**D.    Notice and Administration**

30.    The Notice program provides for: (i) direct mail notice to all those customers of LADWP for whom Defendant has street addresses and with whom Defendant routinely communicates via United States First Class Mail pursuant to customers' instructions; (ii) email notice to all those customers of LADWP for whom Defendant has email addresses and with whom Defendant routinely communicates via email pursuant to customers' instructions; (iii) publication of a "summary" notice in *The Los Angeles Times* and *La Opinion*; (iv) the establishment of a Settlement website by the Court-appointed Claims Administrator and (v) publication on LADWP's website. Ex. 1 hereto at 32-35.

31.    Each Notice, whether mailed, emailed or published, will:

a.    contain a short, plain statement of the background of the action and the Settlement;

b.    describe the relief outlined in this Agreement;

c.    inform Settlement Class Members that, if they do not exclude themselves from the Settlement Class, they may be eligible to receive the relief under the Settlement;

d.    inform Settlement Class Members that they may exclude themselves from the Class by submitting a written exclusion request postmarked no later than 90 days after the Notice Date;

8

DECLARATION OF JACK LANDSKRONER

1     e.   inform Settlement Class Members that they may object to the proposed

2          Settlement by filing and serving a written statement of objections no

3          later than 90 days after the Notice Date; and

4     f.   inform Settlement Class Members that any Final Order and Judgment

5          entered in the Action, whether favorable or unfavorable to the

6          Settlement Class, shall include, and be binding on, all Settlement Class

7          Members who have not been excluded from the Class, even if they

8          have objected to the Settlement.

9    Ex. 1 hereto at 32-35.

10     **E.**   **Attorneys' Fees and Expenses and Reimbursement Awards**

11     32.   At the Final Approval Hearing, Class Counsel will make an application to the

12    Court for an award of attorneys' fees not to exceed $13,000,000. Ex. 1 hereto at 42-43. Class

13    counsel's application will be based on Class Counsel's lodestar and a multiplier, which, under

14    California law, will fall within the range of reasonableness. Additionally, Class Counsel will

15    seek reimbursement of expenses in an amount not to exceed $750,000. *Id.*

16     33.   Additionally, Plaintiff will request the Court grant a service award for Plaintiff

17    Antwon Jones and the named plaintiffs in the *Bransford*, *Fontaine* and *Kimhi* Actions in the

18    amount of $5,000 each. Ex. 1 hereto at 42.

19     34.   Attorneys' fees, expense reimbursement and Plaintiff's reimbursement award, if

20    granted by the Court, will be paid by Defendant in addition to all of the other benefits provided

21    for under the Settlement.

22     **F.**   **Confirmatory Discovery**

23     35.   In connection with the Settlement, and in order to confirm that the Settlement is in

24    the best interests of the Settlement Class, Class Counsel has reserved the right to conduct

25    confirmatory discovery on certain issues including: (i) the internal methodology relied upon for

26    the evaluation of all Settlement Class Members' accounts to determine credit or refund eligibility

27    and amount of credit or refund; (ii) criteria used for identification of membership in each

28

<center>9</center>

<center>DECLARATION OF JACK LANDSKRONER</center>

EXHIBIT 13
Page 445

1   identified subclass; (iii) the total payment of credits and/or refunds issued to customers and from

2   ongoing remediation efforts; and (iv) remediation implementation protocols. Ex. 1 hereto at 36.

3       36.   Class Counsel, having carefully considered and evaluated, among other things,

4   the relevant legal authorities and evidence to support the claims asserted against Defendant, the

5   likelihood of prevailing on Plaintiff's claims, the risk, expense and duration of continued

6   litigation and the likelihood of appeals, has concluded that the proposed Settlement is fair,

7   reasonable, and adequate and in the best interest of the Settlement Class.

8       37.   Annexed as Exhibit 2 hereto is a true and correct copy of the firm resume of

9   Landskroner Grieco & Merriman, LLC.

10      38.   Annexed as Exhibit 3 hereto is a true and correct copy of the firm resume of the

11  Law Offices of Michael J. Libman.

12      I declare under penalty of perjury under the laws of the State of California that the

13  foregoing is true and correct.

14  Executed this 17th day of August 2015, at Cleveland, Ohio.

15

16

17

18

19

20                                              Jack Landskroner

21

22

23

24

25

26

27

28

---

10

DECLARATION OF JACK LANDSKRONER

EXHIBIT 13

Page 416

(Page 90 of 338)

# EXHIBIT 1
# TO DECLARATION OF
# JACK LANDSKRONER

EXHIBIT 13
Page 417

Doc# 1 Page# 90 - Doc ID = 1755355499 - Doc Type = Case File - Public

Doc# 1 Page# 91 - Doc ID = 1755355499 - Doc Type = Case File - Public

EXHIBIT 13

Page 418

**EXHIBIT 1**

[Exempt From Filing Fee
Government Code § 6103]

1    Jack Landskroner (Admitted Pro Hac Vice)
     **LANDSKRONER GRIECO MERRIMAN, LLC**
2    1360 West 9th Street, Suite 200
     Cleveland, Ohio 44113
3    T. (216) 522-9000
     F. (216) 522-9007
4

5    Michael J. Libman (SBN 222353)
     **LAW OFFICES OF MICHAEL J. LIBMAN**
6    16133 Ventura Blvd., Suite 1200
     Encino, California 91436
7    Telephone: (818) 995-7300

8    Attorneys for Plaintiff

9    Michael N. Feuer (SBN 111529)
     City Attorney
10   Richard M. Brown (SBN 041277)
     General Counsel, Department of Water and Power
     Eskel H. Solomon (SBN 101386)
11   Deputy City Attorney
     Los Angeles City Attorney's Office
12   111 N. Hope Street, Room 340
     Los Angeles, California 90012
13

14   Angela C. Agrusa (SBN 131337)
     Maribeth Annaguey (SBN 228431)
15   **LINER LLP**
     1100 Glendon Avenue, 14th Floor
16   Los Angeles, California 90024.3518
     Telephone:  (310) 500-3500
17   Facsimile:  (310) 500-3501

18   Attorneys for Defendant
     CITY OF LOS ANGELES

19

20          **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

           **COUNTY OF LOS ANGELES, CENTRAL DISTRICT**

| | |
|---|---|
| 21   ANTWON JONES, on behalf of himself, and all other similarly situated, | Case No. BC577267 |
| 22 | [Related to Case Nos. BC565618 (Lead), BC568722, BC571664, and BC574690] |
| 23         Plaintiff, | |
| 24      vs. | [CLASS ACTION] |
| 25   CITY OF LOS ANGELES, by and through the Los Angeles Department of Water and Power and DOES 1 through 50, inclusive, | **CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE** |
| 26 | Assigned for All Purposes to the Hon. Elihu M. Berle, Dept. 323 |
| 27         Defendants. | |
| 28 | Action Filed:     April 1, 2015 |
| | Trial Date:       None Set |

38457.025-2474794v4

CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

EXHIBIT 13
Page 419

Doc# 1 Page# 92 - Doc ID = 1755355499 - Doc Type = Case

# TABLE OF CONTENTS

Page

I.     RECITALS.................................................................................................1

II.    DEFINITIONS............................................................................................4

III.   GENERAL TERMS AND CONDITIONS OF SETTLEMENT.......................8

    A.   Certification of Settlement Class.........................................................8

    B.   Settlement Relief..............................................................................9

        1.   Monetary Relief........................................................................9

            a.   Pre-Identified Non-Claims Made Subclass Members...............9

            b.   Pre-Identified Claims Made Subclass Members.....................10

            c.   Self-Identified Claims Made Subclass Members....................11

        2.   Remedial Relief and Corrective Actions...................................12

            a.   Create and Adopt CC&B System Performance Metrics and Perform Work Necessary to Achieve and Maintain Compliance with these Metrics........................................12

                1)   Backlogged Field Investigation Cases Customer High/Low Bill Inquiries...................13

                2)   Backlogged Field Investigation Cases with Billing Instructions........................................14

                3)   Backlogged Field Investigation Cases Cut-in-Flat and Defective......................................16

                4)   Backlogged Field Investigation Cases with Other Issues.............................................17

                5)   Backlogged Field Services Field Activities...........19

                6)   Defective Meters...........................................20

                7)   Cut In Flat Electric Meters and Spacer on Water Meters..............................................21

                8)   Backlogged Meter Reread Field Activities............22

                9)   Backlogged Field Collections Field Activities........23

                10)   Backlogged Water And Power Distribution Meter Exchange...........................................24

<div style="writing-mode: vertical">

**LINER**

1100 Glendon Avenue, 14th Floor
Los Angeles, CA 90024-3518

</div>

36457.025-2474994v4

i

CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

11)     Backlogged Manually Generated Billing To Do's.................................................................25

12)     Premise Management ...............................................26

13)     Customer Service Call Times And Responses:......26

b.    Appointment of Independent CC&B System Monitoring Expert.............................................................................27

c.    Independent CC&B System Audits to Confirm Accuracy of CC&B System...............................................................28

d.    Create and Implement Internal Billing "Tiger Team" To Address Unique or Complex Billing Issues.....................29

e.    Create and Implement Information Technology Department Project Management Office ..........................................30

f.    Amend Rule 17 of the Rules Governing Water and Electric Service..........................................................................31

C.    Notice Program ......................................................................32

    1.    Mailed Notice ................................................................32

    2.    Emailed Notice .............................................................33

    3.    Published Notice ..........................................................34

    4.    Internet and Website Notice.........................................35

D.    Release, Waiver and Covenant Not To Sue ...........................35

E.    Confirmatory Discovery..........................................................36

F.    Non-Admission of Liability......................................................36

G.    Preliminary Approval ..............................................................37

H.    Claims Process ........................................................................37

    1.    Pre-identification ..........................................................38

      a.    Pre-Identified Non-Claims Made Subclass Members................38

      b.    Pre-Identified Claims Made Subclass Members .....................38

    2.    Self-Identification.........................................................39

    3.    Claims Administration..................................................39

    4.    Costs of Settlement Administration .............................39

I.    Requests for Exclusion of Settlement Class............................40

38457.025-2474794v4

ii

CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

EXHIBIT 13
Page 424

| | | | |
|---|---|---|---|
| J. | | Objections and Requests To Appear At Final Approval Hearing | 41 |
| K. | | Attorneys' Fees and Costs | 42 |
| L. | | Final Approval | 43 |
| M. | | Miscellaneous Provisions | 45 |
| | 1. | Authority Of Signatories | 45 |
| | 2. | Binding Upon Successors | 45 |
| | 3. | Both Parties As Drafter | 45 |
| | 4. | Cooperation | 45 |
| | 5. | Counterpart Execution | 45 |
| | 6. | Governing Law | 45 |
| | 7. | Headings | 46 |
| | 8. | Integration Clause | 46 |
| | 9. | Jurisdiction | 46 |
| | 10. | Non-Waiver | 46 |
| | 11. | Notice | 46 |
| | 12. | Severability | 47 |
| | 13. | Time for Compliance | 47 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LINER LLP
1100 Glendon Avenue 14th Floor
Los Angeles, CA 90024-3518

34457.025-2471/1654v4

iii

CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

EXHIBIT 13
Page 422

1    This Class Action Settlement Agreement and Limited Release ("Agreement") is submitted

2    pursuant to the California Code of Civil Procedure. Subject to the approval of the Court, this

3    Agreement memorializes the settlement between and among all Parties to fully resolve the Action.

4    This Agreement is entered into by and between Antwon Jones ("Jones" or "Plaintiff"),

5    individually and as a representative of the Settlement Class (as defined herein) and the City of Los

6    Angeles, by and through the Los Angeles Department of Water and Power ("LADWP" or

7    "Department") and DOES 1 through 50, inclusive (the "City" or "Defendant") (collectively the

8    "Parties"). This Agreement is intended by the Parties to fully and finally compromise, resolve,

9    discharge and settle all Released Claims (as defined herein) on the terms and conditions set forth

10   herein, subject to approval of the Court.

11   **I.    RECITALS**

12   WHEREAS, on April 1, 2015, Plaintiff filed a class action in the Superior Court of the

13   State of California for the County of Los Angeles captioned, *Jones v. City of Los Angeles*, Case

14   No. BC577267 (the "*Jones* Action");

15   WHEREAS, the complaint in the *Jones* Action alleges claims involving customer

16   over-billing and other billing errors by the LADWP that were caused by, and are related to, the

17   defective implementation of the LADWP's new Customer Care and Billing system (the "CC&B

18   System") or damages incurred by customers arising from their participation in the LADWP's solar

19   program;

20   WHEREAS, prior to filing the complaint in the *Jones* Action, Class Counsel (as defined

21   herein) initiated an extensive and very lengthy investigation into the matters alleged in the

22   complaint and has continued to conduct an ongoing investigation into the facts and law relating to

23   the allegations, claims and defenses asserted in this Action;

24   WHEREAS, Class Counsel's continuing investigation has included, among other things,

25   interviewing current and former LADWP employees and working closely with investigators and

26   Plaintiff's non-testifying experts to diligently investigate the facts relevant to the merits of the

27   claims asserted in the *Jones* Action, including the functionality of the CC&B System and the

28   LADWP's solar program;

EXHIBIT 13
Page 423

LINER LLP
1100 Glendon Avenue · 14th Floor
Los Angeles, CA 90024-3503

1    WHEREAS, LADWP conducted an internal investigation concerning issues relating to the

2    new CC&B System, customer billing related matters, including, but not limited to, matters

3    involving claims made against the LADWP by customers involved in the LADWP's solar

4    program, which remains ongoing;

5    WHEREAS, Plaintiff Jones directed his counsel to work with Plaintiff's non-testifying

6    consultants to develop a highly detailed settlement proposal in which Plaintiff Jones proposed to

7    resolve the claims asserted in the *Jones* Action, as well as the claims asserted in the following

8    three class actions filed against the City and the LADWP: *Bransford, et al. v. City of Los Angeles,*

9    Case No. BC565618 (the "*Bransford* Action"), *Fontaine v. City of Los Angeles, et al.,* Case No.

10   BC571664 (the "*Fontaine* Action"), and *Kimhi v. City of Los Angeles,* Case No. BC536272 (the

11   "*Kimhi* Action") on terms that would require the LADWP to:

12       (i)   conduct a review and audit of all LADWP customer accounts to determine if billing

13           errors occurred;

14       (ii)  refund one hundred percent of the amounts the LADWP had improperly charged

15           any of its customers as a result of billing errors caused by the LADWP's new

16           CC&B System or because of the customers' participation in the LADWP's solar

17           program;

18       (iii) take the remedial measures necessary to ensure that the defects in the new CC&B

19           System were permanently corrected; and

20       (iv)  provide independently verified evidence that the CC&B System was functioning

21           properly and generating accurate customer bills on an ongoing basis;

22   WHEREAS, after having provided the detailed settlement proposal, Class Counsel met and

23   conferred with counsel for the City and commenced formal settlement negotiations shortly

24   thereafter. The parties advanced settlement discussions as far as they could go until these efforts

25   stalled.

26

27

28

1    WHEREAS, after further consideration, the parties agreed to continue their settlement

2    discussions in a more formal mediation environment and engaged the services of the Hon. Dickran

3    M. Tevrizian (Ret.), one of the most well respected mediators in the United States, to conduct a

4    formal mediation in this matter;

5    WHEREAS, because of the nature of the claims at issue in this litigation and the

6    complexity of the settlement terms proposed by Plaintiff, Judge Tevrizian scheduled the mediation

7    to be conducted over a four day period on June 11-12, July 24 and July 31, 2015;

8    WHEREAS, the parties thereafter participated in a contentious and protracted two day-

9    long mediation at JAMS in Los Angeles before the Hon. Dickran M. Tevrizian (Ret.) on June 11

10   and 12, 2015. At the conclusion of that mediation session, the parties reached an agreement in

11   principal on the material terms of the proposed class action settlement reflected in this Agreement;

12   WHEREAS, following these mediation sessions, the parties appeared before the Court and

13   informed the Court that the parties had reached agreement in principal on the material terms of a

14   proposed class action settlement;

15   WHEREAS, given the complexity of the settlement and the detail necessary to verify the

16   identity of affected accounts, the accuracy of the refunds due to customers and to validate

17   compliance and the completion of agreed to remediation protocols, Judge Tevrizian scheduled an

18   additional mediation session on July 24 in which the parties worked to define and document other

19   non-material terms presented in this Agreement;

20   WHEREAS, after the parties had concluded negotiating all of the material and non-

21   material terms of the Agreement, other than the amount of attorneys' fees and expense

22   reimbursement to be paid to Class Counsel on July 24, Judge Tevrizian informed the parties that

23   they could begin negotiating the amount of attorneys' fees and expense reimbursement to be paid

24   to Class Counsel, and conducted a fourth day of mediation concerning this issue on July 31, 2015;

25   WHEREAS, despite the Parties' best efforts, and after a protracted mediation session on

26   July 31, 2015, the Parties reached an impasse with respect to Class Counsel's attorneys' fees and

27   expense reimbursement;

28

38457.025-2474794v4

3

CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

EXHIBIT 13
Page 425

Doc# 1 Page# 98 - Doc ID = 1755355499 - Doc Type = Case Public

1      WHEREAS, in hopes of bridging this impasse, Judge Tevrizian made a mediator's

2 proposal, which after much discussion over several days, was accepted by the Parties;

3      WHEREAS, based upon the extensive investigation undertaken prior to execution of this

4 Agreement, discovery provided during the negotiations and the analysis of the facts and the law

5 applicable to Plaintiff's claims, and taking into account the extensive burdens and expense of

6 litigation, including the risks and uncertainties associated with protracted trials and appeals, as

7 well as the fair, cost-effective and assured method of resolving the claims of the Settlement Class,

8 both Plaintiff and Class Counsel have concluded that this Agreement provides substantial benefits

9 to the Settlement Class and is fair, reasonable, adequate and in the best interests of Plaintiffs and

10 the Settlement Class;

11      WHEREAS, the City and the other Released Parties, defined below, have denied, and

12 continue to deny, the substantive claims set forth in the complaints in this Action and in the

13 *Bransford, Fontaine* and *Kimhi* Actions (collectively, the "Actions"), and have denied and

14 continue to deny any and all wrongdoing and liability of any kind with respect to any and all facts

15 and claims alleged and further deny that any Class Member has suffered any damage caused by

16 the City and the other Released Parties;

17      NOW, THEREFORE, IT IS HEREBY STIPULATED, CONSENTED TO AND

18 AGREED, by and between the Parties, through their respective counsel, and subject to the

19 approval of the Court, that the Actions be settled, compromised and dismissed, on the merits and

20 with prejudice, and the Released Claims be finally and fully compromised, settled and dismissed

21 as to the Released Parties, subject to and in accordance with the following terms and conditions:

22 II.   <u>DEFINITIONS</u>

23      As used in this Agreement and the exhibits thereto, in addition to any definitions elsewhere

24 in this Agreement, the following terms shall have the meanings set forth below:

25      1.   "Action" means *Jones v. City of Los Angeles*, Case No. BC577267 pending in the

26 Superior Court of the State of California for the County of Los Angeles.

27      2.   "Agreement" means this executed Class Action Settlement Agreement and Limited

28 Release.

3.     "CC&B System" means LADWP's Customer Care and Billing System used to bill its customers for electricity and water usage and the City of Los Angeles Bureau of Sanitation's customers for sewage and trash collection.

4.     "Claims Administrator" means Gilardi & Co., LLC, an independent service provider whose function shall be the analysis, processing and administration of all claims filed by Settlement Class Members in this Action.

5.     "Claim Form" means a document substantially in the form of the document attached to this agreement as Exhibit F.

6.     "Claim Period" means the four month (120) day period of time during which Claim Forms may be submitted to the Claims Administrator, commencing on the Notice Date.

7.     "Class Counsel" means Landskroner Grieco Merriman, LLC.

8.     "Class Representative" means Plaintiff Antwon Jones.

9.     "Complaint" means the First Amended Class Action Complaint filed in the Action.

10.    "Court" means the Superior Court of the State of California for the County of Los Angeles.

11.    "Defense Counsel" means Liner LLP.

12.    "Effective Date" means the later of the date upon which all appeals, if any, from the Final Order and Judgment (defined below) have been finally concluded and exhausted, with the date upon which the time to seek any appellate remedy from the Final Order and Judgment has expired.

13.    "Eligible Claim" means a claim or claims by a Settlement Class Member meeting the criteria for settlement benefits under this Agreement.

14.    "Final Approval Hearing" means the hearing to be held by the Court to consider and determine whether the proposed Settlement should be approved of as fair, reasonable and adequate, and whether the Final Order and Judgment should be entered.

15.    "Final Order and Judgment" means a final judgment entered by the Court in substantially the form attached as Exhibit G to this Agreement.

16.    "LADWP" means the Los Angeles Department of Water and Power.

EXHIBIT 13
Page 427

Doc# 1 Page# 100 - Doc ID = 1755355499 - Doc Type = Case File - Public

1       17.   "Liaison Counsel" means the Law Offices of Michael J. Libman.

2       18.   "Notice" means the notices disseminated in connection with the Notice Program in

3   the form of Exhibits A-B hereto.

4       19.   "Notice Date" means the later of the last date of Published Notice, or the last date

5   of emailed or mailed Notice.

6       20.   "Notice Program" means the plan for disseminating the Notices described in

7   Section III.C. herein.

8       21.   "Parties" means the City of Los Angeles, by and through the Los Angeles

9   Department of Water and Power, on behalf of itself, its subsidiaries, affiliates, directors, officers,

10   and their successor(s) and Plaintiff on behalf of himself and all others similarly situated.

11       22.   "Persons" means persons and entities, including, without limitation, any

12   individuals, sole proprietorships, associations, companies, partnerships, joint ventures,

13   corporations, trusts, estates, or any other persons or entities.

14       23.   "Plaintiff" means Antwon Jones.

15       24.   "Preliminary Approval Order" means the proposed order preliminarily approving

16   the Settlement, substantially in the form of Exhibit C hereto.

17       25.   "Released Claims" means any and all claims, damages, suits, demands, liabilities,

18   judgments, losses and causes of action relating to or arising from the billing issues alleged in the

19   operative pleadings in the Actions including but not limited to any error committed by the

20   LADWP in over-billing its customers between September 3, 2013, through the date of entry of the

21   Order of Final Approval, and in failing to timely include customers in the LADWP's Solar

22   Photovoltaic Incentive Program and/or credit for excess energy generated by solar customers at

23   any time from February 13, 2010, through the date of the entry of the Order of Final Approval,

24   whether known or unknown, matured or unmatured, sounding in law or equity, seeking damages

25   or any other relief, that are now recognized by law or that may be created or recognized in the

26   future by statute, regulation, judicial decision or in any other manner, based upon any federal or

27   state statutory or common law including but not limited to, claims sounding in tort, contract and

28   the consumer protection laws of the United States or of any state or other jurisdiction within the

LINER LLP
1100 Glendon Avenue   14th Floor
Los Angeles CA 90024-3518

30457.025-2474794v4          6

CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

EXHIBIT 13
Page 428

1   United States, and all claims, damages, suits, demands, liabilities, judgments, losses or causes of

2   action which have been, might have been, are now, or could be asserted by any Plaintiff or any

3   Settlement Class Member arising out of, based upon, or related to, in whole or in part, the facts

4   and circumstances underlying the claims and causes of action set forth in the Action.

5       26.    "Released Parties" means individually and collectively, as appropriate, the City of

6   Los Angeles, by and through the Los Angeles Department of Water and Power, and all of its

7   predecessors and successors in interest, including but not limited to, all of its respective past and

8   present parents and subsidiaries and current and former directors, officers, employees and

9   attorneys.

10      27.    "Remediation Period" means the 18 month period during which LADWP will

11  complete stabilization and remediation of the CC&B System immediately following the date of

12  entry of the Final Order and Judgment.

13      28.    "Settlement" means the settlement embodied in and contemplated by this

14  Agreement.

15      29.    "Settlement Class" is comprised of:

16          All LADWP customers who were improperly over-charged for
            electric, water, sewage or sanitation services between the dates of
17          September 3, 2013 and the present, and who are entitled to credits or
            refunds for electric, water, sewage or sanitation services and/or for
18          participation in the LADWP's solar incentive program from
            February 13, 2010.  Excluded from the Settlement Class are the
19          Judge to whom this case is assigned, any members of the Judge's
            immediate family, and counsel of record in this action.
20

21      30.    "Settlement Class Member" means any person included within the Settlement

22  Class, which includes any person who does not timely exercise his or her right to opt out of the

23  Settlement Class pursuant to Section III.J. herein.

24      All references herein to sections, paragraphs, and exhibits refer to sections, paragraphs and

25  exhibits to this Agreement, unless otherwise expressly stated.

26      Capitalized terms used in this Agreement, but not defined above, shall have the meaning

27  ascribed to them in this Agreement and the exhibits attached hereto.

28

38457.025-2471794v4

7

CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

EXHIBIT 13
Page 429

III.   **GENERAL TERMS AND CONDITIONS OF SETTLEMENT**

A.   **Certification of Settlement Class**

For purposes of Settlement only, and not for purposes of liability, and subject to Court approval, the Parties hereby stipulate to the certification of a class in this Action, pursuant to California Code of Civil Procedure Section 382, and California Rules of Court Rules 3.764(e) and 3.769(d), with members of the certified Class to comprise only those persons defined herein as the Settlement Class.

