ROGERS JOSEPH O'DONNELL
Merri A. Baldwin (State Bar No. 141957)
mbaldwin@rjo.com
John G. Heller (State Bar No. 129901)
jheller@rjo.com
Lauren B. Kramer (State Bar No. 259821)
lkramer@rjo.com
311 California Street
San Francisco, California 94104
Telephone: 415.956.2828
Facsimile: 415.956.6457

Attorneys for Defendants
MICHAEL J. LIBMAN and LAW
OFFICES OF MICHAEL J. LIBMAN
APC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS BRADSHAW, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF LOS ANGELES, a municipal entity; MICHAEL FEUER, in his individual and official capacity; JAMES CLARK, in his individual and official capacity; THOMAS PETERS, in his individual and official capacity; THE LANDSKRONER LAW FIRM, LTD. dba LANDSKRONER GRIECO MERRIMAN, LLC, a limited liability company; JACK LANDSKRONER, an individual; LAW OFFICES OF MICHAEL J. LIBMAN APC, a California Professional Corporation; MICHAEL J. LIBMAN, an individual,<br><br>Defendants. | Case No. 2:19-CV-06661-VAP (JCx)<br><br>**LIBMAN RESPONSE BRIEF REGARDING COURT'S INHERENT AUTHORITY TO STAY ACTION**<br><br>Date:  March 16, 2020<br>Time:  2:00 p.m.<br>Dept.:  Courtroom 8A<br>Judge:  Virginia A. Phillips<br><br>Trial Date:  Not set |

## I. INTRODUCTION

The Court is entitled to invoke its inherent authority to stay the present litigation pending resolution of the superior court's post-judgment proceedings in *Jones*. Bradshaw's argument that the *Colorado River* standard is the only one that can be applied in this context, and has the effect of divesting district courts of their inherent stay power under *Landis* in federal/state parallel litigation, derives no support from Ninth Circuit authority. Although district court holdings are not uniform, many courts—including those in the Central District—have directly or effectively rejected the argument Bradshaw advances, instead treating the *Colorado River* and *Landis* tests as independent grounds on which they may stay federal proceedings pending resolution of a state action.

This Court is thus free to retain and assert its inherent stay authority, and it should exercise that authority here. The underlying *Jones* action is, after all, the *subject* of Bradshaw's federal lawsuit, and until its post-judgment proceedings are resolved, Bradshaw's claims for relief represent a moving target, subject to change (or evisceration) based on whatever might happen below. Moreover, the class Bradshaw seeks to represent here is the *Jones* class itself, and he and other class members are represented in *Jones* by class counsel authorized by the superior court to conduct discovery, take depositions, evaluate the results of a parallel investigation conducted by a court-appointed special master, and—critically—seek whatever additional relief he believes the class is due. The likelihood of duplication in judicial and party resources absent a stay is therefore unavoidable. And because Bradshaw can show no cognizable harm from delay, if any there is, the balance tips decidedly in favor of a stay.

/ / /

/ / /

/ / /

/ / /

Page 1
CASE NO: 2:19-CV-06661-VAP (JCx) LIBMAN'S RESPONSE TO SUPPLEMENTAL BRIEFING RE STAY
507805.6

## II. ARGUMENT

### A. The Court has inherent authority to stay the instant action pending resolution of the ongoing state court proceedings.

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936). A district court "may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case. This rule … does not require that the issues in such proceedings are necessarily controlling of the action before the court." *Leyva v. Certified Grocers of California, Ltd.*, 593 F.2d 857, 863–64 (9th Cir. 1979).

Relying heavily on out-of-circuit authority, Bradshaw argues that *Colorado River* bars this Court from exercising its inherent stay authority where the parallel litigation involves a state court action. In so arguing, Bradshaw fails to acknowledge that the Ninth Circuit has not adopted such a limitation, and that many district courts, including in the Central District, have rejected this theory and invoked *Landis* to stay federal litigation pending the outcome of state court action.

