E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
J. JAMARI BUXTON (Cal. Bar No. 342364)
SUSAN S. HAR (Cal. Bar No. 301924)
Assistant United States Attorneys
Public Corruption and Civil Rights Section
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone:  (213) 894-3519/3289
     Facsimile:  (213) 894-0141
     E-mail:     Jamari.Buxton@usdoj.gov
                 Susan.Har@usdoj.gov

Attorneys for Nonparty
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS BRADSHAW,<br><br>             Plaintiff,<br><br>             v.<br><br>CITY OF LOS ANGELES, ET AL.,<br><br>             Defendants. | Case No. 2:19-cv-06661-GW(MARx)<br><br>GOVERNMENT'S MOTION TO INTERVENE FOR THE LIMITED PURPOSE OF OPPOSING PLAINTIFF'S MOTION TO COMPEL CONFIDENTIAL CRIMINAL SENTENCING DISCOVERY AND TO QUASH PLAINTIFF'S SUBPOENA TO DEFENDANT PAUL PARADIS; DECLARATION OF J. JAMARI BUXTON<br><br>Hearing Date: N/A<br>Hearing Time: N/A<br>Judge:       Hon. Margo A. Rocconi |

     Nonparty United States of America, by and through its counsel of

record, the United States Attorney for the Central District of

California and Assistant United States Attorneys J. Jamari Buxton and

Susan S. Har, hereby moves the Court, pursuant to Federal Rule of

Civil Procedure 24, to intervene in the above-captioned case for the

limited purpose of opposing plaintiff's motion to compel confidential

criminal sentencing discovery (Dkt. No. 264) and to quash, pursuant

to Federal Rule of Civil Procedure 45, plaintiff's subpoena to defendant Paul Paradis ("Paradis") seeking such materials.  The government submits this motion in accordance with the Court's August 9, 2023 Order.  (Dkt. No. 266.)

This motion is based upon the attached memorandum of points and authorities, the accompanying declaration of J. Jamari Buxton, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: August 22, 2023          Respectfully submitted,

                                E. MARTIN ESTRADA
                                United States Attorney

                                MACK E. JENKINS
                                Assistant United States Attorney
                                Chief, Criminal Division


                                _____/s/_____
                                J. JAMARI BUXTON
                                SUSAN S. HAR
                                Assistant United States Attorneys

                                Attorneys for Nonparty
                                UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

DESCRIPTION                                                                      PAGE

TABLE OF AUTHORITIES...............................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES...............................................1

I.    INTRODUCTION.................................................................1

II.   FACTUAL BACKGROUND...........................................................3

III.  ARGUMENT....................................................................9

      A.    Government Intervention Is Appropriate.................................9

            1.    The Government Is Entitled to Intervene as of
                  Right to Protect Its Highly Sensitive and
                  Confidential Sentencing Discovery...............................9

            2.    The Government Also Satisfies the Requirements
                  for Permissive Intervention....................................12

      B.    The Court Should Quash Plaintiff's Subpoena Seeking
            the Confidential Sentencing Discovery................................13

            1.    Legal Standard.................................................13

            2.    The Sentencing Discovery Is Confidential and
                  Protected, and It Should Not Be Turned Over to
                  Plaintiff......................................................13

            3.    Plaintiff Can Obtain the Relevant Information
                  from the Criminal Sentencing Discovery Through
                  Civil Discovery in the Bradshaw Case...........................19

IV.   CONCLUSION..................................................................21

**TABLE OF AUTHORITIES**

CASES                                                                      PAGE

Brown v. Sperber-Porter,
    No. CV-16-02801-PHX-SRB, 2017 WL 11483484
    (D. Ariz. Nov. 3, 2017).........................................12

California ex rel. Lockyer v. United States,
    450 F.3d 436 (9th Cir. 2006)...................................10

Conners v. Pohlman,
    No. CV 15-101, 2021 WL 4255651 (E.D. La. June 23, 2021)...17, 18

Douglas Oil Co. of California v. Petrol Stops Nw.,
    441 U.S. 211 (1979)............................................16

Finn v. Schiller,
    72 F.3d 1182 (4th Cir. 1996)...................................16

In re Smith,
    656 F.2d 1101 (5th Cir. 1981)..................................16

Jurj v. Andersen,
    No. 3:21-CV-00088-YY, 2022 WL 19349528
    (D. Or. Sept. 16, 2022)........................................11

Kalbers v. United States Dep't of Just.,
    22 F.4th 816 (9th Cir. 2021)...................................11

King Cnty. v. Providence Washington Ins. Co.,
    No. 2:14-CV-01957-BJR, 2018 WL 3621226
    (W.D. Wash. Feb. 14, 2018).................................10, 11

United States v. Anderson,
    55 F.Supp.2d 1163 (D. Kan 1999)................................16

