Adam R. Fox (State Bar No. 220584)
adam.fox@squirepb.com
Marisol C. Mork (State Bar No. 265170)
marisol.mork@squirepb.com
Hannah J. Makinde (State Bar No. 307907)
hannah.makinde@squirepb.com
Shima Vasseghi (State Bar No. 319985)
shima.vasseghi@squirepb.com
SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California  90071
Telephone:  +1 213 624 2500
Facsimile:   +1 213 623 4581

Attorneys for Defendant
JAMES CLARK

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| DENNIS BRADSHAW, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF LOS ANGELES, a municipal entity; MICHAEL FEUER, in his individual and official capacity; JAMES CLARK, in his individual and official capacity; THOMAS PETERS, in his individual and official capacity; THE LANDSKRONER LAW FIRM, LTD. dba LANDSKRONER GRIECO MERRIMAN, LLC, a limited liability company; JACK LANDSKRONER, an individual; LAW OFFICES OF MICHAEL J LIBMAN APC, a California Professional Corporation; MICHAEL J. LIBMAN, an individual; KIESEL LAW LLP, a California limited liability partnership; PAUL KIESEL, an individual; PARADIS LAW GROUP PLLC, a New York Professional Service Limited Liability Company; PAUL PARADIS, an individual,<br><br>Defendants. | Case No. 2:19-cv-06661-GW(MARx)<br><br>*Hon. George H. Wu*<br><br>**DEFENDANT JAMES CLARK'S MOTION FOR SANCTIONS UNDER FED. R. CIV. P. 11**<br><br>DATE: February 5, 2024<br>TIME: 8:30 a.m.<br>DEPT.: 9D<br><br>Third Amended Complaint Filed: September 22, 2023 |

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on February 5, 2024 at 8:30 a.m., or as soon thereafter as this matter may be heard before the Honorable George H. Wu in Courtroom 9D of the above-entitled Court, located at 350 W. 1st Street, in Los Angeles, California 90012, Defendant James Clark, by and through his attorneys, hereby moves this Court for the entry of sanctions upon Plaintiff's counsel, the X-Law Group PC, pursuant to Rule 11 of the Federal Rules of Civil Procedure.

Mr. Clark submits that the X-Law Group PC violated Rule 11 when Mr. Marchino, Plaintiff's lead counsel, signed and filed on September 22, 2023, the Third Amended Complaint ("TAC") because it makes baseless allegations about Mr. Clark that are plainly inconsistent with both the factual record and representations Plaintiff made just three weeks earlier in another submission in this case also signed by Mr. Marchino.

This Motion is made following the 21-day "safe-harbor" period provided by Rule 11. *See* Fed. R. Civ. P. 11(c)(2). Fox Decl., ¶ 4 and Exh. C. Counsel for Mr. Clark also attempted to resolve the issues raised in this Motion through correspondence with Plaintiff in accordance with the requirements of Rule 11(c)(1). The parties did not resolve the matter. *Id.*, ¶ 4.

For the reasons set forth above, and as discussed more thoroughly in the accompanying Memorandum of Points and Authorities, Mr. Clark respectfully requests that this Court impose monetary sanctions against Plaintiff's counsel, the X-Law Group PC, in an amount sufficient to reimburse Mr. Clark for all costs, expenses and attorneys' fees incurred in connection with the TAC and this Rule 11 Motion.

This Motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the Declaration Adam R. Fox and attached Exhibits, all pleadings and documents on file with this Court, and upon such oral argument and other submissions that may be presented at or before the hearing for this Motion.