The Settlement Class is comprised of the following Subclasses:

- **Tiered Billing Subclass:** all residential and commercial customers of LADWP who were billed and paid for electricity or water usage at tiered rates higher than those rates that would otherwise have been used to bill these customers during the period September 3, 2013 through August 13, 2014.

- **Trend Estimate Subclass:** all residential and commercial customers of LADWP who paid electricity or water and sewer bills that were incorrectly estimated due to a defect in the Trend Estimation Algorithm used to compute these estimates during the period September 3, 2013 through August 13, 2014.

- **Closed Account with Credit Balance Subclass:** all residential and commercial customers of LADWP who: (i) have "Closed Accounts" with credit balances and (ii) are owed refunds that have been withheld by LADWP during the period of September 3, 2013 to present.

- **Premise Condition/Estimated Bill Subclass:** all residential and commercial customers of LADWP who: (i) unbeknownst to the customer, had a premise condition that caused excessive consumption of water and/or power; (ii) received estimated bills for multiple billing periods after September 3, 2013; (iii) because of these estimated bills, were prevented from timely discovering the premise condition; and (iv) were charged for greater quantities of water, power or sewage than they otherwise would have been charged.

- **Solar Customers Subclass:** all residential LADWP customers who have installed solar systems and applied to participate in the Solar Photovoltaic Incentive Program from February 13, 2010 to date and: (i) experienced delay in the final approval process beyond 30 days after submission of a complete Incentive Application and Supporting Documentation and indication that the solar system was fully permitted and ready for inspection; and/or (ii) have not been properly billed for energy consumed and/or generated; and/or (iii) have not been properly credited for excess energy generated by the customer's solar power system.

- **Automatic Bill Payment/Bank Overdraft Charge Subclass:** all LADWP customers who: (i) were enrolled in an automatic bill payment plan with a bank and (ii) were charged overdraft fees because LADWP charged the customer an incorrect amount, which, in turn, resulted in the customer's bank account being overdrawn.

LINER
1100 Glendon Avenue, 14th Floor
Los Angeles, CA 90024-3518

38457.025-2424794v4

8

CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

EXHIBIT 13
Page 430

- Late Payment Charge Subclass:  all LADWP customers who were assessed an inaccurate Late Payment Charge.

- Estimated Electric Bills with "Minimum Charge" Subclass:  all LADWP residential and small commercial customers:  (i) whose consumption was estimated to be zero and (ii) who were, therefore, assessed a "Minimum Charge" on an electric bill when the actual usage was above the "Minimum Charge."

- Omnibus Subclass:  all LADWP residential and commercial customers that believe they were: (i) incorrectly assessed a charge associated with their power, water, sewage or trash collection at any time from September 3, 2013 to the present; or (ii) otherwise damaged as a result of their participation in the LADWP's Solar Photovoltaic Incentive Program at any time from February 13, 2010 to the present, that is not covered by any of the other Subclasses listed herein.

All monetary compensation to be paid out under this Settlement Agreement will be paid out by not later than June 30, 2016.

Subject to the terms and conditions of this Agreement, the Parties agree not to oppose any efforts to certify such a class. A certification pursuant to this paragraph shall not constitute, in this or any other proceeding, an admission, finding or evidence that any requirement for class certification is otherwise satisfied, except for the expressly enumerated purposes in this Agreement.

**B. Settlement Relief**

In consideration for the dismissal of the Actions and the covenants arising under the terms of this Agreement, the Parties hereby agree as follows:

    **1. Monetary Relief**

        **a. Pre-Identified Non-Claims Made Subclass Members**

The Parties agree that members of the: (i) Tiered Billing Subclass; (ii) Trend Estimate Subclass; (iii) Closed Account with Credit Balance Subclass; (iv) Late Payment Charge Subclass and (v) Estimated Electric Bills with "Minimum" Charge" Subclass shall be pre-identified as members of each of these subclasses from the internal records of the LADWP and the methodology for identification shall be verified and tested by the CC&B System monitoring expert ("Pre-Identified Non-Claims Made Subclass Members").

38457.025-2474794v4

9

CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

LINER LLP
1100 Glendon Avenue / 14th Floor
Los Angeles CA 90024-3518

EXHIBIT 13
Page 431

1    The Parties further agree that the LADWP shall credit (in the case of current customers) or

2 refund (in the case of former customers) 100% of any amounts that the LADWP overcharged

3 "Pre-Identified Non-Claims Made Subclass Members" during the period September 3, 2013

4 through the present. The amounts to be: (i) credited to current customers; and (ii) refunded to

5 former customers who are "Pre-Identified Non-Claims Made Subclass Members" shall be

6 determined by the LADWP, and the methodology used to determine the amounts shall be verified

7 by the CC&B System monitoring expert and subject to Court approval. In determining such

8 amount, the LADWP shall calculate the amount to be credited or refunded by applying the

9 applicable rates and customer usage data for the periods in question for each subclass member as

10 set forth in Section III. herein. The Parties further agree that Pre-Identified Non-Claims Made

11 Subclass Members who do not timely exclude themselves as Class Members shall automatically

12 receive the amount of the credit or refund determined by the LADWP through this process without

13 the need to file a claim form. The payment will be made as stated in the Notice.

14    **b.    Pre-Identified Claims Made Subclass Members**

15    The Parties agree that members of the: (i) Premise Condition/Estimated Bill Subclass; (ii)

16 Automatic Bill Payment/Bank Overdraft Charge Subclass and (iii) Solar Customer Subclass shall

17 be pre-identified as members of each of these subclasses from the internal records of the LADWP

18 and verified by the independent consultant ("Pre-Identified Claims Made Subclass Members").

19    The Parties agree that any member of the "Pre-Identified Claims Made Subclass" who

20 wishes to file a claim must timely complete and submit a valid claim form substantiated by the

21 documentary evidence specified in the Claim Form to the Court-appointed Claims Administrator.

22 The Claims Administrator shall be responsible for making an initial determination as to the

23 validity or invalidity of all such Claim Forms, and the final determination of whether any Claim is

24 valid or invalid rests with the Court or duly appointed designee of the Court as agreed to by the

25 Parties.

26

27

28

38457.025-2474794v4

10

CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

Doc# 1 Page# 105 - Doc ID = 1755355499 - Doc Type = Case

EXHIBIT 13
Page 432

1    In addition, the Claims Administrator shall also be responsible for examining all Claim

2    Forms and supporting documentation submitted in support thereof and calculating the amount to

3    be refunded, credited or otherwise paid to any member of the "Pre-Identified Claims Made

4    Subclass" who files a timely claim substantiated by the required documentary support.

5    The Parties agree that, subject to Court approval, the LADWP shall refund 100% of any

6    amounts that the Claims Administrator, Court, or its appointed and agreed-to designee determines

7    the LADWP overcharged any member of the (i) Premise Condition/Estimated Bill Subclass or (ii)

8    Automatic Bill Payment/Bank Overdraft Charge Subclass during the period September 3, 2013

9    through the present.

10   The Parties further agree that, subject to Court approval, LADWP shall refund 100% of

11   any damages that the Claims Administrator, Court, or its appointed and agreed-to designee

12   determines the LADWP caused any member of the Solar Customer Subclass to incur as a result of

13   their participation in the LADWP's Solar Program during the period February 13, 2010 through

14   the present.

15        c.    Self-Identified Claims Made Subclass Members

16   In recognition of the possibility that some LADWP customers who have not been "pre-

17   identified" through LADWP's internal records may believe that they were: (i) overcharged as a

18   result of a billing error; or (ii) damaged as a result of their participation in the LADWP's Solar

19   Program, the Parties further agree as follows:

20   Any current or former LADWP customers who have not otherwise been "pre-identified" as

21   a member of any Subclass, but who nevertheless believe they have been overcharged as a result of

22   a billing error made by LADWP at any time since September 3, 2013; or (ii) damaged as a result

23   of their participation in the LADWP's Solar Program at any time since February 13, 2010, may

24   file a Claim Form to recover such overcharge or damages (the "Self-Identified Claims Made

25   Subclass").

26   The Parties further agree that any member of the "Self-Identified Claims Made Subclass"

27   who wishes to file a claim must timely complete and submit a valid claim form substantiated by

28   the documentary evidence specified in the Claim Form to the Court-appointed Claims

38457.025-2474784v4

11

CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

LINER LLP
1100 Glendon Avenue · 14th Floor
Los Angeles, CA 90024-3518

1  Administrator. The Claims Administrator shall be responsible for making an initial determination

2  as to the validity or invalidity of all such Claim Forms, and the final determination of whether any

3  Claim is valid or invalid rests with the Court or its duly appointed designee as agreed to by the

4  Parties.

5  In addition, the Claims Administrator shall also be responsible for examining all Claim

6  Forms and supporting documentation submitted in support thereof and calculating the amount to

7  be refunded, credited or otherwise paid to any member of the "Self-Identified Claims Made

8  Subclass" who files a timely claim substantiated by the required documentary support.

9  The Parties agree that, subject to Court approval, the LADWP shall refund 100% of any

10  amounts that the Claims Administrator, Court or its appointed and agreed-to designee determines

11  the LADWP overcharged any member of the "Self-Identified Claims Made Subclass" during the

12  period September 3, 2013 through the present.

13  The Parties further agree that, subject to Court approval, LADWP shall refund 100% of

14  any damages that the Claims Administrator, Court or its appointed and agreed-to designee

15  determines the LADWP caused any member of the "Self-Identified Claims Made Subclass" to

16  incur as a result of their participation in the LADWP's Solar Program during the period February

17  13, 2010 through the present.

18  2.  Remedial Relief and Corrective Actions

19  In addition to providing the foregoing monetary consideration, the Parties also hereby

20  agree that the LADWP will undertake the following remedial and corrective measures in

21  connection with the Settlement:

22  a.  Create and Adopt CC&B System Performance Metrics and
         Perform Work Necessary to Achieve and Maintain Compliance
23         with these Metrics

24  While the LADWP has already undertaken certain remedial measures to stabilize the

25  performance and functioning of the CC&B System, the LADWP hereby agrees that it will

26  appropriate and expend an additional twenty-million dollars ($20 million) over the eighteen-month

27  CC&B System Remediation Period provided for by this Settlement to retain CC&B System

28  consultants and software engineering consultants including, but not limited to Oracle Corp., to

38457.0252/474794v4

12

CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

EXHIBIT 13
Page 434

1   assist the LADWP in remediating and stabilizing the LADWP's CC&B System to ensure that the

2   CC&B System generates and delivers timely and accurate customer bills.

3        In addition, to further enhance customer service and ensure timely delivery of accurate

4   customer bills, Defendant agrees that it will also deploy the human and financial resources

5   necessary to enable the LADWP to meet, or exceed, the following thirteen objective performance

6   benchmarks on the schedule required by this Agreement:

7        1)    Backlogged Field Investigation Cases Customer High/Low Bill
           Inquiries
8

9        Since the implementation of the CC&B System, the number of field investigation cases has

10  increased and has exceeded the ability of LADWP to process these field investigation cases in a

11  timely manner.  To further enhance customer service and to ensure accurate and timely billing of

12  customers, LADWP commits to working and completing customer high bill and low bill inquiry

13  cases and to do tasks within the service level goals.  Customer high bill and low bill inquiries are

14  tracked in field investigation cases and to do task lists.  The High/Low bill field investigation

15  cases and to do's along with other relevant tasks will be tracked and the service level reported:

16      •   Electric High Bill Complaint for Field Investigation        CM_FIEHB

17      •   Electric Low Bill Complaint for Field Investigation         CM_FIELB

18      •   Water High Bill Complaint for Field Investigation           CM_FIWHB

19      •   Water Low Bill Complaint for Field Investigation            CM_FIWLB

20  The Department will meet or exceed the following metrics.

21      On Time Rate – The percentage of field investigation cases and To Do tasks that were

22  completed during the month that were within 30 days of the customer request.

23      Oldest Order – The age of the oldest field investigation case and To Do task measured

24  from the date of the customer request to the date that the task was completed.

25

26

27

28

LINER LLP
1100 Glendon Avenue  14th Floor
Los Angeles, CA 90024-3518

A) After 180 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 50% |
| Oldest Open FI case or To Do | The age of the oldest field investigation case and To Do task measured from the date of the customer request to the date that the task was completed. | < 90 days |

B) After 360 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 75% |
| Oldest Open FI case or To Do | The age of the oldest field investigation case and To Do task measured from the date of the customer request to the date that the task was completed. | < 75 days |

C) After 540 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 95% |
| Oldest Open FI case or To Do | The age of the oldest field investigation case and To Do task measured from the date of the customer request to the date that the task was completed. | < 60 days |

2)      Backlogged Field Investigation Cases with Billing Instructions

Since the implementation of the CC&B System, the number of field investigation cases and to do tasks has increased and has exceeded the ability of LADWP to process these field investigation cases in a timely manner.  Customer requests are tracked in field investigation cases and to do task lists.  To further enhance customer service and to ensure accurate and timely billing

LINER LLP
1100 Glendon Avenue   14th Floor
Los Angeles CA 90024-3518

3828271.002-3471479404                                    14

of customers, LADWP commits to working and completing field investigation cases with billing instructions cases and to do tasks within the service level goals. The field investigation cases with billing instructions cases and to do tasks along with other relevant tasks will be tracked and the service level reported:

- Account Service FI To Do                         CM_FIASU

The Department will meet or exceed the following metrics.

**On Time Rate** – The percentage of field investigation cases and To Do tasks that were completed during the month that were within 30 days of the customer request.

**Oldest Order** – The age of the oldest field investigation case and To Do task measured from the date of the customer request to the date that the task was completed.

A) After 180 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 50% |
| Oldest Open FI case or To Do | The age of the oldest field investigation case and To Do task measured from the date of the customer request to the date that the task was completed. | <90 days |

B) After 360 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 75% |
| Oldest Open FI case or To Do | The age of the oldest field investigation case and To Do task measured from the date of the customer request to the date that the task was completed. | < 75 days |

C) After 540 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within | > 95% |

38457.025-2474794V4

15

CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

EXHIBIT 13
Page 437

Doc# 1 Page# 110 - Doc ID = 1755355499 - Doc Type = Case Specific

| | | |
|---|---|---|
| | the initial service window. | |
| Oldest Open FI case or To Do | The age of the oldest field investigation case and To Do task measured from the date of the customer request to the date that the task was completed. | < 60 days |

3)   **Backlogged Field Investigation Cases Cut-In-Flat and Defective**

Since the implementation of the CC&B System, the number of field investigation cases and to do tasks has increased and has exceeded the ability of LADWP to process these field investigation cases in a timely manner.   LADWP field crews report unmetered electric services that are cut-in-flat, unmetered water service that has a spacer and defective meters.   To ensure accurate and timely billing of the customer, LADWP needs to install working meters by either replacing defective meters or working with the customers to resolve the issue necessitating service to be unmetered.   The field investigation cases and to do's along with other relevant tasks will be tracked and the service level reported:

- Electric Cut Flat Investigation for FI          CM_FIECF
- Electric Defective Meter Investigation for FI          CM_FIEDF
- Pending Cut Flat or Spacer Case for FI          CM_FIPCS
- Pending Defective Meter Case for FI          CM_FIPDM
- Water Defective Meter Investigation for FI          CM_FIWDF
- Water Spacer Investigation for FI          CM_FIWSP

The Department will meet or exceed the following metrics.

**On Time Rate** – The percentage of field investigation cases and To Do tasks that were completed during the month that were within 30 days of the customer request.

**Oldest Order** -- The age of the oldest field investigation case and To Do task measured from the date of the customer request to the date that the task was completed.

A) After 180 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 50% |

38437.025-2474794v4

16

CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

EXHIBIT 13
Page 488

| Oldest Open FI case or To Do | The age of the oldest field investigation case and To Do task measured from the date of the customer request to the date that the task was completed. | < 90 days |

B) After 360 Days

| Metric | Description | Service Goals |
| --- | --- | --- |
| On Time Rate case or To Do | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 75% |
| Oldest Open FI case or To Do | The age of the oldest field investigation case and To Do task measured from the date of the customer request to the date that the task was completed. | < 75 days |

C) After 540 Days

| Metric | Description | Service Goals |
| --- | --- | --- |
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 95% |
| Oldest Open FI | | < 60 days |

4)  **Backlogged Field Investigation Cases with Other Issues**

Since the implementation of the CC&B System, the number of field investigation cases and to do tasks including final inspection of residential solar systems for participation in the Solar Incentive Program has exceeded the ability of the Department to process these field investigation cases in a timely manner. This metric tracks the field investigation cases and to do's not tracked in other field investigation metrics. These field investigation cases and to do's will be tracked and the service level reported:

- Electric Why High Investigation for FI          CM_FIEWH
- Electric Why Low Investigation for FI           CM_FIEWL
- Electric Classification Survey Investigation for FI   CM_FIECS
- Electric Motor Survey Switch Investigation for FI   CM_FIEMS

38769.005-2474894v4                                    17
CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

EXHIBIT 13
Page 439

Doc# 1 Page# 112 - Doc ID = 1755355499 - Doc Type = Case

1  • Electric Rate Survey Investigation for FI                    CM_FIERS

2  • Electric Service Investigation for FI                         CM_FIESI

3  • Electric Meter Survey Serves Investigation for FI             CM_FIESS

4  • Pending Meter Survey Case for FI                              CM_FIPSV

5  • Water Why High Investigation for FI                           CM_FIWWH

6  • Water Why Low Investigation for FI                            CM_FIWWL

7  • Water Classification Survey Investigation for FI              CM_FIWCS

8  • Water Meter Survey Switch Investigation for FI                CM_FIWMS

9  • Water Rate Survey Investigation for FI                        CM_FIWRS

10 • Water Service Investigation for FI                            CM_FIWSI

11 • Water Meter Survey Serves Investigation for FI                CM_FIWSS

12 • Request for Meter Survey                                      CMMTRSUR

13 • Electric Classification Survey Investigation for FI           CM_FIECS

14 • Electric Meter Survey Switch Investigation for FI             CM_FIEMS

15 • Electric Rate Survey Investigation for FI                     CM_FIERS

16 • Electric Service Investigation for FI                         CM_FIESI

17 • Electric Meter Survey Serves Investigation for FI             CM_FIESS

18 • Pending Meter Survey Case for FI                              CM_FIPSV

19 • Water Classification Survey Investigation for FI              CM_FIWCS

20 • Water Meter Survey Switch Investigation for FI                CM_FIWMS

21 • Water Rate Survey Investigation for FI                        CM_FIWRS

22 • Water Service Investigation for FI                            CM_FIWSI

23 • Water Meter Survey Serves Investigation for FI                CM_FIWSS

24 • Request for Meter Survey                                      CMMTRSUR

25 The Department will meet or exceed the following metrics.

26     On Time Rate – The percentage of field investigation cases and To Do tasks that were

27 completed during the month that were within 30 days of the customer request.

28     Oldest Order – The age of the oldest field investigation case and To Do task measured

38457.0252474194v4                          18
CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

EXHIBIT 13

Page 440

1   from the date of the customer request to the date that the task was completed.

2   A) After 180 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate case or To Do | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 25% |
| Oldest Open FI | The age of the oldest field investigation case and To Do task measured from the date of the customer request to the date that the task was completed. | < 90 days |

9
10   B) After 360 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 50% |
| Oldest Open FI case or To Do | The age of the oldest field investigation case and To Do task measured from the date of the customer request to the date that the task was completed. | < 75 days |

17   C) After 540 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 90% |
| Oldest Open FI case or To Do | The age of the oldest field investigation case and To Do task measured from the date of the customer request to the date that the task was completed. | < 60 days |

25        5)   Backlogged Field Services Field Activities

26   New customers as well as existing customers who wish to start service at a new address or

27   existing customers who wish to stop service at their existing address contact LADWP to request

28   the utility services be connected or disconnected. LADWP will schedule a Field Service

LINER llp
1100 Glendon Avenue   14th Floor
Los Angeles CA 90024-3518

360.57.025-2474794/v4

19

CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

EXHIBIT 13
Page 441

Doc() 1 Page# 114 - Doc ID = 1755355499 - Doc Type = Case Public

representative to visit the customer's premise and start or stop the service and obtain a meter read, which is used for the opening or closing bill. The field service field activities are tracked and the service level reported:

The Department will meet or exceed the following metrics.

On Time Rate – The percentage of field service field activities that were completed during the month that were within 1 business day of the customer requested date for start service and 10 business day of the customer requested date for stop service.

A) After 180 Days

| Metric | Description | Service Goals |
|--------|-------------|---------------|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 75% |

B) After 360 Days

| Metric | Description | Service Goals |
|--------|-------------|---------------|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 85% |

C) After 540 Days

| Metric | Description | Service Goals |
|--------|-------------|---------------|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 95% |

6)        Defective Meters

LADWP field crews report unmetered electric and water services that have defective meters. To ensure accurate and timely billing of the customer, LADWP needs to install working meters by replacing defective meters. The replacement of defective meters will be tracked and the service level reported:

The Department will meet or exceed the following metrics.

On Time Rate – The percentage of field activities to replace defective meters that were

38457.025-2417498v4                                    20

EXHIBIT 13
Page 442

1    completed during the month that were within 90 days of the date the defective meter was
2    first reported.

3    A) After 180 Days

| Metric | Description | Service Goals |
| --- | --- | --- |
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 25% |
| Oldest Open Defective Meter | | < 180 days |

B) After 360 Days

| Metric | Description | Service Goals |
| --- | --- | --- |
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 50% |
| Oldest Open Defective Meter | | < 150 days |

C) After 540 Days

| Metric | Description | Service Goals |
| --- | --- | --- |
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 90% |
| Oldest Open Defective Meter | | < 120 days |

7)    Cut In Flat Electric Meters and Spacer on Water Meters

LADWP field crews report unmetered electric service that are cut-in-flat and unmetered water service that has a spacer. To ensure accurate and timely billing of the customer, LADWP needs to work with the customers to resolve the issue necessitating service to be unmetered. The tasks to install meters on unmetered services will be tracked and the service level reported. The Department will meet or exceed the following metrics:

EXHIBIT 13
Page 443

Doc# 1 Page# 116 - Doc ID = 1755355499 - Doc Type = Case

On Time Rate – The percentage of field activities to install meters on unmetered services that were completed during the month that were within 90 days of the date the defective meter was first reported.

A) After 180 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 25% |
| Oldest Open Cut-In-Flat or Spacer | | < 180 days |

B) After 360 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 50% |
| Oldest Open Cut-In-Flat or Spacer | | < 150 days |

C) After 540 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 90% |
| Oldest Open Cut-In-Flat or Spacer | | < 120 days |

8)    Backlogged Meter Reread Field Activities

To further enhance customer service and to ensure accurate and timely billing of the customer, LADWP commits to meeting meter reread field activity service level goals. LADWP customers who have an outstanding meter read because: (1) a high low billing exception has occurred and the biller requests a re-read to verify consumption, (2) the customer has requested a re-read of their meter to verify consumption, or (3) the meter reader was unable to gain access to

22

EXHIBIT 13
Page 444

1   the property to read the meter.  The meter re-read field activities will be tracked and the service

2   level reported:

3   The Department will meet or exceed the following metrics.

4       **On Time Rate** – The percentage of meter reread field activities that were within 15 days

5       of the date the defective meter was first reported.

6   A) After 180 Days

7

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 50% |

11  B) After 360 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 75% |

16  C) After 540 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 95% |

21      **9)**    **Backlogged Field Collections Field Activities**

22      To further enhance customer service and to avoid creating a hardship for a customer by

23  allowing them to become over extended by exceeding their ability to pay, LADWP commits to

24  meeting field collection field activity service level goals to reconnect service after payment or

25  sever service for non-payment in a timely manner.  The collection activity will be in compliance

26  with the LADWP field collection policy at the time the collection is attempted.  The field

27  collection field activities will be tracked and the service level reported:

28  The Department will meet or exceed the following metrics.

Doc# 1 Page# 118 - Doc ID = 1755355499 - Doc Type = Case File - Public

EXHIBIT 13
Page 445

**On Time Rate** – The percentage of field collection field activities that were within 30 days of the date the defective meter was first reported.

**Oldest Order** – The age of the oldest field collection field activity measured from the date the field can first be worked.

A) After 180 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 25% |
| Oldest Open field collection field activity | | < 90 days |

B) After 360 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 50% |
| Oldest Open field collection field activity | | < 75 days |

C) After 540 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 90% |
| Oldest Open field collection field activity | | < 60 days |

10) Backlogged Water And Power Distribution Meter Exchange

To further enhance customer service and to ensure accurate and timely billing of the customer, LADWP commits to meeting water and power meter exchange field activity service level goals. The meter exchange field activities will be tracked and the service level reported. The Department will meet or exceed the following metrics.

38457.025-2474794v4                                    24

CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

EXHIBIT 13
Page 446

**On Time Rate** – The percentage of meter exchange field activities that were within 30 days of the date the exchange was scheduled for completion,

**Oldest Order** – The age of the oldest meter exchange field activity measured from the date the field activity was scheduled for completion.