For example, in *Chen v. St. Jude Medical, LLC*, 2017 WL 8220441 (C.D. Cal. June 5, 2017), St. Jude Medical initiated an action against Chen in Minnesota state court, alleging attempts to steal proprietary information, resources and personnel. A few months later, Chen filed suit against St. Jude in California for wrongful termination and breach of contract. After removing the California case to federal court, St. Jude moved under *Colorado River* to stay the federal action pending resolution of the state court action, in which Chen had filed compulsory counter-claims that mirrored his federal court claims.

Instead of evaluating the stay request under *Colorado River,* the court "instead cho[se] to exercise its discretion to stay this matter pursuant to *Landis* and

*Leyva.*" *Id.* at *3, n.1. "Despite the existence of the more narrow *Colorado River* abstention doctrine, the Ninth Circuit continues to 'recognize the importance of the district court having the ability to control its own docket, particularly in this time of scarce judicial resources and crowded dockets' through a *Landis* stay." *Id.* (citing *Lockyer v. Mirant Corp.,* 398 F. 3d 1098, 1112 (9th Cir. 2005)).

Weighing the various factors under *Landis,* the district court concluded that a stay was warranted. The Minnesota state court action was initiated first; it involved the same parties, the same factual events "and many of the same legal questions," and there was active discovery in the state action. *Id.* at *3. Staying the federal action while the state court action proceeded would thus "simplify questions of fact, issues of proof, and many of the critical legal questions." *Id.* There was little prejudice to Chen, since he was seeking the same relief in the state court action, and would be entitled to pursue any available additional relief in the district court once the stay was lifted. *Id.* at *4. And without a stay, the parties would be forced to litigate concurrently in two "proceedings at vastly different stages yet involving the same facts and may of the same legal issues." *Id.* This would lead to a "duplication of effort and waste of judicial resources, and has the potential for inconsistent legal findings and judgments." *Id.*

A similar rejection of Bradshaw's proposed limitation on courts' inherent discretion to stay proceedings occurred more recently in *Aetna Inc. v. Whatley Kallas, LLP*, 2019 WL 4137614 (C.D. Cal. July 9, 2019). There, Aetna had settled an initial class action, but the envelopes in which class notice was sent exposed the HIV status of Aetna's policyholders. That led to a subsequent class action brought in the Eastern District of Pennsylvania, one that also settled. Aetna then brought suit against class counsel for the initial class, seeking indemnity and contribution, both in the Eastern District of Pennsylvania and in Los Angeles superior court. After the federal action was transferred to this District, the attorneys moved for a stay pending the results of a state court appeal from the anti-SLAPP

motion they had won in superior court, invoking *Colorado River* or, alternatively, the district court's inherent authority.  Aetna argued that no stay was available under *Colorado River* and that that the court's inherent authority is limited and does not allow a stay of this action." *Id.* at *2.  The court disagreed, finding that a stay was warranted under *both* the *Colorado River* doctrine and its inherent authority. *Id.* at *3-*5.

The holding of another Central District court confirms a corollary to *Aetna*, namely that under certain circumstances, a stay may not be warranted under *Colorado River* but will be under *Landis*.  In *Beatbox Music Pty., Ltd. v. Labrador Entm't, Inc.*, 2018 WL 5974317 (C.D. Cal. Apr. 10, 2018), the defendant moved under *Colorado River* for an order staying the federal litigation pending the results of litigation in New Zealand.  *Id.* at *1.  The district court held that defendant had not satisfied the *Colorado River* standard, but nonetheless granted a stay relying upon its inherent power.  *Id.* at *3-*6.