United States v. Briggs,
    513 F.2d (5th Cir. 1975).......................................16

United States v. Morales,
    807 F.3d 717 (5th Cir. 2015)...................................18

United States v. Procter & Gamble Co.,
    356 U.S. 677 (1958)............................................16

United States v. Smith,
    992 F. Supp. 743 (D.N.J. 1998).................................16

Wilderness Soc. v. U.S. Forest Serv.,
     630 F.3d 1173 (9th Cir. 2011)...................................10

RULES

Fed. R. Civ. P. 6(e)..........................................5, 14

Fed. R. Civ. P. 24(a)(2)..........................................9

Fed. R. Civ. P. 24(b)(1)(B).......................................12

Fed. R. Civ. P. 24(b)(3)..........................................12

Fed. R. Civ. P. 26(b)(1)..........................................13

Fed. R. Civ. P. 26(b)(2)(C)(i)................................13, 19

Fed. R. Civ. P. 26(b)(2)(C)(iii)..................................13

Fed. R. Civ. P. 45(d)(3)(A)(iii)..................................13

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.    INTRODUCTION**

3          Ahead of sentencing in defendant Paul Paradis' federal criminal

4    case in this district, captioned 2:21-cr-540-SB (the "Criminal

5    Case"), the government, at Paradis' request, provided Paradis with

6    nearly 1,500 pages of highly sensitive and confidential criminal

7    discovery (the "Sentencing Discovery"), consisting of (1) FBI reports

8    summarizing approximately 13 interviews of Paradis, who agreed to

9    cooperate in the government's extensive investigation into the

10   collusive litigation scheme at issue in this civil proceeding (the

11   "Bradshaw Case") and related matters, (2) approximately 33 search

12   warrants that the government obtained based, at least in part, on

13   information provided by Paradis, all of which remain sealed from the

14   public, and (3) a list of approximately 184 covert recordings made by

15   Paradis as part of his cooperation efforts.  Given the nature of the

16   Sentencing Discovery, the government made it available to Paradis and

17   his criminal defense attorneys (collectively, the "Criminal Defense

18   Team") under strict "Use Parameters" intended to maintain the

19   confidentiality of the materials, including that the Criminal Defense

20   Team would use the Sentencing Discovery solely for criminal

21   sentencing and "not use, or facilitate any other person using, the

22   Sentencing Discovery in any other case or matter, whether pending or

23   arising in the future."  The government believed -- in retrospect,

24   naively -- that Paradis would honor the agreement regarding the

25   Sentencing Discovery in good faith.  Not so.

26          In a blatant attempt to circumvent the parties' agreement,

27   Paradis -- who is now apparently cooperating with plaintiff's counsel

28   in the Bradshaw Case -- joins in plaintiff's motion to compel himself

to produce the Sentencing Discovery, after plaintiff (conveniently) issued a subpoena to Paradis in late-July 2023 seeking the materials and after the government refused Paradis' request to deviate from the agreed-upon Use Parameters.  Given Paradis' clear allegiance to plaintiff's counsel, and his refusal to honor his agreement with the government (despite being required to "cooperate fully" with the government as part of his criminal cooperation plea agreement), the government is left with no choice but to intervene in this civil matter -- whether as of right or with the Court's permission -- to stop Paradis from turning over the confidential Sentencing Discovery to plaintiff.

The Court should quash plaintiff's subpoena and prevent dissemination of the Sentencing Discovery.  The Sentencing Discovery consists of highly sensitive and confidential criminal discovery.  It details nearly every facet of the government's extensive criminal investigation, including (1) the vast majority of the persons, events, and leads the government investigated, including many persons the government ultimately did not charge with crimes; (2) various tools, techniques, and strategies the FBI and U.S. Attorney's Office employed as part of the criminal investigation, which, if made public, could undermine future investigations; and (3) the timeline in which the criminal investigation progressed.  This non-public information is highly sensitive and should remain confidential.  Indeed, approximately 1,300 pages of the Sentencing Discovery consists of sealed (i.e., non-public) search warrants, some of which contain secret grand jury information.  The government insisted -- and Paradis agreed -- that the confidential Sentencing Discovery be protected by strict Use Parameters to prevent the precise scenario

that is playing out here.  If the Court were to allow Paradis to turn over the Sentencing Discovery, it would necessarily impair the government's obligations to keep confidential law enforcement means and methods and grand jury information and eviscerate the significance of its good faith discovery agreement with Paradis.

Additionally, quashing the subpoena will not prejudice plaintiff in the Bradshaw Case.  Rather, plaintiff -- with Paradis' historical knowledge and ongoing cooperation with plaintiff's counsel -- can provide much of the relevant information from the Sentencing Discovery through ordinary civil discovery tools, including depositions, interrogatories, document requests, and subpoenas -- without the disclosure of the confidential information and sensitive law enforcement techniques.  In the same way the government built its criminal investigation by questioning people, identifying and reviewing documents, and mastering the evidence it assembled, so, too, can plaintiff here -- without appropriating the government's confidential materials and jeopardizing future criminal investigations.