DEFENDANT CLARK'S
MOTION FOR SANCTIONS, FRCP 11
2:19-CV-06661-GW(MAR)
1099568229\6\AMERICAS

| | |
|---|---|
| Dated:  January 4, 2024 | Squire Patton Boggs (US) LLP<br><br>By: /s/ Adam R. Fox<br>　　　Adam R. Fox<br>　　　Marisol C. Mork<br>Attorneys for Defendant James Clark |

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

After retiring from a distinguished career as a partner of Gibson, Dunn & Crutcher LLP ("Gibson Dunn"), James Clark served for a number of years as the Chief Deputy City Attorney for the City of Los Angeles (the "City"). During this time, the City became embroiled in a highly publicized scandal arising from the City's Department of Water & Power having mischarged a number of ratepayers due to what the City believed were problems in a billing system implemented by PriceWaterhouseCoopers LLP ("PwC"). Because Gibson Dunn represented PwC in one of the ensuing lawsuits, the City walled off Mr. Clark from having any involvement in that action. Despite this significant limitation, as the City's top litigator, Mr. Clark nevertheless had some role overseeing the defense of the City in a ratepayer class action brought against it arising from the billing fiasco.

In this suit, Plaintiff seeks to effectively overturn the court-approved settlement of the ratepayer suit, despite being a non-objecting, non-optout member of the certified class. He alleges collusion between the City and a number of lawyers in private practice representing that class. On March 10, 2023, the Court issued an order permitting the claims against virtually every defendant to proceed, but *dismissed* Plaintiff's claim against Mr. Clark, explaining that "Plaintiff ha[d] failed to plead sufficient facts to show that [Mr. Clark] participated in the collusion that caused Plaintiff's injury." ECF 206 at 15:7-8. Plaintiff's lead counsel, Filippo Marchino, Esq., of the X-Law Group PC, thereafter served a subpoena on one of the remaining defendants to gather additional information, including information that might assist in repleading viable claims against Mr. Clark and other defendants.

The target of the subpoena was Paul Paradis—once a New York lawyer now disbarred and sentenced following a felony criminal conviction for his leading role in the collusive scheme that forms the basis of Plaintiff's claims underlying this action. Mr. Marchino specifically sought to obtain documents provided to Mr.

1  Paradis by the United States government for use solely in connection with the
2  sentencing for his crimes. Intervening, the government moved to quash the subpoena,
3  noting that it sought secret grand jury and other confidential materials, and that any
4  disclosure would violate the government's agreement with Mr. Paradis. *See* ECF 290
5  at 6:3-7:11. According to the government, Mr. Marchino had engaged in his own
6  "collusion and gamesmanship" by joining with Mr. Paradis to obtain the confidential
7  materials used in his sentencing. ECF 290 at 13:16-19. On August 29, 2023, Plaintiff
8  and Mr. Paradis jointly opposed the government's motion. In this submission, Mr.
9  Marchino specifically asserted having "***ample evidence*** that then City Attorney
10 ***Michael Feuer***'s role was the ***ringleader*** of the scheme." ECF 308 at 5 n.1 (emphases
11 added). In Mr. Paradis's portion, he explained that Plaintiff's counsel had informed
12 him and stated that Plaintiff needed the subpoenaed materials to obtain:

- Facts contained in "search warrant affidavits that demonstrate when, how and from whom . . . ***Clark*** and others ***first learned*** of the City's collusive scheme in the Jones Action." *Id.* at 24:20-27 (emphases added).
- Facts contained in "search warrants that demonstrate ***whether*** . . . ***Clark*** . . . ***acted*** to conceal this collusive litigation scheme ***after having learned*** of it." *Id.* at 24:14-19 (emphases added).
- Facts contained in "search warrant affidavits . . . that would demonstrate ***whether*** . . . ***Clark*** and others ***committed perjury*** by testifying falsely under oath, or made false statements to the Government, concerning their knowledge of – or involvement in – the collusive litigation scheme involving the *Jones* Action." *Id.* at 24:24-28 (emphases added).
- Facts that "***demonstrate***, involve, or otherwise relate to illegal or ***wrongful conduct*** engaged in ***by*** City Attorney personnel, including but not limited to, . . . ***Clark***." *Id.* at 25:17-24 (emphases added).
- Facts and evidence "concerning specific illegal and/or unethical acts committed by . . . Chief Deputy Clark" and others. *Id.* at 29:8-15.