A) After 180 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 25% |
| Oldest Open Meter Exchange | | < 90 days |

B) After 360 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 50% |
| Oldest Open Meter Exchange | | < 75 days |

C) After 540 Days

| Metric | Description | Service Goals |
|---|---|---|
| On Time Rate | The on time rate is the percentage of field activities completed in a time period within the initial service window. | > 90% |
| Oldest Open Meter Exchange | | < 60 days |

11)   Backlogged Manually Generated Billing To Do's

To further enhance customer service and to ensure accurate and timely billing of customers, LADWP commits to working and completing billing error To Do tasks within the service level goals. The billing To Do tasks will be tracked and the service level reported. The Department will meet or exceed the following metrics:

38657.025-2174794v4

25

CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

On Time Rate – The percentage of billing To Do tasks that were completed within 30 days of the date the To Do task was first created.

A) After 180 Days

| Metric | Description | Service Goals |
|--------|-------------|---------------|
| On Time Rate | The on time rate is the percentage of billing To Dos completed within the 30 day service window. | > 25% |

B) After 360 Days

| Metric | Description | Service Goals |
|--------|-------------|---------------|
| On Time Rate | The on time rate is the percentage of billing To Dos completed within the 30 day service window. | > 50% |

C) After 540 Days

| Metric | Description | Service Goals |
|--------|-------------|---------------|
| On Time Rate | The on time rate is the percentage of billing To Dos completed within the 30 day service window. | > 95% |

12)   Premise Management

The Premise Management Group will be established primarily to aid customers who have newly installed permanent services, which have not been entered into the CC&B system, and who are therefore not receiving bills.

The Department will establish a premise management group to manage the addition of new premises and services within the LADWP service territories. The premise management group will be established within 60 days of final approval of the Settlement.

13)   Customer Service Call Times And Responses

To further enhance customer service, the LADWP commits to meeting a monthly Average Speed of Answer ("ASA") in both their residential and commercials call centers as called out below. The ASA is the average amount of time it takes for a call to be answered in the call centers

38457.025-2474/8.v4                              26

during the month. This includes the amount of time callers wait in the automatic call director ("ACD") queue after navigating through the IVR until the agent answers the phone. It also does not include callers who use a self-service IVR option and never reach the ACD queue.

A) After 180 Days

| Metric | Description | Service Goals |
|---|---|---|
| Average Speed of Answer | Average Speed of Answer (ASA) is a call center metric for the average amount of time it takes for calls to be answered in a call center during a specific time period. | < 5 min |

B) After 360 Days

| Metric | Description | Service Goals |
|---|---|---|
| Average Speed of Answer | Average Speed of Answer (ASA) is a call center metric for the average amount of time it takes for calls to be answered in a call center during a specific time period. | < 4 min |

C) After 540 Days

| Metric | Description | Service Goals |
|---|---|---|
| Average Speed of Answer | Average Speed of Answer (ASA) is a call center metric for the average amount of time it takes for calls to be answered in a call center during a specific time period. | < 3 min |

   b.   **Appointment of Independent CC&B System Monitoring Expert**

In furtherance of the LADWP's goal of restoring customer confidence and the public's trust and confidence in the LADWP's ability to deliver timely and accurate customer bills and a level of customer service that consistently meets or exceeds industry standards, the Parties further agree that Plaintiff will retain the services of a nationally recognized CC&B consulting expert, Paul Bender Consulting ("Bender Consulting"), to verify data, establish that the mechanism for identifying affected accounts is fair and reasonable, confirm the accuracy of credits and refunds due to current and former customers, and monitor the CC&B remediation effort undertaken by the LADWP and its independent CC&B consultants during the 18 month Remediation Period.

(Page 123 of 338)

1       The Parties further agree that Bender Consulting will be afforded reasonable access to the

2  LADWP's CC&B System remediation plan and will be routinely permitted to interview

3  LADWP's IT staff assigned to the CC&B remediation project and CC&B System consultants

4  working on the remediation project for the purpose of monitoring the resources devoted to the

5  remediation project and LADWP's progress toward meeting or exceeding the metrics specified in

6  Section III.B.2.a. above.  The Parties hereto further agree that Bender Consulting will provide

7  independent detailed written quarterly reports to Class Counsel, Defense Counsel, the LADWP

8  Board of Commissioners, the General Manager of the LADWP, and the Office of Public

9  Accountability, detailing its quarterly findings.

10      The Parties further agree that Class Counsel shall be responsible for preparing and filing

11  quarterly status reports with the Court that inform the Court of Bender Consulting's quarterly

12  findings.  The quarterly reports prepared by Bender Consulting will also be attached as Exhibits to

13  the Status Reports to the Court.

14            c.     **Independent CC&B System Audits to Confirm Accuracy of CC&B System**

15

16      In furtherance of the LADWP's goal to restore customer and public trust and confidence in

17  the LADWP's ability to deliver accurate and timely customer bills and to consistently deliver

18  customer service that meets or exceeds industry standards, the Parties hereto further agree that, at

19  the conclusion of the 18 month Remediation Period, the performance capabilities, including the

20  ability of the CC&B System to consistently deliver timely and accurate customer bills, shall be

21  audited by an independent auditing firm at LADWP's cost.  This initial audit report will be

22  completed immediately following the 18 month Remediation Period.

23      The results of the independent CC&B System audit conducted at the end of the 18 month

24  Remediation Period shall be set forth in a detailed audit report that will be provided to the

25  LADWP Board of Commissioners, the General Manager of the LADWP, the Office of Public

26  Accountability, Class Counsel, and Defense Counsel.

27      The Parties further agree that 18 months *after* the conclusion of the 18 month Remediation

28  Period, the performance capabilities, including the ability of the CC&B System to consistently

LINER LLP
1100 Glendon Avenue, 14th Floor
Los Angeles, CA 90024-3503

EXHIBIT 13

Page 450

Doc# 1 Page# 123 - Doc ID = 1755355499 - Doc Type = Case

1  deliver timely and accurate customer bills, shall be audited by an independent auditing firm for a

2  second time at LADWP's cost.  The purpose of this second audit shall be to determine and report

3  on whether the CC&B System continues to consistently deliver timely and accurate customer bills

4  18 months after the Remediation Period has been concluded.

5       The results of this second independent CC&B System audit shall also be set forth in a

6  detailed audit report that will be provided to the LADWP Board of Commissioners, the General

7  Manager of the LADWP, the Office of Public Accountability, Class Counsel, and Defense

8  Counsel.

9       The Parties further agree that, in the event that the second independent audit confirms that

10  the LADWP is in substantial compliance with its obligations arising under this Agreement,

11  LADWP's obligations under the Settlement will terminate upon the LADWP's Board of

12  Commissioners approving the second audit and the Court issuing a final order terminating the

13  litigation.  In addition, the Parties agree that Class Counsel will have access to confirmatory

14  discovery for the purpose of assessing the LADWP's compliance, or lack thereof, with LADWP's

15  obligations arising under this Agreement until such time as the Court issues an Order terminating

16  the litigation.

17       The Parties further agree that Class Counsel shall be responsible for preparing and filing

18  status reports with the Court that inform the Court of the results of the initial and second

19  independent CC&B System audits.  The independent audit reports prepared by the CC&B System

20  monitoring expert will also be attached as Exhibits to all such Status Reports to the Court.

21            **d.**   **Create and Implement Internal Billing "Tiger Team" To Address Unique or Complex Billing Issues**

22

23       In recognition of the fact that certain types of customer bills often require a heightened

24  level of customer service and in furtherance of the LADWP's goal to deliver accurate and timely

25  bills to all of its customers, including those customers who require a heightened level of customer

26  care and service, the Parties hereby agree that the LADWP will establish and fully staff a "Tiger

27  Team" with not less than ten customer service representatives who have extensive training in

28  complex billing matters to address escalated or complex customer billing concerns.

38457/025-2474194v4                                           **29**

CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

EXHIBIT 13
Page 451

1  The LADWP will work with Class Counsel to develop internal guidelines and a process

2  for identifying and escalating all highly complex customer billing issues to ensure that all

3  customers, including those customers with extremely complex bills, receive the level of customer

4  care necessary to timely resolve any and all billing issues.

5  The Tiger Team will become a permanent unit within the LADWP's Customer Service

6  organization and will be established and fully staffed within 60 days of the Settlement being

7  finally approved by the Court.

8          **e.**  **Create and Implement Information Technology Department**

            **Project Management Office**

9

10  In recognition of the fact that the LADWP is the largest municipal utility in the United

11  States and is anticipated to be replacing and/or significantly upgrading significant portions of its

12  information technology infrastructure over the course of the next several years, the Parties agree

13  that the LADWP will permanently establish a Project Management Organization ("PMO") within

14  six months of the Court finally approving the Settlement.   The PMO will be responsible for

15  managing and implementing all aspects of all future significant information technology projects

16  undertaken by the LADWP.

17  To create the PMO, the Parties further agree that the LADWP will seek the necessary

18  authority to create an exempt position that will be titled "Chief Project Manager." Upon approval

19  of this exempt position, the LADWP will then seek authority to conduct a national recruiting

20  campaign to recruit and hire the most qualified candidate available.  Once hired, the Chief Project

21  Manager will report directly to the LADWP's Chief Administrative Officer.

22  The Parties further agree that the PMO organization shall be organized, staffed and

23  managed so as to ensure continuity and adherence to then-current industry best practices.  The

24  PMO will be staffed with at least three Senior Project Managers who will be selected through a

25  competitive process by, and report directly to, the LADWP's Chief Project Manager.  Each of the

26  three Senior Project Managers will be assigned various IT related projects to be undertaken by the

27  LADWP and will be responsible for assembling Project Teams of varying size and membership.

28  Each Project Team will be staffed with qualified individuals drawn from the LADWP's Customer

3B457.025-2474394v4

30

CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

EXHIBIT 13
Page 452

1   Service Division, IT Division, Field Services, Water Services, Power Services, Financial Services

2   Organization, external consultants and in-house or outside legal counsel, as appropriate to ensure

3   the successful implementation and completion of each IT related project undertaken by the

4   LADWP.

5           **f.**     **Amend Rule 17 of the Rules Governing Water and Electric**

               **Service**

6

7   The Parties recognize and agree that:

8       i.     the timely issuance and collection of accurate customer bills is a
             cornerstone of sound business practices at the LADWP;

9

10       ii.    as a matter of fairness and customer relations, the LADWP is responsible
             for timely and accurate billing;

11       iii.   receiving accurate bills at regular intervals in accordance with applicable
             rules is a basic LADWP customer right;

12

13       iv.   the LADWP's failure to issue a bill, as well as issuing an estimated bill due
             to circumstances within the LADWP's control, may constitute a billing
             error in certain circumstances; and

14

15       v.    in the situations where the LADWP has not issued timely or accurate bills
             and has nevertheless undertaken to retroactively collect such bills to bring
             customer accounts current, the LADWP may have created a hardship for its

16                customers.

17       In recognition of the fact that the LADWP is committed to the issuance of timely and

18   accurate bills to its customers and, pursuant to the terms of this Settlement, the Parties agree that

19   the Board of Commissioners of the LADWP will amend Rule 17 of the Rules Governing Water

20   and Electric Service ("Rule 17") to provide in relevant part:

21       1.    Residential Customers

22       When a Department error in billing is discovered on a Residential
             Customer's account and the date of its occurrence can be
23                determined, the overcharge or undercharge will be computed back
             to, but not beyond that date, but not in any event exceeding a
24                maximum of 270 days prior to the date of discovery of the
             overcharge or undercharge.
25

26       The foregoing is not applicable to: (i) "back-dated service
             connection"; (ii) energy theft; (iii) water theft; (iv) illegal diversion;
             (v) fraud; (vi) customer refusing access; and (vii) all instances where
27                delay or error in billing is solely attributable to customer action or
             inaction which serves to impede LADWP's ability to conduct its
28                business.

LINER LLP
1700 Garden Avenue, 14th Floor
Los Angeles, CA 90024-2918

38457.025-2474394v4       31

CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

**EXHIBIT 13**

2.    **Commercial Customers**

When a Department error in billing is discovered on a Commercial Customer's account and the date of its occurrence can be determined, the overcharge or undercharge will be computed back to, but not beyond that date, but not in any event exceeding four years prior to the date of discovery of the overcharge or undercharge.

The foregoing provision is subject only to the "extreme hardship exception" which is only applicable to businesses that employ 25 or fewer employees ("Qualified Businesses").   Pursuant to the "extreme hardship exception," a Qualified Business may apply to the LADWP for additional time to pay the back-billed amount and such applications will be considered on a case by case basis by the LADWP.

The Parties hereto also agree that all residential and commercial customers who receive a corrected back-bill after the Settlement is finally approved by the Court shall have a period of four years from the date on which they receive a corrected back-bill to pay the entirety of the back-billed amount only, in full, without penalty or interest, in equal monthly instalments.  To qualify for the foregoing, customers must remain current on their most recent bill.  The Parties further agree that, in the event that any residential or commercial customer fails to timely make any payments due of any portion of the back-billed amounts in accordance with these terms, the entirety of the back-billed amount shall immediately become due and payable.

C.    **Notice Program**

Not later than 30 business days after the entry of the Order granting Preliminary Approval, Class Counsel shall cause Notice to be disseminated as directed in the Order of Preliminary Approval as follows:

1.    **Mailed Notice**

Defendant shall directly mail, via United States First Class Mail, a long form notice to all those customers of LADWP for whom Defendant has street addresses and with whom Defendant routinely communicates via United States First Class Mail pursuant to customers' instructions in the form of Exhibit A hereto.  The Mailed Notice shall:

a.    contain a short, plain statement of the background of the Action and the Settlement;

38457.025-3474704v4                                          32

*CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE*

b.   describe the relief outlined in this Agreement;

c.   state that any relief to Settlement Class Members is contingent on the Court's final approval of the Settlement;

d.   inform Settlement Class Members that, if they do not exclude themselves from the Settlement Class, they may be eligible to receive the relief under the Settlement;

e.   inform Settlement Class Members that they may exclude themselves from the Class by submitting a written exclusion request postmarked no later than 90 days after the Notice Date;

f.   inform Settlement Class Members that they may object to the proposed Settlement by filing and serving a written statement of objections no later than 90 days after the Notice Date;

g.   inform Settlement Class Members that any Final Order and Judgment entered in the Action, whether favorable or unfavorable to the Settlement Class, shall include, and be binding on, all Settlement Class Members who have not been excluded from the Class, even if they have objected to the Settlement; and

h.   inform Settlement Class Members of the terms of the Release.

2.   **Emailed Notice**

Defendant shall send via email, a long form notice to all those customers of LADWP for whom Defendant has email addresses and with whom Defendant routinely communicates via email pursuant to customers' instructions in the form of Exhibit A hereto.  The Emailed Notice shall:

a.   contain a short, plain statement of the background of the Action and the Settlement;

b.   describe the relief outlined in this Agreement;

c.   state that any relief to Settlement Class Members is contingent on the Court's final approval of the Settlement;

LINER LLP
1100 Glendon Avenue   14th Floor
Los Angeles, CA 90024-3503

EXHIBIT 13
Page 455

Doc# 1 Page# 128 - Doc ID = 1755355099 - Doc Type = Case ...

1     d.     inform Settlement Class Members that, if they do not exclude themselves

2            from the Settlement Class, they may be eligible to receive the relief under

3            the Settlement;

4     e.     inform Settlement Class Members that they may exclude themselves from

5            the Class by submitting a written exclusion request postmarked no later than

6            90 days after the Notice Date;

7     f.     inform Settlement Class Members that they may object to the proposed

8            Settlement by filing and serving a written statement of objections no later

9            than 90 days after the Notice Date;

10    g.     inform Settlement Class Members that any Final Order and Judgment

11           entered in the Action, whether favorable or unfavorable to the Settlement

12           Class, shall include, and be binding on, all Settlement Class Members who

13           have not been excluded from the Class, even if they have objected to the

14           Settlement; and

15    h.     inform Settlement Class Members of the terms of the Release.

16    3.     **Published Notice**

17           Defendant shall cause a summary notice to be published in the form of Exhibit B hereto

18    one time in *The Los Angeles Times* and one time in *La Opinion.* The Published Notice shall not be

19    less than ¼ of a page.  The Published Notice shall:

20    a.     contain a short, plain statement of the background of the Action and the

21           Settlement;

22    b.     describe the relief outlined in this Agreement;

23    c.     inform Settlement Class Members that, if they do not exclude themselves

24           from the Settlement Class, they may be eligible to receive the relief under

25           the Settlement;

26    d.     inform Settlement Class Members that they may exclude themselves from

27           the Class by submitting a written exclusion request postmarked no later than

28           90 days after the Notice Date;

38457.025-2474794v4

34

CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

EXHIBIT 13
Page 456

Doc# 1 Page# 129 - Doc ID = 1755355499 - Doc Type = Case

1    c.    inform Settlement Class Members that they may object to the proposed

2          Settlement by filing and serving a written statement of objections no later

3          than 90 days after the Notice Date; and

4    f.    inform Settlement Class Members that any Final Order and Judgment

5          entered in the Action, whether favorable or unfavorable to the Settlement

6          Class, shall include, and be binding on, all Settlement Class Members who

7          have not been excluded from the Class, even if they have objected to the

8          Settlement.

9    **4.    Internet and Website Notice**

10         Notice of the Settlement will also be published on LADWP's website and on the website

11   of the Claims Administrator.

12         The Parties agree that the methods of Notice set forth in these Sections C.1.-C.4. constitute

13   the best form of Notice to the Settlement Class that is practicable under the circumstances.

14         Defendant shall pay all costs and expenses associated with disseminating the Notices

15   described herein.

16   **D.    Release, Waiver and Covenant Not To Sue**

17         As of the Effective Date, and in consideration of this Agreement and the benefits extended

18   to the Settlement Class, Plaintiff, on behalf of himself and the Settlement Class Members, and

19   each Settlement Class Member, on behalf of himself or herself and his or her respective successors

20   and assigns hereby fully releases and forever discharges the Released Parties from the Released

21   Claims.

22         Plaintiff, on behalf of himself and the Settlement Class Members, fully understand that if

23   any fact relating to any matter covered by this Agreement is later found to be other than, or

24   different from, the facts now believed by Plaintiff to be true, Plaintiff, on behalf of himself and the

25   Settlement Class Members, expressly accepts and assumes the risk of such possible differences in

26   fact and acknowledge that this Agreement shall nevertheless remain fully binding and effective.

27         Upon entry of the Final Order and Judgment, Plaintiff shall have, and each and every

28   Settlement Class Member shall be deemed to have, on behalf of the Settlement Class Member and

1   the Settlement Class Members' respective successors and assigns, covenanted and agreed to: (i)

2   forever refrain from instituting, maintaining or proceeding in any action against the Released

3   Parties with respect to any Released Claims; (ii) release and forever discharge the Released Parties

4   from each and every such Released Claim; and (iii) this Agreement being pleaded as a full and

5   complete defense to, and being used as the basis for a temporary restraining order or preliminary

6   or permanent injunction against, any action, suit or other proceeding which has been or may be

7   instituted, prosecuted, continued to be prosecuted, or attempted, asserting any Released Claim.

8       In addition, Defendant hereby releases, discharges and waives any and all claims that

9   Defendant had or may have had, asserted or not, against Plaintiff or Plaintiff's counsel.

10      E.   **Confirmatory Discovery**

11      The Settlement is subject to Plaintiff completing reasonable confirmatory discovery

12   including, but not limited to, any of the following: (1) responding to and producing documents

13   responsive to a request by Plaintiff for the information below and (2) providing evidence from

14   designated LADWP representatives in the subject areas of requested inquiry:

15      ▪  Criteria used for identification of membership in each identified sub-class;

16      ▪  The internal methodology, criteria, queries used and data relied upon for the
17         evaluation of all class members' accounts to determine credit or refund
             eligibility and amount of credit or refund and validation protocols;

18      ▪  Reports and all data documenting the total payment of credits and/or refunds
19         issued to customers and from ongoing remediation efforts ;

20      ▪  Remediation implementation protocols, progress reports, updates, and the
            metrics generated from reporting; and

21      ▪  Such other items as are mutually agreed upon to confirm the fairness,
22         reasonableness and adequacy of the Settlement.

23      F.   **Non-Admission of Liability**

24      This Agreement is made for settlement purposes only, neither the fact of nor any specific

25   provision contained in this Agreement nor any action taken hereunder shall constitute, or be

26   construed as, any admission of the validity of any claim or any fact alleged by Plaintiff or by any

27   other person included within the Settlement Class of any wrongdoing, fault, violation of law, or

28   liability of any kind on the part of Defendant. This Agreement constitutes a compromise pursuant

EXHIBIT 13
Page 458

Doc# 1 Page# 131 - Doc ID = 1755355499 - Doc Type = Case ...

1  to California Evidence Code Section 1152(a).  It shall not be offered or be admissible, either in

2  whole or in part, as evidence against Defendant, except in any action or proceeding to enforce its

3  terms.

        G.    <u>Preliminary Approval</u>

5        Plaintiff shall present this Agreement to the Court by way of a motion seeking certification

6  of the Settlement Class and preliminary approval of the Settlement reflected in this Agreement

7  (the "Motion for Preliminary Approval") by no later than August 17, 2015, with an oral hearing on

8  the motion set for September 11, 2015.  Defendant shall join in Plaintiff's request for preliminary

9  approval of this Agreement and certification of the Settlement Class.  The Motion for Preliminary

10  Approval shall apply for an order substantially in the form of Exhibit C hereto ("Preliminary

11  Approval Order").  The Motion for Preliminary Approval shall request an order:

12          a.     consolidating the Actions;

13          b.     for preliminary approval of this Agreement;

14          c.     for certification, for settlement purposes, of the Settlement Class;

15          d.     for the appointment of Class Counsel and Liaison Counsel as counsel for

16               the Settlement Class;

17          e.     for the appointment of Plaintiff as the Class Representative for the

18               Settlement Class;

19          f.     for the approval of the Notices in the form substantially similar to those

20               attached as Exhibits A and B hereto; and

21          g.     setting a schedule for final approval of the Settlement.

22          H.    <u>Claims Process</u>

23        Settlement Class membership and the amount of monetary relief to which each Settlement

24  Class Member may be entitled will be accomplished by a process that includes:  (i) pre-

25  identification and/or (ii) self-identification of Settlement Class Members.

26

27

28

LINER
1100 Glendon Avenue   14th Floor
Los Angeles, CA 90024-3518

EXHIBIT 13
Page 459

Doc# 1 Page# 132 - Doc ID = 1755355499 - Doc Type = Case

I.     Pre-identification

a.     Pre-Identified Non-Claims Made Subclass Members

Not later than 90 days after the entry of the Order granting Preliminary Approval, Defendant shall identify those Settlement Class Members that are included in the Pre-Identified Non-Claims Made Subclass and the amount of monetary credit (if the Pre-Identified Non-Claims Made Subclass Member is a current LADWP customer) or refund (if the Pre-Identified Non-Claims Made Subclass Member is a former LADWP customer with a closed LADWP account) to which each Pre-Identified Non-Claims Made Subclass Member is entitled, based on computations performed by Defendant.

Defendant shall provide each Pre-Identified Non-Claims Made Subclass Member with a letter in the form of Exhibit D hereto, either by United States First Class Mail or email, no later than 90 days after the entry of the Order granting Preliminary Approval.

Such letters shall indicate:  (a) the particular Subclass(es) in which each Pre-Identified Non-Claims Made Subclass Member is included; (b) the amount of the monetary credit or refund that each Pre-Identified Non-Claims Made Subclass Member is entitled; and (c) instructions on how to opt-out, in the event that a Pre-Identified Non-Claims Made Subclass Member wishes to exclude himself/herself from the Settlement Class.  Such letters shall further state that, in the event the Court finally approves the Settlement, and the Pre-Identified Non-Claims Made Subclass Member is satisfied with the amount of the monetary credit or refund identified in the letter, the Pre-Identified Non-Claims Made Subclass Member need not take any further action to recover the credit or refund.

b.     Pre-Identified Claims Made Subclass Members

Additionally, not later than 90 days after the entry of the Order granting Preliminary Approval, Defendant shall identify those Settlement Class Members that are included in the Pre-Identified Claims Made Subclass.

Defendant shall provide each Pre-Identified Claims Made Subclass Member with a letter in one of the forms of Exhibit E hereto, either by United States First Class Mail or email, no later than 90 days after the entry of the Order granting Preliminary Approval.

38457.025-2474704v4                                  38
CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

EXHIBIT 13
Page 460

1    Such letters shall indicate: (a) the particular Subclass(es) in which each Pre-Identified
2   Claims Made Subclass Member is included; (b) instructions on how to obtain a Claim Form,
3   which will detail the necessary information that each Pre-Identified Claims Made Subclass
4   Member must provide in order to receive a monetary credit (if the Pre-Identified Claims Made
5   Subclass Member is a current LADWP customer) or refund (if the Pre-Identified Claims Made
6   Subclass Member is a former LADWP customer with a closed LADWP account), if so entitled;
7   and (c) instructions on how to opt-out, in the event that a Pre-Identified Claims Made Subclass
8   Member wishes to excluded himself/herself from the Settlement Class.

9        2.    Self-Identification

10   Any current or former customer of the LADWP, regardless of whether he/she has been
11  identified as a member of the Pre-Identified Non-Claims Made Subclass or the Pre-Identified
12  Claims Made Subclass, may still submit a Claim Form in the form of Exhibit F hereto in order to
13  receive a monetary credit, (if a current LADWP customer) or refund (if a former LADWP
14  customer with a closed LADWP account), as a result of a billing error made by LADWP at any
15  time since September 3, 2013; or (ii) damage as a result of their participation in LADWP's Solar
16  Incentive Program at any time since February 13, 2010.