Other district courts have similarly applied *Colorado* and *Landis* as independent bases for staying a federal action pending the results of state court litigation, rejecting the notion that the former abrogates the latter.  For example, in *United Specialty Ins. Co. v. Bani Auto Group, Inc.,* 2018 WL 5291992 (N.D. Cal. Oct. 23, 2018), the district court issued a stay under the court's inherent *Landis* authority after finding the state court action insufficiently parallel to justify a *Colorado River* stay.  *Id.* at *4-*5.  Months later, the court in *Integon Preferred Ins. Co. v. Camacho,* 2018 WL 6620342, at *3-*12 (E.D. Cal. Dec. 18, 2018) did the same.  *See also Aurionpro Solutions, Inc. v. Saicon Consultants, Inc.,* 2018 WL 4191494, at *1 (N.D. Cal. Feb. 6, 2018*)* (court granted stay under *Landis* after movant sought stay under both *Landis* and *Colorado River)*; *Technology Licensing Corp. v. Thomson, Inc.*, 684 F. Supp. 2d 1206, 1208 (E.D. Cal. 2010) ("[t]he power of courts to control their dockets by staying proceedings exists independently of whether the *Colorado River* factors weigh in favor of stay").

There is no denying that other courts have reached different results. But one case Bradshaw cites is useful in distinguishing the situation presented here. *In AIIRAM LLC v. KB Home*, 2019 WL 3779185 (N.D. Cal. Aug. 12, 2019), the court harmonized its holding with *Bani, supra,* by noting that, unlike the procedural scenario before it, *Bani* "did not involve parallel federal and state actions, but rather an insurance coverage action in federal court and an underlying state court action that was the subject of the coverage dispute." *Id.* at *7. This case presents a similar scenario: the *Jones* action is "the subject" of the present action, and until it is resolved, the full and final contours of that "subject" are purely conjectural.[1]

### B. The Court should exercise its inherent authority to stay the present action pending resolution of the *Jones* proceedings.

When evaluating whether a *Landis* stay is appropriate, "the competing interests which will be affected by the granting or refusal to grant a stay must be weighed. Among those competing interests are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyer,* 398 F.3d at 1110. These factors weigh in favor of staying the present action.

#### 1. A stay would not prejudice Bradshaw or the putative class.

In *Chen,* the district court held that a stay would cause little prejudice to the plaintiff where he was "litigating compulsory counterclaims based on the

---

[1] Contrary to the implication in Bradshaw's argument, district courts continue after *Colorado River* to recognize their inherent authority to stay proceedings under *Landis* pending the outcome of a state action. In addition to those mentioned above, they include*; Helmer v. Transamerica Life Ins. Co.,* 2018 WL 5784715, at *1-*3 (N.D. Cal. Feb. 5, 2018) ("even if the Court were uncertain as to whether the *Colorado River* doctrine applied, it would nonetheless find a brief stay warranted under the Court's inherent authority")*; California River Watch v. Sweeney,* 2017 WL 4248013, at *6 (E.D. Cal. Sept. 25, 2017); and *Alila-Katita v. U.S. Bank Nat'l Ass'n,* 2017 WL 8948735, at *1-*4 (N.D. Cal. May 2, 2017); *accord Employers Ins. Co. of Wausau v. Hartford,* 2018 WL 6330425, at *6 (C.D. Cal. Dec. 3, 2018).

same alleged wrongful conduct" in the state forum, and a stay would not "unduly delay [his] ability to obtain relief for the abuses complained of in this case." *Chen*, 2017 WL 8220441, *4; *see also Aurionpro Solutions,* 2018 WL 4191494 (finding no prejudice and granting *Landis* stay where plaintiff could raise identical arguments in state court proceeding).

This situation is no different. Bradshaw is a member of the *Jones* class, and his putative class is identical the class already certified by the state court in *Jones*. FAC, ¶ 108. At the outset, therefore, the concern that "a litigant in one cause [is] compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both," is not present. *Landis,* 299 U.S. at 255.

Moreover, Bradshaw and the class are represented in the *Jones* post-judgment proceedings by new counsel, appointed in May 2019, who is charged with "protect[ing] the class and its rights," and determining "whether the settlement of the class action was fair, reasonable and adequate…." Libman RJN Exh. 7 at ¶ 4. "[A]n attempted resolution of any claim – with Court approval in addition to parties having an opportunity to be heard on the matter – is within the scope of his work." Libman RJN Exh. 9 at ¶ 1. And, critically, he is authorized to "seek appropriate relief on behalf of the class." Libman RJN Exh. 7 at ¶ 7.