## II.   FACTUAL BACKGROUND

On January 28, 2022, Paradis appeared before the Honorable Stanley Blumenfeld, Jr., United States District Judge, and pled guilty to an information charging Paradis with a single count of bribery.[1]  (Criminal Case, Dkt. Nos. 1, 20.)  As part of the plea,

---

[1] Though he pled guilty to only one count of bribery, Paradis, at his plea hearing and in the Factual Basis of his plea agreement, admitted committing a host of crimes and other misconduct, including receiving a $2.175 million kickback from another lawyer as part of the collusive litigation scheme involving the botched Los Angeles Department of Water and Power ("LADWP") billing system, as well as bribing multiple people, including the General Manager of LADWP, to
*(footnote cont'd on next page)*

3

Paradis entered into a cooperation plea agreement with the government obligating him to "cooperate fully," including by providing information and documents as requested, attending meetings and various proceedings, and other requirements.  (See id., Dkt. No. 6 at 2-3.)  The cooperation plea agreement also obligates Paradis to cooperate with "other federal, state, local, or foreign prosecuting, enforcement, administrative, regulatory, or licensing authority, including the Bar of any state," as directed by the government.  (See id. at 2.)  The plea agreement does not require Paradis to cooperate with civil litigants, including plaintiff in the Bradshaw Case.

After a series of continuances so that Paradis could continue cooperating with the State Bar of California, which the government directed, Judge Blumenfeld scheduled Paradis' sentencing for June 27, 2023.  (Id., Dkt. No. 38.)  Ahead of the hearing, Paradis, though his criminal defense attorneys, asked that the government provide Paradis with criminal discovery germane to sentencing, namely, documents and information reflecting the nature, scope, and value of Paradis' cooperation in the federal criminal investigation.  (Buxton Decl. ¶ 4.)  After multiple meet-and-confers, the parties agreed that the government would provide the Criminal Defense Team with three categories of materials.  (Id.)

First, the government would provide FBI reports summarizing approximately 13 interviews of Paradis between March 2019 and August 2021, in which Paradis detailed his own misconduct and accused others, in detail, of misconduct, including numerous attorneys and top City officials, many of whom the government ultimately did not

_____

obtain a massive $30 million no-bid contract from LADWP/the City of Los Angeles.  (Criminal Case, Dkt. No. 6 at 20-46.)

charge.  (Id. ¶ 5.)  Second, the government would provide approximately 33 sealed search warrants obtained in its criminal investigation that were based, at least in part, on information provided by Paradis.  (Id. ¶ 6.)  The lengthy affidavits supporting the search warrants chronicle the government's extensive, years-long investigation into potential and actual criminal conduct stemming from the collusive litigation scheme and related matters.  (Id.)  The search warrants reveal, among other things, the identities of the attorneys and City officials under investigation (many of whom were not charged) and evidence regarding their alleged conduct; the methods, means, and timeline by which the government conducted the investigation, including various tools, techniques, and strategies used by investigators; and, in several instances, excerpts and/or descriptions of testimony before a federal grand jury, which is subject to secrecy under Federal Rule of Criminal Procedure 6(e).  (Id.)  All the search warrants were and remain under seal.  (Id.)

Third and finally, the government agreed to provide a list of approximately 184 covertly recorded calls and meetings made by Paradis as part of his cooperation efforts, many of which again involved people who were not charged with crimes.  (Id. ¶ 7.)  In all, the Sentencing Discovery encompassed over 1,400 pages.[2]  (Id. ¶ 8.)

Because the Sentencing Discovery is highly sensitive and confidential, the government made its production to the Criminal

---

[2] The Sentencing Discovery is bates-stamped PARADIS_00001-PARADIS_01451.  The FBI reports account for approximately 58 pages of the materials; the search warrants total approximately 1,390 pages; and the list of recordings is approximately 3 pages.  (Id. ¶ 8.)

Defense Team subject to certain "Use Parameters."  (Id. ¶ 9.)

Through negotiation, the parties agreed to the following terms:

> 1.   The Sentencing Discovery will be provided to Defendant and his attorneys, Winston & Strawn LLP (led by Jeffrey Steinfeld and David Scheper and any attorneys and personnel working under their supervision) (the "Defense Team").  The government is providing the Defense Team with the Sentencing Discovery **solely for use in connection with criminal sentencing** in this matter, CR 21-540-SB.  **The Defense Team shall not use, or facilitate any other person using, the Sentencing Discovery in any other case or matter, whether pending or arising in the future**.