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

On September 14, 2023, United States Magistrate Judge Rocconi issued an order staying resolution of Plaintiff's motion to compel and the government's motion to intervene and to quash. *See* ECF 322.

Just eight days later, on September 22, 2023, Mr. Marchino signed and filed a Third Amended Complaint ("TAC"), asserting a single claim against Mr. Clark, identifying the "architect" of the collusive scheme from which this case arises as Mr. Clark, not Mr. Feuer, and averring that Mr. Clark had supposedly "authorized and directed" three outside counsel "foot soldiers" to carry out that scheme. *See, e.g.*, ECF 330 at ¶¶ 8, 9, 28 & 145. Mr. Marchino made no effort in this pleading to reconcile his allegations about Mr. Clark with the plainly inconsistent statements he had made just three weeks earlier about Mr. Feuer and the need to gather evidence about Mr. Clark's role. These are unsurprising omissions because the allegations against Mr. Clark are baseless. Indeed, the evidence available to Mr. Marchino, including sworn testimony of numerous percipient witnesses in the related litigation between the City of Los Angeles and PwC tells a very different story.

For example, Paul Kiesel, the chief co-conspirator of Mr. Paradis in secretly drafting and filing a class action complaint against their own client at the time, the City of Los Angeles, testified under oath that the core idea of a collusive class action against the City was the "creative suggestion" of Mr. Paradis, not Mr. Clark or, for that matter, even Mr. Feuer. Declaration of Adam R. Fox ("Fox Decl."), Exh. A (Deposition of Paul Kiesel, *City of Los Angeles v. PriceWaterhouseCoopers LLP*, May 30, 2019) at 650:3-14 & 654:3-4. Specifically, Mr. Kiesel testified as follows:

> Mr. Paradis suggested that his client Antwon Jones . . . could file a claim against the City of Los Angeles Department of Water and Power and the City could then use that claim as a vehicle to . . . provide 100 percent relief for all of the ratepayers . . . , while at the same time, having a broad enough complaint that would be filed by Mr. Jones so that any resolution the City reached would provide a full and complete release to the City for all the damages alleged that was where the discussion began.

*Id.* at 650:3-14.

Similarly, as found by ethicist Ellen Pansky, who prepared a report for the City filed with the *Jones* trial court, the allegation that the City's outside counsel acted as "foot soldiers" directed by Mr. Clark is belied by the sworn testimony of both the supposed "foot soldiers" as well as the lawyer who had actually supervised them: Richard Tom, the Assistant General Counsel of the DWP. *See, e.g.*, Fox Decl., Exh. B (October 22, 2019 Report of Ellen A. Pansky Regarding Legal Ethics Issues in Connection with *Antwon Jones v. City of Los Angeles*) at 61 ¶ 218 ("Tom testified that supervisory authority for the Jones case initially resided with Solomon, but by the end of 2015 or 2016, supervision changed to Tom.") (citing Depo. Tr. of Richard Tom, May 16, 2019, at 383-384) & 62, ¶ 226 (explaining that in 2015, Attorney Annaguey was reporting to Richard Tom, Eskel Solomon, and Deborah Dorny) (citing Depo. Tr. of Maribeth Annaguey, June 5, 2019, at 280-281).

Against this background, Mr. Marchino's representations in the TAC about Mr. Clark betray a failure to act in accord with the mandates of Rule 11. They accordingly warrant sanctions to the extent of this Court's sound exercise of discretion, including an award to Mr. Clark of the fees and costs he has incurred in bringing this motion as well as his concurrently filed motion to dismiss.

## II. FACTUAL BACKGROUND

Mr. Marchino filed this lawsuit in 2019, on behalf of Plaintiff Dennis Bradshaw, who purports to represent a class of Los Angeles Department of Water and Power ("LADWP") ratepayers who received bills miscalculating their utility charges. *See* ECF 1 [Compl.] ¶ 85. A major problem with the suit from the beginning is that a California Superior Court long ago certified the class impacted by this controversy, with an entirely different class representative, Antwon Jones. *See id.* (discussing *Jones v. City of Los Angeles*, Cal. Superior Court Case No. BC577267). Plaintiff conceded in his initial pleading that he was a "member" of the *Jones* class, he "did not object or otherwise opt out of the settlement or take other action," and he even "received a credit to his December 2017 bill as a part of the Jones *settlement*."