17        3.    Claims Administration

18   A Claims Administrator shall be retained subject to the Court's approval. The Claims
19  Administrator shall be responsible for effectuating the claims process. The Claims Administrator
20  shall be delegated the authority to administer and process eligible claims during the Claim Period
21  and to disburse Settlement benefits, as computed by Defendant, verified by the independent expert
22  CC&B monitor and approved by the Court, to Settlement Class Members who submit timely
23  eligible claims in accordance with this Settlement Agreement.

24        4.    Costs of Settlement Administration

25   All costs and expenses incurred in implementing and administering the Settlement shall be
26  paid by Defendant. The Claims Administrator shall, under the supervision of the Court,
27  administer the Settlement provided by this Agreement by processing and resolving claims in a
28  rational, responsive, cost-effective, and timely manner. The Claims Administrator shall maintain

LINER LLP
1100 Glendon Avenue  14th Floor
Los Angeles, CA 90024-3518

384457,025-04747949v4

39

CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

EXHIBIT 13
Page 461

Doc# 1 Page# 134 - Doc ID = 1755355499 - Doc Type = Cas...lic

1   detailed records of its activities under this Agreement in a computerized database and shall furnish

2   counsel for the Parties with monthly reports of the activities undertaken by the Claims

3   Administrator in administering the Settlement.

4       I.   **Requests for Exclusion of Settlement Class**

5           Any person included within the Settlement Class who wishes to be excluded from

6   membership in the Settlement Class must do so in writing by mailing a written request for

7   exclusion to the Claims Administrator.  Such requests must be postmarked no later than 90 days

8   from the Notice Date.  The request must:  (i) clearly express the Settlement Class Member's desire

9   to be excluded or to "opt out" from the Settlement Class; (ii) include the Settlement Class

10  Member's name, address, telephone number, LADWP account number and, if represented by

11  counsel, counsel's name, address and telephone number; and (iii) be signed by the Settlement

12  Class Member.

13          If a Settlement Class Member has multiple LADWP accounts and wishes to be excluded

14  from membership in the Settlement Class, the Settlement Class Member must submit a request for

15  exclusion for each separate account.

16          Any Person who is a member of the Settlement Class who wishes to be excluded from the

17  Settlement Class can only opt out for him or herself, and cannot opt out for any other Person.  Nor

18  can any Person who is a Settlement Class Member authorize any other Person to opt out on his or

19  her behalf.

20          Any Settlement Class member who has filed an objection to the fairness, reasonableness or

21  adequacy of the proposed Settlement pursuant to Section III.J. herein shall be deemed not to have

22  opted out of the Settlement Class pursuant to this paragraph.  However, in the event that a

23  Settlement Class member makes a submission to the Court and the Parties that appears to assert

24  both an objection to the fairness, reasonableness or adequacy of the proposed Settlement, and a

25  statement of intent to opt out of the Settlement Class, such submission shall be treated as a

26  statement of intent to opt out of the Settlement Class, but not an objection.

27

28

**J.   Objections and Requests To Appear At Final Approval Hearing**

1        Any Settlement Class member who has not timely filed a written request for exclusion

2 from the Settlement Class pursuant to Section III.I. herein may object to the fairness,

3 reasonableness or adequacy of the proposed Settlement, Plaintiff's application for a

4 reimbursement award, or Class Counsel's application for an award of attorneys' fees or

5 reimbursement of expenses. Each Settlement Class Member who wishes to object must do so in

6 writing by filing a written objection with the Clerk of the Court and mailing it to the Parties'

7 respective counsel at the addresses set forth in Section III.M.11. herein. Any such objection must

8 be filed with the Clerk of the Court and received by the Parties' counsel, no later than 90 days

9 after the Notice Date. Any such objection must: (i) state, in detail, the legal and factual ground(s)

10 for the objection; (ii) include the Settlement Class Member's name, address and telephone number

11 and LADWP account number, and, if represented by counsel, counsel's name, address and

12 telephone number; and (iii) be signed by the Settlement Class Member.

13        Settlement Class Members may object either on their own or through an attorney hired at

14 their own expense. If the objecting Settlement Class Member hires an attorney to represent him or

15 her, that attorney must file with the Court and serve upon the Parties' respective counsel at the

16 addresses set forth in Section III.M.11. herein, a notice of appearance no later than 30 days prior to

17 the Final Approval Hearing.

18        Any objection that fails to satisfy the requirements of this Section, or that is not properly

19 and timely submitted, will be deemed ineffective, and will be deemed by the Parties to have been

20 waived, and the Parties reserve their right to argue that the Settlement Class Member asserting

21 such objection is therefore not entitled to have his or her objection heard or otherwise considered

22 by the Court.

23        Settlement Class Members or their counsel who wish to appear at the Final Approval

24 Hearing must make such request by notifying the Clerk of the Court and the Parties' respective

25 counsel in writing at the addresses set forth in Section III.M.11. herein ("Notice of Intention to

26 Appear"). Any such request must be filed with the Clerk of the Court and received by the Parties'

27 respective counsel no later than 30 days prior to the Final Approval Hearing and must state the

CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

LINER LLP
1100 Glendon Avenue 14th Floor
Los Angeles, CA 90024-3518

1  name, address, telephone number and LADWP account number of the Settlement Class Member,

2  as well as the name, address and telephone number of the person who will appear on his or her

3  behalf. Any such request must further indicate that the Settlement Class member has timely

4  objected to the Settlement in compliance with the requirements of this Section of this Agreement.

5  Any request for appearance that fails to satisfy the requirements of this Section, or that has not

6  been properly or timely submitted, may be deemed ineffective and shall be deemed to constitute a

7  waiver of such Settlement Class Member's right to appear and to be heard on the Settlement at the

8  Final Approval Hearing.

9      **K.    Attorneys' Fees and Costs**

10         The Parties did not conduct any negotiations concerning the amount of attorneys' fees or

11  expenses to be reimbursed until *after* the Parties had reached agreement on the *entirety* of the

12  Settlement.

13         Plaintiff will make an application to the Court for: (i) an award of attorneys' fees in an

14  amount not to exceed $13,000,000; (ii) reimbursement of expenses incurred in connection with the

15  prosecution of the litigation in an amount not to exceed $750,000; and (iii) a service award in the

16  amount of $5,000 for Plaintiff. Defendant has agreed it will not object to such an application.

17         Defendant has agreed that, should the Court finally approve the Settlement and award

18  attorneys' fees and expense reimbursement to Class Counsel and a reimbursement award to

19  Plaintiff, Defendant will pay the amount of attorneys' fees, expenses and reimbursement award

20  awarded by the Court within 7 business days after the Settlement is finally approved by the Court.

21  Defendant will pay the amount awarded by the Court directly to an account established by Class

22  Counsel and Liaison Counsel. Class Counsel shall be responsible for allocating the attorneys' fees

23  and expenses among plaintiffs' counsel.

24         Additionally, the Parties agree that Class Counsel will be responsible for aiding the Claims

25  Administrator by monitoring and supervising the administration of the Settlement during the 18

26  month remediation period. Defendant has agreed that Class Counsel shall submit to the Court

27  quarterly applications for additional awards of attorneys' fees for the work performed by Class

28  Counsel in connection with its monitoring and supervision of the Settlement during the 18 month

38657.025-3474784v4                                    42
CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

EXHIBIT 13
Page 464

1  remediation period. Defendant has agreed not to oppose additional applications by Class Counsel

2  for awards of attorneys' fees in a total amount not to exceed $1,000,000. Notwithstanding the

3  foregoing, if Class Counsel's work and fee submission exceeds this threshold, Class Counsel may

4  submit applications for awards of attorneys' fees to the Court greater than $1,000,000, which

5  Defendant may oppose, for the additional work performed by Class Counsel in connection with its

6  monitoring and supervision of the Settlement during the remediation period.

7      Defendant has agreed that, in connection with these quarterly applications, should the

8  Court award attorneys' fees to Class Counsel, Defendant will pay the amount of attorneys' fees

9  awarded by the Court within 7 business days after the Court issues an order granting Class

10  Counsel's application. Defendant will pay the amount awarded by the Court directly to an account

11  established by Class Counsel and Liaison Counsel.  Class Counsel shall be responsible for

12  allocating the attorneys' fees among plaintiffs' counsel.

13      **L.    Final Approval**

14      The Court shall schedule a date for the Final Approval Hearing.  At the Final Approval

15  Hearing, the Parties shall join the request that the Court enter an order and judgment in the form of

16  Exhibit G to this Agreement (the "Final Order and Judgment"), which will finally approve the

17  terms of this Agreement, dismiss the Actions, discharge the Released Parties of and from all

18  further liability to Plaintiff and Settlement Class Members with respect to the Released Claims

19  (but not as to any obligations created or owed pursuant to this Agreement), and permanently bar

20  and enjoin Plaintiff and Settlement Class Members from bringing, filing, commencing,

21  prosecuting, maintaining, intervening in, participating in, or receiving any benefits from, any other

22  lawsuit, arbitration or administrative, regulatory or other proceeding or cause of action, formally

23  or informally, that asserts, arises from, concerns, or is in any way related to the Released Claims,

24  except as required by law. The actual form of the Final Judgment and Order entered by the Court

25  may include provisions as to which the Parties may subsequently agree, or which the Court may

26  direct, that are not inconsistent with any of the express terms or conditions of this Agreement.

27

28

38457.025-2471784v4            43

CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

EXHIBIT 13
Page 465

Doc# 1 Page# 138 - Doc ID = 1755355499 - Doc Type = Case File - Public

1    Following entry of the Final Order and Judgment by the Court, no default by any Person in

2  the performance of any covenant or any obligation arising under this Agreement shall affect the

3  dismissal of the Actions, the discharge and release of the Released Parties, or any other provision

4  of this Agreement. The above notwithstanding, nothing in this Section shall prevent a Party from

5  seeking enforcement of or compliance with the terms of this Agreement, or the intervention of the

6  Court to compel any such default be cured.

7    If:  (a) the preliminary approval of this Agreement and the Settlement described herein or

8  the Final Judgment and Order is not obtained from the Court in substantially the form attached

9  hereto as Exhibits C and G, respectively; or (b) the Court fails to grant final approval to the

10  Settlement; and either Defendant or Plaintiff in their discretion so elect, this Agreement shall be

11  null and void, shall have no further force and effect, and shall not be offered in evidence or used in

12  any litigation for any purpose, including the existence, certification, or maintenance of any

13  purported class.  The canceling and terminating Party may make such election only by furnishing

14  written notice of an intent not to proceed with the terms and conditions of this Agreement to the

15  other Parties within fifteen (15) business days of the event constituting the basis for the election to

16  terminate.   In the event of such election, this Agreement and all negotiations, proceedings,

17  documents prepared, and statements made in connection herewith shall be without prejudice to the

18  Parties, shall not be deemed or construed to be an admission or confession by any Party of any

19  fact, matter, or proposition of law, shall not be used in any manner for any purposes, and all

20  parties to the Action shall stand in the same position as if this Agreement had not been negotiated,

21  made or filed with the Court.  If the Agreement is terminated, any and all orders entered by the

22  Court pursuant to the provisions of the Agreement shall be vacated *nunc pro tunc*.

23    In the event this Agreement is not approved by the Court or the Settlement is terminated or

24  fails to become effective in accordance with its terms, all orders entered as of the date on which

25  this Settlement was executed shall become operative and fully effective, as if the proceedings

26  relating to this Settlement had not occurred.

27

28

EXHIBIT 13
Page 466

M.    **Miscellaneous Provisions**

    1.    **Authority Of Signatories**

Each person signing this Agreement represents and warrants that he or she has full authority to sign this Agreement on behalf of the Party for whom he or she is signing and warrants that he or she has the ability to bind that Party to the obligations and commitments set forth herein.

    2.    **Binding Upon Successors**

This Agreement shall be binding upon and inure to the benefit of the Parties and their representatives, heirs, predecessors, successors, and assigns.

    3.    **Both Parties As Drafter**

The Parties stipulate and agree that this Agreement was negotiated on an "arms-length" basis between parties of equal bargaining power, and drafted jointly by the Parties and, accordingly, no ambiguity in this Agreement shall be construed in favor of or against any of the Parties.

    4.    **Cooperation**

The Parties to this Agreement and their counsel agree that they shall act in good faith and exercise their best efforts to secure approval of this Agreement and full participation by all members of the Settlement Class and that they will take such other reasonable steps as are necessary to implement this Agreement.

    5.    **Counterpart Execution**

This Agreement may be executed in any number of counterparts.  A facsimile or electronically transmitted signature shall be deemed to constitute an original signature for purposes of this Agreement.  Each counterpart when so executed shall be deemed to be an original, and all such counterparts together shall constitute the same instrument.  This Agreement will be binding when it has been executed and delivered by the last signatory hereto to execute a counterpart.

    6.    **Governing Law**

The construction, interpretation, operation, effect, validity and enforcement of this Agreement and all documents necessary to effectuate it shall be governed by the laws of the State

LINER LLP
1100 Glendon Avenue   14th Floor
Los Angeles, CA 90024-3518

1  of California without regard to principles of conflict of laws, except to the extent that federal law

2  requires that federal law govern.

       **7.**    **Headings**

3

4  Headings contained in this Agreement are for convenience and reference only and are not

5  intended to alter or vary the construction and meaning of this Agreement.

       **8.**    **Integration Clause**

6

7  This Agreement, including all exhibits hereto, contains a full, complete, and integrated

8  statement of each and every term and provision agreed to between and among the Parties and

9  supersedes any prior representations, writings or agreements (written or oral) between or among

10  the Parties, which prior agreements may no longer be relied upon for any purpose.  This

11  Agreement may not be orally modified in any respect and may be modified only by the written

12  agreement of the Parties.  In the event a dispute arises between the Parties over the meaning or

13  intent of any provision of this Agreement, the Parties agree that prior drafts, notes, memoranda,

14  discussions or any other oral communications or documents regarding the negotiations, meaning

15  or intent of this Agreement shall not be offered or admitted into evidence.

       **9.**    **Jurisdiction**

16

17  The Court retains exclusive and continuing jurisdiction over the Actions, the Parties,

18  Settlement Class Members, and the Claims Administrator in order to interpret and enforce the

19  terms, conditions and obligations under this Agreement.

       **10.**    **Non-Waiver**

20

21  The waiver by one Party of any provision or breach of this Agreement shall not be deemed

22  a waiver of any other provision or breach of this Agreement.

       **11.**    **Notice**

23

24  Except as otherwise described in the settlement notice attached as Exhibits A and B to this

25  Agreement, all notices and other communications referenced in this Agreement shall be addressed

26  to the Parties' counsel at their respective addresses as set forth below:

27

28

46

CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

EXHIBIT 13
Page 468

1    Notices to Plaintiff or the Settlement Class Members

2    Jack Landskroner, Esq.
3    Landskroner, Grieco Merriman LLC
    1360 W 9th St #200, Cleveland, OH 44113

4    Notices to Defendant

5    Angela C. Agrusa (SBN 131337)
    LINER LLP
6    1100 Glendon Avenue, 14th Floor
    Los Angeles, California 90024

7

8      12.   Severability

9      In the event any one or more of the provisions contained in this Agreement shall be held

10  invalid, illegal, or unenforceable for any reason, such invalidity, illegality, or unenforceability

11  shall not affect any other provisions of this Agreement

12      13.   Time for Compliance

13      If the date for performance of any act required by or under this Agreement is to be

14  performed on a particular day or within a specified period of time that falls on a Saturday, Sunday

15  or legal or Court holiday, such act may be performed upon the next business day, with the same

16  effect as if it had been performed on the day or within the computer time specified by or under this

17  Agreement.

18      IN WITNESS WHEREOF, each of the Parties hereto has caused this Agreement to be

19  executed on its, his, her or their behalf by its, his, her or their duly authorized counsel of record, all

20  as of the day set forth below.

21  Dated: August 7, 2015        DEFENDANT:

22

23           By: _Marcie Edwards_

24              Marcie Edwards, General Manager
                 Los Angeles Department of Water and Power

25               by permission

26

27

28

38457.0252474794v4          17

CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

EXHIBIT 13

Page 469



Dated: August 7, 2015

PLAINTIFF:

By:
Jack Landskroner, Esq.
Counsel for Plaintiff Antwon Jones

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LINER LLP
1100 Glendon Avenue, 14th Floor
Los Angeles, CA 90024-3518

38467.025-2474794v1

48

CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

EXHIBIT 13

# EXHIBIT A
## TO CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

EXHIBIT A

EXHIBIT 13

Page 472

Doc# 1 Page# 145 - Doc ID = 1755355499 - Doc Type = Case Public

Jones v. City of Los Angeles
Case No. BC577267
**Certain Customers of the Los Angeles Department of Water and Power May Claim Settlement Benefits.**

**This Class Action Settlement May Affect Your Rights**
*A court authorized this Notice. This is not a solicitation from a lawyer.*

- The Settlement resolves a lawsuit concerning complaints arising out of customer over-billing and other billing errors by the Los Angeles Department of Water and Power ("LADWP") that were caused by, and are related to, the defective implementation of the LADWP's new billing system or damages incurred by customers' participation in the LADWP's solar incentive program.

- If you are an LADWP customer who was improperly over-charged for electric, water, sewage or sanitation services and/or incurred damages as a result of your participation in the LADWP's solar incentive program, you may be eligible obtain Settlement benefits.

**Read this Notice carefully because your legal rights could be affected.**

---

**YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT INCLUDE:**

**Obtain settlement benefits.** You may be pre-identified to receive Settlement benefits, in which case, you may not need to take any further action to receive your credit or refund. Additionally, you may submit a Claim Form, which is available on www._____.com, to determine if you qualify for Settlement benefits.

**Opt Out -** Write to counsel for Plaintiff and Defendant if you do not want to be included in the Settlement. You have a right to opt out of the Settlement only if you are a member of the Settlement Class and have not objected to the Settlement.

**Object -** Write to the Court and to counsel for Plaintiff and Defendant if you disagree with the Settlement. As set forth in the Answers to Questions 14 through 17 below, you may attend a hearing on the fairness of the Settlement after giving appropriate notice. You have a right to object to the Settlement only if you are a member of the Settlement Class and have not opted out of the Settlement.

These rights and options – and the deadlines by which to exercise them – are explained in this Notice.

---

The Court that is supervising this case has granted Preliminary Approval to the Settlement, but still has to decide whether to grant Final Approval. The Final Approval Hearing will take place on _____, 2015. Settlement benefits will be distributed only if and after the Court grants Final Approval of the Settlement and any appeals are resolved.

38457.025-2477989v3

1

EXHIBIT 13
Page 473

## WHAT THIS NOTICE CONTAINS

**Page**

BASIC INFORMATION ....................................................................................................... 3

1. Why was this Notice issued? ..................................................................................3

2. What is this lawsuit about? ....................................................................................3

3. Why is this a class action? ....................................................................................3

4. Why is there a Settlement? ....................................................................................3

WHO IS IN THE SETTLEMENT? ........................................................................................4

5. How do I know if I am part of the Settlement? .......................................................4

6. Are there exceptions to being included in the Settlement? .......................................4

7. What if I am not sure whether I am included in the Settlement? ...............................4

THE SETTLEMENT BENEFITS:
WHAT YOU GET AND HOW YOU GET IT ....................................................................... 4

8. What does the Settlement provide? ..........................................................................4

9. What claims am I releasing? .....................................................................................6

THE LAWYERS REPRESENTING PLAINTIFF ..................................................................7

10. Do I have a lawyer in this case? ............................................................................7

11. How will the lawyers be paid? ...............................................................................7

EXCLUDING YOURSELF FROM THE SETTLEMENT ......................................................7

12. What do I do if I do not want to be included in the Settlement? ...............................7

13. What happens if I don't opt out before _____? ...............................8

OBJECTING TO THE SETTLEMENT .................................................................................8

14. How do I tell the Court that I like or don't like the Settlement? ..............................8

15. When/where will the Court decide whether to approve the Settlement? .....................9

16. Do I have to come to the hearing? ..........................................................................9

17. May I speak at the hearing? ....................................................................................9

18. How do I get more information? ............................................................................10

38457.025-2.477059v3

2

## BASIC INFORMATION

### 1. Why was this Notice issued?

The Court issued this Notice because you have a right to know about a proposed settlement of a class action lawsuit that the Court has preliminarily approved. You also are entitled to know how you may make a claim for certain benefits of the Settlement and about all of your options. If the Court grants Final Approval and any appeals are resolved, valuable benefits will be distributed to certain qualifying persons who made a claim within the Claim Period.

### 2. What is this lawsuit about?

The person who filed this class action is called the "Plaintiff" and the City of Los Angeles, by and through LADWP is the "Defendant." A lawsuit filed in the Superior Court of California, captioned *Jones v. City of Los Angeles*, Case No. BC577267, alleges that customers of LADWP were over-billed or experienced other billing errors that were caused by, and are related to, the defective implementation of the LADWP's new billing system or incurred damages as a result of participating in the LADWP's solar incentive program. Plaintiff's claims include, among others, claims for fraud, negligent misrepresentation, breach of contract, unjust enrichment, and violations of the California Consumer Legal Remedies Act and the California Unfair Competition Law. More information can be found at www._____.com, by writing to Class Counsel: Jack Landskroner, Esq., Landskroner Grieco Merriman, LLC, 1360 West 9th Street, Suite 200, Cleveland, Ohio 44113 or by calling 1-(800) _____. A copy of the Settlement Agreement will be available at www._____.com, and is also on file with the Court.

### 3. Why is this a class action?

In a class action, one or more person(s) called "Class Representatives" sue on behalf of themselves and others with similar claims. All of these people together are called a "class." The Court appointed Plaintiff as the Class Representative for purposes of this Settlement. The "Settlement Class Members" are all LADWP customers who were improperly over-charged for electric, water, sewage or sanitation services and/or incurred damages as a result of participating in the LADWP's solar incentive program.

### 4. Why is there a Settlement?

The Court did not decide in favor of either Plaintiff or Defendant. Instead, both sides agreed to a settlement. The Class Representative and the attorneys that have been appointed by the Court to represent the Settlement Class believe that the Settlement is in the best interests of all Settlement Class Members.

EXHIBIT 13

Page 475

Doc# 1 Page# 148 - Doc ID = 1755355499 - Doc Type = Case

## WHO IS IN THE SETTLEMENT?

**5. How do I know if I am part of the Settlement?**

You may be entitled to Settlement benefits if you are an LADWP customer who was improperly over-charged for electric, water, sewage or sanitation services and/or incurred damages as a result of participating in the LADWP's solar incentive program

**6. Are there exceptions to being included in the Settlement?**

Excluded from the Class is the Judge to whom this case is assigned, any members of the Judge's immediate family, and any counsel of record in this action.

**7. What if I am not sure whether I am included in the Settlement?**

If you are not sure whether you are included in the Settlement Class, you may visit www._____.com for more information, or call _____, and ask for assistance.

## THE SETTLEMENT BENEFITS:
## WHAT YOU GET AND HOW YOU GET IT

**8. What does the Settlement provide?**

The Settlement provides two types of relief: (i) monetary relief and (ii) non-monetary remedial relief.

### i. Monetary Relief

Settlement Class Members that are members of one or more of the following nine

Subclasses may be entitled to monetary relief:

- **Tiered Billing Subclass:** all residential and commercial customers of LADWP who were billed and paid for electricity or water usage at tiered rates higher than those rates that would otherwise have been used to bill these customers during the period September 3, 2013 through August 13, 2014.

- **Trend Estimate Subclass:** all residential and commercial customers of LADWP who paid electricity or water and sewer bills that were incorrectly estimated due to a defect in the Trend Estimation Algorithm used to compute these estimates during the period September 3, 2013 through August 13, 2014.

- Closed Account with Credit Balance Subclass: all residential and commercial customers of LADWP who: (i) have "Closed Accounts" with credit balances and (ii) are owed refunds that have been withheld by LADWP during the period of September 3, 2013 to present.

- Premise Condition/Estimated Bill Subclass: all residential and commercial customers of LADWP who: (i) unbeknownst to the customer, had a premise

38457.025-2477969v3

4

EXHIBIT 13

condition that caused excessive consumption of water and/or power; (ii) received estimated bills for multiple billing periods after September 3, 2013; (iii) because of these estimated bills, were prevented from timely discovering the premise condition; and (iv) were charged for greater quantities of water, power or sewage than they otherwise would have been charged.

- **Solar Customers Subclass**: all residential LADWP customers who have installed solar systems and applied to participate in the Solar Photovoltaic Incentive Program from February 13, 2010 to date and: (i) experienced delay in the final approval process beyond 30 days after submission of a complete Incentive Application and Supporting Documentation and indication that the solar system was fully permitted and ready for inspection; and/or (ii) have not been properly billed for energy consumed and/or generated; and/or (iii) have not been properly credited for excess energy generated by the customer's solar power system.

- **Automatic Bill Payment/Bank Overdraft Charge Subclass**: all LADWP customers who: (i) were enrolled in an automatic bill payment plan with a bank and (ii) were charged overdraft fees because LADWP charged the customer an incorrect amount, which, in turn, resulted in the customer's bank account being overdraw.