Bradshaw is therefore in a position, represented by counsel with wide-ranging investigative authority, to seek relief in *Jones* for the same alleged acts of malfeasance that he sues on here. His argument that this is not possible because "the other defendants in this action are not parties to *Jones*" is misleading. The *Jones* court has asserted its jurisdiction not only over the parties, but over counsel as well, including by issuing an order to show cause why original class counsel's fees should not be disgorged. Libman RJN Exh. 11.[2]

---

[2] On January 30, 2020, the order to show cause hearing was vacated "without prejudice to the City and/or Plaintiff re-filing an application for an OSC, or similar motion for disgorgement, at a later date." Libman Supp. RJN Exh. 19. The *Jones* court did not then, nor at any other time, diverge from its position that it has

Bradshaw's argument that "it cannot be assumed that all evidence needed to take this case to trial will be collected and preserved by virtue of the events in *Jones*" is similarly flawed. Bradshaw offers no examples of evidence or testimony that may be lost will be lost, nor address the updates provided by the attorney representing him and the certified class to the *Jones* court. Kabateck reports, for example, that he has "obtained and reviewed tens of thousands of pages of documents that have been filed with the Court, produced in discovery or by Court Order; interviewed scores of individuals currently or formerly connected to the case (some individuals have been interviewed multiple times); participated in bi-weekly meetings with the court appointed monitor Paul Bender and the LADWP; responded to customer inquiries/complaints; and written several briefs at both the trial and appellate levels." Libman RJN Exh. 10 at 2. He further has served notice that he "intends on noticing the depositions of any and all individuals and PMKs of any entities who had any role in formulating, drafting, or negotiating any aspect of the settlement – even if those persons/entities were previously deposed as part of the City of LA v. PwC action." Libman Supp. RJN Exh. 18. Kabateck's updated findings report is due in April 2020. Libman Supp. RJN Exh. 15 at 7-8.

Nor, in making this evidence loss argument, does Bradshaw acknowledge the existence of a Special Master/Auditor, appointed by the *Jones* court in June 2019, who has been assigned various auditing responsibilities; is authorized to issue subpoenas, take depositions, inspect files and retain experts; and is tasked with determining "whether any unethical conduct occurred or fraud [was] perpetrated on the Court or any party through the actions or statements of any attorney or party." Libman RJN Exh. 9. The special master reports to having "assembled a team including four former federal prosecutors with a combined 130

---

jurisdiction over the parties and counsel. Bradshaw's argument that the *Jones* court lacks authority to implement the modifications or relief under consideration may be of academic interest, but does not change the fact that the *Jones* court has asserted its authority in the way it has.

years of litigation experience among them, as well as the assistance of a nationally reputed forensic investigating firm." Libman Supp. RJN Exh. 16 at 2.  He reports that he has interviewed City of Los Angeles employees, witnesses involved in *Jones* and the related cases, and witnesses with other relevant information.  *Id*. at 3-5.  The special master "anticipate[s] soon putting together a comprehensive report with point citations to the mass of data underlying our recommendations and conclusions" and providing an updated report to the court in April.  Libman Supp. RJN Exh. 17.

As a general proposition, a delay in recovering money does not constitute the type of prejudice that stands in the way of issuing a stay that is otherwise warranted.  *See, e.g., Arris Solutions, Inc. v. Sony Interactive Entertainment LLC*, 2017 WL 4536415, *2 (N.D. Cal. Oct. 10, 2017) (issuing a stay and holding that the plaintiff could not in good faith argue harm because only monetary damages, as opposed to injunctive relief, was at issue); *Bay Area Surgical Grp., Inc. v. Aetna Life Ins. Co.*, 2014 WL 2759571, at *5 (N.D. Cal. June 17, 2014) ("A delay in compensation for past harms does not equate to a strong showing of prejudice") (*citing CMAX Inc. v. Hall*, 300 F.2d 265, 268-89 (9th Cir. 1962).  That principal applies here, since Bradshaw is principally seeking money.  To the extent that Bradshaw is entitled to receive it—which he is not, particularly not from Libman—it would be either made available in *Jones* or could be obtained here following lifting of a stay.