> 2.   The Defense Team shall maintain the Sentencing Discovery safely and securely, and **shall exercise reasonable care in ensuring the confidentiality of the Sentencing Discovery.  The Defense Team shall not permit anyone other than the Defense Team to review or have possession of the Sentencing Discovery other than the Court subject to the provisions herein**.

> 3.   Should the Defense Team seek to describe, reference, or disclose any Sentencing Discovery in any filing in the above-captioned matter (the "Sentencing Papers"), the Defense Team shall file any copy or portion thereof of the Sentencing Discovery and the Sentencing Papers provisionally under seal.  Thereafter, the Defense Team will meet and confer with the Government regarding the portions of the Sentencing Papers the Government determines should remain under seal and the Government shall timely file any necessary motions with the Court.

> 4.   Upon the Government's request, the Defense Team shall return the Sentencing Discovery to the Government and destroy any copies thereof.  The Government shall not make any request absent good cause, meeting and conferring with the defense, and in any event, absent a violation of this agreement, not before Defendant's sentencing.

> 5.   These parameters apply solely to the Sentencing Discovery produced by the Government,

1                  and do not apply to any documents or information
already in the Defendants position, custody, or

2                  control, or that is publicly available.

3  (Id.) (emphasis added.)

4       On May 5, 2023, Paradis' criminal defense attorneys sent the

5  government an email "confirm[ing] and provid[ing] written agreement

6  that both Mr. Paradis and his counsel agree to the . . . 'Agreed Use

7  Parameters of Sentencing Discovery.'" (Id. ¶ 10.) After receiving

8  written confirmation from Paradis and his criminal counsel, the

9  government, on May 5, 2023 and on May 10, 2023, supplied the

10  confidential Sentencing Discovery to the Criminal Defense Team.

11  (Id.)

12       The government and Paradis filed their respective sentencing

13  positions, accompanying materials, and replies in the Criminal Case

14  on June 13, 2023 and June 20, 2023. (Criminal Case, Dkt. Nos. 39-47,

15  49-52.)[3] Consistent with the agreed-upon Use Parameters listed

16  above, Paradis filed any sentencing materials that described,

17  referenced, or constituted Sentencing Discovery provisionally under

18  seal. (See id.) Judge Blumenfeld granted the request to seal.

19  (Id., Dkt. No. 48.) As part of his sentencing filings, Paradis

20  supplied Judge Blumenfeld with declarations authored by plaintiff's

21  counsel, Fillippo Marchino. (Id., Dkt. Nos. 46, 71.)

22       The parties appeared for sentencing on June 27, 2023. (Id.,

23  Dkt. No. 66.) After hearing from the parties regarding several

24  issues, and from the State Bar regarding its ongoing investigation,

25  Judge Blumenfeld further continued Paradis' sentencing to September

26

27

28

     [3] Paradis' initial filing totaled approximately 1,200 pages.

26, 2023 to give Paradis additional time to cooperate with that agency.[4]  (Id.)

Approximately one month later, on July 31, 2023, Paradis' criminal defense attorneys informed the government by email that Paradis had received a subpoena from Mr. Marchino demanding that Paradis produce to plaintiff in the Bradshaw Case the Sentencing Discovery that Paradis received from the government in the Criminal Case.[5]  (Buxton Decl. ¶ 11.)  Paradis' criminal defense attorneys asked whether the government objected to an exception from the agreed-upon Use Parameters that would allow Paradis to comply with the subpoena.  (Id.)  Later that day, the government replied that it would not authorize Paradis to deviate from the agreed-upon Use Parameters by providing the Sentencing Discovery to plaintiff.  (Id. ¶ 12.)  The government explained to counsel that the Sentencing Discovery "contain[s] highly sensitive non-public information and must be kept confidential, as we previously agreed."  (Id.)  Given the source of the subpoena, the government further noted that the request appeared to be the product of collusion and gamesmanship. (Id.)

Plaintiff's motion to compel followed.  (Bradshaw Case, Dkt. No. 264.)  Notwithstanding the clear, unambiguous agreement between the government and the Criminal Defense Team regarding the Sentencing Discovery, Paradis joined in plaintiff's motion to compel and

---

[4] Judge Blumenfeld ordered the State Bar to submit a status report to the Court before sentencing.  (Id.)

[5] The subpoena, which defense counsel attached, specifically requests "all documents you or your attorneys received from the United States of America in response to any requests made by you or your attorneys to the United States in connection with your sentencing in United States v. Paradis."  (Bradshaw Case, Dkt. No. 264-2 at 5.)

submitted a declaration in support of it, by which Paradis now asks the Court to compel him to produce the documents he swore not to disseminate -- in clear violation of the Use Parameters. (See id., Dkt. Nos. 264-1, 264-3.)