*Id.* Importantly, the *Jones* case settlement was approved by the court presiding over the controversy and reexamined once the allegations of collusion had surfaced.

On behalf of Plaintiff, Mr. Marchino commenced this action, naming numerous lawyers on both sides of the *Jones* case to advance new claims attacking the settlement of that case. Whatever one makes of this strategy generally, it has always failed to state a cognizable claim against Mr. Clark. Indeed, after staying the case to allow the state court to reexamine the *Jones* settlement, this Court in March 2023 ***dismissed*** the claims against Mr. Clark. *See* ECF 206 at 15:7-8. The Court specifically addressed Plaintiff's conclusory pleading regarding Mr. Clark as follows:

> Although the FAC details the conduct of Peters, the Landskroner Defendants, the Libman Defendants, the Paradis Defendants, and the Kiesel Defendants in bringing about the Jones action, the FAC's allegations with respect to Clark are much more sparse. (See FAC ¶¶ 67-103.) The FAC generally alleges that Clark "supervised, ratified, and directed the conduct of [the Paradis Defendants and the Kiesel Defendants], including the decision to file and settle Jones as a collusive class action." (FAC ¶ 67.) In support of this allegation, however, the FAC states only that Clark directly supervised Peters and that Clark reviewed the "Jones v. PwC" complaint that was circulating within the Los Angeles City Attorney's Office. (FAC ¶¶ 7-8, 71.) These facts are insufficient to establish Clark's participation in the collusive class action. That Clark may have supervised a participant in the scheme and may have been copied on an email related to the scheme does not by itself give rise to a reasonable inference that he took part in it.

*Id.* at 15:9-23.

Following the Court's ruling, Mr. Marchino began collaborating with Mr. Paradis, one of the other defendants, to try and obtain additional information about the scheme leading to the *Jones* scandal. Mr. Marchino no doubt identified Mr. Paradis as a potential source for this information because of his well-known role in conceiving and orchestrating the crimes that led to his eventual disbarment and felony criminal conviction.[1] ECF 260 at 4:5-11. Mr. Paradis apparently told Mr. Marchino

---

[1] Mr. Paradis pleaded guilty to bribery and admitted numerous other crimes. ECF 290 at 8 n.1. Judge Blumenfeld, in sentencing Mr. Paradis, identified his motive as "pure greed" and called his

1  about "several other potential defendants." *Id.* at 4:12-13. They also joined together
2  to gather additional details from the United States, which had shared certain
3  confidential information with Mr. Paradis attendant to his sentencing. *Id.* at 4:17-27.
4  But time was running out for Plaintiff to amend his complaint as to Mr. Clark, so Mr.
5  Marchino filed an *ex parte* application seeking additional time to amend in which he
6  outlined his collaboration with Mr. Paradis. *See generally*, ECF 260.

7  When the Court denied this application, Mr. Marchino filed Plaintiff's Second
8  Amended Complaint ("SAC") on August 10, and for the first time identified Mr.
9  Clark as the "architect" of the scheme. ECF 269 ¶ 4. Less than a fortnight later, on
10 August 22, 2023, and before Mr. Clark had responded to the SAC, the government
11 moved to quash the joint effort by Mr. Marchino and Mr. Paradis to gather its
12 confidential materials. In opposing the government's motion to quash, on August 29,
13 2023, Mr. Marchino and Mr. Paradis jointly noted that Plaintiff "planned to soon seek
14 leave of the Court to file a *Third Amended Class Action Complaint*" and "sought
15 discovery in aid of preparing" it. ECF 308 at 16:14 & 16:17-18. In this filing, Mr.
16 Paradis explained that Mr. Marchino specifically and repeatedly identified Mr. Clark
17 as a person about whom he desired to obtain evidence to ascertain what role, if any,
18 he had played, including whether and when he first became aware of the scheme. *See,*
19 *e.g.*, *id.* at 19:20-27, 20:14-19, 20:24-28, 21:17-24 & 25:8-15. Despite the record
20 testimony of Mr. Kiesel identifying Mr. Paradis himself as the creative mastermind,
21 Mr. Marchino also asserted that "there is ample evidence that then City Attorney
22 Michael Feuer's role was the ringleader of the scheme." *Id.* at 5 n.1.