- **Late Payment Charge Subclass**: all LADWP customers who were assessed an inaccurate Late Payment Charge.

- **Estimated Electric Bills with "Minimum Charge" Subclass**: all LADWP residential and small commercial customers: (i) whose consumption was estimated to be zero and (ii) who were, therefore, assessed a "Minimum Charge" on an electric bill when the actual usage was above the "Minimum Charge."

- **Omnibus Subclass**: all LADWP residential and commercial customers that believe they were: (i) incorrectly assessed a charge associated with their power, water, sewage or trash collection at any time from September 3, 2013 to the present; or (ii) otherwise damaged as a result of their participation in the LADWP's Solar Photovoltaic Incentive Program at any time from February 13, 2010 to the present, that is not covered by any of the other Subclasses listed herein.

To identify class members, LADWP will undertake a review and audit of all customer accounts (approximately 1,625,000 accounts). The identification of class members and amounts owed will be verified by an independent expert billing system monitor.

Members of the: (i) Tiered Billing Subclass; (ii) Trend Estimate Subclass; (iii) Closed Account with Credit Balance Subclass; (iv) Late Payment Charge Subclass and (v) Estimated Electric Bills with "Minimum Charge" Subclass will be pre-identified based upon LADWP's internal records. If you are a member of one or more of these subclasses, Defendant will credit or refund to you 100% of any amounts that the LADWP overcharged you.

If you are a member of the: (i) Tiered Billing Subclass; (ii) Trend Estimate Subclass; (iii) Closed Account with Credit Balance Subclass; (iv) Late Payment Charge Subclass or (v)

38457.025-2477969v3

5

EXHIBIT 13

Page 477

Estimated Electric Bills with "Minimum Charge" Subclass, you will receive a letter from the LADWP indicating which subclass or subclasses you are a member of and the amount of credit or refund that you are owed. If you disagree with the indicated amount, you may seek to exclude yourself from the Settlement by following the instructions set forth in the letter or by following the instructions set forth in Answer to Question 12 below. **If you wish to receive the amount indicated in the letter, you do not need to take any further action. You will automatically receive the amount of the credit or refund determined by LADWP without the need to submit a Claim Form.**

Members of the: (i) Premise Condition/Estimated Bill Subclass; (ii) Automatic Bill Payment/Bank Overdraft Charge Subclass and (iii) Solar Customer Subclass will be pre-identified based upon LADWP's internal records. **If you are a member of one or more of these subclasses, Defendant will credit or refund to you 100% of any amounts that the LADWP overcharged you.**

If you are a member of the: (i) Premise Condition/Estimated Bill Subclass; (ii) Automatic Bill Payment/Bank Overdraft Charge Subclass or (iii) Solar Customer Subclass, you will receive a letter from the LADWP indicating which subclass or subclasses you are a member of and instructions for submitting a claim. **If you are a member of one of these subclasses, you must submit a Claim Form, which is available at** www._____.com, by _____ **in order to be eligible to receive a credit or refund.**

If you are a current or former LADWP customer who has not otherwise been pre-identified as a member of any subclass, but who nevertheless believes that you have been: (i) overcharged as a result of a billing error made by LADWP at any time since September 3, 2013; or (ii) damaged as a result of your participation in the LADWP's solar incentive program at any time since February 13, 2010, **you may submit a Claim Form, which is available at** www._____.com, by _____ . **If it is determined that you have been overcharged, Defendant will credit or refund to you 100% of any amounts that the LADWP overcharged you.**

### ii.   Non-Monetary Remedial Relief

The Settlement also provides non-monetary remedial relief including: (i) the creation and adoption of certain billing system metrics; (ii) the appointment of an independent billing system monitoring expert; (iii) audits of LADWP's billing system to confirm billing accuracy; (iv) the creation and implementation of a team at LADWP to address unique or complex billing issues; (v) the adoption of an amendment to the Rules Governing Water and Electric Service to provide for a shorter period of time for which LADWP may collect payment from customers whose bills are delayed due to billing errors; and (vi) the creation and implementation of an information technology Project Management Office.

### 9.   What claims am I releasing?

If you are a Settlement Class Member, and you do not request to be excluded from the Settlement Class, when the Settlement becomes final, you will be releasing Defendant and its officers, directors, employees, and related corporate entities, from any liability for all claims associated with this case, and you will be bound by the release included in the Settlement Agreement. A copy of the Settlement Agreement containing the release is available at www._____.com

### THE LAWYERS REPRESENTING PLAINTIFF

**10.  Do I have a lawyer in this case?**

Yes. Jack Landskroner Esq. of Landskroner Grieco & Merriman, LLC, 1360 West 9th Street, Suite 200, Cleveland, Ohio 44113 (Class Counsel) and Michael J. Libman, Esq. of the Law Offices of Michael J. Libman, 5169 Etiwanda Avenue, Tarzana, California 91356 (Liaison Counsel) have been appointed by the Court to represent you and the other Settlement Class Members. If you want to be represented by your own lawyer, you may hire one at your own expense.

**11.  How will the lawyers be paid?**

Class Counsel will ask the Court at the Final Approval Hearing to award attorneys' fees in an amount not to exceed $13,000,000 and to award reimbursement of expenses incurred in litigating this case in an amount not to exceed $750,000. The Court may award a different amount. If the Court does award attorneys' fees and reimbursement of expenses, Defendant has agreed to pay whatever amounts are awarded by the Court.

Additionally, Class Counsel may submit additional quarterly applications for attorneys' fees during the 18 month Remediation Period during which the LADWP will complete stabilization and remediation of its billing system. Defendant has agreed that it will not oppose these applications so long as such applications, in total, do not exceed $1,000,000. In the event that Class Counsel's applications exceed $1,000,000, Defendant has reserved its right to oppose such applications.

Separate and apart from the Settlement consideration described in Answer to Question 8 above, Defendant will separately pay the fees and expenses that the Court awards, as well as the costs to provide Notice to the Settlement Class and to administer the Settlement. These amounts will not come out of the funds for benefits to Settlement Class Members.

### EXCLUDING YOURSELF FROM THE SETTLEMENT

**12.  What do I do if I do not want to be included in the Settlement?**

You have a right to exclude yourself or "opt out" of the Settlement. To opt out, you must mail a request for exclusion to the following address:

> XXXXXXX
> XXXXXXX
> XXXXXXX

You must personally sign the exclusion request. Your request must: (i) clearly express your desire to be excluded or to "opt out" from the Settlement Class; (ii) include your name, address and telephone number, LADWP account number and, if represented by counsel, counsel's name, address and telephone number.

EXHIBIT 13

Page 479

Your exclusion request must be mailed to the address set forth above and must be postmarked no later than _____ or it will not be accepted. If you do not specifically request to be excluded by following these directions, you will automatically be a member of the Settlement Class.

If you opt out of the Settlement Class, you will not be eligible for any Settlement benefits, and will waive all rights to object to the Settlement. Additionally, if you file an objection to the Settlement with the Court, you will not be able to exclude yourself from the Settlement Class.

**13. What happens if I don't opt out before _____?**

If the proposed Settlement is approved and you are a Settlement Class Member who does not properly and timely exclude yourself from the Settlement Class, all claims that you may have now or in the future against Defendant with respect to certain billing errors or damages relating to your participation in LADWP's solar incentive program will be **WAIVED AND RELEASED**, and you will be prohibited from bringing any such claims in the future on your own behalf.

<u>**OBJECTING TO THE SETTLEMENT**</u>

**14. How do I tell the Court that I like or don't like the Settlement?**

If you are a Settlement Class Member, you can express your objection to the Settlement. The Court will consider your views. To object, you must send a letter to the Court saying that you object to the terms of the Settlement. Your objection must: (i) state, in detail, the legal and factual ground(s) for your objection; (ii) include your name, address and telephone number and LADWP account number, and, if represented by counsel, counsel's name, address and telephone number; and (iii) be signed by you. If you are represented by your own separate counsel, that attorney will also need to file his or her appearance with the Court by no later than _____.

To object, you must file the objection with the Clerk of the Court no later than _____ at:

> Clerk of the Court
> Superior Court of the State of California,
> County of Los Angeles, Central Division
> 600 S. Commonwealth Ave.
> Los Angeles, CA 90005

Please include the phrase "*Jones v. City of Los Angeles*, Case No. BC577267" below the Court's address on the envelope containing your objection.

You must also deliver the objection to Plaintiff's and Defendant's counsel at the following addresses, so that it is *received* by no later than _____.

3\?457.025-?477969v3

8

CLASS COUNSEL FOR PLAINTIFF AND THE SETTLEMENT CLASS:

> Jack Landskroner, Esq.
> LANDSKRONER, GRIECO MERRIMAN LLC
> 1360 W 9th Street, #200
> Cleveland, OH 44113

COUNSEL FOR DEFENDANT:

> Angela C. Agrusa
> LINER LLP
> 1100 Glendon Avenue, 14th Floor
> Los Angeles, California 90024

If you file an objection to the Settlement with the Court, you will waive all rights to exclude yourself from the Settlement Class.

**15. When and where will the Court decide whether to approve the Settlement?**

The Court will hold a Final Approval Hearing before the Honorable Elihu M. Berle at _:__ _.m. on _____, 2015 in Department 323 of the Superior Court of California, County of Los Angeles, Central District, Central Civil West, 600 South Commonwealth Avenue, Los Angeles, California, 90005. At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. The Court also may decide how much to pay Class Counsel. After the hearing, the Court will decide whether to grant Final Approval to the Settlement. We do not know how long these decisions will take.

**16. Do I have to attend the hearing?**

No. Class Counsel will answer any questions that Judge Berle may have. However, you are welcome to come at your own expense. You also may pay your own lawyer to attend the Final Approval Hearing on your behalf. If you file an objection, you do not have to come to Court to discuss it. As long as your written objection is received before the deadline, and you have followed the directions contained in the Answer to Question 14 above, the Court will consider the information provided in your written objection.

**17. May I speak at the hearing?**

That will be up to Judge Berle. You may ask the Court for permission to speak at the Final Approval Hearing. To do so, you must send a letter saying that it is your "Notice of Intention to Appear in *Jones v. City of Los Angeles*, Case No. BC577267." You must include your name, address, telephone number and LADWP account number, as well as the name, address and telephone number of any attorney who will appear at the Final Approval Hearing on your behalf. Your request must also indicate that you timely objected to the Settlement pursuant to the directions contained in the Answer to Question 14 above.

Your Notice of Intention to Appear must be filed with the Clerk of the Court at the address listed in the Answer to Question 17 above no later than _____. Please include the phrase "*Jones v. City of Los Angeles*, Case No. BC577267" below the Court's address on the envelope containing your notice. Your notice must also be received by Class Counsel and Defendant's counsel at the addresses listed in the Answer to Question 14 above no later than

_____.

**18. How do I get more information?**

If you think you may be a Settlement Class Member and would like more information about the lawsuit or the terms of the proposed Settlement, you may review the pleadings, records and other papers on file in this lawsuit, including the Court's Order granting Preliminary Approval and the proposed Settlement Agreement, which may be inspected on weekdays, during normal business hours, at the Clerk's Office of the Superior Court of California, County of Los Angeles, Central District, Central Civil West, 600 South Commonwealth Avenue, Los Angeles, California, 90005. The Preliminary Approval Order and Settlement Agreement will also be available on www._____.com. For information on any matters contained in this Notice, you may write to or call Class Counsel at:

> Jack Landskroner, Esq.
> LANDSKRONER, GRIECO MERRIMAN LLC
> 1360 W 9th Street, #200
> Cleveland, OH 44113
> (216) 522-9000

You may also visit www._____.com for more information, or call _____, and ask for assistance.

**PLEASE DO NOT CONTACT THE COURT DIRECTLY WITH QUESTIONS ABOUT THE SETTLEMENT.**

Dated: September ___, 2015

# EXHIBIT B
## TO CLASS ACTION SETTLEMENT
## AGREEMENT AND LIMITED RELEASE

EXHIBIT 13
Page 483

Doc# 1 Page# 156 - Doc ID = 1755355499 - Doc Type = Case Public

EXHIBIT B

EXHIBIT 13
Page 484

Doc# 1 Page# 157 - Doc ID = 1755355499 - Doc Type = Casebook

**Certain Customers of the Los Angeles Department of Water and Power
May Claim Benefits from a class action settlement**

### WHAT'S THIS CASE ABOUT?

A lawsuit filed in the Superior Court of California, captioned *Jones v. City of Los Angeles*, Case No. BC577267, alleges that customers of the Los Angeles Department of Water and Power (the "LADWP") were over-billed or experienced other billing errors that were caused by, and are related to, the defective implementation of the LADWP's new billing system or incurred damages as a result of participating in the LADWP's solar incentive program. Plaintiff's claims include, among others, claims for fraud, negligent misrepresentation, breach of contract, unjust enrichment, and violations of the California Consumer Legal Remedies Act and the California Unfair Competition Law. More information can be found at www._____.com, by writing to Class Counsel: Jack Landskroner, Esq., Landskroner Grieco Merriman, LLC, 1360 West 9th Street, Suite 200, Cleveland, Ohio 44113 or by calling 1-(800) _____. A copy of the Settlement Agreement will be available at www._____.com, and is also on file with the Court.

### WILL THERE BE A HEARING?

The Court will hold a Final Approval Hearing before the Honorable Elihu M. Berle at __:__ _.m. on _____, 2015 in Department 323 of the Superior Court of California, County of Los Angeles, Central District, Central Civil West, 600 South Commonwealth Avenue, Los Angeles, California, 90005. You may appear at the Final Approval Hearing, but it is not required.

### WHO IS INCLUDED?

You may be entitled to Settlement benefits if you are an LADWP customer who was improperly over-charged for electric, water, sewage or sanitation services and/or incurred damages as a result of your participation in the LADWP's solar incentive program.

### WHAT BENEFITS DOES THE SETTLEMENT PROVIDE?

The Settlement provides two types of relief: (i) monetary relief and (ii) non-monetary remedial relief.

i.   Monetary Relief

Settlement Class Members that are members of one or more of the following nine Subclasses may be entitled to monetary relief:

1

38457.025-2477972v3

- **Tiered Billing Subclass**: all residential and commercial customers of LADWP who were billed and paid for electricity or water usage at tiered rates higher than those rates that would otherwise have been used to bill these customers during the period September 3, 2013 through August 13, 2014.

- **Trend Estimate Subclass**: all residential and commercial customers of LADWP who paid electricity or water and sewer bills that were incorrectly estimated due to a defect in the Trend Estimation Algorithm used to compute these estimates during the period September 3, 2013 through August 13, 2014.

- **Closed Account with Credit Balance Subclass**: all residential and commercial customers of LADWP who: (i) have "Closed Accounts" with credit balances and (ii) are owed refunds that have been withheld by LADWP during the period of September 3, 2013 to present.

- **Premise Condition/Estimated Bill Subclass**: all residential and commercial customers of LADWP who: (i) unbeknownst to the customer, had a premise condition that caused excessive consumption of water and/or power; (ii) received estimated bills for multiple billing periods after September 3, 2013; (iii) because of these estimated bills, were prevented from timely discovering the premise condition; and (iv) were charged for greater quantities of water, power or sewage than they otherwise would have been charged.

- **Solar Customers Subclass**: all residential LADWP customers who have installed solar systems and applied to participate in the Solar Photovoltaic Incentive Program from February 13, 2010 to date and: (i) experienced delay in the final approval process beyond 30 days after submission of a complete Incentive Application and Supporting Documentation and indication that the solar system was fully permitted and ready for inspection; and/or (ii) have not been properly billed for energy consumed and/or generated; and/or (iii) have not been properly credited for excess energy generated by the customer's solar power system.

- **Automatic Bill Payment/Bank Overdraft Charge Subclass**: all LADWP customers who: (i) were enrolled in an automatic bill payment plan with a bank and (ii) were charged overdraft fees because LADWP charged the customer an incorrect amount, which, in turn, resulted in the customer's bank account being overdrawn.

- **Late Payment Charge Subclass**: all LADWP customers who were assessed an inaccurate Late Payment Charge.

38457.025-2477972v3

2

EXHIBIT 13

Page 486

Doc# 1 Page# 159 - Doc ID = 1755355499 - Doc Type = Case Public

- **Estimated Electric Bills with "Minimum Charge" Subclass:** all LADWP residential and small commercial customers: (i) whose consumption was estimated to be zero and (ii) who were, therefore, assessed a "Minimum Charge" on an electric bill when the actual usage was above the "Minimum Charge."

- **Omnibus Subclass:** all LADWP residential and commercial customers that believe they were: (i) incorrectly assessed a charge associated with their power, water, sewage, or trash collection at any time from September 3, 2013 to the present; or (ii) damaged as a result of their participation in the LADWP's Solar Photovoltaic Incentive Program at any time from February 13, 2010, that is not covered by any of the other Subclasses listed herein.

Members of the: (i) Tiered Billing Subclass; (ii) Trend Estimate Subclass; (iii) Closed Account with Credit Balance Subclass; (iv) Late Payment Charge Subclass and (v) Estimated Electric Bills with "Minimum Charge" Subclass will be **pre-identified** based upon LADWP's internal records. **If you are a member of one or more of these subclasses, Defendant will credit or refund to you 100% of any amounts that the LADWP overcharged you.** Defendant will notify you, by letter, of the subclass or subclasses you are a member of and the amount of credit or refund that you are owed. If you disagree with the indicated amount, you may seek to exclude yourself from the Settlement. **If you wish to receive the amount indicated in the letter, you do not need to take any further action. You will automatically receive the amount of the credit or refund determined by LADWP without the need to submit a Claim Form.**

Members of the: (i) Premise Condition/Estimated Bill Subclass; (ii) Automatic Bill Payment/Bank Overdraft Charge Subclass and (iii) Solar Customer Subclass will be **pre-identified** based upon LADWP's internal records. **If you are a member of one or more of these subclasses, Defendant will credit or refund to you 100% of any amounts that the LADWP overcharged you.** Defendant will notify you, by letter, of the subclass or subclasses you are a member of and provide you with instructions on filing a claim. **If you are a member of one of these subclasses, you must submit a Claim Form, which is available at www._____.com, by _____ in order to be eligible to receive a credit or refund.**

If you are a current or former LADWP customer who has not otherwise been pre-identified as a member of any subclass, but who nevertheless believes that you have been: (i) overcharged as a result of a billing error made by LADWP at any time since September 3, 2013; or (ii) damaged as a result of your participation in the LADWP's solar incentive program at any time since February 13, 2010, you may submit a Claim Form, which is available at www._____.com, by _____. If it is determined that you have been overcharged,

3

Defendant will credit or refund to you 100% of any amounts that the LADWP overcharged you.

**ii.**   **Non-Monetary Remedial Relief**

The Settlement also provides non-monetary remedial relief including: (i) the creation and adoption of certain billing system metrics; (ii) the appointment of an independent billing system monitoring expert; (iii) audits of LADWP's billing system to confirm billing accuracy; (iv) the creation and implementation of a team at LADWP to address unique or complex billing issues; (v) the adoption of an amendment to the Rules Governing Water and Electric Service to provide for a shorter period of time for which LADWP may collect payment from customers whose bills are delayed due to billing errors; and (vi) the creation and implementation of an information technology Project Management Office.

## WHAT ARE THE ATTORNEYS' FEES?

Class Counsel will ask the Court at the Final Approval Hearing to award attorneys' fees in an amount not to exceed $13,000,000 and to award reimbursement of expenses incurred in litigating this case in an amount not to exceed $750,000. The Court may award a different amount. If the Court does award attorneys' fees and reimbursement of expenses, Defendant has agreed to pay whatever amounts are awarded by the Court. Additionally, Class Counsel may submit additional quarterly applications for attorneys' fees during the 18 month Remediation Period during which the LADWP will complete stabilization and remediation of its billing system. Defendant has agreed that it will not oppose these applications so long as such applications, in total, do not exceed $1,000,000. In the event that Class Counsel's applications exceed $1,000,000, Defendant has reserved its right to oppose such applications. These amounts will not come out of the funds for benefits to the Settlement Class Members.

Separate and apart from the Settlement consideration described above, Defendant will separately pay the fees and expenses that the Court awards, as well as the costs to provide Notice to the Settlement Class and to administer the Settlement. These amounts will not come out of the funds for benefits to Settlement Class Members.

## WHAT ARE YOUR OPTIONS?

If you receive a letter identifying you as a member of the: (i) Tiered Billing Subclass; (ii) Trend Estimate Subclass; (iii) Closed Account with Credit Balance Subclass; (iv) Late Payment Charge Subclass or (v) Estimated Electric Bills with "Minimum Charge" Subclass, you can:

1.   Do nothing. You will receive a credit or refund in the amount indicated in the letter that you will receive.

4

2. Object. Written objections must be filed with the Court and copies mailed to counsel by _____. The detailed notice provides full details on how to object and can be found on the Settlement website at www._____.com.

3. Opt out of the settlement. Written request for exclusion must be mailed to:

<div align="center">

XXXXXXX

XXXXXXX

XXXXXXX

</div>

and postmarked no later than _____. If you opt out of the Settlement, you will no longer be a Settlement Class Member, and you will not be bound by the Settlement and cannot file a claim. The detailed notice provides full details on how to opt out and can be found on the settlement website at www._____.com.

If you receive a letter identifying you as a member of the: (i) Premise Condition/Estimated Bill Subclass; (ii) Automatic Bill Payment/Bank Overdraft Charge Subclass or (iii) Solar Customer Subclass **OR** if you are a current or former LADWP customer who has not otherwise been pre-identified as a member of any subclass, but who nevertheless believes that you have been: (i) overcharged as a result of a billing error made by LADWP at any time since September 3, 2013; or (ii) damaged as a result of your participation in the LADWP's solar incentive program at any time since February 13, 2010, you can:

1. Submit a claim. A Claim Form can be found at www._____.com. You must submit your Claim Form by _____ in order to be eligible to receive a credit or refund.

2. Object. Written objections must be filed with the Court and copies mailed to counsel by _____. The detailed notice provides full details on how to object and can be found on the Settlement website at www._____.com.

3. Opt out of the Settlement. Written requests for exclusion must be mailed to:

<div align="center">

XXXXXXX

XXXXXXX

XXXXXXX

</div>

and postmarked no later than _____. If you opt out of the Settlement, you will no longer be a Settlement Class Member, and you will not be bound by the Settlement and cannot file a claim. The detailed

<div align="center">5</div>

EXHIBIT 13

Page 489

notice provides full details on how to opt out and can be found on the settlement website at www._____.com.

4.  Do nothing. If you do nothing, you will not receive any Settlement benefits, and you give up rights.

### HOW DO I GET MORE INFORMATION?

For further details, visit the Settlement website at www._____.com or write to Class Counsel:

> Jack Landskroner, Esq.
> LANDSKRONER, GRIECO MERRIMAN LLC
> 1360 W 9th Street, #200
> Cleveland, OH 44113
> (216) 522-9000

You may also call _____ and ask for assistance.

**PLEASE DO NOT CONTACT THE COURT DIRECTLY WITH QUESTIONS ABOUT THE SETTLEMENT.**

RM57.025-M77972v3

(Page 164 of 338)

# EXHIBIT C
## TO CLASS ACTION SETTLEMENT AGREEMENT AND LIMITED RELEASE

EXHIBIT 13
Page 401

Doc# 1 Page# 164 - Doc ID = 1755355499 - Doc Type = Case Public

**EXHIBIT C**

EXHIBIT 13
Page 492

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES, CENTRAL DISTRICT

| | |
|---|---|
| ANTWON JONES, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>   vs.<br><br>CITY OF LOS ANGELES, by and through the LOS ANGELES DEPARTMENT OF WATER AND POWER, and DOES 1 through 50, inclusive,<br><br>        Defendants. | Case No. BC577267<br><br>[Related to Case Nos. BC565618 (Lead), BC568722, BC571664 and BC574690]<br><br>[PROPOSED] ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND DIRECTING DISSEMINATION OF CLASS NOTICE<br><br>Date: September 11, 2015<br>Time: 9:00 a.m.<br>Place: Dept. 323<br><br>Assigned for All Purposes to the Hon. Elihu M. Berle, Dept. 323<br><br>Action Filed:  January 7, 2015<br>Trial Date:    None Set |

1

[PROPOSED] ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL

1  WHEREAS, plaintiff Antwon Jones ("Plaintiff"), moved this Court for an Order, pursuant to California Code of Civil Procedure § 382 ("Section 382") and California Civil Code § 1781 ("Section 1781"), seeking preliminary approval of a class action settlement, and directing the dissemination of class notice (the "Motion"); and

WHEREAS, defendant the City of Los Angeles, by and through the Los Angeles Department of Power and Water ("LADWP") and DOES 1 through 50, inclusive (collectively, "Defendant") joins Plaintiff in seeking this same relief; and

WHEREAS, the Court reviewed the submissions of the Parties, held a hearing on September 11, 2015 (the "Preliminary Approval Hearing"), and found that the Parties are entitled to the relief they seek;

IT IS ORDERED that the Motion is GRANTED, subject to the following terms and conditions:

1.    The related actions, *Jones v. City of Los Angeles*, Case No. BC577267, *Bransford, et al. v. City of Los Angeles*, Case No. BC565618, *Fontaine v. City of Los Angeles, et al.*, Case No. BC571664, *Kimhi v. City of Los Angeles*, Case No. BC536272 (collectively, the "Action") are consolidated for all purposes.