**2.     Concurrent litigation of both actions would be hardship.**

The court in *In re American. Apparel Shareholder Derivative Litig.*, 2012 WL 9506072, at *45 (C.D. Cal. July 31, 2012) held that when "the opponent does not adduce evidence that it will be harmed by a stay ... courts have considered the moving party's burden in litigating the case to be a legitimate form of hardship".  Here, absent a stay, Libman would be force to navigate a complicated path, sued for malpractice in the present action while still counsel for the class and

reporting to the court in *Jones*. But beyond that, the burden of litigating in two forums—subject to discovery and depositions in each—would represent a massive hardship in terms of time, energy and resources. Since Bradshaw has failed to adduce valid evidence of prejudice, this hardship must be weighed in the balance, tipping the scale further towards a stay.

### 3. A stay would further the orderly course of justice.

On a critical issue in the third factor—whether there is factual and legal overlap between this case and the post-judgment *Jones* proceedings—there can be little debate. Bradshaw's claim that the underlying class settlement was unreasonable and inadequate, in part due to alleged malfeasance by counsel and the City, is the identical issue Bradshaw and his fellow class members are now litigating in *Jones*. As in *Chen,* "[c]oncurrent litigation obviously will lead to duplication of effort and waste of judicial resources, and has the potential for inconsistent findings and judgments." *Chen*, 2017 WL 8220441, *4; *see also Integon*, 2018 WL 6620342, at *12 (a stay will contribute to the orderly course of justice "when the related proceeding will help develop comprehensive evidence that bears on the questions at issue in the federal lawsuit," even if the federal court is not ultimately bound by the findings in the related proceeding). Moreover, this present case is *about* what happened in the *Jones* litigation, but the outcome of the post-judgment proceedings is not yet even known. Until it is, Bradshaw's claims and damages are speculative, and absent a stay, the litigants and this Court would expend time and effort before the picture has come into focus. Staying the action, and allowing the ongoing and developed state court proceedings to resolve, furthers the Court's objective of maintaining the docket "with economy of time and effort for itself, for counsel and for litigants." *Landis,* 299 U.S. at 254.

/ / /

/ / /

/ / /

### C. The Court can require status updates regarding *Jones,* and terminate the stay at any point it deems appropriate.

The dire picture painted by Bradshaw—an indeterminate stay lasting for years, through state court appeals—is misleading. The Court can require periodic updates regarding progress and developments in *Jones.* That is precisely the approach adopted in *Bani* and *Beatbox, supra,* in which status reports were required every 180 and 90 days, respectively. The court could further give parties the opportunity at designated junctures to argue that the stay should be terminated even short of a complete resolution in *Jones.* These or other conditions on a stay reflect the flexible approach this Court can adopt given the unusual nature of the proceedings below.

## III. CONCLUSION

In concluding that a stay was warranted on the facts before it, one district court observed that "[w]hether the Court bases [its] decision on *Colorado River* abstention doctrine, general principles of comity, or its inherent authority to control its docket isn't of much consequence. It is the right thing to do." *Halberstam v. Amylin Pharmaceuticals, Inc.*, 2012 WL 5838956, at *2 (S.D. Cal. Nov. 16, 2012). This too is one of those situations. The parties face an unusual procedural scenario in which logic dictates that a stay is advisable. For these reasons, and those articulated in Libman's prior briefing, a stay should be granted.[3]

Dated: February 25, 2020         ROGERS JOSEPH O'DONNELL

                                 By: */s/ John G. Heller*
                                     JOHN G. HELLER
                                     Attorneys for Defendants
                                     MICHAEL J. LIBMAN and LAW
                                     OFFICES OF MICHAEL J. LIBMAN
                                     APC

---

[3] The City defendants argue in favor of rulings on the pending motions to dismiss prior to implementing a stay, so that dispositive defenses can be resolved at the outset. Libman takes no position on this, and defers to the Court on whether such sequencing is advisable.