On August 9, 2023, United States Magistrate Judge Jacqueline Chooljian issued an Order stating that "[a]ny interested party (including any Defendant in this action and any party/counsel in the Related Criminal Case) who wishes to weigh in on Plaintiff's Motion shall file a response thereto by not later than August 22, 2023 absent further Order of the Court." (Id., Dkt. No. 266.)[6]  In accordance with the Court's order, the government now responds by moving to intervene in the Bradshaw Case for the limited purpose of opposing plaintiff's motion to compel and quashing plaintiff's subpoena to Paradis seeking the Sentencing Discovery.

**III. ARGUMENT**

> **A.    Government Intervention Is Appropriate**
>
> > **1.    The Government Is Entitled to Intervene as of Right to Protect Its Highly Sensitive and Confidential Sentencing Discovery**

Federal Rule of Civil Procedure 24(a)(2) requires a court to allow nonparty intervention so long as they "claim[] an interest relating to the property or transaction that is the subject of the action, and [are] so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). Courts evaluating a motion to

---

[6] After Judge Chooljian recused herself from the Bradshaw Case (see id., Dkt. No. 277), this matter was reassigned to this Court. (Id., Dkt. No. 282.)

9

intervene as of right apply the following four-part test: "(1) the
motion must be timely; (2) the applicant must claim a 'significantly
protectable' interest relating to the property or transaction which
is the subject of the action; (3) the applicant must be so situated
that the disposition of the action may as a practical matter impair
or impede its ability to protect that interest; and (4) the
applicant's interest must be inadequately represented by the parties
to the action." Wilderness Soc. v. U.S. Forest Serv., 630 F.3d 1173,
1177 (9th Cir. 2011) (cleaned up).  Courts are to construe Rule
24(a)(2) broadly because "a liberal policy in favor of intervention
serves both efficient resolution of issues and broadened access to
the courts."  Id. (cleaned up).  For that reason, a prospective
intervenor need only show "a relationship between [a] legally
protected interest and the claims at issue," id., and it "has a
sufficient interest for intervention purposes if it will suffer a
practical impairment of its interests as a result of the pending
litigation."  California ex rel. Lockyer v. United States, 450 F.3d
436, 441 (9th Cir. 2006).

     The government's motion to intervene easily passes this test.
First, the government's instant response comes just a few weeks after
plaintiff's motion to compel and complies with the Court's August 22,
2023 filing deadline, rendering it timely.

     Second, as explained in Section III(B)(2), infra, the government
has a significant protectable interest in the approximately 1,450
pages of highly sensitive and confidential Sentencing Discovery --
including approximately 33 sealed searched warrants -- it provided
Paradis on the condition that he would use it solely for criminal
sentencing and would not disseminate it to anyone else or facilitate

anyone else using it.  See King Cnty. v. Providence Washington Ins. Co., No. 2:14-CV-01957-BJR, 2018 WL 3621226, at *1 (W.D. Wash. Feb. 14, 2018) (proposed intervenors had a "protectable interest in maintaining the confidentiality of the [requested] documents"); Jurj v. Andersen, No. 3:21-CV-00088-YY, 2022 WL 19349528, at *3 (D. Or. Sept. 16, 2022) ("The Andersen Defendants have a 'significantly protectable' interest in whether English will be ordered to produce the requested documents"; "there is a direct, antagonistic relationship between [their] interest in confidentiality and plaintiff's interest in obtaining the requested documents.") (cleaned up).

Third, as likewise explained in Section III(B)(2), infra, the government's interests will be impaired if the Court permits Paradis -- notwithstanding the agreed-upon Use Parameters -- to share the confidential Sentencing Discovery with plaintiff.  See Kalbers v. United States Dep't of Just., 22 F.4th 816, 828 (9th Cir. 2021) ("VW's interest in keeping its documents confidential would obviously be impaired by an order to disclose.")

Finally, the government is the only entity that can adequately represent its interest in protecting the Sentencing Discovery; indeed, Paradis, who previously swore he would maintain the confidentiality of the Sentencing Discovery, has joined in, fully endorses, and appears to be a driver behind plaintiff's motion to compel.  See Kalbers, 22 F.4th at 828 (noting that the adequacy of representation requirement poses "a minimal burden" and "is satisfied if the applicant shows that representation of his interest may be inadequate"; "[VW] is uniquely well-positioned to explain the commercial significance of the documents at issue here.  Lacking this

11

information, the existing parties <u>may</u> not represent VW's interests adequately.  Nothing more is required.")  The government can intervene as of right.

> **2.    The Government Also Satisfies the Requirements for Permissive Intervention**

For its part, Rule 24(b) allows for permissive intervention when a prospective intervenor "has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B).  In exercising its discretion, a court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3).