23 On September 14, 2023, United States Magistrate Judge Rocconi issued an
24 order staying resolution of Plaintiff's motion to compel and the government's motion
25 to intervene and to quash. *See* ECF 322. Just eight days later, on September 22, 2023,

---

27 level of corruption "mind-boggling." Press Release, U.S. Attorney's Office, C.D. Cal., *Former New York Lawyer Sentenced to Nearly 3 Years in Prison for Accepting $2.2 Million Kickback in LADWP Corrupt Litigation Scheme* (Nov. 7, 2023), https://www.justice.gov/usao-cdca/pr/former-new-york-lawyer-sentenced-nearly-3-years-prison-accepting-22-million-kickback.

- 8 -

DEFENDANT CLARK'S
MOTION FOR SANCTIONS, FRCP 11
2:19-CV-06661-GW(MAR)
1099568229\6\AMERICAS

without any new discovery, Mr. Marchino filed the TAC and repeated his characterization of Mr. Clark as the "architect" and "Shot Caller" who conceived of and directed the alleged collusive scheme to arrange a favorable settlement with the LADWP customers stemming from the PwC billing system failure. *See, e.g.*, ECF 330 at ¶ 8 ("[T]he corrupt scheme was architected by Clark . . . ."); *id*. at ¶ 9 ( "[T]he corrupt scheme [was] authorized and directed by Clark . . . ."); *id*. at ¶ 28 (proclaiming that "the collusive scheme . . . was architected, authorized and directed by Feuer's Chief Deputy, Defendant Clark"); & *id*. at ¶ 145 ("Shot Caller Clark's orders were acted on and primarily accomplished by three [outside counsel] 'foot soldiers' . . . .").

The TAC specifically identifies the source of these new allegations, explaining that "in weeks preceding the filing of this Third Amended Complaint, **Defendant Paradis** has provided Plaintiff with extensive information revealing the true scope of the collusive litigation scheme" as well as "extensive new information" as to "existing Defendants." ECF 330 ¶ 99 (emphasis added). The TAC did not otherwise attempt to explain Mr. Marchino's vacillation about the identification of the scheme's ringleader, or reconcile the TAC's allegation that it was Mr. Clark with the "ample evidence" referenced just a few weeks prior that purportedly supported the conclusion that Mr. Feuer had been the ringleader, let alone the testimony from Mr. Kiesel under oath that the true creative mastermind was Mr. Paradis—the apparent source of the new allegations.

Importantly, Mr. Marchino signed both the joint stipulation and the TAC, thereby attesting to his purported compliance with the dictates of Rule 11, including its requirement for a reasonable pre-filing investigation.

### III. <u>LEGAL STANDARD</u>

Rule 11 requires that any claims, defenses, or factual assertions submitted by an attorney to a court be objectively grounded in both law and fact.

> (b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an

   attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

   (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

   (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

   (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

   (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).

  "An attorney's signature on a complaint is tantamount to a warranty that the complaint is well grounded in fact and 'existing law' (or proposes a good faith extension of the existing law) and that it is not filed for an improper purpose." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002). One of the fundamental purposes of Rule 11 is to "reduce frivolous claims, defenses or motions and to deter costly meritless maneuvers, . . . [thereby] avoid[ing] delay and unnecessary expense in litigation." *Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1536 (9th Cir. 1986).