2.    This Court has both subject matter jurisdiction and personal jurisdiction as to the Action and all Parties before it.

3.    The proposed Settlement set forth in the Class Settlement Agreement and Limited Release dated August 7, 2015 (the "Settlement Agreement"), submitted with the Motion, is preliminarily approved.

4.    Based upon the submissions of the Parties, and for purposes of this Settlement only, the Court conditionally makes the following findings:

a.   The members of the Settlement Class are so numerous as to make joinder impracticable.

2
[PROPOSED] ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL

1    b.  There are questions of law and fact common to the Settlement Class, and such

2         questions predominate over any questions affecting only individual Settlement

3         Class Members for purposes of the Settlement.

4    c.  Plaintiff's claims and the defenses thereto are typical of the claims of the

5         Settlement Class Members and the defenses thereto for purposes of the

6         Settlement.

7    d.  Plaintiff and his counsel have fairly and adequately protected, and will continue

8         to fairly and adequately protect, the interests of the Settlement Class Members

9         with respect to the Settlement.

10    e.  The proposed Settlement is superior to all other available methods for fairly and

11         efficiently resolving this Action.

12    f.  Accordingly, for settlement purposes only, the Court conditionally certifies a

13         Settlement Class comprised of

14         All LADWP customers who were improperly over-charged for electric, water,
sewage or sanitation services between the dates of September 3, 2013 and the
present, and who are entitled to credits or refunds for electric, water, sewage or
sanitation services and/or for participation in the LADWP's solar incentive
program from February 13, 2010.  Excluded from the Settlement Class are the
Judge to whom this case is assigned, any members of the Judge's immediate
family, and counsel of record in this action.

19    5.    This matter is preliminarily certified as a class action for settlement purposes only,

20 pursuant to Section 382, Section 1781 and Rule 3.769(c) and (d) of the California Rules of Court.

21 If the Court does not finally approve the Settlement, Defendant retains the right to assert that this

22 Action may not be certified as a class action for liability purposes, and no Party shall rely on this

23 preliminary approval as support for the certification of a class in this or any other action.

24

25    6.    The Court hereby appoints Plaintiff Antwon Jones as representative of the

26 Settlement Class.

27    7.    Jack Landskroner of Landskroner Grieco Merriman, LLC is appointed as Class

28 Counsel.

---

3

[PROPOSED] ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL

Doc# 1 Page# 168 - Doc ID = 1755355499 - Doc Type = Cas...

EXHIBIT 13

Page 495

8.      Michael J. Libman of the Law Offices of Michael J. Libman is appointed Liaison Counsel.

9.      The Settlement Agreement shall be used for settlement purposes only. The fact of, or any provision contained in, the Settlement Agreement or any action taken pursuant to it shall not constitute an admission of the validity of any claim or any factual allegation that was or could have been made by Plaintiff and members of the Settlement Class in the present action or of any wrongdoing or liability of any kind on the part of Defendant. The Settlement Agreement shall not be offered or be admissible in evidence by or against Defendant (or any Released Parties as defined in the Settlement Agreement) or cited or referred to in any other action or proceeding, except (a) in any action or proceeding brought by or against the Parties to enforce or otherwise implement the terms of the Settlement Agreement, or (b) in any action involving Plaintiff, or members of Settlement Class, in which the allegations are based on the same factual bases and allegations set forth in this case, to support a defense of res judicata, collateral estoppel, release, waiver or other theory of claim preclusion, issue preclusion, or similar defense.

10.     A final hearing (the "Final Approval Hearing") shall be held before this Court on _____ at ____ .m., to determine whether (a) this Action meets each of the prerequisites for class certification set forth in Section 382 and Section 1781, and may properly be maintained as a class action on behalf of the Settlement Class; (b) the Settlement Agreement should receive final approval as fair, reasonable, adequate, and is in the best interests of the Settlement Class in light of any objections presented by Settlement Class Members and the Parties' responses to any such objections; (c) orders granting final approval of the Settlement Agreement, entering final judgment and dismissing the Class Action Complaint(s), as provided in the Settlement Agreement, should be entered; and (d) the applications of Class Counsel for the payment of attorneys' fees and expenses, and service awards to Plaintiff are reasonable and should be approved. The Final Approval Hearing may be postponed, adjourned or continued by further order of this Court, without further notice to the Parties or the Settlement Class Members.

11.     Settlement Class Members or their counsel who wish to appear at the Final

4
[PROPOSED] ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL

EXHIBIT 13

Doc# 1 Page# 169 - Doc ID = 1755355099 - Doc Type = Case Public

1   Approval Hearing must make such request by notifying the Clerk of the Court and the Parties'

2   respective counsel in writing at the following addresses:

3

4   **Plaintiff's Counsel**

5   Jack Landskroner, Esq.
    **LANDSKRONER GRIECO MERRIMAN, LLC**

6   1360 W 9th Street, #200
    Cleveland, OH 44113

7

8   **Defendant's Counsel**

9   Angela C. Agrusa, Esq.
    **LINER LLP**

10  1100 Glendon Avenue, 14th Floor
    Los Angeles, California 90024

11

12      Any such request must be filed with the Clerk of the Court and received by the Parties'

13  respective counsel no later than _____, 2015 and must state the name, address and

14  telephone number and LADWP account number of the Settlement Class Member, as well as the

15  name, address and telephone number of the person who will appear on his or her behalf. Any

16  request for appearance that fails to satisfy the requirements of this paragraph, or that has not been

17  properly or timely submitted, may be deemed ineffective and shall be deemed to constitute a

18  waiver of such Settlement Class Members' rights to appear and to be heard on the Settlement at the

19  Final Approval Hearing.

20      12.     Any person included within the Settlement Class who wishes to be excluded from

21  membership in the Settlement Class must do so in writing by mailing a written request for

22  exclusion to the Claims Administrator Gilardi & Co. LLC at _____ by no later than

23  _____, 2015. The request must: (i) clearly express the Settlement Class Member's desire to

24  be excluded or to "opt out" from the Settlement Class; (ii) include the Settlement Class Member's

25  name, address and telephone number, LADWP account number and, if represented by counsel,

26  counsel's name, address and telephone number; and (iii) be signed by the Settlement Class

27  Member.

28

---

5

[PROPOSED] ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL

EXHIBIT 13

a.  If a Settlement Class Member has multiple LADWP accounts and wishes to be excluded from membership in the Settlement Class, the Settlement Class Member must submit a request for exclusion for each separate account.

b.  Any Person who is a member of the Settlement Class who wishes to be excluded from the Settlement Class can only opt out for him or herself, and cannot opt out for any other Person.  Nor can any Person who is a Settlement Class Member authorize any other Person to opt out on his or her behalf.

c.  Any Settlement Class Member who has filed an objection to the fairness, reasonableness or adequacy of the proposed Settlement shall be deemed not to have opted out of the Settlement Class pursuant to this paragraph.  However, in the event that a Settlement Class Member makes a submission to the Court and the Parties that appears to assert both an objection to the fairness, reasonableness or adequacy of the proposed Settlement, and a statement of intent to opt out of the Settlement Class, such submission shall be treated as a statement of intent to opt out of the Settlement Class, but not an objection.

13.    Any Settlement Class Member who has not timely filed a written request for exclusion from the Settlement Class may object to the fairness, reasonableness or adequacy of the proposed Settlement.  Each Settlement Class Member who wishes to object to any term of this agreement must do so in writing by filing a written objection with the Clerk of the Court and mailing it to the Parties' respective counsel at the addresses set forth in Paragraph 11 herein.  Any such objection must be filed with the Clerk of the Court and received by the Parties' counsel, no later than _____, 2015. Any such objection must: (i) state, in detail, the legal and factual ground(s) for the objection; (ii) include the Settlement Class Members name, address and telephone number and LADWP account number, and, if represented by counsel, counsel's name, address and telephone number; and (iii) be signed by the Settlement Class Member.

a.  Settlement Class Members may object either on their own, or through an attorney hired at their own expense. If the objecting Settlement Class Member hires an attorney to represent him or her, that attorney must file with the Court

6

[PROPOSED] ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL

1    and serve upon the Parties' respective counsel at the addresses set forth in

2    Paragraph 11 herein, a notice of appearance no later than _____, 2015.

3         b.  Any objection that fails to satisfy the requirements stated herein, or that is not

4            properly and timely submitted, will be deemed ineffective, and will be deemed

5            by the Parties to have been waived, and the Parties reserve their right to argue

6            that the Settlement Class Member asserting such objection is not entitled to

7            have his or her objection heard or otherwise considered by the Court.

8

9       14.    The Court finds that the form, manner and content of the Notice will provide the

10  best notice practicable to the Settlement Class under the circumstances and constitute valid, due,

11  and sufficient notice to all Settlement Class Members, fully complying with California Code of

12  Civil Procedure § 382, California Code of Civil Procedure § 1781, the Constitution of the State of

13  California, the Constitution of the United States, and other applicable law. All costs incurred in

14  connection with the preparation and dissemination of any notices to the Settlement Class shall be

15  borne by Defendant.

16       15.    Not later than 30 business days after the entry of this Order of Preliminary

17  Approval, Defendant shall cause Notice to be disseminated as follows:

18           i.    direct Mailed Notice to all those customers of LADWP for which

19             Defendant has street addresses and with whom Defendant

20             routinely communicates via United States First Class Mail

21             pursuant to customers' instructions;

22          ii.   direct Emailed Notice to all those customers of LADWP for which

23             Defendant has email addresses and with whom Defendant

24             routinely communicates via email pursuant to customers'

25             instructions;

26          iii.  publication of a summary notice in *The Los Angeles Times* and *La*

27             *Opinion*;

28

---

7

[PROPOSED] ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL

EXHIBIT 13
Page 499

iv.     establishment of a Settlement website by the Claims Administrator; and

v.      publication notice on LADWP's website.

16.     The Parties shall file and serve papers in support of final approval of the Settlement by _____, 2015.

17.     Class Counsel shall file any applications for an award of attorneys' fees, costs and litigation expenses, and reimbursement awards for Plaintiff's expenses by _____, 2015.

18.     Class Counsel shall file a single memorandum of law that addresses: (i) arguments in favor of final approval of the Settlement; and (ii) Class Counsel's application for an award of attorneys' fees, costs and litigation expenses, and service awards for Plaintiff's efforts and expenses. Such memorandum of law shall not exceed 50 pages in length.

19.     The Parties shall file and serve reply papers in further support of final approval of the Settlement; and/or Class Counsel's application for an award of attorneys' fees, costs and litigation expenses, and reimbursement awards for Plaintiffs' expenses by no later than _____, 2015.

20.     The Final Approval Hearing shall be held at ____ _.m. on _____, 2015 in Department _____.

21.     If the proposed Settlement is finally approved, the Court shall enter a separate order finally approving the Settlement, entering judgment and dismissing the Class Action Complaint(s). Such order and judgment shall be fully binding with respect to all members of the Settlement Class.

22.     Pending further orders by this Court, all proceedings in this Action or Actions – other than proceedings pursuant to this Order – shall be stayed and all members of the Settlement Class who do not request exclusion from the Settlement Class in the manner required by this Order shall be enjoined from commencing or prosecuting any action, suit, proceeding, claim, or cause of

---

8

[PROPOSED] ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL

EXHIBIT 13
Page 500

Doc# 1 Page# 173 - Doc ID = 1755355499 - Doc Type = Case Public

action (except those based on or relating to personal injury or wrongful death), in any jurisdiction or court against Defendant relating to or arising out of the subject matter of this action.

Dated: September ____, 2015          SO ORDERED:

_____
Hon. Elihu M. Berle

---

9

[PROPOSED] ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL

EXHIBIT 13

(Page 175 of 338)

# EXHIBIT D
## TO CLASS ACTION SETTLEMENT
## AGREEMENT AND LIMITED RELEASE

EXHIBIT 13
Page 502

Doc# 1 Page# 175 - Doc ID = 1755355699 - Doc Type = Case Doc

(Page 176 of 338)

EXHIBIT D

EXHIBIT 13
Page 503

Doc# 1 Page# 176 - Doc ID = 1755355499 - Doc Type = Case Doc

Dear _____:

As you may be aware, a class action lawsuit was filed in the Superior Court of California, captioned *Jones v. City of Los Angeles,* Case No. BC577267, which alleges that customers of the Los Angeles Department of Water and Power (the "LADWP") were over-billed or experienced other billing errors that were caused by, and are related to, the defective implementation of the LADWP's new billing system or incurred damages as a result of participating in the LADWP's Solar Photovoltaic Incentive Program (the "Lawsuit").

In connection with the Settlement of the Lawsuit, the LADWP has conducted a search and audit of its internal records, and has determined that you are a member of the _____ Subclass.

Also in connection with the Settlement of the Lawsuit, the LADWP has determined that you are entitled to a [credit] [refund] in the amount of $_____. This amount represents **100% of the amount by which the LADWP has determined that it overcharged you.**

If you wish to receive the credit/ refund indicated above, you do not need to take any further action. [The LADWP will credit your account in the amount indicated above, and this credit will be reflected on your next monthly billing statement.] [The LADWP will issue you a check in the amount indicated above.]

If you do not wish to receive this [credit] [refund], you must mail a request for exclusion to the following address:

<div align="center">

XXXXXXX
XXXXXXX
XXXXXXX

</div>

You must personally sign the exclusion request. Your request must: (i) clearly express your desire to be excluded or to "opt out" from the Settlement; (ii) include your name, address and telephone number, LADWP account number and, if represented by counsel, counsel's name, address and telephone number. Your exclusion request must be postmarked no later than _____ or it will not be accepted.

If you exclude yourself from the Settlement, you will not be eligible for any Settlement benefits, including receipt of the amount indicated in this letter, and you will waive all rights to object to the Settlement.

30457.025-2477501v2

EXHIBIT 13

If you have questions regarding this letter, you may call __ _____ and ask for assistance.

38457.025-3477501v2

EXHIBIT 13

Page 505

Doc# 1 Page# 178 - Doc ID = 1755355499 - Doc Type = Case Misc

# EXHIBIT E
## TO CLASS ACTION SETTLEMENT
## AGREEMENT AND LIMITED RELEASE

EXHIBIT 13
Page 506

Doc# 1 Page# 179 - Doc ID = 1755355499 - Doc Type = Case_Doc

(Page 180 of 338)

EXHIBIT E

EXHIBIT 13
Page 507

Dear _____:

      As you may be aware, a class action lawsuit was filed in the Superior Court California, captioned *Jones v. City of Los Angeles,* Case No. BC577267, which alleges that customers of the Los Angeles Department of Water and Power (the "LADWP") were over-billed or experienced other billing errors that were caused by, and are related to, the defective implementation of the LADWP's new billing system or incurred damages as a result of participating in the LADWP's Solar Photovoltaic Incentive Program (the "Lawsuit").

      In connection with the Settlement of the Lawsuit, the LADWP has conducted a search of its internal records, and has determined that you are a member of the _____Subclass.

      In order to determine the amount of the [credit] [refund], if any, that you may be entitled to receive, you must submit a Claim Form, which is available at www._____.com by _____. Additionally, you must provide the required documents specified in the Claim Form in order to receive a [credit] [refund]. If you do not submit a timely Claim Form and the required documentation, you will not receive a [credit] [refund], if one may be owed to you.

      If you wish to exclude yourself from the Settlement, you must mail a request for exclusion to the following address:

<div align="center">
XXXXXXX<br>
XXXXXXX<br>
XXXXXXX
</div>

      You must personally sign the exclusion request. Your request must: (i) clearly express your desire to be excluded or to "opt out" from the Settlement; (ii) include your name, address and telephone number, LADWP account number and, if represented by counsel, counsel's name, address and telephone number. Your exclusion request must be postmarked no later than _____ or it will not be accepted.

      If you exclude yourself from the Settlement, you will not be eligible for any Settlement benefits, including receipt of the amount you are seeking in any claim form submitted, and you will waive all rights to object to the Settlement.

      If you have questions regarding this letter, you may call _____ and ask for assistance.

38457.025-2477905v2

EXHIBIT 13

# EXHIBIT F
## TO CLASS ACTION SETTLEMENT
## AGREEMENT AND LIMITED RELEASE

EXHIBIT 13

*Jones v. City of Los Angeles*
Case No. BC577267

## Claim Form and Settlement Declaration

First, Last                 _____
Company                     _____
Address 1                   _____
Address 2                   _____
City, State Zip Code        _____
LADWP Account No.           _____

### GENERAL INSTRUCTIONS

If you have received a letter from the Los Angeles Department of Water and Power (the "LADWP") identifying you as a member of a certain Subclass, please complete **Part 1** of this Claim Form.

If have **NOT** received a letter from the LADWP identifying you as a member of a certain Subclass, please complete **Part 2** of this Claim Form.

**Please provide all required documentation where indicated.**

**Please provide an electronic signature where indicated.**

### DEFINITIONS

**"Tiered Billing Subclass"** means all residential and commercial customers of LADWP who were billed and paid for electricity or water usage at tiered rates higher than those rates that would otherwise have been used to bill these customers during the period September 3, 2013 through August 13, 2014.

**"Trend Estimate Subclass"** means all residential and commercial customers of LADWP who paid electricity or water and sewer bills that were incorrectly estimated due to a defect in the Trend Estimation Algorithm used to compute these estimates during the period September 3, 2013 through August 13, 2014.

"Closed Account with Credit Balance Subclass" means all residential and commercial customers of LADWP who: (i) have "Closed Accounts" with credit balances and (ii) are owed refunds that have been withheld by LADWP during the period of September 3, 2013 to present.

"Premise Condition/Estimated Bill Subclass" means all residential and commercial customers of LADWP who: (i) unbeknownst to the customer, had a premise condition that caused excessive consumption of water and/or power; (ii)

EXHIBIT 13
Page 510

received estimated bills for multiple billing periods after September 3, 2013; (iii) because of these estimated bills, were prevented from timely discovering the premise condition; and (iv) were charged for greater quantities of water, power or sewage than they otherwise would have been charged.

"**Solar Customers Subclass**" means all residential LADWP customers who have installed solar systems and applied to participate in the Solar Photovoltaic Incentive Program from February 13, 2010 to date and: (i) experienced delay in the final approval process beyond 30 days after submission of a complete Incentive Application and Supporting Documentation and indication that the solar system was fully permitted and ready for inspection; and/or (ii) have not been properly billed for energy consumed and/or generated; and/or (iii) have not been properly credited for excess energy generated by the customer's solar power system.

"**Automatic Bill Payment/Bank Overdraft Charge Subclass**" means all LADWP customers who: (i) were enrolled in an automatic bill payment plan with a bank and (ii) were charged overdraft fees because LADWP charged the customer an incorrect amount, which, in turn, resulted in the customer's bank account being overdrawn.

"**Late Payment Charge Subclass**" means all LADWP customers who were assessed an inaccurate Late Payment Charge.

"**Estimated Electric Bills with "Minimum Charge" Subclass**" means all LADWP residential and small commercial customers: (i) whose consumption was estimated to be zero and (ii) who were, therefore, assessed a "Minimum Charge" on an electric bill when the actual usage was above the "Minimum Charge."

"**Omnibus Subclass**" means all LADWP residential and commercial customers that believe they were: (i) incorrectly assessed a charge associated with their power, water, sewage or trash collection at any time from September 3, 2013 to the present; or (ii) otherwise damaged as a result of their participation in the LADWP's Solar Photovoltaic Incentive Program at any time from February 13, 2010 to the present, that is not covered by any of the other Subclasses listed herein.

**Part 1**

A.   I have been identified as a Subclass member of one or more of the following Subclass (please check the appropriate box or boxes):

☐   Premise Condition/Estimated Bill Subclass

☐   Automatic Bill Payment/Bank Overdraft Charge Subclass

☐   Solar Customer Subclass

EXHIBIT 13

B.   If you have been identified as a member of the **Premise Condition/Estimated Bill Subclass, please identify: (i) all "premise conditions" (i.e., any condition that occurred on your property or residence that caused an excessive consumption of water and/or power, such as a water leak or electrical grounding condition) that occurred after September 3, 2013; (ii) the date(s) of the premise condition; (iii) when the premise condition was repaired; and (iv) the amount, if any, that you paid to have the premise condition repaired. Please attach a copy of all invoices that were paid by you to repair the premise condition.**

_____
_____
_____
_____
_____
_____
_____

C.   If you have been identified as a member of the **Automatic Bill Payment/Bank Overdraft Charge Subclass, please identify: (i) the bank at which you were enrolled in an automatic bill payment plan and the name of that plan; (ii) the date(s) of your enrollment; (iii) the amount of any overdraft fee(s) that you were charged by the bank as a result of your bank account being overdrawn after a payment was made out of your bank account to the LADWP. Please attach a copy of all relevant bank statements.**

_____
_____
_____
_____
_____
_____

D₁.   If you have been identified as a member of the **Solar Customers Subclass,** please identify: (i) the date of submission of your "Incentive Application;" (ii) the date on which your solar system was energized by LADWP. **Please attach a copy of your Reservation Request Form and Incentive Payment Claim Form.**

☐  Please check here if you want us to use your data in calculating your claim

☐  Please check here if you want us to use data provided to us by the LADWP in calculating your claim

EXHIBIT 13

_____
_____
_____
_____
_____
_____
_____

D₂.   Alternatively, if you have been identified as a member of the **Solar Customers Subclass**, please identify: (i) all monetary amounts that you have been improperly billed, and the dates you were improperly billed; and/or (ii) all amounts of excess energy that you generated for which you were not properly credited.   **Please attach a copy of all relevant LADWP bills evidencing amounts billed and/or data reports evidencing usage.**

☐  Please check here if you want us to use your data in calculating your claim

☐  Please check here if you want us to use data provided to us by the LADWP in calculating your claim

_____
_____
_____
_____
_____
_____
_____

**Part 2**

A.   I have not been pre-identified as a member of a Subclass, but I believe that I: (i) was overcharged as a result of a billing error made by LADWP on or after September 3, 2013; or (ii) damaged as a result of my participation in the LADWP's Solar Program on or after February 13, 2010, and I believe that I am a member of the following Subclass(es) (please check the appropriate box(es)):

☐   Tiered Billing Subclass

☐   Trend Estimate Subclass

☐   Closed Account with Credit Balance Subclass

☐   Premise Condition/Estimated Bill Subclass

☐   Solar Customers Subclass

38457.025-2678102v2                                    4

EXHIBIT 13

Page 543

Doc# 1 Page# 186 - Doc ID = 1755355499 - Doc Type = Case

☐   **Automatic Bill Payment/Bank Overdraft Charge Subclass**

☐   **Late Payment Charge Subclass**

☐   **Estimated Electric Bills with "Minimum Charge" Subclass**

Please provide a brief explanation of why you believe that you are a member of the Subclass(es) that you checked above. **Please attach a copy of all documents substantiating your claim(s).**

☐   Please check here if you want us to use your data in calculating your claim

☐   Please check here if you want us to use data provided to us by the LADWP in calculating your claim

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

B.   I have not been pre-identified as a member of a Subclass, but I believe that I was (i) incorrectly assessed a charge associated with my bill for power, water, sewage or trash collection between September 3, 2013 and the present or (ii) I have been otherwise damaged as a result of participation in the LADWP's Solar Photovoltaic Incentive Program between February 13, 2010 and the present that is not covered by any other Subclass. By checking the box below I believe I am eligible to submit a claim under the Omnibus Subclass.

☐   "Omnibus Subclass"

Please provide a brief explanation of the nature of the "Omnibus" claim you are submitting and a brief explanation of the basis of your claim, the manner in which you have been damaged and the amount you believe you are entitled to be credited or refunded. Please attach a copy of all documents substantiating you claim(s).

☐   Please check here if you want us to use your data in calculating your claim

EXHIBIT 13

☐ Please check here if you want us to use data provided to us by the LADWP in calculating your claim

38457.025-2M78102v2                                    6

EXHIBIT 13
Page 515

Doc# 1 Page# 188 - Doc ID = 1755355499 - Doc Type = Cas...ic

## Declaration

I, _____, hereby declare under penalty of perjury, under the laws of the United States, that the information provided in the Claim Form is true and correct. By submitting this Claim Form, I also hereby submit and consent to the jurisdiction of the Superior Court of the State of California in this matter.