Permissive intervention is appropriate here.  Because plaintiff seeks to obtain -- and Paradis seeks to give plaintiff -- confidential Sentencing Discovery, which the government maintains is not discoverable in this matter, and is also subject to the agreed-upon Use Parameters in the Criminal Case, a common question of fact exists.  See <u>Brown v. Sperber-Porter</u>, No. CV-16-02801-PHX-SRB, 2017 WL 11483484, at *3 (D. Ariz. Nov. 3, 2017) ("Here, the Intervenors seek to intervene to protect their alleged confidential interest in their business and financial records.  The confidentiality and discoverability of the records subject to the Wells Fargo subpoena is the common question.  The Court, therefore, will permit intervention.") (cleaned up).  And because the government is seeking to intervene for the limited purpose of opposing plaintiff's motion to compel and quashing the subpoena seeking the Sentencing Discovery -- issues this Court can resolve in relatively short order -- there

is virtually no risk that intervention will delay the Bradshaw Case
in any meaningful way.

Thus, should the Court find the government may not intervene as
of right, it should exercise its broad discretion and permit the
government to intervene to protect its Sentencing Discovery.

**B. The Court Should Quash Plaintiff's Subpoena Seeking the Confidential Sentencing Discovery**

**1.   Legal Standard**

Rule 45(d)(3)(A) directs a court to quash or modify a subpoena
that "requires disclosure of privileged or other protected matter, if
no exception or waiver applies."  Fed. R. Civ. P. 45(d)(3)(A)(iii).
Relatedly, Rule 26(b) requires that a court limit the extent of
discovery -- including that which is obtained by a subpoena -- if it
"can be obtained from some other source that is more convenient, less
burdensome, or less expensive" or "is outside the scope permitted by
Rule 26(b)(1)."  Fed. R. Civ. P. 26(b)(2)(C)(i), (iii).  Rule
26(b)(1), in turn, broadly permits "discovery regarding any
nonprivileged matter that is relevant to any party's claim or defense
and proportional to the needs of the case."  Fed. R. Civ. P.
26(b)(1).

**2.   The Sentencing Discovery Is Confidential and Protected, and It Should Not Be Turned Over to Plaintiff**

The Sentencing Discovery contains highly sensitive and non-
public information that is and should remain strictly confidential.
The largest segment of the Sentencing Materials is approximately
1,400 pages of search warrants (33 in total), including lengthy
affidavits by federal agents supporting the warrants.  All 33 of the
warrants remain under seal.  These sealed warrants describe the

government's extensive criminal investigation spanning multiple years into the collusive litigation scheme and detail numerous related matters, events, subjects, potential subjects, and potential criminal offenses.  Notably, the warrants identify various individuals and their conduct that the government investigated, many of whom were not ultimately charged.  The warrants also describe, in painstaking detail, the various steps the government took over the course of its investigation, including its use of certain law enforcement tools, techniques, and strategies, as well as the timeline by which the investigation proceeded.  Moreover, some of the warrants describe information and testimony procured through the grand jury, which is subject to secrecy under Federal Rule of Criminal Procedure 6(e).

The FBI reports summarizing Paradis' 13 interviews with the government are also highly sensitive and confidential.  In the interviews, Paradis informed the government of his own crimes/misconduct, and, in great detail, accused many others, including numerous lawyers and top City officials, of their own crimes/misconduct.  Like the warrants, the FBI reports provide a de facto roadmap of the government's sweeping investigation, based on information that remains non-public and confidential.  So, too, with the list of covert recordings made by Paradis, which reveals whom (and likely what) the government was investigating and when those aspects of the investigation took place.

Because the Sentencing Discovery is highly sensitive and confidential, the government insisted on protecting it before turning it over to Paradis and his criminal defense attorneys.  Acknowledging the confidential nature of the Sentencing Discovery, the Criminal Defense Team agreed in writing to the Use Parameters listed above.

These included that the Criminal Defense Team would use the Sentencing Discovery "solely . . . in connection with criminal sentencing in [the Criminal Case]; "not use, or facilitate any other person using, the Sentencing Discovery in any other case or matter, whether pending or arising in the future"; "ensur[e] the confidentiality of the Sentencing Discovery"; and "not permit anyone other than the Defense Team to review or have possession of the Sentencing Discovery other than the Court[.]"  Thus, apart from the majority of the Sentencing Discovery already being under seal, the parties further protected the Sentencing Discovery from disclosure by establishing and agreeing on clear, unambiguous Use Parameters governing the materials.[7]

The government had -- and continues to have -- compelling reasons for protecting the Sentencing Discovery.  As explained above, the Sentencing Discovery details the innerworkings of an expansive, years-long criminal investigation into numerous subjects and events. While the government has made limited aspects of the investigation public -- namely, the information contained in various plea agreements and accompanying criminal informations of the persons