  As this Court knows well, Rule 11 sanctions are appropriate if the factual allegations lack evidentiary support. *See, e.g.*, *Imprenta Servs., Inc. v. Karll*, No. CV 20-6177-GW-PVCX, 2022 WL 3012820, at *13 (C.D. Cal. May 13, 2022) (Wu, District Judge) (granting Rule 11 sanctions), *appeal dismissed*, No. 2022-2122, 2023 WL 1094326 (Fed. Cir. Jan. 30, 2023). In exercising its discretion to make this assessment, the Court first "must conduct a two-prong inquiry to determine (1) whether the complaint is legally or factually 'baseless' from an objective perspective, and (2) if the attorney [or individual] has conducted 'a reasonable and

competent inquiry' before signing and filing it." *Christian*, 286 F.3d at 1127. An attorney may not rely on speculation as a basis for making allegations. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 505 (9th Cir. 1986). "Baseless filing puts the machinery of justice in motion, burdening courts and individuals alike with needless expense and delay." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 398 (1990).

## V. ARGUMENT

In the TAC, Mr. Marchino asserts that Mr. Clark is the "architect" and "Shot Caller" behind an alleged collusive scheme to arrange a favorable settlement with the LADWP customers that harmed Plaintiff and the putative class. Yet just weeks earlier, Mr. Marchino signed and filed a document in this Court proclaiming that ample evidence identified another person as the ringleader, while his co-signer—Mr. Paradis—explained that Plaintiff's counsel sought to obtain evidence that could "demonstrate, involve, or otherwise relate to illegal or wrongful conduct" engaged in by Mr. Clark and when he first learned about it. ECF 308 at 25:17-24. Moreover, record evidence available to Mr. Marchino, including sworn testimony from other defendants in this case, plainly contradicts his allegations against Mr. Clark as the "architect" of the collusive scheme and even the suggestion that Mr. Feuer was the ringleader, and instead specifically names Mr. Paradis as the creative mastermind. *See, e.g.*, Fox Decl., Exh. A at 650:3-14 (testimony from Mr. Kiesel explaining that Mr. Paradis suggested that ratepayer Mr. Jones could file a lawsuit against the City and result in a release the City desired).

After the Court effectively denied Plaintiff the discovery he claimed to need about Mr. Clark, by staying resolution of the matter, Mr. Marchino filed the TAC just over a week later. Despite advancing bold allegations about Mr. Clark's role, this pleading offers no explanation for the remarkable inconsistency in the positions signed by Mr. Marchino just a few weeks earlier. Nor does it even attempt to reconcile or harmonize the plain conflict in the record by identifying any new evidence, other than by making reference to "Defendant Paradis ha[ving] provided

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

Plaintiff with extensive information revealing the true scope of the collusive litigation scheme." ECF 330 ¶ 99.

Thus, it appears that Mr. Marchino apparently chose to ignore sworn record evidence and his own prior judicial admissions, and manufacture the allegations against Mr. Clark based on information provided by Mr. Paradis, a discredited, disbarred, convicted felon, rather than leave him dismissed from the case. ECF 330 ¶ 99. This approach to pleading is entirely unreasonable, improper, and paradigm of the abuse of process Rule 11 is designed to discourage, curb, and punish. Moreover, it is particularly unfair to a former public official and longstanding member of the bar with an unblemished ethics record whom this Court has already dismissed from this controversy.

## VI. CONCLUSION

For the foregoing reasons, Mr. Clark respectfully requests that this Court issue Rule 11 sanctions, in an amount to be determined, against Plaintiff and his counsel of record for making objectively baseless allegations and failing to conduct a reasonable pre-filing investigation. Mr. Clark respectfully requests a briefing schedule to establish his attorneys' fees and costs incurred in connection with the TAC and this Rule 11 Motion.

DATED: January 4, 2024           Squire Patton Boggs (US) LLP

By:   */s/ Adam R. Fox*
      Adam R. Fox
      Marisol C. Mork
      Attorneys for Defendant James Clark