_____          _____
Date: (mm/dd/yyyy)                            Electronic Signature

# THIS DECLARATION IS MADE UNDER PENALTY OF PERJURY

38457025-2478102v3

7

EXHIBIT 13
Page 546
Doc# 1 Page# 189 - Doc ID = 1755355499 - Doc Type = Case

# EXHIBIT G
## TO CLASS ACTION SETTLEMENT
## AGREEMENT AND LIMITED RELEASE

EXHIBIT 13
Page 517

Doc# 1 Page# 190 - Doc ID = 1755355499 - Doc Type = Cas Public



| | |
|---|---|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | SUPERIOR COURT OF THE STATE OF CALIFORNIA |
| 11 | COUNTY OF LOS ANGELES, CENTRAL DISTRICT |
| 12 | |
| 13 | ANTWON JONES, on behalf of himself and all others similarly situated, — Case No. BC577267 |
| 14 | Plaintiff, — [Related to Case Nos. BC565618 (Lead), BC568722, BC571664 and BC574690] |
| 15 | vs. |
| 16 | CITY OF LOS ANGELES, by and through the LOS ANGELES DEPARTMENT OF WATER AND POWER, and DOES 1 through 50, inclusive, — [PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT, FINAL JUDGMENT AND ORDER OF DISMISSAL |
| 17 | |
| 18 | |
| 19 | Defendants. — Date: Time: Place: |
| 20 | |
| 21 | Assigned for All Purposes to the Hon. Elihu M. Berle, Dept. 323 |
| 22 | Action Filed: January 7, 2015 Trial Date: None Set |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

·1·

[PROPOSED] ORDER GRANTING MOTION FOR FINAL APPROVAL

38457.0252477267v2

EXHIBIT 13

1   WHEREAS, plaintiff Antwon Jones ("Plaintiff") moved this Court for an Order, pursuant

2   to Section 382 of the California Code of Civil Procedure ("Section 382") and California Civil

3   Code § 1781 ("Section 1781"), seeking final approval of a class action settlement, and entry of

4   final judgment dismissing the claims alleged in the Class Action Complaint (the "Motion"); and

5   WHEREAS, defendant the City of Los Angeles, by and through the Los Angeles

6   Department of Power and Water ("LADWP") and DOES 1 through 50, inclusive (collectively,

7   "Defendant") joins Plaintiff in seeking this same relief; and

8

9   WHEREAS, the Court reviewed the submissions of the parties, all properly and timely filed

10  objections to the Settlement, and the Parties' responses to such objections, and held a Final

11  Approval Hearing on _____, 2015 (the "Final Approval Hearing"), and good cause

12  appearing;

13  IT IS ORDERED that the Motion is GRANTED, subject to the following terms and

14  conditions:

15      1.      With respect to the capitalized terms set forth herein, the Court, for purposes of

16  this Final Judgment and Order of Dismissal with Prejudice ("Final Order"), adopts the

17  definitions set forth in the Class Action Settlement Agreement and Limited Release dated August

18  _____, 2015 (the "Settlement Agreement").

19      2.      This Court has continuing and exclusive jurisdiction over the Settlement and all

20  Parties hereto for the purpose of construing, enforcing and administering the Settlement

21  Agreement.

22      3.      The Court finally certifies, for settlement purposes only, the following Settlement

23  Class:

24          All LADWP customers who were improperly over-charged for electric,
            water, sewage or sanitation services between the dates of September 3,
25          2013 and the present, and who are entitled to credits or refunds for
            electric, water, sewage or sanitation services and/or for participation in the
26          LADWP's solar incentive program from February 13, 2010.  Excluded
            from the Settlement Class are the Judge to whom this case is assigned, any
27          members of the Judge's immediate family, and counsel of record in this
            action.
28

---

2

[PROPOSED] ORDER GRANTING MOTION FOR FINAL APPROVAL

33457.025-2477967v2

EXHIBIT 13
Page 519

4.    With respect to the Settlement Class, this Court finds that: (a) the members of the Settlement Class are so numerous their joinder is impracticable; (b) there are questions of law and fact common to the Settlement Class which predominate over any individual questions; (c) the claims of Plaintiff are typical of the claims of the Settlement Class; (d) Plaintiff and Class Counsel have fairly and adequately represented and protected the interests of the Settlement Class; and (e) a class action is superior to other available methods for the fair and efficient adjudication of the controversy, considering: (i) the interests of the Settlement Class in individually controlling the prosecution of the separate actions, (ii) the extent and nature of any litigation concerning the controversy already commenced by the Settlement Class, (iii) the desirability or undesirability of concentrating the litigation of these claims in this particular forum, and (iv) the difficulties likely to be encountered in the management of the action.

5.    Notice to the Settlement Class has been provided in accordance with the Preliminary Approval Order. These materials satisfied the requirements of California Code of Civil Procedure § 382 and California Civil Code § 1781  and Rule 3.766 of the California Rules of Court and (a) provided the best practicable notice, (b) were reasonably calculated, under the circumstances, to apprise the Settlement Class of the pendency of the Action, the terms of the Settlement Agreement, and of their right to appear or object to or exclude themselves from the Settlement Class, (c) were reasonable and constituted due, adequate, and sufficient notice to all persons entitled to receive notice, and (d) fully complied with the applicable laws of the State of California. Accordingly, the Court determines that all members of the Settlement Class are bound by this Order and by the final judgment to be entered pursuant thereto.

6.    The Court dismisses with prejudice all claims currently pending before it belonging to Plaintiff and members of the Settlement Class who did not request exclusion from the Settlement Class in the time and manner provided for in the Settlement Agreement.

7.    The Settlement Agreement was arrived at after extensive arm's length negotiations conducted in good faith by counsel for the parties, and is supported by the majority of the members of the Settlement Class. Accordingly, this Court hereby approves the Settlement Agreement as fair, reasonable and adequate in light of the complexity, expense and duration of

3
[PROPOSED] ORDER GRANTING MOTION FOR FINAL APPROVAL

38457.025-2477967v2

EXHIBIT 13

1  the litigation, and the risks inherent and involved in establishing liability and damages, and in

2  maintaining the class action as to liability issues through trial and appeal.

3       8.     The promises and commitments of the Parties under the terms of the Settlement

4  Agreement constitute fair value given in exchange for the releases of the Released Claims. The

5  following claims are therefore released against Defendant:

6      any and all claims, damages, suits, demands, liabilities, judgments, losses and

7      causes of action relating to or arising from any error committed by the LADWP
    in over-billing its customers from September 3, 2013, through the date of the

8      entry of the Order of Final Approval, and in failing to timely include customers
    in the LADWP's Solar Photovoltaic Incentive Program and/or credit for excess

9      energy generated by solar systems from February 13, 2010, through the date of
    the entry of the Order of Final Approval, whether known or unknown, matured

10      or unmatured, sounding in law or equity, seeking damages or any other relief,

11      that are now recognized by law or that may be created or recognized in the future
    by statute, regulation, judicial decision or in any other manner, based upon any

12      federal or state statutory or common law including but not limited to, claims
    sounding in tort, contract and the consumer protection laws of the United States

13      or of any state or other jurisdiction within the United States, and all claims,

14      damages, suits, demands, liabilities, judgments, losses or causes of action which
    have been, might have been, are now, or could be asserted by any Plaintiff or any

15      Settlement Class Member arising out of, based upon, or related to, in whole or in

16      part, the facts and circumstances underlying the claims and causes of action set
    forth in the Action.

17

18       9.     All members of the Settlement Class who did not make a valid request for

19  exclusion from the Settlement Class in the time and manner provided in the Settlement

20  Agreement are barred, permanently enjoined, and restrained from commencing or prosecuting

21  any action, suit, proceeding, claim, or cause of action in any jurisdiction or court against

22  Defendant and/or the Released Parties based upon, relating to, or arising out of, any of the

23  Released Claims.  However, all members of the Settlement Class who did make a valid request

24  for exclusion from the Settlement Class in the time and manner provided in the Settlement

25  Agreement are not barred, permanently enjoined, or restrained from commencing or prosecuting

26  any action, suit, proceeding, claim, or cause of action in any jurisdiction or court against

27  Defendant and/or the Released Parties based upon, relating to, or arising out of, any of the

28  Released Claims.

<hr/>

4

[PROPOSED] ORDER GRANTING MOTION FOR FINAL APPROVAL

38457.025-2477962v2

EXHIBIT 13

10.     By operation of this Final Order and upon the occurrence of the Effective Date, Defendant and/or the Released Parties shall be deemed to have, and by operation of this Final Order shall have, fully, finally, and forever released, relinquished and discharged each and all members of the Settlement Class, Plaintiff and Class Counsel from all claims (including unknown claims), arising out of, relating to, or in connection with the institution, prosecution, assertion, settlement or resolution of this litigation or the Released Claims.

11.     For good cause shown, the Court awards a service award to Plaintiff Jones and the named plaintiffs in the following actions: namely *Bransford, et al. v. City of Los Angeles,* Case No. BC565618, *Fontaine v. City of Los Angeles, et al.,* Case No. BC571664, and *Kimhi v. City of Los Angeles,* Case No. BC536272 in the amount of $_____ for the time and expenses expended in connection with the prosecution of the actions, which shall be paid by Defendant.

12.     For good cause shown, the Court awards Class Counsel: (i) reasonable attorney fees in the amount of $_____; and (ii) expenses in the amount of $_____.    The attorneys' fees and reimbursement of expenses awarded by the Court shall be paid by Defendant within 7 business days after this Order has been entered. Defendant will pay the amount awarded by the Court directly to an account established by Class Counsel.  Class Counsel shall be responsible for allocating the attorneys' fees and expenses among Plaintiff's counsel.

13.     For good cause shown, the Court approves the right of Class and Liaison Counsel to apply to this Court for an award of an amount up to $1,000,000 in future fees and up to $750,000 in expenses as compensation for continuing efforts in implementation of this settlement, as set forth in the Settlement Agreement.

14.     The Settlement Agreement shall not be offered or be admissible in evidence by or against Defendant or cited or referred to in any other action or proceeding, except (1) in any action or proceeding brought by or against the Parties to enforce or otherwise implement the terms of the Settlement Agreement, or (2) in any action involving Plaintiff, members of the Settlement Class, or any of them, to support a defense of res judicata, collateral estoppel, release, or other theory of claim preclusion, issue preclusion, or similar defense.

<div align="center">5

[PROPOSED] ORDER GRANTING MOTION FOR FINAL APPROVAL</div>

28457.025-3477957v2

1    15.    If, for any reason, the Effective Date does not occur, this Final Judgment shall be

2   deemed vacated and shall have no force or effect whatsoever.

3    16.    Without affecting the finality of this Judgment in any way, the Court hereby

4   retains continuing jurisdiction over (a) the implementation of this settlement and any award or

5   distribution to the Settlement Class members; (b) hearing and determining an application for

6   attorneys' fees and costs and (c) all parties for the purpose of enforcing and administering the

7   Settlement Agreement pursuant to California Code of Civil Procedure § 664.6 or otherwise.

8    17.    The Clerk is directed to enter this Final Order forthwith.

9

10   Dated: _____, 2015                SO ORDERED:

11

12

13                                   _____

14                                   HON. ELIHU M. BERLE

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

6

[PROPOSED] ORDER GRANTING MOTION FOR FINAL APPROVAL

38457.025-2477967v2

EXHIBIT 13
Page 523

Doc# 1 Page# 196 - Doc ID = 1755355499 - Doc Type = Case

# EXHIBIT 2
# TO DECLARATION OF
# JACK LANDSKRONER

EXHIBIT 13
Page 524

Doc# 1 Page# 197 - Doc ID = 1755355499 - Doc Type = Case

# LANDSKRONER · GRIECO · MERRIMAN
## ATTORNEYS & ADVOCATES
### A Limited Liability Company

1360 West 9th Street, Suite 200, Cleveland, Ohio 44113
Telephone 216.522.9000   Toll Free 866.522.9500
Facsimile 216.522.9007
Website www.lgmlegal.com
Email jack@lgmlegal.com

### FIRM RESUME

Landskroner · Grieco · Merriman, LLC (LGM) is a Cleveland-based law firm representing plaintiffs in complex civil litigation in the state and federal courts of Ohio and throughout the United States. The firm has built a reputation on providing quality representation to its clients in conjunction with aggressive advocacy and high standards of ethical conduct to both individuals and classes of plaintiffs in Ohio and across the country.

In its complex litigation practice, LGM has successfully served in the capacity of lead, co-lead, and liaison class counsel representing consumers, small businesses and institutions in class action litigation to include claims involving securities fraud, consumer fraud, antitrust violations, contractual breaches, bad faith insurance practices, and for statutory violations including claims under consumer protection and deceptive trade practice acts, the Fair Labor Standards Act (FLSA), Employees Retirement Income Act (ERISA), and others. LGM also has served and continues to serve as "special outside counsel" to the Ohio Attorney General on behalf of the Ohio Petroleum Underground Storage Tank Release Compensation Board.

LGM has been instrumental in the recovery of hundreds of millions of dollars for consumers, investors, and businesses. For example, in *Ritt v. Billy Banks / Sanford v. West Corp.*, LGM served as co-lead counsel securing a $40 million recovery for tens of thousands of consumers unwittingly charged for a wholesale club membership on their credit cards as a result of alleged deceptive marketing practices. In *Staehr v. Walter*, LGM's efforts helped to recover $70 million in a shareholder derivative action for the benefit of Cardinal Health Corporation along with corporate governance changes arising from alleged self-dealing and fiduciary breaches by company insiders. In *Eubanks v. Panther II Transportation*, LGM recovered unpaid wages for over 1000 independent over-the-road truck drivers who alleged their contracts were breached and federal truth-in-leasing laws were violated by Panther's practices. In *In re: Scrap Metal Antitrust Litigation*, LGM served to assist in the recovery of $34 million on behalf of businesses affected by price fixing and anti-competitive behavior in the scrap metal industry.

In its general practice, the firm represents Ohio families in their individual claims for catastrophic harm caused by defective products, unsafe work environments, negligent medical care, as well as in claims arising from insurance disputes, breaches of fiduciary duty, and to recover from predatory lending practices. LGM also represents clients in

EXHIBIT 13

Page 525

Doc# 1 Page# 198 - Doc ID = 1755255499 - Doc Type = Case Public

mass tort actions and has served in leadership and on steering committees in multiple multi-district litigation (MDL) actions.

LGM attorneys have significant trial experience and have been recognized at local, state and national levels for their skills and accomplishments as civil litigators.  In addition to its three named principals, the firm employs associate attorneys, paralegals and administrators to ensure each case is fully staffed in order to achieve a just and efficient outcome for its clients.

<u>SAMPLE CLASS ACTION AND DERIVATIVE CASE INVOLVEMENT</u>

**Pending Cases:**

- *In re: Rocco Siriano, et al. v. Goodman Manufacturing Co., L.P., et al.,* Case No. 2:14-cv-01131-GCS-MRA, S.D. Ohio:  Class Action alleging product defect in defendant's air conditioning systems

- *In re: Vertrue, Inc. Marketing and Sales Practices Litigation,* MDL No. 2044, N.D. Ohio (co-lead counsel): Consumer class action alleging defendants violated consumer protection statutes by improperly charging consumer credit cards for a wholesale buy-club membership without authorization (stayed subject to Bankruptcy Court Order)

- *In re: Chinese-Manufactured Drywall Products Litigation,* MDL No. 2047, E.D. Louisiana:  Products liability action alleging defects in drywall manufactured in China and used in homes throughout the United States

- *In re Lubrizol Shareholder Litigation,* Case No. 11-CV-000684 (Lake Ct. Comm. Pl., Ohio) (co-lead counsel): Derivative and class action shareholder complaint brought on behalf of Lubrizol shareholders against the company board for breach of fiduciary duty, duty of loyalty, and/or good faith and independence owed to the company in connection with the sale of the company to Berkshire Hathaway, Inc.

- *In re Dana Corporation Securities Litigation,* U.S.D.C. Case No. 05-cv-07393, N.D. Ohio (liaison counsel):  Securities fraud class action alleging defendants violated federal securities law

- *Hawaii Ironworkers Annuity Trust Fund v. Bernard S. Cole, et al.,* U.S.D.C. Case No. 10-cv-003761, N.D. Ohio (liaison counsel): Securities fraud class action alleging defendants violated federal securities law

- *O&R Construction, LLC v. Dun & Bradstreet Credibility Corporation,* U.S.D.C. Case No. 2:12-cv-02184, W.D. Washington: Consumer class action alleging deceptive business practices by defendants in the realm of commercial credit reporting and monitoring

- *In re Cox Enterprises, Inc. Set-Top Cable Television Box Antitrust Litigation,* U.S.D.C. Case No. 12-ML-2048-C, W.D. Oklahoma:  Consumer class action alleging violation of the Sherman Act for unreasonable restraint of trade resulting from Cox's tying arrangements in conjunction with set-top cable boxes

EXHIBIT 13

- *Michael Blank v. LCA-Vision, Inc., et al., ,* Case No. A 1401239, Hamilton County Court of Common Pleas:  Derivative and class action shareholder complaint brought on behalf of LCA-Vision Inc. breach of fiduciary duty, duty of loyalty, and/or good faith and independence owed to the company in connection with the sale of the company to PhotoMedex

- *In re Elk Cross Timbers Decking Marketing, Sales Practices and Products Liability Litigation,* MDL No. 2577, D. New Jersey (Steering Committee member): Products liability action alleging manufacturing defects in composite wood decking

- *David Snodgrass v. Bob Evans Farms, Inc.,* Case No. 2:12-cv-00768, N.D. Ohio: Class action under the Fair Labor Standards Act for unpaid overtime wages and liquidated damages (Settled: Pending Court Approval)

- *James Utterback v. Bob Evans Farms, Inc.,* Case No. CV 14 826909, Cuyahoga County Court of Common Pleas: Class action under the Ohio Minimum Wage Act for unpaid overtime wages (Settled: Pending Court Approval)

- *Kampfer v. Fifth Third Bank, et al.,* Case No. 3:14-cv-02849, N.D. Ohio: Class action under the Fair Labor Standards Act for unpaid overtime wages

- *Watson v. Jimmy John's, LLC, et al.,* Case No. 2:15-cv-0768, S.D. Ohio: Class action under the Fair Labor Standards Act for unpaid overtime wages and liquidated damages

- *Fenley v. Wood Group Mustang, Inc.,* Case No. 2:15-cv-00326, S.D. Ohio (liaison counsel): Class action under the Fair Labor Standards Act for unpaid overtime wages and liquidated damages

- *Elliott Graiser v. Visionworks of America, Inc.,* Case No. CV 14 828880, Cuyahoga County Court of Common Pleas:  Class action alleging violations of the Ohio Consumer Sales Practices Act

- *Justyn A. Grimsley v. Environmental Management Specialists, Inc.,* Case No. 2:15-cv-2371, S.D. Ohio:  Class action under the Fair Labor Standards Act for unpaid overtime wages

- *Wiese and Bradison v. Cach LLC, et al.,* Case No. 13-2-33354-6, Washington:  Class Action for Violation of WA State Statute alleging unlawful collection of debt purchased by debt buyer

Resolved Claims:

- *Heather Wright, et al. v. Nationstar Mortgage LLC,* U.S.D.C., Case No. 1:14-cv-10457, N.D. Illinois: Class action alleging violations of the Telephone Consumer Protection Act (Settled: Subject to Court Approval)

- *Kirk Dahl, et al. v. Bain Capital Partners, LLC,* U.S.D.C. Case No. 1:07-cv-12388, Massachusetts: Class action alleging violation of the Sherman Act

EXHIBIT 13

Page 527

- *Michael Auld v. Cooper Tire & Rubber Company*, Case No. 13-CV-293 (Hancock Ct. Comm. Pl., Ohio): Shareholder derivative claims for alleged breach of fiduciary duty by officers and directors of Cooper Tire & Rubber Company

- *Louisiana Municipal Police Employees Retirement System v. KPMG, LLP, et al.*, U.S.D.C. Case No. 10-cv-01461, N.D. Ohio: Securities fraud class action

- *Eubanks v. Panther II Transportation, Inc.*, U.S.D.C. Case No. 1:11-cv-02705, N.D. Ohio: Class action brought on behalf of Panther truck drivers alleging violations of the Federal Truth in Leasing Act where driver were not compensated in accordance with federal requirements

- *In re JP Morgan Chase Home Equity Line of Credit Litigation*, MDL No. 2167, N.D. Illinois: Consumer class action alleging breach of contract by Chase of consumers home equity lines of credit

- *NECA-IBEW Pension Fund v. Cox, et al.*, U.S.D.C. Case No. 1:11-cv-00451, N.D. Ohio: Shareholder derivative action challenging executive compensation plan approved by the board of directors after shareholder "no" vote under the Dodd Frank Act

- *In re Kitec Plumbing System Products Liability Litigation*, MDL No. 2098, W.D. Texas: Products liability action concerning the manufacturing, marketing and distribution of defective manufacture, market, and distribute defective plumbing fittings

- *In re Keycorp Derivative Litigation*, U.S.D.C. Case No. 10-cv-01786, N.D. Ohio: Derivative claims for alleged breach of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment by officers and directors of Keycorp arising from executive compensation after a "no" vote on "say or pay" vote mandated by the Dodd Frank Act

- *Dalesandro v. Scott Cowen, et al.*, Case No. CV 2010-12-8510 (Summit Ct. Comm. Pl., Ohio): Derivative claims for alleged breach of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment by officers and directors of Jo-Ann Stores, Inc.

- *Electrical Workers Pension Fund v. American Greetings*, Case No. 09-687985 (Cuyahoga Ct. Comm. Pl., Ohio): Derivative claims for alleged breach of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment by officers and directors of American Greetings arising from alleged backdating of stock options

- *Ritt v. Billy Blanks*, Case No. 424237 (Cuyahoga Ct. Comm. Pl., Ohio) (co-lead counsel): Consumer fraud class action alleging defendants violated consumer protection statutes by improperly charging consumer credit cards for a wholesale buy-club membership without authorization

- *Sanford v. West Corporation*, Case No. GIC805541, Superior Court of California, County of San Diego (co-lead counsel): Consumer fraud class action alleging

EXHIBIT 13

defendants violated consumer protection statutes by improperly charging consumer credit cards for a wholesale buy-club membership without authorization

- *Greenwald v. AmTrust Financial Corporation*, Case No. CV 09 681596 (Cuyahoga Ct. Comm. Pl., Ohio): Consumer class action in which plaintiffs alleged defendant suspended customers' home equity lines of credit improperly and in breach of contract

- *Kaye v. Southwest Airlines Co.*, Case No. 05-00712, District Court of Dallas County, Texas:  Consumer class action in which plaintiffs allege that defendant improperly retained departure fees charged to consumers when travel was not commenced

- *In re Friedman's, Inc.*, U.S.D.C. Case No. 03-3511, N.D. Georgia (cooperating counsel): Securities fraud class action alleging defendants violated federal securities law

- *In re Human Tissue Litigation*, U.S.D.C. Case No. 06-cv-135, MDL Docket No. 1763, New Jersey (MDL Case Executive Committee):  Class action for product defect, battery and fraud in the harvesting, processing and sale of human tissue used in transplant procedures

- *Tyler v. Alliance Gaming Corp.*, U.S.D.C. Case No. CV-S-04-0821, S.D. Nevada (cooperating counsel):  Securities fraud class action alleging defendants violated federal securities law

- *Staehr v. Robert D. Walter, et al.*, Case No. 02-CVG-011-639 (Delaware Ct. Comm. Pl., Ohio) (co-lead counsel): Shareholder derivative claims for alleged breach of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment by officers and directors of Cardinal Health

- *Leonard v. UNUMProvident Corporation*, Case No. 04-1337, Hamilton County Chancery Court, Tennessee (lead counsel):  Shareholder derivative claims for alleged breach of fiduciary duty, abuse of control, gross mismanagement, waste of corporate assets and unjust enrichment by the directors and officers of UNUMProvident Corporation related to the use of alleged hidden contingent commissions and kickbacks in the sale of group insurance

- *Kaye v. Koninklijke Ahold, NV dba Royal Ahold*, U.S.D.C. Case No. 03-cv-1411, S.D. New York (cooperating counsel):  Securities fraud class action alleging defendants violated federal securities law

- *In re Carbon Black Antitrust Litigation*, U.S.D.C. Master Docket No. 03-cv-10191, Massachusetts (cooperating counsel/discovery team)

- *In re FirstEnergy Corp. Securities Litigation*, U.S.D.C. Case No. 03-cv-1684, N.D. Ohio (local trial counsel):  Securities fraud class action alleging defendants violated federal securities law

- *In re Empyrean Bioscience, Inc. Securities Litigation*, U.S.D.C. Master File No. 02-cv-1439, N.D. Ohio (liaison and local trial counsel):  Securities fraud class action alleging defendants violated federal securities law

- *Nugent v. AFC Enterprises, Inc.*, U.S.D.C. Case No. 03-cv-817, N.D. Georgia (cooperating counsel): Securities fraud class action alleging defendants violated federal securities law

- *In re Scrap Metal Antitrust Litigation*, U.S.D.C. Case No. 02-cv-0844, N.D. Ohio, (cooperating counsel on discovery team): Plaintiffs allege that scrap dealers unlawfully conspired to fix the price of scrap metal

- *Miller v. Intercept, Inc.*, U.S.D.C. Case No. 03-cv-0704, N.D. Georgia (cooperating counsel): Securities fraud class action alleging defendants violated federal securities law

- *Menear v. Mark Nutritionals, Inc. dba Body Solutions*, Case No. 459890, Cuyahoga Ct. Comm. Pl., Ohio/U.S. Bankruptcy Court No. 02-54469, W.D. Texas (lead counsel in Ohio prior to removal to federal bankruptcy court). Consumer fraud class action alleging defendants' product was ineffective and did not provide any benefit as promised

- *In re Advanced Lighting Technologies, Inc. Securities Litigation*, U.S.D.C. Master File No. 99-cv-836, N.D. Ohio (liaison and local trial counsel): Securities fraud class action alleging defendants violated federal securities law

- *Iron Workers Local Union No. 17 Insurance Fund v. Phillip Morris, Inc.*, U.S.D.C. Case No. 97-cv-1422, N.D. Ohio (liaison and local trial counsel)

EXHIBIT 13
Page 530

**JACK LANDSKRONER, ESQ.**
**LANDSKRONER • GRIECO • MERRIMAN, LLC**
1360 West 9th Street, Suite 200
Cleveland, Ohio 44113-1254
jack@lgmlegal.com

CURRICULUM VITAE

## PERSONAL

Born  November 14, 1967, Cleveland, Ohio;  Married:  Heather Ann Landskroner
Four children

## EDUCATION

1989   B.A., Boston University (Law and Social Relations)
1992   J.D., Cleveland Marshall College of Law

## BAR ADMISSIONS/CERTIFICATIONS

1992   Admitted to the Ohio Bar
1992   Admitted to the Northern District of Ohio Federal Trial Bar
1994   Admitted to United States Court of Appeals, Sixth Circuit
1999   Board Certified Trial Advocate by the National Board of Trial Advocacy
        (NBTA) (not recognized by Ohio Commission of Certification of Attorney
        Specialists)
2002   Admitted to the United States Supreme Court
2003   Admitted to the United States Court of Federal Claims
2004   Admitted to the Southern District of Ohio Federal Trial Bar
2007   Admitted to the United States Court of Appeals, Ninth Circuit
2012   Board Certified Civil Pretrial Practice Advocate (NBCPPA)

## EMPLOYMENT

2003 - Present: Principal, Landskroner • Grieco • Merriman, LLC
    *Attorney and Advocate practicing Civil Litigation; class action litigation, wrongful*
    *death, product liability, personal injury, medical malpractice, insurance law, with special*
    *interest in the representation of children.*
1997 - 2002:   Managing Member, The Landskroner Law Firm, Ltd.
1992 - 1996:   Associate, Landskroner & Phillips Co., L.P.A.
1989 - 1992:   Landskroner & Phillips Co., L.P.A.