---

[7] The government could have obtained a protective order from Judge Blumenfeld before producing the Sentencing Discovery to Paradis but did not do so, in part, because (1) it believed that Paradis -- who agreed to "cooperate fully" with the government as part of his cooperation plea agreement -- would honor the parties' written agreement regarding the Use Parameters and (2) it wanted to get the Sentencing Discovery to the Criminal Defense Team quickly.  Of course, had the government known (or even suspected) that Paradis would try to circumvent the parties' agreement in this way, it would have submitted a proposed protective order containing the Use Parameters to Judge Blumenfeld before making any production to the Criminal Defense Team.  In light of plaintiff's subpoena and his motion to compel, which Paradis supports, the government is now doing precisely that: seeking a protective order from Judge Blumenfeld to enforce the parties' agreed-upon Use Parameters and prevent unauthorized disclosures in non-criminal matters.

15

against whom the government elected to bring charges -- it determined

that the remainder of the information and evidence it developed

during the course of its investigation, as well as information about

the means by which the government conducted the investigation, is not

appropriate for public dissemination.  This is because, among other

factors, disclosure of information about the methods, tools,

techniques, and strategies the government used in the investigation

could frustrate its ability to employ them in other investigations;

because much of the information and evidence the government developed

relates to people the government ultimately did not charge with

crimes[8]; and because disclosure of the Sentencing Discovery might

cause persons to destroy or tamper with evidence that may be valuable

to other law enforcement and/or investigative agencies, such as the

State Bar.  What is more, the Sentencing Discovery contains and

discusses certain grand jury material, which must be kept secret.

See Douglas Oil Co. of California v. Petrol Stops Nw., 441 U.S. 211,

218 (1979) ("We consistently have recognized that the proper

functioning of our grand jury system depends upon the secrecy of

---

[8] Courts have held that there is ordinarily "no legitimate governmental interest served" by the government's public allegation of wrongdoing by an uncharged party, and this is true "[r]egardless of what criminal charges may . . . b[e] contemplated by the Assistant United States Attorney against the [third-party] for the future."  In re Smith, 656 F.2d 1101, 1106-07 (5th Cir. 1981).  Courts have applied this reasoning to preclude the public identification of unindicted third-party wrongdoers in plea hearings, sentencing memoranda, and other government pleadings.  See Finn v. Schiller, 72 F.3d 1182 (4th Cir. 1996); United States v. Briggs, 513 F.2d 794 (5th Cir. 1975); United States v. Anderson, 55 F.Supp.2d 1163 (D. Kan 1999); United States v. Smith, 992 F. Supp. 743 (D.N.J. 1998); see also United States Department of Justice Manual § 9-27.760 ("In all public filings and proceedings, federal prosecutors should remain sensitive to the privacy and reputation interests of uncharged third parties . . .  [F]ederal prosecutors should strive to avoid unnecessary public references to wrongdoing by uncharged third parties.")

grand jury proceedings."); United States v. Procter & Gamble Co., 356 U.S. 677, 681 (1958) (noting the "long-established policy that maintains the secrecy of the grand jury proceedings in the federal courts").

Conners v. Pohlman, No. CV 15-101, 2021 WL 4255651 (E.D. La. June 23, 2021), is instructive.  In Conners, civil plaintiffs moved the court to compel a civil defendant, who was convicted of a federal offense based on the same underlying subject matter, to produce all information the defendant obtained from prosecutors during criminal discovery.  Id. at *2.  After sentencing in the defendant's criminal case and in light of discovery requests in the civil case, the government sought a protective order from the criminal court shielding a wide array of criminal discovery from civil discovery, including grand jury materials, FBI records, search warrants, state and local records that federal investigators obtained as part of their investigation, communication-related records, and criminal history information.  Id.  After denying the civil plaintiff's motion to intervene in the criminal case, the criminal court issued a protective order that restricted the use or disclosure of the criminal discovery to preparing for the criminal matter, including post-conviction and appellate criminal litigation, although the criminal court excluded from the protective order any information/evidence that had been publicly filed or disclosed in open court -- much like the Use Parameters to which Paradis agreed in the Criminal Case here.  See id.

The civil court denied the plaintiffs' motion to compel the criminal discovery, citing the protective order issued by the criminal court.  It noted: "Plaintiffs are asking this Court to order

17

Defendant . . . to produce those documents that remain protected by [the criminal court's] order . . ., which order makes clear that such documents may not be disclosed or used outside of the criminal litigation . . .  Plaintiffs' collateral attack on [the criminal court's] protective order and invitation to enter a conflicting order because Plaintiffs' motion to intervene in the criminal proceeding was denied lacks any support . . .  If Plaintiffs disagree with [the criminal court's] decision, rather than request the contrary relief from a different judge, they may seek review of [the criminal court's] order denying intervention via appeal." Id. at *4; see also United States v. Morales, 807 F.3d 717, 719, 724 (5th Cir. 2015) (affirming denial of request to modify protective order in criminal proceeding so party could use information produced in criminal matter for civil suit; "Morales . . . seek[s] the documents for use in subsequent proceedings.  But that does not weigh in favor of modification here, because preventing the documents' use in subsequent civil proceedings is the very reason why the documents are under a protective order.")