## PROFESSIONAL MEMBERSHIPS/APPOINTMENT/CERTIFICATES/HONORS

○   Recipient of the Courage Award by the Ohio Association for Justice (2014)
○   Selected as Ohio Litigation Star - Benchmark plaintiff from the publishers of
     Institutional Investor (2013 - 2014)
○   Cleveland Metropolitan Bar Association (2012 -   )
○   Selected as one of Cleveland's "Top Rated Lawyers" by Martindale Hubbell
     (2012 - 2013)
○   Selected by Inside Business Magazine as a 2010 Leading Lawyer honoring the
     top one percent of Northeast Ohio's attorney
○   Outside Counsel to the Attorney General of the State of Ohio (2009 - 2015)
○   AV-rated attorney (highest rating awarded Martindale Hubbell)
○   Named to Ohio SuperLawyers (2004 - 2015)
     Recognized as one of Ohio's Top 100 lawyers

EXHIBIT 13

- Life Member: Eighth Judicial District of Ohio Conference
- American Association for Justice (AAJ)
- Ohio Association for Justice (OAJ)
- Public Justice Foundation (PJ) – Elected President (2012 – 2013); Executive Committee Member (2006 – ); Elected to The Board of Directors (1999 – ) "State of Ohio Coordinator" (1994 – )
- Federal Bar Association: Northern District of Ohio Chapter (2009 – )
- Kent State University Paralegal Program Advisory Committee (1999 – )
- Cuyahoga County Guardian Ad Litem (1999 – )
- Cleveland Academy of Trial Attorneys (CATA)
- Elected to the Board of Directors (2002 – 2005)(2006 – 2009)(2009 – 2012)
- 2007 Recipient of the CATA President's Award for exceptional services
- Recipient of the President's Award for providing National Leadership (2013)
- Cuyahoga County Bar Association (2004 – 2005)
- Ohio State Bar Association (1992 – 2001)
- Cleveland Marshall College of Law, Alumni Association (Life Member)
- Named to InsideBusiness 2009
- Recognized as one of Northeast Ohio's Top Attorneys

## LECTURER/COMMENTATOR

- Ohio Association of Justice (OAJ): "Consumer Law Update: Identifying " (2014)
- National Association of Trial Lawyers – Executives (NATLE) 2013: Public Justice and Public Interest Litigation (San Francisco, CA)
- Baldwin Wallace University: Guest lecturer "Business Ethics and Legal Accountability of Multinational Corporations" (2012 – 2013)
- Business Tort Seminar "Shareholder Derivative Actions" (2011) (Ohio Association for Justice)
- Akron Law School: Guest speaker "Public Interest Work as a Private Practitioner" (2011)
- Federal Bar Association, Northern District of Ohio: "Update on Class Actions" Discussion Panel (2010)
- Ohio Association of Justice (OAJ): "Class Securities & Derivative Actions" (2008)
- Cleveland Academy of Trial Attorneys (CATA): "Consumer Class Action Litigation" (2004)
- Cleveland Academy of Trial Attorneys (CATA): "Employment Intentional Tort" (2002)
- National Counsel of Jewish Women: Child Advocacy: "Love A Kid, Lock A Gun" (2001)
- Ohio Academy of Trial Lawyers (OATL) Medical Negligence Seminar – Mediation in the Medical Malpractice Case (1999)
- 850 Radio Mike Solomon Show: "Nursing Homes Negligence" (1999)
- Faces of the Future Child Advocacy National Seminar; "Focus Groups" Atlanta, GA (1999)
- WJW TV 8 Cleveland: Tort Reform: (1997)
- International Society of Refractive Surgeons; Mid-Summer Symposium: "The Role of FDA in Malpractice Liability" Minneapolis, MN (1996)
- WNPR/WCPN National Public Radio: Guest commentator "House Bill 350-Tort Reform" (1996)
- Case Western University School of Law "Public Interest Law" (1996)
- WERE Radio "Bob Zashin and the Law" guest appearance "Consumer Law", "Product Liability Law" (1994) – (1999)
- WJW TV 8 Cleveland: Appearance as Guest Commentator (1995)
- Francis Payne Bolton School of Nursing, Case Western Reserve University: "Legal Aspects of Nurse Midwifery (The Federal Dumping Statute)" (1994)
- Fraternal Order of Police George Murray (Lodge 67): "Labor Relations" (1994)
- University School:  Constitutional Law Classes; Business Profession Classes (1993-1995)

EXHIBIT 13

## PUBLICATIONS

- Bar Journal (Cleveland Metropolitan Bar Association): "Arbitration and the Effects of the U.S. Supreme Court's *Conception* Case" (January 2013) Co-author F. Paul Bland
- Cleveland Academy of Trial Attorneys: News: "Bad Faith Insurance Practices" (Summer 2006) Co-author Rebecca Castell
- Ohio Trial (Ohio Academy of Trial Lawyers), "Gender Injustice and Tort Reform" (Vol. 14, Issue 2), co-author David M. Beninger (Summer 2004)
- Cleveland Academy of Trial Attorneys: News: "Class Action Litigation" (Summer 2003)
- Ohio Trial (Ohio Academy of Trial Lawyers), "Fighting Federal Preemption" (Volume 13, Issue 2), co-authors Arthur H. Bryant and Leslie A. Brueckner
- Ohio Trial (Ohio Academy of Trial Lawyers), "Fighting Unnecessary Court Secrecy" (Volume 13, Issue 1)
- Ohio Lawyer, "U.S. Supreme Court Allows Fee-Silent Arbitration Clauses" (March/April 2001, Volume 15, No. 2)
- The Cleveland Bar Journal: "Federal Pre-emption:  *Geier* and its implications" (February 2001)
- Guest Columnist: Chagrin Valley Times (2005 -  )
- Contributor Opinion Editorials "The Columbus Dispatch" (1997-  )
- Contributor Opinion Editorials "The Daily Legal News" (1995-  )
- Contributor to the "Cleveland Plain Dealer" Opinion Editorials (1994-  )
- Contributor to Ohio Academy of Trial Lawyers "Advisory" (1995-  )
- Columnist:  Link Magazine, The Legal Eagle  "Prenuptial Agreements, A Thing That Makes You Go Hmm" (1992)

## NON-PROFESSIONAL MEMBERSHIPS AND AFFILIATIONS

- Founder:  The Landskroner Foundation for Children: a children's advocacy organization
- Reach Out America: Non-profit organization created in 2005 to assist hurricane victims
- Rotsky Foundation for Mentors
- Boston University Alumni Representative
- Sigma Alpha Mu Fraternity
- The Club at Key Center
- Stand For Children
- United Cerebral Palsy
- "Meals on Wheels" volunteer (1992 - 2001)
- Cleveland City Club (1997-2001)
- Big Brothers/Big Sisters of Cleveland - Division of Youth Visions (1992-1995)

EXHIBIT 13
Page 533

Doc# 1 Page# 206 - Doc ID = 1755355499 - Doc Type = Case File - Public

**PAUL GRIECO, ESQUIRE**
**LANDSKRONER • GRIECO • MERRIMAN, LLC**
1360 West 9th Street, Suite 200
Cleveland, Ohio  44113-1254
paul@lgmlegal.com

## CURRICULUM VITAE

### PERSONAL

Born   April 8, 1964 Brooklyn, New York
1989   Admitted to New York Bar
1994   Admitted to United States District Court - Eastern and Southern Districts of New York
1995   Admitted to Ohio Bar
1998   Admitted to United States District Court - Northern District of Ohio
2003   Admitted to United States District Court - Southern District of Ohio

### EDUCATION

1986   B.A., University of Vermont
1989   J.D., Case Western Reserve University

### EMPLOYMENT

2003- Present:   Principal - Landskroner • Grieco • Merriman, LLC
Civil Litigation, wrongful death, product liability, personal injury, medical malpractice, insurance, contract, class action litigation, business litigation, and criminal defense.

1995 - 2002:   Landskroner Law Firm, Ltd.
Civil Litigation, wrongful death, product liability, personal injury, medical malpractice, insurance, contract, class action litigation, and criminal defense.

1989-1995:   New York Legal Aid Society - Criminal Defense Division
Criminal misdemeanor and felony case load, representing clients at all court appearances including arraignments, grand jury proceedings, pre-trial hearings and trial.

### PROFESSIONAL MEMBERSHIPS

- Ohio Association for Justice (OAJ) – President Elect
- Ohio State Bar Association (OSBA)
- American Association for Justice (AAJ)
- The Justinian Forum
- The Cleveland Academy of Trial Attorneys (CATA) – Board of Directors 2008 - Present

EXHIBIT 13

## PUBLICATIONS AND LECTURES

- Fraternal Order of Police Labor Law Workshop – Annual Speaker
- Cleveland Communicator – Fraternal Order of Police Newsletter: "Your Rights as a Plaintiff"
- Ohio State Bar Association – Basics of Civil Litigation Seminar
- National Business Institute Seminars
  - Adjusting the Automobile Injury Claim in Ohio
  - How to Win Your Next Soft Tissue Injury Trial
  - How to Litigate Your First Civil Trial in Ohio
- Cleveland Bar Association - New Lawyer Training Program
- The Cheshire Cheese Club of Cleveland - The Truth Behind Tort Reform
- Cleveland Clinic Sports Medicine Course - Medical Malpractice Tort Reform in Ohio

## RECOGNITION AND AWARDS

- Ohio Super Lawyer 2010 – 2015
- Ohio Association for Justice Distinguished Service Award – 2011
- AV Peer Rating – Martindale-Hubbell

EXHIBIT 13

(Page 209 of 338)

**TOM MERRIMAN, ESQ.**
LANDSKRONER · GRIECO · MERRIMAN, LLC
1360 West 9th Street, Suite 200
Cleveland, Ohio 44113-1254
tom@lgmlegal.com

## CURRICULUM VITAE

### EDUCATION

Harvard Law School, J.D., cum laude, 1988

University of Notre Dame, B.A., Economics, *magna cum laude, Phi Beta Kappa,* 1984

### JOURNALISM EXPERIENCE

**WJW-TV,** Investigative Reporter, Cleveland, OH (2001-present)

**WEWS-TV,** Investigative Reporter, Cleveland, OH (1995-2001)

### JOURNALISM HONORS

**Alfred I. DuPont-Columbia University silver baton** (2006)

**I.R.E. Medal, Investigative Reporters & Editors** (2005)
(Finalist: 2001, 2002, 2004)

**National Headliner Awards**
Health/Science Reporting (2008)   Investigative Reporting (2006)
Investigative Reporting (2005)       Continuing Coverage (2005)
Public Service (1998)

**Poynter Institute,** Ethics Fellow, St. Petersburg, Fl, 2006

- Thirty (30) Emmy Awards
- Five (5) Regional Edward R. Murrow Awards
- Runner Up, National Press Photographers Association (NPPA) Special Award for Reporting (2007)
- National Emmy Award Nominations for Investigative Reporting (2002, 2007)
- Finalist, IRE Tom Renner Award (2002)
- Finalist, Jack R. Howard Award (2005)
- Best Reporter in Ohio, Society of Professional Journalists (1998, 1999, 2000, 2005)

### LEGAL EXPERIENCE

Ohio Attorney General Lee I. Fisher, Cleveland, OH (1991-1994)
Deputy Ohio Attorney General (1993-1994)
Managing Attorney, Cleveland Office (1991-92)
Attorney General Executive Staff (1991-1994)

Hahn, Loeser & Parks, Litigation Associate, Cleveland, OH (1989-1990)

EXHIBIT 13
Page 536

Doc# 1 Page# 209 - Doc ID = 1755355699 - Doc Type = Case File - Public

**United States District Court,** Judicial Clerkship, Cleveland, OH (1988-1989)
    Honorable Frank J. Battisti, Chief Judge, U.S. District Court, Northern District of Ohio

**TEACHING EXPERIENCE**

**Poynter Institute,** Visiting Faculty, Enterprise & Investigative Reporting, St. Petersburg, Fl, 2005

**Investigative Reporters & Editors, National Conference Speaker,** 2001, 2003, 2005, 2006, 2007

- Lectured on hidden cameras, confrontation interviews, and investigative reporting

**Harvard Negotiation Project,** Teaching Assistant, Cambridge, MA (1987-1988)
    Assisted Professor Roger Fisher, author of "Getting to Yes"

EXHIBIT 13

**DREW T. LEGANDO, ESQ.**
LANDSKRONER • GRIECO • MERRIMAN, LLC
1360 West 9th Street, Suite 200
Cleveland, Ohio 44113-1245
drew@lgmlegal.com

## CURRICULUM VITAE

### PERSONAL

Born · July 10, 1982, in Sandusky, OH
2008   Admitted to the Ohio Bar
2008   Admitted to the Northern District of Ohio Federal Bar
2010   Admitted to the Southern District of Ohio Federal Bar

### EDUCATION

2001   Graduate of Huron High School
2005   B.A., The George Washington University (International Affairs & Religion)
2008   J.D., Cleveland-Marshall College of Law
   • St. Petersburg, Russia, Summer Law Program (2006)

### EMPLOYMENT

2008-Present: Associate, Landskroner • Grieco • Merriman, LLC
*Civil justice attorney practicing in litigation and appeals, including: consumer class actions, securities and derivative cases, insurance litigation, personal injury, medical malpractice, premise liability, and small business representation.*

2008   Law Clerk, Landskroner • Grieco • Merriman, LLC
2007   Extern, United States District Court for the Northern District of Ohio
         Chambers of the Hon. Ann Aldrich
2006   Intern, Legal Department, Firelands Regional Medical Center

### PROFESSIONAL ASSOCIATIONS

Ohio State Bar Association
Ohio Association for Justice
   • Amicus Committee (2010)

EXHIBIT 13

Adeladi (Ladi) Williams
LANDSKRONER • GRIECO • MERRIMAN, LLC
1360 West 9th Street, Suite 200
Cleveland, Ohio 44113-1254
ladi@lgmlegal.com

## CURRICULUM VITAE

### PERSONAL

Born November 1, 1980, Warren, Ohio
2007: Admitted to Ohio Bar
2008: Admitted to United States District Court, Northern District of Ohio
2009: Admitted to United States Bankruptcy Court, Northern District of Ohio

### EDUCATION:

Kent State University, Kent, Ohio
    B.A., *Cum Laude*, English, August 2003
    - Golden Key International Honour Society

Cleveland-Marshall College of Law, Cleveland State University, Cleveland, Ohio
    J.D. awarded: December, 2006
        Moot Court Team: *Member, Moot Court Board of Governors*
        Legal Writing Assistant

### EXPERIENCE:

**Landskroner Grieco Merriman LLC- Associate**            **2015-present**

*Practicing Civil litigation and appeals, including: insurance litigation, personal injury, medical malpractice, premise liability, business and family immigration, consumer class actions, securities and derivative cases, and small business representation*

2009-2014:     *Practiced Personal Injury law, Chapter 7 and 13 Bankruptcy law, Immigration Law, Consumer law, employment law and contract drafting and review at a Cleveland law firm.*

2007-2009:     *Practiced civil litigation representing creditors in matters dealing with bank loans and other secured transactions, commercial and retail collections, insurance subrogation, landlord-tenant disputes, and foreclosures at a Cleveland law firm.*

2007:     *Practiced immigration law including drafting petitions and related documents for business related immigration matters including employer letters of support, PERM*

*applications, and labor certifications. Also prepared family-based immigration petitions, worked on deportation defense cases, including motions to terminate and BIA Appeals at a Cleveland law firm.*

2006:  **U.S. District Court of the Northern District of Ohio, Eastern Division**
*Served as a Judicial extern to Chief Judge Solomon Oliver, Jr.*

**PUBLISHED CASES**

*Dorsey v. City of Cleveland, et al.,* 8th Dist. No. 101467, 2015 Ohio 1142 (2015)

**PROFESSIONAL ASSOCIATIONS**

Ohio State Bar Association
Ohio Association for Justice
Cleveland Academy of Trial Attorneys
Legal Aid Society of Cleveland: Member, Volunteer Lawyer Program

EXHIBIT 13

# EXHIBIT 3
# TO DECLARATION OF
# JACK LANDSKRONER

LAW OFFICES OF
# MICHAEL J. LIBMAN
16133 VENTURA BOULEVARD
SUITE 1200
ENCINO, CALIFORNIA 91436

TEL: (818) 995-7300
FAX: (866) 644-6764

WWW.LIBMANLAW.COM

Law Offices of Michael J. Libman is a general litigation and trials firm, formed in 2003, representing individuals, businesses, groups and classes of persons throughout California in the areas of personal injury, products liability, commercial litigation toxic torts consumer protection, insurance bad faith and wage and hour violations. The Libman firm is known for its tenacious and skillful representation which allowed it to recover millions of dollars in settlements and verdicts for its clients. As a result, the Libman firm is often called upon by other lawyers and firms to co-counsel with it on a variety of cases.

The Libman firm has also successfully co-counseled and co-ventured with the firm of Kingsley & Kingsley, based out of the same office suite as the Libman firm, in wage and hour class actions and other labor related matters.

The founding principal of the Libman firm, is Michael J. Libman, Esquire, admitted to practice in California 2002 and United States District Court Central District. Education: UCLA, BS 1997; Southwestern School of Law, J.D. 2000.

## A. NOTABLE RECENT CASES

*Hendelman v. Starwood Capital Group LLC and Polaris Industries, Inc.,* Mono County Superior Court Case No. CV 120050. In 2010 a young married couple rented a snowmobile from Mammoth Mountain resort as part of a guided tour. The snowmobile lost control and veered into a tree catapulting the young wife, who was operating the snow mobile, head on into a tree causing catastrophic injuries including multiple skull fractures. The local authorities and California Highway Patrol blamed the young wife for losing control of the sled. The plaintiffs alleged that the Polaris snowmobile was defective and the tour operator was reckless in its maintenance of the sled and operation of the tour. After four years of litigation, the Libman firm, and co-counsel, forced the defendants to agree to a confidential seven figure settlement a week into jury trial.

*Confidential vs Confidential National Restaurateur,* 2013, Los Angeles Superior Court Case, wherein the Libman firm obtained a confidential settlement in the million dollar range for an elderly woman that fell next to a "Wet Floor" Sign as alleged by defendants. Mr. Libman persuaded the defendants that the plaintiff's subsequent heart surgery was caused by the injuries suffered in the fall which included a mild traumatic brain injury.

EXHIBIT 13

Law Offices of Michael J. Libman
Page 2

*Viera v May,* San Bernardino Superior Court Case No. CIVRS 811457, the Libman firm obtained a $4,150,000 settlement for three individuals that suffered mild cognitive impairment stemming from carbon monoxide exposure caused by a faulty furnace.

**B.** **WAGE AND HOUR AND CONSUMER CLASS ACTIONS (CO-COUNSELED WITH KINGSLEY AND KINGSLEY)**

Since 2005 the Libman firm successfully collaborated and co-counsel with Kingsley & Kingsley in class actions and consumer protection litigations. Below is a list of some of the more notable cases:

**Blue Cross**
$4,700,000 for denial of requested back surgeries regarding the Pro Disc L device. (2013)

**National Video Store Chain**
$5,500,000.00 settlement for employees denied state mandated meal and rest breaks

**Longs Drug Store**
$11,000,000.00 settlement for misclassified managers and assistant managers

**National Italian Restaurant Chain**
$4,000,000.00 settlement for servers denied state mandated meal and rest breaks

**National Restaurant Chain**
$4,000,000.00 settlement for servers denied state mandated meal and rest breaks

**National Restaurant Chain**
$1,300,000.00 settlement for employees denied state mandated meal and rest breaks

**National Seafood Restaurant Chain**
$1,200,000.00 settlement for employees denied state mandated meal and rest breaks

**European Investment Bank**
$44,000,000.00 settlement for misclassified stock brokers

**National Cable/Satellite Installation Company**
$7,200,000 settlement for cable installers who were not reimbursed for

EXHIBIT 13

 

Law Offices of Michael J. Libman
Page 3

expenses and denied state mandated meal breaks and rest breaks

**National Motel Chain**
$4,250,000.00 settlement for employees denied state mandated meal and rest breaks and required to pay check cashing fees

**National Retailer**
$3,500,000.00 settlement for employees denied state mandated meal and rest breaks

**National Italian Restaurant Chain**
$2,750,000.00 settlement for servers denied state mandated meal and rest breaks

**National Restaurant/Bar Chain**
$1,000,000.00 settlement for employees denied state mandated meal and rest breaks and forced to unlawfully pool their tips

**National Steak House Chain**
$1,625,000.00 settlement for servers denied meal and rest breaks

**Large National Bank**
$8,500,000.00 settlement for employees denied overtime pay

**National Retail Chain**
$6,500,000.00 settlement for employees denied their state mandated meal and rest breaks and unpaid wages

**National Delivery Driver Company**
$4,500,000.00 settlement for delivery drivers denied overtime pay

**National Software Company**
$4,000,000.00 settlement for misclassified designers and producers of a gaming company

**National Shoe Store Chain**
$3,500,000.00 settlement for employees denied state mandated meal and rest breaks

National Steak House Chain
$2,000,000.00 settlement for employees denied state mandated meal and rest breaks

National Chain Restaurant
$3,500,000.00 settlement for employees denied state mandated meal and rest breaks

National Pharmaceutical Company

EXHIBIT 13
Page 544

 

Law Offices of Michael J. Libman
Page 4

$1,700,000.00 settlement for misclassified drug representatives

**National Restaurant Chain**
$1,700,000.00 settlement for employees misclassified as managers or assistant managers

**National Home Builder**
$1,500,000.00 settlement for misclassified model home sellers

**International Supplier of Food for Stadiums, Arenas, Campuses, and Schools**
$1,500,000.00 settlement for employees denied state mandated meal and rest breaks

**National Cell Phone Provider**
$2,800,000.00 settlement for employees denied meal and rest breaks and forced to pay check cashing fees

**National Inventory, Merchandising, and Staffing Company**
$2,050,000.00 settlement for employees forced to pay checking cashing fees

**National Chicken Fast Food Chain**
$2,500,000.00 settlement for employees denied state mandated meal and rest breaks

**National Auto Parts Dealer**
$2,600,000.00 settlement for employees denied state mandated meal and rest breaks and overtime pay

**International Furniture Retailer**
$3,750,000.00 settlement for employees denied state mandated meal and rest breaks

**National Home Builder**
$1,300,000.00 settlement for misclassified model home sellers

**National Media Researcher**
$1,800,000.00 settlement for employees forced to pay check cashing fees, denied overtime, and denied minimum wage

EXHIBIT 13

1

### ELECTRONIC PROOF OF SERVICE

2 STATE OF OHIO, COUNTY OF CUYAHOGA

3       I am a paralegal with Landskroner Grieco Merriman, LLC in the County of Cuyahoga, State of Ohio.  I am over the age of 18 and not a party to the within action.  My business address is 1360 West
4 9th Street, Suite 200, Cleveland, Ohio 44113.

5       On August 17, 2015, I served the foregoing document(s) described as **DECLARATION OF JACK LANDSKRONER IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY**
6 **APPROVAL** on the interested parties in this action as follows:

7       **BY ELECTRONIC SERVICE VIA FILE & SERVEXPRESS:** In accordance with the Court's Order Authorizing Electronic Service governing Case No. BC565618 and related matters
8 requiring all documents to be served upon interested parties via the File & ServeXpress Service system.

9       I declare under penalty of perjury under the laws of the State of California that the above is
10 true and correct.

11       Executed on August 17, 2015, at Cleveland, Ohio.

12

13

14       Debra L. Spaller

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PROOF OF SERVICE

EXHIBIT 13
Page 546

Doc# 1 Page# 219 - Doc ID = 1755355499 - Doc Type = Case.c