Though a protective order is not (yet) in place in the Criminal Case here, the rationale of Conners nevertheless applies to the parties' agreed-upon Use Parameters protecting the confidentiality of the Sentencing Discovery.  The Use Parameters are clear and unambiguous, and they require Paradis to use the Sentencing Discovery solely for purposes of sentencing; to take steps to maintain its confidentiality; and to not disseminate the Sentencing Discovery to anyone in any other matter.  Plaintiff's subpoena and motion to compel, and Paradis' support of the motion, are in direct violation of the parties' agreement.  Out of fairness, and justice, the Court

should enforce the parties' agreement, lest plaintiff and Paradis (and others like him) be rewarded for blatantly circumventing good faith agreements regarding criminal discovery, undermining the utility of such agreements altogether.[9]  Indeed, permitting dissemination of the Sentencing Discovery here could open the floodgates for other civil litigants to demand confidential criminal discovery from criminal defendants in other matters.  In any event, if plaintiff and Paradis seek to challenge the parties' agreement regarding the Use Parameters, they should be required to seek relief in the Criminal Case where the agreement occurred, and not in this civil matter.

In sum, because the Sentencing Discovery is clearly protected based on its confidential contents -- and additionally through grand jury secrecy, sealing, and/or the Use Parameters agreed-to by the parties in the Criminal Case -- the Court must quash plaintiff's subpoena.  See Fed. R. Civ. P. 45(d)(3)(A)(iii).

### 3.  Plaintiff Can Obtain the Relevant Information from the Criminal Sentencing Discovery Through Civil Discovery in the Bradshaw Case

Plaintiff argues that he is entitled to the confidential Sentencing Discovery because it could help develop his case. (Bradshaw Case, Dkt. No. 264-1 at 4.)  Be that as it may, this does not entitle plaintiff to the materials.  See Fed. R. Civ. P. 26(b)(2)(C)(i).

---

[9] Had the government not supplied the Sentencing Discovery to Paradis, plaintiff, as an initial matter, presumably would have had to seek the confidential materials by issuing a subpoena to the federal government, which would trigger a host of requirements and implicate applicable Touhy regulations.  Plaintiff and Paradis' joint motion to compel sidesteps these procedures.

1    In effect, plaintiff is urging the Court to force the government

2    do plaintiff's work for him by allowing Paradis to turn over highly

3    sensitive and non-public information that Paradis agreed to keep

4    confidential and use only for his criminal sentencing, including

5    evidence obtained through the grand jury.  Plaintiff states:

> Because Mr. Paradis has pled guilty to a certain crime
> arising out of to the Jones v. City of Los Angeles
> scheme, his sentencing discovery almost certainly
> contains documents pertaining to and detailing the
> scope of the scheme that is at the core of this case.
> The documents in Paradis' possession are likely to
> have information pertaining to the other defendants
> named in this action, as well as additional
> participants in the Jones scheme whose identities
> Plaintiff is not yet aware of.  The information in
> these documents would be central to the claims of
> Plaintiff and the putative class and is something that
> Plaintiff obviously does not have access to.  Such
> information would be crucial to establishing many of
> the facts in this case.

15   (Bradshaw Case, Dkt. No. 264-1 at 4.)

16    Critically, plaintiff ignores that he can replicate much (if not

17   most) of the factual information in the confidential Sentencing

18   Discovery through traditional civil discovery tools, including

19   depositions, interrogatories, document requests, and subpoenas.  In

20   the same way the government developed its criminal investigation by

21   methodically interviewing scores of people, identifying, obtaining,

22   and reviewing potentially relevant documents and other items, and

23   using this data to construct a comprehensive understanding of the

24   events in question, the people involved in the events, and what roles

25   they played, plaintiff -- especially with Paradis' historical

26   knowledge of the events and ongoing cooperation with plaintiff's

27   counsel -- can do the very same thing.  In short, plaintiff can do

28   his own work.

**IV.   CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court deny plaintiff's motion to compel and quash plaintiff's subpoena to Paradis seeking the confidential Sentencing Discovery.[10]

---

[10] The government maintains that the Court should quash plaintiff's subpoena for the reasons stated above, and thus in camera review of the Sentencing Discovery is unnecessary.  To the extent this Court is considering such in camera review, the government submits that the review should be referred to, and conducted by, Judge Blumenfeld, the court overseeing the Criminal Case, who is more familiar with the Sentencing Discovery in question.